# David I. Schoen
Attorney at Law

Admitted in
Alabama
Maryland
New York
District of Columbia

2800 Zelda Road
Suite 100-6
Montgomery, AL 36106

Telephone
334.395.6611

Facsimile
917.591.7586

Email
david@schoenlawfirm.com

November 2, 2023

Honorable Mark Langer
Clerk of the Court
United States Court of Appeals
 for the District of Columbia Circuit
E. Barrett Prettyman United States Courthouse
333 Constitution Avenue, NW
Washington, DC 20001

Re: *United States v. Stephen Bannon*; Case No. 22-3086; FRAP 28(j)/Circuit Rule 28(f)

Dear Mr. Langer:

I write on behalf of Appellant, Stephen Bannon, to bring to the Court's attention *In re Sealed Case*, 80 F.4th 355 (D.C. Cir., September 13, 2023). The decision is significant authority pertinent to the quashing of defense subpoenas under the Speech or Debate Clause [Appellant's Brief Pages 41-48], which the district court found presents a "substantial question" on appeal [A4763].

The case reaffirms that for a Speech or Debate Clause privilege claim, "[U]nder Supreme Court and circuit precedent, the proper inquiry is fact-specific and considers whether the act is "legislative," i.e., "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id.* at *2. (Citations omitted); See also, *Clyde v. Walker*, 2023 U.S. App. LEXIS 28044, *4 (D.C. Cir., October 20, 2023). "[P]ress releases," "speeches delivered outside the Congress," and "cajol[ing] ... and exhort[ing] members of the Executive Branch 'with respect to the administration of a federal statute'" are not "essential to legislating," nor privileged legislative activity. *In re Sealed Case*, at ** 14-16, 22, 28-29. The Clause's coverage has "always been confined to legislative acts undertaken within the legislative process." *Id.* at *11. It remanded for non-categorical, fact-specific consideration.

Here, the quashed subpoenas for House members, staffers, and House Counsel, included specifically tailored requests for documents and testimony outside the ambit of the privilege [A2113-2223]. The subpoenas sought exculpatory evidence from competent subpoenaed witnesses and documents, concerning the validity of the Bannon subpoena, the false claim Bannon "ignored" the subpoena, bias and pre-determined political motives, whether dates were malleable or there was a "willful default," why members violated the constitutional mandate to work toward an accommodation regarding an inter-branch subpoena, reflected in correspondence with defense counsel, an FBI interview, a lawsuit brought by the Chairman, extra-legislative

Honorable Mark Langer
November 2, 2023
Page 2


press statements, exhortations to the DOJ, and books by members [A4330-4354; 4604-4614]. The recent decision requires a remand on this issue for an item by item consideration.

Respectfully,

David I. Schoen
Counsel for Appellant

cc: All Counsel of record (via ECF)

Attachments



**User Name:** DAVID SCHOEN
**Date and Time:** Thursday, November 2, 2023 3:47:00PM EDT
**Job Number:** 209601452

## Document (1)

1. *In re Sealed Case, 2023 U.S. App. LEXIS 24290*
   **Client/Matter:** -None-

 Neutral
As of: November 2, 2023 7:47 PM Z

# *In re Sealed Case*

United States Court of Appeals for the District of Columbia Circuit

February 23, 2023, Argued; September 5, 2023, Decided; September 13, 2023, Filed

No. 23-3001

**Reporter**

2023 U.S. App. LEXIS 24290 *; 80 F.4th 355

IN RE: SEALED CASE

**Prior History: [*1]** Appeal from the United States District Court for the District of Columbia. No. 1:22-sc-02144.

*In re Sealed Case, 2023 U.S. App. LEXIS 3776 (D.C. Cir., Feb. 16, 2023)*

## Core Terms

communications, factfinding, privileged, legislative act, district court, cleaned, documents, authorization, votes, subcommittee, protects, election, legislative process, disclosure, records, categorical, deliberations, proceedings, subpoena, upcoming, matters, proposed legislation, deliberative, questioned, inform, staff, newsletters, processes, includes, cases

## Case Summary

### Overview

HOLDINGS: [1]-In a case concerning application of the *Speech or Debate Clause* privilege to the contents of a representative's cell phone that was seized by the FBI pursuant to a warrant, the court found against the representative because at least some informal factfinding was unprotected under caselaw and the categorical rule failed. The proper inquiry was fact-specific and considered whether the act was legislative.

### Outcome

Judgment vacated and remanded in part; affirmed in part.

## LexisNexis® Headnotes

Administrative Law > ... > Defenses & Exemptions From Public Disclosure > Interagency Memoranda > Deliberative Process Privilege

*HN1*[ ] **Interagency Memoranda, Deliberative Process Privilege**

Under Supreme Court and circuit precedent, the proper inquiry is fact-specific and considers whether the act is legislative, i.e., an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

Civil Procedure > Appeals > Appellate Jurisdiction > Collateral Order Doctrine

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

*HN2*[ ] **Appellate Jurisdiction, Collateral Order Doctrine**

The collateral order doctrine treats some decisions as final even if they do not terminate the case. *28 U.S.C.S. § 1291* provides jurisdiction in the courts of appeals over final decisions. This is a small category, and it includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action.

Civil Procedure > ... > Discovery > Privileged Communications > Attorney-Client Privilege

Evidence > Privileges > Attorney-Client Privilege > Scope

### *HN3*[🔻] Privileged Communications, Attorney-Client Privilege

A district court's disclosure order is not immediately appealable even when the attorney-client privilege is at stake.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

### *HN4*[🔻] Congressional Duties & Powers, Speech & Debate Immunity

The Speech or Debate privilege concerns the separation of powers; it is rarely invoked; and it is uniquely important to the fulfillment of governmental functions.

Civil Procedure > Appeals > Appellate Jurisdiction > Collateral Order Doctrine

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

### *HN5*[🔻] Appellate Jurisdiction, Collateral Order Doctrine

The denial of a claim of *Speech or Debate Clause* privilege over documents is an immediately appealable collateral order.

Constitutional Law > Congressional Duties & Powers > Presentment & Veto

Governments > Federal Government > US Congress

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

Constitutional Law > Congressional Duties & Powers > Elections > Time, Place & Manner Restrictions

Constitutional Law > Separation of Powers

### *HN6*[🔻] Congressional Duties & Powers, Presentment & Veto

The *Speech or Debate Clause* provides that for any Speech or Debate in either House, Senators and Representatives shall not be questioned in any other Place. *U.S. Const. art. I, § 6, cl. 1*. In the Constitution's careful separation of powers, the Clause serves to safeguard the independence of Congress, preventing intimidation of legislators by the Executive and accountability before a possibly hostile judiciary. The Clause is one manifestation of the Constitution's practical security for ensuring the independence of the legislature. While the privilege's core is speech and debate in either House, it has long been recognized to reach other acts within legislative proceedings.

Civil Rights Law > Protection of Rights > Immunity From Liability > Legislative Functions

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

### *HN7*[🔻] Immunity From Liability, Legislative Functions

While the *Speech or Debate Clause* covers more than literal speech and debate, its reach has always been confined to legislative acts undertaken within the legislative process. In adjudicating the scope of the privilege, courts have consistently recognized both the privilege's importance for congressional independence and the limits of the privilege to acts within the legislative sphere. The privilege will be read broadly to effectuate its purposes.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

### *HN8*[🔻] Congressional Duties & Powers, Speech & Debate Immunity

A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it and that not all conduct related to the due functioning of the legislative process is automatically privileged. Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either

House. Insofar as the *Speech or Debate Clause* is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings 1) with respect to the consideration and passage or rejection of proposed legislation or 2) with respect to other matters which the Constitution places within the jurisdiction of either House.

Civil Rights Law > Protection of Rights > Immunity From Liability > Legislative Functions

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

Evidence > Privileges > Government Privileges > Executive Privilege

*HN9*[⬇] **Immunity From Liability, Legislative Functions**

Members may engage in a variety of legitimate actions within the duties of their office without triggering the *Speech or Debate Clause* privilege. Legitimate activities of a political nature, such as errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, and speeches delivered outside the Congress are not necessarily privileged. The act of sending political newsletters to constituents is not privileged. And cajoling and exhorting members of the Executive Branch with respect to the administration of a federal statute is not protected legislative activity. There is a difference between actions taken by legislators, however frequently, and legislative activity protected by the immunity of the *Speech or Debate Clause*. The privilege does not turn on whether an action is in some general sense official; rather, it turns on whether it is a legislative act within the scope of Gravel v. United States. Beyond actual speech or debate, an act is considered legislative only if it falls within one of Gravel's two categories. And unlike executive privilege, which may extend to the outer perimeter of official duties, the Clause does not protect acts that are not legislative in nature, even if they are performed in a Member's official capacity.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN10*[⬇] **Congressional Duties & Powers, Speech & Debate Immunity**

Across a wide variety of factual circumstances, courts have faithfully applied the Gravel v. United States test and the principles animating it to determine whether an act is legislative and therefore privileged under the *Speech or Debate Clause*.

Civil Rights Law > Protection of Rights > Immunity From Liability > Legislative Functions

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN11*[⬇] **Immunity From Liability, Legislative Functions**

If a Member's act qualifies as legislative under Gravel v. United States, the *Speech or Debate Clause* privilege privilege applies and the Clause confers three absolute protections. First, the privilege includes immunity from suit—a Member may not be sued or prosecuted for his legislative acts. Second, the privilege includes an evidentiary privilege—legislative acts may not be introduced into evidence even when the government seeks to punish a Member for non-legislative acts. Third, the privilege encompasses a testimonial privilege not to be questioned in any other Place. *U.S. Const. art. I, § 6, cl. 1*. This means that only Congress, not the Executive or Judiciary, may force a Member to testify about legislative acts. Legislative acts receive these protections regardless of the Member's subjective motives. It is not consonant with the scheme of government for a court to inquire into the motives of legislators.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

Evidence > Privileges > Self-Incrimination Privilege > Exceptions

*HN12*[⬇] **Congressional Duties & Powers, Speech & Debate Immunity**

One aspect of the testimonial privilege is a limited protection against the compelled disclosure of documents. The testimonial immunity of the *Speech or Debate Clause* applies beyond the direct questioning of

Members because documentary evidence can certainly be as revealing as oral communications. Just as the other branches may not compel verbal testimony concerning legislative acts, they may not force Members to hand over documentary evidence of those acts. Similarly, a private litigant is no more entitled to compel the congressional production of documents than it is to sue congressmen. The Clause protects against the compelled disclosure of privileged documents but not the disclosure of non-privileged materials.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN13*[⬇] **Congressional Duties & Powers, Speech & Debate Immunity**

The *Speech or Debate Clause* privilege applies whenever the Executive Branch searches a location where legislative materials are inevitably to be found.

Governments > Courts > Authority to Adjudicate

*HN14*[⬇] **Courts, Authority to Adjudicate**

Federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.

Governments > Legislation > Interpretation

*HN15*[⬇] **Legislation, Interpretation**

A given act is legislative if it is an integral part of relevant House or committee proceedings.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN16*[⬇] **Congressional Duties & Powers, Speech & Debate Immunity**

In assessing whether the *Speech or Debate Clause* privilege applies, courts undertake a fact-specific inquiry under Gravel v. United States.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

Governments > Federal Government > US Congress

*HN17*[⬇] **Congressional Duties & Powers, Speech & Debate Immunity**

An official congressional investigation is essential to legislating and covered by the *Speech or Debate Clause* privilege so long as the subcommittee stays within its province.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN18*[⬇] **Congressional Duties & Powers, Speech & Debate Immunity**

In order for an activity to be considered essential to legislating it must be an integral part of the deliberative and communicative processes' dealing with matters within the jurisdiction of Congress. And even authorized factfinding may not be privileged if it goes beyond the reasonable requirements of the legislative function.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN19*[⬇] **Congressional Duties & Powers, Speech & Debate Immunity**

The *Speech or Debate Clause* privilege permits Congress to conduct investigations and obtain information without interference from the courts, at least when these activities are performed in a procedurally regular fashion.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN20*[⬇] **Congressional Duties & Powers, Speech & Debate Immunity**

An investigation authorized by the House and within its jurisdiction is an exercise of congressional power and by definition part of a legislative proceeding, but formal authorization is neither necessary nor sufficient for the

*Speech or Debate Clause* privilege to attach to the wide range of activities that could be denominated investigative or factfinding. Rather, courts consider the specific facts to determine whether a particular action is a legislative act within the test articulated by Gravel v. United States.

Governments > Courts > Authority to Adjudicate

**HN21**[⬇]  **Courts, Authority to Adjudicate**

When a privilege argument rests on the assertion that a House of Congress validly exercised its investigative power, the scope of that investigative power is relevant to the inquiry and the court considers whether the investigation concerns a subject on which legislation may be had.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

**HN22**[⬇]  **Congressional Duties & Powers, Speech & Debate Immunity**

Not all communications that may influence a vote are privileged; rather, the proper test is whether such communications are integral or essential to deliberations or otherwise satisfy the requirements of Gravel v. United States.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

**HN23**[⬇]  **Fundamental Freedoms, Freedom of Speech**

The Speech or Debate privilege undoubtedly assures a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch. But under Gravel v. United States, the Clause does not protect acts that are not legislative in nature, even if they are performed in a Member's official capacity. Privileged legislative acts are only a subset of the various activities a Member may undertake as part of his official duties and responsibilities.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

**HN24**[⬇]  **Congressional Duties & Powers, Speech & Debate Immunity**

The *Speech or Debate Clause* has been limited to an act which was clearly a part of the legislative process—the due functioning of the process. Informal factfinding encompasses a wide spectrum of acts that may or may not be related, much less integral, to House deliberative and communicative processes. Cases applying the Gravel v. United States test to specific acts demonstrate that informal factfinding has no necessary connection to the privilege. Not everything under the informal factfinding umbrella is protected.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

**HN25**[⬇]  **Congressional Duties & Powers, Speech & Debate Immunity**

Communications with individuals outside of Congress may qualify for the *Speech or Debate Clause* privilege. To determine whether a particular matter or action is privileged, courts must apply the test in Gravel v. United States in a manner consistent with the principles undergirding the Clause.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

Governments > Federal Government > US Congress

**HN26**[⬇]  **Congressional Duties & Powers, Speech & Debate Immunity**

Not everything a Member of Congress may regularly do is a legislative act within the protection of the *Speech or Debate Clause*.

Administrative Law > ... > Defenses & Exemptions From Public Disclosure > Interagency Memoranda > Deliberative Process Privilege

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN27*[⬇] **Interagency Memoranda, Deliberative Process Privilege**

With regard to the *Speech or Debate Clause*, discussions between Members about pending votes are things generally done in a session of the House by one of its members in relation to the business before it, and such discussions are within the heartland of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or other matters within the House's jurisdiction.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN28*[⬇] **Congressional Duties & Powers, Speech & Debate Immunity**

Federal courts must determine the outer boundaries of the *Speech or Debate Clause* privilege. But when a Member engages in a legislative act, the court cannot carve out from the privilege certain topics of discussion by labeling them merely incidental or by deeming them illegitimate. For courts to pick and choose the scope of the privilege based on a free-floating evaluation of the proper objects of congressional deliberation would threaten the *Speech or Debate Clause*'s essential protection for legislative independence.

**Counsel:** John P. Rowley, III argued the cause for appellant. With him on the briefs were John S. Irving, Stan M. Brand, and Stanley E. Woodward, Jr.

John M. Pellettieri, Assistant Special Counsel, U.S. Department of Justice, argued the cause for appellee. With him on the brief were J.P. Cooney, Deputy Special Counsel, and Raymond N. Hulser, Counselor to the Special Counsel.

**Judges:** Before: HENDERSON, KATSAS, and RAO, Circuit Judges. Opinion for the Court filed by Circuit Judge RAO. Concurring opinion filed by Circuit Judge KATSAS.

**Opinion by:** RAO

# Opinion

RAO, *Circuit Judge*: This case concerns the application of the *Speech or Debate Clause* privilege to the contents of Representative Scott Perry's cell phone, which was seized by the Federal Bureau of Investigation pursuant to a warrant. In a district court motion, Representative Perry argued the Clause bars the government from reviewing many of the messages stored on the phone. As to communications with Executive Branch officials and parties outside of Congress, Representative Perry argues that his messages are necessarily privileged because they constitute "informal factfinding"—a capacious category he asserts **[\*2]** is always privileged and includes a Member's attempts to obtain information related to topics of upcoming votes without express House authorization.

We disagree. Because at least some informal factfinding is unprotected under our caselaw, Representative Perry's categorical rule fails. *HN1*[⬆] Under Supreme Court and circuit precedent, the proper inquiry is fact-specific and considers whether the act is "legislative," i.e., "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States, 408 U.S. 606, 625, 92 S. Ct. 2614, 33 L. Ed. 2d 583 (1972)*.

Some acts of informal factfinding, however, might satisfy the *Gravel* test, and so we reject the district court's categorical holding that such acts are *never* legislative acts subject to the privilege. With respect to Representative Perry's communications with Executive Branch officials and others outside of Congress, we remand for the district court to apply the *Gravel* standard on a communication-by-communication basis.

As to Representative Perry's communications **[\*3]** with Members of Congress and congressional staff, we affirm in large measure. The district court, however, incorrectly withheld the privilege from communications between Representative Perry and other Members about the 2020 election certification vote and a vote on proposed election reform legislation. These are quintessential legislative acts entitled to the privilege, and we vacate the district court's judgment with respect to those communications and remand.

I.

Scott Perry represents Pennsylvania's 10th Congressional District in the House of Representatives. After the 2020 presidential election, Representative Perry used his personal cell phone to send and receive communications concerning allegations of fraud in that election. Some of these communications were with fellow Members of Congress or with congressional staff. Representative Perry also communicated with members of the Executive Branch and with individuals outside the federal government. He sent and received many of these communications before the House voted on whether to certify the electoral votes from the 2020 election. See *U.S. Const. amend. XII* (directing that "the President of the Senate shall, in the presence of the Senate and House of [*4] Representatives, open all the [Electors'] certificates and the votes shall then be counted"); *Electoral Count Act of 1887, ch. 90, 24 Stat. 373* (codified as amended at *3 U.S.C. § 15*) (providing procedures for the congressional certification vote). Other communications occurred with respect to a vote on proposed legislation to alter election procedures. For the People Act of 2021, H.R. 1, 117th Cong.

In August 2022, a magistrate judge of the Middle District of Pennsylvania issued a search warrant authorizing the FBI to seize Representative Perry's phone and create a forensic copy of its contents. After executing the warrant, the FBI sought a separate search warrant from the District Court for the District of Columbia to review the forensic copy. The court granted the warrant, with the proviso that Representative Perry would have an opportunity to assert any claims of privilege under the *Speech or Debate Clause* before the government could review the phone's contents. For this procedure, the district court relied on *United States v. Rayburn House Office Building*, which held the Executive Branch must "afford[] [a] Congressman an opportunity to assert [Speech or Debate] privilege" before reviewing materials that likely contain privileged items. See *497 F.3d 654, 663, 378 U.S. App. D.C. 139 (D.C. Cir. 2007)*.

Representative Perry filed a "Motion for Nondisclosure" [*5] in district court, arguing 2,219 communications were privileged from disclosure under the *Speech or Debate Clause*. He contended that the Clause protects Members' efforts at informal factfinding. In his view, a Member's attempts to gather information related to upcoming votes are always privileged legislative acts because investigation is essential to the wise exercise of the legislative power.

Following an *in camera* review of the contested records, the district court ordered Representative Perry to disclose all but 164 of them.[1] *In re Search of Forensic Copy of Cell Phone of Representative Scott Perry* ("*In re Search*"), No. 1:22-sc-02144, slip op. at 51 (D.D.C. Dec. 28, 2022). The court held informal factfinding is never a legislative act and therefore these communications are outside the Clause's scope. The court based this conclusion on the principle that formal factfinding—i.e., investigation pursuant to official authorization of a House of Congress—is protected under the Clause. The court inferred the privilege does not attach to factfinding in the absence of such official authorization. *Id.* at 21.

The court sorted the communications into three categories. As to category (1), Representative Perry's communications with individuals outside the federal government, the district court concluded these communications were not privileged because they were informal [*6] factfinding. *Id.* at 28-39. As to category (2), Representative Perry's communications with other Members of Congress and with congressional staff, the district court held some of these communications were privileged legislative acts, while others were too far removed from the legislative process. *Id.* at 39-46. As to category (3), Representative Perry's communications with members of the Executive Branch, the district court held none of these communications were privileged because they were "political" or not factfinding at all. *Id.* at 48-51.

We stayed the district court's order pending appeal and expedited the case. Our review is *de novo*. See *Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff, 23 F.4th 1028, 1032, 455 U.S. App. D.C. 324 (D.C. Cir. 2022)*.

II.

At the outset, the government maintains we lack jurisdiction over this appeal because orders requiring the disclosure of documents or records are ordinarily not immediately appealable. The subject of a disclosure order must usually "refuse to comply and litigate [disclosure] questions in the event that contempt or similar proceedings are brought against him"; he may then appeal any resulting contempt order. Gov't Br. 15-16 (quoting *United States v. Ryan, 402 U.S. 530, 532, 91 S. Ct. 1580, 29 L. Ed. 2d 85 (1971)*). The government argues this rule applies here, so that Representative Perry's only route to appellate review is

---

[1] The communications remain under seal, as do some of the district court proceedings. This opinion cites only to the unsealed portions of the record, and it cites only to parts of the parties' briefs that do not concern sealed material.

to incur contempt and **[\*7]** appeal from that order. We disagree.

Under our precedent, the district court's partial denial of Representative Perry's nondisclosure motion is an immediately appealable collateral order. *HN2*[↑] The collateral order doctrine treats some decisions as "final" even if they do not terminate the case. *Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545-46, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949); 28 U.S.C. § 1291* (providing jurisdiction in the courts of appeals over "final decisions"). This is a "small category," and it "includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 42, 115 S. Ct. 1203, 131 L. Ed. 2d 60 (1995).*

This court has applied the collateral order doctrine in Speech or Debate cases involving the protection of Members' documents. In *Rayburn*, we held a district court's denial of a "[c]ongressman's motion for return of ... seized materials" on Speech or Debate grounds was a collateral order. *497 F.3d at 657-59*. And in *In re Grand Jury Subpoenas*, we reached the same conclusion with respect to the district court's denial of a motion to quash a subpoena on Speech or Debate grounds. *571 F.3d 1200, 1201-02, 387 U.S. App. D.C. 117 (D.C. Cir. 2009)*. Here, a Member of Congress asserted the Speech or Debate privilege by way of an evidentiary motion in district court, asserting **[\*8]** that the Executive was wrongfully attempting to review privileged documents. The district court partially denied the motion. That is an immediately appealable collateral order under a straightforward application of *Rayburn* and *In re Grand Jury Subpoenas*.

The government contends we lack jurisdiction because of *Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 130 S. Ct. 599, 175 L. Ed. 2d 458 (2009)*. *HN3*[↑] In *Mohawk*, the Supreme Court held a district court's disclosure order is not immediately appealable even when the attorney-client privilege is at stake. *Id. at 103*. Yet the Court reserved judgment on whether the denial of a governmental privilege should be treated the same as a private privilege, "express[ing] no view" on whether "collateral order appeals should be available for rulings involving certain governmental privileges in light of their structural constitutional grounding under the separation of powers, relatively rare invocation, and unique importance to governmental functions." *Id. at 113 n.4* (cleaned up).

*HN4*[↑] The Speech or Debate privilege concerns the separation of powers; it is rarely invoked; and it is uniquely important to the fulfillment of governmental functions. *See United States v. Johnson, 383 U.S. 169, 179, 86 S. Ct. 749, 15 L. Ed. 2d 681 (1966)*. By recognizing the unique status of governmental privileges, *Mohawk* left our precedent untouched. *HN5*[↑] Following *Rayburn* and *In re Grand* **[\*9]** *Jury Subpoenas*, the denial of a claim of *Speech or Debate Clause* privilege over documents is an immediately appealable collateral order, and so we have jurisdiction over Representative Perry's appeal.[2]

III.

Representative Perry invokes the *Speech or Debate Clause* to protect over two thousand documents and communications on his cell phone against disclosure to the Executive Branch. To evaluate his claims, we begin by setting forth our well-established framework for considering whether a particular matter comes within the Clause's coverage.

A.

*HN6*[↑] The *Speech or Debate Clause* provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." *U.S. Const. art. I, § 6, cl. 1*. In the Constitution's careful separation of powers, the Clause serves to safeguard the independence of Congress, "prevent[ing] intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." *Gravel, 408 U.S. at 617*. The Clause is "one manifestation of the [Constitution's] 'practical security' for ensuring the independence of the legislature." *Johnson, 383 U.S. at 179* (quoting THE FEDERALIST NO. 48, at 332 (James Madison) (Jacob E. Cooke ed., 1961)); *see also* 2 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION § 863 (1st ed. 1833) (calling the privilege a "great and vital" one, "without which all other privileges would be comparatively unimportant, **[\*10]** or ineffectual").

While the privilege's core is speech and debate in either House, it has long been recognized to reach other acts

---

[2] Representative Perry also argues that, even without the collateral order doctrine, the district court's order was final because it "end[ed] the litigation on the merits and le[ft] nothing for the court to do but execute the judgment." *Catlin v. United States, 324 U.S. 229, 233, 65 S. Ct. 631, 89 L. Ed. 911 (1945)*. Because we have jurisdiction under the collateral order doctrine, we do not address this alternative argument.

within legislative proceedings.[3] In 1808, the Supreme Judicial Court of Massachusetts, interpreting a nearly identical legislative privilege in that state's constitution, refused to "confine [the privilege] to delivering an opinion, uttering a speech, or haranguing in debate," and instead extended it to voting, making written reports, and "to every other act resulting from the nature, and in the execution, of the office." *Coffin v. Coffin, 4 Mass. (3 Tyng) 1, 27 (1808)*. The Supreme Court subsequently called *Coffin* "perhaps ... the most authoritative case in this country on the construction of the [*Speech or Debate Clause*] in regard to freedom of debate in legislative bodies," noting it was decided "early after the formation of the Constitution of the United States." *Kilbourn v. Thompson, 103 U.S. 168, 204, 26 L. Ed. 377 (1881)*. And when the Supreme Court considered the Clause's reach for the first time, it followed *Coffin*, holding the Clause went beyond "words spoken in debate" to include written reports and resolutions, voting, and other "things generally done in a session of the House by one of its members in relation to the business before it." *Id.*

**HN7**[↑] ] While the Clause covers more than literal speech and debate, its reach has always been confined to legislative acts undertaken within the legislative process. Thomas Jefferson commented the privilege "is restrained to things done in the House in a Parliamentary course" and does not attach "*contra morem parliamentarium* [against parliamentary custom], to exceed the bounds and limits of [a Member's] place and duty." 1 THOMAS JEFFERSON, A MANUAL OF PARLIAMENTARY PRACTICE 23-24 (2d ed. 1812) (italics added). Joseph Story similarly stated the privilege "is strictly confined to things done in the course of parliamentary proceedings, and does not cover things done beyond the place and limits of duty." 2 STORY,

---

[3] The Clause mirrors the language of the English parliamentary privilege, and that history has at times been relevant for understanding the Clause but within the context of Congress's limited legislative powers. *See, e.g.*, 2 STORY, COMMENTARIES § 863 (explaining the American "privilege ... is derived from the practice of the British parliament" but acknowledging "important distinction[s] arising from the actual differences between English and American legislation"); *Kilbourn v. Thompson, 103 U.S. 168, 201, 26 L. Ed. 377 (1881)* ("[W]hile the framers of the Constitution did not adopt the *lex et* [*11] *consuetudo* of the English Parliament as a whole, they did incorporate such parts of it, and with it such privileges of Parliament, as they thought proper to be applied to the two Houses of Congress."); *Johnson, 383 U.S. at 180-83* (discussing English history and the Clause's purposes).

COMMENTARIES § 863; *see also Hutchinson v. Proxmire, 443 U.S. 111, 126, 99 S. Ct. 2675, 61 L. Ed. 2d 411 (1979)* (quoting this passage with approval).

In adjudicating the scope of the privilege, courts have consistently recognized both the privilege's importance for congressional independence and the limits of the privilege to acts within the legislative sphere. For instance, the *Coffin* court emphasized the privilege attaches only to a legislator's words or acts made "in the character of a representative" and while "executing the duties of his office." *4 Mass. at 29-31*. In [*12] *Johnson*, the Court explained the privilege "will be read broadly to effectuate its purposes," but limited the Clause's protection to barring a conspiracy charge insofar as it was based on a Member's speech, while allowing the prosecution to proceed for matters unrelated to the speech. *383 U.S. at 172, 180, 185*. And in *United States v. Brewster*, the Court maintained it would not be "wise, simply out of an abundance of caution to doubly insure legislative independence, to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way *related* to the legislative process." *408 U.S. 501, 516, 92 S. Ct. 2531, 33 L. Ed. 2d 507 (1972)* (emphasis added).

The Supreme Court synthesized the Clause's history in a pair of cases that set forth the modern test for what types of "legislative acts" beyond pure speech and debate are privileged under the Clause. **HN8**[↑] ] In *Brewster*, the Court noted "[a] legislative act has consistently been defined as an act generally done in Congress in relation to the business before it" and that not all "conduct related to the due functioning of the legislative process" is automatically privileged. *Id. at 512, 513-14* (cleaned up). And in *Gravel*, the Court further clarified:

> Legislative acts are not all-encompassing. The heart of **[*13]** the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings [1] with respect to the consideration and passage or rejection of proposed legislation or [2] with respect to other matters which the Constitution places within the jurisdiction of either House.

*408 U.S. at 625*.

The Court's subsequent cases leave no doubt: *Gravel*

sets forth the criterion for assessing the reach of the Speech or Debate privilege. In *Doe v. McMillan*, the Court held the privilege did not apply to acts that were "not an essential part of the legislative process and [were] not part of that deliberative process 'by which Members participate in committee and House proceedings.'" *412 U.S. 306, 315, 93 S. Ct. 2018, 36 L. Ed. 2d 912 (1973)* (quoting *Gravel, 408 U.S. at 625*). There, the Member maintained the privilege should attach to acts that served *legislative functions*, but that argument was unavailing because the acts were not "legislative" within the meaning of *Gravel*. *Id. at 313-14*. In *Eastland v. United States Servicemen's Fund*, the Court "specifically" made clear that the judicial task is to "determine whether the [contested] activities are" within **[*14]** *Gravel*'s definition of "legislative acts." *421 U.S. 491, 504, 95 S. Ct. 1813, 44 L. Ed. 2d 324 (1975)*. In *Hutchinson*, the Court quoted *Gravel* at length and similarly described its formulation as the controlling "definition of the scope of the Clause." *443 U.S. at 126-27; see also United States v. Helstoski, 442 U.S. 477, 492, 99 S. Ct. 2432, 61 L. Ed. 2d 12 (1979)* (citing *Gravel* favorably).

When evaluating whether something is a "legislative act" within the meaning of *Gravel*, the Court will often consider whether protection of the privilege is "necessary to preserve the integrity of the legislative process," *Brewster, 408 U.S. at 517*; whether the "independence" of the legislature is at stake, *Eastland, 421 U.S. at 511*; and whether the actions at issue are things "generally done in the course of the process of enacting legislation," *Hutchinson, 443 U.S. at 131* (citing *Kilbourn, 103 U.S. at 204*) (cleaned up). These considerations are important for understanding the scope of the *Speech or Debate Clause*, and they help to flesh out the application of the *Gravel* criteria to specific facts.

The Clause's coverage for legislative acts is further delineated by what is not privileged. *HN9*[↑] The Supreme Court has repeatedly emphasized that Members may engage in a variety of legitimate actions within the duties of their office without triggering the privilege. For instance, "legitimate activities [of a] political ... nature," such as "'errands' performed for constituents, the making **[*15]** of appointments with Government agencies, assistance in securing Government contracts, ... and speeches delivered outside the Congress" are not necessarily privileged. *Brewster, 408 U.S. at 512*. The act of sending political newsletters to constituents is not privileged. *Hutchinson, 443 U.S. at 130*. And "cajol[ing] ... and exhort[ing]"

members of the Executive Branch "with respect to the administration of a federal statute ... is not protected legislative activity." *Gravel, 408 U.S. at 625*. While such acts are all in a day's work for a Member of Congress, they are not privileged under the *Speech or Debate Clause*.

These decisions highlight that "there is a difference between actions taken by legislators, however frequently, and legislative activity protected by the immunity of the *Speech or Debate Clause*." *McSurely v. McClellan, 553 F.2d 1277, 1286 n.28, 180 U.S. App. D.C. 101 (D.C. Cir. 1976)* (en banc) (majority opinion).[4] The privilege does not turn on whether an action is in some general sense "official"; rather, it turns on whether it is a legislative act within the scope of *Gravel*. As we have explained, "[b]eyond actual speech or debate, an act is considered 'legislative' *only if*" it falls within one of *Gravel*'s two categories. *Massie v. Pelosi, 72 F.4th 319, 322 (D.C. Cir. 2023)* (emphasis added); *see also, e.g., McCarthy v. Pelosi, 5 F.4th 34, 39, 453 U.S. App. D.C. 305 (D.C. Cir. 2021)*; *United States v. Rostenkowski, 59 F.3d 1291, 1302, 313 U.S. App. D.C. 303 (D.C. Cir. 1995)*. And unlike executive privilege, which may extend to "the outer perimeter of ... official duties," *Chastain v. Sundquist, 833 F.2d 311, 315, 266 U.S. App. D.C. 61 (D.C. Cir. 1987)*, the "Clause ... does **[*16]** not protect acts that are not legislative in nature, even if they are performed in a Member's official capacity," *United States v. Rose, 28 F.3d 181, 187, 307 U.S. App. D.C. 314 (D.C. Cir. 1994)* (cleaned up); *see also Fields v. Office of Eddie Bernice Johnson, 459 F.3d 1, 12-13, 373 U.S. App. D.C. 32 (D.C. Cir. 2006)* (en banc) (plurality opinion) (distinguishing executive and legislative privileges and explaining "[i]t is not enough that a Member's conduct is within the outer perimeter of the legislative process").

*HN10*[↑] Across a wide variety of factual circumstances, the Supreme Court and this circuit have faithfully applied the *Gravel* test and the principles animating it to determine whether an act is legislative and therefore privileged under the *Speech or Debate Clause*.

B.

*HN11*[↑] If a Member's act qualifies as legislative under *Gravel*, the privilege applies and the Clause confers three "absolute" protections. *See Eastland, 421 U.S. at*

---

[4] Unless otherwise noted, we cite to the *McSurely* majority opinion, not the short *per curiam* opinion that preceded it.

*509*. First, the privilege includes immunity from suit—a Member may not be sued or prosecuted for his legislative acts. *Id. at 502*. Second, the privilege includes an evidentiary privilege—legislative acts may not be introduced into evidence even when the government seeks to punish a Member for non-legislative acts. *Johnson, 383 U.S. at 176-77*. Third, the privilege encompasses a testimonial privilege not to "be questioned in any other Place." *U.S. Const. art. I, § 6, cl. 1*. This means that only Congress, not the Executive or Judiciary, **[*17]** may force a Member to testify about legislative acts. *Gravel, 408 U.S. at 616*. Legislative acts receive these protections regardless of the Member's subjective motives. *See Tenney v. Brandhove, 341 U.S. 367, 377, 71 S. Ct. 783, 95 L. Ed. 1019 (1951)* ("[I]t [i]s not consonant with our scheme of government for a court to inquire into the motives of legislators.").

*HN12*[↑] In addition, this court also recognizes that one aspect of the testimonial privilege is a limited protection against the compelled disclosure of documents. In *Brown & Williamson Tobacco Corp. v. Williams*, we explained the "testimonial immunity of the *Speech or Debate Clause*" applies beyond the direct questioning of Members because "[d]ocumentary evidence can certainly be as revealing as oral communications." *62 F.3d 408, 420, 314 U.S. App. D.C. 85 (D.C. Cir. 1995)*; *see also MINPECO, S.A. v. Conticommodity Servs., Inc., 844 F.2d 856, 269 U.S. App. D.C. 238 (D.C. Cir. 1988)*. Just as the other branches may not compel verbal testimony concerning legislative acts, they may not force Members to hand over documentary evidence of those acts. *See United States v. Hubbell, 530 U.S. 27, 40, 120 S. Ct. 2037, 147 L. Ed. 2d 24 (2000)* (While "compelled testimony ... is not to be found in the contents of the documents produced in response to [a] subpoena," compelled testimony is often "inherent in the act of producing those documents.") (cleaned up). Similarly, a private litigant "is no more entitled to compel [the] congressional ... production of documents ... than it is to sue congressmen." **[*18]** *Brown & Williamson, 62 F.3d at 421*.

In *Rayburn*, we applied these cases to an extraordinary circumstance, the Executive's search of a Representative's House office pursuant to a warrant. *497 F.3d at 663* (remarking that "[t]he historical record [is] utterly devoid of Executive searches of congressional offices"). Given the location of the search, we assumed it "must have resulted in the disclosure of legislative materials to agents of the Executive," and we noted that such a broad disclosure would violate the Clause's testimonial privilege. *Id. at 661*. But we also

reiterated that the Clause "protects against the compelled disclosure of privileged documents ... but not the disclosure of non-privileged materials." *Id. at 664*. We explained the Representative must be given some opportunity to assert the privilege in court before the Executive could view the documents. *Id. at 662-63*. It is this testimonial protection that Representative Perry invokes over the communications and materials on his cell phone.

IV.

Representative Perry claims the *Speech or Debate Clause* privilege protects many of the communications on his cell phone. With respect to communications with individuals outside the federal government and with Executive Branch officials, categories (1) and (3) of the district court's analysis, **[*19]** Representative Perry argues these are privileged because they constitute informal factfinding.[5] This category is somewhat capacious and not clearly delineated, but Representative Perry's definition seems to be: a Member's individual efforts to obtain information related to an upcoming vote in the absence of formal House or committee authorization. *See, e.g.*, Perry Br. 11 (framing the case as concerning "the fact-gathering communications that Rep. Perry conducted, as a Member of Congress, to inform his legislative actions"); *id.* at 17 ("[L]egislative acts include formal and informal fact-finding, and efforts to help inform consideration of an upcoming vote.") (cleaned up); *id.* at 32 ("Each of th[e] communications should be viewed ... in the context of Rep. Perry's efforts to seek information that was closely tied to his official responsibilities."). Representative Perry maintains that anything constituting informal factfinding is a legislative act protected by the Clause—that such matters are categorically privileged from disclosure. The district court resolved this categorical argument with a categorical holding that informal factfinding is never protected by the Clause. *See In re Search*, slip op. at 21. The government **[*20]** defends the district court's categorical holding.[6] *See Gov't Br. 41-47.*

---

[5] Representative Perry's claim for privilege with respect to category (2), his communications with other Members of Congress and congressional staffers, does not hinge on his informal factfinding arguments, and we consider these communications in Part V.

[6] The government also argues we need not review the district court's privilege determinations at all. First, the government asks us to limit *Rayburn* to searches of physical offices, as

The problem with this litigating posture, however, is that Representative Perry considers a variety of actions to constitute so-called informal factfinding, and under our precedents not all of these actions are legislative acts. Because not everything included in this novel category satisfies the test articulated in *Gravel*, the *category* does not settle the question of whether the communications are privileged. *HN15*[↑] Rather, a given act is legislative if it is an "integral part of" relevant House or committee "proceedings." *Gravel, 408 U.S. at 625*. It is possible that some communications within the informal factfinding category could be privileged, and therefore we disagree with the district court's holding that informal factfinding is *never* a legislative act. But we also reject Representative Perry's proposition that informal factfinding is *always* a legislative act.

*HN16*[↑] In assessing whether the privilege applies, the Supreme Court and this circuit undertake a fact-specific inquiry under *Gravel*. Because the district court is better positioned to apply the correct fact-specific inquiry in the first **[*21]** instance, we vacate and remand this part of the order.

A.

In holding that informal factfinding is categorically not

opposed to Members' cell phones. *HN13*[↑] *Rayburn*, however, explained that the privilege applies whenever the Executive Branch searches "a location where legislative materials [a]re inevitably to be found." *497 F.3d at 661*. A Member's cell phone is realistically such a location. *Cf. Riley v. California, 573 U.S. 373, 386, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014)* ("Cell phones ... place vast quantities of personal information literally in the hands of individuals.").

Second, the government contends *Rayburn* guarantees Representative Perry only the opportunity to assert the privilege in district court, with no right to appeal, because *Rayburn* is merely a procedural case holding that a district court must conduct one layer of review before disclosure to the Executive. The government's somewhat baffling view is that once this single layer of review is complete, right or wrong, there is nothing more for an appellate court to do. This argument mistakenly treats *Rayburn*'s nondisclosure protection as a prophylactic rule rather than a constitutional privilege. If a communication is privileged and within *Rayburn*'s scope, the Executive Branch violates the *Speech or Debate Clause* by viewing it. *HN14*[↑] And if the collateral order doctrine provides jurisdiction, as it does here, we must exercise that jurisdiction. *See Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 77, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013)* ("Federal courts ... have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.") (cleaned up).

privileged, the district court relies primarily on *Eastland* and *McSurely*. These cases, however, do not establish a categorical privilege rule for formal (i.e., congressionally authorized) factfinding, much less for informal factfinding. Rather, these cases simply apply *Gravel* and established legal principles to determine whether some actions taken pursuant to formally authorized investigations are legislative and therefore privileged.

For instance, in *Eastland*, the Supreme Court held the privilege attached to the issuance of a subpoena by a subcommittee acting pursuant to a Senate authorized national security investigation. *421 U.S. at 503-07*. The subpoena sought the bank records of a non-profit organization, and the organization sued the subcommittee's chairman, other senators, and a subcommittee attorney, seeking injunctive and declaratory relief. *Id. at 494-95*. The Court began by considering whether the subpoena was "within the legitimate legislative sphere" and whether the acts "took place 'in a session of the House by one of its members in relation to the business before it.'" *Id. at 503* (cleaned up) (quoting *Kilbourn, 103 U.S. at 204*). *HN17*[↑] The Court **[*22]** emphasized that an official congressional investigation is "essential to legislating" and covered by the privilege so long as the subcommittee stays within its "province." *Id. at 507* (cleaned up); *see also Trump v. Mazars USA, LLP, 140 S. Ct. 2019, 2031, 207 L. Ed. 2d 951 (2020)* (explaining Congress enjoys an investigative power that has defined limits and "is justified solely as an adjunct to the legislative process") (cleaned up). More specifically, the issued subpoena "concerned a subject on which legislation could be had," and the Members' decision to issue it was consequently "an integral part of the legislative process" within the scope of *Gravel*. *Eastland, 421 U.S. at 505-06* (cleaned up). In these circumstances, the issuance of the subpoena was a privileged legislative act.

The Court has been careful to maintain, however, that not everything done pursuant to formal authorization is privileged. For instance, in *McMillan*, the Court explained that "the fact of congressional authorization for the questioned act is not sufficient to insulate the act from judicial scrutiny." *412 U.S. at 316 n.10*; *see also Powell v. McCormack, 395 U.S. 486, 504, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969)* (similar). The Court recognized the "importance of informing the public about the business of Congress. However, the question remains whether the act of doing so, simply because authorized by Congress, must always be **[*23]** considered 'an integral part of the deliberative and

communicative processes by which Members participate in committee and House proceedings] with respect to legislative or other matters before the House." _McMillan, 412 U.S. at 314_ (quoting _Gravel, 408 U.S. at 625_); _see also Eastland, 421 U.S. at 505-07_ (following _McMillan_ and _Gravel_). The relevant inquiry always reverts to whether an act is legislative under _Gravel_.

In _McSurely_, our en banc court considered in detail whether the "transportation and use of ... seized" private documents "by the chairman of [a] Senate subcommittee and several members of the subcommittee staff" were covered by the privilege. _553 F.2d at 1280_ (_per curiam_ opinion). We explained that even if an investigation "fell within the broad authorization of [a] Senate resolution[,] [that] does not render everything done by" a subcommittee or one of its investigators "privileged activity which is essential to legislating." _Id. at 1295_ (majority opinion) (cleaned up). **HN18**[⬆] Rather, in order "[f]or an activity to be considered 'essential to legislating' it must be 'an integral part of the deliberative and communicative processes' dealing with matters within the jurisdiction of Congress." _Id._ (quoting _Gravel, 408 U.S. at 625_). And even authorized factfinding may not be privileged if it "go[es] beyond the reasonable **[*24]** requirements of the legislative function." _Id. at 1285 n.27, 1287_ (quoting _McMillan, 412 U.S. at 315_). In applying these principles, we found that some acts taken pursuant to the investigation were protected and others were not. For instance, subcommittee staff were protected when they inspected "234 photocopies" of seized documents "within the [s]ubcommittee." _Id. at 1296_. The Members were also protected when they "use[d] ... the copies as the basis for issuance of subpoenas ... and ... procure[d] ... contempt of Congress citations against [the] plaintiffs." _Id._ But one of the subcommittee's investigators was not protected when he seized documents "[c]oncededly [i]rrelevant to [l]egislative [i]nquiry."[7] _Id. at 1294-95_ (majority opinion). In _McSurely_, the granular, fact-intensive evaluation resists any categorical rule that the _Speech or Debate Clause_ privilege turns on formal authorization for an investigation.

Other decisions similarly confirm the Speech or Debate privilege does not turn solely on the formality or regularity of a Member's act. For example, _Coffin_ held

the privilege was applicable to legislative acts "_without inquiring_ whether the exercise was regular according to the rules of the house, or irregular and against their rules." _4 Mass. at 27_ (emphasis added). **[*25]** **HN19**[⬆] And in _Brown & Williamson_, we noted "[t]he privilege ... permits Congress to conduct investigations and obtain information without interference from the courts, _at least_ when these activities are performed in a procedurally regular fashion." _62 F.3d at 416_ (emphasis added).

In light of the reasoning in _Eastland, McSurely_, and other cases, we reject the district court's holding that all informal factfinding is excluded from protection of the privilege and that factfinding must have formal authorization before the privilege may attach. _See In re Search_, slip op. at 21. **HN20**[⬆] An investigation authorized by the House and within its jurisdiction is an exercise of congressional power and by definition part of a legislative proceeding, but formal authorization is neither necessary nor sufficient for the privilege to attach to the wide range of activities that could be denominated "investigative" or "factfinding."[8] Rather, the Supreme Court and this circuit consider the specific facts to determine whether a particular action is a legislative act within the test articulated by _Gravel_.[9]

B.

Representative Perry maintains all instances of informal factfinding fit within _Gravel_'s first category: acts that are "integral part[s] of the deliberative **[*26]** and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation."[10] _408 U.S. at 625_. To support his

---

[7] Five of ten participating judges dissented with respect to these documents, but they did so on _Fourth Amendment_ grounds. _See id. at 1327-33_ (Wilkey, J., dissenting).

---

[8] **HN21**[⬆] When a privilege argument rests on the assertion that a House of Congress validly exercised its investigative power, the scope of that investigative power is relevant to the inquiry and the Court considers whether the investigation concerns "a subject on which legislation may be had." _Eastland, 421 U.S. at 508_. But determining whether Congress acted within the scope of its investigative power is a distinct inquiry from whether the privilege attaches under _Gravel_.

[9] Even under this fact-specific evaluation, the district court was correct that it is "unnecessary and irrelevant" to "assess the sources of information Rep. Perry chose to use, the significance of that information to him in how he chose to act, or whether the information he obtained ... amounted to verifiable facts." _In re Search_, slip op. at 30.

[10] Representative Perry makes no argument that informal factfinding categorically fits within _Gravel_'s second category,

contention, Representative Perry relies on the importance of Congress's factfinding or informing function as an ancillary to its legislative powers. For example, Representative Perry points to the Court's emphasis that "the power to investigate is inherent in the power to make laws because 'a legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" *See Eastland, 421 U.S. at 504* (quoting *McGrain v. Daugherty, 273 U.S. 135, 175, 47 S. Ct. 319, 71 L. Ed. 580 (1927)*) (cleaned up); *see also McSurely, 553 F.2d at 1286* ("We have no doubt that information gathering, whether by issuance of subpoenas or field work by a Senator or his staff, is essential to informed deliberation over proposed legislation."). Representative Perry contends the importance of factfinding to the legislative process necessarily makes such acts legislative and therefore privileged.

Informal factfinding is an amorphous category, and Perry's briefing is unclear what precisely would be subsumed within this term. Some instances of informal [*27] factfinding might be privileged, but at least some of the acts Representative Perry considers to be informal factfinding have been held to be outside the coverage of the Clause. *See McSurely, 553 F.2d at 1285 n.27* (explaining the Supreme Court "has held significant aspects of 'the informing function of Congress' outside of the protection of the *Speech or Debate Clause*") (cleaned up). His categorical claim for the privilege therefore fails.

To begin with, Representative Perry would treat acquiring information or documents to further legislative deliberations as always privileged, but this claim is directly at odds with *Gravel*. Perry Br. 11, 17. That case concerned a senator who obtained a copy of the classified Pentagon Papers with the help of an aide. *Gravel, 408 U.S. at 608-10*. The Senator read the Papers into the record and subsequently handed them off to a private publisher. *Id. at 609-10*. The Court held the Senator's act of reading the Papers into the record was a legislative act, i.e., actual speech in the Senate, but the act of publishing them was not. *Id. at 615-16, 622, 628-29*. Importantly, the Court held a grand jury could ask the aide "questions relevant to tracing the

*source of ... documents* that came into the Senator's possession ... as long as no legislative act is implicated by the questions." [*28] *Id. at 628* (emphasis added). This necessarily entails that the acquisition of documents—a form of informal factfinding—was not a legislative act. *Gravel* pokes a substantial hole in Representative Perry's privilege category.

Representative Perry also suggests that informal factfinding includes all "efforts to help inform consideration of an upcoming vote." Perry Br. 17. But this claim is inconsistent with the Supreme Court's decision in *Hutchinson*. There, a Member collected information about the federal government's allegedly wasteful expenditures and circulated this information in a press release and a constituent newsletter. *443 U.S. at 114-17*. The press release called the spending "outrageous" and urged it was "time we put a stop" to the waste. *Id. at 116* (cleaned up). These communications fit within Representative Perry's understanding of informal factfinding because the Court recognized "a Member's published statements *exert some influence on other votes in the Congress* and therefore have a relationship to the legislative and deliberative process." *Id. at 131* (emphasis added). Nonetheless, the Court held the privilege inapplicable because "neither the newsletters nor the press release was *essential* to the deliberations of the [*29] Senate and neither was part of the deliberative process." *Id. at 130* (emphasis added) (cleaned up). **HN22**[↑] Not all communications that may influence a vote are privileged; rather, the proper test is whether such communications are "integral" or "essential" to deliberations or otherwise satisfy the requirements of *Gravel*.[11]

Finally, Representative Perry suggests his informal factfinding efforts are legislative acts because these communications related to his "official" duties and responsibilities as a Member of Congress "during a time of uncertainty about the validity of a Presidential election and under circumstances that neither the nation nor its leaders had seen before." Perry Br. 28. **HN23**[↑] The Speech or Debate privilege undoubtedly "assure[s] a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel, 408 U.S. at*

---

acts that are "integral part[s] of the deliberative and communicative processes by which Members participate in committee and House proceedings ... with respect to other matters ... within the jurisdiction of either House." *Gravel, 408 U.S. at 625*.

11 To the extent Representative Perry also suggests the privilege extends to *any and all* factual conversations a Member has with individuals outside Congress, Perry Br. 29-30, our caselaw offers no support for that assertion.

*616*. But under *Gravel*, the "Clause ... does not protect acts that are not legislative in nature, even if they are performed in a Member's official capacity." *Rose, 28 F.3d at 187* (cleaned up).

Privileged legislative acts are only a subset of the various activities a Member may undertake as part of his official duties and responsibilities. **[*30]** The fact that informal factfinding is consistent with a Member's official duty to legislate wisely does not necessarily mean that such acts are privileged. For instance, the Court has held that the following activities are properly within a Member's duties, yet not covered by the privilege: "legitimate activities [of a] political ... nature," *Brewster, 408 U.S. at 512*; sending political newsletters to constituents, *Hutchinson, 443 U.S. at 130*; and "cajol[ing] ... and exhort[ing]" the Executive Branch, *Gravel, 408 U.S. at 625*. Representative Perry's suggestion that all "official" acts are privileged directly contradicts the rule that the Clause does not "protect[] all conduct *relating* to the legislative process. ... *HN24*[ ] [T]he ... Clause has been limited to an act which was clearly a part of the legislative process—the *due* functioning of the process." *Brewster, 408 U.S. at 515-16*; *accord Brown & Williamson, 62 F.3d at 415*.

Informal factfinding encompasses a wide spectrum of acts that may or may not be related, much less *integral*, to House "deliberative and communicative processes." *Gravel, 408 U.S. at 625*. Cases applying the *Gravel* test to specific acts demonstrate that informal factfinding has no necessary connection to the privilege.[12] Not everything under the informal factfinding umbrella is protected. Representative Perry's attempt to shoehorn **[*31]** a novel and broad category into *Gravel* would pull the Supreme Court's doctrinal framework out of joint.

* * *

The Supreme Court and this circuit have never suggested that investigative activities are privileged only if undertaken pursuant to formal authorization, nor that any activity asserted to be investigative factfinding is privileged. These categorical rules are inconsistent with our longstanding precedents and their reasoning. The labels "formal" and "informal" factfinding gloss over the appropriate analysis under the *Speech or Debate Clause*. *HN25*[ ] It follows from these principles that

communications with individuals outside of Congress may qualify for the privilege. To determine whether a particular matter or action is privileged, we must apply the test in *Gravel* in a manner consistent with the principles undergirding the Clause. Because the district court applied the incorrect legal standard, we remand the privilege determinations over categories (1) and (3) for the district court to apply *Gravel* on a communication-by-communication basis.

V.

We now consider whether the privilege applies to communications between Representative Perry and other Members of Congress or congressional staff. The district court held **[*32]** some of these category (2) communications were privileged legislative acts and some not. Representative Perry maintains they are all privileged.

The district court correctly held that communications with Members and staff about legislation, votes, committee assignments, and caucus affairs were squarely "legislative acts" within the meaning of *Gravel*. *In re Search*, slip op. at 40-44. Records of these communications are privileged.

The district court also determined that some of Representative Perry's intra-congressional communications were non-legislative. *Id.* at 43-44. These included electronic newsletters, insofar as they merely discussed "upcoming events, political talking points, news articles of interest, and [non-legislative] events occurring in and around Congress." *Id.* We agree these are too far removed from legislative proceedings to warrant privilege under the Clause. *HN26*[ ] Not "everything a Member of Congress may regularly do is ... a legislative act within the protection of the *Speech or Debate Clause*." *McMillan, 412 U.S. at 313*. Although sent by Members of Congress to other Members, the newsletters did not concern legislative proceedings or matters integral to those proceedings, but rather focused on topics outside the "legislative sphere." *Id.* (cleaned up). The subjects **[*33]** of these communications are akin to political matters not covered by the privilege. *See Brewster, 408 U.S. at 512-13*. These newsletters are also similar to the newsletters and press release the Court held unprotected in *Hutchinson* because they were not "essential to the deliberations of the Senate [nor] part of the deliberative process." *443 U.S. at 130* (cleaned up). It follows that Representative Perry's discussions with his staff about press coverage and his media strategy are also not privileged legislative acts. These strategic discussions

---

[12] Judge Katsas suggests some narrower category of information gathering is protected by the Clause. While this possibility is not foreclosed, we need not resolve it in this case.

are at least as removed from the deliberative process as the unprivileged communications in _Hutchinson_. The government may view records of these communications.

We disagree, however, with the district court's determination that discussions with other Members about alleged fraud in the 2020 presidential election were non-legislative. The court described these conversations as "purely political rather than legislative" and opined that they were "[a]t best ... merely incidental to Rep. Perry's [upcoming certification] vote." _In re Search_, slip op. at 45-47. The district court concluded these conversations were "not integral to" legislative proceedings and were "'beyond the legitimate legislative needs of Congress.'" _Id._ at 46-47 (quoting **[*34]** _McSurely, 553 F.2d at 1285-86_).

The district court inadequately considered the context of these conversations, which involved Member deliberations about upcoming votes. Some of the communications took place shortly prior to Congress's scheduled January 2021 vote on whether to certify the electoral results from each state. Others took place while the House was considering a bill that would modify federal election procedures, among other things. _See_ H.R. 1, 117th Cong. _HN27_[⬆]] Discussions between Members about pending votes are "things generally done in a session of the House by one of its members in relation to the business before it," _Kilbourn, 103 U.S. at 204_, and such discussions are within the heartland of "the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation" or other matters within the House's jurisdiction.[13] _Gravel, 408 U.S. at 625_.

Relying on the fact that the communications concerned election fraud and electoral results, the district court labeled them "textbook political conversations not protected by the Clause." _In re Search_, slip op. at 46. While elections are political events, a Member's deliberation about whether to certify a presidential election **[*35]** or how to assess information relevant to legislation about federal election procedures are textbook legislative acts protected by _Gravel_.

_HN28_[⬆]] Federal courts must determine the outer boundaries of the _Speech or Debate Clause_ privilege. But when a Member engages in a legislative act, the court cannot carve out from the privilege certain topics of discussion by labeling them "merely incidental" or by deeming them illegitimate. _Id._ at 47; _cf. Tenney, 341 U.S. at 377_ ("The claim of an unworthy purpose does not destroy the privilege."). For courts to pick and choose the scope of the privilege based on a free-floating evaluation of the proper objects of congressional deliberation would threaten the _Speech or Debate Clause_'s essential protection for legislative independence.

Representative Perry's conversations with other Members concerned the passage of proposed legislation as well as the exercise of the constitutional duty to certify the electoral votes from the 2020 election. These communications were privileged, and we leave it to the district court to implement this holding on a communication-by-communication basis.

* * *

As to Representative Perry's communications with individuals outside the federal government, communications with members of the Executive Branch, and **[*36]** communications with other Members of Congress regarding alleged election fraud during the period before Congress's vote certifying the 2020 election and before its vote on H.R. 1, the district court failed to apply the fact-specific privilege inquiry under _Gravel_. We therefore vacate the judgment in part and remand for the district court to apply the correct standard, consistent with this opinion. With respect to the remaining privilege determinations about Representative Perry's communications with Members of Congress, we affirm.

_So ordered._

**Concur by:** KATSAS

## Concur

K_ATSAS_, _Circuit Judge_, concurring: Representative Scott Perry claims that the _Speech or Debate Clause of the Constitution_ protects the confidentiality of some 2,219 records stored on his cell phone, including 1,508 communications with individuals outside the House of Representatives. Perry says that the latter involve what he calls "informal factfinding" to inform his votes on

---

[13] The government does not dispute that the certification vote was a "matter[] which the Constitution places within the jurisdiction of [the] House," nor that the vote on H.R. 1 was "the consideration ... of proposed legislation." _Gravel, 408 U.S. at 625_.

whether to (1) certify the results of the 2020 presidential election and (2) support a bill to modify election procedures. The district court held that because the House had not formally authorized an investigation into either matter, the Clause protects none of the 1,508 communications. On appeal, the Executive **[*37]** Branch supports the court's holding that the Clause protects no unauthorized factfinding by individual Members of Congress, and Perry continues to argue that the Clause protects all the disputed records.

The *Speech or Debate Clause* provides that "for any Speech or Debate in either House," Members of Congress "shall not be questioned in any other Place." *U.S. Const. art. I, § 6, cl. 1*. The Clause protects only "legislative acts," which "must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration" of either proposed legislation or other House votes. *Gravel v. United States, 408 U.S. 606, 625, 92 S. Ct. 2614, 33 L. Ed. 2d 583 (1972)*. This category includes "things generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson, 103 U.S. 168, 204, 26 L. Ed. 377 (1881)*. Conversely, the Clause does not protect "political" acts, which are "casually or incidentally related to legislative affairs but not a part of the legislative process itself." *United States v. Brewster, 408 U.S. 501, 512, 528, 92 S. Ct. 2531, 33 L. Ed. 2d 507 (1972)*.

Several precedents elucidate this distinction. Protected legislative acts include voting, speaking on the floor, introducing bills or resolutions, writing committee reports, and speaking at committee meetings. *See Doe v. McMillan, 412 U.S. 306, 311, 93 S. Ct. 2018, 36 L. Ed. 2d 912 (1973)*; *Kilbourn, 103 U.S. at 204*. Also protected is the issuance of subpoenas, if formally **[*38]** authorized and relevant to a subject on which legislation could be had. *Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 504-06, 95 S. Ct. 1813, 44 L. Ed. 2d 324 (1975)*. On the other hand, unprotected political acts include press releases, speeches made outside the Congress, and helping constituents. *Brewster, 408 U.S. at 512*. Also unprotected are "attempts to influence the conduct of executive agencies," *Hutchinson v. Proxmire, 443 U.S. 111, 121 n.10, 99 S. Ct. 2675, 61 L. Ed. 2d 411 (1979)*; the taking of bribes, *Brewster, 408 U.S. at 525-26*; the unauthorized acquisition of classified documents, *Gravel, 408 U.S. at 628-29*; and the use of other "unlawful means" to pursue investigations, *McSurely v. McClellan, 553 F.2d 1277, 1288, 180 U.S. App. D.C. 101 (D.C. Cir. 1976)* (en banc).

The privilege claims asserted by Representative Perry are substantially overbroad. Many of the disputed records involve communications through which he sought to influence the conduct of officials outside the Congress—Executive Branch officials, state legislative officials, and campaign officials. Many other records involve press releases or media statements. The district court correctly held that the *Speech or Debate Clause* does not protect any of these records. And because Perry attempts to shoehorn all the disputed records into an assertedly protected category of informal factfinding, this Court rightly concludes that his alleged category includes many unprotected communications.

But some of the disputed records involve nothing more than Representative Perry gathering **[*39]** information to inform upcoming votes. In my view, the *Speech or Debate Clause* protects that activity. Should an individual Member of Congress bother to learn something about a bill before voting on it? The question answers itself. "Without information, Congress would be shooting in the dark, unable to legislate 'wisely or effectively.'" *Trump v. Mazars USA, LLP, 140 S. Ct. 2019, 2031, 207 L. Ed. 2d 951 (2020)* (quoting *McGrain v. Daugherty, 273 U.S. 135, 175, 47 S. Ct. 319, 71 L. Ed. 580 (1927)*). That is why each House has an implied power to subpoena witnesses or documents relevant to possible legislation. *McGrain, 273 U.S. at 177*. It is also why the *Speech or Debate Clause* protects exercises of that power. *Eastland, 421 U.S. at 504*. Of course, individual Members cannot unilaterally exercise the House's implied power to issue subpoenas (at least absent a delegation), just as they cannot unilaterally exercise Congress's express power to, say, regulate interstate commerce. But when individual Members solicit or receive information from colleagues or others willing to provide it voluntarily, they engage in activity integral to the "deliberative and communicative processes" of the Congress itself. *Gravel, 408 U.S. at 625*. Regardless of formal authorization, the *Speech or Debate Clause* thus protects "information gathering" as an "essential prerequisite[]" to the "enlightened debate over proposed legislation," *Gov't of V.I. v. Lee, 775 F.2d 514, 521 (3d Cir. 1985)*; *see Miller v. Transamerican Press, Inc., 709 F.2d 524, 530 (9th Cir. 1983)*, just as a common-law immunity protects the same activity **[*40]** by state and local legislators, *Almonte v. City of Long Beach, 478 F.3d 100, 107 (2d Cir. 2007)*; *Bruce v. Riddle, 631 F.2d 272, 279-80 (4th Cir. 1980)*; *see also Kent v. Ohio House of Representatives Democratic Caucus, 33 F.4th 359, 364 (6th Cir. 2022)* (equating the two immunities).

DAVID SCHOEN

The district court reasoned that *McSurely* forecloses Speech or *Debate Clause* protection for information gathering that has not been formally authorized by the House or Senate itself. *In re Search of Forensic Copy of Cell Phone of Representative Scott Perry*, No. 1:22-sc-02144, slip op. at 22 (D.D.C. Dec. 28, 2022) (*In re Search*). But one part of *McSurely* says the opposite: "The acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that congressmen are able to discharge their constitutional duties properly." *553 F.2d at 1287* (cleaned up). The district court invoked *McSurely*'s further statement that "congressional authorization" of an investigation, which the House or Senate typically provides to a committee or subcommittee, is a "requirement" to justify the issuance of subpoenas under *McGrain* and the ensuing *Speech or Debate Clause* protection under *Eastland*. *See id.* In turn, *Eastland* confirms that congressional authorization of an investigation is "sufficient" to justify the issuance of subpoenas under *McGrain*. *See 421 U.S. at 506*. These rules, governing the authority and protection for the issuance of congressional subpoenas, do not suggest that the *Speech or Debate Clause* affords no protection when a Member seeks only to gather information **[*41]** consensually and informally, from individuals willing to provide it voluntarily.

Moreover, such a restriction would stand the Clause on its head. Its most obvious applications—to speech, debate, and voting—cover activities that Members routinely perform on the floor of the House, individually and without authorization from any committee or subcommittee. A leading early decision held that a state analog of the Clause "is not so much the privilege of the house, as an organized body, as of each individual member composing it, who is entitled to this privilege, even against the declared will of the house." *Coffin v. Coffin, 4 Mass. 1, 27 (1808)*. The Supreme Court, describing *Coffin* as "perhaps, the most authoritative case in this country" on the "freedom of debate in legislative bodies," has treated *Coffin* as highly persuasive in construing the federal *Speech or Debate Clause*. *See Kilbourn, 103 U.S. at 203-04*. And the modern Court continues to describe the Clause as protecting "the independence of individual legislators," not the House or Senate as a whole or committees or subcommittees acting on behalf of either body. *Brewster, 408 U.S. at 507*.

Finally, a formal authorization requirement would make no sense. At oral argument, the Executive all but conceded that the *Speech or Debate Clause* protects individual Members who, **[*42]** while conducting the business of a congressional committee or subcommittee, informally solicit input from individuals outside the Congress. *See* Oral Arg. 46:00-48:30, 51:30-52:05. But the character of these solicitations is the same regardless of whether the relevant deliberations occur in a subcommittee, in a committee, or on the floor. If a Member of the Senate Judiciary Committee engages in protected activity by soliciting input from outside groups to inform his vote on whether to recommend confirming a Supreme Court nominee, then so too do other Members of the Senate in deciding how to vote when the nomination reaches the full Senate. Likewise, the district court recognized that a Representative, regardless of committee or subcommittee authorization, engages in protected activity by soliciting information from fellow Representatives about an upcoming vote. *In re Search, supra*, at 40-41. If that is so, then so too does a Representative who, in preparing for the same vote, solicits information from individuals outside the Congress.

The Court rightly concludes that the category of "informal factfinding" proposed by Representative Perry includes much unprotected material, but I do not read the Court's opinion to **[*43]** foreclose protection for the kind of informal, non-coercive information gathering that I have described. On that understanding, I join the Court's opinion in full.

---

**End of Document**



**User Name:** DAVID SCHOEN
**Date and Time:** Thursday, November 2, 2023 3:48:00PM EDT
**Job Number:** 209601593

## Document (1)

1. *Clyde v. Walker, 2023 U.S. App. LEXIS 28044*
   **Client/Matter:** -None-

 Neutral
As of: November 2, 2023 7:48 PM Z

# *Clyde v. Walker*

United States Court of Appeals for the District of Columbia Circuit

October 20, 2023, Filed

No. 22-5263

**Reporter**
2023 U.S. App. LEXIS 28044 *

ANDREW S. CLYDE, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE U.S. HOUSE OF REPRESENTATIVES; LOUIE GOHMERT, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE U.S. HOUSE OF REPRESENTATIVES; LLOYD SMUCKER, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE U.S. HOUSE OF REPRESENTATIVES, APPELLANTS, v. WILLIAM J. WALKER, IN HIS OFFICIAL CAPACITY AS SERGEANT AT ARMS OF THE U.S. HOUSE OF REPRESENTATIVES; CATHERINE SZPINDOR, IN HER OFFICIAL CAPACITY AS CHIEF ADMINISTRATIVE OFFICER OF THE U.S. HOUSE OF REPRESENTATIVES, APPELLEES.

**Notice:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History: [*1]** Appeal from the United States District Court for the District of Columbia. (No. 1:21-cv-01605).

*Clyde v. Walker, 619 F. Supp. 3d 193, 2022 U.S. Dist. LEXIS 136324, 2022 WL 3026992 (D.D.C., Aug. 1, 2022)*

## Core Terms

legislative act, fines, deducted, Proceedings, challenged act, district court, proxy voting, violations, screening, salaries, lack of subject matter jurisdiction, pursuant to the rule, immunity from suit, jurisdictional bar, regulate conduct, en banc, disorderly, questioned, paychecks, processes, immunity, matters, places, punish, floor, mask

## Case Summary

### Overview

HOLDINGS: [1]-Where two members of the U.S. House of Representatives were fined for failing to complete a security screening required by H.R. 73, 117th Cong. § 1(a)(1) (2021) (enacted), their suit against the Sergeant at Arms and the Chief Administrative Officer claiming the Resolution was unconstitutional was barred by the *Speech or Debate Clause* set forth in *U.S. Const. art. I, § 6, cl. 1*; therefore, the case was dismissed for lack of subject matter jurisdiction.

### Outcome
Judgment affirmed.

## LexisNexis® Headnotes

Constitutional Law > Congressional Duties & Powers > Presentment & Veto

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

Constitutional Law > Congressional Duties & Powers > Elections > Time, Place & Manner Restrictions

Constitutional Law > Congressional Duties & Powers > Elections > Regulations

### *HN1*[ ] Congressional Duties & Powers, Presentment & Veto

The *Speech or Debate Clause* provides: Senators and Representatives for any Speech or Debate in either House shall not be questioned in any other Place. *U.S. Const. art. I, § 6, cl. 1*. In the system of separated

powers, the Clause is one manifestation of the Constitution's practical security for ensuring the independence of the legislature. The Clause provides this security by preventing intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.

Civil Rights Law > Protection of Rights > Immunity From Liability > Legislative Functions

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN2*[🔻] **Immunity From Liability, Legislative Functions**

The *Speech or Debate Clause* operates as a jurisdictional bar when the actions upon which a plaintiff sought to predicate liability were legislative acts. The Clause's immunity from suit is jurisdictional and prohibits the judiciary from questioning speech, debate, or legislative acts that fall within the Clause's coverage. *U.S. Const. art. I, § 6, cl. 1*.

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN3*[🔻] **Congressional Duties & Powers, Speech & Debate Immunity**

Beyond actual speech or debate, an act is considered legislative only if it is an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to either: (1) the consideration and passage or rejection of proposed legislation or (2) other matters which the U.S. Constitution places within the jurisdiction of either House.

Civil Rights Law > Protection of Rights > Immunity From Liability > Legislative Functions

Constitutional Law > Congressional Duties & Powers > Presentment & Veto

Constitutional Law > Congressional Duties & Powers > Elections > Time, Place & Manner Restrictions

*HN4*[🔻] **Immunity From Liability, Legislative Functions**

The U.S. Constitution vests each House with the authority to determine the Rules of its Proceedings and punish its Members for disorderly Behaviour. *U.S. Const. art. I, § 5, cl. 2*. The adoption and execution of a House Resolution are legislative acts implicating the House's power pursuant to the Rules and Discipline Clauses.

Civil Rights Law > Protection of Rights > Immunity From Liability > Legislative Functions

Constitutional Law > Congressional Duties & Powers > Speech & Debate Immunity

*HN5*[🔻] **Immunity From Liability, Legislative Functions**

To safeguard congressional independence, the *Speech or Debate Clause's* immunity from suit is absolute, shielding protected legislative acts regardless of their alleged unconstitutionality.

**Counsel:** For Andrew S. Clyde, Individually, and in his Official Capacity as a member of the U.S. House of Representatives, Louie Gohmert, Individually, and in his Official Capacity as a member of the U.S. House of Representatives, Lloyd Smucker, Individually, and in his Official Capacity as a member of the U.S. House of Representatives, Plaintiffs - Appellants: Kenneth T. Cuccinelli II, Law Office of Kenneth T. Cuccinelli, II, Spottsylvania, VA; Earl N. Mayfield III, Juris Day, PLLC, Fairfax, VA.

For William J. Walker, In his Official Capacity as Sergeant at Arms of the U.S. House of Representatives, Catherine Szpindor, In her Official Capacity as Chief Administrative Officer of the U.S. House of Representatives, Defendants - Appellees: Matthew B. Berry, Sarah Edith Clouse, Brooks M. Hanner, Assistant General Counsel, Todd B. Tatelman, U.S. House of Representatives, Washington, DC.

**Judges:** Before: SRINIVASAN, Chief Judge, and RAO and CHILDS, Circuit Judges.

# Opinion

**JUDGMENT**

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of [*2] the parties. The court has afforded the issues full consideration and determined they do not warrant a published opinion. See *D.C. CIR. R. 36(d)*. For the reasons stated below, it is hereby:

**ORDERED** and **ADJUDGED** that the district court's order be affirmed.

* * *

In February 2021, the United States House of Representatives adopted House Resolution 73, which required Members to complete security screening before entering the House Chamber and authorized fines for any Member who failed to complete such screening. H. Res. 73, 117th Cong. § 1(a)(1), 167 Cong. Rec. H274-75 (daily ed. Feb. 2, 2021).[1] Representatives Andrew Clyde, Louie Gohmert, and Lloyd Smucker refused to complete the mandated security screening before entering the House Chamber.[2] Pursuant to the Resolution, the Sergeant at Arms levied fines against each Representative, which were deducted from their net salaries by the Chief Administrative Officer.

The Representatives sued the Sergeant at Arms and the Chief Administrative Officer. They maintained the Resolution violated the *Twenty-Seventh Amendment* and the Discipline Clause and challenged its enforcement. The district court held the suit barred by the *Speech or Debate Clause* and dismissed for lack of subject matter jurisdiction. *Clyde v. Walker, 619 F. Supp. 3d 193, 199-201 (D.D.C. 2022)*. The Representatives timely appealed.[3]

I.

---

[1] H.R. 73 expired at the end of the 117th Congress.

[2] These facts are taken from the complaint, which we accept as true for purposes of reviewing the district court's order granting the Sergeant at Arms and Chief Administrative Officer's motion to dismiss. See *Bernhardt v. Islamic Republic of Iran, 47 F.4th 856, 861 (D.C. Cir. 2022)*.

[3] Although Louie Gohmert is no longer a representative, he faces an ongoing pocketbook injury—a $5,000 fine—so his claims are not moot. See, e.g., *Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969)*.

The Representatives [*3] first contend the district court erred when it dismissed their complaint for lack of subject matter jurisdiction. They maintain that Speech or *Debate Clause* immunity operates as an affirmative defense rather than as a jurisdictional bar.[4] We disagree.

*HN1*] The *Speech or Debate Clause* provides: "Senators and Representatives ... for any Speech or Debate in either House ... shall not be questioned in any other Place." *U.S. Const. art. I, § 6, cl. 1*. In our system of separated powers, the Clause is "one manifestation of the [Constitution's] 'practical security' for ensuring the independence of the legislature." *United States v. Johnson, 383 U.S. 169, 179, 86 S. Ct. 749, 15 L. Ed. 2d 681 (1966)* (quoting THE FEDERALIST NO. 48, at 332 (James Madison) (Jacob E. Cooke ed., 1961)). The Clause provides this security by "prevent[ing] intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." *Gravel v. United States, 408 U.S. 606, 617, 92 S. Ct. 2614, 33 L. Ed. 2d 583 (1972)*.

*HN2*] "[T]he *Speech or Debate Clause* operates as a jurisdictional bar when 'the actions upon which a plaintiff sought to predicate liability were legislative acts.'" *Fields v. Off. of Eddie Bernice Johnson, 459 F.3d 1, 13, 373 U.S. App. D.C. 32 (D.C. Cir. 2006)* (en banc) (quoting *Doe v. McMillan, 412 U.S. 306, 318, 93 S. Ct. 2018, 36 L. Ed. 2d 912 (1973)*); see also *In re Sealed Case, 80 F.4th 355, 362 (D.C. Cir. 2023)*; *Massie v. Pelosi, 72 F.4th 319, 321 (D.C. Cir. 2023)*; *Rangel v. Boehner, 785 F.3d 19, 22, 415 U.S. App. D.C. 60 (D.C. Cir. 2015)*; *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives, 720 F.3d 939, 941, 405 U.S. App. D.C. 402 (D.C. Cir. 2013)*. The Clause's immunity from suit is jurisdictional and prohibits the judiciary from "question[ing]" speech, debate, or legislative acts that fall within the Clause's coverage. *U.S. CONST. art. I, § 6, cl. 1*.

II.

We next consider whether the challenged acts fall within the Clause's ambit. The Representatives maintain the

---

[4] This case concerns only the *Speech or Debate Clause*'s immunity from suit and does not implicate the other protections recognized as flowing from the Clause, such as its evidentiary and testimonial privileges. Those privileges shield Members against certain forms of questioning but do not deprive the court of jurisdiction. See *Massie v. Pelosi, 72 F.4th 319, 321 n.1 (D.C. Cir. 2023)*.

2023 U.S. App. LEXIS 28044, *3

defendants **[*4]** may be sued because issuing a fine and deducting it from paychecks were merely "administrative activities that are not speech, debate, or core legislative [acts]."

*HN3*[⬆] ] "Beyond actual speech or debate, an act is considered 'legislative' only if it is 'an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to' either: (1) 'the consideration and passage or rejection of proposed legislation' or (2) 'other matters which the Constitution places within the jurisdiction of either House.'" *Massie, 72 F.4th at 322* (quoting *Gravel, 408 U.S. at 625*).

The challenged acts are "legislative" within the meaning of *Gravel*'s second prong because they involve matters the Constitution places within the jurisdiction of the House. *HN4*[⬆] ] The Constitution vests "[e]ach House" with the authority to "determine the Rules of its Proceedings" and "punish its Members for disorderly Behaviour." *U.S. Const. art. I, § 5, cl. 2*. We have recently held that the adoption and execution of a House Resolution are legislative acts implicating the House's power pursuant to the Rules and Discipline Clauses. In *McCarthy v. Pelosi*, Representatives challenged a House Resolution permitting voting by proxy. *5 F.4th 34, 38, 453 U.S. App. D.C. 305 (D.C. Cir. 2021)*. We held that "the House adopted **[*5]** its rules for proxy voting under its power to 'determine the Rules of its Proceedings.'" *Id. at 40* (quoting *U.S. Const. art. I, § 5, cl. 2*). Although the challenged acts "involve[d] *implementation* of proxy voting pursuant to the Resolution," they were nonetheless "integral" to the "processes by which Members participate in ... House proceedings." *Id. at 39* (emphasis added) (quoting *Gravel, 408 U.S. at 625*). And in *Massie*, Representatives challenged a House Resolution that required wearing masks in the House Chamber, and, as in this case, violations resulted in fines deducted from Members' salaries. *72 F.4th at 321*. We held that the Resolution was a legislative act because, "like the proxy voting rule, [the mask rule] regulates the conduct of Members on the House floor." *Id. at 323*. And we emphasized that fines for violations of the Resolution are "an aspect of Congress' power to 'punish its Members for disorderly Behaviour' ... that may not be questioned in this court." *Id.* (quoting *U.S. Const. art. I, § 5, cl. 2*).

The suit here is indistinguishable from *Massie* and *McCarthy*. The House enacted Resolution 73 pursuant to the Rules Clause, and the Resolution "regulates the conduct of Members on the House floor." *Massie, 72 F.4th at 321*. When the Representatives failed to comply with the security procedures required by the Resolution, **[*6]** the Sergeant at Arms issued a fine and the Chief Administrative Officer deducted the fine from their paychecks. "The [Sergeant at Arms] engaged in a legislative act when he fined the Representatives for violating the Resolution, and the Chief Administrative Officer engaged in a legislative act when she deducted those fines from the Representatives' salaries." *Id. at 323*. Both acts are protected by the *Speech or Debate Clause*.

The Representatives resist this conclusion and maintain that House Rules are reviewable whenever "a plausible constitutional violation is alleged." We rejected that argument in *Massie*, and we do so again today. *Id. at 323-24*. *HN5*[⬆] ] To safeguard congressional independence, the Clause's "immunity from suit is absolute,'" shielding protected legislative acts regardless of their alleged unconstitutionality. *Id.* (quoting *Rangel, 785 F.3d at 24*); *see also **In re Sealed Case, 80 F.4th at 362**; *Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 509-10, 95 S. Ct. 1813, 44 L. Ed. 2d 324 (1975)*.

* * *

When executing House Resolution 73, the defendants were engaged in legislative acts. They are therefore entitled to Speech or *Debate Clause* immunity, and we lack jurisdiction to consider the merits of the Representatives' claims.

For the foregoing reasons, we affirm. Pursuant to *D.C. Circuit Rule 36(d)*, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days **[*7]** after resolution of any timely petition for rehearing or petition for rehearing *en banc*. See *FED. R. APP. P. 41(b)*; *D.C. Cir. R. 41(a)(1)*.

**Per Curiam**

---

End of Document

DAVID SCHOEN