_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**UNITED STATES OF AMERICA,**

*Appellee,*

**v.**

**STEPHEN K. BANNON,**

*Appellant.*

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00670-1)

**APPELLANT'S EMERGENCY MOTION FOR
RELEASE PENDING APPEAL**

R. Trent McCotter
 *Counsel of Record*
Jonathan Berry
Michael Buschbacher
BOYDEN GRAY PLLC
801 17th St NW, Ste 350
Washington, DC 20006
202-706-5488
tmccotter@boydengray.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................iii

INTRODUCTION .......................................................................... 1

ARGUMENT ................................................................................ 7

I.   There Is a Substantial Question Regarding the Meaning of "Willfully" Under Section 192 ...................................... 7

     A.   There Is Good Reason to Believe the Supreme Court Would Disagree with *Licavoli* ............................. 9

     B.   There Is Good Reason to Believe the Supreme Court Would Disagree with This Court's "Practical" Concerns ................................................................ 14

     C.   The Supreme Court's Interest in This Statute, the Importance of the Question Presented, and the Court's Prior Practice All Confirm There Is a Substantial Question ......................................... 17

II.   There Is Also a Substantial Question Regarding the Test Under Section 3143 ................................................... 23

III.   Other Considerations Strongly Favor Mr. Bannon ................... 24

CONCLUSION ........................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. United States,*
  516 U.S. 137 (1995) ................................................................ 12

*Barenblatt v. United States,*
  360 U.S. 109 (1959) ................................................................ 18

*Bart v. United States,*
  349 U.S. 219 (1955) ................................................................ 18

*Braden v. United States,*
  365 U.S. 431 (1961) ................................................................ 18

*Comm. on the Judiciary v. Daly,*
  No. 1:24-cv-815 (D.D.C.) ........................................................ 25

*Deutch v. United States,*
  367 U.S. 456 (1961) ................................................................ 18

*Emspak v. United States,*
  349 U.S. 190 (1955) ................................................................ 18

*Flaxer v. United States,*
  358 U.S. 147 (1958) ................................................................ 18

*Gojack v. United States,*
  384 U.S. 702 (1966) ................................................................ 18

*Helix Energy Sols. Grp., Inc. v. Hewitt,*
  598 U.S. 39 (2023) .................................................................. 15

*Henson v. Santander Consumer USA Inc.,*
  582 U.S. 79 (2017) .................................................................. 12

*Herzog v. United States,*
  75 S. Ct. 349 (1955) ............................................................... 10

iii

*Hutcheson v. United States*,
369 U.S. 599 (1962) ................................................................. 18

*Licavoli v. United States*,
294 F.2d 207 (D.C. Cir. 1961) ........................... 3–5, 10–14, 20

*McDonnell v. United States*,
576 U.S. 1091 (2015) .................................................. 6, 22, 23

*McDonnell v. United States*,
579 U.S. 550 (2016) ................................................................. 22

*McPhaul v. United States*,
364 U.S. 372 (1960) ..................................................13, 14, 15, 18

*Navarro v. United States*,
144 S. Ct. 771 (2024) .............................................................. 20

*Navarro v. United States*,
No. 23A843 (U.S. 2024) ......................................................... 20

*Nielsen v. Preap*,
586 U.S. 392 (2019) ................................................................. 12

*Quinn v. United States*,
349 U.S. 155 (1955) ................................................................. 18

*Russell v. United States*,
369 U.S. 749 (1962) ................................................................. 18

*Sacher v. United States*,
356 U.S. 576 (1958) ................................................................. 18

*Sinclair v. United States*,
279 U.S. 263 (1929) ......................................... 11, 12, 13, 18

*Trump v. Mazars USA, LLP*,
591 U.S. 848 (2020) ................................................................. 10

*United States v. Adams*,
No. 1:21-cr-354, 2024 WL 111802 (D.D.C. Jan. 10, 2024) .............. 17

*United States v. Bryan,*
    339 U.S. 323 (1950) ........................................................ 18

*United States v. Carpenter,*
    No. 23-3235, 2024 WL 1340206 (D.C. Cir. Mar. 28, 2024) ................ 17

*United States v. Fischer,*
    64 F.4th 329 (D.C. Cir. 2023) ............................................ 21

*United States v. Fleischman,*
    339 U.S. 349 (1950) ........................................................ 18

*United States v. Garcia,*
    340 F.3d 1013 (9th Cir. 2003) ............................................ 24

*United States v. McDonnell,*
    792 F.3d 478 (4th Cir. 2015) ............................................. 22

*United States v. Murdock,*
    290 U.S. 389 (1933) ................................................... 4, 13

*United States v. Perholtz,*
    836 F.2d 554 (D.C. Cir. 1987) ................................. 2, 14, 17, 24

*United States v. Pollard,*
    778 F.2d 1177 (6th Cir. 1985) ............................................. 7

*United States v. Randell,*
    761 F.2d 122 (2d Cir. 1985) ............................................. 10

*United States v. Rumely,*
    345 U.S. 41 (1953) ......................................................... 18

*Watkins v. United States,*
    354 U.S. 178 (1957) ........................................................ 18

*Wilkinson v. United States,*
    365 U.S. 399 (1961) ........................................................ 18

*Wooden v. United States,*
    595 U.S. 360 (2022) ........................................................ 11

*Yellin v. United States*,
374 U.S. 109 (1963) .............................................................. 18

**Statutes**

2 U.S.C. § 192 ...................................................3–5, 7, 9–16, 18, 20, 21, 23

18 U.S.C. § 1512 ...................................................................... 21

18 U.S.C. § 3143 ....................................................1, 2, 5, 6, 17, 23, 24

**Other Authorities**

Fed. R. App. P. 9(b) ..................................................................... 1

Todd Garvey & Michael A. Foster, Cong. Rsch. Serv.,
LSB10660, *The Bannon Indictment and Prosecution* (Nov.
19, 2021),
https://crsreports.congress.gov/product/pdf/LSB/LSB10660 ................ 1

Josh Gerstein & Kyle Cheney, *'Are You Kidding Me?': Biden-
Appointed Judge Torches DOJ for Blowing off Hunter
Biden-Related Subpoenas from House GOP*, Politico (Apr.
5, 2024), https://www.politico.com/news/2024/04/05/biden-
appointed-judge-torches-doj-00150884 ......................................... 16, 25

Annie Grayer et al., *Key House Committees Vote to Advance
Contempt Proceedings Against Garland over Biden Audio
Files*, CNN (May 16, 2024),
https://www.cnn.com/2024/05/16/politics/house-panels-
contempt-garland-biden-audio/index.html ...................................... 19

Philip Shabecoff, *House Charges Head of E.P.A. with
Contempt*, N.Y. Times, Dec. 17, 1982 ............................................ 19

Final Vote Results for Roll Call 60, Feb. 14, 2008,
https://clerk.house.gov/evs/2008/roll060.xml (Harriet
Miers) (H.R. Res. 982) ................................................................. 19

Final Vote Results for Roll Call 441, June 28, 2012,
  https://clerk.house.gov/evs/2012/roll441.xml (Eric Holder)
  (H.R. Res. 711) ........................................................................... 19

Final Vote Results for Roll Call 489, July 17, 2019,
  https://clerk.house.gov/evs/2019/roll489.xml (William
  Barr) (H.R. Res. 497) .............................................................. 19

## INTRODUCTION

Pursuant to 18 U.S.C. § 3143(b) and Fed. R. App. P. 9(b), Appellant Stephen K. Bannon seeks release pending further appeal of his convictions in this case. Given his surrender date of July 1, 2024, he respectfully requests a ruling by **June 18, 2024**, to allow sufficient time to seek further relief from the Supreme Court if necessary.[1]

This is a landmark case. The prosecution pursued a novel and aggressive theory of liability, and the case garnered international attention. If the panel decision stands, there will be far-reaching consequences, including separation-of-powers concerns. Before the prosecution of Mr. Bannon, it had been 50 years since the government convinced a jury to convict someone for not adequately responding to a congressional subpoena—and there has certainly been no shortage of disputes over congressional subpoenas during that time.[2]

---

[1] Pursuant to Fed. R. App. P. 9(b), Mr. Bannon is filing this motion directly in this proceeding. Because this Court has already issued an opinion on the underlying merits, Mr. Bannon elides a lengthy recitation of the background and procedural history.

[2] Todd Garvey & Michael A. Foster, Cong. Rsch. Serv., LSB10660, *The Bannon Indictment and Prosecution* 1–2, (Nov. 19, 2021), https://crsreports.congress.gov/product/pdf/LSB/LSB10660.

Mr. Bannon intends to vigorously pursue his remaining appeals in this case and has retained experienced Supreme Court counsel. In the meantime, he asks this Court to allow him to remain on release. He satisfies all requirements for this relief under 18 U.S.C. § 3143. There is no dispute that Mr. Bannon "is not likely to flee or pose a danger to the safety of any other person or the community if released"—indeed, he has been out on release for years now without incident, and his "crime" was non-violent. *Id.* § 3143(b)(1)(A). Nor is there any claim that his continued pursuit of appeal is "for the purpose of delay." *Id.* § 3143(b)(1)(B).

Accordingly, Mr. Bannon "shall" be released if his case "raises a substantial question of law or fact," that, if successful, would result in reversal, a shorter sentence, or a new trial. *Id.* Critically, this is not the same standard for obtaining a stay. Mr. Bannon is *not* required to show he is likely to succeed on that issue or that there has been reversible error. *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). Rather, it must only be "a 'close' question or one that very well could be decided the other way." *Id.*

This case raises at least two substantial questions that satisfy this standard. The first involves the definition of the *mens rea* element in 2

U.S.C. § 192 ("willfully"). Mr. Bannon faced what the Court has described as a novel scenario: Congress was pursuing documents and testimony from a former executive branch official, yet counsel for the former President himself required Mr. Bannon to protect executive privilege in responding to the subpoena. *See* CADC.Slip.Op.13 (concluding that OLC had never issued an opinion "address[ing] a situation resembling Bannon's"). Mr. Bannon followed the advice of his counsel and requested that the Committee resolve the privilege issues with the holder of that privilege, or have the matter resolved in a civil suit.

Yet the district court reluctantly concluded that *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961), barred Mr. Bannon from presenting any evidence or argument to the jury regarding his actual state of mind. He could not inform the jury about what actually happened—i.e., that he relied in good faith on his lawyer's advice and believed his actions were in compliance with the law, CADC.Slip.Op.7; A4461–62—even though this allowed the government to argue with impunity to the jury that Mr. Bannon had "ignore[d]" the subpoena and "thumb[ed] his nose" at the Select Committee, A3913–16.

This Court affirmed that decision, but did so based on its belief that *Licavoli* bound the panel to hold that "willfully" in § 192 means only "intentionally" and that advice of counsel is no defense.

That issue presents a "substantial" question because *Licavoli*'s interpretation of "willfully" is in significant tension with recent Supreme Court precedent and canons of construction. *See* Parts I.A–B, *infra*. As the panel acknowledged, the Supreme Court has now held that the "'general' rule" is that "willfully" means "'knowledge that his conduct was unlawful,'" which strongly favors Mr. Bannon. CADC.Slip.Op.9. But the panel felt obliged to disregard the Supreme Court's "'general' rule" because *Licavoli* remained binding in this Circuit. CADC.Slip.Op.10. The Supreme Court itself will have no such obstacle, however.

Further, *Licavoli* relied on the fact that the Supreme Court had rejected an advice-of-counsel argument in the context of a *different* provision of § 192 that does *not* contain a "willfully" modifier. But under the Supreme Court's current approach to statutory construction, Congress's use of two different *mens rea* thresholds in the very same provision is strong evidence that the two clauses impose *different* tests. Otherwise, "willfully" would be superfluous. The Supreme Court has

even recognized that "[t]wo distinct offenses are described in the disjunctive [in § 192], and in only one of them is willfulness an element." *United States v. Murdock*, 290 U.S. 389, 397 (1933).

In sum, the Supreme Court's "'general' rule" regarding the meaning of "willfully," the Court's modern approach to the canons of construction, and the Court's cases addressing "willfully" in § 192 all point in favor of Mr. Bannon and against *Licavoli*. That confirms the *mens rea* issue is at least "substantial"—i.e., one on which reasonable minds could differ.

Although § 3143 does not require Mr. Bannon to make a showing that the Supreme Court might actually grant review on this issue, there are good reasons to believe the Court would be interested, which strengthens the argument that there is a substantial question. *See* Part I.C, *infra*. The Supreme Court has long taken a particular interest in § 192, granting no less than *nineteen cases* on its interpretation over the years, likely out of concern about its aggressive use as a political bludgeon. Further, the issue is important because under this Court's caselaw, future disagreements about subpoena compliance will be met not with negotiation—but with indictments, especially when the White House changes political parties.

Moreover, the Supreme Court has previously granted release pending appeal in similar contexts even when the lower court decision was unanimous and no judge had voted in favor of en banc rehearing. *See, e.g.*, *McDonnell v. United States*, 576 U.S. 1091 (2015).

This case raises a substantial question for a second reason: there is an acknowledged circuit split regarding the appropriate test under § 3143(b) itself. Any issue on which the circuits disagree is necessarily a substantial question. *See* Part II, *infra*.

If Mr. Bannon is denied release, he will be forced to serve his prison sentence before the Supreme Court has a chance to consider a petition for a writ of certiorari, given the Court's upcoming Summer recess. *See* Part III, *infra*. There is also no denying the political realities here. Mr. Bannon is a high-profile political commentator and campaign strategist. He was prosecuted by an administration whose policies are a frequent target of Mr. Bannon's public statements. The government seeks to imprison Mr. Bannon for the four-month period leading up to the November election, when millions of Americans look to him for information on important campaign issues. This would also effectively

bar Mr. Bannon from serving as a meaningful advisor in the ongoing national campaign.

The Court should grant release pending the conclusion of Mr. Bannon's further appeals, including to the Supreme Court.[3]

## ARGUMENT

## I. There Is a Substantial Question Regarding the Meaning of "Willfully" Under Section 192.

Prosecutions for declining to adequately respond to a congressional subpoena are exceedingly rare, despite the prevalence of high-profile disputes over such subpoenas. Before the Biden Administration, the last time the government convinced a jury to convict someone under 2 U.S.C. § 192 was fifty years ago.[4] Given this, one would assume that the government would pursue such charges only in the most extraordinary circumstances—and that is certainly how the prosecution tried to portray Mr. Bannon's actions to the jury, which was told that he had "ignore[d]" the subpoena, "thumb[ed] his nose" at the Select Committee, and that he had "no justification" for his actions. A3913–16. The jury heard that the

---

[3] This Court reviews the "substantial question" issue *de novo*. *United States v. Pollard*, 778 F.2d 1177, 1181–82 (6th Cir. 1985).

[4] Garvey & Foster, Cong. Rsch. Serv., *supra* note 2, at 1–2.

only explanation for his refusal was that he thought he was "above the law" and "didn't care" and "had contempt" for the Committee. A4518.

In response to those direct accusations about his state of mind, Mr. Bannon was barred from presenting evidence or arguing that there was no "willful" violation because his lawyer had been in repeated contact with the Committee regarding the subpoena and had informed the Committee that Mr. Bannon would be unable to respond until issues regarding executive privilege were resolved, then later informed the Committee that Justin Clark—counsel for former President Trump—indicated that President Trump had invoked executive privilege, which Mr. Bannon's lawyer believed, after good faith research, would prevent Mr. Bannon from testifying or producing documents. CADC.Slip.Op.3–5. Former President Trump even later confirmed in writing that he had invoked executive privilege. CADC.Slip.Op.10 n.2.

When facing such a fraught dispute, Mr. Bannon reasonably relied on his attorney's advice. Yet Mr. Bannon was prevented even from *presenting this evidence to the jury* for its consideration—despite the prosecution's repeated attacks on his *mens rea*—because the District Court reluctantly concluded that D.C. Circuit precedent made reliance

on advice-of-counsel entirely irrelevant to whether a defendant acted "willfully" under § 192.

Although this Court previously rejected Mr. Bannon's arguments on that point, the panel's opinion nonetheless demonstrates why the issue presents a "substantial" question on which the Supreme Court fairly may disagree with this Court, as explained next. Accordingly, this Court should grant release pending Mr. Bannon's further appeals.

## A. There Is Good Reason to Believe the Supreme Court Would Disagree with *Licavoli*.

This was no routine case of an individual disregarding a subpoena. Charges under § 192 are virtually unheard of in modern times, and the panel itself claimed there was no precedent to guide how Mr. Bannon should have handled a congressional subpoena directed to a former executive official when the former President invoked executive privilege and the official's own lawyer advised him not to respond. *See* CADC.Slip.Op.13 (concluding that OLC had never issued an opinion "address[ing] a situation resembling Bannon's"). "We would have to be blind not to see what all others can see and understand: that the subpoena[] do[es] not represent a run-of-the-mill" dispute but "rather a clash between rival branches of government over records of intense

political interest for all involved." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 867 (2020) (cleaned up).

The undisputed "novel[ty]" of such a situation—and the use of § 192 to address it—is alone a sufficient basis for finding this issue to be "substantial." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985); *see Herzog v. United States*, 75 S. Ct. 349, 351 (1955) ("A question may nevertheless be 'substantial' … if it is novel.").

The District Court and this Court relied on *Licavoli* to reject Mr. Bannon's *mens rea* arguments about willfulness, concluding that *Licavoli* held that "advice of counsel" is no defense for "willfully" failing to respond to a congressional subpoena under § 192. CADC.Slip.Op.7–8. The panel held that it was bound by *Licavoli* because its holding had not been "eviscerated" by any subsequent Supreme Court or en banc D.C. Circuit decision. CADC.Slip.Op.7.

But there are several reasons why there is at least a fair chance the Supreme Court would reject *Licavoli*. *First*, as the panel acknowledged, the Supreme Court has since emphasized the "'general' rule" that "willfully" means a defendant must act with "'knowledge that his conduct was unlawful,'" an interpretation that strongly favors Mr. Bannon.

CADC.Slip.Op.9 (quoting *Sillasse Bryan v. United States*, 524 U.S. 184, 191–92 (1998)); *see also Wooden v. United States*, 595 U.S. 360, 378 (2022) (Kavanaugh, J., concurring) ("[W]ith respect to federal crimes requiring 'willfulness,' the Court generally requires the Government to prove that the defendant was aware that his conduct was unlawful.").

But the panel felt obligated to disregard the Supreme Court's "'general' rule" because of the sixty-year-old decision in *Licavoli*. CADC.Slip.Op.10. The Supreme Court itself is not so bound, however, and there is at least a fair chance that Court would stick to its general rule—and adopt Mr. Bannon's interpretation of § 192—which *necessarily* makes the issue a "substantial" one.

*Second*, *Licavoli*'s textual analysis is inconsistent with the modern Supreme Court's use of the canons of construction. *Licavoli* rested on the fact that the Supreme Court had held in the 1929 *Sinclair* case that "act[ing] in good faith on the advice of competent counsel" is "no defense" against a *different* provision in § 192 regarding witnesses who "having appeared, refuse[] to answer any question pertinent to the question under inquiry." CADC.Slip.Op.8 (citing *Sinclair v. United States*, 279 U.S. 263, 299 (1929)).

But critically, as the panel acknowledged here, the provision of § 192 addressed in *Sinclair* "does not use the term 'willfully.'" *Id.* There is at least a substantial argument that by adding "willfully" *only* in the provision for which Mr. Bannon was convicted, Congress imposed a higher *mens rea* requirement than for the provision addressed in cases like *Sinclair* for witnesses who appear but do not answer questions. "We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning," *Bailey v. United States*, 516 U.S. 137, 146 (1995), especially when the two different terms are "cheek by jowl in the same phrase," *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 84 (2017); *see Nielsen v. Preap*, 586 U.S. 392, 414 (2019). But on notably thin reasoning, *Licavoli* reached the exact opposite conclusion: "The elements of intent are the same in both" clauses of § 192. *Licavoli*, 294 F.2d at 209.

*Third*, and relatedly, the Supreme Court twice has addressed the "willfully" language in § 192—and both decisions strongly favor Mr. Bannon. *Licavoli* relied on the Supreme Court's *Sinclair* decision, but the Supreme Court has expressly limited *Sinclair*'s rule to the lesser-*mens-rea* clause at issue in that case. "Two distinct offenses are described in

the disjunctive [in § 192], and in only one of them is willfulness an element." *Murdock*, 290 U.S. at 397 (distinguishing *Sinclair*). Where the statute calls for willfulness, the Court held that a refusal to answer may be "intentional and without legal justification, but the jury might nevertheless find that it was not prompted by bad faith or evil intent, which the statute makes an element of the offense." *Id.* at 397–98. That is what Mr. Bannon argued but was foreclosed by *Licavoli*'s abbreviated analysis, which claimed *Murdock* had no application to § 192 because *Murdock* involved a tax statute. 294 F.2d at 208–09. But that completely misses the point that *Murdock* specifically distinguishes and narrows *Sinclair*, which *did* interpret § 192.

The Supreme Court later addressed the "willfully" provision of § 192 in *McPhaul v. United States*, 364 U.S. 372 (1960), where the Court noted briefly there was a "prima facie case of willful failure to comply with the subpoena" only because the defendant had made no attempt to "state his reasons for noncompliance" to the committee until he appeared in person, thus denying the committee the chance to "tak[e] other appropriate steps to obtain the records." *Id.* at 379 (cleaned up). By contrast, Mr. Bannon's attorney was repeatedly in contact with the Select

Committee and repeatedly provided explanations for why Mr. Bannon felt unable to comply. CADC.Slip.Op.3–5. *McPhaul* also said that even when the defendant failed to provide any reasons for noncompliance, he was still entitled to "present some evidence to explain or justify his refusal," so it could be "resol[ved] by the jury." *McPhaul*, 364 U.S. at 379. That of course is what Mr. Bannon tried to do.

\* \* \*

A panel of this Court concluded that *Licavoli* "bind[s] us" to apply the same lowered threshold to *both* provisions in § 192. CADC.Slip.Op.8. But the Supreme Court is not bound by *Licavoli*. Its "'general' rule" regarding willfulness, its modern embrace of the traditional canons of constructions, and its opinions on the *mens rea* for the specific provision at issue all favor Mr. Bannon's interpretation. That means this issue easily raises at least "a 'close' question or one that very well could be decided the other way." *Perholtz*, 836 F.2d at 555.

## B. There Is Good Reason to Believe the Supreme Court Would Disagree with This Court's "Practical" Concerns.

This Court also expressed "practical" concerns about the government affirmatively having to prove "bad faith." CADC.Slip.Op.8.

That characterization misses an important point: even if it did not negate *mens rea* as a matter of law, Mr. Bannon's good faith reliance on counsel at least should have been *presented to the jury* as a defense and to undercut the government's repeated (and false) accusations that he had "ignore[d]" the subpoena. *See McPhaul*, 364 U.S. at 379. Courts and juries routinely consider whether a defendant's conduct was willful. The fact that it is sometimes difficult to prove intent is a feature, not a bug.

In any event, practical concerns cannot overcome the text of § 192, which, as explained above, carefully uses the word "willfully" to indicate a high *mens rea* threshold, in accordance with the Supreme Court's general rule on construing that term. *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 59 (2023) ("'[E]ven the most formidable policy arguments cannot overcome a clear' textual directive.").

Moreover, the panel's practicality concerns are unpersuasive. There is no "practical" problem with allowing a defendant to raise advice-of-counsel evidence and arguments so that a jury can weigh them. Further, relying on advice of counsel and purported invocations of executive privilege in what the panel claimed was a novel scenario, *see* CADC.Slip.Op.13, is hardly analogous to someone claiming an

"idiosyncratic or misguided … belief" that he "need not comply," which is the only scenario the panel could conjure for why there were "practical" concerns with adopting Mr. Bannon's interpretation of § 192, CADC.Slip.Op.8–9.

In fact, DOJ recently instructed its own attorneys to refuse to respond to congressional subpoenas issued regarding Hunter Biden.[5] It can hardly be an "idiosyncratic" approach if DOJ itself is doing it.

The panel's concerns about practicalities are also significantly undermined by the rarity with which prosecutions have previously been sought under § 192 in the last fifty years. There will hardly be a deluge of dropped-yet-meritorious prosecutions if the Supreme Court interprets § 192 to mean what it says. In fact, if the Court does so, it would likely *prevent* the otherwise-inevitable politicized use of that statute against perceived political opponents—a far more important "practical" concern

---

[5] Josh Gerstein & Kyle Cheney, *'Are You Kidding Me?': Biden-Appointed Judge Torches DOJ for Blowing off Hunter Biden-Related Subpoenas from House GOP*, Politico (Apr. 5, 2024), https://www.politico.com/news/2024/04/05/biden-appointed-judge-torches-doj-00150884.

than the one raised by the panel here, and one that looms over this entire case.

**C.    The Supreme Court's Interest in This Statute, the Importance of the Question Presented, and the Court's Prior Practice All Confirm There Is a Substantial Question.**

Section 3143 applies where the defendant "has filed an appeal or a petition for a writ of certiorari," and that statute does not require any showing that there is a fair prospect or likelihood that the Supreme Court will actually *grant* certiorari. 18 U.S.C. § 3143(b)(2). Rather, Mr. Bannon need only show a substantial question that *if accepted* (regardless of the likelihood that it actually is accepted) would result in a new trial or lower sentence. *See Perholtz*, 836 F.2d at 555. He has satisfied that test.

In any event, there is good reason to believe the Supreme Court would be interested in reviewing the *mens rea* issue, which strengthens the conclusion that this issue presents a substantial question.[6]

_____

[6] *See, e.g., United States v. Adams*, No. 1:21-cr-354, 2024 WL 111802, at *2 (D.D.C. Jan. 10, 2024) ("[T]he Supreme Court's decision to review [a case raising the same issue] means, at a minimum, that this case poses a 'close question.'"); *cf. United States v. Carpenter*, No. 23-3235, 2024 WL 1340206, at *1 (D.C. Cir. Mar. 28, 2024) ("assum[ing]" the same).

*First*, the Supreme Court has demonstrated an exceedingly strong interest in interpreting § 192. That Court has granted review in no less than *nineteen* cases involving various aspects of that statute, despite its brevity.[7] That represents a significant grant rate, far beyond that for almost any other issue.

The Court's interest was likely spurred by a concern that § 192 was being used for political purposes during the days of the House Committee on Un-American Activities in the 1950s and 1960s. Those concerns have now returned. There is little reason to believe that future Administrations will bother with such niceties as negotiation over politically tinged subpoenas. Rather, they will go straight to indictments.

---

[7] *Gojack v. United States*, 384 U.S. 702 (1966); *Yellin v. United States*, 374 U.S. 109 (1963); *Russell v. United States*, 369 U.S. 749 (1962); *Hutcheson v. United States*, 369 U.S. 599 (1962); *Deutch v. United States*, 367 U.S. 456 (1961); *Braden v. United States*, 365 U.S. 431 (1961); *Wilkinson v. United States*, 365 U.S. 399 (1961); *McPhaul*, 364 U.S. 372; *Barenblatt v. United States*, 360 U.S. 109 (1959); *Flaxer v. United States*, 358 U.S. 147 (1958); *Sacher v. United States*, 356 U.S. 576 (1958); *Watkins v. United States*, 354 U.S. 178 (1957); *Bart v. United States*, 349 U.S. 219 (1955); *Emspak v. United States*, 349 U.S. 190 (1955); *Quinn v. United States*, 349 U.S. 155 (1955); *United States v. Rumely*, 345 U.S. 41 (1953); *United States v. Fleischman*, 339 U.S. 349 (1950); *United States v. Bryan*, 339 U.S. 323 (1950); *Sinclair*, 279 U.S. 263.

Examples of individuals held in contempt of Congress for allegedly disregarding subpoenas include EPA Administrator Anne Gorsuch, Attorneys General Eric Holder and William Barr, and White House Counsel Harriet Miers.[8] In the future, a White House of the opposite political party could simply bide its time and then indict such individuals, who will be barred even from arguing a good-faith defense to the jury under this Court's caselaw. For example, the House currently has issued subpoenas regarding Hunter Biden and recordings of President Biden used in the Hur Report,[9] and under this Court's current caselaw, a future Administration will face no meaningful barrier to indicting everyone who

---

[8] Philip Shabecoff, *House Charges Head of E.P.A. with Contempt*, N.Y. Times, Dec. 17, 1982, at A1, https://www.nytimes.com/1982/12/17/us/house-charges-head-of-epa-with-contempt.html; Final Vote Results for Roll Call 489, July 17, 2019, https://clerk.house.gov/evs/2019/roll489.xml (William Barr) (H.R. Res. 497); Final Vote Results for Roll Call 441, June 28, 2012, https://clerk.house.gov/evs/2012/roll441.xml (Eric Holder) (H.R. Res. 711); Final Vote Results for Roll Call 60, Feb. 14, 2008, https://clerk.house.gov/evs/2008/roll060.xml (Harriet Miers) (H.R. Res. 982).

[9] *See* Part III, *infra*; Annie Grayer et al., *Key House Committees Vote to Advance Contempt Proceedings Against Garland over Biden Audio Files*, CNN (May 16, 2024), https://www.cnn.com/2024/05/16/politics/house-panels-contempt-garland-biden-audio/index.html.

declines to turn over such records, including White House and DOJ attorneys.

Given the Supreme Court's outsized interest in § 192, as well as the serious concerns with a breezy approach to the elements of criminal contempt, there is a fair chance the Supreme Court would consider the *mens rea* issue important enough to take up.

*Second*, recent history suggests there remains interest at the Court on this issue. Dr. Peter Navarro recently asked the Supreme Court for release pending appeal after he was convicted under § 192, and he argued at length that the Court would likely disagree with *Licavoli. See Navarro v. United States*, No. 23A843 (U.S. 2024). In response, Chief Justice Roberts took the highly unusual step of issuing an in-chambers decision—the first in many years issued by a Justice—to explain that he was denying the request only because of procedural concerns specific to Dr. Navarro's case, which were "distinct from his pending appeal on the merits." *Navarro v. United States*, 144 S. Ct. 771 (2024) (Roberts, C.J., in chambers).

If the underlying merits presented by Dr. Navarro were of no interest or substantiality, presumably Chief Justice Roberts would

simply have denied the request without explanation, as frequently occurs. Mr. Bannon's case cleanly presents the same important *mens rea* issue regarding § 192, but without the procedural concerns present in Mr. Navarro's motion.

*Third*, the Supreme Court has recently taken an interest in reviewing the government's broad interpretations of criminal laws in politically tinged cases, even when there was little or no dissent among the lower-court judges. For example, the Supreme Court granted review of this Court's decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), regarding the scope of 18 U.S.C. § 1512(c)(2)—used to obtain long jail sentences against even non-violent January 6 defendants—despite the fact that almost every district court judge had adopted the government's view and only one circuit judge disagreed, *see* 64 F.4th at 338 n.3. The government surely would have argued that *Fischer* presented no substantial question—yet the Supreme Court granted review and very well may reverse.

*Fourth*, and relatedly, the government argued below that there is no longer a "substantial" question in Mr. Bannon's case because this Court has affirmed his convictions, rehearing is not "favored," and the

Supreme Court grants review "in approximately 2% of [] petitions." ECF No. 196 at 4. Of course, this is no ordinary case, as the panel itself recognized. CADC.Slip.Op.13 (concluding OLC has never issued an opinion "address[ing] a situation resembling Bannon's").

In any event, under nearly identical procedural circumstances, the Supreme Court itself has granted emergency relief to ensure the defendant remained free pending completion of appeals. For example, in the "corruption" case against Governor Bob McDonnell, the Fourth Circuit unanimously rejected Gov. McDonnell's challenges to his convictions, *United States v. McDonnell*, 792 F.3d 478, 486 (4th Cir. 2015), and *not a single circuit judge voted in favor of rehearing* en banc, Order, *United States v. McDonnell*, No. 15-4019 (4th Cir. Aug. 11, 2015), ECF No. 131.

The Supreme Court, however, unanimously granted Gov. McDonnell's emergency application to ensure he remained released pending the outcome of a forthcoming petition for a writ of certiorari, *McDonnell*, 576 U.S. 1091, and then later granted review and reversed the Fourth Circuit in a 9-0 decision, *McDonnell v. United States*, 579 U.S. 550, 580–81 (2016).

Clearly the Supreme Court believed there was a substantial question despite the circuit court's unanimous ruling against Gov. McDonnell and despite the lack of interest among any of the circuit judges in rehearing the case en banc. If anything, Mr. Bannon's case is even stronger because he, unlike Gov. McDonnell, will otherwise be forced to serve his sentence before his appeals are complete.

*McDonnell* demonstrates that a grant of release pending further appeal sometimes warrants a level of judicial humility—a recognition that other judges may view the issues differently, regardless of how strongly the panel itself agrees with its own holding. Mr. Bannon need only demonstrate a substantial question. He has undoubtedly done so on the question of § 192's *mens rea*.

## II. There Is Also a Substantial Question Regarding the Test Under Section 3143.

Mr. Bannon's case raises a second substantial question, this one about the test for "substantiality" under 18 U.S.C. § 3143(b) itself. There is a circuit split on this issue, and any issue on which the circuits are split is necessarily a substantial question with a fair prospect of review by the Supreme Court.

This Court holds that § 3143 requires a matter that is "a 'close' question or one that very well could be decided the other way." *Perholtz*, 836 F.2d at 555. But *Perholtz* recognized that other circuits disagree and apply a distinctly lower threshold. *Id.* In the Ninth Circuit, for example, a defendant must present "only a non-frivolous issue that, if decided in the defendant's favor, would likely result in reversal or could satisfy one of the other conditions." *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003).

Mr. Bannon's *mens rea* arguments satisfy any of these tests, but the point is that if he were in, say, the Ninth Circuit, there would be *no* doubt that he would be released pending further appeal. The disagreement between circuits necessarily makes it a debatable—and therefore substantial—question.

## III. Other Considerations Strongly Favor Mr. Bannon.

Several other points warrant emphasizing. If Mr. Bannon is not granted release pending further appeal, he would likely be forced to serve his sentence before the Supreme Court even considers his petition for a writ of certiorari, because his sentence would run during the Summer and Fall of 2024, when that Court is on its Summer recess.

This Court should also be mindful of the government's own conduct when it comes to congressional subpoenas. Congress recently issued subpoenas to DOJ regarding Hunter Biden, yet DOJ instructed its Tax Division lawyers to refuse to comply.[10] Judge Reyes sharply criticized DOJ for the obvious hypocrisy: "There's a person in jail right now [Peter Navarro] because you all brought a criminal lawsuit against him because he did not appear for a House subpoena. … And now you guys are flouting those subpoenas. … And you don't have to show up?"[11]

"Jail for thee, not for me" is hardly an acceptable position for the government. At the very least, DOJ's decision to ignore congressional subpoenas demonstrates both the significance of the *mens rea* issue as a matter of law and also the illogic of preventing Mr. Bannon from even arguing to the jury that his reliance on advice of counsel undermined the government's case for "willfulness."

There is also a strong public interest in Mr. Bannon remaining free during the run-up to the 2024 presidential election. The government

---

[10] Gerstein & Cheney, *'Are You Kidding Me?'*, *supra* note 5 (referencing *Comm. on the Judiciary v. Daly*, No. 1:24-cv-815 (D.D.C.)).

[11] *Id.*

seeks to imprison him for the four-month period immediately preceding the November election—giving an appearance that the government is trying to prevent Mr. Bannon from fully assisting with the campaign and speaking out on important issues, and also ensuring the government exacts its pound of flesh before the possible end of the Biden Administration.

No one can dispute that Mr. Bannon remains a significant figure. He is a top advisor to the President Trump campaign, and millions of Americans look to him for information on matters important to the ongoing presidential campaign. Yet from prison, Mr. Bannon's ability to participate in the campaign and comment on important matters of policy would be drastically curtailed, if not eliminated. There is no reason to force that outcome in a case that presents substantial legal issues.

## CONCLUSION

This Court should grant the motion and order that Mr. Bannon remain released pending conclusion of his appeals, including to the Supreme Court.

June 11, 2024

Respectfully submitted,

/s/ R. Trent McCotter
R. Trent McCotter
    *Counsel of Record*
Jonathan Berry
Michael Buschbacher
BOYDEN GRAY PLLC
801 17th St NW, Ste 350
Washington, DC 20006
202-706-5488
tmccotter@boydengray.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) because it contains 5178 words, excluding the portions exempted by Rule 27(a)(2)(B). This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

/s/ R. Trent McCotter
R. Trent McCotter

## CERTIFICATE THAT APPEAL IS NOT TAKEN FOR DELAY

I hereby certify, pursuant to Circuit Rule 9(b)(4), that this appeal is not taken for delay.

/s/ R. Trent McCotter
R. Trent McCotter

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.

/s/ R. Trent McCotter
R. Trent McCotter