ORAL ARGUMENT HELD NOVEMBER 9, 2023

No. 22-3086
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**UNITED STATES OF AMERICA,**
         *Appellee,*

v.

**STEPHEN K. BANNON,**
         *Appellant.*

_____

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00670-1)
_____

**APPELLANT'S REPLY IN SUPPORT OF HIS EMERGENCY
MOTION FOR RELEASE PENDING APPEAL**
_____

        R. Trent McCotter
         *Counsel of Record*
        Jonathan Berry
        Michael Buschbacher
        BOYDEN GRAY PLLC
        801 17th St NW, Ste 350
        Washington, DC 20006
        202-706-5488
        tmccotter@boydengray.com

        *Counsel for Appellant*

# TABLE OF CONTENTS

REPLY ARGUMENT ........................................................................................ 1

    I.    The Test Under Section 3143 Does Not Change After an Adverse Panel Opinion ................................................................. 1

    II.    There Is a Substantial Question Regarding Section 192's *Mens Rea* .................................................................................... 4

    III.    There Are Good Reasons to Believe the Supreme Court or This Court Would Grant Review ................................................. 8

    IV.    In All Events, the Court Should Still Grant Release ................ 10

    V.    The *Mens Rea* Error Is Not Harmless ....................................... 11

    VI.    There Is a Substantial Question Regarding the Test Under Section 3143 ............................................................................... 12

CONCLUSION .............................................................................................. 13

# REPLY ARGUMENT

Under 18 U.S.C. § 3143, Mr. Bannon need only show that his appeal presents a "substantial" legal question which, *if accepted*, would likely result in a new trial or less prison time, as the government does not dispute that he satisfies the other requirements of § 3143. As explained in his Motion and below, he satisfies § 3143's requirements and therefore is entitled to remain on release.

## I. The Test Under Section 3143 Does Not Change After an Adverse Panel Opinion.

The government contends that Mr. Bannon must make an "additional" showing of a likelihood of en banc rehearing or Supreme Court review. Opp.7. But that argument fails for two reasons: (1) no such showing is required under § 3143; and (2) even if it were, there is good reason to believe this Court en banc or the Supreme Court would be interested in further review. *See* Part III, *infra*.

Section 3143 expressly applies to cases where the movant has *already* lost at the circuit court—e.g., where he has filed "a petition for writ of certiorari," § 3143(b)(1)—yet the statute nowhere changes the test that applies in such circumstances.

There is only one test under § 3143, and, as this Court has explained, it requires a "two-part inquiry." *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). The Court first decides whether "the appeal raise[s] a substantial question," i.e., one that is "close." *Id.* The Court then *separately* looks at whether a new trial or lessened sentence would "likely" result "*if* that question is resolved in appellants' favor." *Id.* Thus, when inquiring about "likelihood," *the Court must assume the question will be resolved favorably*—it does not attempt to calculate the odds of a favorable resolution.

Contrary to the government's assertion, Opp.7 & n.1, the "phrase 'likely to result in reversal or an order for a new trial' cannot reasonably be construed to require the … court to predict the probability of reversal." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985) (cited in *Perholtz*). "The federal courts are not to be put in the position of bookmakers who trade on the probability of ultimate outcome. Instead, that language must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal." *Id.* Accordingly, "all" circuit courts have "concluded that the statute does not require" a showing that the lower court "committed reversible error." *United States v. Pollard*, 778

2

F.2d 1177, 1181–82 (6th Cir. 1985) (collecting authorities) (cited in *Perholtz*).

The Solicitor General has agreed that § 3143 doesn't impose the same standard as for a stay pending appeal. In the *McDonnell* case, the SG advised the Supreme Court that because "'the statutory standard for determining whether a convicted defendant is entitled to be released pending a certiorari petition is clearly set out in 18 U.S.C. 3143(b),' … the application should be evaluated using the standard prescribed in Section 3143(b), *rather than under the stay factors that the Court applies when Congress has not established the governing criteria*." Memo. for the U.S. in Opposition 15, *McDonnell v. United States*, 15A218 (Aug. 26, 2015) (emphasis added).

Thus, unlike someone seeking a *stay* pending appeal, Mr. Bannon need not show there is a fair chance the Supreme Court would actually grant review and reverse. The government's invocation of emergency-stay cases is thus misplaced. Opp.7–8.[1]

---

[1] In the *Navarro* case, the government cited *McGee v. Alaska*, 463 U.S. 1339 (1983) (Rehnquist, J., in chambers), and *Julian v. United States*, 463 U.S. 1308 (1983) (Rehnquist, J., in chambers), as looking to the

(*footnote continued on next page*)

The *mens rea* issue remains a substantial question for the reasons given below in Part II, *infra*. And *if* that position is accepted, Mr. Bannon would "likely" be entitled to a new trial. *See* Part V, *infra*. With those showings made, the "judicial officer" "shall" grant release. § 3143(b).

Further, as explained below in Part III, even if Mr. Bannon did need to make a showing that the Supreme Court or this Court en banc would be interested in reviewing the *mens rea* issue, he has done so. *See* Part III, *infra*.

II. **There Is a Substantial Legal Question Regarding Section 192's *Mens Rea*.**

The government claims Mr. Bannon can no longer show a substantial question on the scope of the *mens rea* requirement in 2 U.S.C. § 192 after a panel of this Court rejected his arguments in its May 10

---

probability the Supreme Court would grant review in the context of a bail motion, Resp.17, *Navarro v. United States*, No. 23A843 (U.S. Mar. 18, 2024). But those cases "arose before the enactment of the Bail Reform Act" and do "not set the standard for review under the Bail Reform Act, and furthermore [they] would require inappropriate speculation by this Court." *United States v. Nacchio*, 608 F. Supp. 2d 1237, 1240 n.6 (D. Colo. 2009). The Supreme Court has not cited them since the Bail Reform Act was passed forty years ago.

4

opinion. Respectfully, this Court's panel opinion only *confirms* that the *mens rea* issue remains substantial.

*First*, the Supreme Court has held that a "question may nevertheless be 'substantial' … if it is novel." *Herzog v. United States*, 75 S. Ct. 349, 351 (1955). The government claims that applying § 192's *mens rea* in this context was not novel. Opp.12–13. But the government previously made the opposite argument when objecting to Mr. Bannon's attorney's reliance on OLC opinions, which prompted this Court to conclude that OLC had issued many opinions on § 192 but never one "address[ing] a situation resembling Bannon's." CADC.Slip.Op.13. The novelty even among the annals of OLC opinions points strongly in favor of this case presenting a substantial question.

*Second*, the panel opinion stated that the Supreme Court's "'general' rule" about interpreting the word "willfully" in a criminal statute would match Mr. Bannon's interpretation of § 192. CADC.Slip.Op.9. In other words, *if the Supreme Court simply adheres to its general rule, Mr. Bannon must get a new trial.*

The government's only argument is to insist that "willfully" in this particular context means only "intentionally," Opp.13–14, which not only

5

contradicts standard canons of construction but also is in serious tension with the Supreme Court's own decisions, as explained next.

*Third*, this Court's panel opinion expressly recognized that the cases relied on by *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961)—the same ones the government invokes as its strongest cases, Opp.9–10, 13–14—were about a *different* provision in § 192 that "does not use the term 'willfully,'" CADC.Slip.Op.9.

Under modern Supreme Court statutory construction, it is difficult to imagine the Court concluding that the *mens rea* requirements for the two different provisions within § 192, which use starkly different terms, are nonetheless identical.

Further, the government's theory for why "willfully" wasn't added to the second clause of § 192, Opp.11, fails to explain why Congress *did* add it to the clause of § 192 at issue here, rather than using the lesser-*mens-rea* word "intentionally." Clearly, that choice meant something.

*Licavoli*'s approach is especially suspect because the Supreme Court has recognized that "[t]wo distinct offenses are described in the disjunctive [in § 192], and in only one of them is willfulness an element."

*United States v. Murdock*, 290 U.S. 389, 397 (1933). Again, Congress knows how to heighten the *mens rea* requirement, and it did so in § 192.

*Murdock* even expressly narrowed the decision in *Sinclair v. United States*, 279 U.S. 263 (1929), which addressed the separate clause in § 192 that does *not* contain a willfulness requirement, Mot.12–13. The government claims that *Murdock*'s narrowing of *Sinclair* is "dictum" because *Murdock* was a tax case. Opp.16. But distinguishing a prior decision is the opposite of dicta. Anyway, this Court "generally treat[s] Supreme Court dicta as authoritative." *Bahlul v. United States*, 840 F.3d 757, 763 n.6 (D.C. Cir. 2016) (Kavanaugh, J., concurring).

The government also misreads *McPhaul v. United States*, 364 U.S. 372 (1960), as saying that merely having records and not producing them constitutes a prima facie case of willfulness, Opp.16. *McPhaul* made clear that the defendant had *never explained to the committee* why he could not produce the records, 364 U.S. at 379—but Mr. Bannon's attorney repeatedly explained to the Committee why he could not comply until the privilege issue was resolved.

Notably, the government never responds to *McPhaul*'s holding that even when there is a prima facie case of willfulness, the defendant is *still*

7

entitled to present evidence to a jury for why he did not comply, Mot.14, which *Licavoli* precludes.²

Accordingly, to the extent the "Supreme Court … has already addressed the issue" of the "willfully" language in § 192, Opp.12, its opinions support Mr. Bannon, demonstrating the issue is at least "substantial."

### III. There Are Good Reasons to Believe the Supreme Court or This Court Would Grant Review.

As explained above in Part I, Mr. Bannon need not make a showing that the Supreme Court or this Court en banc would grant further review. *See* Part I, *supra*. But even if such considerations were relevant, there are good reasons to believe further review is warranted.

*First*, the Supreme Court has granted nearly twenty cases on § 192. Mot.18 & n.7. The government claims the Court hasn't granted one in

---

² The government claims *United States v. Bryan*, 339 U.S. 323 (1950), was a "willfully default" case, Opp.10, but this Court's panel opinion labeled it as one addressing the "second clause" in § 192, CADC.Slip.Op.7–8. In any event, at most, *Bryan* made the same point as *McPhaul* about a recipient who "refuses to give any reason" to the committee for "fail[ing] to deliver" requested documents. *Bryan*, 339 U.S. at 333. It is uncontested that Mr. Bannon's attorney *did* provide reasons to the Committee.

8

decades, Opp.18, but that is only because the government stopped pursuing such convictions. The government has resurrected § 192, and there is every reason to believe the Court will want to address *Licavoli*'s anomalous *mens rea* holding.[3]

*Second*, as noted above, the few Supreme Court cases addressing the relevant clause of § 192 favor Mr. Bannon. The Supreme Court routinely grants review of lower court decisions that are in tension with the Court's own decisions. *See* Sup. Ct. R. 10(c).

*Third*, the serious concern about politically tinged prosecutions under § 192 is a far more important "practical" concern than the government's theory that defendants will "manufactur[e] a claim of good faith" (which is a logical impossibility). Opp.15.

The government argues it is unlikely there will be such prosecutions when officials invoke executive privilege. Opp.22–23. Indeed, OLC recently issued another opinion claiming that § 192 "does not apply to Executive Branch officials who do not comply with a

---

[3] The government's claim that there is no "conflict among the circuits," Opp.18, is misleading given that § 192 cases almost invariably arise in D.C. If anything, this favors further review because now all cases will be subject to the broad opinion in *Licavoli*.

9

congressional subpoena based on a presidential assertion of executive privilege." *Executive Privilege Assertion for Audio Recordings* at 4, Christopher Fonzone, Ass't Att'y Gen. to Merrick Garland, Att'y Gen., May 15, 2024, https://tinyurl.com/r5tmyk85.

But that memo strongly supports Mr. Bannon's request because it shows that not even OLC will actually defend the holding of *Licavoli*, which says the *only* question for *mens rea* is whether the defendant intentionally did not respond. Any executive official who asserts executive privilege is "intentionally" declining to provide the subpoenaed materials—and therefore under *Licavoli* has necessarily violated § 192 and is barred from presenting evidence on actual intent. But OLC has consistently construed § 192 as not covering that scenario, demonstrating the issue is far more nuanced than *Licavoli*'s simplistic approach. *See* OLC.Op.50 n.34 (PDF pagination).

For all these reasons, there is a strong basis to conclude the en banc court or the Supreme Court may step in and shut this Pandora's Box.

**IV. In All Events, the Court Should Still Grant Release.**

Finally, even if this Court considers the odds of further review to be both relevant and low, this Court should still grant release.

Other courts have explained: "Even though the Court considers remote the likelihood of the Supreme Court's granting the [certiorari] petition, the Court does not relish the prospect of revoking [the defendant's] bail and requiring his immediate incarceration, only to have the Supreme Court do the unexpected and accept certiorari." *United States v. Pettengill*, No. 1:09-cr-138, 2011 WL 6945708, at *2 (D. Me. Dec. 30, 2011).

In such circumstances, "an additional delay to obtain the most authoritative answer [from the Supreme Court] seems wise." *Id.* So too here, especially given the historic nature of this case.

## V. The *Mens Rea* Error Is Not Harmless.

Incredibly, the government claims that the preclusion of advice-of-counsel evidence and an erroneous *mens rea* instructions are harmless. That position is meritless, which presumably is why the government never raised it during the direct appeal. *See generally* Br. for Appellee, No. 22-3086 (D.C. Cir. June 2, 2023).

This Court has held that "eliminat[ing] the prosecutor's burden of proving *mens rea*" is "a serious constitutional error." *United States v. Sheehan*, 512 F.3d 621, 631 (D.C. Cir. 2008). "Error cannot be harmless

where it prevents the defendant from providing an evidentiary basis for his defense." *Id.* at 633. That is exactly what happened here, as this Court recognized: the District Court "precluded Bannon from presenting such a defense at trial, and instructed the jury consistent with those rulings." CADC.Slip.Op.7.

The government points to "the record," Opp.19—but the only "record" the jury heard was that Mr. Bannon had disregarded the subpoena and was barred from invoking good-faith reliance on counsel. If Mr. Bannon prevails on his *mens rea* argument, he will get a new trial.[4]

## VI. There Is a Substantial Question Regarding the Test Under Section 3143.

The government argues that even if Mr. Bannon prevailed on his separate argument about the disputed test for "substantial" under § 3143, Mot.23–24, it would not likely result in "reversal or new trial,"

---

[4] The government argues Mr. Bannon "never raised executive privilege as an affirmative defense," Opp.19, but that is a red herring. It is undisputed that Mr. Bannon has argued at every stage of this case that his conduct was not "willful"—and the reason *why* it was not willful is because he relied on advice of counsel, who believed Mr. Bannon could not lawfully comply with the subpoena until the executive-privilege issue was resolved.

12

Opp.20–21. But § 3143 also applies to issues that would result in a shorter prison stint. *See* § 3143(b)(1)(B)(iv).

If Mr. Bannon were in the Ninth Circuit, with its lesser test, he would remain out on appeal while he pursued further review. Mot.24. By forcing Mr. Bannon instead to serve his entire sentence before his appeals are completed, the government is necessarily precluding any opportunity for him to serve less time in prison. That satisfies § 3143's requirements.

## CONCLUSION

This Court should grant the motion.

June 17, 2024                Respectfully submitted,

/s/ R. Trent McCotter
R. Trent McCotter
  *Counsel of Record*
Jonathan Berry
Michael Buschbacher
BOYDEN GRAY PLLC
801 17th St NW, Ste 350
Washington, DC 20006
202-706-5488
tmccotter@boydengray.com

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) because it contains 2514 words, excluding the portions exempted by Rule 27(a)(2)(B). This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

/s/ R. Trent McCotter
R. Trent McCotter

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.

/s/ R. Trent McCotter
R. Trent McCotter