ORAL ARGUMENT HELD NOVEMBER 9, 2023

No. 22-3086

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

*Appellee*,

v.

STEPHEN K. BANNON,

*Appellant*.

On Appeal from the United States District Court for the District of Columbia

**BRIEF FOR THE U.S. HOUSE OF REPRESENTATIVES
AS *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY**

Matthew B. Berry
  *General Counsel*
Bradley Craigmyle
  *Associate General Counsel*

*Office of General Counsel*
*U.S. House of Representatives*
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Matthew.Berry@mail.house.gov

*Counsel for the U.S. House of Representatives*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Consistent with D.C. Circuit Rule 28(a)(1), we respectfully submit this certificate as to parties, rulings, and related cases.

### A.     Parties and Amici

The parties to this appeal are Stephen K. Bannon, the Appellant, and the United States of America, the Appellee.  The same parties appeared in the district court.  Appearing as *amici* in the district court were (1) the U.S. House of Representatives and (2) the U.S. House of Representatives Minority Leader Kevin O. McCarthy and Minority Whip Stephen J. Scalise.  No intervenors appeared in the district court.

The U.S. House of Representatives has moved for an invitation to file this *amicus* brief.  No intervenors and no other *amici* have appeared in this Court to date.

### B.     Rulings Under Review

References to the rulings at issue appear in the Brief of Appellant, Doc. 1997765, and the Brief of the Appellee, Doc. 2001836.

### C.     Related Cases

We are unaware of any related cases.

i

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... iii

GLOSSARY ................................................................................................................v

INTRODUCTION AND STATEMENT OF INTEREST..........................................1

ARGUMENT .............................................................................................................2

     I.    Composition of the Select Committee ..................................................2

     II.   Ranking Minority Member of the Select Committee............................6

CONCLUSION.........................................................................................................11

# TABLE OF AUTHORITIES[*]

**Cases**                                                              **Page(s)**

*Kingdomware Techs., Inc. v. United States*,
   579 U.S. 162 (2016).................................................................................3

*\*Sierra Club v. Jackson*,
   648 F.3d 848 (D.C. Cir. 2011)................................................................3, 4

**Legislative Authorities**

Final Report of the Select Committee to Investigate the January 6th
   Attack on the United States Capitol, H. Rep. No. 117-663 (2022),
   https://perma.cc/R4VN-F2E5 ....................................................................7

\*H. Res. 503, 117th Cong. (2021), https://perma.cc/6Z27-YPRJ ..............2, 3, 4, 5, 6

H. Res. 935, 116th Cong. (2020), https://perma.cc/892R-2MRY .............................3

Rule II.8(b), Rules of the House of Representatives,
   118th Cong. (2023), https://perma.cc/DK3P-55K6..............................................2

\*Rules of the House of Representatives,
   117th Cong. (2021), https://perma.cc/2L8Q-BJXR

   House Rule X.5(a)(4)(B) ..................................................................7, 8

   House Rule X.7(d) ..........................................................................8, 9

   House Rule X.7(e) ............................................................................9

   House Rule X.9(a)(1).........................................................................7

   House Rule X.11(g)(2)(G)....................................................................7

   House Rule XI.2(d)...........................................................................9

   House Rule XI.3(b)(1)(B)(i).................................................................8

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

House Rule XI.3(b)(1)(C) ................................................................................... 7

House Rule XI.3(b)(8)(A) ................................................................................... 8

House Rule XI.3(m)(2) ....................................................................................... 8

**Other Authorities**

*Glossary of Legislative Terms*, Congress.gov,
   https://www.congress.gov/help/legislative-glossary (last visited
   July 18, 2024) ................................................................................................ 9

Press Release, Select Comm. to Investigate the January 6th Attack on
   the U.S. Capitol, *Chairman Thompson Announces Representative
   Cheney as Select Committee Vice Chair* (Sept. 2, 2021),
   https://perma.cc/5L3W-DQCS .................................................................... 6, 7

# GLOSSARY

| | |
|---|---|
| BLAG | Bipartisan Legal Advisory Group |
| Select Committee | House Select Committee to Investigate the January 6th Attack on the United States Capitol |

# INTRODUCTION AND STATEMENT OF INTEREST[1]

Appellant Stephen Bannon has petitioned for rehearing of the panel's affirmance of his conviction on two counts of contempt of Congress for willfully failing to respond to a subpoena issued by the House Select Committee to Investigate the January 6th Attack on the United States Capitol (Select Committee). *See generally* Pet. for Reh'g En Banc, Doc. 2064644. In the district court, the 117th U.S. House of Representatives (House) filed an *amicus curiae* brief in support of the U.S. Department of Justice's (DOJ) position that Bannon's motion to dismiss his indictment should be denied. *See generally* Br. of House as *Amicus Curiae* in Supp. of DOJ, No. 1:21-cr-670 (D.D.C. May 25, 2022), ECF No. 76-2 (House District Court Br.).

The House in that brief took positions regarding the scope and meaning of certain House rules and procedures upon which Bannon had attempted to rely when contesting the authority of the Select Committee and the validity of its subpoena. *See id.* at 3-8 (making arguments about the Select Committee's authorizing resolution and the Speaker's duties, or lack thereof, under that resolution); *id.* at 8-10 (making arguments about the authorizing resolution's ranking-minority-member-consultation requirement).

---

[1] No person other than the *amicus curiae* and its counsel assisted with or made a monetary contribution for preparing or submitting this brief.

1

This brief simply updates this Court with respect to the current House's[2] position on those arguments. It is not the place of this House to take any position on the merits of the underlying case or this petition.

ARGUMENT

I. Composition of the Select Committee

The Select Committee was established pursuant to House Resolution 503, and section 2 of House Resolution 503 provided that "[t]he Speaker shall appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader." H. Res. 503, 117th Cong. § 2(a) (2021), https://perma.cc/6Z27-YPRJ. However, the Speaker never appointed 13 Members to the Select Committee; she appointed only nine.

In its district court brief, the 117th House suggested that House Resolution 503 merely authorized the Speaker to appoint 13 Members to the Select Committee but did not obligate her to do so. House District Court Br. at 4-8. This House

---

[2] The Bipartisan Legal Advisory Group (BLAG) of the House has authorized the filing of an *amicus* brief here. The BLAG comprises the Honorable Mike Johnson, Speaker of the House, the Honorable Steve Scalise, Majority Leader, the Honorable Tom Emmer, Majority Whip, the Honorable Hakeem Jeffries, Minority Leader, and the Honorable Katherine Clark, Minority Whip, and it "speaks for, and articulates the institutional position of, the House in all litigation matters." Rule II.8(b), Rules of the U.S. House of Representatives, 118th Cong. (2023), https://perma.cc/DK3P-55K6. The Speaker of the House, the Majority Leader, and the Majority Whip voted to support the filing of this brief; the Minority Leader and Minority Whip did not.

2

disagrees with that position. Rather, it believes that House Resolution 503 is best read as requiring the Speaker to appoint 13 Members to the Select Committee. Had the House intended simply to authorize the Speaker to appoint 13 Members to the Select Committee, it likely would have used language that is more consistent with such an intent. For example, House Resolution 503 could have stated that the Speaker "is authorized to appoint 13 Members to the Select Committee." It could have provided that the Speaker "may appoint up to 13 Members to the Select Committee." Or it could have provided that the Speaker "shall appoint not more than 13 Members." *See, e.g.*, H. Res. 935, 116th Cong. § 2(a) (2020) ("The select subcommittee shall be composed of *not more than* 12 Members, Delegates, or the Resident Commissioner appointed by the Speaker, of whom *not more than* 5 shall be appointed on the recommendation of the minority leader." (emphasis added)), https://perma.cc/892R-2MRY. But House Resolution 503 did not use permissive or discretionary language. Instead, it specifically instructed that the Speaker "shall appoint 13 Members to the Select Committee." H. Res. 503, § 2(a).

"[T]he word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016). Indeed, this Court has "repeatedly noted" that "'shall' is usually interpreted as 'the language of command.'" *See Sierra Club v. Jackson*, 648 F.3d 848, 856 (D.C. Cir. 2011) (citations omitted). Moreover, "when a statute 'uses both "may" and "shall," the normal inference is

3

that each is used in its usual sense—the one act being permissive, the other mandatory.'" *Id.* (citation omitted). And that is the case with House Resolution 503; it uses both "may" and "shall," indicating that each is being used in its typical sense. *Compare* H. Res. 503 § 2(a) ("The Speaker shall appoint 13 Members to the Select Committee …."), *with id.* § 4(b)(1) ("[T]he Select Committee may report to the House or any committee of the House from time to time the results of its investigations ….").

To be sure, as the 117th House's *amicus* brief pointed out, House Resolution 503 does not set forth a specific timeline for filling any vacancies arising in the Select Committee. *See* House District Court Br. at 5. But that sheds no light on whether the Speaker was required to initially appoint 13 Members to the Select Committee. The mandatory language in section 2(a) answers that question—"[t]he Speaker *shall* appoint 13 Members." H. Res. 503, § 2(a) (emphasis added). That "[a]ny vacancy in the Select Committee shall be filled in the same manner as the original appointment," *see id.* § 2(c), does not change the Speaker's obligation. If anything, section 2(c) provides additional evidence that section 2(a) uses the word "shall" in its usual, mandatory sense. Indeed, by specifically referencing "the original appointment," the language of the vacancies provision reinforces the Speaker's obligation to initially appoint 13 Members to the Select Committee. The provision indicates that a vacancy is *not* a position on the Select Committee that

4

was left unfilled when the Committee was initially constituted, but rather a position left open by a departed Member. The vacancy language thus casts no doubt on the Speaker's obligation to appoint 13 Members.

The Speaker's obligation did not stop there. Indeed, section 2(a) of House Resolution 503 also provides that five of the Members of the Select Committee "shall be appointed after consultation with the minority leader." H. Res. 503, § 2(a). However, the Speaker did not appoint five Members of the minority party to the Select Committee, only two. To be clear, this House does not contend that the Speaker was required to accept the Minority Leader's specific recommendations. House Resolution 503 required only consultation, and even though a speaker will generally implement a minority leader's recommendations with respect to the minority party's seats on a select committee, he or she is not obligated to do so. This House thus agrees with the 117th House on that point. *Cf.* House District Court Br. at 3-4 (calling Bannon's arguments, which included a claim that relied on the Speaker's refusal to accept the Minority Leader's nominees, "wrong").

Here, however, the fact remains that House Resolution 503 required the Speaker to appoint five Members to the Select Committee after consultation with the Minority Leader, and she failed to do so. At most, she appointed only two Members after such consultation. And to the extent that the Speaker was unable to find more than two Members of the minority party who were willing to serve on

5

the Select Committee that she was willing to appoint, the House should have voted to change the five-Member requirement set forth in House Resolution 503.

In sum, this House believes that the Speaker was required to appoint 13 Members to the Select Committee, five of whom should have been Members of the minority party, appointed after the Speaker consulted with the Minority Leader.

## II. Ranking Minority Member of the Select Committee

Section 5(c)(6)(A) of House Resolution 503 provided that "[t]he chair of the Select Committee, upon consultation with the ranking minority member, may order the taking of depositions, including pursuant to subpoena." H. Res. 503, § 5(c)(6)(A). In its district court brief, the 117th House argued that then-Representative Liz Cheney was the Select Committee's ranking minority member. *See* House District Court Br. at 8-10. However, this after-the-fact attempt to concoct a justification for the Committee's actions lacks support, and this House repudiates it.

Tellingly, the 117th House's brief did not cite any contemporaneous evidence referring to Representative Cheney as the ranking minority member or ranking member of the Committee. That is because she was not the ranking minority member of the Committee. Instead, on September 2, 2021, Chairman Thompson named Representative Cheney as the Select Committee's Vice Chair. *See* Press Release, Select Comm. to Investigate the January 6th Attack on the U.S.

6

Capitol, *Chairman Thompson Announces Representative Cheney as Select Committee Vice Chair* (Sept. 2, 2021), https://perma.cc/5L3W-DQCS. And throughout the Select Committee's work, Representative Cheney was always referred to as the Vice Chair, not the ranking minority member. *See, e.g.*, Final Report of the Select Committee to Investigate the January 6th Attack on the United States Capitol, H. Rep. No. 117-663, at ii (2022) (listing Representative Cheney as Vice Chair), https://perma.cc/R4VN-F2E5.

In the House Rules, a ranking minority member of a committee is distinct from the position of committee vice chair. The term ranking minority member is used throughout the House Rules in a manner that makes clear that he or she leads the minority members and staff of the committee. *See, e.g.*, Rule X.9(a)(1), Rules of the House of Representatives, 117th Cong. (2021) (House Rules) ("Each professional staff member … shall be assigned to the chair and the ranking minority member of the committee, as the committee considers advisable."), https://perma.cc/2L8Q-BJXR; House Rule X.11(g)(2)(G) ("Debate … shall be limited to two hours equally divided and controlled by the chair and ranking minority member of the select committee."); House Rule XI.3(b)(1)(C) (explaining a situation where "the chair and ranking minority member shall establish jointly an investigative subcommittee"); House Rule X.5(a)(4)(B) ("Whenever the chair and the ranking minority member of the Committee on Ethics jointly determine that

7

Members, Delegates, or the Resident Commissioner … should be assigned to serve on an investigative subcommittee of that committee, each of them shall select an equal number of such Members, Delegates, or Resident Commissioner from the respective party of such individual to serve on that subcommittee.").

He or she is, in essence, the minority counterpart to the chairman. *See, e.g.*, House Rule XI.3(m)(2) (noting that "the chair shall designate one member of a subcommittee to serve as chair and the ranking minority member shall designate one member of the subcommittee to serve as the ranking minority member"). The meaning of this term of art is not shrouded in mystery. The ranking minority member is referred to colloquially as the ranking member, a term used ubiquitously as House committees conduct their work and familiar to anyone who has watched House committee hearings. And when the House Rules use the title "ranking member," it is plainly referring to the ranking *minority* member. *Compare* House Rule XI.3(b)(1)(B)(i) ("Upon the receipt of information offered as a complaint …, the [Committee on Ethics] chair and ranking minority member jointly may appoint members to serve as an investigative subcommittee."), *with* House Rule XI.3(b)(8)(A) ("[T]he chair of the Committee on Ethics shall make public the written report and findings of the board unless the chair and ranking member, acting jointly, decide or the committee votes to withhold such information …."); *compare* House Rule X.7(d) ("Payments under this clause shall be made on

8

vouchers authorized by the committee involved, signed by the chair of the committee, except as provided in paragraph (e) ...."), *with* House Rule X.7(e) ("[P]ayments under this clause shall be made on vouchers signed by the ranking member of the committee as it was constituted at the expiration of the preceding Congress who is a member of the majority party in the present Congress.").

A committee vice chair, by contrast, is designated by the chairman to "preside during the absence of the chair from any meeting." House Rule XI.2(d). He or she is, in effect, a second-in-command and is supposed to be a "member of the majority party" on the committee. *Id.*

In its district court brief, the 117th House attempted to brush aside these inconvenient facts in two ways. *First*, it relied upon an explanation of the term "ranking member" that appears in the Glossary of Legislative Terms (Glossary) on the Congress.gov website and claimed that Representative Cheney fit that description. *See* House District Court Br. at 9. But the Glossary on the Congress.gov website does not purport to provide binding—let alone precise— definitions. Rather, the House Rules, which the House itself adopts, is the authoritative source on House terminology. The Glossary, by contrast, contains only "[b]rief explanations of legislative terms used throughout Congress.gov." *See Glossary of Legislative Terms*, Congress.gov, https://www.congress.gov/help/legislative-glossary (last visited July 18, 2024). Moreover, the Glossary is not

9

even specific to the House, and the "brief explanation" of the term "ranking member" upon which the 117th House relied is a generic one intended to cover the Senate as well. The 117th House's reliance on a website not run by the House—rather than the House Rules—demonstrates that its argument lacks support in any authoritative House source.

*Second*, the 117th House claimed that there was "no Member who uses the formal title 'ranking member'" because "the Select Committee is functioning differently than other House Committees"; for example, "there is no formalistic division between majority Members and minority Members, or majority staff and minority staff"—"the Select Committee is functioning as a single, unified body with a joint staff"—and "matters like division of time and questioning in depositions are not governed by party affiliation." House District Court Br. at 9-10.

While perhaps true as factual matter, this point shows that the 117th House's argument is self-defeating. Indeed, if the Select Committee was functioning as a unified body with a joint staff, that only strengthens the argument that it did not have a ranking minority member. Representative Cheney was not leading the minority on the Select Committee because there was no separate minority to lead. Consistent with the 117th House's admission that the Select Committee was functioning as a unified body—not a committee with majority and minority

10

members who have separate staffs—she was designated by the Chairman to be his second-in-command and was acting as a part of the Select Committee's unified membership.

As the saying goes, if it looks like a duck, walks like a duck, and quacks like a duck, it's probably a duck. And here, Representative Cheney was named the Select Committee's Vice Chair, functioned as the Select Committee's Vice Chair, and referred to herself as the Select Committee's Vice Chair. It is therefore the view of this House that she was the Select Committee's Vice Chair, not its ranking minority member.

## CONCLUSION

This House believes that, per House Resolution 503, the Speaker had a non-discretionary duty to appoint 13 Members to the Select Committee. And she should have appointed five Members of the minority party after consulting with the ranking minority member. House Resolution 503 likewise required the Chairman to consult with the ranking minority member before issuing any subpoena. In this House's view, none of these things happened.

Respectfully submitted,

*/s/ Matthew B. Berry*
Matthew B. Berry
   *General Counsel*
Bradley Craigmyle
   *Associate General Counsel*

*Office of General Counsel*
*U.S. House of Representatives*
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Matthew.Berry@mail.house.gov
*Counsel for the U.S. House of Representatives*

July 22, 2024

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation in this Court's order dated September 27, 2023, because this brief contains 2,562 words excluding the parts of the brief exempted by Fed. R. App. P. 29(b)(4).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Times New Roman type.

*/s/ Matthew B. Berry*
Matthew B. Berry

13