————————————

No. 22-3086
(Cr. 21-670-CJN)

————————————

UNITED STATES OF AMERICA,                    Appellee,

v.

STEPHEN K. BANNON,                           Appellant.

# OPPOSITION TO APPELLANT'S PETITION FOR REHEARING EN BANC

## INTRODUCTION

A jury convicted Stephen Bannon of two counts of contempt of
Congress, 2 U.S.C. § 192, based on his deliberate failure to provide
documents and to appear for a deposition, as ordered by the House of
Representatives Select Committee to Investigate the January 6th Attack
on the United States Capitol (the Committee). A panel of this Court
unanimously affirmed Bannon's convictions concluding, inter alia, that
this Court's decision in *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir.
1961), "directly rejects" Bannon's challenge to the district court's
interpretation of "willfully" for purposes of Section 192. *United States v.*

*Bannon*, 101 F.4th 16, 21 (D.C. Cir. 2024). This Court and the Supreme Court denied Bannon's subsequent motions for release pending appeal. Bannon now petitions for rehearing en banc. The Court has ordered the government to file a response "limited to the question of the meaning of 'willfully' in 2 U.S.C. § 192 and whether [the Court] should revisit *Licavoli*[ ]." Order, No. 22-3086 (July 22, 2024).

This Court should not revisit *Licavoli*, which correctly held that "willfully" for purposes of Section 192 means "deliberately" and "intentionally" and does not require proof that the defendant acted in bad faith. That holding accords with uniform Supreme Court case law addressing the mental state required for a Section 192 conviction. Interpreting "willfully" in this context to mean only deliberately and intentionally also serves the purpose of Section 192 to vindicate Congress's investigative authority. Because en banc review is unnecessary to secure or maintain uniformity of the Court's decisions, and because this case does not present a question of exceptional importance, the Court should deny Bannon's petition for rehearing en banc. *See* Fed. R. App. P. 35(a).

# BACKGROUND

As detailed in the panel opinion, *see Bannon*, 101 F.4th at 19-20, the Committee issued a subpoena to Bannon to provide documents and appear for a deposition. Even though the subpoena sought information only about communications occurring several years after Bannon had left the Executive Branch, Bannon refused to comply with the subpoena, claiming that former President Trump intended to assert executive privilege. The Committee repeatedly rejected Bannon's executive-privilege excuse: it noted that former President Trump had not formally asserted the privilege; that any such assertion would not excuse Bannon's wholesale noncompliance; and that there were available procedures for Bannon to raise before the Committee any particularized privilege claims. Bannon persisted in his refusal to comply, even after President Trump's counsel made clear that there had been no blanket assertion of executive privilege, and that Bannon was not immune from testifying.

Under 2 U.S.C. § 192, it is a misdemeanor if a person who has been summoned by Congress to testify or produce documents upon a matter under inquiry "willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry." Bannon

was charged under the "willfully makes default" clause of the statute. In the district court, he argued that "willfully" requires a showing of bad faith, and he sought to show at trial that he had not willfully defaulted because he had acted in good faith on the advice of his attorney. The district court and the panel held that *Licavoli* foreclosed Bannon's advice-of-counsel defense. *Bannon*, 101 F.4th at 21-23.

In *Licavoli*, this Court held that a defendant "willfully" defaults under Section 192 if he "deliberately" and "intentionally" refuses to comply with a congressional subpoena and that reliance on the advice of counsel is no defense. 294 F.2d at 207-09; *accord Dennis v. United States*, 171 F.2d 986, 990 (D.C. Cir. 1948); *Fields v. United States*, 164 F.2d 97, 100 (D.C. Cir. 1947). In finding no basis to depart from *Licavoli*, the panel noted that Supreme Court cases interpreting the "refuses to answer" clause of Section 192 required only a deliberate and intentional refusal to answer and that *Licavoli* had rejected the argument that the two statutory clauses should be read as requiring different mental states. *Bannon*, 101 F.4th at 21-22. "Moreover," the panel stated, "cases addressing Section 192 have explained why, as a practical matter,

requiring evidence of bad faith would undermine the statute's function." *Id.* at 22.

## DISCUSSION

Bannon's request to revisit this Court's 60-year-old decision in *Licavoli* does not meet the "demandingly high" standards for en banc review. *Jenkins v. Tatem*, 795 F.2d 112, 114 (D.C. Cir. 1986). Rehearing en banc is "not favored and ordinarily will not be ordered unless (1) en banc consideration is necessary to secure or maintain uniformity of the [C]ourt's decisions; or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). The *Licavoli* definition of "willfully" in Section 192 does not impair uniformity of the case law. As the panel recognized, "every case that addresses the mental state required for a contempt of Congress conviction firmly supports *Licavoli*'s holding." *Bannon*, 101 F.4th at 21. *Licavoli* also does not present a question of exceptional importance. The Court, therefore, should deny Bannon's petition for rehearing en banc.

*Licavoli* does not conflict with governing case law but instead directly follows Supreme Court cases interpreting Section 192. In *United States v. Helen Bryan*, 339 U.S. 323 (1950), for example, the defendant

was convicted of having "willfully ma[de] default" based on her failure to produce records in response to a congressional subpoena. *Id.* at 326. The Supreme Court stated that the government had "made out a *prima facie* case" of willful default simply by showing that "on the day set out in the subpoena she intentionally failed to comply." *Id.* at 330. The Court reached that result even though the defendant claimed she had resisted production "after consulting with counsel" and coming "to the conclusion that the subpoena was not valid." *Id.* at 325. The Court explained that a willful default is established by "an intentional failure to testify or produce papers, however the contumacy is manifested." *Id.* at 329.

Bannon tries to downplay *Helen Bryan* on the theory that the defendant there did not specify to the requesting committee her reasons for not complying with the subpoena (Pet. 12-13). But he cannot explain why that aspect of the defendant's conduct would affect the definition of the mens rea element. If, as Bannon asserts, the term "willfully" in Section 192 requires proof of a defendant's knowledge that his conduct was unlawful, then it would not matter whether the lack of knowledge was private or public. And in any event, Bannon—like Helen Bryan—allowed the subpoena deadline to pass without any response to Congress

and only belatedly tried to excuse his noncompliance. *See Bannon*, 101 F.4th at 19.

Moreover, *Helen Bryan* aligns with other Supreme Court cases involving a witness's refusal to answer questions at an appearance before Congress. In *Sinclair v. United States*, 279 U.S. 263 (1929), the Supreme Court stated that contempt of Congress does not involve "moral turpitude" and that an "[i]ntentional violation is sufficient to constitute guilt." *Id.* at 299. The Court held that the exclusion of evidence that the defendant had refused to answer "in good faith on the advice of competent counsel" did not entitle him to a new trial because a defendant's "mistaken view of the law is no defense." *Id.* Other Supreme Court cases reflect the same understanding of the mental state required to violate Section 192. *See, e.g., Watkins v. United States*, 354 U.S. 178, 208 (1957) ("An erroneous determination on [the witness's] part, even if made in the utmost good faith, does not exculpate him."); *Quinn v. United States*, 349 U.S. 155, 165 (1955) ("deliberate, intentional refusal to answer"); *see also, e.g., United States v. Fleischman*, 339 U.S. 349, 360, 364 (1950).

Contrary to Bannon's suggestion (Pet. 12), these cases are not inapposite because they address the second clause of Section 192 ("having

appeared, refuses to answer") which, unlike the first clause ("makes default"), is not modified by "willfully." There is no basis to distinguish between the mental states required for the two clauses. As this Court explained in *Licavoli*, it was unnecessary to add "willfully" to the second clause because "a refusal to answer—the witness having appeared, being present and conscious of what is going on, understanding the question, and being advised of its pertinency—is obviously in and of itself a willful act." 294 F.2d at 208. A failure to respond to a subpoena, on the other hand, "might be due to many causes other than deliberate intention," including "illness, travel trouble, misunderstanding, etc." *Id.* Thus, "willfully" was a "necessary adverb" in defining criminal defaults. *Id.* The difference between the two clauses of Section 192 simply reflects that adding "willfully" to "refuses to answer" would have been superfluous because the language of that clause already covers only willful acts. Notably, Bannon appears to agree that reliance on counsel's advice cannot excuse a deliberate refusal to answer questions under Section 192, but he offers no sound reason that Congress would have permitted such reliance to excuse the even more contumacious behavior of total default.

It also is not correct, as Bannon asserts (Pet. 9-10), that the Supreme Court has "uniformly" interpreted "willfully" in criminal statutes to require knowledge of unlawfulness. Although for many criminal statutes "willfully" does mean "with a bad purpose," that is only the "general" rule. *Sillasse Bryan v. United States*, 524 U.S. 184, 191 (1998) (internal quotation marks omitted). The Supreme Court has made clear that "willfully" is "a word of many meanings whose construction is often dependent on the context in which it appears." *Id.* (internal quotation marks omitted). And "[o]ne may say, as the law does in many contexts, that 'willfully' refers to consciousness of the act but not to consciousness that the act is unlawful." *Cheek v. United States*, 498 U.S. 192, 208-09 (1991) (Scalia, J., concurring in the judgment). In the specific context of willful default on a congressional subpoena, "an intentional failure to testify or produce papers" is sufficient. *Helen Bryan*, 339 U.S. at 329.

Furthermore, contempt of Congress is not the only context where the Supreme Court has defined "willfully" to mean deliberately or intentionally. In *Browder v. United States,* 312 U.S. 335 (1941), the Supreme Court interpreted the phrase "willfully and knowingly," in the

context of a statute criminalizing the use of a passport obtained by false statements, to mean "deliberately and with knowledge and not something which is merely careless or negligent or inadvertent." *Id.* at 341. The inclusion of the word "knowingly" in that statute's mens rea element (Pet. 10) does not lessen the significance of *Browder*. The Supreme Court emphasized that "the word 'willful' often denotes an intentional as distinguished from an accidental act," and that "[o]nce the basic wrong under this passport statute is completed, that is the securing of a passport by a false statement, any intentional use of that passport in travel is punishable." *Id.* at 342.

In the context of contempt of Congress, there is good reason to define "willfully" to mean no more than "deliberately" and "intentionally." As the panel recognized, 101 F.4th at 22, requiring evidence of bad faith in a Section 192 prosecution would undermine the purpose of the statute. Congress's "power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862 (2020) (internal quotation marks omitted). Without the ability to enforce its subpoenas, Congress "could be seriously handicapped in its efforts to exercise its constitutional function wisely

and effectively." *Quinn*, 349 U.S. at 160-61. If a subpoena is treated as "an invitation to a game of hare and hounds," then "the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity." *Helen Bryan*, 339 U.S. at 331. Defining the mens rea element of contempt of Congress to require only deliberate and intentional conduct prevents recalcitrant witnesses from using the excuse of counsel's advice, however misguided, to "hamstring Congress's investigative authority." *Bannon*, 101 F.4th at 18.

Bannon's other arguments do not establish any conflict between *Licavoli* and applicable case law. *Licavoli* did not "disregard[]" *Murdock v. United States*, 290 U.S. 389 (1933), as Bannon claims (Pet. 11), but expressly—and correctly—distinguished it. *See Licavoli*, 294 F.2d at 208-09. *Murdock* involved a tax statute. In *Murdock*, the Supreme Court principally distinguished *Sinclair*, a Section 192 case on which the government had relied, on the ground that *Sinclair* "construed an altogether different statutory provision." 290 U.S. at 396-97. *Murdock* recognized that the meaning of willfully depends on "context," and held that in the tax context, "Congress did not intend" to criminalize a taxpayer's "bona fide misunderstanding" of his tax liability. *Id.* at 395-

96. No similar rationale applies to a summoned witness's deliberate default on a congressional subpoena, and *Murdock* did not purport to define "willfully" for purposes of Section 192. Indeed, subsequent Supreme Court cases, such as *Helen Bryan*, made clear that an intentional refusal to comply suffices under the clause criminalizing one who "willfully makes default." 339 U.S. at 329.

Nor does *McPhaul v. United States*, 364 U.S. 372 (1960) (Pet. 12-13), suggest any reason to revisit *Licavoli*. In *McPhaul*, a defendant who was convicted of violating Section 192 by failing to produce documents claimed for the first time before the Supreme Court that there was no evidence that the requested records existed or were within his possession and control. *Id.* at 378. The Supreme Court faulted McPhaul for failing to raise any such objection before the committee that subpoenaed him, to which he owed a duty to state his reasons for noncompliance. *Id.* at 379. The Court also found that the evidence of the committee's reasonable basis for believing the defendant had the records, coupled with his failure to suggest otherwise to the committee, "established a prima facie case of willful failure to comply with the subpoena." *Id.* Far from undermining *Licavoli*, the Court's finding of a prima face case of willfulness based

simply on McPhaul's evident possession of the documents and his unexplained refusal to produce them accords with all the cases requiring no more than a deliberate and intentional refusal to comply.

This case also does not present an issue of exceptional importance (see Pet. 15-17) warranting en banc review, especially given Bannon's failure to satisfy the high bar for overruling a statutory precedent like *Licavoli. See Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 456 (2015). Prosecutions for contempt of Congress rarely arise, and Bannon provides no support for his speculation (Pet. 4-5, 15-16) that *Licavoli*, which has been the law of this jurisdiction for over 60 years, now suddenly threatens the separation of powers. And although current Executive Branch officials who refuse to comply with a congressional subpoena based on the sitting President's assertion of executive privilege (*cf.* Pet. 16-17) might have a constitutional defense to prosecution, that has no bearing on the correctness of *Licavoli* as a matter of statutory interpretation. In any event, *Licavoli* relied on *Helen Bryan*, and where, as here, "a precedent of th[e Supreme] Court has direct application in a case, . . . the Court of Appeals should follow the case which directly controls, leaving to th[e Supreme] Court the prerogative of overruling its

own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (internal quotation marks omitted).

The facts of this case particularly counsel against en banc review of *Licavoli*. The record shows that (1) President Trump did not formally invoke any privilege before the Committee or at any time prior to Bannon's total default;[1] (2) most of the topics covered by the subpoena had nothing to do with any communications with the former President, and indeed concerned events long postdating Bannon's service in the Executive Branch; (3) Bannon disregarded the procedures for invoking any available privilege claims set forth in the subpoena itself; (4) President Trump's counsel made clear that the former President had neither authorized nor directed Bannon's complete noncompliance and that Bannon was not immune from testifying; and (5) Bannon's own attorney warned Bannon that he was in a "dangerous position." *See, e.g., Bannon*, 101 F.4th at 19-20; Appendix 442-43, 448, 4828, 4831, 4835,

---

[1] In asserting that "President Trump reiterated in writing his invocation of executive privilege" (Pet. 6), Bannon neglects to mention that this written invocation occurred on the eve of trial, nine months after Bannon defaulted, and that it did not address his obligation to provide documents. *See Bannon*, 101 F.4th at 23 n.2; Appendix 4781.

4838-40, 4843-45. Because the record refutes Bannon's claim that he acted in good faith in refusing to comply with the subpoena, any error in applying the *Licavoli* definition of "willfully" would be harmless. This case, therefore, does not justify the extraordinary procedure of rehearing en banc.

## CONCLUSION

WHEREFORE, the government respectfully requests that the petition for rehearing en banc be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
Assistant United States Attorney

/s/
ELIZABETH H. DANELLO
D.C. Bar #407606
Assistant United States Attorney
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Elizabeth.Danello@usdoj.gov
(202) 252-6829

## CERTIFICATE OF PAGE LIMIT
## AND COMPLIANCE WITH RULE 27(d)(1)(E)

I HEREBY CERTIFY that this motion does not exceed 15 pages and thus complies with the Court's order of July 22, 2024. This motion has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
_____
ELIZABETH H. DANELLO
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of July, 2024, I have caused a copy of the foregoing motion to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, R. Trent McCotter, tmccotter@boydengray.com.

/s/
_____
ELIZABETH H. DANELLO
Assistant United States Attorney
