# [ORAL ARGUMENT HAS NOT BEEN SCHEDULED]

In The

# United States Court Of Appeals
## For The D.C. Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## STEPHEN K. BANNON,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

————————————

## JOINT APPENDIX
## Volume IX of XII
## (Pages: 3577 - 3993)

————————————

David I. Schoen
LAW OFFICE OF
  DAVID I. SCHOEN
2800 Zelda Road
Suite 100-6
Montgomery, AL  36106
(334) 395-6611

Chrisellen R. Kolb
Elizabeth H. Danello
U.S. ATTORNEY'S OFFICE
(USA) APPELLATE DIVISION
601 D Street, NW
Washington, DC  20530
(202) 252-6829

*Counsel for Appellant*

*Counsel for Appellee*

Gibson Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218)  ♦  Richmond, VA  23219
804-249-7770 ♦ www.gibsonmoore.net

## TABLE OF CONTENTS
### Joint Appendix Volume I of XII

**Page:**

**Docket Entries [1:21-cr-00670-CJN-1]**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Docket Entries [1:22-mc-00060-CJN]**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Indictment**
    **filed November 12, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**Transcript of Return on Arrest Warrant & Initial Appearance**
**Before the Honorable Robin M. Meriweather**
    **on November 15, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

**Transcript of Video Arraignment/Status Conference**
**Before the Honorable Carl J. Nichols**
    **on November 18, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

**Transcript of Video Status Conference**
**Before the Honorable Carl J. Nichols**
    **on December 7, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

**Defendant's Motion to Compel Discovery,**
**With Exhibits,**
    **filed February 4, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 158

    **Exhibits:**

    1.    **Letter**
           **dated January 14, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . 186

    2.    **Letter**
           **dated January 28, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . 194

**Exhibits** to

**Defendant's Motion to Compel Discovery**
     **filed February 4, 2022, Continued:**

3.      Letter
         dated October 7, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 197

4.      FBI Interview of Robert J. Costello, Esquire
         dated November 3, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . 169

7.      H. Res. 503, Sec. 5(c)(6)(A) & (B)
         dated June 20, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 214

8.      Procedures Adopted by 117th Congress
      Regulations for Use of Deposition Authority
         dated January 4, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 229

9.      FBI Interview of U.S. House of Representatives
      General Counsel Doug Letter
         dated November 2, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . 231

10.    Letter from Ronald C. Machen Jr., U.S. Attorney,
      to Speaker of the House John A. Bohner
         dated March 31, 2015. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 240

11.    Prosecution for Contempt of Congress of an
      Executive Branch Official Who Has Asserted a
      Claim of Executive Privilege
         8 Op. O.L.C. 101 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . 248

12.    Attempted Exclusion of Agency Counsel from
      Congressional Depositions of Agency
      Employees, Slip Op.
         dated May 23, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 291

Government's Motion *in Limine* to Exclude Evidence or
Argument Relating to Good-faith Reliance on
Law or Advice of Counsel,
With Attachment,
> filed February 4, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 311

> Attachment:

> Letter
> > dated October 7, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 319

Defendant's Opposition to Government
Motion *in Limine* on Advice of Counsel,
With Exhibit,
> filed February 25, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 329

> Exhibit:

> 1.    Declaration of Robert J. Costello, Esquire
> > sworn on February 25, 2022.. . . . . . . . . . . . . . . . . . . . . . . 356

Defendant's Reply in Support of His Motion to Compel Discovery,
With Exhibit,
> filed March 8, 2022.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 371

> Exhibit:

> 1.    Table That Sets Forth the Positions
> > Taken by the Government and Defense. . . . . . . . . . . . . . . . . 385

**Government's Reply in Support of its Motion *in Limine* to Exclude Evidence or Argument Relating to Good-faith Reliance on Law or Advice of Counsel,**

**With Exhibits,**

filed March 8, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 390

**Exhibits:**

1.     **E-mail Correspondence [US-001038-40]**
        **various dates.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 418

2.     **Letter from Justin Clark**
        **dated October 6, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 422

3.     **Email from Committee Counsel**
        **dated October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 428

4.     **Email from Costello**
        **dated October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 430

5.     **Email from Committee Counsel**
        **dated October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 436

6.     **Costello Email Chain**
        **dated October 14, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 439

7.     **Costello and Clark Email Exchange**
        **dated October 14-18, 2021.** . . . . . . . . . . . . . . . . . . . . 444

## TABLE OF CONTENTS
### Joint Appendix Volume II of XII

**Page:**

**Transcript of Oral Argument**
**Before the Honorable Carl J. Nichols**
> on March 16, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 457

**Defendant's Surreply to the Government's Reply in Support of its**
**Motion *in Limine* to Exclude Evidence or Argument Relating to**
**Good-faith Reliance on Law or Advice of Counsel**
> filed March 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 556

**Defendant's Supplemental Brief in Opposition to the**
**Government's Motion *in Limine* on Advice of Counsel,**
**With Exhibits,**
> filed March 22, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 565

> Exhibits:

> 1.   Senate Committee Investigation
> dated August 8, 1958.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 577

> 2.   Application of 28 U.S.C. § 458 to Presidential
> Appointments of Federal Judges
> dated December 18, 1995.. . . . . . . . . . . . . . . . . . . . . . . . 584

> 3.   Letter from Michael B. Mukasey, Attorney
> General, to the Hon. Nancy Pelosi, Speaker of the
> House of Representatives
> dated February 29, 2008.. . . . . . . . . . . . . . . . . . . . . . . . . 599

**Exhibits** to
**Defendant's Supplemental Brief in Opposition to the**
**Government's Motion** *in Limine* **on Advice of Counsel**
        **filed March 22, 2022, Continued:**

4.    **Response to Congressional Requests for**
      **Information Regarding Decisions Made Under the**
      **Independent Counsel Act,**
            **10 Op. O.L.C. 68 (1986)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . **601**

5.    **Rex Lee, Executive Privilege, Congressional Subpoena**
      **Power, and Judicial Review: Three Branches,**
      **Three Powers, and Some Relationships,**
            **1978 B.Y.U. L. Rev. 231, 259**. . . . . . . . . . . . . . . . . . . . . . . . **619**

6.    **Whether the Department of Justice May Prosecute**
      **White House Officials for Contempt of Congress,**
            **2008 WL 11489049 (O.L.C.)**. . . . . . . . . . . . . . . . . . . . . . . . **688**

7.    **Congressional Oversight of the White House,**
            **2021 WL 222744 (O.L.C.)**. . . . . . . . . . . . . . . . . . . . . . . . . **692**

**Amended Exhibit** to
**Defendant's Supplemental Brief in Opposition to the**
**Government's Motion** *in Limine* **on Advice of Counsel**
        **filed March 23, 2022:**

3.    **Letter from Michael B. Mukasey, Attorney**
      **General, to the Hon. Nancy Pelosi, Speaker of the**
      **House of Representatives**
            **dated February 29, 2008**. . . . . . . . . . . . . . . . . . . . . . . . . **722**

**Government's Response to Defendant's Supplemental Brief in**
**Opposition to the Government's Motion** *in Limine* **to Exclude**
**Evidence and Argument Relating to Good-faith**
**Reliance on Law or Advice of Counsel**
        **filed March 29, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **725**

Defendant's Supplemental Reply on Waiver
      filed March 30, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 735

Order
      filed April 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 741

Government's Motion *in Limine* to Exclude Evidence of
Department of Justice Opinions and Writings,
With Exhibits,
      filed April 15, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 745

      Exhibits:

      1.    Letter from White House Deputy Counsel to Costello
            dated October 18, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 765

      2.    Letter from Justin Clark to Costello
            dated October 6, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 767

      3.    Emails from Justin Clark to Costello
            various dates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 769

Government's Motion *in Limine* to Exclude Evidence
Relating to Objections to Subpoena That Defendant Waived,
With Exhibit,
      filed April 15, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 771

      Exhibit:

      1.    Subpoena
            dated September 23, 2021. . . . . . . . . . . . . . . . . . . . . . . . . 781

Government's Motion *in Limine* to Exclude Evidence of the
Defendant's Prior Experience with Subpoenas
      filed April 15, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 792

**Defendant's Notice Pursuant to Rule 12.3, Fed. R. Crim. P.**

      **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **798**

**Defendant's Motion to Exclude Evidence**

      **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **800**

**Defendant's Motion to Dismiss the Indictment,**
**With Exhibits,**

      **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **807**

    <u>**Exhibits:**</u>

    **A.**    **H. Res. 8 (Adoption of Rules for 117th Congress)**

          **dated January 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **867**

    **B.**    **H. Res. 503 (Authorizing House Select Committee)**

          **dated June 30, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **912**

    **C.**    **Regulations For Use Of Deposition Authority**

          **dated January 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **927**

    **D.**    **Amerling and Letter FBI 302**

          **dated November 10, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . **929**

## TABLE OF CONTENTS
### Joint Appendix Volume III of XII

**Page:**

**Exhibits to**
**Defendant's Motion to Dismiss the Indictment**
    **filed April 15, 2022, Continued:**

**E.**    **Rules of the 117th Congress**
        **dated February 2, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **938**

**F.**    **Republican Conference Rules of the 117th Congress.** . . . . . . **991**

**G.**    **Congressional Oversight of The White House,**
        **45 Op. O.L.C. slip op. (Jan. 8, 2021).** . . . . . . . . . . . . . . . **1005**

**H.**    **Assertion of Executive Privilege Concerning the**
    **Dismissal and Replacement of U.S. Attorneys**
        **dated June 27, 2007.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1065**

**I.**    **Immunity of the Former Counsel to the President from**
    **Compelled Congressional Testimony,**
        **43 Op. O.L.C. slip op. (July 10, 2007).** . . . . . . . . . . . . . . **1075**

**J.**    **Prosecution for Contempt of Congress of an Executive**
    **Branch Official Who Has Asserted a Claim of Privilege,**
        **8 Op. O.L.C. 101 (1984).** . . . . . . . . . . . . . . . . . . . . . . . . . . **1079**

**K.**    **Whether the Department of Justice May Prosecute**
    **White House Officials for Contempt of Congress,**
        **32 Op. O.L.C 65 (2008).** . . . . . . . . . . . . . . . . . . . . . . . . . . . **1122**

**L.**    **Application of 28 U.S.C. Sec. 458 to Presidential**
    **Appointments of Federal Judges,**
        **19 Op. O.L.C slip op. (December 18, 1995).** . . . . . . . . . **1128**

**Exhibits** to

**Defendant's Motion to Dismiss the Indictment**
     **filed April 15, 2022, Continued:**

M.    **Randolph D. Moss, Executive Branch Legal Interpretation:**
       **A Perspective from the Office of Legal Counsel,**
          **52 Admin. L. Rev. 1303 (2000)**. . . . . . . . . . . . . . . . . . . . . **1143**

N.    **Testimonial Immunity Before Congress of the**
       **Former Counsel to the President,**
          **43 Op. O.L.C. slip op. (May 20, 2019).** . . . . . . . . . . . . . **1172**

O.    **Response to Congressional Requests for**
       **Information Regarding Decisions Made**
       **Under the Independent Counsel Act,**
          **10 Op. O.L.C. 68 (1986)**. . . . . . . . . . . . . . . . . . . . . . . . . **1194**

P.    **Letter from Ronald C. Machen Jr., U. S. Attorney, to**
       **Speaker John A. Boehner**
          **dated March 31, 2015.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **1220**

Q.    **Letter from Michael B. Mukasey, Attorney General, to**
       **Speaker of the House, Hon. Nancy Pelosi**
          **dated February 29, 2008.** . . . . . . . . . . . . . . . . . . . . . . . . . **1228**

R.    **Steven G. Bradbury, Memorandum for Attorneys of the**
       **Office Re: Best Practices for OLC Opinions**
          **May 16, 2005.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1231**

S.    **Trevor W. Morrison, Stare Decisis in the**
       **Office of Legal Counsel,**
          **110 COLUM. L. REV. 1448 (2010).**. . . . . . . . . . . . . . . . **1237**

T.    **Walter Dellinger, et al., Principles to**
       **Guide the Office of Legal Counsel**
          **dated Dec. 21, 2004.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1261**

**Exhibits** to

**Defendant's Motion to Dismiss the Indictment**
   **filed April 15, 2022, Continued:**

U.    David J. Barron, Memorandum for Attorneys of the
      Office Re: Best Practices for OLC Legal
      Advice and Written Opinions
            dated July 16, 2010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1268

V.    Frank H. Easterbrook, Presidential Review,
      40 CASE W. RES. L. REV. 905 (1990). . . . . . . . . . . . . . 1275

W.    Presidential Authority to Decline to Execute
      Unconstitutional Statutes, OLC Mem. Op.
            dated November 2, 1984. . . . . . . . . . . . . . . . . . . . . . . . . 1302

X.    Douglas W. Kmiec, OLC's Opinion Writing Function:
      The Legal Adhesive for a Unitary Executive,
            15 CARDOZO L. REV. 337 (1993). . . . . . . . . . . . . . . . 1316

## TABLE OF CONTENTS
## Joint Appendix Volume IV of XII

**Page:**

**Exhibits to**
**Defendant's Motion to Dismiss the Indictment**
    **filed April 15, 2022, Continued:**

  Y.  **Applying Estoppel Principles in Criminal Cases,**
       **78 YALE L.J. 1046 (1969)**................................ **1355**

  Z.  **Anne Bowen Pouliun, Prosecutorial Inconsistency,**
     **Estoppel, and Due Process: Making the**
     **Prosecution Get its Story Straight,**
       **18 Cal. L. Rev. 1423 (2001)**................................ **1384**

  AA.  **Rex E. Lee, Executive Privilege, Congressional Subpoena**
     **Power, and Judicial Review: Three Branches, Three**
     **Powers, and Some Relationships,**
       **1978 B.Y.U. L. REV. 231 (1978)**........................ **1441**

  BB.  **John O. McGinnis, Models of the Opinion Function of the**
     **Attorney General: A Normative, Descriptive, and**
     **Historical Prolegomenon,**
       **15 CARDOZO L. REV 375 (1993)**.................. **1510**

  CC.  **Griffin B. Bell, The Attorney General: The Federal**
     **Government's Chief Lawyer and Chief Litigator, or**
     **One Among Many?,**
       **46 FORDHAM L. REV. 1049 (1978)**............... **1572**

**Exhibits** to
**Defendant's Motion to Dismiss the Indictment**
        **filed April 15, 2022, Continued:**

**DD.  Notes, The Immunity-Conferring**
        **Power of the Office of Legal Counsel,**
            **121 HARV. L. REV. 2086 (2008).** . . . . . . . . . . . . . . . . . . **1596**

**EE.  U.S. Department of Justice, Criminal**
        **Resource Manual § 2055 (Public Authority Defense).** . . . . **1621**

**Defendant's Notice of Filing,**
**With Attached Motion to Dismiss the Indictment and Exhibits Index,**
        **filed April 19, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1627**

**Government's Response to Defendant's**
**Notice under Federal Rule of Procedure 12.3**
        **filed April 29, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1695**

**Defendant's Opposition to the Government's**
**Motion *in Limine* Based on Waiver**
        **filed May 6, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1698**

**Defendant's Opposition to the Government's**
**Motion to Exclude Prior Subpoena Evidence**
        **filed May 6, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1709**

**Defendant's Response to Government's Motion *in***
***Limine* to Exclude Evidence of Department of**
**Justice Opinions and Writings [Doc. 52]**
        **filed May 6, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1720**

**Government's Opposition to Defendant's Motion to Dismiss,**
**With Exhibits,**

> **filed May 6, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1745**

<u>**Exhibits:**</u>

1.    **Letter from Chairman Bennie G. Thompson to**
       **Mr. Stephen K. Bannon**

> **dated September 23, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . **1793**

2.    **E-mail from Cooney to Costello**

> **dated November 3, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . **1796**

3.    **E-mail from Costello to Cooney**

> **dated November 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . **1800**

4.    **E-mail from Cooney to Costello**

> **dated November 5, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . **1803**

## TABLE OF CONTENTS
## Joint Appendix Volume V of XII

**Page:**

**Government's Opposition to**
**Defendant's Motion to Exclude Evidence**
>    filed May 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1806

**Defendant's Reply in Support of His Motion to Exclude Evidence**
>    filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1812

**Government's Reply in Support of Motion *in Limine* to Exclude**
**Evidence of Department of Justice Opinions and Writings**
>    filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1818

**Government's Reply in Support of Motion *in Limine* to**
**Exclude Evidence Relating to Objections to**
**Subpoena That Defendant Waived**
>    filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1837

**Government's Reply in Support of Motion *in Limine* to Exclude**
**Evidence of the Defendant's Prior Experience with Subpoenas**
>    filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1846

**Defendant's Reply in Support of His Motion to Dismiss Indictment,**
**With Exhibits,**
>    filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1855

> Exhibits:

>    1.    Letter from Chairman Bennie G. Thompson to
>          Mr. Stephen K. Bannon
>                dated September 23, 2021. . . . . . . . . . . . . . . . . . . . . . . . 1885

>    2.    Transcript of Oral Argument
>          Before the Honorable Carl J. Nichols
>                on March 16, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1894

**Exhibits** to
**Defendant's Reply in Support of His Motion to Dismiss Indictment**
        **filed May 17, 2022, Continued:**

3.      **Letter from Costello to Congressman Thompson**
                **dated October 18, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1994

4.      **Letter from Congressman Thompson to Costello**
                **dated October 19, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1997

**United States House of Representatives'**
**Motion for Leave to File** *Amicus Curiae* **Brief,**
**With Attachment**
        **filed May 25, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2002

        **Attachment:**

        **Brief of United States House of Representatives as**
        *Amicus Curiae* **In Support of the Department of Justice**
                **dated May 10, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2009

**United States House Minority Leadership**
**Motion for Leave to File** *Amicus Curiae* **Brief,**
**With Attachment,**
        **filed May 25, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2035

        **Attachment:**

        **Brief of the U.s. House of Representatives Minority Leader**
        **Kevin O. Mccarthy and the U.s. House of Representatives**
        **Minority Whip Stephen J. Scalise as Amicus Curiae**
                **dated May 24, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2050

**Defendant's Notice Regarding Amicus Briefs**

  **filed June 10, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2065**


**Motion to Quash,**

**With Attachment,**

  **filed June 13, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2072**


  <u>**Attachment:**</u>


  **Memorandum of Points and Authorities**

  **In Support of Motion to Quash,**

  **With Exhibits,**

    **dated June 13, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2074**

## TABLE OF CONTENTS
### Joint Appendix Volume VI of XII

**Page:**

**Transcript of In-person Motions Hearing**
**Before the Honorable Carl J. Nichols**
     **on June 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2229**

**Government's Omnibus Motion** *in Limine*
     **filed June 17, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2408**

**Defendant's Motion to Compel**
**Meadows & Scavino Declination Discovery,**
**With Exhibits,**
     **filed June 27, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2425**

     <u>**Exhibits:**</u>

     1.    **Letter from Bannon's Counsel to Prosecutors**
         **dated June 21, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2442**

     2.    **Letter from Prosecutors to Bannon's Counsel**
         **dated June 21, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2445**

     3.    **Letter from Justin Clark to Scott Gast**
         **dated October 6, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . **2448**

     4.    **Letter from Pat Cipollone to Chairman Nadler**
         **dated September 16, 2019.** . . . . . . . . . . . . . . . . . . . . . . . **2453**

     5.    **Plaintiff's Motion for Judgment on the Pleadings, or in the**
         **Alternative, for Summary Judgment, & in Opposition to**
         **Defendants' Motion for Summary Judgment**
         **dated May 20, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2459**

**Defendant's Opposition to Motion to Quash**
     **filed June 27, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2597**

## TABLE OF CONTENTS
## Joint Appendix Volume VII of XII

Page:

Government's Opposition to Defendant's Motion to Compel
     filed June 29, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2694

Joint Proposed Jury Instructions,
With Attachment,
     filed June 30, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2701

     Attachment:

     Manual of Model Criminal Jury Instructions
          dated March 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2765

Government's Objections to Defendant's Proposed Jury Instructions
     filed July 1, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2768

Defendant's Opposition to Government's Omnibus Motion *in Limine*
     filed July 1, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2781

Office of General Counsel U.S. House of Representatives'
Reply in Support of Motion to Quash,
With Exhibits,
     filed July 5, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2796

     Exhibits:

     A.    Order - *U.S. v. Moussaoui*
          dated March 2, 2006. . . . . . . . . . . . . . . . . . . . . . . . . . . 2828

     B.    Order - *U.S. v. Arthur Andersen, L.L.P.*
          dated May 14, 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2834

     C.    Order Granting Motion to Quash Subpoena on
          U.S. Representative Maxine Waters - *D.C. v. Hayes*
          dated November 16, 2007. . . . . . . . . . . . . . . . . . . . . . . 2836

**Defendant's Reply in Further Support of Motion to Compel**
**Meadows and Scavino Declination Discovery,**
**With Exhibit,**

> filed July 6, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2842**

**Exhibit:**

1.    **Memorandum**

> dated October 29, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . **2853**

**Government's Reply in Support of Motion** *in Limine*

> filed July 8, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2863**

**Government's Motion** *in Limine* **to Exclude Evidence or Argument**
**Relating to the Defendant's Eleventh-hour Assertion That**
**He Is Willing to Testify Before the Select Committee**

> filed July 11, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2874**

**Transcript of In-person Motions Hearing**
**Before the Honorable Carl J. Nichols**

> on July 11, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2879**

**Defendant's Opposition to Motion** *in Limine* **to Bar Testimony,**
**With Exhibits,**

> filed July 13, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3071**

**Exhibits:**

1.    **Letters from former President Trump to Mr. Costello and**
**Mr. Costello's Letter to Chairman Thompson**

> dated June 9, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3080**

2.    **Certification**

> dated October 21, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . **3084**

**Exhibits** to

**Defendant's Opposition to Motion *in Limine* to Bar Testimony**
       **filed July 13, 2022, Continued:**

    3.     **Subpoena**
        **dated September 23, 2021.** . . . . . . . . . . . . . . . . . . . . . . . 3090

    4.     **Letter from Thompson to Costello**
        **dated October 8, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . 3092

    5.     **Indictment**
        **dated November 12, 2021.** . . . . . . . . . . . . . . . . . . . . . . . 3096

**Government's Reply in Support of Motion *in Limine* to Exclude**
**Evidence or Argument Relating to the Defendant's Eleventh-hour**
**Assertion That He Is Willing to Testify Before the Select Committee,**
**With Exhibits,**
       **filed July 13, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3106

    **Exhibits:**

    1.     **Letter from Thompson to Costello**
        **dated October 8, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . 3114

    2.     **Letter from Thompson to Costello**
        **dated October 15, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 3118

**Government's Objections to Defendant's Trial Exhibits**
       **filed July 14, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3122

## TABLE OF CONTENTS
### Joint Appendix Volume VIII of XII

**Page:**

**Transcript of In-person Motions Hearing and Pretrial Conference Before the Honorable Carl J. Nichols**
   on July 14, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3127

**Defendant's Motion to Exclude Congressional Evidence or Dismiss the Indictment Based on Granting the Motion to Quash, With Exhibits,**
   filed July 15, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3192

  **Exhibits:**

  1. **Transcript Jury Trial**
    **Before the Honorable Kurt D. Engelhardt**
    *U.S. v. Rainey*, No. 12-291
     on June 1, 2015. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3216

  2. **Congressional Gamesmanship Leads To An Acquittal In Deepwater Horizon Case, U.S. v. David Rainey: A Case Study**
     dated 2016.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3260

**Government's Opposition to Defendant's Motion to Exclude Congressional Evidence or Dismiss the Indictment Based on Granting the Motion to Quash**
   filed July 16, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3303

**Government's Objections to Court's Proposed Statement of the Case, Voir Dire, and Jury Instructions**
   filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3308

**Defendant's Statement of the Case**
   filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3310


**Defendant's Purposed Jury Instructions**
   filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3316


**Defendant's Reply in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment
Based on Granting the Motion to Quash**
   filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3374


**Government's Response to Defendant's Objections to Exhibits**
   filed July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3381


**Defendant's Motion to Exclude Hearsay Evidence**
   filed July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3386


**Transcript of Jury Trial - Day 1 - Morning Session
Before the Honorable Carl J. Nichols**
   on July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3393

# TABLE OF CONTENTS
## Joint Appendix Volume IX of XII

**Page:**

**Transcript of Jury Trial - Day 1 - Afternoon Session**
**Before the Honorable Carl J. Nichols**
> on July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3577

**Transcript of Jury Trial - Day 2 - Morning Session**
**Before the Honorable Carl J. Nichols**
> on July 19, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3784

**Transcript of Jury Trial - Day 2 - Afternoon Session**
**Before the Honorable Carl J. Nichols**
> on July 19, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3868

**Testimony of Kristin Amerling:**

> **Direct Examination by Ms. Vaugn.. . . . . . . . . . . . . . . . . . . . . . . . . 3942**

## TABLE OF CONTENTS
## Joint Appendix Volume X of XII

**Page:**

**Transcript of Jury Trial - Day 3 - Morning Session**
**Before the Honorable Carl J. Nichols**
        on July 20, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3994

        **Testimony of <u>Kristin Amerling</u>:**

        **Direct Examination by Ms. Vaughn.** . . . . . . . . . . . . . . . . . . . . . . . 4014
        **Cross Examination by Mr. Corcoran.** . . . . . . . . . . . . . . . . . . . . . . . 4078

**Transcript of Jury Trial - Day 3 - Afternoon Session**
**Before the Honorable Carl J. Nichols**
        on July 20, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4143

        **Testimony of <u>Kristin Amerling</u>:**

        **Cross Examination by Mr. Corcoran (Continued).** . . . . . . . . . . . . 4149
        **Redirect Examination by Ms. Vaughn.** . . . . . . . . . . . . . . . . . . . . . 4211

        **Testimony of <u>Stephen Hart</u>:**

        **Direct Examination by Ms. Gaston.** . . . . . . . . . . . . . . . . . . . . . . . . 4233
        **Cross Examination by Mr. Corcoran.** . . . . . . . . . . . . . . . . . . . . . . . 4252
        **Redirect Examination by Ms. Gaston.** . . . . . . . . . . . . . . . . . . . . . . 4264

**Defendant's Motion for Judgment of Acquittal Pursuant to**
**Rule 29, Federal Rules of Criminal Procedure**
        filed July 21, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4289

**Transcript of Jury Trial - Day 4**
**Before the Honorable Carl J. Nichols**
        on July 21, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4295

## TABLE OF CONTENTS
## Joint Appendix Volume XI of XII

**Page:**

**Notice of Defendant's Objections to the Court's Final**
**Jury Instructions and Additional Requested Instructions**
    **filed July 21, 2022**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4422

**Defendant's Notice Regarding Congressional Hearings**
    **filed July 22, 2022**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4432

**Notice of Defendant's Objection to Jury Instruction Number 27**
    **filed July 22, 2022**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4435

**Transcript of Jury Trial - Day 5**
**Before the Honorable Carl J. Nichols**
    **on July 22, 2022**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4438

**Jury Instructions**
    **filed July 22, 2022**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4555

**Counsels' Acknowledgment Concerning Trial Exhibits**
    **filed July 22, 2022**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4585

**Government's Exhibit List**
    **filed July 22, 2022**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4586

**Defendant's Exhibit List**
    **filed July 22, 2022**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4588

**Note from Jury**
    **filed July 22, 2022**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4591

**Verdict Form**
    **filed July 22, 2022**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4592

Order
    filed July 27, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4593

Government's Response to Defendant's
Notice Regarding Publicity During Trial,
With Exhibits,
    filed July 28, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4595

    Exhibits:

    1.    Screenshot of Episode 1996, War Room
            dated July 12, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4598

    2.    Bannon's Gettr Repost CNN Ad
            dated July 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4599

Defendant's Supplemental Brief in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment Based on
Granting the Motion to Quash and Congressional Subpoena
Recipients' Refusal to Testify or Produce Documents
    filed August 5, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4600

Defendant's Motion for a New Trial
    filed August 5, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4617

Government's Response in Opposition to Defendant's
Supplemental Brief in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment
    filed August 12, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4634

Defendant's Reply to the Government's Response to
Supplemental Brief in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment
Based on Granting the Motion to Quash and Congressional
Subpoena Recipients' Refusal to Testify or Produce Documents
    filed August 19, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4649

**Government's Opposition to Defendant's Motion for a New Trial**
> filed August 19, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4657**

**Defendant's Reply to Opposition to Motion for a New Trial**
> filed August 26, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4676**

**Order**
> filed September 2, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4682**

**Transcript of Sentencing Hearing**
**Before the Honorable Carl J. Nichols**
> on October 21, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4687**

**Judgment in a Criminal Case**
> filed October 21, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4767**

**Defendant's Notice of Appeal**
> filed November 4, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4772**

**Order Staying Sentence Pending Appeal**
> filed November 7, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4779**

<u>TABLE OF CONTENTS</u>
**Joint Appendix Volume XII of XII - Exhibits**

**Page:**

<u>**Defendant's Exhibits:**</u>

**9B.**  **H41 Congressional Record - House**
            **dated January 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4780**

**30.**  **Letter from Former President Donald Trump to**
          **Stephen K. Bannon**
            **dated July 9, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4781**

**31.**  **Letter from Robert J. Costello to**
          **Chairman Bennie Thompson**
            **dated July 9, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4782**

**32.**  **Letter from Chairman Bennie Thompson to**
          **Robert J. Costello**
            **dated July 14, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4784**

**39.**  **Article from Rolling Stone**
            **dated September 24, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . **4786**

**40.**  **Daily Mail Article**
            **dated October 8, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4804**

<u>**Government's Exhibits:**</u>

**1.**  **House Resolution 503.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4808**

**2.**  **Subpoena to Stephen Bannon**
            **dated September 23, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . **4822**

**Government's Exhibits, Continued:**

3.  **Emails re Service of Subpoena**
    **dated September 23 and 24, 2021**.................. 4832

4.  **Letter from Costello to**
    **Chairman Thompson and Cover Email**
    **dated October 7, 2021**............................ 4835

5.  **Letter from Chairman Thompson to Costello**
    **dated October 8, 2021**............................ 4838

6.  **Letter from Costello to Chairman Thompson**
    **dated October 13, 2021**........................... 4841

7.  **Letter from Chairman Thompson to Costello**
    **dated October 15, 2021**........................... 4843

8.  **Letter from Costello to**
    **Chairman Thompson and Cover Email**
    **dated October 18, 2021**........................... 4846

9.  **Letters from Chairman Thompson to Costello**
    **dated October 19, 2021**........................... 4848

10. **Post on Stephen Bannon's Gettr Account**
    **dated September 24, 2021.** ....................... 4851

11A. **Post on Stephen Bannon's Gettr Account**
     **dated October 8, 2021**........................... 4852

11B. **DailyMail Article Linked in October 8, 2021**
     **Post on Stephen Bannon's Gettr Account.** ........ 4853

```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
        * * * * * * * * * * * * * * *    )
 3     UNITED STATES OF AMERICA,         )      Criminal Action
                                         )        No. 21-00670
 4                   Plaintiff,          )
                                         )
 5        vs.                            )      AFTERNOON SESSION
                                         )
 6     STEPHEN K. BANNON,                )      Washington, D.C.
                                         )      July 18, 2022
 7                   Defendant.          )      2:06 p.m.
                                         )
 8      * * * * * * * * * * * * * * *    )

 9

10                      TRANSCRIPT OF JURY TRIAL
                BEFORE THE HONORABLE CARL J. NICHOLS,
11                  UNITED STATES DISTRICT JUDGE

12

13     APPEARANCES:

14     FOR THE GOVERNMENT:        AMANDA R. VAUGHN, ESQ.
                                  MOLLY G. GASTON, ESQ.
15                                UNITED STATES ATTORNEY'S OFFICE
                                    FOR THE DISTRICT OF COLUMBIA
16                                555 Fourth Street, Northwest
                                  Eleventh Floor
17                                Washington, D.C. 20530

18
       FOR THE DEFENDANT:         MATTHEW E. CORCORAN, ESQ.
19                                RIANE A. WHITE, ESQ.
                                  SILVERMAN, THOMPSON, SLUTKIN, WHITE
20                                400 East Pratt Street
                                  Suite 900
21                                Baltimore, Maryland 21202

22                                DAVID I. SCHOEN, ESQ.
                                  LAW OFFICES OF DAVID I. SCHOEN
23                                2800 Zelda Road
                                  Suite 100-6
24                                Montgomery, Alabama 36106

25
```

```
 1    REPORTED BY:            LISA EDWARDS, RDR, CRR
                             Official Court Reporter
 2                           United States District Court for the
                               District of Columbia
 3                           333 Constitution Avenue, Northwest
                             Room 6706
 4                           Washington, D.C. 20001
                             (202) 354-3269
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    THE COURTROOM DEPUTY:  Your Honor, we're now back
 2       on the record.
 3                    THE COURT:  Thank you, Ms. Lesley.
 4                    Counsel, anything that we need to address before
 5       we proceed with the next juror?
 6                    MS. VAUGHN:  Not from the Government, your Honor.
 7                    THE COURT:  Thank you.
 8                    MR. CORCORAN:  No, your Honor.
 9                    THE COURT:  Thank you.
10                    Ms. Lesley, can we get -- I believe it's juror
11       1425.
12                    THE COURTROOM DEPUTY:  Yes, sir.
13                    (Thereupon, Prospective Juror No. 1425 entered the
14       courtroom and the following proceedings were had:)
15                    THE COURT:  Good afternoon.
16                    PROSPECTIVE JUROR:  Hello.
17                    THE COURT:  You can take your mask off if you'd
18       like.
19                    You are Juror 1425.  Correct?
20                    PROSPECTIVE JUROR:  Yes.
21                    THE COURT:  I've your note card here, and it
22       reflects that you answered yes to none of the questions I
23       asked earlier.  Correct?
24                    PROSPECTIVE JUROR:  Correct.
25                    THE COURT:  I just want to ask you a few followup
```

```
 1    questions.  There may be a few from counsel.  I just want to
 2    make sure that you answered correctly when I asked whether
 3    you had heard anything about this case or Mr. Bannon.
 4              PROSPECTIVE JUROR:  Okay.  I have not.
 5              THE COURT:  You have not.
 6              And what about the January 6 select -- what I
 7    described as the Select Committee earlier today?  Have you
 8    heard anything about that?
 9              PROSPECTIVE JUROR:  No.
10              THE COURT:  Is there anything in either my
11    statement of the case earlier or the questions that you
12    heard that led you to worry that you couldn't be impartial
13    if you were selected as a juror here?
14              PROSPECTIVE JUROR:  No.
15              THE COURT:  Thank you.
16              Ms. Vaughn?
17              MS. VAUGHN:  Good afternoon.
18              PROSPECTIVE JUROR:  Good afternoon.
19              MS. VAUGHN:  I'm just wondering if you could tell
20    us what you do for a living.
21              PROSPECTIVE JUROR:  I'm a crew leader for River
22    Corps at Latin American Youth Center.
23              MS. VAUGHN:  What do you do there?
24              PROSPECTIVE JUROR:  It's essentially a supervisor
25    position for a job training program.
```

```
 1                 MS. VAUGHN:  Thank you.

 2                 THE COURT:  Mr. Corcoran?

 3                 MR. CORCORAN:  No questions, your Honor.  Thank

 4      you.

 5                 THE COURT:  Thank you.

 6                 Thank you, sir.  You may step out.

 7                 PROSPECTIVE JUROR:  Thank you.

 8                 (Thereupon, Prospective Juror No. 1425 retired

 9      from the courtroom and the following proceedings were had:)

10                 THE COURT:  Any motions to exclude 1425?

11                 MS. VAUGHN:  Not from the Government.

12                 MR. CORCORAN:  No, your Honor.

13                 THE COURT:  We will qualify 1425.

14                 Ms. Lesley, could you bring 257 in.

15                 (Thereupon, Prospective Juror No. 257 entered the

16      courtroom and the following proceedings were had:)

17                 THE COURT:  Please use the podium there.  Good

18      afternoon.

19                 PROSPECTIVE JUROR:  Good afternoon.

20                 THE COURT:  You're welcome to take your mask off

21      if you'd like.  You don't have to.

22                 You are Juror 257.  Correct?

23                 PROSPECTIVE JUROR:  Yes.

24                 THE COURT:  And I note here that you have not

25      answered yes to any of the questions on the card.  Correct?
```

```
1              PROSPECTIVE JUROR:  I have not.

2              THE COURT:  I just want to ask you a few followup

3    questions.  Just to confirm that you have not in fact heard

4    anything before today about this case.

5              PROSPECTIVE JUROR:  I have not.

6              THE COURT:  And you didn't have any information or

7    do not have any information before you appeared today about

8    the January 6 Special Commission?

9              PROSPECTIVE JUROR:  I do not.

10             THE COURT:  Is there anything in the statement of

11   case that I read earlier or the questions that I asked that

12   led you to conclude that you would not be able to be

13   impartial if you were selected as a juror?

14             PROSPECTIVE JUROR:  No.

15             THE COURT:  Thank you.

16             Ms. Gaston?

17             MS. GASTON:  Good afternoon.

18             PROSPECTIVE JUROR:  Good afternoon.

19             MS. GASTON:  Could you tell us what you do for a

20   living?

21             PROSPECTIVE JUROR:  I manage a design show at the

22   design center.  I sell wallpaper and fabric.

23             MS. GASTON:  For interior design?

24             PROSPECTIVE JUROR:  Yes.  For interior design.

25             MS. GASTON:  Thank you.
```

```
1              THE COURT:  Mr. Corcoran?

2              MR. CORCORAN:  No questions.  Thank you very much.

3              THE COURT:  Thank you.

4              Thank you, sir.

5              (Thereupon, Prospective Juror No. 257 retired from

6       the courtroom and the following proceedings were had:)

7              THE COURT:  Any motions to exclude Juror 257?

8              MS. GASTON:  Not from the Government, your Honor.

9              MR. CORCORAN:  No, your Honor.

10             THE COURT:  We will qualify Juror 257.

11             Ms. Lesley, could you bring in Juror 1945.

12             (Thereupon, Prospective Juror No. 1945 entered the

13      courtroom and the following proceedings were had:)

14             THE COURT:  To the podium here.

15             Good afternoon.

16             PROSPECTIVE JUROR:  Good afternoon.

17             THE COURT:  You can take your mask off if you

18      would like.

19             You are Juror 1945.  Correct?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  I'm going to read into the record the

22      answers that -- the questions that you gave yes answers to

23      and then ask you some followup questions and then perhaps

24      the counsel for the parties will do so as well.

25             PROSPECTIVE JUROR:  Okay.
```

```
 1              THE COURT:  So those questions to which you had

 2     yes answers were 7-A, 8, 14, 16, 22, 23, 24.

 3              Let's start with 8, which asks whether you have

 4     written or said anything for public consumption about the

 5     Defendant, the House Select Committee or the Committee's

 6     investigation.  And it asks about blog posts, articles,

 7     podcasts and the like.  So can you describe why you answered

 8     yes to that question?

 9              PROSPECTIVE JUROR:  I'm active on Twitter.  I

10     tweet about politics.  I'm sure I've said something.  I

11     don't remember anything specifically, but I think I have

12     said things on Twitter about it.

13              THE COURT:  What have you said?  Are you talking

14     about this case or the January 6 committee?

15              PROSPECTIVE JUROR:  I don't believe I've said

16     anything about this case.  I know that I was tweeting while

17     watching the hearing for the January 6 committee.

18              THE COURT:  Okay.

19              PROSPECTIVE JUROR:  So I know I've commented on

20     that.

21              THE COURT:  So you answered yes to 7-A also.  As a

22     reminder, that asks the question if you've heard, seen or

23     read anything about this case.  It asks:  Have you formed

24     any opinions about this case based on what you have heard,

25     seen or read?  You said yes.
```

```
 1                    PROSPECTIVE JUROR:  Yes.

 2                    THE COURT:  So can you tell us why you answered

 3          yes to that question?

 4                    PROSPECTIVE JUROR:  I've kept up with the news.  I

 5          have, you know, weak opinions based on what I've learned.

 6                    THE COURT:  What weak opinions do you have?

 7                    PROSPECTIVE JUROR:  My impression is that the

 8          Committee subpoenaed information and it was not disclosed by

 9          the Defendant.

10                    THE COURT:  Do you have any other opinions about

11          this matter?

12                    PROSPECTIVE JUROR:  No.  I mean, specific to this

13          case?

14                    THE COURT:  About this case.

15                    PROSPECTIVE JUROR:  No.

16                    THE COURT:  Do you believe in light of the

17          opinions either that you have expressed or that you hold

18          that you would be unable to be impartial in deciding this

19          case and hearing the evidence and my instructions?

20                    PROSPECTIVE JUROR:  No.

21                    THE COURT:  You also answered yes to Questions 14

22          and 16, which are to some extent related.  I'll ask about

23          them together.

24                    14 is whether you've heard, seen or read anything

25          from any source about the Select Committee.  And then 16 is:
```

1    Have you watched or read coverage about the hearings?

2              PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Do you have anything to add to your

4    prior answers about what you've read or seen or what you've

5    written?

6              PROSPECTIVE JUROR:  Well, I watched the first

7    Committee hearing in prime time, the Committee hearing.  I

8    haven't watched anything since then, but I've read some

9    coverage of it, engaged in some Twitter discussion.  I guess

10   that's it.

11             THE COURT:  Do you recall in any of the hearings

12   or portions of the hearings that you've watched any mention

13   of the Defendant, Mr. Bannon, in the hearings?

14             PROSPECTIVE JUROR:  I don't recall.  I kind of

15   would be surprised if he wasn't mentioned, but I don't

16   recall anything specific.

17             THE COURT:  You don't have a specific recollection

18   of the hearing?

19             PROSPECTIVE JUROR:  No.

20             THE COURT:  As a result of your viewing of the

21   hearings and just generally knowing about the Committee,

22   does any of that knowledge lead you to be concerned about

23   your ability to be impartial if you were to be a juror?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  You answered yes to Question 22, which

```
1     is sort of a different topic.  That's whether you or anyone

2     in your family, a close family member or friend, has worked

3     in the legal profession.  Can you describe why you answered

4     yes to that question?

5              PROSPECTIVE JUROR:  I went to law school.  I'm

6     barred in Massachusetts.  I was practicing until 2020, late

7     2020.  Now I'm a stay-at-home dad.

8              THE COURT:  What kind of practice did you have?

9              PROSPECTIVE JUROR:  Mostly contract law.  I was

10    doing in-house tech service agreement review.

11             THE COURT:  Did you do criminal law either as a

12    defense attorney or prosecutor?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  Anything about your service as a

15    lawyer in house or your legal training that would make you

16    concerned that you would be -- have a hard time being

17    impartial or at least following my instructions?

18             PROSPECTIVE JUROR:  No.

19             THE COURT:  You answered yes to the question

20    whether you or a family member or anyone else had been the

21    subject of a criminal investigation or a crime.  If

22    answering or describing your answer in more detail is

23    particularly personal, we have the ability to do a phone

24    call with a husher that would be more limited; but if you're

25    comfortable discussing it publicly, you can do so as well.
```

1          PROSPECTIVE JUROR:  I'm fine.

2          When I was, like, 19, 20, I was arrested for

3   possession of a controlled substance.  Charges were

4   dismissed.

5          THE COURT:  How many years ago was that?

6          PROSPECTIVE JUROR:  17.

7          THE COURT:  Is there anything about that

8   experience that would cause you to have a concern or in your

9   view that would influence how you would operate or approach

10  this case as a juror?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  Then last, the last question you

13  answered yes to is 24, which is whether you or a family

14  member or anyone close to you has ever been a victim or a

15  witness of a crime --

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  -- whether it was reported to law

18  enforcement or testified in court before a grand jury.  So

19  can you describe why you answered yes there?

20         PROSPECTIVE JUROR:  I had bikes stolen.  I've seen

21  fights.  Nothing specific.

22         THE COURT:  When was the last incident along those

23  lines?

24         PROSPECTIVE JUROR:  My bike was stolen 20 years

25  ago.  I saw a fight in the street in which a gun was

1   involved.  Nobody was shot or anything.  That was probably

2   ten years ago.

3            THE COURT:  Okay.

4            PROSPECTIVE JUROR:  That was probably it.

5            THE COURT:  Thank you.

6            Who's up?  Ms. Vaughn?  Ms. Gaston?  I'm not sure

7   I have the alternating --

8            MS. VAUGHN:  That's me, Judge.  Thank you.

9            THE COURT:  Ms. Vaughn.

10           MS. VAUGHN:  Good afternoon.

11           You said that you had some weak opinions about the

12  case.  So I just wanted to ask questions about that.  Have

13  you formed any opinions based on what you've read about the

14  Defendant's guilt or innocence in this case?

15           PROSPECTIVE JUROR:  Based on what I've read in the

16  news, I was under the impression that he was guilty.  But I

17  don't take the news reports to be a full, you know, set of

18  the evidence.  I don't know specifically other than the fact

19  that, you know, he was charged and it seems like pretty --

20  you know, pretty easy to ascertain whether or not there was

21  a subpoena, whether or not he responded to it.

22           MS. VAUGHN:  And you heard the question during

23  earlier questions when the whole venire was here that the

24  burden is with the Government to prove the case and it never

25  leaves the Government.  Would you be able to follow that

```
 1    instruction and require us to meet our burden?

 2              PROSPECTIVE JUROR:  Yes.

 3              MS. VAUGHN:  And you said that you have commented

 4    on the hearings and watched them.

 5              Do you have any recollection of any comments

 6    you've made with respect to the hearings that involve the

 7    Defendant?

 8              PROSPECTIVE JUROR:  I don't remember anything

 9    specifically about the Defendant.  I know that I commented.

10    I expressed some shock and dismay at the hearings.  I don't

11    remember specifically.  It's on my Twitter feed if you want

12    to look.

13              MS. VAUGHN:  You know this trial is about a

14    subpoena.  Are you able to separate what the hearings are

15    about from what this trial is about?

16              PROSPECTIVE JUROR:  Yes.

17              MS. VAUGHN:  And your opinion based on reading

18    news articles, how firmly do you feel that you hold that

19    opinion?

20              PROSPECTIVE JUROR:  As I said, weakly.  I am wont

21    to change my mind.

22              MS. VAUGHN:  You would be willing to change your

23    mind depending on what the evidence shows?

24              PROSPECTIVE JUROR:  Yes.  Sorry.  I am known to

25    change my mind frequently.
```

```
 1                MS. VAUGHN:  Would you be able to put aside any
 2     views that you have completely before the evidence begins?
 3                PROSPECTIVE JUROR:  Yes.
 4                MS. VAUGHN:  So you're not holding any opinion
 5     while you're judging the evidence in this case?
 6                PROSPECTIVE JUROR:  Yes.
 7                MS. VAUGHN:  And how sure are you that you can do
 8     that?
 9                PROSPECTIVE JUROR:  Very.
10                MS. VAUGHN:  Thank you.
11                THE COURT:  Mr. Corcoran?
12                MR. CORCORAN:  Good afternoon.
13                PROSPECTIVE JUROR:  Good afternoon.
14                MR. CORCORAN:  In terms of the Twitter commentary,
15     how many of the hearings did you watch and engage in
16     broadcasting your views to the public?
17                PROSPECTIVE JUROR:  I only watched the first one.
18     I don't know if I commented on anything to come out of later
19     ones.  I know that I didn't watch them.  So if I did, it was
20     in passing and less well-informed.  But I was tweeting while
21     watching the first one.
22                MR. CORCORAN:  And that hearing lasted -- I don't
23     know the exact amount of time, but how long did you watch
24     it?
25                PROSPECTIVE JUROR:  I had it on the entire time.
```

1    I'd say that, you know, my attention waned as it went on.

2    So it sort of came and went.  I was sitting and talking to

3    my wife throughout, but I was sitting in front of the TV

4    watching it throughout the entire hearing.

5                MR. CORCORAN:  And what was the nature of the

6    commentary that you were broadcasting to the public about

7    the hearing?

8                PROSPECTIVE JUROR:  I thought that it was

9    well-presented, that the information was troubling.  I think

10   I said "damning."

11               MR. CORCORAN:  And when you used the word

12   "damning," what does that mean, that the information that

13   was presented by the Select Committee hearing is damning?

14   Who is it damning to?

15               PROSPECTIVE JUROR:  I'm not sure who I was

16   referring to specifically.  I thought that it did a good job

17   of laying out the case that there was something more going

18   on that is possibly criminal that should lead to some more

19   investigation.

20               MR. CORCORAN:  When you say "something more going

21   on," what are you speaking about?  Are you saying there's

22   something more -- beyond just the overrunning of the

23   Capitol?

24               PROSPECTIVE JUROR:  Yeah.

25               MR. CORCORAN:  What was that?  Are you talking

```
 1    about planning or what -- I don't want to put words in your

 2    mouth.

 3              PROSPECTIVE JUROR:  Yeah.  That there was some --

 4    I don't want to use the word "conspiracy," but, you know,

 5    intentional stoking of popular sentiment that led to what

 6    happened on January 6th.

 7              MR. CORCORAN:  And do you have an opinion based on

 8    what you saw as to who was stoking that?

 9              PROSPECTIVE JUROR:  I mean, it seemed at the time

10    that Donald Trump was involved.  I know that there was a

11    future hearing that was going to go more into that.  I don't

12    know if the case was made specifically about him during that

13    hearing, but others that were mentioned in the hearing or

14    featured on the hearing as witnesses.

15              MR. CORCORAN:  Was there anybody else beyond

16    President Donald Trump who was in your mind part of this

17    stoking of the attack?

18              PROSPECTIVE JUROR:  None that I could say by name.

19    People in Trump's orbit.

20              MR. CORCORAN:  Who is the audience that you were

21    broadcasting to during the hearing?

22              PROSPECTIVE JUROR:  I don't know them.  I have,

23    like, 200 followers.  They're random people.  I may have

24    used hashtags for anybody that was interested in the

25    hearing.
```

1          MR. CORCORAN:  As best you can recall, what

2     hashtags did you use?

3          PROSPECTIVE JUROR:  I don't recall specifically.

4     I probably looked around for whatever the most popular one

5     was, something like January 6 committee or January 6 hearing

6     or something like that.

7          MR. CORCORAN:  Okay.  Now, you stated that you

8     would be kind of surprised if you didn't mention Mr. Bannon

9     in a tweet.  Why do you say that?

10          PROSPECTIVE JUROR:  I follow politics.  He's been

11     prominent in the news.  I tend to comment on a lot of

12     things, particularly around politics over the past few

13     years.  So I think he was prominent enough that I probably

14     would have said something at some point.

15          MR. CORCORAN:  What's your perception of

16     Mr. Bannon?

17          PROSPECTIVE JUROR:  I disagree with him

18     politically.  I don't like Breitbart.  Personally, I mean, I

19     think it makes -- it has made some decisions that I do

20     disagree with.

21          MR. CORCORAN:  Okay.  I think that's it, your

22     Honor.

23          THE COURT:  Thank you, counsel.

24          Thank you, sir.

25          PROSPECTIVE JUROR:  Thank you.

```
 1              (Thereupon, Prospective Juror No. 1945 retired

 2      from the courtroom and the following proceedings were had:)

 3              THE COURT:  Any motions to exclude 1945?

 4              MR. CORCORAN:  Yes, your Honor.  We do have a

 5      motion to exclude him.  I think this is the first one that

 6      we've had who's essentially had a running commentary and

 7      made comments about the hearing.  He was obviously familiar

 8      with Mr. Bannon.

 9              So again, if you think about it, just neutrally

10      going into a criminal trial, do you want somebody on the

11      jury who has already formed an opinion of the Defendant?

12      And that was clear from his comments.

13              He also has already formed an opinion on

14      Mr. Bannon's guilt.  He said:  I was under the impression

15      that he was guilty.

16              Now, he said he was willing to change his mind,

17      but we don't want to seat jurors who have in mind that

18      somebody's guilty just to try to change their mind.  That's

19      an uphill battle.  And we'd move to exclude him.

20              THE COURT:  Thank you.

21              Ms. Vaughn?

22              MS. VAUGHN:  Your Honor, I think when I asked him

23      a followup from that, he did say that it was weakly held and

24      that he understands the Government has the burden and that

25      he could hold us to our burden and put aside whatever he
```

1    viewed.  It sounds like his opinion was based on just like

2    the basic facts of this case, which the Court has told all

3    the jurors today; and he says he can set that aside to judge

4    the evidence.

5              So we think there's probably not a basis --

6    there's not a basis to strike this juror.

7              THE COURT:  I'll grant the motion.  1945 is

8    excluded.  Unlike people who just have a lot of information,

9    he does seem to have reached at least some tentative

10   conclusions about this case.  And I think that is over the

11   line or at least distinguishes him from the few people we

12   have qualified.

13             So we'll exclude 1945.

14             Ms. Lesley, 544, please.

15             (Thereupon, Prospective Juror No. 544 entered the

16   courtroom and the following proceedings were had:)

17             THE COURT:  And if you could come to the podium,

18   sir.

19             You can take your mask off if you would like.

20             You are Juror 544.  Correct?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  You answered yes to just one question,

23   which is Question 15.  And that question said:  If you're

24   familiar with the Select Committee or its investigation, do

25   you have any beliefs or opinions about the Committee, the

1   investigation or Congress more generally that would make it

2   difficult for you to remain fair and impartial to both the

3   Government and the Defendant throughout the trial in this

4   case?

5           You answered yes to that question.

6           Can you describe why you answered yes to that

7   question?

8           PROSPECTIVE JUROR:  I guess I didn't really

9   understand the question thoroughly, how you just described

10  it.

11          THE COURT:  Okay.

12          PROSPECTIVE JUROR:  But yeah.  I don't know in

13  general information and stuff.

14          THE COURT:  Let me ask this:  Did you have any

15  knowledge about the case before you appeared here today?

16          PROSPECTIVE JUROR:  Not the case.  I've heard

17  about what happened.

18          THE COURT:  When you say "about what happened," do

19  you mean about January 6th?

20          PROSPECTIVE JUROR:  January 6.  Yes.

21          THE COURT:  So you haven't heard about this case

22  before you appeared here today?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  What had you heard or what opinion had

25  you formed about what happened on January 6?

```
 1                PROSPECTIVE JUROR:  I mean, it was a -- I mean, I

 2      don't have no opinion.  I just don't think it makes sense.

 3                THE COURT:  What doesn't make sense?  What

 4      happened?

 5                PROSPECTIVE JUROR:  What happened.  Yeah.  I

 6      really didn't look into why everything happened.  But I'm

 7      pretty sure it was like people protesting.  I don't really

 8      have an opinion.

 9                THE COURT:  Have you been paying any attention to

10      the Committee, what we're calling the January 6 committee or

11      the Select Committee in the House of Representatives and its

12      work?

13                PROSPECTIVE JUROR:  No.

14                THE COURT:  Have you watched any of the hearings

15      that the Committee has had?

16                PROSPECTIVE JUROR:  No.

17                THE COURT:  Based on what I said earlier today

18      about the case, what this case is about and the questions

19      that we asked earlier, do you have a concern that you would

20      be unable to be impartial if you were a juror?

21                PROSPECTIVE JUROR:  No.

22                THE COURT:  Thank you.

23                Ms. Gaston?

24                MS. GASTON:  Good afternoon, sir.

25                PROSPECTIVE JUROR:  How's it going?
```

1          MS. GASTON:  Do you have any familiarity with the

2     Defendant or know who he is or what he has done for a

3     living?

4          PROSPECTIVE JUROR:  No.

5          MS. GASTON:  And what do you do for a living?

6          PROSPECTIVE JUROR:  I work for parks and rec for

7     the D.C. government.

8          MS. GASTON:  What do you do there?

9          PROSPECTIVE JUROR:  I'm the maintenance manager

10    for the aquatics division.

11         MS. GASTON:  Thank you.

12         PROSPECTIVE JUROR:  Yeah.

13         THE COURT:  Mr. Corcoran?

14         MR. CORCORAN:  No questions.  Thank you very much.

15         THE COURT:  Thank you, sir.

16         PROSPECTIVE JUROR:  Welcome.  Thank you.

17         (Thereupon, Prospective Juror No. 544 retired from

18    the courtroom and the following proceedings were had:)

19         THE COURT:  Any motions to exclude Juror No. 544?

20         MS. GASTON:  Not from the Government, your Honor.

21         MR. CORCORAN:  No, your Honor.

22         THE COURT:  Juror 544 is qualified.

23         Juror 1798, Ms. Lesley.

24         (Thereupon, Prospective Juror No. 1798 entered the

25    courtroom and the following proceedings were had:)

```
1                    THE COURT:  To the podium, please, sir.

2                    PROSPECTIVE JUROR:  How are you?

3                    THE COURT:  Well.  You may take off your mask if

4         you would like.

5                    PROSPECTIVE JUROR:  Sure.

6                    THE COURT:  You don't have to.  Just if you would

7         like.

8                    You are Juror 1798.  Correct?

9                    PROSPECTIVE JUROR:  That's right.

10                   THE COURT:  I have your note card here.  I'm just

11        going to let the record reflect that you answered yes to

12        three questions:  7, 15 and 16.

13                   Question 7 asks whether you have heard, seen or

14        read anything from any source about this case.  Can you

15        describe for us why you answered yes to that question?

16                   PROSPECTIVE JUROR:  I got the information from the

17        newspapers.  I subscribe, you know, to one of the

18        newspapers.

19                   THE COURT:  What newspaper?  Do you recall?

20                   PROSPECTIVE JUROR:  *The Washington Post*.  So they

21        just deliver it to my house.

22                   THE COURT:  What do you recall reading about this

23        case?

24                   PROSPECTIVE JUROR:  I recall reading that, you

25        know, he was subpoenaed by the January 6, you know,
```

1    committee.  And then he said he -- you know, the previous

2    president, he had given him -- what do they call it?  A

3    presidential what?  It's not a minute.

4              THE COURT:  It's okay if you don't recall.  I

5    can't help you.

6              So what else do you remember reading about or

7    learning about this matter?

8              PROSPECTIVE JUROR:  Yeah.  That was it.

9              THE COURT:  Do you remember approximately how many

10   news articles you've read about this matter?

11             PROSPECTIVE JUROR:  No.  It was just one.

12             THE COURT:  Did you form any opinions about this

13   case as a result of reading that --

14             PROSPECTIVE JUROR:  No, I didn't.

15             THE COURT:  -- article?

16             PROSPECTIVE JUROR:  No.

17             THE COURT:  Do you have any reason to be concerned

18   that as a result of reading the article that you would be

19   unable to be impartial?

20             PROSPECTIVE JUROR:  No.

21             THE COURT:  You also answered yes to Questions 15

22   and 16.  And they ask questions about the Select Committee

23   and the hearings the Select Committee has been holding.

24             So can you start by describing to us what you know

25   about the Select Committee, how you've learned of it and

```
 1    what you've watched of the hearings?
 2            PROSPECTIVE JUROR:  Yeah.  I know the Select
 3    Committee was put together after the January 6 inside
 4    action.  So they were put in there to investigate, you know,
 5    what really happened.
 6            And I'm sure what they are trying to do is to
 7    figure out if they can fix, you know, the problem so that it
 8    won't happen again.
 9            THE COURT:  What about the hearings?  Have you
10    watched or -- first of all, let me ask, have you watched any
11    of the hearings?
12            PROSPECTIVE JUROR:  Yeah, I did.
13            THE COURT:  How many of them?
14            PROSPECTIVE JUROR:  Maybe two or three.
15            THE COURT:  Do you recall any mention of the
16    Defendant, Mr. Bannon, here in the hearings that you
17    watched?
18            PROSPECTIVE JUROR:  During the hearings?  Yeah.  I
19    remember there was -- there was a time where they had
20    particular names about individuals, who was subpoenaed.  And
21    then they ignored, you know, the subpoena.  Yeah.  And I
22    think Mr. Bannon was one of them.  I think they mentioned
23    him.
24            And then they mentioned, you know, the lawyer, the
25    White House lawyer.  But then I think subsequently he
```

```
 1    appeared, you know.

 2              THE COURT:  Okay.

 3              PROSPECTIVE JUROR:  Correct.

 4              THE COURT:  You also answered 15.  It says if you

 5    are familiar with the Select Committee, as you said you are,

 6    do you have any beliefs or opinions about the Committee, its

 7    investigation or Congress more generally that would make it

 8    difficult for you to remain fair and impartial to both the

 9    Government and the Defendant?

10              PROSPECTIVE JUROR:  No.

11              THE COURT:  So do you think that was just an

12    erroneous answer?

13              PROSPECTIVE JUROR:  Yeah.  I thought maybe the

14    question was:  Are you familiar with how they are

15    conducting, you know, the hearing?

16              THE COURT:  So let me ask you that question very

17    clearly:  Based on either your knowledge of this case or the

18    Committee and its hearings more generally, is there anything

19    about your knowledge that would make it hard for you to be

20    fair and impartial?

21              PROSPECTIVE JUROR:  No.

22              THE COURT:  Is there anything else that you heard

23    today or in the questions that were asked that would make it

24    hard, you think, for you to be fair and impartial?

25              PROSPECTIVE JUROR:  No.
```

```
 1                    THE COURT:  Thank you.

 2                    Ms. Vaughn?

 3                    MS. VAUGHN:  Good afternoon.

 4                    PROSPECTIVE JUROR:  Good afternoon.

 5                    MS. VAUGHN:  I think you mentioned that you had

 6        heard the Defendant's name before --

 7                    PROSPECTIVE JUROR:  Right.

 8                    MS. VAUGHN:  -- in the hearings.

 9                    Is there anything that you have heard about the

10        Defendant in the hearings that would prevent you from being

11        fair and impartial in this case?

12                    PROSPECTIVE JUROR:  No.

13                    MS. VAUGHN:  Thank you.

14                    THE COURT:  Mr. Corcoran?

15                    MR. CORCORAN:  Sir, good afternoon.

16                    PROSPECTIVE JUROR:  Good afternoon.

17                    MR. CORCORAN:  Do I understand that you drive for

18        a living?

19                    PROSPECTIVE JUROR:  Yes.

20                    MR. CORCORAN:  Tell me a little bit about that.

21                    PROSPECTIVE JUROR:  Yeah.  I transport special

22        needs, you know, children for all city.  That is D.C.

23        government.

24                    MR. CORCORAN:  Perfect.

25                    Let me just ask a followup question about the
```

1    Select Committee hearing that you saw.

2           I understand that you said that your perception

3    was the Committee is investigating and perhaps looking to

4    fix certain problems, but that watching at least one of the

5    hearings you said that you thought you heard Mr. Bannon's

6    name as somebody who was subpoenaed and ignored the

7    subpoena.  Is that your memory?

8           PROSPECTIVE JUROR:  Yeah.  I think so.  Yeah.

9           MR. CORCORAN:  And would you be open to listening

10   to the evidence in this case that might not show that he

11   ignored the subpoena?  Could you be fair and just listen

12   about that?

13          PROSPECTIVE JUROR:  Yeah.  Yes.

14          MR. CORCORAN:  Thank you, your Honor.

15          THE COURT:  Thank you.

16          Thank you, sir.

17          PROSPECTIVE JUROR:  Thank you.

18          (Thereupon, Prospective Juror No. 1798 retired

19   from the courtroom and the following proceedings were had:)

20          THE COURT:  Any motions to exclude Juror 1798?

21          MS. VAUGHN:  Not from the Government, your Honor.

22          MR. CORCORAN:  No, your Honor.

23          THE COURT:  Juror 1798 is qualified.

24          Ms. Lesley, let's bring in Juror 749.

25          (Thereupon, Prospective Juror No. 749 entered the

```
 1    courtroom and the following proceedings were had:)

 2              THE COURT:  Good afternoon.

 3              PROSPECTIVE JUROR:  Good afternoon, sir.

 4              THE COURT:  You can take your mask off if you

 5    would like.

 6              PROSPECTIVE JUROR:  Thank you.

 7              THE COURT:  You're Juror 749.  Correct?

 8              PROSPECTIVE JUROR:  Yes.

 9              THE COURT:  I note for the record that your note

10    card contains no answers -- or no questions as to which your

11    answer was yes.  Correct.

12              PROSPECTIVE JUROR:  Yes.

13              THE COURT:  Let me just ask you a few followup

14    questions about that.

15              Have you heard anything about before today --

16    anything about this case?

17              PROSPECTIVE JUROR:  No.

18              THE COURT:  Were you familiar before today with

19    the Defendant?

20              PROSPECTIVE JUROR:  No.

21              THE COURT:  Have you heard anything before today

22    about the Select Committee that I described earlier?

23              PROSPECTIVE JUROR:  No.

24              THE COURT:  Is there anything that you heard in my

25    description of the statement of the case or the questions
```

```
 1    that I asked that would cause you to worry that you could

 2    not be impartial if you sat as a juror?

 3              PROSPECTIVE JUROR:  No.

 4              THE COURT:  Thank you.

 5              Ms. Gaston?

 6              MS. GASTON:  Good afternoon.

 7              PROSPECTIVE JUROR:  Good afternoon.

 8              MS. GASTON:  Could you tell us what you do for a

 9    living?

10              PROSPECTIVE JUROR:  I work for D.C. government.

11              MS. GASTON:  And what do you do for the D.C.

12    government?

13              PROSPECTIVE JUROR:  I work for the office of the

14    healthcare ombudsman for the D.C. government.

15              MS. GASTON:  And what do you do for the ombudsman?

16              PROSPECTIVE JUROR:  I advocate for the beneficiary

17    of the District of Columbia when they have healthcare

18    issues.  So we deal with Medicare recipients, D.C. Medicaid

19    recipients.  When they have issues with their insurance,

20    they call our office so we can advocate for them on behalf

21    of them.

22              MS. GASTON:  Communicate with their insurance

23    companies?

24              PROSPECTIVE JUROR:  No.  We communicate with the

25    Medicaid recipient and the Medicaid office.
```

```
1                    MS. GASTON:  Understood.  Thank you.

2                    PROSPECTIVE JUROR:  You're welcome.

3                    THE COURT:  Mr. Corcoran?

4                    MR. CORCORAN:  No.  Thank you very much.

5                    THE COURT:  Thank you, ma'am.

6                    PROSPECTIVE JUROR:  Okay.

7                    (Thereupon, Prospective Juror No. 749 retired from

8         the courtroom and the following proceedings were had:)

9                    THE COURT:  Any motions to exclude 749?

10                   MS. GASTON:  Not from the Government, your Honor.

11                   MR. CORCORAN:  No, your Honor.

12                   THE COURT:  Juror 749 is qualified.

13                   Ms. Lesley, 1053, please.

14                   (Thereupon, Prospective Juror No. 1053 entered the

15        courtroom and the following proceedings were had:)

16                   THE COURT:  Good afternoon.

17                   PROSPECTIVE JUROR:  Hi.

18                   THE COURT:  You can take your mask off if you

19        would like.

20                   PROSPECTIVE JUROR:  Sure.

21                   THE COURT:  You are Juror 1053.  Correct?

22                   PROSPECTIVE JUROR:  Yes.

23                   THE COURT:  I'm going to read for the record the

24        questions you answered yes to and then have some followup

25        questions, and the lawyers may as well.
```

1            You answered yes to Questions 10, 14, 16, 21, 22,

2    24.  Correct?

3            PROSPECTIVE JUROR:  Yes.

4            THE COURT:  10 asked whether you or a family

5    member or anyone close to you worked for the House, the

6    Senate or some other agency affiliated with the legislative

7    branch.  Can you describe why you answered yes to that

8    question?

9            PROSPECTIVE JUROR:  Yeah.  So I answered to be

10   cautious.  I have not worked directly, but I have submitted

11   reports to the Senate for internships.  And I also work for

12   a company that receives State Department grants and USAID

13   grants.

14           THE COURT:  What do you do?

15           PROSPECTIVE JUROR:  I am a senior program

16   associate at IRI.

17           THE COURT:  What is IRI?

18           PROSPECTIVE JUROR:  It's the International

19   Republican Institute.  It's a development agency.

20           THE COURT:  Is there anything about that work that

21   leads you to conclude that you could not be unbiased and

22   impartial in this case?

23           PROSPECTIVE JUROR:  No.  I don't believe so.  It's

24   mostly international -- it's all international.

25           THE COURT:  You answered yes to two questions that

1    are somewhat related.  I'll ask you some stuff about them

2    together --

3                PROSPECTIVE JUROR:  Sure.

4                THE COURT:  -- which is about the Select Committee

5    and the hearings of the Select Committee.  Can you describe

6    to us what you know about the work of the Select Committee,

7    how you have come to learn about that and how much you've

8    watched of the hearings?

9                PROSPECTIVE JUROR:  Sure.  My knowledge isn't

10   super in-depth.  It's just kind of general, in passing.  I

11   listen to, like, NPR in the morning, read BBC and listen to

12   BBC.

13               I've watched one hearing.  It was the hearing that

14   came up at the last minute after the session had already

15   closed.  And that is mostly the extent of my knowledge.  I

16   really -- I don't know much more than that.

17               THE COURT:  Do you recall whether in any of the

18   portion of the hearing or hearings that you watched whether

19   there was a discussion of Mr. Bannon, the Defendant here?

20               PROSPECTIVE JUROR:  I don't remember if his name

21   was brought up.  I don't recall.

22               THE COURT:  And have you formed an opinion about

23   this case as a result of your knowledge of the Select

24   Committee or its work or the hearings?

25               PROSPECTIVE JUROR:  I think it's impossible not to

```
 1    have some kind of opinion, but I don't think I have a strong

 2    opinion because I don't really know the facts of what's

 3    going on.

 4              THE COURT:  Recognizing what you just said, what

 5    is your opinion?

 6              PROSPECTIVE JUROR:  I mean, I guess in this

 7    particular case, for me what's contempt seems

 8    straightforward in that you just don't comply with the court

 9    order.  And that is what happens in any case.

10              THE COURT:  So that's your general view.  Would

11    you be willing and able to listen to the evidence and the

12    arguments that both sides make and my instructions on the

13    law to determine whether in fact the Defendant committed the

14    crime that he's charged with?

15              PROSPECTIVE JUROR:  Yes.  Absolutely.

16              THE COURT:  You also answered yes to Question 21,

17    which I guess is in part what we just discussed, whether as

18    you sit here you have an opinion about the Defendant's guilt

19    or innocence in this case.  Is that what you were just

20    describing?

21              PROSPECTIVE JUROR:  Yes.  Exactly.  It would feel,

22    I think, dishonest if I said that -- you know, I said no

23    immediate.  But the reaction is, like, kind of came to mind

24    for that.  Yeah.

25              THE COURT:  Question 22 asks whether you or a
```

```
1    family member or anyone close to you works in the legal

2    profession generally.  Can you describe your yes answer

3    there?

4              PROSPECTIVE JUROR:  Absolutely.  For about two

5    years, I was a civil, criminal and immigration litigation

6    paralegal working on civil rights.  I worked briefly for a

7    retirement law firm as a library coordinator.  And I study

8    international law and constitutional law in the Middle East.

9              THE COURT:  When did you study those topics?

10             PROSPECTIVE JUROR:  During my master's program and

11   kind of ongoing.

12             THE COURT:  And when did the master's program

13   finish?

14             PROSPECTIVE JUROR:  2021.

15             THE COURT:  But you're still doing that now?

16             PROSPECTIVE JUROR:  I'm done with my master's.

17             THE COURT:  I'm sorry.  You're still studying

18   those topics now?

19             PROSPECTIVE JUROR:  They're relevant, I would say.

20   Mostly just constitutional law in the Middle East, though.

21   The civil, criminal and immigration side of things has

22   ended.

23             THE COURT:  When were you last a paralegal?

24             PROSPECTIVE JUROR:  2019.

25             THE COURT:  Okay.  Anything about those
```

```
 1    experiences or your study of legal issues, including
 2    constitutional law in the Middle East, that would lead you
 3    to question whether you could be fair and impartial in this
 4    matter?
 5              PROSPECTIVE JUROR:  I don't think so.  I think it
 6    instead heightens kind of my -- the importance I place in
 7    justice in the legal process.
 8              THE COURT:  You also answered yes to Question
 9    24 --
10              PROSPECTIVE JUROR:  Yes.
11              THE COURT:  -- which is whether you or anyone has
12    been a victim or a witness to a crime.  If answering or
13    providing us with details about that is particularly
14    personal, we can get on the phone if you'd like to.  But
15    otherwise, you can just tell us --
16              PROSPECTIVE JUROR:  No.  It's okay.
17              THE COURT:  -- what the circumstances of that are.
18              PROSPECTIVE JUROR:  My best friend's father was
19    murdered in November.
20              THE COURT:  I'm very sorry to hear that.
21              PROSPECTIVE JUROR:  Thank you.
22              THE COURT:  Is there anything about that
23    experience that causes you to have a view of law enforcement
24    and/or perhaps not be impartial in this case?
25              PROSPECTIVE JUROR:  No.  It's unrelated.
```

```
1              THE COURT:  Thank you for that.

2              PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Ms. Vaughn?

4              MS. VAUGHN:  Good afternoon.

5              PROSPECTIVE JUROR:  Hi.

6              MS. VAUGHN:  I just wanted to double-check.  Have

7      you seen anything in the news or on television about this

8      case in particular?

9              PROSPECTIVE JUROR:  So the only thing I've seen,

10     on Saturday night I was like, Oh, I have jury duty in

11     District Court.  I'm going to Google, you know, District

12     Court D.C.  And I saw it was for a case regarding

13     Mr. Bannon.

14             MS. VAUGHN:  Did you read about what the case was

15     about?

16             PROSPECTIVE JUROR:  No.  I closed it once I

17     realized.

18             MS. VAUGHN:  And what led you to close it?

19             PROSPECTIVE JUROR:  I didn't want to, I guess,

20     corrupt what --

21             MS. VAUGHN:  Taint yourself?

22             PROSPECTIVE JUROR:  Yes.  Exactly.

23             MS. VAUGHN:  And so the opinion about the case

24     that you expressed, I think, was that contempt seems

25     straightforward to you.  Is that just based on the
```

```
1    description you got of the case today in court?
2            PROSPECTIVE JUROR:  I think it's more my
3    experience as a paralegal.  That was kind of -- you know,
4    I've dealt with jurors or witnesses who did not want to
5    appear in court.  And, like, that was kind of obvious.  If
6    you don't go as a witness, there will be the consequences.
7    And that's kind of where that opinion comes from.
8            MS. VAUGHN:  So it sounds like the opinion is not
9    based on the facts of this case or what you might know --
10           PROSPECTIVE JUROR:  Exactly.
11           MS. VAUGHN:  So would you be able to set aside
12   your prior experience as a paralegal and just judge the
13   evidence -- I mean, judge this case just based on the
14   evidence you get here?
15           PROSPECTIVE JUROR:  Yes.
16           MS. VAUGHN:  Do you have any concerns about your
17   ability to be fair and impartial?
18           PROSPECTIVE JUROR:  I don't think so.
19           MS. VAUGHN:  Thank you.
20           PROSPECTIVE JUROR:  Yes.
21           THE COURT:  Mr. Corcoran?
22           MR. CORCORAN:  Good afternoon.
23           PROSPECTIVE JUROR:  Hi.
24           MR. CORCORAN:  Just to follow up on your
25   experience as a paralegal, I think I understood you to say
```

```
 1    that at certain times witnesses had not wanted to show up

 2    and that, because of that, the concept of contempt was

 3    something that you thought about or considered.  Could you

 4    explain that a little more?

 5              PROSPECTIVE JUROR:  Sure.  Without getting too

 6    much in the details, there was just one particular witness

 7    who was afraid to show up in court.  And it was an issue

 8    that day as trial was going on.  One of our senior attorneys

 9    and my boss had mentioned, like, we have to tell them if

10    they don't go it's contempt.

11              That was kind of what I think motivated that

12    person to go.  I think that's really the extent of my direct

13    interaction with that concept.

14              MR. CORCORAN:  Okay.  And would you be able to --

15    obviously, this is a contempt of Congress, not a contempt of

16    Court.

17              PROSPECTIVE JUROR:  Right.

18              MR. CORCORAN:  Would you be able to consider the

19    law and the rules that the judge gives you on that topic?

20              PROSPECTIVE JUROR:  Yeah.  I think with more

21    information and understanding the differences and the

22    specifics of it, I definitely could.

23              MR. CORCORAN:  And you expressed a general view,

24    it sounds like, based on your experience that contempt seems

25    straightforward.
```

```
 1            But would you be willing to consider all evidence

 2     that shows that contempt in this matter is not so

 3     straightforward?

 4            PROSPECTIVE JUROR:  Yes.  I'd be open to hearing

 5     the evidence for what it is.  Yes.

 6            MR. CORCORAN:  That's it, your Honor.  Thank you.

 7            THE COURT:  Thank you.

 8            Thank you, ma'am.

 9            PROSPECTIVE JUROR:  Thank you.

10            I left my mask.  I apologize.

11            THE COURT:  No problem.

12            (Thereupon, Prospective Juror No. 1053 retired

13     from the courtroom and the following proceedings were had:)

14            THE COURT:  Any motions to exclude 1053?

15            MS. VAUGHN:  Not from the Government, your Honor.

16     But we do object to the questions.

17            THE COURT:  I know.

18            MR. CORCORAN:  No, your Honor.

19            THE COURT:  So Juror 1053 is qualified.

20            Now, Ms. Vaughn, go ahead.  I assume you object to

21     Mr. Corcoran having essentially told the juror that the

22     issues here were actually not so clearcut or something like

23     that?

24            MS. VAUGHN:  Yes.  We object to the Defendant

25     characterizing evidence in this case.  And that was a
```

1    characterization --

2         THE COURT:  Mr. Corcoran, I'm fine with you asking

3    whether they would be open to questions like that.  But you

4    suggested that or stated it.  So let's stay on the line of,

5    like, hypothetical questions rather than what seemed to me a

6    clear statement that it just happened.

7         With that, let's bring in the next juror,

8    Ms. Lesley, 1995, please.

9         (Thereupon, Prospective Juror No. 1995 entered the

10   courtroom and the following proceedings were had:)

11        THE COURT:  Good afternoon.  You can take your

12   mask off if you would like.

13        Are you Juror 1995?

14        PROSPECTIVE JUROR:  I am.  Yes.

15        THE COURT:  I'm going to read into the record the

16   various questions that you answered yes to and then have

17   some followup questions.

18        PROSPECTIVE JUROR:  Okay.

19        THE COURT:  Those questions were 6, 7-A, and B, at

20   least probably 7, 7-A, 7-B, 9, 14, 15, 16, 17, 18, 21, 22,

21   24, 28 and 45.

22        Let's start with what is sort of an umbrella

23   question, which is 45, but it gets to some of your other

24   answers.  45 was:  Would you have difficulty putting aside

25   what you've learned about the events on January 6, following

```
 1   the law as I explain it to you and deciding the case in a

 2   fair and impartial manner based solely on the evidence

 3   presented in court?

 4           And why did you answer that question yes?

 5           PROSPECTIVE JUROR:  I think I was trying to be as

 6   honest as possible.

 7           THE COURT:  Which we appreciate very much.

 8           PROSPECTIVE JUROR:  I would do my best to put

 9   personal sort of feelings aside and everything that I've

10   learned.  But obviously, it was a very intense event.  And

11   I've watched a lot of news coverage sort of in the moment

12   and then read a lot about it ever since, you know.  And so I

13   think that it would -- that would make it difficult to be

14   impartial if I'm being entirely honest.

15           THE COURT:  To that end, there are questions about

16   this case in particular.  Those are Questions 6 and 7.

17           Is there anything about the nature of the charges

18   or the parties involved that would prevent you from deciding

19   the case fairly, whether you'd heard about this case and

20   whether you could -- whether you have formed opinions and

21   whether you could fairly and impartially decide this case?

22           Can you explain your answers about this case, what

23   you know about it and why you answered that you would --

24           PROSPECTIVE JUROR:  Sure.  I will say I know less

25   about this case than I do about the incident in January.
```

1          My understanding is that it's sort of -- it's an

2     obstruction of justice.  It's not complying with a request

3     to provide information and to testify, just from my

4     perspective.  The request was put out there and it seems

5     like it's pretty straightforward.  It was not complied with.

6     So that's sort of my understanding.

7          But again, I would -- if I was selected, I would

8     do my best to just listen to the evidence.

9          THE COURT:  Where have you learned the information

10    about this case that you've mentioned?

11         PROSPECTIVE JUROR:  Probably primarily *The*

12    *Washington Post*.  That's my main news source.  I read *The*

13    *Atlantic* as well, but I don't think specifically about this

14    case.

15         THE COURT:  Have you learned anything about this

16    case other than it involves a subpoena from the Committee

17    and the question of whether Mr. Bannon acted lawfully in

18    connection with it?

19         PROSPECTIVE JUROR:  Nothing beyond that.

20         THE COURT:  Nothing else?

21         So one of the other questions that you answered

22    yes to is whether you would have trouble not watching,

23    reading or listening to news commentary, online postings

24    about this case while serving as a juror.

25         PROSPECTIVE JUROR:  So I work in digital

```
1    engagement as part of my job.  And one of my job

2    requirements, which I will need to continue sort of in off

3    hours while the trial is going on, is to post and engage

4    with our audience on social media, Twitter and Instagram

5    specifically.  So it's a little bit hard to not have things

6    pop up in your Twitter feed when you are actively on it.  So

7    that would be part of my job that I --

8             THE COURT:  So stuff would be popping up in your

9    Twitter feed.  But you could try to not read about this

10   case?

11            PROSPECTIVE JUROR:  Sure.  You know, tweets are so

12   small.  You can't always avoid seeing them.  So that would

13   be -- I couldn't stay off of it because that is part of my

14   job.

15            THE COURT:  So you also described -- you also

16   answered Questions 14 through 17, which are about your

17   knowledge about the hearings more generally, not just about

18   this case, but the January 6 committee hearings --

19            PROSPECTIVE JUROR:  Sure.

20            THE COURT:  -- and whether you could put aside

21   whatever you've learned and decide this case.

22            So can you first tell us, what have you seen about

23   the Committee, its work?  Where have you learned of it?

24   Maybe it's the same answer as you said before.  And whether

25   you've been watching hearings.
```

1          PROSPECTIVE JUROR:  I haven't been watching them.

2     I've watching some of the sort of synopsis videos at the end

3     of the day.  Not every day.  You know, it's a big time

4     commitment to focus on all of that.

5          So just a few days, some of the testimony.  I've

6     been reading some of the -- I would say sort of analysis of

7     some of the Committee members.  And so cursory, a little bit

8     of in-depth here and there, but not extensive.

9          THE COURT:  In connection with your review of that

10    information, have you seen, read or I guess just seen in a

11    general sense anything about Mr. Bannon?

12         PROSPECTIVE JUROR:  Recently, no.  Not

13    specifically.

14         THE COURT:  You did answer yes to the question

15    whether you have any beliefs or opinions about Mr. Bannon or

16    anyone associated with him that would make it difficult for

17    you to remain fair and impartial to both the Government and

18    the Defendant here.

19         Can you explain that answer?

20         PROSPECTIVE JUROR:  Again, I would do my best to

21    not let my personal feelings impact my decision in the case.

22    I would do the best I could to just listen to the facts.

23         But Stephen Bannon is a very public figure.

24    There's a lot that's been -- I'm very familiar with a lot of

25    his beliefs and his feelings and the public statements that

```
 1   he's made.  They are very different from my feelings about

 2   the world.  So it would make it a little bit hard for me to

 3   be an impartial juror.

 4           THE COURT:  Do you think there's at least a risk

 5   that you might not be able to set all these feelings aside?

 6           PROSPECTIVE JUROR:  If I'm being 100 percent

 7   honest, I believe that's a possibility.  Yes.

 8           THE COURT:  Just a few more questions.

 9           PROSPECTIVE JUROR:  Sure.

10           THE COURT:  21 asked:  As you sit here, do you

11   have an opinion about the Defendant's guilt or innocence in

12   this case?  You answered yes to that.

13           Is there anything that you want to add from your

14   prior statements?

15           PROSPECTIVE JUROR:  No.

16           THE COURT:  22 asks whether you or any family

17   member is in the legal profession generally speaking.  Can

18   you say why you answered yes to that?

19           PROSPECTIVE JUROR:  My best friend and her husband

20   work at DOJ.

21           THE COURT:  What part of DOJ?  Do you know?

22           PROSPECTIVE JUROR:  The environmental sort of

23   civil side.

24           THE COURT:  Neither of them is a prosecutor?

25           PROSPECTIVE JUROR:  No.
```

```
1              THE COURT:  Anyone else that is --

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  For this one, if you need, we can use

4      a phone that basically goes under seal.  But this is the one

5      that asks whether you or anyone close to you has been the

6      victim of or witness to a crime.

7              PROSPECTIVE JUROR:  Sure.

8              THE COURT:  Would you like to go on the phone?

9              PROSPECTIVE JUROR:  Yes.

10             THE COURT:  We're going off the record, under

11     seal.  I'll put the husher on.

12             (Whereupon, the following proceedings were had at

13     sidebar:)

14             ^ REDACT THE COURT:  Can everyone hear one

15     another?  Mr. Corcoran?  Ms. Vaughn?

16             Can you hear us, ma'am?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  Can you just briefly describe to us

19     your answer to No. 24.

20             PROSPECTIVE JUROR:  Sure.

21             THE COURT:  Ma'am, I don't think we can hear you.

22             PROSPECTIVE JUROR:  Oh.

23             THE COURTROOM DEPUTY:  (Assists the prospective

24     juror with the equipment.)

25             PROSPECTIVE JUROR:  Can you hear me now?
```

1          THE COURT:  Yes.

2          PROSPECTIVE JUROR:  So a friend of mine from

3    college was raped and then killed in a very terrible

4    incident about 15 years ago when we were in our mid-20s.

5    She was -- it was in New York.  It was in the newspaper.

6    And I also had a great aunt and uncle who was killed during

7    a robbery at their home.  That was a long time ago.  I was

8    3.  I wouldn't really say that would impact my -- I mean, I

9    don't remember it or them.

10         But the incident when I was in my 20s, the friend

11   from college, that was -- it still sticks with me.  It's

12   still -- that's hard to talk about.

13         THE COURT:  I'm very sorry for both of those

14   events.

15         Is there anything about the recent event with your

16   friend that would affect your ability to serve as a juror in

17   this case?

18         PROSPECTIVE JUROR:  I don't think so.  But that's

19   the -- I mean, that's the honest answer to your question.

20         THE COURT:  Thank you. ^ REDACT OFF

21         (Whereupon, the following proceedings were had in

22   open court:)

23         THE COURT:  Thank you.  So we're back from under

24   seal.

25         Last, you answered yes to Question 28 about

```
 1    whether you, a family member or anyone else close to you has

 2    been employed by law enforcement, generally speaking.

 3              PROSPECTIVE JUROR:  Yes.

 4              THE COURT:  Who is that?

 5              PROSPECTIVE JUROR:  It's a college roommate.

 6              THE COURT:  And where does he or she work?

 7              PROSPECTIVE JUROR:  Can I use the phone again?

 8              THE COURT:  Is this person currently employed by

 9    law enforcement?

10              PROSPECTIVE JUROR:  Yes.

11              THE COURT:  I think that's adequate for our

12    purposes.

13              PROSPECTIVE JUROR:  Okay.

14              THE COURT:  Ms. Gaston?

15              MS. GASTON:  Good afternoon.

16              PROSPECTIVE JUROR:  Hi.

17              MS. GASTON:  You mentioned that going on Twitter

18    is part of your job and that you're not able to not go on

19    Twitter when you are working.

20              Is there any possibility that somebody else at

21    your office would be able to handle that duty this week?

22              PROSPECTIVE JUROR:  So we are actually down a

23    staff member in my department who typically handles the

24    social media.  It's a small team.  I work for a museum.  So

25    it would be a real, like, burden on my co-workers for me not
```

1    to be able to do that.  So it's Instagram and Twitter.  Part

2    of it is engaging with our audience and responding to

3    comments.  And I can't control the comments that they might

4    make, either.  Typically they wouldn't be related to this.

5    But it would be really difficult to put that on my

6    co-workers this week.

7          MS. GASTON:  And then you mentioned that the

8    Defendant is a public figure and he has different views from

9    your views.

10          In terms of being presented with facts from the

11   case that are sort of your focus, would you be able to

12   disregard what you know about him from outside of the

13   courtroom and just focus on what you learn in the case only?

14          PROSPECTIVE JUROR:  I would do my best to try to

15   do that.  I can't 100 percent guarantee that.  But I would

16   try my hardest.

17          MS. GASTON:  Thank you.

18          PROSPECTIVE JUROR:  You're welcome.

19          THE COURT:  Mr. Corcoran?

20          MR. CORCORAN:  No.  Thank you, your Honor.

21          THE COURT:  Thank you.

22          Thank you, ma'am.

23          PROSPECTIVE JUROR:  Thank you.

24          (Thereupon, Prospective Juror No. 1995 retired

25    from the courtroom and the following proceedings were had:)

```
1              THE COURT:  Any motion to exclude 1995?
2              MR. CORCORAN:  Yes, your Honor.
3              Part of --
4              THE COURT:  It's granted.
5              1995 is not qualified.
6              Let's bring in Juror 1957, Ms. Lesley.
7              (Thereupon, Prospective Juror No. 1957 entered the
8       courtroom and the following proceedings were had:)
9              THE COURT:  Good afternoon.
10             PROSPECTIVE JUROR:  Hi.
11             THE COURT:  You can take your mask off if you
12      would like.
13             You are Juror 1957.  Correct?
14             PROSPECTIVE JUROR:  Yes.
15             THE COURT:  I'm going to read into the record the
16      answers to which -- or the questions to which you answered
17      yes.  They are 5, 7, 10 with a question mark, 14, 15, 16,
18      17, 19, 24, 39 and 44.  I'm going to ask you some questions,
19      followup questions, and then counsel might have some
20      additional ones.
21             So the first one is that you knew or recognized
22      any other member of the prospective jury panel, members of
23      the courtroom staff or me.  Can you explain why you answered
24      yes to that?
25             PROSPECTIVE JUROR:  Just another potential juror
```

1    used to be my roommate.

2          THE COURT:  So you know that other potential juror

3    pretty well?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Did you talk to that other potential

6    juror today?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  What did you guys talk about?

9          PROSPECTIVE JUROR:  Not this.  Just catching up

10   with other stuff.

11         THE COURT:  You also answered yes to having seen,

12   heard or read anything about this case.  Can you describe

13   what you know about this case or knew before you got here

14   today and where you learned of it?

15         PROSPECTIVE JUROR:  I mean, I think it's just that

16   it was happening.  I don't remember.  It would be really

17   hard for me to try to remember what I actually read at this

18   point.

19         THE COURT:  Do you actually -- before I instructed

20   you at the beginning about what the case was about

21   generally, did you have any idea about what this case was?

22         PROSPECTIVE JUROR:  No.

23         THE COURT:  You put a question mark next to No.

24   10, which is whether you or anyone close to you worked for

25   the House or the Senate or an agency affiliated with the

1      legislative branch.  What was your answer there for?

2              PROSPECTIVE JUROR:  Not directly affiliated, but I

3      work for NASA.

4              THE COURT:  You work for NASA?

5              PROSPECTIVE JUROR:  Not NASA, but I work for the

6      contractor, which has a headquarters.

7              THE COURT:  So you work for a NASA contractor

8      presently?

9              PROSPECTIVE JUROR:  Yes.

10             THE COURT:  How long have you been doing that for?

11             PROSPECTIVE JUROR:  Eight years, eight or nine.

12             THE COURT:  Is there anything about your work at

13     NASA that would in your view make it difficult to be

14     impartial in this case?

15             PROSPECTIVE JUROR:  I don't think so.  I mean, the

16     only reason I put the question mark was because we are on

17     the Hill a lot.  Yeah.

18             THE COURT:  Fair enough.  Thank you.

19             Then you answered yes to the four questions that

20     are about the Select Committee, your knowledge of the

21     Committee, the hearings the Committee has held and then the

22     question about whether you could follow the law and facts in

23     this case notwithstanding that.

24             Why don't we just start with, can you tell us how

25     you've come to learn about what the Committee is doing,

```
1    whether you've been watching hearings, how much you know
2    about it?
3              PROSPECTIVE JUROR:  I think my answer to that
4    question was mainly just by watching some of the hearings.
5              THE COURT:  Which hearings have you watched?
6              PROSPECTIVE JUROR:  I think it's probably just
7    stuff like clips that I've seen through different news
8    sources.
9              THE COURT:  So you haven't sat down and watched a
10   hearing from start to finish?  You've watched some of the
11   clips that have been played?
12             PROSPECTIVE JUROR:  Yeah.
13             THE COURT:  Of the portions of the hearings that
14   you've watched, have you seen any discussion about
15   Mr. Bannon?
16             PROSPECTIVE JUROR:  I don't think so.
17             THE COURT:  You did answer yes to Question 17,
18   which says:  If you've watched or read coverage of the
19   Committee, would you have any difficult putting aside any
20   opinion you've reached following the law and deciding this
21   case on the law and the facts?  Can you explain why you
22   answered yes to that question?
23             PROSPECTIVE JUROR:  I don't remember.
24             THE COURT:  Based on what you've seen about the
25   Committee and the hearings you've described and the like,
```

1   would you have difficulty putting aside your personal

2   opinions about what you've seen and deciding the facts in

3   this case and following the law as I describe it to you?

4           PROSPECTIVE JUROR:  I don't think so.  No.

5           THE COURT:  You also answered yes to Question 19,

6   that states:  Mr. Bannon is a former advisor to President

7   Trump.  Do you, your spouse or partner or your family have

8   any political beliefs that might prevent you from sitting in

9   judgment of another person because that person's political

10  beliefs are the same or different from your own?  You

11  answered yes to that.  Why did you answer yes to that

12  question?

13          PROSPECTIVE JUROR:  I think in general, my family

14  are pretty strong Democrats.  So -- but that's probably why

15  I answered that way.

16          THE COURT:  Do you think that you would have a

17  hard time being fair and impartial if someone who's being

18  prosecuted is a Republican?

19          PROSPECTIVE JUROR:  No.

20          THE COURT:  What about if the person's a Democrat?

21          PROSPECTIVE JUROR:  No.

22          THE COURT:  You answered yes to Question 24.  This

23  one is a bit more personal.  And if you want, we can pick up

24  these phones and a select few of us can hear you.

25          This is the one that asks if you or anyone close

1    to you has ever been a victim or witness to a crime.

2              PROSPECTIVE JUROR:  I just answered that because I

3    live in the District and I've seen plenty of crimes.

4              THE COURT:  Have you ever reported what you've

5    seen to law enforcement such that you had an experience with

6    the police or other people?

7              PROSPECTIVE JUROR:  No.  I don't think so.  Most

8    of the time, either the police were already on their way or

9    somebody else had already called them.  So I didn't have to.

10             THE COURT:  Anything about that experience --

11   those experiences that would cause you to question your

12   ability to be impartial?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  Then you answered yes to Question 39

15   about whether you're taking medications or have a physical

16   condition that can make it difficult for you to serve.

17   Again, the same offer about the phone; or you may feel very

18   comfortable talking about that.

19             PROSPECTIVE JUROR:  I'm currently about seven

20   months pregnant.  So that's why I said that.

21             THE COURT:  Obviously, anything could happen.

22   There's at least one other pregnant person in this

23   courtroom.  Recognizing that we will have some alternate

24   jurors, if this trial lasts two weeks or less, that's still

25   pretty far from your due date.  Correct?

1                PROSPECTIVE JUROR:  Yes.

2                THE COURT:  And then finally, you answered yes to

3     Question 44, which is sort of a catch-all.  And it says:  No

4     matter what you've seen or heard about events at the Capitol

5     on January 6 and no matter what opinions you may have

6     formed, would you have difficulty setting that aside,

7     following the law and deciding the case in a fair and

8     impartial manner?  And you said yes, you would.

9                Is it the case that you would have a hard time

10    assessing the facts and applying the law as I instruct you

11    in light of what you know about January 6?

12               PROSPECTIVE JUROR:  I don't think so.  I mean, I

13    work at NASA as a contractor, like I said.  So we work under

14    all kinds of administrations.  So I'm used to being neutral

15    in that way and doing what's right.  So I don't think so.

16               But I said that probably because I live in the

17    city and I'm a photographer.  And a lot of my photographer

18    friends were in the Capitol when that happened.  So yeah.

19    It was a little scary.

20               THE COURT:  Knowing those people who were in the

21    Capitol and having talked to them about it and the events

22    there, would that knowledge, those discussions, cause you to

23    worry about whether you could be impartial in this case,

24    which is about the contempt-of-Congress charge?

25               PROSPECTIVE JUROR:  I don't think so.

```
 1                    THE COURT:  Thank you.

 2                    Ms. Vaughn?  I think I have it right.

 3                    MS. VAUGHN:  Good afternoon.

 4                    PROSPECTIVE JUROR:  Hi.

 5                    MS. VAUGHN:  Just to follow up on the Court's

 6          question at the end there, you understand that this case

 7          involves a contempt charge.  Are you able to separate that

 8          from the events of January 6 in your mind and to just judge

 9          what happened to the subpoena here?

10                    PROSPECTIVE JUROR:  Yes.

11                    MS. VAUGHN:  And then you answered some questions

12          about politics.  But are you able to set aside politics when

13          it comes to just judging a contempt charge here, the facts

14          and the law?

15                    PROSPECTIVE JUROR:  Yeah.  I believe so.

16                    MS. VAUGHN:  Thank you.

17                    PROSPECTIVE JUROR:  Thanks.

18                    THE COURT:  Mr. Corcoran?

19                    MR. CORCORAN:  Good afternoon.

20                    What type of -- specifically, what type of work do

21          you do as a contractor at NASA?

22                    PROSPECTIVE JUROR:  I'm a photographer and a photo

23          archivist for the photo office at NASA headquarters.

24                    MR. CORCORAN:  And when you say that NASA is on

25          the Hill frequently, do you go up to the Hill as well?
```

```
1              PROSPECTIVE JUROR:  Yes.

2              MR. CORCORAN:  What do you do?

3              PROSPECTIVE JUROR:  I photograph usually our

4    administrator or leadership testifying.  I was just there

5    recently for a James Webb space telescope reception.  So...

6              MR. CORCORAN:  Do you ever photograph those

7    officials during the congressional hearings?

8              PROSPECTIVE JUROR:  Yeah.  Usually, they're

9    testifying during a hearing, our leadership.

10             MR. CORCORAN:  And do you have to interact at all

11   with the congressional committees to do your job as a

12   photographer?

13             PROSPECTIVE JUROR:  Not very much.  No.

14             MR. CORCORAN:  You said that your family are

15   strong Democrats.  And my question is:  Would you be more

16   inclined to believe somebody who is testifying who is

17   associated with the Democratic party?

18             PROSPECTIVE JUROR:  I don't think so.  I mean,

19   everybody's sworn in, so I would hope that everybody's

20   telling the truth.

21             MR. CORCORAN:  Okay.  The last question, then.

22   Hopefully, you'll understand that this is out of respect.

23   But my question is:  Would you prefer not to serve on a

24   criminal jury at seven months pregnant for any reason?

25             PROSPECTIVE JUROR:  I think it probably depends on
```

```
1    how long it lasts, mostly.  You know, I'm trying to conserve

2    my leave for after the baby gets here.  So that's my main

3    concern.

4              MR. CORCORAN:  Okay.

5              PROSPECTIVE JUROR:  Yeah.

6              MR. CORCORAN:  Thank you, your Honor.

7              THE COURT:  Thank you.

8              PROSPECTIVE JUROR:  Thank you.

9              (Thereupon, Prospective Juror No. 1957 retired

10   from the courtroom and the following proceedings were had:)

11             THE COURT:  Any motions to exclude or strike Juror

12   1957?

13             MS. VAUGHN:  Not from the Government, your Honor.

14             MR. CORCORAN:  Although I'd like to help her save

15   her leave, no.  I don't think we can do that.

16             THE COURT:  I agree.

17             Juror 1957 is qualified.

18             Juror 93, Ms. Lesley.

19             (Thereupon, Prospective Juror No. 93 entered the

20   courtroom and the following proceedings were had:)

21             THE COURT:  Good afternoon.

22             PROSPECTIVE JUROR:  Good afternoon.

23             THE COURT:  You can take your mask off if you

24   would like.

25             You are Juror 93 or 0093.   Correct?
```

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  I'm going to read for the record the

3     questions that you answered yes to and I'm going to ask you

4     some questions about your answers.

5          You answered yes to Questions 22 and 24 only.

6     Correct?

7          PROSPECTIVE JUROR:  Correct.

8          THE COURT:  Question 22 basically asks whether

9     you, a family member or anyone else in your close orbit

10    works in the legal profession.  Can you describe why you

11    answered yes to that?

12         PROSPECTIVE JUROR:  Yeah.  Both my parents are

13    lawyers.  My mother does corporate and real estate law.  My

14    father does elder law.

15         THE COURT:  Has either of them ever worked in the

16    criminal area as a prosecutor or defense attorney?

17         PROSPECTIVE JUROR:  Never.  No.

18         THE COURT:  Anything about your knowledge of their

19    work or being the child of lawyers that would cause you to

20    question whether you could be impartial here?

21         PROSPECTIVE JUROR:  No.  If anything, it would

22    make me more impartial.

23         THE COURT:  You also answered yes to Question 24.

24    On this one, if your further discussion or details are very

25    personal, we can pick up this phone and --

```
1               PROSPECTIVE JUROR:  No.  It's okay.

2               THE COURT:  This is the one that asks whether you,

3    a family member or anyone close to you has been the victim

4    or witness to a crime.  Can you describe your answer to

5    that?

6               PROSPECTIVE JUROR:  Yes.  I had an unlawful entry

7    and misdemeanor death threats on me last year.

8               THE COURT:  So you reported those?

9               PROSPECTIVE JUROR:  Yes; and I went through the

10   court process and everything.

11              THE COURT:  And is there anything about that

12   experience that was problematic in your view and/or that

13   would lead you to be concerned about being impartial here?

14              PROSPECTIVE JUROR:  No.  Everything worked out.

15   Yeah.

16              THE COURT:  Is there anything about the statement

17   of the case that I read earlier and the questions more

18   generally that you heard that would make you think that you

19   could not be impartial in this matter if you were selected

20   as a juror?

21              PROSPECTIVE JUROR:  No.  I can be impartial.

22              THE COURT:  I just want to confirm that you had

23   not before today heard anything about this case.  Is that

24   correct?

25              PROSPECTIVE JUROR:  That is correct.
```

```
 1                  THE COURT:  Thank you.

 2                  Ms. Gaston?

 3                  MS. GASTON:  Good afternoon.

 4                  PROSPECTIVE JUROR:  Hello.

 5                  MS. GASTON:  I'm sorry to hear about the crime

 6      against you.

 7                  PROSPECTIVE JUROR:  That's okay.  Thank you.

 8                  MS. GASTON:  Was it here in the District?

 9                  PROSPECTIVE JUROR:  Yes, it was.

10                  MS. GASTON:  Was that -- did it go to a trial or

11      was --

12                  PROSPECTIVE JUROR:  Yes.

13                  THE COURT:  -- it prosecuted?

14                  PROSPECTIVE JUROR:  It was settled between the

15      U.S. attorney and the person.  So he pled guilty and got

16      parole and no jail time.  That's okay with me.

17                  MS. GASTON:  And did you feel that you were kept

18      up to date on things by the U.S. Attorney's Office?

19                  PROSPECTIVE JUROR:  Yeah.  They were great.

20                  MS. GASTON:  And then what do you do for a living?

21                  PROSPECTIVE JUROR:  I actually sell art.  So not

22      really anything to do with politics, but I deal with art.

23      Yeah.

24                  MS. GASTON:  Could you tell us more about that?

25                  PROSPECTIVE JUROR:  Yeah.  I mean, I run an online
```

```
1     art gallery.  I just travel a lot and collect a bunch of

2     different artists.  So I go to art shows and I do a bunch of

3     wholesale.  I work with the Van Gogh Museum, do wholesale in

4     America and just a bunch of imports of art and sales.

5                    MS. GASTON:  Thank you.

6                    PROSPECTIVE JUROR:  Of course.

7                    THE COURT:  Mr. Corcoran?

8                    MR. CORCORAN:  No questions, your Honor.  Thank

9     you.

10                   THE COURT:  Thank you, sir.

11                   PROSPECTIVE JUROR:  Yes, your Honor.

12                   THE COURTROOM DEPUTY:  (Confers with the Court

13    privately.)

14                   THE COURT:  Thank you, sir.

15                   PROSPECTIVE JUROR:  Thank you.

16                   (Thereupon, Prospective Juror No. 93 retired from

17    the courtroom and the following proceedings were had:)

18                   THE COURT:  Any motions to exclude 93?

19                   MS. GASTON:  Not from the Government, your Honor.

20                   MR. CORCORAN:  No, your Honor.

21                   THE COURT:  Ms. Lesley, we can bring in Juror

22    No. 540.

23                   (Thereupon, Prospective Juror No. 540 entered the

24    courtroom and the following proceedings were had:)

25                   THE COURT:  Good afternoon.
```

```
1              PROSPECTIVE JUROR:  Hi.

2              THE COURT:  You can take off your mask if you

3     would like.  You don't have to.

4              You're juror 540.  Correct?

5              PROSPECTIVE JUROR:  That's correct.

6              THE COURT:  I'm going to read into the record the

7     questions that you answered yes to.

8              PROSPECTIVE JUROR:  Sure.

9              THE COURT:  Then I'll ask you some followup

10    questions.  Those are Questions 7, 10, 14, 16, 22 and 39.

11             Question 7 asks if you have heard, seen or read

12    anything from any source about this case.  Can you describe

13    what you had heard before today about this case?

14             PROSPECTIVE JUROR:  I'm aware that there's

15    allegations against the Defendant and that there were plans

16    for an oncoming trial.

17             THE COURT:  Do you know anything about the details

18    of the trial and the claims other than what you heard today?

19             PROSPECTIVE JUROR:  Not further than what I heard

20    today.  No.

21             THE COURT:  Have you formed any opinions about

22    this case?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  Is there anything about what you knew

25    before that would cause you to be concerned that you could
```

 1    not be impartial?

 2              PROSPECTIVE JUROR:  No.

 3              THE COURT:  You also answered yes to Question

 4    No. 10, which asks whether you or anyone in your close orbit

 5    has worked for or provided services to the House, the Senate

 6    or any agency affiliated with the legislative branch.  Can

 7    you describe your answer to that question?

 8              PROSPECTIVE JUROR:  Yes.  My husband worked as a

 9    legal intern for Representative Etheridge in 2009 to 2010.

10              THE COURT:  And has your husband worked on the

11    Hill so to speak since 2010?

12              PROSPECTIVE JUROR:  No.

13              THE COURT:  What does he do now?

14              PROSPECTIVE JUROR:  He's a lawyer for the SEC.

15              THE COURT:  For the SEC?

16              PROSPECTIVE JUROR:  Yes.

17              THE COURT:  Does he do criminal or civil?

18              PROSPECTIVE JUROR:  He's legal counsel for TM and

19    in the commissioner's office.

20              THE COURT:  How long has he been at the SEC?

21              PROSPECTIVE JUROR:  Since 2014.

22              THE COURT:  Are you a lawyer?

23              PROSPECTIVE JUROR:  No.

24              THE COURT:  So is that -- you answered yes to

25    Question 22 about whether any family member is in the legal

1    profession.  And you answered that way because of your

2    husband?

3                PROSPECTIVE JUROR:  Yes.  My husband.

4                THE COURT:  You also answered yes to Questions 14

5    and 16 about the Select Committee investigation and the

6    hearings.  So can you describe to us how you've learned

7    about the Committee and its work, how much you've read about

8    it and seen on the news, et cetera?  And then sort of

9    similar question about the hearings specifically.

10                PROSPECTIVE JUROR:  I'm aware that the Select

11    Committee was formed and that there currently are ongoing

12    hearings.  I've seen headlines and maybe read the first

13    couple paragraphs of a couple articles updating on who has

14    been called for hearings and some of the basics of their

15    testimony.

16                THE COURT:  Have you watched any of the hearings

17    themselves --

18                PROSPECTIVE JUROR:  I'm --

19                THE COURT:  -- or portions of them?

20                PROSPECTIVE JUROR:  I'm a physician, so I have

21    occasionally seen snippets of it.  I work in a hospital, so

22    often the TV is on.  I've seen snippets of it in that

23    manner.  But it's -- mostly when I've been outside of work,

24    it's mostly been reading.  I haven't been watching the

25    hearings.

```
1              THE COURT:  Either in connection with what you
2    read about the hearings or the hearings -- the snippets that
3    you watched, have you heard any discussion or read about a
4    discussion of Mr. Bannon during those hearings?
5              PROSPECTIVE JUROR:  No.
6              THE COURT:  Is there anything about your
7    knowledge, reading, learning about the hearings or the
8    Committee's work more generally that in your view would
9    cause you to be potentially biased in this case?
10             PROSPECTIVE JUROR:  No.
11             THE COURT:  You also answered Question 39 about
12   whether you're taking any medications or have a physical
13   condition that would make it difficult for you to serve as a
14   juror.  This obviously could be a pretty personal question.
15   If you'd like, we can go on the phone and only a small group
16   of us could hear.
17             PROSPECTIVE JUROR:  (Indicates.)
18             THE COURT:  So we'll just have Ms. Lesley come up
19   here.  We're going to go under seal.  Then what you'll have
20   to do is pull the button down as soon as you hear the husher
21   on.
22             (Whereupon, the following proceedings were had at
23   sidebar:) ^ REDACT
24             THE COURT:  Can you hear me, ma'am?
25             PROSPECTIVE JUROR:  Yes, I can.
```

```
 1              THE COURT:  Can everyone else hear me?

 2              So can you tell us why you answered yes to No. 39?

 3              PROSPECTIVE JUROR:  I'm in my first trimester of

 4       pregnancy.  I have some pretty severe nausea.  I guess very

 5       severe nausea.  If I don't have small, frequent meals, I may

 6       become very nauseous if I'm unable to eat for long periods.

 7              THE COURT:  And if we were able to work out a way

 8       that would allow you to eat frequently, do you think that

 9       would be at least helpful?

10              PROSPECTIVE JUROR:  Yes.

11              THE COURT:  Thank you so much.

12              PROSPECTIVE JUROR:  Thanks.

13              (Whereupon, the following proceedings were had in

14       open court:) ^ REDACT OFF

15              THE COURT:  We're back from under seal.

16              Ms. Vaughn?

17              MS. VAUGHN:  Good afternoon.

18              PROSPECTIVE JUROR:  Good afternoon.

19              MS. VAUGHN:  I was just wondering what kind of

20       physician you are.

21              PROSPECTIVE JUROR:  Internal medicine and

22       pediatrics.

23              MS. VAUGHN:  What hospital do you work for?

24              PROSPECTIVE JUROR:  Sibley Hospital.

25              MS. VAUGHN:  Thank you.
```

```
 1                    THE COURT:  Mr. Corcoran?

 2                    MR. CORCORAN:  Thank you.

 3             Good afternoon.  One of the questions -- one of

 4       the things that you said was that you were aware that there

 5       were allegations against Mr. Bannon.  What's the source of

 6       your knowledge?

 7                    PROSPECTIVE JUROR:  So because I work at a

 8       hospital and I go from room to room, I often see headlines

 9       like on the television when I'm in patient rooms.  So it's

10       been a variety of sources, anywhere from Fox News to CNN.

11       But at home I typically read *The Washington Post* and the *New

12       York Times*.

13                    MR. CORCORAN:  What exactly -- what's your best

14       recollection about what you've learned about Mr. Bannon?

15                    PROSPECTIVE JUROR:  Identical to what the neutral

16       statement made at the beginning of this selection process

17       was, that the allegation is that Mr. Bannon was summoned to

18       provide testimony and failed to do so in an intentional

19       manner.  Additionally, there was a request for documents

20       or -- I'm forgetting the word for it, but yeah, something

21       along of lines of documents that were requested that were

22       also not provided.

23                    MR. CORCORAN:  So before coming to court today, if

24       I understand you, you had received information that led you

25       to believe that Mr. Bannon received the subpoena and
```

1    intentionally decided not to comply with it.  Is that

2    accurate?

3                PROSPECTIVE JUROR:  No.  That's the allegation

4    being made.  I don't -- I haven't received any information

5    to give me knowledge of the truth of the situation.

6                MR. CORCORAN:  Okay.  And you'd be open to

7    listening to all the evidence in the case on whether the

8    Government's proved its case beyond a reasonable doubt?

9                PROSPECTIVE JUROR:  Yes.

10               MR. CORCORAN:  Thank you.

11               THE COURT:  Thank you.  Thank you very much.

12               PROSPECTIVE JUROR:  Thanks.

13               (Thereupon, Prospective Juror No. 540 retired from

14    the courtroom and the following proceedings were had:)

15               THE COURT:  Any motions to exclude Juror No. 540?

16               MS. VAUGHN:  Not from the Government, your Honor.

17               MR. CORCORAN:  No, your Honor.

18               THE COURT:  Thank you.

19               Juror 540 is qualified.

20               I just want to -- before we bring the next juror

21    in, do the parties agree that we have now qualified 17

22    jurors?

23               MS. VAUGHN:  That's the Government's

24    understanding.

25               MR. CORCORAN:  Yes, your Honor.

1          THE COURT:  Why don't we take a brief recess.  It

2     may be that we can get the next five before we close for the

3     day.  We'll see.  Ten minutes.

4          It is 3:28.  Let's go back on the record at 3:40.

5          (Thereupon a recess was taken, after which the

6     following proceedings were had:)

7          THE COURTROOM DEPUTY:  Your Honor, we're back on

8     the record.

9          THE COURT:  Thank you.

10         Anything to discuss, counsel, before we start with

11    Juror 300?

12         MS. VAUGHN:  Not from the Government, your Honor.

13         MR. CORCORAN:  No, your Honor.

14         THE COURT:  Thank you.

15         Ms. Lesley, let's bring in Juror 300.

16         (Thereupon, Prospective Juror No. 300 entered the

17    courtroom and the following proceedings were had:)

18         THE COURT:  Good afternoon.

19         PROSPECTIVE JUROR:  Hello.

20         THE COURT:  Feel free to take off your mask if you

21    would like to.  You don't have to, but you're welcome to.

22         You're Juror 300.  Correct?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  I'm just going to read into the record

25    the questions that you answered yes to.  Those are Questions

```
1    7, 10, 14, 16 and 25.  Why don't we start in reverse order.

2    You answered yes to the question whether you've ever served

3    on a grand jury.  Can you describe when that was and where,

4    if you recall?

5              PROSPECTIVE JUROR:  It was in D.C. maybe six,

6    seven years ago.

7              THE COURT:  Do you recall if it was in federal

8    court or D.C. Superior Court?

9              PROSPECTIVE JUROR:  It was over at the -- I think

10   it was Superior.

11             THE COURT:  And do you remember how long your

12   service was?

13             PROSPECTIVE JUROR:  It was like three months.

14             THE COURT:  And is there anything about that

15   experience that would affect your ability to be impartial in

16   this case?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  You answered yes to Question 7, which

19   is whether you had heard, seen or read anything from any

20   source about this case before you arrived here today.  Can

21   you describe what you knew about this case and your source

22   for that knowledge?

23             PROSPECTIVE JUROR:  I think I literally heard

24   something about it on the radio on my way over here this

25   morning.
```

```
 1                THE COURT:  Okay.

 2                PROSPECTIVE JUROR:  Otherwise, just, you know, in

 3       the news here and there.

 4                THE COURT:  Describe for us, if you could, what

 5       you heard as a result of that radio show and anything else

 6       that you had heard, so what you knew about the case before

 7       you got here today.

 8                PROSPECTIVE JUROR:  Oh, I knew that Mr. Bannon

 9       didn't come before the congressional committee.  That's

10       essentially what I know about it.

11                THE COURT:  Had you formed any conclusions before

12       you arrived today about -- or had an opinion about this

13       case?

14                PROSPECTIVE JUROR:  No.

15                THE COURT:  Are you worried about having learned

16       at least a little bit before you appeared here today about

17       your ability to be impartial in looking at the facts and

18       listening to my instructions?

19                PROSPECTIVE JUROR:  No.

20                THE COURT:  You also answered yes to Question 10,

21       which asks whether you, a family member or anyone else close

22       to you ever worked for or provided services to the House or

23       the Senate or any agency affiliated with the legislative

24       branch.  Can you tell us who that was and what their job

25       was?
```

```
1              PROSPECTIVE JUROR:  My mom works for a
2         representative.
3              THE COURT:  Right now?
4              PROSPECTIVE JUROR:  Yes.
5              THE COURT:  For whom?  Which representative?
6              PROSPECTIVE JUROR:  Representative Frankel,
7         Florida.
8              THE COURT:  Was your mom at the Capitol on January
9         6th?
10             PROSPECTIVE JUROR:  No.
11             THE COURT:  Have you discussed this case with your
12        mom?
13             PROSPECTIVE JUROR:  This case?
14             THE COURT:  Yes.
15             PROSPECTIVE JUROR:  No.  I have not discussed this
16        case.
17             THE COURT:  You also answered yes to Questions 14
18        and 16, which are really about the Select Committee.  And
19        one question was whether you had heard, seen or read
20        anything from any source about the Select Committee.  And
21        then it asks a similar question, but it asks whether you've
22        watched or read coverage of the hearings.
23             Let me just start generally.  Can you describe how
24        you've learned about the Select Committee and what it's up
25        to and then how much of the hearings or snippets thereof
```

1    you've watched?

2              PROSPECTIVE JUROR:  I feel like I have learned

3    most about the Committee from the news, just like the

4    evening news.

5              THE COURT:  Which evening news do you typically

6    watch?

7              PROSPECTIVE JUROR:  Like ABC.

8              THE COURT:  Okay.

9              PROSPECTIVE JUROR:  I haven't been able to really,

10   like, watch the hearings because I'm usually at work during

11   the day.  But from what I've learned, they're investigating

12   what happened that day, on January 6th, essentially.

13             THE COURT:  And what you've watched and learned

14   about the Committee or the hearings, have you seen or heard

15   a discussion of Mr. Bannon?

16             PROSPECTIVE JUROR:  Not that I can recall.

17             THE COURT:  Is there anything in my description of

18   the statement of the case, the neutral statement of the case

19   earlier today or the questions that I asked you that would

20   lead you to be concerned about your ability to be impartial

21   if you were to serve as a juror?

22             PROSPECTIVE JUROR:  No.

23             THE COURT:  Thank you.

24             Ms. Gaston?

25             MS. GASTON:  Good afternoon.

```
 1                    PROSPECTIVE JUROR:  Hi.

 2                    MS. GASTON:  Are you familiar with the Defendant

 3        outside of this case or what you heard on the radio this

 4        morning?

 5                    PROSPECTIVE JUROR:  Yes.

 6                    MS. GASTON:  And are you able to set aside

 7        anything that you may know about him from outside the

 8        courtroom and just focus on the facts that you learn in the

 9        courtroom?

10                    PROSPECTIVE JUROR:  Yes.

11                    MS. GASTON:  And do you think you're able to

12        follow the Court's instructions about what the law is and

13        what you should and should not consider?

14                    PROSPECTIVE JUROR:  Yes.

15                    MS. GASTON:  What do you do for a living?

16                    PROSPECTIVE JUROR:  I work in an art museum.  I'm

17        in public engagement.

18                    MS. GASTON:  I'm sorry.  I didn't hear that.

19                    PROSPECTIVE JUROR:  I'm in public engagement at an

20        art museum.

21                    MS. GASTON:  What kind of art museum?

22                    PROSPECTIVE JUROR:  Contemporary, fine and

23        contemporary art.

24                    MS. GASTON:  Thank you.

25                    THE COURT:  Thank you.
```

1           Mr. Corcoran?

2           MR. CORCORAN:  Good afternoon.

3           PROSPECTIVE JUROR:  Hi.

4           MR. CORCORAN:  Tell me what you remember about

5   what you heard on the radio on the way to court today.

6           PROSPECTIVE JUROR:  That Mr. Bannon's trial was

7   beginning today.  To be honest, I didn't put two and two

8   together until I got here.  But yeah.  It was just a brief,

9   like, NPR, like, more than briefing, what's happening today

10  kind of thing.

11          MR. CORCORAN:  And in response to the prosecutor's

12  questions, you said that you're familiar with the Defendant.

13  What do you know about Steve Bannon?

14          PROSPECTIVE JUROR:  I know that he was an advisor

15  to President Trump.  I know that he was involved in -- what

16  was that? -- like InfoWars, that news company, that he's

17  very involved with kind of right-wing politics.

18          MR. CORCORAN:  And what's the source of that

19  information?  Where did you learn that background about

20  Mr. Bannon?

21          PROSPECTIVE JUROR:  I guess just from the news,

22  the media, you know.  I guess social media.

23          MR. CORCORAN:  Okay.

24          PROSPECTIVE JUROR:  Just kind of --

25          MR. CORCORAN:  Based upon what you've heard,

```
 1    what's your perception of Mr. Bannon?

 2              PROSPECTIVE JUROR:  My perception of him?  I don't

 3    really know.  I guess my perception of him is that he is

 4    like a player in, like, right-wing political circles.

 5              MR. CORCORAN:  Okay.  Now, you mentioned that a

 6    family member works for -- is it a Democratic member of

 7    Congress?

 8              PROSPECTIVE JUROR:  Yes.

 9              MR. CORCORAN:  And is it your -- did I hear

10    correctly that your mom is the one who works there?

11              PROSPECTIVE JUROR:  Yes.

12              MR. CORCORAN:  For Representative Frankel?

13              PROSPECTIVE JUROR:  Yes.

14              MR. CORCORAN:  Of Florida?

15              PROSPECTIVE JUROR:  Yes.

16              MR. CORCORAN:  How long has your mother worked for

17    Representative Frankel?

18              PROSPECTIVE JUROR:  Maybe ten years.

19              MR. CORCORAN:  Ten years?

20              PROSPECTIVE JUROR:  Maybe less.  Eight years.

21    Eight to ten years.

22              MR. CORCORAN:  Okay.

23              PROSPECTIVE JUROR:  I don't know exactly.

24              MR. CORCORAN:  Just so you know, the reason I'm

25    asking is there's a little muffling from your mask, so I
```

1    may not catch what you're saying.

2            PROSPECTIVE JUROR:  Sorry.  I can enunciate more.

3    I apologize.

4            MR. CORCORAN:  No problem.

5            So your mom's worked for Representative Frankel

6    for about eight years?

7            PROSPECTIVE JUROR:  Yes.

8            MR. CORCORAN:  What does she do?

9            PROSPECTIVE JUROR:  She is -- I believe her title

10   is the director of operations.  She's like her scheduler in

11   the office.

12           MR. CORCORAN:  And since January 6th, have you

13   talked to your mom at all about that event?

14           PROSPECTIVE JUROR:  About January 6th?

15           MR. CORCORAN:  Yes.

16           PROSPECTIVE JUROR:  Yes.

17           MR. CORCORAN:  Tell me about that.

18           PROSPECTIVE JUROR:  I guess our conversations

19   about that day -- I mean, she obviously worked on the

20   Capitol for the congresswoman.  So about the impact that day

21   had just on her workplace, I guess, but also, you know,

22   living in D.C., you know, the impact that it had here in the

23   city as well, mostly.

24           MR. CORCORAN:  And what impact did it have on your

25   mom and her workplace?

```
 1              PROSPECTIVE JUROR:  I don't know the specifics of

 2      that, to be honest.  She's been working remotely a lot.

 3      But, you know, just being on the Capitol, for anyone who

 4      works there or lives in D.C., you know, it impacted them

 5      that day.  At least for me.  I'll speak for myself.

 6              MR. CORCORAN:  Tell me about your own feelings

 7      about being someone who lives in D.C. when the events of

 8      January 6th happened.  How did that affect your thinking?

 9              PROSPECTIVE JUROR:  My thinking?

10              MR. CORCORAN:  How did it affect you?

11              PROSPECTIVE JUROR:  That day?  I mean, I guess I

12      was at work, working from home that day.  And I didn't

13      really know that it was even happening until, like, friends

14      who don't live in the city were, like, texting me to make

15      sure that I was okay, because the museum I work at is very

16      close to the Capitol Building.

17              But I guess aside from that day just, you know,

18      the fence up around the Capitol, you know, just -- it was a

19      different at least feeling than it was before that day,

20      afterwards, being down there.

21              MR. CORCORAN:  And you said that the museum at

22      which you work is close to the Capitol Building?

23              PROSPECTIVE JUROR:  Yes.

24              MR. CORCORAN:  How close?

25              PROSPECTIVE JUROR:  It's on 7th and Independence.
```

```
1    So it's like --

2              MR. CORCORAN:  Seven blocks?

3              PROSPECTIVE JUROR:  Seven blocks.  Yes.

4              MR. CORCORAN:  How did it affect your thinking?

5    I'm trying to get a sense of -- is fear involved, basically,

6    for you?

7              PROSPECTIVE JUROR:  I wouldn't describe it as

8    fear, no.

9              MR. CORCORAN:  How would you describe it?

10             PROSPECTIVE JUROR:  Like sad, I guess.  Sad.

11             MR. CORCORAN:  In your conversations with your

12   mother, did she ever say anything about how January 6th

13   affected her employer, Representative Frankel?

14             PROSPECTIVE JUROR:  No.

15             MR. CORCORAN:  Okay.  Did you talk at all about

16   how it affected members of Congress?

17             PROSPECTIVE JUROR:  No.

18             MR. CORCORAN:  Okay.

19             PROSPECTIVE JUROR:  No.  We didn't talk about

20   this.

21             MR. CORCORAN:  Thank you, your Honor.

22             THE COURT:  Thank you.

23             Thank you, ma'am.

24             MS. GASTON:  Your Honor, can I ask one brief

25   question?
```

```
 1              THE COURT:  Sure.

 2              Apologies.  Ms. Gaston.

 3              MS. GASTON:  Very quickly, you understand that in

 4    this case we're not talking about an event that occurred on

 5    January 6th.  Right?

 6              PROSPECTIVE JUROR:  Yes.

 7              MS. GASTON:  And will you be able to set aside any

 8    feelings you have about the events on January 6th from the

 9    facts that you would be looking at as part of this jury?

10              PROSPECTIVE JUROR:  Yeah.

11              MS. GASTON:  Thank you.

12              THE COURT:  Thank you.

13              (Thereupon, Prospective Juror No. 300 retired from

14    the courtroom and the following proceedings were had:)

15              THE COURT:  Any motions to exclude Juror 300?

16              MR. CORCORAN:  Yes, your Honor.

17              So prior to today, Juror 300 was familiar with the

18    Defendant.  She associated him with right-wing politics,

19    something called InfoWars, and essentially considered him a

20    Republican player, I guess, to use her words.

21              On the way, she was directly affected by the

22    events of January 6th in the sense that she felt

23    something -- it was hard to capture exactly what -- because

24    her work is very close to the Capitol.

25              But most importantly, she had -- her mother works
```

1    for a Democratic member of Congress and has done so for

2    eight years.  So she's got a family member, her mother,

3    who's directly impacted by the events of January 6th.

4         She said, you know, even on the radio over here

5    she heard something to the effect that Mr. Bannon did not

6    show up for a congressional committee and had that prior

7    knowledge.

8         I think the sum of all that, given that we've got

9    a whole page of jurors who don't have any preexisting

10   knowledge, whose mother does not work for a Democratic

11   member of Congress, we'd ask that she be stricken.

12        THE COURT:  Thank you, Mr. Corcoran.

13        Ms. Gaston?

14        MS. GASTON:  Thank you, your Honor.

15        There's no cause for this potential juror to be

16   struck.  So first of all, her awareness that Mr. Bannon has

17   been involved in politics in the past has no bearing.  She

18   didn't say it in a derogatory way or display any feelings

19   one way or another about which political party he was

20   aligned with.  And I don't think we know what her politics

21   are.

22        We know that her mother works for a member of

23   Congress, but that member is not on this Committee.

24        With respect to feelings about January 6th, we're

25   not showing images or questioning on the actual events of

1    January 6th.  And this particular potential juror said very

2    specifically that she would be able to separate her feelings

3    about January 6 from the facts in this trial, which are

4    separate.

5           And as to the radio report that she heard this

6    morning, I heard the same one.  It was a fairly neutral

7    factual recitation.

8           THE COURT:  Thank you.

9           I find this is not an obvious exclude.  But

10   because we have so many additional jurors available to us,

11   for the reasons that Mr. Corcoran stated, I'm going to

12   exclude Juror 300.

13          Ms. Lesley, let's bring in Juror 1117, please.

14          (Thereupon, Prospective Juror No. 300 entered the

15   courtroom and the following proceedings were had:)

16          THE COURT:  Good afternoon.

17          PROSPECTIVE JUROR:  Good afternoon.

18          THE COURT:  You can take your mask off if you

19   would like.  You don't have to.

20          PROSPECTIVE JUROR:  Thank you.

21          THE COURT:  Of course.

22          Your Juror 1117.  Correct?

23          PROSPECTIVE JUROR:  Correct.

24          THE COURT:  I'm going to state for the record, you

25   answered yes to four questions:  Nos. 7, 14, 16 and 26.  I'm

```
 1    going to ask you some followup questions about those

 2    answers.

 3              Question 7 asks whether you had heard, seen or

 4    read anything about this case before you came here today.

 5    Can you describe why you answered yes to that question?

 6              PROSPECTIVE JUROR:  Yes.  I heard about it in, I

 7    guess, last year when it was -- when the subpoena was issued

 8    and there was not follow-through on the subpoena.  So I

 9    heard the beginning news.

10              And then nothing much until -- I guess it was a

11    little bit in the January 6th commissions, which I followed

12    most of those.

13              THE COURT:  So can you describe to us, then, that

14    gets to your answer to Questions 14 and 16.  I'll ask

15    additional questions about 7.  So Question 14 asks about

16    whether you've seen anything, read anything about the

17    Committee.  And No. 16 asks whether you've read or

18    watched -- read coverage about or watched the hearings.  So

19    can you describe to us how you've been involved in reading

20    about, learning about and watching the Committee and its

21    hearings?

22              PROSPECTIVE JUROR:  Certainly.

23              Reading about it in the news feed, just what comes

24    up.  I follow most topics in -- it's no long print, but

25    whatever the iPad is.
```

And news media, in the video, it's mostly through CBS News on the iPad. I rarely watch cable.

And then -- I'm sorry. More --

THE COURT: Then you mentioned earlier that you had -- in connection with your either watching the hearings or reading about the hearings that you had seen a mention of Mr. Bannon and the subpoena. What do you recall about that?

PROSPECTIVE JUROR: I recall that there were several subpoenas issued to various people. Mr. Bannon's name was one of them. And that he did not honor that subpoena, along with a few others, too, which I can't quite recall their names.

THE COURT: Have you -- do you have any view about this case as a result, any of the issues in it? Have you reached any conclusions or do you have any opinions about whether -- what the outcome in this matter should be?

PROSPECTIVE JUROR: No. I think it's -- I think there's information I don't know because those are the facts that I know: Issued, not followed through, then loss of interest for months and months until it's come up again in --

THE COURT: Do you have any concern that you would be unable to follow my instructions about the law or unable to look at the facts that you learn in the courtroom in light of what you already know from the Committee?

```
 1              PROSPECTIVE JUROR:  I do not see any problem

 2     following your orders or direction.  Yes.

 3              THE COURT:  You also answered yes to No. 26, which

 4     asked whether you had served as a juror in a civil or

 5     criminal trial.  Can you describe to us when you served as a

 6     juror?

 7              PROSPECTIVE JUROR:  I don't have the exact year,

 8     but four to five years ago.  It was in the next building

 9     over.  It was a case of a younger -- I don't know if it's an

10     underaged person and drug-related.  The case -- I got on the

11     jury, and within 20 minutes the judge, you know, just told

12     us to go in the other room and then we were dismissed.  So I

13     do not -- I never know what happened to it.

14              THE COURT:  You never ended up hearing evidence or

15     deliberating?

16              PROSPECTIVE JUROR:  It was one or two speakers

17     that had come up.  Yes.

18              THE COURT:  But you didn't end up deliberating and

19     reaching a verdict there?

20              PROSPECTIVE JUROR:  Not in that case.

21              THE COURT:  Okay.

22              PROSPECTIVE JUROR:  Just to be clear, there was

23     another case when I lived in New York City, going back 25

24     years, that I did follow the entire case.  And we reached a

25     decision.  Yes.
```

```
1                THE COURT:  Was that a criminal case?
2                PROSPECTIVE JUROR:  It was a purse-snatching case.
3      Yes.
4                THE COURT:  Do you recall what the outcome of that
5      case was?  Did you find the Defendant guilty?
6                PROSPECTIVE JUROR:  I think we did.  And it's so
7      long ago.  I'm not quite sure, but I think we did.
8                THE COURT:  Anything that you recall about either
9      of those experiences serving as a juror that was problematic
10     enough that you would have a hard time serving as a juror
11     here?
12               PROSPECTIVE JUROR:  No.  Not at all.
13               THE COURT:  Thank you.
14               Ms. Vaughn?
15               MS. VAUGHN:  Good afternoon.
16               PROSPECTIVE JUROR:  Good afternoon.
17               MS. VAUGHN:  Do you remember way back on that
18     purse-snatching jury whether you were the foreperson?
19               PROSPECTIVE JUROR:  I was not.
20               MS. VAUGHN:  And do you currently work?
21               PROSPECTIVE JUROR:  I am working part-time for a
22     film festival.
23               MS. VAUGHN:  A film what?
24               PROSPECTIVE JUROR:  Film festival.
25               MS. VAUGHN:  Oh, okay.  And what kind of work do
```

1    you do for the film festival?

2           PROSPECTIVE JUROR:  Assistant to the director.  I

3    help write FilmFreeway, like, what eligibility

4    qualifications are.  I'm a juror.  I review all the films

5    that come in.  I sort of help out where needed.

6           MS. VAUGHN:  Thank you.

7           THE COURT:  Mr. Corcoran?

8           MR. CORCORAN:  Sir, good afternoon.

9           PROSPECTIVE JUROR:  Good afternoon.

10          MR. CORCORAN:  In your current work with the film

11   festival, is that following up on work that you did in a

12   career in the film or media business?

13          PROSPECTIVE JUROR:  Yes.  The director and I went

14   to college together and art school.  And since then, I've

15   been involved in video editing, TV commercials and special

16   effects.

17          MR. CORCORAN:  What kind of -- are they

18   essentially product-related TV commercials or something

19   different?

20          PROSPECTIVE JUROR:  Yeah.  Diet Coke and that sort

21   of regular TV.  Regular corporations.

22          MR. CORCORAN:  And through some of the questions

23   from the Court, it's apparent that you heard some

24   information about this case before coming to court today.

25   Would you be able to put aside what you've heard from

```
1    outside of the courtroom and just base your decision on the

2    evidence that you hear in the courtroom if you sit on the

3    jury?

4              PROSPECTIVE JUROR:  Yes.  I certainly would.

5              MR. CORCORAN:  Thank you very much.

6              PROSPECTIVE JUROR:  Thank you.

7              THE COURT:  Thank you very much, sir.

8              PROSPECTIVE JUROR:  Thank you, your Honor.

9              (Thereupon, Prospective Juror No. 1117 retired

10   from the courtroom and the following proceedings were had:)

11             THE COURT:  Any motions to exclude Juror 1117?

12             MS. VAUGHN:  Not from the Government, your Honor.

13             MR. CORCORAN:  No, your Honor.

14             THE COURT:  Juror 1117 is qualified.

15             Ms. Lesley, 1913, please.

16             (Thereupon, Prospective Juror No. 1913 entered the

17   courtroom and the following proceedings were had:)

18             THE COURT:  Good afternoon, ma'am.

19             PROSPECTIVE JUROR:  Good afternoon.

20             THE COURT:  You can take off your mask if you

21   would like.

22             Ma'am, I'm going to -- first of all, you are

23   Juror 1913.  Correct?

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  I'm going to read into the record the
```

```
1     three questions that you answered yes to and then ask you a

2     few followup questions.  The lawyers may have some questions

3     after that.

4              Those questions were Nos. 24, 28 and 44.  Now,

5     Question 24 asked you about whether you or a family member

6     had been a victim or a witness to a crime, whether you

7     reported it or not.  That's a personal question, I know.  If

8     you're comfortable answering it in open court, that's great.

9     If not, we can also go on the phone and the discussion will

10    be under seal.  So would you rather do that?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Ms. Lesley, can we put the husher on?

13    It will now be under seal.

14             (Whereupon, the following proceedings were had at

15    sidebar:) ^ REDACT

16             THE COURT:  Can you hear me, ma'am?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  Can everyone else hear me?

19    Ms. Vaughn?  Ms. Gaston?  Mr. Corcoran?

20             Can you describe your answer to 24, please?

21             PROSPECTIVE JUROR:  Yes.  My godmother witnessed

22    her cousin get murdered.

23             THE COURT:  First of all, I'm very sorry about

24    that.

25             When was that?
```

1             PROSPECTIVE JUROR:  I believe it was 1998, I

2     believe it was.

3             THE COURT:  Is there anything about what happened

4     there that would lead you to conclude you could not be an

5     impartial juror in this case?

6             PROSPECTIVE JUROR:  Yes.  I feel very sad about

7     what happened.

8             THE COURT:  But would that sadness mean that you

9     could not judge this case based solely on the facts and the

10    law as I would instruct you?

11            PROSPECTIVE JUROR:  No.

12            THE COURT:  Thank you very much.

13            Ma'am, actually, why don't we just do your answer

14    to Question 28 in case there's anything sensitive there.

15            That's the one that asks whether you, a family

16    member or anyone close to you has ever been employed in law

17    enforcement.

18            PROSPECTIVE JUROR:  Yes.  My sister.

19            THE COURT:  What does she do?

20            PROSPECTIVE JUROR:  She's a correctional officer.

21            THE COURT:  Where is she?

22            PROSPECTIVE JUROR:  D.C. Jail.

23            THE COURT:  Is there anything about her job and

24    your knowledge of it that would make it difficult for you to

25    be fair and impartial in this case?

```
1                    PROSPECTIVE JUROR:  No.

2                    THE COURT:  Thank you very much.

3                    (Whereupon, the following proceedings were had in

4     open court:) ^ Redaction off

5                    THE COURT:  We'll go back from under seal now.

6                    Thank you, ma'am.

7                    And then, ma'am, you also answered yes to Question

8     44, which asked almost a catch-all question, which is:  No

9     matter what you've heard or seen about events at the U.S.

10    Capitol from any source and no matter what opinions you may

11    have formed, will you have any difficulty putting that aside

12    and following the law as I explain it to you and deciding

13    the case in a fair and impartial manner based solely on the

14    evidence presented in court?

15                   And you said yes.  Can you tell us why you would

16    have that difficulty?

17                   PROSPECTIVE JUROR:  Oh, no.  I didn't mean to

18    answer that way.

19                   MS. GASTON:  Your Honor, I believe 44 was --

20                   THE COURT:  Oh, I'm really sorry.  I just read the

21    wrong question.  My apologies.

22                   PROSPECTIVE JUROR:  That's okay.

23                   THE COURT:  44.  So you got it right; I got it

24    wrong.

25                   44 is:  It's possible the trial could continue for
```

1    more than a week.  Would jury service on a matter of that

2    length cause a severe and unavoidable hardship to you?  My

3    apologies for getting that question wrong.  Can you explain

4    your answer there?

5            PROSPECTIVE JUROR:  Yes, it would.  I take care of

6    my grandmother, which lives in New Jersey.  So I would have

7    to travel in case of an emergency.  So it would.  $57 a day

8    would put a hardship on me.

9            THE COURT:  Do you take care of your grandmother

10   who's in New Jersey from here?

11           PROSPECTIVE JUROR:  Yes.

12           THE COURT:  Do you have plans to go up to

13   New Jersey in the next week?

14           PROSPECTIVE JUROR:  Yes.

15           THE COURT:  When do you plan to go up?

16           PROSPECTIVE JUROR:  Next Tuesday.

17           THE COURT:  Next Tuesday.

18           PROSPECTIVE JUROR:  Yes.

19           THE COURT:  And beyond that, if for example either

20   the trial is going to be done by next Tuesday -- well, I

21   guess that's the real question.  If the trial were done by

22   next Tuesday, possibly, would that issue with your

23   grandmother be a problem?

24           PROSPECTIVE JUROR:  No.

25           THE COURT:  Thank you.

```
 1              Ms. Gaston?

 2              MS. GASTON:  Good afternoon, ma'am.

 3              THE COURT:  Good afternoon.

 4              MS. GASTON:  What do you do for a living?

 5              PROSPECTIVE JUROR:  I'm a program support

 6    assistant with the District Department of Transportation.

 7              MS. GASTON:  What do you do there?

 8              PROSPECTIVE JUROR:  Administrative support.

 9              MS. GASTON:  And with respect to the issue with

10    your grandmother and your plan to go visit her on Tuesday,

11    is that something that is sort of -- is that something that

12    you're concerned about or is that something that you would

13    be able to make other arrangements for if it did look like

14    the trial was going past this week?

15              PROSPECTIVE JUROR:  I would not want to make other

16    arrangements, as I haven't seen her in the last month.

17              MS. GASTON:  Thank you.

18              THE COURT:  Mr. Corcoran?

19              MR. CORCORAN:  Good afternoon.

20              PROSPECTIVE JUROR:  Good afternoon.

21              MR. CORCORAN:  I just want to make sure I

22    understand the answer.  Without getting into the details of

23    what we talked about on the phone, was that experience

24    something that's going to make it hard for you, difficult

25    for you to be a juror in this case?
```

```
 1                PROSPECTIVE JUROR:  Yes.

 2                MR. CORCORAN:  It is?

 3                PROSPECTIVE JUROR:  Yes.

 4                MR. CORCORAN:  Okay.  And would it make it

 5      difficult for -- again, without getting into the details,

 6      would it make it difficult for you to listen to the evidence

 7      presented in this case and, you know, weigh the evidence in

 8      this case?

 9                PROSPECTIVE JUROR:  No.

10                MR. CORCORAN:  It won't?

11                PROSPECTIVE JUROR:  No.

12                MR. CORCORAN:  Okay.

13                THE COURT:  Maybe I can ask a followup.  Given

14      what you described on the under-seal, is it that you would

15      find it personally hard to sit as juror?

16                PROSPECTIVE JUROR:  Yes.

17                THE COURT:  But you would still be able to if

18      you're selected to be fair and impartial and to look at the

19      facts --

20                PROSPECTIVE JUROR:  Yes.

21                THE COURT:  -- and --

22                PROSPECTIVE JUROR:  Yes.

23                THE COURT:  -- and follow my instructions on the

24      law?

25                PROSPECTIVE JUROR:  Yes.  Yes.
```

```
 1                THE COURT:  Thank you.

 2                Ms. Gaston?

 3                MS. GASTON:  Would it be possible to go to the

 4     husher again and ask a followup question?

 5                THE COURT:  Yes.  Let's go back under seal.

 6                (Whereupon, the following proceedings were had at

 7     sidebar:) ^ REDACT

 8                THE COURT:  Can you hear me, ma'am?

 9                PROSPECTIVE JUROR:  Yes.

10                THE COURT:  Ms. Gaston?

11                MS. GASTON:  Good afternoon.  I'm sorry to take up

12     more of your time.

13                PROSPECTIVE JUROR:  That's okay.

14                MS. GASTON:  What is it about sitting on a jury

15     that would be difficult for you because of that incident?

16                PROSPECTIVE JUROR:  Because I was almost there

17     during that time that it had happened.  And I saw the gunman

18     leave.  So I'm a little traumatized by the situation.

19                MS. GASTON:  So is there anything about this trial

20     in particular or is it just that it's something that

21     continues to affect you?

22                PROSPECTIVE JUROR:  It's something that continues

23     to affect me.

24                MS. GASTON:  And did that incident lead to

25     criminal charges for somebody?
```

1          PROSPECTIVE JUROR:  No.  The gunman hasn't been

2     found.

3          MS. GASTON:  Do you have any feelings about the

4     police or the Government and how they acted in that

5     investigation?

6          PROSPECTIVE JUROR:  Yes.

7          MS. GASTON:  What are those feelings?

8          PROSPECTIVE JUROR:  That they didn't do the best

9     that they could have done to find the gunman.

10          MS. GASTON:  Thank you.

11          PROSPECTIVE JUROR:  You're welcome.

12          THE COURT:  Thank you very much, ma'am.

13          (Whereupon, the following proceedings were had in

14     open court:) ^ Redact off

15          THE COURT:  We're now back from under seal.

16          Any further questions, Mr. Corcoran?  Ms. Gaston?

17          Thank you, ma'am.

18          PROSPECTIVE JUROR:  Thank you.

19          (Thereupon, Prospective Juror No. 1913 retired

20     from the courtroom and the following proceedings were had:)

21          THE COURT:  Motions to exclude Juror 1913?

22          MS. GASTON:  Your Honor, the Government moves to

23     strike this juror for two reasons.  One is, we don't want

24     her to be anxious in deliberations if it looks like the

25     trial is going to last past this week.  The Government

1    doesn't think that it will; but in the event that it does,

2    we don't want her to feel pressured to make a decision

3    before the jury is ready.

4              And then the Government is concerned by the

5    conversation on the husher and the particular feelings she

6    expressed under seal.

7              THE COURT:  Thank you, Ms. Gaston.

8              Mr. Corcoran?

9              MR. CORCORAN:  We think she can be a fair juror

10   and we think that she can -- we can deal with the Tuesday

11   event if it comes up.  But I think it's highly unlikely that

12   she'll be inconvenienced in that way.

13             THE COURT:  Ms. Gaston, are you concerned at all

14   that those might be reasons not to serve?  I mean, the kind

15   of thing that one might say to try to get out of jury duty?

16             MS. GASTON:  With respect to the conversation

17   under seal, your Honor, because it took some followup

18   questions to sort of understand what was being said there,

19   it doesn't seem to me that it is a pretense.  Rather, it

20   seems sort of a deeply held belief.

21             And the Government is a little bit concerned

22   because there's a possibility of bias there.  I don't want

23   to say more.

24             THE COURT:  Yes.  I understand.

25             MR. CORCORAN:  Your Honor, could I say one thing?

```
1              THE COURT:  Yes.  Mr. Corcoran.

2              MR. CORCORAN:  I'd only say it's 1998, which was

3         24 years ago.

4              THE COURT:  Yes.

5              I am not going to exclude this juror.  I don't

6         think the two reasons are sufficient to exclude someone who

7         is otherwise basically not burdened by any preexisting

8         information or bias.  And I do think that the concern about

9         the grandmother -- we can work through that.

10             So I'm not going to exclude Juror 1913.  1913 is

11        qualified.

12             32, please, Ms. Lesley.

13             (Thereupon, Prospective Juror No. 32 entered the

14        courtroom and the following proceedings were had:)

15             THE COURT:  Good afternoon.

16             PROSPECTIVE JUROR:  Good afternoon.

17             THE COURT:  You can take off your mask if you

18        would like.

19             Am I right that you are Juror 32?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  I'm going to read into the record the

22        questions that you answered yes to and then ask you some

23        followup questions about that.

24             PROSPECTIVE JUROR:  Sure.

25             THE COURT:  Those are Nos. 5, 7, 9/13, 16, 17, 18,
```

```
1    19, 22, 28, 29, 40, 44.

2              PROSPECTIVE JUROR:  Uh-huh.  That dash 13 was just

3    when someone re-asked the question.  I just put that in

4    there.

5              THE COURT:  So 5 asks whether you recognized

6    anybody in the jury pool or in court, the courtroom staff or

7    me.

8              PROSPECTIVE JUROR:  Yeah.  I'm not sure if he's

9    still here.  There is somebody that was in the corner over

10   here that -- I work at a barber shop.  He's a client of my

11   boss's.

12             THE COURT:  Was that someone in that section?

13             PROSPECTIVE JUROR:  Yeah.  The back right.

14             THE COURT:  That's the area for the media.

15             PROSPECTIVE JUROR:  Oh, okay.  I didn't know which

16   was which.  I saw the face.

17             THE COURT:  Thank you for noting it.  I don't

18   think that technically actually fits within -- not that you

19   knew that, of course.  But the area in that corner over

20   there is not -- does not fall within that question.

21             You also answered yes to Question 7 about whether

22   you had heard, seen or read anything in any source about

23   this case.  Can you describe to us what you knew about this

24   case before you showed up here this morning and where you

25   learned that information?
```

```
 1              PROSPECTIVE JUROR:  I mean, like I said, I work at
 2      a barber shop.  I have the news on.  We talk politics.  I
 3      knew Steve Bannon was on trial.  Court was coming up.  I
 4      knew he was in contempt of Congress on two counts.  We just
 5      talk back and forth between clients.
 6              And I don't really know, I mean, the most about
 7      it, but I'm just aware of what it is.  And then when I
 8      showed up here this morning and I saw the news crew, I kind
 9      of put everything together.
10              THE COURT:  As a result of those conversations at
11      your workplace or watching things on TV, have you formed any
12      opinions about this case?
13              PROSPECTIVE JUROR:  Directly for Steve Bannon or
14      for the January 6th?
15              THE COURT:  For this case.  I'll ask you questions
16      about January 6 later.  But about this case.
17              PROSPECTIVE JUROR:  I mean, I'm aware of who he is
18      and I'm aware of everything that went down on the 6th.  I
19      guess I would say yeah, I formed some opinions.
20              THE COURT:  What opinions are those?
21              PROSPECTIVE JUROR:  It didn't look good on him, I
22      guess, other than just the fact of that being, like -- what
23      can I say?  More or less that I'm just more aware of it and
24      I just didn't think it was -- I just didn't like it.
25              THE COURT:  You answered Question 9 yes, which is
```

1    that I'm going to tell you not to watch, read or listen to

2    any news commentary, et cetera, during the trial.  Would you

3    have trouble following that instruction?

4            PROSPECTIVE JUROR:  Yeah.  I also run a social

5    media from my barbershop, too, so I'm constantly on, like,

6    Instagram and Twitter at work and posting about stuff.  But,

7    you know, I guess that would be the only way that I would --

8    other than that I watch the news daily.

9            THE COURT:  But would you follow my instruction to

10   not read about or otherwise engage on this case at all on

11   social media or otherwise?

12           PROSPECTIVE JUROR:  Yes.

13           THE COURT:  I guess you answered yes to -- or I'll

14   just ask you.  Question 13 was about whether any member of

15   your family or a close friend was present at the Capitol on

16   January 6th.

17           PROSPECTIVE JUROR:  Yes.

18           THE COURT:  Who's that?

19           PROSPECTIVE JUROR:  I have some friends who do,

20   like, photography stuff and they were just basically -- I

21   wouldn't say they were, like, in the grounds or in the

22   Capitol or anything like that, but they were downtown on the

23   6th.  So I have photos and just different Instagram and

24   whatnot.

25           THE COURT:  As a result of your interactions with

-3681-

```
 1    those friends who were there, have you formed any opinions
 2    about Mr. Bannon?
 3            PROSPECTIVE JUROR:  Not directly, no.  It was
 4    mainly about the January 6th and what went down at the
 5    Capitol.
 6            THE COURT:  What opinions have you formed about
 7    January 6th?
 8            PROSPECTIVE JUROR:  It was a really bad day in
 9    American history.
10            THE COURT:  And Questions 16, 17, 18 and 19 --
11    well, sorry.  Questions 16 and 17 ask about your -- whether
12    you've either read or seen the hearings that the Committee
13    has held.
14            PROSPECTIVE JUROR:  Yes.
15            THE COURT:  So you have?
16            PROSPECTIVE JUROR:  Oh, yeah.  On Twitter, I
17    listen to it while I'm at work.  I guess I missed a day or
18    two, but I'm pretty much -- I watched last week, I mean.
19            THE COURT:  And then in the hearings you watched,
20    have you heard or seen mention of Mr. Bannon in the
21    committee?
22            PROSPECTIVE JUROR:  No.  I think the ones I
23    watched was the Proud Boys one that was recent.  Like I
24    said, I'm in and out of it.  I'm not -- I've got other
25    things going on.  I wasn't directly spending all my time
```

1    watching or listening.

2          THE COURT:  So you answered yes to the question:

3    If you've watched or read coverage of the hearings, would

4    you have difficulty putting aside any opinions you may have

5    formed about the people involved and following the law and

6    deciding the case here in a fair and impartial manner?

7          So what did you mean by that answer?

8          PROSPECTIVE JUROR:  Just --

9          THE COURT:  The question was:  If you have

10   watched -- sorry.  If you have watched or read coverage of

11   the hearings, will you have any difficulty putting aside any

12   opinions you may have formed about the people involved in

13   those events, following the law as I explain it to you and

14   deciding the case in a fair and impartial manner based

15   solely on the evidence presented in court?  And you said

16   yes, you would.

17         PROSPECTIVE JUROR:  I think so.  Yes, I would.

18         THE COURT:  You would?

19         PROSPECTIVE JUROR:  Yes.  I mean, I have some

20   opinions about most of the stuff here.

21         THE COURT:  And describe to us some of the

22   opinions about this stuff here, as you just said.

23         PROSPECTIVE JUROR:  You mean like for the January

24   6th or Bannon?

25         THE COURT:  Sure.  Both.

```
 1              PROSPECTIVE JUROR:  Like I said, it was a very
 2    dark day in American history.  I didn't agree with anything.
 3    I thought -- I just thought it was a bad look on the other
 4    side.
 5              THE COURT:  And in your view, that at least runs
 6    the risk that you would not be able to put some of those
 7    opinions to the side and decide this case based solely on
 8    what you see in the courtroom?
 9              PROSPECTIVE JUROR:  Yes, sir.
10              THE COURT:  I'll just ask a couple more questions.
11              You were asked about anybody in your family who's
12    connected with the legal profession.  Can you describe what
13    you're talking about when you answered yes to that one?
14              PROSPECTIVE JUROR:  I may have misheard.  My
15    girlfriend used to work for the FBI and the DIA.
16              THE COURT:  Is she a lawyer or --
17              PROSPECTIVE JUROR:  No.  I think she's -- I don't
18    know directly what she did in the FBI.  I know she does HR
19    for the DIA at one point.
20              THE COURT:  She does now?
21              PROSPECTIVE JUROR:  No.  Now she works for GDIT,
22    for General Dynamics.  But the question was if I had anyone
23    that was legal.  So the FBI.
24              THE COURT:  Fair enough.
25              And this question asked sort of -- it goes to the
```

 1    effect of that.  It says:  Do you have any beliefs or

 2    opinions about law enforcement officers that would affect

 3    your ability to fairly and impartially evaluate the

 4    credibility of the law enforcement officer like any other

 5    witness simply because he or she is a law enforcement

 6    officer?  You said yes.  So can you explain that answer?

 7            PROSPECTIVE JUROR:  I have dealt with cops in my

 8    past that I've had bad incidents with.  I don't know if this

 9    goes to anything, but I have a tattoo that isn't very fond

10    of the police.

11            THE COURT:  And so you think there's at least a

12    chance that you might think less favorably of law

13    enforcement officer testimony than other testimony?

14            PROSPECTIVE JUROR:  Correct.

15            THE COURT:  The last two questions.  One was:  Do

16    you feel so uncomfortable being in the room in light of

17    COVID that it would be difficult for you to pay attention or

18    otherwise serve as a juror in this case?

19            PROSPECTIVE JUROR:  Yes.  And the only reason I

20    took my mask off is because no one is around me.

21            And I work in an environment where it's heavily

22    populated with people who don't really follow the rules much

23    in this city, I guess.  A lot of people who come from out of

24    town.  Like I said, I work at a barber shop, so I'm

25    constantly around.

1          THE COURT:  You're around a lot of people?

2          PROSPECTIVE JUROR:  Oh, at least 100-plus a day.

3          THE COURT:  And then the question was -- the last

4     question, 44, was -- I'll ask you about it at least -- was

5     the possibility that the trial could go into next week.

6     Would that be a severe and unavoidable hardship to you?

7          PROSPECTIVE JUROR:  Yes.  I mean, we're all

8     independent contractors.  If I don't work, I don't get paid.

9     And also, like I said, if I don't work, I have the

10    opportunity of losing, you know, the chance to pay my rent,

11    things like that, food.

12         THE COURT:  Thank you.

13         Ms. Vaughn?

14         MS. VAUGHN:  Your Honor, I don't have any

15    questions.

16         THE COURT:  Mr. Corcoran?

17         MR. CORCORAN:  No questions, your Honor.

18         THE COURT:  Thank you.

19         Thank you very much.

20         PROSPECTIVE JUROR:  Thank you, your Honor.

21         THE COURTROOM DEPUTY:  (Confers with the Court

22    privately.)

23         THE COURT:  Thank you, sir.

24         PROSPECTIVE JUROR:  Thank you.

25         (Thereupon, Prospective Juror No. 32 retired from

1      the courtroom and the following proceedings were had:)

2              THE COURT:  Motions to exclude Juror 32?

3              MR. CORCORAN:  Do you want to hear my argument,

4      your Honor?

5              THE COURT:  No.  Granted.

6              Juror 764, please.

7              (Thereupon, Prospective Juror No. 764 entered the

8      courtroom and the following proceedings were had:)

9              THE COURT:  Good afternoon, sir.

10             PROSPECTIVE JUROR:  Good afternoon.

11             THE COURT:  Feel free to take your mask off if you

12     would like.  You don't have to.

13             PROSPECTIVE JUROR:  Okay.

14             THE COURT:  You're Juror 764.  Correct?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  I'm going to read into the record the

17     answers that you answered yes to -- the questions you

18     answered yes to and then ask you some followup questions

19     about them.  Those answers are 7, 14, 16, 22, 28 and 25.

20             Question 7 asked whether you had heard, seen or

21     read anything from any sources about this case.  Obviously,

22     that's before you came here today.  Can you describe to us

23     what you had learned and from where about this case?

24             PROSPECTIVE JUROR:  I just knew this was

25     happening.  I didn't realize it was today.  But I saw it on

1    the TV, TV news.

2              THE COURT:  Did you learn anything about the

3    substance of this case from watching the news?

4              PROSPECTIVE JUROR:  Yes.  I knew why it was

5    happening.

6              THE COURT:  What did you understand the "why" to

7    be?

8              PROSPECTIVE JUROR:  That he was being held in

9    contempt of Court or Congress.

10             THE COURT:  Do you recall what station you watched

11   the news on?

12             PROSPECTIVE JUROR:  Channel 4.  NBC News.

13             THE COURT:  Is there anything about your -- what

14   you reviewed or saw on Channel 4 that would lead you to

15   conclude that you could not be an impartial juror in this

16   case?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  You also answered yes to Questions 14

19   and 16, which are both questions about the Committee, the

20   Select Committee's work.  14 is whether you've read or seen

21   anything about the Committee and then 16 is about the

22   hearings.

23             So can you just describe to us generally how you

24   know about what the Committee is doing, where you get that

25   information from, what you know and then how many of the

1    hearings or portions of the hearings you've watched?

2              PROSPECTIVE JUROR:  Most of it, again, I saw on

3    the news, same station.  I don't know a ton about what the

4    Committee has done.  Just whatever they've shown on the

5    news.  And I watched one partial hearing.

6              THE COURT:  Which hearing was that?  Do you

7    recall?

8              PROSPECTIVE JUROR:  I don't.  It was probably like

9    the third one.

10             THE COURT:  Do you recall hearing anything about

11   the Committee's discussion of or even seeing in the video

12   about the hearing the Committee's discussion of anything

13   relating to Mr. Bannon?

14             PROSPECTIVE JUROR:  No.

15             THE COURT:  Anything about your knowledge, what

16   you've learned about the Committee, that would lead you to

17   conclude you could not be a fair and impartial juror here?

18             PROSPECTIVE JUROR:  No.

19             THE COURT:  You answered yes to Question 22, which

20   is basically about whether anyone in your close orbit is in

21   the legal profession.

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Can you describe to us why you

24   answered yes to that?

25             PROSPECTIVE JUROR:  Yeah.  I have a first cousin

```
 1    that I'm very close with who's a defense attorney.

 2              THE COURT:  Where?

 3              PROSPECTIVE JUROR:  In Maryland.

 4              THE COURT:  So criminal defense or civil?

 5              PROSPECTIVE JUROR:  Criminal.  I think that's

 6    right.  We don't talk shop much.  But I know he's a defense

 7    attorney.

 8              THE COURT:  You know you have a defense attorney

 9    who's a first cousin with whom you're close in Maryland, but

10    you don't talk much about his work?

11              PROSPECTIVE JUROR:  Correct.

12              THE COURT:  I take it, then, that there isn't much

13    about his job as an attorney that would -- or anything that

14    would cause you to be concerned about your ability to be

15    impartial here?

16              PROSPECTIVE JUROR:  No.

17              THE COURT:  You also answered yes to Question 25,

18    which is whether you had served on a grand jury.

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  Can you describe to us the

21    circumstances of your service?

22              PROSPECTIVE JUROR:  Sure.  I received a summons

23    similar to the one I received to come here today.  I was

24    selected as part of the jury pool and I spent six weeks

25    listening to felony plea hearings.
```

```
 1              THE COURT:  Do you recall what court that was in?

 2              PROSPECTIVE JUROR:  It was in D.C. court.  But I

 3     can't tell you if I remember -- it wasn't federal.  To say

 4     that might not be true.  We didn't hear -- we heard mostly

 5     guns and drug cases, but we did hear one, because they

 6     needed a grand jury.  We did hear one federal.  And that's

 7     it.

 8              THE COURT:  Do you recall approximately how long

 9     ago that service was?

10              PROSPECTIVE JUROR:  It was pre-pandemic, so I want

11     to say three, three and a half years ago.

12              THE COURT:  The last question that you answered

13     yes to is about whether you or a family member or anyone

14     close to you had been employed in law enforcement.  Can you

15     describe your answer there?

16              PROSPECTIVE JUROR:  Maybe I misunderstood the

17     question, because I have not been --

18              THE COURT:  I'll read it again just in case.  The

19     question was:  Have you, a family member or anyone close to

20     you ever been employed by any local, state or federal law

21     enforcement agency or private security company?  Then I

22     listed a number of agencies that are considered law

23     enforcement.

24              PROSPECTIVE JUROR:  Yeah.  I should not have

25     answered that question yes.
```

```
 1                    THE COURT:  Thank you.

 2              Ms. Gaston?

 3              MS. GASTON:  Good afternoon.

 4              PROSPECTIVE JUROR:  Good afternoon.

 5              MS. GASTON:  So in terms of the news reports you

 6    saw on Channel 4, is it fair to say that because of those

 7    reports you know what the allegations are here?

 8              PROSPECTIVE JUROR:  Yes.

 9              MS. GASTON:  But you will listen to the judge's

10    instructions?

11              PROSPECTIVE JUROR:  Yes.

12              MS. GASTON:  And you heard when he told you that

13    the United States has the burden of proof and we have to

14    prove the case to you?

15              PROSPECTIVE JUROR:  Yes.

16              MS. GASTON:  And you will be able to be fair?

17              PROSPECTIVE JUROR:  Yes.

18              MS. GASTON:  Do you know what firm or organization

19    your cousin works with?

20              PROSPECTIVE JUROR:  He's a sole proprietor.  He

21    runs his own firm.  But I couldn't tell you the name.

22              MS. GASTON:  Understood.

23              I know this is difficult, but do you think there

24    was another question that you may have meant to answer?

25              PROSPECTIVE JUROR:  I answered one thinking it
```

```
 1    was the -- have I been a victim of crime.

 2              MS. GASTON:  I will let the Court inquire about

 3    that.

 4              THE COURT:  Yes.  So that was Question 24.  So

 5    that asks whether you, a family member or anyone close to

 6    you was ever the victim of or witness to a crime.  If you're

 7    comfortable describing why you answered yes to that, you can

 8    do so on the public record or we could go on the phone.

 9              PROSPECTIVE JUROR:  That's fine.

10              THE COURT:  Please.

11              PROSPECTIVE JUROR:  I was two different times held

12    up at gunpoint, one time in Upper Northwest and then a

13    couple years after that in Northeast.

14              THE COURT:  How long ago were those two incidents?

15              PROSPECTIVE JUROR:  More than 20 years ago.

16              THE COURT:  Did you have involvement or engagement

17    with law enforcement, the police?

18              PROSPECTIVE JUROR:  We called the police

19    afterwards.  That was it.  Nothing ever happened.  No one

20    was caught.

21              THE COURT:  Is there anything about that

22    experience that would make you worry that you couldn't sit

23    impartially in this case?

24              PROSPECTIVE JUROR:  No.

25              THE COURT:  Thank you.
```

1          Ms. Gaston, anything else?

2          MS. GASTON:  Very briefly.

3          I'm sorry to hear about those incidents.  Did the

4     Metropolitan Police Department investigate?

5          PROSPECTIVE JUROR:  I mean, they took my

6     information.  They thought on the second incident that they

7     caught somebody.  And they put us in the car, drove us to

8     where the person was, you know, being held and asked if that

9     was the person, which I replied no.

10          MS. GASTON:  Did you hear from the police after

11     those initial reports?

12          PROSPECTIVE JUROR:  I did not.

13          MS. GASTON:  How do you feel about not having

14     heard more from them?

15          PROSPECTIVE JUROR:  I mean, it's -- I mean, sure.

16     I would like to have heard more about it.  But, you know,

17     that kind of thing happens in the city all the time, and

18     it's not the most important thing going on.  So it is what

19     it is.

20          MS. GASTON:  Thank you.

21          THE COURT:  Mr. Corcoran?

22          MR. CORCORAN:  Good afternoon.

23          PROSPECTIVE JUROR:  Hello.

24          MR. CORCORAN:  Just a followup question.

25          You said that you had seen on Channel 4 some

 1    background information about this case.

 2              Are you going to be able to put that outside of

 3    your mind and decide the case just based on the evidence

 4    that you hear at trial?

 5              PROSPECTIVE JUROR:  Sure.  Yes.

 6              MR. CORCORAN:  And the last thing is, the

 7    information we have indicates that you are an architect.

 8    What kind of architecture do you practice?

 9              PROSPECTIVE JUROR:  Mostly residential.

10              MR. CORCORAN:  Okay.

11              PROSPECTIVE JUROR:  Commercial residential,

12    apartment buildings, that kind of thing.

13              MR. CORCORAN:  Thank you very much.

14              Thank you, your Honor.

15              THE COURT:  Thank you.

16              PROSPECTIVE JUROR:  Thank you.

17              (Thereupon, Prospective Juror No. 764 retired from

18    the courtroom and the following proceedings were had:)

19              THE COURT:  Motions to strike 764?

20              MS. GASTON:  Not from the Government, your Honor.

21              MR. CORCORAN:  No, your Honor.

22              THE COURT:  We will qualify Juror 764.

23              Ms. Lesley, could you bring 797 in?

24              (Thereupon, Prospective Juror No. 797 entered the

25    courtroom and the following proceedings were had:)

```
 1                    THE COURT:  Good afternoon.

 2                    PROSPECTIVE JUROR:  Good afternoon.

 3                    THE COURT:  You can take your mask off if you

 4          would like to, although you don't need to.

 5                    PROSPECTIVE JUROR:  Yes, please.

 6                    THE COURT:  You are Juror 797.  Correct?

 7                    PROSPECTIVE JUROR:  Correct.

 8                    THE COURT:  I'm going to read into the record the

 9          questions that you answered yes to and ask you a few

10          followup questions, and then the lawyers may have followup

11          questions.

12                    So those were Questions 7, 7-A, 14, 16, 18, 21 and

13          26.

14                    Question 7 asks about whether before today you had

15          read, seen or heard anything about this case.  And then 7-A

16          was:  Have you formed any opinions about this case as a

17          result of what you've read, seen or heard?

18                    So can you describe to us why you answered yes to

19          those two questions?

20                    PROSPECTIVE JUROR:  Yes.  Based upon what I've

21          read and seen in the news, I formed an opinion about the

22          case.

23                    THE COURT:  What is that opinion?

24                    PROSPECTIVE JUROR:  The opinion is that Bannon is

25          guilty.
```

1                 THE COURT:  Thank you, sir.

2                 (Thereupon, Prospective Juror No. 797 retired from

3        the courtroom and the following proceedings were had:)

4                 MR. CORCORAN:  I think he is undecided, your

5        Honor.

6                 THE COURT:  Yes.

7                 MR. CORCORAN:  We'll make a motion.

8                 THE COURT:  He's undecided and the motion is

9        granted.

10                Ms. Lesley, can you bring in -- so Juror 797 is

11       excluded.

12                We'll bring in Juror 1571, please.

13                (Thereupon, Prospective Juror No. 1571 entered the

14       courtroom and the following proceedings were had:)

15                THE COURT:  Good afternoon.

16                PROSPECTIVE JUROR:  Good afternoon.

17                THE COURT:  Feel free to take off your mask if you

18       would like.

19                You are Juror 1571.  Correct?

20                PROSPECTIVE JUROR:  Yes, your Honor.

21                THE COURT:  I'm going to read into the record the

22       questions that you answered yes to and then ask you some

23       followup questions.  Those questions are 7, 7-A, 14, 16, 18,

24       22, 23, 24.

25                Question 7 asks if you had read, seen or heard

1    anything from any sources about this case.  And then 7-A

2    said:  As a result of what you had read, seen or heard, have

3    you formed any opinions about it?  Can you describe to us

4    why you answered yes to those questions?

5         PROSPECTIVE JUROR:  I had read the news reports

6    about the moving forward of the criminal case and had -- and

7    I had heard some commentary about it.

8         THE COURT:  You had in fact then as a result of

9    that formed some opinions about this matter?

10        PROSPECTIVE JUROR:  I wouldn't say necessarily

11   formed opinions, but had thoughts about it.

12        THE COURT:  What were those thoughts?

13        PROSPECTIVE JUROR:  Just how that it's -- I think

14   it's important to get to the bottom of the work that's

15   going -- that is related to the charges here.  And that's

16   about it.  Yeah.

17        THE COURT:  Can you say what you mean by that

18   exactly?

19        PROSPECTIVE JUROR:  Well, so the charges related

20   to the work that the congressional committee is doing.  And

21   I just think it's important that that work continue.

22        THE COURT:  So you answered yes to Questions 14

23   and 16, which are about the Committee, both about whether

24   you've heard about what the Committee is doing and if you've

25   watched some of the hearings.  Can you describe to us what

1    you know about the Committee's work and where you get that

2    information?

3            PROSPECTIVE JUROR:  Sure.  I see from national

4    news media and also some independent sources the work of the

5    Committee.  I oftentimes just get a notification on my phone

6    that there's been an update, and I just follow up with what

7    I see as well.

8            THE COURT:  You've watched hearings themselves or

9    at least portions of them?

10           PROSPECTIVE JUROR:  I have watched and listened to

11   them.  Yes.

12           THE COURT:  And as a result of those hearings, do

13   you have an opinion about this case?

14           PROSPECTIVE JUROR:  Not about this particular

15   case, but about the work in general.

16           THE COURT:  The work -- what's your opinion about

17   the work in general of the Committee?

18           PROSPECTIVE JUROR:  I think it's important that it

19   continue and that it gets to the bottom of what it set out

20   to investigate.

21           THE COURT:  You were also asked and answered

22   Question 18 yes; and that question was whether you had any

23   beliefs or opinions about the Defendant, Steve Bannon, or

24   anyone associated with him that would make it difficult for

25   you to remain fair and impartial to both the Government and

1    the Defendant throughout the trial.  Can you describe to us

2    why you answered yes to that question?

3                PROSPECTIVE JUROR:  I just was not a fan of the --

4    of his former employer, the president.  But I just wanted to

5    be truthful about it.  That's about it.

6                THE COURT:  And based on your opinion about former

7    President Trump, are you concerned that you would not be a

8    fair and impartial juror in this case?

9                PROSPECTIVE JUROR:  I'm not concerned.  No.

10               THE COURT:  You're not concerned.  Do you think

11   you could set aside any personal opinions you have about

12   President Trump or frankly anyone from a political

13   perspective and decide this case based on the facts and the

14   law?

15               PROSPECTIVE JUROR:  Yes, I could.

16               THE COURT:  You also answered yes to Questions 23

17   through 24 -- sorry -- 22 through 24.  22 is whether you or

18   anyone in your family is really associated with the legal

19   profession.  Do you remember who you had in mind when you

20   answered yes to that question?

21               PROSPECTIVE JUROR:  My mom and my aunt are both --

22   were both retired paralegals.

23               THE COURT:  When did they roughly retire?

24               PROSPECTIVE JUROR:  My mother, just this past

25   year.  My aunt, probably about ten years ago.

```
1              THE COURT:  What kind of cases did your mom work

2      on?

3              PROSPECTIVE JUROR:  My mother worked primarily on

4      real estate.

5              THE COURT:  So not in litigation and not criminal

6      defense?

7              PROSPECTIVE JUROR:  No.

8              THE COURT:  You also answered yes to whether you,

9      a family member or anyone else close to you had been the

10     subject of a criminal investigation or charged with crime.

11     This can be a personal question for some people.  If you

12     want, we can have a conversation that's hushed and only

13     available to certain people in the courtroom.

14             PROSPECTIVE JUROR:  Sure.

15             THE COURT:  Let's go under seal, please.

16             All you'll have to do is just touch the button to

17     talk.

18             (Whereupon, the following proceedings were had at

19     sidebar:) ^ REDACT:

20             THE COURT:  Can everyone hear?

21             PROSPECTIVE JUROR:  When I was in college, I was

22     requested to appear as a defendant after receiving a summons

23     in court after a house party in which alcohol was served at.

24     The charges were dropped.

25             THE COURT:  How long ago was that?
```

```
1              PROSPECTIVE JUROR:  That was in 2006.
2              THE COURT:  Anything about that experience that
3      would cause you to be concerned that you could not be
4      impartial here?
5              PROSPECTIVE JUROR:  No.
6              THE COURT:  Thank you.
7              (Whereupon, the following proceedings were had in
8      open court:) ^ Redactions off
9              THE COURT:  We're back from under seal.
10             The last question was whether you, a family member
11     or anyone close to you had been the victim of or a witness
12     to a crime.  Again, victim of or a witness to a crime.  Can
13     you tell us what that was about?  Again, if it's very
14     personal, we can go on the phone.
15             PROSPECTIVE JUROR:  My cousin was murdered in
16     2006.  Personally, two years ago, right before Christmas of
17     2020, I was attacked in my vehicle outside my building here
18     in Washington, where I live.
19             THE COURT:  I'm sorry about both of those
20     incidents.
21             PROSPECTIVE JUROR:  Thank you.
22             THE COURT:  Would either of them and your
23     experience with what happened and perhaps even your
24     experience with law enforcement, with the episode that
25     happened to you, would that affect your ability to serve as
```

```
1     a juror in this case?

2                PROSPECTIVE JUROR:  It would not.

3                THE COURT:  Thank you.

4                Ms. Gaston?

5                MS. GASTON:  Your Honor, could we start on that?

6                THE COURT:  Sure.  Let's do that.  We're going to

7     go back under seal.

8                (Whereupon, the following proceedings were had at

9     sidebar:) ^ Redact:

10               THE COURT:  Can everyone hear me again?

11               MS. GASTON:  Thank you, sir.

12               Hi.  Good afternoon.  So I just wanted to follow

13    up on what you told us about the incident when you were in

14    college.  You mentioned receiving a summons.  Did you

15    respond to the summons?

16               PROSPECTIVE JUROR:  I did.

17               MS. GASTON:  And the charges were ultimately

18    dropped?

19               PROSPECTIVE JUROR:  It was continued without a

20    finding.  And if I -- if there was no additional problems

21    before my 21st birthday, the procedure -- the process would

22    not go forward.  And so that's what had happened.

23               MS. GASTON:  Understood.

24               Thank you.

25               PROSPECTIVE JUROR:  Thank you.
```

1          (Whereupon, the following proceedings were had in

2     open court:) ^ Redactions off

3          THE COURT:  We'll go back out from under seal.

4          MS. GASTON:  All right.  So I'm very sorry about

5     the incident in which you were attacked.  Are you all right

6     now?

7          PROSPECTIVE JUROR:  I am.  Thank you.

8          MS. GASTON:  That was here in the District?

9          PROSPECTIVE JUROR:  It was.

10         MS. GASTON:  Was that investigated by law

11    enforcement?

12         PROSPECTIVE JUROR:  It was.

13         MS. GASTON:  Did it lead to charges or a trial of

14    any sort?

15         PROSPECTIVE JUROR:  It did not.

16         MS. GASTON:  Was the perpetrator identified?

17         PROSPECTIVE JUROR:  He was identified through some

18    police work.  I could not identify him when asked to pick

19    him out of a photo array.

20         MS. GASTON:  How did you -- was it investigated by

21    the Metropolitan Police Department?

22         PROSPECTIVE JUROR:  It was.

23         MS. GASTON:  How did you feel about their

24    investigation?

25         PROSPECTIVE JUROR:  I think that they did the best

```
 1    they could.  I'm upset that, you know, nothing was done
 2    about it.  It was a pretty upsetting thing.
 3              MS. GASTON:  I'm sure it was.
 4              Was there ever at any point a prosecutor assigned
 5    that you talked to?
 6              PROSPECTIVE JUROR:  I don't -- no.  I think I have
 7    on the police report that it said "Declined to prosecute,"
 8    was the box that was checked, I believe.  That's how I knew
 9    that the case was not moving forward.
10              MS. GASTON:  How did you feel about that?
11              PROSPECTIVE JUROR:  I was upset.
12              MS. GASTON:  Did you think there was something
13    more that the Government could have done?
14              PROSPECTIVE JUROR:  I'm not sure.  I think they
15    looked into what was -- what had happened.  And I think one
16    of the big sticking points was that I couldn't properly
17    identify who it was that had attacked me.
18              But I reported it right away.  I called 911 as it
19    was happening.
20              MS. GASTON:  I'm sorry.
21              And then you talked about how you've read some
22    things about this case.  Where have you read them?
23              PROSPECTIVE JUROR:  Honestly, just through
24    whatever has come up on my phone, you know.  I can't think
25    of specific sources.  I just knew that this case was
```

1    referred for prosecution and that I had seen a couple

2    followup stories.  I honestly cannot remember where -- who

3    wrote the stories or where I heard them from.  But I had

4    general knowledge of it.

5              MS. GASTON:  Understood.

6              And do you know any of the details of this case?

7              PROSPECTIVE JUROR:  I believe I was refreshed when

8    it was -- my memory was refreshed when the judge explained

9    the charges, that there were specific dates that was -- that

10   the Defendant's presence was requested and that that

11   presence was not met.  So that's my understanding.

12             MS. GASTON:  That's your understanding of the

13   allegations?

14             PROSPECTIVE JUROR:  Yes.

15             MS. GASTON:  Did you read anything that is more

16   detailed than what the Court read this morning?

17             PROSPECTIVE JUROR:  I can't remember having read

18   anything specific.  But that's about it.

19             MS. GASTON:  And knowing that those are the

20   allegations, are you confident that you could keep an open

21   mind and listen to the evidence at trial and make a decision

22   and set apart what you might have heard outside of court?

23             PROSPECTIVE JUROR:  I could.

24             MS. GASTON:  You also mentioned that you think the

25   Committee's work is important.

1          PROSPECTIVE JUROR:  Yes.

2          MS. GASTON:  But do you understand that with

3    respect to this case it's sort of separate and apart from

4    the hearings that the Committee has been conducting?  Would

5    you be able to just focus on this case without thinking

6    about what you've seen in the hearings and your feelings

7    about their work?

8          PROSPECTIVE JUROR:  I could.

9          MS. GASTON:  And then you mentioned that you have

10   certain feelings about former President Trump.  Are you able

11   to separate your feelings about him from your feelings about

12   the Defendant?

13         PROSPECTIVE JUROR:  Yes.

14         MS. GASTON:  And then Ms. Vaughn and I work in the

15   same office as the prosecutor who would have checked that

16   box on the form for the matter that we were talking about

17   earlier.

18         Does that make you have any particular feelings

19   about Ms. Vaughn and me?

20         PROSPECTIVE JUROR:  I'm sorry.  Which box?

21         MS. GASTON:  Sorry.  The "Decline to prosecute"

22   box.

23         PROSPECTIVE JUROR:  Okay.  No, it does not.

24         MS. GASTON:  Thank you.

25         THE COURT:  Mr. Corcoran?

1          MR. CORCORAN:  Thank you, your Honor.

2          Good afternoon.

3          PROSPECTIVE JUROR:  Good afternoon.

4          MR. CORCORAN:  I just wanted to follow up with a

5     couple questions.  You said that you're not a fan of

6     Mr. Bannon's former employer, President Trump.  Describe

7     that for me.

8          PROSPECTIVE JUROR:  I was very upset by his

9     mandate in office.  And it was something that I thought

10    about constantly and it was -- it was upsetting.

11         MR. CORCORAN:  And would you be able to put out of

12    your mind completely the fact that Mr. Bannon worked for

13    Mr. Trump as a top advisor?

14         PROSPECTIVE JUROR:  For the purposes of the job

15    here, yes.  I would do that.

16         MR. CORCORAN:  What about with regard to January

17    6th?  Do you have anything in your mind that connects the

18    events of January 6th with President Donald Trump?

19         PROSPECTIVE JUROR:  I do.  I saw kind of the

20    coverage of the day and everything leading up to it and the

21    statements that he had made.  And again, it was all pretty

22    upsetting.

23         MR. CORCORAN:  Why were you upset?

24         PROSPECTIVE JUROR:  I thought it was -- I just

25    thought it was very upsetting.  I had never experienced

1    anything like this before.  It happened, you know, a few

2    miles from where I live here in the District.  It was just

3    really -- it seemed -- it just doesn't make any sense.

4           MR. CORCORAN:  So by living close, you feel like

5    you were almost personally violated by the event?

6           PROSPECTIVE JUROR:  I was scared.  I wouldn't say

7    scared for my safety.  I was in my apartment that day.  But

8    I felt very upset and very uneasy, you know, just thinking

9    about everything that was going on.  I was unable to focus

10   on work.

11          MR. CORCORAN:  And because of that, now you've

12   said that you have an interest in what the January 6

13   Committee is doing.  Is that fair to say?

14          PROSPECTIVE JUROR:  I'm sorry.  Say your question

15   again.  Interested in the work it's doing and the stories

16   that are written about it?

17          MR. CORCORAN:  You tell me.  I want to understand

18   why you're following the work of the January 6 Committee so

19   closely.

20          PROSPECTIVE JUROR:  Again, I think it was -- as

21   somebody, you know, who follows these events closely, I

22   follow the news.  I try to follow current events.  I'm very

23   interested in the law, government, all that.  And I think

24   it's just important to understand what's going on there.

25          MR. CORCORAN:  And specifically with regard to the

```
 1    January 6th Select Committee hearings, how many of those

 2    hearings did you follow?

 3              PROSPECTIVE JUROR:  I don't know how many

 4    specifically.  I could say probably -- I know probably on

 5    one hand the times that I've actually sat down and watched

 6    testimony.  I've seen readouts from things that people have

 7    said or listened to them.  But I do remember -- I do

 8    remember listening to these -- to at least a handful of

 9    particular witnesses or Committee sessions.

10              MR. CORCORAN:  Beyond the listenings and the

11    handful of sessions of the Committee itself, did you listen

12    to -- did you read any of the coverage or see any of the

13    coverage of the hearings?

14              PROSPECTIVE JUROR:  I have.  Yes.

15              MR. CORCORAN:  Tell me about that.

16              PROSPECTIVE JUROR:  I've -- what would be your

17    question?  Like which stories have I read or which days?  Or

18    was that your question?

19              MR. CORCORAN:  I'm interested to know how much

20    exposure that you've had to the January 6th committee or any

21    coverage that followed the January 6th committee.

22              PROSPECTIVE JUROR:  Okay.  I recall specifically

23    the testimony given by -- I forget her name -- that was

24    the -- she worked in the west wing.  She testified about a

25    week and a half ago.  And I remember this past weekend I do
```

```
1    recall listening to two members, one of whom was involved in
2    an extremist group and the other one was involved in -- was
3    at the Capitol and I think is facing charges.  And they both
4    offered testimony.  And I was listening to the weekend
5    coverage of it this past weekend.
6            I think that there have been others, but I cannot
7    remember specifically.  I know those were two examples.
8            MR. CORCORAN:  And you said that you got updates
9    on your phone about news related to the hearings or
10   Mr. Bannon.  Tell me about those updates.
11           PROSPECTIVE JUROR:  I just remember getting a
12   notification that the case had been referred for
13   prosecution.  And I remember -- but that's about it.  It was
14   the specific incident.  I do know that with the Committee
15   itself I get, you know -- if there's been a witness or
16   something like that, I usually just see it on my phone that
17   so-and-so had testified.
18           MR. CORCORAN:  And I'm just trying to understand
19   that process.  Why is it that you receive notifications from
20   the Committee about what's happening from the Committee?
21           PROSPECTIVE JUROR:  So I use an iPhone.  And the
22   Apple News app is usually -- picks up news stories related
23   to that.  Those are some of the ones that I remember.  I get
24   other notifications as well.  But I just remember those ones
25   stand out particularly.
```

1          MR. CORCORAN:  And is that -- do you think that's

2     because you've read the stories before that the algorithm or

3     logarithm or whatever it is would send you stories about the

4     Select Committee because it's something that you've read

5     before?

6          PROSPECTIVE JUROR:  That's a good question.  I'm

7     not really tech savvy on how that works.  I know I get a

8     bunch of stories, but I can recall specifically some sort

9     of -- a notification about some sort of -- yeah -- what the

10    Committee has done.  Yeah.

11         MR. CORCORAN:  You've said two different times

12    that it's important that the Select Committee get to the

13    bottom of what it sets out to do.  Is that an accurate

14    capturing of what your thinking it?

15         PROSPECTIVE JUROR:  Yeah.  Yeah.

16         MR. CORCORAN:  And you understand that this case

17    involves a subpoena and compliance with a subpoena.  Right?

18         PROSPECTIVE JUROR:  Uh-huh.

19         THE COURT REPORTER:  Is that yes?

20         PROSPECTIVE JUROR:  Yes.

21         MR. CORCORAN:  And my question is this:  If you

22    are interested in the Committee getting to the bottom of

23    what it set out to do, what's the interplay with that in a

24    criminal case that involves compliance or noncompliance with

25    a subpoena?  What does it mean -- what's the intersection

1    between those two thoughts?

2    PROSPECTIVE JUROR:  That's a good question.  I

3    would say that it would be -- it would mean that something

4    wasn't complied with and that it makes that Committee's job

5    harder to -- work harder.

6    MR. CORCORAN:  So is it fair to say that you've

7    come to this case feeling like the Committee should get to

8    the bottom of what it's investigating and yet the case

9    involves some positions on whether or not a subpoena was

10    complied with?

11    PROSPECTIVE JUROR:  Say it one more time.

12    MR. CORCORAN:  Let me put it this way:  I'm trying

13    to get a sense of whether you come in here as a blank slate

14    or you come in with a predisposition that if the Committee

15    wants to subpoena somebody it should be able to get to the

16    bottom of what it's looking for.

17    PROSPECTIVE JUROR:  Okay.

18    MR. CORCORAN:  What's your answer?

19    PROSPECTIVE JUROR:  Yeah.  It seems as though, you

20    know, something like a congressional subpoena would be

21    pretty serious and something that should be taken seriously,

22    at least in my own mind.

23    MR. CORCORAN:  Okay.

24    PROSPECTIVE JUROR:  Yeah.

25    MR. CORCORAN:  Thank you, your Honor.

1          THE COURT:  Thank you, sir.

2          PROSPECTIVE JUROR:  All set?  Okay.

3          (Thereupon, Prospective Juror No. 1571 retired

4     from the courtroom and the following proceedings were had:)

5          THE COURT:  Motions to strike 1571?

6          MR. CORCORAN:  Yes, your Honor.  Just on the last

7     point.  I mean, the issue is this:  Obviously, he's got

8     information on January 6.  He has pre-information about this

9     case and the criminal referral of this case.

10          And importantly, he said two different times that

11     he believes it's important for the Select Committee to get

12     to the bottom of what it set out to do.

13          This is a case about compliance or noncompliance

14     with a subpoena.  So it's the very issue that's going to be

15     decided by the jury.  And he comes into it with a frame of

16     mind where he's highly focused on January 6.  He couldn't

17     even go to work after it happened.  He's highly focused on

18     receiving news about and updates about the January 6

19     Committee.

20          And I think it's very difficult for him to be

21     fair, especially compared with the many jurors that we have

22     that don't have this manic focus on the Select Committee on

23     January 6 and trying to help the Committee get to the bottom

24     of what it set out to do.  I don't think he can be fair.

25     And that's why I move to strike him.

```
 1                THE COURT:  Thank you.

 2           Ms. Gaston?

 3                MS. GASTON:  Thank you, your Honor.

 4                I don't think it's a fair characterization to say

 5      that he has a manic focus on January 6.  He gets alerts on

 6      his phone, like lots of people get alerts on their phone.

 7      He gets Apple News, and he doesn't have any say in what

 8      kinds of alerts he gets.

 9                He was -- he did not hesitate at all when asked if

10      he could separate what he knows from outside the courtroom

11      from inside and he did not hesitate in saying that he could

12      be fair.

13                And I think, you know, we should not be

14      disqualifying people just because they think that the work

15      of the Committee is important and that the functions of

16      government are important.  So we don't think there's a basis

17      to strike him.

18                THE COURT:  I think this is -- thank you.

19                I think this is a close one again.  It seems to me

20      that his answers were a little bit all over the place.  And

21      I am -- if we were at the end of the list, I might conclude

22      he could be seated.  But I think, again, this is one of

23      those close calls that it makes sense to err on the side of

24      not having someone serve on the jury who may have a

25      preconceived view of either the Committee's work or the case
```

1    here.  And I just think it's smarter to be cautious on that

2    question.  Therefore, I will strike 1571.

3         Counsel, I want to -- before we bring in everyone

4    else, the goal, as you probably can imagine, is I'm trying

5    to get to 22 so then we can let everyone else who will

6    either become struck or who would be at the end of the list

7    to go.  And we can talk about whether or not we can get from

8    22 to 14 tonight or whether it happens tomorrow.  But we

9    could at least let a good portion of the venire go.

10        So I'd like to go a little bit longer.  I know

11   it's after 5:00.  With any luck, we can get two more fairly

12   soon and take it with that.

13        With that, 713, please.

14        (Thereupon, Prospective Juror No. 713 entered the

15   courtroom and the following proceedings were had:)

16        THE COURT:  Good afternoon.  Thank you for being

17   here.  You can take off your mask if you would like.  You

18   don't need to.

19        You are Juror 713.  Correct?

20        PROSPECTIVE JUROR:  Correct.

21        THE COURT:  You answered Questions 7 -- yes to

22   Questions 7, 9, 10, 14, 16, 18, 24?

23        PROSPECTIVE JUROR:  Correct.

24        THE COURT:  I'm going to follow up with some

25   questions for you.  Let me ask you Question 18 first.  That

1    asks whether you have any beliefs or opinions about the

2    Defendant or anyone associated with him that would make it

3    difficult for you to remain fair and impartial to both the

4    Government and the Defendant throughout the trial.  Can you

5    explain why you answered yes to that question?

6            PROSPECTIVE JUROR:  I follow the news very

7    closely.  So I -- a lot about the Defendant in this case in

8    this particular.  So I definitely have some established

9    opinions about the case.

10           THE COURT:  What are those opinions?

11           PROSPECTIVE JUROR:  About the case or the

12   Defendant?

13           THE COURT:  Both.

14           PROSPECTIVE JUROR:  Okay.  I mean, from what I've

15   read in this case, the details are that he was subpoenaed,

16   did not comply with the subpoena.  So from my limited

17   knowledge of the law, that seems pretty clear.

18           I guess I'm not sure what we're finding on here is

19   whether or not he did or did not comply with the subpoena.

20   It seems, like, pretty clear from the facts of what I'm

21   aware.

22           THE COURT:  Would you be able to consider the

23   facts as they're presented in this courtroom and follow my

24   instructions on the law?

25           PROSPECTIVE JUROR:  I don't think I'd be unable to

1    consider the facts and follow instructions.

2         THE COURT:  Do you think that the preexisting

3    knowledge from your following either the Committee's work or

4    this case would risk that you would bring that information

5    and knowledge into your deliberations about the case?

6         PROSPECTIVE JUROR:  I mean, I can't say for sure.

7    But I don't think so.

8         THE COURT:  Okay.  One of your answers -- I guess

9    we've already addressed to some extent Question 7, which is

10    whether you had heard about this case.

11         I then asked whether during the pendency of the

12    trial it would be difficult for you to not listen to, watch,

13    read about this case on the internet or otherwise.  And I

14    would instruct the jury to basically not do so.  And you

15    answered yes, that you would have trouble following that

16    instruction.  Why is that?

17         PROSPECTIVE JUROR:  It would depend on what you

18    consider difficult.  I am a pretty close follower of the

19    news.  So like I've listened to it, watched it, read it

20    pretty consistently.

21         So if I continued those habits during the trial --

22    and it would be pretty much impossible to avoid hearing

23    about this case, since I get the sense it's going to be

24    covered very closely.  If I was instructed to avoid those

25    things, I would do my best to comply with the instructions.

```
1                  THE COURT:  You answered yes to Question 10, which

2         is:  Have you or a member of your family or anyone close to

3         you ever worked for the House, the Senate or any government

4         agency affiliated with the legislative branch?  Can you

5         explain to us what that answer was yes for?

6                  PROSPECTIVE JUROR:  Yeah.  I was -- I interned for

7         the House of Representatives back in 2010.

8                  THE COURT:  For who or for which committee did you

9         intern?

10                 PROSPECTIVE JUROR:  It was a congressmen.  He's no

11        longer there.  His name was Todd Platts.  He was from

12        Pennsylvania.  I think it would have been the 13th District.

13        But they've been renumbered a couple times since then, so I

14        don't know if that's the right number anymore.

15                 THE COURT:  What do you do now?

16                 PROSPECTIVE JUROR:  I am a project manager for a

17        healthcare company.

18                 THE COURT:  You also answered yes to Question 24.

19        And this gets potentially into personal information that you

20        might not want to share with the world, so to speak.  But it

21        asks whether you've been a victim or anyone -- someone close

22        to you has been a victim or a witness to a crime.  Can you

23        describe your yes answer there?  Or, if not, we can go on

24        the husher, which is --

25                 PROSPECTIVE JUROR:  No.  It's fine.  I interpreted
```

```
 1    it pretty broadly.  The victim of a crime, I've had my car

 2    broken into several times.  I've had my bike stolen.  But

 3    that's the most serious thing.

 4            THE COURT:  Anything about that experience or

 5    experiences that would cause you to be worried that you

 6    couldn't be impartial in this case?

 7            PROSPECTIVE JUROR:  No.

 8            THE COURT:  Thank you.

 9            Ms. Vaughn?

10            MS. VAUGHN:  Good afternoon.

11            PROSPECTIVE JUROR:  Hi.

12            MS. VAUGHN:  Is your opinion -- I think you said

13    that it seems pretty clear, this case.  Is that opinion just

14    based on that you generally know what a subpoena is or is it

15    based on, like, your consideration of the specific facts

16    that will be at issue here?

17            PROSPECTIVE JUROR:  Just very vaguely based on

18    what I think a subpoena is.  I'm not aware.  I don't have a

19    strong legal background.

20            MS. VAUGHN:  So your opinion is not based on the

21    specific facts of what happened with this person's subpoena

22    or what he may have known or what people may have been

23    saying back and forth with respect to this one?

24            PROSPECTIVE JUROR:  No.  It doesn't -- again, I'm

25    not aware.  It doesn't really matter what he knew or didn't
```

```
 1    know.  Right?  It's just the fact of the subpoena.

 2              MS. VAUGHN:  Well, the Court will instruct you on

 3    what the law is.  Would you be able to follow those

 4    instructions and put aside your preconceived notion about

 5    what a subpoena is?

 6              PROSPECTIVE JUROR:  I think so.

 7              MS. VAUGHN:  How sure are you that you could do

 8    that?

 9              PROSPECTIVE JUROR:  Very sure.

10              MS. VAUGHN:  And you mentioned that you've had

11    your car broken into and your bike stolen.  I guess that's

12    part of living in the city?

13              PROSPECTIVE JUROR:  Yes.

14              THE COURT:  Did you report those?

15              PROSPECTIVE JUROR:  It was a pretty long time ago.

16    I'm pretty sure I reported my car getting broken into.

17              THE COURT:  Was there any followup by law

18    enforcement or the U.S. Attorney's Office, by the

19    prosecutor?

20              PROSPECTIVE JUROR:  No.  I think I talked to

21    someone over the phone a long time ago.  But that was like

22    the end of it.

23              MS. VAUGHN:  Did you feel there should have been

24    more followup?  Were you disappointed in law enforcement's

25    response?
```

```
 1              PROSPECTIVE JUROR:  It met my expectations,
 2      considering the crime you might experience in D.C.
 3              MS. VAUGHN:  So were your expectations low?
 4              PROSPECTIVE JUROR:  I guess, yeah, given -- you
 5      could say that.  Sure.
 6              MS. VAUGHN:  Do you have any negative feelings
 7      about law enforcement based on that experience?
 8              PROSPECTIVE JUROR:  No.
 9              MS. VAUGHN:  That's all.  Thank you.
10              PROSPECTIVE JUROR:  Sure.
11              THE COURT:  Mr. Corcoran?
12              MR. CORCORAN:  Good afternoon.
13              PROSPECTIVE JUROR:  Hi.
14              MR. CORCORAN:  Do you have established opinions
15      about Steve Bannon as well?  If so, what are they?
16              PROSPECTIVE JUROR:  I do.  Yes.  I mean, I know
17      from a political perspective I certainly don't agree with
18      him or a lot of the things that he has done.  Yeah.
19              MR. CORCORAN:  Thank you.
20              MS. VAUGHN:  Your Honor, could I ask a followup on
21      that?
22              THE COURT:  Sure.
23              MS. VAUGHN:  When you say you have established
24      opinions about the Defendant, do you mean you have
25      established opinions on his viewpoints or him as a person?
```

331

```
1              PROSPECTIVE JUROR:  Both.

2              MS. VAUGHN:  Okay.  Thank you.

3              PROSPECTIVE JUROR:  Yeah.

4              THE COURT:  Thank you.  Thank you, sir.

5              PROSPECTIVE JUROR:  Sure.

6              THE COURT:  You may step outside.

7              (Thereupon, Prospective Juror No. 713 retired from

8      the courtroom and the following proceedings were had:)

9              THE COURT:  Motions to strike 713?

10             MR. CORCORAN:  I'm happy to argue if you need it,

11     your Honor.

12             THE COURT:  I don't really need it.

13             Ms. Vaughn, are you opposed, given the question

14     you just asked?

15             MS. VAUGHN:  No.  That's fine, your Honor.

16             THE COURT:  We will exclude 713.

17             Juror 365.

18             (Thereupon, Prospective Juror No. 365 entered the

19     courtroom and the following proceedings were had:)

20             THE COURT:  Good afternoon.

21             PROSPECTIVE JUROR:  Hey.

22             THE COURT:  You're Juror 365.  Correct?

23             PROSPECTIVE JUROR:  Correct.

24             THE COURT:  I'm going to read into the record the

25     questions you indicated yes answers to.  I'll have some
```

1    followup questions for you and counsel may have some

2    questions, too.  Those are Questions 3, 7, 8, 9, 10, 13, 14,

3    16 and 7-A.

4              PROSPECTIVE JUROR:  As I remembered, there was a

5    question about:  Do you or, like, somebody you're associated

6    with, have they ever been called to testify before Congress

7    or provide documents?  And I need to say yes to that.

8              THE COURT:  Can you explain why?

9              PROSPECTIVE JUROR:  My partner was called before.

10             THE COURT:  Who?

11             PROSPECTIVE JUROR:  My partner was called before

12   the House Ethics Committee.

13             THE COURT:  When was that?

14             PROSPECTIVE JUROR:  Within the last couple of

15   years, perhaps.  '19, '20.

16             THE COURT:  Did your partner testify?

17             PROSPECTIVE JUROR:  Yeah.

18             THE COURT:  Was that pursuant to a subpoena or was

19   that a request for a voluntary appearance?

20             PROSPECTIVE JUROR:  It was a request for documents

21   about, like, internal documents about their relationship

22   with the Interior Department.  The House Appropriations

23   Committee.

24             THE COURT:  Was there anything about that

25   experience that in your view would cause you to be concerned

1    about your ability to be impartial in this case in light of

2    what you understand the case to be about?

3             PROSPECTIVE JUROR:  No.

4             THE COURT:  You answered Question 3 yes.  And that

5    question asked whether you are personally acquainted with or

6    have any connection to or association with or had any

7    contact with Mr. Bannon.  Can you describe your answer there

8    for us?

9             PROSPECTIVE JUROR:  I'm a reporter for politics.

10   And I reached out to him at least twice within the last

11   couple years for stories I was working on.

12            THE COURT:  Did you speak with Mr. Bannon?

13            PROSPECTIVE JUROR:  We emailed.

14            THE COURT:  Did your work there have anything to

15   do with this case?

16            PROSPECTIVE JUROR:  Not about records requests

17   from Congress.  No.

18            THE COURT:  You also answered yes to Question 7

19   and 7-A.  7 was about whether you were aware of this case,

20   had become aware.  And 7-A is whether you had formed an

21   opinion about this case.

22            Can you just describe to us what you knew about

23   this case before today and what opinions you had about this

24   case before today?

25            PROSPECTIVE JUROR:  Well, I know a lot about this

1    case, just covering it.  I'm a reporter.  We did a

2    newsletter every day.  So I've seen a lot of stories about

3    this case.

4         One of the stories I saw was last week that came

5    out about some of the arguments that are going to be allowed

6    to be -- for inclusion in this matter.  And so that sort of

7    swayed my view that perhaps this case may not be as

8    competitive as one might think it is.

9         THE COURT:  Did you reach any other opinions or

10   conclusions about this case based on your prior reading

11   before -- knowledge before you came in today?

12        PROSPECTIVE JUROR:  I don't think so.  I feel like

13   I have read a lot about the facts that are at play here.

14   But I don't have many more opinions on the specific case

15   than what I just read last week.

16        THE COURT:  Question 8 asks whether you've written

17   or said anything for public consumption about the Defendant,

18   the Select Committee or the Committee's investigation.  You

19   answered yes.  I could see why now.

20        PROSPECTIVE JUROR:  Yeah.

21        THE COURT:  Approximately how many articles have

22   you written about Mr. Bannon?

23        PROSPECTIVE JUROR:  Well, I looked up Mr. Bannon

24   in our archive today.  It was 28.  I've written a lot more

25   about the Select Committee and Donald Trump and the relation

-3726-

```
1    of all of these things together in the meantime since
2    January 6.
3              THE COURT:  Do you have a personal view of
4    Mr. Bannon?
5              PROSPECTIVE JUROR:  Oh, I don't have a -- I have a
6    professional view of Mr. Bannon.  I like to think I'm pretty
7    objective as a reporter, so I understand him to be a pretty
8    big player in American politics.
9              THE COURT:  Question 9 asks whether there's
10   anything about serving -- excuse me -- well, I can instruct
11   the jurors that they can't read anything relating to this
12   case at all.  And I asked whether you would have trouble
13   following that instruction.  You said yes.
14             PROSPECTIVE JUROR:  Yes.
15             THE COURT:  Can you explain why?
16             PROSPECTIVE JUROR:  Yeah.  So every morning we
17   write a newsletter.  And I see just about every headline
18   that's written.  I did it this morning at 7:30 before coming
19   here.  So I saw the story was happening here today.  Not on
20   personal necessity, but it comes across my radar in my line
21   of work.
22             THE COURT:  Also the question -- I think it's
23   really the next, maybe the only, relevant question to ask,
24   given what you've said:  Were you or any of them members of
25   your family --
```

1          PROSPECTIVE JUROR:  I have many close friends

2      there.

3          THE COURT:  And as a result of those close friends

4      of yours being at the Capitol or around the Capitol on

5      January 6, are you concerned about your ability to be

6      impartial in this matter?

7          PROSPECTIVE JUROR:  I think I'm pretty good at

8      being impartial, just given my work.

9          THE COURT:  Would that answer apply to not just

10     the fact that you knew people that were at the Capitol on

11     June 6, but your prior engagement with Mr. Bannon, your

12     articles, what you knew about the case?  Do you feel that

13     you could be fair and impartial here?

14         PROSPECTIVE JUROR:  I think I know a lot about a

15     lot of the circumstances that are on --

16         THE COURT:  Do you think you could set aside that

17     prior knowledge --

18         PROSPECTIVE JUROR:  Sure.

19         THE COURT:  -- and follow my instructions to

20     consider only the evidence that's presented in the courtroom

21     and the law as I articulate it to you?

22         PROSPECTIVE JUROR:  Yeah.  For sure.

23         THE COURT:  Thank you.

24         Ms. Gaston?

25         MS. GASTON:  Good afternoon.

```
 1              PROSPECTIVE JUROR:  Hey.

 2              MS. GASTON:  I'm sorry.  I didn't really catch

 3      what you were describing with respect to the matter that

 4      your partner testified to.  Could you --

 5              PROSPECTIVE JUROR:  I mean, it was an issue that

 6      the Interior Department had with the House Appropriations

 7      Committee and his capacity as communications director for

 8      the Democrats on the Committee, where he was called before

 9      the House Ethics Committee about what he had said about an

10      employee of the Interior Department.  Does that make sense?

11              MS. GASTON:  I'm sorry.  What position did your

12      partner hold?

13              PROSPECTIVE JUROR:  Communications director for

14      the House Appropriations Committee under the Democrats.

15              MS. GASTON:  And then you said you know a lot

16      about this case, and that's including arguments last week.

17              PROSPECTIVE JUROR:  About the arguments that would

18      be available.  Yeah.

19              MS. GASTON:  So you know about some of the

20      evidence, including evidence that is excluded from trial?

21              PROSPECTIVE JUROR:  Yes.

22              MS. GASTON:  And then have you talked to your

23      close friends who were at the Capitol about January 6th?

24              PROSPECTIVE JUROR:  Yes.

25              MS. GASTON:  What are your feelings about January
```

1    6th?

2              PROSPECTIVE JUROR:  It's not great.

3              MS. GASTON:  And then you also mentioned that you

4    have reached out to and spoken to Mr. Bannon in the past?

5              PROSPECTIVE JUROR:  In the past.

6              MS. GASTON:  So he has been a source for you in

7    the past?

8              PROSPECTIVE JUROR:  Yeah.  At least once.  Yes.

9              MS. GASTON:  At least once.

10             And since you cover politics, theoretically he

11   could be a source for you in the future?

12             PROSPECTIVE JUROR:  Probably should be.  Yes.

13             MS. GASTON:  So might it be uncomfortable to serve

14   as a juror in a trial with somebody who has been and might

15   in the future be a source for you?

16             PROSPECTIVE JUROR:  It could be very

17   uncomfortable.  Yes.

18             MS. GASTON:  Thank you.

19             THE COURT:  Mr. Corcoran?

20             MR. CORCORAN:  No questions, your Honor.  Thank

21   you very much.

22             THE COURT:  Thank you, sir.

23             PROSPECTIVE JUROR:  Thank you.

24             (Thereupon, Prospective Juror No. 365 retired from

25   the courtroom and the following proceedings were had:)

```
1              THE COURT:  Motions to strike 365?

2              MR. CORCORAN:  We'll move to strike, your Honor.

3              MS. GASTON:  We will, too.

4              THE COURT:  Cross-motions are granted.  365 is

5    excluded.

6              Can we bring in 33, please.

7              (Thereupon, Prospective Juror No. 33 entered the

8    courtroom and the following proceedings were had:)

9              THE COURT:  Good afternoon, ma'am.

10             PROSPECTIVE JUROR:  Good afternoon.

11             THE COURT:  Thank you for still being here.

12             You're welcome to take your mask off if you would

13   like.  You need not if you don't want to.

14             You are Juror 33.  Correct?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  I'm going to read into the record the

17   one question that you answered yes to.  That was

18   Question 22.  Do I have that right?  You had no answer to

19   everything else?

20             PROSPECTIVE JUROR:  Correct.

21             THE COURT:  Can you describe to me who the family

22   member or close person in your orbit is who worked in the

23   legal profession in some capacity?

24             PROSPECTIVE JUROR:  My brother works at a patent

25   law firm.  He does technical drawings.
```

```
 1              THE COURT:  Has he ever done criminal work?

 2              PROSPECTIVE JUROR:  No.

 3              THE COURT:  Obviously, you answered no to a lot of

 4    questions.  I just want to make sure that in fact you have

 5    not heard, read or seen anything about this case before you

 6    came in here today.

 7              PROSPECTIVE JUROR:  Nothing that I have formed a

 8    deep opinion upon.

 9              THE COURT:  What had you heard?

10              PROSPECTIVE JUROR:  Just incidents from the news

11    or, like, news articles.  But truthfully, I'm not very

12    politically motivated or interested.  So --

13              THE COURT:  Had you formed any opinion at all?  I

14    think you just said no.  But had you formed any opinion at

15    all about this case before you came in here?

16              PROSPECTIVE JUROR:  Not really, no.

17              THE COURT:  What do you mean by "not really"?

18              PROSPECTIVE JUROR:  No.

19              THE COURT:  And what, if anything, did you know

20    about the work of the Select Committee, what people are

21    calling the January 6 committee?

22              PROSPECTIVE JUROR:  Nothing.

23              THE COURT:  Thank you.

24              Ms. Vaughn?

25              MS. VAUGHN:  Good afternoon.  I just want to ask
```

```
 1    you what you do for a living.

 2            PROSPECTIVE JUROR:  I'm a physical therapist in a

 3    hospital.

 4            MS. VAUGHN:  Which hospital do you work in?

 5            PROSPECTIVE JUROR:  MedStar National Rehab

 6    Hospital.

 7            MS. VAUGHN:  That's here in D.C.?

 8            PROSPECTIVE JUROR:  Yes.  In Northwest.

 9            MS. VAUGHN:  Thank you very much.

10            THE COURT:  Mr. Corcoran?

11            MR. CORCORAN:  No.  Thank you very much.  Thank

12    you.

13            THE COURT:  Thank you, ma'am.

14            PROSPECTIVE JUROR:  Thank you.

15            (Thereupon, Prospective Juror No. 33 retired from

16    the courtroom and the following proceedings were had:)

17            THE COURT:  Any motions to strike Juror 33?

18            MS. VAUGHN:  Not from the Government.

19            MR. CORCORAN:  No, your Honor.

20            THE COURT:  Thank you.

21            Ms. Lesley, Juror 1058, please.

22            (Thereupon, Prospective Juror No. 1058 entered the

23    courtroom and the following proceedings were had:)

24            THE COURT:  Good afternoon.

25            PROSPECTIVE JUROR:  Good afternoon, Judge.
```

```
 1              THE COURT:  You may take your mask off if you
 2     would like.
 3              You are Juror 1058.  Correct?
 4              PROSPECTIVE JUROR:  That is correct, sir.
 5              THE COURT:  I'm going to read into the record the
 6     questions that you answered yes to and then ask you some
 7     followup questions.  You answered yes to Questions 6, 7,
 8     7-A, 7-B, 10, 11, 14, 15, 16, 17, 18 and 19.
 9              PROSPECTIVE JUROR:  Yes, sir.
10              THE COURT:  Let me just start with Question 6,
11     which is if there's anything about the nature of the charges
12     in this case or the parties involved that would prevent you
13     from deciding this case fairly.  Can you tell us why you
14     answered yes to that?
15              PROSPECTIVE JUROR:  Yes.  There's been a lot of --
16     yes.  First of all, I'm a retired federal law enforcement
17     manager.  I was also a manager for the Office of Integrity
18     and Ethics for the District of Columbia for five years.  I
19     was also a fraud investigator.
20              I felt that the nation on January 6 was impacted
21     greatly.  A lot of my brethren were killed.  A lot were
22     injured.  My profession, my training and my personal opinion
23     and my moral compass is what made me answer yes.
24              THE COURT:  And is that true also or at least in
25     part about your answers to Question 7-A and B, which is:
```

1    Have you heard, seen or read anything about this case and,

2    if so, have you formed opinions that would make it hard for

3    you to be objective, essentially?

4            PROSPECTIVE JUROR:  Definitively, your Honor.

5            THE COURT:  Tell us just a little bit more about

6    that, if you could.

7            PROSPECTIVE JUROR:  Your Honor, I think that I

8    shouldn't say this for the sake of jurisprudence, but I'll

9    say that I think that even though we know in practice it

10   doesn't work, I think all Americans are bound by federal,

11   state and local law.  And I think people should abide by the

12   law.  And if they don't, I think they should suffer the

13   consequences thereof.

14           And I don't think storming the Capitol, like

15   Donald Trump's staff members and, you know, trashing the

16   Capitol, trashing Senator Pelosi, trashing -- my next-door

17   neighbor was there, stole stuff out of the White House, you

18   know, assaulting police officers, federal officers.  I don't

19   think it's appropriate.  And living in the District of

20   Columbia, being a retired law enforcement officer, being

21   family, no.  No.

22           THE COURT:  Is that true here even though this

23   case really isn't about the January 6th -- the day of

24   January 6th, the attack and the like, but it's about

25   Mr. Bannon and the subpoena he received and it's about that?

1    You still think that --

2           PROSPECTIVE JUROR:  Yes, because I think there's a

3    direct correlation, your Honor, because regarding the

4    documents that were requested, I hear a lot of "The

5    Defendant didn't have to produce those under his executive

6    privilege."

7           Okay.  You're talking about the subpoena.  You get

8    a congressional subpoena.  I would have to abide by

9    congressional subpoena, and you in your personal capacity

10   would have to abide by a congressional subpoena.  So I don't

11   understand the preferential treatment.

12          THE COURT:  And you also answered yes to a number

13   of questions about the Committee, the hearings, but also,

14   whether you had beliefs or opinions about the Defendant,

15   Mr. Bannon, that would make it difficult for you to remain

16   fair and impartial in this case.  Can you say just a little

17   bit more about that?

18          PROSPECTIVE JUROR:  To be brutally frank with you,

19   your Honor, I have somewhat closely followed some of the

20   media, not really, really closely, because of my saturation

21   point.  But when you lump everything together and you read

22   certain things in the media as relates to Mr. Bannon's

23   affiliation with Mr. Trump and certain other entities and

24   email messages and money and whatever, I don't know.  I'm

25   not saying any of that is true or not.

1                The question was:  Do you have any familiarity?

2        Or have you heard about it?  And -- or seen any media?  Yes,

3        I have.  I don't think anybody in America hasn't seen an

4        awful lot about it.

5                THE COURT:  And given what you've seen, do you

6        think that you would have a hard time being fair and

7        impartial in this case?

8                PROSPECTIVE JUROR:  Yes, I do.

9                THE COURT:  Thank you.

10               Ms. Gaston?

11               MS. GASTON:  Nothing from the Government, your

12       Honor.

13               THE COURT:  Thank you.

14               MR. CORCORAN:  Just a quick question.  I

15       appreciate your candor very much.  We've been here all day.

16               PROSPECTIVE JUROR:  Sure.

17               MR. CORCORAN:  Did you have a chance to talk to

18       any of the other jurors about anything?

19               PROSPECTIVE JUROR:  Absolutely not.  I just told

20       you my background.  I don't do that.

21               MR. CORCORAN:  Understood.

22               PROSPECTIVE JUROR:  I'm very familiar with

23       *ex parte* orders and I've been a foreman in criminal jury

24       trials before.  So I had no conversation with any juror

25       about Mr. Bannon's case.

1           MR. CORCORAN:  Great.  Thank you.

2           PROSPECTIVE JUROR:  We're welcome.

3           THE COURT:  Thank you, ma'am.

4           PROSPECTIVE JUROR:  Sure.  Thank you.

5           THE COURT:  You may be excused.

6           PROSPECTIVE JUROR:  Thank you, Judge.

7           (Thereupon, Prospective Juror No. 1058 retired

8     from the courtroom and the following proceedings were had:)

9           THE COURT:  Motions to strike 1058?

10          MR. CORCORAN:  Yes, your Honor.

11          MS. GASTON:  No opposition.

12          THE COURT:  We will strike 1058.

13          She will not be qualified.

14          1427.

15          (Thereupon, Prospective Juror No. 1427 entered the

16    courtroom and the following proceedings were had:)

17          THE COURT:  Good afternoon, sir.

18          PROSPECTIVE JUROR:  Good afternoon.

19          THE COURT:  You can take your mask off if you

20    want.

21          You're Juror 1427.  Correct?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  I'm going to read into the record two

24    questions that you answered yes to and then ask you some

25    followups.  So you answered yes to Questions 16 and 22.

```
1              Let's start with 22, which is the question about

2       whether you or anyone in your family, close personal friend,

3       et cetera, worked in law or in the legal profession in any

4       way.  What was the reason for your answer there?

5              PROSPECTIVE JUROR:  I'm an attorney.

6              THE COURT:  Where do you work?

7              PROSPECTIVE JUROR:  I work for the U.S. Office of

8       Special Counsel.

9              THE COURT:  And is that --

10             PROSPECTIVE JUROR:  It's an independent federal

11      agency.  We receive whistleblower complaints from other

12      executive departments.

13             THE COURT:  What did you do before that?

14             PROSPECTIVE JUROR:  I worked for the New Jersey

15      Attorney General's Office.  I did consumer fraud

16      prosecutions.

17             THE COURT:  Criminal prosecutions?

18             PROSPECTIVE JUROR:  Civil prosecutions.

19             THE COURT:  When did you move from New Jersey to

20      OSC?

21             PROSPECTIVE JUROR:  2018.  I did about five years

22      with the New Jersey Attorney General's Office.  I've been at

23      OSC now for almost four years.

24             THE COURT:  What had you done before New Jersey?

25             PROSPECTIVE JUROR:  I did about six months of
```

```
 1    workers' compensation law, and then before that I graduated

 2    from law school.

 3              THE COURT:  You also answered yes to Question 16,

 4    which is whether you've watched or read coverage of the

 5    hearings.  Can you describe to us which hearings you've

 6    watched, how many of them, how much, basically the basics

 7    around your yes answer?

 8              PROSPECTIVE JUROR:  I haven't watched any of the

 9    hearings, but I have read about them.  And specifically I

10    read about the Casey Hutchinson testimony about President

11    Trump lunging for the wheel and stuff like that.  But other

12    than that, I have not really been paying attention to the

13    hearings.

14              THE COURT:  You answered no to any knowledge about

15    this case before you appeared here today.  Is that correct?

16              PROSPECTIVE JUROR:  That's correct.

17              THE COURT:  Based on what you've read about the

18    Committee hearings, is there anything that you learned that

19    would cause you to question your impartiality in this

20    matter?

21              PROSPECTIVE JUROR:  No.

22              THE COURT:  You were also asked whether there's

23    anything that would cause you to have an opinion about the

24    Defendant and certainly one that would cause you to be

25    unable to be fair and impartial.  Is there anything there?
```

```
 1                 PROSPECTIVE JUROR:  Nothing.  No.

 2                 THE COURT:  Thank you.

 3                 Ms. Vaughn?

 4                 MS. VAUGHN:  No questions, your Honor.

 5                 THE COURT:  Mr. Corcoran?

 6                 MR. CORCORAN:  Good afternoon.

 7                 PROSPECTIVE JUROR:  Good afternoon.

 8                 MR. CORCORAN:  Does any of your work deal with,

 9      now or in New Jersey -- is it New Jersey or New York?

10                 PROSPECTIVE JUROR:  New Jersey.

11                 MR. CORCORAN:  Does any of your work deal with

12      subpoena enforcement?

13                 PROSPECTIVE JUROR:  Yes.  It's part of my work

14      with the New Jersey Attorney General's Office.  We served

15      subpoenas on businesses frequently and often we would bring

16      enforcement actions to enforce subpoenas.

17                 MR. CORCORAN:  And tell me how that worked, how it

18      played out in the process.  What would you do and how would

19      it play out?

20                 PROSPECTIVE JUROR:  Right.  We would file -- so we

21      would enforce administrative subpoenas, and so we would file

22      motions to compel the company to produce documents.

23      Usually, these are like documents related to consumer fraud

24      cases, so, like, business documents.

25                 Oftentimes the other side would feel, you know,
```

1      this is a business that had a reputation to save.  So they

2      would come to the table and ultimately work out some sort of

3      exchange of documents.

4                MR. CORCORAN:  Thank you, your Honor.

5                THE COURT:  Thank you.

6                Thank you, sir.

7                PROSPECTIVE JUROR:  Thank you.

8                MS. VAUGHN:  I'm sorry.  Could I follow up?

9                THE COURT:  Yes.

10               MS. VAUGHN:  I'm sorry.

11               THE COURT:  Ms. Vaughn.

12               MS. VAUGHN:  You said that it was administrative

13     subpoenas that you were working with?

14               PROSPECTIVE JUROR:  Yes.

15               MS. VAUGHN:  Have you ever worked with other types

16     of subpoenas?

17               PROSPECTIVE JUROR:  No.

18               MS. VAUGHN:  And so you understand that this is a

19     congressional subpoena, different from an administrative

20     subpoena where you were going to court to compel documents?

21               PROSPECTIVE JUROR:  I'm not familiar with the

22     facts of that case, but I understand that there are

23     different types of subpoenas.  Yes.

24               MS. VAUGHN:  Would you be able to put aside your

25     experience and knowledge of how administrative subpoenas

```
 1    work to just consider the subpoena at issue in this case?
 2              PROSPECTIVE JUROR:  Absolutely.
 3              MS. VAUGHN:  Thank you.
 4              THE COURT:  Thank you, sir.
 5              PROSPECTIVE JUROR:  Thank you.
 6              (Thereupon, Prospective Juror No. 1427 retired
 7    from the courtroom and the following proceedings were had:)
 8              THE COURT:  Motions to strike Juror 1427?
 9              MS. VAUGHN:  Not from the Government, your Honor.
10              MR. CORCORAN:  No, your Honor.
11              THE COURT:  We will seat or qualify Juror 1427.
12              By my count, that gets us to 22.
13              Before we excuse anyone, I want to go through and
14    confirm that we have the following list of qualified jurors
15    in the following order.  Then we can talk about whether I
16    have it right.  So in order, we have Juror 1104, 1371, 0014,
17    1061, 1391, 122, 1041, 475, 1425, 257, 544, 1798, 749, 1053,
18    1957, 93, 540, 1117, 1913, 764, 33.
19              MS. VAUGHN:  The Government agrees that that's
20    correct.
21              THE COURT:  Mr. Corcoran?
22              MR. CORCORAN:  Yes, your Honor.
23              THE COURT:  So here's how I intend to proceed.  I
24    just wonder how quickly it can be done.
25              That's the order of the jurors.  I consider those
```

1    to essentially be Jurors 1 through 22 in the counting sense.

2          Each side has three peremptories to exercise, six

3    peremptories to get to what would be the 14 jurors that

4    would be 1 through 14 after doing so, which would include

5    the two alternates possibility discussed before.

6          We then of course have two peremptories left over

7    because we have alternate jurors.

8          I intend to have the parties basically do

9    peremptories, as I said, sequentially rather than

10   consecutively.  If the parties believe that this can be done

11   fairly quickly, then we could do all of this and be left

12   with our 14 jurors and excuse everyone else.  If the parties

13   don't believe we can do it quickly, then I would excuse

14   everyone but the 22 that we just discussed and basically

15   have them come back tomorrow, do the peremptories in the

16   morning and then start.

17          Do you have a view, Mr. Corcoran?

18          MR. CORCORAN:  Your Honor, I would go with Option

19   B.

20          THE COURT:  To allow you to reflect on the

21   peremptories and to not do this on the fly --

22          MR. CORCORAN:  Yes, your Honor.

23          THE COURT:  -- and the like?

24          Ms. Vaughn, any objection?

25          MS. VAUGHN:  No.  The Government agrees with that.

```
 1                THE COURT:  The Government agrees with that.
 2     Okay.
 3                So this is what we're going to do, then:  We will
 4     excuse all jurors other than the 22 I just described.  Those
 5     22 must appear tomorrow for continued voir dire.  First
 6     thing in the morning, in my courtroom, because I don't think
 7     we need to do this here, outside the presence of those 22,
 8     we will do the peremptories.  And we will then have our 14
 9     jurors to include the two alternates in the seats that we
10     discussed earlier.
11                And then that really shouldn't take that long, I
12     would hope, so we could begin with openings.
13                We're going to bring the 22 jurors who have been
14     qualified and will be appearing tomorrow come back into the
15     courtroom for various reasons.  Everyone else will be
16     excused and Ms. Lesley will have the opportunity to talk to
17     them perhaps behind the courtroom or something like that.
18     But yes.  Please do that.
19                THE COURTROOM DEPUTY:  Your Honor, should I have
20     them sit here?
21                THE COURT:  Yes.  That's great.
22                THE COURTROOM DEPUTY:  Thank you.
23                (Whereupon, the selected members of the
24     prospective jury panel entered the courtroom at 4:49 p.m.
25     and the following proceedings were had:)
```

1          THE COURT:  Ladies and gentlemen, first of all,

2     thank you for your time today and your patience.  I know

3     it's been a long day.  It's been a long day for everyone.  I

4     wanted to give you an update as to where we are.

5          There are 22 of you here.  You are not selected

6     for the jury yet.  You may be.  There is one more step that

7     we together with the lawyers -- that I together with the

8     lawyers have to do in the morning.

9          But rather than keep everyone here tonight to

10    complete this next step, we released everyone else who will

11    definitely not be serving on the jury and we have kept the

12    22 of you who may potentially serve on the jury.

13         And so again, we will be seating only 14 jurors.

14    So it is not at all guaranteed that any particular one of

15    you will be serving tomorrow.  But we have to take this next

16    step.  We will do that at 9:00 a.m. tomorrow.  I will be

17    doing that with just the counsel.  And then we will arrive

18    at our 14 jurors for this matter.

19         And when we do that, we will basically do as

20    Ms. Lesley just did with the full group, which is to say:

21    Okay.  Of the 22 of you, 14 of you please come into the

22    courtroom.

23         But in light of the discussion today, frankly in

24    light of the attention this case is getting, I do want to

25    instruct you about how I expect you will behave tonight.

1          These would be instructions I would normally give

2     to the actual jury, but I think it's warranted here.

3          You're not permitted to discuss this case with

4     anyone until this case is submitted to the actual jury at

5     the end of your decision unless you are one of the eight who

6     is excused tomorrow.  But between now and tomorrow morning,

7     you're not permitted to discuss this case with anyone.

8          It's because if you are in fact seated on this

9     jury, we don't want you making decisions until you've heard

10    all the evidence and the instructions of law.  You're not

11    supposed to talk about this case with anyone else.  You're

12    not to write about the case electronically, do blog-posting

13    or other communication, including social networking sites

14    like Facebook or Twitter until, again, we've concluded the

15    final selection process tomorrow morning.  And then if you

16    are part of the jury, I will give you this instruction

17    again.

18         I would also very much stress especially in this

19    age of electronic communications that you must not use

20    electronic devices or computers to talk about this case,

21    including tweeting, texting, blogging, emailing, posting

22    information or any other means at all.  Don't send or accept

23    messages or talk to other people, including through email

24    and texts about your potential jury service.

25         You must not disclose your thoughts about your

```
 1    potential jury service, what happened today or ask for

 2    advice on how to decide this or any case.

 3              And also, I think it was very much implied during

 4    the discussion, but you should very much avoid reading

 5    anything whatsoever overnight about this case.  The key is

 6    that we -- it's going to be very, very, very important that

 7    you decide this case based only on the facts and evidence

 8    presented to you during the trial, that together with the

 9    law as I instruct you.

10              So what does that mean?  I think you should feel

11    free to tell people you are called for potential jury

12    service today.  Do not tell anyone it was for this matter.

13    Do not talk to your spouse, partner, friend, mom, daughter.

14    Assuming that you are called for service in this matter,

15    don't tell anyone what we discussed here today.  Don't read

16    about this case.

17              Basically, for the next 15 hours, I want you to

18    disclose none of this information to other people.  I don't

19    want you to respond to other people about it.  I don't want

20    you reading about the case.  I want you to treat yourselves

21    as if you will be jurors even though because of this

22    procedural step we still have to consider there's the

23    possibility that some of you may not.

24              I apologize that we weren't able by the end of the

25    day to just get to 14.  This next step we will take in the
```

```
 1    morning is very important.  And obviously, eight of you will

 2    not be serving.  But at this point, we have the 22 of you as

 3    potential jurors.  And I very much expect you all to follow

 4    my instructions about not talking to other people, not

 5    reading about this case and the like.

 6              Are there any questions?

 7              Yes, ma'am.

 8              PROSPECTIVE JUROR:  Thank you.

 9              What time should we could come tomorrow?

10              THE COURT:  You should be here at 9:00 a.m.  Thank

11    you.  I'll be here at 9:00 a.m., but we will take some time

12    with the lawyers.  And that'll give you a chance to get

13    settled.

14              (Confers with the courtroom deputy privately.)

15              Just to make the details very clear -- and thank

16    you, Ms. Lesley -- 9:00 at the jury office.

17              Sir?

18              PROSPECTIVE JUROR:  Are we expected to go late

19    tomorrow or any other future night?

20              THE COURT:  No.  I believe that once we are --

21    first of all, of course, some of you may not be here after

22    tomorrow morning.  But in the future, I think we're going to

23    be finishing by approximately 5:00, with a little bit of

24    wiggle room there.

25              The reason we went as late as we did today -- and
```

 1    again, I apologize to everyone -- is so that we could

 2    essentially excuse 38 people rather than having all 60 come

 3    tomorrow.  So in the effort to pare out almost two-thirds of

 4    the group, I went until 5:45 tonight.  But thank you.

 5                Any other questions?

 6                Thank you all.  You're all excused.  Please be at

 7    the jury room -- the jury office at 9:00 a.m. tomorrow.

 8    That's where you began.  I can't remember the exact number

 9    of the office.

10                THE COURTROOM DEPUTY:  It's on the fourth floor.

11    If you all could go to the jury office at 9:00 a.m. to let

12    them know that you are here, and they will instruct you

13    further.  You all can sit out in the chairs in the hallway.

14                THE COURT:  Thank you all.  Thank you all very

15    much.

16                (Whereupon, the jury exited the courtroom at 6:04

17    p.m. and the following proceedings were had:)

18                THE COURT:  Let the record reflect the

19    winnowed-down venire has left the courtroom.  Obviously, the

20    plan is to have them in the jury office at 9:00 a.m.  They

21    understand that.  My intent is to again start tomorrow

22    morning at 9:00 a.m. in my courtroom, where we will do

23    peremptories.  I don't think we need to have the jurors

24    there for that.  In fact, I think it will go faster.  We'll

25    do peremptories.  We will then have our 14 jurors and then

```
 1    we'll bring them in to begin.

 2              Is there anything we should discuss about that

 3    process tomorrow morning?

 4              MS. VAUGHN:  Your Honor, we just have some

 5    questions about the rules for peremptories.

 6              THE COURT:  Sure.

 7              MS. VAUGHN:  We're assuming that if one side

 8    passes on a round that we've spent that strike and, once

 9    both parties pass, we're done?

10              THE COURT:  Mr. Corcoran, do you have a view of

11    how you'd like it to proceed?

12              MR. CORCORAN:  I don't think that passing -- I

13    mean, there are only three peremptories on each side.  So I

14    don't think we should have a rule that -- where you give up

15    a peremptory by passing.  It doesn't then necessarily mean

16    the other party is satisfied with the entire jury as

17    constituted.

18              Our position would be where we each have three,

19    let's use them back and forth and then --

20              THE COURT:  And in your view, you can pass at

21    least so long as you still have a peremptory and until the

22    other side has used up all of its peremptories?  Obviously,

23    you don't keep passing after that.

24              MR. CORCORAN:  Correct.  Correct.

25              THE COURT:  Ms. Vaughn?
```

```
1              MS. VAUGHN:  And if both sides pass at the same
2      time?
3              THE COURT:  Mr. Corcoran?
4              MR. CORCORAN:  Well, what I'm saying is --
5              THE COURT:  Imagine the Government does a strike.
6      Then you do a strike.  Then the Government passes and you
7      pass.  Even though the Government has passed, should that be
8      the end of the matter or does it go back to the Government
9      again to strike?
10             MR. CORCORAN:  I think it goes back to both sides
11     to exhaust the peremptories.
12             THE COURT:  At some point, the parties should
13     indicate they're not intending to use any more.
14             Why don't we do this:  I'm not going to -- it
15     seems to me in the circumstances I just described where both
16     parties pass, I'm going to ask whether you intend to use any
17     more.  I'm not going to say you're foreclosed.  But if you
18     say, "I'm not going to use any more," then you're not going
19     to use any more.
20             MR. CORCORAN:  Very well, your Honor.
21             THE COURT:  Okay?
22             MS. VAUGHN:  One other thing.
23             THE COURT:  Yes.
24             MS. VAUGHN:  Can we strike from the entire pool at
25     any time or can we only strike from -- in the box?
```

1          THE COURT:  So here's how -- my view is, this is

2    how it should work.  But I'm happy to hear from you.  We

3    have 22 potential jurors.  My view is, you can strike anyone

4    in the 22 you would like.  Okay?  With the initial six.  As

5    a result, we will then have 16 jurors.  Again, that will be

6    1 through 16.

7          1 through 14 would be the jury that we would be

8    seating, including with two people sitting in the seats that

9    we discussed under seal earlier.  At that point, the parties

10   would have the opportunity to exercise their alternate

11   peremptories to strike an alternate.

12         And if you strike the alternate sitting in one of

13   those seats, that person is substituted by the person

14   sitting effectively in Seat 15, if you follow what I'm

15   saying.

16         MS. VAUGHN:  Yes.

17         THE COURT:  If that happens, and the other side

18   strikes the other alternate, that would be filled with the

19   person sitting in effectively Seat 16.

20         MS. VAUGHN:  Got it, your Honor.  Thank you.

21         THE COURT:  Does that make sense?

22         MS. VAUGHN:  Yes.  Thank you.

23         MR. CORCORAN:  For the alternate strike, can we

24   strike 15?

25         THE COURT:  To prevent the person from filling --

1    Ms. Vaughn?  I've never confronted that question.  So in

2    other words, what you're saying is:  We have 14.  Rather

3    than strike one of the two alternates who are actually

4    alternates, you would strike Juror 15, who is a potential

5    alternate substitute if the other side strikes an alternate.

6            MR. CORCORAN:  Correct.

7            THE COURT:  Correct?

8            MR. CORCORAN:  Correct.

9            MS. VAUGHN:  I'm not sure how it works.  It seems

10    like then the parties are satisfied with the seats.

11            THE COURT:  Whoever does it first would be

12    blocking the other side from having the person in Seat 15

13    becoming an alternate.  Let me try again.

14            The Government wants to strike the first alternate

15    sitting in seat whatever.  It strikes that alternate.  It

16    knows it gets Juror No. 15 as its alternate.

17            What Mr. Corcoran, I believe, is proposing is that

18    Mr. Bannon could before that happens strike Juror 15, so

19    then the Government wouldn't have that juror available to it

20    to become one of the alternates should it exercise its

21    alternate peremptory.

22            MS. VAUGHN:  So if we can strike from the entire

23    pool in the first round and then for the alternates we can

24    strike from the entire alternate pool, I think that's --

25            THE COURT:  No.  I think from -- yes.  Yes.  I'm

```
1    sorry.  You said it correctly.  From the original 22, you

2    can exercise your strikes as to any of the 22.

3            Once we are down to 16, we actually have a pool of

4    four alternates in a way.  We have two seated alternates, so

5    to speak, and two alternate alternates.  And the

6    peremptories can be exercised as to the seated alternates or

7    the alternate alternates.

8            MS. VAUGHN:  That's fine with the Government.

9            THE COURT:  That's how we'll do it.

10           Any other questions?

11           MS. VAUGHN:  Not about jury selection.

12           THE COURT:  Okay.

13           MS. VAUGHN:  We were wondering how the Court

14   wanted to resolve the outstanding issue with respect to the

15   letters from the Committee to the Defendant, because we

16   expect that to be an issue with the very first witness.

17           So if the Court preferred to resolve it now or in

18   the morning --

19           THE COURT:  I haven't read the papers, to be

20   honest.  I know they were filed today.

21           MS. VAUGHN:  Okay.

22           THE COURT:  I need to read them overnight and I'll

23   just address them first thing in the morning.

24           MS. VAUGHN:  All right.

25           THE COURT:  Probably at 9:00.
```

```
 1              MS. VAUGHN:  Thank you, your Honor.
 2              THE COURT:  That'll be after we do the
 3      peremptories.
 4              MS. VAUGHN:  Thank you.  That's it from the
 5      Government.
 6              THE COURT:  Anything else, counsel?
 7              MR. CORCORAN:  No.  Thank you very much, your
 8      Honor.
 9              THE COURT:  Thank you all for your professionalism
10      today.  I know it was a long day.  But it was a lot to do.
11              Thank you all.  See you in the morning.
12              (Proceedings concluded.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                          **CERTIFICATE**

2

3                I, LISA EDWARDS, RDR, CRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings produced to the

7     best of my ability.

8

9

10               Dated this 19th day of July, 2022.

11

12               /s/ Lisa Edwards, RDR, CRR
                 Official Court Reporter
13               United States District Court for the
                   District of Columbia
14               333 Constitution Avenue, Northwest
                 Washington, D.C. 20001
15               (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## $

**$57** [1] - 281:7

## '

**'19** [1] - 333:15
**'20** [1] - 333:15

## /

**/s** [1] - 366:12

## 0

**0014** [1] - 352:16
**0093** [1] - 246:25

## 1

**1** [4] - 353:1, 353:4, 362:6, 362:7
**10** [12] - 218:1, 218:4, 237:17, 238:24, 251:10, 252:4, 259:1, 260:20, 325:22, 328:1, 333:2, 343:8
**100** [2] - 232:6, 236:15
**100-6** [1] - 186:23
**100-plus** [1] - 295:2
**1041** [1] - 352:17
**1053** [7] - 217:13, 217:14, 217:21, 226:12, 226:14, 226:19, 352:17
**1058** [6] - 342:21, 342:22, 343:3, 347:7, 347:9, 347:12
**1061** [1] - 352:17
**11** [1] - 343:8
**1104** [1] - 352:16
**1117** [6] - 271:13, 271:22, 277:9, 277:11, 277:14, 352:18
**122** [1] - 352:17
**13** [3] - 288:2, 290:14, 333:2
**1371** [1] - 352:16
**1391** [1] - 352:17
**13th** [1] - 328:12
**14** [35] - 193:2, 194:21, 194:24, 218:1, 227:20,

230:16, 237:17, 251:10, 253:4, 259:1, 261:17, 271:25, 272:14, 272:15, 296:19, 297:18, 297:20, 305:12, 306:23, 307:22, 325:8, 325:22, 333:2, 343:8, 353:3, 353:4, 353:12, 354:8, 355:13, 355:18, 355:21, 357:25, 359:25, 362:7, 363:2
**1425** [7] - 188:11, 188:13, 188:19, 190:8, 190:10, 190:13, 352:17
**1427** [6] - 347:14, 347:15, 347:21, 352:6, 352:8, 352:11
**15** [15] - 205:23, 209:12, 210:21, 212:4, 227:20, 234:4, 237:17, 343:8, 357:17, 362:14, 362:24, 363:4, 363:12, 363:16, 363:18
**1571** [6] - 306:12, 306:13, 306:19, 323:3, 323:5, 325:2
**16** [33] - 193:2, 194:22, 194:25, 209:12, 210:22, 218:1, 227:20, 237:17, 251:10, 253:5, 259:1, 261:18, 271:25, 272:14, 272:17, 287:25, 291:10, 291:11, 296:19, 297:19, 297:21, 305:12, 306:23, 307:23, 325:22, 333:3, 343:8, 347:25, 349:3, 362:5, 362:6, 362:19, 364:3
**17** [10] - 197:6, 227:20, 230:16, 237:18, 240:17, 257:21, 287:25, 291:10, 291:11, 343:8
**1798** [7] - 208:23, 208:24, 209:8, 214:18, 214:20, 214:23, 352:17
**18** [9] - 227:20, 287:25, 291:10, 305:12, 306:23, 308:22, 325:22, 325:25, 343:8

**19** [7] - 186:6, 197:2, 237:18, 241:5, 288:1, 291:10, 343:8
**1913** [8] - 277:15, 277:16, 277:23, 285:19, 285:21, 287:10, 352:18
**1945** [7] - 192:11, 192:12, 192:19, 204:1, 204:3, 205:7, 205:13
**1957** [7] - 237:6, 237:7, 237:13, 246:9, 246:12, 246:17, 352:18
**1995** [6] - 227:8, 227:9, 227:13, 236:24, 237:1, 237:5
**1998** [2] - 279:1, 287:2
**19th** [1] - 366:10

## 2

**20** [4] - 197:2, 197:24, 274:11, 302:15
**200** [1] - 202:23
**20001** [2] - 187:4, 366:14
**2006** [2] - 311:1, 311:16
**2009** [1] - 252:9
**2010** [3] - 252:9, 252:11, 328:7
**2014** [1] - 252:21
**2018** [1] - 348:21
**2019** [1] - 221:24
**202** [2] - 187:4, 366:15
**2020** [3] - 196:6, 196:7, 311:17
**2021** [1] - 221:14
**2022** [2] - 186:6, 366:10
**20530** [1] - 186:17
**20s** [1] - 234:10
**21** [5] - 218:1, 220:16, 227:20, 232:10, 305:12
**21-00670** [1] - 186:3
**21202** [1] - 186:21
**21st** [1] - 312:21
**22** [36] - 193:2, 195:25, 218:1, 220:25, 227:20, 232:16, 247:5, 247:8, 251:10, 252:25, 288:1, 296:19,

298:19, 306:24, 309:17, 325:5, 325:8, 340:18, 347:25, 348:1, 352:12, 353:1, 353:14, 354:4, 354:5, 354:7, 354:13, 355:5, 355:12, 355:21, 358:2, 362:3, 362:4, 364:1, 364:2
**23** [1] - 193:2, 306:24, 309:16
**24** [20] - 193:2, 197:13, 218:2, 222:9, 227:21, 233:19, 237:18, 241:22, 247:5, 247:23, 278:4, 278:5, 278:20, 287:3, 302:4, 306:24, 309:17, 325:22, 328:18
**25** [4] - 259:1, 274:23, 296:19, 299:17
**257** [7] - 190:14, 190:15, 190:22, 192:5, 192:7, 192:10, 352:17
**26** [3] - 271:25, 274:3, 305:13
**28** [7] - 227:21, 234:25, 278:4, 279:14, 288:1, 296:19, 335:24
**2800** [1] - 186:23
**29** [1] - 288:1
**2:06** [1] - 186:7

## 3

**3** [3] - 234:8, 333:2, 334:4
**300** [9] - 258:11, 258:15, 258:16, 258:22, 269:13, 269:15, 269:17, 271:12, 271:14
**32** [5] - 287:12, 287:13, 287:19, 295:25, 296:2
**33** [6] - 340:6, 340:7, 340:14, 342:15, 342:17, 352:18
**333** [2] - 187:3, 366:14
**354-3269** [2] - 187:4, 366:15
**36106** [1] - 186:24
**365** [6] - 332:17, 332:18, 332:22,

339:24, 340:1, 340:4
**38** [1] - 359:2
**39** [5] - 237:18, 242:14, 251:10, 254:11, 255:2
**3:28** [1] - 258:4
**3:40** [1] - 258:4

## 4

**4** [4] - 297:12, 297:14, 301:6, 303:25
**40** [1] - 288:1
**400** [1] - 186:20
**44** [9] - 237:18, 243:3, 278:4, 280:8, 280:19, 280:23, 280:25, 288:1, 295:4
**45** [1] - 227:21, 227:23, 227:24
**475** [1] - 352:17
**4:49** [1] - 354:24

## 5

**5** [3] - 237:17, 287:25, 288:5
**540** [7] - 250:22, 250:23, 251:4, 257:13, 257:15, 257:19, 352:18
**544** [7] - 204:14, 205:15, 205:20, 208:17, 208:19, 208:22, 352:17
**555** [1] - 186:16
**5:00** [2] - 325:11, 358:23
**5:45** [1] - 359:4

## 6

**6** [34] - 189:6, 191:8, 193:14, 193:17, 203:5, 206:20, 206:25, 207:10, 209:25, 211:3, 227:19, 227:25, 228:16, 230:18, 243:5, 243:11, 244:8, 271:3, 289:16, 318:12, 318:18, 323:8, 323:16, 323:18, 323:23, 324:5, 336:2, 337:5, 337:11, 341:21, 343:7, 343:10, 343:20
**60** [1] - 359:2

**6706** [1] - 187:3
**6:04** [1] - 359:16
**6th** [31] - 202:6, 206:19, 261:9, 262:12, 266:12, 266:14, 267:8, 268:12, 269:5, 269:8, 269:22, 270:3, 270:24, 271:1, 272:11, 289:14, 289:18, 290:16, 290:23, 291:4, 291:7, 292:24, 317:17, 317:18, 319:1, 319:20, 319:21, 338:23, 339:1, 344:23, 344:24

**7**

**7** [27] - 209:12, 209:13, 227:20, 228:16, 237:17, 251:10, 251:11, 259:1, 259:18, 271:25, 272:3, 272:15, 287:25, 288:21, 296:19, 296:20, 305:12, 305:14, 306:23, 306:25, 325:21, 325:22, 327:9, 333:2, 334:18, 334:19, 343:7
**7-A** [13] - 193:2, 193:21, 227:19, 227:20, 305:12, 305:15, 306:23, 307:1, 333:3, 334:19, 334:20, 343:8, 343:25
**7-B** [2] - 227:20, 343:8
**713** [6] - 325:13, 325:14, 325:19, 332:7, 332:9, 332:16
**749** [7] - 214:24, 214:25, 215:7, 217:7, 217:9, 217:12, 352:17
**764** [7] - 296:6, 296:7, 296:14, 304:17, 304:19, 304:22, 352:18
**797** [5] - 304:23, 304:24, 305:6, 306:2, 306:10
**7:30** [1] - 336:18
**7th** [1] - 267:25

**8**

**8** [4] - 193:2, 193:3, 333:2, 335:16

**9**

**9** [5] - 227:20, 289:25, 325:22, 333:2, 336:9
**9/13** [1] - 287:25
**900** [1] - 186:20
**911** [1] - 314:18
**93** [6] - 246:18, 246:19, 246:25, 250:16, 250:18, 352:18
**9:00** [9] - 355:16, 358:10, 358:11, 358:16, 359:7, 359:11, 359:20, 359:22, 364:25

**A**

**a.m** [7] - 355:16, 358:10, 358:11, 359:7, 359:11, 359:20, 359:22
**ABC** [1] - 262:7
**abide** [3] - 344:11, 345:8, 345:10
**ability** [14] - 195:23, 196:23, 224:17, 234:16, 242:12, 259:15, 260:17, 262:20, 294:3, 299:14, 311:25, 334:1, 337:5, 366:7
**able** [5] - 191:12, 198:25, 199:14, 200:1, 220:11, 224:11, 225:14, 225:18, 232:5, 235:18, 235:21, 236:1, 236:11, 244:7, 244:12, 255:7, 262:9, 263:6, 263:11, 269:7, 271:2, 276:25, 282:13, 283:17, 293:6, 301:16, 304:2, 316:5, 316:10, 317:11, 322:15, 326:22, 330:3, 351:24, 357:24
**absolutely** [4] - 220:15, 221:4, 346:19, 352:2
**accept** [1] - 356:22
**accurate** [3] - 257:2, 321:13, 366:4
**acquainted** [1] - 334:5
**acted** [2] - 229:17, 285:4
**action** [1] - 211:4
**Action** [1] - 186:3
**actions** [1] - 350:16
**active** [1] - 193:9
**actively** [1] - 230:6
**actual** [3] - 270:25, 356:2, 356:4
**add** [2] - 195:3, 232:13
**additional** [4] - 237:20, 271:10, 272:15, 312:20
**additionally** [1] - 256:19
**address** [2] - 188:4, 364:23
**addressed** [1] - 327:9
**adequate** [1] - 235:11
**administrations** [1] - 243:14
**administrative** [5] - 282:8, 350:21, 351:12, 351:19, 351:25
**administrator** [1] - 245:4
**advice** [1] - 357:2
**advisor** [3] - 241:6, 264:14, 317:13
**advocate** [2] - 216:16, 216:20
**affect** [9] - 234:16, 259:15, 267:8, 267:10, 268:4, 284:21, 284:23, 294:2, 311:25
**affected** [3] - 268:13, 268:16, 269:21
**affiliated** [6] - 218:6, 238:25, 239:2, 252:6, 260:23, 328:4
**affiliation** [1] - 345:23
**afraid** [1] - 225:7
**afternoon** [80] - 188:15, 189:17, 189:18, 190:18, 190:19, 191:17, 191:18, 192:15, 192:16, 198:10, 200:12, 200:13,

207:24, 213:3, 213:4, 213:15, 213:16, 215:2, 215:3, 216:6, 216:7, 217:16, 223:4, 224:22, 227:11, 235:15, 237:9, 244:3, 244:19, 246:21, 246:22, 249:3, 250:25, 255:17, 255:18, 256:3, 258:18, 262:25, 264:2, 271:16, 271:17, 275:15, 275:16, 276:8, 276:9, 277:18, 277:19, 282:2, 282:3, 282:19, 282:20, 284:11, 287:15, 287:16, 296:9, 296:10, 301:3, 301:4, 303:22, 305:1, 305:2, 306:15, 306:16, 312:12, 317:2, 317:3, 325:16, 329:10, 331:12, 332:20, 337:25, 340:9, 340:10, 341:25, 342:24, 342:25, 347:17, 347:18, 350:6, 350:7
**AFTERNOON** [1] - 186:5
**afterwards** [2] - 267:20, 302:19
**age** [1] - 356:19
**agencies** [1] - 300:22
**agency** [8] - 218:6, 218:19, 238:25, 252:6, 260:23, 300:21, 328:4, 348:11
**ago** [17] - 197:5, 197:25, 198:2, 234:4, 234:7, 259:6, 274:8, 275:7, 287:3, 300:9, 300:11, 302:14, 302:15, 309:25, 310:25, 311:16, 319:25, 330:15, 330:21
**agree** [4] - 246:16, 257:21, 293:2, 331:17
**agreement** [1] - 196:10
**agrees** [3] - 352:19, 353:25, 354:1
**ahead** [1] - 226:20
**Alabama** [1] - 186:24
**alcohol** [1] - 310:23
**alerts** [3] - 324:5, 324:6, 324:8

**algorithm** [1] - 321:2
**aligned** [1] - 270:20
**allegation** [2] - 256:17, 257:3
**allegations** [5] - 251:15, 256:5, 301:7, 315:13, 315:20
**allow** [2] - 255:8, 353:20
**allowed** [1] - 335:5
**almost** [5] - 280:8, 284:16, 318:5, 348:23, 359:3
**alternate** [17] - 242:23, 353:7, 362:10, 362:11, 362:12, 362:18, 362:23, 363:5, 363:13, 363:14, 363:15, 363:16, 363:21, 363:24, 364:5, 364:7
**alternates** [11] - 353:5, 354:9, 363:3, 363:4, 363:20, 363:23, 364:4, 364:5, 364:6, 364:7
**alternating** [1] - 198:7
**AMANDA** [1] - 186:14
**America** [2] - 250:4, 346:3
**AMERICA** [1] - 186:3
**American** [4] - 189:22, 291:9, 293:2, 336:8
**Americans** [1] - 344:10
**amount** [1] - 200:23
**analysis** [1] - 231:6
**answer** [35] - 196:22, 212:12, 215:11, 221:2, 228:4, 230:24, 231:14, 231:19, 233:19, 234:19, 239:1, 240:3, 240:17, 241:11, 248:4, 252:7, 272:14, 278:20, 279:13, 280:18, 281:4, 282:22, 292:7, 294:6, 300:15, 301:24, 322:18, 328:5, 328:23, 334:7, 337:9, 340:18, 343:23, 348:4, 349:7
**answered** [111] - 188:22, 189:2, 190:25, 193:7, 193:21, 194:2,

194:21, 195:25, 196:3, 196:19, 197:13, 197:19, 205:22, 206:5, 206:6, 209:11, 209:15, 210:21, 212:4, 217:24, 218:1, 218:7, 218:9, 218:25, 220:16, 222:8, 227:16, 228:23, 229:21, 230:16, 232:12, 232:18, 234:25, 237:16, 237:23, 238:11, 239:19, 240:22, 241:5, 241:11, 241:15, 241:22, 242:2, 242:14, 243:2, 244:11, 247:3, 247:5, 247:11, 247:23, 251:7, 252:3, 252:24, 253:1, 253:4, 254:11, 255:2, 258:25, 259:2, 259:18, 260:20, 261:17, 271:25, 272:5, 274:3, 278:1, 280:7, 287:22, 288:21, 289:25, 290:13, 292:2, 293:13, 296:17, 296:18, 297:18, 298:19, 298:24, 299:17, 300:12, 300:25, 301:25, 302:7, 305:9, 305:18, 306:22, 307:4, 307:22, 308:21, 309:2, 309:16, 309:20, 310:8, 325:21, 326:5, 327:15, 328:1, 328:18, 334:4, 334:18, 335:19, 340:17, 341:3, 343:6, 343:7, 343:14, 345:12, 347:24, 347:25, 349:3, 349:14

**answering** [3] - 196:22, 222:12, 278:8

**answers** [16] - 192:22, 193:2, 195:4, 215:10, 227:24, 228:22, 237:16, 247:4, 272:2, 296:17, 296:19, 324:20, 327:8, 332:25, 343:25

**anxious** [1] - 285:24

**apart** [2] - 315:22, 316:3

**apartment** [2] -

304:12, 318:7

**apologies** [3] - 269:2, 280:21, 281:3

**apologize** [4] - 226:10, 266:3, 357:24, 359:1

**app** [1] - 320:22

**apparent** [1] - 276:23

**appear** [3] - 224:5, 310:22, 354:5

**appearance** [1] - 333:19

**aPPEARANCES** [1] - 186:13

**appeared** [6] - 191:7, 206:15, 206:22, 212:1, 260:16, 349:15

**appearing** [1] - 354:14

**Apple** [2] - 320:22, 324:7

**apply** [1] - 337:9

**applying** [1] - 243:10

**appreciate** [2] - 228:7, 346:15

**approach** [1] - 197:9

**appropriate** [1] - 344:19

**Appropriations** [3] - 333:22, 338:6, 338:14

**aquatics** [1] - 208:10

**architect** [1] - 304:7

**architecture** [1] - 304:8

**archive** [1] - 335:24

**archivist** [1] - 244:23

**area** [3] - 247:16, 288:14, 288:19

**argue** [1] - 332:10

**argument** [1] - 296:3

**arguments** [4] - 220:12, 335:5, 338:16, 338:17

**arrangements** [2] - 282:13, 282:16

**array** [1] - 313:19

**arrested** [1] - 197:2

**arrive** [1] - 355:17

**arrived** [2] - 259:20, 260:12

**art** [10] - 249:21, 249:22, 250:1, 250:2, 250:4, 263:16, 263:20, 263:21, 263:23, 276:14

**article** [2] - 210:15, 210:18

**articles** [7] - 193:6, 199:18, 210:10, 253:13, 335:21,

337:12, 341:11

**articulate** [1] - 337:21

**artists** [1] - 250:2

**ascertain** [1] - 198:20

**aside** [23] - 200:1, 204:25, 205:3, 224:11, 227:24, 228:9, 230:20, 232:5, 240:19, 241:1, 243:6, 244:12, 263:6, 267:17, 269:7, 276:25, 280:11, 292:4, 292:11, 309:11, 330:4, 337:16, 351:24

**assaulting** [1] - 344:18

**assessing** [1] - 243:10

**assigned** [1] - 314:4

**assistant** [2] - 276:2, 282:6

**assists** [1] - 233:23

**associate** [1] - 218:16

**associated** [7] - 231:16, 245:17, 269:18, 308:24, 309:18, 326:2, 333:5

**association** [1] - 334:6

**assume** [1] - 226:20

**assuming** [2] - 357:14, 360:7

**Atlantic** [1] - 229:13

**attack** [2] - 202:17, 344:24

**attacked** [3] - 311:17, 313:5, 314:17

**attention** [5] - 201:1, 207:9, 294:17, 349:12, 355:24

**attorney** [8] - 196:12, 247:16, 249:15, 299:1, 299:7, 299:8, 299:13, 348:5

**Attorney** [3] - 348:15, 348:22, 350:14

**ATTORNEY'S** [1] - 186:15

**Attorney's** [2] - 249:18, 330:18

**attorneys** [1] - 225:8

**audience** [3] - 202:20, 230:4, 236:2

**aunt** [2] - 234:6, 309:21, 309:25

**available** [4] - 271:10, 310:13, 338:18, 363:19

**Avenue** [2] - 187:3, 366:14

**avoid** [4] - 230:12, 327:22, 327:24, 357:4

**aware** [12] - 251:14, 253:10, 256:4, 289:7, 289:17, 289:18, 289:23, 326:21, 329:18, 329:25, 334:19, 334:20

**awareness** [1] - 270:16

**awful** [1] - 346:4

## B

**baby** [1] - 246:2

**background** [4] - 264:19, 304:1, 329:19, 346:20

**bad** [3] - 291:8, 293:3, 294:8

**Baltimore** [1] - 186:21

**Bannon** [50] - 189:3, 195:13, 203:8, 203:16, 204:8, 211:16, 211:22, 219:19, 223:13, 229:17, 231:11, 231:15, 231:23, 240:15, 241:6, 254:4, 256:5, 256:14, 256:17, 256:25, 260:8, 262:15, 264:13, 264:20, 265:1, 270:5, 270:16, 273:7, 289:3, 289:13, 291:2, 291:20, 292:24, 298:13, 305:24, 308:23, 317:12, 320:10, 331:15, 334:7, 334:12, 335:22, 335:23, 336:4, 336:6, 337:11, 339:4, 344:25, 345:15, 363:18

**BANNON** [1] - 186:6

**Bannon's** [7] - 204:14, 214:5, 264:6, 273:9, 317:6, 345:22, 346:25

**barber** [3] - 288:10, 289:2, 294:24

**barbershop** [1] - 290:5

**barred** [1] - 196:6

**base** [1] - 277:1

**based** [32] - 193:24, 194:5, 198:13, 198:15, 199:17, 202:7, 205:1, 207:17, 212:17, 223:25, 224:9, 224:13, 225:24, 228:2, 240:24, 264:25, 279:9, 280:13, 292:14, 293:7, 304:3, 305:20, 309:6, 309:13, 329:14, 329:15, 329:17, 329:20, 331:7, 335:10, 349:17, 357:7

**basic** [1] - 205:2

**basics** [2] - 253:14, 349:6

**basis** [1] - 205:5, 205:6, 324:16

**battle** [1] - 204:19

**BBC** [2] - 219:11, 219:12

**bearing** [1] - 270:17

**become** [4] - 255:6, 325:6, 334:20, 363:20

**becoming** [1] - 363:13

**BEFORE** [1] - 186:10

**began** [1] - 359:8

**begin** [2] - 354:12, 360:1

**beginning** [4] - 238:20, 256:16, 264:7, 272:9

**begins** [1] - 200:2

**behalf** [1] - 216:20

**behave** [1] - 355:25

**behind** [1] - 354:17

**belief** [1] - 286:20

**beliefs** [10] - 205:25, 212:6, 231:15, 231:10, 294:1, 308:23, 326:1, 345:14

**believes** [1] - 323:11

**beneficiary** [1] - 216:16

**best** [13] - 203:1, 222:18, 228:8, 229:8, 231:20, 231:22, 232:19, 236:14, 256:13, 285:8, 313:25, 327:25, 366:7

**between** [4] - 249:14, 289:5, 322:1, 356:6

**beyond** [6] - 201:22,

202:15, 229:19, 257:8, 281:19, 319:10
**bias** [2] - 286:22, 287:8
**biased** [1] - 254:9
**big** [3] - 231:3, 314:16, 336:8
**bike** [3] - 197:24, 329:2, 330:11
**bikes** [1] - 197:20
**birthday** [1] - 312:21
**bit** [13] - 213:20, 230:5, 231:7, 232:2, 241:23, 260:16, 272:11, 286:21, 324:20, 325:10, 344:5, 345:17, 358:23
**blank** [1] - 322:13
**blocking** [1] - 363:12
**blocks** [2] - 268:2, 268:3
**blog** [2] - 193:6, 356:12
**blog-posting** [1] - 356:12
**blogging** [1] - 356:21
**boss** [1] - 225:9
**boss's** [1] - 288:11
**bottom** [8] - 307:14, 308:19, 321:13, 321:22, 322:8, 322:16, 323:12, 323:23
**bound** [1] - 344:10
**box** [5] - 314:8, 316:16, 316:20, 316:22, 361:25
**Boys** [1] - 291:23
**branch** [5] - 218:7, 239:1, 252:6, 260:24, 328:4
**Breitbart** [1] - 203:18
**brethren** [1] - 343:21
**brief** [3] - 258:1, 264:8, 268:24
**briefing** [1] - 264:9
**briefly** [3] - 221:6, 233:18, 303:2
**bring** [18] - 190:14, 192:11, 214:24, 227:7, 237:6, 250:21, 257:20, 258:15, 271:13, 304:23, 306:10, 306:12, 325:3, 327:4, 340:6, 350:15, 354:13, 360:1
**broadcasting** [3] - 200:16, 201:6, 202:21
**broadly** [1] - 329:1
**broken** [3] - 329:2,

330:11, 330:16
**brother** [1] - 340:24
**brought** [1] - 219:21
**brutally** [1] - 345:18
**Building** [2] - 267:16, 267:22
**building** [2] - 274:8, 311:17
**buildings** [1] - 304:12
**bunch** [4] - 250:1, 250:2, 250:4, 321:8
**burden** [6] - 198:24, 199:1, 204:24, 204:25, 235:25, 301:13
**burdened** [1] - 287:7
**business** [3] - 276:12, 350:24, 351:1
**businesses** [1] - 350:15
**button** [2] - 254:20, 310:16
**BY** [1] - 187:1

**C**

**cable** [1] - 273:2
**candor** [1] - 346:15
**cannot** [2] - 315:2, 320:6
**capacity** [3] - 338:7, 340:23, 345:9
**Capitol** [22] - 201:23, 243:4, 243:18, 243:21, 261:8, 266:20, 267:3, 267:16, 267:18, 267:22, 269:24, 280:10, 290:15, 290:22, 291:5, 320:3, 337:4, 337:10, 338:23, 344:14, 344:16
**capture** [1] - 269:23
**capturing** [1] - 321:14
**car** [4] - 303:7, 329:1, 330:11, 330:16
**card** [4] - 188:21, 190:25, 209:10, 215:10
**care** [2] - 281:5, 281:9
**career** [1] - 276:12
**CARL** [1] - 186:10
**case** [214] - 189:3, 189:11, 191:4, 191:11, 193:14,

193:16, 193:23, 193:24, 194:13, 194:14, 194:19, 197:10, 198:12, 198:14, 198:24, 200:5, 201:17, 202:12, 205:2, 205:10, 206:4, 206:15, 206:16, 206:21, 207:18, 209:14, 209:23, 210:13, 212:17, 213:11, 214:10, 215:16, 215:25, 218:22, 219:23, 220:7, 220:9, 220:19, 222:24, 223:8, 223:12, 223:14, 223:23, 224:1, 224:9, 224:13, 226:25, 228:1, 228:16, 228:19, 228:21, 228:22, 228:25, 229:10, 229:14, 229:16, 229:24, 230:10, 230:18, 230:21, 231:21, 232:12, 234:17, 236:11, 236:13, 238:12, 238:13, 238:20, 238:21, 239:14, 239:23, 240:21, 241:3, 243:7, 243:9, 243:23, 244:6, 248:17, 248:23, 251:12, 251:13, 251:22, 254:9, 257:7, 257:8, 259:16, 259:20, 259:21, 260:6, 260:13, 261:11, 261:13, 261:16, 262:18, 263:3, 269:4, 272:4, 273:14, 274:9, 274:10, 274:20, 274:23, 274:24, 275:1, 275:2, 275:5, 276:24, 279:5, 279:9, 279:14, 279:25, 280:13, 281:7, 282:25, 283:7, 283:8, 288:23, 288:24, 289:12, 289:15, 289:16, 290:10, 292:6, 292:14, 293:7, 294:18, 296:21, 296:23, 297:3, 297:16, 300:18, 301:14, 302:23, 304:1, 304:3, 305:15, 305:16, 305:22,

307:1, 307:6, 308:13, 308:15, 309:8, 309:13, 312:1, 314:9, 314:22, 314:25, 315:6, 316:3, 316:5, 320:12, 321:16, 321:24, 322:7, 322:8, 323:9, 323:13, 324:25, 326:7, 326:9, 326:11, 326:15, 327:4, 327:5, 327:10, 327:13, 327:23, 329:6, 329:13, 334:1, 334:2, 334:15, 334:19, 334:21, 334:23, 334:24, 335:1, 335:3, 335:7, 335:10, 335:14, 336:12, 337:12, 338:16, 341:5, 341:15, 343:12, 343:13, 344:1, 344:23, 345:16, 346:7, 346:25, 349:15, 351:22, 352:1, 355:24, 356:3, 356:4, 356:7, 356:11, 356:12, 356:20, 357:2, 357:5, 357:7, 357:16, 357:20, 358:5
**cases** [3] - 300:5, 310:1, 350:24
**Casey** [1] - 349:10
**catch** [4] - 243:3, 266:1, 280:8, 338:2
**catch-all** [2] - 243:3, 280:8
**catching** [1] - 238:9
**caught** [2] - 302:20, 303:7
**causes** [1] - 222:23
**cautious** [2] - 218:10, 325:1
**CBS** [1] - 273:2
**Center** [1] - 189:22
**center** [1] - 191:22
**certain** [6] - 214:4, 225:1, 310:13, 316:10, 345:22, 345:23
**certainly** [4] - 272:22, 277:4, 331:17, 349:24
**CERTIFICATE** [1] - 366:1
**certify** [1] - 366:4
**cetera** [3] - 253:8, 290:2, 348:3
**chairs** [1] - 359:13
**chance** [4] - 294:12,

295:10, 346:17, 358:12
**change** [5] - 199:21, 199:22, 199:25, 204:16, 204:18
**Channel** [4] - 297:12, 297:14, 301:6, 303:25
**characterization** [2] - 227:1, 324:4
**characterizing** [1] - 226:25
**charge** [3] - 243:24, 244:7, 244:13
**charged** [3] - 198:19, 220:14, 310:10
**charges** [11] - 197:3, 228:17, 284:25, 307:15, 307:19, 310:24, 312:17, 313:13, 315:9, 320:3, 343:11
**check** [1] - 223:6
**checked** [2] - 314:8, 316:15
**child** [1] - 247:19
**children** [1] - 213:22
**Christmas** [1] - 311:16
**circles** [1] - 265:4
**circumstances** [4] - 222:17, 299:21, 337:15, 361:15
**city** [7] - 213:22, 243:17, 266:23, 267:14, 294:23, 303:17, 330:12
**City** [1] - 274:23
**civil** [8] - 221:5, 221:6, 221:21, 232:23, 252:17, 274:4, 299:4, 348:18
**claims** [1] - 251:18
**clear** [7] - 204:12, 227:6, 274:22, 326:17, 326:20, 329:13, 358:15
**clearcut** [1] - 226:22
**clearly** [1] - 212:17
**client** [1] - 288:10
**clients** [1] - 289:5
**clips** [2] - 240:7, 240:11
**close** [39] - 196:2, 197:14, 218:5, 221:1, 223:18, 233:5, 235:1, 238:24, 241:25, 247:9, 248:3, 252:4, 258:2, 260:21, 267:16, 267:22, 267:24, 269:24,

279:16, 290:15, 298:20, 299:1, 299:9, 300:14, 300:19, 302:5, 310:9, 311:11, 318:4, 324:19, 324:23, 327:18, 328:2, 328:21, 337:1, 337:3, 338:23, 340:22, 348:2

**closed** [2] - 219:15, 223:16

**closely** [6] - 318:19, 318:21, 326:7, 327:24, 345:19, 345:20

**CNN** [1] - 256:10

**co** [2] - 235:25, 236:6

**co-workers** [2] - 235:25, 236:6

**Coke** [1] - 276:20

**collect** [1] - 250:1

**college** [6] - 234:3, 234:11, 235:5, 276:14, 310:21, 312:14

**COLUMBIA** [2] - 186:1, 186:15

**Columbia** [5] - 187:2, 216:17, 343:18, 344:20, 366:13

**comfortable** [4] - 196:25, 242:18, 278:8, 302:7

**coming** [4] - 256:23, 276:24, 289:3, 336:18

**comment** [1] - 203:11

**commentary** [6] - 200:14, 201:6, 204:6, 229:23, 290:2, 307:7

**commented** [4] - 193:19, 199:3, 199:9, 200:18

**comments** [5] - 199:5, 204:7, 204:12, 236:3

**commercial** [1] - 304:11

**commercials** [2] - 276:15, 276:18

**Commission** [1] - 191:8

**commissioner's** [1] - 252:19

**commissions** [1] - 272:11

**commitment** [1] - 231:4

**committed** [1] -

220:13

**Committee** [90] - 189:7, 193:5, 194:8, 194:25, 195:7, 195:21, 201:13, 205:24, 205:25, 207:10, 207:11, 207:15, 210:22, 210:23, 210:25, 211:3, 212:5, 212:6, 212:18, 214:1, 214:3, 215:22, 219:4, 219:5, 219:6, 219:24, 229:16, 230:23, 231:7, 239:20, 239:21, 239:25, 240:19, 240:25, 253:5, 253:7, 253:11, 261:18, 261:20, 261:24, 262:3, 262:14, 270:23, 272:17, 272:20, 273:25, 291:12, 297:19, 297:21, 297:24, 298:4, 298:16, 307:23, 307:24, 308:5, 308:17, 316:4, 318:13, 318:18, 319:1, 319:9, 319:11, 320:14, 320:20, 321:4, 321:10, 321:12, 321:22, 322:7, 322:14, 323:11, 323:19, 323:22, 323:23, 324:15, 333:12, 333:23, 335:18, 335:25, 338:7, 338:8, 338:9, 338:14, 341:20, 345:13, 349:18, 364:15

**committee** [14] - 193:14, 193:17, 203:5, 207:10, 210:1, 230:18, 260:9, 270:6, 291:21, 307:20, 319:20, 319:21, 328:8, 341:21

**Committee's** [11] - 193:5, 254:8, 297:20, 298:11, 298:12, 308:1, 315:25, 322:4, 324:25, 327:3, 335:18

**committees** [1] - 245:11

**communicate** [2] - 216:22, 216:24

**communication** [1] - 356:13

**communications** [3] - 338:7, 338:13, 356:19

**companies** [1] - 216:23

**company** [5] - 218:12, 264:16, 300:21, 328:17, 350:22

**compared** [1] - 323:21

**compass** [1] - 343:23

**compel** [2] - 350:22, 351:20

**compensation** [1] - 349:1

**competitive** [1] - 335:8

**complaints** [1] - 348:11

**complete** [2] - 355:10, 366:6

**completely** [2] - 200:2, 317:12

**compliance** [3] - 321:17, 321:24, 323:13

**complied** [3] - 229:5, 322:4, 322:10

**comply** [5] - 220:8, 257:1, 326:16, 326:19, 327:25

**complying** [1] - 229:2

**computers** [1] - 356:20

**concept** [2] - 225:2, 225:13

**concern** [5] - 197:8, 207:19, 246:3, 273:22, 287:8

**concerned** [17] - 195:22, 196:16, 210:17, 248:13, 251:25, 262:20, 282:12, 286:4, 286:13, 286:21, 299:14, 309:7, 309:9, 309:10, 311:3, 333:25, 337:5

**concerns** [1] - 224:16

**conclude** [6] - 191:12, 218:21, 279:4, 297:15, 298:17, 324:21

**concluded** [2] - 356:14, 365:12

**conclusions** [4] -

205:10, 260:11, 273:15, 335:10

**condition** [2] - 242:16, 254:13

**conducting** [2] - 212:15, 316:4

**confers** [3] - 250:12, 295:21, 358:14

**confident** [1] - 315:20

**confirm** [1] - 191:3, 248:22, 352:14

**confronted** [1] - 363:1

**Congress** [13] - 206:1, 212:7, 225:15, 243:24, 265:7, 268:16, 270:1, 270:11, 270:23, 289:4, 297:9, 333:6, 334:17

**congressional** [10] - 245:7, 245:11, 260:9, 270:6, 307:20, 322:20, 345:8, 345:9, 345:10, 351:19

**congressmen** [1] - 328:10

**congresswoman** [1] - 266:20

**connected** [1] - 293:12

**connection** [5] - 229:18, 231:9, 254:1, 273:5, 334:6

**connects** [1] - 317:17

**consecutively** [1] - 353:10

**consequences** [2] - 224:6, 344:13

**conserve** [1] - 246:1

**consider** [10] - 225:18, 226:1, 263:13, 326:22, 327:1, 327:18, 337:20, 352:1, 352:25, 357:22

**consideration** [1] - 329:15

**considered** [3] - 225:3, 269:19, 300:22

**considering** [1] - 331:2

**consistently** [1] - 327:20

**conspiracy** [1] - 202:4

**constantly** [3] - 290:5, 294:25, 317:10

**constituted** [1] - 360:17

**constitutes** [1] - 366:4

**Constitution** [2] - 187:3, 366:14

**constitutional** [3] - 221:8, 221:20, 222:2

**consumer** [2] - 348:15, 350:23

**consumption** [2] - 193:4, 335:17

**contact** [1] - 334:7

**contains** [1] - 215:10

**contemporary** [2] - 263:22, 263:23

**contempt** [13] - 220:7, 223:24, 225:2, 225:10, 225:15, 225:24, 226:2, 243:24, 244:7, 244:13, 289:4, 297:9

**contempt-of-Congress** [1] - 243:24

**continue** [4] - 230:2, 280:25, 307:21, 308:19

**continued** [3] - 312:19, 327:21, 354:5

**continues** [2] - 284:21, 284:22

**contract** [1] - 196:9

**contractor** [4] - 239:6, 239:7, 243:13, 244:21

**contractors** [1] - 295:8

**control** [1] - 236:3

**controlled** [1] - 197:3

**conversation** [4] - 286:5, 286:16, 310:12, 346:24

**conversations** [3] - 266:18, 288:11, 289:10

**coordinator** [1] - 221:7

**cops** [1] - 294:7

**Corcoran** [35] - 190:2, 192:1, 200:11, 208:13, 213:14, 217:3, 224:21, 226:21, 227:2, 233:15, 236:19, 244:18, 250:7, 256:1, 264:1, 270:12, 271:11, 276:7, 278:19, 282:18, 285:16, 286:8, 287:1,

295:16, 303:21,
316:25, 331:11,
339:19, 342:10,
350:5, 352:21,
353:17, 360:10,
361:3, 363:17
   CORCORAN [173] -
186:18, 188:8, 190:3,
190:12, 192:2, 192:9,
200:12, 200:14,
200:22, 201:5,
201:11, 201:20,
201:25, 202:7,
202:15, 202:20,
203:1, 203:7, 203:15,
203:21, 204:4,
208:14, 208:21,
213:15, 213:17,
213:20, 213:24,
214:9, 214:14,
214:22, 217:4,
217:11, 224:22,
224:24, 225:14,
225:18, 225:23,
226:6, 226:18,
236:20, 237:2,
244:19, 244:24,
245:2, 245:6, 245:10,
245:14, 245:21,
246:4, 246:6, 246:14,
250:8, 250:20, 256:2,
256:13, 256:23,
257:6, 257:10,
257:17, 257:25,
258:13, 264:2, 264:4,
264:11, 264:18,
264:23, 264:25,
265:5, 265:9, 265:12,
265:14, 265:16,
265:19, 265:22,
265:24, 266:4, 266:8,
266:12, 266:15,
266:17, 266:24,
267:6, 267:10,
267:21, 267:24,
268:2, 268:4, 268:9,
268:11, 268:15,
268:18, 268:21,
269:16, 276:8,
276:10, 276:17,
276:22, 277:5,
277:13, 282:19,
282:21, 283:2, 283:4,
283:10, 283:12,
286:9, 286:25, 287:2,
295:17, 296:3,
303:22, 303:24,
304:6, 304:10,
304:13, 304:21,
306:4, 306:7, 317:1,
317:4, 317:11,

317:16, 317:23,
318:4, 318:11,
318:17, 318:25,
319:10, 319:15,
319:19, 320:8,
320:18, 321:1,
321:11, 321:16,
321:21, 322:6,
322:12, 322:18,
322:23, 322:25,
323:6, 331:12,
331:14, 331:19,
332:10, 339:20,
340:2, 342:11,
342:19, 346:14,
346:17, 346:21,
347:1, 347:10, 350:6,
350:8, 350:11,
350:17, 351:4,
352:10, 352:22,
353:18, 353:22,
360:12, 360:24,
361:4, 361:10,
361:20, 362:23,
363:6, 363:8, 365:7
   corner [2] - 288:9,
288:19
   corporate [1] -
247:13
   corporations [1] -
276:21
   Corps [1] - 189:22
   correct [50] - 188:19,
188:23, 188:24,
190:22, 190:25,
192:19, 205:20,
209:8, 212:3, 215:7,
215:11, 217:21,
218:2, 237:13,
242:25, 246:25,
247:6, 247:7, 248:24,
248:25, 251:4, 251:5,
258:22, 271:22,
271:23, 277:23,
294:14, 296:14,
299:11, 305:6, 305:7,
306:19, 325:19,
325:20, 325:23,
332:22, 332:23,
340:14, 340:20,
343:3, 343:4, 347:21,
349:15, 349:16,
352:20, 360:24,
363:6, 363:7, 363:8
   correctional [1] -
279:20
   correctly [3] - 189:2,
265:10, 364:1
   correlation [1] -
345:3

   corrupt [1] - 223:20
   Counsel [1] - 348:8
   counsel [11] - 188:4,
189:1, 192:24,
203:23, 237:19,
252:18, 258:10,
325:3, 333:1, 355:17,
365:6
   count [1] - 352:12
   counting [1] - 353:1
   counts [1] - 289:4
   couple [9] - 253:13,
293:10, 302:13,
315:1, 317:5, 328:13,
333:14, 334:11
   course [5] - 250:6,
271:21, 288:19,
353:6, 358:21
   court [27] - 197:18,
220:8, 224:1, 224:5,
225:7, 228:3, 234:22,
248:10, 255:14,
256:23, 259:8, 264:5,
276:24, 278:8, 280:4,
280:14, 285:14,
288:6, 289:3, 292:15,
300:1, 300:2, 310:23,
311:8, 313:2, 315:22,
351:20
   COURT [625] - 186:1,
188:3, 188:7, 188:9,
188:15, 188:17,
188:21, 188:25,
189:5, 189:10,
189:15, 190:2, 190:5,
190:10, 190:13,
190:17, 190:20,
190:24, 191:2, 191:6,
191:10, 191:15,
192:1, 192:3, 192:7,
192:10, 192:14,
192:17, 192:21,
193:1, 193:13,
193:18, 193:21,
194:2, 194:6, 194:10,
194:14, 194:16,
194:21, 195:3,
195:11, 195:17,
195:20, 195:25,
196:8, 196:11,
196:14, 196:19,
197:5, 197:7, 197:12,
197:17, 197:22,
198:3, 198:5, 198:9,
200:11, 203:23,
204:3, 204:20, 205:7,
205:17, 205:22,
206:11, 206:14,
206:18, 206:21,
206:24, 207:3, 207:9,

207:14, 207:17,
207:22, 208:13,
208:15, 208:19,
208:22, 209:1, 209:3,
209:6, 209:10,
209:19, 209:22,
210:4, 210:9, 210:12,
210:15, 210:17,
210:21, 211:9,
211:13, 211:15,
212:2, 212:4, 212:11,
212:16, 212:22,
213:1, 213:14,
214:15, 214:20,
214:23, 215:2, 215:4,
215:7, 215:9, 215:13,
215:18, 215:21,
215:24, 216:4, 217:3,
217:5, 217:9, 217:12,
217:16, 217:18,
217:21, 217:23,
218:4, 218:14,
218:17, 218:20,
218:25, 219:4,
219:17, 219:22,
220:4, 220:10,
220:16, 220:25,
221:9, 221:12,
221:15, 221:17,
221:23, 221:25,
222:8, 222:11,
222:17, 222:20,
222:22, 223:1, 223:3,
224:21, 226:7,
226:11, 226:14,
226:17, 226:19,
227:2, 227:11,
227:15, 227:19,
228:7, 228:15, 229:9,
229:15, 229:20,
230:8, 230:15,
230:20, 231:9,
231:14, 232:4, 232:8,
232:10, 232:16,
232:21, 232:24,
233:1, 233:3, 233:8,
233:10, 233:14,
233:18, 233:21,
234:1, 234:13,
234:20, 234:23,
235:4, 235:6, 235:8,
235:11, 235:14,
236:19, 236:21,
237:1, 237:4, 237:9,
237:11, 237:15,
238:2, 238:5, 238:8,
238:11, 238:19,
238:23, 239:4, 239:7,
239:10, 239:12,
239:18, 240:5, 240:9,
240:13, 240:17,

240:24, 241:5,
241:16, 241:20,
241:22, 242:4,
242:10, 242:14,
242:21, 243:2,
243:20, 244:1,
244:18, 246:7,
246:11, 246:16,
246:21, 246:23,
247:2, 247:8, 247:15,
247:18, 247:23,
248:2, 248:8, 248:11,
248:16, 248:22,
249:1, 249:13, 250:7,
250:10, 250:14,
250:18, 250:21,
250:25, 251:2, 251:6,
251:9, 251:17,
251:21, 251:24,
252:3, 252:10,
252:13, 252:15,
252:17, 252:20,
252:22, 252:24,
253:4, 253:16,
253:19, 254:1, 254:6,
254:11, 254:18,
254:24, 255:1, 255:7,
255:11, 255:15,
256:1, 257:11,
257:15, 257:18,
258:1, 258:9, 258:14,
258:18, 258:20,
258:24, 259:7,
259:11, 259:14,
259:18, 260:1, 260:4,
260:11, 260:15,
260:20, 261:3, 261:5,
261:8, 261:11,
261:14, 261:17,
262:5, 262:8, 262:13,
262:17, 262:23,
263:25, 268:22,
269:1, 269:12,
269:15, 270:12,
271:8, 271:16,
271:18, 271:21,
271:24, 272:13,
273:4, 273:13,
273:22, 274:3,
274:14, 274:18,
274:21, 275:1, 275:4,
275:8, 275:13, 276:7,
277:7, 277:11,
277:14, 277:18,
277:20, 277:25,
278:12, 278:16,
278:18, 278:23,
279:3, 279:8, 279:12,
279:19, 279:21,
279:23, 280:2, 280:5,
280:20, 280:23,

281:9, 281:12, 281:15, 281:17, 281:19, 281:25, 282:3, 282:18, 283:13, 283:17, 283:21, 283:23, 284:1, 284:5, 284:8, 284:10, 285:12, 285:15, 285:21, 286:7, 286:13, 286:24, 287:1, 287:4, 287:15, 287:17, 287:21, 287:25, 288:5, 288:12, 288:14, 288:17, 289:10, 289:15, 289:20, 289:25, 290:9, 290:13, 290:18, 290:25, 291:6, 291:10, 291:15, 291:19, 292:2, 292:9, 292:18, 292:21, 292:25, 293:5, 293:10, 293:16, 293:20, 293:24, 294:11, 294:15, 295:1, 295:3, 295:12, 295:16, 295:18, 295:23, 296:2, 296:5, 296:9, 296:11, 296:14, 296:16, 297:2, 297:6, 297:10, 297:13, 297:18, 298:6, 298:10, 298:15, 298:19, 298:23, 299:2, 299:4, 299:8, 299:12, 299:17, 299:20, 300:1, 300:8, 300:12, 300:18, 301:1, 302:4, 302:10, 302:14, 302:16, 302:21, 302:25, 303:21, 304:15, 304:19, 304:22, 305:1, 305:3, 305:6, 305:8, 305:23, 306:1, 306:6, 306:8, 306:15, 306:17, 306:21, 307:8, 307:12, 307:17, 307:22, 308:8, 308:12, 308:16, 308:21, 309:6, 309:10, 309:16, 309:23, 310:1, 310:5, 310:8, 310:15, 310:20, 310:25, 311:2, 311:6, 311:9, 311:19, 311:22, 312:3, 312:6, 312:10, 313:3,

316:25, 321:19, 323:1, 323:5, 324:1, 324:18, 325:16, 325:21, 325:24, 326:10, 326:13, 326:22, 327:2, 327:8, 328:1, 328:8, 328:15, 328:18, 329:4, 329:8, 330:14, 330:17, 331:11, 331:22, 332:4, 332:6, 332:9, 332:12, 332:16, 332:20, 332:22, 332:24, 333:8, 333:10, 333:13, 333:16, 333:18, 333:24, 334:4, 334:12, 334:14, 334:18, 335:9, 335:16, 335:21, 336:3, 336:9, 336:15, 336:22, 337:3, 337:9, 337:16, 337:19, 337:23, 339:19, 339:22, 340:1, 340:4, 340:9, 340:11, 340:16, 340:21, 341:1, 341:3, 341:9, 341:13, 341:17, 341:19, 341:23, 342:10, 342:13, 342:17, 342:20, 342:24, 343:1, 343:5, 343:10, 343:24, 344:5, 344:22, 345:12, 346:5, 346:9, 346:13, 347:3, 347:5, 347:9, 347:12, 347:17, 347:19, 347:23, 348:6, 348:9, 348:13, 348:17, 348:19, 348:24, 349:3, 349:14, 349:17, 349:22, 350:2, 350:5, 351:5, 351:9, 351:11, 352:4, 352:8, 352:11, 352:21, 352:23, 353:20, 353:23, 354:1, 354:21, 355:1, 358:10, 358:20, 359:14, 359:18, 360:6, 360:10, 360:20, 360:25, 361:3, 361:5, 361:12, 361:21, 361:23, 362:1, 362:17, 362:21, 362:25, 363:7, 363:11, 363:25, 364:9, 364:12, 364:19,

364:22, 364:25, 365:2, 365:6, 365:9
  **Court** [18] - 187:1, 187:2, 205:2, 223:11, 223:12, 225:16, 250:12, 259:8, 276:23, 295:21, 297:9, 302:2, 315:16, 330:2, 364:13, 364:17, 366:12, 366:13
  **Court's** [2] - 244:5, 263:12
  **COURTROOM** [9] - 188:1, 188:12, 233:23, 250:12, 258:7, 295:21, 354:19, 354:22, 359:10
  **courtroom** [69] - 188:14, 190:9, 190:16, 192:6, 192:13, 204:2, 205:16, 208:18, 208:25, 214:19, 215:1, 217:8, 217:15, 226:13, 227:10, 236:13, 236:25, 237:8, 237:23, 242:23, 246:10, 246:20, 250:17, 250:24, 257:14, 258:17, 263:8, 263:9, 269:14, 271:15, 273:24, 277:1, 277:2, 277:10, 277:17, 285:20, 287:14, 288:6, 293:8, 296:1, 296:8, 304:18, 304:25, 306:3, 306:14, 310:13, 323:4, 324:10, 325:15, 326:23, 332:8, 332:19, 337:20, 339:25, 340:8, 342:16, 342:23, 347:8, 347:16, 352:7, 354:6, 354:15, 354:17, 354:24, 355:22, 358:14, 359:16, 359:19, 359:22
  **cousin** [5] - 278:22, 298:25, 299:9, 301:19, 311:15
  **cover** [1] - 339:10
  **coverage** [14] - 195:1, 195:9, 228:11, 240:18, 261:22, 272:18, 292:3,

292:10, 317:20, 319:12, 319:13, 319:21, 320:5, 349:4
  **covered** [1] - 327:24
  **covering** [1] - 335:1
  **COVID** [1] - 294:17
  **credibility** [1] - 294:4
  **crew** [2] - 189:21, 289:8
  **crime** [17] - 196:21, 197:15, 220:14, 222:12, 233:6, 242:1, 248:4, 249:5, 278:6, 302:1, 302:6, 310:10, 311:12, 328:22, 329:1, 331:2
  **crimes** [1] - 242:3
  **Criminal** [1] - 186:3
  **criminal** [22] - 196:11, 196:21, 201:18, 204:10, 221:5, 221:21, 245:24, 247:16, 252:17, 274:5, 275:1, 284:25, 299:4, 299:5, 307:6, 310:5, 310:10, 321:24, 323:9, 341:1, 346:23, 348:17
  **cross** [1] - 340:4
  **cross-motions** [1] - 340:4
  **CRR** [3] - 187:1, 366:3, 366:12
  **current** [2] - 276:10, 318:22
  **cursory** [1] - 231:7

**D**

  **D.C** [20] - 186:6, 186:17, 187:4, 208:7, 213:22, 216:10, 216:11, 216:14, 216:18, 223:12, 259:5, 259:8, 266:22, 267:4, 267:7, 279:22, 300:2, 331:2, 342:7, 366:14
  **dad** [1] - 196:7
  **daily** [1] - 290:8
  **damning** [4] - 201:10, 201:12, 201:13, 201:14
  **dark** [1] - 293:2
  **dash** [1] - 288:2
  **date** [2] - 242:25, 249:18
  **Dated** [1] - 366:10
  **dates** [1] - 315:9

  **daughter** [1] - 357:13
  **DAVID** [2] - 186:22, 186:22
  **days** [2] - 231:5, 319:17
  **deal** [5] - 216:18, 249:22, 286:10, 350:8, 350:11
  **dealt** [2] - 224:4, 294:7
  **death** [1] - 248:7
  **decide** [7] - 228:21, 230:21, 293:7, 304:3, 309:13, 357:2, 357:7
  **decided** [2] - 257:1, 323:15
  **deciding** [10] - 194:18, 228:1, 228:18, 240:20, 241:2, 243:7, 280:12, 292:6, 292:14, 343:13
  **decision** [6] - 231:21, 274:25, 277:1, 286:2, 315:21, 356:5
  **decisions** [2] - 203:19, 356:9
  **decline** [1] - 316:21
  **declined** [1] - 314:7
  **deep** [1] - 341:8
  **deeply** [1] - 286:20
  **Defendant** [36] - 186:7, 193:5, 194:9, 195:13, 199:7, 199:9, 204:11, 206:3, 208:2, 211:16, 212:9, 213:10, 215:19, 219:19, 220:13, 226:24, 231:18, 236:8, 251:15, 263:2, 264:12, 269:18, 275:5, 308:23, 309:1, 316:12, 326:2, 326:4, 326:7, 326:12, 331:24, 335:17, 345:5, 345:14, 349:24, 364:15
  **defendant** [1] - 310:22
  **DEFENDANT** [1] - 186:18
  **Defendant's** [5] - 198:14, 213:6, 220:18, 232:11, 315:10
  **defense** [7] - 196:12, 247:16, 299:1, 299:4, 299:6, 299:8, 310:6
  **definitely** [3] -

225:22, 326:8, 355:11
**definitively** [1] -
344:4
**deliberating** [2] -
274:15, 274:18
**deliberations** [2] -
285:24, 327:5
**deliver** [1] - 209:21
**Democrat** [1] -
241:20
**Democratic** [4] -
245:17, 265:6, 270:1,
270:10
**Democrats** [4] -
241:14, 245:15,
338:8, 338:14
**Department** [7] -
218:12, 282:6, 303:4,
313:21, 333:22,
338:6, 338:10
**department** [1] -
235:23
**departments** [1] -
348:12
**depth** [2] - 219:10,
231:8
**deputy** [1] - 358:14
**DEPUTY** [9] - 188:1,
188:12, 233:23,
250:12, 258:7,
295:21, 354:19,
354:22, 359:10
**derogatory** [1] -
270:18
**describe** [45] - 193:7,
196:3, 197:19, 206:6,
209:15, 218:7, 219:5,
221:2, 233:18,
238:12, 241:3,
247:10, 248:4,
251:12, 252:7, 253:6,
259:3, 259:21, 260:4,
261:23, 268:7, 268:9,
272:5, 272:13,
272:19, 274:5,
278:20, 288:23,
292:21, 293:12,
296:22, 297:23,
298:23, 299:20,
300:15, 305:18,
307:3, 307:25, 309:1,
317:6, 328:23, 334:7,
334:22, 340:21, 349:5
**described** [8] -
189:7, 206:9, 215:22,
230:15, 240:25,
283:14, 354:4, 361:15
**describing** [5] -
196:22, 210:24,
220:20, 302:7, 338:3

**description** [3] -
215:25, 224:1, 262:17
**design** [4] - 191:21,
191:22, 191:23,
191:24
**detail** [1] - 196:22
**detailed** [1] - 315:16
**details** [9] - 222:13,
225:6, 247:24,
251:17, 282:22,
283:5, 315:6, 326:15,
358:15
**determine** [1] -
220:13
**development** [1] -
218:19
**devices** [1] - 356:20
**DIA** [2] - 293:15,
293:19
**Diet** [1] - 276:20
**differences** [1] -
225:21
**different** [14] - 196:1,
232:1, 236:8, 240:7,
241:10, 250:2,
267:19, 276:19,
290:23, 302:11,
321:11, 323:10,
351:19, 351:23
**difficult** [22] - 206:2,
212:8, 228:13,
231:16, 236:5,
239:13, 240:19,
242:16, 254:13,
279:24, 282:24,
283:5, 283:6, 284:15,
294:17, 301:23,
308:24, 323:20,
326:3, 327:12,
327:18, 345:15
**difficulty** [7] -
227:24, 241:1, 243:6,
280:11, 280:16,
292:4, 292:11
**digital** [1] - 229:25
**dire** [1] - 354:5
**direct** [2] - 225:12,
345:3
**direction** [1] - 274:2
**directly** [8] - 218:10,
239:2, 269:21, 270:3,
289:13, 291:3,
291:25, 293:18
**director** [5] - 266:10,
276:2, 276:13, 338:7,
338:13
**disagree** [2] -
203:17, 203:20
**disappointed** [1] -
330:24

**disclose** [2] -
356:25, 357:18
**disclosed** [1] - 194:8
**discuss** [2] - 258:10,
356:3, 356:7, 360:2
**discussed** [8] -
220:17, 261:11,
261:15, 353:5,
353:14, 354:10,
357:15, 362:9
**discussing** [1] -
196:25
**discussion** [12] -
195:9, 219:19,
240:14, 247:24,
254:3, 254:4, 262:15,
278:9, 298:11,
298:12, 355:23, 357:4
**discussions** [1] -
243:22
**dishonest** [1] -
220:22
**dismay** [1] - 199:10
**dismissed** [2] -
197:4, 274:12
**display** [1] - 270:18
**disqualifying** [1] -
324:14
**disregard** [1] -
236:12
**distinguishes** [1] -
205:11
**district** [1] - 366:13
**District** [14] - 187:2,
187:2, 216:17,
223:11, 242:3, 249:8,
282:6, 313:8, 318:2,
328:12, 343:18,
344:19, 366:13
**DISTRICT** [4] -
186:1, 186:1, 186:11,
186:15
**division** [1] - 208:10
**documents** [11] -
256:19, 256:21,
333:7, 333:20,
333:21, 345:4,
350:22, 350:23,
350:24, 351:3, 351:20
**DOJ** [2] - 232:20,
232:21
**Donald** [5] - 202:10,
202:16, 317:18,
335:25, 344:15
**done** [16] - 208:2,
221:16, 270:1,
281:20, 281:21,
285:9, 298:4, 314:1,
314:13, 321:10,
331:18, 341:1,

348:24, 352:24,
353:10, 360:9
**door** [1] - 344:16
**double** [1] - 223:6
**double-check** [1] -
223:6
**doubt** [1] - 257:8
**down** [9] - 235:22,
240:9, 254:20,
267:20, 289:18,
291:4, 319:5, 359:19,
364:3
**downtown** [1] -
290:22
**drawings** [1] -
340:25
**drive** [1] - 213:17
**dropped** [2] -
310:24, 312:18
**drove** [1] - 303:7
**drug** [2] - 274:10,
300:5
**drug-related** [1] -
274:10
**due** [1] - 242:25
**during** [16] - 198:22,
202:12, 202:21,
211:18, 221:10,
234:6, 245:7, 245:9,
254:4, 262:10,
284:17, 290:2,
327:11, 327:21,
357:3, 357:8
**duty** [3] - 223:10,
235:21, 286:15
**Dynamics** [1] -
293:22

---

# E

**East** [4] - 186:20,
221:8, 221:20, 222:2
**easy** [1] - 198:20
**eat** [2] - 255:6, 255:8
**editing** [1] - 276:15
**EDWARDS** [2] -
187:1, 366:3
**Edwards** [1] - 366:12
**effect** [2] - 270:5,
294:1
**effectively** [2] -
362:14, 362:19
**effects** [1] - 276:16
**effort** [1] - 359:3
**eight** [8] - 239:11,
265:20, 265:21,
266:6, 270:2, 356:5,
358:1
**either** [16] - 189:10,

194:17, 196:11,
212:17, 236:4, 242:8,
247:15, 254:1, 273:5,
275:8, 281:19,
291:12, 311:22,
324:25, 325:6, 327:3
**elder** [1] - 247:14
**electronic** [2] -
356:19, 356:20
**electronically** [1] -
356:12
**Eleventh** [1] - 186:16
**eligibility** [1] - 276:3
**email** [2] - 345:24,
356:23
**emailed** [1] - 334:13
**emailing** [1] - 356:21
**emergency** [1] -
281:7
**employed** [5] -
235:2, 235:8, 279:16,
300:14, 300:20
**employee** [1] -
338:10
**employer** [3] -
268:13, 309:4, 317:6
**end** [10] - 228:15,
231:2, 244:6, 274:18,
324:21, 325:6,
330:22, 356:5,
357:24, 361:8
**ended** [2] - 221:22,
274:14
**enforce** [2] - 350:16,
350:21
**enforcement** [22] -
197:18, 222:23,
235:2, 235:9, 242:5,
279:17, 294:2, 294:4,
294:5, 294:13,
300:14, 300:21,
300:23, 302:17,
311:24, 313:11,
330:18, 331:7,
343:16, 344:20,
350:12, 350:16
**enforcement's** [1] -
330:24
**engage** [3] - 200:15,
230:3, 290:10
**engaged** [1] - 195:9
**engagement** [5] -
230:1, 263:17,
263:19, 302:16,
337:11
**engaging** [1] - 236:2
**entered** [24] -
188:13, 190:15,
192:12, 205:15,
208:24, 214:25,

217:14, 227:9, 237:7, 246:19, 250:23, 258:16, 271:14, 277:16, 287:13, 296:7, 304:24, 306:13, 325:14, 332:18, 340:7, 342:22, 347:15, 354:24
**entire** [7] - 200:25, 201:4, 274:24, 360:16, 361:24, 363:22, 363:24
**entirely** [1] - 228:14
**entities** [1] - 345:23
**entry** [1] - 248:6
**enunciate** [1] - 266:2
**environment** [1] - 294:21
**environmental** [1] - 232:22
**episode** [1] - 311:24
**equipment** [1] - 233:24
**err** [1] - 324:23
**erroneous** [1] - 212:12
**especially** [2] - 323:21, 356:18
**ESQ** [5] - 186:14, 186:14, 186:18, 186:19, 186:22
**essentially** [10] - 189:24, 204:6, 226:21, 260:10, 262:12, 269:19, 276:18, 344:3, 353:1, 359:2
**established** [4] - 326:8, 331:14, 331:23, 331:25
**estate** [2] - 247:13, 310:4
**et** [3] - 253:8, 290:2, 348:3
**Etheridge** [1] - 252:9
**Ethics** [3] - 333:12, 338:9, 343:18
**evaluate** [1] - 294:3
**evening** [2] - 262:4, 262:5
**event** [7] - 228:10, 234:15, 266:13, 269:4, 286:1, 286:11, 318:5
**events** [15] - 227:25, 234:14, 243:4, 243:21, 244:8, 267:7, 269:8, 269:22, 270:3, 270:25, 280:9,

292:13, 317:18, 318:21, 318:22
**evidence** [29] - 194:19, 198:18, 199:23, 200:2, 200:5, 205:4, 214:10, 220:11, 224:13, 224:14, 226:1, 226:5, 226:25, 228:2, 229:8, 257:7, 274:14, 277:2, 280:14, 283:6, 283:7, 292:15, 304:3, 315:21, 337:20, 338:20, 356:10, 357:7
**ex** [1] - 346:23
**exact** [3] - 200:23, 274:7, 359:8
**exactly** [7] - 220:21, 223:22, 224:10, 256:13, 265:23, 269:23, 307:18
**example** [1] - 281:19
**examples** [1] - 320:7
**exchange** [1] - 351:3
**exclude** [24] - 190:10, 192:7, 204:3, 204:5, 204:19, 205:13, 208:19, 214:20, 217:9, 226:14, 237:1, 246:11, 250:18, 257:15, 269:15, 271:9, 271:12, 277:11, 285:21, 287:5, 287:6, 287:10, 296:2, 332:16
**excluded** [4] - 205:8, 306:11, 338:20, 340:5
**excuse** [4] - 336:10, 352:13, 353:12, 353:13, 354:4, 359:2
**excused** [4] - 347:5, 354:16, 356:6, 359:6
**executive** [2] - 345:5, 348:12
**exercise** [4] - 353:2, 362:10, 363:20, 364:2
**exercised** [1] - 364:6
**exhaust** [1] - 361:11
**exited** [1] - 359:16
**expect** [3] - 355:25, 358:3, 364:16
**expectations** [2] - 331:1, 331:3
**expected** [1] - 358:18
**experience** [20] - 197:8, 222:23, 224:3, 224:12, 224:25, 225:24, 242:5,

242:10, 248:12, 259:15, 289:22, 302:22, 311:2, 311:23, 311:24, 329:4, 331:2, 331:7, 333:25, 351:25
**experienced** [1] - 317:25
**experiences** [4] - 222:1, 242:11, 275:9, 329:5
**explain** [14] - 225:4, 228:1, 228:22, 231:19, 237:23, 240:21, 280:12, 281:3, 292:13, 294:6, 326:5, 328:5, 333:8, 336:15
**explained** [1] - 315:8
**exposure** [1] - 319:20
**expressed** [5] - 194:17, 199:10, 223:24, 225:23, 286:6
**extensive** [1] - 231:8
**extent** [4] - 194:22, 219:15, 225:12, 327:9
**extremist** [1] - 320:2

## F

**fabric** [1] - 191:22
**face** [1] - 288:16
**Facebook** [1] - 356:14
**facing** [1] - 320:3
**fact** [11] - 191:3, 198:18, 220:13, 289:22, 307:8, 317:12, 330:1, 337:10, 341:4, 356:8, 359:24
**facts** [27] - 205:2, 220:2, 224:9, 231:22, 236:10, 239:22, 240:21, 241:2, 243:10, 244:13, 260:17, 263:8, 269:9, 271:3, 273:18, 273:24, 279:9, 283:19, 309:13, 326:20, 326:23, 327:1, 329:15, 329:21, 335:13, 351:22, 357:7
**factual** [1] - 271:7
**failed** [1] - 256:18
**fair** [36] - 206:2, 212:8, 212:20,

212:24, 213:11, 214:11, 222:3, 224:17, 228:2, 231:17, 239:18, 241:17, 243:7, 279:25, 280:13, 283:18, 286:9, 292:6, 292:14, 293:24, 298:17, 301:6, 301:16, 308:25, 309:8, 318:13, 322:6, 323:21, 323:24, 324:4, 324:12, 326:3, 337:13, 345:16, 346:6, 349:25
**fairly** [7] - 228:19, 228:21, 271:6, 294:3, 325:11, 343:13, 353:11
**fall** [1] - 288:20
**familiar** [11] - 204:7, 205:24, 212:5, 212:14, 215:18, 231:24, 263:2, 264:12, 269:17, 346:22, 351:21
**familiarity** [2] - 208:1, 346:1
**family** [32] - 196:2, 196:20, 197:13, 218:4, 221:1, 232:16, 235:1, 241:7, 241:13, 245:14, 247:9, 248:3, 252:25, 260:21, 265:6, 270:2, 278:5, 279:15, 290:15, 293:11, 300:13, 300:19, 302:5, 309:18, 310:9, 311:10, 328:2, 336:25, 340:21, 344:21, 348:2
**fan** [2] - 309:3, 317:5
**far** [1] - 242:25
**faster** [1] - 359:24
**father** [2] - 222:18, 247:14
**favorably** [1] - 294:12
**FBI** [3] - 293:15, 293:18, 293:23
**fear** [2] - 268:5, 268:8
**featured** [1] - 202:14
**federal** [8] - 259:7, 300:3, 300:6, 300:20, 343:16, 344:10, 344:18, 348:10
**feed** [4] - 199:11, 230:6, 230:9, 272:23

**feelings** [20] - 228:9, 231:21, 231:25, 232:1, 232:5, 267:6, 269:8, 270:18, 270:24, 271:2, 285:3, 285:7, 286:5, 316:6, 316:10, 316:11, 316:18, 331:6, 338:25
**felony** [1] - 299:25
**felt** [3] - 269:22, 318:8, 343:20
**fence** [1] - 267:18
**festival** [4] - 275:22, 275:24, 276:1, 276:11
**few** [13] - 188:25, 189:1, 191:2, 203:12, 205:11, 215:13, 231:5, 232:8, 241:24, 273:11, 278:2, 305:9, 318:1
**fight** [1] - 197:25
**fights** [1] - 197:21
**figure** [3] - 211:7, 231:23, 236:8
**file** [2] - 350:20, 350:21
**filed** [1] - 364:20
**filled** [1] - 362:18
**filling** [1] - 362:25
**film** [6] - 275:22, 275:23, 275:24, 276:1, 276:10, 276:12
**FilmFreeway** [1] - 276:3
**films** [1] - 276:4
**final** [1] - 356:15
**finally** [1] - 243:2
**fine** [7] - 197:1, 227:2, 263:22, 302:9, 328:25, 332:15, 364:8
**finish** [2] - 221:13, 240:10
**finishing** [1] - 358:23
**firm** [4] - 221:7, 301:18, 301:21, 340:25
**firmly** [1] - 199:18
**first** [24] - 195:6, 200:17, 200:21, 204:5, 211:10, 230:22, 237:21, 253:12, 255:3, 270:16, 277:22, 278:23, 298:25, 299:9, 325:25, 343:16, 354:5, 355:1, 358:21, 363:11, 363:14, 363:23, 364:16, 364:23
**fits** [1] - 288:18

**five** [4] - 258:2, 274:8, 343:18, 348:21
**fix** [2] - 211:7, 214:4
**floor** [1] - 359:10
**Floor** [1] - 186:16
**Florida** [2] - 261:7, 265:14
**fly** [1] - 353:21
**focus** [8] - 231:4, 236:11, 236:13, 263:8, 316:5, 318:9, 323:22, 324:5
**focused** [2] - 323:16, 323:17
**follow** [28] - 198:25, 203:10, 224:24, 239:22, 244:5, 263:12, 272:8, 272:24, 273:23, 274:24, 283:23, 290:9, 294:22, 308:6, 312:12, 317:4, 318:22, 319:2, 325:24, 326:6, 326:23, 327:1, 330:3, 337:19, 351:8, 358:3, 362:14
**follow-through** [1] - 272:8
**followed** [4] - 272:11, 273:19, 319:21, 345:19
**follower** [1] - 327:18
**followers** [1] - 202:23
**following** [78] - 188:14, 190:9, 190:16, 192:6, 192:13, 196:17, 204:2, 205:16, 208:18, 208:25, 214:19, 215:1, 217:8, 217:15, 226:13, 227:10, 227:25, 233:12, 234:21, 236:25, 237:8, 240:20, 241:3, 243:7, 246:10, 246:20, 250:17, 250:24, 254:22, 255:13, 257:14, 258:6, 258:17, 269:14, 271:15, 274:2, 276:11, 277:10, 277:17, 278:14, 280:3, 280:12, 284:6, 285:13, 285:20, 287:14, 290:3, 292:5, 292:13, 296:1, 296:8, 304:18, 304:25,

306:3, 306:14, 310:18, 311:7, 312:8, 313:1, 318:18, 323:4, 325:15, 327:3, 327:15, 332:8, 332:19, 336:13, 339:25, 340:8, 342:16, 342:23, 347:8, 347:16, 352:7, 352:14, 352:15, 354:25, 359:17
**follows** [1] - 318:21
**followup** [27] - 188:25, 191:2, 192:23, 204:23, 213:25, 215:13, 217:24, 227:17, 237:19, 251:9, 272:1, 278:2, 283:13, 284:4, 286:17, 287:23, 296:18, 303:24, 305:10, 306:23, 315:2, 330:17, 330:24, 331:20, 333:1, 343:7
**followups** [1] - 347:25
**fond** [1] - 294:9
**food** [1] - 295:11
**FOR** [4] - 186:1, 186:14, 186:15, 186:18
**foreclosed** [1] - 361:17
**foregoing** [1] - 366:4
**foreman** [1] - 346:23
**foreperson** [1] - 275:18
**forget** [1] - 319:23
**forgetting** [1] - 256:20
**form** [2] - 210:12, 316:16
**formed** [28] - 193:23, 198:13, 204:11, 204:13, 206:25, 219:22, 228:20, 243:6, 251:21, 253:11, 260:11, 280:11, 289:11, 289:19, 291:1, 291:6, 292:5, 292:12, 305:16, 305:21, 307:3, 307:9, 307:11, 334:20, 341:7, 341:13, 341:14, 344:2
**former** [5] - 241:6, 309:4, 309:6, 316:10, 317:6
**forth** [3] - 289:5,

329:23, 360:19
**forward** [3] - 307:6, 312:22, 314:9
**four** [5] - 239:19, 271:25, 274:8, 348:23, 364:4
**Fourth** [1] - 186:16
**fourth** [1] - 359:10
**Fox** [1] - 256:10
**frame** [1] - 323:15
**frank** [1] - 345:18
**Frankel** [5] - 261:6, 265:12, 265:17, 266:5, 268:13
**frankly** [2] - 309:12, 355:23
**fraud** [3] - 343:19, 348:15, 350:23
**free** [4] - 258:20, 296:11, 306:17, 357:11
**frequent** [1] - 255:5
**frequently** [4] - 199:25, 244:25, 255:8, 350:15
**friend** [6] - 196:2, 232:19, 234:2, 234:10, 234:16, 290:15, 348:2, 357:13
**friend's** [1] - 222:18
**friends** [7] - 243:18, 267:13, 290:19, 291:1, 337:1, 337:3, 338:23
**front** [1] - 201:3
**full** [3] - 198:17, 355:20, 366:5
**functions** [1] - 324:15
**future** [5] - 202:11, 339:11, 339:15, 358:19, 358:22

## G

**gallery** [1] - 250:1
**Gaston** [22] - 191:16, 198:6, 207:23, 216:5, 235:14, 249:2, 262:24, 269:2, 270:13, 278:19, 282:1, 284:2, 284:10, 285:16, 286:7, 286:13, 301:2, 303:1, 312:4, 324:2, 337:24, 346:10
**GASTON** [115] - 186:14, 191:17, 191:19, 191:23,

191:25, 192:8, 207:24, 208:1, 208:5, 208:8, 208:11, 208:20, 216:6, 216:8, 216:11, 216:15, 216:22, 217:1, 217:10, 235:15, 235:17, 236:7, 236:17, 249:3, 249:5, 249:8, 249:10, 249:17, 249:20, 249:24, 250:5, 250:19, 262:25, 263:2, 263:6, 263:11, 263:15, 263:18, 263:21, 263:24, 268:24, 269:3, 269:7, 269:11, 270:14, 280:19, 282:2, 282:4, 282:7, 282:9, 282:17, 284:3, 284:11, 284:14, 284:19, 284:24, 285:3, 285:7, 285:10, 285:22, 286:16, 301:3, 301:5, 301:9, 301:12, 301:16, 301:18, 301:22, 302:2, 302:3, 303:10, 303:13, 303:20, 304:20, 312:5, 312:11, 312:17, 312:23, 313:4, 313:8, 313:10, 313:13, 313:16, 313:20, 313:23, 314:3, 314:10, 314:12, 314:20, 315:5, 315:12, 315:15, 315:19, 315:24, 316:2, 316:9, 316:14, 316:21, 316:24, 324:3, 337:25, 338:2, 338:11, 338:15, 338:19, 338:22, 338:25, 339:3, 339:6, 339:9, 339:13, 339:18, 340:3, 346:11, 347:11
**GDIT** [1] - 293:21
**general** [9] - 206:13, 219:10, 220:10, 225:23, 231:11, 241:13, 308:15, 308:17, 315:4
**General** [1] - 293:22
**General's** [3] - 348:15, 348:22, 350:14
**generally** [14] -

195:21, 206:1, 212:7, 212:18, 221:2, 230:17, 232:17, 235:2, 238:21, 248:18, 254:8, 261:23, 297:23, 329:14
**gentlemen** [1] - 355:1
**girlfriend** [1] - 293:15
**given** [9] - 210:2, 270:8, 283:13, 319:23, 331:4, 332:13, 336:24, 337:8, 346:5
**goal** [1] - 325:4
**godmother** [1] - 278:21
**Gogh** [1] - 250:3
**Google** [1] - 223:11
**Government** [41] - 188:6, 190:11, 192:8, 198:24, 198:25, 204:24, 206:3, 208:20, 212:9, 214:21, 217:10, 226:15, 231:17, 246:13, 250:19, 257:16, 258:12, 277:12, 285:4, 285:22, 285:25, 286:4, 286:21, 304:20, 308:25, 314:13, 326:4, 342:18, 346:11, 352:19, 353:25, 354:1, 361:5, 361:6, 361:7, 361:8, 363:14, 363:19, 364:8, 365:5
**GOVERNMENT** [1] - 186:14
**government** [8] - 208:7, 213:23, 216:10, 216:12, 216:14, 318:23, 324:16, 328:3
**Government's** [2] - 257:8, 257:23
**graduated** [1] - 349:1
**grand** [4] - 197:18, 259:3, 299:18, 300:6
**grandmother** [5] - 281:6, 281:9, 281:23, 282:10, 287:9
**grant** [1] - 205:7
**granted** [4] - 237:4, 296:5, 306:9, 340:4

**grants** [2] - 218:12, 218:13
**great** [6] - 234:6, 249:19, 278:8, 339:2, 347:1, 354:21
**greatly** [1] - 343:21
**grounds** [1] - 290:1
**group** [4] - 254:15, 320:2, 355:20, 359:4
**guarantee** [1] - 236:15
**guaranteed** [1] - 355:14
**guess** [29] - 195:9, 206:8, 220:6, 220:17, 223:19, 231:10, 255:4, 264:21, 264:22, 265:3, 266:18, 266:21, 267:11, 267:17, 268:10, 269:20, 272:7, 272:10, 281:21, 289:19, 289:22, 290:7, 290:13, 291:17, 294:23, 326:18, 327:8, 330:11, 331:4
**guilt** [4] - 198:14, 204:14, 220:18, 232:11
**guilty** [6] - 198:16, 204:15, 204:18, 249:15, 275:5, 305:25
**gun** [1] - 197:25
**gunman** [3] - 284:17, 285:1, 285:9
**gunpoint** [1] - 302:12
**guns** [1] - 300:5
**guys** [1] - 238:8

---

# H

**habits** [1] - 327:21
**half** [2] - 300:11, 319:25
**hallway** [1] - 359:13
**hand** [1] - 319:5
**handful** [2] - 319:8, 319:11
**handle** [1] - 235:21
**handles** [1] - 235:23
**happy** [2] - 332:10, 362:2
**hard** [15] - 196:16, 212:19, 212:24, 230:5, 232:2, 234:12, 238:17, 241:17, 243:9, 269:23,

275:10, 282:24, 283:15, 344:2, 346:6
**harder** [2] - 322:5
**hardest** [1] - 236:16
**hardship** [3] - 281:2, 281:8, 295:6
**hashtags** [1] - 202:24, 203:2
**headline** [1] - 336:17
**headlines** [2] - 253:12, 256:8
**headquarters** [2] - 239:6, 244:23
**healthcare** [3] - 216:14, 216:17, 328:17
**hear** [28] - 222:20, 233:14, 233:16, 233:21, 233:25, 241:24, 249:5, 254:16, 254:20, 254:24, 255:1, 263:18, 265:9, 277:2, 278:16, 278:18, 284:8, 296:3, 300:4, 300:5, 300:6, 303:3, 303:10, 304:4, 310:20, 312:10, 345:4, 362:2
**heard** [68] - 189:3, 189:8, 189:12, 191:3, 193:22, 193:24, 194:24, 198:22, 206:16, 206:21, 206:24, 209:13, 212:22, 213:6, 213:9, 214:5, 215:15, 215:21, 215:24, 228:19, 238:12, 243:4, 248:18, 248:23, 251:11, 251:13, 251:18, 251:19, 254:3, 259:19, 259:23, 260:5, 260:6, 261:19, 262:14, 263:3, 264:5, 264:25, 270:5, 271:5, 271:6, 272:3, 272:6, 272:9, 276:23, 276:25, 280:9, 288:22, 291:20, 296:20, 300:4, 301:12, 303:14, 303:16, 305:15, 305:17, 306:25, 307:2, 307:7, 307:24, 315:3, 315:22, 327:10, 341:5, 341:9, 344:1, 346:2, 356:9
**hearing** [31] -

193:17, 194:19, 195:7, 195:18, 200:22, 201:4, 201:7, 201:13, 202:11, 202:13, 202:14, 202:21, 202:25, 203:5, 204:7, 212:15, 214:1, 219:13, 219:18, 226:4, 240:10, 245:9, 274:14, 298:5, 298:6, 298:10, 298:12, 327:22
**hearings** [76] - 195:1, 195:11, 195:12, 195:13, 195:21, 199:4, 199:6, 199:10, 199:14, 200:15, 207:14, 210:23, 211:1, 211:9, 211:11, 211:16, 211:18, 212:18, 213:8, 213:10, 214:5, 219:5, 219:8, 219:18, 219:24, 230:17, 230:18, 230:25, 239:21, 240:1, 240:4, 240:5, 240:13, 240:25, 245:7, 253:6, 253:9, 253:12, 253:14, 253:16, 253:25, 254:2, 254:4, 254:7, 261:22, 261:25, 262:10, 262:14, 272:18, 272:21, 273:5, 273:6, 291:12, 291:19, 292:3, 292:11, 297:22, 298:1, 299:25, 307:25, 308:8, 308:12, 316:4, 316:6, 319:1, 319:2, 319:13, 320:9, 345:13, 349:5, 349:9, 349:13, 349:18
**heavily** [1] - 294:21
**heightens** [1] - 222:6
**held** [7] - 204:23, 239:21, 286:20, 291:13, 297:8, 302:11, 303:8
**hello** [4] - 188:16, 249:4, 258:19, 303:23
**help** [5] - 210:5, 246:14, 276:3, 276:5, 323:23
**helpful** [1] - 255:9
**hereby** [1] - 366:3
**hesitate** [2] - 324:9, 324:11

**hi** [12] - 217:17, 223:5, 224:23, 235:16, 237:10, 244:4, 251:1, 263:1, 264:3, 312:12, 329:11, 331:13
**highly** [3] - 286:11, 323:16, 323:17
**Hill** [4] - 239:17, 244:25, 252:11
**history** [2] - 291:9, 293:2
**hold** [4] - 194:17, 199:18, 204:25, 338:12
**holding** [2] - 200:4, 210:23
**home** [4] - 196:7, 234:7, 256:11, 267:12
**honest** [7] - 228:6, 228:14, 232:7, 234:19, 264:7, 267:2, 364:20
**honestly** [2] - 314:23, 315:2
**honor** [1] - 273:10
**Honor** [84] - 188:1, 188:6, 188:8, 190:3, 190:12, 192:8, 192:9, 203:22, 204:4, 204:22, 208:20, 208:21, 214:14, 214:21, 214:22, 217:10, 217:11, 226:6, 226:15, 226:18, 236:20, 237:2, 246:6, 246:13, 250:8, 250:11, 250:19, 250:20, 257:16, 257:17, 257:25, 258:7, 258:12, 258:13, 268:21, 268:24, 269:16, 270:14, 277:8, 277:12, 277:13, 280:19, 285:22, 286:17, 286:25, 295:14, 295:17, 295:20, 296:4, 304:14, 304:20, 304:21, 306:5, 306:20, 312:5, 317:1, 322:25, 323:6, 324:3, 331:20, 332:11, 332:15, 339:20, 340:2, 342:19, 344:4, 344:7, 345:3, 345:19, 346:12, 347:10, 350:4, 351:4, 352:9,

352:10, 352:22, 353:18, 353:22, 354:19, 360:4, 361:20, 362:20, 365:1, 365:8
**HONORABLE** [1] - 186:10
**hope** [2] - 245:19, 354:12
**hopefully** [1] - 245:22
**hospital** [5] - 253:21, 255:23, 256:8, 342:3, 342:4
**Hospital** [2] - 255:24, 342:6
**hours** [2] - 230:3, 357:17
**house** [4] - 196:10, 196:15, 209:21, 310:23
**House** [15] - 193:5, 207:11, 211:25, 218:5, 238:25, 252:5, 260:22, 328:3, 328:7, 333:12, 333:22, 338:6, 338:9, 338:14, 344:17
**HR** [1] - 293:18
**husband** [5] - 232:19, 252:8, 252:10, 253:2, 253:3
**hushed** [1] - 310:12
**husher** [7] - 196:24, 233:11, 254:20, 278:12, 284:4, 286:5, 328:24
**Hutchinson** [1] - 349:10
**hypothetical** [1] - 227:5

---

# I

**idea** [1] - 238:21
**identical** [1] - 256:15
**identified** [2] - 313:16, 313:17
**identify** [1] - 313:18, 314:17
**ignored** [3] - 211:21, 214:6, 214:11
**images** [1] - 270:25
**imagine** [2] - 325:4, 361:5
**immediate** [1] - 220:23
**immigration** [2] - 221:5, 221:21

**impact** [5] - 231:21, 234:8, 266:20, 266:22, 266:24
**impacted** [3] - 267:4, 270:3, 343:20
**impartial** [56] - 189:12, 191:13, 194:18, 195:23, 196:17, 206:2, 207:20, 210:19, 212:8, 212:20, 212:24, 213:11, 216:2, 218:22, 222:3, 222:24, 224:17, 228:2, 228:14, 231:17, 232:3, 239:14, 241:17, 242:12, 243:8, 243:23, 247:20, 247:22, 248:13, 248:19, 248:21, 252:1, 259:15, 260:17, 262:20, 279:5, 279:25, 280:13, 283:18, 292:6, 292:14, 297:15, 298:17, 299:15, 308:25, 309:8, 311:4, 326:3, 329:6, 334:1, 337:6, 337:8, 337:13, 345:16, 346:7, 349:25
**impartiality** [1] - 349:19
**impartially** [3] - 228:21, 294:3, 302:23
**implied** [1] - 357:3
**importance** [1] - 222:6
**important** [12] - 303:18, 307:14, 307:21, 308:18, 315:25, 318:24, 321:12, 323:11, 324:15, 324:16, 357:6, 358:1
**importantly** [2] - 269:25, 323:10
**imports** [1] - 250:4
**impossible** [2] - 219:25, 327:22
**impression** [3] - 194:7, 198:16, 204:14
**in-depth** [2] - 219:10, 231:8
**in-house** [1] - 196:10
**incident** [10] - 197:22, 228:25, 234:4, 234:10, 284:15, 284:24,

303:6, 312:13, 313:5, 320:14
**incidents** [5] - 294:8, 302:14, 303:3, 311:20, 341:10
**inclined** [1] - 245:16
**include** [2] - 353:4, 354:9
**including** [7] - 222:1, 338:16, 338:20, 356:13, 356:21, 356:23, 362:8
**inclusion** [1] - 335:6
**inconvenienced** [1] - 286:12
**Independence** [1] - 267:25
**independent** [3] - 295:8, 308:4, 348:10
**indicate** [1] - 361:13
**indicated** [1] - 332:25
**Indicates** [1] - 254:17
**indicates** [1] - 304:7
**individuals** [1] - 211:20
**influence** [1] - 197:9
**information** [30] - 191:6, 191:7, 194:8, 201:9, 201:12, 205:8, 206:13, 209:16, 225:21, 229:3, 229:9, 231:10, 256:24, 257:4, 264:19, 273:18, 276:24, 287:8, 288:25, 297:25, 303:6, 304:1, 304:7, 308:2, 323:8, 327:4, 328:19, 356:22, 357:18
**informed** [1] - 200:20
**InfoWars** [2] - 264:16, 269:19
**initial** [2] - 303:11, 362:4
**injured** [1] - 343:22
**innocence** [3] - 198:14, 220:19, 232:11
**inquire** [1] - 302:2
**inside** [2] - 211:3, 324:11
**Instagram** [4] - 230:4, 236:1, 290:6, 290:23
**instead** [1] - 222:6
**Institute** [1] - 218:19
**instruct** [8] - 243:10,

279:10, 327:14, 330:2, 336:10, 355:25, 357:9, 359:12
**instructed** [2] - 238:19, 327:24
**instruction** [6] - 199:1, 290:3, 290:9, 327:16, 336:13, 356:16
**instructions** [16] - 194:19, 196:17, 220:12, 260:18, 263:12, 273:23, 283:23, 301:10, 326:24, 327:1, 327:25, 330:4, 337:19, 356:1, 356:10, 358:4
**insurance** [2] - 216:19, 216:22
**Integrity** [1] - 343:17
**intend** [3] - 352:23, 353:8, 361:16
**intending** [1] - 361:13
**intense** [1] - 228:10
**intent** [1] - 359:21
**intentional** [2] - 202:5, 256:18
**intentionally** [1] - 257:1
**interact** [1] - 245:10
**interaction** [1] - 225:13
**interactions** [1] - 290:25
**interest** [2] - 273:20, 318:12
**interested** [6] - 202:24, 318:15, 318:23, 319:19, 321:22, 341:12
**interior** [2] - 191:23, 191:24
**Interior** [3] - 333:22, 338:6, 338:10
**intern** [2] - 252:9, 328:9
**internal** [2] - 255:21, 333:21
**International** [1] - 218:18
**international** [1] - 218:24, 221:8
**interned** [1] - 328:6
**internet** [1] - 327:13
**internships** [1] - 218:11
**interplay** [1] - 321:23
**interpreted** [1] -

328:25
**intersection** [1] - 321:25
**investigate** [3] - 211:4, 303:4, 308:20
**investigated** [2] - 313:10, 313:20
**investigating** [3] - 214:3, 262:11, 322:8
**investigation** [11] - 193:6, 196:21, 201:19, 205:24, 206:1, 212:7, 253:5, 285:5, 310:10, 313:24, 335:18
**investigator** [1] - 343:19
**involve** [1] - 199:6
**involved** [14] - 198:1, 202:10, 228:18, 264:15, 264:17, 268:5, 270:17, 272:19, 276:15, 292:5, 292:12, 320:1, 320:2, 343:12
**involvement** [1] - 302:16
**involves** [5] - 229:16, 244:7, 321:17, 321:24, 322:9
**iPad** [2] - 272:25, 273:2
**iPhone** [1] - 320:21
**IRI** [2] - 218:16, 218:17
**issue** [10] - 225:7, 281:22, 282:9, 323:7, 323:14, 329:16, 338:5, 352:1, 364:14, 364:16
**issued** [2] - 272:7, 273:9, 273:19
**issues** [5] - 216:18, 216:19, 222:1, 226:22, 273:14
**itself** [2] - 319:11, 320:15

### J

**jail** [1] - 249:16
**Jail** [1] - 279:22
**James** [1] - 245:5
**January** [59] - 189:6, 191:8, 193:14, 193:17, 202:6, 203:5, 206:19, 206:20, 206:25, 207:10, 209:25, 211:3,

227:25, 228:25, 230:18, 243:5, 243:11, 244:8, 261:8, 262:12, 266:12, 266:14, 267:8, 268:12, 269:5, 269:8, 269:22, 270:3, 270:24, 271:1, 271:3, 272:11, 289:14, 289:16, 290:16, 291:4, 291:7, 292:23, 317:16, 317:18, 318:12, 318:18, 319:1, 319:20, 319:21, 323:8, 323:16, 323:18, 323:23, 324:5, 336:2, 337:5, 338:23, 338:25, 341:21, 343:20, 344:23, 344:24
**Jersey** [11] - 281:6, 281:10, 281:13, 348:14, 348:19, 348:22, 348:24, 350:9, 350:10, 350:14
**job** [13] - 189:25, 201:16, 230:1, 230:7, 230:14, 235:18, 245:11, 260:24, 269:23, 299:13, 317:14, 322:4
**JUDGE** [1] - 186:11
**Judge** [3] - 198:8, 342:25, 347:6
**judge** [8] - 205:3, 224:12, 224:13, 225:19, 244:8, 274:11, 279:9, 315:8
**judge's** [1] - 301:9
**judging** [2] - 200:5, 244:13
**judgment** [1] - 241:9
**July** [2] - 186:6, 366:10
**June** [1] - 337:11
**jurisprudence** [1] - 344:8
**juror** [48] - 188:5, 188:10, 189:13, 191:13, 195:23, 197:10, 205:6, 207:20, 208:22, 216:2, 226:21, 227:7, 229:24, 232:3, 233:24, 234:16, 237:25, 238:2, 238:6, 246:18, 248:20, 251:4, 254:14, 257:19, 257:20,

262:21, 270:15,
271:1, 274:4, 274:6,
275:9, 275:10, 276:4,
279:5, 282:25,
283:15, 285:23,
286:9, 287:5, 294:18,
297:15, 298:17,
309:8, 312:1, 332:17,
339:14, 346:24,
363:19

**Juror** [106] - 188:13,
188:19, 190:8,
190:15, 190:22,
192:5, 192:7, 192:10,
192:11, 192:12,
192:19, 204:1,
205:15, 205:20,
208:17, 208:19,
208:23, 208:24,
209:8, 214:18,
214:20, 214:23,
214:24, 214:25,
215:7, 217:7, 217:12,
217:14, 217:21,
226:12, 226:19,
227:9, 227:13,
236:24, 237:6, 237:7,
237:13, 246:9,
246:11, 246:17,
246:19, 246:25,
250:16, 250:21,
250:23, 257:13,
257:15, 258:11,
258:15, 258:16,
258:22, 269:13,
269:15, 269:17,
271:12, 271:13,
271:14, 271:22,
277:9, 277:11,
277:14, 277:16,
277:23, 285:19,
285:21, 287:10,
287:13, 287:19,
295:25, 296:2, 296:6,
296:7, 296:14,
304:17, 304:22,
304:24, 305:6, 306:2,
306:10, 306:12,
306:13, 306:19,
323:3, 325:14,
325:19, 332:7,
332:18, 332:22,
339:24, 340:7,
340:14, 342:15,
342:17, 342:21,
342:22, 343:3, 347:7,
347:15, 347:21,
352:6, 352:8, 352:11,
352:16, 363:4,
363:16, 363:18

**JUROR** [715] -

188:16, 188:20,
188:24, 189:4, 189:9,
189:14, 189:18,
189:21, 189:24,
190:7, 190:19,
190:23, 191:1, 191:5,
191:9, 191:14,
191:18, 191:21,
191:24, 192:16,
192:20, 192:25,
193:9, 193:15,
193:19, 194:1, 194:4,
194:7, 194:12,
194:15, 194:20,
195:2, 195:6, 195:14,
195:19, 195:24,
196:5, 196:9, 196:13,
196:18, 197:1, 197:6,
197:11, 197:16,
197:20, 197:24,
198:4, 198:15, 199:2,
199:8, 199:16,
199:20, 199:24,
200:3, 200:6, 200:9,
200:13, 200:17,
200:25, 201:8,
201:15, 201:24,
202:3, 202:9, 202:18,
202:22, 203:3,
203:10, 203:17,
203:25, 205:21,
206:8, 206:12,
206:16, 206:20,
206:23, 207:1, 207:5,
207:13, 207:16,
207:21, 207:25,
208:4, 208:6, 208:9,
208:12, 208:16,
209:2, 209:5, 209:9,
209:16, 209:20,
209:24, 210:8,
210:11, 210:14,
210:16, 210:20,
211:2, 211:12,
211:14, 211:18,
212:3, 212:10,
212:13, 212:21,
212:25, 213:4, 213:7,
213:12, 213:16,
213:19, 213:21,
214:8, 214:13,
214:17, 215:3, 215:6,
215:8, 215:12,
215:17, 215:20,
215:23, 216:3, 216:7,
216:10, 216:13,
216:16, 216:24,
217:2, 217:6, 217:17,
217:20, 217:22,
218:3, 218:9, 218:15,
218:18, 218:23,

219:3, 219:9, 219:20,
219:25, 220:6,
220:15, 220:21,
221:4, 221:10,
221:14, 221:16,
221:19, 221:24,
222:5, 222:10,
222:16, 222:18,
222:21, 222:25,
223:2, 223:5, 223:9,
223:16, 223:19,
223:22, 224:2,
224:10, 224:15,
224:18, 224:20,
224:23, 225:5,
225:17, 225:20,
226:4, 226:9, 227:14,
227:18, 228:5, 228:8,
228:24, 229:11,
229:19, 229:25,
230:11, 230:19,
231:1, 231:12,
231:20, 232:6, 232:9,
232:15, 232:19,
232:22, 232:25,
233:2, 233:7, 233:9,
233:17, 233:20,
233:22, 233:25,
234:2, 234:18, 235:3,
235:5, 235:7, 235:10,
235:13, 235:16,
235:22, 236:14,
236:18, 236:23,
237:10, 237:14,
237:25, 238:4, 238:7,
238:9, 238:15,
238:22, 239:2, 239:5,
239:9, 239:11,
239:15, 240:3, 240:6,
240:12, 240:16,
240:23, 241:4,
241:13, 241:19,
241:21, 242:2, 242:7,
242:13, 242:19,
243:1, 243:12,
243:25, 244:4,
244:10, 244:15,
244:17, 244:22,
245:1, 245:3, 245:8,
245:13, 245:18,
245:25, 246:5, 246:8,
246:22, 247:1, 247:7,
247:12, 247:17,
247:21, 248:1, 248:6,
248:9, 248:14,
248:21, 248:25,
249:4, 249:7, 249:9,
249:12, 249:14,
249:19, 249:21,
249:25, 250:6,
250:11, 250:15,

251:1, 251:5, 251:8,
251:14, 251:19,
251:23, 252:2, 252:8,
252:12, 252:14,
252:16, 252:18,
252:21, 252:23,
253:3, 253:10,
253:18, 253:20,
254:5, 254:10,
254:17, 254:25,
255:3, 255:10,
255:12, 255:18,
255:21, 255:24,
256:7, 256:15, 257:3,
257:9, 257:12,
258:19, 258:23,
259:5, 259:9, 259:13,
259:17, 259:23,
260:2, 260:8, 260:14,
260:19, 261:1, 261:4,
261:6, 261:10,
261:13, 261:15,
262:2, 262:7, 262:9,
262:16, 262:22,
263:1, 263:5, 263:10,
263:14, 263:16,
263:19, 263:22,
264:3, 264:6, 264:14,
264:21, 264:24,
265:2, 265:8, 265:11,
265:13, 265:15,
265:18, 265:20,
265:23, 266:2, 266:7,
266:9, 266:14,
266:16, 266:18,
267:1, 267:9, 267:11,
267:23, 267:25,
268:3, 268:7, 268:10,
268:14, 268:17,
268:19, 269:6,
269:10, 271:17,
271:20, 271:23,
272:6, 272:22, 273:8,
273:17, 274:1, 274:7,
274:16, 274:20,
274:22, 275:2, 275:6,
275:12, 275:16,
275:19, 275:21,
275:24, 276:2, 276:9,
276:13, 276:20,
277:4, 277:6, 277:8,
277:19, 277:24,
278:11, 278:17,
278:21, 279:1, 279:6,
279:11, 279:18,
279:20, 279:22,
280:1, 280:17,
280:22, 281:5,
281:11, 281:14,
281:16, 281:18,
281:24, 282:5, 282:8,

282:15, 282:20,
283:1, 283:3, 283:9,
283:11, 283:16,
283:20, 283:22,
283:25, 284:9,
284:13, 284:16,
284:22, 285:1, 285:6,
285:8, 285:11,
285:18, 287:16,
287:20, 287:24,
288:2, 288:8, 288:13,
288:15, 289:1,
289:13, 289:17,
289:21, 290:4,
290:12, 290:17,
290:19, 291:3, 291:8,
291:14, 291:16,
291:22, 292:8,
292:17, 292:19,
292:23, 293:1, 293:9,
293:14, 293:17,
293:21, 294:7,
294:14, 294:19,
295:2, 295:7, 295:20,
295:24, 296:10,
296:13, 296:15,
296:24, 297:4, 297:8,
297:12, 297:17,
298:2, 298:8, 298:14,
298:18, 298:22,
298:25, 299:3, 299:5,
299:11, 299:16,
299:19, 299:22,
300:2, 300:10,
300:16, 300:24,
301:4, 301:8, 301:11,
301:15, 301:17,
301:20, 301:25,
302:9, 302:11,
302:15, 302:18,
302:24, 303:5,
303:12, 303:15,
303:23, 304:5, 304:9,
304:11, 304:16,
305:2, 305:5, 305:7,
305:20, 305:24,
306:16, 306:20,
307:5, 307:10,
307:13, 307:19,
308:3, 308:10,
308:14, 308:18,
309:3, 309:9, 309:15,
309:21, 309:24,
310:3, 310:7, 310:14,
310:21, 311:1, 311:5,
311:15, 311:21,
312:2, 312:16,
312:19, 312:25,
313:7, 313:9, 313:12,
313:15, 313:17,
313:22, 313:25,

314:6, 314:11, 314:14, 314:23, 315:7, 315:14, 315:17, 315:23, 316:1, 316:8, 316:13, 316:20, 316:23, 317:3, 317:8, 317:14, 317:19, 317:24, 318:6, 318:14, 318:20, 319:3, 319:14, 319:16, 319:22, 320:11, 320:21, 321:6, 321:15, 321:18, 321:20, 322:2, 322:11, 322:17, 322:19, 322:24, 323:2, 325:20, 325:23, 326:6, 326:11, 326:14, 326:25, 327:6, 327:17, 328:6, 328:10, 328:16, 328:25, 329:7, 329:11, 329:17, 329:24, 330:6, 330:9, 330:13, 330:15, 330:20, 331:1, 331:4, 331:8, 331:10, 331:13, 331:16, 332:1, 332:3, 332:5, 332:21, 332:23, 333:4, 333:9, 333:11, 333:14, 333:17, 333:20, 334:3, 334:9, 334:13, 334:16, 334:25, 335:12, 335:20, 335:23, 336:5, 336:14, 336:16, 337:1, 337:7, 337:14, 337:18, 337:22, 338:1, 338:5, 338:13, 338:17, 338:21, 338:24, 339:2, 339:5, 339:8, 339:12, 339:16, 339:23, 340:10, 340:15, 340:20, 340:24, 341:2, 341:7, 341:10, 341:16, 341:18, 341:22, 342:2, 342:5, 342:8, 342:14, 342:25, 343:4, 343:9, 343:15, 344:4, 344:7, 345:2, 345:18, 346:8, 346:16, 346:19, 346:22, 347:2, 347:4, 347:6, 347:18, 347:22, 348:5, 348:7, 348:10, 348:14,

348:18, 348:21, 348:25, 349:8, 349:16, 349:21, 350:1, 350:7, 350:10, 350:13, 350:20, 351:7, 351:14, 351:17, 351:21, 352:2, 352:5, 358:8, 358:18

**jurors** [26] - 204:17, 205:3, 224:4, 242:24, 257:22, 270:9, 271:10, 323:21, 336:11, 346:18, 352:14, 352:25, 353:3, 353:7, 353:12, 354:4, 354:9, 354:13, 355:13, 355:18, 357:21, 358:3, 359:23, 359:25, 362:3, 362:5

**Jurors** [1] - 353:1
**JURY** [1] - 186:10
**jury** [42] - 197:18, 204:11, 223:10, 237:22, 245:24, 259:3, 269:9, 274:11, 275:18, 277:3, 281:1, 284:14, 286:3, 286:15, 288:6, 299:18, 299:24, 300:6, 323:15, 324:24, 327:14, 346:23, 354:24, 355:6, 355:11, 355:12, 356:2, 356:4, 356:9, 356:16, 356:24, 357:1, 357:11, 358:16, 359:7, 359:11, 359:16, 359:20, 360:16, 362:7, 364:11

**justice** [2] - 222:7, 229:2

## K

**keep** [3] - 315:20, 355:9, 360:23
**kept** [3] - 194:4, 249:17, 355:11
**key** [1] - 357:5
**killed** [3] - 234:3, 234:6, 343:21
**kind** [26] - 195:14, 196:8, 203:8, 219:10, 220:1, 220:23, 221:11, 222:6, 224:3, 224:5, 224:7, 225:11, 255:19, 263:21,

264:10, 264:17, 264:24, 275:25, 276:17, 286:14, 289:8, 303:17, 304:8, 304:12, 310:1, 317:19
**kinds** [2] - 243:14, 324:8
**knowing** [3] - 195:21, 243:20, 315:19
**knowledge** [27] - 195:22, 206:15, 212:17, 212:19, 219:9, 219:15, 219:23, 230:17, 239:20, 243:22, 247:18, 254:7, 256:6, 257:5, 259:22, 270:7, 270:10, 279:24, 298:15, 315:4, 326:17, 327:3, 327:5, 335:11, 337:17, 349:14, 351:25
**known** [2] - 199:24, 329:22
**knows** [2] - 324:10, 363:16

## L

**ladies** [1] - 355:1
**last** [23] - 197:12, 197:22, 219:14, 221:23, 234:25, 245:21, 248:7, 272:7, 282:16, 285:25, 291:18, 294:15, 295:3, 300:12, 304:6, 311:10, 323:6, 333:14, 334:10, 335:4, 335:15, 338:16
**lasted** [1] - 200:22
**lasts** [2] - 242:24, 246:1
**late** [3] - 196:6, 358:18, 358:25
**Latin** [1] - 189:22
**LAW** [1] - 186:22
**law** [62] - 196:5, 196:9, 196:11, 197:17, 220:13, 221:7, 221:8, 221:20, 222:2, 222:23, 225:19, 228:1, 235:2, 235:9, 239:22, 240:20, 240:21, 241:3, 242:5, 243:7, 243:10, 244:14, 247:13, 247:14, 263:12, 273:23,

279:10, 279:16, 280:12, 283:24, 292:5, 292:13, 294:2, 294:4, 294:5, 294:12, 300:14, 300:20, 300:22, 302:17, 309:14, 311:24, 313:10, 318:23, 326:17, 326:24, 330:3, 330:17, 330:24, 331:7, 337:21, 340:25, 343:16, 344:11, 344:12, 344:20, 348:3, 349:1, 349:2, 356:10, 357:9
**lawfully** [1] - 229:17
**lawyer** [6] - 196:15, 211:24, 211:25, 252:14, 252:22, 293:16
**lawyers** [8] - 217:25, 247:13, 247:19, 278:2, 305:10, 355:7, 355:8, 358:12
**laying** [1] - 201:17
**lead** [10] - 195:22, 201:18, 222:2, 248:13, 262:20, 279:4, 284:24, 297:14, 298:16, 313:13
**leader** [1] - 189:21
**leadership** [2] - 245:4, 245:9
**leading** [1] - 317:20
**leads** [1] - 218:21
**learn** [7] - 219:7, 236:13, 239:25, 263:8, 264:19, 273:24, 297:2
**learned** [20] - 194:5, 210:25, 227:25, 228:10, 229:9, 229:15, 230:21, 230:23, 238:14, 253:6, 256:14, 260:15, 261:24, 262:2, 262:11, 262:13, 288:25, 296:23, 298:16, 349:18
**learning** [3] - 210:7, 254:7, 272:20
**least** [24] - 196:17, 205:9, 205:11, 214:4, 227:20, 232:4, 242:22, 255:9, 260:16, 267:5, 267:19, 293:5,

294:11, 295:2, 295:4, 308:9, 319:8, 322:22, 325:9, 334:10, 339:8, 339:9, 343:24, 360:21
**leave** [3] - 246:2, 246:15, 284:18
**leaves** [1] - 198:25
**led** [5] - 189:12, 191:12, 202:5, 223:18, 256:24
**left** [4] - 226:10, 353:6, 353:11, 359:19
**legal** [17] - 196:3, 196:15, 221:1, 222:1, 222:7, 232:17, 247:10, 252:9, 252:18, 252:25, 293:12, 293:23, 298:21, 309:18, 329:19, 340:23, 348:3
**legislative** [5] - 218:6, 239:1, 252:6, 260:23, 328:4
**length** [1] - 281:2
**Lesley** [24] - 188:3, 188:10, 190:14, 192:11, 205:14, 208:23, 214:24, 217:13, 227:8, 237:6, 246:18, 250:21, 254:18, 258:15, 271:13, 277:15, 278:12, 287:12, 304:23, 306:10, 342:21, 354:16, 355:20, 358:16
**less** [6] - 200:20, 228:24, 242:24, 265:20, 289:23, 294:12
**letters** [1] - 364:15
**library** [1] - 221:7
**light** [7] - 194:16, 243:11, 273:25, 294:16, 334:1, 355:23, 355:24
**limited** [2] - 196:24, 326:16
**line** [3] - 205:11, 227:4, 336:20
**lines** [2] - 197:23, 256:21
**LISA** [2] - 187:1, 366:3
**Lisa** [1] - 366:12
**list** [3] - 324:21, 325:6, 352:14
**listed** [1] - 300:22
**listen** [13] - 214:11, 219:11, 220:11,

229:8, 231:22, 283:6, 290:1, 291:17, 301:9, 315:21, 319:11, 327:12

**listened** [3] - 308:10, 319:7, 327:19

**listening** [9] - 214:9, 229:23, 257:7, 260:18, 292:1, 299:25, 319:8, 320:1, 320:4

**listenings** [1] - 319:10

**literally** [1] - 259:23

**litigation** [2] - 221:5, 310:5

**live** [5] - 242:3, 243:16, 267:14, 311:18, 318:2

**lived** [1] - 274:23

**lives** [3] - 267:4, 267:7, 281:6

**living** [14] - 189:20, 191:20, 208:3, 208:5, 213:18, 216:9, 249:20, 263:15, 266:22, 282:4, 318:4, 330:12, 342:1, 344:19

**local** [2] - 300:20, 344:11

**logarithm** [1] - 321:3

**look** [7] - 199:12, 207:6, 273:24, 282:13, 283:18, 289:21, 293:3

**looked** [3] - 203:4, 314:15, 335:23

**looking** [4] - 214:3, 260:17, 269:9, 322:16

**looks** [1] - 285:24

**losing** [1] - 295:10

**loss** [1] - 273:19

**low** [1] - 331:3

**luck** [1] - 325:11

**lump** [1] - 345:21

**lunging** [1] - 349:11

---

**M**

---

**ma'am** [20] - 217:5, 226:8, 233:16, 233:21, 236:22, 254:24, 268:23, 277:18, 278:16, 279:13, 280:6, 280:7, 282:2, 284:8, 285:12, 285:17, 340:9, 342:13, 347:3, 358:7

**Ma'am** [1] - 277:22

**main** [2] - 229:12, 246:2

**maintenance** [1] - 208:9

**manage** [1] - 191:21

**manager** [4] - 208:9, 328:16, 343:17

**mandate** [1] - 317:9

**manic** [2] - 323:22, 324:5

**manner** [7] - 228:2, 243:8, 253:23, 256:19, 280:13, 292:6, 292:14

**mark** [3] - 237:17, 238:23, 239:16

**Maryland** [3] - 186:21, 299:3, 299:9

**mask** [25] - 188:17, 190:20, 192:17, 205:19, 209:3, 215:4, 217:18, 226:10, 227:12, 237:11, 246:23, 251:2, 258:20, 265:25, 271:18, 277:20, 287:17, 294:20, 296:11, 305:3, 306:17, 325:17, 340:12, 343:1, 347:19

**Massachusetts** [1] - 196:6

**master's** [3] - 221:10, 221:12, 221:16

**matter** [23] - 194:11, 210:7, 210:10, 222:4, 226:2, 243:4, 243:5, 248:19, 273:16, 280:9, 280:10, 281:1, 307:9, 316:16, 329:25, 335:6, 337:6, 338:3, 349:20, 355:18, 357:12, 357:14, 361:8

**MATTHEW** [1] - 186:18

**meals** [1] - 255:5

**mean** [45] - 194:12, 201:12, 202:9, 203:18, 206:19, 207:1, 220:6, 224:13, 234:8, 234:19, 238:15, 239:15, 243:12, 245:18, 249:25, 266:19, 267:11, 279:8, 280:17, 286:14, 289:1, 289:6, 289:17, 291:18, 292:7,

292:19, 292:23, 295:7, 303:5, 303:15, 307:17, 321:25, 322:3, 323:7, 326:14, 327:6, 331:16, 331:24, 338:5, 341:17, 357:10, 360:13, 360:15

**means** [2] - 356:22

**meant** [1] - 301:24

**meantime** [1] - 336:1

**media** [13] - 230:4, 235:24, 264:22, 273:1, 276:12, 288:14, 290:5, 290:11, 308:4, 345:20, 345:22, 346:2

**Medicaid** [3] - 216:18, 216:25

**Medicare** [1] - 216:18

**medications** [2] - 242:15, 254:12

**medicine** [1] - 255:21

**MedStar** [1] - 342:5

**meet** [1] - 199:1

**member** [30] - 196:2, 196:20, 197:14, 218:5, 221:1, 232:17, 235:1, 235:23, 237:22, 247:9, 248:3, 252:25, 260:21, 265:6, 270:1, 270:2, 270:11, 270:22, 270:23, 278:5, 279:16, 290:14, 300:13, 300:19, 302:5, 310:9, 311:10, 328:2, 340:22

**members** [7] - 231:7, 237:22, 268:16, 320:1, 336:24, 344:15, 354:23

**memory** [2] - 214:7, 315:8

**mention** [5] - 195:12, 203:8, 211:15, 273:6, 291:20

**mentioned** [16] - 195:15, 202:13, 211:22, 211:24, 213:5, 225:9, 229:10, 235:17, 236:7, 265:5, 273:4, 312:14, 315:24, 316:9, 330:10, 339:3

**messages** [2] - 345:24, 356:23

**met** [2] - 315:11,

331:1

**Metropolitan** [2] - 303:4, 313:21

**mid-20s** [1] - 234:4

**Middle** [3] - 221:8, 221:20, 222:2

**might** [17] - 214:10, 224:9, 232:5, 236:3, 237:19, 241:8, 286:14, 286:15, 294:12, 300:4, 315:22, 324:21, 328:20, 331:2, 335:8, 339:13, 339:14

**miles** [1] - 318:2

**mind** [16] - 199:21, 199:23, 199:25, 202:16, 204:16, 204:17, 204:18, 220:23, 244:8, 304:3, 309:19, 315:21, 317:12, 317:17, 322:22, 323:16

**mine** [1] - 234:2

**minute** [2] - 210:3, 219:14

**minutes** [2] - 258:3, 274:11

**misdemeanor** [1] - 248:7

**misheard** [1] - 293:14

**missed** [1] - 291:17

**misunderstood** [1] - 300:16

**MOLLY** [1] - 186:14

**mom** [9] - 261:1, 261:8, 261:12, 265:10, 266:13, 266:25, 309:21, 310:1, 357:13

**mom's** [1] - 266:5

**moment** [1] - 228:11

**money** [1] - 345:24

**Montgomery** [1] - 186:24

**month** [1] - 282:16

**months** [6] - 242:20, 245:24, 259:13, 273:20, 348:25

**moral** [1] - 343:23

**morning** [21] - 219:11, 259:25, 263:4, 271:6, 288:24, 289:8, 315:16, 336:16, 338:18, 353:16, 354:6, 355:8, 356:6, 356:15, 358:1, 358:22, 359:22, 360:3, 364:18,

364:23, 365:11

**most** [11] - 203:4, 242:7, 262:3, 269:25, 272:12, 272:24, 289:6, 292:20, 298:2, 303:18, 329:3

**mostly** [11] - 196:9, 218:24, 219:15, 221:20, 246:1, 253:23, 253:24, 266:23, 273:1, 300:4, 304:9

**mother** [9] - 247:13, 265:16, 268:12, 269:25, 270:2, 270:10, 270:22, 309:24, 310:3

**motion** [5] - 204:5, 205:7, 237:1, 306:7, 306:8

**motions** [23] - 190:10, 192:7, 204:3, 208:19, 214:20, 217:9, 226:14, 246:11, 250:18, 257:15, 269:15, 277:11, 285:21, 296:2, 304:19, 323:5, 332:9, 340:1, 340:4, 342:17, 347:9, 350:22, 352:8

**motivated** [2] - 225:11, 341:12

**mouth** [1] - 202:2

**move** [4] - 204:19, 323:25, 340:2, 348:19

**moves** [1] - 285:22

**moving** [2] - 307:6, 314:9

**MR** [172] - 188:8, 190:3, 190:12, 192:2, 192:9, 200:12, 200:14, 200:22, 201:5, 201:11, 201:20, 201:25, 202:7, 202:15, 202:20, 203:1, 203:7, 203:15, 203:21, 204:4, 208:14, 208:21, 213:15, 213:17, 213:20, 213:24, 214:9, 214:14, 214:22, 217:4, 217:11, 224:22, 224:24, 225:14, 225:18, 225:23, 226:6, 226:18, 236:20, 237:2, 244:19, 244:24, 245:2, 245:6,

245:10, 245:14, 245:21, 246:4, 246:6, 246:14, 250:8, 250:20, 256:2, 256:13, 256:23, 257:6, 257:10, 257:17, 257:25, 258:13, 264:2, 264:4, 264:11, 264:18, 264:23, 264:25, 265:5, 265:9, 265:12, 265:14, 265:16, 265:19, 265:22, 265:24, 266:4, 266:8, 266:12, 266:15, 266:17, 266:24, 267:6, 267:10, 267:21, 267:24, 268:2, 268:4, 268:9, 268:11, 268:15, 268:18, 268:21, 269:16, 276:8, 276:10, 276:17, 276:22, 277:5, 277:13, 282:19, 282:21, 283:2, 283:4, 283:10, 283:12, 286:9, 286:25, 287:2, 295:17, 296:3, 303:22, 303:24, 304:6, 304:10, 304:13, 304:21, 306:4, 306:7, 317:1, 317:4, 317:11, 317:16, 317:23, 318:4, 318:11, 318:17, 318:25, 319:10, 319:15, 319:19, 320:8, 320:18, 321:1, 321:11, 321:16, 321:21, 322:6, 322:12, 322:18, 322:23, 322:25, 323:6, 331:12, 331:14, 331:19, 332:10, 339:20, 340:2, 342:11, 342:19, 346:14, 346:17, 346:21, 347:1, 347:10, 350:6, 350:8, 350:11, 350:17, 351:4, 352:10, 352:22, 353:18, 353:22, 360:12, 360:24, 361:4, 361:10, 361:20, 362:23, 363:6, 363:8, 365:13
**MS** [216] - 188:6, 189:17, 189:19,

189:23, 190:1, 190:11, 191:17, 191:19, 191:23, 191:25, 192:8, 198:8, 198:10, 198:22, 199:3, 199:13, 199:17, 199:22, 200:1, 200:4, 200:7, 200:10, 204:22, 207:24, 208:1, 208:5, 208:8, 208:11, 208:20, 213:3, 213:5, 213:8, 213:13, 214:21, 216:6, 216:8, 216:11, 216:15, 216:22, 217:1, 217:10, 223:4, 223:6, 223:14, 223:18, 223:21, 223:23, 224:8, 224:11, 224:16, 224:19, 226:15, 226:24, 235:15, 235:17, 236:7, 236:17, 244:3, 244:5, 244:11, 244:16, 246:13, 249:3, 249:5, 249:8, 249:10, 249:17, 249:20, 249:24, 250:5, 250:19, 255:17, 255:19, 255:23, 255:25, 257:16, 257:23, 258:12, 262:25, 263:2, 263:6, 263:11, 263:15, 263:18, 263:21, 263:24, 268:24, 269:3, 269:7, 269:11, 270:14, 275:15, 275:17, 275:20, 275:23, 275:25, 276:6, 277:12, 280:19, 282:2, 282:4, 282:7, 282:9, 282:17, 284:3, 284:11, 284:14, 284:19, 284:24, 285:3, 285:7, 285:10, 285:22, 286:16, 295:14, 301:3, 301:5, 301:9, 301:12, 301:16, 301:18, 301:22, 302:2, 303:2, 303:10, 303:13, 303:20, 304:20, 312:5, 312:11, 312:17, 312:23, 313:4, 313:8, 313:10, 313:13, 313:16, 313:20, 313:23, 314:3, 314:10,

314:12, 314:20, 315:5, 315:12, 315:15, 315:19, 315:24, 316:2, 316:9, 316:14, 316:21, 316:24, 324:3, 329:10, 329:12, 329:20, 330:2, 330:7, 330:10, 330:23, 331:3, 331:6, 331:9, 331:20, 331:23, 332:2, 332:15, 337:25, 338:2, 338:11, 338:15, 338:19, 338:22, 338:25, 339:3, 339:6, 339:9, 339:13, 339:18, 340:3, 341:25, 342:4, 342:7, 342:9, 342:18, 346:11, 347:11, 350:4, 351:8, 351:10, 351:12, 351:15, 351:18, 351:24, 352:3, 352:9, 352:19, 353:25, 360:4, 360:7, 361:1, 361:22, 361:24, 362:16, 362:20, 362:22, 363:9, 363:22, 364:8, 364:11, 364:13, 364:21, 364:24, 365:1, 365:4
**muffling** [1] - 265:25
**murdered** [3] - 222:19, 278:22, 311:15
**Museum** [1] - 250:3
**museum** [6] - 235:24, 263:16, 263:20, 263:21, 267:15, 267:21
**must** [3] - 354:5, 356:19, 356:25

## N

**name** [8] - 202:18, 213:6, 214:6, 219:20, 273:10, 301:21, 319:23, 328:11
**names** [2] - 211:20, 273:12
**NASA** [7] - 239:3, 239:4, 239:5, 239:7, 239:13, 243:13, 244:21, 244:23, 244:24
**nation** [1] - 343:20
**national** [1] - 308:3

**National** [1] - 342:5
**nature** [3] - 201:5, 228:17, 343:11
**nausea** [2] - 255:4, 255:5
**nauseous** [1] - 255:6
**NBC** [1] - 297:12
**necessarily** [2] - 307:10, 360:15
**necessity** [1] - 336:20
**need** [12] - 188:4, 230:2, 233:3, 305:4, 325:18, 332:10, 332:12, 333:7, 340:13, 354:7, 359:23, 364:22
**needed** [2] - 276:5, 300:6
**needs** [1] - 213:22
**negative** [1] - 331:6
**neighbor** [1] - 344:17
**networking** [1] - 356:13
**neutral** [4] - 243:14, 256:15, 262:18, 271:6
**neutrally** [1] - 204:9
**never** [6] - 198:24, 247:17, 274:13, 274:14, 317:25, 363:1
**New** [15] - 234:5, 256:11, 274:23, 281:6, 281:10, 281:13, 348:14, 348:19, 348:22, 348:24, 350:9, 350:10, 350:14
**news** [42] - 194:4, 198:16, 198:17, 199:18, 203:11, 210:10, 223:7, 228:11, 229:12, 229:23, 240:7, 253:8, 260:3, 262:3, 262:4, 262:5, 264:16, 264:21, 272:9, 272:23, 273:1, 289:2, 289:8, 290:2, 290:8, 297:1, 297:3, 297:11, 298:3, 298:5, 301:5, 305:21, 307:5, 308:4, 318:22, 320:9, 320:22, 323:18, 326:6, 327:19, 341:10, 341:11
**News** [5] - 256:10, 273:2, 297:12, 320:22, 324:7
**newsletter** [2] -

335:2, 336:17
**newspaper** [2] - 209:19, 234:5
**newspapers** [2] - 209:17, 209:18
**next** [18] - 188:5, 227:7, 238:23, 257:20, 258:2, 274:8, 281:13, 281:16, 281:17, 281:20, 281:22, 295:5, 336:23, 344:16, 355:10, 355:15, 357:17, 357:25
**next-door** [1] - 344:16
**NICHOLS** [1] - 186:10
**night** [2] - 223:10, 358:19
**nine** [1] - 239:11
**nobody** [1] - 198:1
**noncompliance** [2] - 321:24, 323:13
**none** [3] - 188:22, 202:18, 357:18
**normally** [1] - 356:1
**Northeast** [1] - 302:13
**Northwest** [5] - 186:16, 187:3, 302:12, 342:8, 366:14
**Nos** [3] - 271:25, 278:4, 287:25
**note** [5] - 188:21, 190:24, 209:10, 215:9
**notes** [1] - 366:5
**nothing** [10] - 197:21, 229:19, 229:20, 272:10, 302:19, 314:1, 341:7, 341:22, 346:11, 350:1
**notification** [3] - 308:5, 320:12, 321:9
**notifications** [2] - 320:19, 320:24
**noting** [1] - 288:17
**notion** [1] - 330:4
**notwithstanding** [1] - 239:23
**November** [1] - 222:19
**NPR** [2] - 219:11, 264:9
**number** [4] - 300:22, 328:14, 345:12, 359:8

# O

**object** [3] - 226:16, 226:20, 226:24
**objection** [1] - 353:24
**objective** [2] - 336:7, 344:3
**obstruction** [1] - 229:2
**obvious** [2] - 224:5, 271:9
**obviously** [12] - 204:7, 225:15, 228:10, 242:21, 254:14, 266:19, 296:21, 323:7, 341:3, 358:1, 359:19, 360:22
**occasionally** [1] - 253:21
**occurred** [1] - 269:4
**OF** [5] - 186:1, 186:3, 186:10, 186:15, 186:22
**OFF** [2] - 234:20, 255:14
**offer** [1] - 242:17
**offered** [1] - 320:4
**office** [14] - 216:13, 216:20, 216:25, 235:21, 244:23, 252:19, 266:11, 316:15, 317:9, 358:16, 359:7, 359:9, 359:11, 359:20
**OFFICE** [1] - 186:15
**Office** [7] - 249:18, 330:18, 343:17, 348:7, 348:15, 348:22, 350:14
**officer** [5] - 279:20, 294:4, 294:6, 294:13, 344:20
**officers** [3] - 294:2, 344:18
**OFFICES** [1] - 186:22
**official** [1] - 366:12
**Official** [1] - 187:1
**officials** [1] - 245:7
**often** [3] - 253:22, 256:8, 350:15
**oftentimes** [2] - 308:5, 350:25
**ombudsman** [2] - 216:14, 216:15
**once** [6] - 223:16, 339:8, 339:9, 358:20, 360:8, 364:3

**oncoming** [1] - 251:16
**one** [70] - 200:17, 200:21, 203:4, 204:5, 205:22, 209:17, 210:11, 211:22, 214:4, 219:13, 225:6, 225:8, 229:21, 230:1, 233:3, 233:4, 233:14, 237:21, 241:23, 241:25, 242:22, 247:24, 248:2, 256:3, 261:19, 265:10, 268:24, 270:19, 271:6, 273:10, 274:16, 279:15, 285:23, 286:15, 286:25, 291:23, 293:13, 293:19, 294:15, 294:20, 298:5, 298:9, 299:23, 300:5, 300:6, 301:25, 302:12, 302:19, 314:15, 319:5, 320:1, 320:2, 322:11, 324:19, 324:22, 327:8, 329:23, 335:4, 335:8, 340:17, 349:24, 355:6, 355:14, 356:5, 360:7, 361:22, 362:12, 363:3, 363:20
**ones** [5] - 200:19, 237:20, 291:22, 320:23, 320:24
**ongoing** [2] - 221:11, 253:11
**online** [2] - 229:23, 249:25
**open** [12] - 214:9, 226:4, 227:3, 234:22, 255:14, 257:6, 278:8, 280:4, 285:14, 311:8, 313:2, 315:20
**openings** [1] - 354:12
**operate** [1] - 197:9
**operations** [1] - 266:10
**opinion** [36] - 199:17, 199:19, 200:4, 202:7, 204:11, 204:13, 205:1, 206:24, 207:2, 207:8, 219:22, 220:1, 220:2, 220:5, 220:18, 223:23, 224:7, 224:8, 232:11, 240:20, 260:12, 305:21, 305:23, 305:24,

308:13, 308:16, 309:6, 329:12, 329:13, 329:20, 334:21, 341:8, 341:13, 341:14, 343:22, 349:23
**opinions** [45] - 193:24, 194:5, 194:6, 194:10, 194:17, 198:11, 198:13, 205:25, 210:12, 212:6, 228:20, 231:15, 241:2, 243:5, 251:21, 273:15, 280:10, 289:12, 289:19, 289:20, 291:1, 291:6, 292:4, 292:12, 292:20, 292:22, 293:7, 294:2, 305:16, 307:3, 307:9, 307:11, 308:23, 309:11, 326:1, 326:9, 326:10, 331:14, 331:24, 331:25, 334:23, 335:9, 335:14, 344:2, 345:14
**opportunity** [3] - 295:10, 354:16, 362:10
**opposed** [1] - 332:13
**opposition** [1] - 347:11
**Option** [1] - 353:18
**orbit** [5] - 202:19, 247:9, 252:4, 298:20, 340:22
**order** [5] - 220:9, 259:1, 352:15, 352:16, 352:25
**orders** [2] - 274:2, 346:23
**organization** [1] - 301:18
**original** [1] - 364:1
**OSC** [2] - 348:20, 348:23
**otherwise** [7] - 222:15, 260:2, 287:7, 290:10, 290:11, 294:18, 327:13
**outcome** [2] - 273:16, 275:4
**outside** [11] - 236:12, 253:23, 263:3, 263:7, 277:1, 304:2, 311:17, 315:22, 324:10, 332:6, 354:7
**outstanding** [1] - 364:14

**overnight** [2] - 357:5, 364:22
**overrunning** [1] - 201:22
**own** [4] - 241:10, 267:6, 301:21, 322:22

# P

**p.m** [3] - 186:7, 354:24, 359:17
**page** [1] - 270:9
**paid** [1] - 295:8
**pandemic** [1] - 300:10
**panel** [2] - 237:22, 354:24
**papers** [1] - 364:19
**paragraphs** [1] - 253:13
**paralegal** [5] - 221:6, 221:23, 224:3, 224:12, 224:25
**paralegals** [1] - 309:22
**pare** [1] - 359:3
**parents** [1] - 247:12
**parks** [1] - 208:6
**parole** [1] - 249:16
**Part** [1] - 237:3
**part** [15] - 202:16, 220:17, 230:1, 230:7, 230:13, 232:21, 235:18, 236:1, 269:9, 275:21, 299:24, 330:12, 343:25, 350:13, 356:16
**part-time** [1] - 275:21
**parte** [1] - 346:23
**partial** [1] - 298:5
**particular** [13] - 211:20, 220:7, 223:8, 225:6, 228:16, 271:1, 284:20, 286:5, 308:14, 316:18, 319:9, 326:8, 355:14
**particularly** [4] - 196:23, 203:12, 222:13, 320:25
**parties** [12] - 192:24, 228:18, 257:21, 343:12, 353:8, 353:10, 353:12, 360:9, 361:12, 361:16, 362:9, 363:10
**partner** [2] - 241:7, 333:9, 333:11, 333:16, 338:4,

338:12, 357:13
**party** [4] - 245:17, 270:19, 310:23, 360:16
**pass** [5] - 360:9, 360:20, 361:1, 361:7, 361:16
**passed** [1] - 361:7
**passes** [2] - 360:8, 361:6
**passing** [5] - 200:20, 219:10, 360:12, 360:15, 360:23
**past** [11] - 203:12, 270:17, 282:14, 285:25, 294:8, 309:24, 319:25, 320:5, 339:4, 339:5, 339:7
**patent** [1] - 340:24
**patience** [1] - 355:2
**patient** [1] - 256:9
**pay** [2] - 294:17, 295:10
**paying** [2] - 207:9, 349:12
**pediatrics** [1] - 255:22
**Pelosi** [1] - 344:16
**pendency** [1] - 327:11
**Pennsylvania** [1] - 328:12
**people** [29] - 202:19, 202:23, 205:8, 205:11, 207:7, 242:6, 243:20, 273:9, 292:5, 292:12, 294:22, 294:23, 295:1, 310:11, 310:13, 319:6, 324:6, 324:14, 329:22, 337:10, 341:20, 344:11, 356:23, 357:11, 357:18, 357:19, 358:4, 359:2, 362:8
**percent** [2] - 232:6, 236:15
**perception** [5] - 203:15, 214:2, 265:1, 265:2, 265:3
**peremptories** [16] - 353:2, 353:3, 353:6, 353:9, 353:15, 353:21, 354:8, 359:23, 359:25, 360:5, 360:13, 360:22, 361:11, 362:11, 364:6, 365:3
**peremptory** [3] -

360:15, 360:21, 363:21
**perfect** [1] - 213:24
**perhaps** [7] - 192:23, 214:3, 222:24, 311:23, 333:15, 335:7, 354:17
**periods** [1] - 255:6
**permitted** [2] - 356:3, 356:7
**perpetrator** [1] - 313:16
**person** [15] - 225:12, 235:8, 241:9, 242:22, 249:15, 274:10, 303:8, 303:9, 331:25, 340:22, 362:13, 362:19, 362:25, 363:12
**person's** [3] - 241:9, 241:20, 329:21
**personal** [18] - 196:23, 222:14, 228:9, 231:21, 241:1, 241:23, 247:25, 254:14, 278:7, 309:11, 310:11, 311:14, 328:19, 336:3, 336:20, 343:22, 345:9, 348:2
**personally** [5] - 203:18, 283:15, 311:16, 318:5, 334:5
**perspective** [3] - 229:4, 309:13, 331:17
**phone** [19] - 196:23, 222:14, 233:4, 233:8, 235:7, 242:17, 247:25, 254:15, 278:9, 282:23, 302:8, 308:5, 311:14, 314:24, 320:9, 320:16, 324:6, 330:21
**phones** [1] - 241:24
**photo** [3] - 244:22, 244:23, 313:19
**photograph** [2] - 245:3, 245:6
**photographer** [4] - 243:17, 244:22, 245:12
**photography** [1] - 290:20
**photos** [1] - 290:23
**physical** [3] - 242:15, 254:12, 342:2
**physician** [2] - 253:20, 255:20
**pick** [3] - 241:23, 247:25, 313:18

**picks** [1] - 320:22
**place** [2] - 222:6, 324:20
**Plaintiff** [1] - 186:4
**plan** [3] - 281:15, 282:10, 359:20
**planning** [1] - 202:1
**plans** [2] - 251:15, 281:12
**Platts** [1] - 328:11
**play** [2] - 335:13, 350:19
**played** [2] - 240:11, 350:18
**player** [3] - 265:4, 269:20, 336:8
**plea** [1] - 299:25
**pled** [1] - 249:15
**plenty** [1] - 242:3
**podcasts** [1] - 193:7
**podium** [4] - 190:17, 192:14, 205:17, 209:1
**point** [9] - 203:14, 238:18, 293:19, 314:4, 323:7, 345:21, 358:2, 361:12, 362:9
**points** [1] - 314:16
**police** [10] - 242:6, 242:8, 285:4, 294:10, 302:17, 302:18, 303:10, 313:18, 314:7, 344:18
**Police** [2] - 303:4, 313:21
**political** [6] - 241:8, 241:9, 265:4, 270:19, 309:12, 331:17
**politically** [2] - 203:18, 341:12
**politics** [14] - 193:10, 203:10, 203:12, 244:12, 249:22, 264:17, 269:18, 270:17, 270:20, 289:2, 334:9, 336:8, 339:10
**pool** [6] - 288:6, 299:24, 361:24, 363:23, 363:24, 364:3
**pop** [1] - 230:6
**popping** [1] - 230:8
**popular** [2] - 202:5, 203:4
**populated** [1] - 294:22
**portion** [2] - 219:18, 325:9
**portions** [5] - 195:12, 240:13, 253:19, 298:1, 308:9

**position** [3] - 189:25, 338:11, 360:18
**positions** [1] - 322:9
**possession** [1] - 197:3
**possibility** [6] - 232:7, 235:20, 286:22, 295:5, 353:5, 357:23
**possible** [3] - 228:6, 280:25, 284:3
**possibly** [2] - 201:18, 281:22
**Post** [3] - 209:20, 229:12, 256:11
**post** [1] - 230:3
**posting** [3] - 290:6, 356:12, 356:21
**postings** [1] - 229:23
**posts** [1] - 193:6
**potential** [11] - 237:25, 238:2, 238:5, 270:15, 271:1, 356:24, 357:1, 357:11, 358:3, 362:3, 363:4
**potentially** [3] - 254:9, 328:19, 355:12
**practice** [3] - 196:8, 304:8, 344:9
**practicing** [1] - 196:6
**Pratt** [1] - 186:20
**pre** [2] - 300:10, 323:8
**pre-information** [1] - 323:8
**pre-pandemic** [1] - 300:10
**preconceived** [2] - 324:25, 330:4
**predisposition** [1] - 322:14
**preexisting** [3] - 270:9, 287:7, 327:2
**prefer** [1] - 245:23
**preferential** [1] - 345:11
**preferred** [1] - 364:17
**pregnancy** [1] - 255:4
**pregnant** [3] - 242:20, 242:22, 245:24
**presence** [3] - 315:10, 315:11, 354:7
**present** [1] - 290:15
**presented** [10] - 201:9, 201:13, 228:3, 236:10, 280:14,

283:7, 292:15, 326:23, 337:20, 357:8
**presently** [1] - 239:8
**president** [2] - 210:2, 309:4
**President** [9] - 202:16, 241:6, 264:15, 309:7, 309:12, 316:10, 317:6, 317:18, 349:10
**presidential** [1] - 210:3
**pressured** [1] - 286:2
**pretense** [1] - 286:19
**pretty** [25] - 198:19, 198:20, 207:7, 229:5, 238:3, 241:14, 242:25, 254:14, 255:4, 291:18, 314:2, 317:21, 322:21, 326:17, 326:20, 327:18, 327:20, 327:22, 329:1, 329:13, 330:15, 330:16, 336:6, 336:7, 337:7
**prevent** [5] - 213:10, 228:18, 241:8, 343:12, 362:25
**previous** [1] - 210:1
**primarily** [2] - 229:11, 310:3
**prime** [1] - 195:7
**print** [1] - 272:24
**private** [1] - 300:21
**privately** [3] - 250:13, 295:22, 358:14
**privilege** [1] - 345:6
**problem** [5] - 211:7, 226:11, 266:4, 274:1, 281:23
**problematic** [2] - 248:12, 275:9
**problems** [2] - 214:4, 312:20
**procedural** [1] - 357:22
**procedure** [1] - 312:21
**proceed** [2] - 188:5, 352:23, 360:11
**Proceedings** [1] - 365:12
**proceedings** [62] - 188:14, 190:9, 190:16, 192:6, 192:13, 204:2, 205:16, 208:18,

208:25, 214:19, 215:1, 217:8, 217:15, 226:13, 227:10, 233:12, 234:21, 236:25, 237:8, 246:10, 246:20, 250:17, 250:24, 254:22, 255:13, 257:14, 258:6, 258:17, 269:14, 271:15, 277:10, 277:17, 278:14, 280:3, 284:6, 285:13, 285:20, 287:14, 296:1, 296:8, 304:18, 304:25, 306:3, 306:14, 310:18, 311:7, 312:8, 313:1, 323:4, 325:15, 332:8, 332:19, 339:25, 340:8, 342:16, 342:23, 347:8, 347:16, 352:7, 354:25, 359:17, 366:6
**process** [8] - 222:7, 248:10, 256:16, 312:21, 320:19, 350:18, 356:15, 360:3
**produce** [2] - 345:5, 350:22
**produced** [1] - 366:6
**product** [1] - 276:18
**product-related** [1] - 276:18
**profession** [11] - 196:3, 221:2, 232:17, 247:10, 253:1, 293:12, 298:21, 309:19, 340:23, 343:22, 348:3
**professional** [1] - 336:6
**professionalism** [1] - 365:9
**program** [5] - 189:25, 218:15, 221:10, 221:12, 282:5
**project** [1] - 328:16
**prominent** [2] - 203:11, 203:13
**proof** [1] - 301:13
**properly** [1] - 314:16
**proposing** [1] - 363:17
**proprietor** [1] - 301:20
**prosecute** [2] - 314:7, 316:21
**prosecuted** [2] - 241:18, 249:13

prosecution [2] -
315:1, 320:13
prosecutions [3] -
348:16, 348:17,
348:18
prosecutor [6] -
196:12, 232:24,
247:16, 314:4,
316:15, 330:19
prosecutor's [1] -
264:11
prospective [3] -
233:23, 237:22,
354:24
Prospective [46] -
188:13, 190:8,
190:15, 192:5,
192:12, 204:1,
205:15, 208:17,
208:24, 214:18,
214:25, 217:7,
217:14, 226:12,
227:9, 236:24, 237:7,
246:9, 246:19,
250:16, 250:23,
257:13, 258:16,
269:13, 271:14,
277:9, 277:16,
285:19, 287:13,
295:25, 296:7,
304:17, 304:24,
306:2, 306:13, 323:3,
325:14, 332:7,
332:18, 339:24,
340:7, 342:15,
342:22, 347:7,
347:15, 352:6
PROSPECTIVE [715]
- 188:16, 188:20,
188:24, 189:4, 189:9,
189:14, 189:18,
189:21, 189:24,
190:7, 190:19,
190:23, 191:1, 191:5,
191:9, 191:14,
191:18, 191:21,
191:24, 192:16,
192:20, 192:25,
193:9, 193:15,
193:19, 194:1, 194:4,
194:7, 194:12,
194:15, 194:20,
195:2, 195:6, 195:14,
195:19, 195:24,
196:5, 196:9, 196:13,
196:18, 197:1, 197:6,
197:11, 197:16,
197:20, 197:24,
198:4, 198:15, 199:2,
199:8, 199:16,

199:20, 199:24,
200:3, 200:6, 200:9,
200:13, 200:17,
200:25, 201:8,
201:15, 201:24,
202:3, 202:9, 202:18,
202:22, 203:3,
203:10, 203:17,
203:25, 205:21,
206:8, 206:12,
206:16, 206:20,
206:23, 207:1, 207:5,
207:13, 207:16,
207:21, 207:25,
208:4, 208:6, 208:9,
208:12, 208:16,
209:2, 209:5, 209:9,
209:16, 209:20,
209:24, 210:8,
210:11, 210:14,
210:16, 210:20,
211:2, 211:12,
211:14, 211:18,
212:3, 212:10,
212:13, 212:21,
212:25, 213:4, 213:7,
213:12, 213:16,
213:19, 213:21,
214:8, 214:13,
214:17, 215:3, 215:6,
215:8, 215:12,
215:17, 215:20,
215:23, 216:3, 216:7,
216:10, 216:13,
216:16, 216:24,
217:2, 217:6, 217:17,
217:20, 217:22,
218:3, 218:9, 218:15,
218:18, 218:23,
219:3, 219:9, 219:20,
219:25, 220:6,
220:15, 220:21,
221:4, 221:10,
221:14, 221:16,
221:19, 221:24,
222:5, 222:10,
222:16, 222:18,
222:21, 222:25,
223:2, 223:5, 223:9,
223:16, 223:19,
223:22, 224:2,
224:10, 224:15,
224:18, 224:20,
224:23, 225:5,
225:17, 225:20,
226:4, 226:9, 227:14,
227:18, 228:5, 228:8,
228:24, 229:11,
229:19, 229:25,
230:11, 230:19,
231:1, 231:12,

231:20, 232:6, 232:9,
232:15, 232:19,
232:22, 232:25,
233:2, 233:7, 233:9,
233:17, 233:20,
233:22, 233:25,
234:2, 234:18, 235:3,
235:5, 235:7, 235:10,
235:13, 235:16,
235:22, 236:14,
236:18, 236:23,
237:10, 237:14,
237:25, 238:4, 238:7,
238:9, 238:15,
238:22, 239:2, 239:5,
239:9, 239:11,
239:15, 240:3, 240:6,
240:12, 240:16,
240:23, 241:4,
241:13, 241:19,
241:21, 242:2, 242:7,
242:13, 242:19,
243:1, 243:12,
243:25, 244:4,
244:10, 244:15,
244:17, 244:22,
245:1, 245:3, 245:8,
245:13, 245:18,
245:25, 246:5, 246:8,
246:22, 247:1, 247:7,
247:12, 247:17,
247:21, 248:1, 248:6,
248:9, 248:14,
248:21, 248:25,
249:4, 249:7, 249:9,
249:12, 249:14,
249:19, 249:21,
249:25, 250:6,
250:11, 250:15,
251:1, 251:5, 251:8,
251:14, 251:19,
251:23, 252:2, 252:8,
252:12, 252:14,
252:16, 252:18,
252:21, 252:23,
253:3, 253:10,
253:18, 253:20,
254:5, 254:10,
254:17, 254:25,
255:3, 255:10,
255:12, 255:18,
255:21, 255:24,
256:7, 256:15, 257:3,
257:9, 257:12,
258:19, 258:23,
259:5, 259:9, 259:13,
259:17, 259:23,
260:2, 260:8, 260:14,
260:19, 261:1, 261:4,
261:6, 261:10,
261:13, 261:15,

262:2, 262:7, 262:9,
262:16, 262:22,
263:1, 263:5, 263:10,
263:14, 263:16,
263:19, 263:22,
264:3, 264:6, 264:14,
264:21, 264:24,
265:2, 265:8, 265:11,
265:13, 265:15,
265:18, 265:20,
265:23, 266:2, 266:7,
266:9, 266:14,
266:16, 266:18,
267:1, 267:9, 267:11,
267:23, 267:25,
268:3, 268:7, 268:10,
268:14, 268:17,
268:19, 269:6,
269:10, 271:17,
271:20, 271:23,
272:6, 272:22, 273:8,
273:17, 274:1, 274:7,
274:16, 274:20,
274:22, 275:2, 275:6,
275:12, 275:16,
275:19, 275:21,
275:24, 276:2, 276:9,
276:13, 276:20,
277:4, 277:6, 277:8,
277:19, 277:24,
278:11, 278:17,
278:21, 279:1, 279:6,
279:11, 279:18,
279:20, 279:22,
280:1, 280:17,
280:22, 281:5,
281:11, 281:14,
281:16, 281:18,
281:24, 282:5, 282:8,
282:15, 282:20,
283:1, 283:3, 283:9,
283:11, 283:16,
283:20, 283:22,
283:25, 284:9,
284:13, 284:16,
284:22, 285:1, 285:6,
285:8, 285:11,
285:18, 287:16,
287:20, 287:24,
288:2, 288:8, 288:13,
288:15, 289:1,
289:13, 289:17,
289:21, 290:4,
290:12, 290:17,
290:19, 291:3, 291:8,
291:14, 291:16,
291:22, 292:8,
292:17, 292:19,
292:23, 293:1, 293:9,
293:14, 293:17,
293:21, 294:7,

294:14, 294:19,
295:2, 295:7, 295:20,
295:24, 296:10,
296:13, 296:15,
296:24, 297:4, 297:8,
297:12, 297:17,
298:2, 298:8, 298:14,
298:18, 298:22,
298:25, 299:3, 299:5,
299:11, 299:16,
299:19, 299:22,
300:2, 300:10,
300:16, 300:24,
301:4, 301:8, 301:11,
301:15, 301:17,
301:20, 301:25,
302:9, 302:11,
302:15, 302:18,
302:24, 303:5,
303:12, 303:15,
303:23, 304:5, 304:9,
304:11, 304:16,
305:2, 305:5, 305:7,
305:20, 305:24,
306:16, 306:20,
307:5, 307:10,
307:13, 307:19,
308:3, 308:10,
308:14, 308:18,
309:3, 309:9, 309:15,
309:21, 309:24,
310:3, 310:7, 310:14,
310:21, 311:1, 311:5,
311:15, 311:21,
312:2, 312:16,
312:19, 312:25,
313:7, 313:9, 313:12,
313:15, 313:17,
313:22, 313:25,
314:6, 314:11,
314:14, 314:23,
315:7, 315:14,
315:17, 315:23,
316:1, 316:8, 316:13,
316:20, 316:23,
317:3, 317:8, 317:14,
317:19, 317:24,
318:6, 318:14,
318:20, 319:3,
319:14, 319:16,
319:22, 320:11,
320:21, 321:6,
321:15, 321:18,
321:20, 322:2,
322:11, 322:17,
322:19, 322:24,
323:2, 325:20,
325:23, 326:6,
326:11, 326:14,
326:25, 327:6,
327:17, 328:6,

328:10, 328:16, 328:25, 329:7, 329:11, 329:17, 329:24, 330:6, 330:9, 330:13, 330:15, 330:20, 331:1, 331:4, 331:8, 331:10, 331:13, 331:16, 332:1, 332:3, 332:5, 332:21, 332:23, 333:4, 333:9, 333:11, 333:14, 333:17, 333:20, 334:3, 334:9, 334:13, 334:16, 334:25, 335:12, 335:20, 335:23, 336:5, 336:14, 336:16, 337:1, 337:7, 337:14, 337:18, 337:22, 338:1, 338:5, 338:13, 338:17, 338:21, 338:24, 339:2, 339:5, 339:8, 339:12, 339:16, 339:23, 340:10, 340:15, 340:20, 340:24, 341:2, 341:7, 341:10, 341:16, 341:18, 341:22, 342:2, 342:5, 342:8, 342:14, 342:25, 343:4, 343:9, 343:15, 344:4, 344:7, 345:2, 345:18, 346:8, 346:16, 346:19, 346:22, 347:2, 347:4, 347:6, 347:18, 347:22, 348:5, 348:7, 348:10, 348:14, 348:18, 348:21, 348:25, 349:8, 349:16, 349:21, 350:1, 350:7, 350:10, 350:13, 350:20, 351:7, 351:14, 351:17, 351:21, 352:2, 352:5, 358:8, 358:18

**protesting** [1] - 207:7

**Proud** [1] - 291:23

**prove** [2] - 198:24, 301:14

**proved** [1] - 257:8

**provide** [3] - 229:3, 256:18, 333:7

**provided** [3] - 252:5, 256:22, 260:22

**providing** [1] - 222:13

**public** [10] - 193:4, 200:16, 201:6, 231:23, 231:25, 236:8, 263:17, 263:19, 302:8, 335:17

**publicly** [1] - 196:25

**pull** [1] - 254:20

**purposes** [2] - 235:12, 317:14

**purse** [2] - 275:2, 275:18

**purse-snatching** [2] - 275:2, 275:18

**pursuant** [1] - 333:18

**put** [25] - 200:1, 202:1, 204:25, 211:3, 211:4, 228:8, 229:4, 230:20, 233:11, 236:5, 238:23, 239:16, 264:7, 276:25, 278:12, 281:8, 288:3, 289:9, 293:6, 303:7, 304:2, 317:11, 322:12, 330:4, 351:24

**putting** [6] - 227:24, 240:19, 241:1, 280:11, 292:4, 292:11

## Q

**qualifications** [1] - 276:4

**qualified** [14] - 205:12, 208:22, 214:23, 217:12, 226:19, 237:5, 246:17, 257:19, 257:21, 277:14, 287:11, 347:13, 352:14, 354:14

**qualify** [4] - 190:13, 192:10, 304:22, 352:11

**questioning** [1] - 270:25

**Questions** [22] - 194:21, 210:21, 218:1, 228:16, 230:16, 247:5, 251:10, 253:4, 258:25, 261:17, 272:14, 291:10, 291:11, 297:18, 305:12, 307:22, 309:16, 325:21, 325:22, 333:2, 343:7, 347:25

**questions** [92] -

188:22, 189:1, 189:11, 190:3, 190:25, 191:3, 191:11, 192:2, 192:22, 192:23, 193:1, 198:12, 198:23, 207:18, 208:14, 209:12, 210:22, 212:23, 215:10, 215:14, 215:25, 217:24, 217:25, 218:25, 226:16, 227:3, 227:5, 227:16, 227:17, 227:19, 228:15, 229:21, 232:8, 237:16, 237:18, 237:19, 239:19, 244:11, 247:3, 247:4, 248:17, 250:8, 251:7, 251:10, 256:3, 258:25, 262:19, 264:12, 271:25, 272:1, 272:15, 276:22, 278:1, 278:2, 278:4, 285:16, 286:18, 287:22, 287:23, 289:15, 293:10, 294:15, 295:15, 295:17, 296:17, 296:18, 297:19, 305:9, 305:10, 305:11, 305:19, 306:22, 306:23, 307:4, 317:5, 325:25, 332:25, 333:1, 333:2, 339:20, 341:4, 343:6, 343:7, 345:13, 347:24, 350:4, 358:6, 359:5, 360:5, 364:10

**quick** [1] - 346:14

**quickly** [4] - 269:3, 352:24, 353:11, 353:13

**quite** [2] - 273:11, 275:7

## R

**radar** [1] - 336:20

**radio** [6] - 259:24, 260:5, 263:3, 264:5, 270:4, 271:5

**random** [1] - 202:23

**raped** [1] - 234:3

**rarely** [1] - 273:2

**rather** [7] - 227:5, 278:10, 286:19, 353:9, 355:9, 359:2,

363:2

**RDR** [3] - 187:1, 366:3, 366:12

**re** [1] - 288:3

**re-asked** [1] - 288:3

**reach** [1] - 335:9

**reached** [6] - 205:9, 240:20, 273:15, 274:24, 344:10, 339:4

**reaching** [1] - 274:19

**reaction** [1] - 220:23

**read** [91] - 191:11, 192:21, 193:23, 193:25, 194:24, 195:1, 195:4, 195:8, 198:13, 198:15, 209:14, 210:10, 217:23, 219:11, 223:14, 227:15, 228:12, 229:12, 230:9, 231:10, 237:15, 238:12, 238:17, 240:18, 247:2, 248:17, 251:6, 251:11, 253:7, 253:12, 254:2, 254:3, 256:11, 258:24, 259:19, 261:19, 261:22, 272:4, 272:16, 272:17, 272:18, 277:25, 280:20, 287:21, 288:22, 290:1, 290:10, 291:12, 292:3, 292:10, 296:16, 296:21, 297:20, 300:18, 305:8, 305:15, 305:17, 305:21, 306:21, 306:25, 307:2, 307:5, 314:21, 314:22, 315:15, 315:16, 315:17, 319:12, 319:17, 321:2, 321:4, 326:15, 327:13, 327:19, 332:24, 335:13, 335:15, 336:11, 340:16, 341:5, 343:5, 344:1, 345:21, 347:23, 349:4, 349:9, 349:10, 349:17, 357:15, 364:19, 364:22

**reading** [17] - 199:17, 209:22, 209:24, 210:6, 210:13, 210:18, 229:23, 231:6, 253:24, 254:7,

272:19, 272:23, 273:6, 335:10, 357:4, 357:20, 358:5

**readouts** [1] - 319:6

**ready** [1] - 286:3

**real** [4] - 235:25, 247:13, 281:21, 310:4

**realize** [1] - 296:25

**realized** [1] - 223:17

**really** [33] - 206:8, 207:6, 207:7, 211:5, 219:16, 220:2, 225:12, 234:8, 236:5, 238:16, 249:22, 261:18, 262:9, 265:3, 267:13, 280:20, 289:6, 291:8, 294:22, 309:18, 318:3, 321:7, 329:25, 332:12, 336:23, 338:2, 341:16, 341:17, 344:23, 345:20, 349:12, 354:11

**reason** [7] - 210:17, 239:16, 245:24, 265:24, 294:19, 348:4, 358:25

**reasonable** [1] - 257:8

**reasons** [5] - 271:11, 285:23, 286:14, 287:6, 354:15

**rec** [1] - 208:6

**receive** [2] - 320:19, 348:11

**received** [6] - 256:24, 256:25, 257:4, 299:22, 299:23, 344:25

**receives** [1] - 218:12

**receiving** [3] - 310:22, 312:14, 323:18

**recent** [2] - 234:15, 291:23

**recently** [2] - 231:12, 245:5

**reception** [1] - 245:5

**recess** [2] - 258:1, 258:5

**recipient** [1] - 216:25

**recipients** [2] - 216:18, 216:19

**recitation** [1] - 271:7

**recognized** [2] - 237:21, 288:5

**recognizing** [2] - 220:4, 242:23

**recollection** [3] - 195:17, 199:5, 256:14

**record** [25] - 188:2, 192:21, 209:11, 215:9, 217:23, 227:15, 233:10, 237:15, 247:2, 251:6, 258:4, 258:8, 258:24, 271:24, 277:25, 287:21, 296:16, 302:8, 305:8, 306:21, 332:24, 340:16, 343:5, 347:23, 359:18
**records** [1] - 334:16
**REDACT** [7] - 233:14, 234:20, 254:23, 255:14, 278:15, 284:7, 310:19
**redact** [2] - 285:14, 312:9
**redaction** [1] - 280:4
**redactions** [2] - 311:8, 313:2
**referral** [1] - 323:9
**referred** [2] - 315:1, 320:12
**referring** [1] - 201:16
**reflect** [3] - 209:11, 353:20, 359:18
**reflects** [1] - 188:22
**refreshed** [2] - 315:7, 315:8
**regard** [2] - 317:16, 318:25
**regarding** [2] - 223:12, 345:3
**regular** [2] - 276:21
**Rehab** [1] - 342:5
**related** [10] - 194:22, 219:1, 236:4, 274:10, 276:18, 307:15, 307:19, 320:9, 320:22, 350:23
**relates** [1] - 345:22
**relating** [2] - 298:13, 336:11
**relation** [1] - 335:25
**relationship** [1] - 333:21
**released** [1] - 355:10
**relevant** [2] - 221:19, 336:23
**remain** [6] - 206:2, 212:8, 231:17, 308:25, 326:3, 345:15
**remember** [27] - 193:11, 199:8, 199:11, 210:6, 210:9, 211:19, 219:20, 234:9, 238:16, 238:17, 240:23, 259:11, 264:4,

275:17, 300:3, 309:19, 315:2, 315:17, 319:7, 319:8, 319:25, 320:7, 320:11, 320:13, 320:23, 320:24, 359:8
**remembered** [1] - 333:4
**reminder** [1] - 193:22
**remotely** [1] - 267:2
**rent** [1] - 295:10
**renumbered** [1] - 328:13
**replied** [1] - 303:9
**report** [3] - 271:5, 314:7, 330:14
**REPORTED** [1] - 187:1
**reported** [6] - 197:17, 242:4, 248:8, 278:7, 314:18, 330:16
**REPORTER** [1] - 321:19
**Reporter** [2] - 187:1, 366:12
**reporter** [3] - 334:9, 335:1, 336:7
**reports** [6] - 198:17, 218:11, 301:5, 301:7, 303:11, 307:5
**Representative** [5] - 252:9, 265:12, 265:17, 266:5, 268:13
**representative** [3] - 261:2, 261:5, 261:6
**Representatives** [2] - 207:11, 328:7
**Republican** [3] - 218:19, 241:18, 269:20
**reputation** [1] - 351:1
**request** [5] - 229:2, 229:4, 256:19, 333:19, 333:20
**requested** [4] - 256:21, 310:22, 315:10, 345:4
**requests** [1] - 334:16
**require** [1] - 199:1
**requirements** [1] - 230:2
**residential** [2] - 304:9, 304:11
**resolve** [2] - 364:14, 364:17
**respect** [9] - 199:6, 245:22, 270:24, 282:9, 286:16, 316:3,

329:23, 338:3, 364:14
**respond** [2] - 312:15, 357:19
**responded** [1] - 198:21
**responding** [1] - 236:2
**response** [2] - 264:11, 330:25
**result** [14] - 195:20, 210:13, 210:18, 219:23, 260:5, 273:14, 289:10, 290:25, 305:17, 307:2, 307:8, 308:12, 337:3, 362:5
**retire** [1] - 309:23
**retired** [26] - 190:8, 192:5, 204:1, 208:17, 214:18, 217:7, 226:12, 236:24, 246:9, 250:16, 257:13, 269:13, 277:9, 285:19, 295:25, 304:17, 306:2, 309:22, 323:3, 332:7, 339:24, 342:15, 343:16, 344:20, 347:7, 352:6
**retirement** [1] - 221:7
**reverse** [1] - 259:1
**review** [3] - 196:10, 231:9, 276:4
**reviewed** [1] - 297:14
**RIANE** [1] - 186:19
**right-wing** [3] - 264:17, 265:4, 269:18
**rights** [1] - 221:6
**risk** [3] - 232:4, 293:6, 327:4
**River** [1] - 189:21
**Road** [1] - 186:23
**robbery** [1] - 234:7
**room** [6] - 256:8, 274:12, 294:16, 358:24, 359:7
**Room** [1] - 187:3
**roommate** [2] - 235:5, 238:1
**rooms** [1] - 256:9
**roughly** [1] - 309:23
**round** [2] - 360:8, 363:23
**rule** [1] - 360:14
**rules** [3] - 225:19, 294:22, 360:5
**run** [2] - 249:25, 290:4

**running** [1] - 204:6
**runs** [2] - 293:5, 301:21

## S

**sad** [3] - 268:10, 279:6
**sadness** [1] - 279:8
**safety** [1] - 318:7
**sake** [1] - 344:8
**sales** [1] - 250:4
**sat** [3] - 216:2, 240:9, 319:5
**satisfied** [2] - 360:16, 363:10
**saturation** [1] - 345:20
**Saturday** [1] - 223:10
**save** [2] - 246:14, 351:1
**savvy** [1] - 321:7
**saw** [14] - 197:25, 202:8, 214:1, 223:12, 284:17, 288:16, 289:8, 296:25, 297:14, 298:2, 301:6, 317:19, 335:4, 336:19
**scared** [2] - 318:6, 318:7
**scary** [1] - 243:19
**scheduler** [1] - 266:10
**SCHOEN** [2] - 186:22, 186:22
**school** [3] - 196:5, 276:14, 349:2
**seal** [18] - 233:4, 233:11, 234:24, 254:15, 255:15, 278:10, 278:13, 280:5, 283:14, 284:5, 285:15, 286:6, 286:17, 310:15, 311:9, 312:7, 313:3, 362:9
**Seat** [3] - 362:14, 362:19, 363:12
**seat** [3] - 204:17, 352:11, 363:15
**seated** [4] - 324:22, 356:8, 364:4, 364:6
**seating** [2] - 355:13, 362:8
**seats** [4] - 354:9, 362:8, 362:13, 363:10
**SEC** [3] - 252:14, 252:15, 252:20
**second** [1] - 303:6

**section** [1] - 288:12
**security** [1] - 300:21
**see** [11] - 256:8, 258:3, 274:1, 293:8, 308:3, 308:7, 319:12, 320:16, 335:19, 336:17, 365:11
**seeing** [2] - 230:12, 298:11
**seem** [2] - 205:9, 286:19
**select** [2] - 189:6, 241:24
**Select** [32] - 189:7, 193:5, 194:25, 201:13, 205:24, 207:11, 210:22, 210:23, 210:25, 211:2, 212:5, 214:1, 215:22, 219:4, 219:5, 219:6, 219:23, 239:20, 253:5, 253:10, 261:18, 261:20, 261:24, 297:20, 319:1, 321:4, 321:12, 323:11, 323:22, 335:18, 335:25, 341:20
**selected** [8] - 189:13, 191:13, 229:7, 248:19, 283:18, 299:24, 354:23, 355:5
**selection** [3] - 256:16, 356:15, 364:11
**sell** [2] - 191:22, 249:21
**Senate** [6] - 218:6, 218:11, 238:25, 252:5, 260:23, 328:3
**Senator** [1] - 344:16
**send** [2] - 321:3, 356:22
**senior** [2] - 218:15, 225:8
**sense** [12] - 207:2, 207:3, 231:11, 268:5, 269:22, 318:3, 322:13, 324:23, 327:23, 338:10, 353:1, 362:21
**sensitive** [1] - 279:14
**sentiment** [1] - 202:5
**separate** [7] - 199:14, 244:7, 271:2, 271:4, 316:3, 316:11, 324:10
**sequentially** [1] -

353:9

**serious** [2] - 322:21, 329:3

**seriously** [1] - 322:21

**serve** [11] - 234:16, 242:16, 245:23, 254:13, 262:21, 286:14, 294:18, 311:25, 324:24, 339:13, 355:12

**served** [6] - 259:2, 274:4, 274:5, 299:18, 310:23, 350:14

**service** [10] - 196:10, 196:14, 259:12, 281:1, 299:21, 300:9, 356:24, 357:1, 357:12, 357:14

**services** [2] - 252:5, 260:22

**serving** [7] - 229:24, 275:9, 275:10, 336:10, 355:11, 355:15, 358:2

**SESSION** [1] - 186:5

**session** [1] - 219:14

**sessions** [2] - 319:9, 319:11

**set** [15] - 198:17, 205:3, 224:11, 232:5, 244:12, 263:6, 269:7, 308:19, 309:11, 315:22, 321:23, 323:2, 323:12, 323:24, 337:16

**sets** [1] - 321:13

**setting** [1] - 243:6

**settled** [2] - 249:14, 358:13

**seven** [5] - 242:19, 245:24, 259:6, 268:2, 268:3

**several** [2] - 273:9, 329:2

**severe** [4] - 255:4, 255:5, 281:2, 295:6

**share** [1] - 328:20

**shock** [1] - 199:10

**shop** [4] - 288:10, 289:2, 294:24, 299:6

**shot** [1] - 198:1

**show** [6] - 191:21, 214:10, 225:1, 225:7, 260:5, 270:6

**showed** [2] - 288:24, 289:8

**showing** [1] - 270:25

**shown** [1] - 298:4

**shows** [3] - 199:23,

226:2, 250:2

**Sibley** [1] - 255:24

**side** [13] - 221:21, 232:23, 293:4, 293:7, 324:23, 350:25, 353:2, 360:7, 360:13, 360:22, 362:17, 363:5, 363:12

**sidebar** [6] - 233:13, 254:23, 278:15, 284:7, 310:19, 312:9

**sides** [3] - 220:12, 361:1, 361:10

**SILVERMAN** [1] - 186:19

**similar** [3] - 253:9, 261:21, 299:23

**simply** [1] - 294:5

**sister** [1] - 279:18

**sit** [7] - 220:18, 232:10, 277:2, 283:15, 302:22, 354:20, 359:13

**sites** [1] - 356:13

**sitting** [9] - 201:2, 201:3, 241:8, 284:14, 362:8, 362:12, 362:14, 362:19, 363:15

**situation** [2] - 257:5, 284:18

**six** [5] - 259:5, 299:24, 348:25, 353:2, 362:4

**slate** [1] - 322:13

**SLUTKIN** [1] - 186:19

**small** [4] - 230:12, 235:24, 254:15, 255:5

**smarter** [1] - 325:1

**snatching** [2] - 275:2, 275:18

**snippets** [4] - 253:21, 253:22, 254:2, 261:25

**so-and-so** [1] - 320:17

**so..** [1] - 245:5

**social** [6] - 230:4, 235:24, 264:22, 290:4, 290:11, 356:13

**sole** [1] - 301:20

**solely** [5] - 228:2, 279:9, 280:13, 292:15, 293:7

**someone** [8] - 241:17, 267:7, 287:6, 288:3, 288:12, 324:24, 328:21, 330:21

**somewhat** [2] - 219:1, 345:19

**soon** [2] - 254:20, 325:12

**sorry** [26] - 199:24, 221:17, 222:20, 234:13, 249:5, 263:18, 266:2, 273:3, 278:23, 280:20, 284:11, 291:11, 292:10, 303:3, 309:17, 311:19, 313:4, 314:20, 316:20, 316:21, 318:14, 338:2, 338:11, 351:8, 351:10, 364:1

**sort** [26] - 196:1, 201:2, 227:22, 228:9, 228:11, 229:1, 229:6, 230:2, 231:2, 231:6, 232:22, 236:11, 243:3, 253:8, 276:5, 276:20, 282:11, 286:18, 286:20, 293:25, 313:14, 316:3, 321:8, 321:9, 335:6, 351:2

**sounds** [3] - 205:1, 224:8, 225:24

**source** [14] - 194:25, 209:14, 229:12, 251:12, 256:5, 259:20, 259:21, 261:20, 264:18, 280:10, 288:22, 339:6, 339:11, 339:15

**sources** [6] - 240:8, 256:10, 296:21, 307:1, 308:4, 314:25

**space** [1] - 245:5

**speakers** [1] - 274:16

**speaking** [3] - 201:21, 232:17, 235:2

**Special** [2] - 191:8, 348:8

**special** [2] - 213:21, 276:15

**specific** [11] - 194:12, 195:16, 195:17, 197:21, 314:25, 315:9, 315:18, 320:14, 329:15, 329:21, 335:14

**specifically** [19] - 193:11, 198:18, 199:9, 199:11, 201:16, 202:12,

203:3, 229:13, 230:5, 231:13, 244:20, 253:9, 271:2, 318:25, 319:4, 319:22, 320:7, 321:8, 349:9

**specifics** [2] - 225:22, 267:1

**spending** [1] - 291:25

**spent** [2] - 299:24, 360:8

**spoken** [1] - 339:4

**spouse** [2] - 241:7, 357:13

**staff** [4] - 235:23, 237:23, 288:6, 344:15

**stand** [1] - 320:25

**start** [13] - 193:3, 210:24, 227:22, 239:24, 240:10, 258:10, 259:1, 261:23, 312:5, 343:10, 348:1, 353:16, 359:21

**State** [1] - 218:12

**state** [3] - 271:24, 300:20, 344:11

**statement** [8] - 189:11, 191:10, 215:25, 227:6, 248:16, 256:16, 262:18

**statements** [3] - 231:25, 232:14, 317:21

**states** [1] - 241:6

**STATES** [4] - 186:1, 186:3, 186:11, 186:15

**States** [3] - 187:2, 301:13, 366:13

**station** [2] - 297:10, 298:3

**stay** [3] - 196:7, 227:4, 230:13

**stay-at-home** [1] - 196:7

**stenographic** [1] - 366:5

**step** [7] - 190:6, 332:6, 355:6, 355:10, 355:16, 357:22, 357:25

**Stephen** [1] - 231:23

**STEPHEN** [1] - 186:6

**Steve** [5] - 264:13, 289:3, 289:13, 308:23, 331:15

**sticking** [1] - 314:16

**sticks** [1] - 234:11

**still** [11] - 221:15,

221:17, 234:11, 234:12, 242:24, 283:17, 288:9, 340:11, 345:1, 357:22, 360:21

**stoking** [3] - 202:5, 202:8, 202:17

**stole** [1] - 344:17

**stolen** [4] - 197:20, 197:24, 329:2, 330:11

**stories** [1] - 315:2, 315:3, 318:15, 319:17, 320:22, 321:2, 321:3, 321:8, 334:11, 335:2, 335:4

**storming** [1] - 344:14

**story** [1] - 336:19

**straightforward** [5] - 220:8, 223:25, 225:25, 226:3, 229:5

**Street** [2] - 186:16, 186:20

**street** [1] - 197:25

**stress** [1] - 356:18

**stricken** [1] - 270:11

**strike** [32] - 205:6, 246:11, 285:23, 304:19, 323:5, 323:25, 324:17, 325:2, 332:9, 340:1, 340:2, 342:17, 347:9, 347:12, 352:8, 360:8, 361:5, 361:6, 361:9, 361:24, 361:25, 362:3, 362:11, 362:12, 362:23, 362:24, 363:3, 363:4, 363:14, 363:18, 363:22, 363:24

**strikes** [4] - 362:18, 363:5, 363:15, 364:2

**strong** [4] - 220:1, 241:14, 245:15, 329:19

**struck** [2] - 270:16, 325:6

**study** [3] - 221:7, 221:9, 222:1

**studying** [1] - 221:17

**stuff** [11] - 206:13, 219:1, 230:8, 238:10, 240:7, 290:6, 290:20, 292:20, 292:22, 344:17, 349:11

**subject** [2] - 196:21, 310:10

**submitted** [2] - 218:10, 356:4

**subpoena** [36] -

198:21, 199:14, 211:21, 214:7, 214:11, 229:16, 244:9, 256:25, 272:7, 272:8, 273:7, 273:11, 321:17, 321:25, 322:9, 322:15, 322:20, 323:14, 326:16, 326:19, 329:14, 329:18, 329:21, 330:1, 330:5, 333:18, 344:25, 345:7, 345:8, 345:9, 345:10, 350:12, 351:19, 351:20, 352:1

**subpoenaed** [5] - 194:8, 209:25, 211:20, 214:6, 326:15

**subpoenas** [8] - 273:9, 350:15, 350:16, 350:21, 351:13, 351:16, 351:23, 351:25

**subscribe** [1] - 209:17

**subsequently** [1] - 211:25

**substance** [2] - 197:3, 297:3

**substitute** [1] - 363:5

**substituted** [1] - 362:13

**suffer** [1] - 344:12

**sufficient** [1] - 287:6

**suggested** [1] - 227:4

**Suite** [2] - 186:20, 186:23

**sum** [1] - 270:8

**summoned** [1] - 256:17

**summons** [4] - 299:22, 310:22, 312:14, 312:15

**super** [1] - 219:10

**Superior** [2] - 259:8, 259:10

**supervisor** [1] - 189:24

**support** [2] - 282:5, 282:8

**supposed** [1] - 356:11

**surprised** [2] - 195:15, 203:8

**swayed** [1] - 335:7

**sworn** [1] - 245:19

**synopsis** [1] - 231:2

# T

**table** [1] - 351:2

**taint** [1] - 223:21

**tattoo** [1] - 294:9

**team** [1] - 235:24

**tech** [2] - 196:10, 321:7

**technical** [1] - 340:25

**technically** [1] - 288:18

**telescope** [1] - 245:5

**television** [2] - 223:7, 256:9

**ten** [6] - 198:2, 258:3, 265:18, 265:19, 265:21, 309:25

**tend** [1] - 203:11

**tentative** [1] - 205:9

**terms** [3] - 200:14, 236:10, 301:5

**terrible** [1] - 234:3

**testified** [4] - 197:18, 319:24, 320:17, 338:4

**testify** [3] - 229:3, 333:6, 333:16

**testifying** [3] - 245:4, 245:9, 245:16

**testimony** [9] - 231:5, 253:15, 256:18, 294:13, 319:6, 319:23, 320:4, 349:10

**texting** [2] - 267:14, 356:21

**texts** [1] - 356:24

**that'll** [2] - 358:12, 365:2

**THE** [638] - 186:1, 186:10, 186:14, 186:15, 186:18, 188:1, 188:3, 188:7, 188:9, 188:12, 188:15, 188:17, 188:21, 188:25, 189:5, 189:10, 189:15, 190:2, 190:5, 190:10, 190:13, 190:17, 190:20, 190:24, 191:2, 191:6, 191:10, 191:15, 192:1, 192:3, 192:7, 192:10, 192:14, 192:17, 192:21, 193:1, 193:13, 193:18, 193:21, 194:2, 194:6, 194:10,

194:14, 194:16, 194:21, 195:3, 195:11, 195:17, 195:20, 195:25, 196:8, 196:11, 196:14, 196:19, 197:5, 197:7, 197:12, 197:17, 197:22, 198:3, 198:5, 198:9, 200:11, 203:23, 204:3, 204:20, 205:7, 205:17, 205:22, 206:11, 206:14, 206:18, 206:21, 206:24, 207:3, 207:9, 207:14, 207:17, 207:22, 208:13, 208:15, 208:19, 208:22, 209:1, 209:3, 209:6, 209:10, 209:19, 209:22, 210:4, 210:9, 210:12, 210:15, 210:17, 210:21, 211:9, 211:13, 211:15, 212:2, 212:4, 212:11, 212:16, 212:22, 213:1, 213:14, 214:15, 214:20, 214:23, 215:2, 215:4, 215:7, 215:9, 215:13, 215:18, 215:21, 215:24, 216:4, 217:3, 217:5, 217:9, 217:12, 217:16, 217:18, 217:21, 217:23, 218:4, 218:14, 218:17, 218:20, 218:25, 219:4, 219:17, 219:22, 220:4, 220:10, 220:16, 220:25, 221:9, 221:12, 221:15, 221:17, 221:23, 221:25, 222:8, 222:11, 222:17, 222:20, 222:22, 223:1, 223:3, 224:21, 226:7, 226:11, 226:14, 226:17, 226:19, 227:2, 227:11, 227:15, 227:19, 228:7, 228:15, 229:9, 229:15, 229:20, 230:8, 230:15, 230:20, 231:9, 231:14, 232:4, 232:8, 232:10, 232:16, 232:21, 232:24, 233:1, 233:3, 233:8,

233:10, 233:14, 233:18, 233:21, 233:23, 234:1, 234:13, 234:20, 234:23, 235:4, 235:6, 235:8, 235:11, 235:14, 236:19, 236:21, 237:1, 237:4, 237:9, 237:11, 237:15, 238:2, 238:5, 238:8, 238:11, 238:19, 238:23, 239:4, 239:7, 239:10, 239:12, 239:18, 240:5, 240:9, 240:13, 240:17, 240:24, 241:5, 241:16, 241:20, 241:22, 242:4, 242:10, 242:14, 242:21, 243:2, 243:20, 244:1, 244:18, 246:7, 246:11, 246:16, 246:21, 246:23, 247:2, 247:8, 247:15, 247:18, 247:23, 248:2, 248:8, 248:11, 248:16, 248:22, 249:1, 249:13, 250:7, 250:10, 250:12, 250:14, 250:18, 250:21, 250:25, 251:2, 251:6, 251:9, 251:17, 251:21, 251:24, 252:3, 252:10, 252:13, 252:15, 252:17, 252:20, 252:22, 252:24, 253:4, 253:16, 253:19, 254:1, 254:6, 254:11, 254:18, 254:24, 255:1, 255:7, 255:11, 255:15, 256:1, 257:11, 257:15, 257:18, 258:1, 258:7, 258:9, 258:14, 258:18, 258:20, 258:24, 259:7, 259:11, 259:14, 259:18, 260:1, 260:4, 260:11, 260:15, 260:20, 261:3, 261:5, 261:8, 261:11, 261:14, 261:17, 262:5, 262:8, 262:13, 262:17, 262:23, 263:25, 268:22, 269:1, 269:12, 269:15, 270:12, 271:8, 271:16,

271:18, 271:21, 271:24, 272:13, 273:4, 273:13, 273:22, 274:3, 274:14, 274:18, 274:21, 275:1, 275:4, 275:8, 275:13, 276:7, 277:7, 277:11, 277:14, 277:18, 277:20, 277:25, 278:12, 278:16, 278:18, 278:23, 279:3, 279:8, 279:12, 279:19, 279:21, 279:23, 280:2, 280:5, 280:20, 280:23, 281:9, 281:12, 281:15, 281:17, 281:19, 281:25, 282:3, 282:18, 283:13, 283:17, 283:21, 283:23, 284:1, 284:5, 284:8, 284:10, 285:12, 285:15, 285:21, 286:7, 286:13, 286:24, 287:1, 287:4, 287:15, 287:17, 287:21, 287:25, 288:5, 288:12, 288:14, 288:17, 289:10, 289:15, 289:20, 289:25, 290:9, 290:13, 290:18, 290:25, 291:6, 291:10, 291:15, 291:19, 292:2, 292:9, 292:18, 292:21, 292:25, 293:5, 293:10, 293:16, 293:20, 293:24, 294:11, 294:15, 295:1, 295:3, 295:12, 295:16, 295:18, 295:21, 295:23, 296:2, 296:5, 296:9, 296:11, 296:14, 296:16, 297:2, 297:6, 297:10, 297:13, 297:18, 298:6, 298:10, 298:15, 298:19, 298:23, 299:2, 299:4, 299:8, 299:12, 299:17, 299:20, 300:1, 300:8, 300:12, 300:18, 301:1, 302:4, 302:10, 302:14, 302:16, 302:21, 302:25, 303:21, 304:15, 304:19,

304:22, 305:1, 305:3, 305:6, 305:8, 305:23, 306:1, 306:6, 306:8, 306:15, 306:17, 306:21, 307:8, 307:12, 307:17, 307:22, 308:8, 308:12, 308:16, 308:21, 309:6, 309:10, 309:16, 309:23, 310:1, 310:5, 310:8, 310:15, 310:20, 310:25, 311:2, 311:6, 311:9, 311:19, 311:22, 312:3, 312:6, 312:10, 313:3, 316:25, 321:19, 323:1, 323:5, 324:1, 324:18, 325:16, 325:21, 325:24, 326:10, 326:13, 326:22, 327:2, 327:8, 328:1, 328:8, 328:15, 328:18, 329:4, 329:8, 330:14, 330:17, 331:11, 331:22, 332:4, 332:6, 332:9, 332:12, 332:16, 332:20, 332:22, 332:24, 333:8, 333:10, 333:13, 333:16, 333:18, 333:24, 334:4, 334:12, 334:14, 334:18, 335:9, 335:16, 335:21, 336:3, 336:9, 336:15, 336:22, 337:3, 337:9, 337:16, 337:19, 337:23, 339:19, 339:22, 340:1, 340:4, 340:9, 340:11, 340:16, 340:21, 341:1, 341:3, 341:9, 341:13, 341:17, 341:19, 341:23, 342:10, 342:13, 342:17, 342:20, 342:24, 343:1, 343:5, 343:10, 343:24, 344:5, 344:22, 345:12, 346:5, 346:9, 346:13, 347:3, 347:5, 347:9, 347:12, 347:17, 347:19, 347:23, 348:6, 348:9, 348:13, 348:17, 348:19, 348:24, 349:3, 349:14, 349:17, 349:22,

350:2, 350:5, 351:5, 351:9, 351:11, 352:4, 352:8, 352:11, 352:21, 352:23, 353:20, 353:23, 354:1, 354:19, 354:21, 354:22, 355:1, 358:10, 358:20, 359:10, 359:14, 359:18, 360:6, 360:10, 360:20, 360:25, 361:3, 361:5, 361:12, 361:21, 361:23, 362:1, 362:17, 362:21, 362:25, 363:7, 363:11, 363:25, 364:9, 364:12, 364:19, 364:22, 364:25, 365:2, 365:6, 365:9

**themselves** [2] - 253:17, 308:8

**theoretically** [1] - 339:10

**therapist** [1] - 342:2

**therefore** [1] - 325:2

**thereof** [2] - 261:25, 344:13

**Thereupon** [47] - 188:13, 190:8, 190:15, 192:5, 192:12, 204:1, 205:15, 208:17, 208:24, 214:18, 214:25, 217:7, 217:14, 226:12, 227:9, 236:24, 237:7, 246:9, 246:19, 250:16, 250:23, 257:13, 258:5, 258:16, 269:13, 271:14, 277:9, 277:16, 285:19, 287:13, 295:25, 296:7, 304:17, 304:24, 306:2, 306:13, 323:3, 325:14, 332:7, 332:18, 339:24, 340:7, 342:15, 342:22, 347:7, 347:15, 352:6

**they've** [2] - 298:4, 328:13

**thinking** [7] - 267:8, 267:9, 268:4, 301:25, 316:5, 318:8, 321:14

**third** [1] - 298:9

**thirds** [1] - 359:3

**THOMPSON** [1] - 186:19

**thoroughly** [1] - 206:9

**thoughts** [4] - 307:11, 307:12, 322:1, 356:25

**threats** [1] - 248:7

**three** [9] - 209:12, 211:14, 259:13, 278:1, 300:11, 353:2, 360:13, 360:18

**throughout** [5] - 201:3, 201:4, 206:3, 309:1, 326:4

**title** [1] - 266:9

**TM** [1] - 252:18

**today** [49] - 189:7, 191:4, 191:7, 205:3, 206:15, 206:22, 207:17, 212:23, 215:15, 215:18, 215:21, 224:1, 238:6, 238:14, 248:23, 251:13, 251:18, 251:20, 256:23, 259:20, 260:7, 260:12, 260:16, 262:19, 264:5, 264:7, 264:9, 269:17, 272:4, 276:24, 296:22, 296:25, 299:23, 305:14, 334:23, 334:24, 335:11, 335:24, 336:19, 341:6, 349:15, 355:2, 355:23, 357:1, 357:12, 357:15, 358:25, 364:20, 365:10

**Todd** [1] - 328:11

**together** [11] - 194:23, 211:3, 219:2, 264:8, 276:14, 289:9, 336:1, 345:21, 355:7, 357:8

**tomorrow** [16] - 325:8, 353:15, 354:5, 354:14, 355:15, 355:16, 356:6, 356:15, 358:9, 358:19, 358:22, 359:3, 359:7, 359:21, 360:3

**ton** [1] - 298:3

**tonight** [4] - 325:8, 355:9, 355:25, 359:4

**took** [3] - 286:17, 294:20, 303:5

**top** [1] - 317:13

**topic** [2] - 196:1, 225:19

**topics** [3] - 221:9, 221:18, 272:24

**touch** [1] - 310:16

**town** [1] - 294:24

**training** [3] - 189:25, 196:15, 343:22

**TRANSCRIPT** [1] - 186:10

**transcript** [2] - 365:5, 366:6

**transport** [1] - 213:21

**Transportation** [1] - 282:6

**trashing** [3] - 344:15, 344:16

**traumatized** [1] - 284:18

**travel** [2] - 250:1, 281:7

**treat** [1] - 357:20

**treatment** [1] - 345:11

**TRIAL** [1] - 186:10

**trial** [32] - 199:13, 199:15, 204:10, 206:3, 225:8, 230:3, 242:24, 249:10, 251:16, 251:18, 264:6, 271:3, 274:5, 280:25, 281:20, 281:21, 282:14, 284:19, 285:25, 289:3, 290:2, 295:5, 304:4, 309:1, 313:13, 315:21, 326:4, 327:12, 327:21, 338:20, 339:14, 357:8

**trials** [1] - 346:24

**trimester** [1] - 255:3

**trouble** [4] - 229:22, 290:3, 327:15, 336:12

**troubling** [1] - 201:9

**true** [6] - 300:4, 343:24, 344:22, 345:25, 366:4, 366:5

**Trump** [11] - 202:10, 202:16, 241:7, 264:15, 309:7, 309:12, 316:10, 317:6, 317:18, 335:25, 349:11

**trump** [2] - 317:13, 345:23

**Trump's** [2] - 202:19, 344:15

**truth** [2] - 245:20, 257:5

**truthful** [1] - 309:5

**truthfully** [1] - 341:11

**try** [8] - 204:18, 230:9, 236:14, 236:16, 238:17, 286:15, 318:22, 363:13

**trying** [8] - 211:6, 228:5, 246:1, 268:5, 320:18, 322:12, 323:23, 325:4

**Tuesday** [6] - 281:16, 281:17, 281:20, 281:22, 282:10, 286:10

**TV** [8] - 201:3, 253:22, 276:15, 276:18, 276:21, 289:11, 297:1

**tweet** [2] - 193:10, 203:9

**tweeting** [3] - 193:16, 200:20, 356:21

**tweets** [1] - 230:11

**twice** [1] - 334:10

**Twitter** [14] - 193:9, 193:12, 195:9, 199:11, 200:14, 230:4, 230:6, 230:9, 235:17, 235:19, 236:1, 290:6, 291:16, 356:14

**two** [31] - 211:14, 218:25, 221:4, 242:24, 264:7, 274:16, 285:23, 287:6, 289:4, 291:18, 294:15, 302:11, 302:14, 305:19, 311:16, 320:1, 320:7, 321:11, 322:1, 323:10, 325:11, 347:23, 353:5, 353:6, 354:9, 359:3, 362:8, 363:3, 364:4, 364:5

**two-thirds** [1] - 359:3

**type** [2] - 244:20

**types** [2] - 351:15, 351:23

**typically** [4] - 235:23, 236:4, 256:11, 262:5

## U

**U.S** [5] - 249:15, 249:18, 280:9,

330:18, 348:7
**ultimately** [2] -
312:17, 351:2
**umbrella** [1] - 227:22
**unable** [9] - 194:18,
207:20, 210:19,
255:6, 273:23, 318:9,
326:25, 349:25
**unavoidable** [2] -
281:2, 295:6
**unbiased** [1] -
218:21
**uncle** [1] - 234:6
**uncomfortable** [3] -
294:16, 339:13,
339:17
**undecided** [2] -
306:4, 306:8
**under** [23] - 198:16,
204:14, 233:4,
233:10, 234:23,
243:13, 254:19,
255:15, 278:10,
278:13, 280:5,
283:14, 284:5,
285:15, 286:6,
286:17, 310:15,
311:9, 312:7, 313:3,
338:14, 345:5, 362:9
**under-seal** [1] -
283:14
**underaged** [1] -
274:10
**understood** [6] -
217:1, 224:25,
301:22, 312:23,
315:5, 346:21
**uneasy** [1] - 318:8
**United** [2] - 301:13,
366:13
**united** [1] - 187:2
**UNITED** [4] - 186:1,
186:3, 186:11, 186:15
**unlawful** [1] - 248:6
**unless** [1] - 356:5
**unlike** [1] - 205:8
**unlikely** [1] - 286:11
**unrelated** [1] -
222:25
**up** [44] - 194:4,
198:6, 219:14,
219:21, 224:24,
225:1, 225:7, 230:6,
230:8, 238:9, 241:23,
244:5, 244:25,
247:25, 249:18,
254:18, 261:24,
267:18, 270:6,
272:24, 273:20,
274:14, 274:17,

274:18, 276:11,
281:12, 281:15,
284:11, 286:11,
288:24, 289:3, 289:8,
302:12, 308:6,
312:13, 314:24,
317:4, 317:20,
320:22, 325:24,
335:23, 351:8,
360:14, 360:22
**update** [2] - 308:6,
355:4
**updates** [3] - 320:8,
320:10, 323:18
**updating** [1] - 253:13
**uphill** [1] - 204:19
**Upper** [1] - 302:12
**upset** [5] - 314:1,
314:11, 317:8,
317:23, 318:8
**upsetting** [4] - 314:2,
317:10, 317:22,
317:25
**USAID** [1] - 218:12

**V**

**vaguely** [1] - 329:17
**Van** [1] - 250:3
**variety** [1] - 256:10
**various** [3] - 227:16,
273:9, 354:15
**Vaughn** [23] -
189:16, 198:6, 198:9,
204:21, 213:2, 223:3,
226:20, 233:15,
244:2, 255:16,
275:14, 278:19,
295:13, 316:14,
316:19, 329:9,
332:13, 341:24,
350:3, 351:11,
353:24, 360:25, 363:1
**VAUGHN** [103] -
186:14, 188:6,
189:17, 189:19,
189:23, 190:1,
190:11, 198:8,
198:10, 198:22,
199:3, 199:13,
199:17, 199:22,
200:1, 200:4, 200:7,
200:10, 204:22,
213:3, 213:5, 213:8,
213:13, 214:21,
223:4, 223:6, 223:14,
223:18, 223:21,
223:23, 224:8,
224:11, 224:16,
224:19, 226:15,

226:24, 244:3, 244:5,
244:11, 244:16,
246:13, 255:17,
255:19, 255:23,
255:25, 257:16,
257:23, 258:12,
275:15, 275:17,
275:20, 275:23,
275:25, 276:6,
277:12, 295:14,
329:10, 329:12,
329:20, 330:2, 330:7,
330:10, 330:23,
331:3, 331:6, 331:9,
331:20, 331:23,
332:2, 332:15,
341:25, 342:4, 342:7,
342:9, 342:18, 350:4,
351:8, 351:10,
351:12, 351:15,
351:18, 351:24,
352:3, 352:9, 352:19,
353:25, 360:4, 360:7,
361:1, 361:22,
361:24, 362:16,
362:20, 362:22,
363:9, 363:22, 364:8,
364:11, 364:13,
364:21, 364:24,
365:1, 365:4
**vehicle** [1] - 311:17
**venire** [3] - 198:23,
325:9, 359:19
**verdict** [2] - 274:19
**victim** [13] - 197:14,
222:12, 233:6, 242:1,
248:3, 278:6, 302:1,
302:6, 311:11,
311:12, 328:21,
328:22, 329:1
**video** [3] - 273:1,
276:15, 298:11
**videos** [1] - 231:2
**view** [19] - 197:9,
220:10, 222:23,
225:23, 239:13,
248:12, 254:8,
273:13, 293:5,
324:25, 333:25,
335:7, 336:3, 336:6,
353:17, 360:10,
360:20, 362:1, 362:3
**viewed** [1] - 205:1
**viewing** [1] - 195:20
**viewpoints** [1] -
331:25
**views** [2] - 200:2,
200:16, 236:8, 236:9
**violated** [1] - 318:5
**visit** [1] - 282:10

**voir** [1] - 354:5
**voluntary** [1] -
333:19
**vs** [1] - 186:5

**W**

**wallpaper** [1] -
191:22
**waned** [1] - 201:1
**wants** [2] - 322:15,
363:14
**warranted** [1] - 356:2
**Washington** [8] -
186:6, 186:17, 187:4,
209:20, 229:12,
256:11, 311:18,
366:14
**watch** [9] - 200:15,
200:19, 200:23,
262:6, 262:10, 273:2,
290:1, 290:8, 327:12
**watched** [44] - 195:1,
195:6, 195:8, 195:12,
199:4, 200:17,
207:14, 211:1,
211:10, 211:17,
219:8, 219:13,
219:18, 228:11,
240:5, 240:9, 240:10,
240:14, 240:18,
253:16, 254:3,
261:22, 262:1,
262:13, 272:18,
291:18, 291:19,
291:23, 292:3,
292:10, 297:10,
298:1, 298:5, 307:25,
308:8, 308:10, 319:5,
327:19, 349:4, 349:6,
349:8
**watching** [16] -
193:17, 200:21,
201:4, 214:4, 229:22,
230:25, 231:1, 231:2,
240:1, 240:4, 253:24,
272:20, 273:5,
289:11, 292:1, 297:3
**weak** [4] - 194:5,
194:6, 198:11
**weakly** [2] - 199:20,
204:23
**Webb** [1] - 245:5
**week** [12] - 235:21,
236:6, 281:1, 281:13,
282:14, 285:25,
291:18, 295:5,
319:25, 335:4,
335:15, 338:16
**weekend** [3] -

319:25, 320:4, 320:5
**weeks** [2] - 242:24,
299:24
**weigh** [1] - 283:7
**welcome** [8] -
190:20, 208:16,
217:2, 236:18,
258:21, 285:11,
340:12, 347:2
**well-informed** [1] -
200:20
**well-presented** [1] -
201:9
**west** [1] - 319:24
**whatnot** [1] - 290:24
**whatsoever** [1] -
357:5
**wheel** [1] - 349:11
**whistleblower** [1] -
348:11
**White** [1] - 211:25,
344:17
**WHITE** [2] - 186:19,
186:19
**whole** [2] - 198:23,
270:9
**wholesale** [2] - 250:3
**wife** [1] - 201:3
**wiggle** [1] - 358:24
**willing** [4] - 199:22,
204:16, 220:11, 226:1
**wing** [4] - 264:17,
265:4, 269:18, 319:24
**winnowed** [1] -
359:19
**winnowed-down** [1]
- 359:19
**witness** [15] -
197:15, 222:12,
224:6, 225:6, 233:6,
242:1, 248:4, 278:6,
294:5, 302:6, 311:11,
311:12, 320:15,
328:22, 364:16
**witnessed** [1] -
278:21
**witnesses** [4] -
202:14, 224:4, 225:1,
319:9
**wonder** [1] - 352:24
**wondering** [3] -
189:19, 255:19,
364:13
**word** [3] - 201:11,
202:4, 256:20
**words** [3] - 202:1,
269:20, 363:2
**workers** [2] - 235:25,
236:6
**workers'** [1] - 349:1

**workplace** [3] - 266:21, 266:25, 289:11

**works** [13] - 221:1, 247:10, 261:1, 265:6, 265:10, 267:4, 269:25, 270:22, 293:21, 301:19, 321:7, 340:24, 363:9

**world** [2] - 232:2, 328:20

**worried** [2] - 260:15, 329:5

**worry** [4] - 189:12, 216:1, 243:23, 302:22

**write** [3] - 276:3, 336:17, 356:12

**written** [7] - 193:4, 195:5, 318:16, 335:16, 335:22, 335:24, 336:18

**wrote** [1] - 315:3

## Y

**year** [4] - 248:7, 272:7, 274:7, 309:25

**years** [27] - 197:5, 197:24, 198:2, 203:13, 221:5, 234:4, 239:11, 259:6, 265:18, 265:19, 265:20, 265:21, 266:6, 270:2, 274:8, 274:24, 287:3, 300:11, 302:13, 302:15, 309:25, 311:16, 333:15, 334:11, 343:18, 348:21, 348:23

**York** [4] - 234:5, 256:12, 274:23, 350:9

**younger** [1] - 274:9

**yourself** [1] - 223:21

**yourselves** [1] - 357:20

**Youth** [1] - 189:22

## Z

**Zelda** [1] - 186:23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

                                  CR Action
                                  No. 1:21-670

      vs.                           Washington, DC
                                  July 19, 2022

STEPHEN K. BANNON,

                                  9:17  a.m.

            Defendant.

     TRANSCRIPT OF JURY TRIAL - DAY 2 - **MORNING SESSION**
         BEFORE THE HONORABLE CARL J. NICHOLS
            UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the U.S.:**          **AMANDA ROSE VAUGHN**
                      **MOLLY GULLAND GASTON**
                      U.S. ATTORNEYS OFC. FOR D.C.
                      555 4th Street NW
                      Washington, DC  20001
                      202-252-1793

**For the Defendant:**     **DAVID I. SCHOEN**
                      DAVID I. SCHOEN, ATTORNEY AT LAW
                      2800 Zelda Road, Suite 100-6
                      Montgomery, AL  36106
                      334-395-6611

                      **MATTHEW EVAN CORCORAN**
                      **RIANE WHITE**
                      SILVERMAN THOMPSON SLUTKIN WHITE
                      201 N. Charles Street, 25th Floor
                      Baltimore, MC  21201
                      410-385-2225

**Reported By:**           **LORRAINE T. HERMAN, RPR, CRC**
                      Official Court Reporter
                      U.S. District & Bankruptcy Courts
                      333 Constitution Avenue, NW
                      Room 4700-C
                      Washington, DC 20001
                      lorraine_herman@dcd.uscourts.gov

1                         **P R O C E E D I N G S**

2              **DEPUTY CLERK:**  Good morning, Your Honor.  This is

3       criminal case year 2021-670, *United States of America versus*

4       *Stephen K. Bannon.*

5              Counsel, please come forward and introduce

6       yourselves for the record, beginning with the government.

7              **MS. VAUGHN:**  Good morning, Your Honor.  Amanda

8       Vaughn and Molly Gaston for the United States.  Also at

9       counsel's table is Special Agent Frank D'Amico with the FBI.

10             **THE COURT:**  Good morning.

11             **MR. CORCORAN:**  Good morning, Your Honor.

12             Evan Corcoran, David Schoen and Riane White for

13      Mr. Bannon, and Steve Bannon is present.

14             **THE COURT:**  Good morning, everyone.

15             All right.  So here's what I want to do before we

16      bring what will hopefully be the 14 jurors who we select.

17             I want to first hear argument on the evidentiary

18      questions around the letters, at least briefly, because

19      depending on where we land there, that will obviously

20      affect, as Ms. Vaughn indicated yesterday, the testimony

21      that will hopefully start this morning.  And then we'll do

22      peremptories.

23             So, Ms. Vaughn, why don't we start with you.  Are

24      you going to argue this for the government?

25             **MS. VAUGHN:**  Yes, Your Honor.

1          **THE COURT:**  Let's just take, as an example,

2     Government's Exhibit 5 -- I believe it's 5, which is the

3     October 8, 2021 letter to Robert Costello.  As I understand

4     it, the United States argument is this letter is not offered

5     for the truth of the matter asserted but rather to provide

6     notice to Mr. Bannon that this was the Committee's positions

7     and, therefore, it's actually not even -- it doesn't fit

8     within the definition of hearsay at all and, therefore, you

9     don't have to think about whether there's a hearsay

10    exception.  Correct?

11          **MS. VAUGHN:**  Exactly.

12          **THE COURT:**  So first question is:  Why isn't it

13    being offered for the truth of the matter that this, in

14    fact, was the Committee's position?

15          **MS. VAUGHN:**  So if we think about what the

16    elements of the offense are, it's that first he violated the

17    subpoena.  The subpoena is the subpoena.  It has the dates

18    on it.

19          Then we have to show that that violation was

20    willful.  So on its face, the subpoena demands compliance.

21    Violation willful.

22          But to the extent that under cases like *Flaxer* or

23    *Quinn*, if there is an outstanding objection or question

24    that's made to the Committee before defiance and the

25    Committee doesn't resolve it, that goes to the defendant's

1    intent to willfully defy the subpoena.

2         And so these letters --

3         **THE COURT:**  I understand why you think it's

4    probative, but then my question is, why isn't the letter

5    being offered to prove that the Committee was taking these

6    positions?  The truth of that matter.

7         **MS. VAUGHN:**  Why is -- the Committee's ultimate

8    position really isn't even relevant, what's true or not true

9    about it.

10        These letters are relevant to show that the

11   defendant understood that he had not been excused from the

12   subpoena, and that to the extent he had raised a valid

13   objection, the Committee had resolved it.

14        **THE COURT:**  Okay.

15        **MS. VAUGHN:**  In his mind.

16        **THE COURT:**  So now let's assume these are not

17   hearsay.  There are a number of statements in all of the

18   letters, of the government exhibits, or at least the letters

19   from the Committee and Mr. Bannon's letters back to the

20   Committee that discuss questions around executive privilege.

21        Why is the government's notice of those -- of the

22   Committee's providing notice to Mr. Bannon of those -- of

23   its positions on those questions relevant in this trial now?

24        **MS. VAUGHN:**  It's not relevant to the extent of

25   what are the merits of the privilege or whether to assert

1      it, but it is relevant to show that the objection he perhaps

2      raised had been addressed --

3            **THE COURT:**  Had been resolved and, therefore, one

4      would argue the date was not flexible.  Or I think from the

5      government's perspective, you would say, This letter goes to

6      whether the Committee had taken a full and final position on

7      all of Mr. Bannon's reasons for not showing up.  Having

8      taken a full and final position on all those reasons, he

9      could not have thought, and, in fact -- that's mens rea --

10     and, in fact, the date was not moved.

11           **MS. VAUGHN:**  Right.

12           There's no other communications to the defendant

13     about the dates, outside of the subpoena, which set the

14     dates, and that's it.  So these letters are just about, did

15     the defendant raise an objection?  Was it resolved?

16           **THE COURT:**  So then from the government's

17     perspective, the letters from the Committee to Mr. Bannon

18     and their discussions of privilege will go to the jury.  Is

19     it the government's view that Mr. Bannon's letters back are

20     admissible in their entirety for the same reason?

21           **MS. VAUGHN:**  So Mr. Bannon's letters back are

22     admissible and the government offers them.

23           **THE COURT:**  Yes.  I am talking about when

24     Mr. Bannon offers them to show that in his view, things were

25     still being negotiated, and he was taking the position that

1    things were -- that privilege issues were important, and

2    that was one of the reasons that he believed the dates were

3    not set in stone.

4         **MS. VAUGHN:**  So he would be offering them -- I

5    don't think it's ultimately an issue because --

6         **THE COURT:**  To show that he provided notice.

7         **MS. VAUGHN:**  -- the government is offering his

8    letters so they will be in evidence.

9         **THE COURT:**  Okay.  They will be in evidence.

10        So what that means, then, is that we will have

11   letters in evidence from the government's perspective that

12   discuss the parties' respective privilege positions.

13        How do I ensure that the jury doesn't get confused

14   about all those discussions when there, as we know -- I have

15   held that at least most executive privilege issues are

16   irrelevant as to mens rea or entrapment by estoppel and the

17   like.

18        What, if anything, should I do to ensure that the

19   jury doesn't look at these letters and say, Wait a second,

20   we didn't really hear much about privilege.  Is there a

21   valid privilege here?  Is he excused from testifying because

22   of privilege and the like?

23        **MS. VAUGHN:**  Well, in the Court's proposed

24   instructions to the jury at the end, it includes an

25   instruction that the defendant's belief or reliance on law

1    or a privilege is not a defense.

2              To the extent the Court has concerns about

3    confusion, the government can certainly offer an additional

4    instruction that --

5              **THE COURT:**  Should I give a limiting instruction,

6    from the government's perspective, assuming I allow the

7    letter in, but I'm concerned about this --

8              **MS. VAUGHN:**  Uh-huh.

9              **THE COURT:**  -- should I propose a limiting or

10   should I think about a limiting instruction when the letters

11   are offered presumably today?

12             **MS. VAUGHN:**  So instruction along the lines of

13   something like, You are going to see reference to executive

14   privilege.  You're not to consider what that means or what

15   it required, but these letters --

16             **THE COURT:**  These letters are being offered only

17   for the purpose of demonstrating that the Committee was

18   providing notice to Mr. Bannon of its positions on the

19   subpoena, and to the extent that the letters discuss issues

20   around privilege, you're not to consider the merits of those

21   questions.

22             **MS. VAUGHN:**  Yes.  I don't think the government

23   would have an objection to that.  And especially if we also

24   added in something like, They're also offered to show that

25   the Committee -- the Committee's position with respect to

1      the reasons the defendant had raised for not complying.

2              **THE COURT:** Okay. Thank you.

3              **MS. VAUGHN:** Or not to show their position but to

4      show what the defendant had been notified of as far as --

5              **THE COURT:** Yes. Yes. Yes. I understood. Thank

6      you.

7              Mr. Schoen?

8              **MR. SCHOEN:** Good morning, Your Honor.

9              **THE COURT:** Good morning.

10             **MR. SCHOEN:** There's absolutely no reason for

11     these letters to come in other than their hearsay value.

12     They have no independent relevance that's admissible in this

13     case whatsoever.

14             It's not just that they are inadmissible hearsay,

15     it's of the worst kind in this case. The Court has barred

16     Mr. Bannon from telling his -- the story of the case in this

17     case.

18             The jury is going to hear Mr. Bannon -- according

19     to the government at least -- Mr. Bannon got a subpoena and

20     didn't show up. Remember, we heard from Day 1, That's all

21     we have to show, Judge. He got a subpoena and he didn't

22     show up.

23             Mr. Bannon has a full story for why he didn't show

24     up. His advice of counsel. The invocation of executive

25     privilege. Questions about its validity, its breadth and so

1       on.  His reliance.  All of these defenses and his story of

2       the case have been barred by the Court at the government's

3       request.

4               So to now put in letters that include statements

5       like, The information sought, directly serves a legitimate

6       legislative purpose and is within the scope of the delegated

7       authority of the Committee, and Mr. Bannon's information is

8       of critical importance.

9               **THE COURT:**  That is still an issue in this case.

10      I haven't barred testimony about that question, what you

11      just referred to.  I've discussed things about mens rea and

12      entrapment by estoppel, but pertinency is still an issue in

13      this case.

14              **MR. SCHOEN:**  The Court has found that we are not

15      allowed to litigate legislative purpose, Judge.  Your Honor

16      said the Court of Appeals already determined there was a --

17              **THE COURT:**  Purpose but not pertinency.

18              **MR. SCHOEN:**  This doesn't deal with pertinency,

19      Your Honor.

20              **THE COURT:**  All the documents relate directly to

21      the inquiry being conducted by the Select Committee.  Why

22      isn't that pertinency?

23              **MR. SCHOEN:**  Okay, that's pertinency.  How about

24      rejecting executive privilege?  How about all of those other

25      things.?

-3792-

1              **THE COURT:**  Yes, focus on that.

2              **MR. SCHOEN:**  Rejecting executive privilege.

3              So the jury is going to hear a story from these

4    letters that -- why executive privilege and

5    Chairman Thompson's opinion doesn't apply.  If it applied,

6    it wasn't validly invoked.  We never heard from

7    President Trump himself, according to this letter, and so

8    on.  All of those things.

9              And they'll never hear from Mr. Bannon or

10   Mr. Costello about exactly why they believed executive

11   privilege did bar it, why it was validly invoked.  All of

12   those things.

13             It's creating this thing where they only hear it

14   from the government, the government's perspective,

15   Mr. Thompson's perspective.

16             **THE COURT:**  Well, the government is, I guess,

17   acknowledging that the letters from Mr. Bannon to the

18   Committee are admissible.

19             **MR. SCHOEN:**  So we're letting the story partially

20   come in, while Mr. Bannon is handcuffed and can't tell why

21   he believed what he believed, and what exactly his reasons

22   were for not complying; and that he offered to comply from

23   Day 1., if they just worked out privilege with

24   President Trump or they took it before a judge who then

25   ordered him to comply because privilege wasn't validly

1    invoked or it didn't apply or it was a former President or

2    any or all of those reasons.

3         Mr. Bannon offered that from Day 1; that's not

4    going to come in from these letters.  But even if it did,

5    Judge, we're entitled to put in testimony about it, not just

6    the letters, and the jury can make of it what they want.

7    There's no independent value of these, other than for the

8    truth of their assertions.

9         Now, as I say in the filing that we made --

10        **THE COURT:**  What about the government's argument

11   that they're offering them -- not that, in fact, the Select

12   Committee hadn't received any assertion, formal or

13   otherwise, of any privilege from Mr. Trump but that the

14   Committee was communicating that position to Mr. Bannon?

15        **MR. SCHOEN:**  None of those things matter,

16   according to the judge's theory of the case.

17        **THE COURT:**  My question is about -- you are con --

18   you're moving between hearsay and relevance.

19        **MR. SCHOEN:**  Both directly relevant.

20        **THE COURT:**  The government's position is it's not

21   hearsay if it's not offered to prove that statement.

22        **MR. SCHOEN:**  It's the only value that statement

23   has.  The truth of its assertion.  It has no independent

24   value relevant to any issue in this case.

25        **THE COURT:**  They say -- well, if it's offered to

1    establish not that the statement is true but that it was

2    communicated to Mr. Bannon that that was the Committee's

3    position, is that or is that not hearsay?

4            **MR. SCHOEN:**  It's hearsay.  They can say all day

5    long it's not being offered for that and what I say and what

6    the cases that evaluate one's proffer of the reason for it

7    is.  There's no independent value to that position.  It's

8    not independently relevant to any issue in the case,

9    according to the issues that we're left with in the case.

10   They can't have it both ways.

11           **THE COURT:**  If this letter said -- or if a letter

12   said or does say, The return date on the subpoena for

13   documents was X-date.  We have never extended that date.  We

14   expect you to show up on that day.

15           And the Committee says or the government says,

16   We're offering that letter not to prove the truth of the

17   matter asserted but to say -- to tell -- to prove that

18   Mr. Bannon knew that the return date hadn't moved, that the

19   Committee's position was that the return date hadn't moved.

20           Would that be inadmissible hearsay and irrelevant

21   in this case in your view?

22           **MR. SCHOEN:**  In my view, with an instruction that

23   the portion, We have never extended this date, shouldn't be

24   considered for the truth of its assertion, but simply as

25   notice of the Committee's position, reflected in a letter.

1    I think that would be -- given the defense in this case, I

2    think that would be admissible.

3          That's why I say from the beginning, Your Honor, I

4    think that the date of the letter and maybe the last

5    paragraph should come in in this case, given what the

6    defenses are and what the government's position is.

7          **THE COURT:**  Thank you, Mr. Schoen.

8          **MR. SCHOEN:**  Thank you, Your Honor.

9          **THE COURT:**  Ms. Vaughn, what's your response to

10   the thing that is troubling me as well, which is that, in

11   light of -- and frankly the government has urged the

12   position that -- and I've agreed with it -- that in light of

13   *Licavoli*, obviously -- I mean, you know where we are.

14         **MS. VAUGHN:**  Yes.

15         **THE COURT:**  That most, if not all, discussions

16   around privilege and its implications and its assertion and

17   the effect of the OLC opinions and the like is out of this

18   case, but these letters squarely address the questions.  And

19   so then this -- some information about privilege comes into

20   the case in a very truncated form.

21         Why should I allow that rather than, for example,

22   having the government introduce redacted versions of these

23   letters, where what's allowed to go to the jury are the

24   bottom-line positions about date, return date, compliance

25   requirement, not extending the return date and the like?

1          **MS. VAUGHN:**  So --

2          **THE COURT:**  Mr. Schoen --

3          So I have foreclosed, for example, testimony about

4     advice that Mr. Bannon received from Mr. Costello about

5     whether he needed to comply with the subpoena because of

6     executive privilege, and I foreclosed other lines of inquiry

7     or testimony related to that or because of *Licavoli*'s mens

8     rea standard.  But these letters discuss those very

9     questions.

10         **MS. VAUGHN:**  So if the defendant would prefer to

11    not enter any of the correspondence between the parties

12    after the subpoena and instead craft some stipulation --

13    that the defendant claimed the law excused him; and the

14    Committee responded and said in clear terms, No, it does

15    not.  You must come on October 14th, for example -- the

16    government would always be happy to enter into that

17    stipulation.

18         But to the extent that the defendant is going to

19    claim that he thought there was an outstanding executive

20    privilege issue or a legal issue that had to be resolved

21    before he had to comply, the notice -- the wording of the

22    notice that he got from the Committee is directly relevant

23    to establishing whether that was actually his understanding,

24    his intent at the time.

25         **THE COURT:**  Because it told him his understanding

1    about his -- from the government's perspective -- mistake of

2    law was a mistake or because it goes to an actual question

3    that we have to resolve, which is whether Mr. Bannon

4    believed, for example, that the return date was, as I put it

5    before, we've put it before, flexible or malleable?

6        **MS. VAUGHN:** Yes. I think the best way to think

7    about it is -- there are a lot of cases in the contempt of

8    Congress context where defendants, before the Committee, had

9    raised a Fifth Amendment privilege.

10       And there are multiple cases where the witness is

11   saying, My Fifth! My Fifth! My Fifth! And the Committee

12   just never really addresses it. And the courts say, you

13   can't prove willful default. They raised a question. The

14   Committee left it hanging out there. So how can you say

15   that the witness knew that they were still expected to

16   answer? That's all that these letters go to.

17       So they go to showing that the defendant knew the

18   excuse he was raising for not complying had been clearly

19   resolved. And so if the defendant would like to enter into

20   a stipulation to that effect to prevent all of this from

21   coming in, all the correspondence, we can work with him to

22   do that.

23       But if he wants to claim that he had raised this

24   objection, and he thought that the Committee had left the

25   question open or had not clearly resolved it by the

1      deadline, October 14th for the deposition, for example, then

2      these letters are directly relevant to show the terms that

3      were used to explain to him, We are rejecting your reason

4      for not answering and you must answer.

5           **THE COURT:**  So that is true of the letters, but

6      there are parts of the letters that make those statements

7      and then there are parts of the letters that provide the

8      reasons and discussions around privilege.

9           And a third course that you haven't proposed would

10     be to redact the letters and would be to say, Look, what's

11     relevant here is whether Mr. Bannon knew or thought that the

12     Committee, as you just said, that the Committee hadn't

13     resolved his claims crystally and clearly.

14          If you just look at the October 8th letter, you

15     can imagine that Paragraphs 1, 2, most -- that Paragraphs 1

16     and 2, then the third-to-last, second-to-last and last

17     paragraphs, perhaps with the redaction at the beginning of

18     the third-to-last paragraph, would make the Committee's

19     position about compliance clear, but it wouldn't have this

20     discussion that could run the risk that I'm concerned about

21     and Mr. Schoen has been articulating.

22          **MS. VAUGHN:**  And I think that that path would

23     be -- could be acceptable to the government.  It's just we

24     need some time to sit down and figure out what those

25     statements are.

1          **THE COURT:**  That's why I wanted to address this

2      first here.

3          **MS. VAUGHN:**  And the defendant's letters too,

4      obviously, we would redact discussions.

5          **THE COURT:**  Perhaps.  So let me hear from

6      Mr. Schoen.

7          Mr. Schoen, I understand your position about the

8      letters generally.

9          **MR. SCHOEN:**  I don't think my position is

10     understood.  Maybe by the Court it is, not by the

11     government.

12         **THE COURT:**  No, I think the government has its

13     arguments but --

14         **MR. SCHOEN:**  Your Honor, I --

15         **THE COURT:**  Hold on a second.  Just slow down.

16         You have two proposals from the government.  The

17     government is willing to enter into -- well, not even two

18     proposals.  The government is willing to discuss a

19     stipulation with you.  What's your view on that proposal?

20         **MR. SCHOEN:**  Not the stipulation that has been

21     proposed so far.

22         Again, Paragraph 2, this is hearsay.  It may be,

23     as Your Honor said, relevant to the pertinency question, but

24     it's hearsay.  All the requested documents relate

25     directly --

1      **THE COURT:**  That's if I don't tell the jury that

2  it's offered solely for the purpose of whether the

3  Committee's notice was -- that it's offered for the proof of

4  notice provided.  But you really -- I understand that

5  position.

6      I want to get to the more-important question,

7  which is their view is these letters come in -- the

8  government's view is these letters come in in their

9  entirety, even though they discuss executive privilege

10  issues.

11      **MR. SCHOEN:**  Yeah.

12      **THE COURT:**  And they run the risk of telling, as

13  you said, a one-sided story or not the full story.  The

14  government says, Well, there's one way we can deal with

15  that.  We could enter into some sort of stipulation about --

16  I'm sure it would require some negotiation, but a

17  stipulation around the dates and what the understanding was

18  and whether the Committee had taken a position or something

19  like that.

20      **MR. SCHOEN:**  Right.  I proposed that in my

21  submission.  I proposed that.  That's -- my submission

22  proposes at the end of it that we include the date and the

23  fact that it's not -- that he was, had not complied with the

24  deadline.  Whatever the last paragraph says.

25      Here's the point, Your Honor, respectfully, the

1    government said, in effect, that this shows, you know, that

2    our reason was submitted and our reason was rejected.  So if

3    we claim that we didn't comply by a deadline for a certain

4    reason, this deals with that.

5          My understanding from the Court's orders is, we're

6    not entitled -- over our objection, we're not entitled to

7    argue what the reason was, meaning the underlying reason for

8    believing the date had moved.

9          All we're entitled to argue is that from the

10   communications regarding the date, back and forth with the

11   Committee, there was reason to believe that that date was

12   not a fixed date.  And what I mean by that is the continued

13   urging after the deadline had passed by Chairman Thompson

14   for compliance with the subpoena, the directive to Speaker

15   Pelosi after the contempt referral to continue efforts to

16   enforce the subpoena, those things.

17         I don't think, based on the Court's order at

18   least -- again, over our objection -- that we're entitled to

19   say, Oh, and by the way, we thought the date hadn't passed,

20   because we had raised executive privilege, and we thought

21   they were wrong about executive privilege or hadn't decided

22   it and all of that.

23         I think, based on the Court's ruling -- that's our

24   understanding -- that's all out.  What we're allowed to

25   argue is, we didn't believe the dates were fixed.  We

1    believed the dates were malleable.  We believed there was no

2    default.  We believed there was a waiver of any default that

3    might have happened from the language that says, We continue

4    to urge you to change your course in this letter or urge you

5    to comply with the subpoena as of the 15th -- as of the

6    18th  -- uh, sorry -- as of the 19th, and as of

7    after the contempt referral.  So that's all that's

8    relevant.

9            So that would be our redaction suggestion.  It

10   would be a fair one.  That is, the date and, Listen, buddy,

11   you better comply soon or whatever they say, you know, in

12   that last paragraph and similar language from the other

13   letters.

14           **THE COURT:**  So I'm just pulling up your brief.

15           **MR. SCHOEN:**  That little thing I filed yesterday?

16           **THE COURT:**  I have it.

17           **MR. SCHOEN:**  Toward the end --

18           **THE COURT:**  Yes.  Yes.

19           **MR. SCHOEN:**  I'm sorry.

20           **THE COURT:**  I was just pulling up the specific

21   language.  I recall the brief.

22           **MR. SCHOEN:**  It was brief for once.

23           **THE COURT:**  So, as you may recall, I granted in

24   part and denied in part the government's Motions in Limine

25   on a number of issues, and I left open the question of

1    whether some of the testimony could go to Mr. Bannon's state

2    of mind about the -- whether the dates were fixed and

3    whether he complied with the dates.

4           And I even did not grant the government's Motion

5    to Exclude the most recent set of letters, because the most

6    recent set of letters might be relevant to those questions.

7    I'm talking about the letters that President Trump sent

8    Mr. Bannon, Mr. Bannon sent to the Committee --

9           **MR. SCHOEN:**  Yes, Your Honor.

10          **THE COURT:**  -- those recent letters.  I left open

11   the question of whether they could come in to further

12   demonstrate, from the defendant's perspective, that the

13   dates were malleable, et cetera.

14          **MR. SCHOEN:**  Yes, Your Honor.

15          **THE COURT:**  What I said at the time -- at least

16   what I recall saying at the time -- is that I was open to,

17   through a proffer, Mr. Bannon -- if Mr. Bannon could proffer

18   that he believed the dates were malleable because, among

19   other things, there were discussions about privilege, that

20   that could come in, if he makes a proffer that that's what

21   the evidence and testimony is going to be.

22          I did not exclude or did not intend to exclude, if

23   that proffer is made, testimony about the reasons that

24   Mr. Bannon believed the dates were malleable.

25          So just to use a different example that I am not

412

1    suggesting that you have, if Mr. Costello told Mr. Bannon, I

2    don't think October 18th is the relevant date for X because

3    we are in discussions around how to protect the privilege,

4    if you could proffer that, that could go to whether

5    Mr. Bannon knew that October 18th was the return date on

6    that particular subpoena, even though that would be a

7    discussion with Mr. Costello.

8         **MR. SCHOEN:**  Yes, Judge.

9         There are plenty of reasons that Mr. Bannon could

10   proffer as to why he didn't believe that to be the firm

11   date -- a firm date.  But we never had the understanding

12   that that would go to the jury that those are the reasons.

13   That would then open up -- his reasons would be, I believe

14   the OLC opinions.

15        **THE COURT:**  But they would have to go to whether

16   he believed the return date was --

17        **MR. SCHOEN:**  Yeah.

18        **THE COURT:**  -- flexible.  In the hearing I said,

19   Mr. Bannon will have to proffer that before I will allow him

20   to testify about his understanding about privilege,

21   negotiations, et cetera.  That was a precondition.  It was a

22   discussion around proffer.

23        **MR. SCHOEN:**  I certainly remember the Court saying

24   about the proffer, and I took exception to that, saying that

25   I didn't think it was necessary to have Mr. Bannon proffer.

1    And then we discussed --

2         **THE COURT:**  You said, Well, we're going to do

3    cross-examination.  And I said, Yes, I understand that.  But

4    as to the testimony from your side --

5         **MR. SCHOEN:**  But the idea, Your Honor -- I have to

6    say, nobody on the defense team understood that the -- and I

7    don't know if that's what the Court's saying today -- nobody

8    understood that that would then open the door to testimony

9    before the jury that the reason Bannon believed the date

10   could be moved and now we backdoor all --

11        **THE COURT:**  Could be --

12        **MR. SCHOEN:**  -- of the OLC opinions --

13        **THE COURT:**  -- and it was not fixed.

14        **MR. SCHOEN:**  Yeah, was not fixed.

15        The reason I, Bannon, believed the dates weren't

16   fixed is because my lawyer had told me --

17        **THE COURT:**  I said all of this at the hearing on

18   the government's motions.

19        **MR. SCHOEN:**  Then all of the defenses come in,

20   Judge?

21        **THE COURT:**  I didn't say all of the defenses come

22   in.  I denied the government's in limine motions in part

23   because I said, Some of the information the government was

24   seeking to exclude could go potentially, assuming a proffer,

25   to whether Mr. Bannon believed, had the mens rea, that the

414

1    date was flexible.

2         MR. SCHOEN:  Okay.  And the point of the proffer

3    was to give the Court -- as we understood it, to give the

4    Court a good faith basis for why Mr. Bannon would have

5    believed that the dates were malleable --

6         THE COURT:  Yes.

7         MR. SCHOEN:  -- but the testimony would be that he

8    believed the dates were malleable because of the language in

9    the letters.  That was the whole point -- one of the main

10   points of my submission of the Trump and Costello letters,

11   to say clearly it's still open from the language.  I focused

12   on the language.

13        THE COURT:  And I did not exclude that

14   information.

15        MR. SCHOEN:  Not that information but the --

16   Judge, the information here, if I'm understanding what the

17   Court is saying, would be that -- and maybe I'm just not --

18   would be that if Mr. --

19        THE COURT:  I said that I could not exclude the

20   possibility that on a question that the jury must clearly

21   decide, which is Mr. Bannon's deliberate and intentional

22   failure to comply, that required two things around default.

23   One is that the date was clear, and the other is that he

24   knew it was clear or that he knew it was the date.

25             And I said that I could not exclude the

1    possibility that if Mr. Bannon made a proffer, that he did

2    not know that the date was clear --

3          **MR. SCHOEN:**  Right.

4          **THE COURT:**  -- because of something, that we would

5    allow that in.

6          The reason I required a proffer is because I did

7    not want, and am not going to permit him to just say, I was

8    excused because of privilege.  I was excused because I'm

9    relying on the OLC opinions.  I was excused because I relied

10    on the advice of counsel from my lawyer.  I did not have an

11    obligation to show up.  I was entrapped by estoppel,

12    et cetera.  Those are all out.  Those are what I would

13    consider to be direct.

14          But here I left open, if Mr. Bannon can make a

15    proffer, that the reason he did not believe the return date

16    was fixed or that there was still play in the joints was

17    because there was an ongoing negotiation over privilege and

18    the like, that if the proffer is sufficient -- and again, I

19    did not require the proffer before -- make that proffer,

20    that that could come in.

21          **MR. SCHOEN:**  Judge, I'm bewildered, I have to say.

22          Because if that's the case then, again, we have

23    here a Motion in Limine from the government to bar all of

24    these defenses and any mention of them or argument related

25    to them during this trial.

1          Those motions were granted.

2          **THE COURT:**  No, they were granted in part.

3          **MR. SCHOEN:**  Advice of counsel, for example.

4          No comment on advice of counsel or reliance on the

5    law.  That's what that motion asked for and the Court said,

6    Granted.

7          **THE COURT:**  I agree.

8          **MR. SCHOEN:**  Reliance on the law.

9          **THE COURT:**  Yes.

10          **MR. SCHOEN:**  So that was early on in this case.

11          **THE COURT:**  Yes.

12          **MR. SCHOEN:**  We're not permitted to mention the

13    OLC opinions or any reference to them or his belief in them.

14    That would be part of this proffer.

15          What we understood, Your Honor, the other day is

16    if Mr. Bannon can make a proffer that he understood the

17    dates to not be fixed because of the language in those

18    letters, the language on we're still urging compliance.

19          If -- what the Court is saying now is, Mr. Bannon

20    makes a proffer that the reason he didn't believe the dates

21    were fixed were maybe the language in the letters, but also

22    because I believed that I had a defense in this case of

23    advice of counsel, of OLC opinions, of executive privilege,

24    and my lawyer was trying to work all that out.

25          **THE COURT:**  It's going to have to be very tightly

1   tethered to the proffer.

2          **MR. SCHOEN:**  So then evidence can --

3          **THE COURT:**  For example, advice of counsel, I

4   think is going to be very difficult.  Advice of counsel is

5   not Mr. Costello communicated to me what was going on.  It's

6   Mr. Costello advised me X.

7          **MR. SCHOEN:**  And what about, let's just say,

8   entrapment by estoppel, Your Honor?  This is a main focus of

9   Mr. Costello's pitch --

10         **THE COURT:**  No, that's almost certainly not -- I

11  would have to hear what the proffer would be.

12         **MR. SCHOEN:**  Let's assume the proffer is, I

13  understood from my lawyer that there was a discussion about

14  serious constitutional issues, executive privilege, whether

15  the former President can invoke it, how broad that is,

16  whether that excludes me from having to come to testify, all

17  of those issues.

18         I understood that that was a negotiation going on

19  and that, therefore, the date was going to be extended all

20  along.  That's not exactly what we were discussing the other

21  day; that's not what our position was.

22         Our position was, we understood.  The Committee

23  had said, Listen, executive privilege doesn't apply.  Their

24  letters are clear about that.  Executive privilege doesn't

25  apply; that's their position.

1                No, we thought that as part of the accommodation

2       process, the constitutionally mandated accommodation process

3       that the Committee actually wanted Mr. Bannon's testimony

4       and, therefore, they were willing to say, Well, we mean

5       today.  Okay.  A couple days later, No, we really mean

6       today.  No, we mean by this date.

7                That's what we're talking about here.  Not because

8       the Committee said -- you know, Mr. Costello,

9       notwithstanding the letters from the Committee, really

10      thought that the Committee has given honest thought to

11      executive privilege and all of that.

12               It's clear from Chairman Thompson's letters that

13      they rejected executive privilege outright, they rejected

14      any other defense outright.  And even if they agreed

15      executive privilege applied, that that didn't excuse him

16      from coming there.  However, they wanted his testimony, and

17      as part of the accommodation process, they were willing to

18      keep moving the date, even through today.

19               That's the argument, Judge.  Not that he believed

20      that, you know, because the Committee was genuinely mulling

21      over executive privilege and so on that the date was

22      extended.  That was never our submission -- intended

23      submission.  That was never my argument the other day or

24      intended argument.

25               My argument was, because of the language in the

**-3811-**

1    letters, Mr. Bannon believed, right or wrong, jury question,

2    that the date had been extended and continued --

3        **THE COURT:**  Can I just read to you what I said

4    last week?  At least this is my script.

5        **MR. SCHOEN:**  Sure.

6        **THE COURT:**  This is an example.  The government's

7    Omnibus Motion seeks to exclude testimony from defense

8    counsel based on their "claimed experience."

9        The motion is granted to the extent that this

10   testimony would be offered to show that the advice that

11   counsel gave Bannon included that he had a justification not

12   to comply to the extent that it tries to show that privilege

13   justified Mr. Bannon not complying or to the extent it is

14   offered to show that the subpoenas were invalid.

15       But to the extent that this testimony sheds light

16   on Bannon's subjective belief as it relates to the narrow

17   mens rea requirement if, for example, counsel had told him

18   that they were in negotiations with the Select Committee and

19   the date on the subpoenas was no longer the operative one,

20   the evidence could be relevant.  And I made very similar --

21   and I can go through, again, perhaps after a break, the

22   holdings that I reached before.

23       But I understand your position.  I do think it's

24   important to hear from the government's perspective what it

25   understood this case to be or not be about.  Because,

**-3812-**

1    obviously, I don't want to just jump into this if there's a

2    misunderstanding.  So I have your position.

3         **MR. SCHOEN:**  One thing that Your Honor said during

4    that hearing was, Well, part of the government's omnibus

5    motion is "bar the defense of executive privilege."  And the

6    Court said, I don't think that's really been teed up

7    directly in this case.

8              And so in my next submission I said, Your Honor,

9    with all due respect, we had raised that.  I cited to the

10   places in the transcript where we had raised it.  I made

11   clear that one of our defenses -- I tried to make clear that

12   one of our defenses in the case is that executive privilege

13   excused it.  That's independent of this discussion.  This

14   discussion from our perspective, what our defense is on this

15   fixed dates business, is that Mr. Bannon --

16        **THE COURT:**  I understand.  I understand.  I

17   understand.  I get it.

18             Ms. Vaughn.

19        **MS. VAUGHN:**  So I think part of why this is

20   difficult is because we don't have any proffer of specific

21   evidence that the defendant is pointing to here.  And all

22   we're left with then is the subpoena, the defendant's letter

23   to the Committee that he's not going to comply because he

24   believes he has a privilege, the Committee's letter back

25   saying, That is not a basis not to comply, you must now do

1    so and then just a repeat on and on and on.  And the

2    Committee saying, Nope.  You're in violation.  You're in

3    violation.  We're referring you for criminal contempt.

4              So it's just difficult to respond because it's not

5    clear what exactly it is the defendant is trying to put on.

6    If what the defendant wants to argue is that the

7    government's continued effort to enforce a legal order

8    somehow waives the original requirement, there is no basis

9    in law for that.  That's like arguing that someone that

10   willfully doesn't file taxes for ten years can't be charged

11   with a crime because the IRS, once they find out, tries to

12   get them to file their taxes.  If that's what we're talking

13   about, that's just off the table.

14             If what we're talking about instead is that the

15   defendant thought that the Committee had not fully resolved

16   his objection and directed him to comply, then I don't see

17   how we can exclude language from the letters back and forth,

18   because that goes directly to how clear he understood the

19   direction to be.

20             **THE COURT:**  So then -- so then the question is,

21   does the defendant then get to introduce other testimony

22   about his understanding of the negotiations, the reasons for

23   the negotiations, the reasons for the positions his counsel

24   was taking, because that goes to, assuming a proffer,

25   whether he understood the date was fixed or malleable.

422

1          **MS. VAUGHN:**  To a mistake defense.

2          **THE COURT:**  Not a mistake of law.

3          **MS. VAUGHN:**  Right.

4          **THE COURT:**  A defense that I did not understand

5     the return date to be the return date.

6          **MS. VAUGHN:**  A defense that, My lawyer told me

7     that he talked to the Committee and they said, Don't worry

8     about it.  We'll work it out.

9          **THE COURT:**  That would be admissible.

10         **MS. VAUGHN:**  That's admissible.

11         **THE COURT:**  Yes.

12         And at least in theory, some of what we're

13    discussing today is similar to that.

14         **MS. VAUGHN:**  As in the discussion in the letters?

15         **THE COURT:**  Well, the discussion with Mr. Schoen.

16         So, for example, if Mr. Bannon proffered or

17    introduces evidence that he did not deliberately and

18    intentionally, as the words are used, did not deliberately

19    and intentionally default because he believed that the dates

20    were -- just using the most general terms -- flexible,

21    because of the discussions with the Committee, because of

22    the statements that had been made by his lawyer to the

23    Committee at the least, because of his understanding of how

24    these things normally get worked out, I did not believe

25    subjectively that the date was the date, the government

1    agrees that that is admissible.

2            **MS. VAUGHN:**  If the defendant wants to testify

3    that, based on these communications --

4            **THE COURT:**  Not just testify but introduce

5    evidence about that from someone.

6            **MS. VAUGHN:**  Admissible evidence, yeah.

7            **THE COURT:**  Yeah.

8            **MS. VAUGHN:**  That would be admissible.

9            If he had evidence that he made a mistake and

10   thought that he had -- that the Committee had given him more

11   time.  At the time that he failed to comply, that that was

12   not the date.

13           **THE COURT:**  Right.

14           **MS. VAUGHN:**  He could enter that.

15           **THE COURT:**  Okay.  Because I have not required the

16   specific proffer, as we discussed in the hearing, I was not

17   going to require a proffer before trial at least, I take it

18   the government's view is it needs to try to foreclose this

19   argument in its case at least in part, and it should be

20   allowed to introduce all of the letters that we've been

21   talking about to show, from the government's perspective,

22   that its position was firmed and fixed and no one could have

23   had the mistake that Mr. Bannon claims he had.

24           **MS. VAUGHN:**  Yes, that the black and white pages

25   mean what they say.

424

1          **THE COURT:**  Okay.  Thank you.

2          I'm going to take a recess.  I'm going to come

3    back and decide this question, and then we will do

4    peremptories.

5          Mr. Schoen, do you want to say something?

6          **MR. SCHOEN:**  I would like to, Your Honor.

7          Your Honor, I thought that the discussion at the

8    end kind of deviated from the central question that we were

9    talking about; that is, whether Mr. Bannon's proffer or the

10   testimony going forward would be to allow him to testify as

11   his belief was that executive privilege applied and that was

12   a reason.  I believed in the legitimacy of the idea --

13         **THE COURT:**  It has to be that he did not

14   believe -- it has to tend to demonstrate that he did not

15   believe the dates were fixed.

16         **MR. SCHOEN:**  Right.  That's right, Your Honor.  I

17   understand that.

18         But the additional element that's been, in my

19   view, added today or that we didn't contemplate, let's say

20   that, and that I didn't put forward as our reason for

21   raising this argument was that Mr. Bannon would put in

22   evidence also that the reason he believed -- reasons he

23   believed the dates were moved were not just the language in

24   the letters urging him to continue to comply, but also

25   because he believed that this was a legitimate belief

**-3817-**

425

1    because my lawyer was telling me that executive privilege

2    applies here.  So I knew, therefore, that was a legitimate

3    thing.

4              If he's going to introduce that, he must be able

5    to testify then or to put on evidence from the lawyer about

6    those negotiations and why executive -- why this was

7    legitimate then.  Why the belief was legitimate that the

8    dates were moved because, after all, I was discussing

9    executive privilege with them.  And here's why executive --

10   **THE COURT:**  I think you missed the -- I understand

11   that, and I think the government understands that's your

12   position.

13             I think the government was saying -- Well, perhaps

14   we're talking about different things.  Forgive me.  I think

15   the government was saying, If that's what Mr. Bannon is

16   going to testify about -- obviously the government says, We

17   haven't seen that specific kind of proffer yet or introduce

18   evidence from Mr. Costello to that point.

19             But what the government is also saying is, at

20   least right now, if that's a possibility, we should be

21   permitted to put in all of these letters to try to foreclose

22   that, from our perspective, that that's a real subjective

23   belief.

24   **MR. SCHOEN:**  But we can't leave that as a

25   possibility, Judge.  Because coming in today we had

**-3818-**

1    absolutely no intention.  We understood the Court's rulings

2    to be that we cannot raise why we believed or that we

3    believed executive privilege was actually legitimate, was

4    invoked properly and all of those things.

5        We believed we were coming in here today to argue

6    the one defense we were left with; and that was that he

7    believed the dates were not fixed; and that the reason he

8    believed that was because of the language in the letters

9    indicating continued urging, continued enforcement.

10       Not that we were going to be permitted to come in

11   and testify; and the reasons I thought the dates were moved

12   were also because my lawyer was negotiating over executive

13   privilege and over all of these other things; and therefore,

14   that's going to be the testimony that opens the doors to

15   these letters -- was never envisioned in any way.

16       That was not our position that I said the other

17   day here.  The position was we believe we should be able to

18   say the dates are malleable; that's why I introduced the

19   Trump and the Costello letter and so on; that started the

20   conversation that the dates were malleable because the

21   letters indicate -- the 19th -- here's the 19th.  This was

22   afterwards.

23       "Select Committee remains focused on expeditiously

24   obtaining the testimony and documents necessary,"

25   et cetera.  "Expect immediate compliance by Mr. Bannon."

1    The 19th.  That's after the contempt referral.  That's what

2    we are talking about, about why we believed it was still

3    open.  We firmly disagree with the other proposition.

4        Mr. Bannon has continued to say he wants to comply

5    fully with the Committee.  But if the case ends up in a

6    conviction or there's a finding of a default in the

7    subpoena, our view is the subpoena is extinguished.  He may

8    still want to voluntarily testify and comply, but the

9    subpoena would have been extinguished; that's why we believe

10    it wasn't extinguished.  There was no default because of the

11    continued urging and the continued efforts to enforce the

12    subpoena.

13        But make no mistake, Your Honor, from my

14    perspective at least, these letters shouldn't come in

15    because the Court understood we were going to argue that

16    Bannon's reason -- Bannon's belief was that the reason the

17    issue was still open was because the Committee was genuinely

18    considering executive privilege and all of that.

19        We saw their rejection of that immediately.  But

20    the accommodation process required them to continue to try

21    to get compliance and enforcement, even if they were right

22    on the legal issues.  If you want Bannon's testimony, let's

23    work something out.  That's all.

24        **THE COURT:**  Thank you, Mr. Schoen.

25        **MR. SCHOEN:**  Thank you.

1          **THE COURT:**  Ms. Vaughn, do you want to say

2    something?

3          **MS. VAUGHN:**  If the defendant wants to testify or

4    put on evidence that he made a decision not to comply with

5    the subpoena because he believed that the law excused him,

6    that's evidence of his deliberateness.  We would welcome

7    that evidence.

8          He can put it on; he made a deliberate decision to

9    follow what his attorney told him to do:  Don't do it.  The

10   law excuses you.

11         **THE COURT:**  Wait a second.

12         You moved to exclude that evidence.

13         **MS. VAUGHN:**  Yes, because it's not --

14         **THE COURT:**  Now you are welcoming it?

15         **MS. VAUGHN:**  It's not a valid defense.  If the

16   defendant wants to testify that he made a deliberate

17   decision not to comply, that's fine.

18         **THE COURT:**  But wait.  But the government -- you

19   didn't just argue that it comes in for a certain purpose.

20   You actually asked me to exclude that evidence at the very

21   beginning of this case.

22         **MS. VAUGHN:**  Yes.  The defense -- the evidence of

23   the defendant's attorney's explanation of advice of

24   counsel -- I mean, of executive privilege --

25         **THE COURT:**  What about just the fact of it?

1          You just said you welcome Mr. Bannon saying, I

2     didn't show up because I was told by my lawyer I didn't have

3     to.  You just said you would welcome that testimony, and you

4     moved to exclude it the first motion that was filed in this

5     case.

6          **MS. VAUGHN:**  We moved to exclude it as a defense,

7     Your Honor, and it's not a defense.

8          **THE COURT:**  No, you moved to exclude testimony

9     about advice of counsel.  You didn't move to exclude it for

10    certain purposes but not others.  The Motion in Limine was

11    about all advice of counsel's testimony.

12         **MS. VAUGHN:**  Because we don't think the advice is

13    relevant.

14         **THE COURT:**  But you just said it would come in if

15    it goes to whether he acted deliberately.

16         **MS. VAUGHN:**  If he wants to testify --

17         **THE COURT:**  You just said -- you just said, If

18    Mr. Bannon wants to testify, I didn't show up because my

19    lawyer told me I didn't have to -- presumably he would

20    say -- and he told me I didn't have to because there are OLC

21    opinions that make it clear you don't have, there's this

22    thing called executive privilege -- blah, blah, blah --

23    that's the advice my lawyer told me.  I had that advice;

24    and, therefore, that is the reason I didn't come.

25         You just said you would welcome that testimony

1    because it would go to deliberateness.

2           **MS. VAUGHN:**  Sorry, Your Honor.  We would not

3    welcome all those details about --

4           **THE COURT:**  But how can you separate the details

5    from the fact Mr. Bannon says, I didn't show up because my

6    lawyer told me I didn't have to?

7           **MS. VAUGHN:**  Because --

8           **THE COURT:**  You just said you would welcome that

9    testimony.  Why isn't that squarely foreclosed by *Licavoli*,

10   in the government's view?

11          **MS. VAUGHN:**  The fact that he made an objection is

12   relevant, the fact of that.

13          **THE COURT:**  But you just said you would welcome

14   this information because it goes to his deliberateness.  You

15   asked me to exclude it for all purposes in February.

16          **MS. VAUGHN:**  No, Your Honor.  I misspoke if I -- I

17   did not intend to say that we welcome all of this evidence

18   of all the advice and the OLC opinions and all of those

19   things.

20          But we still have to prove that, if he raised an

21   objection, that it was resolved.  And so this kind of takes

22   us back to the beginning of --

23          **THE COURT:**  And you agree -- and I think I heard

24   you agree earlier -- that if Mr. Bannon says, I believed

25   that the return date was flexible, malleable, whatever.  I

1    believed that.  Mr. Bannon says that.  And he can say why.

2              And if the why is, Because I understood that we

3    were in negotiations with the Committee over executive

4    privilege or the why is, My lawyer told me we were in

5    negotiations with the Committee over executive privilege or

6    the why is, Because, in my experience, there's an

7    accommodation process, and that is why I had that subjective

8    belief that the dates were flexible, that that information

9    is admissible.

10             **MS. VAUGHN:**  And then we would have to drill down

11   on what he's saying the why is, if that makes sense.  If the

12   why is, My attorney just called me and told me, Don't worry

13   about tomorrow; I've talked to the Committee or we've pushed

14   it, that's one thing.

15             **THE COURT:**  Yes, but isn't that a jury question?

16             **MS. VAUGHN:**  That is a jury question whether that

17   happened.  If the why --

18             **THE COURT:**  What I tried to be very clear about in

19   my last set of rulings was there's the question of whether

20   Mr. Bannon was, in fact, excused from appearing.  Legally

21   excused.  That's one question.

22             There's another question, which is, Is this

23   prosecution estopped by entrapment?  That's an affirmative

24   defense.

25             Another question is -- and other questions are,

1    Was there a default?  And another question is, Did he act

2    deliberately and intentionally?

3            And of course there's the question of, you know,

4    If the mens rea was a heightened standard, whether he had

5    acted knowing that his conduct was unlawful.  I've held he

6    cannot offer evidence to demonstrate that he did not know

7    his conduct was unlawful.  That's *Licavoli*.  That's advice

8    of counsel, at least at its core.

9            I've held he cannot offer evidence about the OLC

10    opinions to demonstrate entrapment by estoppel.

11            I've held that he largely can't establish that he

12    was legally excused from appearing in front of the

13    Committee.  But he still gets to argue that there wasn't

14    default; and that he didn't know there was default, in the

15    deliberate and intentional sense, because he didn't know

16    about the return date.

17            And I had intended to leave open the possibility

18    through a proffer that Mr. Bannon would be able to say, I

19    didn't know, in the sense of *Licavoli*, that the return date

20    was the return date because of something.

21            And I went through the government's Motions in

22    Limine, and I granted them in part and I denied them in part

23    and left open the possibility that the proffer about that

24    particular thing -- whatever we're talking about --

25    accommodation process, past knowledge of how one deals with

1    subpoenas, OLC opinions, discussions with counsel, could,

2    could, with the right kind of proffer, establish that he

3    didn't act deliberately and intentionally.

4        So I think the government is agreeing with me that

5    with the right kind of proffer, evidence in those categories

6    could, come in.

7        **MS. VAUGHN:**  We -- I'm not sure we agree that OLC

8    opinions could ever --

9        **THE COURT:**  Fair enough.

10       **MS. VAUGHN:**  But, yes, absolutely.  Mistake is a

11   defense.

12       **THE COURT:**  Mistake of something.

13       **MS. VAUGHN:**  Factual mistake is a defense.  Like,

14   I thought that I had raised a question.  I was waiting for

15   the Committee to answer my question.  I didn't realize that

16   it -- you know, I still had to go until --

17       **THE COURT:**  Do you agree, though -- do you agree

18   that if the testimony is, I thought -- or the evidence.  Not

19   even saying Mr. Bannon is going to testify.  I'm just

20   saying, if the evidence presented is Mr. Bannon believed

21   that the operative date was not fixed in stone because, in

22   his experience these things get worked out or because his

23   lawyer told him, not that he had a legal excuse from showing

24   up, but that he was in negotiations with the Committee or,

25   you know, he was hopeful that the Committee would not --

1    would move the return date and the like, that those would

2    be -- assuming we have a proffer to that affect -- that

3    would be admissible?

4              **MS. VAUGHN:**  Yes.

5              If the defendant wants to put on evidence that

6    he -- the dates in the subpoena, he had been excused from

7    them or they were getting moved or something like that, he

8    can put that evidence on.

9              **THE COURT:**  Right.

10             And the government's view is, of course, that that

11   didn't happen here, but that's not -- that doesn't mean

12   that's not a question for the jury or this evidence is

13   inadmissible for that purpose.  It's a question of whether

14   the proof is strong or weak or whatever.

15             **MS. VAUGHN:**  Yes.  And it's very difficult to

16   know.

17             I mean, the line is hard to draw, right, between

18   an admissible defense and an inadmissible one, where you

19   have someone relying on executive privilege or the law to

20   not comply.

21             So it's very difficult to sit here and say what

22   exactly the government's position would be on the specific

23   evidence without knowing what that is.  But as an initial

24   matter, the government has the burden to prove --

25             **THE COURT:**  He knew.

1              **MS. VAUGHN:**  -- that he knew.

2              **THE COURT:**  And the government wants to prove that

3     the dates were fixed, the Committee had taken a final

4     position.  So -- just so go back really quickly to the

5     letters -- why isn't it sufficient, at least right now, for

6     the government to introduce those portions of the letters

7     that say, essentially, The dates are fixed and we're not

8     moving them, rather than the reasons for that?

9              Does the government want to introduce, for

10    example, Paragraphs first, second, third -- I don't mean

11    first, second, third.  But I mean the ones that bear --

12             **MS. VAUGHN:**  Yeah, bearing out the first, second

13    and third reasons.

14             **THE COURT:**  Because they would tend to demonstrate

15    that, in fact, there wasn't further negotiation over these

16    questions to be had?

17             **MS. VAUGHN:**  I think, as an initial matter, if we

18    wanted to redact from all the letters anything getting into

19    the merits of the claim or things like that, beyond just

20    making the claim and rejecting it, we could do that, with

21    the understanding that to the extent the defendant --

22             **THE COURT:**  If we can get the proffer that we've

23    been talking about, then the government would reserve the

24    right to come back and say, No reasonable person could have

25    had that view because we had staked out clear positions on

1      these questions.

2              **MS. VAUGHN:**  Yes.  And it could be that that door

3      is opened as soon as they cross one of the government's

4      witnesses and try to suggest that these letters are not

5      clear in some way or something.

6              **THE COURT:**  Okay.

7              Mr. Schoen, do you want to add anything?

8              **MR. SCHOEN:**  Just very quickly, Your Honor.  I

9      want to be clear, when the Court is considering the

10     specifics of these letters, what our proffer is.

11             Our proffer is -- given the fact that we are

12     barred from raising the defenses directly --

13             **THE COURT:**  Yes.

14             **MR. SCHOEN:**  -- then I don't want to appear to the

15     jury to be backdooring it through some other claim that on

16     its face would be unreasonable.

17             If one were to read these letters, no one -- no

18     reasonable person would come to the conclusion that Costello

19     is going to really soften up the Committee, give them the

20     old one-two and they're going to change their position on

21     executive privilege.

22             So the proffer would be this, Your Honor -- the

23     proffer would be this; that Mr. Bannon believed that the

24     dates were not fixed; they were malleable because of the

25     urging language in the letters, both during the period --

1    I'm specifically thinking of the October 15th and the

2    October 19th and after the period and not limited to those

3    letters but communications that indicate an urging to

4    continue compliance --

5            **THE COURT:**  Yeah.  Okay.

6            **MR. SCHOEN:**  -- and to enforce the subpoena, and

7    because he understood that's part of an accommodation

8    process.  Not because he thought the Committee was going to

9    change its position on executive privilege or any of those

10   things.  That's why it's not relevant, the Committee's

11   position, on executive privilege.

12           **THE COURT:**  Thank you.  That's very helpful.  I

13   appreciate that.

14           **MR. SCHOEN:**  Finally.

15           Oh, Evan wanted to -- sorry.

16           **THE COURT:**  Mr. Corcoran.

17           **MR. CORCORAN:**  Procedurally only --

18           **THE COURT:**  Yes.

19           **MR. CORCORAN:**  -- but not legal.

20           We'd ask for a one-month continuance, Your Honor.

21   There's been sort of a seismic shift in the understanding of

22   the parties.  I understand the Court's mind has been clear,

23   but there are a lot of moving pieces in terms of what the

24   government's evidence would be, what the defense evidence

25   would be in this case.

1          We simply have not, in the short time since our

2    joint status hearing, done the type of defense preparation

3    that we would have, if we had an understanding of what was

4    discussed just now.

5          I think we can do a month continuance without

6    giving up the work that was done yesterday to select the

7    jury, to the extent that we keep all of them.  They come

8    back in a month.  They're instructed not to see or, you

9    know, to turn off, to the extent that they can, any media on

10   this topic.  We can come back and resume in a month but

11   we'll have these things ironed out.

12         I am very concerned from the standpoint of

13   presenting a defense that we just have to deal with too many

14   moving pieces on really significant issues that go to mens

15   rea and our case on the fly.

16         So we respectfully ask the Court to consider a

17   one-month continuance.  Thank you.

18         **THE COURT:**  Thank you.

19         Ms. Vaughn.

20         **MS. VAUGHN:**  Your Honor, the facts are the facts.

21   Something happened or it didn't.  And the facts have been

22   the facts this whole case.  These claims about the dates

23   being malleable they've been making ever since their other

24   defenses were excluded.  There is no reason to continue

25   trial in this case.

1          And, by the way, their defenses appear to be this

2    waiver argument that after-the-fact efforts to get

3    compliance somehow erased the contempt.  That is civil

4    contempt.  Criminal contempt happens and that doesn't bar

5    the government from trying to get compliance later.

6          So if the defendant has evidence that at the time

7    he defaulted, he believed that the dates had been moved,

8    that's one thing.  But if the defendant wants to offer the

9    October 19th letter that says, You are in default.  We found

10   you in criminal contempt, we'd still like the information --

11   if they want to argue that that statement, We'd still like

12   the information, somehow erased his default, that's not how

13   the law works.

14         The same with the accommodation process.  If the

15   defendant wants to argue that he made a mistake because he

16   thought subpoenas never going to -- never are the dates they

17   are, that's one thing.

18         But if the defendant wants to argue that executive

19   privilege requires an accommodation process, that's a legal

20   argument.  That is a legal mistake.  That's a mistake of

21   law.

22         But this idea that they need a continuance, are

23   they manufacturing facts that don't exist?  I mean, the

24   facts are the facts.  I don't see what the basis is to ask

25   for more time, given that this is the defense they've taken

440

1    for the last few weeks.

2            **THE COURT:**  Thank you, Ms. Vaughn.

3            So I'm going to take a recess.  I'm going to

4    consider the arguments.  Come back.  Address the issues that

5    we've just heard, including the motion for continuance and

6    see where we are from there.

7            Ms. Lesley, can you just let the jury that's

8    waiting know it will just be a little while still?

9            Thank you.

10           (Recess from 10:17 a.m. to 10:36 a.m.)

11           **DEPUTY CLERK:**  Your Honor, we are now back on the

12    record.

13           **THE COURT:**  Thank you.

14           Here's where we are on the issues that we've

15    discussed this morning.

16           I went back and pulled the transcript from the

17    hearing that was discussed earlier.  And I think it's

18    important to reread the specific decisions I entered at that

19    time on the record about some of the questions we discussed

20    today.

21           So I discussed the implications of *Licavoli*, the

22    fact that I'm bound by the D.C. Circuit decision there and

23    the fact that "willfully" under *Licavoli* means deliberate

24    and intentional making of default only.

25           And then I discussed what the implications of

**-3833-**

1    *Licavoli* were for at least three pending and one motion that

2    had already been decided, and this is what I said.  I am not

3    going to read the whole thing.

4          "So to the specific motions, the government's

5    Motion in Limine to exclude evidence of Department of

6    Justice subpoenas and writings is granted in part and denied

7    in part.

8          "This evidence is excluded to the extent that

9    Mr. Bannon would offer it to show that he was legally

10   excused from responding to the subpoena or that he believed

11   that he was, that the subpoena was invalid or he believed he

12   was or that he was not otherwise required to respond to it.

13         "But such evidence might, and I stress might, be

14   relevant, if Mr. Bannon was prepared to offer evidence that

15   he did not think the date on the subpoenas was operative.

16   It might be that Mr. Bannon cannot proffer that he intends

17   to introduce such evidence.  If not, then this testimony

18   would be entirely irrelevant and excluded."

19         Then talk about proffer, that I wasn't going to

20   require it at the time.  I then go on to decide the next

21   motion -- or discuss the next motion.

22         "Next is the government's Motion in Limine" -- and

23   I'm just quoting from the transcript.  "Next is the

24   government's Motion in Limine to exclude evidence of the

25   defendant's prior experience with subpoenas...I will also

1    grant this motion in part and deny it in part as well."  And

2    this is the government's Motion to Exclude evidence.  "To

3    the extent that Mr. Bannon would attempt to introduce such

4    evidence for the purpose of explaining that he did not think

5    he had to comply with the Subpoena, or that his

6    understanding of privilege exempted him from following the

7    Subpoena's commands, then it cannot be admitted.

8         "Again, if Mr. Bannon can proffer that he intends

9    to show he did not believe the return dates on the subpoenas

10   were operative, perhaps because his prior experience led him

11   to believe that the return date had been or maybe would be

12   moved, then the evidence may be relevant."

13        I go on to say, "Again, I'm not going to require a

14   proffer to that extent now."

15        Then I go on to say, "These thoughts also resolve

16   one part of the government's omnibus Motion in Limine,

17   Section 1.F of the government's Omnibus Motion seeks to

18   exclude testimony from defense counsel based on their

19   claimed experience.  Again, that motion was granted in part

20   and denied in part or that part of the motion is denied in

21   part and granted in part...

22        "The motion is granted to the extent that such

23   testimony would be offered to show that the advice that

24   counsel gave Mr. Bannon included that he had a justification

25   not to comply with the subpoenas.  To the extent it tries to

443

1    show that privilege or OLC documents justified Mr. Bannon in

2    not complying or to the extent that it was offered to show

3    that the subpoenas were invalid, or to the extent that this

4    testimony might shed light on Mr. Bannon's belief but -- or

5    to the extent this testimony might shed light on

6    Mr. Bannon's subjective belief as it relates to the narrow

7    mens rea requirement.  If, for example, counsel had told

8    Mr. Bannon that they were in negotiations with the Select

9    Committee and that the date on the subpoenas was no longer

10   the operative one, then the evidence might be relevant."

11          I then went on even to clarify, as necessary as I

12   said at the time, my prior decision about the government's

13   Motion in Limine about good faith reliance on law or advice

14   of counsel.

15          I said, "To the extent that Mr. Bannon seeks to

16   argue that his failure to comply with the subpoena should be

17   excused because he relied in good faith on the advice of his

18   counsel -- and thus that he did not comply with the subpoena

19   because he did not think it was valid as it applied to him

20   or he had a justification for not doing so -- such evidence

21   is clearly irrelevant," I said, "in light of *Licavoli*."

22          "But" -- I went on -- "as I just noted, to the

23   extent that discussions with counsel might go to

24   Mr. Bannon's subjective belief about whether the date on the

25   subpoenas was operative, that evidence could be relevant.

**-3836-**

1    Advice of counsel that the Subpoena was invalid or that he

2    was excused from attending, of course, would remain barred."

3            It seems to me pretty clear that I had left open

4    the possibility that, as to the narrow mens rea of *Licavoli*,

5    that is, whether Mr. Bannon deliberately and intentionally

6    failed to appear or produce documents as those terms are

7    used in *Licavoli*.  I left open the possibility that

8    Mr. Bannon could introduce evidence that he did not

9    understand the return dates to be firm, for various reasons,

10   the ones I just discussed.

11           For that reason, I did not grant the government's

12   Motions in Limine in full.  I made clear that Mr. Bannon

13   could offer a proffer to that effect.  I even went on to

14   make clear that that ruling or those principles were

15   applicable to a motion that I had resolved many months

16   before about advice of counsel.

17           So what does that now mean?

18           What I heard Mr. Schoen to say earlier is that the

19   argument from Mr. Bannon at this time, and essentially the

20   proffer that would be made, is that Mr. Bannon will make the

21   argument that he did not understand the dates on the

22   subpoena to be fixed or that they were flexible or whatever

23   for two reasons.

24           One is because of the discussions with and

25   statements by the Committee about the return date.  It seems

1    to me that is plainly legitimate.  And the second is because

2    Mr. Bannon understood there to be an accommodation process

3    that was typically followed; and that he believed should be

4    followed here or would be followed here at least; and that

5    that meant that the return date could be changed.

6         That's the kind of proffer that at least leaves

7    open the possibility that such testimony or evidence could

8    come in.  But what it means is, as I understand it at least,

9    is that Mr. Bannon is not proffering, for example, that he

10   intends to argue that the return dates were open because

11   there was ongoing discussion about privilege, the privilege

12   issues were unsettled, advice from counsel about the

13   privilege issues, OLC opinions and the like.

14        If I have that right, then the government's

15   letters, those portions of the letters that discuss

16   privilege aren't, to me, plainly relevant right now.  And so

17   my view is, at least for purposes of the government's

18   witnesses, and unless and until the questions are opened on

19   cross, the government should redact from the letters that it

20   intends to introduce through its witnesses today, any

21   discussion of privilege whatsoever.

22        I do not agree that the letters are altogether

23   hearsay.  I do believe they provide notice to the defendant

24   of the Committee's bottom-line positions, at a minimum,

25   about the return date and his compliance with the subpoenas.

1          So just to use as an example, the October 8th,

2     2021 letter, I believe that all that should be admitted at

3     this time are the first two paragraphs.  I recognize

4     Mr. Bannon's argument that the whole thing is inadmissible

5     or even portions of Paragraph 2, but I think, given where I

6     am, Paragraphs 1 and 2 may be admitted.  I am talking about

7     the October 8th, 2021 letter.  Paragraph 3, then the

8     paragraphs that begin, "first, "second, "third" should be

9     redacted.

10          The first sentence of the third-to-last paragraph

11    should be redacted, because it discusses privilege.  And

12    then the remainder of that paragraph, I think, is fair as

13    are the last and second-to-last paragraphs in the October

14    8th, 2021 letter.

15          So for now, I don't think there's been a proffer

16    from Mr. Bannon that, in my view, would open the door to the

17    government, essentially, foreclosing this argument that

18    privilege was still a question up in the air.

19          If we then go to the Government's Exhibit 7,

20    Paragraph 1 can be introduced.  Paragraph 2 needs to be

21    redacted.  Paragraph 3 needs to be redacted.  Paragraph 4

22    needs to be redacted.  Paragraphs 5 -- and, by the way, I

23    include the footnotes.  For paragraphs that are going to be

24    redacted, the footnotes need to be redacted too.  So that

25    means Footnotes 1 and 2 in this letter need to be redacted,

447

1    but the penultimate and ultimate paragraphs in this letter

2    are admitted or can be admitted through the witness.

3              Turning to Government's Exhibit 9, which is really

4    two letters, that single paragraph is -- I don't see

5    anything problematic in it as it relates to the discussion

6    we've had today.

7              Then paragraphs -- the next letter, which is the

8    second October 19th, 2021 letter, the first two paragraphs

9    are admissible.  The third is not or at least now needs to

10   be redacted.  And the last paragraph doesn't need to be

11   redacted.

12             **MS. VAUGHN:**  Does not?

13             **THE COURT:**  Does not.

14             Ms. Vaughn.

15             **MS. VAUGHN:**  Yes, Your Honor.  So with respect to

16   Exhibit 5 --

17             **THE COURT:**  Yes.

18             **MS. VAUGHN:**  -- the first sentence, "Regardless of

19   any purported privilege assertion by Mr. Trump" --

20             **THE COURT:**  Yes.

21             **MS. VAUGHN:**  We do think it is important to keep

22   the instruction that he has an ongoing obligation to produce

23   documents.

24             **THE COURT:**  Yes.  That's fair.  We can redact the

25   first clause of that sentence.

 1              **MS. VAUGHN:**  Okay.

 2              **THE COURT:**  It's actually -- I meant to raise

 3       that.  I believe that is correct or appropriate.

 4              **MS. VAUGHN:**  And then in Exhibit 6, which we

 5       didn't address, the government would intend to redact the

 6       third paragraph --

 7              **THE COURT:**  Fair enough.

 8              I was going through the documents covered by the

 9       defendant's motion.

10              **MS. VAUGHN:**  Yes.

11              **THE COURT:**  I am happy to discuss the other

12       documents here.

13              So the government is attempting, I take it then,

14       to attempt to introduce the letters from Mr. Bannon's

15       counsel in its case-in-chief?

16              **MS. VAUGHN:**  Yes.

17              **THE COURT:**  Okay.

18              **MS. VAUGHN:**  We think they are necessary to put

19       the Committee's direction back to him in context.

20              **THE COURT:**  Okay.

21              **MS. VAUGHN:**  So we would propose redacting the

22       third paragraph of that letter and the last paragraph of

23       that letter.

24              And with respect to --

25              **THE COURT:**  So why don't the second and fourth

1    paragraphs in this letter raise the concerns that the third

2    and fifth do?

3         **MS. VAUGHN:**  We are not opposed to some additional

4    redactions, but we do think we should keep the parts that

5    show that he is reiterating the position -- or reiterating

6    his intent not to comply.

7         **THE COURT:**  Uh-huh.  I agree.

8         It's a little bit more complicated in these

9    letters because they are intertwined.

10        **MS. VAUGHN:**  Yeah.

11        **THE COURT:**  The statements are intertwined.

12        **MS. VAUGHN:**  So I think, for example, "we probably

13   -- (indiscernible) -- is inappropriate," that should

14   probably stay.

15        "Mr. Bannon's position is not in defiance of your

16   Committee's subpoena.  Rather, Mr. Bannon noted his counsel

17   stated they were invoking and directed us not to produce."

18   We could cut out that they were invoking privileges and just

19   cut to "directed us not to produce" or something like that.

20        I mean, the testimony that I would expect from our

21   witness is that we got a response back on October 14th.  It

22   didn't raise any new basis not to comply.

23        **THE COURT:**  Yes.  Right.

24        I'm just attempting to see whether we cannot

25   unduly introduce issues that at this point really aren't in

1   the case since we don't have a proffer from -- of the kind

2   that I left the door open to.

3          **MS. VAUGHN:**  Yes, Your Honor.

4          I don't know -- at this point I'm not sure our --

5   we would end up calling our witness until after lunch.

6   Would it help to spend more time on this at lunch or --

7          **THE COURT:**  Yes.  Why don't we do that.  Let's do

8   this -- I am happy to hear from you, Mr. Corcoran.

9          What I should say is, we did launch into a

10  discussion of the documents, and I suppose I have a motion

11  for continuance that I need to address.  Is that what you

12  were going to ask about?

13         **MR. CORCORAN:**  Well, I just wanted to -- I am very

14  concerned about redaction on the fly of documents and trying

15  to keep track of how that affects the case; that the jury's

16  not sworn yet, but we are supposed to open very quickly.  So

17  obviously I want the Court to rule on our motion to

18  continue.

19         But the one reason I jumped to my feet is because

20  the Court said that there had been no proffer on a certain

21  issue at this point in time by the defendant.  And we don't

22  have to make a proffer until the defense case.  So --

23         **THE COURT:**  I was taking Mr. Schoen at his word

24  that those were the only two proffers that you thought were

25  reasonable and legitimate to make based on where we are.

1              **MR. CORCORAN:**  I think Mr. Schoen's initial

2     statement was, We just want to tell what happened here.

3              I don't know what the -- what proffer the Court

4     hasn't heard that would otherwise be excluded.  But I know

5     you've said at different times in the past that if

6     Mr. Bannon -- if we have evidence that shows that Mr. Bannon

7     believed that the dates were flexible, that we would be able

8     to produce evidence to that effect.

9              **THE COURT:**  Yes.

10             **MR. CORCORAN:**  And we do have evidence --

11             **THE COURT:**  The question is we now have the

12    government saying, We are entitled to put on evidence that

13    shows that no person could have believed the dates were

14    flexible because of reasons A, B, C or D.  Reason C is

15    addressed in this letter.

16             If you are leaving open the possibility that any

17    and all proffers are still on the table, notwithstanding

18    what Mr. Schoen said earlier, then I can't foreclose the

19    possibility that the proffer will be made later.  And I

20    can't assume, therefore, that the government is wrong; that

21    these statements in the letters are irrelevant in light

22    of -- or at least in my view because of the limited

23    proffers.

24             So let me just -- I apologize, first of all.  The

25    motion to continue is denied.  We have a jury that's just

1    about picked.  I think I was really clear in my decisions

2    last week.  To the extent that I wasn't, the parties could

3    have asked for clarification.  I read them again.  I read

4    them on the record.  I don't think it could have been

5    clearer that I was foreclosing the evidence for, sort of,

6    the direct purpose but not as to mens rea.  That's been true

7    for a while.

8              The case has been around now for eight months or

9    longer.  We've briefed these issues a lot.  And to the

10   extent that there were concerns about my decisions last

11   week, and at the request for clarification they could have

12   been discussed at the pretrial conference.  So the Motion to

13   Continue is denied.

14             Recognizing --

15             **MR. CORCORAN:**  Your Honor, on that point can I be

16   heard?

17             **THE COURT:**  Yes.

18             **MR. CORCORAN:**  The jury was told that the case

19   may -- today's Tuesday and the jury's not been sworn.  And

20   they've been told that the case may go into next week.  And

21   I've identified, I think, to you -- and I am happy to

22   expound on it -- the reasons why not just the defense but

23   both parties understood that the scope of the case and the

24   scope of the testimony that would be allowed at trial was

25   different than the Court intended --

1          **THE COURT:**  I understand your position.  The --

2          **MR. CORCORAN:**  And I am not asking for a month.

3     I'm simply asking until Monday, which would only be a few

4     days' continuance.  If you won't give us Monday, maybe start

5     the trial on Friday --

6          **THE COURT:**  I am open to that.

7          **MR. CORCORAN:**  Okay.

8          **THE COURT:**  In the sense that I want to see where

9     we can get to without moving things by even a day, here's

10    what we're going to do.  We're not going to end up starting

11    the opening today until after lunch, no matter what, because

12    even if we picked the jury, I would have to give the

13    pretrial instructions and the like.

14          What I want to have happen is I want the parties

15    to consider the discussion we've had this morning, to be

16    prepared to come back at lunch -- sorry, after lunch to

17    discuss whether, from Mr. Bannon's perspective, he intends

18    to make any argument of the kind that I thought I had heard

19    Mr. Schoen to foreclose, but I understand that you might

20    want to reconsider that question about, for example, what

21    the proffer would be or whether Mr. Bannon wants to leave

22    open the possibility of a proffer that would make relevant

23    to some extent the conversations between the parties and the

24    documents between the parties and letters between the

25    parties about executive privilege.

1          The reason I was inclined to foreclose the

2     government from introducing those portions of its letters

3     that discuss privilege is because if there's not going to be

4     such a proffer from Mr. Bannon about his subjective belief

5     being based in part on privilege, it seemed to me very

6     likely irrelevant and running the risk of confusing the

7     jury.

8          If, however, Mr. Bannon wants to leave open the

9     possibility that he will make that kind of proffer, then my

10    view is that the government has the right to try to

11    foreclose that by saying, Those issues were resolved.  No

12    one could have had the subjective belief that this was still

13    an open question; and that the dates were not malleable or

14    were malleable or whatever.  A double negative there.

15         All I want to know, from Mr. Bannon's perspective,

16    is whether he wants to leave that kind of proffer open,

17    recognizing that he doesn't fully and finally have to make

18    that proffer until later.

19         I will say, if Mr. Bannon wants to leave it open,

20    then I do think I will end up concluding that those letters

21    will be admissible entirely because they will tee up a

22    question around the discussions around privilege and whether

23    the Committee was taking a firm position that was relevant

24    to mens rea.

25         Once I understand Mr. Bannon's view on that after

1    lunch, I'll take up whether there have to be redactions and

2    whether those redactions in the discussions warrant delaying

3    the trial a bit.  I'm not foreclosing the possibility of

4    delaying the trial by a day just to make sure that we get

5    our ducks in a row.

6            I understand the position.

7            **MR. CORCORAN:**  Thank you, Your Honor.

8            **THE COURT:**  Ms. Vaughn?

9            So what I have in mind is the parties essentially

10   have two hours to consider what we discussed today, their

11   positions and the like.  If they even want to talk about

12   just this, that would be fine too.

13           What I want to do is I want to be back on the

14   record at 1:00.  I want to hear from Mr. Bannon about the

15   kinds of proffers in light of what I said this morning that

16   he might want to make, the government's view in light of

17   what he says about what he thinks that requires as to its

18   documents.

19           If we are, after lunch, where we are now -- at

20   least from the government's perspective, putting aside delay

21   and the like -- if we are, after lunch, where we are now, I

22   would like the government to have gone through all the

23   documents and to have thought seriously about redactions

24   that attempt to draw this line.  Okay?

25           I understand and I agree with Mr. Corcoran that

456

1    not doing it on the fly -- and I know that was the

2    government's suggestion as well -- makes sense.  And

3    especially in light of the fact that we wouldn't be doing

4    openings until after lunch anyway, I don't think it's a

5    major delay.

6            And I agree with Mr. Corcoran that at least a

7    modest delay, at the moment, in the scheme of things, is not

8    a problem, as long as we can start to get things a little

9    more buttoned down.

10           So we are in recess until 1:00.

11           Thank you.

12           (Recess at 10:59 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                  **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4     certify that the foregoing is a true and correct transcript

5     of the record of proceedings in the above-entitled matter.

6

7

8

9

10     ___July 20, 2022_____          _/s/_____
                **DATE**                    **Lorraine T. Herman**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK: [2]**
392/2 440/11
**MR. CORCORAN: [11]**
392/11 437/17 437/19
450/13 451/1 451/10
452/15 452/18 453/2
453/7 455/7
**MR. SCHOEN: [53]**
398/8 398/10 399/14
399/18 399/23 400/2
400/19 401/15 401/19
401/22 402/4 402/22
403/8 407/9 407/14
407/20 408/11 408/20
410/15 410/17 410/19
410/22 411/9 411/14
412/8 412/17 412/23
413/5 413/12 413/14
413/19 414/2 414/7
414/15 415/3 415/21
416/3 416/8 416/10
416/12 417/2 417/7
417/12 419/5 420/3
424/6 424/16 425/24
427/25 436/8 436/14
437/6 437/14
**MS. VAUGHN: [70]**
**THE COURT: [135]**

**/**

**/s [1]** 457/10

**1**

**1.F [1]** 442/17
**100-6 [1]** 391/15
**10:17 [1]** 440/10
**10:36 [1]** 440/10
**10:59 [1]** 456/12
**14 [1]** 392/16
**14th [3]** 404/15 406/1
449/21
**15th [2]** 410/5 437/1
**1793 [1]** 391/13
**18th [3]** 410/6 412/2
412/5
**19 [1]** 391/5
**19th [7]** 410/6 426/21
426/21 427/1 437/2
439/9 447/8
**1:00 [2]** 455/14 456/10
**1:21-670 [1]** 391/3

**2**

**20 [1]** 457/10
**20001 [2]** 391/12
391/24
**201 [1]** 391/19
**202-252-1793 [1]**
391/13
**2021 [5]** 393/3 446/2
446/7 446/14 447/8
**2021-670 [1]** 392/3
**2022 [2]** 391/5 457/10
**21201 [1]** 391/19
**2225 [1]** 391/20
**25th [1]** 391/19
**2800 [1]** 391/15

**3**

**333 [1]** 391/23
**334-395-6611 [1]**
391/16
**36106 [1]** 391/16

**4**

**410-385-2225 [1]**
391/20
**4700-C [1]** 391/23
**4th [1]** 391/12

**5**

**555 [1]** 391/12

**6**

**6611 [1]** 391/16
**670 [2]** 391/3 392/3

**8**

**8th [4]** 406/14 446/1
446/7 446/14

**9**

**9:17 [1]** 391/6

**A**

**a.m [4]** 391/6 440/10
440/10 456/12
**able [4]** 425/4 426/17
432/18 451/7
**about [89]**
**above [1]** 457/5
**above-entitled [1]**
457/5
**absolutely [3]** 398/10
426/1 433/10
**acceptable [1]** 406/23
**accommodation [10]**

418/1 418/2 418/17
427/20 431/7 432/25
437/7 439/14 439/19
445/2
**according [4]** 398/18
400/7 401/16 402/9
**acknowledging [1]**
400/17
**act [2]** 432/1 433/3
**acted [2]** 429/15 432/5
**Action [1]** 391/3
**actual [1]** 405/2
**actually [6]** 393/7
404/23 418/3 426/3
428/20 448/2
**add [1]** 436/7
**added [2]** 397/24
424/19
**additional [3]** 397/3
424/18 449/3
**address [5]** 403/18
407/1 440/4 448/5
450/11
**addressed [2]** 395/2
451/15
**addresses [1]** 405/12
**admissible [15]**
395/20 395/22 398/12
400/18 403/2 422/9
422/10 423/1 423/6
423/8 431/9 434/3
434/18 447/9 454/21
**admitted [5]** 442/7
446/2 446/6 447/2
447/2
**advice [23]** 398/24
404/4 415/10 416/3
416/4 416/23 417/3
417/4 419/10 428/23
429/9 429/11 429/12
429/23 429/23 430/18
432/7 442/23 443/13
443/17 444/1 444/16
445/12
**advised [1]** 417/6
**affect [2]** 392/20 434/2
**affects [1]** 450/15
**affirmative [1]** 431/23
**after [16]** 404/12
409/13 409/15 410/7
419/21 425/8 427/1
437/2 439/2 450/5
453/11 453/16 454/25
455/19 455/21 456/4

**afterwards [1]** 426/22
**again [9]** 407/22
409/18 415/18 415/22
419/21 442/8 442/13
442/19 452/3
**Agent [1]** 392/9
**agree [10]** 416/7
430/23 430/24 433/7
433/17 433/17 445/22
449/7 455/25 456/6
**agreed [2]** 403/12
418/14
**agreeing [1]** 433/4
**agrees [1]** 423/1
**air [1]** 446/18
**AL [1]** 391/16
**all [55]** 392/15 393/8
394/17 395/7 395/8
396/14 398/20 399/1
399/20 399/24 400/8
400/11 401/2 402/4
403/15 405/16 405/20
405/21 407/24 409/9
409/22 409/24 410/7
413/10 413/17 413/19
413/21 415/12 415/23
416/24 417/16 417/19
418/11 420/9 420/21
423/20 425/8 425/21
426/4 426/13 427/18
427/23 429/11 430/3
430/15 430/17 430/18
430/18 435/18 438/7
446/2 451/17 451/24
454/15 455/22
**allow [5]** 397/6 403/21
412/19 415/5 424/10
**allowed [5]** 399/15
403/23 409/24 423/20
452/24
**almost [1]** 417/10
**along [2]** 397/12
417/20
**already [2]** 399/16
441/2
**also [10]** 392/8 397/23
397/24 416/21 424/22
424/24 425/19 426/12
441/25 442/15
**altogether [1]** 445/22
**always [1]** 404/16
**am [13]** 395/23 411/25
415/7 438/12 441/2
446/6 446/6 448/11

# A

**am... [5]** 450/8 450/13 452/21 453/2 453/6
**AMANDA [2]** 391/10 392/7
**Amendment [1]** 405/9
**AMERICA [2]** 391/2 392/3
**among [1]** 411/18
**another [3]** 431/22 431/25 432/1
**answer [3]** 405/16 406/4 433/15
**answering [1]** 406/4
**any [19]** 401/2 401/12 401/13 401/24 402/8 404/11 410/2 415/24 416/13 418/14 420/20 426/15 437/9 438/9 445/20 447/19 449/22 451/16 453/18
**anything [4]** 396/18 435/18 436/7 447/5
**anyway [1]** 456/4
**apologize [1]** 451/24
**Appeals [1]** 399/16
**appear [3]** 436/14 439/1 444/6
**APPEARANCES [1]** 391/9
**appearing [2]** 431/20 432/12
**applicable [1]** 444/15
**applied [4]** 400/5 418/15 424/11 443/19
**applies [1]** 425/2
**apply [4]** 400/5 401/1 417/23 417/25
**appreciate [1]** 437/13
**appropriate [1]** 448/3
**are [75]**
**aren't [2]** 445/16 449/25
**argue [15]** 392/24 395/4 409/7 409/9 409/25 421/6 426/5 427/15 428/19 432/13 439/11 439/15 439/18 443/16 445/10
**arguing [1]** 421/9
**argument [17]** 392/17 393/4 401/10 415/24 418/19 418/23 418/24 418/25 423/19 424/21

439/2 439/20 444/19 444/21 446/4 446/17 453/18
**arguments [2]** 407/13 440/4
**around [12]** 392/18 394/20 397/20 403/16 406/8 408/17 412/3 412/22 414/22 452/8 454/22 454/22
**articulating [1]** 406/21
**as [53]** 392/20 393/1 393/3 396/14 396/16 398/4 398/4 401/9 402/24 403/10 405/4 406/12 407/23 408/12 410/5 410/5 410/6 410/6 410/23 412/10 413/4 414/3 418/1 418/17 419/16 422/14 422/18 423/16 424/10 424/20 425/24 429/6 434/23 435/17 436/3 436/3 442/1 443/6 443/11 443/11 443/19 443/22 444/4 444/6 445/8 446/1 446/12 447/5 452/6 455/17 456/2 456/8 456/8
**aside [1]** 455/20
**ask [4]** 437/20 438/16 439/24 450/12
**asked [4]** 416/5 428/20 430/15 452/3
**asking [2]** 453/2 453/3
**assert [1]** 394/25
**asserted [2]** 393/5 402/17
**assertion [5]** 401/12 401/23 402/24 403/16 447/19
**assertions [1]** 401/8
**assume [3]** 394/16 417/12 451/20
**assuming [4]** 397/6 413/24 421/24 434/2
**attempt [3]** 442/3 448/14 455/24
**attempting [2]** 448/13 449/24
**attending [1]** 444/2
**attorney [3]** 391/15 428/9 431/12
**attorney's [1]** 428/23

**ATTORNEYS [1]** 391/11
**authority [1]** 399/7
**Avenue [1]** 391/23

# B

**back [19]** 394/19 395/19 395/21 409/10 420/24 421/17 424/3 430/22 435/4 435/24 438/8 438/10 440/4 440/11 440/16 448/19 449/21 453/16 455/13
**backdoor [1]** 413/10
**backdooring [1]** 436/15
**Baltimore [1]** 391/19
**Bankruptcy [1]** 391/22
**BANNON [86]**
**Bannon's [22]** 394/19 395/7 395/19 395/21 399/7 411/1 414/21 418/3 419/16 424/9 427/16 427/16 427/22 443/4 443/6 443/24 446/4 448/14 449/15 453/17 454/15 454/25
**bar [4]** 400/11 415/23 420/5 439/4
**barred [5]** 398/15 399/2 399/10 436/12 444/2
**based [7]** 409/17 409/23 419/8 423/3 442/18 450/25 454/5
**basis [5]** 414/4 420/25 421/8 439/24 449/22
**be [113]**
**bear [1]** 435/11
**bearing [1]** 435/12
**because [85]**
**been [31]** 394/11 395/2 395/3 398/4 399/2 405/18 406/21 407/20 419/2 420/6 422/22 423/20 424/18 427/9 434/6 435/23 437/21 437/22 438/21 438/23 439/7 441/2 442/11 446/15 450/20 452/4 452/6 452/8 452/12 452/19 452/20
**before [14]** 391/8 392/15 393/24 400/24

404/21 405/5 405/5 405/8 412/19 413/9 415/19 419/22 423/17 444/16
**begin [1]** 446/8
**beginning [5]** 392/6 403/3 406/17 428/21 430/22
**being [8]** 393/13 394/5 395/25 397/16 399/21 402/5 438/23 454/5
**belief [14]** 396/25 416/13 419/16 424/11 424/25 425/7 425/23 427/16 431/8 443/4 443/6 443/24 454/4 454/12
**believe [17]** 393/2 409/11 409/25 412/10 412/13 415/15 416/20 422/24 424/14 424/15 426/17 427/9 442/9 442/11 445/23 446/2 448/3
**believed [41]** 396/2 400/10 400/21 400/21 405/4 410/1 410/1 410/2 411/18 411/24 412/16 413/9 413/15 413/25 414/5 414/8 416/22 418/19 419/1 422/19 424/12 424/22 424/23 424/25 426/2 426/3 426/5 426/7 426/8 427/2 428/5 430/24 431/1 433/20 436/23 439/7 441/10 441/11 445/3 451/7 451/13
**believes [1]** 420/24
**believing [1]** 409/8
**best [1]** 405/6
**better [1]** 410/11
**between [6]** 401/18 404/11 434/17 453/23 453/24 453/24
**bewildered [1]** 415/21
**beyond [1]** 435/19
**bit [2]** 449/8 455/3
**black [1]** 423/24
**blah [3]** 429/22 429/22 429/22
**both [4]** 401/19 402/10 436/25 452/23

**B**

**bottom [2]** 403/24
445/24
**bottom-line [2]** 403/24
445/24
**bound [1]** 440/22
**breadth [1]** 398/25
**break [1]** 419/21
**brief [3]** 410/14 410/21
410/22
**briefed [1]** 452/9
**briefly [1]** 392/18
**bring [1]** 392/16
**broad [1]** 417/15
**buddy [1]** 410/10
**burden [1]** 434/24
**business [1]** 420/15
**buttoned [1]** 456/9

**C**

**called [2]** 429/22
431/12
**calling [1]** 450/5
**can [30]** 397/3 401/6
402/4 405/14 405/21
406/15 408/14 415/14
416/16 417/2 417/15
419/3 419/21 421/17
428/8 430/4 431/1
434/8 435/22 438/5
438/9 438/10 440/7
442/8 446/20 447/2
447/24 452/15 453/9
456/8
**can't [8]** 400/20 402/10
405/13 421/10 425/24
432/11 451/18 451/20
**cannot [6]** 426/2 432/6
432/9 441/16 442/7
449/24
**CARL [1]** 391/8
**case [39]** 392/3 398/13
398/15 398/16 398/17
399/2 399/9 399/13
401/16 401/24 402/8
402/9 402/21 403/1
403/5 403/18 403/20
415/22 416/10 416/22
419/25 420/7 420/12
423/19 427/5 428/21
429/5 437/25 438/15
438/22 438/25 448/15
450/1 450/15 450/22
452/8 452/18 452/20

452/23
**cases [4]** 393/22 402/6
405/7 405/10
**categories [1]** 433/5
**central [1]** 424/8
**certain [4]** 409/3
428/19 429/10 450/20
**certainly [3]** 397/3
412/23 417/10
**certify [1]** 457/4
**cetera [4]** 411/13
412/21 415/12 426/25
**Chairman [3]** 400/5
409/13 418/12
**Chairman Thompson
[1]** 409/13
**Chairman
Thompson's [2]** 400/5
418/12
**change [3]** 410/4
436/20 437/9
**changed [1]** 445/5
**charged [1]** 421/10
**Charles [1]** 391/19
**chief [1]** 448/15
**Circuit [1]** 440/22
**cited [1]** 420/9
**civil [1]** 439/3
**claim [6]** 404/19
405/23 409/3 435/19
435/20 436/15
**claimed [3]** 404/13
419/8 442/19
**claims [3]** 406/13
423/23 438/22
**clarification [2]** 452/3
452/11
**clarify [1]** 443/11
**clause [1]** 447/25
**clear [21]** 404/14
406/19 414/23 414/24
415/2 417/24 418/12
420/11 420/11 421/5
421/18 429/21 431/18
435/25 436/5 436/9
437/22 444/3 444/12
444/14 452/1
**clearer [1]** 452/5
**clearly [6]** 405/18
405/25 406/13 414/11
414/20 443/21
**COLUMBIA [1]** 391/1
**come [27]** 392/5
398/11 400/20 401/4

403/5 404/15 408/7
408/8 411/11 411/20
413/19 413/21 415/20
417/16 424/2 426/10
427/14 429/14 429/24
433/6 435/24 436/18
438/7 438/10 440/4
445/8 453/16
**comes [2]** 403/19
428/19
**coming [4]** 405/21
418/16 425/25 426/5
**commands [1]** 442/7
**comment [1]** 416/4
**Committee [57]**
393/24 393/25 394/5
394/13 394/19 394/20
395/6 395/17 397/17
397/25 399/7 399/21
400/18 401/12 401/14
402/15 404/14 404/22
405/8 405/11 405/14
405/24 406/12 406/12
408/18 409/11 411/8
417/22 418/3 418/8
418/9 418/10 418/20
419/18 420/23 421/2
421/15 422/7 422/21
422/23 423/10 426/23
427/5 427/17 431/3
431/5 431/13 432/13
433/15 433/24 433/25
435/3 436/19 437/8
443/9 444/25 454/12
**Committee's [15]**
393/6 393/14 394/7
394/22 397/25 402/2
402/19 402/25 406/18
408/3 420/24 437/10
445/24 448/19 449/16
**communicated [2]**
402/2 417/5
**communicating [1]**
401/14
**communications [4]**
395/12 409/10 423/3
437/3
**compliance [11]**
393/20 403/24 406/19
409/14 416/18 426/25
427/21 437/4 439/3
439/5 445/25
**complicated [1]** 449/8
**complied [2]** 408/23

411/3
**comply [25]** 400/22
400/25 404/5 404/21
409/3 410/5 410/11
414/22 419/12 420/23
420/25 421/16 423/11
424/24 427/4 427/8
428/4 428/17 434/20
442/5 442/25 443/16
443/18 449/6 449/22
**complying [5]** 398/1
400/22 405/18 419/13
443/2
**con [1]** 401/17
**concerned [4]** 397/7
406/20 438/12 450/14
**concerns [3]** 397/2
449/1 452/12
**concluding [1]** 454/20
**conclusion [1]** 436/18
**conduct [2]** 432/5
432/7
**conducted [1]** 399/21
**conference [1]** 452/12
**confused [1]** 396/13
**confusing [1]** 454/6
**confusion [1]** 397/3
**Congress [1]** 405/8
**consider [7]** 397/14
397/20 415/13 438/16
440/4 453/15 455/10
**considered [1]** 402/24
**considering [2]**
427/18 436/9
**Constitution [1]**
391/23
**constitutional [1]**
417/14
**constitutionally [1]**
418/2
**contemplate [1]**
424/19
**contempt [9]** 405/7
409/15 410/7 421/3
427/1 439/3 439/4
439/4 439/10
**context [2]** 405/8
448/19
**continuance [7]**
437/20 438/5 438/17
439/22 440/5 450/11
453/4
**continue [9]** 409/15
410/3 424/24 427/20

# C

**continue... [5]** 437/4
438/24 450/18 451/25
452/13
**continued [8]** 409/12
419/2 421/7 426/9
426/9 427/4 427/11
427/11
**conversation [1]**
426/20
**conversations [1]**
453/23
**conviction [1]** 427/6
**CORCORAN [6]**
391/17 392/12 437/16
450/8 455/25 456/6
**core [1]** 432/8
**correct [3]** 393/10
448/3 457/4
**correspondence [2]**
404/11 405/21
**Costello [12]** 393/3
400/10 404/4 412/1
412/7 414/10 417/5
417/6 418/8 425/18
426/19 436/18
**Costello's [1]** 417/9
**could [38]** 395/9
406/20 406/23 408/15
411/1 411/11 411/17
411/20 412/4 412/4
412/9 413/10 413/11
413/24 414/19 414/25
415/20 419/20 423/14
423/22 433/1 433/2
433/6 433/8 435/20
435/24 436/2 443/25
444/8 444/13 445/5
445/7 449/18 451/13
452/2 452/4 452/11
454/12
**counsel [27]** 392/5
398/24 415/10 416/3
416/4 416/23 417/3
417/4 419/8 419/11
419/17 421/23 428/24
429/9 432/8 433/1
442/18 442/24 443/7
443/14 443/18 443/23
444/1 444/16 445/12
448/15 449/16
**counsel's [2]** 392/9
429/11
**couple [1]** 418/5

**course [5]** 406/9 410/4
432/3 434/10 444/2
**COURT [23]** 391/1
391/22 397/2 398/15
399/2 399/14 399/16
407/10 412/23 414/3
414/4 414/17 416/5
416/19 420/6 427/15
436/9 438/16 450/17
450/20 451/3 452/25
457/3
**Court's [7]** 396/23
409/5 409/17 409/23
413/7 426/1 437/22
**courts [2]** 391/22
405/12
**covered [1]** 448/8
**CR [1]** 391/3
**craft [1]** 404/12
**CRC [1]** 391/21
**creating [1]** 400/13
**crime [1]** 421/11
**criminal [4]** 392/3
421/3 439/4 439/10
**critical [1]** 399/8
**cross [3]** 413/3 436/3
445/19
**cross-examination [1]**
413/3
**crystally [1]** 406/13
**cut [2]** 449/18 449/19

# D

**D'Amico [1]** 392/9
**D.C [2]** 391/11 440/22
**date [57]** 395/4 395/10
402/12 402/13 402/13
402/18 402/19 402/23
403/4 403/24 403/24
403/25 405/4 408/22
409/8 409/10 409/11
409/12 409/19 410/10
412/2 412/5 412/11
412/11 412/16 413/9
414/1 414/23 414/24
415/2 415/15 417/19
418/6 418/18 418/21
419/2 419/19 421/25
422/5 422/5 422/25
422/25 423/12 430/25
432/16 432/19 432/20
433/21 434/1 441/15
442/11 443/9 443/24
444/25 445/5 445/25

457/10
**dates [41]** 393/17
395/13 395/14 396/2
408/17 409/25 410/1
411/2 411/3 411/13
411/18 411/24 413/15
414/5 414/8 416/17
416/20 420/15 422/19
424/15 424/23 425/8
426/7 426/11 426/18
426/20 431/8 434/6
435/3 435/7 436/24
438/22 439/7 439/16
442/9 444/9 444/21
445/10 451/7 451/13
454/13
**DAVID [3]** 391/14
391/15 392/12
**day [12]** 391/7 398/20
400/23 401/3 402/4
402/14 416/15 417/21
418/23 426/17 453/9
455/4
**Day 1 [1]** 398/20
**days [1]** 418/5
**days' [1]** 453/4
**DC [3]** 391/4 391/12
391/24
**dcd.uscourts.gov [1]**
391/24
**deadline [4]** 406/1
408/24 409/3 409/13
**deal [3]** 399/18 408/14
438/13
**deals [2]** 409/4 432/25
**decide [3]** 414/21
424/3 441/20
**decided [2]** 409/21
441/2
**decision [5]** 428/4
428/8 428/17 440/22
443/12
**decisions [3]** 440/18
452/1 452/10
**default [13]** 405/13
410/2 410/2 414/22
422/19 427/6 427/10
432/1 432/14 432/14
439/9 439/12 440/24
**defaulted [1]** 439/7
**defendant [28]** 391/6
391/14 394/11 395/12
395/15 398/1 398/4
404/10 404/13 404/18

405/17 405/19 420/21
421/5 421/6 421/15
421/21 423/2 428/3
428/16 434/5 435/21
439/6 439/8 439/15
439/18 445/23 450/21
**defendant's [8]** 393/25
396/25 407/3 411/12
420/22 428/23 441/25
448/9
**defendants [1]** 405/8
**defense [27]** 397/1
403/1 413/6 416/22
418/14 419/7 420/5
420/14 422/1 422/4
422/6 426/6 428/15
428/22 429/6 429/7
431/24 433/11 433/13
434/18 437/24 438/2
438/13 439/25 442/18
450/22 452/22
**defenses [10]** 399/1
403/6 413/19 413/21
415/24 420/11 420/12
436/12 438/24 439/1
**defiance [2]** 393/24
449/15
**definition [1]** 393/8
**defy [1]** 394/1
**delay [3]** 455/20 456/5
456/7
**delaying [2]** 455/2
455/4
**delegated [1]** 399/6
**deliberate [5]** 414/21
428/8 428/16 432/15
440/23
**deliberately [6]** 422/17
422/18 429/15 432/2
433/3 444/5
**deliberateness [3]**
428/6 430/1 430/14
**demands [1]** 393/20
**demonstrate [5]**
411/12 424/14 432/6
432/10 435/14
**demonstrating [1]**
397/17
**denied [8]** 410/24
413/22 432/22 441/6
442/20 442/20 451/25
452/13
**deny [1]** 442/1
**Department [1]** 441/5

**D**

**depending [1]** 392/19
**deposition [1]** 406/1
**details [2]** 430/3 430/4
**determined [1]** 399/16
**deviated [1]** 424/8
**did [30]** 395/14 400/11
401/4 411/4 411/22
411/22 414/13 415/1
415/6 415/10 415/15
415/19 422/4 422/17
422/18 422/24 424/13
424/14 430/17 432/1
432/6 441/15 442/4
442/9 443/18 443/19
444/8 444/11 444/21
450/9
**didn't [33]** 396/20
398/20 398/21 398/23
401/1 409/3 409/25
412/10 412/25 413/21
416/20 418/15 424/19
424/20 428/19 429/2
429/2 429/9 429/18
429/19 429/20 429/24
430/5 430/6 432/14
432/15 432/19 433/3
433/15 434/11 438/21
448/5 449/22
**different [4]** 411/25
425/14 451/5 452/25
**difficult [5]** 417/4
420/20 421/4 434/15
434/21
**direct [2]** 415/13 452/6
**directed [3]** 421/16
449/17 449/19
**direction [2]** 421/19
448/19
**directive [1]** 409/14
**directly [9]** 399/5
399/20 401/19 404/22
406/2 407/25 420/7
421/18 436/12
**disagree [1]** 427/3
**discuss [11]** 394/20
396/12 397/19 404/8
407/18 408/9 441/21
445/15 448/11 453/17
454/3
**discussed [12]** 399/11
413/1 423/16 438/4
440/15 440/17 440/19
440/21 440/25 444/10

452/12 455/10
**discusses [1]** 446/11
**discussing [3]** 417/20
422/13 425/8
**discussion [14]**
406/20 412/7 412/22
417/13 420/13 420/14
422/14 422/15 424/7
445/11 445/21 447/5
450/10 453/15
**discussions [13]**
395/18 396/14 403/15
406/8 407/4 411/19
412/3 422/21 433/1
443/23 444/24 454/22
455/2
**DISTRICT [4]** 391/1
391/1 391/8 391/22
**do [29]** 392/15 392/21
396/13 396/16 412/22
413/2 419/23 420/25
424/3 424/5 428/1
428/9 428/9 433/17
433/17 435/20 436/7
438/5 445/22 445/23
447/21 449/2 449/4
450/7 450/7 451/10
453/10 454/20 455/13
**documents [14]**
399/20 402/13 407/24
426/24 443/1 444/6
447/23 448/8 448/12
450/10 450/14 453/24
455/18 455/23
**does [7]** 402/12
404/14 421/21 435/9
444/17 447/12 447/13
**doesn't [13]** 393/7
393/25 396/13 396/19
399/18 400/5 417/23
417/24 421/10 434/11
439/4 447/10 454/17
**doing [3]** 443/20 456/1
456/3
**don't [32]** 392/23
393/9 396/5 397/22
407/9 408/1 409/17
412/2 413/7 420/1
420/6 420/20 421/16
422/7 428/9 429/12
429/21 431/12 435/10
436/14 439/23 439/24
446/15 447/4 448/25
450/1 450/4 450/7

450/21 451/3 452/4
456/4
**done [2]** 438/2 438/6
**door [4]** 413/8 436/2
446/16 450/2
**doors [1]** 426/14
**double [1]** 454/14
**down [4]** 406/24
407/15 431/10 456/9
**draw [2]** 434/17
455/24
**drill [1]** 431/10
**ducks [1]** 455/5
**due [1]** 420/9
**during [3]** 415/25
420/3 436/25

**E**

**earlier [4]** 430/24
440/17 444/18 451/18
**early [1]** 416/10
**effect [5]** 403/17
405/20 409/1 444/13
451/8
**effort [1]** 421/7
**efforts [3]** 409/15
427/11 439/2
**eight [1]** 452/8
**element [1]** 424/18
**elements [1]** 393/16
**end [7]** 396/24 408/22
410/17 424/8 450/5
453/10 454/20
**ends [1]** 427/5
**enforce [4]** 409/16
421/7 427/11 437/6
**enforcement [2]** 426/9
427/21
**enough [2]** 433/9
448/7
**ensure [2]** 396/13
396/18
**enter [6]** 404/11
404/16 405/19 407/17
408/15 423/14
**entered [1]** 440/18
**entirely [2]** 441/18
454/21
**entirety [2]** 395/20
408/9
**entitled [7]** 401/5
409/6 409/6 409/9
409/18 451/12 457/5
**entrapment [5]** 396/16

399/12 417/8 431/23
432/10
**entrapped [1]** 415/11
**envisioned [1]** 426/15
**erased [2]** 439/3
439/12
**especially [2]** 397/23
456/3
**essentially [4]** 435/7
444/19 446/17 455/9
**establish [3]** 402/1
432/11 433/2
**establishing [1]**
404/23
**estopped [1]** 431/23
**estoppel [5]** 396/16
399/12 415/11 417/8
432/10
**et [4]** 411/13 412/21
415/12 426/25
**et cetera [4]** 411/13
412/21 415/12 426/25
**evaluate [1]** 402/6
**EVAN [3]** 391/17
392/12 437/15
**even [17]** 393/7 394/8
401/4 407/17 408/9
411/4 412/6 418/14
418/18 427/21 433/19
443/11 444/13 446/5
453/9 453/12 455/11
**ever [2]** 433/8 438/23
**everyone [1]** 392/14
**evidence [52]** 396/8
396/9 396/11 411/21
417/2 419/20 420/21
422/17 423/5 423/6
423/9 424/22 425/5
425/18 428/4 428/6
428/7 428/12 428/20
428/22 430/17 432/6
432/9 433/5 433/18
433/20 434/5 434/8
434/12 434/23 437/24
437/24 439/6 441/5
441/8 441/13 441/14
441/17 441/24 442/2
442/4 442/12 443/10
443/20 443/25 444/8
445/7 451/6 451/8
451/10 451/12 452/5
**evidentiary [1]** 392/17
**exactly [6]** 393/11
400/10 400/21 417/20

463

# E

**exactly... [2]** 421/5 434/22
**examination [1]** 413/3
**example [18]** 393/1 403/21 404/3 404/15 405/4 406/1 411/25 416/3 417/3 419/6 419/17 422/16 435/10 443/7 445/9 446/1 449/12 453/20
**exception [2]** 393/10 412/24
**exclude [20]** 411/5 411/22 411/22 413/24 414/13 414/19 414/25 419/7 421/17 428/12 428/20 429/4 429/6 429/8 429/9 430/15 441/5 441/24 442/2 442/18
**excluded [4]** 438/24 441/8 441/18 451/4
**excludes [1]** 417/16
**excuse [3]** 405/18 418/15 433/23
**excused [15]** 394/11 396/21 404/13 415/8 415/8 415/9 420/13 428/5 431/20 431/21 432/12 434/6 441/10 443/17 444/2
**excuses [1]** 428/10
**executive [41]** 394/20 396/15 397/13 398/24 399/24 400/2 400/4 400/10 404/6 404/19 408/9 409/20 409/21 416/23 417/14 417/23 417/24 418/11 418/13 418/15 418/21 420/5 420/12 424/11 425/1 425/6 425/9 425/9 426/3 426/12 427/18 428/24 429/22 431/3 431/5 434/19 436/21 437/9 437/11 439/18 453/25
**exempted [1]** 442/6
**Exhibit [5]** 393/2 446/19 447/3 447/16 448/4
**exhibits [1]** 394/18
**exist [1]** 439/23

**expect [3]** 402/14 426/25 449/20
**expected [1]** 405/15
**expeditiously [1]** 426/23
**experience [6]** 419/8 431/6 433/22 441/25 442/10 442/19
**explain [1]** 406/3
**explaining [1]** 442/4
**explanation [1]** 428/23
**expound [1]** 452/22
**extended [5]** 402/13 402/23 417/19 418/22 419/2
**extending [1]** 403/25
**extent [26]** 393/22 394/12 394/24 397/2 397/19 404/18 419/9 419/12 419/13 419/15 435/21 438/7 438/9 441/8 442/3 442/14 442/22 442/25 443/2 443/3 443/5 443/15 443/23 452/2 452/10 453/23
**extinguished [3]** 427/7 427/9 427/10

# F

**face [2]** 393/20 436/16
**fact [16]** 393/14 395/9 395/10 401/11 408/23 428/25 430/5 430/11 430/12 431/20 435/15 436/11 439/2 440/22 440/23 456/3
**facts [7]** 438/20 438/20 438/21 438/22 439/23 439/24 439/24
**Factual [1]** 433/13
**failed [2]** 423/11 444/6
**failure [2]** 414/22 443/16
**fair [5]** 410/10 433/9 446/12 447/24 448/7
**faith [3]** 414/4 443/13 443/17
**far [2]** 398/4 407/21
**FBI [1]** 392/9
**February [1]** 430/15
**feet [1]** 450/19
**few [2]** 440/1 453/3
**fifth [5]** 405/9 405/11

405/11 405/11 449/2
**figure [1]** 406/24
**file [2]** 421/10 421/12
**filed [2]** 410/15 429/4
**filing [1]** 401/9
**final [3]** 395/6 395/8 435/3
**finally [2]** 437/14 454/17
**find [1]** 421/11
**finding [1]** 427/6
**fine [2]** 428/17 455/12
**firm [4]** 412/10 412/11 444/9 454/23
**firmed [1]** 423/22
**firmly [1]** 427/3
**first [15]** 392/17 393/12 393/16 407/2 429/4 435/10 435/11 435/12 446/3 446/8 446/10 447/8 447/18 447/25 451/24
**fit [1]** 393/7
**fixed [19]** 409/12 409/25 411/2 413/13 413/14 413/16 415/16 416/17 416/21 420/15 421/25 423/22 424/15 426/7 433/21 435/3 435/7 436/24 444/22
**Flaxer [1]** 393/22
**flexible [10]** 395/4 405/5 412/18 414/1 422/20 430/25 431/8 444/22 451/7 451/14
**Floor [1]** 391/19
**fly [3]** 438/15 450/14 456/1
**focus [2]** 400/1 417/8
**focused [2]** 414/11 426/23
**follow [1]** 428/9
**followed [3]** 445/3 445/4 445/4
**following [1]** 442/6
**footnotes [3]** 446/23 446/24 446/25
**foreclose [6]** 423/18 425/21 451/18 453/19 454/1 454/11
**foreclosed [3]** 404/3 404/6 430/9
**foreclosing [3]** 446/17 452/5 455/3

**foregoing [1]** 457/4
**Forgive [1]** 425/14
**form [1]** 403/20
**formal [1]** 401/12
**former [2]** 401/1 417/15
**forth [2]** 409/10 421/17
**forward [3]** 392/5 424/10 424/20
**found [2]** 399/14 439/9
**fourth [1]** 448/25
**Frank [1]** 392/9
**frankly [1]** 403/11
**Friday [1]** 453/5
**front [1]** 432/12
**full [5]** 395/6 395/8 398/23 408/13 444/12
**fully [3]** 421/15 427/5 454/17
**further [2]** 411/11 435/15

# G

**GASTON [2]** 391/11 392/8
**gave [2]** 419/11 442/24
**general [1]** 422/20
**generally [1]** 407/8
**genuinely [2]** 418/20 427/17
**get [14]** 396/13 408/6 420/17 421/12 421/21 422/24 427/21 433/22 435/22 439/2 439/5 453/9 455/4 456/8
**gets [1]** 432/13
**getting [2]** 434/7 435/18
**give [6]** 397/5 414/3 414/3 436/19 453/4 453/12
**given [7]** 403/1 403/5 418/10 423/10 436/11 439/25 446/5
**giving [1]** 438/6
**go [20]** 395/18 403/23 405/16 405/17 411/1 412/4 412/12 412/15 413/24 419/21 430/1 433/16 435/4 438/14 441/20 442/13 442/15 443/23 446/19 452/20
**goes [7]** 393/25 395/5 405/2 421/18 421/24

# G

**goes... [2]** 429/15 430/14
**going [40]** 392/24 397/13 398/18 400/3 401/4 404/18 411/21 413/2 415/7 416/25 417/4 417/5 417/18 417/19 420/23 423/17 424/2 424/2 424/10 425/4 425/16 426/10 426/14 427/15 433/19 436/19 436/20 437/8 439/16 440/3 440/3 441/3 441/19 442/13 446/23 448/8 450/12 453/10 453/10 454/3
**gone [1]** 455/22
**good [10]** 392/2 392/7 392/10 392/11 392/14 398/8 398/9 414/4 443/13 443/17
**got [4]** 398/19 398/21 404/22 449/21
**government [47]** 392/6 392/24 394/18 395/22 396/7 397/3 397/22 398/19 400/14 400/16 402/15 403/11 403/22 404/16 406/23 407/11 407/12 407/16 407/17 407/18 408/14 409/1 413/23 415/23 422/25 425/11 425/13 425/15 425/16 425/19 428/18 433/4 434/24 435/2 435/6 435/9 435/23 439/5 445/19 446/17 448/5 448/13 451/12 451/20 454/2 454/10 455/22
**government's [45]** 393/2 394/21 395/5 395/16 395/19 396/11 397/6 399/2 400/14 401/10 401/20 403/6 405/1 408/8 410/24 411/4 413/18 413/22 419/6 419/24 420/4 421/7 423/18 423/21 430/10 432/21 434/10 434/22 436/3 437/20 441/4 441/22 441/24 442/2 442/16 442/17

443/12 444/11 445/14 445/17 446/19 447/3 455/16 455/20 456/2
**grant [3]** 411/4 442/1 444/11
**granted [10]** 410/23 416/1 416/2 416/6 419/9 432/22 441/6 442/19 442/21 442/22
**guess [1]** 400/16
**GULLAND [1]** 391/11

# H

**had [65]** 394/11 394/12 394/13 395/2 395/3 395/6 398/1 398/4 404/20 404/21 405/8 405/18 405/23 405/24 405/25 408/18 408/23 409/8 409/13 409/20 412/11 413/16 413/25 416/22 417/23 419/2 419/11 419/17 420/9 420/10 421/15 422/22 423/9 423/10 423/10 423/23 423/23 425/25 429/23 431/7 432/4 432/17 433/14 433/16 433/23 434/6 435/3 435/16 435/25 435/25 438/3 439/7 441/2 442/5 442/11 442/24 443/7 443/20 444/3 444/15 447/6 450/20 453/15 453/18 454/12
**hadn't [6]** 401/12 402/18 402/19 406/12 409/19 409/21
**handcuffed [1]** 400/20
**hanging [1]** 405/14
**happen [2]** 434/11 453/14
**happened [4]** 410/3 431/17 438/21 451/2
**happens [1]** 439/4
**happy [4]** 404/16 448/11 450/8 452/21
**hard [1]** 434/17
**has [22]** 393/17 397/2 398/15 398/23 399/14 401/23 401/23 403/11 406/21 407/12 407/20 418/10 420/24 424/13

424/14 427/4 434/24 437/22 439/6 447/22 452/8 454/10
**hasn't [1]** 451/4
**have [70]**
**haven't [3]** 399/10 406/9 425/17
**having [3]** 395/7 403/22 417/16
**he [130]**
**he's [3]** 420/23 425/4 431/11
**hear [11]** 392/17 396/20 398/18 400/3 400/9 400/13 407/5 417/11 419/24 450/8 455/14
**heard [8]** 398/20 400/6 430/23 440/5 444/18 451/4 452/16 453/18
**hearing [6]** 412/18 413/17 420/4 423/16 438/2 440/17
**hearsay [13]** 393/8 393/9 394/17 398/11 398/14 401/18 401/21 402/3 402/4 402/20 407/22 407/24 445/23
**heightened [1]** 432/4
**held [4]** 396/15 432/5 432/9 432/11
**help [1]** 450/6
**helpful [1]** 437/12
**here [17]** 396/21 406/11 407/2 414/16 415/14 415/23 418/7 420/21 425/2 426/5 426/17 434/11 434/21 445/4 445/4 448/12 451/2
**here's [6]** 392/15 408/25 425/9 426/21 440/14 453/9
**herman [4]** 391/21 391/24 457/3 457/10
**him [20]** 400/25 404/13 404/25 405/21 406/3 412/19 415/7 418/15 419/17 421/16 423/10 424/10 424/24 428/5 428/9 433/23 442/6 442/10 443/19 448/19
**himself [1]** 400/7

**his [40]** 394/15 395/24 396/7 398/16 398/24 399/1 399/1 400/21 404/23 404/24 404/25 405/1 406/13 412/13 412/20 416/13 418/16 421/16 421/22 421/23 422/22 422/23 424/11 428/6 428/9 430/14 432/5 432/7 433/22 433/22 439/12 442/5 442/10 443/16 443/17 445/25 449/6 449/16 450/23 454/4
**Hold [1]** 407/15
**holdings [1]** 419/22
**honest [1]** 418/10
**Honor [35]** 392/2 392/7 392/11 392/25 398/8 399/15 399/19 403/3 403/8 407/14 407/23 408/25 411/9 411/14 413/5 416/15 417/8 420/3 420/8 424/6 424/7 424/16 427/13 429/7 430/2 430/16 436/8 436/22 437/20 438/20 440/11 447/15 450/3 452/15 455/7
**HONORABLE [1]** 391/8
**hopeful [1]** 433/25
**hopefully [2]** 392/16 392/21
**hours [1]** 455/10
**how [13]** 396/13 399/23 399/24 405/14 412/3 417/15 421/17 421/18 422/23 430/4 432/25 439/12 450/15
**however [2]** 418/16 454/8
**huh [2]** 397/8 449/7

# I

**I'll [1]** 455/1
**I'm [24]** 397/7 406/20 408/16 410/14 410/19 411/7 414/16 414/17 415/8 415/21 424/2 424/2 433/7 433/19 437/1 440/3 440/3 440/22 441/23 442/13

**I**

I'm... [4] 449/24 450/4 453/3 455/3
I've [7] 399/11 403/12 431/13 432/5 432/9 432/11 452/21
idea [3] 413/5 424/12 439/22
identified [1] 452/21
imagine [1] 406/15
immediate [1] 426/25
immediately [1] 427/19
implications [3] 403/16 440/21 440/25
importance [1] 399/8
important [5] 396/1 408/6 419/24 440/18 447/21
inadmissible [5] 398/14 402/20 434/13 434/18 446/4
inappropriate [1] 449/13
inclined [1] 454/1
include [3] 399/4 408/22 446/23
included [2] 419/11 442/24
includes [1] 396/24
including [1] 440/5
independent [5] 398/12 401/7 401/23 402/7 420/13
independently [1] 402/8
indicate [2] 426/21 437/3
indicated [1] 392/20
indicating [1] 426/9
indiscernible [1] 449/13
information [11] 399/5 399/7 403/19 413/23 414/14 414/15 414/16 430/14 431/8 439/10 439/12
initial [3] 434/23 435/17 451/1
inquiry [2] 399/21 404/6
instead [2] 404/12 421/14
instructed [1] 438/8

instruction [7] 396/25 397/4 397/5 397/10 397/12 402/22 447/22
instructions [2] 396/24 453/13
intend [3] 411/22 430/17 448/5
intended [4] 418/22 418/24 432/17 452/25
intends [5] 441/16 442/8 445/10 445/20 453/17
intent [3] 394/1 404/24 449/6
intention [1] 426/1
intentional [3] 414/21 432/15 440/24
intentionally [5] 422/18 422/19 432/2 433/3 444/5
intertwined [2] 449/9 449/11
introduce [15] 392/5 403/22 421/21 423/4 423/20 425/4 425/17 435/6 435/9 441/17 442/3 444/8 445/20 448/14 449/25
introduced [2] 426/18 446/20
introduces [1] 422/17
introducing [1] 454/2
invalid [4] 419/14 441/11 443/3 444/1
invocation [1] 398/24
invoke [1] 417/15
invoked [4] 400/6 400/11 401/1 426/4
invoking [2] 449/17 449/18
ironed [1] 438/11
irrelevant [6] 396/16 402/20 441/18 443/21 451/21 454/6
IRS [1] 421/11
is [188]
isn't [7] 393/12 394/4 394/8 399/22 430/9 431/15 435/5
issue [9] 396/5 399/9 399/12 401/24 402/8 404/20 404/20 427/17 450/21
issues [17] 396/1

396/15 397/19 402/9 408/10 410/25 417/14 417/17 427/22 438/14 440/4 440/14 445/12 445/13 449/25 452/9 454/11
it [124]
it's [39] 393/2 393/7 393/16 394/3 394/24 396/5 398/14 398/15 400/13 401/20 401/21 401/22 401/25 402/4 402/5 402/7 406/23 407/24 408/2 408/3 408/23 414/11 416/25 417/5 418/12 419/23 421/4 421/4 428/13 428/15 429/7 434/13 434/15 434/21 437/10 440/17 448/2 449/8 456/4
its [19] 393/20 394/23 397/18 398/25 398/25 401/23 402/24 403/16 403/16 407/12 423/19 423/22 432/8 436/16 437/9 445/20 448/15 454/2 455/17

**J**

joint [1] 438/2
joints [1] 415/16
judge [11] 391/8 398/21 399/15 400/24 401/5 412/8 413/20 414/16 415/21 418/19 425/25
judge's [1] 401/16
July [2] 391/5 457/10
jump [1] 420/1
jumped [1] 450/19
jurors [1] 392/16
jury [24] 391/7 395/18 396/13 396/19 396/24 398/18 400/3 401/6 403/23 408/1 412/12 413/9 414/20 419/1 431/15 431/16 434/12 436/15 438/7 440/7 451/25 452/18 453/12 454/7
jury's [2] 450/15 452/19
just [58] 393/1 395/14

398/14 399/11 400/23 401/5 405/12 406/12 406/14 406/23 407/15 410/14 410/20 411/25 414/17 415/7 417/7 419/3 420/1 421/1 421/4 421/13 422/20 423/4 424/23 428/19 428/25 429/1 429/3 429/14 429/17 429/17 429/25 430/8 430/13 431/12 433/19 435/4 435/19 436/8 438/4 438/13 440/5 440/7 440/8 441/23 443/22 444/10 446/1 449/18 449/24 450/13 451/2 451/24 451/25 452/22 455/4 455/12
Justice [1] 441/6
justification [1] 419/11 442/24 443/20
justified [2] 419/13 443/1

**K**

keep [5] 418/18 438/7 447/21 449/4 450/15
kind [11] 398/15 424/8 425/17 430/21 433/2 433/5 445/6 450/1 453/18 454/9 454/16
kinds [1] 455/15
knew [10] 402/18 405/15 405/17 406/11 412/5 414/24 414/24 425/2 434/25 435/1
know [23] 396/14 403/13 409/1 410/11 413/7 415/2 418/8 418/20 432/3 432/6 432/14 432/15 432/19 433/16 433/25 434/16 438/9 440/8 450/4 451/3 451/4 454/15 456/1
knowing [2] 432/5 434/23
knowledge [1] 432/25

**L**

land [1] 392/19
language [14] 410/3 410/12 410/21 414/8

**L**

**language... [10]**
414/11 414/12 416/17
416/18 416/21 418/25
421/17 424/23 426/8
436/25
**largely [1]** 432/11
**last [17]** 403/4 406/16
406/16 406/16 406/18
408/24 410/12 419/4
431/19 440/1 446/10
446/13 446/13 447/10
448/22 452/2 452/10
**later [4]** 418/5 439/5
451/19 454/18
**launch [1]** 450/9
**law [14]** 391/15 396/25
404/13 405/2 416/5
416/8 421/9 422/2
428/5 428/10 434/19
439/13 439/21 443/13
**lawyer [15]** 413/16
415/10 416/24 417/13
422/6 422/22 425/1
425/5 426/12 429/2
429/19 429/23 430/6
431/4 433/23
**least [24]** 392/18
394/18 396/15 398/19
409/18 411/15 419/4
422/12 422/23 423/17
423/19 425/20 427/14
432/8 435/5 441/1
445/4 445/6 445/8
445/17 447/9 451/22
455/20 456/6
**leave [6]** 425/24
432/17 453/21 454/8
454/16 454/19
**leaves [1]** 445/6
**leaving [1]** 451/16
**led [1]** 442/10
**left [12]** 402/9 405/14
405/24 410/25 411/10
415/14 420/22 426/6
432/23 444/3 444/7
450/2
**legal [7]** 404/20 421/7
427/22 433/23 437/19
439/19 439/20
**legally [3]** 431/20
432/12 441/9
**legislative [2]** 399/6
399/15

**legitimacy [1]** 424/12
**legitimate [8]** 399/5
424/25 425/2 425/7
425/7 426/3 445/1
450/25
**Lesley [1]** 440/7
**let [3]** 407/5 440/7
451/24
**let's [7]** 393/1 394/16
417/7 417/12 424/19
427/22 450/7
**letter [28]** 393/3 393/4
394/4 395/5 397/7
400/7 402/11 402/11
402/16 402/25 403/4
406/14 410/4 420/22
420/24 426/19 439/9
446/2 446/7 446/14
446/25 447/1 447/7
447/8 448/22 448/23
449/1 451/15
**letters [77]**
**letting [1]** 400/19
**Licavoli [10]** 403/13
430/9 432/7 432/19
440/21 440/23 441/1
443/21 444/4 444/7
**Licavoli's [1]** 404/7
**light [10]** 403/11
403/12 419/15 443/4
443/5 443/21 451/21
455/15 455/16 456/3
**like [25]** 393/22 396/17
396/22 397/13 397/24
399/5 403/17 403/25
405/19 408/19 415/18
421/9 424/6 433/13
434/1 434/7 435/19
439/10 439/11 445/13
449/19 453/13 455/11
455/21 455/22
**likely [1]** 454/6
**limine [11]** 410/24
413/22 415/23 429/10
432/22 441/5 441/22
441/24 442/16 443/13
444/12
**limited [2]** 437/2
451/22
**limiting [3]** 397/5
397/9 397/10
**line [4]** 403/24 434/17
445/24 455/24
**lines [2]** 397/12 404/6

**Listen [2]** 410/10
417/23
**litigate [1]** 399/15
**little [4]** 410/15 440/8
449/8 456/8
**long [2]** 402/5 456/8
**longer [3]** 419/19
443/9 452/9
**look [3]** 396/19 406/10
406/14
**lorraine [4]** 391/21
391/24 457/3 457/10
**lot [3]** 405/7 437/23
452/9
**lunch [9]** 450/5 450/6
453/11 453/16 453/16
455/1 455/19 455/21
456/4

**M**

**made [16]** 393/24
401/9 411/23 415/1
419/20 420/10 422/22
423/9 428/4 428/8
428/16 430/11 439/15
444/12 444/20 451/19
**main [2]** 414/9 417/8
**major [1]** 456/5
**make [19]** 401/6 406/6
406/18 415/14 415/19
416/16 420/11 427/13
429/21 444/14 444/20
450/22 450/25 453/18
453/22 454/9 454/17
455/4 455/16
**makes [4]** 411/20
416/20 431/11 456/2
**making [3]** 435/20
438/23 440/24
**malleable [15]** 405/5
410/1 411/13 411/18
411/24 414/5 414/8
421/25 426/18 426/20
430/25 436/24 438/23
454/13 454/14
**mandated [1]** 418/2
**manufacturing [1]**
439/23
**many [2]** 438/13
444/15
**matter [9]** 393/5
393/13 394/6 401/15
402/17 434/24 435/17
453/11 457/5

**MATTHEW [1]** 391/17
**may [7]** 407/22 410/23
427/7 442/12 446/6
452/19 452/20
**maybe [6]** 403/4
407/10 414/17 416/21
442/11 453/4
**MC [1]** 391/19
**me [24]** 403/10 407/5
413/16 417/5 417/6
417/16 422/6 425/1
425/14 428/20 429/19
429/20 429/23 430/6
430/15 431/4 431/12
431/12 433/4 444/3
445/1 445/16 451/24
454/5
**mean [14]** 403/13
409/12 418/4 418/5
418/6 423/25 428/24
434/11 434/17 435/10
435/11 439/23 444/17
449/20
**meaning [1]** 409/7
**means [5]** 396/10
397/14 440/23 445/8
446/25
**meant [2]** 445/5 448/2
**media [1]** 438/9
**mens [12]** 395/9
396/16 399/11 404/7
413/25 419/17 432/4
438/14 443/7 444/4
452/6 454/24
**mention [2]** 415/24
416/12
**merits [3]** 394/25
397/20 435/19
**might [11]** 410/3 411/6
441/13 441/13 441/16
443/4 443/5 443/10
443/23 453/19 455/16
**mind [4]** 394/15 411/2
437/22 455/9
**minimum [1]** 445/24
**missed [1]** 425/10
**misspoke [1]** 430/16
**mistake [13]** 405/1
405/2 422/1 422/2
423/9 423/23 427/13
433/10 433/12 433/13
439/15 439/20 439/20
**misunderstanding [1]**
420/2

**M**

**modest [1]** 456/7
**MOLLY [2]** 391/11
392/8
**moment [1]** 456/7
**Monday [2]** 453/3
453/4
**Montgomery [1]**
391/16
**month [6]** 437/20
438/5 438/8 438/10
438/17 453/2
**months [2]** 444/15
452/8
**more [6]** 408/6 423/10
439/25 449/8 450/6
456/9
**more-important [1]**
408/6
**morning [12]** 391/7
392/2 392/7 392/10
392/11 392/14 392/21
398/8 398/9 440/15
453/15 455/15
**most [6]** 396/15
403/15 406/15 411/5
411/5 422/20
**motion [29]** 411/4
415/23 416/5 419/7
419/9 420/5 429/4
429/10 440/5 441/1
441/5 441/21 441/21
441/22 441/24 442/1
442/2 442/16 442/17
442/19 442/20 442/22
443/13 444/15 448/9
450/10 450/17 451/25
452/12
**motions [7]** 410/24
413/18 413/22 416/1
432/21 441/4 444/12
**move [2]** 429/9 434/1
**moved [15]** 395/10
402/18 402/19 409/8
413/10 424/23 425/8
426/11 428/12 429/4
429/6 429/8 434/7
439/7 442/12
**moving [6]** 401/18
418/18 435/8 437/23
438/14 453/9
**Mr [10]** 392/13 393/6
394/19 398/18 401/13
401/14 412/25 413/25

414/18 419/13
**Mr. [120]**
**Mr. Bannon [73]**
**Mr. Bannon's [17]**
395/7 395/19 395/21
399/7 411/1 414/21
418/3 424/9 443/4
443/6 443/24 446/4
448/14 449/15 453/17
454/15 454/25
**Mr. Corcoran [4]**
437/16 450/8 455/25
456/6
**Mr. Costello [8]**
400/10 404/4 412/1
412/7 417/5 417/6
418/8 425/18
**Mr. Costello's [1]**
417/9
**Mr. Schoen [14]** 398/7
403/7 404/2 406/21
407/6 407/7 422/15
424/5 427/24 436/7
444/18 450/23 451/18
453/19
**Mr. Schoen's [1]**
451/1
**Mr. Thompson's [1]**
400/15
**Mr. Trump [1]** 447/19
**Ms [3]** 420/18 438/19
447/14
**Ms. [7]** 392/20 392/23
403/9 428/1 440/2
440/7 455/8
**Ms. Lesley [1]** 440/7
**Ms. Vaughn [6]** 392/20
392/23 403/9 428/1
440/2 455/8
**much [1]** 396/20
**mulling [1]** 418/20
**multiple [1]** 405/10
**must [5]** 404/15 406/4
414/20 420/25 425/4
**my [41]** 394/4 401/17
402/22 405/11 405/11
405/11 407/9 408/20
408/21 409/5 413/16
414/10 415/10 416/24
417/13 418/23 418/25
419/4 420/8 422/6
424/18 425/1 426/12
427/13 429/2 429/18
429/23 430/5 431/4

431/6 431/12 431/19
433/15 443/12 445/17
446/16 450/19 451/22
452/1 452/10 454/9

**N**

**narrow [3]** 419/16
443/6 444/4
**necessary [4]** 412/25
426/24 443/11 448/18
**need [6]** 406/24
439/22 446/24 446/25
447/10 450/11
**needed [1]** 404/5
**needs [5]** 423/18
446/20 446/21 446/22
447/9
**negative [1]** 454/14
**negotiated [1]** 395/25
**negotiating [1]** 426/12
**negotiation [4]** 408/16
415/17 417/18 435/15
**negotiations [9]**
412/21 419/18 421/22
421/23 425/6 431/3
431/5 433/24 443/8
**never [11]** 400/6 400/9
402/13 402/23 405/12
412/11 418/22 418/23
426/15 439/16 439/16
**new [1]** 449/22
**next [7]** 420/8 441/20
441/21 441/22 441/23
447/7 452/20
**NICHOLS [1]** 391/8
**no [33]** 391/3 395/12
398/10 398/12 401/7
401/23 402/7 404/14
407/12 410/1 416/2
416/4 417/10 418/1
418/5 418/6 419/19
421/8 423/22 426/1
427/10 427/13 429/8
430/16 435/24 436/17
436/17 438/24 443/9
450/20 451/13 453/11
454/11
**nobody [2]** 413/6
413/7
**None [1]** 401/15
**Nope [1]** 421/2
**normally [1]** 422/24
**not [159]**
**noted [2]** 443/22

449/16
**notice [11]** 393/6
394/21 394/22 396/6
397/18 402/25 404/21
404/22 408/3 408/4
445/23
**notified [1]** 398/4
**notwithstanding [2]**
418/9 451/17
**now [21]** 394/16
394/23 399/4 401/9
413/10 416/19 420/25
425/20 428/14 435/5
438/4 440/11 442/14
444/17 445/16 446/15
447/9 451/11 452/8
455/19 455/21
**number [2]** 394/17
410/25
**NW [2]** 391/12 391/23

**O**

**objection [11]** 393/23
394/13 395/1 395/15
397/23 405/24 409/6
409/18 421/16 430/11
430/21
**obligation [2]** 415/11
447/22
**obtaining [1]** 426/24
**obviously [6]** 392/19
403/13 407/4 420/1
425/16 450/17
**October [14]** 393/3
404/15 406/1 406/14
412/2 412/5 437/1
437/2 439/9 446/1
446/7 446/13 447/8
449/21
**October 14th [3]**
404/15 406/1 449/21
**OFC [1]** 391/11
**off [2]** 421/13 438/9
**offense [1]** 393/16
**offer [7]** 397/3 432/6
432/9 439/8 441/9
441/14 444/13
**offered [17]** 393/4
393/13 394/5 397/11
397/16 397/24 400/22
401/3 401/21 401/25
402/5 408/2 408/3
419/10 419/14 442/23
443/2

468

**O**

**offering [4]** 396/4
396/7 401/11 402/16
**offers [2]** 395/22
395/24
**Official [2]** 391/22
457/3
**Oh [2]** 409/19 437/15
**Okay [15]** 394/14
396/9 398/2 399/23
414/2 418/5 423/15
424/1 436/6 437/5
448/1 448/17 448/20
453/7 455/24
**OLC [13]** 403/17
412/14 413/12 415/9
416/13 416/23 429/20
430/18 432/9 433/1
433/7 443/1 445/13
**old [1]** 436/20
**omnibus [4]** 419/7
420/4 442/16 442/17
**once [3]** 410/22
421/11 454/25
**one [31]** 395/3 396/2
408/13 408/14 410/10
414/9 414/23 419/19
420/3 420/11 420/12
423/22 426/6 431/14
431/21 432/25 434/18
436/3 436/17 436/17
436/20 437/20 438/17
439/8 439/17 441/1
442/16 443/10 444/24
450/19 454/12
**one's [1]** 402/6
**one-month [2]** 437/20
438/17
**one-sided [1]** 408/13
**one-two [1]** 436/20
**ones [2]** 435/11
444/10
**ongoing [3]** 415/17
445/11 447/22
**only [7]** 397/16 400/13
401/22 437/17 440/24
450/24 453/3
**open [26]** 405/25
410/25 411/10 411/16
412/13 413/8 414/11
415/14 427/3 427/17
432/17 432/23 444/3
444/7 445/7 445/10
446/16 450/2 450/16

451/16 453/6 453/22
454/8 454/13 454/16
454/19
**opened [2]** 436/3
445/18
**opening [1]** 453/11
**openings [1]** 456/4
**opens [1]** 426/14
**operative [6]** 419/19
433/21 441/15 442/10
443/10 443/25
**opinion [1]** 400/5
**opinions [12]** 403/17
412/14 413/12 415/9
416/13 416/23 429/21
430/18 432/10 433/1
433/8 445/13
**opposed [1]** 449/3
**order [2]** 409/17 421/7
**ordered [1]** 400/25
**orders [1]** 409/5
**original [1]** 421/8
**other [20]** 395/12
398/11 399/24 401/7
404/6 410/12 411/19
414/23 416/15 417/20
418/14 418/23 421/21
426/13 426/16 427/3
431/25 436/15 438/23
448/11
**others [1]** 429/10
**otherwise [3]** 401/13
441/12 451/4
**our [26]** 392/9 409/2
409/6 409/18 409/23
410/9 417/21 417/22
418/22 420/11 420/12
420/14 420/14 424/20
425/22 426/16 427/7
436/10 436/11 438/1
438/15 449/20 450/4
450/5 450/17 455/5
**out [16]** 400/23 403/17
405/14 406/24 409/24
415/12 416/24 421/11
422/8 422/24 427/23
433/22 435/12 435/25
438/11 449/18
**outright [2]** 418/13
418/14
**outside [1]** 395/13
**outstanding [2]**
393/23 404/19
**over [9]** 409/6 409/18

415/17 418/21 426/12
426/13 431/3 431/5
435/15

**P**

**pages [1]** 423/24
**paragraph [18]** 403/5
406/18 407/22 408/24
410/12 446/5 446/7
446/10 446/12 446/20
446/20 446/21 446/21
447/4 447/10 448/6
448/22 448/22
**paragraphs [14]**
406/15 406/15 406/17
435/10 446/3 446/6
446/8 446/13 446/22
446/23 447/1 447/7
447/8 449/1
**part [24]** 410/24
410/24 413/22 416/2
416/14 418/1 418/17
420/4 420/19 423/19
432/22 432/22 437/7
441/6 441/7 442/1
442/1 442/16 442/19
442/20 442/20 442/21
442/21 454/5
**partially [1]** 400/19
**particular [2]** 412/6
432/24
**parties [9]** 404/11
437/22 452/2 452/23
453/14 453/23 453/24
453/25 455/9
**parties' [1]** 396/12
**parts [3]** 406/6 406/7
449/4
**passed [2]** 409/13
409/19
**past [2]** 432/25 451/5
**path [1]** 406/22
**Pelosi [1]** 409/15
**pending [1]** 441/1
**penultimate [1]** 447/1
**peremptories [2]**
392/22 424/4
**perhaps [6]** 395/1
406/17 407/5 419/21
425/13 442/10
**period [2]** 436/25
437/2
**permit [1]** 415/7
**permitted [3]** 416/12

425/21 426/10
**person [3]** 435/24
436/18 451/13
**perspective [16]** 395/5
395/17 396/11 397/6
400/14 400/15 405/1
411/12 419/24 420/14
423/21 425/22 427/14
453/17 454/15 455/20
**pertinency [6]** 399/12
399/17 399/18 399/22
399/23 407/23
**picked [2]** 452/1
453/12
**pieces [2]** 437/23
438/14
**pitch [1]** 417/9
**places [1]** 420/10
**plainly [2]** 445/1
445/16
**play [1]** 415/16
**please [1]** 392/5
**plenty [1]** 412/9
**point [8]** 408/25 414/2
414/9 425/18 449/25
450/4 450/21 452/15
**pointing [1]** 420/21
**points [1]** 414/10
**portion [1]** 402/23
**portions [4]** 435/6
445/15 446/5 454/2
**position [39]** 393/14
394/8 395/6 395/8
395/25 397/25 398/3
401/14 401/20 402/3
402/7 402/19 402/25
403/6 403/12 406/19
407/7 407/9 408/5
408/18 417/21 417/22
417/25 419/23 420/2
423/22 425/12 426/16
426/17 434/22 435/4
436/20 437/9 437/11
449/5 449/15 453/1
454/23 455/6
**positions [10]** 393/6
394/6 394/23 396/12
397/18 403/24 421/23
435/25 445/24 455/11
**possibility [14]** 414/20
415/1 425/20 425/25
432/17 432/23 444/4
444/7 445/7 451/16
451/19 453/22 454/9

**P**

possibility... [1] 455/3
potentially [1] 413/24
precondition [1] 412/21
prefer [1] 404/10
preparation [1] 438/2
prepared [2] 441/14 453/16
present [1] 392/13
presented [1] 433/20
presenting [1] 438/13
President [5] 400/7 400/24 401/1 411/7 417/15
President Trump [3] 400/7 400/24 411/7
presumably [2] 397/11 429/19
pretrial [2] 452/12 453/13
pretty [1] 444/3
prevent [1] 405/20
principles [1] 444/14
prior [3] 441/25 442/10 443/12
privilege [75]
privileges [1] 449/18
probably [2] 449/12 449/14
probative [1] 394/4
problem [1] 456/8
problematic [1] 447/5
Procedurally [1] 437/17
proceedings [1] 457/5
process [10] 418/2 418/2 418/17 427/20 431/7 432/25 437/8 439/14 439/19 445/2
produce [5] 444/6 447/22 449/17 449/19 451/8
proffer [60] 402/6 411/17 411/17 411/20 411/23 412/4 412/10 412/19 412/22 412/24 412/25 413/24 414/2 415/1 415/6 415/15 415/18 415/19 415/19 416/14 416/16 416/20 417/1 417/11 417/12 420/20 421/24 423/16 423/17 424/9 425/17

432/18 432/23 433/2 433/5 434/2 435/22 436/10 436/11 436/22 436/23 441/16 441/19 442/8 442/14 444/13 444/20 445/6 446/15 450/1 450/20 450/22 451/3 451/19 453/21 453/22 454/4 454/9 454/16 454/18
proffered [1] 422/16
proffering [1] 445/9
proffers [4] 450/24 451/17 451/23 455/15
proof [2] 408/3 434/14
properly [1] 426/4
proposal [1] 407/19
proposals [2] 407/16 407/18
propose [2] 397/9 448/21
proposed [5] 396/23 406/9 407/21 408/20 408/21
proposes [1] 408/22
proposition [1] 427/3
prosecution [1] 431/23
protect [1] 412/3
prove [8] 394/5 401/21 402/16 402/17 405/13 430/20 434/24 435/2
provide [3] 393/5 406/7 445/23
provided [2] 396/6 408/4
providing [2] 394/22 397/18
pulled [1] 440/16
pulling [2] 410/14 410/20
purported [1] 447/19
purpose [9] 397/17 399/6 399/15 399/17 408/2 428/19 434/13 442/4 452/6
purposes [3] 429/10 430/15 445/17
pushed [1] 431/13
put [15] 399/4 401/5 405/4 405/5 421/5 424/20 424/21 425/5 425/21 428/4 428/8 434/5 434/8 448/18

451/12
putting [1] 455/20

**Q**

question [34] 393/12 393/23 394/4 399/10 401/17 405/2 405/13 405/25 407/23 408/6 410/25 411/11 414/20 419/1 421/20 424/3 424/8 431/15 431/16 431/19 431/21 431/22 431/25 432/1 432/3 433/14 433/15 434/12 434/13 446/18 451/11 453/20 454/13 454/22
questions [13] 392/18 394/20 394/23 397/21 398/25 403/18 404/9 411/6 431/25 435/16 436/1 440/19 445/18
quickly [3] 435/4 436/8 450/16
Quinn [1] 393/23
quoting [1] 441/23

**R**

raise [5] 395/15 426/2 448/2 449/1 449/22
raised [11] 394/12 395/2 398/1 405/9 405/13 405/23 409/20 420/9 420/10 430/20 433/14
raising [3] 405/18 424/21 436/12
rather [4] 393/5 403/21 435/8 449/16
rea [12] 395/9 396/16 399/11 404/8 413/25 419/17 432/4 438/15 443/7 444/4 452/6 454/24
reached [1] 419/22
read [5] 419/3 436/17 441/3 452/3 452/3
real [1] 425/22
realize [1] 433/15
really [13] 394/8 396/20 405/12 408/4 418/5 418/9 420/6 435/4 436/19 438/14 447/3 449/25 452/1
reason [27] 395/20

398/10 402/6 406/3 409/2 409/2 409/4 409/7 409/7 409/11 413/9 413/15 415/6 415/15 416/20 424/12 424/20 424/22 426/7 427/16 427/16 429/24 438/24 444/11 450/19 451/14 454/1
reasonable [3] 435/24 436/18 450/25
reasons [21] 395/7 395/8 396/2 398/1 400/21 401/2 406/8 411/23 412/9 412/12 412/13 421/22 421/23 424/22 426/11 435/8 435/13 444/9 444/23 451/14 452/22
recall [3] 410/21 410/23 411/16
received [2] 401/12 404/4
recent [3] 411/5 411/6 411/10
recess [4] 424/2 440/3 440/10 456/10 456/12
recognize [1] 446/3
recognizing [2] 452/14 454/17
reconsider [1] 453/20
record [6] 392/6 440/12 440/19 452/4 455/14 457/5
redact [6] 406/10 407/4 435/18 445/19 447/24 448/5
redacted [11] 403/22 446/9 446/11 446/21 446/21 446/22 446/24 446/24 446/25 447/10 447/11
redacting [1] 448/21
redaction [3] 406/17 410/9 450/14
redactions [4] 449/4 455/1 455/2 455/23
reference [2] 397/13 416/13
referral [3] 409/15 410/7 427/1
referred [1] 399/11
referring [1] 421/3
reflected [1] 402/25

**R**

**regarding [1]** 409/10
**Regardless [1]** 447/18
**reiterating [2]** 449/5
449/5
**rejected [3]** 409/2
418/13 418/13
**rejecting [4]** 399/24
400/2 406/3 435/20
**rejection [1]** 427/19
**relate [2]** 399/20
407/24
**related [2]** 404/7
415/24
**relates [3]** 419/16
443/6 447/5
**relevance [2]** 398/12
401/18
**relevant [26]** 394/8
394/10 394/23 394/24
395/1 401/19 401/24
402/8 404/22 406/2
406/11 407/23 410/8
411/6 412/2 419/20
429/13 430/12 437/10
441/14 442/12 443/10
443/25 445/16 453/22
454/23
**reliance [5]** 396/25
399/1 416/4 416/8
443/13
**relied [2]** 415/9 443/17
**relying [2]** 415/9
434/19
**remain [1]** 444/2
**remainder [1]** 446/12
**remains [1]** 426/23
**remember [2]** 398/20
412/23
**repeat [1]** 421/1
**Reported [1]** 391/21
**Reporter [2]** 391/22
457/3
**request [2]** 399/3
452/11
**requested [1]** 407/24
**require [5]** 408/16
415/19 423/17 441/20
442/13
**required [6]** 397/15
414/22 415/6 423/15
427/20 441/12
**requirement [4]**
403/25 419/17 421/8

443/7
**requires [2]** 439/19
455/17
**reread [1]** 440/18
**reserve [1]** 435/23
**resolve [3]** 393/25
405/3 442/15
**resolved [11]** 394/13
395/3 395/15 404/20
405/19 405/25 406/13
421/15 430/21 444/15
454/11
**respect [4]** 397/25
420/9 447/15 448/24
**respectfully [2]** 408/25
438/16
**respective [1]** 396/12
**respond [2]** 421/4
441/12
**responded [1]** 404/14
**responding [1]** 441/10
**response [2]** 403/9
449/21
**resume [1]** 438/10
**return [23]** 402/12
402/18 402/19 403/24
403/25 405/4 412/5
412/16 415/15 422/5
422/5 430/25 432/16
432/19 432/20 434/1
442/9 442/11 444/9
444/25 445/5 445/10
445/25
**RIANE [2]** 391/18
392/12
**Riane White [1]**
392/12
**right [21]** 392/15
395/11 408/20 415/3
419/1 422/3 423/13
424/16 424/16 425/20
427/21 433/2 433/5
434/9 434/17 435/5
435/24 445/14 445/16
449/23 454/10
**risk [3]** 406/20 408/12
454/6
**Road [1]** 391/15
**Robert [1]** 393/3
**Room [1]** 391/23
**ROSE [1]** 391/10
**row [1]** 455/5
**RPR [1]** 391/21
**rule [1]** 450/17

**ruling [2]** 409/23
444/14
**rulings [2]** 426/1
431/19
**run [2]** 406/20 408/12
**running [1]** 454/6

**S**

**said [41]** 399/16
402/11 402/12 404/14
406/12 407/23 408/13
409/1 411/15 412/18
413/2 413/3 413/17
413/23 414/19 414/25
416/5 417/23 418/8
419/3 420/3 420/6
420/8 422/7 426/16
429/1 429/3 429/14
429/17 429/17 429/25
430/8 430/13 441/2
443/12 443/15 443/21
450/20 451/5 451/18
455/15
**same [2]** 395/20
439/14
**saw [1]** 427/19
**say [39]** 395/5 396/19
401/9 401/25 402/4
402/5 402/12 402/17
403/3 405/12 405/14
406/10 409/19 410/11
413/6 413/21 414/11
415/7 415/21 417/7
418/4 423/25 424/5
424/19 426/18 427/4
428/1 429/20 430/17
431/1 432/18 434/21
435/7 435/24 442/13
442/15 444/18 450/9
454/19
**saying [18]** 405/11
411/16 412/23 412/24
413/7 414/17 416/19
420/25 421/2 425/13
425/15 425/19 429/1
431/11 433/19 433/20
451/12 454/11
**says [11]** 402/15
402/15 408/14 408/24
410/3 425/16 430/5
430/24 431/1 439/9
455/17
**scheme [1]** 456/7
**SCHOEN [17]** 391/14

391/15 392/12 398/7
403/7 404/2 406/21
407/6 407/7 422/15
424/5 427/24 436/7
444/18 450/23 451/18
453/19
**Schoen's [1]** 451/1
**scope [3]** 399/6
452/23 452/24
**script [1]** 419/4
**second [12]** 396/19
406/16 407/15 428/11
435/10 435/11 435/12
445/1 446/8 446/13
447/8 448/25
**Section [1]** 442/17
**see [8]** 397/13 421/16
438/8 439/24 440/6
447/4 449/24 453/8
**seeking [1]** 413/24
**seeks [3]** 419/7 442/17
443/15
**seemed [1]** 454/5
**seems [2]** 444/3
444/25
**seen [1]** 425/17
**seismic [1]** 437/21
**select [7]** 392/16
399/21 401/11 419/18
426/23 438/6 443/8
**sense [5]** 431/11
432/15 432/19 453/8
456/2
**sent [2]** 411/7 411/8
**sentence [3]** 446/10
447/18 447/25
**separate [1]** 430/4
**serious [1]** 417/14
**seriously [1]** 455/23
**serves [1]** 399/5
**SESSION [1]** 391/7
**set [5]** 395/13 396/3
411/5 411/6 431/19
**shed [2]** 443/4 443/5
**sheds [1]** 419/15
**shift [1]** 437/21
**short [1]** 438/1
**should [18]** 396/18
397/5 397/9 397/10
403/5 403/21 423/19
425/20 426/17 443/16
445/3 445/19 446/2
446/8 446/11 449/4
449/13 450/9

**S**

**shouldn't [2]** 402/23 427/14
**show [28]** 393/19 394/10 395/1 395/24 396/6 397/24 398/3 398/4 398/20 398/21 398/22 398/23 402/14 406/2 415/11 419/10 419/12 419/14 423/21 429/2 429/18 430/5 441/9 442/9 442/23 443/1 443/2 449/5
**showing [3]** 395/7 405/17 433/23
**shows [3]** 409/1 451/6 451/13
**side [1]** 413/4
**sided [1]** 408/13
**significant [1]** 438/14
**SILVERMAN [1]** 391/18
**similar [3]** 410/12 419/20 422/13
**simply [3]** 402/24 438/1 453/3
**since [3]** 438/1 438/23 450/1
**single [1]** 447/4
**sit [2]** 406/24 434/21
**slow [1]** 407/15
**SLUTKIN [1]** 391/18
**so [76]**
**soften [1]** 436/19
**solely [1]** 408/2
**some [13]** 403/19 404/12 406/24 408/15 408/16 411/1 413/23 422/12 436/5 436/15 440/19 449/3 453/23
**somehow [3]** 421/8 439/3 439/12
**someone [3]** 421/9 423/5 434/19
**something [13]** 397/13 397/24 408/18 415/4 424/5 427/23 428/2 432/20 433/12 434/7 436/5 438/21 449/19
**soon [2]** 410/11 436/3
**sorry [5]** 410/6 410/19 430/2 437/15 453/16
**sort [3]** 408/15 437/21 452/5

**sought [1]** 399/5
**Speaker [1]** 409/14
**Special [1]** 392/9
**specific [7]** 410/20 420/20 423/16 425/17 434/22 440/18 441/4
**specifically [1]** 437/1
**specifics [1]** 436/10
**spend [1]** 450/6
**squarely [2]** 403/18 430/9
**staked [1]** 435/25
**standard [2]** 404/8 432/4
**standpoint [1]** 438/12
**start [4]** 392/21 392/23 453/4 456/8
**started [1]** 426/19
**starting [1]** 453/10
**state [1]** 411/1
**stated [1]** 449/17
**statement [5]** 401/21 401/22 402/1 439/11 451/2
**statements [8]** 394/17 399/4 406/6 406/25 422/22 444/25 449/11 451/21
**STATES [6]** 391/1 391/2 391/8 392/3 392/8 393/4
**status [1]** 438/2
**stay [1]** 449/14
**STEPHEN [2]** 391/5 392/4
**Steve [1]** 392/13
**still [19]** 395/25 399/9 399/12 405/15 414/11 415/16 416/18 427/2 427/8 427/17 430/20 432/13 433/16 439/10 439/11 440/8 446/18 451/17 454/12
**stipulation [7]** 404/12 404/17 405/20 407/19 407/20 408/15 408/17
**stone [2]** 396/3 433/21
**story [7]** 398/16 398/23 399/1 400/3 400/19 408/13 408/13
**Street [2]** 391/12 391/19
**stress [1]** 441/13
**strong [1]** 434/14

**subjective [7]** 419/16 425/22 431/7 443/6 443/24 454/4 454/12
**subjectively [1]** 422/25
**submission [6]** 408/21 408/21 414/10 418/22 418/23 420/8
**submitted [1]** 409/2
**subpoena [33]** 393/17 393/17 393/17 393/20 394/1 394/12 395/13 397/19 398/19 398/21 402/12 404/5 404/12 409/14 409/16 410/5 412/6 420/22 427/7 427/7 427/9 427/12 428/5 434/6 437/6 441/10 441/11 442/5 443/16 443/18 444/1 444/22 449/16
**Subpoena's [1]** 442/7
**subpoenas [12]** 419/14 419/19 433/1 439/16 441/6 441/15 442/9 442/25 443/3 443/9 443/25 445/25
**subpoenas...I [1]** 441/25
**such [7]** 441/13 441/17 442/3 442/22 443/20 445/7 454/4
**sufficient [2]** 415/18 435/5
**suggest [1]** 436/4
**suggesting [1]** 412/1
**suggestion [2]** 410/9 456/2
**Suite [1]** 391/15
**suppose [1]** 450/10
**supposed [1]** 450/16
**sure [5]** 408/16 419/5 433/7 450/4 455/4
**sworn [2]** 450/16 452/19

**T**

**table [3]** 392/9 421/13 451/17
**take [6]** 393/1 423/17 424/2 440/3 448/13 455/1
**taken [5]** 395/6 395/8 408/18 435/3 439/25

**takes [1]** 430/21
**taking [5]** 394/5 395/25 421/24 450/23 454/23
**talk [2]** 441/19 455/11
**talked [2]** 422/7 431/13
**talking [12]** 395/23 411/7 418/7 421/12 421/14 423/21 424/9 425/14 427/2 432/24 435/23 446/6
**taxes [2]** 421/10 421/12
**team [1]** 413/6
**tee [1]** 454/21
**teed [1]** 420/6
**tell [4]** 400/20 402/17 408/1 451/2
**telling [3]** 398/16 408/12 425/1
**ten [1]** 421/10
**tend [2]** 424/14 435/14
**terms [5]** 404/14 406/2 422/20 437/23 444/6
**testify [14]** 412/20 417/16 423/2 423/4 424/10 425/5 425/16 426/11 427/8 428/3 428/16 429/16 429/18 433/19
**testifying [1]** 396/21
**testimony [35]** 392/20 399/10 401/5 404/3 404/7 411/1 411/21 411/23 413/4 413/8 414/7 418/3 418/16 419/7 419/10 419/15 421/21 424/10 426/14 426/24 427/22 429/3 429/8 429/11 429/25 430/9 433/18 441/17 442/18 442/23 443/4 443/5 445/7 449/20 452/24
**tethered [1]** 417/1
**than [5]** 398/11 401/7 403/21 435/8 452/25
**Thank [15]** 398/2 398/5 403/7 403/8 424/1 427/24 427/25 437/12 438/17 438/18 440/2 440/9 440/13 455/7 456/11

-3864-

**T**

**that [584]**

**that's [67]** 393/24
395/9 395/14 398/12
398/20 399/23 401/3
403/3 405/16 407/1
408/1 408/21 409/23
409/24 410/7 410/7
411/20 413/7 415/22
416/5 417/10 417/20
417/21 417/25 418/7
418/19 420/6 420/13
421/9 421/12 421/13
422/10 424/16 424/18
425/11 425/15 425/20
425/22 426/14 426/18
427/1 427/1 427/9
427/23 428/6 428/17
429/23 431/14 431/21
431/23 432/7 432/7
434/11 434/12 437/7
437/10 437/12 439/8
439/12 439/17 439/19
439/20 440/7 445/6
447/24 451/25 452/6

**their [17]** 395/18
395/20 398/3 398/11
401/8 408/7 408/8
417/23 417/25 419/8
421/12 427/19 436/20
438/23 439/1 442/18
455/10

**them [19]** 395/22
395/24 396/4 401/11
415/24 415/25 416/13
416/13 421/12 425/9
427/20 432/22 432/22
434/7 435/8 436/19
438/7 452/3 452/4

**then [47]** 392/21
393/19 394/4 395/16
396/10 400/24 403/19
406/1 406/7 406/16
412/13 413/1 413/8
413/19 415/22 417/2
420/22 421/1 421/16
421/20 421/20 421/21
424/3 425/5 425/7
431/10 435/23 436/14
440/25 441/17 441/19
441/20 442/7 442/12
442/15 443/10 443/11
445/14 446/7 446/12
446/19 447/7 448/4

448/13 451/18 454/9
454/20

**theory [2]** 401/16
422/12

**there [38]** 392/19
393/23 394/17 396/14
396/20 399/16 404/19
405/7 405/10 405/14
406/6 406/7 409/11
410/1 410/2 411/19
412/9 415/16 415/17
417/13 418/16 421/8
427/10 429/20 432/1
432/13 432/14 435/15
437/23 438/24 440/6
440/22 445/2 445/11
450/20 452/10 454/14
455/1

**there's [16]** 393/9
395/12 398/10 401/7
402/7 408/14 420/1
427/6 429/21 431/6
431/19 431/22 432/3
437/21 446/15 454/3

**therefore [9]** 393/7
393/8 395/3 417/19
418/4 425/2 426/13
429/24 451/20

**these [39]** 394/2 394/5
394/10 394/16 395/14
396/19 397/15 397/16
398/11 399/1 400/3
401/4 401/7 403/18
403/22 404/8 405/16
406/2 408/7 408/8
415/24 422/24 423/3
425/21 426/13 426/15
427/14 433/22 435/15
436/1 436/4 436/10
436/17 438/11 438/22
442/15 449/8 451/21
452/9

**they [53]** 396/8 396/9
398/12 398/14 400/10
400/13 400/23 400/24
401/6 401/25 402/4
402/10 405/13 405/15
405/17 408/9 408/12
409/21 410/11 411/11
412/15 416/2 418/4
418/13 418/13 418/14
418/16 418/17 419/18
421/11 422/7 423/25
427/21 434/7 435/14

436/3 436/24 438/7
438/9 439/11 439/16
439/22 439/23 443/8
444/22 445/23 448/18
449/9 449/17 449/18
452/11 454/21 455/11

**they'll [1]** 400/9

**they're [4]** 397/24
401/11 436/20 438/8

**they've [3]** 438/23
439/25 452/20

**thing [12]** 400/13
403/10 410/15 420/3
425/3 429/22 431/14
432/24 439/8 439/17
441/3 446/4

**things [22]** 395/24
396/1 399/11 399/25
400/8 400/12 401/15
409/16 411/19 414/22
422/24 425/14 426/4
426/13 430/19 433/22
435/19 437/10 438/11
453/9 456/7 456/8

**think [49]** 393/9
393/15 394/3 395/4
396/5 397/10 397/22
403/1 403/2 403/4
405/6 405/6 406/22
407/9 407/12 409/17
409/23 412/2 412/25
417/4 419/23 420/6
420/19 425/10 425/11
425/13 425/14 429/12
430/23 433/4 435/17
438/5 440/17 441/15
442/4 443/19 446/5
446/12 446/15 447/21
448/18 449/4 449/12
451/1 452/1 452/4
452/21 454/20 456/4

**thinking [1]** 437/1

**thinks [1]** 455/17

**third [12]** 406/9 406/16
406/18 435/10 435/11
435/13 446/8 446/10
447/9 448/6 448/22
449/1

**this [99]**

**THOMPSON [2]**
391/18 409/13

**Thompson's [3]** 400/5
400/15 418/12

**those [40]** 394/21

394/22 394/23 395/8
396/14 397/20 399/24
400/8 400/12 401/2
401/15 404/8 406/6
406/24 409/16 411/6
411/10 412/12 415/12
415/12 416/1 416/17
417/17 425/6 426/4
430/3 430/18 433/5
434/1 435/6 437/2
437/9 444/6 444/14
445/15 450/24 454/2
454/11 454/20 455/2

**though [3]** 408/9
412/6 433/17

**thought [20]** 395/9
404/19 405/24 406/11
409/19 409/20 418/1
418/10 418/10 421/15
423/10 424/7 426/11
433/14 433/18 437/8
439/16 450/24 453/18
455/23

**thoughts [1]** 442/15

**three [1]** 441/1

**through [10]** 411/17
418/18 419/21 432/18
432/21 436/15 445/20
447/2 448/8 455/22

**thus [1]** 443/18

**tightly [1]** 416/25

**time [16]** 404/24
406/24 411/15 411/16
423/11 423/11 438/1
439/6 439/25 440/19
441/20 443/12 444/19
446/3 450/6 450/21

**times [1]** 451/5

**today [14]** 397/11
413/7 418/5 418/6
418/18 422/13 424/19
425/25 426/5 440/20
445/20 447/6 453/11
455/10

**today's [1]** 452/19

**told [17]** 404/25 412/1
413/16 419/17 422/6
428/9 429/2 429/19
429/20 429/23 430/6
431/4 431/12 433/23
443/7 452/18 452/20

**tomorrow [1]** 431/13

**too [4]** 407/3 438/13
446/24 455/12

**T**

took **[2]** 400/24 412/24
topic **[1]** 438/10
Toward **[1]** 410/17
track **[1]** 450/15
transcript **[5]** 391/7
420/10 440/16 441/23
457/4
trial **[9]** 391/7 394/23
415/25 423/17 438/25
452/24 453/5 455/3
455/4
tried **[2]** 420/11 431/18
tries **[3]** 419/12 421/11
442/25
troubling **[1]** 403/10
true **[6]** 394/8 394/8
402/1 406/5 452/6
457/4
Trump **[7]** 400/7
400/24 401/13 411/7
414/10 426/19 447/19
truncated **[1]** 403/20
truth **[7]** 393/5 393/13
394/6 401/8 401/23
402/16 402/24
try **[5]** 423/18 425/21
427/20 436/4 454/10
trying **[4]** 416/24 421/5
439/5 450/14
Tuesday **[1]** 452/19
turn **[1]** 438/9
Turning **[1]** 447/3
two **[10]** 407/16 407/17
414/22 436/20 444/23
446/3 447/4 447/8
450/24 455/10
type **[1]** 438/2
typically **[1]** 445/3

**U**

U.S **[3]** 391/10 391/11
391/22
uh **[3]** 397/8 410/6
449/7
Uh-huh **[2]** 397/8
449/7
ultimate **[2]** 394/7
447/1
ultimately **[1]** 396/5
under **[2]** 393/22
440/23
underlying **[1]** 409/7
understand **[21]** 393/3

394/3 407/7 408/4
413/3 419/23 420/16
420/16 420/17 422/4
424/17 425/10 437/22
444/9 444/21 445/8
453/1 453/19 454/25
455/6 455/25
understanding **[14]**
404/23 404/25 408/17
409/5 409/24 412/11
412/20 414/16 421/22
422/23 435/21 437/21
438/3 442/6
understands **[1]**
425/11
understood **[20]**
394/11 398/5 407/10
413/6 413/8 414/3
416/15 416/16 417/13
417/18 417/22 419/25
421/18 421/25 426/1
427/15 431/2 437/7
445/2 452/23
unduly **[1]** 449/25
UNITED **[6]** 391/1
391/2 391/8 392/3
392/8 393/4
unlawful **[1]** 432/5
432/7
unless **[1]** 445/18
unreasonable **[1]**
436/16
unsettled **[1]** 445/12
until **[9]** 433/16 445/18
450/5 450/22 453/3
453/11 454/18 456/4
456/10
up **[23]** 395/7 398/20
398/22 398/24 402/14
410/14 410/20 412/13
415/11 420/6 427/5
429/2 429/18 430/5
433/24 436/19 438/6
446/18 450/5 453/10
454/20 454/21 455/1
urge **[2]** 410/4 410/4
urged **[1]** 403/11
urging **[7]** 409/13
416/18 424/24 426/9
427/11 436/25 437/3
us **[4]** 430/22 449/17
449/19 453/4
use **[2]** 411/25 446/1
used **[3]** 406/3 422/18

444/7
using **[1]** 422/20

**V**

valid **[4]** 394/12 396/21
428/15 443/19
validity **[1]** 398/25
validly **[3]** 400/6
400/11 400/25
value **[5]** 398/11 401/7
401/22 401/24 402/7
various **[1]** 444/9
VAUGHN **[11]** 391/10
392/8 392/20 392/23
403/9 420/18 428/1
438/19 440/2 447/14
455/8
versions **[1]** 403/22
versus **[1]** 392/3
very **[15]** 403/20 404/8
416/25 417/4 419/20
428/20 431/18 434/15
434/21 436/8 437/12
438/12 450/13 450/16
454/5
view **[19]** 395/19
395/24 402/21 402/22
407/19 408/7 408/8
423/18 424/19 427/7
430/10 434/10 435/25
445/17 446/16 451/22
452/10 454/25 455/16
violated **[1]** 393/16
violation **[4]** 393/19
393/21 421/2 421/3
voluntarily **[1]** 427/8
vs **[1]** 391/4

**W**

wait **[3]** 396/19 428/11
428/18
waiting **[2]** 433/14
440/8
waiver **[2]** 410/2 439/2
waives **[1]** 421/8
want **[27]** 392/15
392/17 401/6 408/6
415/7 420/1 424/5
427/8 427/22 428/1
435/9 436/7 436/9
436/14 439/11 450/17
451/2 453/8 453/14
453/14 453/20 454/15
455/11 455/13 455/13

455/14 455/16
wanted **[6]** 407/1
418/3 418/16 435/18
437/15 450/13
wants **[17]** 405/23
421/6 423/2 427/4
428/3 428/16 429/16
429/18 434/5 435/2
439/8 439/15 439/18
453/21 454/8 454/16
454/19
warrant **[1]** 455/2
was **[157]**
Washington **[3]** 391/4
391/12 391/24
wasn't **[7]** 400/6
400/25 427/10 432/13
435/15 441/19 452/2
way **[7]** 405/6 408/14
409/19 426/15 436/5
439/1 446/22
ways **[1]** 402/10
we **[147]**
we'd **[3]** 437/20 439/10
439/11
we'll **[3]** 392/21 422/8
438/11
we're **[23]** 400/19
401/5 402/9 402/16
409/5 409/6 409/9
409/18 409/24 413/2
416/12 416/18 418/7
420/22 421/3 421/12
421/14 422/12 425/14
432/24 435/7 453/10
453/10
we've **[9]** 405/5 423/20
431/13 435/22 440/5
440/14 447/6 452/9
453/15
weak **[1]** 434/14
week **[4]** 419/4 452/2
452/11 452/20
weeks **[1]** 440/1
welcome **[8]** 428/6
429/1 429/3 429/25
430/3 430/8 430/13
430/17
welcoming **[1]** 428/14
well **[14]** 396/23
400/16 401/25 403/10
407/17 408/14 413/2
418/4 420/4 422/15
425/13 442/1 450/13

**W**

**well... [1]** 456/2
**went [5]** 432/21 440/16 443/11 443/22 444/13
**were [69]**
**weren't [1]** 413/15
**what [82]**
**what's [5]** 394/8 403/9 403/23 406/10 407/19
**whatever [7]** 408/24 410/11 430/25 432/24 434/14 444/22 454/14
**whatsoever [2]** 398/13 445/21
**when [4]** 395/23 396/14 397/10 436/9
**where [15]** 392/19 400/13 403/13 403/23 405/8 405/10 420/10 434/18 440/6 440/14 446/5 450/25 453/8 455/19 455/21
**whether [34]** 393/9 394/25 395/6 404/5 404/23 405/3 406/11 408/2 408/18 411/1 411/2 411/3 411/11 412/4 412/15 413/25 417/14 417/16 421/25 424/9 429/15 431/16 431/19 432/4 434/13 443/24 444/5 449/24 453/17 453/21 454/16 454/22 455/1 455/2
**which [11]** 393/2 395/13 403/10 405/3 408/7 414/21 431/22 447/3 447/7 448/4 453/3
**while [3]** 400/20 440/8 452/7
**white [4]** 391/18 391/18 392/12 423/24
**who [2]** 392/16 400/24
**whole [4]** 414/9 438/22 441/3 446/4
**why [40]** 392/23 393/12 394/3 394/4 394/7 394/21 398/23 399/21 400/4 400/10 400/11 400/20 403/3 403/21 407/1 412/10 414/4 420/19 425/6 425/6 425/7 425/9

426/2 426/18 427/2 427/9 430/9 431/1 431/2 431/4 431/6 431/7 431/11 431/12 431/17 435/5 437/10 448/25 450/7 452/22
**will [19]** 392/16 392/19 392/21 395/18 396/8 396/9 396/10 412/19 412/19 424/3 440/8 441/25 444/20 451/19 454/9 454/19 454/20 454/21 454/21
**willful [3]** 393/20 393/21 405/13
**willfully [3]** 394/1 421/10 440/23
**willing [4]** 407/17 407/18 418/4 418/17
**within [2]** 393/8 399/6
**without [3]** 434/23 438/5 453/9
**witness [5]** 405/10 405/15 447/2 449/21 450/5
**witnesses [3]** 436/4 445/18 445/20
**won't [1]** 453/4
**word [1]** 450/23
**wording [1]** 404/21
**words [1]** 422/18
**work [5]** 405/21 416/24 422/8 427/23 438/6
**worked [3]** 400/23 422/24 433/22
**works [1]** 439/13
**worry [2]** 422/7 431/12
**worst [1]** 398/15
**would [88]**
**wouldn't [2]** 406/19 456/3
**writings [1]** 441/6
**wrong [3]** 409/21 419/1 451/20

**X**

**X-date [1]** 402/13

**Y**

**yeah [8]** 408/11 412/17 413/14 423/6 423/7 435/12 437/5 449/10
**year [1]** 392/3

**years [1]** 421/10
**yes [40]** 392/25 395/23 397/22 398/5 398/5 398/5 400/1 403/14 405/6 410/18 410/18 411/9 411/14 412/8 413/3 414/6 416/9 416/11 422/11 423/24 428/13 428/22 431/15 433/10 434/4 434/15 436/2 436/13 437/18 447/15 447/17 447/20 447/24 448/10 448/16 449/23 450/3 450/7 451/9 452/17
**yesterday [3]** 392/20 410/15 438/6
**yet [2]** 425/17 450/16
**you [99]**
**you're [5]** 397/14 397/20 401/18 421/2 421/2
**you've [1]** 451/5
**your [48]** 392/2 392/7 392/11 392/25 398/8 399/15 399/19 402/21 403/3 403/8 403/9 406/3 407/7 407/14 407/19 407/23 408/25 410/4 410/14 411/9 411/14 413/4 413/5 416/15 417/8 419/23 420/2 420/3 420/8 424/6 424/7 424/16 425/11 427/13 429/7 430/2 430/16 436/8 436/22 437/20 438/20 440/11 447/15 449/15 450/3 452/15 453/1 455/7
**Your Honor [34]** 392/2 392/7 392/11 392/25 398/8 399/15 399/19 403/3 403/8 407/14 407/23 408/25 411/9 411/14 413/5 416/15 417/8 420/3 420/8 424/6 424/7 424/16 429/7 430/2 430/16 436/8 436/22 437/20 438/20 440/11 447/15 450/3 452/15 455/7
**yourselves [1]** 392/6

**Z**

**Zelda [1]** 391/15

```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
       * * * * * * * * * * * * * * * *   )
 3    UNITED STATES OF AMERICA,          )   Criminal Action
                                         )    No. 21-00670
 4                   Plaintiff,          )
                                         )
 5      vs.                              )   AFTERNOON SESSION
                                         )
 6    STEPHEN K. BANNON,                 )   Washington, D.C.
                                         )   July 19, 2022
 7                   Defendant.          )   1:03 p.m.
                                         )
 8      * * * * * * * * * * * * * * *   )

 9

10                 TRANSCRIPT OF JURY TRIAL - DAY 2
                BEFORE THE HONORABLE CARL J. NICHOLS,
11                  UNITED STATES DISTRICT JUDGE

12

13    APPEARANCES:

14    FOR THE GOVERNMENT:       AMANDA R. VAUGHN, ESQ.
                                MOLLY G. GASTON, ESQ.
15                              UNITED STATES ATTORNEY'S OFFICE
                                  FOR THE DISTRICT OF COLUMBIA
16                              555 Fourth Street, Northwest
                                Eleventh Floor
17                              Washington, D.C. 20530

18

      FOR THE DEFENDANT:        MATTHEW E. CORCORAN, ESQ.
19                              RIANE A. WHITE, ESQ.
                                SILVERMAN, THOMPSON, SLUTKIN, WHITE
20                              400 East Pratt Street
                                Suite 900
21                              Baltimore, Maryland 21202

22                              DAVID I. SCHOEN, ESQ.
                                LAW OFFICES OF DAVID I. SCHOEN
23                              2800 Zelda Road
                                Suite 100-6
24                              Montgomery, Alabama 36106

25
```

```
 1    REPORTED BY:              LISA EDWARDS, RDR, CRR
                                Official Court Reporter
 2                              United States District Court for the
                                 District of Columbia
 3                              333 Constitution Avenue, Northwest
                                Room 6706
 4                              Washington, D.C. 20001
                                (202) 354-3269
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          I N D E X

 2

 3    The Court's Preliminary Instruction to the Jury    Page 497

 4    Opening Statements by Ms. Vaughn                    Page 512

 5    Opening Statements by Mr. Corcoran                  Page 524

 6

 7

 8                              Direct      Cross         Red.

 9

10    WITNESSES FOR THE GOVERNMENT:

11    Kristin Amerling               549

12

13
      EXHIBITS RECEIVED IN EVIDENCE                       PAGE
14
      Government's Exhibit No. 1                          558
15    Government's Exhibit No. 2                          575

16

17

18

19

20

21

22

23

24

25
```

1              THE COURTROOM DEPUTY:  Good afternoon.  We are now

2    back on the record.

3              THE COURT:  Thank you, Ms. Lesley.

4              I had a note from the Government just before we

5    came in here about its proposal for how we might proceed.

6    Why don't we start with the Government about the next steps

7    unless, Mr. Corcoran, you'd like to --

8              MR. CORCORAN:  Yeah.  I think in the interest of

9    efficiency, you probably want to hear from my side first.

10             THE COURT:  About the Government's proposal?

11             MR. CORCORAN:  Yes.

12             THE COURT:  Okay.

13             MR. CORCORAN:  Before we broke, we were discussing

14   the introduction into evidence of Government's Exhibits 5,

15   6, 7, 8 and 9.  And there was some discussion about whether

16   Mr. Schoen misspoke, which he never does.  I misunderstood

17   or misheard.  But in the interim, we've looked at the

18   exhibits.  We've looked at the redactions.  And I think

19   it'll cut short our discussion on this topic if I simply say

20   that, obviously, when the exhibits were first introduced, we

21   made and preserved an objection to the exhibits as hearsay.

22             The Court based on a number of factors decided to

23   allow the letters in.  These are 5, 6, 7, 8 and 9, the

24   Thompson and Costello letters, either in their entirety

25   unredacted or in redacted form.

1          And we understand that in order to get them in

2     redacted form we'd have to make some sort of a proffer at

3     this point this time, which we're not prepared to do.  We

4     understand that the import of our position now is that the

5     letters would be admitted wholesale, not retail; in other

6     words, that they'd be admitted without redactions.  So I say

7     that simply because I don't know that it makes -- it may cut

8     short the discussion of the issue.

9          Thank you.

10          THE COURT:  What that would mean, then, just so I

11     have it, Mr. Bannon is not prepared at this time to limit

12     the potential proffers that he might make later about the

13     facts that could be relevant to whether he believed the

14     return dates were malleable, as we're talking about.  I know

15     it's more precise than that.

16          And as a result, then, because I thought there had

17     been a limitation or at least a potential limitation which

18     made discussion of privilege irrelevant, then that would

19     basically take off the table for present purposes my view

20     that the redactions were warranted because that proffer was

21     off the table or more limited.

22          As a result, then, that would mean the exhibits --

23     and I understand you've preserved your objections.  But as a

24     result, then, the exhibits would be from your perspective --

25     mine, too -- admitted in their entirety.

 1              MR. CORCORAN:  Correct, your Honor.

 2              THE COURT:  Okay.  Thank you.

 3              MR. CORCORAN:  Thank you.

 4              THE COURT:  Ms. Vaughn?

 5              MS. VAUGHN:  I just want to make sure, your Honor,

 6      that we're not going to end up in a position where at the

 7      close of the Government's case the Defendant stands up and

 8      says:  Well, the Government's opened the door to all these

 9      inadmissible defenses, because that is not what the

10      Government is offering these for.

11              THE COURT:  I understand very well what the

12      Government is offering the letters for in their -- frankly,

13      what would have been their redacted form or in their

14      unredacted form.

15              MS. VAUGHN:  To the Government, there's really no

16      distinction in the two versions of them for our purposes.

17              THE COURT:  Understood.

18              So as a result, my decision, then, is that these

19      letters are admissible in their current form because of the

20      discussion we had -- I mean, in their unredacted form and

21      because of the reasons we discussed earlier today.

22              What is the Government's view, then, about next

23      steps?  Does it think its proposal in its email is no longer

24      necessary?

25              MS. VAUGHN:  I think if we are ready --

1          THE COURT:  Just so the record is clear, it was an

2     email to chambers.  I think it needs to be on the record.

3          The Government had proposed a series of redactions

4     to the letters that immediately after lunch, which is what

5     we're doing now, that we would first take up the

6     peremptories; that we get to the 14 seated jurors, so to

7     speak; that we then release the entire jury pool for the

8     day, with instructions to those 14 people to come back

9     tomorrow to be sworn in the morning, instructed in the

10    morning; and trial would open in the morning, with a

11    discussion this afternoon about the issues that we were

12    discussing today.

13         In light of where we are, in light of what we just

14    discussed with Mr. Corcoran, do you think that that's no

15    longer necessary?

16         MS. VAUGHN:  It doesn't sound like we have any

17    other preliminary matters to resolve.  So the Government

18    doesn't see a reason to delay.

19         An additional issue that we do want to raise is we

20    are still concerned based on what -- and I don't know if

21    they plan to provide an opening.  They may not.  If they do,

22    we are concerned that they will improperly suggest to the

23    jury this waiver theory that we don't think is valid under

24    the law.  And we would just ask that they refrain from doing

25    that to the extent they plan to give an opening.

1          THE COURT:  Let me just make sure I understand

2     what you mean by "waiver."

3          The theory that the Committee had waived a

4     default?  Not that the Committee had by its actions and

5     words suggested that the return date was open, malleable,

6     whatever, but had actually waived what would have been a

7     default?

8          MS. VAUGHN:  I think -- yes.  And I think to the

9     extent that they want to point to an October 19th letter

10    where the Committee says, We still would like you to comply

11    with the subpoena, to the point that they want to point to

12    that as evidence that the Committee never viewed a default

13    to have occurred I think is improper.

14          THE COURT:  Why?

15          MS. VAUGHN:  Because it's a suggestion -- because

16    it doesn't go to what the facts were at the time of the

17    default.  It just goes to an additional effort to --

18          THE COURT:  It seems to me those are different

19    issues.  That argument is even an October 19th letter

20    wouldn't be relevant to the question of whether there was a

21    default, not whether they were waiving it.

22          MS. VAUGHN:  It could be relevant --

23          THE COURT:  What if the Committee had said on

24    October 19th, you know, we're going to extend the return

25    date by another week or had said something very ambiguous

 1   about the return date?  Why wouldn't that be relevant even
 2   though it was after October 18th?
 3            MS. VAUGHN:  If he failed to comply with the
 4   subpoena by the deadline, he failed to comply with the
 5   subpoena.
 6            THE COURT:  I know that's your argument.  But
 7   you're saying it would be inadmissible that the Committee
 8   said the day after the return date, Hey, we're extending the
 9   return date by a week?  That can't be right.
10            MS. VAUGHN:  Well --
11            THE COURT:  Inadmissible?  I know your argument
12   would be that the jury should reach a different conclusion.
13            MS. VAUGHN:  No.  That's not the statement that's
14   in the letter.
15            I think my concern is that --
16            THE COURT:  I understand.  But the temporal nature
17   of the letter doesn't determine its admissibility or not.
18            MS. VAUGHN:  That's true.
19            THE COURT:  It seems to me just to be very clear.
20   There are two issues -- or three, right?  One is:  Was there
21   a default?  Another is:  Did Mr. Bannon default deliberately
22   and intentionally based on what was in his mind?  And then
23   another one might be whether, notwithstanding those things,
24   the Committee waived the default.
25            MS. VAUGHN:  Yes, which -- that doesn't exist in

```
 1         the law.

 2                   THE COURT:  That's what you want me to preclude.

 3         At least that's the thing you most want me to preclude the

 4         Defendant from arguing in his opening?

 5                   MS. VAUGHN:  From suggesting.

 6                   THE COURT:  From suggesting.

 7                   MS. VAUGHN:  Yes.

 8                   THE COURT:  I'll ask the Defendant if they intend

 9         to do that.

10                   Mr. Corcoran or Mr. Schoen?

11                   MR. SCHOEN:  If the only question is whether the

12         Defendant intends to raise it in the opening, the answer is

13         no.

14                   We do believe it's a valid defense in the case and

15         we would be able to pursue that.  We should be able to

16         pursue that defense.

17                   THE COURT:  Thank you.  For purposes of the

18         opening, it's irrelevant.

19                   Can we do the peremptories?  Are we ready to do

20         peremptories?

21                   So everybody has the list of qualified jurors.

22         Correct?

23                   MS. VAUGHN:  Yes, your Honor.

24                   THE COURT:  My plan, absent objection, is to not

25         do a snake method, but is to have the Government strike,
```

1    then Defendant, then Government, then Defendant, then

2    Government, then Defendant.  That will be the six.  We will

3    then have 16 jurors left.  They will be in a particular

4    order.  We'll know what the two alternate seats are and then

5    we will take those up after that.

6             So Ms. Vaughn?  Ms. Lesley?

7             THE COURTROOM DEPUTY:  Do you want me to give them

8    out?

9             THE COURT:  Yes.

10            THE COURTROOM DEPUTY:  (Tenders document to

11   counsel.)

12            MR. SCHOEN:  Judge, may I ask a question?

13            THE COURT:  Yes.

14            MR. SCHOEN:  I'm just thinking of logistics

15   because I don't want to interrupt once the jury is put in

16   the box.

17            There are still, as the Court is aware, certain

18   exhibits to which there are objections, Government's

19   exhibits to which there are objections that have been

20   lodged.  The question is if the Government intends to use

21   them in their opening.  If not, we don't need to address it

22   now.

23            THE COURT:  I thought we resolved that at the last

24   hearing.  We had a conversation about whether and to what

25   extent the Government was going to use its exhibits.  The

1    Government made a series of representations, and I held that

2    that was adequate from my perspective.

3            MR. SCHOEN:  The Government made a filing, you

4    know, yesterday that -- the Court had ordered us to do a

5    five-page filing on the hearsay letter issues.  And the

6    Government decided to --

7            THE COURT:  But we had resolved -- right.  I

8    wanted that to know about the hearsay questions about the

9    letters.

10           MR. SCHOEN:  Right.

11           THE COURT:  But we resolved the question of

12   opening during the pretrial conference.

13           MR. SCHOEN:  Okay.

14           THE COURT:  It's done.

15           MR. SCHOEN:  I don't know what the status, then,

16   of what the Government --

17           THE COURT:  I expect the Government to act

18   consistent with its representations during the pretrial

19   conference.

20           MR. SCHOEN:  At some point I need to be able to

21   address the Government's filing yesterday.  I was just going

22   to -- I thought we were just going to address it today

23   orally.

24           THE COURT:  Are you talking about the simultaneous

25   filings, essentially, that I had ordered simultaneously?

1          MR. SCHOEN:  That the Court ordered on the hearsay

2     letters specifically.  I looked at the transcript again.

3     The Government decided to raise three other --

4          THE COURT:  Oh, about the other things.  Okay.

5     Not just the Costello letters.  You're talking about the

6     other letters.

7          MR. SCHOEN:  Correct.  I'm talking about the

8     telephone --

9          THE COURT:  The responses to the Defendant's other

10     objections that are not about the Costello letters?

11          MR. SCHOEN:  Yes, sir.

12          THE COURT:  I understand.

13          Let me hear from the Government about its

14     intention with respect to those other documents in its

15     opening.

16          MS. VAUGHN:  The Government only intends to refer

17     to the letters back and forth between Mr. Costello and the

18     Committee in its opening.

19          THE COURT:  And consistent with the way that you

20     represented you would do so during the pretrial conference?

21          MS. VAUGHN:  We don't plan to show them.  The only

22     reference -- I'm doing the opening.  The only reference I

23     intend to make is that the Defendant sent letters refusing

24     to comply, that the excuse he gave was a privilege.  I don't

25     plan to go into the details of what it is, other than to say

```
 1        that the Committee understood that to be a claim that he had
 2        a reason he didn't have to comply; that the Committee
 3        responded that they were rejecting his reason and he needed
 4        to comply; that the Defendant kept going back.  That's all I
 5        intend to do.
 6                THE COURT:  That's fine for purposes of the
 7        opening.
 8                Mr. Schoen?
 9                MR. SCHOEN:  Just to be clear, my only question
10        was about the Costello telephone records, the website posts
11        and the Schoen statement.
12                THE COURT:  Right.  I'm hearing that the
13        Government intends to not mention those at all during its
14        opening.
15                MR. SCHOEN:  That's it.  Thank you, your Honor.
16                THE COURT:  Correct?
17                MS. VAUGHN:  That's correct.  That is correct,
18        your Honor.
19                THE COURT:  Okay.  Fair enough.
20                So the Government has a peremptory to exercise.
21                MS. GASTON:  We'll write it down.
22                THE COURT:  You're going to write it down.  I'm
23        going to look at it and then we will communicate it.  There
24        have been times in which information was communicated that
25        perhaps shouldn't have been.
```

```
1              MS. VAUGHN:  (Tenders document to the Court.)

2              THE COURT:  The Government has exercised its first

3     peremptory on Juror 475.

4              MR. CORCORAN:  (Tenders document to the Court.)

5              THE COURT:  Mr. Bannon has exercised his first

6     peremptory on Juror 1391.

7              MS. GASTON:  (Tenders documents to the Court.)

8              THE COURT:  The Government has exercised its

9     second peremptory on Juror 1913.

10             MR. CORCORAN:  (Tenders document to the Court.)

11             THE COURT:  Mr. Bannon has exercised his second

12    peremptory on Juror 257.

13             MS. GASTON:  (Tenders document to the Court.)

14             THE COURT:  The Government has exercised its third

15    peremptory on Juror 749.

16             MR. CORCORAN:  (Tenders document to the Court.)

17             THE COURT:  Mr. Bannon has exercised his third

18    peremptory on Juror No. 1117.

19             So what I'm going to do now is I'm going to run

20    down the list of the jurors that have not -- that were

21    qualified and have not yet been stricken.  I'm going to note

22    the chair or juror number -- I mean, the juror and the

23    courtroom number that that juror corresponds to.  And then

24    we can take up whether anyone will be exercising an

25    alternate strike.
```

1          So here's what I have:  I have Juror No. 1104 is

2    sitting in Seat 1.

3          1371 is in Seat 2.

4          0014 is in Seat 3.

5          1061 is in Seat 4.

6          122 is in Seat 5.

7          1041 is in Seat 6.

8          544 is in Seat 7.

9          1798 is in Seat 8.

10          1053 is in Seat 9.

11          1957 is in Seat 10.

12          93 is in Seat 11.

13          540 is in Seat 12.

14          MS. VAUGHN:  Your Honor, I think --

15          THE COURT:  Yes.  I think I must have -- I

16    apologize.  I made a mistake.  My apologies.  Let me go back

17    a bit.  I note it as well.  I apologize.

18          So does everybody agree that Seat 6 is 1041?

19          MS. VAUGHN:  Yes, your Honor.

20          MR. CORCORAN:  Yes, your Honor.

21          THE COURT:  And that's where I think I just missed

22    one.  I apologize for that.

23          1425 is Seat 7.  Correct?  Well, I'll keep going.

24    Then we can discuss whether I've gotten something wrong

25    again.

1          1425 is Seat 7.

2          Juror No. 544 is Seat 8.

3          Juror 1798 is Seat 9.

4          Juror 1053 is Seat 10.

5          Juror 1957 is Seat 11.

6          Juror 93, Seat 12.

7          Juror No. 540, Seat 13.

8          Juror 764, Seat 14.  That's obviously the 14

9     jurors and alternates, if no alternate strikes were

10    exercised.

11         And then Juror 33 is Seat 15, Alternate-Alternate

12    1.  And Juror 1427 is alternate -- is No. 16, Seat 16,

13    Alternate-Alternate Juror No. 2.

14         MR. CORCORAN:  Could you please repeat the last

15    two?

16         THE COURT:  Yes.  So I have 764 was 14.  Then I

17    have 33 as 15 and 1427 as 16.

18         Does everybody agree with the juror numbers and

19    where they correspond to the seats that I have identified?

20         MS. VAUGHN:  Yes, your Honor.

21         MR. CORCORAN:  Yes, your Honor.

22         THE COURT:  So obviously -- well, here's what I

23    would like to do:  I'd like the parties to spend two minutes

24    thinking about whether they would seek to exercise alternate

25    strikes.  I don't want to disclose on the public record the

 1    seats that are the alternates.  We will go on the husher to

 2    discuss whether either party wants to exercise a strike and,

 3    if so, as to which alternate.  Okay?

 4              (Counsel confer privately.)

 5              THE COURT:  Is everyone ready?  We're going to go

 6    under seal with the husher on and we'll do that.

 7              (Whereupon, the following proceedings were had at

 8    sidebar:)

 9              THE COURT:  Can everyone hear me?

10              MS. VAUGHN:  Yes, your Honor.

11              THE COURT:  Ms. Vaughn, is the Government going to

12    exercise an alternate peremptory?

13              MS. VAUGHN:  We are, your Honor.  We would like to

14    strike Juror No. 33.

15              THE COURT:  So the Government has effectively

16    exercised what we discussed yesterday, which is the striking

17    of the alternate-alternate.  Correct?

18              MS. VAUGHN:  Correct.

19              THE COURT:  So Juror 33 is excluded as an

20    alternate possibility.

21              MS. VAUGHN:  We'll write it on the paper for the

22    Court.

23              THE COURT:  That's fine.  Thank you.  Yes.

24              But the record will reflect that the Government

25    has exercised its alternate strike to strike Juror 33, who

 1    was sitting in Seat 15, so to speak.

 2              Mr. Corcoran?

 3              MR. CORCORAN:  Do you want to let us know which

 4    alternate goes into 15, your Honor?  Or do you --

 5              THE COURT:  I'm not sure what you mean.  There's

 6    only one alternate.  So they have excluded 15 as the

 7    possibility of being an alternate who would substitute in if

 8    you were going to strike one of the two existing alternates.

 9              As a reminder, of the 14 people in the list, the

10    alternate seats currently held in these alternate seats are

11    9 and 12.  9 is held by Juror 1798 and 12 is held by Juror

12    93.

13              Rather than striking either of those two

14    alternates, the Government has struck Juror 15, who is no

15    longer available to substitute as an alternate if he were

16    going to strike one of those two alternates that I

17    mentioned.  This is the issue that you and I discussed

18    yesterday in court.

19              MR. CORCORAN:  And can the Court confirm who

20    currently sits in Seat 12?

21              THE COURT:  Yes.  That is Juror 93.

22              Does everyone agree it's Juror 93?

23              MS. VAUGHN:  Yes, your Honor.

24              THE COURT:  Mr. Corcoran, do you agree it's Juror

25    93?

```
1                  MR. CORCORAN:  Yes.

2                  If we could have one moment.

3                  THE COURT:  Yes.

4                  (Counsel confer privately.)

5                  THE COURT:  Can everyone hear one another?

6                  MS. VAUGHN:  Yes, your Honor.

7                  THE COURT:  Mr. Corcoran?

8                  MR. CORCORAN:  Yes.

9                  Your Honor, I think what we're going to do has the

10       same effect.  But we are happy with the 14 who are in the

11       box, and our strike would be against No. 16, who is not in

12       the box.

13                  THE COURT:  I think that is exactly right.  You

14       could either strike 16, but there are no peremptories left.

15       Let's just call it.  You have exercised your strike against

16       16.

17                  MR. CORCORAN:  Very well, your Honor.

18                  THE COURT:  We are left with, therefore, the 14

19       who are in the box.  So we can now -- again, a reminder:  No

20       one is to repeat the alternate seats, what they are exactly.

21                  Can everyone hear me still?

22                  MS. VAUGHN:  Yes, your Honor.

23                  THE COURT:  But the 14, the original 14, so to

24       speak, that is our jury.  Okay?  We're going to go back on

25       the record.
```

1              THE COURTROOM DEPUTY:  Your Honor, could you just

2       say the four-digit juror number of Juror No. 16, please?

3              THE COURT:  Sure.  That four-digit juror number of

4       Juror No. 16 is 1427.  And that person, who could have been

5       available as an alternate if there had been an alternate

6       strike exercised as to jurors, the people sitting in Seats 9

7       and 12, has been -- I'll just call it struck by Mr. Bannon.

8       And we were therefore left with the 14 seated jurors, as I

9       had already indicated on the record, but I will do so again

10      when we go back into the public nonsealed portion of this

11      hearing.  Okay?

12             Thank you.

13             (Whereupon, the following proceedings were had in

14      open court:)

15             THE COURT:  We are back from under seal.

16             We have a jury.  Again, so the jury in order, just

17      so the record is clear, I will read again the juror number

18      and seat number, so to speak.

19             Juror No. 1104 is in Seat 1.

20             1371, Seat 2.

21             14, Seat 3.

22             Juror 1061, Seat 4.

23             Juror 122, Seat 5.

24             Juror 1041, Seat 6.

25             Juror 1425, Seat 7.

```
 1                        Juror 544, Seat 8.

 2                        Juror 1798, Seat 9.

 3                        Juror 1053, Seat 10.

 4                        Juror 1957, Seat 11.

 5                        Juror 93, Seat 12.

 6                        Juror No. 540, Seat 13.

 7                        And Juror 764, Seat 14.

 8                        Does everyone agree that that is our jury and the

 9              seats for the trial?  Ms. Vaughn?

10                        MS. VAUGHN:  Yes, your Honor.

11                        THE COURT:  Mr. Corcoran?

12                        MR. CORCORAN:  Yes, your Honor.

13                        THE COURT:  Thank you.

14                        (Confers with the courtroom deputy privately.)

15                        THE COURT:  We're going to do a 10-, 15-minute

16              recess so that those 14 jurors can be gathered and put in

17              the box and so we can let the other people go.  So we'll be

18              back on the record at approximately 1:55, at which time I

19              will swear the jury; I will give the pretrial instructions;

20              and then, depending on how long they go -- and they are kind

21              of long -- but depending on how long they go, we may start

22              with openings right there or take a brief recess before the

23              openings.  Okay?

24                        Thank you, counsel.

25                        (Thereupon a recess was taken, after which the
```

1    following proceedings were had:)

2              THE COURTROOM DEPUTY:  Your Honor, we are now back

3    on the record.

4              THE COURT:  Thank you, Ms. Lesley.

5              My understanding is that the eight jurors out of

6    the 22 who are no longer needed have been excused.  We have

7    our 14 jurors waiting to come in the courtroom.

8              So, Ms. Lesley, could you please escort those

9    jurors in here.  We will swear them in and then I will do

10   the preliminary instructions.

11             (Whereupon, the jury entered the courtroom at 2:16

12   p.m. and the following proceedings were had:)

13             THE COURT:  Ms. Lesley, could you please swear the

14   jury.

15             (Whereupon, the jury was duly sworn and

16   impaneled.)

17             THE COURTROOM DEPUTY:  Please be seated.

18             THE COURT:  Thank you all.  Thank you for your

19   patience.  Thank you for your service.

20             I'm going to give you some preliminary

21   instructions.  Please listen carefully to these

22   instructions.  I will be giving you other instructions at

23   the end of this trial.

24             But before we begin the trial, I want to explain

25   some of the legal rules that will be important in this

The Court's Preliminary Instructions to the Jury

1    trial.  I want to emphasize that these remarks are not meant

2    to be a substitute for the detailed instructions that I will

3    give at the end of the trial just before you start your

4    deliberations.  These preliminary instructions are intended

5    to give you a sense of what will be going on in the

6    courtroom and what your responsibilities as jurors will be.

7         When you took your seats -- and I can see some of

8    you have them in your hand already -- you probably noticed

9    that each of you had a notebook and pencil waiting for you.

10   That is because I permit jurors to take notes during trial

11   if they wish.  Whether you take notes or not is entirely up

12   to you.  Many people find that taking notes helps them

13   remember testimony and evidence; others find it distracts

14   them from listening to the witnesses.

15        You will be permitted to take your notebooks back

16   with you into the jury room during deliberations.  You

17   should remember, however, that your notes are only an aid to

18   your memory.  They are not evidence in the case and they

19   should not replace your own memory of the evidence.  Those

20   jurors who do not take notes should rely on their own memory

21   of the evidence and should not be influenced by other

22   jurors' notes.

23        Other than during your deliberations, the

24   notebooks will remain locked in the courtroom during

25   recesses and overnight.  You will not be able to take the

The Court's Preliminary Instructions to the Jury

1    notebooks with you as you come and go and you will not be

2    permitted to take them home with you overnight.  At the end

3    of the trial, when you come back to the courtroom to deliver

4    your verdict, your notebooks will be collected and the pages

5    torn out and destroyed.  No one, including myself, will ever

6    look at any notes you have taken.  So you may feel free to

7    write whatever you wish.

8         You have probably noticed that there are 14 of you

9    sitting in the jury box.  Only 12 of you will retire to

10   deliberate in this matter.  Before any of you even entered

11   the courtroom, we randomly selected the alternates' seats.

12   I will not disclose who the alternate jurors are until the

13   end of my final instructions just before you begin your

14   deliberations.  As any seat might turn out to be an

15   alternate seat, it is important that each of you think of

16   yourselves as regular jurors during this trial and that all

17   of you give this case your fullest and most serious

18   attention.

19        At the beginning of the jury selection process,

20   you were introduced to some witnesses in person.  Others

21   were identified to you only by name.  If at any time during

22   this trial you suddenly realize that you recognize or might

23   know any witness, lawyer, someone who is mentioned in the

24   testimony or evidence or anyone else connected with this

25   case in any way, you should raise your hand immediately and

The Court's Preliminary Instructions to the Jury

1    ask to speak with me.

2        So now let me explain briefly some of the

3    procedures we will follow and some of the rules of law that

4    will be important to this case.  This is a criminal case

5    that began when the grand jury returned an indictment.

6        As I previously told you, the indictment in this

7    case charges the Defendant, Stephen K. Bannon, with two

8    counts of contempt of Congress.  In 2021, the Select

9    Committee to Investigate the January 6th Attack on the U.S.

10    Capitol, a Committee of the U.S. House of Representatives,

11    was conducting an investigation into the January 6, 2021,

12    attack on the U.S. Capitol.

13        According to the indictment, on September 23,

14    2021, the Select Committee issued a subpoena to the

15    Defendant directing him to provide records relating to its

16    investigations by October 7, 2021, and to appear and give

17    testimony at a deposition on October 14, 2021.

18        The indictment alleges that the Defendant

19    willfully defaulted by not providing testimony on October

20    14, 2021, and by not producing records as required by

21    October 18, 2021.

22        The indictment alleges that this failure to comply

23    was deliberate and intentional.

24        You should understand clearly that the indictment

25    that I just summarized is not evidence.  The indictment is

The Court's Preliminary Instructions to the Jury

1    just a formal way of charging a person with a crime in order

2    to bring him to trial.  You must not think of the indictment

3    as any evidence of the guilt of the Defendant or draw any

4    conclusion about the guilt of the Defendant just because he

5    has been indicted.

6         At the end of the trial, you will have to decide

7    whether or not the evidence presented has convinced you

8    beyond a reasonable doubt that the Defendant committed the

9    offenses with which he has been charged.

10        The Defendant, as I've mentioned, has been charged

11   with two counts of contempt of Congress.  To prove contempt

12   of Congress, the Government must prove beyond a reasonable

13   doubt each of the elements of this offense.

14        The elements of contempt of Congress are:  First,

15   that the Defendant was subpoenaed by the Select Committee to

16   provide testimony or produce papers; second, that the

17   subpoena sought testimony or information pertinent to the

18   investigation that the Select Committee was authorized to

19   conduct; third, that the Defendant failed to comply or

20   refused to comply with the subpoena; and, fourth, that the

21   Defendant's failure or refusal to comply was willful.  I

22   will provide more details about each of these elements

23   before you retire to deliberate at the end of trial.

24        Every defendant in a criminal case is presumed to

25   be innocent.  This presumption of innocence remains with the

The Court's Preliminary Instructions to the Jury

1   Defendant throughout the trial unless and until he is proven

2   guilty beyond a reasonable doubt.

3          The burden is on the Government to prove the

4   Defendant guilty beyond a reasonable doubt, and that burden

5   of proof never shifts throughout the trial.  The law does

6   not require a defendant to prove his innocence or to produce

7   any evidence.  If you find that the Government has proven

8   beyond a reasonable doubt every element of a particular

9   offense with which the Defendant is charged, it is your duty

10  to find him guilty of that offense.

11         On the other hand, if you find that the Government

12  has failed to prove any element of a particular offense

13  beyond a reasonable doubt, you must find the Defendant not

14  guilty of that offense.

15         As I explain how the trial will proceed, I will

16  sometimes refer to the Government on the one hand and the

17  defense or the Defendant on the other.  When I mention the

18  Government, I am referring to Assistant United States

19  Attorneys Ms. Vaughn and Ms. Gaston.  When I mention the

20  Defendant or the defense, I'm referring either to the

21  Defendant, Mr. Bannon, or to his attorneys, Mr. Schoen,

22  Mr. Corcoran or Ms. White.

23         As the first step in this trial, the Government

24  and the Defendant will have an opportunity to make opening

25  statements.  The Defendant may make an opening statement

The Court's Preliminary Instructions to the Jury

1    immediately after the Government's opening statement or he

2    may wait until the beginning of the Defendant's case or he

3    may choose not to make an opening statement at all.  You

4    should understand that the opening statements are not

5    evidence.  They are only intended to help you understand the

6    evidence that the lawyers expect will be introduced.

7         After the opening statement or statements, the

8    Government will put on what is called its case in chief.

9    This means that the Government will call witnesses to the

10   witness stand and ask them questions.  This is called direct

11   examination.  When the Government is finished, the defense

12   may ask questions of those witnesses.  This is called

13   cross-examination.  When the defense is finished with that,

14   the Government may have the opportunity to do a brief

15   redirect examination.

16        After the Government has presented all of its

17   evidence, the Defendant may present evidence, but he is not

18   required to do so.  The law does not require a defendant to

19   prove his innocence or to produce any evidence.  If the

20   defense does put on evidence, the defense will call

21   witnesses to the stand and ask questions on direct

22   examination.  The Government may or will cross-examine, and

23   the defense may have brief redirect examination.

24        Which the defense has finished, the Government may

25   offer a rebuttal case, which would operate along the same

The Court's Preliminary Instructions to the Jury

1    lines as its case in chief.

2          At the end of all the evidence, I will instruct

3    you once more on the rules of law that you are to apply in

4    your deliberations when you retire to consider your verdict

5    in this case.  Then each side will have a chance to present

6    closing arguments in support of its case.

7          The statements of the lawyers in their closing

8    arguments, just as in their questions and in their opening

9    statements, are not evidence in this case.  They are

10   intended only to help you understand the evidence and what

11   each side claims the evidence shows.

12         Finally, at the end of the closing arguments, I

13   will have a few additional instructions for you before you

14   begin your deliberations.

15         I want to briefly describe my responsibilities as

16   the judge and your responsibilities as the jury.  My

17   responsibility is to conduct this trial in an orderly, fair

18   and efficient manner, to rule on legal questions that come

19   up in the course of the trial and to instruct you about the

20   law that applies to this case.  It is your sworn duty as

21   jurors to accept and apply the law as I state it to you.

22         Your responsibility as jurors is to determine the

23   facts in the case.  You, and only you, are the judges of the

24   facts.  You alone determine the weight, the effect and the

25   value of the evidence as well as the credibility or

The Court's Preliminary Instructions to the Jury

1    believability of the witnesses.  You must consider and weigh

2    the testimony of all witnesses who appear before you.  You

3    alone must decide the extent to which you believe any

4    witness.

5            You must pay very careful attention to the

6    testimony of all of the witnesses because you will not have

7    any transcripts or summaries of the testimony available to

8    you during your deliberations.  You will have to rely

9    entirely on your memory and your notes if you choose to take

10   any.

11           During this trial, I may rule on motions and

12   objections by the lawyers, make comment to the lawyers,

13   question the witnesses and instruct you on the law.  You

14   should not take any of my statements or actions as any

15   indication of any opinion about how you should decide the

16   facts.

17           If you think that somehow I've expressed or even

18   hinted at any opinion as to the facts in this case, you

19   should disregard that.  The verdict in this case is your

20   sole and exclusive responsibility.

21           You may consider only the evidence properly

22   admitted in this case.  That evidence includes the sworn

23   testimony of witnesses and the exhibits admitted into

24   evidence.  Sometimes a lawyer's question suggests the

25   existence of a fact, but the lawyer's question alone is not

The Court's Preliminary Instructions to the Jury

1    evidence.  If the evidence includes anything other than

2    testimony and exhibits, I will instruct you about these

3    other types of evidence when they are admitted during the

4    trial.

5            During the trial, if the Court or a lawyer makes a

6    statement or asks a question that refers to evidence that

7    you remember differently, you should rely on your memory of

8    the evidence during your deliberations.

9            The lawyers may object when the other side asks a

10    question, makes an argument or offers evidence that the

11    objecting lawyer believes is not properly admissible.  You

12    must not hold such objections against the lawyer who makes

13    them or the party he or she represents.  It is the lawyer's

14    responsibility to object to evidence that they believe is

15    not admissible.

16            If I sustain an objection to a question asked by a

17    lawyer, the question must be withdrawn and you must not

18    guess or speculate what the answer to the question would

19    have been.  If a question is asked and answered and I then

20    rule that the answer should be stricken from the record, you

21    must disregard both the question and the answer in your

22    deliberations.  You should follow this same rule if any of

23    the written documents or exhibits are stricken.

24            You are not permitted to -- I mentioned some of

25    this last night.  You are not permitted to discuss this case

The Court's Preliminary Instructions to the Jury

1    with anyone until this case is submitted to you for your

2    decision at the end of my final instructions.  This means

3    that until the case is submitted to you, you may not talk

4    about it even with your fellow jurors.  It is because we

5    don't want you making decisions until you've heard all the

6    evidence and the instructions of law.

7         In addition, you may not talk about the case with

8    anyone else.  It should go without saying that you may not

9    also write about the case electronically, through any blog,

10   posting or communication, including social networking sites

11   such as Facebook or Twitter until you have delivered your

12   verdict and the case is over.

13        This is all because you must decide the case based

14   on what happens here in the courtroom, not on what someone

15   may or may not tell you outside the courtroom.  I'm sure

16   that when we take our first recess you will call home --

17   maybe you already have -- or work and tell them that you

18   have been selected for a jury.  They'll undoubtedly ask you

19   what kind of case you're sitting on.  You may tell them it's

20   a criminal case, but nothing else.

21        Now, when the case is over, you may discuss any

22   part of it with anyone you wish, but until then you may not

23   do so.

24        Although it's a natural human tendency to talk

25   with people with whom you may come into contact, you must

The Court's Preliminary Instructions to the Jury

1    not talk to any of the parties, their attorneys or any

2    witnesses in this case during the time you serve on this

3    jury.  If you encounter anyone connected with the case

4    outside the courtroom, you should avoid having any

5    conversation with them, overhearing their conversation or

6    having any contact with them at all.

7           For example, if you find yourself in a courthouse

8    corridor, elevator or any other location where the case is

9    being discussed by attorneys, parties, witnesses or anyone

10   else, you should immediately leave the area to avoid hearing

11   such discussions.  If you do overhear a discussion about the

12   case, you should report that to me as soon as you can.

13   Finally, if you see any of the attorneys or witnesses

14   involved in the case and they turn and walk away from you,

15   they're not being rude.  They're merely following the same

16   instruction that I gave to them.

17          It is very unlikely, but if someone tries to talk

18   to you about the case, you should refuse to do so and

19   immediately let me know by telling Ms. Lesley or the marshal

20   or another court staff.  Don't tell the other jurors.  Just

21   let me know and I'll bring you in to discuss what happened.

22          Between now and when you are discharged from jury

23   duty, you must not provide to or receive from anyone,

24   including friends, co-workers and family members, any

25   information about your jury service.  You may tell those who

The Court's Preliminary Instructions to the Jury

1    need to know where you are that you have been picked for a

2    jury, as I mentioned, and how long the case may take.

3    However, you must not give anyone any information about the

4    case itself or the people involved.

5           You must also warn people not to try to say

6    anything to you or write to you about your jury service or

7    the case.  This includes face-to-face, phone or computer

8    communications.

9           Again, in this age of electronic communications --

10   and I'm afraid it does require stressing -- you must not use

11   electronic devices or computers to talk about this case,

12   including texting, tweeting, blogging, emailing, posting

13   information on a website or chatroom or any other means at

14   all.  Don't send or accept messages, as I said, including

15   email and text messages about your jury service.  You must

16   not disclose your thoughts about your jury service or ask

17   for advice on how to decide any case.

18          You must decide, again, the facts based on the

19   evidence presented in court and according to the legal

20   principles about which I will instruct you.

21          You are not permitted during the course of the

22   trial to conduct any independent investigation of your own

23   or research about the case.  That means, for example, you

24   can't use the internet to do research about the facts or the

25   law or the people involved here.  Research includes

The Court's Preliminary Instructions to the Jury

1     something even as simple or seemingly harmless as using the

2     internet to look up a legal term or view a satellite photo

3     of a scene of an alleged crime or something similar.

4          I want to explain briefly why you should not

5     conduct your own investigation.  All parties have a right to

6     have a case like this decided only on evidence and legal

7     rules that they know about and that they have a chance to

8     respond to.  Relying on information you get outside this

9     courtroom is unfair because the parties would have no --

10    would not have a chance to refute, correct or explain it.

11    Unfortunately, information that we get over the internet or

12    from other sources may be incomplete or misleading or just

13    plain wrong.  It is up to you to decide whether to credit

14    any evidence presented in court; and only the evidence

15    presented in court may be considered.  If evidence or legal

16    information has not been presented in court, you cannot rely

17    on it.

18         Moreover, if any of you do your own research about

19    the facts or the law, that might result in different jurors

20    basing their decisions on different information.  Each juror

21    must make his or her decision based on the same evidence and

22    under the same rules.

23         In some cases -- and this is probably one -- there

24    may be reports in the newspaper or on the radio, internet or

25    television concerning the case while the trial is ongoing.

The Court's Preliminary Instructions to the Jury

1    If there should be such media coverage in this case, you may

2    be tempted to read, listen to or watch it.  You must not do

3    so.  You must not read, listen to or watch such reports

4    because, again, you must decide this case solely on the

5    evidence presented in this courtroom.

6            If any publicity about this trial inadvertently

7    comes to your attention during trial, do not discuss it with

8    other jurors or anyone else.  Just let me or my clerk know

9    as soon after it happens as you can and I will then discuss

10   it with you.

11           Additionally, I want to instruct each of you, if

12   you use these or have these, to turn off push notifications

13   on your phone.  If you have an iPhone, that can be

14   accomplished by going to Settings, then Notifications.  You

15   will see a list of downloaded applications that may provide

16   you with notifications.  For the pendency of this trial, I

17   ask that you turn each of those notifications off, push

18   notifications relating to social media or news services to

19   "off."  If you do have your phones on you, please do that

20   now.  Or, if not, please do it when you are next in

21   possession of your phone.

22           After I submit the case to you, you may discuss it

23   only when I instruct you to do so and only in the jury room

24   and only in the presence of all your fellow jurors.  It is

25   important that you keep an open mind and not decide any

The Court's Preliminary Instructions to the Jury

1    issue in this case until after I submit the entire case to

2    you with my final instructions.

3            With that, thank you again for your service.

4            It seems to me, Ms. Vaughn, that we have time for

5    the Government at least to do its opening statement.

6            MS. VAUGHN:  Thank you, your Honor.

7            In September of last year, Congress needed

8    information from the Defendant, Stephen Bannon, seated over

9    there.

10           Congress needed to know what the Defendant knew

11   about the events of January 6th, 2021, the day when a mass

12   of people breached the U.S. Capitol a few blocks from here

13   and delayed Congress's vote to certify the official winner

14   of the 2020 presidential election.

15           You see, Congress had gotten information that the

16   Defendant might have some details about the events leading

17   up to that day and what occurred on that day.  So to get the

18   information it needed, Congress gave the Defendant a

19   subpoena, a legally enforceable order, that mandated that

20   the Defendant provide any information he might have relating

21   to January 6th to the Committee.

22           And because it was a subpoena, Congress was

23   entitled to the information it sought.  It wasn't optional,

24   it wasn't a request and it wasn't an invitation.  It was

25   mandatory.

Opening Statements by Ms. Vaughn

1          But as you will learn in this trial, the Defendant

2     refused to hand over the information he might have anyway.

3     Instead, as you'll see, he chose to show his contempt for

4     Congress's authority and its processes.  He refused to tell

5     Congress if he knew anything or, if he did, what he knew

6     about the events of January 6th and what led to them.  He

7     ignored orders to comply even after Congress had rejected

8     his excuses not to.

9          And he put aside multiple warnings that he could

10    face criminal prosecution if he didn't comply with the

11    subpoena as required.

12         And by doing so, the Defendant prevented the

13    Government from getting the important information it needed

14    from him to help it figure out what happened on January 6th

15    and how to make sure it didn't happen again.

16         And that, ladies and gentlemen, ignoring a legal

17    order, a subpoena from the United States Government, the

18    U.S. Congress, that's a crime.  The Defendant decided he was

19    above the law and decided he didn't have to follow the

20    Government's orders like his fellow citizens.  And that's

21    why we're here today.

22         Now, as I said, it was the U.S. Congress that gave

23    the Defendant a subpoena.  Why?  Well, a lot of people know

24    that Congress is the part of our government that passes

25    laws.  But a lot of people don't know or don't really think

Opening Statements by Ms. Vaughn

1    about the work that Congress has to do to figure out what

2    laws to pass.

3              We're going to hear a little bit more about that

4    in this trial from a staff member of Congress who was

5    involved in the Defendant's subpoena named Kristin Amerling.

6    As Ms. Amerling will explain, and as many people including

7    you probably already know, there are two parts of Congress,

8    the House of Representatives and the Senate.  Each part is

9    made up of people who are elected to office by the citizens

10   of the country; and they work together to pass the laws that

11   govern us.

12             But as Mr. Amerling will also explain, to figure

13   out what laws will be helpful, Congress has to do research.

14   It needs to understand what the problems are.  And so under

15   the law, Congress is entitled to gather information to help

16   it understand those problems.

17             And as Ms. Amerling will explain, if Congress

18   can't get the information it needs from citizens or

19   organizations or companies in the country, it can't figure

20   out what the issues are that people are facing that need to

21   be addressed.

22             And so as Ms. Amerling will tell us, to do this

23   research, Congress sets up committees.  The House and the

24   Senate each set up their own committees, each committee with

25   its own area of expertise and focus.  The committees are

Opening Statements by Ms. Vaughn

1   made up of elected members of Congress and they all have

2   staff, just regular everyday people that help the committees

3   carry out their work.

4        And the committees have a variety of tools they

5   can use to gather the information they need.  They can do

6   things like make voluntary requests for information, asking

7   someone to on their option turn information over, or they

8   can do things like read reports or books or even do research

9   on the internet like any of us might do.

10       And another tool they have is a subpoena

11   requiring, compelling someone to provide information.  These

12   are all things that the committees use every day in their

13   work to figure out what laws would be helpful to the

14   country.

15       And this process of setting up committees and

16   doing research to figure out what laws to pass, this is what

17   the House of Representatives did after the events of January

18   6th.  As you'll see, they set up a special committee called

19   the Select Committee to Investigate the January 6th Attack

20   on the U.S. Capitol.  I'm just going to refer to it as the

21   Committee for short.  And this is the committee that

22   Ms. Amerling works for.

23       As you'll see, the Committee was set up to

24   investigate the causes and events of January 6th.  One of

25   the causes it's investigating is an effort to delay or stop

Opening Statements by Ms. Vaughn

1    the 2020 presidential election results from being finalized.

2            Something else it's investigating is how the

3    breach of the U.S. Capitol came about, things like what

4    plans were in place, who came to D.C. that day and why and

5    what their intention was upon entering the Capitol.

6            And based on its findings, the Committee is also

7    tasked with identifying what laws or other rules could be

8    made or changed to better protect our democracy, our

9    elections and the safety and security of our government

10   institutions.

11           So as Ms. Amerling will tell us, once the

12   Committee began its investigation, based on information it

13   gathered, it learned that the Defendant might be someone

14   with some information about that day.

15           You see, many years before January 6th, the

16   Defendant worked for a short time as an advisor to former

17   President Donald Trump, one of the candidates in the 2020

18   presidential election.

19           And based on information the Committee had, the

20   Defendant had maintained ties to the former president and

21   others associated with him.  And around the time of January

22   6th, the Defendant hosted a podcast; and on the podcast he

23   talked a lot about the 2020 presidential election and the

24   effort to delay it from being finalized.

25           And the Committee had gathered information

Opening Statements by Ms. Vaughn

1 suggesting that the Defendant may have been in touch with or

2 had meetings with people that were involved in the events

3 leading up to January 6th and on that day, people like

4 members of Congress, people that were associated with the

5 effort to stop the election from being finalized, people

6 working with the former President Trump's campaign and the

7 former president himself.

8      So based on this information that the Committee

9 had, it wanted to know what the Defendant knew, if anything,

10 because if he did know things about these topics, it could

11 be helpful to the Committee's investigation to figure out

12 what happened on January 6th.  And it could be helpful to

13 the Committee's task of identifying what laws should be

14 changed or passed to address elections, violence against the

15 government and other issues coming out of that day.

16      So in September 2021, it gave the subpoena to the

17 Defendant.

18      You'll see that subpoena in this trial.  And

19 you'll see that it required two things of the Defendant:

20 One, that by 10:00 in the morning on October 7th, 2021, the

21 Defendant provide documents he might have relating to

22 January 6th; and, two, that at 10:00 in the morning on

23 October 14th, 2021, the Defendant come to a deposition and

24 answer questions the Committee had about what he knew about

25 January 6th.

1              And when I say a deposition, I mean an interview

2      that's given under oath.  So in that case, the Committee

3      would be asking the witness -- here, the Defendant --

4      questions, and he would be answering under oath, meaning he

5      made a promise to tell the truth; and if he didn't tell the

6      truth, he could get into legal trouble.

7              Depositions are also recorded so that the

8      Committee can memorialize the information for use in its

9      investigation.  It's just another tool that committees have

10     to do their research.

11             So let's talk a little bit more about what these

12     two requirements were and what the evidence is going to show

13     you about the Defendant's failure to comply with them.  I'll

14     start with the documents.

15             As you'll see in the subpoena, it required that

16     the Defendant turn over documents on various topics relating

17     to January 6th, topics like fundraising and recruiting

18     people to a rally that was held immediately preceding the

19     breach of the Capitol, things like the effort to stop or

20     delay the election results, and things like the Defendant's

21     communications with people who may have participated in or

22     planned January 6th or the events leading up to it.

23             When we're talking about documents, we're talking

24     about things like text messages, emails, notes, recordings

25     the Defendant might have.  And to be clear, if at the end of

Opening Statements by Ms. Vaughn

1    the day the Defendant didn't have documents on all the

2    topics that the Committee's subpoena required him to turn

3    over, that would have been fine.  There was -- you'll see in

4    the subpoena there was a clear procedure that the Defendant

5    could follow to notify the Committee that he had done a

6    thorough search and had turned over everything he had.

7          Or let's say that the Defendant had so many

8    documents that he needed more time to find them and gather

9    them and turn them over.  You'll see in the subpoena that it

10   also provided a clear procedure for the Defendant to notify

11   the Committee of that.

12         But as the evidence will show, the Defendant

13   didn't follow these procedures or any others.  In fact, as

14   Ms. Amerling will tell you, by that 10:00-in-the-morning

15   deadline on October 7th, 2021, the Committee had not heard a

16   word from the Defendant.

17         That deadline came and went and he ignored it.

18         So what did he do instead?  You're going to see a

19   letter that the Defendant had his attorney send to the

20   Committee.  And you'll see that in that letter the Defendant

21   notified the Committee he was not going to comply with the

22   subpoena in any way.  He wasn't going to provide a single

23   document and he wasn't going to come to the deposition on

24   October 14th and answer questions.

25         You're also going to see in that letter the excuse

Opening Statements by Ms. Vaughn

1    that the Defendant gave for not complying.  You'll see that

2    he claims something called a privilege.

3        Now, as Ms. Amerling will explain, when it comes

4    to Committee subpoenas, sometimes people raise a privilege

5    to claim that they don't have to turn over certain

6    information or that they don't have to comply with the

7    subpoena.

8        But the meaning of the privilege the Defendant

9    claimed and what information he was claiming it over really

10   is not relevant for our purposes because, as you will see in

11   the subpoena and as you'll learn, it's not up to the

12   Defendant or anyone else to decide whether he can ignore the

13   subpoena's requirements and deadlines based on a privilege.

14   It's up to the Committee.

15       And you will see that the Committee told him, told

16   the Defendant, that his privilege did not excuse him from

17   complying with the subpoena's requirement in this case.  And

18   you'll see that they told him that the very next day, on

19   October 8th, 2021, when the Committee sent a letter back to

20   the Defendant.

21       And you'll see in that letter that the Committee

22   told the Defendant:  Your privilege does not get out of this

23   one.  You have to provide documents and you have to come to

24   your deposition on October 14th, 2021, and answer our

25   questions about what you know about January 6th.

Opening Statements by Ms. Vaughn

```
 1              And most importantly, in that October 8th letter,
 2      the Committee told the Defendant:  A refusal to comply, a
 3      refusal to do as the subpoena requires, could result in
 4      criminal prosecution.
 5              But the Defendant did not heed that warning.
 6      Instead, as you'll see, on October 13th -- remember, that's
 7      the day before the Defendant was supposed to appear for a
 8      deposition -- he sent another letter to the Committee.  And
 9      in this letter, you will see that he just reiterated the
10      same argument that the Committee had already rejected:  I
11      have a privilege and I'm not complying.
12              And he didn't.  He did not come on October 14th,
13      2021, to answer the Committee's questions about what he
14      knew.
15              So as you'll see, by that date the Defendant had
16      missed both the deadlines in this subpoena.  He had defied
17      the subpoena's requirement to provide documents and he had
18      defied the subpoena's requirement to come to a deposition
19      and answer questions.  He had committed the very crimes the
20      Committee had warned him about.
21              And the Committee told him this.  You will see
22      another letter that the Committee sent to the Defendant on
23      October 15 and they told him:  You have not done what we
24      warned you against.  You have defied the subpoena
25      unlawfully.  We're going to consider referring you for
```

Opening Statements by Ms. Vaughn

**-3914-**

1    prosecution and you have until 6:00 p.m. on October 18th to

2    explain yourself.

3            By this time, you can probably guess what the

4    evidence is going to show on this:  That October 18th 6:00

5    p.m. deadline came and went without any different

6    justifications from the Defendant for his failure to comply

7    and no effort at compliance.

8            Now, for the Defendant's refusal to follow the

9    rules, to follow the law, he's charged with contempt.  One

10   count of contempt for refusing to provide documents, one

11   count of contempt for refusing to come and answer questions

12   at the deposition on October 14th.

13           And contempt just means that the Defendant's

14   failure to comply was deliberate.  It wasn't an accident; it

15   wasn't a mistake.  It was a decision; it was a choice.  And

16   you will see here in the black-and-white pages of that

17   subpoena, of the letters from the Committee to the Defendant

18   and the letters from the Defendant back to the Committee,

19   that the Defendant's failure to comply was deliberate here.

20           You'll see it in that subpoena with its

21   instruction to the Defendant that he was hereby commanded by

22   the authority of the U.S. Congress to appear and provide

23   documents.  You will see it on the face of the letters from

24   the Committee to the Defendant directing him to comply and

25   warning him of the consequences if he didn't.  And you will

1    see it in the Defendant's letters to the Committee, the

2    Defendant's decision that his authority to decide what the

3    law required was greater than the U.S. Government's.

4         You will also see in the evidence in this case

5    that this is not a case of mistake.  The Defendant didn't

6    get the date wrong.  He didn't get confused about where to

7    go.  He didn't get stuck on a broken-down Metro car.  He

8    just refused to follow the rules.

9         To be clear, this case is not about what happened

10   on January 6th or what the Defendant may or may not have

11   done on that day.  This case is about the Defendant thumbing

12   his nose at the orderly processes of our government.

13        And at the end of this case, you might say to

14   yourself:  So this whole case is about a guy who just

15   refused to show up?  Yes.  It is that simple, because ours

16   is a nation of laws and our system doesn't work if people

17   think they're above them.

18        As Ms. Amerling will tell you, our system can't do

19   the work it needs to do to run and protect the country if

20   citizens can simply ignore the government's orders.

21        And by the end of this case, you will find from

22   the evidence that the Defendant had a disregard for these

23   principles, that he refused to work with Congress as he was

24   required to help the American people figure out what

25   happened on January 6th and how to make sure it didn't

Opening Statements by Ms. Vaughn

1    happen again.

2           And at the end of this case, we'll come back

3    before you and ask you to find the only verdict that is

4    supported by the evidence here:  that the Defendant showed

5    his contempt for the U.S. Government, the U.S. Congress, and

6    that he's guilty.

7           THE COURT:  Thank you, Ms. Vaughn.

8           Mr. Corcoran, will you be giving an opening now or

9    possibly later?

10          MR. CORCORAN:  We will.  Thank you, your Honor.

11          Ladies and gentlemen, good afternoon.

12          THE JURY:   Good afternoon.

13          MR. CORCORAN:  This is Steve Bannon.  And he's

14   innocent of the charges.

15          You're going to hear evidence in this case that

16   Steve Bannon has served our country on two different

17   occasions:  First, he was in the Navy for seven years.  He

18   served honorably and left the Navy with honor.  You'll also

19   hear that after leaving the Navy, he went into business.

20   Much of his career involved the media.

21          He cofounded a successful media company that

22   provided news and commentary across the entire country.  It

23   had a nationwide reach.

24          You'll also hear that he got into politics.  He

25   didn't run for elective office.  He did not.  But he was a

Opening Statements by Mr. Corcoran

1    political thinker and a political strategist.  And he helped

2    a candidate run for the presidency.  He became the top

3    leader in the candidacy of President Donald J. Trump.

4         After President Trump was elected, the evidence

5    will show that Mr. Bannon again served our country.  And I

6    say "our country" because we're all in this together.  He

7    served as a top advisor to President Donald Trump on

8    strategy and on policy.

9         And when Steve Bannon left the White House, he

10   returned to media.  He developed a show.  Now, the show was

11   videotaped and audiotaped and made available across the

12   internet.  It's called a podcast.  The two words, iPod and

13   broadcast, when they're put together, are podcast.  And

14   that's something that somebody, a listener, a viewer, can

15   download and watch at their leisure.

16        Now, this podcast dealt with politics.  Steve

17   Bannon and his guests discussed the political issues of the

18   day.  And it had a very broad reach.  You'll hear evidence

19   that it's often in the top one or two or three podcasts on

20   Apple in the area of politics, ahead of such well-known news

21   organizations as *The New York Times* or NPR.  A very broad

22   reach on political strategy.

23        On January 5th, 2021, the day before the attack on

24   the Capitol, most major media outlets, most shows, were

25   reporting that there might be violence at the Capitol the

Opening Statements by Mr. Corcoran

1     next day.  That was something that was widely reported.

2              You've heard about a subpoena.  But I think one

3     important thing to consider in terms of the evidence is, it

4     was eight months later, eight months after January 6th, that

5     a subpoena was pulled together for Stephen Bannon.  Eight

6     months.

7              It had his name on it and it asked him to appear

8     for testimony and to produce documents if he had any.

9              The subpoena that was provided to Mr. Bannon had

10    pages and pages of instructions and legalese.  And as you

11    might imagine, Mr. Bannon spoke to an attorney, Bob

12    Costello.

13             The subpoena set the stage for all that followed.

14    And the subpoena sets the stage for why we're here.  And I

15    think it's important to understand that the stage involves

16    the United States House of Representatives.

17             Politics is the lifeblood of the U.S. House of

18    Representatives.  A member of Congress, every single member

19    of Congress, stands for reelection every two years.  This

20    November there's another election.  And every single member

21    of Congress is running.  So they're perpetual candidates for

22    office, and politics invades every decision that they make.

23             The question is:  Is this going to help or is this

24    going to hurt my chances at keeping my job, my chances at

25    reelection?  And politics also affects staff members in

Opening Statements by Mr. Corcoran

1    Congress.  It's the currency of Congress.

2            Back to the subpoena:  A lawyer for the Select

3    Committee -- Ms. Vaughn mentioned her name, Kristin

4    Amerling -- contacted Steve Bannon's lawyer, Bob Costello.

5    No one ignored the subpoena.  Quite to the contrary, the

6    evidence is going to show that there was direct engagement

7    by Bob Costello, Steve Bannon's lawyer, and Kristin

8    Amerling.  Bob Costello immediately communicated to

9    Ms. Amerling and to the Select Committee that there was an

10   objection to the subpoena and that Steve Bannon could not

11   appear and that he couldn't provide documents.  That was

12   communicated clearly and unequivocally.  So there was no

13   ignoring the subpoena.  There will be no evidence showing

14   that.

15           There followed a considerable back-and-forth

16   between Kristin Amerling, who is an attorney for the

17   Committee, and Bob Costello, who is a lawyer for Steve

18   Bannon.  And they did what two lawyers do:  They negotiated.

19           Now, the Government wants you to believe based on

20   what they said the evidence will show that Mr. Bannon

21   committed a crime by not showing up at a congressional

22   hearing room on October 14, 2021.  But the evidence is going

23   to be crystal clear:  No one, no one, believed that Steve

24   Bannon was going to appear on October 14th, 2021.  He had

25   clearly articulated through his lawyer, Bob Costello, an

Opening Statements by Mr. Corcoran

1    objection and the reasons why he could not appear.

2              The Government said that someone ordered -- that

3    was the word that she used -- someone ordered Steve Bannon

4    to comply with the subpoena.

5              There'll be no evidence at all that anyone ever

6    ordered Mr. Bannon to do anything with respect to the

7    subpoena.  There's no order involved at all.  The evidence

8    will show no order.

9              The key point is that the Government has to prove

10   beyond a reasonable doubt that Steve Bannon willfully

11   defaulted, that he willfully defaulted when he didn't appear

12   at the congressional office on October 14th.  But you'll

13   find from the evidence that that date on the subpoena was

14   the subject of ongoing discussions and negotiations.  The

15   dates in the subpoena were not fixed; they were flexible.

16             So the Government can't prove beyond a reasonable

17   doubt that Steve Bannon committed a crime.

18             You'll hear that in almost every single case,

19   every single subpoena given to a witness for the Select

20   Committee, every single one, you're going to hear that

21   Committee staff and the lawyer for the proposed witness

22   would negotiate and that often the appearance would be at a

23   later date than what appears on the subpoena.  That's the

24   process.  And it's called negotiation.  It's called

25   accommodation.

Opening Statements by Mr. Corcoran

 1              Bob Costello, the attorney for Mr. Bannon, had

 2    raised an objection and stated that Steve Bannon clearly

 3    could not appear on the date.  It was not an excuse.  He

 4    raised an objection.  And the word was used in opening, so

 5    I'll use it here:  privilege.  It's not an excuse.  The

 6    evidence will show that that's not an excuse.

 7              Now, the interesting thing is that among the

 8    letters that went back and forth -- and there was a lot of

 9    negotiating back and forth between Ms. Amerling on behalf of

10    the Committee and Mr. Costello -- one critical letter was

11    not mentioned in opening, but it will be evidence in this

12    case.  Think about that letter which is dated October 18.

13    It's a letter from Mr. Costello, who is the attorney for

14    Steve Bannon, and it asks for one week.  One week.  Give us

15    one week.  That was not mentioned, but it's a critical

16    letter.

17              And what you'll hear instead is that the day after

18    that request was made on October 18th, 2021, Kristin

19    Amerling, the staffer for the Select Committee, set in

20    motion, set in motion, this criminal prosecution.

21              She did so by putting together a resolution of

22    contempt that went to the full House; and the full House did

23    consider a resolution of contempt and voted by a slim

24    majority to refer the matter to the U.S. Attorney's Office.

25              But you'll hear there'll be evidence in the case

Opening Statements by Mr. Corcoran

```
 1    that 203 members of Congress voted --
 2              MS. VAUGHN:  Objection, your Honor.  Could we have
 3    a side-bar on this?
 4              THE COURT:  Yes.
 5              (Whereupon, the following proceedings were had at
 6    sidebar outside the presence of the jury:)
 7              MS. VAUGHN:  Your Honor --
 8              THE COURT:  Can everyone hear me?
 9              MS. VAUGHN:  Yes, your Honor.
10              THE COURT:  By the way, let me just say, we are
11    under seal.
12              MS. VAUGHN:  The Defendant is suggesting that the
13    partisan individual decision-making of members is somehow
14    relevant to the validity of the subpoena and the way the
15    Committee was addressing it.
16              And that is improper, to suggest that the
17    individual motives of members is relevant.
18              THE COURT:  Mr. Corcoran?
19              MR. CORCORAN:  Well, the objection was raised as
20    to whether I could mention the 203 members who found by
21    their vote in voting against the contempt resolution that
22    that is critical evidence that will come in in this case.
23              The jury's going to be able to hear that 203
24    members of Congress considered the resolution and voted no
25    on the referral.
```

Opening Statements by Mr. Corcoran

     1            THE COURT:  What issue does that go to in the

     2    case?

     3            MR. CORCORAN:  It goes to -- certainly the jury

     4    can hear when they're considering whether or not there's a

     5    contempt of Congress that in the mechanism of the referral

     6    there was a vote.  It was a close vote, but there were

     7    members who voted against it.

     8            THE COURT:  Again, what issue in the case does

     9    that go to?

    10            MR. CORCORAN:  The authority -- the authority of

    11    the Congress, the authority of the subpoena; and critically,

    12    I believe it'll come up in the investigation of whether this

    13    is a crime.  In other words, whenever evidence is presented

    14    to a jury that shows the fruits of the investigation, a

    15    defendant has the ability to question whether the

    16    investigation was fully carried out.  And that would include

    17    in this case questioning witnesses.

    18            I understand the FBI questioned Ms. Amerling.  But

    19    if there were other witnesses, other people involved who had

    20    a different view of the evidence in the case, such as

    21    members of Congress who clearly stated that there was no

    22    contempt of Congress, that is something that the jury should

    23    hear.  They should hear either those interviews were

    24    conducted or that they weren't conducted.

    25            But that bears on whether they can trust the

Opening Statements by Mr. Corcoran

1    evidence that's presented by the Government of the case.

2            THE COURT:  I just want you to tell me, of the

3    issues that are relevant in this case, what does this go to

4    specifically?

5            MR. CORCORAN:  Your Honor --

6            THE COURT:  What element of the offense?

7            MR. CORCORAN:  Right.  The Government hasn't --

8    the Government has the burden of proof beyond a reasonable

9    doubt.  They have to produce evidence.  They're producing

10   that based upon their investigation.

11           I am able to question their investigator, who I

12   understand is going to be a witness, when he spoke with the

13   203 members of Congress who found that Mr. Bannon was not in

14   contempt of Congress.

15           THE COURT:  So are you saying that this goes to

16   the pertinency of --

17           MR. CORCORAN:  It doesn't --

18           THE COURT:  -- the subpoena?

19           MR. CORCORAN:  It doesn't have to go to any

20   element of the offense, your Honor, to be admissible.  It

21   does not have to go to any element of the offense.

22           THE COURT:  What would you be offering this for?

23   I'm just trying to pinpoint exactly what you're saying.

24           MR. CORCORAN:  I'm offering -- I believe that the

25   agent will be on the stand and will say that he did not

Opening Statements by Mr. Corcoran

```
 1    speak with a single member of Congress who found that
 2    Mr. Bannon was not in contempt of Congress.  203 members of
 3    Congress voted who deal with the Committee rules every day,
 4    subpoenas every day, depositions every day.  They voted that
 5    he was not in contempt of Congress.
 6              And so I'm allowed to ask the agent:  Okay.  I
 7    understand you talked to Ms. Amerling.  But did you talk to
 8    any of those 201 [sic] members and interview them about
 9    whether there's anything exculpatory?  Any other
10    considerations?  Of course I've got to be able to question
11    their agent about that.
12              THE COURT:  Ms. Vaughn?
13              MS. VAUGHN:  Your Honor, this is just an attempt
14    to argue to the jury that there are people who do not think
15    the evidence meets the elements and therefore the jury
16    should not find that the evidence meets the elements.
17              The opinions of the other members of Congress
18    about whether a crime was committed is irrelevant to this
19    case.
20              THE COURT:  I'm going to allow it for the opening
21    on a short leash.  And I think before you get into any
22    cross-examination of the agent along these lines I want to
23    understand exactly what the point of it is.  But I don't --
24    I think you've already said it in front of the jury.  It
25    isn't particularly prejudicial.  I am skeptical that it's
```

Opening Statements by Mr. Corcoran

1    going to be admissible in the way you've articulated it,

2    Mr. Corcoran.  But I'm going to let you basically follow

3    this line just a little bit more in the opening and

4    hopefully then move on from it.  Okay?

5              MR. CORCORAN:  Thank you.

6              (Whereupon, the following proceedings were had in

7    open court:)

8              THE COURT:  We are back from under seal.

9              MR. CORCORAN:  Thank you, your Honor.

10             The point is this:  The next step in the process

11   was a resolution that was voted on by members of Congress.

12   And it passed by a slim majority, which is why we are here.

13   But 203 members of Congress found that Mr. Bannon was not in

14   contempt.  And that's something that I believe there will be

15   evidence that you can consider in this case.

16             Now, our system has great respect for your role as

17   jurors.  You're the sole judges of the evidence in the case.

18             And at the end of the trial, you'll be the only

19   ones who decide whether the Government has met its burden of

20   proof beyond a reasonable doubt on every element.

21             No one will be allowed, nobody will be in a

22   position, to question your decision on that.

23             And I just have one request as you consider the

24   evidence, whether it's a document that comes into evidence

25   or a minute of testimony.  My single request for you is to

Opening Statements by Mr. Corcoran

```
 1    think about it and ask yourself:  Is this piece of evidence
 2    affected by politics?  Because if the evidence comes in and
 3    you hear that it is affected by politics --
 4             MS. VAUGHN:  Your Honor, objection.
 5             THE COURT:  Let's let -- I understand the point.
 6             Mr. Corcoran, you can finish.
 7             Overruled.
 8             MR. CORCORAN:  I'd ask you -- you're the judges of
 9    the evidence.  I'd ask you as you're listening, carefully
10    listen to whether any document or any statement, testimony
11    by any witness is affected by politics.
12             At the end of the case, after you've heard all the
13    evidence, I'm going to stand up again and I'm going to ask
14    you to find Steve Bannon innocent.
15             Thank you.
16             THE COURT:  Thank you, Mr. Corcoran.
17             I take it we'd now be moving to the Government's
18    first witness.  Why don't we take our last brief recess for
19    the day and then we'll start with the Government's witness.
20             So I don't know whether -- that clock is clearly
21    wrong.  That clock is a little slow.  I believe it is in
22    fact 3:13.  Let's just call it 3:30.  We'll do a
23    one-hour-and-15-minute witness session or so and then we'll
24    let everybody go for the day.  Okay?
25             Thanks.
```

Opening Statements by Mr. Corcoran

1          (Thereupon a recess was taken, after which the

2     following proceedings were had:)

3          THE COURTROOM DEPUTY:  Your Honor, we are now back

4     on the record.

5          THE COURT:  Ms. Vaughn?

6          MS. VAUGHN:  Yes, your Honor.

7          Before we call the first witness, we wanted to put

8     something on the record.

9          THE COURT:  Yes.

10          MS. VAUGHN:  As the Court's aware, the witnesses

11     that we may call from the House of Representatives are

12     appearing voluntarily.  And they have stated that they are

13     asserting speech or debate with respect to anything that's

14     not relevant to the elements or available defense in this

15     case.

16          So we just want to note for the record per our

17     effort to comply with our obligations under the voluntary

18     agreement that they're here under that when the Government

19     makes a relevance objection that goes to internal

20     deliberations or things like that, we also intend it to

21     cover this speech-or-debate issue.

22          THE COURT:  Okay.  But as I recall, there had been

23     a suggestion that the Government witnesses who would appear

24     were going to file motions for protective order.  I don't

25     remember getting one of those.

1              MS. VAUGHN:  I think they decided not to, your

2      Honor.  And we're just putting this on the record to --

3              THE COURT:  Fair enough.

4              MS. VAUGHN:  -- fulfill our obligations.

5              THE COURT:  Understood.

6              I understand the voluntary nature from the House's

7      perspective of the witnesses' appearance and the like.  So

8      thank you for putting that on the record.

9              Ms. Lesley, I know we have to collect the jury.

10     That's going to be what?  Five minutes?

11             THE COURTROOM DEPUTY:  Not really.  They're really

12     kind of ready already.  So, like, three minutes.  I just

13     have to go in there and get them.

14             THE COURT:  Mr. Schoen, you wanted to say

15     something?

16             MR. SCHOEN:  Yes, your Honor.

17             I believe there are legal issues we have to take

18     up, as mentioned earlier, before the first witness is

19     called.  For example, I need a ruling on ECF No. 116.

20     That's the motion to dismiss or bar the congressional

21     evidence based on the granting of the motion to quash.  I

22     think from the opening today it highlighted exactly why

23     Chairman Thompson has to be a competent witness.

24             Ms. Amerling is not competent to testify on

25     decision-making.  We were told that she has no

1   decision-making role.

2          She is not competent to testify about a number of

3   the things that the Government said she would be testifying

4   to in their opening today, things like the reason why Bannon

5   was subpoenaed, the reason why Bannon was important, the

6   importance of his information to the Committee, why he was

7   subpoenaed, why any decision by the Committee was made to

8   proceed with contempt or otherwise.

9          So in any event, I need a ruling if I may, your

10  Honor.

11         THE COURT:  Yes.

12         The motion is denied without prejudice to its

13  renewal if when we get to Mr. Bannon's case he establishes

14  that he would like to, for example, call Chairman Thompson

15  and can articulate at that time why he needs Chairman

16  Thompson here.

17         I'm going to allow the testimony from the

18  Government's case.  Mr. Bannon then would have his defense.

19  He is disabled from having people show up for his defense.

20  I understand that.  Based on what the Government would have

21  put in in its case, I will address the motion at that time.

22         MR. SCHOEN:  Okay, your Honor.

23         THE COURT:  You can renew it.

24         MR. SCHOEN:  The second thing:  We have the motion

25  pending, your Honor -- I know the Court reserved on it --

1    about the Trump and Costello letters.  I believe that the

2    Government opened the door today to those letters

3    unequivocally.  And here's how:  The Government said in its

4    pitch in the opening, You're going to see letters from

5    Costello.  And he said, you know, privilege.  And you're

6    going to see another letter from Costello and he said the

7    same reason.

8              And October 18, I guess you know what you're going

9    to see now:  the same justification for this.

10             Well, you know what changed with the Trump letter?

11   That justification.  And that opened the door to that.  The

12   justification changed because his justification according to

13   the Government was privileged.

14             The July 9th letter from Trump removed privilege,

15   purports to remove privilege and is followed by a letter

16   from Costello to the Committee, to Chairman Thompson,

17   saying:  Now that justification has been removed, now I can

18   comply finally.  I can comply.  As you know, I wanted to

19   comply all along.  I told you I wanted to comply.  Take me

20   before a judge.  Make a finding on privilege and I will

21   comply.  Work it out with Trump.  I will comply.

22             But now that was removed.  The Government opened

23   that door by saying he continued to use the same

24   justification each time.  That changed.

25             That's my view.  We need a --

1           THE COURT:  I want to hear from the Government on

2     that.

3           MR. SCHOEN:  Yes, your Honor.

4           THE COURT:  Ms. Vaughn?

5           MR. SCHOEN:  I'm just going to say, the reason I

6     raise it now is I think there may well ought to be

7     cross-examination on those letters if the testimony is going

8     to be "He kept using the same justification," as we were

9     just told in the opening.

10          THE COURT:  I understand.  Thank you.

11          Ms. Vaughn?

12          MS. VAUGHN:  Your Honor, I think what's really

13    going on here is those letters just reaffirmed the

14    Defendant's decision was deliberate.  Right?  That it's

15    based on this consideration of his belief in the law and he

16    made a decision that the law excuses him.

17          So why does the defense actually want to put it

18    in?  They want to put it in to suggest to the jury that it's

19    no harm, no foul.  Look, he's complying now.  How can you

20    ding him for not complying nine months ago?

21          There is nothing in those letters to suggest that

22    the reason he didn't comply by the deadlines charged in the

23    indictment were different from what the Government alleges

24    them to be.

25          So the real reason, I think, that the defense

```
 1      wants to offer this is to argue this nullification claim, to

 2      suggest to the jury, like:  Here we are.  We're trying to

 3      comply all of a sudden.  Please, you know, forgive us.  This

 4      is civil contempt.

 5              This isn't civil contempt.

 6              THE COURT:  Mr. Schoen, let me ask you this

 7      question -- actually, let's excuse the witness, please.

 8              MS. VAUGHN:  For the day?

 9              THE COURT:  No; for the following colloquy I'm

10      about to have.  The witness --

11              MS. VAUGHN:  She's not --

12              THE COURT:  She's not in here?

13              MS. VAUGHN:  No.

14              THE COURT:  Okay.  Good.  My apologies.  I thought

15      perhaps the witness was here.

16              What exactly are you intending to ask the witness

17      about those letters linking it to the letters from October?

18              MR. SCHOEN:  Well, now, quite frankly, given the

19      Government's opening in this, it would be this theme the

20      Government introduced that Costello raised privilege each

21      time.

22              And we were told today -- this is again --

23              THE COURT:  That's always been true.

24              MR. SCHOEN:  Yeah.  It highlights, though, why we

25      need a limiting instruction because what followed that was,
```

 1    "and the Committee decided privilege didn't apply" or words

 2    to that effect.  So we're going to need a limiting

 3    instruction on the hearsay nature, not offered for the truth

 4    of its assertion.  A different issue.  But it reminded me of

 5    that.

 6              And back to this:  So the justification was the

 7    same, the Government said.  Right?  The 8th, the 15th --

 8    whatever the dates are -- the 8th, 13th, 18th.

 9              THE COURT:  So are you arguing that you can ask

10    the witness about the most recent letters because it tends

11    to show that Mr. Costello's proffered reasons for

12    Mr. Bannon's noncompliance or whatever -- I don't mean to be

13    pejorative, just the actions -- was consistent?

14              MR. SCHOEN:  He consistently raised what the

15    Government said he raised:  privilege.  That's why Bannon

16    can't comply.  And the Government just said:  That wasn't in

17    effect a legitimate reason and the Committee decided that

18    and so on.

19              This is showing now why Bannon -- number one, this

20    will show Bannon wanted to comply.  She's going to have to

21    acknowledge that the letters from Costello said Bannon would

22    comply, in effect.  I'm paraphrasing.  Bannon would comply

23    if you took him before a judge and the judge decided this

24    privilege thing wasn't valid or was not so broadly applied

25    and so on.

 1              And then she's going to say, according to what we

 2      just heard, that he just kept writing these letters --

 3      writing Chairman Thompson these letters, saying:  Bannon has

 4      not shown up.  Privilege, privilege, privilege.

 5              And she just kept using the same justification,

 6      jury, which was a phony justification.

 7              Really?  Not for Bannon it wasn't, because as soon

 8      as --

 9              THE COURT:  Keep going.

10              MR. SCHOEN:  As soon as Trump removed privilege,

11      he was -- Trump wrote that to Bannon -- I mean, to

12      Costello --

13              THE COURT:  I understand what the letters say.

14              MR. SCHOEN:  Okay.

15              THE COURT:  This is the problem I'm having with

16      the lawyering here.  You've got to be more precise.  You

17      have to tell me exactly what the question is that you think

18      this goes to.

19              So what exactly do the letters from Mr. Trump and

20      Mr. Bannon later in the last week and a half -- what do they

21      tend to establish in your view?

22              MR. SCHOEN:  That his justification for not

23      complying wasn't something that was either invalid or that

24      was -- that he believed -- that he was just this guy who

25      decided he was above the law.  The jury was just told that.

1              He wasn't a guy who decided he was above the --

2              THE COURT:  I've got it.

3              So you think the Government has basically opened

4     the door to arguing that Mr. Bannon had either an invalid

5     assertion of privilege or something --

6              MR. SCHOEN:  He thought he was above the law.

7              THE COURT:  -- and that therefore opens the

8     question not only of what was being said in the October

9     timeframe about the privileges, but what was said more

10    recently?

11             MR. SCHOEN:  Yes.  And the --

12             THE COURT:  Ms. Vaughn, what is your -- I've got

13    it.

14             What is your response, Ms. Vaughn?

15             MS. VAUGHN:  Your Honor, first --

16             THE COURT:  You did argue in the opening that

17    Mr. Bannon -- you made statements that Mr. Bannon acted as

18    if he was above the law.  He didn't comply with the

19    subpoena.  He asserted privilege.  He stated privilege.

20             MS. VAUGHN:  I think contempt is acting as if

21    you're not subject to the law.  And the Government did not

22    argue that his executive privilege claim was not valid under

23    the law.  It argued that the Committee rejected it and that

24    the Defendant still refused to comply.

25             I think what Mr. Schoen just made clear is that

 1    they want to offer these letters to say:  Look, executive

 2    privilege really did excuse his compliance [sic].

 3            That is exactly what the Government moved to

 4    exclude in that they did not clearly tee it up for the Court

 5    and now they apparently want to argue it for the jury.

 6            It's asking the jury to decide -- whether the

 7    Defendant committed contempt by deciding whether his claim

 8    of privilege was actually valid is not a question for the

 9    jury.

10            THE COURT:  I agree.

11            But does it go to the question of either -- well,

12    really, whether the question we were discussing before,

13    which is whether Mr. Bannon thought that the date would be

14    extended and whether because of the assertion of privilege

15    and the back-and-forth whether he thought the date was not a

16    firm date.  That's the question I left open, is whether

17    these letters could go to that, at least as we argued it

18    last week.

19            MS. VAUGHN:  So for the Defendant to be able to

20    argue that, based on my assertion of privilege, I thought

21    that even though the Committee was telling me these dates

22    were the dates, they weren't really the dates.

23            That's a mistake-of-law defense.  That's a defense

24    that "I thought the way that executive privilege works is I

25    don't have to listen when the Committee tells me what the

1    dates are" or "It's going to get extended in perpetuity

2    until the president waives."

3            I would ask what exactly in these letters goes to

4    "I made a mistake about the dates."

5            THE COURT:  I agree with that.

6            But, Mr. Schoen, I am not holding for all purposes

7    that you cannot ask the witness depending on her testimony

8    about the letters that just came in.  I'm not excluding it

9    for all purposes.

10           I want to hear the witness's testimony.  I don't

11   think the Government's opened the door to these letters

12   coming in for any purpose.  But if the witness's testimony

13   gets into issues that would make this relevant, I am open to

14   this being used in cross-examination.  I'm not there yet.

15           So I want the witness to testify.  After she's

16   done, we can then take up whether and to what extent these

17   letters can be used in cross with her.  Okay?  That's where

18   I am.

19           MR. SCHOEN:  I understand.

20           One more issue.

21           THE COURT:  Okay.

22           MR. SCHOEN:  I don't know whether the Government

23   intends to introduce the exhibits through this witness that

24   have been objected to.  If so, then I think we need to get a

25   ruling on those also.

1          THE COURT:  Which is --

2          MR. SCHOEN:  It's the three --

3          THE COURT:  The three remaining?  Not the letters,

4     but the other ones.

5          Here's what we're going to do:  I'm going to --

6     you preserved your objections.  The Government responded to

7     it.  If the Government seeks to introduce a particular piece

8     of evidence through a witness, we're going to show the

9     document to the witness, not to the jury.  If you have an

10    objection, you'll make the objection.  I'll resolve it.  I'm

11    not just doing all of this acontextually.  We're going to do

12    each document as it goes, these documents.  Okay?

13         MR. SCHOEN:  Yes.

14         THE COURT:  So with that, we need five minutes to

15    get the jury back here.  We're going to take a brief recess

16    because I want to get something from my chambers that I

17    forgot to bring with me.  So five minutes.

18         (Thereupon a recess was taken, after which the

19    following proceedings were had:)

20         THE COURTROOM DEPUTY:  Your Honor, we're back on

21    the record.

22         THE COURT:  Thank you, Ms. Lesley.  Can you please

23    bring the jury in.

24         MS. VAUGHN:  Can I get set up, your Honor?

25         THE COURT:  Please do.  Thank you for asking.

 1              (Whereupon, the jury entered the courtroom at 4:00

 2    p.m. and the following proceedings were had:)

 3              THE COURT:  Ms. Vaughn.

 4              MS. VAUGHN:  Thank you, your Honor.

 5              The Government called Kristin Amerling.

 6              (Thereupon, the witness entered the courtroom and

 7    the following proceedings were had:)

 8              THE COURTROOM DEPUTY:  Ms. Amerling, over here,

 9    please.  The box right here.

10          KRISTIN AMERLING, GOVERNMENT WITNESS, SWORN.

11              THE COURT:  Ms. Amerling, my view is that you are

12    free to take off your mask if you feel comfortable doing so.

13    It sometimes helps the jury and the court reporter hear you.

14    But you need not.

15              THE WITNESS:  Thank you, your Honor.

16              MS. VAUGHN:  Your Honor, with the Court's

17    permission, I have a binder with the documents I plan to

18    talk with Ms. Amerling about today, if I could provide that

19    to the witness for her reference.

20              THE COURT:  Have you provided that to defense

21    counsel?  Or they are the exhibits --

22              MS. VAUGHN:  They are the exhibits we've provided,

23    your Honor.

24              THE COURT:  Thank you.

25              MS. VAUGHN:  (Tenders binder to the witness.)

```
 1                    DIRECT EXAMINATION

 2     BY MS. VAUGHN:

 3     Q.  Good afternoon, Ms. Amerling.

 4     A.  Good afternoon.

 5     Q.  Can you please state your name and spell it for the

 6     record.

 7     A.  Kristin Amerling, K-R-I-S-T-I-N A-M-E-R-L-I-N-G.

 8     Q.  Ms. Amerling, how are you currently employed?

 9     A.  I am deputy staff director and chief counsel for the

10     Select Committee to Investigate the January 6th Attack on

11     the United States Capitol.

12     Q.  And is the Select Committee part of the U.S. Government?

13     A.  Yes, it is.

14     Q.  What part of the government is the Committee a part of?

15     A.  It is part of the U.S. House of Representatives.

16     Q.  And that's part of Congress?

17     A.  Yes, it is.

18     Q.  And generally, what does the U.S. Congress do as part of

19     the government?

20     A.  U.S. Congress develops laws and conducts oversight to

21     inform the development of those laws.

22     Q.  You mentioned the House of Representatives.  Are there

23     different parts of Congress?

24     A.  Yes.  Congress consists of the House of Representatives

25     and the United States Senate.
```

Amerling - DIRECT - By Ms. Vaughn

```
 1    Q.  And the Committee is part of the House side?

 2    A.  That's correct.

 3    Q.  Does the House have multiple committees?

 4    A.  Yes, it does.

 5    Q.  Who generally sits on committees?

 6    A.  Members of Congress sit on committees.

 7    Q.  And those are elected officials?

 8    A.  That's correct.

 9    Q.  Do committees typically have staff that are not elected?

10    A.  Yes.

11    Q.  And what generally do staff do on committees?

12    A.  They advise the members of the Committee.

13    Q.  Are you an elected member of the Select Committee or a

14    staff member?

15    A.  I'm a staff member.

16    Q.  And I want to talk more about your job specifically and

17    the Committee in a moment.

18         But first, let's talk a little bit more about the

19    role of committees in the House.  Generally, can you

20    describe for the jury what it is that committees do for the

21    House?

22    A.  Yes.  Committees are divided by subject matter,

23    generally speaking, and they focus on the subjects under

24    their jurisdiction.  They conduct oversight and develop

25    proposed bills for Congress to consider to potentially enact
```

Amerling - DIRECT - By Ms. Vaughn

1    into law.

2    Q.  And when you say that they conduct oversight to propose

3    bills, what do you mean by that?

4    A.  They gather facts through requests for documents and

5    requests for testimony that inform their understanding of

6    the issues that they're looking at when they develop laws.

7    Q.  Can you describe some of the ways that committees go

8    about collecting facts and information that they need for

9    their work?

10   A.  Committees use a number of different methods to gather

11   information.  Sometimes they issue letter requests for

12   documents or for testimony.  Sometimes they hold

13   depositions, which are more formal transcribed proceedings

14   where they take testimony from witnesses.  Sometimes

15   committees hold hearings, where they bring in witnesses and

16   ask them questions in front of the public.

17   Q.  Do committees have a way to compel people to provide

18   information, require them to provide it?

19   A.  Yes.  Most committees have authority to issue subpoenas.

20   Q.  And can you describe for the jury what a subpoena is?

21   A.  It's a legal document that requires the recipient to

22   produce the documents or information through testimony that

23   is demanded by the document.

24   Q.  Is a subpoena voluntary in any way?

25   A.  No.

Amerling - DIRECT - By Ms. Vaughn

**-3944-**

1    Q.  And when you say the subpoena can provide people --

2    require people to provide documents or testimony, what do

3    you mean by testimony?

4    A.   Testimony is when individuals come in and provide

5    answers to questions that are asked to them verbally.

6    Q.  And you're testifying today.  Is it like this in court

7    or is it something different?

8    A.  It's got some similarities to what I'm doing today.

9    Q.  What are those similarities?

10   A.   Individuals are required to tell the truth.  And they

11   provide verbal information that informs understanding of the

12   issues.

13   Q.  And when someone's testifying, who's asking questions

14   typically when a committee has someone testify?

15   A.   In hearings, it can be members of the committee.  Also,

16   staff can be authorized to ask questions of witnesses.  And

17   in depositions, under the deposition rules, members of

18   Congress or designated staff can ask witnesses questions.

19   Q.  When committees use subpoenas to require the production

20   of documents or testimony, do the subpoenas have deadlines

21   for people to comply?

22   A.  Yes, they do.

23   Q.  Why do they have deadlines?

24   A.  Because when committees seek information, they are

25   generally trying to find answers to problems that require

Amerling - DIRECT - By Ms. Vaughn

**-3945-**

1    solutions.  And like in the case of the Select Committee,

2    there is often some urgency for obtaining the information.

3    Q.  And can you just say a little bit more about that?

4    Aside from a subpoena being mandatory, why is it important

5    for committees or why is it necessary for their work to get

6    the information by the deadline or in a timely manner?

7    A.  When you're doing fact-finding, you need to follow the

8    facts where they lead.  And you try to focus on individuals

9    who will have relevant information.  That information can

10   give you leads to other information, to other witnesses.

11   And in order to provide answers to questions to develop the

12   laws that are under the jurisdiction of the Committee, you

13   need to gather the facts to inform the evaluation of those

14   laws.

15   Q.  How does it affect a committee's ability to do its

16   oversight and recommendation function if it can't find the

17   information it needs to determine what the facts are?

18   A.  If there are gaps in information, that hinders the

19   ability of the members of the committee to thoroughly

20   evaluate the issues that are under their jurisdiction.

21   Q.  You testified that each committee has its own focus.  So

22   let's turn back now to the Select Committee, the one that

23   you work for.

24           What is its area of focus?

25   A.  The Select Committee is focused on investigating facts,

Amerling - DIRECT - By Ms. Vaughn

1   circumstances and causes of the January 6th, 2021, attack on

2   the United States Capitol and on interference with the

3   peaceful transfer of power.

4   Q.  Can you just describe briefly what it is you're

5   referring to there?

6   A.  Yes.  I'm talking about the events of January 6th, 2021,

7   that involved brutal assault on scores of law enforcement

8   officers that left over 140 injured and that resulted in

9   some deaths.  It was also a set of events that interfered

10  with the election processes that were scheduled to go on

11  that day.

12  Q.  What election processes?

13  A.  The Joint Session of Congress that was scheduled for

14  January 6th as part of the finalization of the vote in the

15  2020 presidential election.

16  Q.  And for what purpose is the Committee investigating what

17  happened that day?

18  A.  The Committee is tasked with providing the public a

19  complete account of what happened on that day, why it

20  happened.  And it is also tasked with evaluating

21  recommendations on laws, regulations, rules, policies that

22  will help make sure something like that never happens again.

23  Q.  And to help us get a better sense of what you mean when

24  you're talking about laws and regulations and things like

25  that, what are some of the kinds of things that Congress has

Amerling - DIRECT - By Ms. Vaughn

1    the power to do based on what the Committee finds out?

2    A.   Well, the Committee right now is in its fact-finding

3    phase, so it hasn't yet issued specific recommendations.

4          But a number of experts have been reviewing issues

5    related to January 6th and have made recommendations about

6    legislation or regulations that would help take corrective

7    action.  Examples are increased funding for law enforcement

8    agencies or intelligence agencies that help protect the

9    Capitol, measures that could promote better

10   information-sharing between agencies about potential threats

11   of attack, like what we saw on January 6th.

12         Other measures that the Committee could

13   potentially consider that some members have given by way of

14   example include reforms to the processes relating to the

15   finalization of the vote in a presidential election, reforms

16   to the Electoral Count Act, for example.

17   Q.   And you testified earlier that committees are made up of

18   elected members of Congress and that you're a staff member

19   on the Committee, not an elected member.

20         So as the chief counsel and the deputy staff

21   director, what is your job on the Select Committee?

22   A.   My responsibilities include with the staff director

23   managing the staff of the Select Committee.  My

24   responsibilities also include advising members of the

25   Committee and staff on the Committee about legal rules,

Amerling - DIRECT - By Ms. Vaughn

1  procedures and precedents relating to the exercise of
2  congressional oversight powers.
3  Q.  And as part of your role, are you involved in the
4  Committee's investigative efforts in any way?
5  A.  I am.
6  Q.  Can you describe that for the jury?
7  A.  I advise the members of the Committee about the legal
8  rules relating to different investigative steps they may be
9  taking, different investigative powers that they may be
10  considering exercising.  I review information that comes
11  into the Committee.
12  Q.  How long have you worked for the Committee?
13  A.  About a year.
14  Q.  And before you worked for the January 6th Select
15  Committee, did you work for Congress before?
16  A.  Yes, I did.
17  Q.  For about how many years total have you worked for
18  Congress?
19  A.  I have about two decades of experience working for
20  Congress.
21  Q.  And you've described your role with the Select Committee
22  as an advisor on legal issues and investigative steps and
23  things like that.
24       During the prior years that you worked for
25  Congress, have you generally had jobs similar to the one

Amerling - DIRECT - By Ms. Vaughn

1    that you have now?

2    A.  I've had jobs with similar responsibilities.  Yes.

3    Q.  And were all of those also on committees that were

4    conducting fact-finding and oversight like you've been

5    describing?

6    A.  Yes, they were.  Not all of my positions on the Hill,

7    but for the most part my experience consists of conducting

8    oversight and investigations.

9    Q.  Let's talk more about the Committee's establishment and

10   purpose.

11            When was the Committee established?

12   A.  June 30th, 2021.

13   Q.  So that's about six months after January 6th?

14   A.  That's correct.

15   Q.  And how was it established?

16   A.  It was established through a resolution approved by the

17   House of Representatives.

18   Q.  Can you explain what a resolution is?

19   A.  A resolution is a legislative measure that can be passed

20   by either the House or the Senate.  It often governs

21   internal operations of the House or the Senate.

22   Q.  So are resolutions different from what we might

23   typically think of as a law that Congress passes?

24   A.  Yes.  They don't have to be approved by both bodies and

25   then signed into law by the president.

Amerling - DIRECT - By Ms. Vaughn

1     Q.  Let's take a look at the resolution establishing the

2     Committee.  So if you could look --

3             MS. VAUGHN:  If we could bring up just for

4     Ms. Amerling and the Court Exhibit 1.

5     BY MS. VAUGHN:

6     Q.  Ms. Amerling, are you able to see Exhibit 1 on your

7     screen?

8     A.  Yes, I am.

9     Q.  And Exhibit 1 is a multipage document.  And so the full

10    document is in that binder in front of you.

11            What is Exhibit 1?

12    A.  It looks like a copy of the House resolution that

13    establishes the Select Committee.

14            MS. VAUGHN:  Your Honor, I move to admit and

15    publish to the jury Exhibit 1.

16            MR. CORCORAN:  No objection, your Honor.

17            THE COURT:  Government's Exhibit 1 is admitted.

18            (Whereupon, Government's Exhibit No. 1 was entered

19    into evidence.)

20    BY MS. VAUGHN:

21    Q.  Ms. Amerling, this is, as I said, a multipage document.

22    But I just want to focus on a few things.

23            So first we see on the first page here -- and I

24    think it continues on to the next -- several paragraphs

25    starting with "whereas."  Generally, what kind of

Amerling - DIRECT - By Ms. Vaughn

1    information is included in the whereas paragraphs?

2    A.  Generally those paragraphs describe why a measure is

3    needed.

4    Q.  So why this resolution was needed?

5    A.  Yes.  They give background on the purpose for the

6    resolution.

7    Q.  All right.

8         MS. VAUGHN:  And, Ms. Dunn-Gordon, if we could

9    zoom in on the first paragraph there.

10   BY MS. VAUGHN:

11   Q.  Let's look at an example of these.  Ms. Amerling, can

12   you just read that first paragraph, please?

13   A.  "Whereas January 6th, 2021, was one of the darkest days

14   of our democracy during which insurrectionists attempted to

15   impede Congress's constitutional mandate to validate the

16   presidential election and launched an assault on the United

17   States Capitol Complex that resulted in multiple deaths,

18   physical harm to over 140 members of law enforcement, and

19   terror and trauma among staff, institutional employees,

20   press and members."

21   Q.  And, Ms. Amerling, is that a description of what you

22   were describing earlier as the primary focus of the

23   Committee?

24   A.  That's correct.

25   Q.  And you also mentioned some expert recommendations and

Amerling - DIRECT - By Ms. Vaughn

1    things like that.  Does this resolution also reference

2    several findings as being related to the establishment of

3    the Committee?

4    A.  It does.

5    Q.  Let's look at an example of that.

6            MS. VAUGHN:  So, Ms. Dunn-Gordon, if we could just

7    zoom in on the second half of Page 1 of Exhibit 1, please.

8    BY MS. VAUGHN:

9    Q.  Ms. Amerling, can you please just read the first

10   paragraph that's blown up there.

11   A.  Yes.  It says:  Whereas on January 17, 2021, the

12   Department of Homeland Security issued a national terrorism

13   advisory system bulletin that due to the, quote, "heightened

14   threat environment across the United States in which some

15   ideologically motivated violent extremists with objections

16   to the exercise of governmental authority and the

17   presidential transition, as well as other perceived

18   grievances fueled by false narratives, could continue to

19   mobilize to incite or commit violence."

20   Q.  So, Ms. Amerling, findings like that, is that also part

21   of what the Committee is tasked with looking into?

22   A.  That is one of the reasons why the Committee was

23   authorized.

24   Q.  I want to go down a little bit in this resolution.

25           MS. VAUGHN:  Ms. Dunn-Gordon, if we could go to

Amerling - DIRECT - By Ms. Vaughn

 1    Page 3 of Exhibit 1.  And zoom in on Section 1 there,

 2    please.

 3    BY MS. VAUGHN:

 4    Q.  And this section is just entitled Establishment.

 5    Ms. Amerling, do you mind reading that for us?

 6    A.  It says, Section 1, Establishment:  There is hereby

 7    established the Select Committee to investigate the January

 8    6th attack on the United States Capitol (hereinafter

 9    referred to as the Select Committee).

10    Q.  Ms. Amerling, so we've looked at what prompted the

11    establishment itself.  Does the resolution also articulate

12    the purposes of the Committee?

13    A.  Yes, it does.

14    Q.  Let's look at those.

15             MS. VAUGHN:  So, Ms. Dunn-Gordon, if we could go

16    to the next page and to Section 3 there.

17    BY MS. VAUGHN:

18    Q.  We're only zoomed in on a small part of this,

19    Ms. Amerling.  But if you need to reference other pages of

20    the exhibit as we go, you're welcome to in your binder

21    there.

22             So at the top under Section 3, Purposes, it says:

23    Consistent with the functions described in Section 4, the

24    purposes of the Select Committee are the following.

25             Now, we've only zoomed in on one.  But how many

Amerling - DIRECT - By Ms. Vaughn

```
 1    different purposes does the resolution lay out for the

 2    Committee?

 3    A.  It lays out three purposes.

 4    Q.  Let's look at this first one.

 5            MS. VAUGHN:  I apologize, Ms. Dunn-Gordon.  If we

 6    could zoom in again on that.  Thank you.

 7    BY MS. VAUGHN:

 8    Q.  Can you please read that purpose for the jury,

 9    Ms. Amerling.

10    A.  Yes.  It says:  To investigate and report upon the

11    facts, circumstances and causes relating to the January 6th,

12    2021, domestic terrorist attack upon the United States

13    Capitol Complex (hereinafter referred to as the, quote,

14    "domestic terrorist attack on the Capitol") and relating to

15    the interference with the peaceful transfer of power,

16    including facts and causes relating to the preparedness and

17    response of the United States Capitol Police and other

18    federal, state and local law enforcement agencies in the

19    national capital region and other instrumentalities of

20    government, as well as the influencing factors that fomented

21    such an attack on American representative democracy while

22    engaged in a constitutional process.

23    Q.  And under Purposes, it also mentions "consistent with

24    the functions described in Section 4."  So let's take a look

25    at those.
```

Amerling - DIRECT - By Ms. Vaughn

```
 1              MS. VAUGHN:  Ms. Dunn-Gordon, if we could go to

 2    the next page, Page 5 of Exhibit 1.  And if we could zoom in

 3    on the second half of this page, Ms. Dunn-Gordon.

 4    BY MS. VAUGHN:

 5    Q.  So, Ms. Amerling, under the heading Section 4,

 6    Functions, it says:  The functions of the Select Committee

 7    are to, and then it lists several things.  I want to take a

 8    look at a couple of them.

 9              So first let's focus on the first one.  The first

10    function of the Committee is to do what right there under

11    (a)(1)(A) or (a)(1) and (a)(1)(A)?

12    A.  That function is to investigate the facts, circumstances

13    and causes relating to the domestic terrorist attack on the

14    Capitol, including facts and circumstances relating to

15    activities of intelligence agencies, law enforcement

16    agencies and the Armed Forces, including with respect to

17    intelligence collection, analysis and dissemination and

18    information-sharing among the branches and other

19    instrumentalities of government.

20              MS. VAUGHN:  And then, Ms. Dunn-Gordon, is it

21    possible to bring up the one that's split between two pages?

22    BY MS. VAUGHN:

23    Q.  Ms. Amerling, so another function is listed there under

24    Subpart B right there.  What are the facts and circumstances

25    the Committee is investigating -- or the function of the
```

1    Committee is to investigate in Subsection B?

2    A.  That section concerns influencing factors that

3    contributed to the domestic terrorist attack on the Capitol

4    and how technology, including online platforms, financing

5    and malign foreign influence operations and campaigns may

6    have factored into the motivation, organization and

7    execution of the domestic terrorist attack on the Capitol.

8    Q.  I want to look at one additional function.

9            MS. VAUGHN:  If we could go to Page 8,

10   Ms. Dunn-Gordon, of Exhibit 1, and if we could zoom in on

11   Item 3 at the top there.

12   BY MS. VAUGHN:

13   Q.  Ms. Amerling, what is this additional function that the

14   Committee was authorized to carry out by this resolution?

15   A.  This function concerns issuing a final report.  That

16   report is to contain findings, conclusions and

17   recommendations for corrective measures described in

18   Subsection C.

19   Q.  So let's take a look at the corrective measures

20   described in Subsection C.

21           MS. VAUGHN:  Ms. Dunn-Gordon, if we could zoom in

22   on Subsection C there on Page 8.

23   BY MS. VAUGHN:

24   Q.  So first, the corrective measures described in this

25   subsection may include changes in law, policy, procedures,

Amerling - DIRECT - By Ms. Vaughn

 1    rules or regulations that could be taken.  And then I want

 2    to look at the things that could be taken.

 3              MS. VAUGHN:  So, Ms. Dunn-Gordon, if we could zoom

 4    in on the top half of Page 9 of Exhibit 1.

 5    BY MS. VAUGHN:

 6    Q.  Ms. Amerling, is this the list of potential corrective

 7    measures that the Committee is tasked with considering?

 8    A.  Yes, it is.

 9    Q.  And what is the first thing that this resolution

10    authorizes the Committee to consider a corrective measure

11    for?

12    A.  Corrective measures to prevent future acts of violence,

13    domestic terrorism and domestic violent extremism,

14    including acts targeted at American democratic institutions.

15    Q.  And what about the third category of potential

16    corrective measures that the Committee is authorized to

17    consider?

18    A.  Those are measures to strengthen the security and

19    resilience of the United States and American democratic

20    institutions against violence, domestic terrorism and

21    domestic violent extremism.

22    Q.  Ms. Amerling, these purposes and functions that we have

23    just reviewed in the authorizing resolution for the

24    Committee, do they control the scope of the Committee's

25    investigation?

Amerling - DIRECT - By Ms. Vaughn

1    A.  Yes, they do.

2    Q.  How so?

3    A.  They provide the authority for the Committee to conduct

4    an investigation.  So they define the scope of what's

5    relevant for the Committee to look at.

6    Q.  You testified earlier about several of the tools that

7    committees have at their disposal to help them carry out

8    their investigations or their fact-finding and oversight.  I

9    think you mentioned things like letter requests and other

10   things like that.

11        Does the Committee use all of those tools as well,

12   the Select Committee?

13   A.  Yes.

14   Q.  We've talked about subpoenas generally.  The Select

15   Committee also uses subpoenas?

16   A.  Yes, it does.

17   Q.  And what kinds of things do the subpoenas that the

18   Select Committee issues -- what kind of things do they

19   require people to do?

20   A.  They require people to produce documents to the

21   Committee and they also require people to provide testimony

22   to the Committee.

23   Q.  Does the Committee use subpoenas frequently in its

24   investigation?

25   A.  It has, yes.

Amerling - DIRECT - By Ms. Vaughn

```
 1    Q.  We talked about subpoenas having deadlines.  Do the

 2    Committee's subpoenas also include deadlines?

 3    A.  They do.

 4    Q.  Is the Committee's investigation time-limited in any

 5    way?

 6    A.  Yes, it is.  The authority for the Select Committee ends

 7    at the end of this Congress, the end of this year.

 8    Q.  The end of 2022?

 9    A.  Yes.  That's correct.

10    Q.  Remind us again, when was the Committee established?

11    A.  It was established on June 30th, 2021.

12    Q.  So that's about a year and a half to complete its work?

13    A.  That's correct.

14    Q.  So when the Committee issues subpoenas with deadlines,

15    is it important to the Committee that people comply by the

16    deadlines?

17    A.  Absolutely.

18    Q.  Why is that?

19    A.  Because there is an urgency to the focus of the Select

20    Committee's work.  The Select Committee is looking at a

21    violent assault on the United States Capitol, on law

22    enforcement officials, on our democratic institutions; and

23    we have a limited amount of time in which to gather

24    information.

25             We also in our establishing resolution included
```

Amerling - DIRECT - By Ms. Vaughn

 1    some of the testimony that experts have provided that

 2    underscores that the threat to our democratic institutions

 3    continues.  So the Select Committee is focused on

 4    expeditiously carrying out its responsibilities.

 5    Q.  Can you explain for the jury how the process typically

 6    works in getting the information when the Committee gives a

 7    subpoena to someone?

 8    A.  The Committee issues a subpoena that will be accompanied

 9    by a letter that describes different items that the

10    Committee is seeking, if it is seeking documents.  If the

11    Committee is seeking testimony, the letter will generally

12    give a description of the types of subjects that the

13    Committee seeks to address in its questions to the witness.

14    Q.  If the witness that gets the subpoena -- when we say

15    "witness," we're referring to the person that gets the

16    subpoena?

17    A.  That's correct.  I should say the subpoena recipient.

18    Q.  And you've also used the term "issue a subpoena."  Is

19    issue just the same as to give a subpoena to someone or send

20    it to someone?

21    A.  That's right.

22    Q.  What if the person that gets the subpoena has questions

23    about where they should go, how they should get the

24    documents to the Committee, things like that?

25    A.  This is not uncommon.  And what generally happens is the

Amerling - DIRECT - By Ms. Vaughn

1    individual who receives the subpoena will contact the

2    Committee and counsels for the Committee will engage with an

3    individual and address questions they might have.

4    Q.  At some point did the Committee issue a subpoena to

5    Stephen Bannon?

6    A.  Yes.

7    Q.  And, Ms. Amerling, have you ever personally met

8    Mr. Bannon?

9    A.  I have not.

10   Q.  Prior to your work on the Committee, though, were you

11   aware of who he was?

12   A.  I was.

13   Q.  How were you aware of that?

14   A.  Just generally through newspaper accounts.

15   Q.  And through your work on the Committee, have you

16   continued to be aware of who he is?

17   A.  Yes.

18   Q.  And through the news accounts and your work on the

19   Committee, did you become familiar with what the Steve

20   Bannon that the Committee subpoenaed looked like?

21   A.  Yes.

22   Q.  And based on your familiarity with that, do you see that

23   Steve Bannon in the courtroom today?

24   A.  Yes, I do.

25   Q.  Can you please identify him by where he's sitting and

1    something he's wearing?

2    A.  He is sitting to your left right now with a black mask

3    on and it looks like a navy blue or black shirt.

4           MS. VAUGHN:  Your Honor, may the record reflect

5    the witness has identified the Defendant?

6           THE COURT:  Yes.

7    BY MS. VAUGHN:

8    Q.  Ms. Amerling, you testified that the Committee

9    subpoenaed the Defendant.  Were you involved in the decision

10   and the issuance of the subpoena to the Defendant?

11   A.  I advised on the issuance of the subpoena to Mr. Bannon.

12   Q.  And we'll look at the subpoena in a moment.

13          But first, when did -- about when did the

14   Committee issue the subpoena to the Defendant?

15   A.  The Select Committee issued the subpoena to Mr. Bannon

16   on September 23rd, 2021.

17   Q.  And you testified that the Committee was established on

18   June 30th.

19          Can you just describe for the jury how far along

20   in the Committee's investigation it was when it issued the

21   subpoena to Mr. Bannon?

22   A.  The Select Committee had hired some staff, had not yet

23   completed hiring all of its staff, but had engaged in

24   investigative legwork and research.

25   Q.  So was the Committee still ramping up in any way?

Amerling - DIRECT - By Ms. Vaughn

1    A.  The Committee was still hiring additional staff.  Yes.

2    Q.  And at the time it subpoenaed the Defendant, what

3    information did the Committee have about what the Defendant

4    did for a living around January 6th?

5    A.  I didn't hear your question.  I'm sorry.

6    Q.  At the time that the Committee subpoenaed the Defendant,

7    what information did the Committee have about what the

8    Defendant did for a living around the time of January 6th?

9    A.  According to public accounts, the Defendant was engaged

10   in running a media platform.

11   Q.  What do you mean by "media platform"?

12   A.  A podcast.

13   Q.  And what information did the Committee have about how

14   the Defendant might relate to the Committee's investigation

15   into January 6th when it issued the subpoena?

16   A.  At the time that the --

17            MR. CORCORAN:  Your Honor, objection to the extent

18   it involves hearsay.

19            MS. VAUGHN:  Your Honor, I'm just trying to

20   establish why the Committee --

21            THE COURT:  Yes.  I'll allow it.

22            THE WITNESS:  At the time that the Committee

23   issued the subpoena to Mr. Bannon, according to public

24   accounts, Mr. Bannon had played multiple roles relating to

25   the events of January 6th.  These included participating in

Amerling - DIRECT - By Ms. Vaughn

 1    efforts to persuade the public that the presidential

 2    election of 2020 was illegitimate.  They included appearing

 3    on a podcast the night before -- the day before the January

 4    6th attack making statements including that all hell was

 5    going to break loose on January 6th that suggested that he

 6    might have some advance knowledge of the events of January

 7    6th.

 8           According to public reports, he also had been

 9    involved in some discussions with individuals in the White

10    House, including the president himself, relating to

11    strategies or initiatives surrounding the events of January

12    6th.

13           And we also had information indicating that he had

14    been involved in discussions in the days leading up to the

15    January 6th attack with private parties who had gathered in

16    the Willard Hotel in Washington, D.C., reportedly to discuss

17    strategies around efforts to interfere with the peaceful

18    transfer of power or overturn the election results.

19           THE COURT:  Ms. Vaughn, hold on a second.

20           Ladies and gentlemen of the jury, I just want you

21    to -- I want to instruct you that what the witness just

22    testified about should not be taken for the truth of whether

23    that in fact was -- whether Mr. Bannon had in fact done

24    those things.

25           She is allowed to testify about what the Committee

Amerling - DIRECT - By Ms. Vaughn

1    understood and the reasons that the Committee did what it

2    did.  But that does not establish one way or the other

3    whether those things were true.  Okay?

4            MS. VAUGHN:  Thank you, your Honor.

5    BY MS. VAUGHN:

6    Q.  Ms. Amerling, at the time that the Committee issued the

7    subpoena, if the Defendant had had information on all of

8    those things, is that something that would have been

9    relevant to the Committee's investigation?

10   A.  Yes, because the Select Committee was tasked with trying

11   to understand what happened on January 6th and why.

12   Q.  And we'll look at the subpoena itself in a minute.

13           But first, in general, you testified about a

14   couple of the things that subpoenas can require people to

15   do.  What did the subpoena that the Committee gave to the

16   Defendant -- what did it require him to do?

17   A.  It required him to produce documents to the Select

18   Committee relating to a specified set of subjects by October

19   7th, I believe, 2021, and it required him to appear before

20   the Select Committee at a deposition on October 14th, 2021,

21   to provide testimony.

22   Q.  You just mentioned two deadlines, October 7th and

23   October 14th.  Did the Defendant provide documents and

24   provide testimony by those deadlines?

25   A.  He did not.

1    Q.  Let's look at the subpoena itself.

2        MS. VAUGHN:  If we can bring up just for the

3    witness Government's Exhibit 2.

4        We could do full screen for this one,

5    Ms. Dunn-Gordon.

6    BY MS. VAUGHN:

7    Q.  Ms. Amerling, what is Government's Exhibit 2?

8    A.  This looks like a copy of the subpoena that we issued to

9    Mr. Bannon.

10       MS. VAUGHN:  Your Honor, the Government moves to

11   admit and publish Government's Exhibit 2.

12       MR. CORCORAN:  Your Honor, we have no objection to

13   the admission of Exhibit 2 except for page US-00410 for

14   purposes of that -- based on the reasons we have discussed

15   and briefed.

16       THE COURT:  So I'm going to admit this exhibit.

17   But as to the page that was just mentioned, so Page 410, the

18   exhibit is -- and that page is limited for the purpose of

19   demonstrating that the Committee had articulated its

20   position in the letter to Mr. Bannon, but not for the truth

21   of anything in the letter.

22       So it's a little bit like what I instructed you

23   earlier.  The Committee had -- earlier, I said you should

24   take that testimony for what the Committee believed but not

25   whether the facts were true.

Amerling - DIRECT - By Ms. Vaughn

1          And for this page, you may consider it for the

2     fact that the letter was provided to Mr. Bannon and that it

3     was the Committee's position, but not that anything in the

4     letter is true or not.

5          So with that, it may be published to the jury.

6          THE COURT:  And Exhibit 2 is admitted with that

7     limitation.

8          (Whereupon, Government's Exhibit No. 2 was entered

9     into evidence.)

10          MS. VAUGHN:  Would it help your Honor if we just

11     went to that page quickly so that we can identify the one

12     you were talking about for the jury now?

13          THE COURT:  Yes.  That would be helpful.  Thank

14     you.

15          MS. VAUGHN:  Ms. Dunn-Gordon, if we could go to

16     Page 3 of Exhibit 2.

17          Your Honor, is this the page that you were

18     referring to?

19          THE COURT:  This is the page, ladies and gentlemen

20     of the jury, that I was describing.  So that page of the

21     exhibit -- it's a multipage exhibit -- is again admitted for

22     the purpose of demonstrating that the Committee had

23     communicated the positions reflected in here.  But it is not

24     admitted for the purpose of establishing that anything that

25     is said in here is true.

Amerling - DIRECT - By Ms. Vaughn

1          MS. VAUGHN:  Thank you, your Honor.

2          Ms. Dunn-Gordon, if we could go to Page 1 of

3    Government's Exhibit 2.

4    BY MS. VAUGHN:

5    Q.  Ms. Amerling, what is contained generally on Page 1 of

6    Exhibit 2?

7    A.  This is the subpoena that issued to Mr. Bannon.

8    Q.  And we see at the top that there's obviously the title,

9    Subpoena.  What does it say on the first two lines under

10   subpoena?

11   A.  It says:  By authority of the House of Representatives

12   of the Congress of the United States of America.

13   Q.  And then there's a "to" line.  We'll zoom in on that for

14   you and the jury.  There's a "to" line that says:  To

15   Stephen K. Bannon, care of Robert Costello, Esquire,

16   Davidson, Hutcher & Citron.

17          Who is Robert Costello?

18   A.  At the time, he was representing Mr. Bannon.

19   Q.  And why does it say "To Mr. Bannon, care of Robert

20   Costello"?

21   A.  Because Mr. Costello had represented to the Select

22   Committee that he was the attorney for Mr. Bannon and that

23   he would accept service of the subpoena on Mr. Bannon's

24   behalf.

25   Q.  And what do you mean by "accept service"?

Amerling - DIRECT - By Ms. Vaughn

1    A.  It means that the attorney is allowed to receive the

2    document on behalf of their client.

3    Q.  And we'll talk more about that in a moment.

4         But before we close out of this popup, below the

5    "to" line there are three lines starting with "You are

6    hereby."  Can you please read that to the end of the box?

7    A.  Yes.  It says, "You are hereby commanded to be and

8    appear before the Select Committee to Investigate the

9    January 6th Attack on the United States Capitol."

10   Q.  And then at the end it says "of the House of

11   Representatives of the United States at the place, date and

12   time specified below."  So let's look at what's below.

13        Ms. Amerling, there are a couple of checkboxes

14   there.  Let's zoom in first on the first checked box.  This

15   is checked.  So does that indicate that this is something

16   that the Defendant was required to do by the subpoena?

17   A.  Yes.

18   Q.  And what is it that this item -- can you please read

19   there the two lines that describe what he's required to do?

20   A.  That says he's required to produce the things identified

21   on the attached schedule touching matters of inquiry

22   committed to said committee or subcommittee.  And you are

23   not to depart without leave of said committee or

24   subcommittee.

25   Q.  And we'll look at the attached schedule in a minute.

Amerling - DIRECT - By Ms. Vaughn

1    But "touching matters of inquiry committed to the

2    Committee," what does that mean?

3    A.  Those are the subjects that the Select Committee was

4    reviewing.

5    Q.  And does this subpoena provide a place for production?

6    A.  It does.

7    Q.  And there's an address there.  What is that place?

8    A.  That is one of the House of Representatives office

9    buildings.

10   Q.  And on what date and time was the Defendant required by

11   the subpoena to produce the things in the schedule?

12   A.  He was required to produce the documents that we were

13   requesting by October 7, 2021, at 10:00 a.m.

14   Q.  And it says he's required to produce them at 10:00 a.m.

15   Now, if the Defendant wanted to electronically provide the

16   records or provide them before the date, was that something

17   he was allowed to do?

18   A.  Yes, it is.

19   Q.  Has the Committee allowed other people to provide their

20   documents electronically by the return date?

21   A.  Yes.  The Select Committee has done that.

22   Q.  But did the Defendant produce any records by 10:00 a.m.

23   on October 7th here?

24   A.  He did not.

25   Q.  Let's look at the second checkbox on the subpoena.  This

1    is also checked, so I'm assuming that also means it's

2    something that the Defendant -- the subpoena required the

3    Defendant to do?

4    A.  That's correct.

5    Q.  And what is it that this item required of him?

6    A.  This required him to testify at a deposition touching

7    matters of inquiry committed to said committee or

8    subcommittee, not to depart without leave of said committee

9    or subcommittee.

10    Q.  Who would be present at the deposition for the

11    Defendant?

12    A.  Depositions sometimes have members and staff.  Sometimes

13    they're conducted just by staff.

14    Q.  And it looks like this required the Defendant to come to

15    the same office building.  Is that right?

16    A.  That's correct.

17    Q.  And when did it require the Defendant to come to testify

18    at a deposition?

19    A.  It required him to appear at 10:00 a.m. on October 14,

20    2021.

21    Q.  Did the Defendant appear at that time and on that date

22    to testify at a deposition?

23    A.  He did not.

24    Q.  Let's look at the bottom third of the subpoena.

25          MS. VAUGHN:  Thank you, Ms. Dunn-Gordon.

Amerling - DIRECT - By Ms. Vaughn

1    BY MS. VAUGHN:

2    Q.  And there's another "to" line there.  Can you just read

3    that "to" line through the date?

4    A.  It says:  To any authorized staff member or the United

5    States Marshals Service to serve and make return.  Witness

6    my hand and the seal of the House of Representatives of the

7    United States at the city of Washington, D.C., this 23rd day

8    of September, 2021.

9    Q.  And the date September 23rd, 2021, you said earlier that

10   was also the date that the subpoena was issued?

11   A.  That's correct.

12            And one clarification of what I said when

13   describing the c/o line to the attorney for Mr. Bannon:  He

14   had indicated that he would check to see if Mr. Bannon would

15   allow him to accept service on September 23rd and then

16   confirmed on September 24th that in fact he did have that

17   authority.

18   Q.  And we'll look at that more in a minute.  Thank you for

19   clarifying that.

20            So about how long did the Defendant have to

21   provide documents from the date that this subpoena was

22   issued to the deadline of October 7th?

23   A.  He had about two weeks to provide the documents and

24   about three weeks between the time the subpoena issued to

25   the date when he was required to come and provide testimony.

Amerling - DIRECT - By Ms. Vaughn

1    Q.  And there's a signature on the subpoena.  Do you

2    recognize that signature?

3    A.  I do.

4    Q.  Whose signature is that?

5    A.  That's the signature of the chairman of the Select

6    Committee, Chairman Bennie Thompson.

7    Q.  And you said he's the chairman of the Select Committee.

8    What does that mean?

9    A.  It means he leads the members of the Committee; he

10   maintains order at Committee hearings and meetings; and he

11   manages the Select Committee staff.

12   Q.  In your experience on the Committee and working on

13   subpoenas like this, what is the significance of his

14   signature on the subpoena?

15   A.  He has authority to issue subpoenas on behalf of the

16   Select Committee, and those subpoenas require him to sign

17   the subpoenas.

18   Q.  And there is one other signature on the subpoena.  Can

19   you just describe what that signature is for us?

20   A.  That's the signature of the House clerk.

21   Q.  And what is the significance of that on the subpoena?

22   A.  In order for a subpoena to be valid, it has to also have

23   the signature of the House clerk.

24        MS. VAUGHN:  Your Honor, I'm not sure how long you

25   want to go today.  I'm at a good stopping point or I can

Amerling - DIRECT - By Ms. Vaughn

```
 1    keep going.

 2              THE COURT:  If you're at a good stopping point,

 3    why don't we go into recess.

 4              Ladies and gentlemen of the jury, thank you again

 5    for your time.  You just heard it from me, so I won't repeat

 6    it verbatim.  But again, do not discuss this case with

 7    anyone.  Do not read your phones.  Do not read social media.

 8    Turn off your push notifications.  And for all the reasons I

 9    said before, do everything you possibly can not to talk

10    about, read about or otherwise come in contact with

11    information about this case.

12              Thank you.

13              (Confers with the courtroom deputy privately.)

14              Oh, yes.  Now that you have been sworn and are

15    serving, I have to state this for the record for reasons I

16    don't quite understand.  But you will now be provided with

17    meals.  So there you go.

18              Thank you all.  See you in the morning.  9:00 a.m.

19    9:00 a.m. tomorrow.

20              (Whereupon, the jury exited the courtroom at 4:52

21    p.m. and the following proceedings were had:)

22              (Proceedings concluded.)

23

24

25
```

1                         **CERTIFICATE**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings produced to the

7     best of my ability.

8

9

10                   Dated this 19th day of July, 2022.

11

12                   /s/ Lisa Edwards, RDR, CRR
                     Official Court Reporter
13                   United States District Court for the
                        District of Columbia
14                   333 Constitution Avenue, Northwest
                     Washington, D.C. 20001
15                   (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 109:12

## 0

**0014** [1] - 16:4

## 1

**1** [21] - 3:14, 16:2, 17:12, 21:19, 84:4, 84:6, 84:9, 84:11, 84:15, 84:17, 84:18, 86:7, 87:1, 87:6, 89:2, 90:10, 91:4, 102:2, 102:5
**10** [4] - 16:11, 17:4, 22:3, 22:15
**100-6** [1] - 1:23
**1041** [3] - 16:7, 16:18, 21:24
**1053** [3] - 16:10, 17:4, 22:3
**1061** [2] - 16:5, 21:22
**10:00** [6] - 43:20, 43:22, 104:13, 104:14, 104:22, 105:19
**10:00-in-the-morning** [1] - 45:14
**11** [3] - 16:12, 17:5, 22:4
**1104** [2] - 16:1, 21:19
**1117** [1] - 15:18
**116** [1] - 63:19
**12** [8] - 16:13, 17:6, 19:11, 19:20, 21:7, 22:5, 25:9
**122** [2] - 16:6, 21:23
**13** [2] - 17:7, 22:6
**1371** [2] - 16:3, 21:20
**1391** [1] - 15:6
**13th** [2] - 47:6, 68:8
**14** [20] - 7:6, 7:8, 17:8, 17:16, 19:9, 20:10, 20:18, 20:23, 21:8, 21:21, 22:7, 22:16, 23:7, 25:8, 26:17, 26:20, 53:22, 105:19
**140** [2] - 80:8, 85:18
**1425** [3] - 16:23, 17:1, 21:25
**1427** [3] - 17:12, 17:17, 21:4
**14th** [9] - 43:23, 45:24, 46:24, 47:12,

48:12, 53:24, 54:12, 99:20, 99:23
**15** [7] - 17:11, 17:17, 19:1, 19:4, 19:6, 19:14, 47:23
**15-minute** [1] - 22:15
**15th** [1] - 68:7
**16** [9] - 11:3, 17:12, 17:17, 20:11, 20:14, 20:16, 21:2, 21:4
**17** [1] - 86:11
**1798** [4] - 16:9, 17:3, 19:11, 22:2
**18** [3] - 26:21, 55:12, 65:8
**18th** [5] - 9:2, 48:1, 48:4, 55:18, 68:8
**19** [1] - 1:6
**1913** [1] - 15:9
**1957** [3] - 16:11, 17:5, 22:4
**19th** [4] - 8:9, 8:19, 8:24, 109:10
**1:03** [1] - 1:7
**1:55** [1] - 22:18

## 2

**2** [14] - 1:10, 3:15, 16:3, 17:13, 21:20, 100:3, 100:7, 100:11, 100:13, 101:6, 101:8, 101:16, 102:3, 102:6
**20001** [2] - 2:4, 109:14
**201** [1] - 59:8
**202** [2] - 2:4, 109:15
**2020** [6] - 38:14, 42:1, 42:17, 42:23, 80:15, 98:2
**2021** [33] - 26:8, 26:11, 26:14, 26:16, 26:17, 26:20, 26:21, 38:11, 43:16, 43:20, 43:23, 45:15, 46:19, 46:24, 47:13, 51:23, 53:22, 53:24, 55:18, 80:1, 80:6, 83:12, 85:13, 86:11, 88:12, 93:11, 96:16, 99:19, 99:20, 104:13, 105:20, 106:8, 106:9
**2022** [3] - 1:6, 93:8, 109:10
**203** [6] - 56:1, 56:20, 56:23, 58:13, 59:2, 60:13
**20530** [1] - 1:17
**21-00670** [1] - 1:3

**21202** [1] - 1:21
**22** [1] - 23:6
**23** [1] - 26:13
**23rd** [4] - 96:16, 106:7, 106:9, 106:15
**24th** [1] - 106:16
**257** [1] - 15:12
**2800** [1] - 1:23
**2:16** [1] - 23:11

## 3

**3** [7] - 16:4, 21:21, 87:1, 87:16, 87:22, 90:11, 101:16
**30th** [3] - 83:12, 93:11, 96:18
**33** [5] - 17:11, 17:17, 18:14, 18:19, 18:25
**333** [2] - 2:3, 109:14
**354-3269** [2] - 2:4, 109:15
**36106** [1] - 1:24
**3:13** [1] - 61:22
**3:30** [1] - 61:22

## 4

**4** [5] - 16:5, 21:22, 87:23, 88:24, 89:5
**400** [1] - 1:20
**410** [1] - 100:17
**475** [1] - 15:3
**4:00** [1] - 74:1
**4:52** [1] - 108:20

## 5

**5** [5] - 4:14, 4:23, 16:6, 21:23, 89:2
**540** [2] - 16:13, 17:7, 22:6
**544** [3] - 16:8, 17:2, 22:1
**555** [1] - 1:16
**5th** [1] - 51:23

## 6

**6** [6] - 4:15, 4:23, 16:7, 16:18, 21:24, 26:11
**6706** [1] - 2:3
**6:00** [2] - 48:1, 48:4
**6th** [42] - 26:9, 38:11, 38:21, 39:6, 39:14, 41:18, 41:19, 41:24,

42:15, 42:22, 43:3, 43:12, 43:22, 43:25, 44:17, 44:22, 46:25, 49:10, 49:25, 52:4, 75:10, 80:1, 80:6, 80:14, 81:5, 81:11, 82:14, 83:13, 85:13, 87:8, 88:11, 97:4, 97:8, 97:15, 97:25, 98:4, 98:5, 98:7, 98:12, 98:15, 99:11, 103:9

## 7

**7** [8] - 4:15, 4:23, 16:8, 16:23, 17:1, 21:25, 26:16, 104:13
**749** [1] - 15:15
**764** [3] - 17:8, 17:16, 22:7
**7th** [6] - 43:20, 45:15, 99:19, 99:22, 104:23, 106:22

## 8

**8** [7] - 4:15, 4:23, 16:9, 17:2, 22:1, 90:9, 90:22
**8th** [4] - 46:19, 47:1, 68:7, 68:8

## 9

**9** [9] - 4:15, 4:23, 16:10, 17:3, 19:11, 21:6, 22:2, 91:4
**900** [1] - 1:20
**93** [7] - 16:12, 17:6, 19:12, 19:21, 19:22, 19:25, 22:5
**9:00** [2] - 108:18, 108:19
**9th** [1] - 65:14

## A

**a)(1** [1] - 89:11
**a)(1)(A** [2] - 89:11
**A-M-E-R-L-I-N-G** [1] - 75:7
**a.m** [6] - 104:13, 104:14, 104:22, 105:19, 108:18, 108:19
**ability** [4] - 57:15, 79:15, 79:19, 109:7

**able** [9] - 10:15, 12:20, 24:25, 56:23, 58:11, 59:10, 71:19, 84:6
**absent** [1] - 10:24
**absolutely** [1] - 93:17
**accept** [5] - 30:21, 35:14, 102:23, 102:25, 106:15
**accident** [1] - 48:14
**accommodation** [1] - 54:25
**accompanied** [1] - 94:8
**accomplished** [1] - 37:14
**according** [7] - 26:13, 35:19, 65:12, 69:1, 97:9, 97:23, 98:8
**account** [1] - 80:19
**accounts** [4] - 95:14, 95:18, 97:9, 97:24
**accurate** [1] - 109:4
**acknowledge** [1] - 68:21
**acontextually** [1] - 73:11
**Act** [1] - 81:16
**act** [1] - 12:17
**acted** [1] - 70:17
**acting** [1] - 70:20
**Action** [1] - 1:3
**action** [1] - 81:7
**actions** [3] - 8:4, 31:14, 68:13
**activities** [1] - 89:15
**acts** [2] - 91:12, 91:14
**addition** [1] - 33:7
**additional** [6] - 7:19, 8:17, 30:13, 90:8, 90:13, 97:1
**additionally** [1] - 37:11
**address** [1] - 11:21, 12:21, 12:22, 43:14, 64:21, 94:13, 95:3, 104:7
**addressed** [1] - 40:21
**addressing** [1] - 56:15
**adequate** [1] - 12:2
**admissibility** [1] - 9:17
**admissible** [5] - 6:19, 32:11, 32:15, 58:20, 60:1

admission [1] - 100:13

admit [3] - 84:14, 100:11, 100:16

admitted [10] - 5:5, 5:6, 5:25, 31:22, 31:23, 32:3, 84:17, 101:6, 101:21, 101:24

advance [1] - 98:6

advice [1] - 35:17

advise [2] - 76:12, 82:7

advised [1] - 96:11

advising [1] - 81:24

advisor [3] - 42:16, 51:7, 82:22

advisory [1] - 86:13

affect [1] - 79:15

affected [3] - 61:2, 61:3, 61:11

affects [1] - 52:25

afraid [1] - 35:10

afternoon [6] - 4:1, 7:11, 50:11, 50:12, 75:3, 75:4

AFTERNOON [1] - 1:5

age [1] - 35:9

agencies [6] - 81:8, 81:10, 88:18, 89:15, 89:16

agent [4] - 58:25, 59:6, 59:11, 59:22

ago [1] - 66:20

agree [7] - 16:18, 17:18, 19:22, 19:24, 22:8, 71:10, 72:5

agreement [1] - 62:18

ahead [1] - 51:20

aid [1] - 24:17

Alabama [1] - 1:24

alleged [1] - 36:3

alleges [3] - 26:18, 26:22, 66:23

allow [5] - 4:23, 59:20, 64:17, 97:21, 106:15

allowed [6] - 59:6, 60:21, 98:25, 103:11, 104:17, 104:19

almost [1] - 54:18

alone [3] - 30:24, 31:3, 31:25

alternate [22] - 11:4, 15:25, 17:9, 17:12, 17:24, 18:3, 18:12, 18:17, 18:20, 18:25, 19:4, 19:6, 19:7, 19:10, 19:15, 20:20,

21:5, 25:12, 25:15

Alternate [4] - 17:11, 17:13

alternate-alternate [1] - 18:17

Alternate-Alternate [2] - 17:11, 17:13

alternates [5] - 17:9, 18:1, 19:8, 19:14, 19:16

alternates' [1] - 25:11

AMANDA [1] - 1:14

ambiguous [1] - 8:25

America [1] - 102:12

AMERICA [1] - 1:3

American [4] - 49:24, 88:21, 91:14, 91:19

Amerling [49] - 3:11, 40:5, 40:6, 40:12, 40:17, 40:22, 41:22, 42:11, 45:14, 46:3, 49:18, 53:4, 53:8, 53:9, 53:16, 55:9, 55:19, 57:18, 59:7, 63:24, 74:5, 74:8, 74:11, 74:18, 75:3, 75:7, 75:8, 84:4, 84:6, 84:21, 85:11, 85:21, 86:9, 86:20, 87:5, 87:10, 87:19, 88:9, 89:5, 89:23, 90:13, 91:6, 91:22, 95:7, 96:8, 99:6, 100:7, 102:5, 103:13

AMERLING [1] - 74:10

amount [1] - 93:23

analysis [1] - 89:17

answer [10] - 10:12, 32:18, 32:20, 32:21, 43:24, 45:24, 46:24, 47:13, 47:19, 48:11

answered [1] - 32:19

answering [1] - 44:4

answers [3] - 78:5, 78:25, 79:11

anyway [1] - 39:2

apologies [2] - 16:16, 67:14

apologize [4] - 16:16, 16:17, 16:22, 88:5

appear [15] - 26:16, 31:2, 47:7, 48:22, 52:7, 53:11, 53:24, 54:1, 54:11, 55:3, 62:23, 99:19, 103:8, 105:19, 105:21

appearance [2] -

54:22, 63:7

aPPEARANCES [1] - 1:13

appearing [2] - 62:12, 98:2

Apple [1] - 51:20

applications [1] - 37:15

applied [1] - 68:24

applies [1] - 30:20

apply [3] - 30:3, 30:21, 68:1

approved [2] - 83:16, 83:24

area [4] - 34:10, 40:25, 51:20, 79:24

argue [6] - 59:14, 67:1, 70:16, 70:22, 71:5, 71:20

argued [2] - 70:23, 71:17

arguing [1] - 10:4, 68:9, 70:4

argument [5] - 8:19, 9:6, 9:11, 32:10, 47:10

arguments [3] - 30:6, 30:8, 30:12

Armed [1] - 89:16

articulate [2] - 64:15, 87:11

articulated [3] - 53:25, 60:1, 100:19

aside [2] - 39:9, 79:4

assault [3] - 80:7, 85:16, 93:21

asserted [1] - 70:19

asserting [1] - 62:13

assertion [4] - 68:4, 70:5, 71:14, 71:20

Assistant [1] - 28:18

associated [2] - 42:21, 43:4

assuming [1] - 105:1

attached [2] - 103:21, 103:25

Attack [4] - 26:9, 41:19, 75:10, 103:9

attack [13] - 26:12, 51:23, 80:1, 81:11, 87:8, 88:12, 88:14, 88:21, 89:13, 90:3, 90:7, 98:4, 98:15

attempt [1] - 59:13

attempted [1] - 85:14

attention [3] - 25:18, 31:5, 37:7

attorney [8] - 45:19, 52:11, 53:16, 55:1, 55:13, 102:22, 103:1,

106:13

ATTORNEY'S [1] - 1:15

Attorney's [1] - 55:24

Attorneys [1] - 28:19

attorneys [4] - 28:21, 34:1, 34:9, 34:13

audiotaped [1] - 51:11

authority [13] - 39:4, 48:22, 49:2, 57:10, 57:11, 77:19, 86:16, 92:3, 93:6, 102:11, 106:17, 107:15

authorized [6] - 27:18, 78:16, 86:23, 90:14, 91:16, 106:4

authorizes [1] - 91:10

authorizing [1] - 91:23

available [5] - 19:15, 21:5, 31:7, 51:11, 62:14

Avenue [2] - 2:3, 109:14

avoid [2] - 34:4, 34:10

aware [5] - 11:17, 62:10, 95:11, 95:13, 95:16

## B

back-and-forth [2] - 53:15, 71:15

background [1] - 85:5

Baltimore [1] - 1:21

BANNON [1] - 1:6

Bannon [68] - 5:11, 9:21, 15:5, 15:11, 15:17, 21:7, 26:7, 28:21, 38:8, 50:13, 50:16, 51:5, 51:9, 51:17, 52:5, 52:9, 52:11, 53:10, 53:18, 53:20, 53:24, 54:3, 54:6, 54:10, 54:17, 55:1, 55:2, 55:14, 58:13, 59:2, 60:13, 61:14, 64:4, 64:5, 64:18, 68:15, 68:19, 68:20, 68:21, 68:22, 69:3, 69:7, 69:11, 69:20, 70:4, 70:17, 71:13, 95:5, 95:8, 95:20, 95:23, 96:11,

96:15, 96:21, 97:23, 97:24, 98:23, 100:9, 100:20, 101:2, 102:7, 102:15, 102:18, 102:19, 102:22, 106:13, 106:14

Bannon's [5] - 53:4, 53:7, 64:13, 68:12, 102:23

bar [1] - 56:3, 63:20

based [20] - 4:22, 7:20, 9:22, 33:13, 35:18, 36:21, 42:6, 42:12, 42:19, 43:8, 46:13, 53:19, 58:10, 63:21, 64:20, 66:15, 71:20, 81:1, 95:22, 100:14

basing [1] - 36:20

bears [1] - 57:25

became [1] - 51:2

become [1] - 95:19

BEFORE [1] - 1:10

began [1] - 26:5, 42:12

begin [3] - 23:24, 25:13, 30:14

beginning [2] - 25:19, 29:2

behalf [4] - 55:9, 102:24, 103:2, 107:15

belief [1] - 66:15

believability [1] - 31:1

believes [1] - 32:11

below [3] - 103:4, 103:12

Bennie [1] - 107:6

best [1] - 109:7

better [3] - 42:8, 80:23, 81:9

between [7] - 13:17, 34:22, 53:16, 55:9, 81:10, 89:21, 106:24

beyond [1] - 27:8, 27:12, 28:2, 28:4, 28:8, 28:13, 54:10, 54:16, 58:8, 60:20

bills [2] - 76:25, 77:3

binder [4] - 74:17, 74:25, 84:10, 87:20

bit [6] - 16:17, 40:3, 44:11, 60:3, 76:18, 79:3, 86:24, 100:22

black [3] - 48:16, 96:2, 96:3

black-and-white [1] - 48:16

blocks [1] - 38:12

blog [1] - 33:9

**blogging** [1] - 35:12
**blown** [1] - 86:10
**blue** [1] - 96:3
**Bob** [7] - 52:11, 53:4,
53:7, 53:8, 53:17,
53:25, 55:1
**bodies** [1] - 83:24
**books** [1] - 41:8
**bottom** [1] - 105:24
**box** [9] - 11:16,
20:11, 20:12, 20:19,
22:17, 25:9, 74:9,
103:6, 103:14
**branches** [1] - 89:18
**breach** [2] - 42:3,
44:19
**breached** [1] - 38:12
**break** [1] - 98:5
**brief** [5] - 22:22,
29:14, 29:23, 61:18,
73:15
**briefed** [1] - 100:15
**briefly** [4] - 26:2,
30:15, 36:4, 80:4
**bring** [8] - 27:2,
34:21, 73:17, 73:23,
77:15, 84:3, 89:21,
100:2
**broad** [2] - 51:18,
51:21
**broadcast** [1] - 51:13
**broadly** [1] - 68:24
**broke** [1] - 4:13
**broken** [1] - 49:7
**broken-down** [1] -
49:7
**brutal** [1] - 80:7
**building** [1] - 105:15
**buildings** [1] - 104:9
**bulletin** [1] - 86:13
**burden** [4] - 28:3,
28:4, 58:8, 60:19
**business** [1] - 50:19
**BY** [19] - 2:1, 75:2,
84:5, 84:20, 85:10,
86:8, 87:3, 87:17,
88:7, 89:4, 89:22,
90:12, 90:23, 91:5,
96:7, 99:5, 100:6,
102:4, 106:1

**C**

**c/o** [1] - 106:13
**campaign** [1] - 43:6
**campaigns** [1] - 90:5
**candidacy** [1] - 51:3
**candidate** [1] - 51:2
**candidates** [2] -

42:17, 52:21
**cannot** [2] - 36:16,
72:7
**capital** [1] - 88:19
**Capitol** [22] - 26:10,
26:12, 38:12, 41:20,
42:3, 42:5, 44:19,
51:24, 51:25, 75:11,
80:2, 81:9, 85:17,
87:8, 88:13, 88:14,
88:17, 89:14, 90:3,
90:7, 93:21, 103:9
**car** [1] - 49:7
**care** [2] - 102:15,
102:19
**career** [1] - 50:20
**careful** [1] - 31:5
**carefully** [2] - 23:21,
61:9
**CARL** [1] - 1:10
**carried** [1] - 57:16
**carry** [3] - 41:3,
90:14, 92:7
**carrying** [1] - 94:4
**case** [82] - 6:7,
10:14, 24:18, 25:17,
25:25, 26:4, 26:7,
27:24, 29:2, 29:8,
29:25, 30:1, 30:5,
30:6, 30:9, 30:20,
30:23, 31:18, 31:19,
31:22, 32:25, 33:1,
33:3, 33:7, 33:9,
33:12, 33:13, 33:19,
33:20, 33:21, 34:2,
34:3, 34:8, 34:12,
34:14, 34:18, 35:2,
35:4, 35:7, 35:11,
35:17, 35:23, 36:6,
36:25, 37:1, 37:4,
37:22, 38:1, 44:2,
46:17, 49:4, 49:5,
49:9, 49:11, 49:13,
49:14, 49:21, 50:2,
50:15, 54:18, 55:12,
55:25, 56:22, 57:2,
57:8, 57:17, 57:20,
58:1, 58:3, 59:19,
60:15, 60:17, 61:12,
62:15, 64:13, 64:18,
64:21, 79:1, 108:6,
108:11
**cases** [1] - 36:23
**category** [1] - 91:15
**causes** [6] - 41:24,
41:25, 80:1, 88:11,
88:16, 89:13
**certain** [2] - 11:17,
46:5
**certainly** [1] - 57:3

**CERTIFICATE** [1] -
109:1
**certify** [2] - 38:13,
109:4
**chair** [1] - 15:22
**chairman** [2] - 107:5,
107:7
**Chairman** [6] -
63:23, 64:14, 64:15,
65:16, 69:3, 107:6
**chambers** [2] - 7:2,
73:16
**chance** [3] - 30:5,
36:7, 36:10
**chances** [2] - 52:24
**changed** [5] - 42:8,
43:14, 65:10, 65:12,
65:24
**changes** [1] - 90:25
**charged** [5] - 27:9,
27:10, 28:9, 48:9,
66:22
**charges** [2] - 26:7,
50:14
**charging** [1] - 27:1
**chatroom** [1] - 35:13
**check** [1] - 106:14
**checkbox** [1] -
104:25
**checkboxes** [1] -
103:13
**checked** [3] -
103:14, 103:15, 105:1
**chief** [2] - 29:8, 30:1,
75:9, 81:20
**choice** [1] - 48:15
**choose** [2] - 29:3,
31:9
**chose** [1] - 39:3
**circumstances** [5] -
80:1, 88:11, 89:12,
89:14, 89:24
**citizens** [4] - 39:20,
40:9, 40:18, 49:20
**Citron** [1] - 106:7
**city** [1] - 106:7
**civil** [2] - 67:4, 67:5
**claim** [5] - 14:1, 46:5,
67:1, 70:22, 71:7
**claimed** [1] - 46:9
**claiming** [1] - 46:9
**claims** [2] - 30:11,
46:2
**clarification** [1] -
106:12
**clarifying** [1] -
106:19
**clear** [10] - 7:1, 9:19,
14:9, 21:17, 44:25,
45:4, 45:10, 49:9,

53:23, 70:25
**clearly** [7] - 26:24,
53:12, 53:25, 55:2,
57:21, 61:20, 71:4
**clerk** [3] - 37:8,
107:20, 107:23
**client** [1] - 103:2
**clock** [2] - 61:20,
61:21
**close** [3] - 6:7, 57:6,
103:4
**closing** [3] - 30:6,
30:7, 30:12
**co** [1] - 34:24
**co-workers** [1] -
34:24
**cofounded** [1] -
50:21
**collect** [1] - 63:9
**collected** [1] - 25:4
**collecting** [1] - 77:8
**collection** [1] - 89:17
**colloquy** [1] - 67:9
**Columbia** [2] - 2:2,
109:13
**COLUMBIA** [2] - 1:1,
1:15
**comfortable** [1] -
74:12
**coming** [1] - 43:15,
72:12
**commanded** [2] -
48:21, 103:7
**comment** [1] - 31:12
**commentary** [1] -
50:22
**commit** [1] - 86:19
**committed** [9] - 27:8,
47:19, 53:21, 54:17,
59:18, 71:7, 103:22,
104:1, 105:7
**committee** [11] -
40:24, 41:18, 41:21,
78:14, 78:15, 79:19,
79:21, 103:22,
103:23, 105:7, 105:8
**Committee** [175] -
8:3, 8:4, 8:10, 8:12,
8:23, 9:7, 9:24, 13:18,
14:1, 14:2, 26:9,
26:10, 26:14, 27:15,
27:18, 38:21, 41:19,
41:21, 41:23, 42:6,
42:12, 42:19, 42:25,
43:8, 43:24, 44:2,
44:8, 45:5, 45:11,
45:15, 45:20, 45:21,
46:4, 46:14, 46:15,
46:19, 46:21, 47:2,
47:8, 47:10, 47:20,

47:21, 47:22, 48:17,
48:18, 48:24, 49:1,
53:3, 53:9, 53:17,
54:20, 54:21, 55:10,
55:19, 56:15, 59:3,
64:6, 64:7, 65:16,
68:1, 68:17, 70:23,
71:21, 71:25, 75:10,
75:12, 75:14, 76:1,
76:12, 76:13, 76:17,
79:1, 79:12, 79:22,
79:25, 80:16, 80:18,
81:1, 81:2, 81:12,
81:19, 81:21, 81:23,
81:25, 82:7, 82:11,
82:12, 82:15, 82:21,
83:11, 84:2, 84:13,
85:23, 86:3, 86:21,
86:22, 87:7, 87:12,
87:24, 88:2, 89:6,
89:10, 89:25, 90:1,
90:14, 91:7, 91:10,
91:16, 91:24, 92:3,
92:5, 92:11, 92:12,
92:15, 92:18, 92:21,
92:22, 92:23, 93:6,
93:10, 93:14, 93:15,
93:20, 94:3, 94:6,
94:8, 94:10, 94:11,
94:13, 94:24, 95:2,
95:4, 95:10, 95:15,
95:19, 95:20, 96:8,
96:14, 96:15, 96:17,
96:22, 96:25, 97:1,
97:3, 97:6, 97:7,
97:13, 97:20, 97:22,
98:25, 99:1, 99:6,
99:10, 99:15, 99:18,
99:20, 100:19,
100:23, 100:24,
101:22, 102:22,
103:8, 104:2, 104:3,
104:19, 104:21,
107:6, 107:7, 107:9,
107:10, 107:11,
107:12, 107:16
**Committee's** [1] -
79:15
**Committee's** [14] -
43:11, 43:13, 45:2,
47:13, 82:4, 83:9,
91:24, 93:2, 93:4,
93:20, 96:20, 97:14,
99:9, 101:3
**Committee)** [1] -
87:9
**committees** [27] -
40:23, 40:24, 40:25,
41:2, 41:4, 41:12,
41:15, 44:9, 76:3,
76:5, 76:6, 76:9,

76:11, 76:19, 76:20, 76:22, 77:7, 77:10, 77:15, 77:17, 77:19, 78:19, 78:24, 79:5, 81:17, 83:3, 92:7

**communicate** [1] - 14:23

**communicated** [4] - 14:24, 53:8, 53:12, 101:23

**communication** [1] - 33:10

**communications** [3] - 35:8, 35:9, 44:21

**companies** [1] - 40:19

**company** [1] - 50:21

**compel** [1] - 77:17

**compelling** [1] - 41:11

**competent** [3] - 63:23, 63:24, 64:2

**complete** [3] - 80:19, 93:12, 109:6

**completed** [1] - 96:23

**Complex** [2] - 85:17, 88:13

**compliance** [2] - 48:7, 71:2

**comply** [38] - 8:10, 9:3, 9:4, 13:24, 14:2, 14:4, 26:22, 27:19, 27:20, 27:21, 39:7, 39:10, 44:13, 45:21, 46:6, 47:2, 48:6, 48:14, 48:19, 48:24, 54:4, 62:17, 65:18, 65:19, 65:21, 66:22, 67:3, 68:16, 68:20, 68:22, 70:18, 70:24, 78:21, 93:15

**complying** [6] - 46:1, 46:17, 47:11, 66:19, 66:20, 69:23

**computer** [1] - 35:7

**computers** [1] - 35:11

**concern** [1] - 9:15

**concerned** [2] - 7:20, 7:22

**concerning** [1] - 36:25

**concerns** [2] - 90:2, 90:15

**concluded** [1] - 108:22

**conclusion** [2] - 9:12, 27:4

**conclusions** [1] -

90:16

**conduct** [7] - 27:19, 30:17, 35:22, 36:5, 76:24, 77:2, 92:3

**conducted** [3] - 57:24, 105:13

**conducting** [3] - 26:11, 83:4, 83:7

**conducts** [1] - 75:20

**confer** [2] - 18:4, 20:4

**conference** [3] - 12:12, 12:19, 13:20

**Confers** [1] - 108:13

**confers** [1] - 22:14

**confirm** [1] - 19:19

**confirmed** [1] - 106:16

**confused** [1] - 49:6

**Congress** [64] - 26:8, 27:11, 27:12, 27:14, 38:7, 38:10, 38:15, 38:18, 38:22, 39:5, 39:7, 39:18, 39:22, 39:24, 40:1, 40:4, 40:7, 40:13, 40:15, 40:17, 40:23, 41:1, 43:4, 48:22, 49:23, 50:5, 52:18, 52:19, 52:21, 53:1, 56:1, 56:24, 57:5, 57:11, 57:21, 57:22, 58:13, 58:14, 59:1, 59:2, 59:3, 59:5, 59:17, 60:11, 60:13, 75:16, 75:18, 75:20, 75:23, 75:24, 76:6, 76:25, 78:18, 80:13, 80:25, 81:18, 82:15, 82:18, 82:20, 82:25, 83:23, 93:7, 102:12

**Congress's** [3] - 38:13, 39:4, 85:15

**congressional** [4] - 53:21, 54:12, 63:20, 82:2

**connected** [2] - 25:24, 34:3

**consequences** [1] - 48:25

**consider** [13] - 30:4, 31:1, 31:21, 47:25, 52:3, 55:23, 60:15, 60:23, 76:25, 81:13, 91:10, 91:17, 101:1

**considerable** [1] - 53:15

**consideration** [1] - 66:15

**considerations** [1] -

59:10

**considered** [2] - 36:15, 56:24

**considering** [3] - 57:4, 82:10, 91:7

**consistent** [5] - 12:18, 13:19, 68:13, 87:23, 88:23

**consistently** [1] - 68:14

**consists** [2] - 75:24, 83:7

**constitutes** [1] - 109:4

**Constitution** [2] - 2:3, 109:14

**constitutional** [2] - 85:15, 88:22

**contact** [4] - 33:25, 34:6, 95:1, 108:10

**contacted** [1] - 53:4

**contain** [1] - 90:16

**contained** [1] - 102:5

**contempt** [24] - 26:8, 27:11, 27:14, 39:3, 48:9, 48:10, 48:11, 48:13, 50:5, 55:22, 55:23, 56:21, 57:5, 57:22, 58:14, 59:2, 59:5, 60:14, 64:8, 67:4, 67:5, 70:20, 71:7

**continue** [1] - 86:18

**continued** [2] - 65:23, 95:16

**continues** [2] - 84:24, 94:3

**contrary** [1] - 53:5

**contributed** [1] - 90:3

**control** [1] - 91:24

**conversation** [3] - 11:24, 34:5

**convinced** [1] - 27:7

**copy** [2] - 84:12, 100:8

**CORCORAN** [34] - 1:18, 4:8, 4:11, 4:13, 6:1, 6:3, 15:4, 15:10, 15:16, 16:20, 17:14, 17:21, 19:3, 19:19, 20:1, 20:8, 20:17, 22:12, 50:10, 50:13, 56:19, 57:3, 57:10, 58:5, 58:7, 58:17, 58:19, 58:24, 60:5, 60:9, 61:8, 84:16, 97:17, 100:12

**Corcoran** [14] - 3:6, 4:7, 7:14, 10:10, 19:2,

19:24, 20:7, 22:11, 28:22, 50:8, 56:18, 60:2, 61:6, 61:16

**correct** [20] - 6:1, 10:22, 13:7, 14:16, 14:17, 16:23, 18:17, 18:18, 36:10, 76:2, 76:8, 83:14, 85:24, 93:9, 93:13, 94:17, 105:4, 105:16, 106:11

**corrective** [8] - 81:6, 90:17, 90:19, 90:24, 91:9, 91:10, 91:12, 91:16

**correspond** [1] - 17:19

**corresponds** [1] - 15:23

**corridor** [1] - 34:8

**Costello** [25] - 4:24, 13:5, 13:10, 13:17, 14:10, 52:12, 53:4, 53:7, 53:8, 53:17, 53:25, 55:1, 55:10, 55:13, 65:1, 65:5, 65:6, 65:16, 67:20, 68:21, 69:12, 102:15, 102:17, 102:20, 102:21

**Costello's** [1] - 68:11

**counsel** [7] - 11:11, 18:4, 20:4, 22:24, 74:21, 75:9, 81:20

**counsels** [1] - 95:2

**Count** [1] - 81:16

**count** [2] - 48:10, 48:11

**country** [8] - 40:10, 40:19, 41:14, 49:19, 50:16, 50:22, 51:5, 51:6

**counts** [2] - 26:8, 27:11

**couple** [3] - 89:8, 99:14, 103:13

**course** [3] - 30:19, 35:21, 59:10

**Court** [20] - 2:1, 2:2, 4:22, 11:17, 12:4, 13:1, 15:1, 15:4, 15:7, 15:10, 15:13, 15:16, 18:22, 19:19, 32:5, 64:25, 71:4, 84:4, 109:12, 109:13

**COURT** [135] - 1:1, 4:3, 4:10, 4:12, 5:10, 6:2, 6:4, 6:11, 6:17, 7:1, 8:1, 8:14, 8:18, 8:23, 9:6, 9:11, 9:16, 9:19, 10:2, 10:6, 10:8,

10:17, 10:24, 11:9, 11:13, 11:23, 12:7, 12:11, 12:14, 12:17, 12:24, 13:4, 13:9, 13:12, 13:19, 14:6, 14:12, 14:16, 14:19, 14:22, 15:2, 15:5, 15:8, 15:11, 15:14, 15:17, 16:15, 16:21, 17:16, 17:22, 18:5, 18:9, 18:11, 18:15, 18:19, 18:23, 19:5, 19:21, 19:24, 20:3, 20:5, 20:7, 20:13, 20:18, 20:23, 21:3, 21:15, 22:11, 22:13, 22:15, 23:4, 23:13, 23:18, 50:7, 56:4, 56:8, 56:10, 56:18, 57:1, 57:8, 58:2, 58:6, 58:15, 58:18, 58:22, 59:12, 59:20, 60:8, 61:5, 61:16, 62:5, 62:9, 62:22, 63:3, 63:5, 63:14, 64:11, 64:23, 66:1, 66:4, 66:10, 67:6, 67:9, 67:12, 67:14, 67:23, 68:9, 69:9, 69:13, 69:15, 70:2, 70:7, 70:12, 70:16, 71:10, 72:5, 72:21, 73:1, 73:3, 73:14, 73:22, 73:25, 74:3, 74:11, 74:20, 74:24, 84:17, 96:6, 97:21, 98:19, 100:16, 101:6, 101:13, 101:19, 108:2

**court** [10] - 19:18, 21:14, 34:20, 35:19, 36:14, 36:15, 36:16, 60:7, 74:13, 78:6

**Court's** [3] - 3:4, 62:10, 74:16

**courthouse** [1] - 34:7

**courtroom** [18] - 15:23, 22:14, 23:7, 23:11, 24:6, 24:24, 25:3, 25:11, 33:14, 33:15, 34:4, 36:9, 37:5, 74:1, 74:6, 95:23, 108:13, 108:20

**COURTROOM** [6] - 4:1, 11:7, 11:10, 21:1, 23:2, 23:17, 62:3, 63:11, 73:20, 74:8

**cover** [1] - 62:21

**coverage** [1] - 37:1

**credibility** [1] - 30:25

**credit** [1] - 36:13
**crime** [7] - 27:1,
36:3, 39:18, 53:21,
54:17, 57:13, 59:18
**crimes** [1] - 47:19
**criminal** [6] - 26:4,
27:24, 33:20, 39:10,
47:4, 55:20
**Criminal** [1] - 1:3
**critical** [3] - 55:10,
55:15, 56:22
**critically** [1] - 57:11
**Cross** [1] - 3:8
**cross** [6] - 29:13,
29:22, 59:22, 66:7,
72:14, 72:17
**cross-examination**
[4] - 29:13, 59:22,
66:7, 72:14
**cross-examine** [1] -
29:22
**CRR** [3] - 2:1, 109:3,
109:12
**crystal** [1] - 53:23
**currency** [1] - 53:1
**current** [1] - 6:19
**cut** [2] - 4:19, 5:7

**D**

**D.C** [7] - 1:6, 1:17,
2:4, 42:4, 98:16,
106:7, 109:14
**darkest** [1] - 85:13
**date** [23] - 8:5, 8:25,
9:1, 9:8, 9:9, 47:15,
49:6, 54:13, 54:23,
55:3, 71:13, 71:15,
71:16, 103:11,
104:10, 104:16,
104:20, 105:21,
106:3, 106:9, 106:10,
106:21, 106:25
**dated** [1] - 55:12
**Dated** [1] - 109:10
**dates** [8] - 5:14,
54:15, 68:8, 71:21,
71:22, 72:1, 72:4
**DAVID** [2] - 1:22,
1:22
**Davidson** [1] -
102:16
**DAY** [1] - 1:10
**days** [2] - 85:13,
98:14
**deadline** [6] - 9:4,
45:15, 45:17, 48:5,
79:6, 106:22
**deadlines** [11] -

46:13, 47:16, 66:22,
78:20, 78:23, 93:1,
93:2, 93:14, 93:16,
99:22, 99:24
**deal** [1] - 59:3
**dealt** [1] - 51:16
**deaths** [2] - 80:9,
85:17
**debate** [2] - 62:13,
62:21
**decades** [1] - 82:19
**decide** [13] - 27:6,
31:3, 31:15, 33:13,
35:17, 35:18, 36:13,
37:4, 37:25, 46:12,
49:2, 60:19, 71:6
**decided** [12] - 4:22,
12:6, 13:3, 36:6,
39:18, 39:19, 63:1,
68:1, 68:17, 68:23,
69:25, 70:1
**deciding** [1] - 71:7
**decision** [14] - 6:18,
33:2, 36:21, 48:15,
49:2, 52:22, 56:13,
60:22, 63:25, 64:1,
64:7, 66:14, 66:16,
96:9
**decision-making** [3]
- 56:13, 63:25, 64:1
**decisions** [2] - 33:5,
36:20
**default** [8] - 8:4, 8:7,
8:12, 8:17, 8:21, 9:21,
9:24
**defaulted** [3] - 26:19,
54:11
**Defendant** [108] -
1:7, 6:7, 10:4, 10:8,
10:12, 11:1, 11:2,
13:23, 14:4, 26:7,
26:15, 26:18, 27:3,
27:4, 27:8, 27:10,
27:15, 27:19, 28:1,
28:4, 28:9, 28:13,
28:17, 28:20, 28:21,
28:24, 28:25, 29:17,
38:8, 38:10, 38:16,
38:18, 38:20, 39:1,
39:12, 39:18, 39:23,
42:13, 42:16, 42:20,
42:22, 43:1, 43:9,
43:17, 43:19, 43:21,
43:23, 44:3, 44:16,
44:25, 45:1, 45:4,
45:7, 45:10, 45:12,
45:16, 45:19, 45:20,
46:1, 46:8, 46:12,
46:16, 46:20, 46:22,
47:2, 47:5, 47:7,

47:15, 47:22, 48:6,
48:17, 48:18, 48:21,
48:24, 49:5, 49:10,
49:11, 49:22, 50:4,
56:12, 70:24, 71:7,
71:19, 96:5, 96:9,
96:10, 96:14, 97:2,
97:3, 97:6, 97:8, 97:9,
97:14, 99:7, 99:16,
99:23, 103:16,
104:10, 104:15,
104:22, 105:2, 105:3,
105:11, 105:14,
105:17, 105:21,
106:20
**defendant** [4] -
27:24, 28:6, 29:18,
57:15
**DEFENDANT** [1] -
1:18
**Defendant's** [12] -
13:9, 27:21, 29:2,
40:5, 44:13, 44:20,
48:8, 48:13, 48:19,
49:1, 49:2, 66:14
**defense** [18] - 10:14,
10:16, 28:17, 28:20,
29:11, 29:13, 29:20,
29:23, 29:24, 62:14,
64:18, 64:19, 66:17,
66:25, 71:23, 74:20
**defenses** [1] - 6:9
**defied** [3] - 47:16,
47:18, 47:24
**define** [1] - 92:4
**delay** [4] - 7:18,
41:25, 42:24, 44:20
**delayed** [1] - 38:13
**deliberate** [6] -
25:10, 26:23, 27:23,
48:14, 48:19, 66:14
**deliberately** [1] -
9:21
**deliberations** [10] -
24:4, 24:16, 24:23,
25:14, 30:4, 30:14,
31:8, 32:8, 32:22,
62:20
**deliver** [1] - 25:3
**delivered** [1] - 33:11
**demanded** [1] -
77:23
**democracy** [3] -
42:8, 85:14, 88:21
**democratic** [4] -
91:14, 91:19, 93:22,
94:2
**demonstrating** [2] -
100:19, 101:22
**denied** [1] - 64:12

**depart** [2] - 103:23,
105:8
**Department** [1] -
86:12
**deposition** [14] -
26:17, 43:23, 44:1,
45:23, 46:24, 47:8,
47:18, 48:12, 78:17,
99:20, 105:6, 105:10,
105:18, 105:22
**depositions** [5] -
44:7, 59:4, 77:13,
78:17, 105:12
**deputy** [4] - 22:14,
75:9, 81:20, 108:13
**DEPUTY** [10] - 4:1,
11:7, 11:10, 21:1,
23:2, 23:17, 62:3,
63:11, 73:20, 74:8
**describe** [10] - 30:15,
76:20, 77:7, 77:20,
80:4, 82:6, 85:2,
96:19, 103:19, 107:19
**described** [6] -
82:21, 87:23, 88:24,
90:17, 90:20, 90:24
**describes** [1] - 94:9
**describing** [4] - 83:5,
85:22, 101:20, 106:13
**description** [2] -
85:21, 94:12
**designated** [1] -
78:18
**destroyed** [1] - 25:5
**detailed** [1] - 24:2
**details** [3] - 13:25,
27:22, 38:16
**determine** [4] - 9:17,
30:22, 30:24, 39:17
**develop** [3] - 76:24,
77:6, 79:11
**developed** [1] -
51:10
**development** [1] -
75:21
**develops** [1] - 75:20
**devices** [1] - 35:11
**different** [17] - 8:18,
9:12, 36:19, 36:20,
48:5, 50:16, 57:20,
66:23, 68:4, 75:23,
77:10, 78:7, 82:8,
82:9, 83:22, 88:1,
94:9
**differently** [1] - 32:7
**digit** [2] - 21:2, 21:3
**ding** [1] - 66:20
**direct** [3] - 29:10,
29:21, 53:6
**Direct** [1] - 3:8

**DIRECT** [1] - 75:1
**directing** [2] - 26:15,
48:24
**director** [3] - 75:9,
81:21, 81:22
**disabled** [1] - 64:19
**discharged** [1] -
34:22
**disclose** [3] - 17:25,
25:12, 35:16
**discuss** [10] - 16:24,
18:2, 32:25, 33:21,
34:21, 37:7, 37:9,
37:22, 98:16, 108:6
**discussed** [7] - 6:21,
7:14, 18:16, 19:17,
34:9, 51:17, 100:14
**discussing** [3] -
4:13, 7:12, 71:12
**discussion** [7] -
4:15, 4:19, 5:8, 5:18,
6:20, 7:11, 34:11
**discussions** [4] -
34:11, 54:14, 98:9,
98:14
**dismiss** [1] - 63:20
**disposal** [1] - 92:7
**disregard** [3] -
31:19, 32:21, 49:22
**dissemination** [1] -
89:17
**distinction** [1] - 6:16
**distracts** [1] - 24:13
**DISTRICT** [4] - 1:1,
1:1, 1:11, 1:15
**district** [1] - 109:13
**District** [3] - 2:2, 2:2,
109:13
**divided** [1] - 76:22
**document** [17] -
11:10, 15:1, 15:4,
15:10, 15:13, 15:16,
45:23, 60:24, 61:10,
73:9, 73:12, 77:21,
77:23, 84:9, 84:10,
84:21, 103:2
**documents** [31] -
13:14, 15:7, 32:23,
43:21, 44:14, 44:16,
44:23, 45:1, 45:8,
46:23, 47:17, 48:10,
48:23, 52:8, 53:11,
73:12, 74:17, 77:4,
77:12, 77:22, 78:2,
78:20, 92:20, 94:10,
94:24, 99:17, 99:23,
104:12, 104:20,
106:21, 106:23
**domestic** [9] - 88:12,
88:14, 89:13, 90:3,

90:7, 91:13, 91:20, 91:21
**Donald** [3] - 42:17, 51:3, 51:7
**done** [7] - 12:14, 45:5, 47:23, 49:11, 72:16, 98:23, 104:21
**door** [6] - 6:8, 65:2, 65:11, 65:23, 70:4, 72:11
**doubt** [10] - 27:8, 27:13, 28:2, 28:4, 28:8, 28:13, 54:10, 54:17, 58:9, 60:20
**down** [5] - 14:21, 14:22, 15:20, 49:7, 86:24
**download** [1] - 51:15
**downloaded** [1] - 37:15
**draw** [1] - 27:3
**due** [1] - 86:13
**duly** [1] - 23:15
**Dunn** [15] - 85:8, 86:6, 86:25, 87:15, 88:5, 89:1, 89:3, 89:20, 90:10, 90:21, 91:3, 100:5, 101:15, 102:2, 105:25
**Dunn-Gordon** [15] - 85:8, 86:6, 86:25, 87:15, 88:5, 89:1, 89:3, 89:20, 90:10, 90:21, 91:3, 100:5, 101:15, 102:2, 105:25
**during** [20] - 12:12, 12:18, 13:20, 14:13, 24:10, 24:16, 24:23, 24:24, 25:16, 25:21, 31:8, 31:11, 32:3, 32:5, 32:8, 34:2, 35:21, 37:7, 82:24, 85:14
**duty** [3] - 28:9, 30:20, 34:23

---

**E**

---

**East** [1] - 1:20
**ECF** [1] - 63:19
**EDWARDS** [2] - 2:1, 109:3
**Edwards** [1] - 109:12
**effect** [5] - 20:10, 30:24, 68:2, 68:17, 68:22
**effectively** [1] - 18:15
**efficiency** [1] - 4:9

**efficient** [1] - 30:18
**effort** [7] - 8:17, 41:25, 42:24, 43:5, 44:19, 48:7, 62:17
**efforts** [3] - 82:4, 98:1, 98:17
**eight** [4] - 23:5, 52:4, 52:5
**either** [10] - 4:24, 18:2, 19:13, 20:14, 28:20, 57:23, 69:23, 70:4, 71:11, 83:20
**elected** [8] - 40:9, 41:1, 51:4, 76:7, 76:9, 76:13, 81:18, 81:19
**election** [14] - 38:14, 42:1, 42:18, 42:23, 43:5, 44:20, 52:20, 80:10, 80:12, 80:15, 81:15, 85:16, 98:2, 98:18
**elections** [2] - 42:9, 43:14
**elective** [1] - 50:25
**Electoral** [1] - 81:16
**electronic** [2] - 35:9, 35:11
**electronically** [3] - 33:9, 104:15, 104:20
**element** [6] - 28:8, 28:12, 58:6, 58:20, 58:21, 60:20
**elements** [6] - 27:13, 27:14, 27:22, 59:15, 59:16, 62:14
**elevator** [1] - 34:8
**Eleventh** [1] - 1:16
**email** [3] - 6:23, 7:2, 35:15
**emailing** [1] - 35:12
**emails** [1] - 44:24
**emphasize** [1] - 24:1
**employed** [1] - 75:8
**employees** [1] - 85:19
**enact** [1] - 76:25
**encounter** [1] - 34:3
**end** [21] - 6:6, 23:23, 24:3, 25:2, 25:13, 27:6, 27:23, 30:2, 30:12, 33:2, 44:25, 49:13, 49:21, 50:2, 60:18, 61:12, 93:7, 93:8, 103:6, 103:10
**ends** [1] - 93:6
**enforceable** [1] - 38:19
**enforcement** [6] - 80:7, 81:7, 85:18, 88:18, 89:15, 93:22

**engage** [1] - 95:2
**engaged** [3] - 88:22, 96:23, 97:9
**engagement** [1] - 53:6
**entered** [6] - 23:11, 25:10, 74:1, 74:6, 84:19, 101:9
**entering** [1] - 42:5
**entire** [3] - 7:7, 38:1, 50:22
**entirely** [2] - 24:11, 31:9
**entirety** [2] - 4:24, 5:25
**entitled** [3] - 38:23, 40:15, 87:4
**environment** [1] - 86:14
**escort** [1] - 23:8
**ESQ** [5] - 1:14, 1:14, 1:18, 1:19, 1:22
**Esquire** [1] - 102:15
**essentially** [1] - 12:25
**establish** [3] - 69:21, 97:20, 99:2
**established** [7] - 83:11, 83:15, 83:16, 87:7, 93:10, 93:11, 96:17
**establishes** [2] - 64:13, 84:13
**establishing** [3] - 84:1, 93:25, 101:24
**Establishment** [1] - 87:4
**establishment** [4] - 83:9, 86:2, 87:6, 87:11
**evaluate** [1] - 79:20
**evaluating** [1] - 80:20
**evaluation** [1] - 79:13
**event** [1] - 64:9
**events** [2] - 38:11, 38:16, 39:6, 41:17, 41:24, 43:2, 44:22, 80:6, 80:9, 97:25, 98:6, 98:11
**everyday** [1] - 41:2
**evidence** [79] - 4:14, 8:12, 24:13, 24:18, 24:19, 24:21, 25:24, 26:25, 27:3, 27:7, 28:7, 29:5, 29:6, 29:17, 29:19, 29:20, 30:2, 30:9, 30:10, 30:11, 30:25, 31:21,

31:22, 31:24, 32:1, 32:3, 32:6, 32:8, 32:10, 32:14, 33:6, 35:19, 36:6, 36:14, 36:15, 36:21, 37:5, 44:12, 45:12, 48:4, 49:4, 49:22, 50:4, 50:15, 51:4, 51:18, 52:3, 53:6, 53:13, 53:20, 53:22, 54:5, 54:7, 54:13, 55:6, 55:11, 55:25, 56:22, 57:13, 57:20, 58:1, 58:9, 59:15, 59:16, 60:15, 60:17, 60:24, 61:1, 61:2, 61:9, 61:13, 63:21, 73:8, 84:19, 101:9
**EVIDENCE** [1] - 3:13
**exactly** [10] - 20:13, 20:20, 58:23, 59:23, 63:22, 67:16, 69:17, 69:19, 71:3, 72:3
**examination** [8] - 29:11, 29:13, 29:15, 29:22, 29:23, 59:22, 66:7, 72:14
**EXAMINATION** [1] - 75:1
**examine** [1] - 29:22
**example** [4] - 34:7, 35:23, 63:19, 64:14, 81:14, 81:16, 85:11, 86:5
**examples** [1] - 81:7
**except** [1] - 100:13
**exclude** [1] - 71:4
**excluded** [2] - 18:19, 19:6
**excluding** [1] - 72:8
**exclusive** [1] - 31:20
**exculpatory** [1] - 59:9
**excuse** [8] - 13:24, 42:25, 46:16, 55:3, 55:5, 55:6, 67:7, 71:2
**excused** [1] - 23:6
**excuses** [2] - 39:8, 66:16
**execution** [1] - 90:7
**executive** [3] - 70:22, 71:1, 71:24
**exercise** [4] - 14:20, 17:24, 18:2, 18:12, 82:1, 86:16
**exercised** [11] - 15:2, 15:5, 15:8, 15:11, 15:14, 15:17, 17:10, 18:16, 18:25, 20:15, 21:6

**exercising** [2] - 15:24, 82:10
**Exhibit** [23] - 3:14, 3:15, 84:4, 84:6, 84:9, 84:11, 84:15, 84:17, 84:18, 86:7, 87:1, 89:2, 90:10, 91:4, 100:3, 100:7, 100:11, 100:13, 101:6, 101:8, 101:16, 102:3, 102:6
**exhibit** [5] - 87:20, 100:16, 100:18, 101:21
**EXHIBITS** [1] - 3:13
**Exhibits** [1] - 4:14
**exhibits** [14] - 4:18, 4:20, 4:21, 5:22, 5:24, 11:18, 11:19, 11:25, 31:23, 32:2, 32:23, 72:23, 74:21, 74:22
**exist** [1] - 9:25
**existence** [1] - 31:25
**existing** [1] - 19:8
**exited** [1] - 108:20
**expect** [2] - 12:17, 29:6
**expeditiously** [1] - 94:4
**experience** [3] - 82:19, 83:7, 107:12
**expert** [1] - 85:25
**expertise** [1] - 40:25
**experts** [2] - 81:4, 94:1
**explain** [12] - 23:24, 26:2, 28:15, 36:4, 36:10, 40:6, 40:12, 40:17, 46:3, 48:2, 83:18, 94:5
**expressed** [1] - 31:17
**extend** [1] - 8:24
**extended** [2] - 71:14, 72:1
**extending** [1] - 9:8
**extent** [6] - 7:25, 8:9, 11:25, 31:3, 72:16, 97:17
**extremism** [2] - 91:13, 91:21
**extremists** [1] - 86:15

---

**F**

---

**face** [4] - 35:7, 39:10, 48:23
**face-to-face** [1] - 35:7

**Facebook** [1] - 33:11
**facing** [1] - 40:20
**fact** [11] - 31:25, 45:13, 61:22, 79:7, 81:2, 83:4, 92:8, 98:23, 101:2, 106:16
**fact-finding** [4] - 79:7, 81:2, 83:4, 92:8
**factored** [1] - 90:6
**factors** [3] - 4:22, 88:20, 90:2
**facts** [21] - 5:13, 8:16, 30:23, 30:24, 31:16, 31:18, 35:18, 35:24, 36:19, 77:4, 77:8, 79:8, 79:13, 79:17, 79:25, 88:11, 88:16, 89:12, 89:14, 89:24, 100:25
**failed** [4] - 9:3, 9:4, 27:19, 28:12
**failure** [6] - 26:22, 27:21, 44:13, 48:6, 48:14, 48:19
**fair** [3] - 14:19, 30:17, 63:3
**false** [1] - 86:18
**familiar** [1] - 95:19
**familiarity** [1] - 95:22
**family** [1] - 34:24
**far** [1] - 96:19
**FBI** [1] - 57:18
**federal** [1] - 88:18
**fellow** [3] - 33:4, 37:24, 39:20
**few** [3] - 30:13, 38:12, 84:22
**figure** [8] - 39:14, 40:1, 40:12, 40:19, 41:13, 41:16, 43:11, 49:24
**file** [1] - 62:24
**filing** [3] - 12:3, 12:5, 12:21
**filings** [1] - 12:25
**final** [4] - 25:13, 33:2, 38:2, 90:15
**finalization** [2] - 80:14, 81:15
**finalized** [3] - 42:1, 42:24, 43:5
**finally** [3] - 30:12, 34:13, 65:18
**financing** [1] - 90:4
**findings** [4] - 42:6, 86:2, 86:20, 90:16
**fine** [3] - 14:6, 18:23, 45:3
**finish** [1] - 61:6
**finished** [3] - 29:11,

29:13, 29:24
**firm** [1] - 71:16
**first** [30] - 4:9, 4:20, 7:5, 15:2, 15:5, 27:14, 28:23, 33:16, 50:17, 61:18, 62:7, 63:18, 70:15, 76:18, 84:23, 85:9, 85:12, 86:9, 88:4, 89:9, 90:24, 91:9, 96:13, 99:13, 102:9, 103:14
**five** [4] - 12:5, 63:10, 73:14, 73:17
**five-page** [1] - 12:5
**fixed** [1] - 54:15
**flexible** [1] - 54:15
**Floor** [1] - 1:16
**focus** [9] - 40:25, 76:23, 79:8, 79:21, 79:24, 84:22, 85:22, 89:9, 93:19
**focused** [2] - 79:25, 94:3
**follow** [10] - 26:3, 32:22, 39:19, 45:5, 45:13, 48:8, 48:9, 49:8, 60:2, 79:7
**followed** [4] - 52:13, 53:15, 65:15, 67:25
**following** [14] - 18:7, 21:13, 23:1, 23:12, 34:15, 56:5, 60:6, 62:2, 67:9, 73:19, 74:2, 74:7, 87:24, 108:21
**fomented** [1] - 88:20
**FOR** [5] - 1:1, 1:14, 1:15, 1:18, 3:10
**Forces** [1] - 89:16
**foregoing** [1] - 109:4
**foreign** [1] - 90:5
**forgive** [1] - 67:3
**forgot** [1] - 73:17
**form** [6] - 4:25, 5:2, 6:13, 6:14, 6:19, 6:20
**formal** [2] - 27:1, 77:13
**former** [4] - 42:16, 42:20, 43:6, 43:7
**forth** [5] - 13:17, 53:15, 55:8, 55:9, 71:15
**foul** [1] - 66:19
**four** [2] - 21:2, 21:3
**four-digit** [2] - 21:2, 21:3
**fourth** [1] - 27:20
**Fourth** [1] - 1:16
**frankly** [2] - 6:12, 67:18

**free** [2] - 25:6, 74:12
**frequently** [1] - 92:23
**friends** [1] - 34:24
**front** [3] - 59:24, 77:16, 84:10
**fruits** [1] - 57:14
**fueled** [1] - 86:18
**fulfill** [1] - 63:4
**full** [5] - 55:22, 84:9, 100:4, 109:5
**fullest** [1] - 25:17
**fully** [1] - 57:16
**function** [8] - 79:16, 89:10, 89:12, 89:23, 89:25, 90:8, 90:13, 90:15
**functions** [4] - 87:23, 88:24, 89:6, 91:22
**Functions** [1] - 89:6
**funding** [1] - 81:7
**fundraising** [1] - 44:17
**future** [1] - 91:12

## G

**gaps** [1] - 79:18
**GASTON** [4] - 1:14, 14:21, 15:7, 15:13
**Gaston** [1] - 28:19
**gather** [7] - 40:15, 41:5, 45:8, 77:4, 77:10, 79:13, 93:23
**gathered** [4] - 22:16, 42:13, 42:25, 98:15
**general** [1] - 99:13
**generally** [14] - 75:18, 76:5, 76:11, 76:19, 76:23, 78:25, 82:25, 84:25, 85:2, 92:14, 94:11, 94:25, 95:14, 102:5
**gentlemen** [5] - 39:16, 50:11, 98:20, 101:19, 108:4
**given** [4] - 44:2, 54:19, 67:18, 81:13
**Gordon** [15] - 85:8, 86:6, 86:25, 87:15, 88:5, 89:1, 89:3, 89:20, 90:10, 90:21, 91:3, 100:5, 101:15, 102:2, 105:25
**govern** [1] - 40:11
**government** [8] - 39:24, 42:9, 43:15, 49:12, 75:14, 75:19, 88:20, 89:19

**Government** [78] - 4:4, 4:6, 6:10, 6:12, 6:15, 7:3, 7:17, 10:25, 11:1, 11:2, 11:20, 11:25, 12:1, 12:3, 12:6, 12:16, 12:17, 13:3, 13:13, 13:16, 14:13, 14:20, 15:2, 15:8, 15:14, 18:11, 18:15, 18:24, 19:14, 27:12, 28:3, 28:7, 28:11, 28:16, 28:18, 28:23, 29:8, 29:9, 29:11, 29:14, 29:16, 29:22, 29:24, 38:5, 39:13, 39:17, 50:5, 53:19, 54:2, 54:9, 54:16, 58:1, 58:7, 58:8, 60:19, 62:18, 62:23, 64:3, 64:20, 65:2, 65:3, 65:13, 65:22, 66:1, 66:23, 67:20, 68:7, 68:15, 68:16, 70:3, 70:21, 71:3, 72:22, 73:6, 73:7, 74:5, 75:12, 100:10
**GOVERNMENT** [3] - 1:14, 3:10, 74:10
**government's** [3] - 3:14, 3:15, 49:20
**Government's** [22] - 4:10, 4:14, 6:7, 6:8, 6:22, 11:18, 12:21, 29:1, 39:20, 49:3, 61:17, 61:19, 64:18, 67:19, 72:11, 84:17, 84:18, 100:3, 100:7, 100:11, 101:8, 102:3
**governmental** [1] - 86:16
**governs** [1] - 83:20
**grand** [1] - 26:5
**granting** [1] - 63:21
**great** [1] - 60:16
**greater** [1] - 49:3
**grievances** [1] - 86:18
**guess** [3] - 32:18, 48:3, 65:8
**guests** [1] - 51:17
**guilt** [2] - 27:3, 27:4
**guilty** [5] - 28:2, 28:4, 28:10, 28:14, 50:6
**guy** [3] - 49:14, 69:24, 70:1

## H

**half** [5] - 69:20, 86:7, 89:3, 91:4, 93:12
**hand** [6] - 24:8, 25:25, 28:11, 28:16, 39:2, 106:6
**happy** [1] - 20:10
**harm** [2] - 66:19, 85:18
**harmless** [1] - 36:1
**heading** [1] - 89:5
**hear** [24] - 4:9, 13:13, 18:9, 20:5, 20:21, 40:3, 50:15, 50:19, 50:24, 51:18, 54:18, 54:20, 55:17, 55:25, 56:8, 56:23, 57:4, 57:23, 61:3, 66:1, 72:10, 74:13, 97:5
**heard** [6] - 33:5, 45:15, 52:2, 61:12, 69:2, 108:5
**hearing** [5] - 11:24, 14:12, 21:11, 34:10, 53:22
**hearings** [3] - 77:15, 78:15, 107:10
**hearsay** [6] - 4:21, 12:5, 12:8, 13:1, 68:3, 97:18
**heed** [1] - 47:5
**heightened** [1] - 86:13
**held** [5] - 12:1, 19:10, 19:11, 44:18
**hell** [1] - 98:4
**help** [13] - 29:5, 30:10, 39:14, 40:15, 41:2, 49:24, 52:23, 80:22, 80:23, 81:6, 81:8, 92:7, 101:10
**helped** [1] - 51:1
**helpful** [5] - 40:13, 41:13, 43:11, 43:12, 101:13
**helps** [2] - 24:12, 74:13
**hereby** [5] - 48:21, 87:6, 103:6, 103:7, 109:3
**hereinafter** [2] - 87:8, 88:13
**highlighted** [1] - 63:22
**highlights** [1] - 67:24
**Hill** [1] - 83:6
**himself** [2] - 43:7, 98:10

**hinders** [1] - 79:18
**hinted** [1] - 31:18
**hired** [1] - 96:22
**hiring** [2] - 96:23, 97:1
**hold** [4] - 32:12, 77:12, 77:15, 98:19
**holding** [1] - 72:6
**home** [2] - 25:2, 33:16
**Homeland** [1] - 86:12
**honor** [1] - 50:18
**Honor** [60] - 6:1, 6:5, 10:23, 14:15, 14:18, 16:14, 16:19, 16:20, 17:20, 17:21, 18:10, 18:13, 19:4, 19:23, 20:6, 20:9, 20:17, 20:22, 21:1, 22:10, 22:12, 23:2, 38:6, 50:10, 56:2, 56:7, 56:9, 58:5, 58:20, 59:13, 60:9, 61:4, 62:3, 62:6, 63:2, 63:16, 64:10, 64:22, 64:25, 66:3, 66:12, 70:15, 73:20, 73:24, 74:4, 74:15, 74:16, 74:23, 84:14, 84:16, 96:4, 97:17, 97:19, 99:4, 100:10, 100:12, 101:10, 101:17, 102:1, 107:24
**HONORABLE** [1] - 1:10
**honorably** [1] - 50:18
**hopefully** [1] - 60:4
**hosted** [1] - 42:22
**Hotel** [1] - 98:16
**House** [28] - 26:10, 40:8, 40:23, 41:17, 51:9, 52:16, 52:17, 55:22, 62:11, 75:15, 75:22, 75:24, 76:1, 76:3, 76:19, 76:21, 83:17, 83:20, 83:21, 84:12, 98:10, 102:11, 103:10, 104:8, 106:6, 107:20, 107:23
**House's** [1] - 63:6
**human** [1] - 33:24
**hurt** [1] - 52:24
**husher** [2] - 18:1, 18:6
**Hutcher** [1] - 102:16

**I**

**identified** [4] - 17:19, 25:21, 96:5, 103:20
**identify** [2] - 95:25, 101:11
**identifying** [2] - 42:7, 43:13
**ideologically** [1] - 86:15
**ignore** [2] - 46:12, 49:20
**ignored** [3] - 39:7, 45:17, 53:5
**ignoring** [2] - 39:16, 53:13
**illegitimate** [1] - 98:2
**imagine** [1] - 52:11
**immediately** [7] - 7:4, 25:25, 29:1, 34:10, 34:19, 44:18, 53:8
**impaneled** [1] - 23:16
**impede** [1] - 85:15
**import** [1] - 5:4
**importance** [1] - 64:6
**important** [10] - 23:25, 25:15, 26:4, 37:25, 39:13, 52:3, 52:15, 64:5, 79:4, 93:15
**importantly** [1] - 47:1
**improper** [2] - 8:13, 56:16
**improperly** [1] - 7:22
**IN** [1] - 3:13
**inadmissible** [3] - 6:9, 9:7, 9:11
**inadvertently** [1] - 37:6
**incite** [1] - 86:19
**include** [6] - 57:16, 81:14, 81:22, 81:24, 90:25, 93:2
**included** [4] - 85:1, 93:25, 97:25, 98:2
**includes** [4] - 31:22, 32:1, 35:7, 35:25
**including** [13] - 25:5, 33:10, 34:24, 35:12, 35:14, 40:6, 88:16, 89:14, 89:16, 90:4, 91:14, 98:4, 98:10
**incomplete** [1] - 36:12
**increased** [1] - 81:7

**independent** [1] - 35:22
**indicate** [1] - 103:15
**indicated** [2] - 21:9, 106:14
**indicating** [1] - 98:13
**indication** [1] - 31:15
**indicted** [1] - 27:5
**indictment** [9] - 26:5, 26:6, 26:13, 26:18, 26:22, 26:24, 26:25, 27:2, 66:23
**individual** [4] - 56:13, 56:17, 95:1, 95:3
**individuals** [4] - 78:4, 78:10, 79:8, 98:9
**influence** [1] - 90:5
**influenced** [1] - 24:21
**influencing** [2] - 88:20, 90:2
**inform** [3] - 75:21, 77:5, 79:13
**information** [56] - 14:24, 27:17, 34:25, 35:3, 35:13, 36:8, 36:11, 36:16, 36:20, 38:8, 38:15, 38:18, 38:20, 38:23, 39:2, 39:13, 40:15, 40:18, 41:5, 41:6, 41:7, 41:11, 42:12, 42:14, 42:19, 42:25, 43:8, 44:8, 46:6, 46:9, 64:6, 77:8, 77:11, 77:18, 77:22, 78:11, 78:24, 79:2, 79:6, 79:9, 79:10, 79:17, 79:18, 81:10, 82:10, 85:1, 89:18, 93:24, 94:6, 97:3, 97:7, 97:13, 98:13, 99:7, 108:11
**information-sharing** [2] - 81:10, 89:18
**informs** [1] - 78:11
**initiatives** [1] - 98:11
**injured** [1] - 80:8
**innocence** [3] - 27:25, 28:6, 29:19
**innocent** [3] - 27:25, 50:14, 61:14
**inquiry** [1] - 103:21, 104:1, 105:7
**instead** [4] - 39:3, 45:18, 47:6, 55:17
**institutional** [1] - 85:19

**institutions** [5] - 42:10, 91:14, 91:20, 93:22, 94:2
**instruct** [8] - 30:2, 30:19, 31:13, 32:2, 35:20, 37:11, 37:23, 98:21
**instructed** [2] - 7:9, 100:22
**instruction** [4] - 34:16, 48:21, 67:25, 68:3
**Instruction** [1] - 3:4
**instructions** [14] - 7:8, 22:19, 23:10, 23:21, 23:22, 24:2, 24:4, 25:13, 30:13, 33:2, 33:6, 38:2, 52:10
**instrumentalities** [2] - 88:19, 89:19
**insurrectionists** [1] - 85:14
**intelligence** [3] - 81:8, 89:15, 89:17
**intend** [4] - 10:8, 13:23, 14:5, 62:20
**intended** [3] - 24:4, 29:5, 30:10
**intending** [1] - 67:16
**intends** [5] - 10:12, 11:20, 13:16, 14:13, 72:23
**intention** [2] - 13:14, 42:5
**intentional** [1] - 26:23
**intentionally** [1] - 9:22
**interest** [1] - 4:8
**interesting** [1] - 55:7
**interfere** [1] - 98:17
**interfered** [1] - 80:9
**interference** [2] - 80:2, 88:15
**interim** [1] - 4:17
**internal** [2] - 62:19, 83:21
**internet** [6] - 35:24, 36:2, 36:11, 36:24, 41:9, 51:12
**interrupt** [1] - 11:15
**interview** [2] - 44:1, 59:8
**interviews** [1] - 57:23
**introduce** [2] - 72:23, 73:7
**introduced** [4] - 4:20, 25:20, 29:6,

67:20
**introduction** [1] - 4:14
**invades** [1] - 52:22
**invalid** [2] - 69:23, 70:4
**investigate** [5] - 41:24, 87:7, 88:10, 89:12, 90:1
**Investigate** [4] - 26:9, 41:19, 75:10, 103:8
**investigating** [5] - 41:25, 42:2, 79:25, 80:16, 89:25
**investigation** [18] - 26:11, 27:18, 35:22, 36:5, 42:12, 43:11, 44:9, 57:12, 57:14, 57:16, 58:10, 91:25, 92:4, 92:24, 93:4, 96:20, 97:14, 99:9
**investigations** [3] - 26:16, 83:8, 92:8
**investigative** [5] - 82:4, 82:8, 82:9, 82:22, 96:24
**investigator** [1] - 58:11
**invitation** [1] - 38:24
**involved** [13] - 34:14, 35:4, 35:25, 40:5, 43:2, 50:20, 54:7, 57:19, 80:7, 82:3, 96:9, 98:9, 98:14
**involves** [2] - 52:15, 97:18
**iPhone** [1] - 37:13
**iPod** [1] - 51:12
**irrelevant** [5] - 5:18, 10:18, 59:18
**issuance** [2] - 96:10, 96:11
**issue** [16] - 5:8, 7:19, 19:17, 38:1, 57:1, 57:8, 62:21, 68:4, 72:20, 77:11, 77:19, 94:18, 94:19, 95:4, 96:14, 107:15
**issued** [13] - 26:14, 81:3, 86:12, 96:15, 96:20, 97:15, 97:23, 99:6, 100:8, 102:7, 106:10, 106:22, 106:24
**issues** [18] - 7:11, 8:19, 9:20, 12:5, 40:20, 43:15, 51:17, 58:3, 63:17, 72:13, 77:6, 78:12, 79:20,

81:4, 82:22, 92:18, 93:14, 94:8
**issuing** [1] - 90:15
**it'll** [2] - 4:19, 57:12
**item** [2] - 103:18, 105:5
**Item** [1] - 90:11
**items** [1] - 94:9
**itself** [4] - 35:4, 87:11, 99:12, 100:1

### J

**January** [45] - 26:9, 26:11, 38:11, 38:21, 39:6, 39:14, 41:17, 41:19, 41:24, 42:15, 42:21, 43:3, 43:12, 43:22, 43:25, 44:17, 44:22, 46:25, 49:10, 49:25, 51:23, 52:4, 75:10, 80:1, 80:6, 80:14, 81:5, 81:11, 82:14, 83:13, 85:13, 86:11, 87:7, 88:11, 97:4, 97:8, 97:15, 97:25, 98:3, 98:5, 98:6, 98:11, 98:15, 99:11, 103:9
**job** [3] - 52:24, 76:16, 81:21
**jobs** [2] - 82:25, 83:2
**Joint** [1] - 80:13
**JUDGE** [1] - 1:11
**judge** [5] - 11:12, 30:16, 65:20, 68:23
**judges** [3] - 30:23, 60:17, 61:8
**July** [1] - 1:6, 65:14, 109:10
**June** [2] - 83:12, 93:11, 96:18
**jurisdiction** [3] - 76:24, 79:12, 79:20
**juror** [11] - 15:22, 15:23, 17:6, 17:18, 21:2, 21:3, 21:17, 22:1, 22:5, 36:20
**Juror** [37] - 15:3, 15:6, 15:9, 15:12, 15:15, 15:18, 16:1, 17:2, 17:3, 17:4, 17:5, 17:7, 17:8, 17:11, 17:12, 17:13, 18:14, 18:19, 18:25, 19:11, 19:14, 19:21, 19:22, 19:24, 21:2, 21:4, 21:19, 21:22, 21:23, 21:24, 21:25, 22:2,

22:3, 22:4, 22:6, 22:7
**jurors** [24] - 7:6, 10:21, 11:3, 15:20, 17:9, 21:6, 21:8, 22:16, 23:5, 23:7, 23:9, 24:6, 24:10, 24:20, 25:12, 25:16, 30:21, 30:22, 33:4, 34:20, 36:19, 37:8, 37:24, 60:17
**jurors'** [1] - 24:22
**Jury** [1] - 3:4
**JURY** [2] - 1:10, 50:12
**jury** [60] - 7:7, 7:23, 9:12, 11:15, 20:24, 21:16, 22:8, 22:19, 23:11, 23:14, 23:15, 24:16, 25:9, 25:19, 26:5, 30:16, 33:18, 34:3, 34:22, 34:25, 35:2, 35:6, 35:15, 35:16, 37:23, 56:6, 57:3, 57:14, 57:22, 59:14, 59:15, 59:24, 63:9, 66:18, 67:2, 69:6, 69:25, 71:5, 71:6, 71:9, 73:9, 73:15, 73:23, 74:1, 74:13, 76:20, 77:20, 82:6, 84:15, 88:8, 94:5, 96:19, 98:20, 101:5, 101:12, 101:20, 102:14, 108:4, 108:20
**jury's** [1] - 56:23
**justification** [11] - 65:9, 65:11, 65:12, 65:17, 65:24, 66:8, 68:6, 69:5, 69:6, 69:22
**justifications** [1] - 48:6

### K

**keep** [4] - 16:23, 37:25, 69:9, 108:1
**keeping** [1] - 52:24
**kept** [5] - 14:4, 66:8, 69:2, 69:5
**key** [1] - 54:9
**kind** [5] - 22:20, 33:19, 63:12, 84:25, 92:18
**kinds** [2] - 80:25, 92:17
**knowledge** [1] - 98:6
**known** [1] - 51:20

**Kristin** [8] - 3:11, 40:5, 53:3, 53:7, 53:16, 55:18, 74:5, 75:7
**KRISTIN** [2] - 74:10, 75:7

### L

**ladies** [5] - 39:16, 50:11, 98:20, 101:19, 108:4
**last** [7] - 11:23, 17:14, 32:25, 38:7, 61:18, 69:20, 71:18
**launched** [1] - 85:16
**LAW** [1] - 1:22
**law** [34] - 7:24, 10:1, 26:3, 28:5, 29:18, 30:3, 30:20, 30:21, 31:13, 33:6, 35:25, 36:19, 39:19, 40:15, 48:9, 49:3, 66:15, 66:16, 69:25, 70:6, 70:18, 70:21, 70:23, 71:23, 77:1, 80:7, 81:7, 83:23, 83:25, 85:18, 88:18, 89:15, 90:25, 93:21
**laws** [16] - 39:25, 40:2, 40:10, 40:13, 41:13, 41:16, 42:7, 43:13, 49:16, 75:20, 75:21, 77:6, 79:12, 79:14, 80:21, 80:24
**lawyer** [11] - 25:23, 32:5, 32:11, 32:12, 32:17, 53:2, 53:4, 53:7, 53:17, 53:25, 54:21
**lawyer's** [3] - 31:24, 31:25, 32:13
**lawyering** [1] - 69:16
**lawyers** [6] - 29:6, 30:7, 31:12, 32:9, 53:18
**lay** [1] - 88:1
**lays** [1] - 88:3
**lead** [1] - 79:8
**leader** [1] - 51:3
**leading** [4] - 38:16, 43:3, 44:22, 98:14
**leads** [2] - 79:10, 107:9
**learn** [2] - 39:1, 46:11
**learned** [1] - 42:13
**leash** [1] - 59:21
**least** [4] - 5:17, 10:3,

38:5, 71:17
**leave** [3] - 34:10, 103:23, 105:8
**leaving** [1] - 50:19
**led** [1] - 39:6
**left** [9] - 11:3, 20:14, 20:18, 21:8, 50:18, 51:9, 71:16, 80:8, 96:2
**legal** [13] - 23:25, 30:18, 35:19, 36:2, 36:6, 36:15, 39:16, 44:6, 63:17, 77:21, 81:25, 82:7, 82:22
**legalese** [1] - 52:10
**legally** [1] - 38:19
**legislation** [1] - 81:6
**legislative** [1] - 83:19
**legitimate** [1] - 68:17
**legwork** [1] - 96:24
**leisure** [1] - 51:15
**Lesley** [8] - 4:3, 11:6, 23:4, 23:8, 23:13, 34:19, 63:9, 73:22
**letter** [30] - 8:9, 8:19, 9:14, 9:17, 12:5, 45:19, 45:20, 45:25, 46:19, 46:21, 47:1, 47:8, 47:9, 47:22, 55:10, 55:12, 55:13, 55:16, 65:6, 65:10, 65:14, 65:15, 77:11, 92:9, 94:9, 94:11, 100:20, 100:21, 101:2, 101:4
**letters** [39] - 4:23, 4:24, 5:5, 6:12, 6:19, 7:4, 12:9, 13:2, 13:5, 13:6, 13:10, 13:17, 13:23, 48:17, 48:18, 48:23, 49:1, 55:8, 65:1, 65:2, 65:4, 66:7, 66:13, 66:21, 67:17, 68:10, 68:21, 69:2, 69:3, 69:13, 69:19, 71:1, 71:17, 72:3, 72:8, 72:11, 72:17, 73:3
**lifeblood** [1] - 52:17
**light** [2] - 7:13
**limit** [1] - 5:11
**limitation** [3] - 5:17, 101:7
**limited** [4] - 5:21, 93:4, 93:23, 100:18
**limiting** [2] - 67:25, 68:2
**line** [7] - 60:3, 102:13, 102:14,

103:5, 106:2, 106:3, 106:13
**lines** [5] - 30:1, 59:22, 102:9, 103:5, 103:19
**linking** [1] - 67:17
**Lisa** [1] - 109:12
**LISA** [2] - 2:1, 109:3
**list** [5] - 10:21, 15:20, 19:9, 37:15, 91:6
**listed** [1] - 89:23
**listen** [5] - 23:21, 37:2, 37:3, 61:10, 71:25
**listener** [1] - 51:14
**listening** [2] - 24:14, 61:9
**lists** [1] - 89:7
**living** [2] - 97:4, 97:8
**local** [1] - 88:18
**location** [1] - 34:8
**locked** [1] - 24:24
**lodged** [1] - 11:20
**logistics** [1] - 11:14
**look** [25] - 14:23, 25:6, 36:2, 66:19, 71:1, 84:1, 84:2, 85:11, 86:5, 87:14, 88:4, 88:24, 89:8, 90:8, 90:19, 91:2, 92:5, 96:12, 99:12, 100:1, 103:12, 103:25, 104:25, 105:24, 106:18
**looked** [5] - 4:17, 4:18, 13:2, 87:10, 95:20
**looking** [3] - 77:6, 86:21, 93:20
**looks** [4] - 84:12, 96:3, 100:8, 105:14
**loose** [1] - 98:5
**lunch** [1] - 7:4

### M

**maintained** [1] - 42:20
**maintains** [1] - 107:10
**major** [1] - 51:24
**majority** [2] - 55:24, 60:12
**malign** [1] - 90:5
**malleable** [2] - 5:14, 8:5
**manages** [1] - 107:11
**managing** [1] - 81:23

**mandate** [1] - 85:15
**mandated** [1] - 38:19
**mandatory** [2] - 38:25, 79:4
**manner** [2] - 30:18, 79:6
**marshal** [1] - 34:19
**Marshals** [1] - 106:5
**Maryland** [1] - 1:21
**mask** [2] - 74:12, 96:2
**mass** [1] - 38:11
**matter** [3] - 25:10, 55:24, 76:22
**matters** [4] - 7:17, 103:21, 104:1, 105:7
**MATTHEW** [1] - 1:18
**meals** [1] - 108:17
**mean** [16] - 5:10, 5:22, 6:20, 8:2, 15:22, 19:5, 44:1, 68:12, 69:11, 77:3, 78:3, 80:23, 97:11, 102:25, 104:2, 107:8
**meaning** [2] - 44:4, 46:8
**means** [8] - 29:9, 33:2, 35:13, 35:23, 48:13, 103:1, 105:1, 107:9
**meant** [1] - 24:1
**measure** [2] - 83:19, 85:2, 91:10
**measures** [9] - 81:9, 81:12, 90:17, 90:19, 90:24, 91:7, 91:12, 91:16, 91:18
**mechanism** [1] - 57:5
**media** [9] - 37:1, 37:18, 50:20, 50:21, 51:10, 51:24, 97:10, 97:11, 108:7
**meetings** [2] - 43:2, 107:10
**meets** [2] - 59:15, 59:16
**member** [11] - 40:4, 52:18, 52:20, 59:1, 76:13, 76:14, 76:15, 81:18, 81:19, 106:4
**members** [30] - 34:24, 41:1, 43:4, 52:25, 56:1, 56:13, 56:17, 56:20, 56:24, 57:7, 57:21, 58:13, 59:2, 59:8, 59:17, 60:11, 60:13, 76:6, 76:12, 78:15, 78:17, 79:19, 81:13, 81:18,

81:24, 82:7, 85:18, 85:20, 105:12, 107:9
**memorialize** [1] - 44:8
**memory** [5] - 24:18, 24:19, 24:20, 31:9, 32:7
**mention** [4] - 14:13, 28:17, 28:19, 56:20
**mentioned** [14] - 19:17, 25:23, 27:10, 32:24, 35:2, 53:3, 55:11, 55:15, 63:18, 75:22, 85:25, 92:9, 99:22, 100:17
**mentions** [1] - 88:23
**merely** [1] - 34:15
**messages** [3] - 35:14, 35:15, 44:24
**met** [2] - 60:19, 95:7
**method** [1] - 10:25
**methods** [1] - 77:10
**Metro** [20] - 4:5, 5:12, 9:23, 25:14, 25:22, 36:19, 38:16, 38:20, 39:2, 41:9, 42:13, 43:21, 44:25, 49:13, 51:25, 52:11, 83:22, 95:3, 97:14, 98:6
**mind** [3] - 9:22, 37:25, 87:5
**mine** [1] - 5:25
**minute** [4] - 60:25, 99:12, 103:25, 106:18
**minutes** [5] - 17:23, 63:10, 63:12, 73:14, 73:17
**misheard** [1] - 4:17
**misleading** [1] - 36:12
**missed** [2] - 16:21, 47:16
**misspoke** [1] - 4:16
**mistake** [5] - 16:16, 48:15, 49:5, 71:23, 72:4
**mistake-of-law** [1] - 71:23
**misunderstood** [1] - 4:16
**mobilize** [1] - 86:19
**MOLLY** [1] - 1:14
**moment** [4] - 20:2, 76:17, 96:12, 103:3
**Montgomery** [1] - 1:24
**months** [5] - 52:4, 52:6, 66:20, 83:13

**moreover** [1] - 36:18
**morning** [6] - 7:9, 7:10, 43:20, 43:22, 108:18
**most** [8] - 10:3, 25:17, 47:1, 51:24, 68:10, 77:19, 83:7
**motion** [7] - 55:20, 63:20, 63:21, 64:12, 64:21, 64:24
**motions** [2] - 31:11, 62:24
**motivated** [1] - 86:15
**motivation** [1] - 90:6
**motives** [1] - 56:17
**move** [2] - 60:4, 84:14
**moved** [1] - 71:3
**moves** [1] - 100:10
**moving** [1] - 61:17
**MR** [63] - 4:8, 4:11, 4:13, 6:1, 6:3, 10:11, 11:12, 11:14, 12:3, 12:10, 12:13, 12:15, 12:20, 13:1, 13:7, 13:11, 14:9, 14:15, 15:4, 15:10, 15:16, 16:20, 17:14, 17:21, 19:3, 19:19, 20:1, 20:8, 20:17, 22:12, 50:10, 50:13, 56:19, 57:3, 57:10, 58:5, 58:7, 58:17, 58:19, 58:24, 60:5, 60:9, 61:8, 63:16, 64:22, 64:24, 66:3, 66:5, 67:18, 67:24, 68:14, 69:10, 69:14, 69:22, 70:6, 70:11, 72:19, 72:22, 73:2, 73:13, 84:16, 97:17, 100:12
**MS** [96] - 6:5, 6:15, 6:25, 7:16, 8:8, 8:15, 8:22, 9:3, 9:10, 9:13, 9:18, 9:25, 10:5, 10:7, 10:23, 13:16, 13:21, 14:17, 14:21, 15:1, 15:7, 15:13, 16:14, 16:19, 17:20, 18:10, 18:13, 18:18, 18:21, 19:23, 20:6, 20:22, 22:10, 38:6, 56:2, 56:7, 56:9, 56:12, 59:13, 61:4, 62:6, 62:10, 63:1, 63:4, 66:12, 67:8, 67:11, 67:13, 70:15, 70:20, 71:19, 73:24, 74:4, 74:16, 74:22, 74:25, 75:2, 84:3, 84:5,

84:14, 84:20, 85:8, 85:10, 86:6, 86:8, 86:25, 87:3, 87:15, 87:17, 88:5, 88:7, 89:1, 89:4, 89:20, 89:22, 90:9, 90:12, 90:21, 90:23, 91:3, 91:5, 96:4, 96:7, 97:19, 99:4, 99:5, 100:2, 100:6, 100:10, 101:10, 101:15, 102:1, 102:4, 105:25, 106:1, 107:24
**multipage** [1] - 84:9, 84:21, 101:21
**multiple** [4] - 39:9, 76:3, 85:17, 97:24
**must** [23] - 16:15, 27:2, 27:12, 28:13, 31:1, 31:3, 31:5, 32:12, 32:17, 32:21, 33:13, 33:25, 34:23, 35:3, 35:5, 35:10, 35:15, 35:18, 36:21, 37:2, 37:3, 37:4

**N**

**name** [4] - 25:21, 52:7, 53:3, 75:5
**named** [1] - 40:5
**narratives** [1] - 86:18
**nation** [1] - 49:16
**national** [2] - 86:12, 88:19
**nationwide** [1] - 50:23
**natural** [1] - 33:24
**nature** [3] - 9:16, 63:6, 68:3
**navy** [1] - 96:3
**Navy** [2] - 50:17, 50:18, 50:19
**necessary** [3] - 6:24, 7:15, 79:5
**need** [17] - 11:21, 12:20, 35:1, 40:20, 41:5, 63:19, 64:9, 65:25, 67:25, 68:2, 72:24, 73:14, 74:14, 77:8, 79:7, 79:13, 87:19
**needed** [9] - 14:3, 23:6, 38:7, 38:10, 38:18, 39:13, 45:8, 85:3, 85:4
**needs** [6] - 7:2, 40:14, 40:18, 49:19, 64:15, 79:17

**negotiate** [1] - 54:22
**negotiated** [1] - 53:18
**negotiating** [1] - 55:9
**negotiation** [1] - 54:24
**negotiations** [1] - 54:14
**networking** [1] - 33:10
**never** [4] - 4:16, 8:12, 28:5, 80:22
**New** [1] - 51:21
**news** [4] - 37:18, 50:22, 51:20, 95:18
**newspaper** [2] - 36:24, 95:14
**next** [9] - 4:6, 6:22, 37:20, 46:18, 52:1, 60:10, 84:24, 87:16, 89:2
**NICHOLS** [1] - 1:10
**night** [2] - 32:25, 98:3
**nine** [1] - 66:20
**nobody** [1] - 60:21
**noncompliance** [1] - 68:12
**nonsealed** [1] - 21:10
**Northwest** [3] - 1:16, 2:3, 109:14
**nose** [1] - 49:12
**note** [4] - 4:4, 15:21, 16:17, 62:16
**notebook** [1] - 24:9
**notebooks** [4] - 24:15, 24:24, 25:1, 25:4
**notes** [10] - 24:10, 24:11, 24:12, 24:17, 24:20, 24:22, 25:6, 31:9, 44:24, 109:5
**nothing** [2] - 33:20, 66:21
**noticed** [2] - 24:8, 25:8
**notifications** [5] - 37:12, 37:16, 37:17, 37:18, 108:8
**Notifications** [1] - 37:14
**notified** [1] - 45:21
**notify** [2] - 45:5, 45:10
**notwithstanding** [1] - 9:23
**November** [1] - 52:20

**NPR** [1] - 51:21
**nullification** [1] - 67:1
**number** [11] - 4:22, 15:22, 15:23, 21:2, 21:3, 21:17, 21:18, 64:2, 68:19, 77:10, 81:4
**numbers** [1] - 17:18

## O

**oath** [2] - 44:2, 44:4
**object** [2] - 32:9, 32:14
**objected** [1] - 72:24
**objecting** [1] - 32:11
**objection** [16] - 4:21, 10:24, 32:16, 53:10, 54:1, 55:2, 55:4, 56:2, 56:19, 61:4, 62:19, 73:10, 84:16, 97:17, 100:12
**objections** [8] - 5:23, 11:18, 11:19, 13:10, 31:12, 32:12, 73:6, 86:15
**obligations** [2] - 62:17, 63:4
**obtaining** [1] - 79:2
**obviously** [4] - 4:20, 17:8, 17:22, 102:8
**occasions** [1] - 50:17
**occurred** [2] - 8:13, 38:17
**October** [37] - 8:9, 8:19, 8:24, 9:2, 26:16, 26:17, 26:19, 26:21, 43:20, 43:23, 45:15, 45:24, 46:19, 46:24, 47:1, 47:6, 47:12, 47:23, 48:1, 48:4, 48:12, 53:22, 53:24, 54:12, 55:12, 55:18, 65:8, 67:17, 70:8, 99:18, 99:20, 99:22, 99:23, 104:13, 104:23, 105:19, 106:22
**OF** [5] - 1:1, 1:3, 1:10, 1:15, 1:22
**offense** [8] - 27:13, 28:9, 28:10, 28:12, 28:14, 58:6, 58:20, 58:21
**offenses** [1] - 27:9
**offer** [3] - 29:25, 67:1, 71:1

**offered** [1] - 68:3
**offering** [4] - 6:10, 6:12, 58:22, 58:24
**offers** [1] - 32:10
**office** [6] - 40:9, 50:25, 52:22, 54:12, 104:8, 105:15
**Office** [1] - 55:24
**OFFICE** [1] - 1:15
**officers** [1] - 80:8
**OFFICES** [1] - 1:22
**official** [2] - 38:13, 109:12
**Official** [1] - 2:1
**officials** [2] - 76:7, 93:22
**often** [4] - 51:19, 54:22, 79:2, 83:20
**once** [3] - 11:15, 30:3, 42:11
**one** [48] - 9:20, 9:23, 16:22, 19:6, 19:8, 19:16, 20:2, 20:5, 20:20, 25:5, 28:16, 36:23, 41:24, 42:17, 43:20, 46:23, 48:9, 48:10, 51:19, 52:2, 53:5, 53:23, 54:20, 55:10, 55:14, 55:15, 60:21, 60:23, 62:25, 68:19, 72:20, 79:22, 82:25, 85:13, 86:22, 87:25, 88:4, 89:9, 89:21, 90:8, 99:2, 100:4, 101:11, 104:8, 106:12, 107:18
**one-hour-and-15-minute** [1] - 61:23
**ones** [2] - 60:19, 73:4
**ongoing** [2] - 36:25, 54:14
**online** [1] - 90:4
**open** [7] - 7:10, 8:5, 21:14, 37:25, 60:7, 71:16, 72:13
**opened** [2] - 6:8, 65:2, 65:11, 65:22, 70:3, 72:11
**opening** [32] - 3:5, 7:21, 7:25, 10:4, 10:12, 10:18, 11:21, 12:12, 13:15, 13:18, 13:22, 14:7, 14:14, 28:24, 28:25, 29:1, 29:3, 29:4, 29:7, 30:8, 38:5, 50:8, 55:4, 55:11, 59:20, 60:3, 63:22, 64:4, 65:4, 66:9, 67:19, 70:16

**Opening** [1] - 3:6
**openings** [2] - 22:22, 22:23
**opens** [1] - 70:7
**operate** [1] - 29:25
**operations** [2] - 83:21, 90:5
**opinion** [2] - 31:15, 31:18
**opinions** [1] - 59:17
**opportunity** [2] - 28:24, 29:14
**option** [1] - 41:7
**optional** [1] - 38:23
**orally** [1] - 12:23
**order** [12] - 5:1, 11:4, 21:16, 27:1, 38:19, 39:17, 54:7, 54:8, 62:24, 79:11, 107:10, 107:22
**ordered** [6] - 12:4, 12:25, 13:1, 54:2, 54:3, 54:6
**orderly** [2] - 30:17, 49:12
**orders** [3] - 39:7, 39:20, 49:20
**organization** [1] - 90:6
**organizations** [2] - 40:19, 51:21
**original** [1] - 20:23
**otherwise** [2] - 64:8, 108:10
**ought** [1] - 66:6
**outlets** [1] - 51:24
**outside** [4] - 33:15, 34:4, 36:8, 56:6
**overhear** [1] - 34:11
**overhearing** [1] - 34:5
**overnight** [2] - 24:25, 25:2
**overruled** [1] - 61:7
**oversight** [8] - 75:20, 76:24, 77:2, 79:16, 82:2, 83:4, 83:8, 92:8
**overturn** [1] - 98:18
**own** [8] - 24:19, 24:20, 35:22, 36:5, 36:18, 40:24, 40:25, 79:21

## P

**p.m** [6] - 1:7, 23:12, 48:1, 48:5, 74:2, 108:21
**page** [13] - 12:5,

84:23, 87:16, 89:2, 89:3, 100:13, 100:17, 100:18, 101:1, 101:11, 101:17, 101:19, 101:20
**Page** [13] - 3:4, 3:5, 3:6, 86:7, 87:1, 89:2, 90:9, 90:22, 91:4, 100:17, 101:16, 102:2, 102:5
**PAGE** [1] - 3:13
**pages** [6] - 25:4, 48:16, 52:10, 87:19, 89:21
**paper** [1] - 18:21
**papers** [1] - 27:16
**paragraph** [3] - 85:9, 85:12, 86:10
**paragraphs** [3] - 84:24, 85:1, 85:2
**paraphrasing** [1] - 68:22
**part** [15] - 33:22, 39:24, 40:8, 75:12, 75:14, 75:15, 75:16, 75:18, 76:1, 80:14, 82:3, 83:7, 86:20, 87:18
**participated** [1] - 44:21
**participating** [1] - 97:25
**particular** [4] - 11:3, 28:8, 28:12, 73:7
**particularly** [1] - 59:25
**parties** [6] - 17:23, 34:1, 34:9, 36:5, 36:9, 98:15
**partisan** [1] - 56:13
**parts** [2] - 40:7, 75:23
**party** [2] - 18:2, 32:13
**pass** [3] - 40:2, 40:10, 41:16
**passed** [3] - 43:14, 60:12, 83:19
**passes** [2] - 39:24, 83:23
**patience** [1] - 23:19
**pay** [1] - 31:5
**peaceful** [3] - 80:3, 88:15, 98:17
**pejorative** [1] - 68:13
**pencil** [1] - 24:9
**pendency** [1] - 37:16
**pending** [1] - 64:25
**people** [38] - 7:8, 19:9, 21:6, 22:17,

24:12, 33:25, 35:4, 35:5, 35:25, 38:12, 39:23, 39:25, 40:6, 40:9, 40:20, 41:2, 43:2, 43:3, 43:4, 43:5, 44:18, 44:21, 46:4, 49:16, 49:24, 57:19, 59:14, 64:19, 77:17, 78:1, 78:2, 78:21, 92:19, 92:20, 92:21, 92:25, 99:14, 100:19
**per** [1] - 62:16
**perceived** [1] - 86:17
**peremptories** [4] - 7:6, 10:19, 10:20, 20:14
**peremptory** [8] - 14:20, 15:3, 15:6, 15:9, 15:12, 15:15, 15:18, 18:12
**perhaps** [2] - 14:25, 67:15
**permission** [1] - 74:17
**permit** [1] - 24:10
**permitted** [5] - 24:15, 25:2, 32:24, 32:25, 35:21
**perpetual** [1] - 52:21
**perpetuity** [1] - 72:1
**person** [5] - 21:4, 25:20, 27:1, 94:15, 94:22
**personally** [1] - 95:7
**perspective** [3] - 5:24, 12:2, 63:7
**persuade** [1] - 98:1
**pertinency** [1] - 58:16
**pertinent** [1] - 27:17
**phase** [1] - 81:3
**phone** [3] - 35:7, 37:13, 37:21
**phones** [2] - 37:19, 108:7
**phony** [1] - 69:6
**photo** [1] - 36:2
**physical** [1] - 85:18
**picked** [1] - 35:1
**piece** [2] - 61:1, 73:7
**pinpoint** [1] - 58:23
**pitch** [1] - 65:4
**place** [4] - 42:4, 103:11, 104:5, 104:7
**plain** [1] - 36:13
**Plaintiff** [1] - 1:4
**plan** [6] - 7:21, 7:25, 10:24, 13:21, 13:25, 74:17
**planned** [1] - 44:22

**plans** [1] - 42:4
**platform** [2] - 97:10, 97:11
**platforms** [1] - 90:4
**played** [1] - 97:24
**podcast** [7] - 42:22, 51:12, 51:13, 51:16, 97:12, 98:3
**podcasts** [1] - 51:19
**point** [12] - 5:3, 8:9, 8:11, 12:20, 54:9, 59:23, 60:10, 61:5, 95:4, 107:25, 108:2
**Police** [1] - 88:17
**policies** [1] - 80:21
**policy** [2] - 51:8, 90:25
**political** [4] - 51:1, 51:17, 51:22
**politics** [9] - 50:24, 51:16, 51:20, 52:17, 52:22, 52:25, 61:2, 61:3, 61:11
**pool** [1] - 7:7
**popup** [1] - 103:4
**portion** [1] - 21:10
**position** [5] - 5:4, 6:6, 60:22, 100:20, 101:3
**positions** [2] - 83:6, 101:23
**possession** [1] - 37:21
**possibility** [2] - 18:20, 19:7
**possible** [1] - 89:21
**possibly** [2] - 50:9, 108:9
**posting** [2] - 33:10, 35:12
**posts** [1] - 14:10
**potential** [5] - 5:12, 5:17, 81:10, 91:6, 91:15
**potentially** [2] - 76:25, 81:13
**power** [4] - 80:3, 81:1, 88:15, 98:18
**powers** [2] - 82:2, 82:9
**Pratt** [1] - 1:20
**precedents** [1] - 82:1
**preceding** [1] - 44:18
**precise** [2] - 5:15, 69:16
**preclude** [2] - 10:2, 10:3
**prejudice** [1] - 64:12
**prejudicial** [1] - 59:25

**Preliminary** [1] - 3:4
**preliminary** [4] - 7:17, 23:10, 23:20, 24:4
**prepared** [2] - 5:3, 5:11
**preparedness** [1] - 88:16
**presence** [2] - 37:24, 56:6
**present** [4] - 5:19, 29:17, 30:5, 105:10
**presented** [9] - 27:7, 29:16, 35:19, 36:14, 36:15, 36:16, 37:5, 57:13, 58:1
**preserved** [3] - 4:21, 5:23, 73:6
**presidency** [1] - 51:2
**president** [5] - 42:20, 43:7, 72:2, 83:25, 98:10
**President** [5] - 42:17, 43:6, 51:3, 51:4, 51:7
**presidential** [9] - 38:14, 42:1, 42:18, 42:23, 80:15, 81:15, 85:16, 86:17, 98:1
**press** [1] - 85:20
**presumed** [1] - 27:24
**presumption** [1] - 27:25
**pretrial** [4] - 12:12, 12:18, 13:20, 22:19
**prevent** [1] - 91:12
**prevented** [1] - 39:12
**previously** [1] - 26:6
**primary** [1] - 85:22
**principles** [2] - 35:20, 49:23
**private** [1] - 98:15
**privately** [4] - 18:4, 20:4, 22:14, 108:13
**privilege** [31] - 5:18, 13:24, 46:2, 46:4, 46:8, 46:13, 46:16, 46:22, 47:11, 55:5, 65:5, 65:14, 65:15, 65:20, 67:20, 68:1, 68:15, 68:24, 69:4, 69:10, 70:5, 70:19, 70:22, 71:2, 71:8, 71:14, 71:20, 71:24
**privileged** [1] - 65:13
**privileges** [1] - 70:9
**problem** [1] - 69:15
**problems** [3] - 40:14, 40:16, 78:25
**procedure** [2] - 45:4,

45:10
**procedures** [4] - 26:3, 45:13, 82:1, 90:25
**proceed** [3] - 4:5, 28:15, 64:8
**proceedings** [13] - 18:7, 21:13, 23:1, 23:12, 56:5, 60:6, 62:2, 73:19, 74:2, 74:7, 77:13, 108:21, 109:6
**Proceedings** [1] - 108:22
**process** [6] - 25:19, 41:15, 54:24, 60:10, 88:22, 94:5
**processes** [5] - 39:4, 49:12, 80:10, 80:12, 81:14
**produce** [13] - 27:16, 28:6, 29:19, 52:8, 58:9, 77:22, 92:20, 99:17, 103:20, 104:11, 104:12, 104:14, 104:22
**produced** [1] - 109:6
**producing** [2] - 26:20, 58:9
**production** [2] - 78:19, 104:5
**proffer** [2] - 5:2, 5:20
**proffered** [1] - 68:11
**proffers** [1] - 5:12
**promise** [1] - 44:5
**promote** [1] - 81:9
**prompted** [1] - 87:10
**proof** [3] - 28:5, 58:8, 60:20
**properly** [2] - 31:21, 32:11
**proposal** [3] - 4:5, 4:10, 6:23
**propose** [1] - 77:2
**proposed** [3] - 7:3, 54:21, 76:25
**prosecution** [4] - 39:10, 47:4, 48:1, 55:20
**protect** [3] - 42:8, 49:19, 81:8
**protective** [1] - 62:24
**prove** [8] - 27:11, 27:12, 28:3, 28:6, 28:12, 29:19, 54:9, 54:16
**proven** [2] - 28:1, 28:7
**provide** [35] - 7:21, 26:15, 27:16, 27:22,

34:23, 37:15, 38:20, 41:11, 43:21, 45:22, 46:23, 47:17, 48:10, 48:22, 53:11, 74:18, 77:17, 77:18, 78:1, 78:2, 78:4, 78:11, 79:11, 92:3, 92:21, 99:21, 99:23, 99:24, 104:5, 104:15, 104:16, 104:19, 106:21, 106:23, 106:25
**provided** [8] - 45:10, 50:22, 52:9, 74:20, 74:22, 94:1, 101:2, 108:16
**providing** [2] - 26:19, 80:18
**public** [8] - 17:25, 21:10, 77:16, 80:18, 97:9, 97:23, 98:1, 98:8
**publicity** [1] - 37:6
**publish** [2] - 84:15, 100:11
**published** [1] - 101:5
**pulled** [1] - 52:5
**purports** [1] - 65:15
**purpose** [8] - 72:12, 80:16, 83:10, 85:5, 88:8, 100:18, 101:22, 101:24
**purposes** [5] - 5:19, 6:16, 10:17, 14:6, 46:10, 72:6, 72:9, 87:12, 87:24, 88:1, 88:3, 91:22, 100:14
**Purposes** [2] - 87:22, 88:23
**pursue** [2] - 10:15, 10:16
**push** [3] - 37:12, 37:17, 108:8
**put** [10] - 11:15, 22:16, 29:8, 29:20, 39:9, 51:13, 62:7, 64:21, 66:17, 66:18
**putting** [3] - 55:21, 63:2, 63:8

**Q**

**qualified** [2] - 10:21, 15:21
**quash** [1] - 63:21
**questioned** [1] - 57:18
**questioning** [1] - 57:17

**questions** [22] - 12:8, 29:10, 29:12, 29:21, 30:8, 30:18, 43:24, 44:4, 45:24, 46:25, 47:13, 47:19, 48:11, 77:16, 78:5, 78:13, 78:16, 78:18, 79:11, 94:13, 94:22, 95:3
**quickly** [1] - 101:11
**quite** [3] - 53:5, 67:18, 108:16
**quote** [2] - 86:13, 88:13

**R**

**radio** [1] - 36:24
**raise** [6] - 7:19, 10:12, 13:3, 25:25, 46:4, 66:6
**raised** [6] - 55:2, 55:4, 56:19, 67:20, 68:14, 68:15
**rally** [1] - 44:18
**ramping** [1] - 96:25
**randomly** [1] - 25:11
**rather** [1] - 19:13
**RDR** [3] - 2:1, 109:3, 109:12
**reach** [4] - 9:12, 50:23, 51:18, 51:22
**read** [13] - 21:17, 37:2, 37:3, 41:8, 85:12, 86:9, 88:8, 103:6, 103:18, 106:2, 108:7, 108:10
**reading** [1] - 87:5
**ready** [4] - 6:25, 10:19, 18:5, 63:12
**reaffirmed** [1] - 66:13
**real** [1] - 66:25
**realize** [1] - 25:22
**really** [10] - 6:15, 39:25, 46:9, 63:11, 66:12, 69:7, 71:2, 71:12, 71:22
**reason** [10] - 7:18, 14:2, 14:3, 64:4, 64:5, 65:7, 66:5, 66:22, 66:25, 68:17
**reasonable** [10] - 27:8, 27:12, 28:2, 28:4, 28:8, 28:13, 54:10, 54:16, 58:8, 60:20
**reasons** [8] - 6:21, 54:1, 68:11, 86:22,

99:1, 100:14, 108:8, 108:15
**rebuttal** [1] - 29:25
**receive** [2] - 34:23, 103:1
**RECEIVED** [1] - 3:13
**receives** [1] - 95:1
**recent** [1] - 68:10
**recently** [1] - 70:10
**recess** [9] - 22:16, 22:22, 22:25, 33:16, 61:18, 62:1, 73:15, 73:18, 108:3
**recesses** [1] - 24:25
**recipient** [2] - 77:21, 94:17
**recognize** [2] - 25:22, 107:2
**recommendation** [1] - 79:16
**recommendations** [5] - 80:21, 81:3, 81:5, 85:25, 90:17
**record** [20] - 4:2, 7:1, 7:2, 17:25, 18:24, 20:25, 21:9, 21:17, 22:18, 23:3, 32:20, 62:4, 62:8, 62:16, 63:2, 63:8, 73:21, 75:6, 96:4, 108:15
**recorded** [1] - 44:7
**recordings** [1] - 44:24
**records** [5] - 14:10, 26:15, 26:20, 104:16, 104:22
**recruiting** [1] - 44:17
**Red** [1] - 3:8
**redacted** [3] - 4:25, 5:2, 6:13
**redactions** [4] - 4:18, 5:6, 5:20, 7:3
**redirect** [2] - 29:15, 29:23
**reelection** [2] - 52:19, 52:25
**refer** [4] - 13:16, 28:16, 41:20, 55:24
**reference** [5] - 13:22, 74:19, 86:1, 87:19
**referral** [2] - 56:25, 57:5
**referred** [2] - 87:9, 88:13
**referring** [6] - 28:18, 28:20, 47:25, 80:5, 94:15, 101:18
**refers** [1] - 32:6
**reflect** [2] - 18:24, 96:4

**reflected** [1] - 101:23
**reforms** [2] - 81:14, 81:15
**refrain** [1] - 7:24
**refusal** [4] - 27:21, 47:2, 47:3, 48:8
**refuse** [1] - 34:18
**refused** [7] - 27:20, 39:2, 39:4, 49:8, 49:15, 49:23, 70:24
**refusing** [3] - 13:23, 48:10, 48:11
**refute** [1] - 36:10
**region** [1] - 88:19
**regular** [2] - 25:16, 41:2
**regulations** [4] - 80:21, 80:24, 81:6, 91:1
**reiterated** [1] - 47:9
**rejected** [3] - 39:7, 47:10, 70:23
**rejecting** [1] - 14:3
**relate** [1] - 97:14
**related** [2] - 81:5, 86:2
**relating** [16] - 26:15, 37:18, 38:20, 43:21, 44:16, 81:14, 82:1, 82:8, 88:11, 88:14, 88:16, 89:13, 89:14, 97:24, 98:10, 99:18
**release** [1] - 7:7
**relevance** [1] - 62:19
**relevant** [13] - 5:13, 8:20, 8:22, 9:1, 46:10, 56:14, 56:17, 58:3, 62:14, 72:13, 79:9, 92:5, 99:9
**rely** [4] - 24:20, 31:8, 32:7, 36:16
**relying** [1] - 36:8
**remain** [1] - 24:24
**remaining** [1] - 73:3
**remains** [1] - 27:25
**remarks** [1] - 24:1
**remember** [5] - 24:13, 24:17, 32:7, 47:6, 62:25
**remind** [1] - 93:10
**reminded** [1] - 68:4
**reminder** [2] - 19:9, 20:19
**remove** [1] - 65:15
**removed** [4] - 65:14, 65:17, 65:22, 69:10
**renew** [1] - 64:23
**renewal** [1] - 64:13
**repeat** [3] - 17:14, 20:20, 108:5

**replace** [1] - 24:19
**report** [4] - 34:12, 88:10, 90:15, 90:16
**REPORTED** [1] - 2:1
**reported** [1] - 52:1
**reportedly** [1] - 98:16
**reporter** [1] - 74:13
**Reporter** [2] - 2:1, 109:12
**reporting** [1] - 51:25
**reports** [4] - 36:24, 37:3, 41:8, 98:8
**representations** [2] - 12:1, 12:18
**representative** [1] - 88:21
**Representatives** [14] - 26:10, 40:8, 41:17, 52:16, 52:18, 62:11, 75:15, 75:22, 75:24, 83:17, 102:11, 103:11, 104:8, 106:6
**represented** [2] - 13:20, 102:21
**representing** [1] - 102:18
**represents** [1] - 32:13
**request** [4] - 38:24, 55:18, 60:23, 60:25
**requesting** [1] - 104:13
**requests** [5] - 41:6, 77:4, 77:5, 77:11, 92:9
**require** [14] - 28:6, 29:18, 35:10, 77:18, 78:2, 78:19, 78:25, 92:19, 92:20, 92:21, 99:14, 99:16, 105:17, 107:16
**required** [23] - 26:20, 29:18, 39:11, 43:19, 44:15, 45:2, 49:3, 49:24, 78:10, 99:17, 99:19, 103:16, 103:20, 104:10, 104:12, 104:14, 105:2, 105:5, 105:6, 105:14, 105:19, 106:25
**requirement** [3] - 46:17, 47:17, 47:18
**requirements** [2] - 44:12, 46:13
**requires** [1] - 47:3, 77:21
**requiring** [1] - 41:11
**research** [10] -

35:23, 35:24, 35:25, 36:18, 40:13, 40:23, 41:8, 41:16, 44:10, 96:24
**reserved** [1] - 64:25
**resilience** [1] - 91:19
**resolution** [20] - 55:21, 55:23, 56:21, 56:24, 60:11, 83:16, 83:18, 83:19, 84:1, 84:12, 85:4, 85:6, 86:1, 86:24, 87:11, 88:1, 90:14, 91:9, 91:23, 93:25
**resolutions** [1] - 83:22
**resolve** [2] - 7:17, 73:10
**resolved** [3] - 11:23, 12:7, 12:11
**respect** [5] - 13:14, 54:6, 60:16, 62:13, 89:16
**respond** [1] - 36:8
**responded** [2] - 14:3, 73:6
**response** [2] - 70:14, 88:17
**responses** [1] - 13:9
**responsibilities** [7] - 24:6, 30:15, 30:16, 81:22, 81:24, 83:2, 94:4
**responsibility** [4] - 30:17, 30:22, 31:20, 32:14
**result** [6] - 5:16, 5:22, 5:24, 6:18, 36:19, 47:3
**resulted** [2] - 80:8, 85:17
**results** [3] - 42:1, 44:20, 98:18
**retail** [1] - 5:5
**retire** [3] - 25:9, 27:23, 30:4
**return** [8] - 5:14, 8:5, 8:24, 9:1, 9:8, 9:9, 104:20, 106:5
**returned** [2] - 26:5, 51:10
**review** [1] - 82:10
**reviewed** [1] - 91:23
**reviewing** [2] - 81:4, 104:4
**RIANE** [1] - 1:19
**Road** [1] - 1:23
**Robert** [3] - 102:15, 102:17, 102:19
**role** [5] - 60:16, 64:1,

76:19, 82:3, 82:21
**roles** [1] - 97:24
**Room** [1] - 2:3
**room** [3] - 24:16, 37:23, 53:22
**rude** [1] - 34:15
**rule** [4] - 30:18, 31:11, 32:20, 32:22
**rules** [14] - 23:25, 26:3, 30:3, 36:7, 36:22, 42:7, 48:9, 49:8, 59:3, 78:17, 80:21, 81:25, 82:8, 91:1
**ruling** [3] - 63:19, 64:9, 72:25
**run** [4] - 15:19, 49:19, 50:25, 51:2
**running** [2] - 52:21, 97:10

## S

**safety** [1] - 42:9
**satellite** [1] - 36:2
**saw** [1] - 81:11
**scene** [1] - 36:3
**schedule** [3] - 103:21, 103:25, 104:11
**scheduled** [2] - 80:10, 80:13
**Schoen** [9] - 4:16, 10:10, 14:8, 14:11, 28:21, 63:14, 67:6, 70:25, 72:6
**SCHOEN** [32] - 1:22, 1:22, 10:11, 11:12, 11:14, 12:3, 12:10, 12:13, 12:15, 12:20, 13:1, 13:7, 13:11, 14:9, 14:15, 63:16, 64:22, 64:24, 66:3, 66:5, 67:18, 67:24, 68:14, 69:10, 69:14, 69:22, 70:6, 70:11, 72:19, 72:22, 73:2, 73:13
**scope** [2] - 91:24, 92:4
**scores** [1] - 80:7
**screen** [2] - 84:7, 100:4
**seal** [5] - 18:6, 21:15, 56:11, 60:8, 106:6
**search** [1] - 45:6
**seat** [3] - 21:18, 25:14, 25:15
**Seat** [40] - 16:2, 16:3,

16:4, 16:5, 16:6, 16:7, 16:8, 16:9, 16:10, 16:11, 16:12, 16:13, 16:18, 16:23, 17:1, 17:2, 17:3, 17:4, 17:5, 17:6, 17:7, 17:8, 17:11, 17:12, 19:1, 19:20, 21:19, 21:20, 21:21, 21:22, 21:23, 21:24, 21:25, 22:1, 22:2, 22:3, 22:4, 22:5, 22:6, 22:7

**seated** [4] - 7:6, 21:8, 23:17, 38:8

**seats** [9] - 11:4, 17:19, 18:1, 19:10, 20:20, 22:9, 24:7, 25:11

**Seats** [1] - 21:6

**second** [8] - 15:9, 15:11, 27:16, 64:24, 86:7, 89:3, 98:19, 104:25

**Section** [7] - 87:1, 87:6, 87:16, 87:22, 87:23, 88:24, 89:5

**section** [2] - 87:4, 90:2

**security** [2] - 42:9, 91:18

**Security** [1] - 86:12

**see** [40] - 7:18, 24:7, 34:13, 37:15, 38:15, 39:3, 41:18, 41:23, 42:15, 43:18, 43:19, 44:15, 45:3, 45:9, 45:18, 45:20, 45:25, 46:1, 46:10, 46:15, 46:18, 46:21, 47:6, 47:9, 47:15, 47:21, 48:16, 48:20, 48:23, 49:1, 49:4, 65:4, 65:6, 65:9, 84:6, 84:23, 95:22, 102:8, 106:14, 108:18

**seek** [2] - 17:24, 78:24

**seeking** [3] - 94:10, 94:11

**seeks** [2] - 73:7, 94:13

**seemingly** [1] - 36:1

**Select** [44] - 26:8, 26:14, 27:15, 27:18, 41:19, 53:2, 53:9, 54:19, 55:19, 75:10, 75:12, 76:13, 79:1, 79:22, 79:25, 81:21, 81:23, 82:14, 82:21, 84:13, 87:7, 87:9,

87:24, 89:6, 92:12, 92:14, 92:18, 93:6, 93:19, 93:20, 94:3, 96:15, 96:22, 99:10, 99:17, 99:20, 102:21, 103:8, 104:3, 104:21, 107:5, 107:7, 107:11, 107:16

**selected** [2] - 25:11, 33:18

**selection** [1] - 25:19

**Senate** [5] - 40:8, 40:24, 75:25, 83:20, 83:21

**send** [3] - 35:14, 45:19, 94:19

**sense** [2] - 24:5, 80:23

**sent** [4] - 13:23, 46:19, 47:8, 47:22

**September** [8] - 26:13, 38:7, 43:16, 96:16, 106:8, 106:9, 106:15, 106:16

**series** [2] - 7:3, 12:1

**serious** [1] - 25:17

**serve** [2] - 34:2, 106:5

**served** [4] - 50:16, 50:18, 51:5, 51:7

**service** [9] - 23:19, 34:25, 35:6, 35:15, 35:16, 38:3, 102:23, 102:25, 106:15

**Service** [1] - 106:5

**services** [1] - 37:18

**serving** [1] - 108:15

**session** [1] - 61:23

**Session** [1] - 80:13

**SESSION** [1] - 1:5

**set** [9] - 40:24, 41:18, 41:23, 52:13, 55:19, 55:20, 73:24, 80:9, 99:18

**sets** [2] - 40:23, 52:14

**setting** [1] - 41:15

**Settings** [1] - 37:14

**seven** [1] - 50:17

**several** [4] - 84:24, 86:2, 89:7, 92:6

**sharing** [1] - 81:10, 89:18

**shifts** [1] - 28:5

**shirt** [1] - 96:3

**short** [5] - 4:19, 5:8, 41:21, 42:16, 59:21

**show** [17] - 13:21, 39:3, 44:12, 45:12, 48:4, 49:15, 51:5,

51:10, 53:6, 53:20, 54:8, 55:6, 64:19, 68:11, 68:20, 73:8

**showed** [1] - 50:4

**showing** [3] - 53:13, 53:21, 68:19

**shown** [1] - 69:4

**shows** [3] - 30:11, 51:24, 57:14

**sic** [1] - 59:8

**sic]** [1] - 72:4

**side** [6] - 4:9, 30:5, 30:11, 32:9, 56:3, 76:1

**side-bar** [1] - 56:3

**sidebar** [2] - 18:8, 56:6

**sign** [1] - 107:16

**signature** [9] - 107:1, 107:2, 107:4, 107:5, 107:14, 107:18, 107:19, 107:20, 107:23

**signed** [1] - 83:25

**significance** [2] - 107:13, 107:21

**SILVERMAN** [1] - 1:19

**similar** [3] - 36:3, 82:25, 83:2

**similarities** [2] - 78:8, 78:9

**simple** [2] - 36:1, 49:15

**simply** [3] - 4:19, 5:7, 49:20

**simultaneous** [1] - 12:24

**simultaneously** [1] - 12:25

**single** [8] - 45:22, 52:18, 52:20, 54:18, 54:19, 54:20, 59:1, 60:25

**sit** [1] - 76:6

**sites** [1] - 33:10

**sits** [2] - 19:20, 76:5

**sitting** [7] - 16:2, 19:1, 21:6, 25:9, 33:19, 95:25, 96:2

**six** [2] - 11:2, 83:13

**skeptical** [1] - 59:25

**slim** [2] - 55:23, 60:12

**slow** [1] - 61:21

**SLUTKIN** [1] - 1:19

**small** [1] - 87:18

**snake** [1] - 10:25

**social** [3] - 33:10, 37:18, 108:7

**sole** [2] - 31:20, 60:17

**solely** [1] - 37:4

**solutions** [1] - 79:1

**someone** [12] - 25:23, 33:14, 34:17, 41:7, 41:11, 42:13, 54:2, 54:3, 78:14, 94:7, 94:19, 94:20

**sometimes** [9] - 28:16, 31:24, 46:4, 74:13, 77:11, 77:12, 77:14, 105:12

**soon** [4] - 34:12, 37:9, 69:7, 69:10

**sorry** [1] - 97:5

**sort** [1] - 5:2

**sought** [2] - 27:17, 38:23

**sound** [1] - 7:16

**sources** [1] - 36:12

**speaking** [1] - 76:23

**special** [1] - 41:18

**specific** [1] - 81:3

**specifically** [3] - 13:2, 58:4, 76:16

**specified** [2] - 99:18, 103:12

**speculate** [1] - 32:18

**speech** [2] - 62:13, 62:21

**speech-or-debate** [1] - 62:21

**spell** [1] - 75:5

**spend** [1] - 17:23

**split** [1] - 89:21

**staff** [25] - 34:20, 40:4, 41:2, 52:25, 54:21, 75:9, 76:9, 76:11, 76:14, 76:15, 78:16, 78:18, 81:18, 81:20, 81:22, 81:23, 81:25, 85:19, 96:22, 96:23, 97:1, 105:12, 105:13, 106:4, 107:11

**staffer** [1] - 55:19

**stage** [3] - 52:13, 52:14, 52:15

**stand** [4] - 29:10, 29:21, 58:25, 61:13

**stands** [2] - 6:7, 52:19

**start** [5] - 4:6, 22:21, 24:3, 44:14, 61:19

**starting** [2] - 84:25, 103:5

**state** [4] - 30:21, 75:5, 88:18, 108:15

**statement** [9] - 9:13, 14:11, 28:25, 29:1,

29:3, 29:7, 32:6, 38:5, 61:10

**statements** [8] - 28:25, 29:4, 29:7, 30:7, 30:9, 31:14, 70:17, 98:4

**Statements** [2] - 3:5, 3:6

**STATES** [4] - 1:1, 1:3, 1:11, 1:15

**States** [20] - 2:2, 28:18, 39:17, 52:16, 75:11, 75:25, 80:2, 85:17, 86:14, 87:8, 88:12, 88:17, 91:19, 93:21, 102:12, 103:9, 103:11, 106:5, 106:7, 109:13

**status** [1] - 12:15

**stenographic** [1] - 109:5

**step** [2] - 28:23, 60:10

**STEPHEN** [1] - 1:6

**Stephen** [5] - 26:7, 38:8, 52:5, 95:5, 102:15

**steps** [4] - 4:6, 6:23, 82:8, 82:22

**Steve** [17] - 50:13, 50:16, 51:9, 51:16, 53:4, 53:7, 53:10, 53:17, 53:23, 54:3, 54:10, 54:17, 55:2, 55:14, 61:14, 95:19, 95:23

**still** [7] - 7:20, 8:10, 11:17, 20:21, 70:24, 96:25, 97:1

**stop** [3] - 41:25, 43:5, 44:19

**stopping** [2] - 107:25, 108:2

**strategies** [2] - 98:11, 98:17

**strategist** [1] - 51:1

**strategy** [2] - 51:8, 51:22

**Street** [2] - 1:16, 1:20

**strengthen** [1] - 91:18

**stressing** [1] - 35:10

**stricken** [3] - 15:21, 32:20, 32:23

**strike** [12] - 10:25, 15:25, 18:12, 18:14, 18:25, 19:8, 19:16, 20:11, 20:14, 20:15, 21:6

**strikes** [2] - 17:9,

17:25
**striking** [2] - 18:16, 19:13
**struck** [2] - 19:14, 21:7
**stuck** [1] - 49:7
**subcommittee** [4] - 103:22, 103:24, 105:8, 105:9
**subject** [3] - 54:14, 70:21, 76:22
**subjects** [4] - 76:23, 94:12, 99:18, 104:3
**submit** - 37:22, 38:1
**submitted** [2] - 33:1, 33:3
**Subpart** [1] - 89:24
**Subpoena** [1] - 102:9
**subpoena** [90] - 8:11, 9:4, 9:5, 26:14, 27:17, 27:20, 38:19, 38:22, 39:11, 39:17, 39:23, 40:5, 41:10, 43:16, 43:18, 44:15, 45:2, 45:4, 45:9, 45:22, 46:7, 46:11, 47:3, 47:16, 47:24, 48:17, 48:20, 52:2, 52:5, 52:9, 52:13, 52:14, 53:2, 53:5, 53:10, 53:13, 54:4, 54:7, 54:13, 54:15, 54:19, 54:23, 56:14, 57:11, 58:18, 70:19, 77:20, 77:24, 78:1, 79:4, 94:7, 94:8, 94:14, 94:16, 94:17, 94:18, 94:19, 94:22, 95:1, 95:4, 96:10, 96:11, 96:12, 96:14, 96:15, 96:21, 97:15, 97:23, 99:7, 99:12, 99:15, 100:1, 100:8, 102:7, 102:10, 102:23, 103:16, 104:5, 104:11, 104:25, 105:2, 105:24, 106:10, 106:21, 106:24, 107:1, 107:14, 107:18, 107:21, 107:22
**subpoena's** [4] - 46:13, 46:17, 47:17, 47:18
**subpoenaed** [7] - 27:15, 64:5, 64:7, 95:20, 96:9, 97:2,

97:6
**subpoenas** [17] - 46:4, 59:4, 77:19, 78:19, 78:20, 92:14, 92:15, 92:17, 92:23, 93:1, 93:2, 93:14, 99:14, 107:13, 107:15, 107:16, 107:17
**Subsection** [4] - 90:1, 90:18, 90:20, 90:22
**subsection** [1] - 90:25
**substitute** [3] - 19:7, 19:15, 24:2
**successful** [1] - 50:21
**sudden** [1] - 67:3
**suddenly** [1] - 25:22
**suggest** [5] - 7:22, 56:16, 66:18, 66:21, 67:2
**suggested** [2] - 8:5, 98:5
**suggesting** [4] - 10:5, 10:6, 43:1, 56:12
**suggestion** [2] - 8:15, 62:23
**suggests** [1] - 31:24
**Suite** [2] - 1:20, 1:23
**summaries** [1] - 31:7
**summarized** [1] - 26:25
**support** [1] - 30:6
**supported** [1] - 50:4
**supposed** [1] - 47:7
**surrounding** [1] - 98:11
**sustain** [1] - 32:16
**swear** [3] - 22:19, 23:9, 23:13
**sworn** [5] - 7:9, 23:15, 30:20, 31:22, 108:14
**SWORN** [1] - 74:10
**system** [4] - 49:16, 49:18, 60:16, 86:13

## T

**table** [2] - 5:19, 5:21
**targeted** [1] - 91:14
**task** [1] - 43:13
**tasked** [6] - 42:7, 80:18, 80:20, 86:21, 91:7, 99:10
**technology** [1] - 90:4

**tee** [1] - 71:4
**telephone** [2] - 13:8, 14:10
**television** [1] - 36:25
**temporal** [1] - 9:16
**tempted** [1] - 37:2
**tend** [1] - 69:21
**tendency** [1] - 33:24
**Tenders** [1] - 11:10
**tenders** [7] - 15:1, 15:4, 15:7, 15:10, 15:13, 15:16, 74:25
**tends** [1] - 68:10
**term** [2] - 36:2, 94:18
**terms** [1] - 52:3
**terror** [1] - 85:19
**terrorism** [3] - 86:12, 91:13, 91:20
**terrorist** [5] - 88:12, 88:14, 89:13, 90:3, 90:7
**testified** [7] - 79:21, 81:17, 92:6, 96:8, 96:17, 98:22, 99:13
**testify** [8] - 63:24, 64:2, 72:15, 78:14, 98:25, 105:6, 105:17, 105:22
**testifying** [3] - 64:3, 78:6, 78:13
**testimony** [34] - 24:13, 25:24, 26:17, 26:19, 27:16, 27:17, 31:2, 31:6, 31:7, 31:23, 32:2, 52:8, 60:25, 61:10, 64:17, 66:7, 72:7, 72:10, 72:12, 77:5, 77:12, 77:14, 77:22, 78:2, 78:3, 78:4, 78:20, 92:21, 94:1, 94:11, 99:21, 99:24, 100:24, 106:25
**text** [2] - 35:15, 44:24
**texting** [1] - 35:12
**THE** [153] - 1:1, 1:10, 1:14, 1:15, 1:18, 3:10, 4:1, 4:3, 4:10, 4:12, 5:10, 6:2, 6:4, 6:11, 6:17, 7:1, 8:1, 8:14, 8:18, 8:23, 9:6, 9:11, 9:16, 9:19, 10:2, 10:6, 10:8, 10:17, 10:24, 11:7, 11:9, 11:10, 11:13, 11:23, 12:7, 12:11, 12:14, 12:17, 12:24, 13:4, 13:9, 13:12, 13:19, 14:6, 14:12, 14:16, 14:19,

14:22, 15:2, 15:5, 15:8, 15:11, 15:14, 15:17, 16:15, 16:21, 17:16, 17:22, 18:5, 18:9, 18:11, 18:15, 18:19, 18:23, 19:5, 19:21, 19:24, 20:3, 20:5, 20:7, 20:13, 20:18, 20:23, 21:1, 21:3, 21:15, 22:11, 22:13, 22:15, 23:2, 23:4, 23:13, 23:17, 23:18, 50:7, 50:12, 56:4, 56:8, 56:10, 56:18, 57:1, 57:8, 58:2, 58:6, 58:15, 58:18, 58:22, 59:12, 59:20, 60:8, 61:5, 61:16, 62:3, 62:5, 62:9, 62:22, 63:3, 63:5, 63:11, 63:14, 64:11, 64:23, 66:1, 66:4, 66:10, 67:6, 67:9, 67:12, 67:14, 67:23, 68:9, 69:9, 69:13, 69:15, 70:2, 70:7, 70:12, 70:16, 71:10, 72:5, 72:21, 73:1, 73:3, 73:14, 73:20, 73:22, 73:25, 74:3, 74:8, 74:11, 74:15, 74:20, 74:24, 84:17, 96:6, 97:21, 97:22, 98:19, 100:16, 101:6, 101:13, 101:19, 108:2
**theme** [1] - 67:19
**theory** [2] - 7:23, 8:3
**there'll** [2] - 54:5, 55:25
**therefore** [4] - 20:18, 21:8, 59:15, 70:7
**Thereupon** [4] - 22:25, 62:1, 73:18, 74:6
**thinker** [1] - 51:1
**thinking** [2] - 11:14, 17:24
**third** [5] - 15:14, 15:17, 27:19, 91:15, 105:24
**Thompson** [7] - 4:24, 63:23, 64:14, 64:16, 65:16, 69:3, 107:6
**THOMPSON** [1] - 1:19
**thorough** [1] - 45:6
**thoroughly** [1] - 79:19

**thoughts** [1] - 35:16
**threat** [2] - 86:14, 94:2
**threats** [1] - 81:10
**three** [9] - 9:20, 13:3, 51:19, 63:12, 73:2, 73:3, 88:3, 103:5, 106:24
**throughout** [2] - 28:1, 28:5
**thumbing** [1] - 49:11
**ties** [1] - 42:20
**time-limited** [1] - 93:4
**timeframe** [1] - 70:9
**timely** [1] - 79:6
**title** [1] - 102:8
**today** [13] - 6:21, 7:12, 12:22, 39:21, 63:22, 64:4, 65:2, 67:22, 74:18, 78:6, 78:8, 95:23, 107:25
**together** [5] - 40:10, 51:6, 51:13, 52:5, 55:21
**tomorrow** [2] - 7:9, 108:19
**took** [2] - 24:7, 68:23
**tool** [2] - 41:10, 44:9
**tools** [3] - 41:4, 92:6, 92:11
**top** [7] - 51:2, 51:7, 51:19, 87:22, 90:11, 91:4, 102:8
**topic** [1] - 4:19
**topics** [4] - 43:10, 44:16, 44:17, 45:2
**torn** [1] - 25:5
**total** [1] - 82:17
**touch** [1] - 43:1
**touching** [3] - 103:21, 104:1, 105:6
**transcribed** [1] - 77:13
**TRANSCRIPT** [1] - 1:10
**transcript** [3] - 13:2, 109:5, 109:6
**transcripts** [1] - 31:7
**transfer** [3] - 80:3, 88:15, 98:18
**transition** [1] - 86:17
**trauma** [1] - 85:19
**TRIAL** [1] - 1:10
**trial** [31] - 7:10, 22:9, 23:23, 23:24, 24:1, 24:3, 24:10, 25:3, 25:16, 25:22, 27:2, 27:6, 27:23, 28:1, 28:5, 28:15, 28:23,

30:17, 30:19, 31:11, 32:4, 32:5, 35:22, 36:25, 37:6, 37:7, 37:16, 39:1, 40:4, 43:18, 60:18
**tries** [1] - 34:17
**trouble** [1] - 44:6
**true** [8] - 9:18, 67:23, 99:3, 100:25, 101:4, 101:25, 109:4, 109:5
**Trump** [11] - 42:17, 51:3, 51:4, 51:7, 65:1, 65:10, 65:14, 65:21, 69:10, 69:11, 69:19
**Trump's** [1] - 43:6
**trust** [1] - 57:25
**truth** [6] - 44:5, 44:6, 68:3, 78:10, 98:22, 100:20
**try** [2] - 35:5, 79:8
**trying** [5] - 58:23, 67:2, 78:25, 97:19, 99:10
**turn** [11] - 25:14, 34:14, 37:12, 37:17, 41:7, 44:16, 45:2, 45:9, 46:5, 79:22, 108:8
**turned** [1] - 45:6
**tweeting** [1] - 35:12
**Twitter** [1] - 33:11
**two** [25] - 6:16, 9:20, 11:4, 17:15, 17:23, 19:8, 19:13, 19:16, 26:7, 27:11, 40:7, 43:19, 43:22, 44:12, 50:16, 51:12, 51:19, 52:19, 53:18, 82:19, 89:21, 99:22, 102:9, 103:19, 106:23
**types** [2] - 32:3, 94:12
**typically** [4] - 76:9, 78:14, 83:23, 94:5

**U**

**U.S** [18] - 26:9, 26:10, 26:12, 38:12, 39:18, 39:22, 41:20, 42:3, 48:22, 49:3, 50:5, 52:17, 55:24, 75:12, 75:15, 75:18, 75:20
**uncommon** [1] - 94:25
**under** [22] - 7:23, 18:6, 21:15, 36:22, 40:14, 44:2, 44:4,

56:11, 60:8, 62:17, 62:18, 70:22, 76:23, 78:17, 79:12, 79:20, 87:22, 88:23, 89:5, 89:10, 89:23, 102:9
**underscores** [1] - 94:2
**understood** [4] - 6:17, 14:1, 63:5, 99:1
**undoubtedly** [1] - 33:18
**unequivocally** [2] - 53:12, 65:3
**unfair** [1] - 36:9
**unfortunately** [1] - 36:11
**united** [1] - 2:2
**UNITED** [4] - 1:1, 1:3, 1:11, 1:15
**United** [19] - 28:18, 39:17, 52:16, 75:11, 75:25, 80:2, 85:16, 86:14, 87:8, 88:12, 88:17, 91:19, 93:21, 102:12, 103:9, 103:11, 106:4, 106:7, 109:13
**unlawfully** [1] - 47:25
**unless** [2] - 4:7, 28:1
**unlikely** [1] - 34:17
**unredacted** [3] - 4:25, 6:14, 6:20
**up** [38] - 6:6, 6:7, 7:5, 11:5, 15:24, 24:11, 30:19, 36:2, 36:13, 38:17, 40:9, 40:23, 40:24, 41:1, 41:15, 41:18, 41:23, 43:3, 44:22, 46:11, 46:14, 49:15, 53:21, 57:12, 61:13, 63:18, 64:19, 69:4, 71:4, 72:16, 73:24, 81:17, 84:3, 86:10, 89:21, 96:25, 98:14, 100:2
**urgency** [2] - 79:2, 93:19
**US-00410** [1] - 100:13
**uses** [1] - 92:15

**V**

**valid** [6] - 7:23, 10:14, 68:24, 70:22, 71:8, 107:22
**validate** [1] - 85:15
**validity** [1] - 56:14

**value** [1] - 30:25
**variety** [1] - 41:4
**various** [1] - 44:16
**Vaughn** [17] - 3:5, 6:4, 11:6, 18:11, 22:9, 28:19, 38:4, 50:7, 53:3, 59:12, 62:5, 66:4, 66:11, 70:12, 70:14, 74:3, 98:19
**VAUGHN** [94] - 1:14, 6:5, 6:15, 6:25, 7:16, 8:8, 8:15, 8:22, 9:3, 9:10, 9:13, 9:18, 9:25, 10:5, 10:7, 10:23, 13:16, 13:21, 14:17, 15:1, 16:14, 16:19, 17:20, 18:10, 18:13, 18:18, 18:21, 19:23, 20:6, 20:22, 22:10, 38:6, 56:2, 56:7, 56:9, 56:12, 59:13, 61:4, 62:6, 62:10, 63:1, 63:4, 66:12, 67:8, 67:11, 67:13, 70:15, 70:20, 71:19, 73:24, 74:4, 74:16, 74:22, 74:25, 75:2, 84:3, 84:5, 84:14, 84:20, 85:8, 85:10, 86:6, 86:8, 86:25, 87:3, 87:15, 87:17, 88:5, 88:7, 89:1, 89:4, 89:20, 89:22, 90:9, 90:12, 90:21, 90:23, 91:3, 91:5, 96:4, 96:7, 97:19, 99:4, 99:5, 100:2, 100:6, 100:10, 101:10, 101:15, 102:1, 102:4, 105:25, 106:1, 107:24
**verbal** [1] - 78:11
**verbally** [1] - 78:5
**verbatim** [1] - 108:6
**verdict** [5] - 25:4, 30:4, 31:19, 33:12, 50:3
**versions** [1] - 6:16
**videotaped** [1] - 51:11
**view** [7] - 5:19, 6:22, 36:2, 57:20, 65:25, 69:21, 74:11
**viewed** [1] - 8:12
**viewer** [1] - 51:14
**violence** [5] - 43:14, 51:25, 86:19, 91:12, 91:20
**violent** [4] - 86:15, 91:13, 91:21, 93:21
**voluntarily** [1] -

62:12
**voluntary** [4] - 41:6, 62:17, 63:6, 77:24
**vote** [6] - 38:13, 56:21, 57:6, 80:14, 81:15
**voted** [7] - 55:23, 56:1, 56:24, 57:7, 59:3, 59:4, 60:11
**voting** [1] - 56:21
**vs** [1] - 1:5

**W**

**wait** [1] - 29:2
**waiting** [2] - 23:7, 24:9
**waived** [3] - 8:3, 8:6, 9:24
**waiver** [2] - 7:23, 8:2
**waives** [1] - 72:2
**waiving** [1] - 8:21
**walk** [1] - 34:14
**wants** [3] - 18:2, 53:19, 67:1
**warn** [1] - 35:5
**warned** [2] - 47:20, 47:24
**warning** [2] - 47:5, 48:25
**warnings** [1] - 39:9
**warranted** [1] - 5:20
**Washington** [6] - 1:6, 1:17, 2:4, 98:16, 106:7, 109:14
**watch** [3] - 37:2, 37:3, 51:15
**ways** [1] - 77:7
**wearing** [1] - 96:1
**website** [2] - 14:10, 35:13
**week** [7] - 8:25, 9:9, 55:14, 55:15, 69:20, 71:18
**weeks** [2] - 106:23, 106:24
**weigh** [1] - 31:1
**weight** [1] - 30:24
**welcome** [1] - 87:20
**well-known** [1] - 51:20
**whereas** [4] - 84:25, 85:1, 85:13, 86:11
**white** [2] - 28:22, 48:16
**WHITE** [1] - 1:19, 1:19
**White** [2] - 51:9, 98:9
**whole** [1] - 49:14

**wholesale** [1] - 5:5
**widely** [1] - 52:1
**Willard** [1] - 98:16
**willful** [1] - 27:21
**willfully** [1] - 26:19, 54:10, 54:11
**winner** [1] - 38:13
**wish** [3] - 24:11, 25:7, 33:22
**withdrawn** [1] - 32:17
**WITNESS** [3] - 74:10, 74:15, 97:22
**witness** [34] - 25:23, 29:10, 31:4, 44:3, 54:19, 54:21, 58:12, 61:11, 61:18, 61:19, 61:23, 62:7, 63:18, 63:23, 67:7, 67:10, 67:15, 67:16, 68:10, 72:7, 72:15, 72:23, 73:8, 73:9, 74:6, 74:19, 74:25, 94:13, 94:14, 94:15, 96:5, 98:21, 100:3, 106:5
**witness's** [2] - 72:10, 72:12
**witnesses** [22] - 24:14, 25:20, 29:9, 29:12, 29:21, 31:1, 31:2, 31:6, 31:13, 31:23, 34:2, 34:9, 34:13, 57:17, 57:19, 62:10, 62:23, 77:14, 77:15, 78:16, 78:18, 79:10
**WITNESSES** [1] - 3:10
**witnesses'** [1] - 63:7
**word** [3] - 45:16, 54:3, 55:4
**words** [5] - 5:6, 8:5, 51:12, 57:13, 68:1
**workers** [1] - 34:24
**works** [3] - 41:22, 71:24, 94:6
**write** [6] - 14:21, 14:22, 18:21, 25:7, 33:9, 35:6
**writing** [2] - 69:2, 69:3
**written** [1] - 32:23
**wrote** [1] - 69:11

**Y**

**year** [4] - 38:7, 82:13, 93:7, 93:12
**years** [5] - 42:15,

50:17, 52:19, 82:17,
82:24
  **yesterday** [4] - 12:4,
12:21, 18:16, 19:18
  **York** [1] - 51:21
  **yourself** [4] - 34:7,
48:2, 49:14, 61:1
  **yourselves** [1] -
25:16

## Z

  **Zelda** [1] - 1:23
  **zoom** [10] - 85:9,
86:7, 87:1, 88:6, 89:2,
90:10, 90:21, 91:3,
102:13, 103:14
  **zoomed** [2] - 87:18,
87:25