**[ORAL ARGUMENT HAS NOT BEEN SCHEDULED]**

In The

# United States Court Of Appeals
## For The D.C. Circuit

### UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

### STEPHEN K. BANNON,

*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————————

## JOINT APPENDIX
### Volume X of XII
### (Pages: 3994 - 4421)

————————————

David I. Schoen
LAW OFFICE OF
  DAVID I. SCHOEN
2800 Zelda Road
Suite 100-6
Montgomery, AL  36106
(334) 395-6611

Chrisellen R. Kolb
Elizabeth H. Danello
U.S. ATTORNEY'S OFFICE
(USA) APPELLATE DIVISION
601 D Street, NW
Washington, DC  20530
(202) 252-6829

*Counsel for Appellant*

*Counsel for Appellee*

## TABLE OF CONTENTS
### Joint Appendix Volume I of XII

**Page:**

**Docket Entries [1:21-cr-00670-CJN-1]**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Docket Entries [1:22-mc-00060-CJN]**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Indictment**
      **filed November 12, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**Transcript of Return on Arrest Warrant & Initial Appearance**
**Before the Honorable Robin M. Meriweather**
      **on November 15, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

**Transcript of Video Arraignment/Status Conference**
**Before the Honorable Carl J. Nichols**
      **on November 18, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

**Transcript of Video Status Conference**
**Before the Honorable Carl J. Nichols**
      **on December 7, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

**Defendant's Motion to Compel Discovery,**
**With Exhibits,**
      **filed February 4, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 158

    **Exhibits:**

    1.    **Letter**
            **dated January 14, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . 186

    2.    **Letter**
            **dated January 28, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . 194

**Exhibits** to

**Defendant's Motion to Compel Discovery**
        **filed February 4, 2022, Continued:**

3.    Letter
            dated October 7, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 197

4.    **FBI Interview of Robert J. Costello, Esquire**
            dated November 3, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . 169

7.    **H. Res. 503, Sec. 5(c)(6)(A) & (B)**
            dated June 20, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 214

8.    **Procedures Adopted by 117th Congress**
      **Regulations for Use of Deposition Authority**
            dated January 4, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 229

9.    **FBI Interview of U.S. House of Representatives**
      **General Counsel Doug Letter**
            dated November 2, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . 231

10.   **Letter from Ronald C. Machen Jr., U.S. Attorney,**
      **to Speaker of the House John A. Bohner**
            dated March 31, 2015. . . . . . . . . . . . . . . . . . . . . . . . . . . . 240

11.   **Prosecution for Contempt of Congress of an**
      **Executive Branch Official Who Has Asserted a**
      **Claim of Executive Privilege**
            8 Op. O.L.C. 101 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . 248

12.   **Attempted Exclusion of Agency Counsel from**
      **Congressional Depositions of Agency**
      **Employees, Slip Op.**
            dated May 23, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 291

Government's Motion *in Limine* to Exclude Evidence or
Argument Relating to Good-faith Reliance on
Law or Advice of Counsel,
With Attachment,

      filed February 4, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 311

      Attachment:

      Letter

            dated October 7, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 319

Defendant's Opposition to Government
Motion *in Limine* on Advice of Counsel,
With Exhibit,

      filed February 25, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 329

      Exhibit:

      1.    Declaration of Robert J. Costello, Esquire
            sworn on February 25, 2022.. . . . . . . . . . . . . . . . . . . . . . . 356

Defendant's Reply in Support of His Motion to Compel Discovery,
With Exhibit,

      filed March 8, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 371

      Exhibit:

      1.    Table That Sets Forth the Positions
            Taken by the Government and Defense. . . . . . . . . . . . . . . . . 385

**Government's Reply in Support of its Motion *in Limine* to Exclude Evidence or Argument Relating to Good-faith Reliance on Law or Advice of Counsel,**

**With Exhibits,**

filed March 8, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 390

**Exhibits:**

1.    **E-mail Correspondence [US-001038-40]**
      **various dates.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 418

2.    **Letter from Justin Clark**
      **dated October 6, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . 422

3.    **Email from Committee Counsel**
      **dated October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 428

4.    **Email from Costello**
      **dated October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 430

5.    **Email from Committee Counsel**
      **dated October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 436

6.    **Costello Email Chain**
      **dated October 14, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 439

7.    **Costello and Clark Email Exchange**
      **dated October 14-18, 2021.** . . . . . . . . . . . . . . . . . . . . . 444

## TABLE OF CONTENTS
## Joint Appendix Volume II of XII

**Page:**

**Transcript of Oral Argument**
**Before the Honorable Carl J. Nichols**
> **on March 16, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **457**

**Defendant's Surreply to the Government's Reply in Support of its**
**Motion *in Limine* to Exclude Evidence or Argument Relating to**
**Good-faith Reliance on Law or Advice of Counsel**
> **filed March 17, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **556**

**Defendant's Supplemental Brief in Opposition to the**
**Government's Motion *in Limine* on Advice of Counsel,**
**With Exhibits,**
> **filed March 22, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **565**

> **Exhibits:**

> 1.   **Senate Committee Investigation**
> > **dated August 8, 1958.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **577**

> 2.   **Application of 28 U.S.C. § 458 to Presidential**
> > **Appointments of Federal Judges**
> > **dated December 18, 1995.** . . . . . . . . . . . . . . . . . . . . . . . . **584**

> 3.   **Letter from Michael B. Mukasey, Attorney**
> > **General, to the Hon. Nancy Pelosi, Speaker of the**
> > **House of Representatives**
> > **dated February 29, 2008.** . . . . . . . . . . . . . . . . . . . . . . . . . **599**

<u>Exhibits</u> to
**Defendant's Supplemental Brief in Opposition to the
Government's Motion *in Limine* on Advice of Counsel**
         **filed March 22, 2022, Continued:**

4.      **Response to Congressional Requests for
         Information Regarding Decisions Made Under the
         Independent Counsel Act,**
                  **10 Op. O.L.C. 68 (1986)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 601

5.      **Rex Lee, *Executive Privilege, Congressional Subpoena
         Power, and Judicial Review: Three Branches,
         Three Powers, and Some Relationships,*
                  1978 B.Y.U. L. Rev. 231, 259**. . . . . . . . . . . . . . . . . . . . . . . . 619

6.      **Whether the Department of Justice May Prosecute
         White House Officials for Contempt of Congress,
                  2008 WL 11489049 (O.L.C.)**. . . . . . . . . . . . . . . . . . . . . . . . 688

7.      **Congressional Oversight of the White House,
                  2021 WL 222744 (O.L.C.)**. . . . . . . . . . . . . . . . . . . . . . . . 692

<u>Amended Exhibit</u> to
**Defendant's Supplemental Brief in Opposition to the
Government's Motion *in Limine* on Advice of Counsel**
         **filed March 23, 2022:**

3.      **Letter from Michael B. Mukasey, Attorney
         General, to the Hon. Nancy Pelosi, Speaker of the
         House of Representatives**
                  **dated February 29, 2008**. . . . . . . . . . . . . . . . . . . . . . . . . . . 722

**Government's Response to Defendant's Supplemental Brief in
Opposition to the Government's Motion *in Limine* to Exclude
Evidence and Argument Relating to Good-faith
Reliance on Law or Advice of Counsel**
         **filed March 29, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 725

**Defendant's Supplemental Reply on Waiver**
        filed March 30, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 735

**Order**
        filed April 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 741

**Government's Motion *in Limine* to Exclude Evidence of
Department of Justice Opinions and Writings,
With Exhibits,**
        filed April 15, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 745

        **Exhibits:**

        1.      **Letter from White House Deputy Counsel to Costello**
                dated October 18, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 765

        2.      **Letter from Justin Clark to Costello**
                dated October 6, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 767

        3.      **Emails from Justin Clark to Costello**
                various dates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 769

**Government's Motion *in Limine* to Exclude Evidence
Relating to Objections to Subpoena That Defendant Waived,
With Exhibit,**
        filed April 15, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 771

        **Exhibit:**

        1.      **Subpoena**
                dated September 23, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . 781

**Government's Motion *in Limine* to Exclude Evidence of the
Defendant's Prior Experience with Subpoenas**
        filed April 15, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 792

**Defendant's Notice Pursuant to Rule 12.3, Fed. R. Crim. P.**

    **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **798**

**Defendant's Motion to Exclude Evidence**

    **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **800**

**Defendant's Motion to Dismiss the Indictment,**
**With Exhibits,**

    **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **807**

    <u>**Exhibits:**</u>

    **A.**    **H. Res. 8 (Adoption of Rules for 117th Congress)**

        **dated January 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **867**

    **B.**    **H. Res. 503 (Authorizing House Select Committee)**

        **dated June 30, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **912**

    **C.**    **Regulations For Use Of Deposition Authority**

        **dated January 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **927**

    **D.**    **Amerling and Letter FBI 302**

        **dated November 10, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . **929**

# TABLE OF CONTENTS
## Joint Appendix Volume III of XII

**Page:**

**Exhibits to**
**Defendant's Motion to Dismiss the Indictment**
    **filed April 15, 2022, Continued:**

E.    **Rules of the 117th Congress**
        **dated February 2, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . **938**

F.    **Republican Conference Rules of the 117th Congress.** . . . . . **991**

G.    **Congressional Oversight of The White House,**
        **45 Op. O.L.C. slip op. (Jan. 8, 2021).** . . . . . . . . . . . . . . . **1005**

H.    **Assertion of Executive Privilege Concerning the**
    **Dismissal and Replacement of U.S. Attorneys**
        **dated June 27, 2007.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1065**

I.    **Immunity of the Former Counsel to the President from**
    **Compelled Congressional Testimony,**
        **43 Op. O.L.C. slip op. (July 10, 2007).** . . . . . . . . . . . . . . **1075**

J.    **Prosecution for Contempt of Congress of an Executive**
    **Branch Official Who Has Asserted a Claim of Privilege,**
        **8 Op. O.L.C. 101 (1984).** . . . . . . . . . . . . . . . . . . . . . . . . . . **1079**

K.    **Whether the Department of Justice May Prosecute**
    **White House Officials for Contempt of Congress,**
        **32 Op. O.L.C 65 (2008).** . . . . . . . . . . . . . . . . . . . . . . . . . . . **1122**

L.    **Application of 28 U.S.C. Sec. 458 to Presidential**
    **Appointments of Federal Judges,**
        **19 Op. O.L.C slip op. (December 18, 1995).** . . . . . . . . . **1128**

**Exhibits** to
**Defendant's Motion to Dismiss the Indictment**
**filed April 15, 2022, Continued:**

M.   Randolph D. Moss, Executive Branch Legal Interpretation:
     A Perspective from the Office of Legal Counsel,
          52 Admin. L. Rev. 1303 (2000)...................... 1143

N.   Testimonial Immunity Before Congress of the
     Former Counsel to the President,
          43 Op. O.L.C. slip op. (May 20, 2019). ............. 1172

O.   Response to Congressional Requests for
     Information Regarding Decisions Made
     Under the Independent Counsel Act,
          10 Op. O.L.C. 68 (1986)........................... 1194

P.   Letter from Ronald C. Machen Jr., U. S. Attorney, to
     Speaker John A. Boehner
          dated March 31, 2015. ............................ 1220

Q.   Letter from Michael B. Mukasey, Attorney General, to
     Speaker of the House, Hon. Nancy Pelosi
          dated February 29, 2008........................... 1228

R.   Steven G. Bradbury, Memorandum for Attorneys of the
     Office Re: Best Practices for OLC Opinions
          May 16, 2005..................................... 1231

S.   Trevor W. Morrison, Stare Decisis in the
     Office of Legal Counsel,
          110 COLUM. L. REV. 1448 (2010)................... 1237

T.   Walter Dellinger, et al., Principles to
     Guide the Office of Legal Counsel
          dated Dec. 21, 2004. ............................. 1261

**Exhibits** to
**Defendant's Motion to Dismiss the Indictment**
**filed April 15, 2022, Continued:**

U.      David J. Barron, Memorandum for Attorneys of the
        Office Re: Best Practices for OLC Legal
        Advice and Written Opinions
                dated July 16, 2010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1268

V.      Frank H. Easterbrook, Presidential Review,
        40 CASE W. RES. L. REV. 905 (1990). . . . . . . . . . . . . . . 1275

W.      Presidential Authority to Decline to Execute
        Unconstitutional Statutes, OLC Mem. Op.
                dated November 2, 1984. . . . . . . . . . . . . . . . . . . . . . . . . 1302

X.      Douglas W. Kmiec, OLC's Opinion Writing Function:
        The Legal Adhesive for a Unitary Executive,
                15 CARDOZO L. REV. 337 (1993). . . . . . . . . . . . . . . . . 1316

**TABLE OF CONTENTS**

**Joint Appendix Volume IV of XII**

**Page:**

**Exhibits to**

**Defendant's Motion to Dismiss the Indictment**
    **filed April 15, 2022, Continued:**

Y.    **Applying Estoppel Principles in Criminal Cases,**
      **78 YALE L.J. 1046 (1969)**............................ **1355**

Z.    **Anne Bowen Pouliun, Prosecutorial Inconsistency,**
**Estoppel, and Due Process: Making the**
**Prosecution Get its Story Straight,**
      **18 Cal. L. Rev. 1423 (2001)**............................ **1384**

AA.    **Rex E. Lee, Executive Privilege, Congressional Subpoena**
**Power, and Judicial Review: Three Branches, Three**
**Powers, and Some Relationships,**
      **1978 B.Y.U. L. REV. 231 (1978).** ........................ **1441**

BB.    **John O. McGinnis, Models of the Opinion Function of the**
**Attorney General: A Normative, Descriptive, and**
**Historical Prolegomenon,**
      **15 CARDOZO L. REV 375 (1993)**................... **1510**

CC.    **Griffin B. Bell, The Attorney General: The Federal**
**Government's Chief Lawyer and Chief Litigator, or**
**One Among Many?,**
      **46 FORDHAM L. REV. 1049 (1978)**................ **1572**

**Exhibits** to
**Defendant's Motion to Dismiss the Indictment**
  **filed April 15, 2022, Continued:**

  DD. Notes, The Immunity-Conferring
   Power of the Office of Legal Counsel,
    121 HARV. L. REV. 2086 (2008). . . . . . . . . . . . . . . . . . . 1596

  EE. U.S. Department of Justice, Criminal
   Resource Manual § 2055 (Public Authority Defense). . . . . 1621

**Defendant's Notice of Filing,**
**With Attached Motion to Dismiss the Indictment and Exhibits Index,**
  **filed April 19, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1627

**Government's Response to Defendant's**
**Notice under Federal Rule of Procedure 12.3**
  **filed April 29, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1695

**Defendant's Opposition to the Government's**
**Motion *in Limine* Based on Waiver**
  **filed May 6, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1698

**Defendant's Opposition to the Government's**
**Motion to Exclude Prior Subpoena Evidence**
  **filed May 6, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1709

**Defendant's Response to Government's Motion *in***
***Limine* to Exclude Evidence of Department of**
**Justice Opinions and Writings [Doc. 52]**
  **filed May 6, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1720

**Government's Opposition to Defendant's Motion to Dismiss,**
**With Exhibits,**

    **filed May 6, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1745**

<u>**Exhibits:**</u>

1.    **Letter from Chairman Bennie G. Thompson to**
       **Mr. Stephen K. Bannon**

         **dated September 23, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . **1793**

2.    **E-mail from Cooney to Costello**

         **dated November 3, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . **1796**

3.    **E-mail from Costello to Cooney**

         **dated November 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . **1800**

4.    **E-mail from Cooney to Costello**

         **dated November 5, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . **1803**

# TABLE OF CONTENTS
## Joint Appendix Volume V of XII

**Page:**

**Government's Opposition to
Defendant's Motion to Exclude Evidence**
      filed May 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1806

**Defendant's Reply in Support of His Motion to Exclude Evidence**
      filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1812

**Government's Reply in Support of Motion *in Limine* to Exclude
Evidence of Department of Justice Opinions and Writings**
      filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1818

**Government's Reply in Support of Motion *in Limine* to
Exclude Evidence Relating to Objections to
Subpoena That Defendant Waived**
      filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1837

**Government's Reply in Support of Motion *in Limine* to Exclude
Evidence of the Defendant's Prior Experience with Subpoenas**
      filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1846

**Defendant's Reply in Support of His Motion to Dismiss Indictment,
With Exhibits,**
      filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1855

      **Exhibits:**

      1.    **Letter from Chairman Bennie G. Thompson to
            Mr. Stephen K. Bannon**
                  dated September 23, 2021. . . . . . . . . . . . . . . . . . . . . . 1885

      2.    **Transcript of Oral Argument
            Before the Honorable Carl J. Nichols**
                  on March 16, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . 1894

**Exhibits** to
**Defendant's Reply in Support of His Motion to Dismiss Indictment**
         **filed May 17, 2022, Continued:**

3.      **Letter from Costello to Congressman Thompson**
              **dated October 18, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1994

4.      **Letter from Congressman Thompson to Costello**
              **dated October 19, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1997

**United States House of Representatives'**
**Motion for Leave to File** *Amicus Curiae* **Brief,**
**With Attachment**
         **filed May 25, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2002

         **Attachment:**

         **Brief of United States House of Representatives as**
         *Amicus Curiae* **In Support of the Department of Justice**
              **dated May 10, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2009

**United States House Minority Leadership**
**Motion for Leave to File** *Amicus Curiae* **Brief,**
**With Attachment,**
         **filed May 25, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2035

         **Attachment:**

         **Brief of the U.s. House of Representatives Minority Leader**
         **Kevin O. Mccarthy and the U.s. House of Representatives**
         **Minority Whip Stephen J. Scalise as Amicus Curiae**
              **dated May 24, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2050

**Defendant's Notice Regarding Amicus Briefs**

    **filed June 10, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2065**


**Motion to Quash,**

**With Attachment,**

    **filed June 13, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2072**


    <u>**Attachment:**</u>


    **Memorandum of Points and Authorities**

    **In Support of Motion to Quash,**

    **With Exhibits,**

        **dated June 13, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2074**

## TABLE OF CONTENTS
### Joint Appendix Volume VI of XII

**Page:**

**Transcript of In-person Motions Hearing**
**Before the Honorable Carl J. Nichols**
     **on June 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2229**

**Government's Omnibus Motion** *in Limine*
     **filed June 17, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2408**

**Defendant's Motion to Compel**
**Meadows & Scavino Declination Discovery,**
**With Exhibits,**
     **filed June 27, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2425**

     <u>**Exhibits:**</u>

     1.   **Letter from Bannon's Counsel to Prosecutors**
             **dated June 21, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2442**

     2.   **Letter from Prosecutors to Bannon's Counsel**
             **dated June 21, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2445**

     3.   **Letter from Justin Clark to Scott Gast**
             **dated October 6, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **2448**

     4.   **Letter from Pat Cipollone to Chairman Nadler**
             **dated September 16, 2019.** . . . . . . . . . . . . . . . . . . . . . . . . **2453**

     5.   **Plaintiff's Motion for Judgment on the Pleadings, or in the**
          **Alternative, for Summary Judgment, & in Opposition to**
          **Defendants' Motion for Summary Judgment**
             **dated May 20, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2459**

**Defendant's Opposition to Motion to Quash**
     **filed June 27, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2597**

## TABLE OF CONTENTS
### Joint Appendix Volume VII of XII

Page:

Government's Opposition to Defendant's Motion to Compel
    filed June 29, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2694

Joint Proposed Jury Instructions,
With Attachment,
    filed June 30, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2701

    <u>Attachment:</u>

    Manual of Model Criminal Jury Instructions
        dated March 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2765

Government's Objections to Defendant's Proposed Jury Instructions
    filed July 1, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2768

Defendant's Opposition to Government's Omnibus Motion *in Limine*
    filed July 1, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2781

Office of General Counsel U.S. House of Representatives'
Reply in Support of Motion to Quash,
With Exhibits,
    filed July 5, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2796

    <u>Exhibits:</u>

    A.    Order - *U.S. v. Moussaoui*
        dated March 2, 2006. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2828

    B.    Order - *U.S. v. Arthur Andersen, L.L.P.*
        dated May 14, 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2834

    C.    Order Granting Motion to Quash Subpoena on
        U.S. Representative Maxine Waters - *D.C. v. Hayes*
        dated November 16, 2007. . . . . . . . . . . . . . . . . . . . . . . . 2836

**Defendant's Reply in Further Support of Motion to Compel**
**Meadows and Scavino Declination Discovery,**
**With Exhibit,**

      filed July 6, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2842

      <u>Exhibit:</u>

    1.    **Memorandum**

              dated October 29, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2853

**Government's Reply in Support of Motion** *in Limine*

      filed July 8, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2863

**Government's Motion** *in Limine* **to Exclude Evidence or Argument**
**Relating to the Defendant's Eleventh-hour Assertion That**
**He Is Willing to Testify Before the Select Committee**

      filed July 11, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2874

**Transcript of In-person Motions Hearing**
**Before the Honorable Carl J. Nichols**

      on July 11, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2879

**Defendant's Opposition to Motion** *in Limine* **to Bar Testimony,**
**With Exhibits,**

      filed July 13, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3071

      <u>Exhibits:</u>

    1.    **Letters from former President Trump to Mr. Costello and**
           **Mr. Costello's Letter to Chairman Thompson**

              dated June 9, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3080

    2.    **Certification**

              dated October 21, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3084

**Exhibits** to

**Defendant's Opposition to Motion** *in Limine* **to Bar Testimony**
        **filed July 13, 2022, Continued:**

   3.    **Subpoena**
             **dated September 23, 2021.** . . . . . . . . . . . . . . . . . . . . . . . 3090

   4.    **Letter from Thompson to Costello**
             **dated October 8, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . 3092

   5.    **Indictment**
             **dated November 12, 2021.** . . . . . . . . . . . . . . . . . . . . . . . 3096

**Government's Reply in Support of Motion** *in Limine* **to Exclude**
**Evidence or Argument Relating to the Defendant's Eleventh-hour**
**Assertion That He Is Willing to Testify Before the Select Committee,**
**With Exhibits,**
        **filed July 13, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3106

   **Exhibits:**

   1.    **Letter from Thompson to Costello**
             **dated October 8, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . 3114

   2.    **Letter from Thompson to Costello**
             **dated October 15, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . 3118

**Government's Objections to Defendant's Trial Exhibits**
        **filed July 14, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3122

## TABLE OF CONTENTS
### Joint Appendix Volume VIII of XII

**Page:**

**Transcript of In-person Motions Hearing and Pretrial Conference Before the Honorable Carl J. Nichols**
          on July 14, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3127

**Defendant's Motion to Exclude Congressional Evidence or Dismiss the Indictment Based on Granting the Motion to Quash, With Exhibits,**
          filed July 15, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3192

   Exhibits:

   1.   **Transcript Jury Trial Before the Honorable Kurt D. Engelhardt**
        *U.S. v. Rainey*, No. 12-291
             on June 1, 2015.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3216

   2.   **Congressional Gamesmanship Leads To An Acquittal In Deepwater Horizon Case, U.S. v. David Rainey: A Case Study**
             dated 2016.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3260

**Government's Opposition to Defendant's Motion to Exclude Congressional Evidence or Dismiss the Indictment Based on Granting the Motion to Quash**
          filed July 16, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3303

**Government's Objections to Court's Proposed Statement of the Case, Voir Dire, and Jury Instructions**
          filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3308

**Defendant's Statement of the Case**
   filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3310


**Defendant's Purposed Jury Instructions**
   filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3316


**Defendant's Reply in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment
Based on Granting the Motion to Quash**
   filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3374


**Government's Response to Defendant's Objections to Exhibits**
   filed July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3381


**Defendant's Motion to Exclude Hearsay Evidence**
   filed July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3386


**Transcript of Jury Trial - Day 1 - Morning Session
Before the Honorable Carl J. Nichols**
   on July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3393

## TABLE OF CONTENTS
## Joint Appendix Volume IX of XII

**Page:**

**Transcript of Jury Trial - Day 1 - Afternoon Session**
**Before the Honorable Carl J. Nichols**
      on July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3577

**Transcript of Jury Trial - Day 2 - Morning Session**
**Before the Honorable Carl J. Nichols**
      on July 19, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3784

**Transcript of Jury Trial - Day 2 - Afternoon Session**
**Before the Honorable Carl J. Nichols**
      on July 19, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3868

**Testimony of <u>Kristin Amerling</u>:**

      **Direct Examination by Ms. Vaugn.. . . . . . . . . . . . . . . . . . . . . . . . . . 3942**

## TABLE OF CONTENTS
## Joint Appendix Volume X of XII

Page:

**Transcript of Jury Trial - Day 3 - Morning Session**
**Before the Honorable Carl J. Nichols**
on July 20, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3994

Testimony of <u>Kristin Amerling</u>:

**Direct Examination by Ms. Vaughn.** . . . . . . . . . . . . . . . . . . . . . . 4014
**Cross Examination by Mr. Corcoran.** . . . . . . . . . . . . . . . . . . . . . 4078

**Transcript of Jury Trial - Day 3 - Afternoon Session**
**Before the Honorable Carl J. Nichols**
on July 20, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4143

Testimony of <u>Kristin Amerling</u>:

**Cross Examination by Mr. Corcoran (Continued).** . . . . . . . . . . . 4149
**Redirect Examination by Ms. Vaughn.** . . . . . . . . . . . . . . . . . . . . 4211

Testimony of <u>Stephen Hart</u>:

**Direct Examination by Ms. Gaston.** . . . . . . . . . . . . . . . . . . . . . . 4233
**Cross Examination by Mr. Corcoran.** . . . . . . . . . . . . . . . . . . . . . 4252
**Redirect Examination by Ms. Gaston.** . . . . . . . . . . . . . . . . . . . . 4264

**Defendant's Motion for Judgment of Acquittal Pursuant to**
**Rule 29, Federal Rules of Criminal Procedure**
filed July 21, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4289

**Transcript of Jury Trial - Day 4**
**Before the Honorable Carl J. Nichols**
on July 21, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4295

# TABLE OF CONTENTS
## Joint Appendix Volume XI of XII

**Page:**

**Notice of Defendant's Objections to the Court's Final**
**Jury Instructions and Additional Requested Instructions**
> filed July 21, 2022................................................ 4422

**Defendant's Notice Regarding Congressional Hearings**
> filed July 22, 2022................................................ 4432

**Notice of Defendant's Objection to Jury Instruction Number 27**
> filed July 22, 2022................................................ 4435

**Transcript of Jury Trial - Day 5**
**Before the Honorable Carl J. Nichols**
> on July 22, 2022................................................ 4438

**Jury Instructions**
> filed July 22, 2022................................................ 4555

**Counsels' Acknowledgment Concerning Trial Exhibits**
> filed July 22, 2022................................................ 4585

**Government's Exhibit List**
> filed July 22, 2022................................................ 4586

**Defendant's Exhibit List**
> filed July 22, 2022................................................ 4588

**Note from Jury**
> filed July 22, 2022................................................ 4591

**Verdict Form**
> filed July 22, 2022................................................ 4592

Order
      filed July 27, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4593

Government's Response to Defendant's
Notice Regarding Publicity During Trial,
With Exhibits,
      filed July 28, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4595

      Exhibits:

      1.    Screenshot of Episode 1996, War Room
                  dated July 12, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4598

      2.    Bannon's Gettr Repost CNN Ad
                  dated July 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4599

Defendant's Supplemental Brief in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment Based on
Granting the Motion to Quash and Congressional Subpoena
Recipients' Refusal to Testify or Produce Documents
      filed August 5, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4600

Defendant's Motion for a New Trial
      filed August 5, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4617

Government's Response in Opposition to Defendant's
Supplemental Brief in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment
      filed August 12, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4634

Defendant's Reply to the Government's Response to
Supplemental Brief in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment
Based on Granting the Motion to Quash and Congressional
Subpoena Recipients' Refusal to Testify or Produce Documents
      filed August 19, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4649

**Government's Opposition to Defendant's Motion for a New Trial**
      filed August 19, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4657


**Defendant's Reply to Opposition to Motion for a New Trial**
      filed August 26, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4676

**Order**
      filed September 2, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4682

**Transcript of Sentencing Hearing**
**Before the Honorable Carl J. Nichols**
      on October 21, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4687

**Judgment in a Criminal Case**
      filed October 21, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4767

**Defendant's Notice of Appeal**
      filed November 4, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4772

**Order Staying Sentence Pending Appeal**
      filed November 7, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4779

## TABLE OF CONTENTS
### Joint Appendix Volume XII of XII - Exhibits

**Page:**

**Defendant's Exhibits:**

9B.   **H41 Congressional Record - House**
        **dated January 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4780

30.   **Letter from Former President Donald Trump to**
        **Stephen K. Bannon**
        **dated July 9, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4781

31.   **Letter from Robert J. Costello to**
        **Chairman Bennie Thompson**
        **dated July 9, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4782

32.   **Letter from Chairman Bennie Thompson to**
        **Robert J. Costello**
        **dated July 14, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4784

39.   **Article from Rolling Stone**
        **dated September 24, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 4786

40.   **Daily Mail Article**
        **dated October 8, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4804

**Government's Exhibits:**

1.   **House Resolution 503.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4808

2.   **Subpoena to Stephen Bannon**
        **dated September 23, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 4822

**Government's Exhibits**, Continued:

3.    **Emails re Service of Subpoena**
       **dated September 23 and 24, 2021**.................. 4832

4.    **Letter from Costello to**
       **Chairman Thompson and Cover Email**
       **dated October 7, 2021**........................... 4835

5.    **Letter from Chairman Thompson to Costello**
       **dated October 8, 2021**........................... 4838

6.    **Letter from Costello to Chairman Thompson**
       **dated October 13, 2021**.......................... 4841

7.    **Letter from Chairman Thompson to Costello**
       **dated October 15, 2021**.......................... 4843

8.    **Letter from Costello to**
       **Chairman Thompson and Cover Email**
       **dated October 18, 2021**.......................... 4846

9.    **Letters from Chairman Thompson to Costello**
       **dated October 19, 2021**.......................... 4848

10.   **Post on Stephen Bannon's Gettr Account**
       **dated September 24, 2021.** ...................... 4851

11A.  **Post on Stephen Bannon's Gettr Account**
       **dated October 8, 2021**.......................... 4852

11B.  **DailyMail Article Linked in October 8, 2021**
       **Post on Stephen Bannon's Gettr Account.** .............. 4853

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

                                        CR Action
                                        No. 1:21-670

        vs.                             Washington, DC
                                        July 20, 2022
STEPHEN K. BANNON,
                                        9:02 a.m.
            Defendant.

    TRANSCRIPT OF JURY TRIAL - DAY 3 - **MORNING SESSION**
        BEFORE THE HONORABLE CARL J. NICHOLS
            UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the U.S.:**          **AMANDA ROSE VAUGHN**
                       **MOLLY GULLAND GASTON**
                       U.S. ATTORNEYS OFC. FOR D.C.
                       555 4th Street NW
                       Washington, DC  20001
                       202-252-1793


**For the Defendant:**     **DAVID I. SCHOEN**
                       DAVID I. SCHOEN, ATTORNEY AT LAW
                       2800 Zelda Road, Suite 100-6
                       Montgomery, AL  36106
                       334-395-6611

                       **MATTHEW EVAN CORCORAN**
                       SILVERMAN THOMPSON SLUTKIN WHITE
                       201 N. Charles Street, 25th Floor
                       Baltimore, MC  21201
                       410-385-2225


**Reported By:**           **LORRAINE T. HERMAN, RPR, CRC**
                       Official Court Reporter
                       U.S. District & Bankruptcy Courts
                       333 Constitution Avenue, NW
                       Washington, DC 20001
                       lorraine_herman@dcd.uscourts.gov

**I N D E X**

**WITNESS**                                                    **PAGE**

KRISTIN AMERLING

    Direct Examination by Ms. Vaughn                    620
    Cross-Examination by Mr. Corcoran                  684

**E X H I B I T S**

**EXHIBIT**                                                    **PAGE**

Government's No. 3  Admitted into Evidence          643
Government's No. 4  Admitted into Evidence          651
Government's No. 6  Admitted into Evidence          666
Government's No. 7  Admitted into Evidence          670
Government's No. 8  Admitted into Evidence          676

1            **P R O C E E D I N G S**

2            **DEPUTY CLERK:**  Good morning, Your Honor.  This is

3    criminal case year 2021-0670, United States of America

4    versus Stephen K. Bannon.

5            Counsel, please come forward to introduce

6    yourselves for the record beginning with the government.

7            **MS. VAUGHN:**  Good morning, Your Honor.

8            Amanda Vaughn and Molly Gaston for the United

9    States, and at counsel table is paralegal specialist Quiana

10   Dunn-Gordon and FBI Special Agent Frank D'Amico.

11           **THE COURT:**  Good morning.

12           **MR. CORCORAN:**  Good morning, Your Honor.

13   Evan Corcoran, David Schoen and Riane White on behalf of

14   defendant Stephen Bannon, who is present this morning.

15           **THE COURT:**  Good morning, everyone.

16           I understand there is an issue the government

17   would like to raise outside of the presence of the jury.

18           **MS. VAUGHN:**  Yes, Your Honor.

19           The government noted multiple news reports last

20   night that reported the defendant's opening as an argument

21   that this was a politically-motivated prosecution.  And if

22   lay people in the media understood it that way, then

23   certainly some of the lay people on the jury did.

24           So this effort to turn this case into a political

25   circus and a case about politics is why the government moved

1      in limine to exclude these arguments.  The Court granted it.

2      But it seems the defendant is trying to find ways around it.

3                And the reason we want to bring it up this morning

4      is because we think it's going to come up with both

5      witnesses today, and we're not sure there's going to be a

6      break before the defendant begins to question the first

7      witness.  So we want to make sure that there are protections

8      in place, because the first question shouldn't even be

9      allowed to be asked.

10               So there are two ways that we foresee the

11     defendant trying to claim that he can ask about political

12     motivations here.  One is bias.  A claim that an individual

13     member of Congress' motives to subpoena the defendant or

14     refer him for contempt is somehow relevant or somehow goes

15     to bias.  It does not.

16               As we have briefed extensively, as SCOTUS has made

17     clear, bias is only relevant as to the individual testifying

18     witness's motive or reason to testify inaccurately because

19     they favor one side or the other.

20               So when Ms. Amerling is testifying, there

21     shouldn't be one question about the personal motivations of

22     Representative Thompson in subpoenaing the defendant.  There

23     shouldn't be one question about why one person or another

24     voted for contempt.

25               I mean, the Supreme Court slammed the door on that

1    50 years ago in *Barenblatt* and *Watkins*, and it doesn't go to

2    Ms. Amerling's bias.  There shouldn't be one question about

3    whether the House of Representatives is a body concerned

4    with politics.

5           They need to articulate a good faith basis to ask

6    the specific witness about that specific witness's potential

7    for bias.

8         **THE COURT:**  So just let me understand this.  You

9    agree that Mr. Bannon can attempt to show that a particular

10   witness is biased.  And then the question is just, What is

11   fair game for the particular witness?

12          So as to Ms. Amerling, what, in your view, is or

13   is not fair game as to her bias?

14        **MS. VAUGHN:**  If she -- if they have a good-faith

15   basis to ask her about her favor about one side or the other

16   in this case, they can do that.  They cannot ask her --

17        **THE COURT:**  It seems to me that is consistent with

18   where I was on your Motion in Limine where I said -- or

19   something to the effect of -- Government asked me to

20   preclude Mr. Bannon from making improper arguments that

21   politicalize the case.  I agree that such arguments would be

22   inappropriate.  This is not a forum for partisan politics,

23   and I will not allow it to become one.  But I will not

24   prevent the defendant from attempting to show bias when

25   cross-examining witnesses.  There's a fine line to be drawn

1    here, and I expect the parties to respect it.

2              So there are some questions, in your view, that

3    would be appropriate as to Ms. Amerling but not others?

4              **MS. VAUGHN:**  Yes, Your Honor.

5              And given the opening yesterday and the clear

6    implications that it made, there are processes that this

7    Court can use to make sure that not even the first

8    inappropriate question gets out.

9              I think there is a clear record here now that the

10   defendant plans to try to skirt this Court's order.  And the

11   government thinks it would be appropriate and warranted

12   under the rules.

13             Rule 103 provides explicitly for this situation to

14   require the defendant to proffer the specific questions he

15   plans to ask on this, outside the presence of the jury, so

16   the jury doesn't hear one more word about this case being a

17   political prosecution.

18             **THE COURT:**  Okay.  That's bias.

19             **MS. VAUGHN:**  The second way the government thinks

20   that this is going to come up is this idea of testing the

21   thoroughness of the investigation.

22             Yesterday defense counsel claimed that asking an

23   FBI agent about the vote count of the referral and whether

24   they interviewed people who voted against it is somehow

25   about testing the thoroughness of investigation; that is a

1   half statement of the law.

2        Defendants are allowed to ask questions about

3   investigative steps that law enforcement took when they have

4   a good faith basis to believe there is an exculpatory piece

5   of evidence that the investigators either knew about or

6   should have known about and didn't follow up on.  This comes

7   up in murder cases where investigators have information that

8   someone else committed the offense and they didn't follow up

9   on it.

10        They are not allowed to just ask law enforcement

11   about what they did and did not do to suggest there is some

12   mystery piece of exculpatory information that no one knows

13   about.  So what piece of exculpatory information does some

14   random member of Congress that voted against referral have

15   about whether the defendant got a subpoena, whether he

16   defied the deadlines and whether his defiance was willful?

17        What they actually want to do here is to suggest

18   to the jury that it is somehow persuasive evidence that

19   members of Congress, which they have now characterized as a

20   solely-political body, did not vote to refer the defendant

21   for contempt.

22        The vote count of that referral is irrelevant.  It

23   goes just to the political biases and motives of potential

24   members, which is irrelevant to the facts and the elements

25   that the jury is being asked to decide.

1          In fact, I don't even think they have a good faith

2     basis to ask why or whether the law enforcement interviewed

3     Bennie Thompson.  They haven't identified a piece of

4     exculpatory information that he might have.  So they can't

5     use these principles of cross-examination to cover their

6     effort to inject politics and suggest that this is

7     politically motivated.

8          So we think, again, that before the defendant is

9     allowed to ask a single question on that issue, he should be

10    required to proffer the questions outside of the jury's

11    presence.

12         **THE COURT:**  Thank you, Ms. Vaughn.

13         Mr. Corcoran, let's start with bias.

14         I've already decided -- I mean, I issued my ruling

15    such that it was because it was fairly acontextual about

16    politicizing this case, but I did recognize that you asked

17    questions about bias.  But don't you agree that it has to be

18    limited to the bias of the particular witness?

19         **MR. CORCORAN:**  Well --

20         **THE COURT:**  I got a witness testifying.  Bias

21    cross-examination is about whether the witness is biased.

22         **MR. CORCORAN:**  I understand, Your Honor, yeah.

23         I mean, the answer is, the witness is on the

24    stand, and our cross-examination will depend on the

25    testimony of the witness.  I know government counsel would

1    love a script of our cross-examination, which can't be

2    produced until the witness testifies.

3         In terms of bias, we are certainly able to ask her

4    about anything that we find would bear on her credibility.

5    And the jury instruction sets out, in terms of adjudicating

6    the credibility of the witnesses, the bounds of that.  And

7    that's what we're going to stick within.  I know counsel

8    seems to be worried about us turning this into a political

9    circus.  That's not our intention and that was not done in

10   opening.

11        I stand by the opening.  And I think it was

12   clearly on the line, and there was nothing to say that

13   anything other than the evidence that they're going to hear

14   in this case, that they have to listen to it carefully to

15   determine whether there's bias.

16        **THE COURT:**  Okay.

17        So here, as to both witnesses, at least the two

18   the government has said it will call, you're limited to

19   asking questions about why that witness might be biased.

20   And to the extent that you start to ask questions that veer

21   into whether someone else, who is not the witness, might be

22   biased, either as a body or as an individual, will in my

23   view be inappropriate.

24        And to the extent that I think the questions are

25   getting into that, I will stop you and I will require you to

**-4002-**

1    proffer before completing the question, why you think that

2    the question, rather than going to the -- why it goes to the

3    specific witness's bias rather than something else.

4        **MR. CORCORAN:**  I don't -- I understand the Court's

5    ruling, and I don't envision this to be a stop-and-go

6    cross-examination based on what's been said this morning.

7        I do want to identify one other issue to keep in

8    mind -- so if there is some objection, and if there is some

9    follow-up -- and that is, part of our Sixth Amendment right

10   to confrontation involves questioning and eliciting

11   information about a witness against Mr. Bannon.

12       And in this case, the witness who is on the stand

13   is staff, but she is testifying about things that were done,

14   actions that were taken by members of Congress, including

15   Chairman Thompson.  And we're about to hear, I know, a

16   discussion about a series of letters that will represent

17   actions taken by Chairman Thompson.  I know, because of the

18   Court's ruling, that we're not talking about the content of

19   the letter, and they're not being introduced for that

20   purpose.

21       But he's taken actions.  And to the extent that

22   our cross-examination can get at the actions that are taken

23   by anyone involved with the Committee, that are being

24   presented through this witness, we need to have the ability

25   to do that.  And I think it can be done without crossing the

**-4003-**

1    line of fair examination.

2         **THE COURT:** So I just want to -- I understood the

3    point, but what I couldn't quite get at the end is, and

4    therefore what?

5         Are you saying that you believe that you are

6    allowed to ask the witness testifying about the bias or

7    potential bias of anyone on the Committee?

8         **MR. CORCORAN:** Yes.

9         Let's say she says, Chairman Thompson did X.  I'm

10   allowed to ask her if she knows, Did Chairman Thompson do X

11   because of this issue?  And she can answer yes or no.

12        But I certainly, through this witness, I can get

13   at whether she knows whether any action was taken by

14   Chairman Thompson.

15        **THE COURT:** What about members of the Committee

16   other than Chairman Thompson?

17        **MR. CORCORAN:** I don't plan to ask about any other

18   members at this stage.

19        **THE COURT:** So I'll hear from Ms. Vaughn on that

20   question.

21        So now let's turn to the -- no, no, no.  Hold on a

22   second.  I apologize.  What I meant was I want to hear from

23   her on that, the bias question.  But she also raised the

24   question whether and to what extent you can ask questions of

25   the agent witness about the thoroughness of the

1    investigation.

2         **MR. CORCORAN:**  Yeah, it's totally fair game.  I

3    know she mentioned something in the murder context where

4    there's some suggestion that we're -- that the defendant is

5    talking about a mystery culprit or something like that.

6    That's not it at all.

7         What we said yesterday when the husher was on and

8    what we stand by, which is, if there's an agent on the stand

9    who says, I took these steps in this investigation.  I'm

10   investigating whether a crime took place, and I interviewed

11   this person, A, B and C.  I'm allowed to ask them, Why

12   didn't you?  If you didn't, why didn't you interview person

13   D, who was present, who had knowledge and who, you know, for

14   instance, expressed on the House floor a view of what

15   happened?  Totally fair game.

16        And, you know, it's not telling the jury that --

17   it's telling the jury that, when they're evaluating an

18   investigator's decision-making about whether a crime was

19   committed, that they interviewed and considered all

20   available evidence that might be exculpatory.

21        **THE COURT:**  Thank you.

22        **MR. CORCORAN:**  Thank you, Your Honor.

23        **THE COURT:**  So, Ms. Vaughn, let's start with the

24   bias point.

25        **MS. VAUGHN:**  Your Honor, I think Mr. Corcoran just

1      admitted that they want to ask whether issuing the subpoena

2      or requiring him to comply was politically motivated.

3             I don't know how much more clearly the Supreme

4      Court could have said in *Watkins* and *Barenblatt* that that is

5      irrelevant.  They can ask questions about, is this category

6      of records that you're seeking pertinent to the

7      investigation?  They can do that all they want.

8             **THE COURT:**  They can ask -- it's clear that they

9      can ask questions that go to whether the particular witness

10     and her testimony is biased.

11            **MS. VAUGHN:**  Yes.

12            **THE COURT:**  Now, the question is -- because

13     Chairman Thompson is not here and is at least the signatory

14     of the letters and is  the Chairman of the Committee and is

15     the one who had the authority, as she testified yesterday,

16     to have signed the subpoenas -- they can ask about when he

17     did those things that he's not here himself to testify

18     about, whether he was biased in doing so.  And your view is

19     that is out of bounds because bias cross-examination goes to

20     testimony.

21            **MS. VAUGHN:**  Yes.

22            What they are trying to argue about instead is

23     that somehow the subpoena itself was illegitimate and

24     politically motivated or that --

25            **THE COURT:**  Okay.  I have that.

1          So here's my ruling on this question:  The

2    defendant may ask questions that go to whether the witness

3    we have here is biased in her testimony but may not ask

4    questions whether someone else was biased in an action that

5    they took outside of this courtroom.

6          Even as to her bias, I get that there are some --

7    that there may be some questions that cross the line, and I

8    will police that line the best that I can.  Okay?

9          So now let's talk about the investigation, the

10   completeness of the investigation.

11         **MS. VAUGHN:**  Yes.

12         So I heard Mr. Corcoran say --

13         **THE COURT:**  Why wouldn't that go to, for example,

14   pertinency?

15         You know, one of the elements here is that the

16   subpoena has to be pertinent to the investigation, the

17   information sought has to be pertinent.  Did you, Agent, in

18   deciding and investigating whether it was, in fact,

19   pertinent, who did you talk to?  Did you talk to these

20   people who might have had a different view?

21         **MS. VAUGHN:**  So that line of questioning, and what

22   I heard Mr. Corcoran say is that somehow it is relevant.  He

23   said, The jury is going to be asked to evaluate

24   investigators' decisions about whether a crime had been

25   committed.  That's inappropriate.

1          We would never suggest to the jury that they

2     should find a crime has been committed because a police

3     officer thinks one has been.  And this is exactly, sort of,

4     the cover that the government thinks the defendant is trying

5     to use to say, Well, you didn't interview Representative

6     McCarthy, who didn't think that these facts met the elements

7     of the crime.

8          Whether Representative McCarthy thought the facts

9     met the elements of the crime is irrelevant.  The question

10    is, Did the investigators ignore some exculpatory evidence?

11         And with respect to attorneys' questions across

12    the board, we always have to have a good faith basis to ask

13    about a fact.  We have to have a good faith basis to believe

14    that there is a fact there and just to ask --

15         **THE COURT:**  Okay.

16         Here's where I am on this one.  I'm going to take

17    it under advisement.  It seems to me that we are not at the

18    cross-examination of the agent stage yet.  I want to reflect

19    on this.  I understand the government's position.  I

20    understand your position, Mr. Corcoran, Mr. Bannon.

21         I, at a minimum, will reserve until we finish with

22    Ms. Amerling and perhaps until we finish with the direct of

23    the agent witness.  Okay?  But I understand the positions.

24         **MS. VAUGHN:**  And one other thing I wanted to note

25    is also the questions about the vote count of the referral.

1    We think should that be precluded entirely because the

2    body -- the House is a body.  It acts as a body.

3            The specific vote count is irrelevant.  And it

4    suggests -- it improperly suggests to the jury that because

5    certain members of Congress didn't want this to be

6    investigated, it's somehow persuasive evidence that a crime

7    didn't occur.

8            **THE COURT:**  Right.  I understand.

9            I think to think through that, I need to see the

10   rest of Ms. Amerling's testimony and, to the extent that

11   it's not relevant in her cross, the agent's testimony.  So

12   I'll treat that as -- I understand the point.

13           I, again, do not intend for this to become a

14   political case, a political circus, forum for partisan

15   politics.  You have acknowledged, and I have as well, that

16   bias of a witness is relevant, but it has to be about the

17   witness testifying.

18           This question, it's not even clear to me that it's

19   going to be within the scope of the direct of either

20   witness, so I understand the point.  I'm going to take that

21   under advisement as well and police as I feel appropriate.

22   Okay?

23           Thank you.

24           **MS. VAUGHN:**  Thank you.

25           **THE COURT:**  Mr. Schoen, good morning.

1          **MR. SCHOEN:**  I'm sorry.  I just think there's one

2     other issue that ought to be raised so we don't run into

3     problems on cross and so that I can preserve the record.

4          The government yesterday -- we've been told since

5     the start of this case, of course, that the reason

6     Mr. Bannon didn't comply with the subpoena is irrelevant.

7     He got a valid subpoena.  Didn't show up.  Unless it was an

8     accident, it's not irrelevant.

9          Yesterday the government opened and told the jury

10    that Mr. Bannon got the subpoena, and he decided he's above

11    the law.  That's a reason.  He decided he's above the law.

12    And it's not a reason that comports with the facts as we

13    know them to be.  That is, Mr. Bannon, according to the

14    Costello affidavit and so on -- declaration and so on,

15    believed he was fully complying with the law; that he wasn't

16    permitted to comply with the subpoena; that his lawyer told

17    him, You can't comply with the subpoena.  He thought he was

18    complying with the law, not above the law.

19          As I understand it, at least, we will not be able

20    to go into, on cross-examination, the reasons that

21    Mr. Bannon gave to the Committee as to why he didn't comply;

22    that is, he relied on his advice of counsel --

23          **THE COURT:**  I understand the reasons.

24          **MR. SCHOEN:**  Yes, Your Honor.

25          And, therefore, I think that raises now a right of

1    confrontation violation because the jury has been told his

2    reason was he decided he was above the law.  I don't think

3    you can have it both ways, say reason is irrelevant and the

4    defense is barred from showing what their reason was.

5         So questions to Ms. Amerling would be along these

6    lines that, you know, Mr. Bannon clearly told you through

7    Costello that he relied on the advice of counsel that he

8    wasn't complying because executive privilege barred him from

9    complying.

10        All of those kinds of things we talked about,

11   those are all barred as defenses.

12        **THE COURT:**  I understand the point.

13        **MR. SCHOEN:**  Thank you, Your Honor.

14        **THE COURT:**  Ms. Vaughn, what is your response to

15   this?

16        **MS. VAUGHN:**  Your Honor, again, as we've said many

17   times, we have to show that there was not some lingering

18   objection that hadn't been resolved.  That's the point.

19        The argument about the defendant being -- deciding

20   he's above the law, we have to prove that his violation of

21   the subpoena was deliberate.  A choice not to comply, in our

22   view, is a decision that you are above the authority of

23   Congress.

24        **THE COURT:**  Yeah, it may have not been, in light

25   of all of the rulings I've made, the most artful choice.

1  But it seemed to me that you were very likely making the

2  point that the defendant did not comply with the subpoena in

3  the way that the government alleges he was required to do,

4  and in that sense was acting as if he was above the law.

5  And for that reason, I do not believe, as I said yesterday,

6  that we opened the door to all issues that heretofore have

7  been excluded.

8        So I am not -- so the point is preserved for the

9  record, Mr. Schoen.  To the extent this is a motion to

10  reconsider those prior rulings or to permit evidence that

11  was previously excluded because of the opening, it's denied.

12  Okay?

13       **MS. VAUGHN:**  And I'll note too if the defense

14  would like to go back to us redacting the letters, we can do

15  that.  We're just trying to establish that there wasn't an

16  outstanding objection that has to be resolved.

17       **MR. SCHOEN:**  Your Honor, let me make clear then

18  for the record, this has nothing to do with redacting the

19  letters.  The defense in this case --

20       **THE COURT:**  I'm on it.  I got it.

21       **MR. SCHOEN:**  I have to say this, Judge, if I may.

22  The defense was:  I complied with the law.  I followed the

23  law.  I did what the law required me to do.

24       **THE COURT:**  Mr. Schoen, your point is very well

25  articulated already.  It's on the record.  Just because the

1   government has a view of it doesn't mean you haven't made

2   the point.  I understand the point.

3           **MR. SCHOEN:**  Thank you, Your Honor.

4           **THE COURT:**  Ms. Lesley, could you please bring the

5   jury in?

6           **DEPUTY CLERK:**  Should we bring the witness in,

7   Your Honor, or do you want us to wait?

8           **THE COURT:**  Bring the witness in.  Thank you for

9   asking.

10          Good morning, ma'am.

11          **THE WITNESS:**  Good morning, Your Honor.

12          **THE COURT:**  We are just going to bring the jury

13  in.

14      (Jury entered the courtroom at 9:26 a.m.)

15          **DEPUTY CLERK:**  Your Honor, we are now back on the

16  record.

17          **THE COURT:**  Good morning, everyone.  Thanks for

18  being here again this morning.

19          I wanted to make just one housekeeping notice,

20  which relates to the wearing of masks in this courtroom and

21  as you retire to the break room and then deliberate.

22          My view is that in the break room, essentially in

23  the courtroom that you are in, you are free to wear masks or

24  not as you would choose.  If you want to have a conversation

25  about it, that's fine too.  But in my view, people should

1    feel free -- you 14 should feel free to essentially decide

2    as a group however you would like to behave there.

3              As for the courtroom, now that we have a jury, now

4    that we are up and running, my view is that no one inside

5    the well, so basically the front row, which includes members

6    of my staff, counsel table, the jury in the courtroom here,

7    is required to wear a mask.

8              So people inside the well, anyone inside the well

9    may, if he or she likes, take off your mask, but you are not

10   required to.

11             I would ask that everyone else -- I will not even

12   ask -- I would require everyone else who's not inside the

13   well, partly because those people are coming in and out and

14   the like, to keep your masks on.

15             So with that, Ms. Vaughn.

16        **MS. VAUGHN:**  Thank you, Your Honor.

17        **DIRECT EXAMINATION OF KRISTIN AMERLING (CONTINUED)**

18   **BY MS. VAUGHN:**

19        **Q.**   Good morning, Ms. Amerling.

20        **A.**   Good morning.

21        **Q.**   Yesterday when you were testifying, we left off --

22   we were talking about the subpoena that the Select Committee

23   had issued to the defendant.  So I would like to pick up

24   there.

25        **MS. VAUGHN:**  Ms. Dunn-Gordon, if we could bring up

1    Government's Exhibit 2, which is already in evidence.

2    **BY MS. VAUGHN:**

3        **Q.**    And, Ms. Amerling, just to remind us all where we

4    are, we had talked about this page yesterday, the actual

5    subpoena.  And can you just remind us when and at what --

6    what day and what time the subpoena required the defendant

7    to provide documents relating to his involvement in

8    January 6th?

9        **A.**    Yes.  The document production deadline was

10   October 7th, 2021, at 10:00 a.m.

11       **Q.**    And can you remind us when the defendant was

12   supposed to appear for his deposition to answer questions

13   about his involvement in January 6th?

14       **A.**    The time for his deposition was October 14th,

15   2021, at 10:00 a.m.

16       **MS. VAUGHN:**  I'd like to go to Page 3 of

17   Government's Exhibit 2.

18   **BY MS. VAUGHN:**

19       **Q.**    Ms. Amerling, is this another document or page

20   that was included with the subpoena that went to the

21   defendant?

22       **A.**    Yes, it was.

23       **Q.**    And can you just explain for the jury what purpose

24   this page serves within the subpoena document that's sent to

25   the defendant?

1      **A.**   This is a letter that informs the recipient of the

2   subpoena about the purpose and authority for the

3   investigation that the Select Committee is conducting and

4   gives the recipient a sense of the kinds of information that

5   the Select Committee is seeking.

6      **Q.**   And is this letter sent on behalf of the

7   Committee?

8      **A.**   Yes, it is.

9      **Q.**   And in your role as the Deputy Staff Director and

10   Chief Counsel, did you participate in putting this entire

11   10-page document together for the defendant?

12      **A.**   I did.

13      **Q.**   So who is this letter from or who signs on behalf

14   of the Committee?

15      **A.**   The Chairman signs the letter, Chairman Bennie

16   Thompson.

17      **Q.**   We see at the top that the letter is to

18   Mr. Bannon, care of his counsel, which you discussed

19   yesterday.  So let's look at some of what the Committee told

20   the defendant about the subpoena?

21      **MS. VAUGHN:**  Ms. Dunn-Gordon, could we zoom in on

22   the first two paragraphs, please?

23   **BY MS. VAUGHN:**

24      **Q.**   All right.  So after the greeting it says,

25   "Pursuant to the authorities set forth in House Resolution

**-4016-**

1    503 and the rules of the House of Representatives."  House

2    Resolution 503, is that what we were looking at earlier

3    yesterday, the resolution that authorized the Committee?

4        **A.**    That's correct.

5        **Q.**    And then it says that "The Select Committee hereby

6    transmits a subpoena compelling you to produce the documents

7    set forth in the accompanying schedule by October 7th and to

8    appear for a deposition on October 14th."

9            Can you just explain briefly what is meant by

10   "compelling"?

11       **A.**    That's a reference to the fact that the letter

12   accompanies a subpoena that requires the recipient to

13   produce the documents by that deadline and appear for a

14   deposition by the deadline stated under the potential threat

15   of criminal liability for refusing to comply.

16       **Q.**    And the second paragraph there, can you please

17   read that paragraph?

18       **A.**    It says, "The Select Committee is investigating

19   the facts, circumstances, and causes of the January 6th

20   attack and issues relating to the peaceful transfer of

21   power, in order to identify and evaluate lessons learned and

22   to recommend to the House and its relevant committees,

23   corrective laws, policies, procedures, rules or regulations.

24   This inquiry includes examination of how various individuals

25   and entities coordinated their activities leading up to the

1    events of January 6, 2021."

2        **Q.**   Ms. Amerling, there's a reference there -- we

3    talked yesterday about the January 6th attack.  But there's

4    a reference there to the investigation into the "peaceful

5    transfer of power".  What is that referring to?

6        **A.**   That is the part of our democratic process that

7    involves the transfer of power when an incumbent President

8    loses an election and transfers power to the incoming

9    President who is elected.

10       **Q.**   And so was the transfer of power between the

11   former President and the new President an issue that the

12   Committee was focused on?

13       **A.**   That's correct.  One of the events of January 6

14   was the joint session of Congress where the House and Senate

15   certify the vote that the American public has cast in the

16   presidential election.

17           **MS. VAUGHN:**  Ms. Dunn-Gordon, can we zoom in on

18   the bottom part of this letter?

19   **BY MS. VAUGHN:**

20       **Q.**   So the next paragraph starts with "The Select

21   Committee has reason to believe that you have information

22   relevant to understanding important activities that led to

23   and informed the events of the Capitol on January 6th,

24   2021."

25           Does the paragraph then go on to list some of the

**-4018-**

1  reasons the Committee had a reason to believe the defendant

2  might have information relevant to its investigation?

3      **A.**   That's correct.

4      **Q.**   And what is the purpose of informing the defendant

5  the reasons that the Committee thinks he might have relevant

6  information?

7      **A.**   So the individual can have a sense of the type of

8  the information that the Committee was seeking from him or

9  her.

10     **Q.**   What is the first reason that the letter told the

11 defendant the Committee had --

12     **MR. CORCORAN:**   Your Honor, we ask for a limiting

13 instruction again.

14     **THE COURT:**   Yes.

15         So, as I said yesterday, this page, as you may

16 recall, ladies and gentlemen of the jury, is admitted for

17 the purpose of demonstrating that it was provided -- it was

18 the Committee's position and was provided to Mr. Bannon.

19 But it is not -- I am not admitting it for the proof -- to

20 prove, for example in this paragraph, whether it is in fact

21 true, the assertions that are in here.

22         This is being admitted to show that this was the

23 Committee's position, not what the Committee was saying

24 about these subjects in this paragraph are, in fact, true.

25     **MS. VAUGHN:**   Thank you, Your Honor.

**-4019-**

1   **BY MS. VAUGHN:**

2      **Q.**   Ms. Amerling, what is the first reason that the

3   letter told the defendant the Committee believed he had

4   relevant information?

5      **A.**   The letter says, "You have been identified as

6   being present at the Willard Hotel on January 5th during an

7   effort to persuade members of Congress to block the

8   certification of the election the next day and in relation

9   to other activities on January 6th."

10     **Q.**   All right.  And January 5th, the day before the

11  attack -- what is the Willard hotel?

12     **A.**   The Willard Hotel is a hotel in Washington, D.C.,

13  where it had been reported at that time that numerous

14  individuals who were involved in discussing potential plans

15  and strategies relating to the events of January 6th were

16  staying or were meeting.

17     **Q.**   And the reference to block the certification of

18  the election, is that the same thing that you were talking

19  about earlier about the joint meeting of Congress to

20  finalize the transfer of power?

21     **A.**   That's correct.

22     **Q.**   What is the next thing that the letter explains to

23  the defendant about why the Committee believed he had

24  relevant information?

25     **A.**   The next sentence says, "You are also described as

1    communicating with then-President Trump on December 30,

2    2020, and potentially other occasions, urging him to plan

3    for and focus his efforts on January 6th."

4        **Q.**   Then, finally, it says, "Moreover, you are quoted

5    as stating on January 5th that all hell is going to break

6    loose tomorrow."

7            Now, the paragraph ends with "Accordingly, the

8    Select Committee seeks both documents and/or deposition

9    testimony regarding these and multiple other matters that

10   are within the scope of the Select Committee's inquiry."

11           So the three things that are listed here, were

12   those the only things that gave the Committee a reason to

13   believe the defendant might have information relevant to

14   this investigation?

15       **A.**   No, they were intended to be a representative

16   sample.

17       **Q.**   All right.

18           Yesterday when we were looking at the subpoena

19   itself, we saw a reference to a schedule of things that the

20   subpoena required the defendant to provide by October 7th.

21   So I want to take a look at that now.

22           **MS. VAUGHN:**   Ms. Dunn-Gordon, if we could go to

23   Page 4 of Government's Exhibit 2.

24   **BY MS. VAUGHN:**

25       **Q.**   Ms. Amerling, this document is titled "Schedule"

**-4021-**

1  and is this the list of items that the subpoena required the

2  defendant to provide?

3      **A.**   That's correct.

4      **Q.**   All right.  And does it actually continue on to

5  the next page as well?

6      **A.**   It does.

7      **Q.**   All right.  There is an introductory paragraph

8  there.  I want to start by looking at that.

9      **MS. VAUGHN:**  Ms. Dunn-Gordon, if we could zoom in

10  to that.

11  **BY MS. VAUGHN:**

12      **Q.**   And, Ms. Amerling, could you please read this

13  paragraph for us?

14      **A.**   It says, "In accordance with the attached

15  Definitions and Instructions, you, Stephen K. Bannon, are

16  hereby required to produce all documents and communications

17  in your possession, custody, and control, including any such

18  documents or communications stored or located on personal

19  devices (e.g., personal computers, cellular phones, tablets,

20  etc.), in personal or campaign accounts and/or on personal

21  or campaign applications (e.g. email accounts, contact

22  lists, calendar entries, etc.) referring or relating to the

23  following items.  If no date range is specified below, the

24  applicable dates are for the time period April 1, 2020

25  through the present."

1      **Q.**   It says, "documents or communications stored in

2    personal or campaign accounts or on personal or campaign

3    applications."  Can you explain what is meant there by a

4    reference to a personal or a campaign account?

5      **A.**   Yes.  Mr. Bannon and others who we have subpoenaed

6    as part of this investigation, some of them have played

7    roles in campaigns.  So to the extent that there is

8    information relevant to the subpoena that's in a

9    campaign-related account, that's what that's referring to.

10   Personal accounts are personal emails and other documents

11   that might be in an individual's personal possession.

12     **Q.**   Then let's look at the rest of this schedule.  So

13   how many categories of documents did the subpoena require

14   the defendant to provide to the Committee?

15     **A.**   Seventeen categories.

16     **Q.**   And, generally, how did the Committee identify

17   each of these categories of documents as items that the

18   defendant might have information about?

19     **A.**   These categories cover activities that the Select

20   Committee had reviewed and researched that related to the

21   events that took place on January 6th.

22     **Q.**   And in your role, did you participate in putting

23   this list together?

24     **A.**   I did, yes.

25     **Q.**   And did each of the categories of records listed

1    here relate to the investigation in some way?

2        **A.**   They did.

3        **Q.**   All right.  Let's look at a few examples.

4        **MS. VAUGHN:**  So, Ms. Dunn-Gordon, could we just

5    zoom in on the first two, please?

6    **BY MS. VAUGHN:**

7        **Q.**   Ms. Amerling, what is the first category that the

8    defendant was required to produce documents relating to?

9        **A.**   It reads:  "The January 6th, 2021, rally on the

10   mall and Capitol grounds in Washington, D.C. in support of

11   President Donald J. Trump and opposition to certification of

12   the results of the 2020 presidential election, including any

13   permitting, planning, objectives, financing and conduct, as

14   well as any communications to or from any person or group

15   involved in organizing or planning for the January 6th,

16   2021, rally."

17       **Q.**   Ms. Amerling, you mentioned yesterday the actual

18   breach of the Capitol, but what is the reference there to a

19   rally on the mall?

20       **A.**   There was a rally in the area of the White House

21   that took place immediately preceding the attack on the

22   United States Capitol.

23       **Q.**   And so how did the permitting or the planning or

24   things like that related to that rally relate to the

25   Committee's investigation into January 6th?

1     **A.**   Many of the individuals who participated in the

2    attack on the Capitol said that they were motivated by a

3    belief that the election had been stolen.  Many of those

4    individuals also had attended the rally that immediately

5    preceded the attack on the Capitol where numerous speakers

6    at the rally had reiterated the claim that the election had

7    been stolen and directed participants to march on the

8    Capitol.  The Select Committee is reviewing the extent to

9    which there is a connection between these events.

10    **Q.**   Let's turn to item 2.  Can you please read that

11    item?

12    **A.**   It says, "Then-President Trump's participation in

13    the January 6, 2021 rally, including any communications with

14    President Trump or any paid or unpaid attorney, advisor, aid

15    or assistant to President Trump, relating to the nature,

16    context or content of President Trump's intended or actual

17    remarks to those attending the January 6, 2021, rally."

18    **Q.**   Can you explain how the defendant's potential

19    communications relating to the former President's remarks at

20    the rally were relevant to the Committee's investigation?

21    **A.**   Yes.  The former President was among those at the

22    rally who reiterated the claims that the election had been

23    stolen and directed participants to march the Capitol.

24    We understood that Mr. Bannon had been in

25    communication with the President in the weeks leading up to

1    the January 6th events, and we wanted to understand what he

2    could tell us about the connection between any of these

3    events.

4        **Q.**   And was it the Committee's understanding that the

5    defendant had a formal role in the former President's White

6    House or with respect to his campaign?

7        **A.**   The Committee's understanding was that Mr. Bannon

8    was a private citizen.

9        **Q.**   So what information did the Committee have that

10   led it to believe that he might have records relating to

11   ongoing communications with the former President?

12       **A.**   There had been a number of public reports stating

13   that Mr. Bannon had been in communication with White House

14   officials, including former President Trump, in the weeks

15   leading up to the January 6th events.

16       **Q.**   Let's look at a couple of other examples from this

17   list.

18       **MS. VAUGHN:**   Ms. Dunn-Gordon, if we could zoom in

19   on 5 and 6, please.

20   **BY MS. VAUGHN:**

21       **Q.**   Ms. Amerling, Number 5 relates to records relating

22   to the "The War Room podcast."  Can you explain what "The

23   War Room podcast" is a reference to?

24       **A.**   That is a reference to the podcast run by

25   Mr. Bannon.

1    **Q.**    And how did records relating to the War Room

2    podcast relate to the Committee's investigation?

3    **A.**    On the War Room podcast, Mr. Bannon had, in the

4    weeks leading up to the January 6th attack, made repeated

5    claims that the election had been stolen.  And the day

6    before the attack had made statements including, "All hell

7    is going to break loose tomorrow," and other statements that

8    suggested that he might have had advanced knowledge of the

9    events that were going to take place on January 6th.

10    **Q.**    And Item 6 there asks for records relating to

11    "March for Trump".  What is that referring to, "March for

12    Trump"?

13    **A.**    That is one of the organizations that we

14    understood was involved with publicizing the rally and

15    helping encourage people to come to D.C. for the events of

16    January 6th.

17    **Q.**    Let's look at a few more examples on the next

18    page.

19        **MS. VAUGHN:**  Ms. Dunn-Gordon, if we could go to

20    the next page and zoom in on Items 11 and 12, please.

21    **BY MS. VAUGHN:**

22    **Q.**    All right.  Ms. Amerling, Number 11 asks for

23    "Records relating to anyone with whom you communicated by

24    any means with respect to efforts, plans or proposals to

25    contest the 2020 presidential election results or delay,

1    influence or impede the electoral count, including but not

2    limited to communications with Boris Epshteyn, Kashyap

3    Patel, and Ezra Cohen-Watnick."

4            First, this reference to the electoral count, what

5    is that a reference to?

6        A.    That's what -- the count of the electors that took

7    place in a Joint Session on January 6th.

8        Q.    And the names that are listed here, who are they?

9        A.    Based on public accounts, we had understood that

10    Boris Epshteyn was an outside advisor to the President and

11    his associates, and he had been engaged in helping promote

12    claims that the election had been stolen.

13            Kashyap Patel and Ezra Cohen-Watnick were both

14    high-ranking officials in the Defense Department, and one of

15    the responsibilities of the Select Committee was to

16    investigate the role of federal agencies, including the

17    Defense Department, in preparing for and defending against

18    the attack on the Capitol.

19        Q.    So with that, how -- if the defendant had had any

20    communications with these individuals, how would that have

21    related to the Committee's investigation?

22        A.    The Committee was charged and is charged with

23    investigating the facts, circumstances and causes of the

24    January 6th attack on the Capitol and interference with the

25    peaceful transfer of power.

**-4028-**

1          Information we were seeking from this subpoena and

2     from other efforts to obtain information informs the

3     Committee's understanding of the attack.

4         **Q.**   Item 12 says -- or requires "Records relating to

5     all public relations, advertising or other communications

6     efforts to persuade Americans that the election was stolen

7     or to attend the rally on January 6th."

8          How were records relating to that relevant to the

9     Committee's investigation?

10        **A.**   Committee's investigation was looking at the facts

11    and circumstances leading to the attack, including

12    statements and activities that might have motivated or

13    influenced the attack.

14         As I described earlier, many of the individuals

15    who participated in the attack said they were motivated by a

16    belief that the election had been stolen.

17        **Q.**   And what was it the Committee thought the

18    defendant might have related to this item?

19        **A.**   We were looking for information that may have been

20    able to shine a light on why he was making statements that

21    the election was stolen.

22        **Q.**   All right.  I want to look at just a couple more.

23        **MS. VAUGHN:**  Ms. Dunn-Gordon, if we could zoom in

24    on items 15 through 17.

25

1    **BY MS. VAUGHN:**

2         **Q.**    Ms. Amerling, what is item 15?

3         **A.**    It demands information on "Any communication

4    regarding any of the foregoing topics with Proud Boys, Oath

5    Keepers, Three Percenters and Alex Jones.

6         **Q.**    And what is that a reference to?

7         **A.**    This is an effort to ask Mr. Bannon whether he has

8    information relating to several groups who had members who

9    were among those who participated in the attack on the

10   Capitol, Proud Boys, Oath Keepers and Three Percenters.

11        Mr. Alex Jones was a media figure who had been

12   making repeated claims publicly on his platforms in the

13   weeks leading up to the attack that the election had been

14   stolen.

15        And, again, the Committee was seeking information

16   relevant to understanding the relationship or potential

17   relationship between the different individuals and

18   organizations that played a role in the events of

19   January 6th.

20        **Q.**    And when you say "the relationship or potential

21   relationship," are you referring to any relationship that

22   the defendant may have had with these individuals?

23        **A.**    We wanted to ask him what he knew.

24        **Q.**    And with respect to this item, what does that --

25   what do you mean by that, "what he knew"?

1      **A.**   What did he know, if he did know anything, about

2   the relationship that the Proud Boys, Oath Keepers,

3   Three Percenters and Alex Jones may have had to the events

4   of January 6th.

5      **Q.**   Ms. Amerling, what is item 16?

6      **A.**   Item 16 asks for "Any communications with

7   Representative Scott Perry and/or other members of Congress

8   about any of the foregoing topics."

9      **Q.**   Who is Representative Scott Perry, and how would

10  communications with him be relevant?

11     **A.**   Representative Scott Perry is a member of the

12  House of Representatives from Pennsylvania.  And he

13  reportedly had been involved with efforts to try to persuade

14  the administration to change the leadership of the

15  Department of Justice in the weeks leading up to the

16  January 6th attack.

17     **Q.**   Can you explain for us why a change in leadership

18  at the Department of Justice was relevant to the Committee's

19  investigation?

20     **A.**   Yes.  According to public accounts, the Department

21  of Justice had been under pressure to make claims that there

22  was election fraud.  And the Attorney General, Attorney

23  General Barr, had stated in the beginning of December, that

24  there was not widespread fraud sufficient to have changed

25  the results of the election.  And his successors were taking

638

1    the same position.

2         Reportedly there was an effort to change the

3    leadership at the Department of Justice in order to put

4    individuals in charge who would make claims that there was

5    election fraud.

6    **Q.**   And finally, item 17, Ms. Amerling, "Any

7    communications with Rudolph Giuliani, John Eastman, Michael

8    Flynn, Jenna Ellis or Sydney Powell about any of the

9    foregoing topics."  Can you explain who those individuals

10   were in relation to the events of January 6th?

11   **A.**   These were all individuals, private citizens, who

12   had been involved, to different degrees, with efforts to

13   persuade people that the election had been stolen.

14   **Q.**   And how would the defendant's communications with

15   these individuals be relevant -- if he had any, be relevant

16   to the Committee's investigation?

17   **A.**   The Committee is focused on determining what

18   happened on January 6 and why, and putting together as

19   complete and thorough account of the facts, circumstances

20   and causes of those events.

21        So it's important to understand what the

22   relationships are between the different individuals and

23   entities were who were involved with the events of that day.

24   **Q.**   And the subpoena requests documents relating to

25   all of these topics.  Can you just describe for the jury

```
1    what -- specifically what kind of documents the Committee
2    expected or had in mind?
3        A.   The subpoena called for documents that included
4    paper records, electronic records such as emails, text
5    messages.  Those are some of the main examples.
6        Q.   And you testified earlier that committees and this
7    Committee conducts investigations in order to figure out
8    what kind of legislation or rule changes or regulations need
9    to be amended or added.
10           Can you explain to the jury some of the kinds of
11   measures Congress is authorized to consider that the
12   information the defendant was required to provide related
13   to?
14       A.   Yes.  As I described yesterday, there's a whole
15   range --
16           MR. CORCORAN:  Objection to stipulation.
17           THE COURT:  Overruled.
18           You may answer the question.
19           THE WITNESS:  Yes, sir.
20           Select Committee is investigating facts and
21   circumstances of the attack on the Capitol on January 6th,
22   the interference of a peaceful transfer of power.  It's
23   compiling a thorough record of the facts that relate to
24   those events in order to evaluate a whole range of
25   corrective measures that could be put in place to prevent
```

1     something like that from happening in the future.

2             There are a number of different areas on which

3     Congress could legislate.  The Select Committee is not yet

4     at the phase of its investigation where it has specified

5     specific measures.  But there are a number of types of

6     examples that individuals who have testified about the

7     events of January 6th have cited.  Some of the members of

8     the Committee have given representative examples.

9             Some of those examples include measures to boost

10    funding for agencies that support the defense of the

11    Capitol.  Measures that improve communication, intelligence

12    among agencies that help protect against attacks like the

13    one that we saw.  Other measures could include modifications

14    to laws and regulations that govern the finalization of

15    presidential votes such as the Electoral Count Act.

16            Other measures that members have cited include

17    potentially providing for increases in criminal penalties

18    for crimes that relate to conduct that occurred on that day.

19    **BY MS. VAUGHN:**

20        **Q.**   And all of these categories of documents that

21    we've been talking about, were the topics that we've been

22    talking about also topics that the Committee intended to

23    cover in the deposition that was required by the subpoena?

24        **A.**   That's correct.

25        **Q.**   You testified that you provided the subpoena to

**-4034-**

1    the defendant through his attorney, Robert Costello.  Did

2    you personally provide the subpoena that way, or was it

3    someone else on the Committee?

4        **A.**   I emailed the subpoena to Mr. Bannon's attorney,

5    Mr. Costello.

6        **Q.**   Does the subpoena include a page where you

7    documented providing the subpoena to Mr. Costello?

8        **A.**   Yes, it does.

9            **MS. VAUGHN:**   Ms. Dunn-Gordon, can we go to Page 2

10   of Government's Exhibit 2, please.

11   **BY MS. VAUGHN:**

12       **Q.**   All right.  Ms. Amerling, this page is titled

13   "Proof of Service."  Is this the page you were just

14   referring to?

15       **A.**   Yes.

16       **Q.**   And at the top we see a similar, sort of two-line

17   subpoena for Stephen Bannon, but I want to talk about the

18   box at the bottom with the handwritten information there.

19   Did you write this information?

20       **A.**   I did.

21       **Q.**   And it says "Served by Kristin Amerling."  That's

22   you?

23       **A.**   That's correct.

24       **Q.**   And you also signed this; is that right?

25       **A.**   I did.

**-4035-**

1    **Q.**    And is that what we see next to "Signature of

2    Server?"

3    **A.**    That's correct.

4    **Q.**    And next to "Manner of Service," did you write

5    that in?

6    **A.**    I did.

7    **Q.**    What did you write there?

8    **A.**    I wrote "email to attorney for Mr. Bannon, Robert

9    Costello" and his email address.

10    **Q.**    And the date that's listed, that's September 23rd,

11    the date you provided it?

12    **A.**    That's the date I emailed it to him, yes.

13    **Q.**    Let's look at your emails with Mr. Costello, the

14    defendant's attorney.

15    **MS. VAUGHN:**    Ms. Dunn-Gordon, could we bring up,

16    just for the witness and the Court, Government's Exhibit 3,

17    please?

18    **BY MS.VAUGHN:**

19    **Q.**    All right.  Ms. Amerling, this is a three-page

20    document.  What's contained in this document?

21    **A.**    This looks like an email chain between myself and

22    Mr. Costello, Mr. Bannon's attorney.

23    **Q.**    What are the dates of these emails?

24    **A.**    It starts on September 23rd and it ends on

25    September 24th, 2021.

**-4036-**

643

1        **MS. VAUGHN:**  Your Honor, the government moves to

2    admit and publish Government's Exhibit 3.

3        **MR. CORCORAN:**  No objection, Your Honor.

4        **THE COURT:**  Government's Exhibit 3 is admitted and

5    may be published to the jury.

6        (Government's Exhibit 3 was admitted.)

7        **MS. VAUGHN:**  All right.  I want to zoom in on the

8    email at the bottom of Page 1 starting with "On September

9    23rd," please, Ms. Dunn-Gordon.

10   **BY MS. VAUGHN:**

11       **Q.**   This is the first email in the chain in this

12   document.  Who is this email from, Ms. Amerling?

13       **A.**   It is from me.

14       **Q.**   To who?

15       **A.**   To Mr. Costello.

16       **Q.**   Do you see the date there, September 23rd, at

17   6:38 p.m.?

18       **A.**   Yes, I do.

19       **Q.**   In the email you first say, "I am following up on

20   our conversation today in which you confirmed that you

21   represent Stephen Bannon."  What is the conversation that

22   you're referring to there?

23       **A.**   I had reached out to Mr. Costello because we

24   understood that he was representing Mr. Bannon, and I wanted

25   to confirm that.

1      **Q.**   And can you describe what Mr. Costello told you in

2   that call?

3      **A.**   He confirmed that he was, in fact, representing

4   Mr. Bannon.

5      **Q.**   Did you inform him in that call that the Committee

6   had a subpoena for Mr. Bannon?

7      **A.**   Yes, we discussed the subpoena, and we discussed

8   the fact that I would be sending him a subpoena.  I asked if

9   he would accept service of the subpoena on his client's

10   behalf.  He said he would check with his client and confirm.

11      **Q.**   And is that what you're referring to in the next

12   line of the email where you say, "I understand that you are

13   checking with Mr. Bannon regarding whether he will authorize

14   you to accept service of the subpoena on his behalf"?

15      **A.**   That's right.

16      **Q.**   And can you please read the rest of your email

17   there?

18      **A.**   It says, "The Select Committee to investigate the

19   January 6th attack on the United States Capitol is today

20   issuing the attached subpoena to Mr. Bannon for his

21   testimony and the production of documents to the Committee.

22   In the event that you will accept service, I am attaching to

23   this email the subpoena, along with a letter from Chairman

24   Bennie Thompson, a document schedule with accompanying

25   production instructions, and a copy of the deposition

**-4038-**

1   rules."

2       **Q.**   And is what you attached what we were just looking

3   at in Exhibit 2?

4       **A.**   We were looking at a part of what I attached, yes.

5       **Q.**   Is what you attached all of Exhibit 2?  I know we

6   hadn't talked about the other pages yet.

7       **A.**   That's correct.

8       **Q.**   All right.  Let's look at the next email in the

9   chain.

10      **MS. VAUGHN:**  Ms. Dunn-Gordon, if you could zoom in

11  on the middle email there.

12  **BY MS. VAUGHN:**

13      **Q.**   This is an email that was sent the next day on

14  Friday, September 24th, 2021.  Who sent this email?

15      **A.**   This email is from Mr. Costello, Mr. Bannon's

16  counsel.

17      **Q.**   Okay.  Who is it to?

18      **A.**   To myself.

19      **Q.**   What does Mr. Costello tell you the next day on

20  September 24th?

21      **A.**   He confirmed that he had authority from his client

22  to accept the subpoena.

23      **Q.**   And he says:  "This will advise you that I have

24  been authorized by Steve Bannon to accept service."

25          When you got this email from Mr. Costello and he

**-4039-**

1    said he had been authorized, what did you understand him to

2    mean by that?

3        **A.**   That he had accepted the subpoena that we had

4    issued the day before on Mr. Bannon's behalf.

5        **Q.**   And based on what Mr. Costello told you in the

6    phone call and in this email, what was your understanding

7    about whether Mr. Costello was actually in touch with the

8    defendant?

9        **A.**   He had represented that he was his attorney, so

10   our understanding was that he was in communication with

11   Mr. Bannon.

12       **Q.**   And what would the Committee had done if it had

13   reason to believe that Mr. Costello was not in communication

14   with the defendant?

15       **THE COURT:**  Can you ask the question based on her

16   experience?

17   **BY MS. VAUGHN:**

18       **Q.**   Based on how the Committee handles these things,

19   in your experience, now that you've worked on it for a year,

20   what would the Committee have done if the Committee believed

21   that Mr. Costello was not in communication with the

22   defendant?

23       **A.**   We would have sought to determine whether

24   Mr. Bannon was represented by anyone else.  If he was not

25   represented by anybody else, we would have sought to reach

1   out to him directly.

2         **Q.**   All right.

3              Ms. Amerling, we're going to be talking about

4   several dates here.

5         **MS. VAUGHN:**  So, with the Court's permission, I

6   would like to just keep a timeline, if I can, so that we can

7   keep them all straight.

8         **THE COURT:**  I was wondering what the easel was

9   for.  Fair enough.

10        **MS. VAUGHN:**  Your Honor, I'm just going to add

11  these two dates.

12        **MR. CORCORAN:**  Your Honor, we can't see the easel.

13        **THE COURT:**  Yes.  We definitely need to have the

14  easel visible to everyone.

15        **MS. VAUGHN:**  (Adjusted the easel and created said

16  timeline.)_

17        **THE COURT:**  Thank you.

18  **BY MS. VAUGHN:**

19        **Q.**   All right.  Ms. Amerling, so I put on our timeline

20  that the subpoena was delivered on September 23rd, and

21  Mr. Costello confirmed that he was authorized by the

22  defendant to take it on September 24th.  So we've looked at

23  the subpoena and the emails of its delivery.

24              Let's talk about the defendant's compliance.  You

25  testified earlier that the subpoena required the defendant

1    to provide documents by 10:00 a.m. on October 7th.  Did the

2    defendant provide any records to the Committee by that time?

3        **A.**    He did not.

4        **Q.**    Between the time that you got that email from

5    Mr. Costello on September 24th confirming that he had been

6    authorized to take it, between that time and 10:00 in the

7    morning on October 7th, did the Committee hear anything more

8    from the defendant about the subpoena at all?

9        **A.**    No.

10        **Q.**    So, for example, did he ever ask for an extension

11    because he needed more time to find and collect documents?

12        **A.**    He did not.

13        **Q.**    Did he ever inform the Committee that he did not

14    have responsive documents?

15        **A.**    He did not.

16        **Q.**    And if the defendant didn't have documents or

17    needed more time, was there a specific process that the

18    defendant was directed to follow if he was unable to comply

19    by the deadline?

20        **A.**    Yes.  There are instructions that are attached to

21    the subpoena on that issue.

22        **Q.**    Let's look at those.

23        **MS. VAUGHN:**  Ms. Dunn-Gordon, if we could bring up

24    again Government's Exhibit 2 and go to Page 6.

25

1   **BY MS. VAUGHN:**

2       **Q.**   Ms. Amerling, this document is titled "Document

3   Production Definitions and Instructions."  Do you see that?

4       **A.**   Yes.

5       **Q.**   Was this provided along with the subpoena in that

6   email to Mr. Costello?

7       **A.**   Yes, it was.

8       **Q.**   All right.  Let's go to instruction 13 and zoom in

9   on that.  Can you please read instruction 13 there?

10      **A.**   Yes.  It says, "If compliance with the request

11  cannot be made in full by the specified return date,

12  compliance shall be made, to the extent possible, by that

13  date.  An explanation of why full compliance is not possible

14  shall be provided along with any partial production, as well

15  as a date certain as to when full production will be

16  satisfied."

17      **Q.**   So this is what the subpoena required if the

18  defendant could not comply by the deadline?

19      **A.**   That's correct, yes.

20      **Q.**   And did he at all follow this procedure?

21      **A.**   He did not.

22      **Q.**   Let's look at another item on this list, item 19.

23  Can you please read item 19 to the jury?

24      **A.**   It says, "Upon completion of the production,

25  submit a written certification, signed by you or your

**-4043-**

650

1    counsel stating that:  (1) a diligent search has been

2    completed of all documents in your possession, custody or

3    control that reasonably could contain responsive documents;

4    and (2) all documents located during the search that are

5    responsive have been produced to the Committee."

6         Q.   So if the defendant -- in your experience on the

7    Committee, is this what the subpoena requires individuals to

8    do if they've done a search and haven't found certain

9    documents?

10        A.   That's correct.

11        Q.   Did the defendant follow this procedure by 10:00

12   in the morning on October 7th?

13        A.   He did not.

14        Q.   Did the Committee get anything more than radio

15   silence by 10:00 in the morning on October 7th?

16        A.   No.

17        Q.   So despite the deadline passing, did the

18   defendant -- or did the Committee eventually receive a

19   communication from the defendant?

20        A.   His counsel, after the deadline had passed, sent a

21   letter.

22        Q.   Did he send that later that day?

23        A.   I believe that's right.

24        Q.   How did the Committee receive the letter?

25        A.   Mr. Costello emailed his correspondence to me.

**-4044-**

651

1                   **MS. VAUGHN:**  Ms. Dunn-Gordon, if we could bring

2     up, just for the witness, Government's Exhibit 4, please.

3     **BY MS. VAUGHN:**

4         **Q.**   Ms. Amerling, Government's Exhibit 4 is a

5     multi-paged document.  What's contained in Government's

6     Exhibit 4?

7         **A.**   This looks like a copy of the letter that

8     Mr. Costello sent to the Committee on October 7th.

9         **Q.**   And is there an additional document within

10    Government's Exhibit 4?

11        **A.**   Sorry.  What's your question?

12        **Q.**   Is there an additional page to Government's

13    Exhibit 4?  Could you just describe what that is?

14        **A.**   There's a two-page letter and then there is a copy

15    of email correspondence between myself and Mr. Costello.

16        **Q.**   And is that email correspondence about the letter?

17        **A.**   Yes, it is.

18                  **MS. VAUGHN:**  Your Honor, the government moves to

19    admit and publish Government's Exhibit 4.

20                  **MR. CORCORAN:**  No objection, Your Honor.

21                  **THE COURT:**  Government's Exhibit 4 is admitted and

22    may be published to the jury.

23        (Government's Exhibit 4 was admitted.)

24    **BY MS. VAUGHN:**

25        **Q.**   All right.  Ms. Amerling, let's actually start on

1    Page 3 of Government's Exhibit 4.

2         **MS. VAUGHN:**  And if we could zoom in on the bottom

3    half, the bottom email in this document.

4    **BY MS. VAUGHN:**

5         **Q.**   The bottom email there, who is it from and to?

6         **A.**   This is from Mr. Costello to myself.

7         **Q.**   What is it that Mr. Costello says in the email?

8         **A.**   It says, "Dear Ms. Amerling, please find my

9    attached letter response on behalf of Stephen K. Bannon to

10   the House Select Committee Subpoena of September 23, 2021."

11        **Q.**   When was this email sent to the Committee?

12        **A.**   It was sent at 5:05 p.m. on October 7th, 2021.

13        **Q.**   When was that in relation to the document deadline

14   of the subpoena?

15        **A.**   It was after the document deadline had passed.

16        **Q.**   Returning to Pages 1 and 2 of Exhibit 4, is this

17   what was attached to that email we were just looking at?

18        **A.**   Yes, that's my recollection of what was attached.

19        **MS. VAUGHN:**  All right.  Let's start on Page 1, if

20   we could, Ms. Dunn-Gordon.

21   **BY MS. VAUGHN:**

22        **Q.**   All right.  So this is a letter from the

23   defendant's attorney to you; is that right?

24        **A.**   That's correct.

25        **Q.**   All right.  Let's look at the body of the letter.

1    **MS. VAUGHN:**  So let's zoom in, Ms. Dunn-Gordon, on

2    the content of the letter there on the second half of the

3    page.

4    **BY MS. VAUGHN:**

5    **Q.**   All right.  And it begins with, "I write today on

6    behalf of Stephen K. Bannon with respect to the

7    above-referenced subpoena, which I accepted on behalf of

8    Mr. Bannon."

9           When he said he was writing on behalf of the

10   defendant, what did you understand Mr. Costello to mean by

11   that?

12   **A.**   I understood that he was representing Mr. Bannon

13   and that he had communicated with Mr. Bannon about the

14   matter that he was writing about.

15   **Q.**   What is the next thing that the letter states in

16   the next sentence?

17   **A.**   It says, "On the afternoon of October 6th, 2021, I

18   received a letter from Justin Clark, as counsel for then

19   President of the United States Donald J. Trump.  That letter

20   references the subpoena that your Committee served upon

21   Mr. Bannon, and notes that the subpoena" -- quotes from the

22   subpoena.  Would you like me to continue reading?

23   **Q.**   Yeah.  So is the next part of the letter

24   purporting to provide an excerpt of what the defendant

25   received?

1       **A.**   It purports to quote from the letter from

2   Mr. Clark, yes.

3       **Q.**   Can you please read the first paragraph of that

4   excerpt?

5       **A.**   It says, "Seeks records and testimony purportedly

6   relating to the events of January 6th, 2021, including but

7   not limited to information which is potentially protected

8   from disclosure by executive and other privileges, including

9   among others the presidential communications, deliberative

10  process, and attorney-client privileges.  President Trump is

11  prepared to defend these fundamental privileges in court."

12      **Q.**   All right.  So we saw a few references to

13  "privilege" there.  Can you just explain to the jury, when

14  it comes to a congressional subpoena, what a privilege means

15  for compliance with a congressional subpoena?

16      **A.**   A privilege is a claim that can be made that

17  certain types of communications are confidential or

18  sensitive and deserve protection from production.

19          **THE COURT:**  Ms. Vaughn, hold on a second.

20          **MR. CORCORAN:**  I just want to object subject to

21  the briefing and discussion we've had before.

22          **THE COURT:**  Sure.  Your objection is preserved.

23  **BY MS. VAUGHN:**

24      **Q.**   All right.  And after the excerpt from this letter

25  that purports to be from the former President, does the

**-4048-**

1    letter continue at the bottom of the page and on to the

2    next?

3         **A.**   It does.

4         **Q.**   All right.

5         **MS. VAUGHN:**   Ms. Dunn-Gordon, are we able to bring

6    up the two pages side by side?  If we can zoom in on that

7    last paragraph that goes on to the next page.

8    **BY MS. VAUGHN:**

9         **Q.**   All right.  Ms. Amerling, can you please read this

10   paragraph of Mr. Costello's letter to the jury.

11        **A.**   It says, "It is therefore clear to us that since

12   the executive privileges belong to President Trump, and he

13   has, through his counsel, announced his intention to assert

14   those executive privileges enumerated above, we must accept

15   his direction and honor his invocation of executive

16   privilege.  As such, until these issues are resolved, we are

17   unable to respond to your request for documents and

18   testimony."

19        **Q.**   So it says there that the defendant is not going

20   to comply with the request for documents or testimony.

21             Based on this letter, what was the understanding

22   about the basis for his noncompliance?

23        **A.**   My understanding was that he was asserting

24   executive privileges somehow related to our request for

25   information from him.

1    **Q.**   Were you involved in the Committee's consideration

2    of this letter and what it meant for the subpoena the

3    Committee had issued?

4    **A.**   I was.

5    **Q.**   And after receiving this letter, what was the

6    Committee's position with respect to whether the defendant

7    still had to comply with the subpoena?

8    **A.**   The Select Committee's position was, this was not

9    a valid rationale for refusing to comply.

10    **Q.**   And just to clarify, this subpoena was a

11    congressional subpoena; is that right?

12    **A.**   That's correct.

13    **Q.**   And that is just one part of the government?

14    **A.**   Yes.  Congressional subpoenas are issued by the

15    legislative branch.

16    **Q.**   So did any other part of the government have any

17    role in putting together, authorizing or supervising the

18    subpoena?

19    **A.**   No.

20    **Q.**   All right.  You testified that the Committee

21    concluded it was not a valid basis.  So did the Committee --

22    was its position that it was accepting or rejecting the

23    defendant's claim that he had an excuse not to comply with

24    the subpoena?

25    **A.**   The Chairman issued a letter to Mr. Bannon

1    explaining that the Committee rejected the basis that he had

2    offered for refusing to comply.

3         **Q.**   And in your role, were you involved in advising on

4    the content of and putting that letter together and sending

5    it to the defendant?

6         **A.**   I was.

7         **Q.**   And how did you send that letter to the defendant?

8         **A.**   I emailed the Chairman's letter to Mr. Bannon's

9    counsel, Mr. Costello.

10        **Q.**   All right.  Let's take a look at the letter you

11   sent back.

12        **MS. VAUGHN:**  If we could bring it up just for the

13   witness, Government's Exhibit 5.

14   **BY MS. VAUGHN:**

15        **Q.**   Ms. Amerling, what is Government's Exhibit 5?

16        **A.**   It is an October 8th letter from Chairman Bennie

17   Thompson to Mr. Costello.

18        **Q.**   And this is the letter that you emailed?

19        **A.**   That's correct.

20        **MS. VAUGHN:**  Your Honor, the government moves to

21   admit and publish Government's Exhibit 5 to the jury.

22        **MR. CORCORAN:**  Your Honor, with each of these, I

23   won't restate everything that's been briefed on this.  Thank

24   you.

25        **THE COURT:**  Yes.

1            So this exhibit is admitted, but as with prior

2    exhibits, it is admitted for the purpose of demonstrating

3    that the Committee took the positions in this letter and

4    communicated those positions to Mr. Bannon.  It is not

5    admitted for the truth of any underlying statement in the

6    letter.

7            And the letter may be published to the jury.

8            **MS. VAUGHN:**  Thank you, Your Honor.

9    **BY MS. VAUGHN:**

10       **Q.**   Ms. Amerling, first, what is the date of this

11   letter?

12       **A.**   October 8th, 2021.

13       **Q.**   And is that the same day that you sent it to the

14   defendant's attorney?

15       **A.**   Yes, it is.

16       **Q.**   All right.  So this is actually a three-page

17   letter, but I only want to talk about just a few things

18   within it.

19            So first, who is the letter from?

20       **A.**   The letter is from the Chairman of the Select

21   Committee, Chairman Bennie Thompson.

22       **Q.**   And based on your involvement in this letter, was

23   it sent on his personal behalf or on behalf of the

24   Committee?

25       **A.**   It was sent on behalf of the Select Committee.

1      **Q.**   And, generally, what does this letter tell the

2   defendant about his obligation to comply with the subpoena?

3      **A.**   It reminds him that he is obligated to comply with

4   the terms of the subpoena and that the Select Committee will

5   view his failure to comply as willful noncompliance with the

6   criminal contempt statute; and that he also might be subject

7   to other civil penalties.

8      **Q.**   And does this letter also inform the defendant

9   that the Committee was rejecting his reason for not

10   complying?

11      **A.**   Yes, it did.

12      **MS. VAUGHN:**   So let's zoom in on the first

13   paragraph there, please, Ms. Dunn-Gordon.

14   **BY MS. VAUGHN:**

15      **Q.**   All right.  Ms. Amerling, the letter first notes

16   that Chairman Thompson's writing in response to the

17   October 7th letter that Mr. Costello had sent.  Can you

18   please read the part of this paragraph that starts with

19   "Your letter relies"?

20      **A.**   Yes.  It says, "Your letter relies on an apparent

21   instruction from former President Donald Trump that appears

22   limited to requesting that Mr. Bannon not disclose

23   privileged information.  Despite this limited instruction,

24   your letter takes the inappropriate position that Mr. Bannon

25   will not comply with any request for information or

1    testimony sought by the Select Committee.

2        "Moreover, Mr. Trump's stated intention to assert

3    those executive privileges that may or may not belong to him

4    does not provide a legal basis for Mr. Bannon's refusal to

5    comply with the Subpoena."

6        **MS. VAUGHN:**  All right.  And, Ms. Dunn-Gordon, can

7    we please zoom in on the last full paragraph on this page

8    that starts with "Your letter"?

9    **BY MS. VAUGHN:**

10       **Q.**   All right.  Ms. Amerling, can you please read this

11   paragraph?

12       **A.**   It says, "Your letter indicates that the sole

13   basis for defiance of the Subpoena is Mr. Trump's direction

14   to your client and his decision to honor [Mr. Trump's]

15   invocation of executive privilege.  That position has no

16   basis in law, and your letter does not cite any statute,

17   case law or other legal precedent for support."

18       **Q.**   Okay.  So we've read a couple parts of this letter

19   informing the defendant that the Committee has rejected his

20   reason for not complying.  Did the letter also tell the

21   defendant he still had to comply?

22       **A.**   Yes, it did.

23       **Q.**   All right.

24       **MS. VAUGHN:**  Ms. Dunn-Gordon, can we please go to

25   Page 2, and zoom in on the last paragraph of Page 2 of this

**-4054-**

1    letter.

2    **BY MS. VAUGHN:**

3        **Q.**    Ms. Amerling, can you please read just the first

4    two sentences of the last paragraph?

5        **A.**    It says, "Regardless of any purported privilege

6    assertion by Mr. Trump, Mr. Bannon has an ongoing obligation

7    to produce documents to the Select Committee.  Accordingly,

8    please produce all responsive documents and records

9    identified in the Subpoena."

10        **Q.**    Did the letter also tell the defendant that he was

11    not excused from appearing at his deposition on October 14th

12    as required by the subpoena?

13        **A.**    Yes, it does so in the paragraph that follows.

14        **MS. VAUGHN:**    Ms. Dunn-Gordon, can we please go to

15    the last page of this exhibit and zoom in on the top

16    paragraph there.

17    **BY MS. VAUGHN:**

18        **Q.**    Ms. Amerling, can you please read the first

19    sentence there.

20        **A.**    It says, "Finally, the Select Committee expects

21    Mr. Bannon's appearance at the time and place designated in

22    the Subpoena for a deposition and to respond fully to

23    questions by the Select Committee."

24        **Q.**    And remind us again what the date and time was

25    that the subpoena required him to appear?

1    **A.**   Ten o'clock a.m. on October 14th, 2021.

2    **Q.**   So when was this letter sent in relation to that

3    date?

4    **A.**   It was sent six days before his deposition date.

5    **Q.**   And, finally, did the letter warn the defendant

6    about what might happen if he failed to comply with the

7    subpoena?

8    **A.**   Yes, it did, in the last paragraph.

9    **MS. VAUGHN:**   Ms. Dunn-Gordon, can you please zoom

10    in on that?

11    **BY MS. VAUGHN:**

12    **Q.**   All right.  First, can you please read just the

13    first sentence of this paragraph, Ms. Amerling?

14    **A.**   It says, "Please be advised that the Select

15    Committee will view Mr. Bannon's failure to respond to the

16    Subpoena as willful noncompliance with the Subpoena."

17    **Q.**   What is it the Committee is referring to there

18    when it tells the defendant it will view his noncompliance

19    as willful noncompliance?

20    **A.**   It's referring to the criminal contempt statute.

21    **Q.**   Can you finish reading that paragraph, please?

22    **A.**   It says, "His willful noncompliance with the

23    Subpoena would force the Select Committee to consider

24    invoking the contempt of Congress procedures in 2 U.S.C.

25    Sections 192 and 194, which could result in a referral from

**-4056-**

1    the House to the Department of Justice for criminal charges,

2    as well as the possibility of having a civil action to

3    enforce the Subpoena brought against Mr. Bannon in his

4    personal capacity."

5        **Q.**   This reference to U.S.C., is that a reference to

6    the United States Code?

7        **A.**   That's correct.

8        **Q.**   Those are just the country's laws?

9        **A.**   That's right.  And the specific provisions refer

10   to the criminal contempt statute.

11       **Q.**   What was the purpose of including this warning in

12   the letter that the Committee sent to the defendant?

13       **A.**   Establishing a clear record of the Committee's

14   views, making sure that the defendant was aware of that.

15       **Q.**   All right.  So we've just talked about a couple

16   more dates.  I'm going to add those to our timeline.

17           **MS. VAUGHN:**  (Added information to timeline.)

18   **BY MS. VAUGHN:**

19       **Q.**   All right, Ms. Amerling.  So we've talked about

20   the document deadline, the defendant's letter at 5 p.m. that

21   day refusing and then the Committee's response to that.

22   Once the Committee sent --

23           **THE COURT:**  Ms. Vaughn, if you're going to move

24   on, could we take a break?

25           **MS. VAUGHN:**  Now's a great time, Your Honor.

1        **THE COURT:**  I figured it would be.  Let's do 15

2   minutes.  Let's attempt to do as close as possible to 15

3   minutes.

4        Let's call it 10:55.  I realize some of these

5   clocks aren't quite right.  According to my computer, it's

6   10:38.  So 17 minutes; 10:55.

7        (Recess taken from 10:39 a.m. to 11:00 a.m.)

8        **THE COURT:**  Ms. Lesley, you may bring the jury in.

9        (Jurors enter the courtroom.)

10       **DEPUTY CLERK:**  Your Honor, we are now back on the

11  record.

12       **THE COURT:**  Thank you, Ms. Lesley.  Ms. Vaughn.

13       **MS. VAUGHN:**  Thank you, Your Honor.

14  **BY MS. VAUGHN:**

15  **Q.**   Ms. Amerling, before we took a break, we had just

16  finished looking at a letter that the Committee sent to the

17  defendant on October 8th.  We saw in that letter the

18  Committee's direction that the defendant needed to comply

19  with the subpoena.  After sending that letter, did the

20  defendant begin providing documents to the Committee?

21  **A.**   He did not.

22  **Q.**   Did the defendant, after you sent that letter,

23  indicate to the Committee in any way that he was planning to

24  begin collecting and providing documents?

25  **A.**   He did not.

1     **Q.**   And the date for the deposition required by the

2 subpoena was October 14th.  Did the defendant come to the

3 deposition as required on that date?

4     **A.**   He did not.

5     **Q.**   Between the date that the Committee sent the

6 October 8th letter and the deposition date on October 14th,

7 did the Committee receive another communication from the

8 defendant?

9     **A.**   Yes.

10     **Q.**   What did the Committee get by way of that?

11     **A.**   The Committee received a letter dated October 13th

12 from Mr. Bannon's counsel.

13     **MS. VAUGHN:**  Can we bring up for the witness

14 Government's Exhibit 6, please?

15 **BY MS.VAUGHN:**

16     **Q.**   Ms. Amerling, what is Government's Exhibit 6?

17     **A.**   This is the October 13th, 2021 letter that I was

18 referring to.

19     **Q.**   How did the Committee receive this letter?

20     **A.**   This was again emailed to me from Mr. Costello.

21     **Q.**   Was it emailed also on October 13th?

22     **A.**   I believe that's right.

23     **MS. VAUGHN:**  Your Honor, the government moves to

24 admit and publish Government's Exhibit 13 [sic].

25     **MR. CORCORAN:**  Our position remains as our

1    briefing stated.  Thank you.

2              **THE COURT:**  I did not think that you had objected

3    to this document at all.

4              **MR. CORCORAN:**  We don't object, Your Honor.

5              **THE COURT:**  This document is admitted and may be

6    published to the jury.

7         (Government's Exhibit 6 was admitted.)

8              **MR. CORCORAN:**  Your Honor, I just want to make

9    sure that the record reflects this is Government's Exhibit

10   6.

11             **THE COURT:**  Correct.  Government Exhibit 6.

12             I apologize if I said something different than

13   that.  Government Exhibit 6 is admitted and may be published

14   to the jury.

15             **MS. VAUGHN:**  Thank you, Your Honor.

16   **BY MS. VAUGHN:**

17       **Q.**   So you testified that this letter was dated

18   October 13th, the day before the deposition date.  And as

19   with the defendant's earlier letter on October 8th -- or

20   sorry -- October 7th, were you also involved in considering

21   and responding to this letter?

22       **A.**   I was.

23       **Q.**   All right.  And in this letter, what is it that

24   the defendant told the Committee about whether he was going

25   to comply with the subpoena?

1     **A.**    In this letter he told the Committee that

2   Mr. Bannon was going to provide neither documents nor

3   testimony.

4          **MS. VAUGHN:**  All right.  And if we could go to

5   Page 2 of Government's Exhibit 6, please, and zoom in on the

6   first full paragraph there.

7   **BY MS. VAUGHN:**

8     **Q.**   Ms. Amerling, can you please read the first or the

9   zoomed-in paragraph there, the first full paragraph on Page

10  2?

11    **A.**   It says, "Until such time as you reach an

12  agreement with President Trump or receive a court ruling as

13  to the extent, scope and application of the executive

14  privilege, in order to preserve the claim of executive and

15  other privileges, Mr. Bannon will not be producing documents

16  or testifying.  As noted previously, Mr. Bannon will revisit

17  his position if President Trump's position changes or if a

18  court rules on this matter."

19    **Q.**   And to be clear, by this time, had the Committee

20  already sent a letter to the defendant notifying him that

21  the privilege he was asserting did not excuse him?

22    **A.**   That's correct.

23    **Q.**   Did former President Trump, at this time, sit on

24  the Committee or in Congress in any way?

25    **A.**   He did not.

668

1      Q.   And are courts part of the Committee or Congress

2   in any way?

3      A.   They are not.

4      Q.   In this letter, did the defendant raise any other

5   reason, to the Committee's knowledge, for not complying,

6   other than the same privilege he had been claiming?

7      A.   He did not.

8      Q.   Okay.  So the Committee gets this letter and the

9   next day was October 14th.  Did the defendant show up for

10  his deposition?

11     A.   He did not.

12     Q.   So let's add these two dates to our timeline.

13     MS. VAUGHN:   (Added information to timeline.)

14  BY MS. VAUGHN:

15     Q.   All right.  So by October 14th, the defendant has

16  not produced documents or appeared for testimony.  What did

17  the Committee do next with respect to the defendant?

18     A.   The Committee sent him a letter through his

19  counsel on October 15th.

20     Q.   And what was the purpose of sending the defendant

21  another letter?

22     A.   The purpose was to reiterate that the Committee

23  believed that he was in noncompliance with the subpoena and

24  notified him that the Committee would be meeting on October

25  19th to consider a criminal referral resolution.

1    **Q.** All right. And let's talk a little bit more about

2    that specifically in a minute. But were you involved in

3    putting that additional letter together and getting it over

4    to the defendant?

5    **A.** I was.

6    **Q.** And did you personally provide it like you had the

7    other ones?

8    **A.** I emailed it, like I had with the previous

9    letters, yes.

10    **MS. VAUGHN:** All right. If we could bring up for

11    the witness Government's Exhibit 7.

12    **BY MS. VAUGHN:**

13    **Q.** Ms. Amerling, is this the letter you were just

14    referring to that the Committee sent to the defendant on

15    October 15th?

16    **A.** Yes, it is.

17    **MS. VAUGHN:** Your Honor, the government moves to

18    admit and publish Government's Exhibit 7.

19    **MR. CORCORAN:** Same position, Your Honor.

20    **THE COURT:** Thank you, Mr. Corcoran.

21    Government's Exhibit 7 is admitted, with the same

22    limiting instruction that I've used previously, which is

23    that this letter is admitted for the purpose of

24    demonstrating that the Committee took this position in its

25    communication to Mr. Bannon, or to Mr. Costello and

1    Mr. Bannon, but not for the truth.  It's not admitted for

2    the truth of anything asserted in the letter, especially

3    anything underlying the arguments in the letter.  But it is

4    otherwise admitted.  Again, this is Government's Exhibit 7,

5    and it may be published to the jury.

6        (Government's Exhibit 7 was admitted.)

7            **MS. VAUGHN:**  Thank you, Your Honor.

8    **BY MS. VAUGHN:**

9        **Q.**    Ms. Amerling, who is this letter from?

10       **A.**    The letter is from the Chairman of the Committee,

11   Chairman Bennie Thompson.

12       **Q.**    Like the other letter we saw, is this sent on

13   behalf of Chairman Thompson personally or on behalf of the

14   Committee?

15       **A.**    It is sent on behalf of the Committee.

16       **Q.**    Again, by October 15th, had the deadlines on the

17   subpoena passed?

18       **A.**    Yes, both the October 7th deadline for producing

19   documents and the October 14th deadline for appearing for

20   deposition had passed.

21           **MS. VAUGHN:**  All right.  Let's zoom in, if we

22   could, on the first paragraph of this letter.

23   **BY MS. VAUGHN:**

24       **Q.**    Ms. Amerling, this is a long paragraph.  Could you

25   just read the sentence that starts with "as you know"?

671

1      **A.**    It says, "As you know, the Subpoena demanded that

2    Mr. Bannon produce documents by October 7, 2021 and appear

3    on October 14, 2021 before the Select Committee to provide

4    deposition testimony on a wide range of issues relating to

5    the January 6, 2021 attack on the United States Capitol, as

6    well as plans to interfere with the count of the 2020

7    Electoral College results."

8      **Q.**    The reference there to "the count of the 2020

9    Electoral College results", is that just another way to

10   reference what we've been talking about, the certification

11   of the election that was happening that day in Congress?

12     **A.**    That's correct.

13     **Q.**    Can you now, please, read the rest of that

14   paragraph?

15     **A.**    It says, "Mr. Bannon has now willfully failed to

16   both produce a single document and to appear for his

17   scheduled deposition.  The Select Committee believes that

18   this willful refusal to comply with the 'Subpoena'

19   constitutes a violation of federal law."

20     **Q.**    And the Committee views the defendant's refusal to

21   be a violation of federal law.  What is it that the

22   Committee was referring to there?

23     **A.**    The Committee is referring to the criminal

24   contempt of Congress statute.

25     **Q.**    And is that the same statute and procedures that

1    were referenced in the October 8th letter that we looked at?

2        **A.**    That's correct.

3        **MS. VAUGHN:**    Ms. Dunn-Gordon, can you please zoom

4    in on the next paragraph?

5    **BY MS. VAUGHN:**

6        **Q.**    Ms. Amerling, can you please read the second

7    paragraph of the letter for us.

8        **A.**    It says, "As justification for Mr. Bannon's

9    complete failure to comply with any portion of the Subpoena,

10    you continue to rely on ex-President Trump's stated

11    intention to invoke executive privilege with respect to

12    Mr. Bannon, and Mr. Trump's purported request that

13    Mr. Bannon not produce documents to or testify before the

14    Select Committee.

15        "As was explained in the Select Committee's

16    October 8, 2021 letter (attached), the former President has

17    not communicated any such assertion of privilege, whether

18    formally or informally, to the Select Committee.

19        "Moreover, we believe that any such assertion of

20    privilege, should it be made by the former President, will

21    not prevent the Select Committee from lawfully obtaining the

22    information that it seeks."

23        **MS. VAUGHN:**    Okay.  I want to look at another part

24    of the letter.  If we could go to Page 2 of Government's

25    Exhibit 7, please.  Can you please zoom in on the last full

1    paragraph of Page 2.

2    **BY MS. VAUGHN:**

3        **Q.**    Ms. Amerling, the paragraph starts by saying,

4    "Accordingly, the Select Committee views Mr. Bannon's

5    failure to produce documents by the October 7th deadline as

6    willful noncompliance with the Subpoena."

7                Is that just a reference to what we had discussed

8    earlier, that he had not complied as required?

9        **A.**    That's correct.

10       **Q.**    Can you please read the rest of that paragraph.

11       **A.**    It says, "Mr. Bannon has persisted in his refusal

12   to produce any documents to the Select Committee, and he has

13   failed to provide a privilege log identifying specific

14   asserted privileges.  Mr. Bannon has now further compounded

15   his noncompliance by refusing to appear on October 14th,

16   2021, at the Select Committee deposition, to which he was

17   summoned to provide testimony.  The Select Committee will

18   therefore be meeting on Tuesday, October 19th, 2021 to

19   consider invoking the contempt of Congress procedures set

20   forth in 2 United States Code, Sections 192 and 194."

21       **Q.**    Ms. Amerling, that reference to the laws there and

22   the procedures, is that, again, just a reference to what we

23   were talking about a minute ago, the criminal contempt

24   procedures?

25       **A.**    That's correct.

1    **Q.**    And what does it mean when it says the Committee

2    will consider invoking the procedures?

3    **A.**    Under that statute, Congress can vote to approve a

4    resolution that refers criminal contempt to the United

5    States Attorney for prosecution.

6    **MS. VAUGHN:**    All right.  Ms. Dunn-Gordon, can we

7    bring up, side by side, this and the next page and then zoom

8    in on the last paragraph that spans the pages.

9    **BY MS. VAUGHN:**

10    **Q.**    Ms. Amerling, can you please read the last

11    paragraph of this letter for us there.

12    **A.**    It says, "If Mr. Bannon believes that there are

13    any additional issues relating to his noncompliance with the

14    Subpoena that have not been addressed, please submit them in

15    writing to the Select Committee by 6:00 p.m. EST on Monday,

16    October 18th, 2021 for the Select Committee's consideration

17    in its deliberations."

18    **Q.**    Can you explain for the jury what it's referring

19    to there when it's asking for information relating to any

20    additional issues relating to the defendant's noncompliance?

21    **A.**    Yes.  The Select Committee had just informed

22    Mr. Bannon again that it considered that his misconduct

23    constituted a violation of federal criminal law.  It was

24    telling Mr. Bannon that the Committee was going to meet to

25    vote a resolution about that violation.

1          That's a serious step, referring somebody for

2     criminal prosecution.  So this paragraph refers to the

3     Committee's effort to ensure that Mr. Bannon had the

4     opportunity to provide any information that the Select

5     Committee should consider relating to his misconduct before

6     it had its proceeding on October 19th.

7          **Q.**   But can you just explain what the kinds of

8     information were that the Committee was referring to there?

9     If it existed.

10         **A.**   Information that might shed a light on his

11    misconduct, such as he was confused about instructions he

12    had been given in the subpoena.

13         **Q.**   And this letter was sent on October 15th.  So how

14    long did the defendant have to provide information like

15    that, whether he was confused or had another issue relating

16    to his failure to comply?

17         **A.**   That was three days after the date of the letter.

18    Three days.

19         **Q.**   And by 6 p.m. on October 15th, did the defendant

20    provide any additional explanation for why he had failed to

21    comply with the subpoena?

22         **A.**   We received a letter -- I need to refresh my

23    recollection of the exact timing.

24         **Q.**   Well, why don't we just go take a look at the

25    letter right now.

1          **MS. VAUGHN:**  If we could bring up, just for the

2    witness, Government's Exhibit 8.  And if we could show the

3    witness both pages, please.

4    **BY MS. VAUGHN:**

5          **Q.**   Ms. Amerling, what is Government's Exhibit 8?

6          **A.**   This is an October 18th letter that Mr. Costello

7    sent to the Select Committee.

8          **Q.**   Is there also an email contained in this exhibit?

9          **A.**   Yes.  There's an email from Mr. Costello to

10   myself.

11         **Q.**   And how are those two things related, the email

12   and the letter?

13         **A.**   This is the email that he sent attaching the

14   letter that's in this exhibit.

15         **MS. VAUGHN:**  Your Honor, the government moves to

16   admit and publish Government's Exhibit 8.

17         **MR. CORCORAN:**  No objection, Your Honor.

18         **THE COURT:**  Government's Exhibit 8 is admitted and

19   may be published to the jury.

20       (Government's Exhibit 8 was admitted.)

21   **BY MS. VAUGHN:**

22         **Q.**   All right.  Ms. Amerling, let's start on Page 1.

23         **MS. VAUGHN:**  Ms. Dunn-Gordon, if you could just

24   zoom in on the top of the page.

25

1    **BY MS. VAUGHN:**

2        **Q.**   You testified that this was an email with the

3    letter from Mr. Costello to you.  When was this letter sent

4    to you?

5        **A.**   6:02 p.m. on Monday, October 18th, 2021.

6        **Q.**   All right.  And let's take a look at the letter

7    itself.

8            **MS. VAUGHN:**  If we could zoom in on the body of

9    the letter.

10   **BY MS. VAUGHN:**

11       **Q.**   Ms. Amerling, can you please read this letter for

12   us.

13       **A.**   It says, "Dear Congressman Thompson, we write on

14   behalf of Stephen Bannon.  We have just been advised of the

15   filing of a lawsuit in federal court for the District of

16   Columbia entitled Donald J. Trump versus Bennie Thompson, et

17   al.  In light of this late filing, we respectfully request a

18   one-week adjournment of our response to your latest letter

19   so that we might thoughtfully assess the impact of its on

20   this pending litigation."

21       **Q.**   So by 6 p.m. on October 18th, had the defendant

22   provided to the Committee any additional reason, like

23   confusion, for his noncompliance?

24       **A.**   No.

25       **Q.**   And did the Committee -- what was the Committee's

**-4071-**

1    understanding about what the defendant wanted to be delayed

2    by this letter?

3        **A.**    The understanding was that the defendant was

4    seeking a delay in responding to the invitation to provide

5    information relating to his misconduct.

6        **Q.**    Did the defendant ever ask, by 6 p.m. on

7    October 18th, that the deadlines in the subpoena be

8    extended?

9        **A.**    He did not.

10       **Q.**    By 6 p.m. on October 18th, did the defendant

11   provide any documents to the Committee?

12       **A.**    He did not.

13       **Q.**    By 6 p.m. on October 18th, had the defendant

14   provided any indication that he was working to collect

15   documents and provide them?

16       **A.**    He had provided no such indication.

17       **Q.**    By 6 p.m. on October 18th, had the defendant

18   notified the Committee in any way that he was now willing to

19   come to a deposition?

20       **A.**    No.

21       **Q.**    Did the Committee agree to delay its consideration

22   of invoking the criminal contempt procedures based on this

23   letter?

24       **A.**    It did not.

25       **Q.**    Why not?

1     **A.**   Because it considered reference to a lawsuit

2     immaterial to the deliberations over his contempt.

3     **Q.**   Did the Committee inform the defendant of this

4     position?

5     **A.**   Yes.

6     **MS. VAUGHN:**  If we could bring up, just for the

7     witness, Government's Exhibit 9.

8     **BY MS. VAUGHN:**

9     **Q.**   Actually, Ms. Amerling, before I ask you about

10    this, you just testified that the Committee informed the

11    defendant that he was not going to have any additional time

12    before the Committee considered those procedures.  Did the

13    Committee ultimately decide to refer the defendant for

14    criminal contempt?

15    **A.**   Yes.

16    **Q.**   Did the Committee also inform the defendant of

17    that decision?

18    **A.**   Yes.

19    **Q.**   Okay.  And Government's Exhibit 9 is a multi-page

20    document with two letters.  What is contained in

21    Government's Exhibit 9?

22    **MS. VAUGHN:**  And if -- Ms. Dunn-Gordon, if we

23    could just bring up the first page of the second letter as

24    well for the witness.

25

1    **BY MS. VAUGHN:**

2        **Q.**    All right.  Ms. Amerling, what are the two letters

3    contained in Government's Exhibit 9?

4        **A.**    These are the two letters sent by the Select

5    Committee to Mr. Bannon via his attorney on October 19th,

6    2021.

7            **MS. VAUGHN:**  Your Honor, the government moves to

8    admit and publish Government's Exhibit 9.

9            **MR. CORCORAN:**  Our position remains unchanged from

10   the brief, Your Honor.

11           **THE COURT:**  Thank you, Mr. Corcoran.

12           Exhibit 9 is admitted, ladies and gentlemen of the

13   jury, for the same purposes as I've described before, which

14   is, it is admitted for the purpose of demonstrating the

15   position that the Committee was taking in these letters to

16   Mr. Bannon.

17           It is not admitted -- or these letters are not

18   admitted -- this exhibit is not admitted for the purpose of

19   demonstrating the truth of any assertion in the letter or

20   letters.

21           Exhibit 9 is admitted with that limiting

22   instruction and may be published to the jury.

23           **MS. VAUGHN:**  Thank you, Your Honor.

24           And, Ms. Dunn-Gordon, we can leave those pages up

25   for now.

1    **BY MS. VAUGHN:**

2        **Q.**    Ms. Amerling, so both of these letters were sent

3    from the Committee on October 19th.  Can you just explain

4    why there are two letters on the same day?

5        **A.**    Yes.  One was sent prior to the meeting of the

6    Committee to consider the criminal contempt resolution.  One

7    was sent after to notify Mr. Bannon that the Committee had

8    taken that step.

9        **Q.**    And which one was sent first?  The one on the left

10   or the one on the right?

11       **A.**    The one on the left was sent first.

12       **Q.**    Okay.  Let's talk about this one.  So this letter

13   on the left, what was the purpose of that letter?

14       **A.**    This was to respond to Mr. Bannon's letter from

15   the previous day, October 18th.

16       **Q.**    Requesting more time to explain what had happened?

17       **A.**    Correct.

18       **Q.**    All right.

19           **MS. VAUGHN:**    All right.  If we could please zoom

20   in on the body of that letter, Ms. Dunn-Gordon.

21   **BY MS. VAUGHN:**

22       **Q.**    All right.  And, Ms. Amerling, could you just read

23   the last part, beginning with "The investigation."

24       **A.**    It says, "The investigation of the Select

25   Committee is extremely important and urgent for the nation,

1    and further delay in compliance by Mr. Bannon undermines the

2    ability of the Committee to timely complete its essential

3    responsibilities.

4            "Accordingly, no grounds exist for any adjournment

5    or other delay, and your request is denied."

6        Q.   Again, what was the only reason that the Committee

7    understood the defendant to be asking for more time to

8    explain himself?

9        A.   Filing of a lawsuit that related to executive

10   privilege.

11       Q.   And executive privilege, was that the same issue

12   that the Committee had already informed the defendant that

13   it had rejected?

14       A.   That's correct.

15       Q.   All right.  Let's take a look at the second

16   letter.

17           **MS. VAUGHN:**  Ms. Dunn-Gordon, if we could just

18   zoom in on the first two paragraphs there.

19   **BY MS. VAUGHN:**

20       Q.   Ms. Amerling, I think you said you sent this

21   letter after the Committee had decided to refer the

22   defendant for criminal contempt.  Can you please read the

23   beginning of the second paragraph there?

24       A.   It says, "As explained in our prior

25   correspondence, your stated reasons for Mr. Bannon's flat

1   refusal to provide documents and appear at a deposition have

2   no legal basis or support.  Because of Mr. Bannon's

3   continued refusal to comply with the subpoena, the Select

4   Committee has unanimously voted to recommend that the House

5   of Representatives find Mr. Bannon to be in contempt of

6   Congress.  The detailed basis for that recommendation is

7   contained in the Select Committee's report; a copy of which

8   is available at the following link:"

9       **Q.**   What was the purpose of informing the defendant

10  that the Committee had taken this step and providing him

11  with a link to the Committee's findings?

12      **A.**   It was a very serious step to refer Mr. Bannon for

13  criminal contempt.  We wanted to make sure that he had that

14  information.

15      **Q.**   And you sent this letter on October 19th.  At that

16  time after you sent it, did you hear anything from the

17  defendant that he -- any further explanation from the

18  defendant, other than executive privilege, about why he had

19  not complied with the subpoena?

20      **A.**   We didn't hear anything from him.

21          **MS. VAUGHN:**  Nothing further, Your Honor.

22          **THE COURT:**  Thank you, Ms. Vaughn.

23          Mr. Corcoran?

24          **MR. CORCORAN:**  Thank you, Your Honor.

25              **CROSS-EXAMINATION OF KRISTIN AMERLING**

**-4077-**

684

1    **BY MR. CORCORAN:**

2        **Q.**   Ms. Amerling, yesterday you testified about the

3    subject matter of the Select Committee's inquiry.  Do you

4    understand that, in this case, there is no allegation that

5    Steve Bannon was involved in the attack on the U.S. Capitol?

6    Do you understand that?

7        **A.**   No allegation by whom, sir?

8        **Q.**   In the case that's here before the jury, there is

9    no allegation that Steve Bannon was involved on the U.S.

10   Capitol.  Do you understand that?

11       **A.**   Yes.

12       **Q.**   Do you understand that this case involves a

13   subpoena and then actions that were taken with regard to

14   that subpoena?

15       **A.**   Yes, sir.

16       **Q.**   Okay.  Now, when you started your testimony

17   yesterday, you said that there were similarities between you

18   testifying here in court today and the deposition in front

19   of the Select Committee.  Do you remember that --

20       **A.**   I do.

21       **Q.**   -- testimony.

22           But there's a significant difference, isn't there,

23   in the sense that, at the Select Committee deposition, there

24   is no judge present to protect the privileges or rights of a

25   witness, is there?

**-4078-**

1        **A.**    There is a procedure for asserting privileges in a

2    deposition.

3        **Q.**    I understand that there is a procedure.  My

4    question is, Is there a judge present at a Select Committee

5    deposition to protect the rights and the privileges of a

6    witness?

7        **A.**    Sir, judges are not part of Congress.

8        **Q.**    Is that a no?

9        **A.**    That's correct, yes.

10       **Q.**    Okay.

11               Now, as I understand it, you had some

12   responsibilities with regard to the subpoena, Government's

13   Exhibit Number 2.  You were the staff person for the Select

14   Committee who was primarily responsible for this subpoena?

15       **A.**    I was one of several staff involved with the

16   drafting and review of the subpoena.

17       **Q.**    Okay.  And in terms of -- how many witnesses to

18   date have been interviewed by the Select Committee members

19   or staff?

20               **MS. VAUGHN:**  Objection.  Relevance.

21               **THE COURT:**  I'm going to allow it.

22               **THE WITNESS:**  I'm estimating here, but I believe

23   that over 1,000 individuals have cooperated with the Select

24   Committee's request for information or testimony.

25

1    **BY MR. CORCORAN:**

2         **Q.**   Well, my question isn't cooperation.  It's how

3    many witnesses have been interviewed?  Are you saying that

4    more than 1,000 witnesses have been interviewed by the

5    Select Committee or staff?

6         **A.**   When you combine informal, formal, depositions,

7    transcribed interviews, I believe that's a ballpark, a

8    ballpark figure.

9         **Q.**   Okay.

10              And how many depositions of witnesses have been

11   conducted by the Select Committee or its staff?

12        **A.**   I would have to look at our records.  Many.  It's

13   fair to say many.

14        **Q.**   Give us a ballpark figure, please.

15        **A.**   Dozens.

16        **Q.**   Dozens.  Okay.

17              And how many subpoenas have you personally been

18   involved with for the Select Committee?

19        **A.**   All of them.

20        **Q.**   And how many is that?

21        **A.**   I'd have to check our records on that but many

22   subpoenas.

23        **Q.**   What's your best ballpark estimate of how many

24   subpoenas you were involved with before the Select

25   Committee?

1          **A.**   Many dozens of subpoenas.

2          **Q.**   Okay.  Now you spoke yesterday.  You used the word

3     "urgency" in your testimony.  But the Select Committee is

4     still interviewing witnesses.  Correct?

5          **A.**   That's correct.

6          **Q.**   And the Select Committee is still conducting

7     hearings.  Correct?

8          **A.**   That's correct.

9          **Q.**   And the Select Committee is still conducting

10    depositions.  Correct?

11         **A.**   That is correct.

12         **Q.**   And the Select Committee is still receiving and

13    reviewing documents.  Correct?

14         **A.**   The Select Committee always welcomes relevant

15    documents and information.

16         **Q.**   Well, my question is, Is the Select Committee

17    still receiving and reviewing documents, yes or no?

18         **A.**   Yes, it is.

19         **Q.**   Okay.  And the Committee is going to continue its

20    work until the end of this year.  Correct?

21         **A.**   The Committee is authorized to continue its work

22    until the end of this year.

23         **Q.**   Okay.  Now you were asked about Government's

24    Exhibit 2, the subpoena, specifically your role with regard

25    to the subpoena.  My question is this:  You were asked, Were

1    you involved in the decision and the issuance of the

2    subpoena to the defendant?  You answered, "I advised on the

3    issuance of the subpoena."

4          My question is this:  What did you do?  What did

5    you do exactly?

6      A.    With respect to which aspect?

7      Q.    Well, with regard to the subpoena, the 10-page

8    document that's Exhibit 2, I just want to understand what it

9    is that you did, you personally did?

10     A.    I participated with other attorneys on the staff

11    in the drafting of the subpoena.  I reviewed it.  And I

12    advised the members of the Select Committee about its

13    contents.

14     Q.    Okay.  What day did you first start working on the

15    subpoena for Mr. Bannon?

16     A.    I don't recall the specific day.  It would have

17    been sometime in the weeks before the subpoena was issued.

18     Q.    On the actual date of the subpoena, which I

19    believe was the 23rd of September, 2021, where were you on

20    that date?

21     A.    I was in Washington, D.C.

22     Q.    And were you in your office?

23     A.    Yes, I was.

24     Q.    Where is that?

25     A.    It's in the Longworth House Office Building.

689

1    **Q.**   Okay.  And at the time -- you said that you signed
2    portions of the subpoena.  Correct?

3    **A.**   I'm sorry.  I didn't hear your question.

4    **Q.**   You testified that you'd signed portions of
5    Government's Exhibit No. 2?

6    **A.**   Not the subpoena itself, the proof of service
7    page.

8    **Q.**   Okay.  Your testimony is that you signed the proof
9    of service page on Government's Exhibit No. 2?

10   **A.**   That's correct.

11   **Q.**   Okay.  Where were you when you signed Page 2 of
12   Government's Exhibit No. 2?

13   **A.**   To the best of my recollection, I was in my
14   office.

15   **Q.**   Were there any members of Congress in the offices
16   with you that day on the 23rd of September?

17            **MS. VAUGHN:**  Objection.  Relevance, Your Honor.

18            **THE COURT:**  Overruled.

19            **THE WITNESS:**  In my physical office?

20   **BY MR. CORCORAN:**

21   **Q.**   In the offices of the Select Committee.

22   **A.**   I would have to check what the schedules were to
23   see if the members were in their offices on that day, sir,
24   to give you an accurate answer.  It wouldn't have been in my
25   physical office, my specific office.

690

1     **Q.**   I guess -- one thing I'm asking is, when you

2     signed the proof of service, were there any members around

3     you at that time?  Any members of the Committee?

4     **A.**   You mean watching me fill out the form?

5     **Q.**   Present.

6     **A.**   No, sir.

7     **Q.**   Okay.  And on that day, September 23rd, 2021, was

8     the House in session such that there were votes?

9     **A.**   Again, I'm happy to look at the records but I

10    don't recall.

11    **Q.**   Let's look at the subpoena.

12          **MR. CORCORAN:**  If we could -- that's in evidence.

13    If we could pull it up, Government's Exhibit No. 2.  It's in

14    evidence.

15          **THE COURT:**  It can be published to the jury.

16          **DEPUTY CLERK:**  It's coming from you all's

17    computer.

18          **THE COURT:**  You just need to switch the feed.

19    There we are.

20          **MR. CORCORAN:**  I just need the first page.

21    **BY MR. CORCORAN:**

22    **Q.**   So if you look at this area there where it says --

23    and the box is checked and it says, "to produce the things

24    identified on the attached schedule touching matters of

25    inquiry committed to said committee or subcommittee, and you

1    are not to depart without leave of said committee or

2    subcommittee."

3              Does that mean that when a person provides

4    documents to the Committee, they are not allowed to leave

5    until the Committee allows them to do so?

6        **A.**    When a person provides documents, often they can

7    discuss with the Committee various different ways to deliver

8    them.  Sometimes they are delivered in person.  Sometimes

9    they are delivered via email.  The instructions that are

10   attached to the subpoena provide additional information to

11   help the recipient understand the different procedures that

12   they can engage in.

13       **Q.**    And, specifically, with regard to this language,

14   does this mean that, if somebody produces the documents in

15   person, that the Committee will not allow them to leave

16   until the Committee says so?  Is that what that means?

17       **A.**    That's not a practice that is followed when

18   individuals provide documents to the Committee.

19       **Q.**    So that's sort of surplus language in the

20   document?  Is that fair to say?

21       **A.**    I think that's fair.

22       **Q.**    Okay.  Is the subpoena itself, this first page, is

23   that something that is a form that you use or is it a hard

24   copy of a document that's filled out?

25       **A.**    I'm not sure I understand the question.

1  **Q.**   Well, Government's Exhibit 2, the first page, is

2  that typed up fresh each time a subpoena is issued to a

3  recipient?

4  **A.**   Well, they are individualized to focus on the

5  specific recipient of the subpoena and the address of the

6  recipient.

7  **Q.**   And the parts that aren't individualized, are you

8  filling out a form -- is the person who is filling it out

9  doing so on a computer or on a typewriter or on a piece of

10  paper?

11  **A.**   We use computers.

12  **Q.**   Okay.  So is it fair to say that some of the

13  information that is depicted on Page 1 of Government's

14  Exhibit 2 is just part of a form that's on your computer

15  that's filled out with individual information?

16  **A.**   The typewritten portions are generally done on

17  computer.  The signature is by the Chair and by the Clerk of

18  the House of Representatives.

19  **Q.**   If you look here where it says under "Production

20  of" -- to produce things identified on the attached

21  schedule, it gives a "place of production."  That's your

22  Select Committee office is; is that right?

23  **A.**   That's part of your office.  Right.

24  **Q.**   In the Longworth House Office building.  Correct?

25  **A.**   That's correct.

1    **Q.**    And the date October 7, 2021, did you type in that

2    date?

3    **A.**    I don't recall, sir.

4    **Q.**    How was that date arrived upon?  In other words,

5    who decided October 7 was going to be the date that is on

6    this subpoena?

7    **A.**    The ultimate decision-maker for the Select

8    Committee is the Chair and Members of the Select Committee.

9    **Q.**    So you're saying that Chairman Thompson decided

10   that Steve Bannon should appear to produce documents or

11   produce them in electronic form on October 7th, 2021; is

12   that your testimony?

13   **A.**    My testimony is that that subpoena is directing

14   Mr. Bannon to produce documents on that date, and the person

15   who is authorized to sign that subpoena for the Select

16   Committee is the Chairman of the Select Committee,

17   Chairman Bennie Thompson.

18   **Q.**    I understand both of the things that you just said

19   but I've got a slightly different question.  This is a human

20   process.  So I want to know what human decided that

21   October 7, 2021 is the date that Steve Bannon should appear

22   to produce documents.  What human being made that decision?

23   **A.**    Sir, I'm not sure I'm -- I thought I'd answered

24   your question.

25   **Q.**    You didn't.  So let me --

**-4087-**

1      **A.**    Chairman Thompson signs the subpoena.  He has the

2    authority to demand that witnesses comply with the subpoena.

3    He has the authority for the Committee to sign the subpoena.

4      **Q.**    I understand that the Chairman has the authority

5    to sign the Committee -- the subpoena.  And I also

6    understand your testimony on direct that if the Chairman

7    doesn't sign the subpoena, that it's invalid; is that

8    correct?

9      **A.**    A valid subpoena requires the Chair's signature,

10    yes.

11      **Q.**    Okay.  Now, back to my question as to who, what

12    person, decided to put October 7?

13          **MS. VAUGHN:**  Your Honor, the witness has answered

14    the question.

15          **THE COURT:**  I think that I am going to allow this

16    question, at least one more time.  I think the witness has

17    answered portions but not the question directly.  If there

18    is an answer.

19    **BY MR. CORCORAN:**

20      **Q.**    Do you know who decided that Steve Bannon should

21    appear -- do you have firsthand knowledge, firsthand

22    knowledge of who the person is who decided that Steve Bannon

23    should appear on October 7, 2021, to produce documents?

24      **A.**    With any subpoena there is generally discussion

25    among staff, and there is advice given to the members of the

1    Select Committee on what is the appropriate language in the

2    subpoena.  And then the ultimate decision for what is

3    reflected in the subpoena is made by the individual who has

4    the authority to sign the subpoena.

5        **Q.**   Did you participate in the discussion that you

6    just described as to what date should -- the October 7, 2021

7    date for the production of documents?  Did you participate

8    in that decision?

9        **A.**   I did.  To the best of my recollection, I did.

10   Yes, sir.

11       **Q.**   Who was present in that discussion?

12           **MS. VAUGHN:**  Objection.  Relevance.

13           **THE COURT:**  Overruled.

14           **THE WITNESS:**  I don't recall the individuals who

15   were in that specific discussion, but generally, as I said,

16   there is a discussion among staff about what to recommend

17   and there's a discussion with the members about what is the

18   appropriate date and schedule to put on documents such as

19   subpoenas.

20   **BY MR. CORCORAN:**

21       **Q.**   Okay.  I understand the general practice, but I

22   want to know, sitting here today, do you remember any

23   discussion with any members of Congress or anybody else --

24           **MS. VAUGHN:**  Objection.  Relevance.

25           Can we have a sidebar, Your Honor?

1          **THE COURT:**  You may.  We will go on the husher for

2     sidebar.

3          (Sidebar discussion.)

4          **MS. VAUGHN:**  Your Honor, the government objects to

5     relevance of questions about internal deliberations about

6     how the date on the subpoena was reached.  It's not relevant

7     to any element of the offense.  The elements of the offense

8     are, was he subpoenaed and did he defy the subpoena.  The

9     date is the date on the subpoena.

10          If the defense wants to argue that he believed

11     those dates had been continued based on communications that

12     were made, that would be one thing.  But the Committee's

13     decision to first ask for that date is irrelevant.

14          **MR. CORCORAN:**  Your Honor, this is

15     cross-examination.  We've -- the witness has said that

16     ultimately the decision on the document -- and that is on

17     this document, production part of it, of October 7, 2021, is

18     made by the Chairman of the Committee.

19          We have asked and we've subpoenaed -- we have

20     under subpoena the Chairman of the Committee, Mr. Thompson.

21     Now the witness is stating that she does not recall who was

22     involved or who made the decision to put October 7, 2021 on

23     the subpoena.

24          The jury is going to be asked to find whether or

25     not Mr. Bannon committed a crime by not appearing on --

1        **THE COURT:**  But is there a disputed fact?

2    Mr. Corcoran, is there a dispute about whether October 7 was

3    in the subpoena and was the relevant deadline?

4        **MR. CORCORAN:**  We're disputing every fact,

5    Your Honor.  And what we're specifically disputing with

6    regard to October 7, 2021, is whether Chairman Thompson

7    actually wrote that date, picked that date, authorized the

8    date.

9        This witness has no memory of that.  We've

10   subpoenaed Chairman Thompson and, of course, we've got to

11   get into this on every level in order to --

12       **THE COURT:**  Did Mr. Bannon present this argument

13   to the Committee about he thought that the subpoena had been

14   issued by -- over the signature of Mr. Thompson but not by

15   him?  Isn't this a waived argument?  Did he present this

16   argument to the Committee?

17       **MR. CORCORAN:**  This is cross-examination.  I

18   don't --

19       **THE COURT:**  Answer my question.  Was this argument

20   presented at any time to the Committee?

21       **MR. CORCORAN:**  This is not an argument that would

22   have been presented to the Committee.  This is a legal

23   argument at trial about evidence and cross-examination.  So

24   the bounds of cross-examination are not something that

25   Mr. Bannon or Mr. Costello, his lawyer, would have ever

1    discussed with the Committee at trial.

2         What we're saying here is we've got a witness --

3         **THE COURT:**  But is the position that the subpoena

4    was invalid because Mr. Thompson did not authorize the date

5    or sign it?

6         **MR. CORCORAN:**  I'm sorry.  I didn't hear you

7    because of a disturbance in the courtroom.

8         **THE COURT:**  Yes.

9         Is the argument going to be that the subpoena here

10   is invalid because Mr. Thompson did not sign it?

11        **MR. CORCORAN:**  I don't know what the argument is

12   going to be, Your Honor, with regard to this.  We are in the

13   government's case and I'm conducting cross-examination, and

14   we have a witness who's not competent or is unable to

15   testify about whether this date, which is October -- which

16   is a key date in the indictment, which the government has

17   said the defendant has committed a crime by not doing

18   certain acts by October 7.

19        And this witness is someone who, number one,

20   cannot make the decision as to whether October 7, 2021, is a

21   fixed date; and, number two, has said on the stand she

22   doesn't remember the discussion or who -- any discussion

23   about what factors went into that; and, number three, the

24   person who does, we've subpoenaed, and the Court has granted

25   a Motion to Quash so that that person cannot appear.

1          **THE COURT:**  Ms. Vaughn?

2          **MS. VAUGHN:**  Your Honor, two points.  First, the

3    date is the date on the subpoena.  How that date was reached

4    by the Committee is irrelevant because the question is

5    whether the defendant complied with the subpoena as written.

6          If the defendant's argument instead is that this

7    subpoena was never properly authorized by the Chair, he

8    received a copy of the subpoena and he did not raise that as

9    an objection to compliance.

10          To the extent that he wants to ask Ms. Amerling if

11    that's the Committee's -- if that's the Chair's signature at

12    the bottom, he can do that, but questions about whether it

13    was validly authorized because that signature is the Chair's

14    is waived.

15          And the fact that the Chair signed the subpoena,

16    it doesn't really matter how that date got on it.  He signed

17    it, and now the subpoena has been issued.

18          **THE COURT:**  Why isn't the question about the date

19    and who thought it was the correct date and, therefore,

20    whether in the future it was a date that could be moved?

21    Why isn't that at least hypothetically relevant here?

22          **MS. VAUGHN:**  That question is about what the

23    defendant thought the dates were.  The question about what

24    the date was on the subpoena that went out, there's no

25    basis -- there is no good faith basis to suggest that this

1    is not the subpoena that went out.  There is evidence in the

2    record that this was sent to the defendant.  He doesn't seem

3    to be claiming that he received a different document.

4            **THE COURT:**  All right.  So this is my decision.

5    Questions about -- questions going to whether the subpoena

6    was valid because it was or was not authorized by

7    Chairman Thompson, signed by him, are irrelevant.  They were

8    waived by Mr. Bannon, never presented to the Committee.  You

9    do not get to get into those questions.

10           The separate question of who picked the date, I'm

11    going to allow you basically one last question about whose

12    decision it was to pick October 7th.  You can ask one

13    question about October 14th, and then that's it.  You can

14    understand whose decision it was to pick the date.  Okay?

15           (Sidebar concluded.)

16           **THE COURT:**  We are back on the fully-public

17    record.

18    **BY MR. CORCORAN:**

19        **Q.**  Okay.  Looking again at Government's Exhibit

20    No. 2, the date of October 14, '21.  I understand that you

21    testified that that's the date that you believe Steve Bannon

22    should have appeared to testify; is that accurate?

23        **A.**  That's correct.

24        **Q.**  And who -- do you have direct knowledge, sitting

25    here today, who selected October 14th, 2021 as the date for

1  Mr. Bannon to testify?

2       **A.**    I can tell you to the best of my recollection.

3       **Q.**    Direct knowledge only.  Do you have direct

4  knowledge --

5             **THE COURT:**  She was starting to say, To the best

6  of my recollection.  I would like you to not interrupt the

7  witness.

8             **MR. CORCORAN:**  Very well, Your Honor.

9             **THE WITNESS:**  To the best of my recollection,

10 because of the multiple roles that we understood Mr. Bannon

11 potentially had with respect to the events of January 6th,

12 at the time that we put the subpoena together, there was a

13 general interest in obtaining information from him

14 expeditiously because we believed that this information

15 could potentially lead us to other relevant witnesses or

16 other relevant documents or, perhaps, inform the Committee

17 about avenues that it shouldn't go down.

18            So to the best of my recollection, there was a

19 general interest in including deadlines that required

20 expeditious response.

21 **BY MR. CORCORAN:**

22      **Q.**    What human -- what human set that deadline?

23      **A.**    Again, sir, I would -- I can speak to the general

24 process.  I cannot recall the specific discussions.  But it

25 generally would have involved senior staff, including

**-4095-**

1    myself, discussing the different considerations and making

2    recommendation to the members of the Committee about the

3    appropriate dates.

4       **Q.**   Now, was there any outside deadline that the

5    Committee faced that bore upon the October 7, 2021 date in

6    the subpoena?

7       **A.**   I'm not sure what you are referring to by "outside

8    deadline".

9       **Q.**   I'm just asking, was there any kind of a deadline

10   that was happening in the world that required the Select

11   Committee to pick October 7th, 2021?

12      **A.**   The Committee's authorization is just through the

13   end of this year.  So the Committee is operating under a

14   very tight timeframe; so that's the overarching deadline

15   that's governing here.

16      **Q.**   Okay.  And was there anything other than the

17   overarching deadline that ends at the end of this year,

18   2022, that caused the Select Committee Chairman or other

19   person to pick October 14, 2021?  Was there a specific

20   outside deadline that forced the selection of that date?

21      **A.**   As with the other subpoenas that are issued by the

22   Committee, the interest of the Committee is in obtaining

23   information as expeditiously as possible; that is the

24   governing principle.

25      **Q.**   Ms. Amerling, the signature at the bottom that

1    says "Chairman or authorized member", did you see

2    Chairman Thompson sign Government's Exhibit No. 2?

3        **A.**    I believe that I did but I can't say for certain.

4    I've seen him sign some but not all.

5        **Q.**    On Government's Exhibit 2, the second page is the

6    proof of service.  I think you testified that you filled out

7    this proof of service, Ms. Amerling; is that correct?

8        **A.**    That's correct.

9        **Q.**    And that's your signature on the line that says

10    "signature of server"?

11        **A.**    That's right.

12        **Q.**    And where it says "Served by - print name", you

13    printed out your name.  Correct?

14        **A.**    That's right, yes.

15        **Q.**    On "Title", you provided that information on that

16    line; is that correct?

17        **A.**    That's correct.

18        **Q.**    And on "Manner of service", you wrote "emailed to

19    attorney for Mr. Bannon, Robert Costello" and then an email

20    address; is that correct?

21        **A.**    That's correct.

22        **Q.**    And did you write in the date "9/23/2021"?

23        **A.**    I did.

24        **Q.**    Now, you understand that sometimes the U.S.

25    Marshals serve the subpoenas.  Correct?

704

1    **A.**   That's correct.

2    **Q.**   And the proof of service is the page that is

3    intended to prove when service of the subpoena is

4    accomplished.   Correct?

5    **A.**   That's correct.

6    **Q.**   Okay.  You filled out this proof of service before

7    service was accepted.   Correct?

8    **A.**   That's correct.

9    **Q.**   Now, when you were interviewed by the FBI in this

10   case on November 2nd, 2021, do you recall who was present?

11   **A.**   Several FBI agents and several prosecutors.

12   **Q.**   Okay.  And were the prosecutors seated at the

13   table here present?

14   **A.**   They were.

15   **Q.**   Okay.  And were you advised that you had to tell

16   the truth to the FBI agents?

17   **A.**   Yes.

18   **Q.**   Okay.  Did you tell the FBI agents at that time

19   that you filled out the proof of service on this subpoena

20   before service was actually accomplished?

21   **A.**   I don't recall, sir.

22   **Q.**   Okay.

23   **MR. CORCORAN:**   If we could show the witness an

24   exhibit for identification purposes, Your Honor, and that is

25   Defense Exhibit No. 2, which is not in evidence.

1    BY MR. CORCORAN:

2        **Q.**    All right, ma'am.  Take your time and read through

3    that.  My question is, Does that refresh your recollection

4    as to whether you told the FBI, when they interviewed you,

5    that you had filled out the proof of service before it was

6    actually served?

7            **MS. VAUGHN:**  Your Honor, maybe counsel can

8    correct --

9            **THE COURT:**  I think they are trying to direct her

10    to a particular page.  I agree.  I think, especially because

11    she's only seeing it on the computer screen, she needs to be

12    directed to a particular page and a particular paragraph.

13    You don't want to do that?

14            **MR. CORCORAN:**  Well --

15            **THE COURT:**  You're asking her whether an

16    eight-page document refreshes her recollection but you're

17    only showing her the first page.

18            **MR. CORCORAN:**  I'm showing her the whole document.

19            **THE COURT:**  Not from what I can see.

20            **THE WITNESS:**  I'm looking at Page 2 of 8 right

21    now.  Is that the page you're directing me to?

22            **MR. CORCORAN:**  You'll see why I can't say -- at

23    this moment direct her to it.

24            **THE COURT:**  Okay.

25            **MR. CORCORAN:**  The question is, Did she tell the

1    FBI.

2          **THE COURT:** Okay. Ask that question.

3    **BY MR. CORCORAN:**

4      **Q.** Did you tell the FBI that you filled out the proof

5    of service suggesting that it had been served before it had

6    actually been served?

7      **A.** I don't recall at this point what I told the FBI,

8    but if there's a record of it, I'm happy to look at it.

9      **Q.** Perfect. If you would take the time, review it

10   and see if that refreshes your recollection as to whether

11   you mention it at all to the FBI.

12     **A.** But you're showing me an eight-page document. Is

13   there a particular portion you're directing me to?

14         **THE COURT:** She can review the eight-page

15   document.

16         **MR. CORCORAN:** You can review the eight pages.

17         **THE COURT:** No, but you control the pages.

18         **MR. CORCORAN:** Oh.

19   **BY MR. CORCORAN:**

20     **Q.** Tell me when you're ready to move on.

21     **A.** You can go to the next page.

22     **Q.** Is that Page 3?

23     **A.** Page 3, yeah.

24         **MR. CORCORAN:** Your Honor, I am happy to give her

25   a hard copy if that expedites the process.

1        **THE COURT:**  That would be fine.  You may approach

2    the witness and hand that to her.  I think that probably

3    will speed things up.

4        **MR. CORCORAN:**  (Handed the exhibit to the

5    witness.)

6        **THE WITNESS:**  Correct me if I am mistaken, because

7    I am trying to read this quickly, but I don't think we

8    discussed proof of service in this interview; is that right?

9        **MR. CORCORAN:**  Well, that's my question.  Does

10   that refresh your recollection as to --did you tell

11   the --the question is, did you --

12       **MS. VAUGHN:**  Your Honor, the witness just

13   testified they didn't discuss --

14       **THE COURT:**  Ms. Vaughn, let me hear the question

15   first.

16   BY MR. CORCORAN:

17       **Q.**   The question pending is, Did you tell the FBI that

18   you had filled out the proof of service before the subpoena

19   was actually served?

20       **A.**   I don't remember talking about the proof of

21   service issue, sir.  I don't see it referred to here so --

22   but if there was a discussion, I'm happy to look at it, but

23   I don't recall discussing that issue.

24       **Q.**   Let me move to another issue, and that is the

25   actual service of the subpoena.  You described how you

708

1    communicated with Bob Costello, who at the time was an

2    attorney for Mr. Bannon, regarding acceptance of service of

3    the subpoena; is that correct?

4        **A.**    That's correct.

5        **Q.**    And Mr. Costello got back to you the next day and

6    informed you that, in fact, Steve Bannon was voluntarily

7    accepting service of the subpoena.  Correct?

8        **A.**    That's correct.

9        **Q.**    Now, among -- you described, with regard to

10   putting together Exhibit 2, the subpoena and its

11   attachments, various portions of that, and I want to go

12   through that testimony so I understand it.

13           One thing I want to understand is, the letter --

14   the letter from Chairman Thompson that accompanies the

15   subpoena indicates that the deposition rules were provided

16   to Mr. Bannon.  Were all of the deposition rules provided to

17   Mr. Bannon at that time?

18       **A.**    Deposition regulations were provided to Mr. Bannon

19   at that time.

20       **Q.**    Okay.  And are you familiar -- let's look at the

21   very last page of Exhibit No. 2, which is in evidence, Page

22   41.

23           **THE COURT:**  This is Government's Exhibit 2.  And

24   when it's pulled up, it can be published to the jury.

25

1    **BY MR. CORCORAN:**

2        **Q.**    And now I will focus your attention just on one

3    paragraph.  So this is a page from the Congressional Record.

4    Correct?

5        **A.**    That's correct.

6        **Q.**    And when I say "this" it's Exhibit 2 at US000417.

7    And are these the regulations for the use of deposition

8    authority that govern the 117th Congress?

9        **A.**    That's correct.

10        **Q.**    And this is the 117th Congress.  Correct?

11        **A.**    That's correct.

12        **Q.**    So these rules apply to the Select Committee

13    depositions.  Correct?

14        **A.**    That's correct.

15        **Q.**    Okay.  Paragraph 11, would you read that to the

16    jury?

17        **A.**    It says, "The witness shall not be required to

18    testify unless the witness has been provided with a copy of

19    Section 3(b) of House Resolution 3, 117th Congress and these

20    regulations."

21        **Q.**    Okay.  Now you never provided Section 3(b) --

22        **MS. VAUGHN:**    Objection.  The Court's already ruled

23    on the relevance of this.

24        **THE COURT:**    Let's go to a sidebar.

25        (Discussion at sidebar.)

**-4103-**

1          **THE COURT:**  Ms. Vaughn?

2          **MS. VAUGHN:**  Your Honor, it seems like he's now

3    trying to elicit that they violated the rules somehow.  And

4    the Court's already ruled that they waived their

5    objection -- they waived this rule issue because it was

6    known at the time, and he didn't raise it as an objection to

7    compliance.

8          **THE COURT:**  Right.

9          So, Mr. Corcoran?

10         **MR. CORCORAN:**  Yeah.  So this is not a question of

11   relevance.  We are on cross-examination.  I am probing the

12   testimony of this witness.

13         On direct she was allowed, without much in the way

14   of objection, to speak to a variety of paragraphs in this

15   10-page Government's Exhibit No. 2.  She was also -- also

16   spoke to and just testified again about the fact that the

17   rules and regulations were provided to the witness.

18         I'm allowed to cross-examine her to elicit that,

19   in fact, she did not provide the critical rule to the

20   witness.  This is not an attempt by us to prove or disprove

21   anything.  We're in the government's case, and I'm

22   conducting cross-examination.

23         What this witness provided as part of this package

24   and didn't provide is essential, given that it was gone into

25   and the door was opened, wide opened, on direct examination.

1    Again --

2            **THE COURT:**  I've already ruled that the question

3    of whether this rule was complied with is excluded from this

4    trial.  Do you have an argument that -- or do you intend to

5    proffer that Mr. Bannon thought that the dates were

6    malleable, as we continue to speak about it, because this

7    rule had not been complied with?

8            **MR. CORCORAN:**  No, I don't.

9            **THE COURT:**  Then the Government's motion to -- the

10    government's objection is sustained.

11        (Sidebar concluded.)

12            **THE COURT:**  We are back from sealed or husher

13    public record.

14            **MR. CORCORAN:**  All right.  If we could go to the

15    third page of Government's Exhibit No. 2, which is in

16    evidence.

17    **BY MR. CORCORAN:**

18        **Q.**    Now, Ms. Amerling, did you draft this letter?

19        **A.**    I was one of several staff that drafted the letter

20    and reviewed it.

21        **Q.**    What portions of the letter are your words?

22        **A.**    At this date I don't recall specifically, sir.

23        **Q.**    Did Chairman Thompson draft any of the words in

24    this letter?

25        **A.**    Generally, the process is that staff drafts

1      letters and provides them for the review of the members, the

2      Committee and the Chair.

3          **Q.**   I understand generally --

4          **A.**   I would assume that would have been the process

5      here but I can't remember specifically.

6          **Q.**   I understand generally, but my questions are very

7      specific.  Do you recall -- well, did Chairman Thompson

8      draft any language in this letter?

9          **A.**   Again, I cannot remember the specifics for this

10     letter.  But the general process is that staff drafts the

11     letter and the members review and sign.

12         **Q.**   Were you present when this letter was signed?

13         **A.**   I don't recall.

14         **Q.**   Now, you indicated on direct examination that the

15     third paragraph of this letter refers generally to reasons

16     why the Committee might want to speak to Steve Bannon; is

17     that correct?

18         **A.**   That's correct.

19         **Q.**   Okay.  And I just wanted to zero in and ask you,

20     in that third paragraph, it appears that two of the

21     reasons -- you used the words, on direct examination, that

22     there were "public reports of certain things".  Do you

23     remember using those words?

24         **A.**   That's right.

25         **Q.**   Okay.  And were the public reports about a Willard

1   Hotel meeting that is referenced in this letter?  Does that

2   come from a book that's entitled "Peril"?

3       **A.**   That was one of the sources, and that was the

4   source cited in this letter.

5       **Q.**   Okay.  And the second issue, which is -- or the

6   second area of why the Select Committee might want to speak

7   to Mr. Bannon appears to be some communications with

8   then-President Donald J. Trump.

9           Is the source of that interest by Select Committee

10  or staff also the book entitled "Peril"?

11      **A.**   That was cited as one of the sources, yes.

12      **Q.**   Have you read "Peril"?

13      **A.**   I have, yes, sir.

14      **Q.**   Okay.  The third issue, it appears, is that

15  Mr. Bannon, on his show on January 5th, 2021, purportedly

16  spoke about the potential for violence on January 6th, 2021.

17  And my question is this:  Is the source that is cited in

18  this letter, for the reason that you want to talk to

19  Mr. Bannon, a CNN article?

20      **A.**   Yes, that's what it looks like, yes.

21      **Q.**   Okay.  And you're aware that prior to January 6th,

22  and prior to -- on January 5th and earlier, there was

23  widespread reporting in the general media that there might

24  be violence on January 6, 2021.  Are you aware of that?

25      **A.**   I am aware of that, yes.

1      Q.   Now turning to what I think is the fourth page of

2  Government's Exhibit No. 2, the schedule, and on -- this is

3  basically the schedule of topics, 17 different topics, where

4  the Committee was asking if he had -- if Mr. Bannon had any

5  documents that pertain to these 17 different categories; is

6  that accurate?

7      A.   That's correct.

8      Q.   Okay.  And is this schedule something that you

9  yourself drafted?

10     A.   Again, it would have been the process that I

11  described:  A number of staff contribute to the drafting

12  process, including myself.  So I was and would have been

13  involved in this.

14     Q.   And is this schedule that we're looking at, Page 4

15  of Government's Exhibit No. 2, a schedule that, for the most

16  part, was sent to a number of different subpoena recipients?

17     A.   I can speak generally.  The process of drafting

18  subpoenas involves looking at what information might be

19  particularly pertinent to the individual receiving the

20  subpoena.  So the subpoenas will look different from each

21  other.

22     Q.   And I -- really what I'm asking is, you know,

23  there are 17 categories here on this schedule.  And was

24  there overlap in those 17 categories between what was sent

25  to Steve Bannon and what was sent to several other subpoena

1    recipients?

2        **A.**    Sir, we don't generally publish the subpoena

3    schedules, in part because we don't want to give a roadmap

4    of what the investigation is doing.  So I don't know that I

5    want to get specific about what we put in other people's

6    subpoenas.

7        **Q.**    We're not asking for a roadmap on anything.  I'm

8    asking you whether -- essentially, is there boilerplate on

9    this schedule that was sent not only to Steve Bannon but to

10   other subpoena recipients?

11       **A.**    I would be happy to go back and look if there were

12   specific paragraphs or specific language that you're

13   concerned about to address that question.  I can't, sitting

14   here, know what language might be repeated in other

15   subpoenas and what might be specific to him.

16       **Q.**    And I'm not asking for specifics on this topic.  I

17   want to know if there's overlap between this and other

18   subpoenas.  In other words --

19           **MS. VAUGHN:**  Objection.  Asked and answered.

20           **THE COURT:**  I understand the objection.  I'll

21   allow one last question on this topic.

22   **BY MR. CORCORAN:**

23       **Q.**    In other words, did you create, did you draft this

24   schedule of 17 areas that you might want to talk to Steve

25   Bannon about from scratch for the subpoena or was it used

**-4109-**

1      as -- well, in part, in other subpoenas that were given to

2      other subpoena recipients?

3          **A.**    I believe I've answered the question, sir.  But

4      just to elaborate, when we draft subpoenas, it's a process

5      that doesn't just involve me.  This subpoena didn't just

6      involve me but I was involved.

7              And generally what we do is we try to include the

8      items that would be most related to information that the

9      specific recipient might have.  So they're going to vary

10     from individual to individual.  They are not going to be

11     identical carbon copies of each other.

12         **Q.**    And with regard to the documents that you

13     requested of Steve Bannon in these various categories, you

14     don't have any firsthand knowledge as to whether Steve

15     Bannon has any documents at all that are responsive to these

16     17 areas.  Correct?

17         **A.**    Part of what happens in the subpoena process, sir,

18     is that the recipient has the opportunity to respond and

19     say, I do have documents responsive to these particular

20     items, and I don't have documents responsive to these other

21     items; and that process helps inform our investigation.

22         **Q.**    I understand the process but I'm asking you, just

23     to be clear, do you have firsthand knowledge whether Steve

24     Bannon has any documents that are responsive to the

25     subpoena?

1    **A.**   I have no basis for knowing that one way or the

2    other.

3    **Q.**   Okay.  All right.  Now, you testified about your

4    interactions with --

5    **MR. CORCORAN:**  And, Your Honor, whenever there's a

6    need for a break, let me know or I'll just keep going.  This

7    is a convenient time in terms of cross for a break.  I'm

8    moving to a new topic.

9    **THE COURT:**  How long will this next topic take?

10   I'm not going to hold you, obviously, to a specific time.

11   **MR. CORCORAN:**  Well, it's kind of a group,

12   actually.

13   **THE COURT:**  Why don't we take a recess then.

14   We'll recess until -- this will be our lunch recess,

15   everyone -- until 1:15, when we will be back on the record.

16   Okay?

17         Thank you, ma'am.  You are excused for the lunch.

18   **THE WITNESS:**  Thank you.

19   **DEPUTY CLERK:**  All rise.

20         (Lunch recess taken at 12:21 p.m.)

21         (Jury exited the courtroom.)

22   **MR. CORCORAN:**  One quick legal issue once --

23   **THE COURT:**  We'll have Ms. Lesley come back.  I

24   believe we should excuse the witness for this.

25   **MR. CORCORAN:**  I think so, Your Honor.

1          **THE COURT:**  Ms. Amerling may depart the courtroom.

2          Mr. Schoen.

3          **MR. SCHOEN:**  Yes, Your Honor.  It's really just a

4    request, very brief one, but I think we learned the lesson

5    yesterday about the importance of reading the Court's

6    carefully thought-out July 11th order.

7          So today the question came up about Mr. Corcoran

8    apparently was going to pursue a line of questioning on this

9    Rule 3b, as I understood the intention of the examination.

10         I just ask the Court over lunch if it might take a

11   look at Pages 131 to the top of 132 on that issue

12   specifically.  That could be over lunch, unless the Court

13   has it here.

14         **THE COURT:**  I don't, but I will do so.  And I

15   suspect I understand what you're talking about.  So I will

16   do so.

17         Thank you.

18         **MR. SCHOEN:**  Thank you, Your Honor.

19         **THE COURT:**  We are now in recess.

20         (Lunch recess was taken at 12:23 p.m.)

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9    ___July 20, 2022___              ___/s/_____
                **DATE**                         **Lorraine T. Herman**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**BY MR. CORCORAN:**
**[15]** 684/1 685/25
689/20 690/21 694/19
695/20 700/18 701/21
705/1 706/3 706/19
707/16 708/25 711/17
715/22
**BY MS. VAUGHN: [53]**
620/18 621/2 621/18
622/23 624/19 626/1
627/24 628/11 630/6
632/20 633/21 635/25
640/19 641/11 643/10
645/12 646/17 647/18
648/25 651/3 651/24
652/4 652/21 653/4
654/23 655/8 657/14
658/9 659/14 660/9
661/2 661/17 662/11
663/18 664/14 666/16
667/7 668/14 669/12
670/8 670/23 672/5
673/2 674/9 676/4
676/21 676/25 677/10
679/8 679/25 681/1
681/21 682/19
**BY MS.VAUGHN: [2]**
642/18 665/15
**DEPUTY CLERK: [6]**
602/2 619/6 619/15
664/10 690/16 717/19
**MR. CORCORAN: [48]**
602/12 607/19 607/22
609/4 610/8 610/17
611/2 611/22 625/12
639/16 643/3 647/12
651/20 654/20 657/22
665/25 666/4 666/8
669/19 676/17 680/9
683/24 690/12 690/20
696/14 697/4 697/17
697/21 698/6 698/11
701/8 704/23 705/14
705/18 705/22 705/25
706/16 706/18 706/24
707/4 707/9 710/10
711/8 711/14 717/5
717/11 717/22 717/25
**MR. SCHOEN: [8]**
616/1 616/24 617/13
618/17 618/21 619/3
718/3 718/18
**MS. VAUGHN: [88]**

602/7 602/18 604/14
605/4 605/19 611/25
612/11 612/21 613/11
613/21 614/24 615/24
617/16 618/13 620/16
620/25 621/16 622/21
624/17 625/25 627/22
628/9 630/4 632/18
633/19 635/23 641/9
642/15 643/1 643/7
645/10 647/5 647/10
647/15 648/23 651/1
651/18 652/2 652/19
653/1 655/5 657/12
657/20 658/8 659/12
660/6 660/24 661/14
662/9 663/17 663/25
664/13 665/13 665/23
666/15 667/4 668/13
669/10 669/17 670/7
670/21 672/3 672/23
674/6 676/1 676/15
676/23 677/8 679/6
679/22 680/7 680/23
681/19 682/17 683/21
685/20 689/17 694/13
695/12 695/24 696/4
699/2 699/22 705/7
707/12 709/22 710/2
715/19
**THE COURT: [92]**
602/11 602/15 604/8
604/17 605/18 607/12
607/20 608/16 610/2
610/15 610/19 611/21
611/23 612/8 612/12
612/25 613/13 614/15
615/8 615/25 616/23
617/12 617/14 617/24
618/20 618/24 619/4
619/8 619/12 619/17
625/14 639/17 643/4
646/15 647/8 647/13
647/17 651/21 654/19
654/22 657/25 663/23
664/1 664/8 664/12
666/2 666/5 666/11
669/20 676/18 680/11
683/22 685/21 689/18
690/15 690/18 694/15
695/13 696/1 697/1
697/12 697/19 698/3
698/8 699/1 699/18
700/4 700/16 701/5

705/9 705/15 705/19
705/24 706/2 706/14
706/17 707/1 707/14
708/23 709/24 710/1
710/8 711/2 711/9
711/12 715/20 717/9
717/13 717/23 718/1
718/14 718/19
**THE WITNESS: [9]**
619/11 639/19 685/22
689/19 695/14 701/9
705/20 707/6 717/18

**'**

**'21 [1]** 700/20
**'Subpoena' [1]** 671/18

**/**

**/s [1]** 719/9

**0**

**0670 [1]** 602/3

**1**

**1,000 [2]** 685/23 686/4
**10-page [3]** 622/11
688/7 710/15
**100-6 [1]** 600/15
**103 [1]** 605/13
**10:00 [6]** 621/10
621/15 648/1 648/6
650/11 650/15
**10:38 [1]** 664/6
**10:39 [1]** 664/7
**10:55 [2]** 664/4 664/6
**11 [3]** 633/20 633/22
709/15
**117th [3]** 709/8 709/10
709/19
**11:00 [1]** 664/7
**11th [1]** 718/6
**12 [2]** 633/20 635/4
**12:21 [1]** 717/20
**12:23 [1]** 718/20
**13 [3]** 649/8 649/9
665/24
**131 [1]** 718/11
**132 [1]** 718/11
**13th [4]** 665/11 665/17
665/21 666/18
**14 [4]** 620/1 671/3
700/20 702/19
**14th [12]** 621/14 623/8
661/11 662/1 665/2
665/6 668/9 668/15

670/19 673/15 700/13
700/25
**15 [4]** 635/24 636/2
664/1 664/2
**15th [5]** 668/19 669/15
670/16 675/13 675/19
**16 [2]** 637/5 637/6
**17 [9]** 635/24 638/6
664/6 714/3 714/5
714/23 714/24 715/24
716/16
**1793 [1]** 600/13
**18th [9]** 674/16 676/6
677/5 677/21 678/7
678/10 678/13 678/17
681/15
**19 [2]** 649/22 649/23
**192 [2]** 662/25 673/20
**194 [2]** 662/25 673/20
**19th [6]** 668/25 673/18
675/6 680/5 681/3
683/15
**1:15 [1]** 717/15
**1:21-670 [1]** 600/3

**2**

**20 [2]** 600/5 719/9
**20001 [2]** 600/12
600/23
**201 [1]** 600/18
**202-252-1793 [1]**
600/13
**2020 [6]** 627/2 628/24
630/12 633/25 671/6
671/8
**2021 [46]** 621/10
621/15 624/1 624/24
630/9 630/16 631/13
631/17 642/25 645/14
652/10 652/12 653/17
654/6 658/12 662/1
665/17 671/2 671/3
671/5 672/16 673/16
673/18 674/16 677/5
680/6 688/19 690/7
693/1 693/11 693/21
694/23 695/6 696/17
696/22 697/6 698/20
700/25 702/5 702/11
702/19 702/22 704/10
713/15 713/16 713/24
**2021-0670 [1]** 602/3
**2022 [3]** 600/5 702/18
719/9

**2**

**21201 [1]** 600/19
**2225 [1]** 600/19
**23 [1]** 652/10
**23rd [8]** 642/10 642/24
 643/9 643/16 647/20
 688/19 689/16 690/7
**24th [5]** 642/25 645/14
 645/20 647/22 648/5
**25th [1]** 600/18
**2800 [1]** 600/15
**2nd [1]** 704/10

**3**

**30 [1]** 627/1
**333 [1]** 600/22
**334-395-6611 [1]**
 600/16
**36106 [1]** 600/16
**3b [1]** 718/9

**4**

**41 [1]** 708/22
**410-385-2225 [1]**
 600/19
**4th [1]** 600/12

**5**

**50 [1]** 604/1
**503 [2]** 623/1 623/2
**555 [1]** 600/12
**5:05 [1]** 652/12
**5th [5]** 626/6 626/10
 627/5 713/15 713/22

**6**

**6611 [1]** 600/16
**670 [1]** 600/3
**6:00 [1]** 674/15
**6:02 [1]** 677/5
**6:38 [1]** 643/17
**6th [32]** 621/8 621/13
 623/19 624/3 624/23
 626/9 626/15 627/3
 629/21 630/9 630/15
 630/25 632/1 632/15
 633/4 633/9 633/16
 634/7 634/24 635/7
 636/19 637/4 637/16
 638/10 639/21 640/7
 644/19 653/17 654/6
 701/11 713/16 713/21

**7**

**7th [16]** 621/10 623/7
 627/20 648/1 648/7
 650/12 650/15 651/8
 652/12 659/17 666/20
 670/18 673/5 693/11
 700/12 702/11

**8**

**8th [6]** 657/16 658/12
 664/17 665/6 666/19
 672/1

**9**

**9/23/2021 [1]** 703/22
**9:02 [1]** 600/6
**9:26 [1]** 619/14

**A**

**a.m [8]** 600/6 619/14
 621/10 621/15 648/1
 662/1 664/7 664/7
**ability [2]** 609/24
 682/2
**able [4]** 608/3 616/19
 635/20 655/5
**about [122]**
**above [10]** 616/10
 616/11 616/18 617/2
 617/20 617/22 618/4
 653/7 655/14 719/5
**above-entitled [1]**
 719/5
**above-referenced [1]**
 653/7
**accept [6]** 644/9
 644/14 644/22 645/22
 645/24 655/14
**acceptance [1]** 708/2
**accepted [3]** 646/3
 653/7 704/7
**accepting [2]** 656/22
 708/7
**accident [1]** 616/8
**accompanies [2]**
 623/12 708/14
**accompanying [2]**
 623/7 644/24
**accomplished [2]**
 704/4 704/20
**accordance [1]** 628/14
**according [3]** 616/13
 637/20 664/5
**Accordingly [4]** 627/7

661/7 673/4 682/4
**account [3]** 629/4
 629/9 638/19
**accounts [6]** 628/20
 628/21 629/2 629/10
 634/9 637/20
**accurate [3]** 689/24
 700/22 714/6
**acknowledged [1]**
 615/15
**acontextual [1]** 607/15
**across [1]** 614/11
**Act [1]** 640/15
**acting [1]** 618/4
**action [4]** 600/3
 610/13 613/4 663/2
**actions [5]** 609/14
 609/17 609/21 609/22
 684/13
**activities [5]** 623/25
 624/22 626/9 629/19
 635/12
**acts [2]** 615/2 698/18
**actual [5]** 621/4
 630/17 631/16 688/18
 707/25
**actually [12]** 606/17
 628/4 646/7 651/25
 658/16 679/9 697/7
 704/20 705/6 706/6
 707/19 717/12
**add [3]** 647/10 663/16
 668/12
**added [3]** 639/9
 663/17 668/13
**additional [9]** 651/9
 651/12 669/3 674/13
 674/20 675/20 677/22
 679/11 691/10
**address [4]** 642/9
 692/5 703/20 715/13
**addressed [1]** 674/14
**adjournment [2]**
 677/18 682/4
**adjudicating [1]** 608/5
**Adjusted [1]** 647/15
**administration [1]**
 637/14
**admit [7]** 643/2 651/19
 657/21 665/24 669/18
 676/16 680/8
**admitted [31]** 601/9
 601/9 601/10 601/10
 601/11 612/1 625/16

625/22 643/4 643/6
 651/21 651/23 658/1
 658/2 658/5 666/5
 666/7 666/13 669/21
 669/23 670/1 670/4
 670/6 676/18 676/20
 680/12 680/14 680/17
 680/18 680/18 680/21
**admitting [1]** 625/19
**advanced [1]** 633/8
**advertising [1]** 635/5
**advice [3]** 616/22
 617/7 694/25
**advise [1]** 645/23
**advised [5]** 662/14
 677/14 688/2 688/12
 704/15
**advisement [2]** 614/17
 615/21
**advising [1]** 657/3
**advisor [2]** 631/14
 634/10
**affidavit [1]** 616/14
**after [11]** 622/24
 650/20 652/15 654/24
 656/5 664/19 664/22
 675/17 681/7 682/21
 683/16
**afternoon [1]** 653/17
**again [21]** 607/8
 615/13 617/16 619/18
 625/13 636/15 648/24
 661/24 665/20 670/4
 670/16 673/22 674/22
 682/6 690/9 700/19
 701/23 710/16 711/1
 712/9 714/10
**against [6]** 605/24
 606/14 609/11 634/17
 640/12 663/3
**agencies [3]** 634/16
 640/10 640/12
**agent [7]** 602/10
 605/23 610/25 611/8
 613/17 614/18 614/23
**agent's [1]** 615/11
**agents [3]** 704/11
 704/16 704/18
**ago [2]** 604/1 673/23
**agree [5]** 604/9 604/21
 607/17 678/21 705/10
**agreement [1]** 667/12
**aid [1]** 631/14
**al [2]** 600/16 677/17

**A**

**Alex [3]** 636/5 636/11 637/3

**all [81]** 611/6 611/19 612/7 617/10 617/11 617/25 618/6 621/3 622/24 626/10 627/5 627/17 628/4 628/7 628/16 630/3 633/6 633/22 635/5 635/22 638/11 638/25 640/20 641/12 642/19 643/7 645/5 645/8 647/2 647/7 647/19 648/8 649/8 649/20 650/2 650/4 651/25 652/19 652/22 652/25 653/5 654/12 654/24 655/4 655/9 656/20 657/10 658/16 659/15 660/6 660/10 660/23 661/8 662/12 663/15 663/19 666/3 666/23 667/4 668/15 669/1 669/10 670/21 674/6 676/22 677/6 680/2 681/18 681/19 681/22 682/15 686/19 700/4 703/4 705/2 706/11 708/16 711/14 716/15 717/3 717/19

**all's [1]** 690/16

**allegation [3]** 684/4 684/7 684/9

**alleges [1]** 618/3

**allow [6]** 604/23 685/21 691/15 694/15 700/11 715/21

**allowed [10]** 603/9 606/2 606/10 607/9 610/6 610/10 611/11 691/4 710/13 710/18

**allows [1]** 691/5

**along [4]** 617/5 644/23 649/5 649/14

**already [8]** 607/14 618/25 621/1 667/20 682/12 709/22 710/4 711/2

**also [18]** 610/23 614/25 626/25 631/4 640/22 641/24 659/6 659/8 660/20 661/10 665/21 666/20 676/8

679/16 694/5 710/15 710/15 713/10

**always [2]** 614/12 687/14

**am [11]** 614/16 618/8 625/19 643/19 644/22 694/15 706/24 707/6 707/7 710/11 713/25

**AMANDA [2]** 600/10 602/8

**amended [1]** 639/9

**Amendment [1]** 609/9

**AMERICA [2]** 600/2 602/3

**American [1]** 624/15

**Americans [1]** 635/6

**Amerling [64]** 603/20 604/12 605/3 614/22 617/5 620/17 620/19 621/3 621/19 624/2 626/2 627/25 628/12 630/7 630/17 632/21 633/22 636/2 637/5 638/6 641/12 641/21 642/19 643/12 647/3 647/19 649/2 651/4 651/25 652/8 655/9 657/15 658/10 659/15 660/10 661/3 661/18 662/13 663/19 664/15 665/16 667/8 669/13 670/9 670/24 672/6 673/3 673/21 674/10 676/5 676/22 677/11 679/9 680/2 681/2 681/22 682/20 683/25 684/2 699/10 702/25 703/7 711/18 718/1

**Amerling's [2]** 604/2 615/10

**among [7]** 631/21 636/9 640/12 654/9 694/25 695/16 708/9

**announced [1]** 655/13

**another [9]** 603/23 621/19 649/22 665/7 668/21 671/9 672/23 675/15 707/24

**answer [7]** 607/23 610/11 621/12 639/18 689/24 694/18 697/19

**answered [6]** 688/2 693/23 694/13 694/17 715/19 716/3

**any [64]** 610/13 610/17 628/17 630/12 630/14 630/14 631/13 631/14 632/2 633/24 634/19 636/3 636/4 636/21 637/6 637/8 638/6 638/8 638/15 648/2 649/14 656/16 656/16 658/5 659/25 660/16 661/5 664/23 667/24 668/2 668/4 672/9 672/17 672/19 673/12 674/13 674/19 675/4 675/20 677/22 678/11 678/14 678/18 679/11 680/19 682/4 683/17 689/15 690/2 690/3 694/24 695/22 695/23 696/7 697/20 698/22 702/4 702/9 711/23 712/8 714/4 716/14 716/15 716/24

**anybody [2]** 646/25 695/23

**anyone [5]** 609/23 610/7 620/8 633/23 646/24

**anything [12]** 608/4 608/13 637/1 648/7 650/14 670/2 670/3 683/16 683/20 702/16 710/21 715/7

**apologize [2]** 610/22 666/12

**apparent [1]** 659/20

**apparently [13]** 718/8

**appear [13]** 621/12 623/8 623/13 661/25 671/2 671/16 673/15 683/1 693/10 693/21 694/21 694/23 698/25

**appearance [1]** 661/21

**APPEARANCES [1]** 600/9

**appeared [2]** 668/16 700/22

**appearing [3]** 661/11 670/19 696/25

**appears [4]** 659/21 712/20 713/7 713/14

**applicable [1]** 628/24

**application [1]** 667/13

**applications [2]** 628/21 629/3

**apply [1]** 709/12

**approach [1]** 707/1

**appropriate [6]** 605/3 605/11 615/21 695/1 695/18 702/3

**approve [1]** 674/3

**April [1]** 628/24

**are [93]** 603/7 603/10 605/2 605/6 606/2 606/10 608/3 608/24 609/22 609/23 610/5 610/5 612/22 613/6 614/17 617/11 617/22 619/12 619/15 619/23 619/23 620/4 620/9 620/13 621/4 625/21 625/24 626/25 627/4 627/10 627/11 628/15 628/24 629/10 634/8 634/8 636/21 638/22 639/5 640/2 640/5 642/23 644/12 648/20 648/20 650/4 654/17 655/5 655/16 655/16 656/14 663/8 664/10 668/1 668/3 674/12 676/11 680/2 680/4 680/17 681/4 685/7 686/3 690/19 691/1 691/4 691/8 691/9 691/9 692/4 692/7 692/16 696/8 697/24 698/12 700/7 700/16 702/7 702/21 705/9 708/20 709/7 710/11 711/12 711/21 712/6 713/24 714/23 716/10 716/15 716/24 717/17 718/19

**area [3]** 630/20 690/22 713/6

**areas [3]** 640/2 715/24 716/16

**aren't [2]** 664/5 692/7

**argue [2]** 612/22 696/10

**argument [12]** 602/20 617/19 697/12 697/15 697/16 697/19 697/21 697/23 698/9 698/11 699/6 711/4

**arguments [4]** 603/1 604/20 604/21 670/3

**around [2]** 603/2 690/2

**A**

**arrived [1]** 693/4
**artful [1]** 617/25
**article [1]** 713/19
**articulate [1]** 604/5
**articulated [1]** 618/25
**as [99]** 602/20 603/16
603/16 603/17 604/12
604/13 605/3 606/19
608/17 608/22 608/22
612/15 613/6 615/2
615/12 615/15 615/21
615/21 616/12 616/19
616/21 617/11 617/16
618/4 618/5 619/21
619/24 620/2 620/3
622/9 625/15 625/15
626/5 626/25 627/5
628/5 629/6 629/17
630/13 630/14 635/14
638/18 639/4 639/14
640/15 649/14 649/15
649/15 653/18 655/16
658/1 659/5 661/12
662/16 662/19 663/2
663/2 664/2 664/2
665/3 665/25 666/18
667/11 667/12 667/16
670/25 671/1 671/5
671/6 672/8 672/15
673/5 673/8 675/11
679/23 680/13 682/24
685/11 694/11 695/6
695/15 695/18 698/20
699/5 699/8 700/25
702/21 702/23 702/23
705/4 706/10 707/10
710/6 710/23 711/6
713/11 716/1 716/14
718/9
**ask [40]** 603/11 604/5
604/15 604/16 605/15
606/2 606/10 607/2
607/9 608/3 608/20
610/6 610/10 610/17
610/24 611/11 612/1
612/5 612/8 612/9
612/16 613/2 613/3
614/12 614/14 620/11
620/12 625/12 636/7
636/23 646/15 648/10
678/6 679/9 696/13
699/10 700/12 706/2
712/19 718/10

**asked [11]** 603/9
604/19 606/25 607/16
613/23 644/8 687/23
687/25 696/19 696/24
715/19
**asking [14]** 605/22
608/19 619/9 674/19
682/7 690/1 702/9
705/15 714/4 714/22
715/7 715/8 715/16
716/22
**asks [3]** 633/10 633/22
637/6
**aspect [1]** 688/6
**assert [2]** 655/13
660/2
**asserted [2]** 670/2
673/14
**asserting [3]** 655/23
667/21 685/1
**assertion [4]** 661/6
672/17 672/19 680/19
**assertions [1]** 625/21
**assess [1]** 677/19
**assistant [1]** 631/15
**associates [1]** 634/11
**assume [1]** 712/4
**attached [13]** 628/14
644/20 645/2 645/4
645/5 648/20 652/9
652/17 652/18 672/16
690/24 691/10 692/20
**attaching [2]** 644/22
676/13
**attachments [1]**
708/11
**attack [21]** 623/20
624/3 626/11 630/21
631/2 631/5 633/4
633/6 634/18 634/24
635/3 635/11 635/13
635/15 636/9 636/13
637/16 639/21 644/19
671/5 684/5
**attacks [1]** 640/12
**attempt [3]** 604/9
664/2 710/20
**attempting [1]** 604/24
**attend [1]** 635/7
**attended [1]** 631/4
**attending [1]** 631/17
**attention [1]** 709/2
**attorney [17]** 600/15
631/14 637/22 637/22

641/1 641/4 642/8
642/14 642/22 646/9
652/23 654/10 658/14
674/5 680/5 703/19
708/2
**attorney-client [1]**
654/10
**attorneys [2]** 600/11
688/10
**attorneys' [1]** 614/11
**authorities [1]** 622/25
**authority [9]** 612/15
617/22 622/2 645/21
694/2 694/3 694/4
695/4 709/8
**authorization [1]**
702/12
**authorize [2]** 644/13
698/4
**authorized [13]** 623/3
639/11 645/24 646/1
647/21 648/6 687/21
693/15 697/7 699/7
699/13 700/6 703/1
**authorizing [1]** 656/17
**available [2]** 611/20
683/8
**Avenue [1]** 600/22
**avenues [1]** 701/17
**aware [4]** 663/14
713/21 713/24 713/25

**B**

**back [11]** 618/14
619/15 657/11 664/10
694/11 700/16 708/5
711/12 715/11 717/15
717/23
**ballpark [4]** 686/7
686/8 686/14 686/23
**Baltimore [1]** 600/19
**Bankruptcy [1]** 600/22
**BANNON [100]** 600/5
602/4 602/14 604/9
604/20 609/11 614/20
616/6 616/10 616/13
616/21 617/6 622/18
625/18 628/15 629/5
631/24 632/7 632/13
632/25 633/3 636/7
641/17 642/8 643/21
643/24 644/4 644/6
644/13 644/20 645/24
646/11 646/24 652/9

653/6 653/8 653/12
653/13 653/21 656/25
658/4 659/22 659/24
661/6 663/3 667/2
667/15 667/16 669/25
670/1 671/2 671/15
672/12 672/13 673/11
673/14 674/12 674/22
674/24 675/3 677/14
680/5 680/16 681/7
682/1 683/5 683/12
684/5 684/9 688/15
693/10 693/14 693/21
694/20 694/22 696/25
697/12 697/25 700/8
700/21 701/1 701/10
703/19 708/2 708/6
708/16 708/17 708/18
711/5 712/16 713/7
713/15 713/19 714/4
714/25 715/9 715/25
716/13 716/15 716/24
**Bannon's [14]** 641/4
642/22 645/15 646/4
657/8 660/4 661/21
662/15 665/12 672/8
673/4 681/14 682/25
683/2
**Barenblatt [2]** 604/1
612/4
**Barr [1]** 637/23
**barred [3]** 617/4 617/8
617/11
**based [9]** 609/6 634/9
646/5 646/15 646/18
655/21 658/22 678/22
696/11
**basically [3]** 620/5
700/11 714/3
**basis [17]** 604/5
604/15 606/4 607/2
614/12 614/13 655/22
656/21 657/1 660/4
660/13 660/16 683/2
683/6 699/25 699/25
717/1
**be [93]** 603/5 603/8
603/9 603/21 603/23
604/2 604/21 604/25
605/3 605/11 607/9
607/17 608/1 608/8
608/19 608/21 608/23
609/5 609/25 611/20
613/7 613/16 613/17

**B**

**be... [70]** 613/23 615/1
615/5 615/16 615/19
616/2 616/13 616/19
617/5 618/16 627/15
629/11 637/10 638/15
638/15 639/9 639/25
643/5 644/8 647/3
649/11 649/12 649/14
649/15 651/22 654/16
654/25 658/7 659/6
662/14 664/1 666/5
666/13 667/15 667/19
668/24 670/5 671/21
672/20 673/18 676/19
678/1 678/7 680/22
682/7 683/5 690/15
693/5 696/12 696/24
698/9 698/12 699/20
700/3 705/11 707/1
708/24 709/17 713/7
713/24 714/18 715/11
715/14 715/15 716/8
716/10 716/23 717/14
717/15 718/12
**bear [1]** 608/4
**because [33]** 603/4
603/8 603/18 607/15
609/17 610/11 612/12
612/19 614/2 615/1
615/4 617/1 617/8
618/11 618/25 620/13
643/23 648/11 679/1
683/2 698/4 698/7
698/10 699/4 699/13
700/6 701/10 701/14
705/10 707/6 710/5
711/6 715/3
**become [2]** 604/23
615/13
**been [59]** 609/6
613/24 614/2 614/3
616/4 617/1 617/18
617/24 618/7 626/5
626/13 631/3 631/7
631/22 631/24 632/12
632/13 633/5 634/11
634/12 635/16 635/19
636/11 636/13 637/13
637/21 638/12 638/13
640/21 640/21 645/24
646/1 648/5 650/1
650/5 657/23 668/6
671/10 674/14 675/12

677/14 685/18 686/3
686/4 686/10 686/17
688/17 689/24 696/11
697/13 697/22 699/17
706/5 706/6 709/18
711/7 712/4 714/10
714/12
**before [25]** 600/8
603/6 607/8 609/1
626/10 633/6 646/4
654/21 662/4 664/15
666/18 671/3 672/13
675/5 679/9 679/12
680/13 684/8 686/24
688/17 704/6 704/20
705/5 706/5 707/18
**begin [2]** 664/20
664/24
**beginning [4]** 602/6
637/23 681/23 682/23
**begins [2]** 603/6 653/5
**behalf [17]** 602/13
622/6 622/13 644/10
644/14 646/4 652/9
653/6 653/7 653/9
658/23 658/23 658/25
670/13 670/13 670/15
677/14
**behave [1]** 620/2
**being [9]** 605/16
606/25 609/19 609/23
617/19 619/18 625/22
626/6 693/22
**belief [2]** 631/3 635/16
**believe [19]** 606/4
610/5 614/13 618/5
624/21 625/1 627/13
632/10 646/13 650/23
665/22 672/19 685/22
686/7 688/19 700/21
703/3 716/3 717/24
**believed [7]** 616/15
626/3 626/23 646/20
668/23 696/10 701/14
**believes [2]** 671/17
674/12
**belong [2]** 655/12
660/3
**below [1]** 628/23
**Bennie [8]** 607/3
622/15 644/24 657/16
658/21 670/11 677/16
693/17
**best [8]** 613/8 686/23

689/13 695/9 701/2
701/5 701/9 701/18
**between [13]** 624/10
631/9 632/2 636/17
638/22 642/21 648/4
648/6 651/15 665/5
684/17 714/24 715/17
**bias [22]** 603/12
603/15 603/17 604/2
604/7 604/13 604/24
605/18 607/13 607/17
607/18 607/20 608/3
608/15 609/3 610/6
610/7 610/23 611/24
612/19 613/6 615/16
**biased [8]** 604/10
607/21 608/19 608/22
612/10 612/18 613/3
613/4
**biases [1]** 606/23
**bit [1]** 669/1
**block [2]** 626/7 626/17
**board [1]** 614/12
**Bob [1]** 708/1
**body [9]** 604/3 606/20
608/22 615/2 615/2
615/2 652/25 677/8
681/20
**boilerplate [1]** 715/8
**book [2]** 713/2 713/10
**boost [1]** 640/9
**bore [1]** 702/5
**Boris [2]** 634/2 634/10
**both [10]** 603/4 608/17
617/3 627/8 634/13
670/18 671/16 676/3
681/2 693/18
**bottom [9]** 624/18
641/18 643/8 652/2
652/3 652/5 655/1
699/12 702/25
**bounds [3]** 608/6
612/19 697/24
**box [2]** 641/18 690/23
**Boys [3]** 636/4 636/10
637/2
**branch [1]** 656/15
**breach [1]** 630/18
**break [9]** 603/6 619/21
619/22 627/5 633/7
663/24 664/15 717/6
717/7
**brief [2]** 680/10 718/4
**briefed [2]** 603/16

657/23
**briefing [2]** 654/21
666/1
**briefly [1]** 623/9
**bring [18]** 603/3 619/4
619/6 619/8 619/12
620/25 642/15 648/23
651/1 655/5 657/12
664/8 665/13 669/10
674/7 676/1 679/6
679/23
**brought [1]** 663/3
**building [2]** 688/25
692/24

**C**

**calendar [1]** 628/22
**call [5]** 608/18 644/2
644/5 646/6 664/4
**called [1]** 639/3
**came [1]** 718/7
**campaign [7]** 628/20
628/21 629/2 629/2
629/4 629/9 632/6
**campaign-related [1]**
629/9
**campaigns [1]** 629/7
**can [88]** 603/11 604/9
604/16 605/7 609/22
609/25 610/11 610/12
610/24 612/5 612/7
612/8 612/9 612/16
613/8 616/3 617/3
618/14 621/5 621/11
621/23 623/9 623/16
624/17 625/7 629/3
631/10 631/18 632/22
637/17 638/9 638/25
639/10 641/9 644/1
644/16 646/15 647/6
647/6 649/9 649/23
654/3 654/13 654/16
655/6 655/9 659/17
660/6 660/10 660/24
661/3 661/14 661/18
662/9 662/12 662/21
665/13 667/8 671/13
672/3 672/6 672/25
673/10 674/3 674/6
674/10 674/18 675/7
677/11 680/24 681/3
682/22 690/15 691/6
691/12 695/25 699/12
700/12 700/13 701/2

# C

**can... [8]** 701/23 705/7
705/19 706/14 706/16
706/21 708/24 714/17
**can't [8]** 607/4 608/1
616/17 647/12 703/3
705/22 712/5 715/13
**cannot [6]** 604/16
649/11 698/20 698/25
701/24 712/9
**capacity [1]** 663/4
**Capitol [17]** 624/23
630/10 630/18 630/22
631/2 631/5 631/8
631/23 634/18 634/24
636/10 639/21 640/11
644/19 671/5 684/5
684/10
**carbon [1]** 716/11
**care [1]** 622/18
**carefully [2]** 608/14
718/6
**CARL [1]** 600/8
**case [19]** 602/3 602/24
602/25 604/16 604/21
605/16 607/16 608/14
609/12 615/14 616/5
618/19 660/17 684/4
684/8 684/12 698/13
704/10 710/21
**cases [1]** 606/7
**cast [1]** 624/15
**categories [10]** 629/13
629/15 629/17 629/19
629/25 640/20 714/5
714/23 714/24 716/13
**category [2]** 612/5
630/7
**caused [1]** 702/18
**causes [3]** 623/19
634/23 638/20
**cellular [1]** 628/19
**certain [7]** 615/5
649/15 650/8 654/17
698/18 703/3 712/22
**certainly [3]** 602/23
608/3 610/12
**certification [5]** 626/8
626/17 630/11 649/25
671/10
**certify [2]** 624/15
719/4
**chain [3]** 642/21
643/11 645/9

**Chair [5]** 692/17 693/8
699/7 699/15 712/2
**Chair's [3]** 694/9
699/11 699/13
**Chairman [36]** 609/15
609/17 610/9 610/10
610/14 610/16 612/13
612/14 622/15 622/15
644/23 656/25 657/16
658/20 658/21 659/16
670/10 670/11 670/13
693/9 693/16 693/17
694/1 694/4 694/6
696/18 696/20 697/6
697/10 700/7 702/18
703/1 703/2 708/14
711/23 712/7
**Chairman Bennie [1]**
693/17
**Chairman Thompson
[15]** 609/15 609/17
610/9 610/10 610/14
610/16 612/13 670/13
693/9 697/6 700/7
703/2 708/14 711/23
712/7
**Chairman
Thompson's [1]**
659/16
**Chairman's [1]** 657/8
**change [3]** 637/14
637/17 638/2
**changed [1]** 637/24
**changes [2]** 639/8
667/17
**characterized [1]**
606/19
**charge [1]** 638/4
**charged [2]** 634/22
634/22
**charges [1]** 663/1
**Charles [1]** 600/18
**check [3]** 644/10
686/21 689/22
**checked [1]** 690/23
**checking [1]** 644/13
**Chief [1]** 622/10
**choice [2]** 617/21
617/25
**choose [1]** 619/24
**circumstances [5]**
623/19 634/23 635/11
638/19 639/21
**circus [3]** 602/25

608/9 615/14
**cite [1]** 660/16
**cited [5]** 640/7 640/16
713/4 713/11 713/17
**citizen [1]** 632/8
**citizens [1]** 638/11
**civil [2]** 659/7 663/2
**claim [6]** 603/11
603/12 631/6 654/16
656/23 667/14
**claimed [1]** 605/22
**claiming [2]** 668/6
700/3
**claims [6]** 631/22
633/5 634/12 636/12
637/21 638/4
**clarify [1]** 656/10
**Clark [2]** 653/18 654/2
**clear [10]** 603/17
605/9 605/9 612/8
615/18 618/17 655/11
663/13 667/19 716/23
**clearly [3]** 608/12
612/3 617/6
**Clerk [1]** 692/17
**client [4]** 644/10
645/21 654/10 660/14
**client's [1]** 644/9
**clocks [1]** 664/5
**close [1]** 664/2
**CNN [1]** 713/19
**Code [2]** 663/6 673/20
**Cohen [2]** 634/3
634/13
**Cohen-Watnick [2]**
634/3 634/13
**collect [2]** 648/11
678/14
**collecting [1]** 664/24
**College [2]** 671/7
671/9
**COLUMBIA [2]** 600/1
677/16
**combine [1]** 686/6
**come [8]** 602/5 603/4
605/20 633/15 665/2
678/19 713/2 717/23
**comes [2]** 606/6
654/14
**coming [2]** 620/13
690/16
**committed [7]** 606/8
611/19 613/25 614/2
690/25 696/25 698/17

**committee [204]**
**Committee's [32]**
625/18 625/23 627/10
630/25 631/20 632/4
632/7 633/2 634/21
635/3 635/9 635/10
637/18 638/16 656/1
656/6 656/8 663/13
663/21 664/18 668/5
672/15 674/16 675/3
677/25 683/7 683/11
684/3 685/24 696/12
699/11 702/12
**committees [2]** 623/22
639/6
**communicated [5]**
633/23 653/13 658/4
672/17 708/1
**communicating [1]**
627/1
**communication [10]**
631/25 632/13 636/3
640/11 646/10 646/13
646/21 650/19 665/7
669/25
**communications [18]**
628/16 628/18 629/1
630/14 631/3 631/19
632/11 634/2 634/20
635/5 637/6 637/10
638/7 638/14 654/9
654/17 696/11 713/7
**compelling [2]** 623/6
623/10
**competent [1]** 698/14
**compiling [1]** 639/23
**complete [3]** 638/19
672/9 682/2
**completed [1]** 650/2
**completeness [1]**
613/10
**completing [1]** 609/1
**completion [1]** 649/24
**compliance [8]** 647/24
649/10 649/12 649/13
654/15 682/1 699/9
710/7
**complied [6]** 618/22
673/8 683/19 699/5
711/3 711/7
**comply [30]** 612/2
616/6 616/16 616/17
616/21 617/21 618/2
623/15 648/18 649/18

**C**

**comply... [20]** 655/20
656/7 656/9 656/23
657/2 659/2 659/3
659/5 659/25 660/5
660/21 662/6 664/18
666/25 671/18 672/9
675/16 675/21 683/3
694/2

**complying [7]** 616/15
616/18 617/8 617/9
659/10 660/20 668/5

**comports [1]** 616/12

**compounded [1]**
673/14

**computer [6]** 664/5
690/17 692/9 692/14
692/17 705/11

**computers [2]** 628/19
692/11

**concerned [2]** 604/3
715/13

**concluded [3]** 656/21
700/15 711/11

**conduct [2]** 630/13
640/18

**conducted [1]** 686/11

**conducting [5]** 622/3
687/6 687/9 698/13
710/22

**conducts [1]** 639/7

**confidential [1]**
654/17

**confirm [2]** 643/25
644/10

**confirmed [4]** 643/20
644/3 645/21 647/21

**confirming [1]** 648/5

**confrontation [2]**
609/10 617/1

**confused [2]** 675/11
675/15

**confusion [1]** 677/23

**Congress [25]** 606/14
606/19 609/14 615/5
617/23 624/14 626/7
626/19 637/7 639/11
640/3 662/24 667/24
668/1 671/11 671/24
673/19 674/3 683/6
685/7 689/15 695/23
709/8 709/10 709/19

**Congress' [1]** 603/13

**congressional [5]**

654/14 654/15 656/11
656/14 709/3

**Congressman [1]**
677/13

**connection [2]** 631/9
632/2

**consider [7]** 639/11
662/23 668/25 673/19
674/2 675/5 681/6

**consideration [3]**
656/1 674/16 678/21

**considerations [1]**
702/1

**considered [4]** 611/19
674/22 679/1 679/12

**considering [1]**
666/20

**consistent [1]** 604/17

**constituted [1]** 674/23

**constitutes [1]** 671/19

**Constitution [1]**
600/22

**contact [1]** 628/21

**contain [1]** 650/3

**contained [6]** 642/20
651/5 676/8 679/20
680/3 683/7

**contempt [18]** 603/14
603/24 606/21 659/6
662/20 662/24 663/10
671/24 673/19 673/23
674/4 678/22 679/2
679/14 681/6 682/22
683/5 683/13

**content [4]** 609/18
631/16 653/2 657/4

**contents [1]** 688/13

**contest [1]** 633/25

**context [2]** 611/3
631/16

**continue [7]** 628/4
653/22 655/1 672/10
687/19 687/21 711/6

**continued [3]** 620/17
683/3 696/11

**contribute [1]** 714/11

**control [3]** 628/17
650/3 706/17

**convenient [1]** 717/7

**conversation [3]**
619/24 643/20 643/21

**cooperated [1]** 685/23

**cooperation [1]** 686/2

**coordinated [1]**

623/25

**copies [1]** 716/11

**copy [8]** 644/25 651/7
651/14 683/7 691/24
699/8 706/25 709/18

**CORCORAN [14]**
600/17 601/4 602/13
607/13 611/25 613/12
613/22 614/20 669/20
680/11 683/23 697/2
710/9 718/7

**correct [70]** 623/4
624/13 625/3 626/21
628/3 640/24 641/23
642/3 645/7 649/19
650/10 652/24 656/12
657/19 663/7 666/11
667/22 671/12 672/2
673/9 673/25 681/17
682/14 685/9 687/4
687/5 687/7 687/8
687/10 687/11 687/13
687/20 689/2 689/10
692/24 692/25 694/8
699/19 700/23 703/7
703/8 703/13 703/16
703/17 703/20 703/21
703/25 704/1 704/4
704/5 704/7 704/8
705/8 707/6 708/3
708/4 708/7 708/8
709/4 709/5 709/9
709/10 709/11 709/13
709/14 712/17 712/18
714/7 716/16 719/4

**corrective [2]** 623/23
639/25

**correspondence [4]**
650/25 651/15 651/16
682/25

**Costello [39]** 616/14
617/7 641/1 641/5
641/7 642/9 642/13
642/22 643/15 643/23
644/1 645/15 645/19
645/25 646/5 646/7
646/13 646/21 647/21
648/5 649/6 650/25
651/8 651/15 652/6
652/7 653/10 657/9
657/17 659/17 665/20
669/25 676/6 676/9
677/3 697/25 703/19
708/1 708/5

**Costello's [1]** 655/10

**could [48]** 612/4 619/4
620/25 622/21 627/22
628/9 628/12 630/4
632/2 632/18 633/19
635/23 639/25 640/3
640/13 642/15 645/10
648/23 649/18 650/3
651/1 651/13 652/2
652/20 657/12 662/25
663/24 667/4 669/10
670/22 670/24 672/24
676/1 676/2 676/23
677/8 679/6 679/23
681/19 681/22 682/17
690/12 690/13 699/20
701/15 704/23 711/14
718/12

**couldn't [1]** 610/3

**counsel [19]** 602/5
602/9 605/22 607/25
608/7 616/22 617/7
620/6 622/10 622/18
645/16 650/1 650/20
653/18 655/13 657/9
665/12 668/19 705/7

**count [10]** 605/23
606/22 614/25 615/3
634/1 634/4 634/6
640/15 671/6 671/8

**country's [1]** 663/8

**couple [4]** 632/16
635/22 660/18 663/15

**course [2]** 616/5
697/10

**court [16]** 600/1
600/21 603/1 603/25
605/7 612/4 642/16
654/11 667/12 667/18
677/15 684/18 698/24
718/10 718/12 719/3

**Court's [7]** 605/10
609/4 609/18 647/5
709/22 710/4 718/5

**courtroom [10]** 613/5
619/14 619/20 619/23
620/3 620/6 664/9
698/7 717/21 718/1

**courts [2]** 600/22
668/1

**cover [4]** 607/5 614/4
629/19 640/23

**CR [1]** 600/3

**CRC [1]** 600/21

**C**

create [1] 715/23
created [1] 647/15
credibility [2] 608/4
608/6
crime [9] 611/10
611/18 613/24 614/2
614/7 614/9 615/6
696/25 698/17
crimes [1] 640/18
criminal [18] 602/3
623/15 640/17 659/6
662/20 663/1 663/10
668/25 671/23 673/23
674/4 674/23 675/2
678/22 679/14 681/6
682/22 683/13
critical [1] 710/19
cross [24] 601/4
604/25 607/5 607/21
607/24 608/1 609/6
609/22 612/19 613/7
614/18 615/11 616/3
616/20 683/25 696/15
697/17 697/23 697/24
698/13 710/11 710/18
710/22 717/7
cross-examination
[18] 601/4 607/5
607/21 607/24 608/1
609/6 609/22 612/19
614/18 616/20 683/25
696/15 697/17 697/23
697/24 698/13 710/11
710/22
cross-examine [1]
710/18
cross-examining [1]
604/25
crossing [1] 609/25
culprit [1] 611/5
custody [2] 628/17
650/2

**D**

D'Amico [1] 602/10
D.C [5] 600/11 626/12
630/10 633/15 688/21
date [59] 628/23
642/10 642/11 642/12
643/16 649/11 649/13
649/15 658/10 661/24
662/3 662/4 665/1
665/3 665/5 665/6

666/18 675/17 685/18
688/18 688/20 693/1
693/2 693/4 693/5
693/14 693/21 695/6
695/7 695/18 696/6
696/9 696/9 696/13
697/7 697/7 697/8
698/4 698/15 698/16
698/21 699/3 699/3
699/3 699/19 699/24
699/19 699/20 699/24
700/10 700/14 700/20
700/21 700/25 702/5
702/20 703/22 711/22
719/9
dated [2] 665/11
666/17
dates [10] 628/24
642/23 647/4 647/11
663/16 668/12 696/11
699/23 702/3 711/5
DAVID [3] 600/14
600/15 602/13
day [24] 600/7 621/6
626/8 626/10 633/5
638/23 640/18 645/13
645/19 646/4 650/22
658/13 663/21 666/18
668/9 671/11 681/4
681/15 688/14 688/16
689/16 689/23 690/7
708/5
days [3] 662/4 675/17
675/18
DC [3] 600/4 600/12
600/23
dcd.uscourts.gov [1]
600/23
deadline [21] 621/9
623/13 623/14 648/19
649/18 650/17 650/20
652/13 652/15 663/20
670/18 670/19 673/5
697/3 701/22 702/4
702/8 702/9 702/14
702/17 702/20
deadlines [4] 606/16
670/16 678/7 701/19
Dear [2] 652/8 677/13
December [2] 627/1
637/23
decide [3] 606/25
620/1 679/13
decided [11] 607/14

616/10 616/11 617/2
682/21 693/5 693/9
693/20 694/12 694/20
694/22
deciding [2] 613/18
617/19
decision [16] 611/18
617/22 660/14 679/17
688/1 693/7 693/22
695/2 695/8 696/13
696/16 696/22 698/20
700/4 700/12 700/14
decision-maker [1]
693/7
decision-making [1]
611/18
decisions [1] 613/24
declaration [1] 616/14
defend [1] 654/11
defendant [111] 600/6
600/14 602/14 603/2
603/6 603/11 603/13
603/22 604/24 605/10
605/14 606/15 606/20
607/8 611/4 613/2
614/4 617/19 618/2
620/23 621/6 621/11
621/21 621/25 622/11
622/20 625/1 625/4
625/11 626/3 626/23
627/13 627/20 628/2
629/14 629/18 630/8
632/5 634/19 635/18
636/22 639/12 641/1
646/8 646/14 646/22
647/22 647/25 648/2
648/8 648/16 648/18
649/18 650/6 650/11
650/18 650/19 653/10
653/24 655/19 656/6
657/5 657/7 659/2
659/8 660/19 660/21
661/10 662/5 662/18
663/12 663/14 664/17
664/18 664/20 664/22
665/2 665/8 666/24
667/20 668/4 668/9
668/15 668/17 668/20
669/4 669/14 675/14
675/19 677/21 678/1
678/3 678/6 678/10
678/13 678/17 679/3
679/11 679/13 679/16
682/7 682/12 682/22

683/9 683/17 683/18
688/2 698/17 699/5
699/23 700/2
defendant's [13]
602/20 631/18 638/14
642/14 647/24 652/23
656/23 658/14 663/20
666/19 671/20 674/20
699/6
Defendants [1] 606/2
defending [1] 634/17
defense [10] 605/22
617/4 618/13 618/19
618/22 634/14 634/17
640/10 696/10 704/25
defenses [1] 617/11
defiance [2] 606/16
660/13
defied [1] 606/16
definitely [1] 647/13
Definitions [2] 628/15
649/3
defy [1] 696/8
degrees [1] 638/12
delay [5] 633/25 678/4
678/21 682/1 682/5
delayed [1] 678/1
deliberate [2] 617/21
619/21
deliberations [3]
674/17 679/2 696/5
deliberative [1] 654/9
deliver [1] 691/7
delivered [3] 647/20
691/8 691/9
delivery [1] 647/23
demand [1] 694/2
demanded [1] 671/1
demands [1] 636/3
democratic [1] 624/6
demonstrating [5]
625/17 658/2 669/24
680/14 680/19
denied [2] 618/11
682/5
depart [2] 691/1 718/1
Department [7] 634/14
634/17 637/15 637/18
637/20 638/3 663/1
depend [1] 607/24
depicted [1] 692/13
deposition [29]
621/12 621/14 623/8
623/14 627/8 640/23

728

**D**

**deposition... [23]**
644/25 661/11 661/22
662/4 665/1 665/3
665/6 666/18 668/10
670/20 671/4 671/17
673/16 678/19 683/1
684/18 684/23 685/2
685/5 708/15 708/16
708/18 709/7
**depositions [4]** 686/6
686/10 687/10 709/13
**Deputy [1]** 622/9
**describe [3]** 638/25
644/1 651/13
**described [8]** 626/25
635/14 639/14 680/13
695/6 707/25 708/9
714/11
**deserve [1]** 654/18
**designated [1]** 661/21
**despite [2]** 650/17
659/23
**detailed [1]** 683/6
**determine [2]** 608/15
646/23
**determining [1]**
638/17
**devices [1]** 628/19
**did [127]**
**didn't [21]** 606/6 606/8
611/12 611/12 611/12
614/5 614/6 615/5
615/7 616/6 616/7
616/21 648/16 683/20
689/3 693/25 698/6
707/13 710/6 710/24
716/5
**difference [1]** 684/22
**different [15]** 613/20
636/17 638/12 638/22
640/2 666/12 691/7
691/11 693/19 700/3
702/1 714/3 714/5
714/16 714/20
**diligent [1]** 650/1
**direct [14]** 601/4
614/22 615/19 620/17
694/6 700/24 701/3
701/3 705/9 705/23
710/13 710/25 712/14
712/21
**directed [4]** 631/7
631/23 648/18 705/12

**directing [3]** 693/13
705/21 706/13
**direction [3]** 655/15
660/13 664/18
**directly [2]** 647/1
694/17
**Director [1]** 622/9
**disclose [1]** 659/22
**disclosure [1]** 654/8
**discuss [2]** 691/7
707/13
**discussed [6]** 622/18
644/7 644/7 673/7
698/1 707/8
**discussing [3]** 626/14
702/1 707/23
**discussion [14]**
609/16 654/21 694/24
695/5 695/11 695/15
695/16 695/17 695/23
696/3 698/22 698/22
707/22 709/25
**discussions [1]**
701/24
**disprove [1]** 710/20
**dispute [1]** 697/2
**disputed [1]** 697/1
**disputing [2]** 697/4
697/5
**DISTRICT [5]** 600/1
600/1 600/8 600/22
677/15
**disturbance [1]** 698/7
**do [49]** 604/16 606/11
606/17 609/7 609/25
610/10 612/7 615/13
618/3 618/5 618/14
618/18 618/23 619/7
636/25 643/16 643/18
649/3 650/8 664/1
664/2 668/17 684/3
684/6 684/10 684/12
684/19 684/20 688/4
688/5 691/5 694/20
694/21 695/22 699/12
700/9 700/24 701/3
704/10 705/13 711/4
711/4 712/7 712/22
716/7 716/19 716/23
718/14 718/16
**document [31]** 621/9
621/19 621/24 622/11
627/25 642/20 642/20
643/12 644/24 649/2

649/2 651/5 651/9
652/3 652/13 652/15
663/20 666/3 666/5
671/16 679/20 688/8
691/20 691/24 696/16
696/17 700/3 705/16
705/18 706/12 706/15
**documented [1]** 641/7
**documents [61]** 621/7
623/6 623/13 627/8
628/16 628/18 629/1
629/10 629/13 629/17
630/8 638/24 639/1
639/3 640/20 644/21
648/1 648/11 648/14
648/16 650/2 650/3
650/4 650/9 655/17
655/20 661/7 661/8
664/20 664/24 667/2
667/15 668/16 670/19
671/2 672/13 673/5
673/12 678/11 678/15
683/1 687/13 687/15
687/17 691/4 691/6
691/14 691/18 693/10
693/14 693/22 694/23
695/7 695/18 701/16
714/5 716/12 716/15
716/19 716/20 716/24
**does [24]** 603/15
606/13 624/25 628/4
628/6 636/24 641/6
641/8 645/19 654/25
655/3 659/1 659/8
660/4 660/16 661/1
674/1 691/3 691/14
696/21 698/24 705/3
707/9 713/1
**doesn't [8]** 604/1
605/16 619/1 694/7
698/22 699/16 700/2
716/5
**doing [4]** 612/18 692/9
698/17 715/4
**don't [33]** 607/1
607/17 609/4 609/5
610/17 612/3 616/2
617/2 666/4 675/24
688/16 690/10 693/3
695/14 697/18 698/11
704/21 705/13 706/7
707/7 707/20 707/21
707/23 711/8 711/22
712/13 715/2 715/3

715/4 716/14 716/20
717/13 718/14
**Donald [5]** 630/11
653/19 659/21 677/16
713/8
**done [7]** 608/9 609/13
609/25 646/12 646/20
650/8 692/16
**door [3]** 603/25 618/6
710/25
**down [1]** 701/17
**dozens [3]** 686/15
686/16 687/1
**draft [5]** 711/18 711/23
712/8 715/23 716/4
**drafted [2]** 711/19
714/9
**drafting [4]** 685/16
688/11 714/11 714/17
**drafts [2]** 711/25
712/10
**drawn [1]** 604/25
**Dunn [31]** 602/10
620/25 622/21 624/17
627/22 628/9 630/4
632/18 633/19 635/23
641/9 642/15 643/9
645/10 648/23 651/1
652/20 653/1 655/5
659/13 660/6 660/24
661/14 662/9 672/3
674/6 676/23 679/22
680/24 681/20 682/17
**Dunn-Gordon [1]**
602/10
**during [2]** 626/6 650/4

**E**

**e.g [2]** 628/19 628/21
**each [6]** 629/17 629/25
657/22 692/2 714/20
716/11
**earlier [8]** 623/2
626/19 635/14 639/6
647/25 666/19 673/8
713/22
**easel [4]** 647/8 647/12
647/14 647/15
**Eastman [1]** 638/7
**effect [1]** 604/19
**effort [6]** 602/24 607/6
626/7 636/7 638/2
675/3
**efforts [6]** 627/3

# E

**efforts... [5]** 633/24
635/2 635/6 637/13
638/12
**eight [4]** 705/16
706/12 706/14 706/16
**eight-page [3]** 705/16
706/12 706/14
**either [3]** 606/5 608/22
615/19
**elaborate [1]** 716/14
**elected [1]** 624/9
**election [20]** 624/8
624/16 626/8 626/18
630/12 631/3 631/6
631/22 633/5 633/25
634/12 635/6 635/16
635/21 636/13 637/22
637/25 638/5 638/13
671/11
**electoral [5]** 634/1
634/4 640/15 671/7
671/9
**electors [1]** 634/6
**electronic [2]** 639/4
693/11
**element [1]** 696/7
**elements [5]** 606/24
613/15 614/6 614/9
696/7
**elicit [2]** 710/3 710/18
**eliciting [1]** 609/10
**Ellis [1]** 638/8
**else [10]** 606/8 608/21
609/3 613/4 620/11
620/12 641/3 646/24
646/25 695/23
**email [34]** 628/21
642/8 642/9 642/21
643/8 643/11 643/12
643/19 644/12 644/16
644/23 645/8 645/11
645/13 645/14 645/15
645/25 646/6 648/4
649/6 651/15 651/16
652/3 652/5 652/7
652/11 652/17 676/8
676/9 676/11 676/13
677/2 691/9 703/19
**emailed [9]** 641/4
642/12 650/25 657/8
657/18 665/20 665/21
669/8 703/18
**emails [5]** 629/10

639/4 642/13 642/23
647/23
**encourage [1]** 633/15
**end [5]** 610/3 687/20
687/22 702/13 702/17
**ends [3]** 627/7 642/24
702/17
**enforce [1]** 663/3
**enforcement [3]** 606/3
606/10 607/2
**engage [1]** 691/12
**engaged [1]** 634/11
**enough [1]** 647/9
**ensure [1]** 675/3
**enter [1]** 664/7
**entered [1]** 619/14
**entire [1]** 622/10
**entirely [1]** 615/1
**entities [2]** 623/25
638/23
**entitled [4]** 677/16
713/2 713/10 719/5
**entries [1]** 628/22
**enumerated [1]**
655/14
**envision [1]** 609/5
**Epshteyn [2]** 634/2
634/10
**especially [2]** 670/2
705/10
**essential [2]** 682/2
710/24
**essentially [3]** 619/22
620/1 715/8
**EST [1]** 674/15
**establish [1]** 618/15
**Establishing [1]**
663/13
**estimate [1]** 686/23
**estimating [1]** 685/22
**et [1]** 677/16
**etc [2]** 628/20 628/22
**evaluate [3]** 613/23
623/21 639/24
**evaluating [1]** 611/17
**EVAN [2]** 600/17
602/13
**Evan Corcoran [1]**
602/13
**even [6]** 603/8 605/7
607/1 613/6 615/18
620/11
**event [1]** 644/22
**events [20]** 624/1

624/13 624/23 626/15
629/21 631/9 632/1
632/3 632/15 633/9
633/15 636/18 637/3
638/10 638/20 638/23
639/24 640/7 654/6
701/11
**eventually [1]** 650/18
**ever [4]** 648/10 648/13
678/6 697/25
**every [2]** 697/4 697/11
**everyone [6]** 602/15
619/17 620/11 620/12
647/14 717/15
**everything [1]** 657/23
**evidence [20]** 601/9
601/9 601/10 601/10
601/11 606/5 606/18
608/13 611/20 614/10
615/6 618/10 621/1
690/12 690/14 697/23
700/1 704/25 708/21
711/16
**ex [1]** 672/10
**ex-President [1]**
672/10
**exact [1]** 675/23
**exactly [2]** 614/3 688/5
**examination [26]**
601/4 601/4 607/5
607/21 607/24 608/1
609/6 609/22 610/1
612/19 614/18 616/20
620/17 623/24 683/25
696/15 697/17 697/23
697/24 698/13 710/11
710/22 712/25 712/14
712/21 718/9
**examine [1]** 710/18
**examining [1]** 604/25
**example [3]** 613/13
625/20 648/10
**examples [7]** 630/3
632/16 633/17 639/5
640/6 640/8 640/9
**excerpt [3]** 653/24
654/4 654/24
**exclude [1]** 603/1
**excluded [3]** 618/7
618/11 711/3
**exculpatory [6]** 606/4
606/12 606/13 607/4
611/20 614/10
**excuse [3]** 656/23

667/21 717/24
**excused [2]** 661/11
717/17
**executive [14]** 617/8
654/8 655/12 655/14
655/15 655/24 660/3
660/15 667/13 667/14
672/11 682/9 682/11
683/18
**exhibit [79]** 601/8
621/1 621/17 627/23
641/10 642/16 643/2
643/4 643/6 645/3
645/5 648/24 651/2
651/4 651/6 651/10
651/13 651/19 651/21
651/23 652/1 652/16
657/13 657/15 657/21
658/1 661/15 665/14
665/16 665/24 666/7
666/9 666/11 666/13
667/5 669/11 669/18
669/21 670/4 670/6
672/25 676/2 676/5
676/8 676/14 676/16
676/18 676/20 679/7
679/19 679/21 680/3
680/8 680/12 680/18
680/21 685/13 687/24
688/8 689/5 689/9
689/12 690/13 692/1
692/14 700/19 703/2
703/5 704/24 704/25
707/4 708/10 708/21
708/23 709/6 710/15
711/15 714/2 714/15
**Exhibit 2 [1]** 621/17
**exhibits [1]** 658/2
**exist [1]** 682/4
**existed [1]** 675/9
**exited [1]** 717/21
**expect [1]** 605/1
**expected [1]** 639/2
**expects [1]** 661/20
**expedites [1]** 706/25
**expeditious [1]** 701/20
**expeditiously [2]**
701/14 702/23
**experience [3]** 646/16
646/19 650/6
**explain [14]** 621/23
623/9 629/3 631/18
632/22 637/17 638/9
639/10 654/13 674/18

## E

**explain... [4]** 675/7 681/3 681/16 682/8
**explained [2]** 672/15 682/24
**explaining [1]** 657/1
**explains [1]** 626/22
**explanation [3]** 649/13 675/20 683/17
**explicitly [1]** 605/13
**expressed [1]** 611/14
**extended [1]** 678/8
**extension [1]** 648/10
**extensively [1]** 603/16
**extent [11]** 608/20 608/24 609/21 610/24 615/10 618/9 629/7 631/8 649/12 667/13 699/10
**extremely [1]** 681/25
**Ezra [2]** 634/3 634/13

## F

**faced [1]** 702/5
**fact [15]** 607/1 613/18 614/13 614/14 623/11 625/20 625/24 644/3 644/8 697/1 697/4 699/15 708/6 710/16 710/19
**factors [1]** 698/23
**facts [10]** 606/24 614/6 614/8 616/12 623/19 634/23 635/10 638/19 639/20 639/23
**failed [4]** 662/6 671/15 673/13 675/20
**failure [5]** 659/5 662/15 672/9 673/5 675/16
**fair [10]** 604/11 604/13 610/1 611/2 611/15 647/9 686/13 691/20 691/21 692/12
**fairly [1]** 607/15
**faith [7]** 604/5 604/14 606/4 607/1 614/12 614/13 699/25
**familiar [1]** 708/20
**favor [2]** 603/19 604/15
**FBI [12]** 602/10 605/23 704/9 704/11 704/16 704/18 705/4 706/1

706/4 706/7 706/11 707/17
**federal [5]** 634/16 671/19 671/21 674/23 677/15
**feed [1]** 690/18
**feel [3]** 615/21 620/1 620/1
**few [4]** 630/3 633/17 654/12 658/17
**figure [4]** 636/11 639/7 686/8 686/14
**figured [1]** 664/1
**filing [3]** 677/15 677/17 682/9
**fill [1]** 690/4
**filled [8]** 691/24 692/15 703/6 704/6 704/19 705/5 706/4 707/18
**filling [2]** 692/8 692/8
**finalization [1]** 640/14
**finalize [1]** 626/20
**finally [4]** 627/4 638/6 661/20 662/5
**financing [1]** 630/13
**find [7]** 603/2 608/4 614/2 648/11 652/8 683/5 696/24
**findings [1]** 683/11
**fine [3]** 604/25 619/25 707/1
**finish [3]** 614/21 614/22 662/21
**finished [1]** 664/16
**first [36]** 603/6 603/8 605/7 622/22 625/10 626/2 630/5 630/7 634/4 643/11 643/19 654/3 658/10 658/19 659/12 659/15 661/3 661/18 662/12 662/13 667/6 667/8 667/9 670/22 679/23 681/9 681/11 682/18 688/14 690/20 691/22 692/1 696/13 699/2 705/17 707/15
**firsthand [4]** 694/21 694/21 716/14 716/23
**fixed [1]** 698/21
**flat [1]** 682/25
**floor [2]** 600/18 611/14
**Flynn [1]** 638/8

**focus [3]** 627/3 692/4 709/2
**focused [2]** 624/12 638/17
**follow [6]** 606/6 606/8 609/9 648/18 649/20 650/11
**follow-up [1]** 609/9
**followed [2]** 618/22 691/17
**following [3]** 628/23 643/19 683/8
**follows [1]** 661/13
**force [1]** 662/23
**forced [1]** 702/20
**foregoing [4]** 636/4 637/8 638/9 719/4
**foresee [1]** 603/10
**form [5]** 690/4 691/23 692/8 692/14 693/11
**formal [2]** 632/5 686/6
**formally [1]** 672/18
**former [11]** 624/11 631/19 631/21 632/5 632/11 632/14 654/25 659/21 667/23 672/16 672/20
**forth [3]** 622/25 623/7 673/20
**forum [2]** 604/22 615/14
**forward [1]** 602/5
**found [1]** 650/8
**fourth [1]** 714/1
**Frank [1]** 602/10
**fraud [3]** 637/22 637/24 638/5
**free [3]** 619/23 620/1 620/1
**fresh [1]** 692/2
**Friday [1]** 645/14
**front [2]** 620/5 684/18
**full [7]** 649/11 649/13 649/15 660/7 667/6 667/9 672/25
**fully [3]** 616/15 661/22 700/16
**fully-public [1]** 700/16
**fundamental [1]** 654/11
**funding [1]** 640/10
**further [4]** 673/14 682/1 683/17 683/21
**future [2]** 640/1 699/20

## G

**game [4]** 604/11 604/13 611/2 611/15
**GASTON [2]** 600/11 602/8
**gave [2]** 616/21 627/12
**general [8]** 637/22 637/23 695/21 701/13 701/19 701/23 712/10 713/23
**generally [13]** 629/16 659/1 692/16 694/24 695/15 701/25 711/25 712/3 712/6 712/15 714/17 715/2 716/7
**gentlemen [2]** 625/16 680/12
**get [10]** 609/22 610/3 610/12 613/6 650/14 665/10 697/11 700/9 700/9 715/5
**gets [2]** 605/8 668/8
**getting [2]** 608/25 669/3
**Giuliani [1]** 638/7
**give [4]** 686/14 689/24 706/24 715/3
**given [6]** 605/5 640/8 675/12 694/25 710/24 716/1
**gives [2]** 622/4 692/21
**go [26]** 604/1 609/5 612/9 613/2 613/13 616/20 618/14 621/16 624/25 627/22 633/19 641/9 648/24 649/8 660/24 661/14 667/4 672/24 675/24 696/1 701/17 706/21 708/11 709/24 711/14 715/11
**goes [5]** 603/14 606/23 609/2 612/19 655/7
**going [37]** 603/4 603/5 605/20 608/7 608/13 609/2 613/23 614/16 615/19 615/20 619/12 627/5 633/7 633/9 647/3 647/10 655/19 663/16 663/23 666/24 667/2 674/24 679/11 685/21 687/19 693/5 694/15 696/24 698/9 698/12 700/5 700/11

# G

**going... [5]** 716/9
716/10 717/6 717/10
718/8
**gone [1]** 710/24
**good [18]** 602/2 602/7
602/11 602/12 602/15
604/5 604/14 606/4
607/1 614/12 614/13
615/25 619/10 619/11
619/17 620/19 620/20
699/25
**good-faith [1]** 604/14
**Gordon [31]** 602/10
620/25 622/21 624/17
627/22 628/9 630/4
632/18 633/19 635/23
641/9 642/15 643/9
645/10 648/23 651/1
652/20 653/1 655/5
659/13 660/6 660/24
661/14 662/9 672/3
674/6 676/23 679/22
680/24 681/20 682/17
**got [12]** 606/15 607/20
616/7 616/10 618/20
645/25 648/4 693/19
697/10 698/2 699/16
708/5
**govern [2]** 640/14
709/8
**governing [2]** 702/15
702/24
**government [27]**
602/6 602/16 602/19
602/25 604/19 605/11
605/19 607/25 608/18
614/4 616/4 616/9
618/3 619/1 643/1
651/18 656/13 656/16
657/20 665/23 666/11
666/13 669/17 676/15
680/7 696/4 698/16
**government's [64]**
614/19 621/1 621/17
627/23 641/10 642/16
643/2 643/4 643/6
648/24 651/2 651/4
651/5 651/10 651/12
651/19 651/21 651/23
652/1 657/13 657/15
657/21 665/14 665/16
665/24 666/7 666/9
667/5 669/11 669/18

669/21 670/4 670/6
672/24 676/2 676/5
676/16 676/18 676/20
679/7 679/19 679/21
680/3 680/8 685/12
687/23 689/5 689/9
689/12 690/13 692/1
692/13 698/13 700/19
703/2 703/5 708/23
710/15 710/21 711/9
711/10 711/15 714/2
714/15
**granted [2]** 603/1
698/24
**great [1]** 663/25
**greeting [1]** 622/24
**grounds [2]** 630/10
682/4
**group [3]** 620/2 630/14
717/11
**groups [1]** 636/8
**guess [1]** 690/1
**GULLAND [1]** 600/11

# H

**had [103]** 611/13
612/15 613/20 613/24
620/23 621/4 625/1
625/11 626/3 626/13
626/23 629/20 631/3
631/4 631/6 631/6
631/22 631/24 632/5
632/12 632/13 633/3
633/5 633/6 633/8
634/9 634/11 634/12
634/19 634/19 635/16
636/8 636/11 636/13
636/22 637/3 637/13
637/21 637/23 638/12
638/13 638/15 639/2
643/23 644/6 645/21
646/1 646/3 646/3
646/9 646/12 646/12
648/5 650/20 652/15
653/13 654/21 656/3
656/7 656/23 657/1
659/17 660/21 664/15
666/2 667/19 668/6
669/6 669/8 670/16
670/20 673/7 673/8
674/21 675/3 675/6
675/12 675/15 675/20
677/21 678/13 678/16
678/17 681/7 681/16

682/12 682/13 682/21
683/10 683/13 683/18
685/11 696/11 697/13
701/11 704/15 705/5
706/5 706/5 707/18
711/7 714/4 714/4
**hadn't [2]** 617/18
645/6
**half [3]** 606/1 652/3
653/2
**hand [1]** 707/2
**Handed [1]** 707/4
**handles [1]** 646/18
**handwritten [1]**
641/18
**happen [1]** 662/6
**happened [3]** 611/15
638/18 681/16
**happening [3]** 640/1
671/11 702/10
**happens [1]** 716/17
**happy [5]** 690/9 706/8
706/24 707/22 715/11
**hard [2]** 691/23 706/25
**has [46]** 603/16 607/17
608/18 613/16 613/17
614/2 614/3 615/16
617/1 618/16 618/18
619/1 624/15 624/21
636/7 640/4 650/1
655/13 660/15 660/19
661/6 668/15 671/15
672/16 673/11 673/12
673/14 683/4 694/1
694/3 694/4 694/13
694/16 695/3 696/15
697/9 698/16 698/17
698/21 698/24 699/17
709/18 716/15 716/18
716/24 718/13
**have [102]** 603/16
604/14 606/3 606/6
606/7 606/14 606/19
607/1 607/4 608/14
609/24 612/4 612/16
612/25 613/3 613/20
614/12 614/12 614/13
614/13 615/15 615/15
617/3 617/17 617/20
617/24 618/6 618/21
619/24 620/3 624/21
625/2 625/5 625/7
626/5 627/13 629/5
629/6 629/18 632/9

632/10 633/8 634/20
635/12 635/18 635/19
636/22 637/3 637/24
640/6 640/7 640/8
640/16 645/23 646/20
646/23 646/25 647/13
648/14 648/16 650/5
656/16 674/14 675/14
677/14 679/11 683/1
685/18 685/23 686/3
686/4 686/10 686/12
686/17 686/21 688/16
689/22 689/24 694/21
695/25 696/19 696/19
697/22 697/25 698/14
700/22 700/24 701/3
701/25 711/4 712/4
713/12 713/13 714/10
714/12 716/9 716/14
716/19 716/20 716/23
717/1 717/23
**haven't [3]** 607/3
619/1 650/8
**having [1]** 663/2
**he [129]**
**he's [6]** 609/21 612/17
616/10 616/11 617/20
710/2
**hear [11]** 605/16
608/13 609/15 610/19
610/22 648/7 683/16
683/20 689/3 698/6
707/14
**heard [2]** 613/12
613/22
**hearings [1]** 687/7
**hell [2]** 627/5 633/6
**help [2]** 640/12 691/11
**helping [2]** 633/15
634/11
**helps [1]** 716/21
**her [23]** 604/13 604/15
604/15 604/16 608/3
608/4 610/10 610/23
612/10 613/3 613/6
615/11 625/9 646/15
705/9 705/15 705/16
705/17 705/18 705/23
706/24 707/2 710/18
**here [32]** 603/12 605/1
605/9 606/17 608/17
612/13 612/17 613/3
613/15 619/18 620/6
625/21 627/11 630/1

# H

**here... [18]** 634/8
647/4 684/8 684/18
685/22 692/19 695/22
698/2 698/9 699/21
700/25 702/15 704/13
707/21 712/5 714/23
715/14 718/13
**here's [2]** 613/1
614/16
**hereby [2]** 623/5
628/16
**heretofore [1]** 618/6
**herman [4]** 600/21
600/23 719/3 719/9
**high [1]** 634/14
**high-ranking [1]**
634/14
**him [28]** 603/14 612/2
616/17 617/8 625/8
627/2 636/23 637/10
642/12 644/5 644/8
646/1 647/1 655/25
659/3 660/3 661/25
667/20 667/21 668/18
668/24 683/10 683/20
697/15 700/7 701/13
703/4 715/15
**himself [2]** 612/17
682/8
**his [58]** 606/16 616/16
616/22 617/1 617/20
621/7 621/12 621/13
621/14 622/18 627/3
632/6 634/11 636/12
637/25 641/1 642/9
644/9 644/10 644/14
644/20 645/21 646/9
650/20 650/25 655/13
655/13 655/15 655/15
655/22 658/23 659/2
659/5 659/9 660/14
660/19 661/11 662/4
662/18 662/22 663/3
667/17 668/10 668/18
671/16 673/11 673/15
674/13 674/22 675/5
675/10 675/16 677/23
678/5 679/2 680/5
697/25 713/15
**hold [3]** 610/21 654/19
717/10
**honor [65]** 602/2 602/7
602/12 602/18 605/4

607/22 611/22 611/25
616/24 617/13 617/16
618/17 619/3 619/7
619/11 619/15 620/16
625/12 625/25 643/1
643/3 647/10 647/12
651/18 651/20 655/15
657/20 657/22 658/8
660/14 663/25 664/10
664/13 665/23 666/4
666/8 666/15 669/17
669/19 670/7 676/15
676/17 680/7 680/10
680/23 683/21 683/24
689/17 694/13 695/25
696/4 696/14 697/5
698/12 699/2 701/8
704/24 705/7 706/24
707/12 710/2 717/5
717/25 718/3 718/18
**HONORABLE [1]**
600/8
**hotel [5]** 626/6 626/11
626/12 626/12 713/1
**House [20]** 604/3
611/14 615/2 622/25
623/1 623/1 623/22
624/14 630/20 632/6
632/13 637/12 652/10
663/1 683/4 688/25
690/8 692/18 692/24
709/19
**housekeeping [1]**
619/19
**how [30]** 612/3 623/24
629/13 629/16 630/23
631/18 633/1 634/19
634/20 635/8 637/9
638/14 646/18 650/24
657/7 665/19 675/13
676/11 685/17 686/2
686/10 686/17 686/20
686/23 693/4 696/6
699/3 699/16 707/25
717/9
**however [1]** 620/2
**human [5]** 693/19
693/20 693/22 701/22
701/22
**husher [3]** 611/7 696/1
711/12
**hypothetically [1]**
699/21

# I

**I'd [3]** 621/16 686/21
693/23
**I'll [5]** 610/19 615/12
618/13 715/20 717/6
**I'm [34]** 610/9 611/9
611/11 614/16 615/20
616/1 618/20 647/10
663/16 685/21 685/22
689/3 690/1 690/9
691/25 693/23 693/23
698/6 698/13 700/10
702/7 702/9 705/18
705/20 706/8 707/22
710/18 710/21 714/22
715/7 715/16 716/22
717/7 717/10
**I've [8]** 607/14 617/25
669/22 680/13 693/19
703/4 711/2 716/3
**idea [1]** 605/20
**identical [1]** 716/11
**identification [1]**
704/24
**identified [5]** 607/3
626/5 661/9 690/24
692/20
**identify [3]** 609/7
623/21 629/16
**identifying [1]** 673/13
**ignore [1]** 614/10
**illegitimate [1]** 612/23
**immaterial [1]** 679/2
**immediately [2]**
630/21 631/4
**impact [1]** 677/19
**impede [1]** 634/1
**implications [1]** 605/6
**importance [1]** 718/5
**important [3]** 624/22
638/21 681/25
**improper [1]** 604/20
**improperly [1]** 615/4
**improve [1]** 640/11
**inaccurately [1]**
603/18
**inappropriate [5]**
604/22 605/8 608/23
613/25 659/24
**include [5]** 640/9
640/13 640/16 641/6
716/7
**included [2]** 621/20
639/3

**includes [2]** 620/5
623/24
**including [15]** 609/14
628/17 630/12 631/13
632/14 633/6 634/1
634/16 635/11 654/6
654/8 663/11 701/19
701/25 714/12
**incoming [1]** 624/8
**increases [1]** 640/17
**incumbent [1]** 624/7
**indicate [1]** 664/23
**indicated [1]** 712/14
**indicates [2]** 660/12
708/15
**indication [2]** 678/14
678/16
**indictment [1]** 698/16
**individual [9]** 603/12
603/17 608/22 625/7
692/15 695/3 714/19
716/10 716/10
**individual's [1]** 629/11
**individualized [2]**
692/4 692/7
**individuals [18]**
623/24 626/14 631/1
631/4 634/20 635/14
636/17 636/22 638/4
638/9 638/11 638/15
638/22 640/6 650/7
685/23 691/18 695/14
**influence [1]** 634/1
**influenced [1]** 635/13
**inform [7]** 644/5
648/13 659/8 679/3
679/16 701/16 716/21
**informal [1]** 686/6
**informally [1]** 672/18
**information [51]** 606/7
606/12 606/13 607/4
609/11 613/17 622/4
624/21 625/2 625/6
625/8 626/4 626/24
627/13 629/8 629/18
632/9 635/1 635/2
635/19 636/3 636/8
636/15 639/12 641/18
641/19 654/7 655/25
659/23 659/25 663/17
668/13 672/22 674/19
675/4 675/8 675/10
675/14 678/5 683/14
685/24 687/15 691/10

**I**

**information... [8]** 692/13 692/15 701/13 701/14 702/23 703/15 714/18 716/8

**informed [5]** 624/23 674/21 679/10 682/12 708/6

**informing [3]** 625/4 660/19 683/9

**informs [2]** 622/1 635/2

**inject [1]** 607/6

**inquiry [4]** 623/24 627/10 684/3 690/25

**inside [4]** 620/4 620/8 620/8 620/12

**instance [1]** 611/14

**instead [2]** 612/22 699/6

**instruction [8]** 608/5 625/13 649/8 649/9 659/21 659/23 669/22 680/22

**instructions [6]** 628/15 644/25 648/20 649/3 675/11 691/9

**intelligence [1]** 640/11

**intend [2]** 615/13 711/4

**intended [4]** 627/15 631/16 640/22 704/3

**intention [5]** 608/9 655/13 660/2 672/11 718/9

**interactions [1]** 717/4

**interest [4]** 701/13 701/19 702/22 713/9

**interfere [1]** 671/6

**interference [2]** 634/24 639/22

**internal [1]** 696/5

**interrupt [1]** 701/6

**interview [3]** 611/12 614/5 707/8

**interviewed [9]** 605/24 607/2 611/10 611/19 685/18 686/3 686/4 704/9 705/4

**interviewing [1]** 687/4

**interviews [1]** 686/7

**introduce [1]** 602/5

**introduced [1]** 609/19

**introductory [1]** 628/7

**invalid [3]** 694/7 698/4 698/10

**investigate [2]** 634/16 644/18

**investigated [1]** 615/6

**investigating [5]** 611/10 613/18 623/18 634/23 639/20

**investigation [27]** 605/21 605/25 611/1 611/9 612/7 613/9 613/10 613/16 622/3 624/4 625/2 627/14 629/6 630/1 630/25 631/20 633/2 634/21 635/9 635/10 637/19 638/16 640/4 681/23 681/24 715/4 716/21

**investigations [1]** 639/7

**investigative [1]** 606/3

**investigator's [1]** 611/18

**investigators [3]** 606/5 606/7 614/10

**investigators' [1]** 613/24

**invitation [1]** 678/4

**invocation [2]** 655/15 660/15

**invoke [1]** 672/11

**invoking [4]** 662/24 673/19 674/2 678/22

**involve [2]** 716/5 716/6

**involved [21]** 609/23 626/14 630/15 633/14 637/13 638/12 638/23 656/1 657/3 666/20 669/2 684/5 684/9 685/15 686/18 686/24 688/1 696/22 701/25 714/13 716/6

**involvement [3]** 621/7 621/13 658/22

**involves [4]** 609/10 624/7 684/12 714/18

**irrelevant [11]** 606/22 606/24 612/5 614/9 615/3 616/6 616/8 617/3 696/13 699/4 700/7

**is [396]**

**isn't [5]** 684/22 686/2

**invalid** 697/15 699/18 699/21

**issuance [2]** 688/1 688/3

**issue [17]** 602/16 607/9 609/7 610/11 616/2 624/11 648/21 675/15 682/11 707/21 707/23 707/24 710/5 713/5 713/14 717/22 718/11

**issued [11]** 607/14 620/23 646/4 656/3 656/14 656/25 688/17 692/2 697/14 699/17 702/21

**issues [6]** 618/6 623/20 655/16 671/4 674/13 674/20

**issuing [2]** 612/1 644/20

**it [220]**

**it's [32]** 603/4 611/2 611/16 611/17 612/8 615/6 615/11 615/18 615/18 616/8 616/12 618/11 618/25 638/21 639/22 662/20 664/5 670/1 674/18 674/19 686/2 686/12 688/25 690/13 690/16 694/7 696/6 708/24 709/6 716/4 717/11 718/3

**item [13]** 631/10 631/11 633/10 635/4 635/18 636/2 636/24 637/5 637/6 638/6 649/22 649/22 649/23

**items [8]** 628/1 628/23 629/17 633/20 635/24 716/8 716/20 716/21

**its [16]** 623/22 625/2 640/4 647/23 656/22 669/24 674/17 675/6 677/19 678/21 682/2 686/11 687/19 687/21 688/12 708/10

**itself [5]** 612/23 627/19 677/7 689/6 691/22

**J**

**January [43]** 621/8 621/13 623/19 624/1 624/3 624/13 624/23

626/6 626/9 626/10 626/15 627/3 627/5 629/21 630/9 630/15 630/25 631/13 631/17 632/1 632/15 633/4 633/9 633/16 634/7 634/24 635/7 636/19 637/4 637/16 638/10 638/18 639/21 640/7 644/19 654/6 671/5 701/11 713/15 713/16 713/21 713/22 713/24

**January 5th [1]** 626/10

**January 6 [7]** 624/1 624/13 631/13 631/17 638/18 671/5 713/24

**January 6th [31]** 621/8 621/13 623/19 624/3 624/23 626/9 626/15 627/3 629/21 630/9 630/15 630/25 632/1 632/15 633/4 633/9 633/16 634/7 634/24 635/7 636/19 637/4 637/16 638/10 639/21 640/7 644/19 654/6 701/11 713/16 713/21

**Jenna [1]** 638/8

**John [1]** 638/7

**joint [3]** 624/14 626/19 634/7

**Jones [3]** 636/5 636/11 637/3

**judge [4]** 600/8 618/21 684/24 685/4

**judges [1]** 685/7

**July [3]** 600/5 718/6 719/9

**Jurors [1]** 664/9

**jury [45]** 600/7 602/17 602/23 605/15 605/16 606/18 606/25 608/5 611/16 611/17 613/23 614/1 615/4 616/9 617/1 619/5 619/12 619/14 620/3 620/6 621/23 625/16 638/25 639/10 643/5 649/23 651/22 654/13 655/10 657/21 658/7 664/8 666/6 666/14 670/5 674/18 676/19 680/13 680/22 684/8 690/15 696/24 708/24 709/16

# J

jury... [1] 717/21
jury's [1] 607/10
just [75] 604/8 604/10
606/10 606/23 610/2
611/25 614/14 616/1
618/15 618/25 619/12
619/19 621/3 621/5
621/23 623/9 630/4
635/22 638/25 641/13
642/16 645/2 647/6
647/10 651/2 651/13
652/17 654/13 654/20
656/10 656/13 657/12
658/17 661/3 662/12
663/8 663/15 664/15
666/8 669/13 670/25
671/9 673/7 673/22
674/21 675/7 675/24
676/1 676/23 677/14
679/6 679/10 679/23
681/3 681/22 682/17
688/8 690/18 690/20
692/14 693/18 695/6
702/9 702/12 707/12
709/2 710/16 712/19
716/4 716/5 716/5
716/22 717/6 718/3
718/10
Justice [5] 637/15
637/18 637/21 638/3
663/1
justification [1] 672/8
Justin [1] 653/18

# K

Kashyap [2] 634/2
634/13
keep [5] 609/7 620/14
647/6 647/7 717/6
Keepers [3] 636/5
636/10 637/2
key [1] 698/16
kind [4] 639/1 639/8
702/9 717/11
kinds [4] 617/10 622/4
639/10 675/7
knew [3] 606/5 636/23
636/25
know [25] 607/25
608/7 609/15 609/17
611/3 611/13 611/16
612/3 613/15 616/13
617/6 637/1 637/1

645/5 670/25 671/1
693/20 694/20 695/22
698/11 714/22 715/4
715/14 715/17 717/6
knowing [1] 717/1
knowledge [10]
611/13 633/8 668/5
694/21 694/22 700/24
701/3 701/4 716/14
716/23
known [2] 606/6 710/6
knows [3] 606/12
610/10 610/13
KRISTIN [3] 620/17
641/21 683/25

# L

ladies [2] 625/16
680/12
language [6] 691/18
691/19 695/1 712/8
715/12 715/14
last [14] 602/19 655/7
660/7 660/25 661/4
661/15 662/8 672/25
674/8 674/10 681/23
700/11 708/21 715/21
late [1] 677/17
later [1] 650/22
latest [1] 677/18
law [21] 600/15 606/1
606/3 606/10 607/2
616/11 616/11 616/15
616/18 616/18 617/2
617/20 618/4 618/22
618/23 618/23 660/16
660/17 671/19 671/21
674/23
lawfully [1] 672/21
laws [4] 623/23 640/14
663/8 673/21
lawsuit [3] 677/15
679/1 682/9
lawyer [2] 616/16
697/25
lay [2] 602/22 602/23
lead [1] 701/15
leadership [3] 637/14
637/17 638/3
leading [7] 623/25
631/25 632/15 633/4
635/11 636/13 637/15
learned [2] 623/21
718/4

least [5] 608/17 612/13
616/19 694/16 699/21
leave [4] 680/24 691/1
691/4 691/15
led [2] 624/22 632/10
left [4] 620/21 681/9
681/11 681/13
legal [6] 660/4 660/17
683/2 697/22 717/22
legislate [1] 640/3
legislation [1] 639/8
legislative [1] 656/15
Lesley [4] 619/4 664/8
664/12 717/23
lesson [1] 718/4
lessons [1] 623/21
let [6] 604/8 618/17
693/25 707/14 707/24
717/6
let's [36] 607/13 610/9
610/21 611/23 613/9
622/19 629/12 630/3
631/10 632/16 633/17
642/13 645/8 647/24
648/22 649/8 649/22
651/25 652/19 652/25
653/1 657/10 659/12
664/1 664/2 664/4
668/12 669/1 670/21
676/22 677/6 681/12
682/15 690/11 708/20
709/24
letter [136]
letters [14] 609/16
612/14 618/14 618/19
669/9 679/20 680/2
680/4 680/15 680/17
680/20 681/2 681/4
712/1
level [1] 697/11
liability [1] 623/15
light [4] 617/24 635/20
675/10 677/17
like [22] 602/17 611/5
618/14 620/2 620/14
620/23 621/16 630/24
640/1 640/12 642/21
647/6 651/7 653/22
669/6 669/8 670/12
675/14 677/22 701/6
710/2 713/20
likely [1] 618/1
likes [1] 620/9
limine [1] 603/1

604/18
limited [6] 607/18
608/18 634/2 654/7
659/22 659/23
limiting [3] 625/12
669/22 680/21
line [11] 604/25 608/12
610/1 613/7 613/8
613/21 641/16 644/12
703/9 703/16 718/8
lines [1] 617/6
lingering [1] 617/17
link [2] 683/8 683/11
list [5] 624/25 628/1
629/23 632/17 649/22
listed [4] 627/11
629/25 634/8 642/10
listen [1] 608/14
lists [1] 628/22
litigation [1] 677/20
little [1] 669/1
located [2] 628/18
650/4
log [1] 673/13
long [3] 670/24 675/14
717/9
Longworth [2] 688/25
692/24
look [28] 622/19
627/21 629/12 630/3
632/16 633/17 635/22
642/13 645/8 648/22
649/22 652/25 657/10
672/23 675/24 677/6
682/15 686/12 690/9
690/11 690/22 692/19
706/8 707/22 708/20
714/20 715/11 718/11
looked [2] 647/22
672/1
looking [13] 623/2
627/18 628/8 635/10
635/19 645/2 645/4
652/17 664/16 700/19
705/20 714/14 714/18
looks [3] 642/21 651/7
713/20
loose [2] 627/6 633/7
lorraine [4] 600/21
600/23 719/3 719/9
loses [1] 624/8
love [1] 608/1
lunch [6] 717/14
717/17 717/20 718/10

## L

**lunch... [2]** 718/12 718/20

## M

**ma'am [3]** 619/10 705/2 717/17
**made [15]** 603/16 605/6 617/25 619/1 633/4 633/6 649/11 649/12 654/16 672/20 693/22 695/3 696/12 696/18 696/22
**main [1]** 639/5
**make [9]** 603/7 605/7 618/17 619/19 637/21 638/4 666/8 683/13 698/20
**maker [1]** 693/7
**making [7]** 604/20 611/18 618/1 635/20 636/12 663/14 702/1
**mall [2]** 630/10 630/19
**malleable [1]** 711/6
**Manner [2]** 642/4 703/18
**many [15]** 617/16 629/13 631/1 631/3 635/14 685/17 686/3 686/10 686/12 686/13 686/17 686/20 686/21 686/23 687/1
**march [4]** 631/7 631/23 633/11 633/11
**Marshals [1]** 703/25
**mask [2]** 620/7 620/9
**masks [3]** 619/20 619/23 620/14
**matter [5]** 653/14 667/18 684/3 699/16 719/5
**matters [2]** 627/9 690/24
**MATTHEW [1]** 600/17
**may [25]** 613/2 613/3 613/7 617/24 618/21 620/9 625/15 635/19 636/22 637/3 639/18 643/5 651/22 658/7 660/3 660/3 664/8 666/5 666/13 670/5 676/19 680/22 696/1 707/1 718/1
**maybe [1]** 705/7

**MC [1]** 600/19
**McCarthy [2]** 614/6 614/8
**me [24]** 604/8 604/17 604/19 614/17 615/18 618/1 618/17 618/23 643/13 650/25 653/22 665/20 690/4 693/25 705/21 706/12 706/13 706/20 707/6 707/14 707/24 716/5 716/6 717/6
**mean [11]** 603/25 607/14 607/23 619/1 636/25 646/2 653/10 674/1 690/4 691/3 691/14
**means [3]** 633/24 654/14 691/16
**meant [4]** 610/22 623/9 623/9 656/2
**measures [7]** 639/11 639/25 640/5 640/9 640/11 640/13 640/16
**media [3]** 602/22 636/11 713/23
**meet [1]** 674/24
**meeting [6]** 626/16 626/19 668/24 673/18 681/5 713/1
**member [4]** 603/13 606/14 637/11 703/1
**members [25]** 606/19 606/24 609/14 610/15 610/18 615/5 620/5 626/7 636/8 637/7 640/7 640/16 685/18 688/12 689/15 689/23 690/2 690/3 693/8 694/25 695/17 695/23 702/2 712/1 712/11
**memory [1]** 697/9
**mention [1]** 706/11
**mentioned [2]** 611/3 630/17
**messages [1]** 639/5
**met [2]** 614/6 614/9
**Michael [1]** 638/7
**middle [1]** 645/11
**might [27]** 607/4 608/19 608/21 611/20 613/20 625/2 625/5 627/13 629/11 629/18 632/10 633/8 635/12

635/18 659/6 662/6 675/10 677/19 712/16 713/6 713/23 714/18 715/14 715/15 715/24 716/9 718/10
**mind [2]** 609/8 639/2
**minimum [1]** 614/21
**minute [2]** 669/2 673/23
**minutes [3]** 664/2 664/3 664/6
**misconduct [4]** 674/22 675/5 675/11 678/5
**mistaken [1]** 707/6
**modifications [1]** 640/13
**MOLLY [2]** 600/11 602/8
**moment [1]** 705/23
**Monday [2]** 674/15 677/5
**Montgomery [1]** 600/16
**more [14]** 605/16 612/3 633/17 635/22 648/7 648/11 648/17 650/14 663/16 669/1 681/16 682/7 686/4 694/16
**Moreover [3]** 627/4 660/2 672/19
**morning [19]** 600/7 602/2 602/7 602/11 602/12 602/14 602/15 603/3 609/6 615/25 619/10 619/11 619/17 619/18 620/19 620/20 648/7 650/12 650/15
**most [3]** 617/25 714/15 716/8
**motion [4]** 604/18 618/9 698/25 711/9
**motivated [7]** 602/21 607/7 612/2 612/24 631/2 635/12 635/15
**motivations [2]** 603/12 603/21
**motive [1]** 603/18
**motives [2]** 603/13 606/23
**move [3]** 663/23 706/20 707/24
**moved [2]** 602/25 699/20

**moves [7]** 643/1 651/18 657/20 665/23 669/17 676/15 680/7
**moving [1]** 717/8
**Mr [7]** 601/4 615/25 641/5 645/25 676/9 682/1 688/15
**Mr. [143]**
**Mr. Alex [1]** 636/11
**Mr. Bannon [73]** 604/9 604/20 609/11 614/20 616/6 616/10 616/13 616/21 617/6 622/18 625/18 629/5 631/24 632/7 632/13 632/25 633/3 636/7 642/8 643/24 644/4 644/6 644/13 644/20 646/11 646/24 653/8 653/12 653/13 653/21 656/25 658/4 659/22 659/24 661/6 663/3 667/2 667/15 667/16 669/25 670/1 671/2 671/15 672/12 672/13 673/11 673/14 674/12 674/22 674/24 675/3 680/5 680/16 681/7 683/5 683/12 693/14 696/25 697/12 697/25 700/8 701/1 701/10 703/19 708/2 708/16 708/17 708/18 711/5 713/7 713/15 713/19 714/4
**Mr. Bannon's [14]** 641/4 642/22 645/15 646/4 657/8 660/4 661/21 662/15 665/12 672/8 673/4 681/14 682/25 683/2
**Mr. Clark [1]** 654/2
**Mr. Corcoran [11]** 607/13 611/25 613/12 613/22 614/20 669/20 680/11 683/23 697/2 710/9 718/7
**Mr. Costello [30]** 641/7 642/13 642/22 643/15 643/23 644/1 645/15 645/19 646/5 646/7 646/13 646/21 647/21 648/5 649/6 650/25 651/8 651/15 652/6 652/7 653/10

**M**

**Mr. Costello... [9]**
657/9 657/17 659/17
665/20 669/25 676/6
677/3 697/25 708/5
**Mr. Costello's [1]**
655/10
**Mr. Schoen [3]** 618/9
618/24 718/2
**Mr. Thompson [4]**
696/20 697/14 698/4
698/10
**Mr. Trump [1]** 661/6
**Mr. Trump's [4]** 660/2
660/13 660/14 672/12
**Ms [5]** 601/4 663/19
664/12 664/12 676/22
**Ms. [105]** 603/20 604/2
604/12 605/3 607/12
610/19 611/23 614/22
615/10 617/5 617/14
619/4 620/15 620/19
620/25 621/3 621/19
622/21 624/2 624/17
626/2 627/22 627/25
628/9 628/12 630/4
630/7 630/17 632/18
632/21 633/19 633/22
635/23 636/2 637/5
638/6 641/9 641/12
642/15 642/19 643/9
643/12 645/10 647/3
647/19 648/23 649/2
651/1 651/4 651/25
652/8 652/20 653/1
654/19 655/5 655/9
657/15 658/10 659/13
659/15 660/6 660/10
660/24 661/3 661/14
661/18 662/9 662/13
663/23 664/8 664/15
665/16 667/8 669/13
670/9 670/24 672/3
672/6 673/3 673/21
674/6 674/10 676/5
676/23 677/11 679/9
679/22 680/2 680/24
681/2 681/20 681/22
682/17 682/20 683/22
684/2 699/1 699/10
702/25 703/7 707/14
710/1 711/18 717/23
718/1
**Ms. Amerling [59]**

603/20 604/12 605/3
614/22 617/5 620/19
621/3 621/19 624/2
626/2 627/25 628/12
630/7 630/17 632/21
633/22 636/2 637/5
638/6 641/12 642/19
643/12 647/3 647/19
649/2 651/4 651/25
652/8 655/9 657/15
658/10 659/15 660/10
661/3 661/18 662/13
664/15 665/16 667/8
669/13 670/9 670/24
672/6 673/3 673/21
674/10 676/5 677/11
679/9 680/2 681/2
681/22 682/20 684/2
699/10 702/25 703/7
711/18 718/1
**Ms. Amerling's [2]**
604/2 615/10
**Ms. Dunn-Gordon [30]**
620/25 622/21 624/17
627/22 628/9 630/4
632/18 633/19 635/23
641/9 642/15 643/9
645/10 648/23 651/1
652/20 653/1 655/5
659/13 660/6 660/24
661/14 662/9 672/3
674/6 676/23 679/22
680/24 681/20 682/17
**Ms. Lesley [3]** 619/4
664/8 717/23
**Ms. Vaughn [11]**
607/12 610/19 611/23
617/14 620/15 654/19
663/23 683/22 699/1
707/14 710/1
**much [2]** 612/3 710/13
**multi [2]** 651/5 679/19
**multi-page [1]** 679/19
**multi-paged [1]** 651/5
**multiple [3]** 602/19
627/9 701/10
**murder [2]** 606/7
611/3
**must [1]** 655/14
**my [35]** 607/14 608/22
613/1 619/22 619/25
620/4 620/6 652/8
652/18 655/23 664/5
675/22 685/3 686/2

687/16 687/25 688/4
689/13 689/13 689/19
689/24 689/25 693/13
694/11 695/9 697/19
700/4 701/2 701/6
701/9 701/18 705/3
707/9 712/6 713/17
**myself [7]** 642/21
645/18 651/15 652/6
676/10 702/1 714/12
**mystery [2]** 606/12
611/5

**N**

**name [2]** 703/12
703/13
**names [1]** 634/8
**nation [1]** 681/25
**nature [1]** 631/15
**need [9]** 604/5 609/24
615/9 639/8 647/13
675/22 690/18 690/20
717/6
**needed [3]** 648/11
648/17 664/18
**needs [1]** 705/11
**neither [1]** 667/2
**never [4]** 614/1 699/7
700/8 709/21
**new [2]** 624/11 717/8
**news [1]** 602/19
**next [25]** 624/20 626/8
626/22 626/25 628/5
633/17 633/20 642/1
642/4 644/11 645/8
645/13 645/19 653/15
653/16 653/23 655/2
655/7 668/9 668/17
672/4 674/7 706/21
708/5 717/9
**NICHOLS [1]** 600/8
**night [1]** 602/20
**no [45]** 600/3 606/12
610/11 610/21 610/21
610/21 620/4 627/15
628/23 643/3 648/9
650/16 651/20 656/19
660/15 676/17 677/24
678/16 678/20 682/4
683/2 684/4 684/7
684/9 684/24 685/8
687/17 689/5 689/9
689/12 690/6 690/13
697/9 699/24 699/25

703/2 704/25 706/17
708/21 710/15 711/8
711/15 714/2 714/15
717/1
**No. [1]** 700/20
**No. 2 [1]** 700/20
**noncompliance [12]**
655/22 659/5 662/16
662/18 662/19 662/22
668/23 673/6 673/15
674/13 674/20 677/23
**not [137]**
**note [2]** 614/24 618/13
**noted [2]** 602/19
667/16
**notes [2]** 653/21
659/15
**nothing [3]** 608/12
618/18 683/21
**notice [1]** 619/19
**notified [2]** 668/24
678/18
**notify [1]** 681/7
**notifying [1]** 667/20
**November [1]** 704/10
**now [39]** 605/9 606/19
610/21 612/12 613/9
616/25 619/15 620/3
620/3 627/7 627/21
646/19 664/10 671/13
671/15 673/14 675/25
678/18 680/25 684/16
685/11 687/2 687/23
694/11 696/21 699/17
702/4 703/24 704/9
705/21 708/9 709/2
709/21 710/2 711/18
712/14 714/1 717/3
718/19
**Now's [1]** 663/25
**number [11]** 632/12
632/21 633/22 640/2
640/5 685/13 698/19
698/21 698/23 714/11
714/16
**numerous [2]** 626/13
631/5
**NW [2]** 600/12 600/22

**O**

**o'clock [1]** 662/1
**Oath [3]** 636/4 636/10
637/2
**object [2]** 654/20

# O

object... [1] 666/4
objected [1] 666/2
objection [20] 609/8
617/18 618/16 639/16
643/3 651/20 654/22
676/17 685/20 689/17
695/12 695/24 699/9
709/22 710/5 710/6
710/14 711/10 715/19
715/20
objectives [1] 630/13
objects [1] 696/4
obligated [1] 659/3
obligation [2] 659/2
661/6
obtain [1] 635/2
obtaining [3] 672/21
701/13 702/22
obviously [1] 717/10
occasions [1] 627/2
occur [1] 615/7
occurred [1] 640/18
October [78] 621/10
621/14 623/7 623/8
627/20 648/1 648/7
650/12 650/15 651/8
652/12 653/17 657/16
658/12 659/17 661/11
662/1 664/17 665/2
665/6 665/6 665/11
665/17 665/21 666/18
666/19 666/20 668/9
668/15 668/19 668/24
669/15 670/16 670/18
670/19 671/2 671/3
672/1 672/16 673/5
673/15 673/18 674/16
675/6 675/13 675/19
676/6 677/5 677/21
678/7 678/10 678/13
678/17 680/5 681/3
681/15 683/15 693/1
693/5 693/11 693/21
694/12 694/23 695/6
696/17 696/22 697/2
697/6 698/15 698/18
698/20 700/12 700/13
700/20 700/25 702/5
702/11 702/19
October 14 [3] 671/3
700/20 702/19
October 14th [10]
621/14 623/8 661/11

662/1 665/2 665/6
668/9 673/15 700/13
700/25
October 18th [5] 678/7
678/10 678/13 678/17
681/15
October 7 [10] 693/21
694/12 694/23 695/6
696/17 696/22 697/2
697/6 698/18 698/20
October 7th [3] 621/10
659/17 700/12
OFC [1] 600/11
off [2] 620/9 620/21
offense [3] 606/8
696/7 696/7
offered [1] 657/2
office [9] 688/22
688/25 689/14 689/19
689/25 689/25 692/22
692/23 692/24
officer [1] 614/3
offices [3] 689/15
689/21 689/23
Official [2] 600/21
719/3
officials [2] 632/14
634/14
often [1] 691/6
Oh [1] 706/18
Okay [52] 605/18
608/16 612/25 613/8
614/15 614/23 615/22
618/12 645/17 660/18
668/8 672/23 679/19
681/12 684/16 685/10
685/17 686/9 686/16
687/2 687/19 687/23
688/14 689/1 689/8
689/11 690/7 691/22
692/12 694/11 695/21
700/14 700/19 702/16
704/6 704/12 704/15
704/18 704/22 705/24
706/2 708/20 709/15
709/21 712/19 712/25
713/5 713/14 713/21
714/8 717/3 717/16
once [2] 663/22
717/22
one [48] 603/12
603/19 603/21 603/23
603/23 604/2 604/15
604/23 605/16 606/12

609/7 612/15 613/15
614/3 614/16 614/24
616/1 619/19 620/4
624/13 633/13 634/14
640/13 656/13 677/18
681/5 681/6 681/9
681/9 681/10 681/11
681/12 685/15 690/1
694/16 696/12 698/19
700/11 700/12 708/13
709/2 711/19 713/3
713/11 715/21 717/1
717/22 718/4
one-week [1] 677/18
ones [1] 669/7
ongoing [2] 632/11
661/6
only [8] 603/17 627/12
658/17 682/6 701/3
705/11 705/17 715/9
opened [4] 616/9
618/6 710/25 710/25
opening [5] 602/20
605/5 608/10 608/11
618/11
operating [1] 702/13
opportunity [2] 675/4
716/18
opposition [1] 630/11
order [8] 605/10
623/21 638/3 639/7
639/24 667/14 697/11
718/6
organizations [2]
633/13 636/18
organizing [1] 630/15
other [51] 603/19
604/15 608/13 609/7
610/16 610/17 614/24
616/2 626/9 627/2
627/9 629/10 632/16
633/7 635/2 635/5
637/7 640/13 640/16
645/6 654/8 656/16
659/7 660/17 667/15
668/4 668/6 669/7
670/12 682/5 683/18
688/10 693/4 701/15
701/16 702/16 702/18
702/21 714/21 714/25
715/5 715/10 715/14
715/17 715/18 715/23
716/1 716/2 716/11
716/20 717/2

others [3] 605/3 629/5
654/9
otherwise [1] 670/4
ought [1] 616/2
our [22] 607/24 608/1
608/9 609/9 609/22
617/21 624/6 643/20
646/10 647/19 655/24
663/16 665/25 665/25
668/12 677/18 680/9
682/24 686/12 686/21
716/21 717/14
out [22] 605/8 608/5
612/19 620/13 639/7
643/23 647/1 690/4
691/24 692/8 692/8
692/15 699/24 700/1
703/6 703/13 704/6
704/19 705/5 706/4
707/18 718/6
outside [8] 602/17
605/15 607/10 613/5
634/10 702/4 702/7
702/20
outstanding [1]
618/16
over [6] 669/3 679/2
685/23 697/14 718/10
718/12
overarching [2]
702/14 702/17
overlap [2] 714/24
715/17
Overruled [3] 639/24
689/18 695/13

# P

p.m [13] 643/17
652/12 663/20 674/15
675/19 677/5 677/21
678/6 678/10 678/13
678/17 717/20 718/20
package [1] 710/23
page [68] 601/2 601/8
621/4 621/16 621/19
621/24 622/11 625/15
627/23 628/5 633/18
633/20 641/6 641/9
641/12 641/13 642/19
643/8 648/24 651/12
651/14 652/1 652/19
653/3 655/1 655/7
658/16 660/7 660/25
660/25 661/15 667/5

**P**

**page... [36]** 667/9
672/24 673/1 674/7
676/22 676/24 679/19
679/23 688/7 689/7
689/9 689/11 690/20
691/22 692/1 692/13
703/5 704/2 705/10
705/12 705/16 705/17
705/20 705/21 706/12
706/14 706/21 706/22
706/23 708/21 708/21
709/3 710/15 711/15
714/1 714/14
**paged [1]** 651/5
**pages [9]** 645/6
652/16 655/6 674/8
676/3 680/24 706/16
706/17 718/11
**paid [1]** 631/14
**paper [2]** 639/4 692/10
**paragraph [43]** 623/16
623/17 624/20 624/25
625/20 625/24 627/7
628/7 628/13 654/3
655/7 655/10 659/13
659/18 660/7 660/11
660/25 661/4 661/13
661/16 662/8 662/13
662/21 667/6 667/9
667/9 670/22 670/24
671/14 672/4 672/7
673/1 673/3 673/10
674/8 674/11 675/2
682/23 705/12 709/3
709/15 712/15 712/20
**paragraphs [4]** 622/22
682/18 710/14 715/12
**paralegal [1]** 602/9
**part [21]** 609/9 624/6
624/18 629/6 645/4
653/23 656/13 656/16
659/18 668/1 672/23
681/23 685/7 692/14
692/23 696/17 710/23
714/16 715/3 716/1
716/17
**partial [1]** 649/14
**participants [2]** 631/7
631/23
**participate [4]** 622/10
629/22 695/5 695/7
**participated [4]** 631/1
635/15 636/9 688/10

**participation [1]**
631/12
**particular [9]** 604/9
604/11 607/18 612/9
705/10 705/12 705/12
706/13 716/19
**particularly [1]** 714/19
**parties [1]** 605/1
**partisan [2]** 604/22
615/14
**partly [1]** 620/13
**parts [2]** 660/18 692/7
**passed [4]** 650/20
652/15 670/17 670/20
**passing [1]** 650/17
**Patel [2]** 634/3 634/13
**peaceful [4]** 623/20
624/4 634/25 639/22
**penalties [2]** 640/17
659/7
**pending [2]** 677/20
707/17
**Pennsylvania [1]**
637/12
**people [9]** 602/22
602/23 605/24 613/20
619/25 620/8 620/13
633/15 638/13
**people's [1]** 715/5
**Percenters [3]** 636/5
636/10 637/3
**Perfect [1]** 706/9
**perhaps [2]** 614/22
701/16
**Peril [3]** 713/2 713/10
713/12
**period [1]** 628/24
**permission [1]** 647/5
**permit [1]** 618/10
**permitted [1]** 616/16
**permitting [2]** 630/13
630/23
**Perry [3]** 637/7 637/9
637/11
**persisted [1]** 673/11
**person [16]** 603/23
611/11 611/12 630/14
685/13 691/3 691/6
691/8 691/15 692/8
693/14 694/12 694/22
698/24 698/25 702/19
**personal [13]** 603/21
628/18 628/19 628/20
628/20 629/2 629/2

629/4 629/10 629/10
629/11 658/23 663/4
**personally [5]** 641/2
669/6 670/13 686/17
688/9
**persuade [4]** 626/7
635/6 637/13 638/13
**persuasive [2]** 606/18
615/6
**pertain [1]** 714/5
**pertinency [1]** 613/14
**pertinent [5]** 612/6
613/16 613/17 613/19
714/19
**phase [1]** 640/4
**phone [1]** 646/6
**phones [1]** 628/19
**physical [2]** 689/19
689/25
**pick [5]** 620/23 700/12
700/14 702/11 702/19
**picked [2]** 697/7
700/10
**piece [5]** 606/4 606/12
606/13 607/3 692/9
**place [9]** 603/8 611/10
629/21 630/21 633/9
634/7 639/25 661/21
692/21
**plan [2]** 610/17 627/2
**planning [4]** 630/13
630/15 630/23 664/23
**plans [5]** 605/10
605/15 626/14 633/24
671/6
**platforms [1]** 636/12
**played [2]** 629/6
636/18
**please [48]** 602/5
619/4 622/22 623/16
628/12 630/5 631/10
632/19 633/20 641/10
642/17 643/9 644/16
649/9 649/23 651/2
652/8 654/3 655/9
659/13 659/18 660/7
660/10 660/24 661/3
661/8 661/14 661/18
662/9 662/12 662/14
662/21 665/14 667/5
667/8 671/13 672/3
672/6 672/25 672/25
673/10 674/10 674/14
676/3 677/11 681/19

682/22 686/14
**podcast [5]** 632/22
632/23 632/24 633/2
633/3
**point [12]** 610/3
611/24 615/12 615/20
617/12 617/18 618/2
618/8 618/24 619/2
619/2 706/7
**points [1]** 699/2
**police [3]** 613/8 614/2
615/21
**policies [1]** 623/23
**political [8]** 602/24
603/11 605/17 606/20
606/23 608/8 615/14
615/14
**politicalize [1]** 604/21
**politically [4]** 602/21
607/7 612/2 612/24
**politically-motivated**
**[1]** 602/21
**politicizing [1]** 607/16
**politics [5]** 602/25
604/4 604/22 607/6
615/15
**portion [2]** 672/9
706/13
**portions [6]** 689/2
689/4 692/16 694/17
708/11 711/21
**position [19]** 614/19
614/20 625/18 625/23
638/1 656/6 656/8
656/22 659/24 660/15
665/25 667/17 667/17
669/19 669/24 679/4
680/9 680/15 698/3
**positions [3]** 614/23
658/3 658/4
**possession [3]** 628/17
629/11 650/2
**possibility [1]** 663/2
**possible [4]** 649/12
649/13 664/2 702/23
**potential [9]** 604/6
606/23 610/7 623/14
626/14 631/18 636/16
636/20 713/16
**potentially [5]** 627/2
640/17 654/7 701/11
701/15
**Powell [1]** 638/8
**power [8]** 623/21

**P**

**power...** **[7]** 624/5 624/7 624/8 624/10 626/20 634/25 639/22
**practice [2]** 691/17 695/21
**preceded [1]** 631/5
**precedent [1]** 660/17
**preceding [1]** 630/21
**preclude [1]** 604/20
**precluded [1]** 615/1
**prepared [1]** 654/11
**preparing [1]** 634/17
**presence [3]** 602/17 605/15 607/11
**present [13]** 602/14 611/13 626/6 628/25 684/24 685/4 690/5 695/11 697/12 697/15 704/10 704/13 712/12
**presented [4]** 609/24 697/20 697/22 700/8
**preserve [2]** 616/3 667/14
**preserved [2]** 618/8 654/22
**President [27]** 624/7 624/9 624/11 624/11 627/1 630/11 631/12 631/14 631/15 631/16 631/21 631/25 632/11 632/14 634/10 653/19 654/10 654/25 655/12 659/21 667/12 667/17 667/23 672/10 672/16 672/20 713/8
**President Trump [2]** 631/14 631/15
**President Trump's [1]** 631/16
**President's [2]** 631/19 632/5
**presidential [5]** 624/16 630/12 633/25 640/15 654/9
**pressure [1]** 637/21
**prevent [3]** 604/24 639/25 672/21
**previous [2]** 669/8 681/15
**previously [3]** 618/11 667/16 669/22
**primarily [1]** 685/14
**principle [1]** 702/24

**principles [1]** 607/5
**print [1]** 703/12
**printed [1]** 703/13
**prior [6]** 618/10 658/1 681/5 682/24 713/21 713/22
**private [2]** 632/8 638/11
**privilege [17]** 617/8 654/13 654/14 654/16 655/16 660/15 661/5 667/14 667/21 668/6 672/11 672/17 672/20 673/13 682/10 682/11 683/18
**privileged [1]** 659/23
**privileges [12]** 654/8 654/10 654/11 655/12 655/14 655/24 660/3 667/15 673/14 684/24 685/1 685/5
**probably [1]** 707/2
**probing [1]** 710/11
**problems [1]** 616/3
**procedure [4]** 649/20 650/11 685/1 685/3
**procedures [10]** 623/23 662/24 671/25 673/19 673/22 673/24 674/2 678/22 679/12 691/11
**proceeding [1]** 675/6
**proceedings [1]** 719/5
**process [16]** 624/6 648/17 654/10 693/20 701/24 706/25 711/25 712/4 712/10 714/10 714/12 714/17 716/4 716/17 716/21 716/22
**processes [1]** 605/6
**produce [18]** 623/6 623/13 628/16 630/8 661/7 661/8 671/2 671/16 672/13 673/5 673/12 690/23 692/20 693/10 693/11 693/14 693/22 694/23
**produced [3]** 608/2 650/5 668/16
**produces [1]** 691/14
**producing [2]** 667/15 670/18
**production [12]** 621/9 644/21 644/25 649/3

649/14 649/15 649/24 654/18 692/19 692/21 695/7 696/17
**proffer [4]** 605/14 607/10 609/1 711/5
**promote [1]** 634/11
**proof [15]** 625/19 641/13 689/6 689/8 690/2 703/6 703/7 704/2 704/6 704/19 705/5 706/4 707/8 707/18 707/20
**properly [1]** 699/7
**proposals [1]** 633/24
**prosecution [4]** 602/21 605/17 674/5 675/2
**prosecutors [2]** 704/11 704/12
**protect [3]** 640/12 684/24 685/5
**protected [1]** 654/7
**protection [1]** 654/18
**protections [1]** 603/7
**Proud [3]** 636/4 636/10 637/2
**prove [4]** 617/20 625/20 704/3 710/20
**provide [26]** 621/7 627/20 628/2 629/14 639/12 641/2 648/1 648/2 653/24 660/4 667/2 669/6 671/3 673/13 673/17 675/4 675/14 675/20 678/4 678/11 691/18 710/19 710/24
**provided [17]** 625/17 625/18 640/25 642/11 649/5 649/14 677/22 678/14 678/16 703/15 708/15 708/16 708/18 709/18 709/21 710/17 710/23
**provides [4]** 605/13 691/3 691/6 712/1
**providing [5]** 640/17 641/7 664/20 664/24 683/10
**provisions [1]** 663/9
**public [9]** 624/15 632/12 634/9 635/5 637/20 700/16 711/13

712/22 712/25
**publicizing [1]** 633/14
**publicly [1]** 636/12
**publish [8]** 643/2 651/19 657/21 665/24 669/18 676/16 680/8 715/2
**published [10]** 643/5 651/22 658/7 666/6 666/13 670/5 676/19 680/22 690/15 708/24
**pull [1]** 690/13
**pulled [1]** 708/24
**purported [2]** 661/5 672/12
**purportedly [2]** 654/5 713/15
**purporting [1]** 653/24
**purports [2]** 654/1 654/25
**purpose [14]** 609/20 621/23 622/2 625/4 625/17 658/2 663/11 668/20 668/22 669/23 680/14 680/18 681/13 683/9
**purposes [2]** 680/13 704/24
**Pursuant [1]** 622/25
**pursue [1]** 718/8
**put [8]** 638/3 639/25 647/19 694/12 695/18 696/22 701/12 715/5
**putting [7]** 622/10 629/22 638/18 656/17 657/4 669/3 708/10

**Q**

**Quash [1]** 698/25
**question [55]** 603/6 603/8 603/21 603/23 604/2 604/10 605/8 607/9 609/1 609/2 610/20 610/23 610/24 612/12 613/1 614/9 615/18 639/18 646/15 651/11 685/4 686/2 687/16 687/25 688/4 689/3 691/25 693/19 693/24 694/11 694/14 694/16 694/17 697/19 699/4 699/18 699/22 699/23 700/10 700/11 700/13 705/3 705/25

**Q**

question... [12] 706/2
707/9 707/11 707/14
707/17 710/10 711/2
713/17 715/13 715/21
716/3 718/7
questioning [3]
609/10 613/21 718/8
questions [25] 605/2
605/14 606/2 607/10
607/17 608/19 608/20
608/24 610/24 612/5
612/9 613/2 613/4
613/7 614/11 614/25
617/5 621/12 661/23
696/5 699/12 700/5
700/5 700/9 712/6
Quiana [1] 602/9
quick [1] 717/22
quickly [1] 707/7
quite [2] 610/3 664/5
quote [1] 654/1
quoted [1] 627/4
quotes [1] 653/21

**R**

radio [1] 650/14
raise [4] 602/17 668/4
699/8 710/6
raised [2] 610/23
616/2
raises [1] 616/25
rally [13] 630/9 630/16
630/19 630/20 630/24
631/4 631/6 631/13
631/17 631/20 631/22
633/14 635/7
random [1] 606/14
range [4] 628/23
639/15 639/24 671/4
ranking [1] 634/14
rather [2] 609/2 609/3
rationale [1] 656/9
reach [2] 646/25
667/11
reached [3] 643/23
696/6 699/3
read [27] 623/17
628/12 631/10 644/16
649/9 649/23 654/3
655/9 659/18 660/10
660/18 661/3 661/18
662/12 667/8 670/25
671/13 672/6 673/10

674/10 677/11 681/22
682/22 705/2 707/7
709/15 713/12
reading [3] 653/22
662/21 718/5
reads [1] 630/9
ready [1] 706/20
realize [1] 664/4
really [3] 699/16
714/22 718/3
reason [21] 603/3
603/18 616/5 616/11
616/12 617/2 617/3
617/4 618/5 624/21
625/1 625/10 626/2
627/12 646/13 659/9
660/20 668/5 677/22
682/6 713/18
reasonably [1] 650/3
reasons [7] 616/20
616/23 625/1 625/5
682/25 712/15 712/21
recall [14] 625/16
688/16 690/10 693/3
695/14 696/21 701/24
704/10 704/21 706/7
707/23 711/22 712/7
712/13
receive [5] 650/18
650/24 665/7 665/19
667/12
received [6] 653/18
653/25 665/11 675/22
699/8 700/3
receiving [4] 656/5
687/12 687/17 714/19
recess [7] 664/7
717/13 717/14 717/14
717/20 718/19 718/20
recipient [9] 622/1
622/4 623/12 691/11
692/3 692/5 692/6
716/9 716/18
recipients [4] 714/16
715/1 715/10 716/2
recognize [1] 607/16
recollection [12]
652/18 675/23 689/13
695/9 701/2 701/6
701/9 701/18 705/3
705/16 706/10 707/10
recommend [3]
623/22 683/4 695/16
recommendation [2]

683/6 702/2
reconsider [1] 618/10
record [18] 602/6
605/9 616/3 618/9
618/18 618/25 619/16
639/23 663/13 664/11
666/9 700/2 700/17
706/8 709/3 711/13
717/15 719/5
records [17] 612/6
629/25 632/10 632/21
633/1 633/10 633/23
635/4 635/8 639/4
639/4 648/2 654/5
661/8 686/12 686/21
690/9
redacting [2] 618/14
618/18
refer [6] 603/14 606/20
663/9 679/13 682/21
683/12
reference [20] 623/11
624/2 624/4 626/17
627/19 629/4 630/18
632/23 632/24 634/4
634/5 636/6 663/5
663/5 671/8 671/10
673/7 673/21 673/22
679/1
referenced [3] 653/7
672/1 713/1
references [2] 653/20
654/12
referral [6] 605/23
606/14 606/22 614/25
662/25 668/25
referred [1] 707/21
referring [18] 624/5
628/22 629/9 633/11
636/21 641/14 643/22
644/11 662/17 662/20
665/18 669/14 671/22
671/23 674/18 675/1
675/8 702/7
refers [3] 674/4 675/2
712/15
reflect [1] 614/18
reflected [1] 695/3
reflects [1] 666/9
refresh [3] 675/22
705/3 707/10
refreshes [2] 705/16
706/10
refusal [6] 660/4

671/18 671/20 673/11
683/1 683/3
refusing [5] 623/15
656/9 657/2 663/21
673/15
regard [9] 684/13
685/12 687/24 688/7
691/13 697/6 698/12
708/9 716/12
regarding [4] 627/9
636/4 644/13 708/2
Regardless [1] 661/5
regulations [7] 623/23
639/8 640/14 708/18
709/7 709/20 710/17
reiterate [1] 668/22
reiterated [2] 631/6
631/22
rejected [3] 657/1
660/19 682/13
rejecting [2] 656/22
659/9
relate [5] 630/1 630/24
633/2 639/23 640/18
related [10] 629/9
629/20 630/24 634/21
635/18 639/12 655/24
676/11 682/9 716/8
relates [2] 619/20
632/21
relating [24] 621/7
623/20 626/15 628/22
630/8 631/15 631/19
632/10 632/21 633/1
633/10 633/23 635/4
635/8 636/8 638/24
654/6 671/4 674/13
674/19 674/20 675/5
675/15 678/5
relation [4] 626/8
638/10 652/13 662/2
relations [1] 635/5
relationship [6]
636/16 636/17 636/20
636/21 636/21 637/2
relationships [1]
638/22
relevance [7] 685/20
689/17 695/12 695/24
696/5 709/23 710/17
relevant [26] 603/14
603/17 613/22 615/11
615/16 623/22 624/22
625/2 625/5 626/4

# R

relevant... [16] 626/24 627/13 629/8 631/20 635/8 636/16 637/10 637/18 638/15 638/15 687/14 696/6 697/3 699/21 701/15 701/16
relied [2] 616/22 617/7
relies [2] 659/19 659/20
rely [1] 672/10
remains [2] 665/25 680/9
remarks [2] 631/17 631/19
remember [7] 684/19 695/22 698/22 707/20 712/5 712/9 712/23
remind [4] 621/3 621/5 621/11 661/24
reminds [1] 659/3
repeated [3] 633/4 636/12 715/14
report [1] 683/7
reported [3] 600/21 602/20 626/13
reportedly [2] 637/13 638/2
Reporter [2] 600/21 719/3
reporting [1] 713/23
reports [4] 602/19 632/12 712/22 712/25
represent [2] 609/16 643/21
representative [8] 603/22 614/5 614/8 627/15 637/7 637/9 637/11 640/8
Representative McCarthy [1] 614/8
Representatives [5] 604/3 623/1 637/12 683/5 692/18
represented [3] 646/9 646/24 646/25
representing [3] 643/24 644/3 653/12
request [10] 649/10 655/17 655/20 655/24 659/25 672/12 677/17 682/5 685/24 718/4
requested [1] 716/13
requesting [2] 659/22

681/16
requests [1] 638/24
require [4] 605/14 608/25 620/12 629/13
required [22] 607/10 618/3 618/23 620/7 620/10 621/6 627/20 628/1 628/16 630/8 639/12 640/23 647/25 649/17 661/12 661/25 665/1 665/3 673/8 701/19 702/10 709/17
requires [4] 623/12 635/4 650/7 694/9
requiring [1] 612/2
researched [1] 629/20
reserve [1] 614/21
resolution [8] 622/25 623/2 623/3 668/25 674/4 674/25 681/6 709/19
resolved [3] 617/18 618/16 655/16
respect [11] 605/1 614/11 632/6 633/24 636/24 653/6 656/6 668/17 672/11 688/6 701/11
respectfully [1] 677/17
respond [5] 655/17 661/22 662/15 681/14 716/18
responding [2] 666/21 678/4
response [6] 617/14 652/9 659/16 663/21 677/18 701/20
responsibilities [3] 634/15 682/3 685/12
responsible [1] 685/14
responsive [8] 648/14 650/3 650/5 661/8 716/15 716/19 716/20 716/24
rest [5] 615/10 629/12 644/16 671/13 673/10
restate [1] 657/23
result [1] 662/25
results [5] 630/12 633/25 637/25 671/7 671/9
retire [1] 619/21
return [1] 649/11
Returning [1] 652/16

review [6] 685/16 706/9 706/14 706/16 712/1 712/11
reviewed [3] 629/20 688/11 711/20
reviewing [3] 631/8 687/13 687/17
revisit [1] 667/16
Riane [1] 602/13
right [73] 609/9 615/8 616/25 622/24 626/10 627/17 628/4 628/7 630/3 633/22 635/22 641/12 641/24 642/19 643/7 644/15 645/8 647/2 647/19 649/8 650/23 651/25 652/19 652/22 652/23 652/25 653/5 654/12 654/24 655/4 655/9 656/11 656/20 657/10 658/16 659/15 660/6 660/10 660/23 662/12 663/9 663/15 663/19 664/5 665/22 666/23 667/4 668/15 669/1 669/10 670/21 674/6 675/25 676/22 677/6 680/2 681/10 681/18 681/19 681/22 682/15 692/22 692/23 700/4 703/11 703/14 705/2 705/20 707/8 710/8 711/14 712/24 717/3
rights [2] 684/24 685/5
rise [1] 717/19
Road [1] 600/15
roadmap [2] 715/3 715/7
Robert [3] 641/1 642/8 703/19
Robert Costello [2] 641/1 703/19
role [8] 622/9 629/22 632/5 634/16 636/18 656/17 657/3 687/24
roles [2] 629/7 701/10
room [6] 619/21 619/22 632/22 632/23 633/1 633/3
ROSE [1] 600/10
row [1] 620/5
RPR [1] 600/21
Rudolph [1] 638/7

rule [7] 605/13 639/8 710/5 710/19 711/3 711/7 718/9
ruled [3] 709/22 710/4 711/2
rules [10] 605/12 623/1 623/23 645/1 667/18 708/15 708/16 709/12 710/3 710/17
ruling [5] 607/14 609/5 609/18 613/1 667/12
rulings [2] 617/25 618/10
run [2] 616/2 632/24
running [1] 620/4

# S

said [26] 604/18 608/18 609/6 611/7 612/4 613/23 617/16 618/5 625/15 631/2 635/15 644/10 646/1 647/15 653/9 666/12 682/20 684/17 689/1 690/25 691/1 693/18 695/15 696/15 698/17 698/21
same [10] 626/18 638/1 658/13 668/6 669/19 669/21 671/25 680/13 681/4 682/11
sample [1] 627/16
satisfied [1] 649/16
saw [5] 627/19 640/13 654/12 664/17 670/12
say [18] 608/12 610/9 613/12 613/22 614/5 617/3 618/21 636/20 643/19 644/12 686/13 691/20 692/12 701/5 703/3 705/22 709/6 716/19
saying [6] 610/5 625/23 673/3 686/3 693/9 698/2
says [47] 610/9 611/9 622/24 623/5 623/18 626/5 626/25 627/4 628/14 629/1 631/12 635/4 641/21 644/18 645/23 649/10 649/24 652/7 652/8 653/17 654/5 655/11 655/19 659/20 660/12 661/5

**S**

says... **[21]** 661/20 662/14 662/22 667/11 671/1 671/15 672/8 673/11 674/1 674/12 677/13 681/24 682/24 690/22 690/23 691/16 692/19 703/1 703/9 703/12 709/17

schedule **[16]** 623/7 627/19 627/25 629/12 644/24 690/24 692/21 695/18 714/2 714/3 714/8 714/14 714/15 714/23 715/9 715/24

scheduled **[1]** 671/17

schedules **[2]** 689/22 715/3

SCHOEN **[7]** 600/14 600/15 602/13 615/25 618/9 618/24 718/2

scope **[3]** 615/19 627/10 667/13

Scott **[3]** 637/7 637/9 637/11

SCOTUS **[1]** 603/16

scratch **[1]** 715/25

screen **[1]** 705/11

script **[1]** 608/1

sealed **[1]** 711/12

search **[3]** 650/1 650/4 650/8

seated **[1]** 704/12

second **[12]** 605/19 610/22 623/16 653/2 654/19 672/6 679/23 682/15 682/23 703/5 713/5 713/6

Section **[2]** 709/19 709/21

Sections **[2]** 662/25 673/20

see **[13]** 615/9 622/17 641/16 642/1 643/16 647/12 649/3 689/23 703/1 705/19 705/22 706/10 707/21

seeing **[1]** 705/11

seeking **[6]** 612/6 622/5 625/8 635/1 636/15 678/4

seeks **[3]** 627/8 654/5 672/22

seem **[1]** 700/2

seemed **[1]** 618/1

seems **[5]** 603/2 604/17 608/8 614/17 710/2

seen **[1]** 703/4

Select **[74]** 620/22 622/3 622/5 623/5 623/18 624/20 627/8 627/10 629/19 631/8 634/15 639/20 640/3 644/18 652/10 656/8 658/20 658/25 659/4 660/1 661/7 661/20 661/23 662/14 662/23 671/3 671/17 672/14 672/15 672/18 672/21 673/4 673/12 673/16 673/17 674/15 674/16 674/21 675/4 676/7 680/4 681/24 683/3 683/7 684/3 684/19 684/23 685/4 685/13 685/18 685/23 686/5 686/11 686/18 686/24 687/3 687/6 687/9 687/12 687/14 687/16 688/12 689/21 692/22 693/7 693/8 693/15 693/16 695/1 702/10 702/18 709/12 713/6 713/9

selected **[1]** 700/25

selection **[1]** 702/20

Senate **[1]** 624/14

send **[2]** 650/22 657/7

sending **[4]** 644/8 657/4 664/19 668/20

senior **[1]** 701/25

sense **[4]** 618/4 622/4 625/7 684/23

sensitive **[1]** 654/18

sent **[43]** 621/24 622/6 645/13 645/14 650/20 651/8 652/11 652/12 657/11 658/13 658/23 658/25 659/17 662/2 662/4 663/12 663/22 664/16 664/22 665/5 667/20 668/18 669/14 670/12 670/15 675/13 676/7 676/13 677/3 680/4 681/2 681/5 681/7 681/9 681/11 682/20 683/15 683/16

700/2 714/16 714/24 714/25 715/9

sentence **[5]** 626/25 653/16 661/19 662/13 670/25

sentences **[1]** 661/4

separate **[1]** 700/10

September **[14]** 642/10 642/24 642/25 643/8 643/16 645/14 645/20 647/20 647/22 648/5 652/10 688/19 689/16 690/7

series **[1]** 609/16

serious **[2]** 675/1 683/12

serve **[1]** 703/25

served **[7]** 641/21 653/20 703/12 705/6 706/5 706/6 707/19

server **[2]** 642/2 703/10

serves **[1]** 621/24

service **[26]** 641/13 642/4 644/9 644/14 644/22 645/24 689/6 689/9 690/2 703/6 703/7 703/18 704/2 704/3 704/6 704/7 704/19 704/20 705/5 706/5 707/8 707/18 707/21 707/25 708/2 708/7

session **[4]** 600/7 624/14 634/7 690/8

set **[4]** 622/25 623/7 673/19 701/22

sets **[1]** 608/5

Seventeen **[1]** 629/15

several **[7]** 636/8 647/4 685/15 704/11 704/11 711/19 714/25

shall **[3]** 649/12 649/14 709/17

she **[19]** 604/14 609/13 610/9 610/10 610/11 610/13 610/23 611/3 612/15 620/9 696/21 698/21 701/5 705/11 705/25 706/14 710/13 710/15 710/19

she's **[1]** 705/11

shed **[1]** 675/10

shine **[1]** 635/20

should **[16]** 606/6 607/9 614/2 615/1 619/6 619/25 620/1 672/20 675/5 693/10 693/21 694/20 694/23 695/6 700/22 717/24

shouldn't **[5]** 603/8 603/21 603/23 604/2 701/17

show **[9]** 604/9 604/24 616/7 617/17 625/22 668/9 676/2 704/23 713/15

showing **[4]** 617/4 705/17 705/18 706/12

sic **[1]** 665/24

side **[6]** 603/19 604/15 655/6 655/6 674/7 674/7

sidebar **[7]** 695/25 696/2 696/3 700/15 709/24 709/25 711/11

sign **[10]** 693/15 694/3 694/5 694/7 695/4 698/5 698/10 703/2 703/4 712/11

signatory **[1]** 612/13

signature **[9]** 642/1 692/17 694/9 697/14 699/11 699/13 702/25 703/9 703/10

signed **[12]** 612/16 641/24 649/25 689/1 689/4 689/8 689/11 690/2 699/15 699/16 700/7 712/12

significant **[1]** 684/22

signs **[3]** 622/13 622/15 694/1

silence **[1]** 650/15

SILVERMAN **[1]** 600/18

similar **[1]** 641/16

similarities **[1]** 684/17

since **[2]** 616/4 655/11

single **[2]** 607/9 671/16

sir **[17]** 639/19 684/7 684/15 685/7 689/23 690/6 693/3 693/23 695/10 701/23 704/21 707/21 711/22 713/13 715/2 716/3 716/17

sit **[1]** 667/23

**S**

**sitting [3]** 695/22 700/24 715/13
**situation [1]** 605/13
**six [1]** 662/4
**Sixth [1]** 609/9
**skirt [1]** 605/10
**slammed [1]** 603/25
**slightly [1]** 693/19
**SLUTKIN [1]** 600/18
**so [117]** 602/24 603/7 603/10 603/20 604/8 604/12 605/2 605/15 606/13 607/4 607/8 608/17 609/8 610/2 610/19 610/21 611/23 612/18 613/1 613/9 613/12 613/21 615/11 615/20 616/2 616/3 616/14 616/14 617/5 618/8 618/8 620/5 620/8 620/15 620/23 622/13 622/19 622/24 624/10 624/20 625/7 625/15 627/11 627/21 629/7 629/12 630/4 630/23 632/9 634/19 638/21 646/9 647/5 647/6 647/19 647/22 648/10 649/17 650/6 650/17 652/22 653/1 653/23 654/12 655/19 656/16 656/21 658/1 658/16 658/19 659/12 660/18 661/13 662/2 663/15 663/19 664/6 666/17 668/8 668/12 668/15 675/2 675/13 677/19 677/21 681/2 681/12 690/22 691/5 691/16 691/19 692/9 692/12 693/9 693/20 693/25 697/23 698/25 700/4 701/18 702/13 702/14 707/21 708/12 709/3 709/12 710/9 710/10 714/12 714/20 715/4 716/9 717/25 718/7 718/14 718/15 718/16
**sole [1]** 660/12
**solely [1]** 606/20
**solely-political [1]** 606/20

**some [24]** 602/23 605/2 606/11 606/13 609/8 609/8 611/4 613/6 613/7 614/10 617/17 622/19 624/25 629/6 630/1 639/5 639/10 640/7 640/9 664/4 685/11 692/12 703/4 713/7
**somebody [2]** 675/1 691/14
**somehow [9]** 603/14 603/14 605/24 606/18 612/23 613/22 615/6 655/24 710/3
**someone [5]** 606/8 608/21 613/4 641/3 698/19
**something [9]** 604/19 609/3 611/3 611/5 640/1 666/12 691/23 697/24 714/8
**sometime [1]** 688/17
**sometimes [3]** 691/8 691/8 703/24
**sorry [5]** 616/1 651/11 666/20 689/3 698/6
**sort [3]** 614/3 641/6 691/19
**sought [4]** 613/17 646/23 646/25 660/1
**source [3]** 713/4 713/9 713/17
**sources [2]** 713/3 713/11
**spans [1]** 674/8
**speak [6]** 701/23 710/14 711/6 712/16 713/6 714/17
**speakers [1]** 631/5
**Special [1]** 602/10
**specialist [1]** 602/9
**specific [22]** 604/6 604/6 605/14 609/3 615/3 640/5 648/17 663/9 673/13 688/16 689/25 692/5 695/15 701/24 702/19 712/7 715/5 715/12 715/12 715/15 716/9 717/10
**specifically [8]** 639/1 669/2 687/24 691/13 697/5 711/22 712/5 718/12

**specifics [2]** 712/9 715/16
**specified [3]** 628/23 640/4 649/11
**speed [1]** 707/3
**spoke [3]** 687/2 710/16 713/16
**staff [17]** 609/13 620/6 622/9 685/13 685/15 685/19 686/5 686/11 688/10 694/25 695/16 701/25 711/19 711/25 712/10 713/10 714/11
**stage [2]** 610/18 614/18
**stand [6]** 607/24 608/11 609/12 611/8 611/8 698/21
**start [9]** 607/13 608/20 611/23 616/5 628/8 651/25 652/19 676/22 688/14
**started [1]** 684/16
**starting [2]** 643/8 701/5
**starts [6]** 624/20 642/24 659/18 660/8 670/25 673/3
**stated [6]** 623/14 637/23 660/2 666/1 672/10 682/25
**statement [2]** 606/1 658/5
**statements [4]** 633/6 633/7 635/12 635/20
**states [13]** 600/1 600/2 600/8 602/3 602/9 630/22 644/19 653/15 653/19 663/6 671/5 673/20 674/5
**stating [4]** 627/5 632/12 650/1 696/21
**statute [7]** 659/6 660/16 662/20 663/10 671/24 671/25 674/3
**staying [1]** 626/16
**step [4]** 675/1 681/8 683/10 683/12
**STEPHEN [9]** 600/5 602/4 602/14 628/15 641/17 643/21 652/9 653/6 677/14
**steps [2]** 606/3 611/9
**Steve [16]** 645/24

684/5 684/9 693/10 693/21 694/20 694/22 700/21 708/6 712/16 714/25 715/9 715/24 716/13 716/14 716/23
**stick [1]** 608/7
**still [7]** 656/7 660/21 687/4 687/6 687/9 687/12 687/17
**stipulation [1]** 639/16
**stolen [10]** 631/3 631/7 631/23 633/5 634/12 635/6 635/16 635/21 636/14 638/13
**stop [2]** 608/25 609/5
**stored [2]** 628/18 629/1
**straight [1]** 647/7
**strategies [1]** 626/15
**Street [2]** 600/12 600/18
**subcommittee [2]** 690/25 691/2
**subject [3]** 654/20 659/6 684/3
**subjects [1]** 625/24
**submit [2]** 649/25 674/14
**subpoena [166]**
**subpoenaed [5]** 629/5 696/8 696/19 697/10 698/24
**subpoenaing [1]** 603/22
**subpoenas [16]** 612/16 656/14 686/17 686/22 686/24 687/1 695/19 702/21 703/25 714/18 714/20 715/6 715/15 715/18 716/1 716/4
**successors [1]** 637/25
**such [13]** 604/21 607/15 628/17 639/4 640/15 655/16 667/11 672/17 672/19 675/11 678/16 690/8 695/18
**sufficient [1]** 637/24
**suggest [5]** 606/11 606/17 607/6 614/1 699/25
**suggested [1]** 633/8
**suggesting [1]** 706/5
**suggestion [1]** 611/4

**S**

**suggests [2]** 615/4
615/4
**Suite [1]** 600/15
**summoned [1]** 673/17
**supervising [1]** 656/17
**support [4]** 630/10
640/10 660/17 683/2
**supposed [1]** 621/12
**Supreme [2]** 603/25
612/3
**sure [10]** 603/5 603/7
605/7 654/22 663/14
666/9 683/13 691/25
693/23 702/7
**surplus [1]** 691/19
**suspect [1]** 718/15
**sustained [1]** 711/10
**switch [1]** 690/18
**Sydney [1]** 638/8

**T**

**table [3]** 602/9 620/6
704/13
**tablets [1]** 628/19
**take [17]** 614/16
615/20 620/9 627/21
633/9 647/22 648/6
657/10 663/24 675/24
677/6 682/15 705/2
706/9 717/9 717/13
718/10
**taken [11]** 609/14
609/17 609/21 609/22
610/13 664/7 681/8
683/10 684/13 717/20
718/20
**takes [1]** 659/24
**taking [2]** 637/25
680/15
**talk [10]** 613/9 613/19
613/19 641/17 647/24
658/17 669/1 681/12
713/18 715/24
**talked [6]** 617/10
621/4 624/3 645/6
663/15 663/19
**talking [11]** 609/18
611/5 620/22 626/18
640/21 640/22 647/3
671/10 673/23 707/20
718/15
**tell [13]** 632/2 645/19
659/1 660/20 661/10

701/2 704/15 704/18
705/25 706/4 706/20
707/10 707/17
**telling [3]** 611/16
611/17 674/24
**tells [1]** 662/18
**Ten [1]** 662/1
**terms [5]** 608/3 608/5
659/4 685/17 717/7
**testified [16]** 612/15
639/6 640/6 640/25
647/25 656/20 666/17
677/2 679/10 684/2
689/4 700/21 703/6
707/13 710/16 717/3
**testifies [1]** 608/2
**testify [7]** 603/18
612/17 672/13 698/15
700/22 701/1 709/18
**testifying [9]** 603/17
603/20 607/20 609/13
610/6 615/17 620/21
667/16 684/18
**testimony [26]** 607/25
612/10 612/20 613/3
615/10 615/11 627/9
644/21 654/5 655/18
655/20 660/1 667/3
668/16 671/4 673/17
684/16 684/21 685/24
687/3 689/8 693/12
693/13 694/6 708/12
710/12
**testing [2]** 605/20
605/25
**text [1]** 639/4
**than [10]** 608/13 609/2
609/3 610/16 650/14
666/12 668/6 683/18
686/4 702/16
**Thank [27]** 607/12
611/21 611/22 615/23
615/24 617/13 619/3
619/8 620/16 625/25
647/17 657/23 658/8
664/12 664/13 666/1
666/15 669/20 670/7
680/11 680/23 683/22
683/24 717/17 717/18
718/17 718/18
**Thanks [1]** 619/17
**that [692]**
**that's [92]** 605/18
608/7 608/9 611/6

613/25 616/11 617/18
619/25 621/24 623/4
623/11 624/13 625/3
626/21 628/3 629/8
629/9 629/9 634/6
640/24 641/21 641/23
642/3 642/10 642/10
642/12 644/15 645/7
649/19 650/10 650/23
652/18 652/24 656/12
657/19 657/23 663/7
663/9 665/22 667/22
671/12 672/2 673/9
673/25 675/1 676/14
682/14 684/8 685/9
686/7 687/5 687/8
688/8 689/10 690/12
691/17 691/19 691/21
691/24 692/14 692/15
692/21 692/23 692/25
699/11 699/11 700/13
700/21 700/23 702/14
702/15 703/8 703/9
703/11 703/14 703/17
703/21 704/1 704/5
704/8 707/9 708/4
708/8 709/5 709/9
709/11 709/14 712/18
712/24 713/2 713/20
714/7
**their [5]** 607/5 617/4
623/25 689/23 710/4
**them [12]** 611/11
616/13 629/6 647/7
674/14 678/15 686/19
691/5 691/8 691/15
693/11 712/1
**then [21]** 602/22
604/10 618/17 619/21
623/5 624/25 627/1
627/4 629/12 631/12
651/14 653/18 663/21
674/7 684/13 695/2
700/13 703/19 711/9
713/8 717/13
**then-President [1]**
713/8
**then-President Trump
[1]** 627/1
**Then-President
Trump's [1]** 631/12
**there [110]** 602/16
603/7 603/10 603/20
603/22 604/2 605/2

605/6 605/9 606/4
606/11 608/12 609/8
609/8 613/6 613/7
614/14 614/14 617/17
618/15 620/2 620/24
623/16 624/2 624/4
628/7 628/8 629/3
629/7 630/18 630/20
631/9 632/12 633/10
637/21 637/24 638/2
638/4 640/2 640/5
641/18 642/7 643/16
643/22 644/17 645/11
648/17 648/20 649/9
651/9 651/12 651/14
652/5 653/2 654/13
655/19 659/13 661/16
661/19 662/17 667/6
667/9 671/8 671/22
673/21 674/11 674/12
674/19 675/8 676/8
681/4 682/18 682/23
684/4 684/8 684/17
684/22 684/23 684/25
685/1 685/3 685/4
689/15 690/2 690/8
690/19 690/22 694/17
694/24 694/25 695/16
697/1 697/2 699/25
700/1 701/12 701/18
702/4 702/9 702/16
702/19 706/13 707/22
712/22 713/22 713/23
714/23 714/24 715/8
715/11
**there's [17]** 603/5
604/25 608/15 611/4
611/8 616/1 624/2
624/3 639/14 651/14
676/9 684/22 695/17
699/24 706/8 715/17
717/5
**therefore [5]** 610/4
616/25 655/11 673/18
699/19
**these [38]** 603/1 607/5
611/9 613/19 614/6
617/5 625/24 627/9
629/17 629/19 631/9
632/2 634/20 636/22
638/11 638/15 638/25
640/20 642/23 646/18
647/11 654/11 655/16
657/22 664/24 668/12

## T

these... [12] 680/4 680/15 680/17 681/2 709/7 709/12 709/19 714/5 716/13 716/15 716/19 716/20

they [48] 603/19 604/5 604/14 604/16 604/19 605/24 606/3 606/8 606/10 606/11 606/17 606/19 607/1 607/3 607/4 608/14 611/19 612/1 612/5 612/7 612/7 612/8 612/8 612/16 612/22 613/5 614/1 627/15 630/2 631/2 634/8 635/15 668/3 691/4 691/6 691/8 691/9 691/12 692/4 700/7 704/14 705/4 705/9 707/13 710/3 710/4 710/5 716/10

they're [4] 608/13 609/19 611/17 716/9

they've [1] 650/8

thing [7] 614/24 626/18 626/22 653/15 690/1 696/12 708/13

things [15] 609/13 612/17 617/10 627/11 627/12 627/19 630/24 646/18 658/17 676/11 690/23 692/20 693/18 707/3 712/22

think [29] 603/4 605/9 607/1 607/8 608/11 608/24 609/1 609/25 611/25 614/6 615/1 615/9 615/9 616/1 616/25 617/2 666/2 682/20 691/21 694/15 694/16 703/6 705/9 705/10 707/2 707/7 714/1 717/25 718/4

thinks [5] 605/11 605/19 614/3 614/4 625/5

third [4] 711/15 712/15 712/20 713/14

this [265]

THOMPSON [32] 600/18 603/22 607/3 609/15 609/17 610/9

610/10 610/14 610/16 612/13 622/16 644/24 657/17 658/21 670/11 670/13 677/13 677/16 693/9 693/17 694/1 696/20 697/6 697/10 697/14 698/4 698/10 700/7 703/2 708/14 711/23 712/7

Thompson's [1] 659/16

thorough [2] 638/19 639/23

thoroughness [3] 605/21 605/25 610/25

those [28] 612/17 617/10 617/11 618/10 620/13 627/12 631/3 631/17 631/21 636/9 638/9 638/20 639/5 639/24 640/9 648/22 655/14 658/4 660/3 663/8 663/16 676/11 679/12 680/24 696/11 700/9 712/23 714/24

thought [9] 614/8 616/17 635/17 693/23 697/13 699/19 699/23 711/5 718/6

thought-out [1] 718/6

thoughtfully [1] 677/19

threat [1] 623/14

three [9] 627/11 636/5 636/10 637/3 642/19 658/16 675/17 675/18 698/23

Three Percenters [1] 637/3

three-page [2] 642/19 658/16

through [12] 609/24 610/12 615/9 617/6 628/25 635/24 641/1 655/13 668/18 702/12 705/2 708/12

tight [1] 702/14

time [34] 621/6 621/14 626/13 628/24 648/2 648/4 648/6 648/11 648/17 661/21 661/24 663/25 667/11 667/19 667/23 679/11 681/16 682/7 683/16 689/1

690/3 692/2 694/16 697/20 701/12 704/18 705/2 706/9 708/1 708/17 708/19 710/6 717/7 717/10

timeframe [1] 702/14

timeline [7] 647/6 647/16 647/19 663/16 663/17 668/12 668/13

timely [1] 682/2

times [1] 617/17

timing [1] 675/23

Title [1] 703/15

titled [3] 627/25 641/12 649/2

today [8] 603/5 643/20 644/19 653/5 684/18 695/22 700/25 718/7

together [8] 622/11 629/23 638/18 656/17 657/4 669/3 701/12 708/10

told [14] 616/4 616/9 616/16 617/1 617/6 622/19 625/10 626/3 644/1 646/5 666/24 667/1 705/4 706/7

tomorrow [2] 627/6 633/7

too [2] 618/13 619/25

took [10] 606/3 611/9 611/10 613/5 629/21 630/21 634/6 658/3 664/15 669/24

top [5] 622/17 641/16 661/15 676/24 718/11

topic [4] 715/16 715/21 717/8 717/9

topics [8] 636/4 637/8 638/9 638/25 640/21 640/22 714/3 714/3

totally [2] 611/2 611/15

touch [1] 646/7

touching [1] 690/24

transcribed [1] 686/7

transcript [2] 600/7 719/4

transfer [7] 623/20 624/5 624/7 624/10 626/20 634/25 639/22

transfers [1] 624/8

transmits [1] 623/6

treat [1] 615/12

trial [4] 600/7 697/23 698/1 711/4

true [3] 625/21 625/24 709/4

Trump [16] 627/1 630/11 631/14 631/15 632/14 633/11 633/12 653/19 654/10 655/12 659/21 661/6 667/12 667/23 677/16 713/8

Trump's [8] 631/12 631/16 660/2 660/13 660/14 667/17 672/10 672/12

truth [5] 658/5 670/1 670/2 680/19 704/16

try [3] 605/10 637/13 716/7

trying [8] 603/2 603/11 612/22 614/4 618/15 705/9 707/7 710/3

Tuesday [1] 673/18

turn [3] 602/24 610/21 631/10

turning [2] 608/8 714/1

two [19] 603/10 608/17 622/22 630/5 641/16 647/11 651/14 655/6 661/4 668/12 676/11 679/20 680/2 680/4 681/4 682/18 698/21 699/2 712/20

two-line [1] 641/16

two-page [1] 651/14

type [2] 625/7 693/1

typed [1] 692/2

types [2] 640/5 654/17

typewriter [1] 692/9

typewritten [1] 692/16

## U

U.S [5] 600/10 600/11 600/22 684/9 703/24

U.S. [1] 684/5

U.S. Capitol [1] 684/5

U.S.C [2] 662/24 663/5

ultimate [2] 693/7 695/2

ultimately [2] 679/13 696/16

unable [3] 648/18 655/17 698/14

unanimously [1] 683/4

**U**

**unchanged [1]** 680/9
**under [9]** 605/12
614/17 615/21 623/14
637/21 674/3 692/19
696/20 702/13
**underlying [2]** 658/5
670/3
**undermines [1]** 682/1
**understand [42]**
602/16 604/8 607/22
609/4 614/19 614/20
614/23 615/8 615/12
615/20 616/19 616/23
617/12 619/2 632/1
638/21 644/12 646/1
653/10 684/4 684/6
684/10 684/12 685/3
685/11 688/8 691/11
691/25 693/18 694/4
694/6 695/21 700/14
700/20 703/24 708/12
708/13 712/3 712/6
715/20 716/22 718/15
**understanding [11]**
624/22 632/4 632/7
635/3 636/16 646/6
646/10 655/21 655/23
678/1 678/3
**understood [10]**
602/22 610/2 631/24
633/14 634/9 643/24
653/12 682/7 701/10
718/9
**UNITED [12]** 600/1
600/2 600/8 602/3
602/8 630/22 644/19
653/19 663/6 671/5
673/20 674/4
**unless [3]** 616/7
709/18 718/12
**unpaid [1]** 631/14
**until [11]** 608/2 614/21
614/22 655/16 667/11
687/20 687/22 691/5
691/16 717/14 717/15
**up [36]** 603/3 603/4
605/20 606/6 606/7
606/8 609/9 616/7
620/4 620/23 620/25
623/25 631/25 632/15
633/4 636/13 637/15
642/15 643/19 648/23
651/2 655/6 657/12

665/13 668/9 669/10
674/7 676/1 679/6
679/23 680/24 690/13
692/2 707/3 708/24
718/7
**upon [4]** 649/24
653/20 693/4 702/5
**urgency [1]** 687/3
**urgent [1]** 681/25
**urging [1]** 627/2
**us [17]** 608/8 618/14
619/7 621/3 621/5
621/11 628/13 632/2
637/17 655/11 661/24
672/7 674/11 677/12
686/14 701/15 710/20
**US000417 [1]** 709/6
**use [6]** 605/7 607/5
614/5 691/23 692/11
709/7
**used [4]** 669/22 687/2
712/21 715/25
**using [1]** 712/23

**V**

**valid [5]** 616/7 656/9
656/21 694/9 700/6
**validly [1]** 699/13
**variety [1]** 710/14
**various [4]** 623/24
691/7 708/11 716/13
**vary [1]** 716/9
**VAUGHN [15]** 600/10
601/4 602/8 607/12
610/19 611/23 617/14
620/15 654/19 663/23
664/12 683/22 699/1
707/14 710/1
**veer [1]** 608/20
**versus [2]** 602/4
677/16
**very [8]** 618/1 618/24
683/12 701/8 702/14
708/21 712/6 718/4
**via [2]** 680/5 691/9
**view [14]** 604/12 605/2
608/23 611/14 612/18
613/20 617/22 619/1
619/22 619/25 620/4
659/5 662/15 662/18
**views [3]** 663/14
671/20 673/4
**violated [1]** 710/3
**violation [6]** 617/1

617/20 671/19 671/21
674/23 674/25
**violence [2]** 713/16
713/24
**visible [1]** 647/14
**voluntarily [1]** 708/6
**vote [8]** 605/23 606/20
606/22 614/25 615/3
624/15 674/3 674/25
**voted [4]** 603/24
605/24 606/14 683/4
**votes [2]** 640/15 690/8
**vs [1]** 600/4

**W**

**wait [1]** 619/7
**waived [5]** 697/15
699/14 700/8 710/4
710/5
**want [34]** 603/3 603/7
606/17 609/7 610/2
610/22 612/1 612/7
614/18 615/5 619/7
619/24 627/21 628/8
635/22 641/17 643/7
654/20 658/17 666/8
672/23 688/8 693/20
695/22 705/13 708/11
708/13 712/16 713/6
713/18 715/3 715/5
715/17 715/24
**wanted [8]** 614/24
619/19 632/1 636/23
643/24 678/1 683/13
712/19
**wants [2]** 696/10
699/10
**War [4]** 632/22 632/23
633/1 633/3
**warn [1]** 662/5
**warning [1]** 663/11
**warranted [1]** 605/11
**was [242]**
**Washington [6]** 600/4
600/12 600/23 626/12
630/10 688/21
**wasn't [3]** 616/15
617/8 618/15
**watching [1]** 690/4
**Watkins [2]** 604/1
612/4
**Watnick [2]** 634/3
634/13
**way [13]** 602/22

605/19 618/3 630/1
641/2 664/23 665/10
667/24 668/2 671/9
678/18 710/13 717/1
**ways [4]** 603/2 603/10
617/3 691/7
**we [154]**
**We'll [2]** 717/14
717/23
**we're [13]** 603/5 608/7
609/15 609/18 611/4
618/15 647/3 697/4
697/5 698/2 710/21
714/14 715/7
**we've [16]** 616/4
617/16 640/21 640/21
647/22 654/21 660/18
663/15 663/19 671/10
696/15 696/19 697/9
697/10 698/2 698/24
**wear [2]** 619/23 620/7
**wearing [1]** 619/20
**week [1]** 677/18
**weeks [6]** 631/25
632/14 633/4 636/13
637/15 688/17
**welcomes [1]** 687/14
**well [27]** 607/19 614/5
615/15 615/21 618/24
620/5 620/8 620/8
620/13 628/5 630/14
649/14 663/2 671/6
675/24 679/24 686/2
687/16 688/7 692/1
692/4 701/8 705/14
707/9 712/7 716/1
717/11
**went [4]** 621/20 698/23
699/24 700/1
**were [74]** 609/13
609/14 618/1 620/21
620/22 623/2 626/14
626/15 626/16 626/18
627/11 627/15 627/18
631/2 631/20 633/9
634/13 635/1 635/8
635/15 635/19 636/9
637/25 638/10 638/11
638/23 638/23 640/21
641/13 645/2 645/4
652/17 656/1 657/3
666/20 669/2 669/13
672/1 673/23 675/8
681/2 684/13 684/17

**W**

**were... [31]** 685/13 686/24 687/23 687/25 687/25 688/19 688/22 689/11 689/15 689/22 689/23 690/2 690/8 695/15 696/12 699/23 700/7 704/9 704/12 704/14 704/15 708/15 708/16 708/18 710/17 711/5 712/12 712/22 712/25 715/11 716/1

**what [155]**

**what's [5]** 609/6 642/20 651/5 651/11 686/23

**when [39]** 603/20 604/24 606/3 611/7 611/17 612/16 620/21 621/5 621/11 624/7 627/18 636/20 645/25 649/15 652/11 652/13 653/9 654/13 662/2 662/18 674/1 674/19 677/3 684/16 686/6 689/11 690/1 691/3 691/6 691/17 704/3 704/9 705/4 706/20 708/24 709/6 712/12 716/4 717/15

**whenever [1]** 717/5

**where [19]** 604/18 604/18 606/7 611/3 614/16 621/3 624/14 626/13 631/5 640/4 641/6 644/12 688/19 688/24 689/11 690/22 692/19 703/12 714/3

**whether [47]** 604/3 605/23 606/15 606/15 606/16 607/2 607/21 608/15 608/21 610/13 610/13 610/24 611/10 611/18 612/1 612/9 612/18 613/2 613/4 613/18 613/24 614/8 625/20 636/7 644/13 646/7 646/23 656/6 666/24 672/17 675/15 696/24 697/2 697/6 698/15 698/20 699/5 699/12 699/20 700/5 705/4 705/15 706/10 711/3 715/8 716/14

716/23

**which [28]** 606/19 606/24 608/1 611/8 619/20 620/5 621/1 622/18 631/9 640/2 643/20 653/7 654/7 662/25 669/22 673/16 680/13 681/9 683/7 688/6 688/18 698/15 698/15 698/16 704/25 708/21 711/15 713/5

**WHITE [5]** 600/18 602/13 630/20 632/5 632/13

**who [60]** 602/14 605/24 608/21 609/12 611/9 611/13 611/13 611/13 612/15 613/19 613/20 614/6 622/13 622/13 624/9 626/14 629/5 631/1 631/22 634/8 635/15 636/8 636/8 636/9 636/11 637/9 638/4 638/9 638/11 638/23 640/6 643/12 643/14 645/14 645/17 652/5 658/19 670/9 685/14 692/8 693/5 693/15 694/11 694/20 694/22 694/22 695/3 695/11 695/14 696/21 696/22 698/19 698/22 698/24 699/19 700/10 700/24 700/25 704/10 708/1

**who's [2]** 620/12 698/14

**whole [3]** 639/14 639/24 705/18

**whom [2]** 633/23 684/7

**whose [2]** 700/11 700/14

**why [26]** 602/25 603/23 607/2 608/19 609/1 609/2 611/11 611/12 613/13 616/21 626/23 635/20 637/17 638/18 649/13 675/20 675/24 678/25 681/4 683/18 699/18 699/21 705/22 712/16 713/6 717/13

**wide [2]** 671/4 710/25

**widespread [2]** 637/24 713/23

**will [35]** 604/23 604/23 607/24 608/18 608/22 608/25 608/25 609/16 613/8 614/21 616/19 620/11 644/13 644/22 645/23 649/15 659/4 659/25 662/15 662/18 667/15 667/16 672/20 673/17 674/2 691/15 696/1 707/3 709/2 714/20 717/9 717/14 717/15 718/14 718/15

**Willard [4]** 626/6 626/11 626/12 712/25

**willful [7]** 606/16 659/5 662/16 662/19 662/22 671/18 673/6

**willfully [1]** 671/15

**willing [1]** 678/18

**within [6]** 608/7 615/19 621/24 627/10 651/9 658/18

**without [3]** 609/25 691/1 710/13

**witness [58]** 601/2 603/7 604/6 604/10 604/11 607/18 607/20 607/21 607/23 607/25 608/2 608/19 608/21 609/11 609/12 609/24 610/6 610/12 610/25 612/9 613/2 614/23 615/16 615/17 615/20 619/6 619/8 642/16 651/2 657/13 665/13 669/11 676/2 676/3 679/7 679/24 684/25 685/6 694/13 694/16 696/15 696/21 697/9 698/2 698/14 698/19 701/7 704/23 707/2 707/5 707/12 709/17 709/18 710/12 710/17 710/20 710/23 717/24

**witness's [3]** 603/18 604/6 609/3

**witnesses [11]** 603/5 604/25 608/6 608/17 685/17 686/3 686/4 686/10 687/4 694/2 701/15

**won't [1]** 657/23

**wondering [1]** 647/8

**word [2]** 605/16 687/2

**words [7]** 693/4 711/21 711/23 712/21 712/23 715/18 715/23

**work [2]** 687/20 687/21

**worked [1]** 646/19

**working [2]** 678/14 688/14

**world [1]** 702/10

**worried [1]** 608/8

**would [48]** 602/17 604/21 605/3 605/11 607/25 608/4 614/1 617/5 618/14 619/24 620/2 620/11 620/12 620/23 634/20 637/9 638/4 638/14 644/8 644/9 644/10 646/12 646/20 646/23 646/25 647/6 653/22 662/23 664/1 668/24 686/12 688/16 689/22 696/12 697/21 697/25 701/6 701/23 701/25 706/9 707/1 709/15 712/4 712/4 714/10 714/12 715/11 716/8

**wouldn't [2]** 613/13 689/24

**write [6]** 641/19 642/4 642/7 653/5 677/13 703/22

**writing [4]** 653/9 653/14 659/16 674/15

**written [2]** 649/25 699/5

**wrote [3]** 642/8 697/7 703/18

**Y**

**yeah [6]** 607/22 611/2 617/24 653/23 706/23 710/10

**year [6]** 602/3 646/19 687/20 687/22 702/13 702/17

**years [1]** 604/1

**yes [68]** 602/18 605/4 610/8 610/11 612/11 612/21 613/11 616/24 621/9 621/22 622/8 625/14 629/5 629/24

**Y**

**yes... [54]** 631/21
637/20 639/14 639/19
641/8 641/15 642/12
643/18 644/7 645/4
647/13 648/20 649/4
649/7 649/10 649/19
651/17 652/18 654/2
656/14 657/25 658/15
659/11 659/20 660/22
661/13 662/8 665/9
669/9 669/16 670/18
674/21 676/9 679/5
679/15 679/18 681/5
684/11 684/15 685/9
687/17 687/18 688/23
694/10 695/10 698/8
703/14 704/17 713/11
713/13 713/20 713/20
713/25 718/3
**yesterday [20]** 605/5
605/22 611/7 612/15
616/4 616/9 618/5
620/21 621/4 622/19
623/3 624/3 625/15
627/18 630/17 639/14
684/2 684/17 687/2
718/5
**yet [3]** 614/18 640/3
645/6
**you [328]**
**you'd [1]** 689/4
**You'll [1]** 705/22
**you're [15]** 608/18
612/6 643/22 644/11
663/23 693/9 705/15
705/16 705/21 706/12
706/13 706/20 713/21
715/12 718/15
**you've [1]** 646/19
**your [120]** 602/2 602/7
602/12 602/18 604/12
604/18 605/2 605/4
607/22 611/22 611/25
612/18 614/20 616/24
617/13 617/14 617/16
618/17 618/24 619/3
619/7 619/11 619/15
620/9 620/14 620/16
622/9 625/12 625/25
628/17 629/22 642/13
643/1 643/3 644/16
646/6 646/19 647/10
647/12 649/25 650/2

650/6 651/11 651/18
651/20 653/20 654/22
655/17 657/3 657/20
657/22 658/8 658/22
659/19 659/20 659/24
660/8 660/12 660/14
660/16 663/25 664/10
664/13 665/23 666/4
666/8 666/15 669/17
669/19 670/7 676/15
676/17 677/18 680/7
680/10 680/23 682/5
682/25 683/21 683/24
684/16 686/23 687/3
687/24 688/22 689/3
689/8 689/17 692/14
692/21 692/23 693/12
693/24 694/6 694/13
695/25 696/4 696/14
697/5 698/12 699/2
701/8 703/9 703/13
704/24 705/2 705/3
705/7 706/10 706/24
707/10 707/12 709/2
710/2 711/21 717/3
717/5 717/25 718/3
718/18
**Your Honor [58]** 602/2
602/7 602/12 602/18
605/4 607/22 611/22
611/25 616/24 617/16
618/17 619/3 619/7
619/11 619/15 620/16
625/12 625/25 643/1
643/3 647/12 651/18
651/20 657/20 657/22
658/8 664/10 664/13
665/23 666/4 666/8
666/15 669/19 670/7
676/15 676/17 680/7
680/10 680/23 683/21
683/24 689/17 694/13
695/25 696/4 696/14
697/5 698/12 699/2
701/8 704/24 705/7
706/24 707/12 710/2
717/5 717/25 718/18
**yourself [1]** 714/9
**yourselves [1]** 602/6

**Z**

**Zelda [1]** 600/15
**zero [1]** 712/19
**zoom [27]** 622/21

624/17 628/9 630/5
632/18 633/20 635/23
643/7 645/10 649/8
652/2 653/1 655/6
659/12 660/7 660/25
661/15 662/9 667/5
670/21 672/3 672/25
674/7 676/24 677/8
681/19 682/18
**zoomed [1]** 667/9
**zoomed-in [1]** 667/9

```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2
       * * * * * * * * * * * * * * *  )
 3     UNITED STATES OF AMERICA,      )    Criminal Action
                                      )     No. 21-00670
 4                    Plaintiff,      )
                                      )
 5        vs.                         )    AFTERNOON SESSION
                                      )
 6     STEPHEN K. BANNON,             )    Washington, D.C.
                                      )    July 20, 2022
 7                    Defendant.      )    1:21 p.m.
                                      )
 8     * * * * * * * * * * * * * * *  )

 9

10              TRANSCRIPT OF JURY TRIAL - DAY 3
            BEFORE THE HONORABLE CARL J. NICHOLS,
11              UNITED STATES DISTRICT JUDGE

12

13     APPEARANCES:

14     FOR THE GOVERNMENT:      AMANDA R. VAUGHN, ESQ.
                                MOLLY G. GASTON, ESQ.
15                              UNITED STATES ATTORNEY'S OFFICE
                                  FOR THE DISTRICT OF COLUMBIA
16                              555 Fourth Street, Northwest
                                Eleventh Floor
17                              Washington, D.C. 20530

18
       FOR THE DEFENDANT:       MATTHEW E. CORCORAN, ESQ.
19                              RIANE A. WHITE, ESQ.
                                SILVERMAN, THOMPSON, SLUTKIN, WHITE
20                              400 East Pratt Street
                                Suite 900
21                              Baltimore, Maryland 21202

22                              DAVID I. SCHOEN, ESQ.
                                LAW OFFICES OF DAVID I. SCHOEN
23                              2800 Zelda Road
                                Suite 100-6
24                              Montgomery, Alabama 36106

25
```

```
1    REPORTED BY:              LISA EDWARDS, RDR, CRR
                               Official Court Reporter
2                              United States District Court for the
                                 District of Columbia
3                              333 Constitution Avenue, Northwest
                               Room 6706
4                              Washington, D.C. 20001
                               (202) 354-3269
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

751

1                           I N D E X

2

3                               Direct      Cross        Red.

4

5    WITNESSES FOR THE GOVERNMENT:

6    Kristin Amerling                        755          817

7    Stephen Hart              839           858          870

8

9
     EXHIBITS RECEIVED IN EVIDENCE                        PAGE
10
     Government's Exhibit No. 10                          846
11   Government's Exhibit No. 11-A                        849
     Government's Exhibit No. 11-B                        851
12
     Defendant's Exhibit No. 9-B                          757
13   Defendant's Exhibit No. 30                           810
     Defendant's Exhibit No. 31                           813
14   Defendant's Exhibit No. 32                           816
     Defendant's Exhibit No. 39                           859
15   Defendant's Exhibit No. 40                           862

16

17

18

19

20

21

22

23

24

25

1          THE COURTROOM DEPUTY:  Your Honor, we're now back

2     on the record.

3          THE COURT:  Thank you, Ms. Lesley.

4          Before we bring the jury back in, very briefly,

5     the point that was raised by Mr. Schoen before the break:

6     Last week, in addressing the question of whether and to what

7     extent potential violations by the Committee of House Rules

8     would be relevant in this case, I largely excluded evidence

9     relating to those questions for two different reasons.  The

10    first was that Mr. Bannon waived such arguments.  And the

11    second was that those questions presented legal issues

12    typically as to which certainly on the question of the

13    interpretation of the House Rule I was required to defer to

14    the House's view of its own rules because to do otherwise

15    would leave it open -- would raise a separation-of-powers

16    concern.

17         Mr. Schoen is very correct that as to that last

18    question, the second of my alternative holdings, I did note

19    that it could potentially be an issue for the jury about

20    whether a clear House Rule had as a matter of fact been

21    complied with; in other words, a mixed question of fact and

22    law, and that a defense could be presented to the jury or

23    would be a jury question about whether compliance with the

24    House Rule had occurred.

25         I certainly had understood Mr. Bannon to have

```
 1    waived the question that Mr. Corcoran was attempting to ask
 2    questions about.  And that is whether the Committee had
 3    acted in compliance with Paragraph 10 of the relevant
 4    regulation.
 5          But I suppose it is possible that Mr. Bannon could
 6    introduce evidence that he didn't waive that argument.  And
 7    it's at least possible that, when instructed by me, the jury
 8    could conclude that that rule was violated based on the
 9    facts -- I'm just saying hypothetically, because I do
10    recognize that the House has taken a position about what the
11    rule means and the regulation and whether it was complied
12    with here.
13          So for just the -- just to be very, very safe that
14    we don't get to the end of this case and have a question
15    that could be relevant not be answered, Mr. Corcoran, you
16    can ask Ms. Amerling whether the Committee provided
17    Mr. Bannon with the materials described in Paragraph 10 of
18    the regulation that accompanied the subpoena.
19          MR. CORCORAN:  11.  Paragraph 11, your Honor.
20          THE COURT:  I apologize.  Paragraph 11.  Yes.
21          MR. CORCORAN:  Thank you.
22          THE COURT:  You can ask her whether that
23    information was provided to Mr. Bannon.
24          Mr. Vaughn?
25          MS. VAUGHN:  Your Honor, will the Defendant be
```

```
1    required to make a proffer before he's able to argue about

2    that?  Because --

3              THE COURT:  This is just one question right now,

4    just to make sure that Ms. Amerling before we excuse her is

5    asked that question.  I'm not -- this is not a holding that

6    this argument is going to the jury, that there's going to be

7    a defense along these lines presented.

8              The two reasons that I excluded this evidence, I

9    think, both very likely apply here.  I did leave open this

10   possibility, as Mr. Schoen correctly points out, at least as

11   to the second argument.  As I said, I think it's very likely

12   that this argument was never presented to the Committee and

13   therefore it would have fit within my argument about waiver.

14   But I can't be 100 percent certain about that because we

15   haven't done the complete trial.

16             So for that reason, I'm going to allow this

17   question and this question only on this topic and then we

18   can move on.

19             MS. VAUGHN:  Thank you, your Honor.

20             THE COURT:  Ms. Lesley, could you bring in the

21   jury, please.

22             (Whereupon, the jury entered the courtroom at 1:25

23   p.m. and the following proceedings were had:)

24             THE COURTROOM DEPUTY:  We are now back on the

25   record.
```

```
 1                 THE COURT:  Welcome back, ladies and gentlemen of

 2      the jury.

 3                 And welcome back, Ms. Amerling.

 4                 Mr. Corcoran.

 5                 MR. CORCORAN:  Thank you, your Honor.

 6                 Your Honor, may I approach the witness?

 7                 THE COURT:  Yes.

 8        (KRISTIN AMERLING, GOVERNMENT WITNESS, PREVIOUSLY SWORN.)

 9                        CONTINUED CROSS-EXAMINATION

10      BY MR. CORCORAN:

11      Q.  I'm going to hand you what's been marked as Defendant's

12      Exhibit 9-B for identification purposes.

13                 MR. CORCORAN:  We would like to publish this to

14      the -- just not the jury, please.

15                 THE COURTROOM DEPUTY:  It's up.

16      BY MR. CORCORAN:

17      Q.  Ms. Amerling, is Defense Exhibit 9-B the regulations for

18      use of deposition authority that we spoke briefly about

19      earlier this afternoon?

20      A.  Yes.

21      Q.  If you could read the highlighted paragraph, Paragraph

22      11, in Defendant's Exhibit 9-B.

23      A.  A witness shall not be required to testify unless the

24      witness has been provided with a copy of Section 3-B of

25      House Resolution 8, 117th Congress and these regulations.
```

1    Q.  To your knowledge, was Steve Bannon ever provided with

2    Section B of H.Res. 8?

3    A.  To my knowledge, that section was available at the time

4    of his deposition to be presented to him by the attorney who

5    was preparing to depose him.

6    Q.  I understand.

7           But my question is slightly different.  And that

8    is:  To your knowledge, was Steve Bannon ever provided, ever

9    handed or mailed or in any way given, Section 3-B that's

10   referenced in this Paragraph 11?

11   A.  Since Mr. Bannon refused to appear for his deposition,

12   he was not provided a copy of that paragraph on that day.

13   No.

14   Q.  Thank you.

15          Could you take the pen and just write "Steve

16   Bannon was not provided with" --

17          MS. VAUGHN:  Objection, your Honor.

18   BY MR. CORCORAN:

19   Q.  -- "Paragraph 3-B on Exhibit 9-B"?

20          THE COURT:  Sustained.

21   BY MR. CORCORAN:

22   Q.  Thank you.  I'll take that back.

23   A.  (Tenders document to counsel.)

24          MR. CORCORAN:  Your Honor, we'd move Exhibit 9-B

25   into evidence.

```
1            MS. VAUGHN:  No objection.

2            THE COURT:  Defense Exhibit 9-B is admitted.

3            (Whereupon, Defendant's Exhibit No. 9-B was

4    entered into evidence.)

5    BY MR. CORCORAN:

6    Q.  Okay.  Ms. Amerling, you testified earlier that you've

7    worked on dozens of subpoenas for the Select Committee.

8    Correct?

9    A.  That's correct.

10   Q.  And in many of those cases, you were involved in

11   negotiations with the lawyers for the subpoena recipients.

12   Correct?

13   A.  Generally, the negotiations are conducted by our chief

14   investigative counsel or other counsels that he supervises.

15   Q.  I understand generally.

16            But have you ever engaged in negotiations with,

17   apart from Bob Costello, any other lawyer for a subpoena

18   recipient?

19   A.  I did not engage in a negotiation with Mr. Costello,

20   sir.

21   Q.  I'm asking a slightly different question, which is:  Did

22   you ever engage in negotiations with any lawyer for any

23   subpoena recipient of the Select Committee?

24   A.  It is possible.  I'm trying to think with the way our

25   staff is structured.  We have a chief investigative counsel
```

Amerling - CROSS - By Mr. Corcoran

1    who manages the day-to-day investigative work and the

2    investigative counsels that focus on different subject

3    matters.  And generally, they are the attorneys that

4    negotiate with the attorneys for the recipients of

5    subpoenas.  So it's possible.  But generally, that's not our

6    practice.

7    Q.  Now, when you say "our practice," do you mean your

8    personal practice?

9    A.  The way that the staff manages the tasks.

10   Q.  My question is really just going to focus on what you

11   yourself do.  And so my question is:  Have you ever

12   negotiated with a lawyer for a subpoena recipient on behalf

13   of the Select Committee over the issue of the date of an

14   appearance?

15   A.  It's possible.  I've participated in some discussions in

16   our recent hearings about appearance at the hearings.  Some

17   of those witnesses have been under subpoena.  I don't know

18   that we were talking about the date.  But generally, the

19   conversations about document subpoenas and deposition

20   subpoenas and compliance are managed by the attorneys that

21   the chief investigative counsel supervises.

22   Q.  And I'm focusing on the dozens and dozens of subpoenas

23   that you said that you've worked on for the Committee.  My

24   question is:  You specifically, not anyone else, but you,

25   have you ever negotiated with a lawyer for a subpoena

1   recipient about the topics that would be covered at the

2   deposition?

3   A.  Our staff has and I have advised on that process.  If

4   you're talking about direct conversations with attorneys

5   generally, that's not my role.

6   Q.  Again, you used the word "conversations."  I would

7   broaden that to include any communications with a lawyer for

8   a subpoena recipient.  Have you been involved in

9   negotiations over the topics to be covered in a deposition

10  with any lawyer for a subpoena recipient?

11  A.  In the sense of overseeing work that others might be

12  doing, I've been involved with discussions about the content

13  of depositions and the timing of when individuals may come

14  in.

15  Q.  And you're aware that in many cases the recipients of

16  subpoenas appear for deposition weeks after the date on the

17  subpoena.  Correct?

18  A.  I'm aware, sir, that when witnesses are cooperating with

19  the Committee and indicate that they are willing to provide

20  testimony, it's not unusual to have some back-and-forth

21  about the dates when they will appear.

22  Q.  My question is not about the back-and-forth.

23          My question is:  It's not uncommon, is it, for a

24  person who gets a subpoena from the Select Committee to

25  appear for deposition many weeks after the date in the

1    subpoena?

2    A.  With respect to individuals who are indicating that they

3    want to cooperate and who reach out to the Committee and say

4    that they will appear, there is often a dialogue.  It's

5    unusual for a witness to just outright say they will not

6    come in.

7    Q.  And you testified on direct that you've worked for about

8    20 years on Capitol Hill.  Is that accurate?

9    A.  That's correct.

10   Q.  For much of that time, you've been involved in oversight

11   work where you're dealing with subpoenas.  Is that accurate?

12   A.  That's correct.

13   Q.  How many times over the past 20 years have you been a

14   witness in a criminal trial involving contempt of Congress?

15   A.  Well, sir, it's very unusual for witnesses who receive a

16   subpoena to say that they will outright not comply.  So

17   there haven't been occasions that I've been involved in to

18   be a witness in a criminal contempt proceeding.

19   Q.  If I understand your answer, in the past 20 years, this

20   is the first time that you've been a witness in a criminal

21   case involving contempt of Congress.  Is that correct?

22   A.  That's correct.

23   Q.  Okay.

24            MR. CORCORAN:  If we could look at Government's

25   Exhibit No. 4, which is in evidence.

1    BY MR. CORCORAN:

2    Q.  Now, this is the letter that you testified you received

3    via email from Bob Costello, who is the lawyer for Steve

4    Bannon.  Correct?

5    A.  That's correct.

6    Q.  At the bottom of Government's Exhibit No. 4, the first

7    page, Mr. Costello is communicating an objection to the

8    subpoena.  Correct?

9    A.  He's articulating a perspective on a legal argument he's

10   making about the subpoena.

11   Q.  And on the next page, US-00419, Mr. Costello makes clear

12   to the reader that Steve Bannon is unable to respond to the

13   request for documents and testimony because of this

14   objection.  Is that accurate?

15   A.  That's the position taken in this letter.  Yes, sir.

16   Q.  And Mr. Costello also in the next paragraph indicates

17   that Steve Bannon would comply with the direction of the

18   courts if the issue was resolved civilly, if the privilege

19   issue was resolved by a judge in a civil action.  Is that

20   what's being communicated by Mr. Costello?

21   A.  I don't believe he used the word "civilly."  But he

22   said:  We'll comply with directions of the Court.  Yes.

23   Q.  The last part of your answer was yes?

24   A.  Yes.

25   Q.  Okay.  You testified on direct about -- now, this

1    October 7th, 2021, date as I understand it is the date

2    that's in the subpoena as a date for documents.  Correct?

3    A.  That's the date that the subpoena required Mr. Bannon to

4    produce documents by.  Yes.

5    Q.  And you testified that in your view, he had to produce

6    the documents by 10:00 a.m. that day on October 7th.  Is

7    that accurate?

8    A.  It's accurate that the subpoena demanded that from him.

9    Yes.

10   Q.  Are you suggesting that if Mr. Bannon provided documents

11   to the Committee after 10:00 a.m. on October 7th, 2021, he

12   would be in contempt of Congress?

13   A.  I didn't say that.

14   Q.  Okay.  Let's move to Government's Exhibit No. 5.

15            MR. CORCORAN:  Before we do that, if we could just

16   have the last exhibit up for one more question.  I'm sorry.

17   BY MR. CORCORAN:

18   Q.  Again, this is Government's Exhibit No. -- for the

19   record, it's Government's Exhibit No. 4.  My question is

20   this:  Once you received this letter in which Mr. Costello

21   raised an objection, did you discuss the letter with

22   Chairman Thompson?

23   A.  I would have.  I don't recall the specific conversation.

24   But I would have shared this letter with the members of the

25   Committee.

1    Q.  Which members of the Committee did you speak to about

2    this letter?

3    A.  I couldn't tell you the specific members of the nine at

4    this point in time.  But they all would have received a copy

5    of this letter.

6              MR. CORCORAN:  Let's move to Exhibit No. 5 now.

7              And that's Government's Exhibit No. 5.  I'm sorry,

8    your Honor.

9    BY MR. CORCORAN:

10    Q.  Now, on direct examination, you said that you had a role

11    in putting together this letter.  Is that correct?

12    A.  That's correct.

13    Q.  And this is essentially your response over the signature

14    of Chairman Thompson to Mr. Costello's letter that we just

15    saw raising an objection.  Is that correct?

16    A.  This is the response of the Select Committee to

17    Mr. Costello.

18    Q.  Well, that's something I want to ask you about, because

19    the Select Committee is made up of people.  Right?

20    A.  That's correct.

21    Q.  What person drafted this letter?

22    A.  As I've described, letters generally are drafted by a

23    number of staff and reviewed by members; and then

24    Mr. Thompson is authorized to sign the letters on behalf of

25    the Committee.

1    Q.  And can you identify for the jury any language in

2    Government's Exhibit No. 5 that Chairman Thompson wrote?

3    A.  Chairman Thompson signed the letter, so he has his name

4    on the entire -- he's representing the Committee with

5    respect to the entire content of the letter.

6    Q.  I understand what you're saying.

7         But what I'm asking you is:  Can you identify any

8    words in this letter that were words written by Chairman

9    Thompson?

10   A.  As I said, the process for drafting letters generally is

11   that staff counsels draft the letters and members review the

12   letters.  So it's difficult for me to identify any one

13   sentence to address that question.

14   Q.  How about one word?

15   A.  No.

16   Q.  If we look at the last page of that exhibit -- and

17   that's Government's Exhibit No. 5 -- in the very last

18   paragraph, the letter refers to the possibility of having a

19   civil action.

20        And what I want to ask you is:  Is that a process

21   that is available to the Select Committee, to go to court in

22   the civil context rather than a criminal prosecution --

23        MS. VAUGHN:  Objection.  Relevance.

24        THE COURT:  Ms. Vaughn, you have to wait for the

25   question to finish.  Will you sit down for a second.

```
 1              Can I hear the full question, Mr. Corcoran?
 2              MR. CORCORAN:  Yes, your Honor.  I'll give a basis
 3   to it.
 4   BY MR. CORCORAN:
 5   Q.  On direct examination, you testified about a number of
 6   different tools that are available to the Select Committee.
 7   Do you remember that testimony?
 8   A.  I do.
 9   Q.  I'm asking you about whether the civil action that is
10   referenced in the second-to-the-last sentence of this
11   exhibit is one of the tools that the Select Committee can
12   use to try to obtain testimony rather than pursuing a
13   criminal prosecution.
14   A.  It's an additional tool that could be used.  Yes.
15              MR. CORCORAN:  Let's move to Government's Exhibit
16   No. 6, please.
17   BY MR. CORCORAN:
18   Q.  If we look at -- now, just to set the stage again, this
19   is an October 13, 2021, letter to Chairman Thompson of the
20   Committee from Robert Costello, who's the lawyer for
21   Mr. Bannon.  Correct?
22   A.  That's correct.
23   Q.  And in the second-to-the-last paragraph, Mr. Costello
24   raises two separate issues for consideration.  One is, he
25   suggests that the Committee try to reach agreement with
```

```
 1    President Trump on the issue of executive privilege.
 2    Correct?
 3    A.  That's what he wrote.  Yes, sir.
 4    Q.  Did Chairman Thompson ever consider whether trying --
 5    let me rephrase that.
 6            Did Chairman Thompson ever consider trying to
 7    reach an agreement with President Trump over the issue of
 8    executive privilege?
 9            MS. VAUGHN:  Objection.  Relevance.
10            THE COURT:  Let's have a sidebar about this one.
11            (Whereupon, the following proceedings were had at
12    sidebar outside the presence of the jury:)
13            THE COURT:  This is sealed for now.
14            Ms. Vaughn?
15            MS. VAUGHN:  Two points, your Honor:  First,
16    whether the Committee pursued other avenues is irrelevant to
17    the questions in this case, which are, one:  Was there a
18    subpoena that required something?  Two:  Did the Defendant
19    fail to comply with that subpoena?  And, three:  Was his
20    decision to default deliberate and intentional?
21            Whether the Committee could have reached out to
22    President Trump or something is irrelevant, because it
23    didn't.  It overruled his objection and required him to
24    comply.
25            And suggesting to the jury that the Committee had
```

Amerling - CROSS - By Mr. Corcoran

1    an obligation to reach out to President Trump is making a

2    legal argument about what it was required to do instead of

3    just trying to get the subpoena enforced.

4            Point two is that the Defendant continually tried

5    to suggest that the Committee's decision to refer for

6    contempt has some bearing on whether the elements of the

7    offense have been met.

8            They haven't.  It's not relevant to that.  DOJ

9    could have charged Mr. Bannon with a crime regardless of

10   what the Committee did because either the elements were met

11   or they're not.

12           THE COURT:  Mr. Corcoran?

13           MR. CORCORAN:  Well, this is cross-examination.

14   We're in the Government's case.  And this witness testified

15   on direct that at several points in time around this letter,

16   both before and particularly after this letter, that

17   Chairman Thompson rejected the objection made by Mr. Bannon

18   about testifying in front of the Committee.

19           And the witness actually -- I think the words were

20   "executive privilege."  The letters came in, obviously, over

21   our objection.  And counsel for the Government decided to

22   elicit this testimony and information.

23           And we didn't want to get into the issue with the

24   jury about what executive privilege is or anything like

25   that, but, you know -- or its relevance.  We don't see that

1      as something in this trial that's up to them to decide.

2              But what we do see as up to them to decide is the

3      credibility of a witness who's testified on direct

4      examination that there was no legal basis for an objection

5      raised by Mr. Costello, and thus it was rejected.

6              And my question was simply -- it'll be a followup

7      question on the other option -- is basically:  Did Chairman

8      Thompson consider this option?

9              MS. VAUGHN:  Your Honor, whether the legal basis

10     for his objection was actually valid is irrelevant.  That is

11     a legal question for the Court to decide, not the jury.

12             The point of these letters, as the Government has

13     said again and again, is just to show that his objection was

14     rejected.  It doesn't matter why, because under the law he

15     had to have then complied because he took the risk at that

16     point that his invocation would not be valid later on.  Now

17     that it has been found not to be, he can't argue that it is

18     to the jury.

19             THE COURT:  I think this is generally not

20     particularly relevant.  But the Government did introduce

21     these letters.  It did have the witness testify about the

22     extent to which the Committee had considered the positions

23     offered by Mr. Costello and was rejecting them.

24             I'm going to give Mr. Corcoran the ability to ask

25     very limited questions along these lines.  Basically, did

1    Mr. Thompson explore this option or that option?  That's it.

2    Okay?

3              (Whereupon, the following proceedings were had in

4    open court:)

5              THE COURTROOM DEPUTY:  We're now back on the

6    public record.

7    BY MR. CORCORAN:

8    Q.  Mr. Amerling, we're talking about Government's Exhibit

9    No. 6 and the second page of that document, which is a

10   letter from Steve Bannon's lawyer, Bob Costello, to Chairman

11   Thompson.

12             And my first question is:  Did Chairman Thompson

13   explore the option of trying to reach agreement with

14   President Trump over the assertion of executive privilege?

15   A.  If I may, I think what might be helpful in trying to

16   understand Chairman Thompson's position is to look at his

17   detailed reply to Mr. Bannon's counsel that he issued on

18   October 15th.

19   Q.  Well --

20   A.  And I can read you relevant portions that I think

21   address the question that you're raising.

22   Q.  Well, if it does -- I mean, there's going to be

23   redirect, so Government counsel can ask you what they want.

24             My question is:  Did Chairman Thompson explore

25   with President Trump trying to reach an agreement that would

```
 1    allow Mr. Bannon to testify despite the assertion of

 2    executive privilege?  Did he --

 3    A.  Sir --

 4    Q.  -- explore that with President Trump?

 5    A.  Sir, the presumption of your question is that President

 6    Trump had asserted executive privilege.  And it gets to the

 7    point I was making.  I think if I read to you Mr. Thompson's

 8    reply, it will help provide context.

 9    Q.  You can certainly provide all the context you want on

10    redirect.  But I'm trying to phrase this as a yes-or-no

11    question.

12              Did Chairman Thompson communicate with President

13    Trump or his representative to try to explore getting rid of

14    executive privilege so Mr. Bannon could testify?

15              THE COURT:  Ms. Vaughn, do you have an objection

16    to that question?

17              MS. VAUGHN:  Your Honor, I think the witness --

18    first of all, I am objecting for the reasons we talked

19    about.

20              THE COURT:  Understand.  That's preserved.

21              MS. VAUGHN:  I think the witness is trying to

22    answer the question to explain why there was no basis to do

23    that.  But --

24              THE COURT:  I think the witness, just to speed

25    things up, can give a "yes" or "no" answer with an
```

1    explanation.

2                    THE WITNESS:  Okay.  Thank you, your Honor.

3                    The answer is no.  And the reason is that the

4    assumption in your question that the president had asserted

5    executive privilege is not accurate.  The Select Committee

6    had not received formal or informal assertion of privilege

7    from the president.

8                    In addition, there are a number of procedures laid

9    out in the instructions that accompanied the subpoena for

10   asserting various privileges.  They include providing a

11   document-by-document description of where the recipient is

12   asserting a privilege and why.

13                   Mr. Bannon had not done that by the time of his

14   October 13th letter.

15                   And Chairman Thompson's reply on October 15th went

16   through those issues and also addressed the legal arguments

17   relating to executive privilege.

18   BY MR. CORCORAN:

19   Q.  The second option -- it's a yes-or-no question:  Did

20   Chairman Thompson explore trying to resolve the executive

21   privilege issue by bringing it to a civil court of law?  Yes

22   or no.

23   A.  If I may give an explanation if I answer yes or no.

24                   THE COURT:  I don't think the witness should be

25   restricted to saying yes or no to an answer that she needs

1    to explain.

2              MR. CORCORAN:  I don't think so, either.

3              THE WITNESS:  Okay.  So no, because you are

4    assuming that there was an issue on the table to resolve.

5    There hadn't been an assertion, formal or informal, of

6    executive privilege.

7    BY MR. CORCORAN:

8    Q.  I'm not assuming anything.  I'm just asking you

9    questions.

10             And if we go back to Page 1 of this exhibit, it

11   states that Mr. Bannon had testified on three prior

12   occasions before a congressional committees and before the

13   Mueller investigation.

14             Did Chairman Thompson --

15             MS. VAUGHN:  Objection, your Honor.

16             THE COURT:  Ms. Vaughn, let's hear the question

17   first.  Okay?

18   BY MR. CORCORAN:

19   Q.  Did Chairman Thompson consider the willingness of

20   Mr. Bannon to testify before other congressional committees

21   when deciding how to move forward with this subpoena?

22             MS. VAUGHN:  Objection.  Relevance.

23             THE COURT:  Let's do a very brief sidebar.

24             (Whereupon, the following proceedings were had at

25   sidebar outside the presence of the jury:)

```
 1                MS. VAUGHN:  Your Honor, again, the operative fact

 2      is whether or not the Defendant's --

 3                THE COURT:  I understand, Ms. Vaughn.

 4                Mr. Corcoran, what does whether the chairman

 5      considered whether Mr. Bannon had previously testified --

 6      how is that relevant to an issue in the case?

 7                MR. CORCORAN:  Again -- and I don't mean to sound

 8      like a broken record.  But on cross-examination, where the

 9      witness has testified that the Committee rejected -- she

10      didn't use these words, but essentially out of hand the

11      positions and objections advanced by Mr. Costello and the

12      Government over our objection -- well, not with this letter.

13      We didn't object.  But they got into the question of the

14      basis and the reasoning for that.

15                We should be able to ask whether an option that is

16      squarely presented to Chairman Thompson in the letter was

17      considered.  If it wasn't considered, it wasn't considered.

18                THE COURT:  You've already asked that question.

19                MR. CORCORAN:  No.  The objection was made.  The

20      two options I asked, what this option is, the information

21      that he's testified before two other committees, did

22      Chairman Thompson consider that and say, Well, maybe this is

23      another case where we can get the privilege resolved short

24      of moving into the criminal process?

25                THE COURT:  You've already asked whether and to
```

 1    what extent Chairman Thompson considered engaging, for lack

 2    of a better word, with President Trump about the privilege.

 3    She answered no and why.  And these are other circumstances

 4    that relate to executive privilege questions around

 5    President Trump.

 6             So why aren't these prior experiences really just

 7    getting at that same option?

 8             MR. CORCORAN:  Well, I think they're different in

 9    the sense that what Mr. Costello is saying is that he's

10    testified before Congress and before the Mueller Commission

11    after the privilege issue was resolved.  I understand -- the

12    first issue was:  Did the chairman go to President Trump and

13    try to explore the issue of resolving privilege?  The answer

14    was no.

15             The second was:  Did the Committee -- did Chairman

16    Thompson consider whether -- the option of civil

17    proceedings?  And the answer was no.

18             This is a third aspect, which is:  He's testified

19    before congressional committees.  Did the chairman think to

20    himself, You know what?  Maybe this is a case where we

21    should pursue -- we should pursue whatever we need to do to

22    get him to testify?

23             So it's not necessarily a direct approach to

24    Trump, which is Option 1.  It's a different approach.

25             THE COURT:  Ms. Vaughn?

1          MS. VAUGHN:  Your Honor, the Committee has no

2     obligation to negotiate, nor is this relevant.  It has to be

3     relevant to be something that could be argued to the jury at

4     the end.  The defense cannot argue to the jury that there is

5     no contempt here because executive privilege required the

6     Committee to negotiate.  And that's what is being suggested

7     by these questions.

8          THE COURT:  I agree with the Government on this

9     one, Mr. Corcoran, including because this is in my view at

10    least in part a subset of the option you've already

11    explored, which is that this would be an option if there was

12    a waiver of -- or agreement with President Trump around

13    executive privilege, which I've already allowed you to ask

14    the witness.

15          So the objection is sustained as to this

16    paragraph.

17          (Whereupon, the following proceedings were had in

18    open court:)

19          THE COURTROOM DEPUTY:  We are now back on the

20    public record.

21    BY MR. CORCORAN:

22    Q.  I want to ask as well about Government's Exhibit No. 7,

23    which is in evidence, which is a letter from Chairman

24    Thompson to Bob Costello, the lawyer for Steve Bannon.  And

25    this one is dated October 15, 2021.

1              My question to you is:  Can you identify any word

2       on this three-page letter that Chairman Thompson actually

3       authored or wrote?

4       A.  At this date, I can't recall the word-for-word editing

5       process that took place on this letter or any of them.  But

6       that same general process that I described that we use for

7       drafting and review and signature of letters would have

8       applied here.

9       Q.  You testified when the Government asked you about this

10      exhibit and specifically about the invocation of the

11      contempt procedures set forth in 2 USC, Sections 192 and

12      194, which are legal statutes, you testified that that

13      involves a vote by the full House of Congress on a

14      resolution recommending that Steve Bannon in contempt of

15      Congress be referred to the U.S. Attorney's Office.  Is that

16      the vote that you're speaking about?

17      A.  It's not a vote of the full Congress; it's the House of

18      Representatives.  Yes.  I was referring to that.

19      Q.  Were you present on the floor of the House when that

20      vote occurred?

21      A.  Yes, I was.

22      Q.  And did you listen to the debate over that vote on the

23      contempt resolution?

24              MS. VAUGHN:  Objection.  Relevance.

25              THE COURT:  You can answer yes or no.

1          THE WITNESS:  I did.

2     BY MR. CORCORAN:

3     Q.  Now, with regard to that vote, do you know how many

4     members of Congress voted against referring the matter to

5     the U.S. Attorney's Office?

6          MS. VAUGHN:  Objection.  Relevance.

7          THE COURT:  Sustained.

8     BY MR. CORCORAN:

9     Q.  Now, with regard to this letter and the second page,

10    US-000449, the very last paragraph says that if Mr. Bannon

11    believes that there are any additional issues relating to

12    his noncompliance with the subpoena that have not been

13    addressed, please submit them in writing to the Select

14    Committee by 6:00 p.m. EST on Monday, October 18, 2021.

15          My question is this:  Who was the person who

16    extended that deadline to October 18th?

17    A.  Extended what deadline?

18    Q.  Extended the deadline for providing information to the

19    Committee.

20    A.  There was no extension of a deadline, sir.

21    Q.  Who came up with the date of October 18th, 2021, to

22    provide additional materials to the Committee?

23    A.  Chairman Thompson sent Mr. Bannon a letter on October

24    15th when the Committee had decided to schedule a proceeding

25    to consider a criminal contempt resolution because that is a

1   very serious step to take with respect to anyone.

2   Somebody's potentially going to be -- risk criminal

3   liability if they're the subject of that resolution.

4           In light of the decision to proceed with a

5   Committee meeting to consider holding Mr. Bannon in

6   contempt, Chairman Thompson wrote on October 15th to make

7   clear that if there were any reasons or if there was any

8   information that Mr. Bannon could provide regarding his

9   misconduct for the Select Committee to consider that he

10  should provide it by the time noted in this letter.

11          That's not an extension of any deadlines; it's

12  setting a deadline.

13  Q.  Okay.  But if I understand your testimony, it was

14  Chairman Thompson who set the new deadline of October 18th.

15  Is that accurate?

16  A.  There's no new deadline, sir.  There's a deadline that

17  he set for providing information that might be -- might bear

18  on the Committee's consideration of Mr. Bannon's misconduct.

19  The misconduct is spelled out in this letter and others,

20  which is Mr. Bannon failed to provide a single document by

21  the deadline of October 7th, 2021.  Mr. Bannon failed to

22  comply with the subpoena's requirement that he appear for a

23  deposition on October 14th, 2021.

24  Q.  If I understand your answer, you're saying that it was

25  Chairman Thompson who picked this date of October 18 that

1    appears in this letter.  Is that what you're saying?

2    A.  Chairman Thompson, as with all these letters, is

3    speaking on behalf of the Committee as the chair.  Yes.  So

4    when this letter says that there's a three-day window for

5    providing any additional information, Chairman Thompson is

6    communicating that message on behalf of the Select

7    Committee.

8    Q.  Which members of the Select Committee do you know

9    through your personal knowledge reviewed and approved this

10   letter?

11           MS. VAUGHN:  Objection.  Relevance.

12           THE COURT:  Overruled.

13           THE WITNESS:  I described to you, sir, the general

14   review process.  I can't recall for each and every letter

15   all the different individuals who may have been involved.

16   But generally, staff drafts recommendations for members to

17   consider.  The chair and others review staff

18   recommendations.  And then ultimately the chair decides what

19   the content will be that he will approve with his signature.

20   BY MR. CORCORAN:

21   Q.  I understand the general process.  And you've used that

22   a lot in your answers.

23           But my question is:  Do you have a specific memory

24   and firsthand information of any Select Committee member

25   approving this letter?

1    A.  I have a memory that the chairman signed off.  I do not

2    know all of his consultations and I don't have a specific

3    memory of the different individuals who were involved in

4    drafting.

5    Q.  What is your memory of Chairman Thompson, to use your

6    words, signing off on this letter?  Did you see him sign it?

7    A.  I don't recall if I saw him sign this.

8    Q.  I'm going to, if I can, move to Government's Exhibit No.

9    8.  This is the second page, which is a letter from Robert

10   Costello, the lawyer for Mr. Bannon, to Representative

11   Thompson, the chairman of the Committee.  And in this

12   letter, Mr. Costello is asking for an additional week.

13   Correct?

14   A.  He is asking for an additional week to respond to the

15   chairman's October 15th letter.

16   Q.  So you read this letter to be that Mr. Costello on

17   behalf of Steve Bannon is asking for an additional week to

18   draft the letter?  Is that your testimony?

19   A.  My understanding of this letter was that he was asking

20   for a week's delay to respond to the Committee's invitation

21   to provide information that would bear on consideration of

22   his misconduct.

23        The suggestion is in this letter from the phrasing

24   a one-week adjournment that they're referring to the

25   contempt meeting that the Committee was holding.

1    Q.  So it's not a week to draft the letter.  Correct?

2    A.  It appeared from that letter he was requesting a week

3    delay in providing information to the Committee about

4    Mr. Bannon's misconduct.

5    Q.  And the reason that Mr. Costello asked for one week, as

6    stated in this letter, is because of new information, a new

7    lawsuit that had been filed dealing with the issue of

8    executive privilege.  Correct?

9    A.  I disagree with the premise of your question, sir,

10   respectfully.  It's not new information.  There had been

11   extensive back-and-forth already between the Select

12   Committee and the Defendant's attorney about the issue of

13   executive privilege, and the Select Committee had made its

14   position clear.

15   Q.  When I use the word "new information," I'm identifying

16   this in the letter.  I'd be interested in your thoughts.

17   Mr. Costello says -- he describes the lawsuit.  He says:  We

18   have just been advised of the filing of a lawsuit in federal

19   court for the District of Columbia entitled *Donald J. Trump*

20   *v. Bennie Thompson* and then the case number.  That lawsuit

21   was a civil lawsuit dealing with the issue of executive

22   privilege.  Correct?

23   A.  That's correct.

24   Q.  Okay.  And Mr. Costello says:  In light of this late

25   filing, we respectfully request a one-week adjournment.

1    Right?

2    A.  That's correct.

3    Q.  But your position is that this is not a request based on

4    something new that's happened?  Is that your testimony?

5    A.  The position of the Select Committee was that, at this

6    time, there were two main issues here relating to executive

7    privilege that Mr. Bannon had not addressed in his

8    communications.  One was the issue that the Select Committee

9    chair had repeatedly informed him of in the letters that the

10   Select Committee was seeking information that could not

11   possibly be reached by executive privilege:  communications

12   with campaign advisors, members of Congress, other private

13   parties, communications relating to his podcast.  Matters

14   that had nothing to do with any communication with the

15   former president or the potential invocation of presidential

16   executive privileges, number one.

17        And number two, the president had not formally or

18   informally invoked the privilege even if you accepted the

19   premise that executive privilege applied, which the Select

20   Committee had made clear that it does not.  It hadn't been

21   invoked.

22        So those two issues had been the subject of

23   several letters, and the fact that there was a new lawsuit

24   raising executive privilege was not material.

25   Q.  I understand what you've just testified.

Amerling - CROSS - By Mr. Corcoran

-4176-

1        But my question is this:  You said that -- you

2   testified that Mr. Bannon was a private citizen and he has

3   enlisted a lawyer, Bob Costello, to help.  My question is

4   this:  Can you understand that a private citizen might want

5   a week to consider a newly filed lawsuit on the topic of

6   executive privilege?

7            MS. VAUGHN:  Objection.  Calls for speculation.

8            THE COURT:  Sustained.

9   BY MR. CORCORAN:

10  Q.  Now, the request for a one-week extension was rejected.

11  Correct?

12  A.  That's correct.

13  Q.  Okay.  And Government's Exhibit No. 9, which is in

14  evidence, is a letter over the signature of Chairman

15  Thompson rejecting that one-week extension.  Correct?

16  A.  That's correct.

17  Q.  Did you draft this letter?

18  A.  My answer is the same as the answer I've given on the

19  other letters:  I would have been involved and the process

20  would have been the same that I described.

21  Q.  This is a one-paragraph letter.  How many Committee

22  staffers or members of the Select Committee were involved

23  with drafting this one paragraph?

24  A.  I don't recall, sir.

25  Q.  The second part of Exhibit 9, which is US-000457 and

```
 1    000458, is another letter, the same date, from -- over the

 2    signature of Chairman Thompson addressed to Bob Costello,

 3    Steve Bannon's lawyer.

 4              In the first line of that letter, Representative

 5    Thompson states:  I write yet again to urge your client,

 6    Stephen K. Bannon, to change course and comply with the

 7    September 23, 2021, subpoena.  Correct?

 8    A.  That's correct.

 9    Q.  So even on the 19th of October, is it fair to say that

10    Chairman Thompson was open to receiving documents and

11    testimony from Mr. Bannon in connection with the subpoena?

12    A.  The Select Committee is always open to receiving

13    documents and testimony relevant to the scope of its

14    investigation.  So yes.

15    Q.  Now, what date was the House vote on the contempt

16    resolution that we discussed?

17    A.  The full House of Representatives voted on the contempt

18    resolution on October 21st, 2021.

19    Q.  So two days after this letter.  Correct?

20    A.  That's correct.

21    Q.  What date did the Committee vote to send that resolution

22    to the House?

23    A.  The Committee approved the resolution recommending that

24    Mr. Bannon be held in criminal contempt on October 19th,

25    2021.
```

1    Q.  So the very date that -- well, the day after Mr. Bannon

2    through his lawyer, Bob Costello, asked for a one-week

3    extension, the Select Committee voted to refer a resolution

4    finding him in criminal contempt to the full House.  Is that

5    accurate?

6    A.  That's correct.

7    Q.  And the actual document, the Committee report on the

8    resolution, was about a 40-page document.  Correct?

9    A.  I'll take your word for that, sir.  That sounds right.

10          MR. CORCORAN:  Well, let me bring up just for the

11   witness's viewing and for identification purposes Defense

12   Exhibit 8.  If we could go to Pages US-464 to 50 -- well,

13   start at US-464.

14          Since it's a long document, your Honor, may I

15   approach the witness?

16          THE COURT:  You may, Mr. Corcoran.

17          MR. CORCORAN:  Thank you.

18   BY MR. CORCORAN:

19   Q.  (Tendering document to the witness) So I've handed you

20   what's been marked as Defendant's Exhibit No. 8 for

21   identification purposes.  I just want you to scan through it

22   and see if it gives you the ability to answer the question:

23   How long was the Committee report that was sent to the full

24   House recommending contempt for Mr. Bannon?

25   A.  The text of the report was 16 pages and then there were

1  appendices, including a copy of the letters, various letters

2  that we've been discussing today, among other items.

3  Q.  So overall, it's roughly 40 pages with the text and the

4  exhibits?

5  A.  When you add all the attachments, it's about 40 --

6  Q.  Yes.

7  A.  -- the text itself is about 15 and a half pages.

8  Q.  And the 15 and a half pages, that's single-spaced.

9  Correct?

10 A.  That's correct.

11 Q.  And did you have a hand in drafting that report that was

12 sent to the full House recommending a vote on contempt for

13 Steve Bannon?

14         MS. VAUGHN:  Objection.  Relevance.

15         THE COURT:  I'm going to allow this one.

16         THE WITNESS:  The process for drafting that report

17 is similar to what I've described for letters.  There were a

18 number of counsels involved with drafting and reviewing.

19 And members and the chair would have reviewed the draft.

20 BY MR. CORCORAN:

21 Q.  My question was:  Did you personally play a role in the

22 drafting of this 15-and-a-half-page, 16-page, single-spaced

23 report?

24 A.  I did.

25 Q.  Did you personally?

1    A.  I did.

2    Q.  You did?

3    A.  Yes.

4    Q.  When did you begin your drafting process?

5              MS. VAUGHN:  Objection.  Relevance.

6              THE COURT:  Overruled.

7              THE WITNESS:  I cannot recall specifically, sir.

8    I mean, it would have been a number of days before the

9    Committee proceeding.

10   BY MR. CORCORAN:

11   Q.  You said the Committee proceeding was on October 21st,

12   2021?

13   A.  This is when the full House voted on the resolution.

14   The Committee proceeding was on October 19, 2021.

15   Q.  Thank you.

16             So at the Committee proceeding on October 19th,

17   2021, that report was already completed.  Is that accurate?

18   A.  Yes.  The Committee has to post the report in advance of

19   its proceeding.

20   Q.  And just to be clear, that's the report recommending

21   that the whole House find Steve Bannon in contempt of

22   Congress.  Correct?

23   A.  That's correct.  Yes.

24   Q.  How many days in advance of October 19th did you begin

25   drafting your portion of that report?

```
1              MS. VAUGHN:  Objection.  Relevance.

2              THE COURT:  Overruled.

3              THE WITNESS:  Sitting here today, I can't tell you

4     how many days specifically.  It would have been a number of

5     days to prepare a report of that nature.

6     BY MR. CORCORAN:

7     Q.  What's your best estimate?  I understand it's a number

8     of days.  But a number is a number.  What's your best

9     estimate sitting here today as to when you started drafting

10    this 16-page single-spaced report?

11    A.  My best estimate is sometime after October 14th because

12    October 14th is when Mr. Bannon defied the subpoena's demand

13    that he appear for his deposition.  So it became clear at

14    that point that he had compounded his noncompliance with the

15    October 7th document production deadline at that point.  And

16    that raised -- I'm talking about theoretically, because I

17    don't remember specifically, but that would have raised the

18    possibility that the Committee would need to consider

19    measures, including contempt.

20    Q.  So if I understand what you just said, you don't think

21    you started drafting a resolution -- I'm sorry -- a report

22    recommending that Steve Bannon be held in contempt before

23    October 14th, which is the date on the subpoena for his

24    testimony.  Is that what you're saying?  You didn't start

25    before the 14th?
```

Amerling - CROSS - By Mr. Corcoran

1    A.  That's my best estimate, sir.

2    Q.  But you can't be certain?

3    A.  I don't know for sure sitting here today.  No.

4    Q.  Let me ask you, you mentioned that you've been on

5    Capitol Hill for 20 years.  Most of that time you've worked

6    for Democratic members of Congress.  Correct?

7    A.  Well, to be precise, sir, I've worked for a number of

8    congressional committees.  Committees are headed by chairs

9    who are in charge of the staff, the committees.  So I have

10   worked for Republican chairs, Democratic chairs.  I've

11   worked -- had direct reports to Democratic-leading members

12   of the Committee.

13   Q.  If I understand your testimony, what you just said is

14   you've worked on committees where there have been

15   Republicans and Democratic members, but you've always worked

16   for the Democrats.  Is that accurate?

17   A.  What I'm describing is that in the House Committee

18   structure, the chairs are in charge of the Committee staffs.

19   And I've worked for several different committees.  Some of

20   the time I've worked for the committees the chair was a

21   Republican; some of the time the chair was a Democrat.

22        I have reported directly throughout my career to

23   the leading Democrat on the body that I've been working for.

24   Q.  That's really my question.  For your entire career,

25   either you've worked for an individual Democratic member of

1    the House or the Senate, correct, or you've worked for the

2    staff under the leading Democratic member of the Committee?

3    Is that accurate?

4    A.  That's correct.

5    Q.  Okay.  And you've also made personal donations to

6    Democratic candidates.  Is that correct?

7    A.  That's correct.

8    Q.  And you've made a personal donation to the Democratic

9    Congressional Campaign Committee.  Correct?

10   A.  I take your word for it.  That's -- I don't remember

11   that specifically.  But I'm sure that's true.

12   Q.  Now, when you were interviewed by the FBI on November

13   2nd, 2021, you told the FBI agent that you and the other

14   members of the staff were nonpartisan, didn't you?

15   A.  That's correct.

16   Q.  I want to ask you about what I understand to be a 17 --

17   you've known for 17 years one of the prosecutors in this

18   case.  Correct?

19   A.  One of the prosecutors and I overlapped on a

20   congressional Committee staff I think about 15 years ago,

21   10, 15 years ago.

22   Q.  Which staff was that?

23   A.  I believe it was the House Committee on Oversight, maybe

24   going over into the House Committee on Energy and Commerce

25   after that.

1    Q.  And who was the chair of the committee at that time?

2    A.  Chairman Henry Waxman.

3    Q.  And he's a Democrat.  Correct?

4    A.  He is.

5    Q.  Okay.  And how many majority staff members were there on

6    the Committee at that time?

7            MS. VAUGHN:  Objection.  Relevance.

8            THE COURT:  Sustained.

9    BY MR. CORCORAN:

10   Q.  Well, point out the person -- point out the prosecutor

11   who you've known for -- did you say 15 or -- 15 years or

12   longer?

13   A.  I've overlapped on the staff of Chairman Waxman with the

14   prosecutor who has blond hair with the black mask.

15   Q.  Did you ever spend any time with the prosecutor,

16   Ms. Gaston, outside of the work environment?

17   A.  It's hard to recall a time when our paths crossed.

18   However, we are in the same book group.  But neither of us,

19   I believe, have attended at the same time for a number of

20   years now.

21   Q.  So you're in a book club with the prosecutor in this

22   case?

23   A.  We are.

24   Q.  How long have you been in that book club?

25   A.  I think I've been in the club for maybe five or -- I

1    don't remember exactly.  Maybe five years.  It could be

2    longer.

3    Q.  And how often does your book club meet?  Is it a monthly

4    meeting of the book club?

5    A.  Usually once a month.

6    Q.  And are there monthly emails that go out to Ms. Gaston

7    and the other book club members speaking about the books to

8    be read and when the meeting is going to take place?

9    A.  Yes.  There are scheduling emails that go out to the

10   group.

11   Q.  And is it accurate to say that most of the members of

12   your book club work together as Democratic staff for one of

13   the committees?

14   A.  The book club is made up of a variety of individuals.

15   The commonality is with most, I think most worked for Henry

16   Waxman at some point in their career.

17   Q.  Okay.  So most of the members of your book club who meet

18   monthly worked for a Democratic congressmen.  Correct?

19          MS. VAUGHN:  Objection, your Honor.  Beyond the

20   relevant part of this.

21          THE COURT:  I'm going to allow a little bit more.

22   BY MR. CORCORAN:

23   Q.  I guess I'll repeat my question.

24          Most of the members of your book club that meets

25   on a monthly basis worked for a Democratic congressman at

1    some point in their career named Representative Henry

2    Waxman.  Is that correct?

3    A.  That's correct.

4    Q.  Is it -- you read nonfiction?

5    A.  You mean in my book group or are you asking personally?

6    Q.  No.  In your book group.

7    A.  Generally, the book group reads fiction.  I should say,

8    I have not attended for at least -- about a year, so I don't

9    know what they're reading right now.

10   Q.  And the book club is something that you joined

11   voluntarily, people that you want to spend your time with

12   and discuss things.  Correct?

13        MS. VAUGHN:  Objection, your Honor.  Where are we

14   going with this?

15        THE COURT:  Sustained.

16   BY MR. CORCORAN:

17   Q.  One last question about the book club that you and

18   Ms. Gaston are in.  Do you ever discuss the political topics

19   of the day?

20        MS. VAUGHN:  Objection, your Honor.  We haven't

21   even established whether this relates to Ms. Gaston.

22        THE COURT:  I'll allow it.

23        Overruled.

24        THE WITNESS:  To the best of my recollection --

25   and I haven't been in the book group for a year -- the

1    conversations cover a whole variety of topics.  We try to

2    start with the book, but then it goes from there.  And given

3    the careers of the folks who were involved in the book

4    group, it's not unusual that we would talk about politics in

5    some way or another.

6    BY MR. CORCORAN:

7    Q.  You testified earlier that the Committee is open to

8    Steve Bannon still providing documents and appearing for

9    testimony at a deposition.  Is that your testimony?

10   A.  My testimony is that we always welcome relevant

11   documents and testimony.  So if he is interested in

12   providing information to the Committee, we would be

13   interested in exploring that further.

14   Q.  And you communicated just last week with Bob Costello,

15   Steve Bannon's lawyer for the Committee issue, about the

16   production of documents this week and testimony at some date

17   in the future based on the subpoena that we've been talking

18   about.  Correct?

19            MS. VAUGHN:  Objection.  Relevance.  Could we have

20   a sidebar?

21            THE COURT:  I agree.  We need a sidebar.

22            (Whereupon, the following proceedings were had at

23   sidebar outside the presence of the jury:)

24            THE COURT:  Let me just start.

25            Can everyone hear me?  We're under seal, so to

1    speak.

2            So Ms. Vaughn?

3            MS. VAUGHN:  Your Honor, I think that it's for the

4    same position that we filed in our motion *in limine*.  This

5    is only aimed at suggesting to the jury, as many of

6    Mr. Corcoran's questions have, that complying later somehow

7    erases the default.

8            And there's no basis in law for that.  If that

9    were the case, this would be civil contempt.

10           We think that this is irrelevant to suggest to the

11   jury that his late effort to comply somehow bears on his

12   intent -- somehow bears on whether he defaulted at the time.

13           And I know Mr. Corcoran is going to say:  Well,

14   this is cross-examination.  But the Rules of Evidence still

15   apply in cross-examination.

16           MR. SCHOEN:  Your Honor, if I may.

17           THE COURT:  Mr. Schoen?

18           MR. SCHOEN:  Can you hear me okay?  I've never

19   used this before.

20           THE COURT:  I can.

21           MR. SCHOEN:  Thank you.

22           Your Honor, a couple of things:

23           This July 14th, 2022, letter is exactly consistent

24   with the reasons for the other letters back and forth being

25   admitted.

1          Frankly, what precedes this are the Trump and

2     Costello letters.  And that's directly relevant also,

3     because this all goes to the belief that the dates of

4     compliance were being extended and are still being extended,

5     and therefore the default and even the contempt prosecution

6     could be seen -- I mean, as the jury question -- seen as

7     sticks to bring Mr. Bannon to the table.

8          But what's relevant is the Costello letter, again,

9     besides the facts laid out in our papers, which I think is

10    ECF No. 107 -- which we again rely on, the Costello letter.

11    Besides that, the Government opened the door by saying

12    Costello continued to just give them the same justification:

13    privilege, privilege, privilege.  And each time, the

14    Committee rejected it.

15         The Costello letter that accompanied -- that

16    provided the Trump letter also changes that.  And it

17    makes -- it presents the bona fides of Mr. Bannon's belief

18    and now it tells the Committee:  We've told you all along we

19    couldn't comply.  We gave you notice we can't comply because

20    of privilege.  Now privilege has been withdrawn.

21         In my mind, this doesn't answer the question

22    because we're not allowed to go into whether privilege

23    applied, was accurate, et cetera.

24         This answers the question that, now that privilege

25    has been formally withdrawn by the former president, I can

```
 1    now -- Bannon can now comply with you and is willing to

 2    comply with you and will comply with you, et cetera.

 3             The July 14th letter now is a response to the July

 4    9th letter from Costello in which the -- a response from the

 5    Committee, the same back-and-forth, to the Costello July 9th

 6    letter in which --

 7             THE COURT:  Mr. Schoen, I understand the

 8    documents.  So here's the question.

 9             MR. SCHOEN:  The July 14th letter?  You've seen

10    that, your Honor?

11             THE COURT:  I haven't seen the July 14th letter.

12             MR. SCHOEN:  That's a key letter, your Honor.  And

13    that's being used for cross-examination to confront the

14    witness today.

15             THE COURT:  Does --

16             MR. CORCORAN:  (Tenders document to the Court.)

17             THE COURT:  Here's the question:  I understand now

18    the letter.  I understand the state of play.

19             When we addressed this before, I said that I might

20    allow this information to come in if there was a proffer

21    from Mr. Bannon that he believed for some reason relevant to

22    this that these issues -- that these letters put into

23    play -- well, Mr. Bannon is willing to make a proffer that

24    either in fact the date was not fixed or that he believed

25    the date was, in fact, not fixed.
```

1          So explain to me how these letters go to that

2     question or those questions.

3          MR. SCHOEN:  These letters are perfectly

4     consistent, your Honor.  They're the natural follow-through

5     of the earlier letters.  And in fact, they prove --

6          THE COURT:  What does that mean?  I don't

7     understand what that means.  Tell me how these letters tend

8     to establish that Mr. Bannon thought the dates were not the

9     dates.

10          MR. SCHOEN:  Mr. Bannon's lawyer, Mr. Costello,

11     writes to Chairman Thompson when he gets the Trump letter

12     and says, "Okay.  Now I can comply with the subpoena."  Not,

13     "Now I can just provide information."  "Now privilege has

14     been released.  I can comply with the subpoena."

15          And Chairman Thompson --

16          THE COURT:  Is that the same thing as saying, I

17     believed the dates weren't operative or that the subpoena

18     didn't require me to show up or produce documents at the

19     earlier dates?

20          MR. SCHOEN:  Absolutely, your Honor.  It says -- I

21     believe today the terms used in some of these letters are

22     "compliance with the subpoena."

23          And you will notice, your Honor, that the July

24     14th letter never says there was a default already.  They

25     say:  You didn't follow the process before and so on.  But

```
 1    we welcome the dates, and all reference is made to the

 2    September 23rd list of documents.

 3             You jury might conclude this is nonsense, but it's

 4    a jury question.  And that's the basis that the letters have

 5    been submitted.  This is perfectly consistent and a logical

 6    extension of all of that, which also proves objectively the

 7    bona fides of Mr. Costello's belief that the dates would be

 8    extended.  That's what we say is a significant part of the

 9    July 14th --

10             THE COURT:  Are you proffering that someone is

11    going to testify that they believe the dates had been or

12    would be extended?

13             MR. SCHOEN:  I am not proffering -- well, again,

14    you know, I'll let Mr. Corcoran -- as the Court saw the

15    other day, we had some disagreement about this, let's say.

16             But I don't think first of all we have an

17    obligation to put anyone forward to testify.  This is a

18    theory of defense for cross-examination purposes.

19             THE COURT:  But it has to go to a question that's

20    relevant for the jury.  You can't cross-examine people on

21    non-bias issues that are totally irrelevant to the case,

22    especially if it runs the risk of confusing the jury.  It

23    has to go to an issue in the case.  So what's the issue in

24    the case?

25             MR. SCHOEN:  The exact issue we have discussed:
```

```
 1    the belief that the dates would be extended.  We do not

 2    need --

 3              THE COURT:  What evidence, if any, are you going

 4    to put in that -- as to the belief that the dates would be

 5    extended?

 6              MR. SCHOEN:  The letters.  The letters themselves

 7    establish that belief.  And it's establishing it through

 8    cross-examination based on the text of the letters.

 9              We have absolutely zero obligation to put forward

10    any affirmative evidence on it.  We can pursue our defense

11    theory through cross-examination, respectfully, your Honor.

12              THE COURT:  Ms. Vaughn, why isn't that right?

13    They can try to establish through your witnesses that the

14    dates were flexible.  And their argument is the dates were

15    flexible or at least they demonstrated to Mr. Costello and

16    Mr. Bannon that the dates were flexible and that these

17    letters are consistent with the idea that the dates were

18    flexible.

19              I know you may disagree with that as a matter of

20    fact.  But why aren't they admissible for that reason?

21              MS. VAUGHN:  The only reason that Mr. Schoen has

22    offered that this provides evidence that the dates were

23    flexible is he says they show that he believed the dates

24    were flexible.

25              What he doesn't say is the second clause of that:
```

1    because he thought executive privilege meant the dates were

2    not solid if he was asserting it.

3            That's a mistake-of-law defense.

4            And I would ask what specific language in here

5    suggests that the Defendant's intent at the time was that he

6    thought the dates were flexible.

7            The letter they're seeking to offer says that his

8    outreach does not change the fact that he failed to follow

9    the process and failed to comply with the subpoena.

10           So there's no --

11           THE COURT:  I understand.

12           Mr. Corcoran, let me ask you this question.  It's

13   a procedural one:  How much -- assuming you can ask about

14   these letters, how much longer do you have with this

15   particular witness?

16           MR. CORCORAN:  Your Honor --

17           THE COURT:  I'm not going to hold you to anything

18   hard and fast.

19           MR. CORCORAN:  I think just to, you know -- the

20   answer is, almost none.  I've got just a few questions.  The

21   question on these letters are -- this letter is very

22   bare-bones.

23           And as an alternative additional basis for my

24   getting into it, it's really just pure cross-examination.

25   On direct examination, the witness said that the Committee

1    was open to Mr. Bannon coming, providing documents,

2    providing testimony.

3         I can ask -- I did ask her, and there was an

4    objection raised, obviously:  Essentially, when was the

5    latest communication that you had with Mr. Costello/Bannon

6    about the provision of testimony and documents?

7         And her answer will be:  Just last week.

8         The chairman sent the letter and said:  Give us

9    documents this week.  We'll then arrange a deposition in the

10   future after we get the documents, all in compliance with

11   the subpoena in this case.

12        And that's why I'm essentially following up on

13   what Mr. Schoen has said, is it would be a different matter

14   if this was a new subpoena.  But the July 14 letter from

15   Chairman Thompson to Robert Costello says compliance with

16   "the subpoena."  It's the one in this case.

17        THE COURT:  Thank you.

18        I'm going to take a brief recess.  The reason I

19   asked is I wanted to see if I do do that how it would affect

20   the schedule for the afternoon.

21        So I'm going to go back on the public record and

22   announce we're going to take a brief recess.  I want to mull

23   this over.  I'll come back and tell you where I am.

24        (Whereupon, the following proceedings were had in

25   open court:)

1          THE COURT:  We are back on the fully public

2    record.

3          As I told the parties on the husher, I'm going to

4    take a very brief recess to address the question that has

5    just been presented.

6          I think for efficiency's sake, Ms. Lesley, I'd

7    like the jury to stay as close as we can here.  And we're

8    going to have a ten-minute recess.  I'll come back, discuss

9    my views on the open record and then we can bring the jury

10   back in.  Okay?

11         Thank you all.

12         And, Ms. Amerling, you may also leave the

13   courtroom if you would like.

14         THE WITNESS:  Thank you.

15         (Whereupon, the jury exited the courtroom at 2:43

16   p.m. and the following proceedings were had:)

17         (Thereupon a recess was taken, after which the

18   following proceedings were had:)

19         THE COURTROOM DEPUTY:  We are now on the record.

20         THE COURT:  I am going to overrule the

21   Government's objection to the question or questions that

22   Mr. Corcoran intends to ask.

23         As everyone knows, I left open the question of

24   whether the most recent set of letters would go to the

25   limited question of whether either the dates in the subpoena

1    or the return dates were malleable in fact or whether

2    Mr. Bannon thought they were.

3         And it seems to me that the bar for relevance is

4    very low and that this letter in particular could be

5    relevant to that question.

6         So I will not prohibit Mr. Corcoran from asking

7    the witness questions about the exchange of letters.

8         The leash will be very tight.  And I will consider

9    whatever -- will consider; I'm not saying I'm going to do

10   it -- whatever instruction the Government wants me to make

11   either now or when I instruct the jury.

12        MS. VAUGHN:  Your Honor, we think that these

13   letters carry significant potential for confusion that the

14   jury would carry through the trial.  So we think that two

15   instructions are required with the entry of this letter and

16   questions about it:

17        First, that the Defendant's belief that executive

18   privilege excused him from complying with the subpoena is

19   not a defense to contempt and that the question the jury

20   will be deciding is instead whether the Defendant's failure

21   to comply with the subpoena was deliberate and that his

22   reasoning is irrelevant.

23        And I think we could do something that's based off

24   the final instructions that the Court had proposed with

25   respect to that.

1           The second instruction that we think is important

2   to make sure that this jury decides this case not on the no

3   harm, no foul theory, but on the actual elements of the

4   offense, is that they be instructed that the fact of later

5   compliance or later efforts at compliance or the Committee's

6   request of later compliance does not by itself waive or

7   erase the prior failure to comply or contempt or something

8   along those lines.

9           THE COURT:  Is the Government requesting that I

10  make these instructions now --

11          MS. VAUGHN:  We think it's important now to --

12          THE COURT:  -- or at deliberation time?

13          MS. VAUGHN:  Both, your Honor, because

14  Mr. Corcoran's questions are clearly going to be aimed at

15  suggesting to this jury that -- I mean, Mr. Schoen said this

16  explicitly:  We are allowed to show the jury that his belief

17  in executive privilege was valid.  That's not a defense to

18  contempt.

19          And so then this jury is going to have these

20  improper notions in their head that executive privilege is a

21  defense, if he truly believed it, despite the Committee's

22  rejection and that the fact that he complied later somehow

23  shows the Committee wasn't -- he wasn't in default or

24  something.

25          They can't be allowed to proceed through the rest

```
1    of the trial with that incorrect notion of the law.

2              THE COURT:  Thank you, Ms. Vaughn.

3              Mr. Schoen?

4              MR. SCHOEN:  Yes, your Honor.

5              All that's happening here is the Government

6    doesn't like the way these letters go.  The same instruction

7    the Court should give, respectfully, your Honor, about these

8    letters is the same instruction the Court gave to the

9    earlier letters.  That is, they're not offered for the truth

10   of the assertion; they're offered for the notice.

11             We understand we can't -- based on the Court's

12   rulings we can't bring to the jury the straight defense that

13   the Defendant believed executive privilege excused him from

14   contempt.

15             This is the belief that executive privilege --

16   that the Committee would consider executive privilege as a

17   factor in extending the dates, and therefore these letters

18   confirm for Mr. Costello his belief.  That's why I'm saying

19   these letters are relevant, your Honor, or one of the

20   reasons they're relevant.  They confirm what happened here.

21             So President Trump sent the letter saying:  I am

22   withdrawing privilege --

23             THE COURT:  I get it.  I get it.

24             MR. SCHOEN:  I feel like I need to explain my

25   theory.
```

```
 1              THE COURT:  I understand the facts.  I need the
 2      punch line.
 3              MR. SCHOEN:  Well --
 4              THE COURT:  We're going to bring the jury in.
 5              MR. SCHOEN:  Thank you.  Is my position clear on
 6      the instructions, your Honor?  We don't think --
 7              THE COURT:  Yes.  Yes.
 8              MR. SCHOEN:  Thank you.
 9              THE COURT:  We can bring the witness in as well.
10              (Whereupon, the jury entered the courtroom at 3:00
11      p.m. and the following proceedings were had:)
12              (Thereupon, the witness entered the courtroom and
13      the following proceedings were had:)
14              THE COURT:  Mr. Corcoran?
15              MR. CORCORAN:  Thank you, your Honor.
16              THE COURT:  Do you want to start again, and then
17      when I have a concrete question in mind I can address the
18      issues we just discussed?
19              MR. CORCORAN:  Yes, your Honor.
20      BY MR. CORCORAN:
21      Q.  Ma'am, I wanted to follow up on your testimony about
22      the -- about Chairman Thompson continuing to be open to
23      Steve Bannon's provision of documents if he has any that are
24      responsive to the subpoena and his appearance for deposition
25      by the Committee.
```

Amerling - CROSS - By Mr. Corcoran

1          The first question I want to ask you is about

2    Defendant's Exhibit No. 30 for identification purposes.  And

3    that is, are you aware that on July 9th of this year, July

4    9th of 2022, former President Donald J. Trump wrote to

5    Mr. Bannon and addressed the issue of the September 23,

6    2022, subpoena?

7    A.  Yes.

8    Q.  Have you read -- did you read this letter before today?

9    A.  I did.

10   Q.  I want to ask you just about a few points in the letter

11   and what is being communicated.

12          First, former President Trump writes --

13          MS. VAUGHN:  Objection, your Honor.  This letter

14   is not in evidence.

15          MR. CORCORAN:  We'll move it into evidence at this

16   time, your Honor.

17          MS. VAUGHN:  Same objection.

18          THE COURT:  So, ladies and gentlemen of the jury,

19   I'm going to admit this letter and perhaps two others that

20   will be perhaps offered by the Defendant.

21          I'm admitting them not for the truth of the

22   matters asserted with them, but for the fact that they were

23   communicated, first of all, and they communicated the

24   parties' positions.

25          The other thing that I am instructing you today,

1    although I will give you much more detailed instructions

2    about, is I am limiting them -- I am admitting them for a

3    limited purpose.  And that is going to the questions of

4    whether the date or dates by which Mr. Bannon had to comply

5    with the subpoena were fixed; and, second, whether

6    Mr. Bannon deliberately and intentionally failed to comply

7    with those dates.

8            You will perhaps hear additional discussion about

9    executive privilege.  Mr. Bannon's belief that questions

10   around executive privilege excused him from complying with

11   the subpoena are irrelevant in this case.

12           In addition, as I will instruct you later, whether

13   or not Mr. Bannon in the future complies with the subpoena

14   is not relevant to whether he was in default in October

15   2021, as the Government argues of course here.

16           But with these limiting instructions, I do believe

17   this information is admissible again for two potential

18   purposes:  One is, again, whether the dates that we've been

19   discussing today were in fact the dates; and, second,

20   Mr. Bannon's -- whether he deliberately and intentionally

21   defaulted with respect to those dates.

22           As I indicated in the opening statements, I will

23   be giving you more detailed instructions around some of

24   these terms.  But I wanted you to understand the context in

25   which I am admitting these documents.

```
 1                (Whereupon, Defendant's Exhibit No. 30 was entered

 2      into evidence.)

 3                THE COURT:  Mr. Corcoran.

 4                MR. CORCORAN:  Thank you, your Honor.

 5      BY MR. CORCORAN:

 6      Q.  Mr. Amerling, I just want to direct you to a few

 7      different points in this letter, which is Defendant's

 8      Exhibit 30 in evidence.

 9                First, it's a letter from President Trump to

10      Stephen Bannon dated July 9, 2022.  Correct?

11      A.  That's correct.

12      Q.  And in the first line, the former president is informing

13      Mr. Bannon that the subject of this letter is the subpoena

14      that he received in September 2021.  Correct?

15      A.  Yes.

16      Q.  Moving to the second paragraph, the first line,

17      president -- former President Trump states in this letter:

18      When you first received the subpoena to testify and provide

19      documents, I invoked executive privilege.  Correct?

20      A.  That's what this letter says.  Yes.

21      Q.  And then in the third paragraph, President Trump states:

22      Therefore, if you reach an agreement on a time and place for

23      your testimony, I will waive executive privilege for you,

24      which allows for you to go in and testify truthfully and

25      fairly.
```

 1           Is that correct?

 2    A.  That's what the letter says.  Yes.

 3    Q.  So basically, the letter in terms of just the notice

 4    that's being conveyed is a letter from former President

 5    Trump that he will waive executive privilege if there's an

 6    agreement -- well, if there's an agreement to testify and

 7    produce documents with the Select Committee.  Is that

 8    accurate?

 9    A.  Well, the letter says if we reach an agreement on a time

10    and place for testimony.  I don't see where there's a

11    reference to reaching an agreement on documents.

12    Q.  Okay.  So what's being conveyed is, if I can rephrase

13    it -- I just want to make sure that I'm speaking precisely

14    about the letter and what notice is provided -- this is

15    former President Trump expressing the idea that he would

16    waive privilege for Mr. Bannon to go in and testify before

17    the Select Committee under certain circumstances.  Is that

18    accurate?

19    A.  Yes.  I think he described it as a conditional promise

20    of a waiver with respect to testimony.

21    Q.  Thank you.

22           MR. CORCORAN:  If we can move to Defendant's

23    Exhibit 31 for identification purposes.

24           THE COURT REPORTER:  Judge, I'm sorry.  Has

25    Defendant's Exhibit No. 31 been admitted?

1        THE COURT:  No.  Only 30 has been admitted so far.

2        30 was admitted, again, ladies and gentlemen of

3   the jury, with the instructions that I gave you.

4   BY MR. CORCORAN:

5   Q.  Mr. Amerling, what I'm showing you for identification

6   purposes is a two-page letter marked Defendant's Exhibit 31

7   which is dated July 9, 2022.  It's from Robert J. Costello,

8   the attorney for Mr. Bannon, and it's directed to Chairman

9   Bennie Thompson of the Select Committee.  Correct?

10  A.  That's correct.

11  Q.  And have you seen this letter before?

12  A.  I have.  Mr. Costello emailed it to me.

13       MR. CORCORAN:  Your Honor, we'd move Exhibit No.

14  31 into evidence, Defendant's Exhibit No. 31.

15       MS. VAUGHN:  Same objection, your Honor.

16       THE COURT:  That objection is overruled in part.

17       Again, ladies and gentlemen of the jury,

18  consistent with what I said before, the same limiting

19  instructions I gave as to Defendant's Exhibit 30 apply here.

20  It goes only to questions around the subpoena dates and

21  Mr. Bannon's deliberate and intentional, as alleged by the

22  Government, failure to comply.

23       Mr. Bannon's belief that executive privilege

24  excused him from compliance is not relevant, and facts of

25  later compliance with the subpoena do not waive or otherwise

1   make lawful what would otherwise be unlawful contempt.

2            (Whereupon, Defendant's Exhibit No. 31 was entered

3   into evidence.)

4   BY MR. CORCORAN:

5   Q.  Ms. Amerling, if I can direct your attention to the

6   first sentence of that letter.  Is it accurate to say

7   that -- what Mr. Costello is conveying to Chairman Thompson

8   of the Committee is that on the morning of October 19th,

9   2021, you denied a request for a one-week adjournment in

10  light of the filing of the lawsuit by President Donald J.

11  Trump.

12           So Mr. Costello essentially is speaking about the

13  subpoena that's at issue in this case.  Is that accurate?

14  A.  If he's talking about the letter relating to Mr. Bannon

15  providing information to the Committee before the October

16  19th proceeding, then the reference is to the exchange of

17  letters with respect to the Committee's invitation for him

18  to provide information that would bear on his misconduct.

19  Q.  And if I can direct your attention to the third

20  paragraph, where it says:  While Mr. Bannon has been

21  steadfast in his convictions, circumstances have now

22  changed.  President Trump has provided us with a letter,

23  which is attached, attesting to the fact that back in

24  October 2021, he did invoke executive privilege with respect

25  to Mr. Bannon's testimony and document production.

1          So Mr. Costello is essentially putting Chairman

2     Thompson on notice that he's referencing what happened back

3     in October of 2021.  Correct?

4     A.  Can you explain what you mean by "on notice"?

5     Q.  Well, not an official term.  He's just communicating

6     about what happened back in October 2021 with regard to the

7     subpoena that we have been discussing today?

8     A.  He's communicating in this paragraph that President

9     Trump has provided the letter that takes that position.

10    Q.  Okay.  And on the next page, that first paragraph,

11    Mr. Costello states to Chairman Thompson:  President Trump

12    has decided it would be in the best interest of the American

13    people to waive executive privilege for Stephen K. Bannon to

14    allow Mr. Bannon to comply with the subpoena issued by your

15    committee.  Mr. Bannon is willing to, and indeed prefers, to

16    testify at your public hearing.

17          Is Mr. Costello in that paragraph conveying to

18    Chairman Thompson that now that the attached Trump --

19    President Trump letter is in play, Mr. Bannon is willing to

20    testify in a public hearing before the Committee?

21    A.  That's what it looks like he's saying.  Yes.

22          MR. CORCORAN:  If we could move to defense --

23    well, I'm sorry, your Honor.

24          THE COURT:  I should have said before, Defendant's

25    Exhibit 31 is admitted with the limiting instructions I

1    gave.

2              I take it we're now moving on to another document.

3              MR. CORCORAN:  I was going to move on to No. 32.

4    This is Defendant's Exhibit 32 for identification purposes.

5    BY MR. CORCORAN:

6    Q.  Ms. Amerling, is this a letter from Chairman Thompson to

7    Robert Costello, the attorney for Mr. Bannon, dated July 14,

8    2022?

9    A.  That's correct.

10   Q.  So that's just within the last week.  Correct?

11   A.  That's correct.

12   Q.  And in this letter, is Chairman Thompson focusing on the

13   first paragraph, indicating that he's -- well, I'll read it:

14   I'm in receipt of your letter dated July 9, 2022, in which

15   you indicate that your client, Stephen K. Bannon, is now

16   willing to comply with the Select Committee's subpoena.

17             So is Chairman Thompson --

18             MS. VAUGHN:  Objection.  This document is not in

19   evidence.

20             MR. CORCORAN:  Oh, I'm sorry.

21             THE COURT:  Agreed.

22             MR. CORCORAN:  It's getting late in the day.  I'm

23   sorry.  We would move the admission of this.

24             THE COURT:  Same objection?

25             MS. VAUGHN:  Same objection.

```
1            THE COURT:  Ladies and gentlemen of the jury, I am
2   going to admit this document.  This is the third of the
3   documents that I'm admitting subject to the limiting
4   instruction that I've already explained.  I don't think I
5   need to repeat it again.  But what I said earlier about
6   Defendant's Exhibits 30 and 31 is equally applicable to
7   Defendant's Exhibit 32.
8            (Whereupon, Government's Exhibit No. 32 was
9   entered into evidence.)
10           THE COURT:  Mr. Corcoran.
11  BY MR. CORCORAN:
12  Q.  Ms. Amerling, with regard to the first sentence, is
13  Chairman Thompson indicating that he's responding to
14  Mr. Costello's letter of July 9, which attached President
15  Trump's letter that references the Select Committee
16  subpoena?
17  A.  That's correct.
18  Q.  And if you'd go to the third paragraph, where Chairman
19  Thompson writes:  With respect to the Select Committee's
20  demand for documents, Mr. Bannon should begin producing
21  responsive documents today to the Select Committee and
22  provide a complete response by July 21, 2022.
23           By that sentence, is Chairman Thompson reflecting
24  that the Select Committee is open to the receipt of any
25  responsive documents if there are any, given President
```

1    Trump's new letter that we just looked at?

2    A.  He's saying what we've talked about previously today:

3    that the Select Committee always welcomes relevant documents

4    and testimony.

5    Q.  And the final paragraph of that -- I'm sorry -- the

6    final sentence of that paragraph, the final two sentences

7    reads:  After he has produced all the requested documents,

8    we will identify a date soon following that production on

9    which he must then appear in person in the O'Neill House

10    office building for a deposition.  We anticipate that the

11    deposition will occur in the near future.

12            And by this sentence, is Chairman Thompson

13    indicating to Stephen Bannon that he's open for a deposition

14    at a future date pursuant to the September 23, 2021,

15    subpoena?

16    A.  He's indicating that he's open to a deposition after

17    Mr. Bannon has produced the requested documents.

18            MR. CORCORAN:  Thank you, your Honor.  I have

19    nothing further.

20            THE COURT:  Thank you, Mr. Corcoran.

21            Ms. Vaughn, redirect?

22            MS. VAUGHN:  Can I please have the ELMO?

23                      REDIRECT EXAMINATION

24    BY MS. VAUGHN:

25    Q.  Ms. Amerling, let's pick up right where Mr. Corcoran

 1    left off, with defense -- I think it was Defendant's Exhibit

 2    32.

 3            Ms. Amerling, first of all, is this the July 14th

 4    letter that the Committee sent back?

 5            THE COURT:  Ms. Vaughn, I think you're going to be

 6    asked to either use the microphone or perhaps put on the

 7    portable mic, whichever you'd prefer.

 8            MS. VAUGHN:  I'll use the portable, but this one

 9    in the meantime.

10    BY MS. VAUGHN:

11    Q.  Ms. Amerling, is this the July 14th letter that the

12    Committee sent back to the Defendant after his sudden offer

13    to comply on July 9th?

14    A.  That's correct.

15    Q.  Ms. Amerling, I've just highlighted a sentence in the

16    second paragraph there.  Can you please read that?

17    A.  Yes.  It says:  The July 9th, 2022, outreach to the

18    Select Committee by you on Mr. Bannon's behalf does not

19    change the fact that Mr. Bannon failed to follow that

20    process and failed to comply with the Select Committee's

21    subpoena prior to the House referral of the contempt

22    resolution concerning Mr. Bannon's defiance of the subpoena.

23    Q.  Ms. Amerling, you testified earlier about the --

24            (Feedback emitting from the sound system.)

25            THE COURT:  We can fix that, maybe.

Amerling - REDIRECT - By Ms. Vaughn

```
1            MS. VAUGHN:  Sorry.  I'm causing trouble.

2            THE COURT:  We just need to turn off the

3    microphone on the podium, if we can.

4            THE COURTROOM DEPUTY:  (Assists counsel with the

5    audiovisual equipment.)

6            THE COURT:  Let's try that, Ms. Vaughn.

7            MS. VAUGHN:  Is this better?  Great.  Thank you.

8    BY MS. VAUGHN:

9    Q.  So what was the date that the Defendant decided to try

10   to comply now?

11   A.  The letter from the Defendant's counsel came to the

12   Select Committee on July 9th, 2022.

13   Q.  And, Ms. Amerling, you testified earlier about the

14   time-limited nature of the Committee's investigation.  When

15   does the Committee's authority expire?

16   A.  At the end of this Congress.

17   Q.  And when was it that the Committee first issued the

18   subpoena?

19   A.  The Committee first issued a subpoena to Mr. Bannon on

20   September 23rd, 2021.

21   Q.  And if Mr. Bannon had complied as required with the

22   subpoena, how much time would the Committee have had to look

23   at the information he had, follow up on leads, consider

24   whether there was more relevant information out there to

25   help the Committee get to the bottom of January 6th?
```

Amerling - REDIRECT - By Ms. Vaughn

```
 1    A.  At least eight -- at least nine months of additional
 2    time.
 3    Q.  And how much time is the Committee left with now?
 4    A.  Five or so months.
 5    Q.  And so as opposed to having 14 in total, the Committee
 6    now only has five?
 7    A.  That's correct.
 8    Q.  Did the Defendant's sudden offer to comply on July 9th
 9    include any offer to provide documents?
10    A.  It did not.
11    Q.  Has the Defendant provided any documents since his
12    sudden offer to comply on July 9th?
13    A.  Not unless he's provided evidence since I've been
14    sitting here today.
15    Q.  And did the Defendant's offer to comply actually come
16    with conditions that don't follow the subpoena's
17    requirements?
18    A.  That's correct.
19    Q.  Let's take a look at those.
20         I'm showing you Page 2 of what's been admitted as
21    Defendant's Exhibit 31.  Ms. Amerling, can you please read
22    the last sentence there that I've highlighted on that second
23    page?
24    A.  It says:  Mr. Bannon is willing to, and indeed prefers,
25    to testify at your public hearing.
```

Amerling - REDIRECT - By Ms. Vaughn

```
 1    Q.  Who gets to decide under what conditions someone answers

 2    the Committee's questions:  the Committee or the witness?

 3    A.  The Committee.

 4    Q.  Because under whose authority is it that the subpoena is

 5    issued:  the Committee or the witness's?

 6    A.  The Committee.

 7    Q.  And is the subpoena a government order or a request to

 8    the witness?

 9    A.  It's a demand by the government.

10    Q.  Ms. Amerling, this letter came to the Committee on July

11    9th.  Let's talk about some of the things that happened in

12    between when the subpoena was issued and when this letter

13    came in.

14         Ms. Amerling, I'm showing you what's already been

15    admitted as Government's Exhibit 5.  What is Government's

16    Exhibit 5?

17    A.  It's the October 8th letter from Chairman Thompson to

18    Mr. Bannon's counsel.

19    Q.  And in this letter, what does the Committee tell the

20    Defendant in this first paragraph where I've highlighted

21    about his ability to rely on executive privilege?

22    A.  It says:  Despite this limited instruction, your letter

23    takes the inappropriate position that Mr. Bannon will not

24    comply with any request for information or testimony sought

25    by the Select Committee.  Moreover, Mr. Trump's stated,
```

1    quote, "intention to assert these executive privileges," end

2    quote, that may or may not belong to him does not provide a

3    legal basis for Mr. Bannon's refusal to comply with the

4    subpoena.

5    Q.  Let's look at Page 2 of Exhibit 5 again.  Can you please

6    read the two lines at the beginning of the last paragraph on

7    that page that I've just highlighted?

8    A.  It says:  Regardless of any purported privilege

9    assertion by Mr. Trump, Mr. Bannon has an ongoing obligation

10   to produce documents to the Select Committee.  Accordingly,

11   please produce all responsive documents and records

12   identified in the subpoena.

13   Q.  And going to the third page of this October 8th, 2021,

14   letter, can you please read the first sentence of the top

15   paragraph there that I've just highlighted?

16   A.  It says:  Finally, the Select Committee expects

17   Mr. Bannon's appearance at the time and place designated in

18   the subpoena for a deposition and respond fully to questions

19   by the Select Committee.

20   Q.  Can you please read the last paragraph of Government's

21   Exhibit 5?

22   A.  It says:  Please be advised that the Select Committee

23   will view Mr. Bannon's failure to respond to the subpoena as

24   willful noncompliance with the subpoena.  His willful

25   noncompliance with the subpoena would force the Select

Amerling - REDIRECT - By Ms. Vaughn

1    Committee to consider invoking the contempt of Congress

2    procedures in 2 United States Code, Sections 192, 194, which

3    could result in a referral from the House to the Department

4    of Justice for criminal charges, as well as the possibility

5    of having a civil action to enforce the subpoena brought

6    against Mr. Bannon in his personal capacity.

7    Q.  So by October 8th, had the Committee told the Defendant

8    that the privilege he was claiming not to comply did not

9    provide a basis for him to refuse to show up for a

10   deposition?

11   A.  That's correct.

12   Q.  By October 8th, 2021, had the Committee told the

13   Defendant that his invocation of a privilege not to comply

14   did not provide a basis to withhold documents from the

15   Committee?

16   A.  That's correct.

17   Q.  And by October 8th, 2021, had the Committee warned the

18   Defendant that his failure to comply could result in a

19   referral for criminal prosecution?

20   A.  That's correct.

21   Q.  Did the Defendant offer to comply at that time?

22   A.  He did not.

23   Q.  Did the Committee send another letter to the Defendant

24   on October 15th, 2021?

25   A.  Yes.

Amerling - REDIRECT - By Ms. Vaughn

1    Q.  And what was it the Committee told the Defendant in that

2    letter?

3    A.  The Committee told the Defendant that his failure to

4    comply would mean the Committee would have to consider a

5    contempt resolution.

6    Q.  Did the Defendant comply with the subpoena at any -- in

7    any way at that time?

8    A.  He did not.

9    Q.  What day was it that the House -- excuse me -- that the

10    Committee voted to refer the Defendant for criminal

11    prosecution?

12    A.  The Committee approved the resolution recommending

13    criminal prosecution on October 19th, 2021.

14    Q.  And did the Defendant -- did the Committee notify the

15    Defendant of that?

16    A.  Yes.

17    Q.  Did the Defendant offer to comply in any way with the

18    subpoena at that time?

19    A.  He did not.

20    Q.  What day was it that the House, the full House, voted to

21    refer the Defendant for criminal prosecution?

22    A.  October 21st, 2021.

23    Q.  Did the Committee notify the Defendant of that or was it

24    publicly available?

25    A.  It was a public proceeding.

Amerling - REDIRECT - By Ms. Vaughn

```
1    Q.  Did the Defendant offer to comply at any time after
2    that?
3    A.  He did not.
4    Q.  Let's talk about this lawsuit that the Defendant cited
5    as a basis not to be held in contempt.
6         I'm showing you what's been admitted as
7    Government's Exhibit 8, Page 2.  The lawsuit is titled in
8    the letter Donald J. Trump v. Bennie Thompson, et al.  And I
9    believe you testified earlier that that lawsuit had to do
10   with the former president's claim of an executive privilege.
11   Is that right?
12   A.  That's correct.
13   Q.  Are you aware of whether this lawsuit has been resolved?
14   A.  It has.
15   Q.  And about how long has it been since it's been resolved?
16   A.  I believe the appeals court decided it in December 2021
17   and then the Supreme Court ruled in, I believe, January.
18   Q.  So January of 2022?
19   A.  I believe that's right.
20   Q.  So about how long before the Defendant's sudden offer to
21   comply was that?
22   A.  However long between the Supreme Court decision,
23   January, through last week.
24   Q.  About six months?
25   A.  Yes.
```

```
 1    Q.  Are you aware of how that lawsuit was resolved?

 2    A.  It was resolved in the Select Committee's favor.

 3    Q.  Meaning they could get records that the former president

 4    was trying to withhold?

 5    A.  That's correct.

 6    Q.  And did the Defendant offer to comply with the subpoena

 7    in any way at that time?

 8    A.  He did not.

 9    Q.  The full House referred the Defendant for criminal

10    prosecution and he was actually charged.  Is that right?

11    A.  That's correct.

12    Q.  Are you aware of when about that happened?

13    A.  I believe it was November 2021.

14    Q.  November 2021?

15    A.  I believe around then.

16    Q.  And around that time, when the Defendant was criminally

17    charged, did he come and offer to comply in any way with the

18    subpoena?

19    A.  He did not.

20    Q.  So we're in November, December, January.  What about

21    February 2022?  Did the Defendant offer to comply at any

22    time in that month?

23    A.  He did not.

24    Q.  What about March 2022?

25    A.  No.
```

Amerling - REDIRECT - By Ms. Vaughn

```
1    Q.  April 2022?

2    A.  No.

3    Q.  May 2022?

4    A.  He did not.

5    Q.  Ms. Amerling, are you aware that at some point the

6    Defendant tried to get the charges dismissed in the court?

7    A.  That's my understanding.  Yes.

8    Q.  And are you aware that that happened before the

9    Defendant's sudden offer of compliance on July 9th?

10   A.  Yes.

11   Q.  And when in relation to the start of this trial did this

12   sudden offer of compliance come?

13   A.  It came on July 9th, 2022.  I think it actually came

14   into my email inbox a little bit after midnight on July

15   10th.

16   Q.  And July 10th:  About how long ago -- how long before

17   trial was that?

18   A.  A matter of days.

19   Q.  And who is it that the Defendant is claiming has now

20   given him permission to comply with the subpoena?

21   A.  Former President Donald Trump.

22   Q.  Was former President Trump ever an official on the

23   Committee?

24   A.  He was not.

25   Q.  Was he ever a part of Congress at the time the Committee
```

Amerling - REDIRECT - By Ms. Vaughn

1    was operating?

2    A.  He was not.

3    Q.  Does the Committee answer to former President Trump?

4    A.  No.

5    Q.  And had the Committee told the Defendant that its

6    position was that he had to comply regardless?

7    A.  Yes.

8    Q.  Ms. Amerling, let's talk about a couple of other things

9    you discussed with Mr. Corcoran.

10        Do you recall that Mr. Corcoran asked you some

11   questions about whether there was a judge at the Committee's

12   depositions for witnesses?

13   A.  Yes.

14   Q.  Do judges sit on the Committee?

15   A.  They do not.

16   Q.  What part of our government are judges?

17   A.  They belong to the judicial branch.

18   Q.  Is that a separate branch of government from Congress?

19   A.  Yes, it is.

20   Q.  And in fact, does the Committee have procedures in place

21   for witnesses at depositions that want to invoke privileges

22   to protect their rights?

23   A.  Yes, it does.

24   Q.  Let's take a look at those, because I don't think

25   Mr. Corcoran showed them to you.

```
 1                Ms. Amerling, I'm showing you Page 10 of
 2    Government's Exhibit 2.  First of all, what is Page 10 of
 3    Government's Exhibit 2?
 4    A.  This shows the regulations that govern depositions.
 5    Q.  And I want to focus on Item 7 of these regulations that
 6    govern depositions.  And specifically, I'm highlighting a
 7    line in the middle of this.  Can you please read that line I
 8    just highlighted?
 9    A.  It says:  The witness may refuse to answer a question
10    only to preserve a privilege.
11    Q.  Would that include executive privilege?
12    A.  Potentially, yes.
13    Q.  And to be able to refuse an answer -- to be able to
14    refuse to answer a question based on a privilege, does the
15    witness have to be at the deposition?
16    A.  Yes.
17    Q.  And then do these regulations provide a procedure for
18    how the witness's privilege is decided?
19    A.  Yes.
20    Q.  I just highlighted a little bit more of that.  Can you
21    please read what I just highlighted for the jury?
22    A.  It says:  When the witness has refused to answer a
23    question to preserve a privilege, members or staff may,
24    number one, proceed with the deposition; or, number two,
25    either at that time or at a subsequent time seek a ruling
```

```
 1    from the chair either by telephone or otherwise.  If the
 2    chair overrules any such objection and thereby orders a
 3    witness to answer any question to which an objection was
 4    lodged, the witness shall be ordered to answer.
 5    BY MS. VAUGHN:
 6    Q.  And these --
 7              MR. CORCORAN:  Your Honor, could we have a
 8    sidebar?
 9              THE COURT:  Yes.
10              (Whereupon, the following proceedings were had at
11    sidebar outside the presence of the jury:)
12              THE COURT:  Can everybody hear each other?
13              MS. VAUGHN:  Yes, your Honor.
14              MR. CORCORAN:  I think the rule issue that came in
15    was for a very limited purpose.  And now this examination is
16    getting into essentially opening the door to what would be
17    actual -- a broad variety of recross based on whether the
18    Committee followed a number of different rules that we did
19    not ask about.
20              And so I just wanted to object on that basis and
21    just say essentially that we're going to seek to -- we would
22    ask if this goes on to open up a lot of different avenues
23    that so far have been foreclosed.
24              THE COURT:  Ms. Vaughn?
25              MR. SCHOEN:  If I may, Judge, I wanted to add to
```

Amerling - REDIRECT - By Ms. Vaughn

1    the position of the defense:  This also brings to the

2    forefront the defense of executive privilege and how

3    executive privilege is properly invoked and exercised and

4    the implications, exactly what we're now not allowed to go

5    into.

6           THE COURT:  Right.

7           MS. VAUGHN:  Your Honor, the questions on cross --

8    there was a question:  There's not a judge at the deposition

9    to protect witnesses' rights.  That suggests that they're

10   involved in --

11          MS. GASTON:  (Removes microphone from Ms. Vaughn's

12   garments.)

13          MS. VAUGHN:  I apologize, your Honor.

14          THE COURT:  That's okay.

15          MS. VAUGHN:  I just abandoned using that

16   microphone.

17          They asked on cross:  There's not a judge at a

18   deposition to protect a witness's rights.  That suggests

19   that the Committee does not have a regard for rights --

20          THE COURT:  That's fine.  But you are starting to

21   get into questions around, How does one protect privilege

22   and whether the executive privilege is protectable in this

23   matter and the like.  I think you can establish that that's

24   a mechanism for somebody who substitutes as a judge without

25   opening the door to questions of privilege.

Amerling - REDIRECT - By Ms. Vaughn

```
 1              MS. VAUGHN:  That's all I wanted.  I just want to
 2       read this and move on.
 3              THE COURT:  No.  I actually -- I want -- you can
 4       ask whether there's a mechanism for having any objection
 5       decided by the chair.  I don't want to get into the
 6       mechanism around privilege.  Okay?
 7              Thank you.
 8              (Whereupon, the following proceedings were had in
 9       open court:)
10       BY MS. VAUGHN:
11       Q.  Ms. Amerling, who presides over the Committee's
12       proceedings and makes decisions about what is and is not
13       allowed?
14       A.  The chairman.
15       Q.  Does former President Trump?
16       A.  He does not.
17       Q.  Ms. Amerling, Mr. Corcoran asked you a lot of questions
18       about whether you had written letters or other staff or what
19       have you.
20              Do you have authority to send letters that have
21       not been approved by the Committee?
22       A.  Not letters that are signed by the chairman.  No.
23       Q.  And so when you send a letter, who is it sent on behalf
24       of?
25       A.  I'm sorry.  What's your question?
```

```
 1    Q.  When you send a letter, when you sent the letters to the
 2    Defendant, who was it sent on behalf of?
 3    A.  Sent on behalf of the Committee.
 4    Q.  Mr. Corcoran asked you several questions about whether
 5    the Committee would have referred the Defendant for contempt
 6    if he had produced documents at 11:00 a.m. on October 7th
 7    instead of 10:00 a.m.  I want to ask you a couple followups
 8    on that.
 9         The original deadline in the subpoena was 10:00
10    a.m. on October 7.  Had the Committee heard anything from
11    the Defendant by that time?
12    A.  No.
13    Q.  What I mean by that is, did the Committee receive any
14    communications from the Defendant that he needed more time?
15    A.  No.
16    Q.  Did the Committee receive any communications from the
17    Defendant that he would like to find an alternative way to
18    provide documents?
19    A.  No.
20    Q.  And does the fact that a witness provides documents two
21    hours after the deadline, does that change the fact that the
22    deadline was at 10:00 a.m.?
23    A.  It does not.
24    Q.  But the Defendant, has he ever produced documents?
25    A.  No.
```

```
 1    Q.  Mr. Corcoran asked you several questions about whether

 2    witnesses sometimes appear later than the date that's set

 3    for their deposition.

 4              Do you remember those questions?

 5    A.  I do.

 6    Q.  What are the circumstances under which witnesses appear

 7    later?  Is it because they just choose on their own to show

 8    up later or is there something else going on?

 9    A.  There can be a variety of reasons.  Sometimes a witness

10    is looking for representation and needs a little bit of time

11    to find an attorney.  Sometimes a witness has a scheduling

12    conflict with a specific time that is stated in the

13    subpoena, so we look to arrange a different time.

14    Q.  And in those circumstances, do the witnesses reach out

15    to the Committee and tell them that they'd like to find

16    another date that will work because they have some kind of

17    logistical obstacle?

18    A.  That's right.

19    Q.  Did the Defendant ever reach out to the Committee and

20    tell the Committee that he had a logistical issue that

21    needed to be resolved?

22    A.  He did not.

23    Q.  Mr. Corcoran asked you several questions about whether

24    you had engaged in negotiation with Mr. Costello.

25              Do you recall those questions?
```

1    A.  Generally, yes.

2    Q.  And we're talking about just finding different dates.

3    I'm showing you Government's Exhibit 4.  This is the

4    Defendant's October 7th letter to the Committee.

5            Is there anywhere in the October 7th letter to the

6    Committee from the Defendant where he tells the Defendant he

7    just would like to negotiate new dates?

8    A.  No.

9    Q.  And instead, what is it that he tells the Committee on

10   the second page of the letter that I'm highlighting right

11   here?

12   A.  He says:  As such, until these issues are resolved, we

13   are unable to respond to your request for documents and

14   testimony.

15   Q.  And what was the issue that had to be resolved?

16   A.  Executive privilege.

17   Q.  And when did the Committee resolve that issue with

18   respect to the Defendant's claim that it excused him?

19   A.  The Committee replied regarding its position on

20   executive privilege in a letter on October 8th and

21   reiterated that position in subsequent communications.

22   Q.  Now, even though the Committee resolved the objection by

23   October 8th, did the Defendant comply at any point after

24   that?

25   A.  He did not.

```
1              MS. VAUGHN:  The Court's indulgence.

2    BY MS. VAUGHN:

3    Q.  Ms. Amerling, the Defendant asked you several questions

4    about a book club you're in with Ms. Gaston.  I just want to

5    clarify.  How long has it been since you all have actually

6    attended this together?

7    A.  And I honestly can't remember the last time our paths

8    crossed through book group, because I haven't attended for

9    the past year and I don't think that she had attended for

10   quite a while before then.  But I can't give you an exact

11   date.

12   Q.  And do you have any personal relationship or friendship

13   with Ms. Gaston?

14   A.  I do not.

15   Q.  And does Ms. Gaston have any bearing on your work or the

16   Committee's work?

17   A.  No.

18   Q.  Or on your testimony here today?

19   A.  No.

20   Q.  Mr. Corcoran asked you several questions about who

21   you've worked for in Congress.  And you testified earlier

22   that you have worked on a number of investigations and

23   oversight matters.

24              Are the investigations that you worked on always

25   partisan?
```

1    A.  No.  Sometimes the investigations have involved

2    collaboration between the leading Republican on the

3    Committee and the leading Democrat.  At other times, they've

4    taken different positions.

5    Q.  And on this Committee, do you support the work of just

6    one member of the Committee or all members of the Committee?

7    A.  I support the work of the entire Committee.

8    Q.  And does the entire Committee -- do they come from one

9    political party or multiple political parties?

10    A.  There are both Republican and Democratic members on the

11    Select Committee.

12    Q.  Ms. Amerling, do you believe that finding out what

13    happened on January 6th and why is a political or partisan

14    issue?

15    A.  I do not.

16             MS. VAUGHN:  Nothing further, your Honor.

17             MR. CORCORAN:  Your Honor, we have no further

18    questions of this witness.  Thank you.

19             THE COURT:  Thank you.

20             Ms. Amerling, you may be excused.  Thank you very

21    much for your testimony.

22             THE WITNESS:  Thank you, your Honor.

23             (Witness excused.)

24             THE COURT:  Here's what I'd like to do:

25    Ms. Vaughn, are you ready with your next witness?

Amerling - REDIRECT - By Ms. Vaughn

**-4231-**

1           MS. VAUGHN:  We are, your Honor.

2           THE COURT:  So I'd like to take just one more

3      brief recess.  We'll come back and do roughly an hour.

4           There is one scheduling issue that I need to --

5      that I'm going to address and hopefully have guidance either

6      at 4:00 when we come back or at 5:00.

7           MS. VAUGHN:  Thank you, your Honor.

8           THE COURT:  It'll relate to tomorrow's schedule.

9      Thank you.

10          (Whereupon, the jury exited the courtroom at 3:47

11     p.m. and the following proceedings were had:)

12          THE COURT:  Are we ready to proceed, Ms. Vaughn?

13          MS. VAUGHN:  We are, your Honor.

14          THE COURT:  Let's bring the jury in, then, please.

15          (Whereupon, the jury entered the courtroom at 4:10

16     p.m. and the following proceedings were had:)

17          THE COURT:  Welcome back, ladies and gentlemen.

18          Ms. Gaston.

19          MS. GASTON:  Thank you, your Honor.

20          The Government calls Special Agent Stephen Hart to

21     the stand.

22          MS. GASTON:  Your Honor, if I may, while he's

23     coming, I have a binder of exhibits that all the parties

24     have.  It's a subset.

25          THE COURT:  They're on the Government's exhibit

```
 1    list?
 2              MS. GASTON:  Yes, your Honor.
 3              THE COURT:  Very well.
 4              MS. GASTON:  (Places binder on the witness stand.)
 5              (Thereupon, the witness entered the courtroom and
 6    the following proceedings were had:)
 7              THE COURT:  Good afternoon.
 8              THE WITNESS:  Good afternoon, your Honor.
 9              THE COURT:  Ms. Lesley?
10              STEPHEN HART, GOVERNMENT WITNESS, SWORN.
11                      DIRECT EXAMINATION
12    BY MS. GASTON:
13    Q.  Good afternoon, Agent Hart.  Can you please introduce
14    yourself to the jury and spell your name?
15    A.  Certainly.  My name is Stephen Hart, S-T-E-P-H-E-N
16    H-A-R-T.
17    Q.  And how are you employed?
18    A.  I'm a special agent with the FBI.
19    Q.  And what do you do for the FBI?
20    A.  I investigate federal public corruption cases out of the
21    Washington field office.
22    Q.  Did you work on the investigation into whether Stephen
23    K. Bannon failed to comply with a congressional subpoena?
24    A.  Yes, I did.
25    Q.  Did your investigation include reviewing the Defendant's
```

```
 1    public statements regarding a subpoena from the Committee?

 2    A.  Yes, it did.

 3            MS. GASTON:  Showing to the witness, please, what

 4    has been marked as Government's Exhibit 10.

 5    BY MS. GASTON:

 6    Q.  Agent Hart, what is Government's Exhibit 10?

 7    A.  Exhibit 10 is a screenshot from Steve Bannon's Getter

 8    page.  That's G-E-T-T-E-R.

 9    Q.  And what is Getter?

10    A.  Getter is a social media in the form similar to Twitter

11    in which people can establish accounts, post --

12            MR. SCHOEN:  Your Honor, if I may, we have

13    outstanding objections.

14            THE COURT:  Not yet.

15            MR. SCHOEN:  No.

16            THE COURT:  Let's lay the foundation and we'll

17    have the Government move to admit it.  We'll take that up.

18            THE WITNESS:  It's a social media platform where

19    individuals and organizations can establish pages where they

20    can put statements, opinions, links to different things

21    along the internet.

22    BY MS. GASTON:

23    Q.  And have you reviewed the Defendant's Getter account?

24    A.  Yes, I have.

25    Q.  Is it a verified Getter account?
```

```
1    A.  Yes, it is.

2    Q.  And what does that mean?

3    A.  A verified account under the terms for which Getter uses

4    means that it's been through a process that Getter holds

5    somewhat close, but essentially validates the account as

6    being trustworthy.

7    Q.  And, Agent Hart, is Government's Exhibit 10 a fair and

8    accurate depiction of a post that you viewed on the

9    Defendant's Getter account?

10   A.  Yes, it is.

11              MS. GASTON:  Your Honor, I'd move to admit

12   Government's Exhibit 10 into evidence and publish to the

13   jury.

14              MR. SCHOEN:  Objection.

15              THE COURT:  Would you like to pick up the phones?

16              MR. SCHOEN:  Yes.

17              (Whereupon, the following proceedings were had at

18   sidebar outside the presence of the jury:)

19              THE COURT:  Is everybody able to hear one another?

20   Ms. Gaston, can you hear us?

21              MS. GASTON:  Yes, your Honor.

22              MR. SCHOEN:  Your Honor, even in the Government's

23   proffer of these exhibits -- and, I mean, I'll take them one

24   at a time, I guess.  We're going to have to do this each

25   time.  We have the same objection to 10, 11-A and 11-B,
```

Hart - DIRECT - By Ms. Gaston

1    which the Government sort of proffered together in their

2    letter to the Court from the other day.

3            There's no foundation even offered in the -- no

4    appropriate foundation even offered in the proffer.  These

5    are -- we have absolutely no information on the website

6    itself that this really is from that source.  We don't know

7    who posted this.

8            One of the assertions on one of these exhibits is

9    that it's an adoptive admission.  We don't know again who

10   posts these things, why they're posted, whether things are

11   posted simply on the website to stir controversy.  They're

12   not self-authenticating documents under 902.

13           And for all of those reasons -- and it also would

14   be unduly prejudicial if they are being offered certainly

15   for the content of the document itself, especially in this

16   case, since we can't put on the defenses that we have asked

17   to put on.

18           And I'd say it's unduly prejudicial.  To the

19   extent it's hearsay, it certainly doesn't meet the

20   requirements of 803(6).

21           THE COURT:  Ms. Gaston?

22           MS. GASTON:  Your Honor, that's an authentication

23   argument.  The bar under Rule 901 is extremely low.  It's

24   just whether the proponent of the evidence has offered a

25   foundation from which the jury can reasonably find that the

 1    evidence is what the proponent says it is.

 2              Here, Agent Hart has said he's reviewed the

 3    Defendant's verified Getter account and this is a screenshot

 4    of a post on the verified Getter account.

 5              That means that it is an adoptive -- a statement

 6    of a party opponent.  It is Mr. Bannon's public statements.

 7    And it's relevant.  It is not hearsay.  And the

 8    authentication bar is not a problem.

 9              MR. SCHOEN:  Your Honor, if I may.

10              THE COURT:  Yes.

11              MR. SCHOEN:  There's absolutely no objective

12    indication that meets the Rules of Evidence to show that

13    this is actually Steve Bannon's post.  Again, it's not an

14    adoptive admission unless there's some showing that first of

15    all one would be -- it would be unnatural to be silent in

16    this situation.  People post things on other people's

17    websites and things are posted on websites that aren't

18    intended to be adopted.  Again, especially a website like

19    this.  They're posted simply to stir controversy.

20              But there's no independent indication that this is

21    actually Steve Bannon's statement or that he adopted it.

22    And there are other things in there, you know, the reference

23    to a newspaper -- I mean, a magazine article and so on.

24    Again, unduly prejudicial.

25              THE COURT:  It seems to me that the Government has

```
 1      satisfied the low bar for authentication and that because of

 2      what the witness has testified that these are quite possibly

 3      not party -- that they are very likely party admissions.

 4      They are statements on a verified Getter account and that

 5      you are free to cross-examine the witness about whether and

 6      to what extent he knows these are statements by Mr. Bannon

 7      rather than someone else.

 8              MR. SCHOEN:  Your Honor --

 9              MR. CORCORAN:  Your Honor, may I make one

10      additional point?

11              THE COURT:  Yes.

12              MR. CORCORAN:  And just to be clear, what this is,

13      so even assuming that this is Steve Bannon's Getter

14      account -- and there's an assumption there, because a lot of

15      public figures have somebody else who puts content on their

16      social media.  In other words, it's not Steve Bannon

17      himself.

18              To the topic of whether it is an adoptive

19      admission of the party, under Steve Bannon's name in Exhibit

20      10 is a statement:  "The Bannon subpoena is just the

21      beginning.  Congress's Jan. 6 investigation is going big."

22      That is simply the title of a *Rolling Stone* argument

23      that's --

24              THE COURT:  Did you mean "article"?

25              MR. CORCORAN:  Yeah.  So in other words,
```

Hart - DIRECT - By Ms. Gaston

**-4238-**

1    Mr. Bannon is not adopting the headline or the article.

2    He's simply -- somebody has put it on his site.

3         THE COURT:  I'm not saying -- so the document is

4    admitted.  It doesn't mean that you can't establish that a

5    number of the statements in here aren't his, that they're

6    just news articles.  If Mr. Bannon wrote a letter and quoted

7    in the article from the title of that article -- from the

8    title of another article, you wouldn't say those were the

9    words that he was using.  It's the article that he's

10   quoting.

11        You're free to ask the witness those questions.

12   But the documents are admitted.  You can cross the witness

13   on those questions.

14        MR. SCHOEN:  Judge, can I have a continuing

15   objection so we don't have to do it to 10, 11 --

16        THE COURT:  Yes.  The objection is preserved as to

17   all of these.  Thank you, Mr. Schoen, for noting that.

18        MR. SCHOEN:  Thank you, your Honor.

19        (Whereupon, the following proceedings were had in

20   open court:)

21        MS. GASTON:  Thank you, your Honor.  The

22   Government moves that that be admitted into evidence and be

23   published to the jury.

24        THE COURT:  Government's Exhibit 10 is entered

25   into evidence and may be published to the jury.

1           (Whereupon, Government's Exhibit No. 10 was

2     entered into evidence.)

3     BY MS. GASTON:

4     Q.  Agent Hart, do you see the screenshot in front of you?

5     A.  Yes, I do.

6           MS. GASTON:  Ms. Dunn-Gordon, could we please zoom

7     in on the part above the photograph in this post.

8     BY MS. GASTON:

9     Q.  So do you see the Defendant's photograph there on the

10    left?

11    A.  Yes, I do.

12    Q.  And then his name?

13    A.  Yes.

14    Q.  And then there's a red V.  What does that mean?

15    A.  That is the symbol used by Getter to show that an

16    account has been verified.

17    Q.  And is the @ sign a handle on Getter?

18    A.  Yes.

19    Q.  And what is the Getter associated with the Defendant's

20    account?

21    A.  The Getter handle is @SteveBannon.

22    Q.  What date did the Defendant make this post?

23    A.  This would be September 24th, 2021.

24    Q.  And when you were looking at the Defendant's Getter

25    account overall, did you see links that went from the Getter

Hart - DIRECT - By Ms. Gaston

```
1    page to other -- to any other page?

2    A.  Yes.

3    Q.  And what does the Defendant's Getter page link to?

4    A.  His Getter page predominantly links to another page for

5    his podcast, for the War Room.

6    Q.  Thank you, Agent Hart.

7            So looking at this post in particular on September

8    24th, 2021, what did the Defendant post?

9    A.  The statement that was posted is:  "The Bannon subpoena

10   is just the beginning.  Congress's January 6 investigation

11   is going big."

12           MS. GASTON:  Ms. Dunn-Gordon, can we zoom in on

13   the photograph and the content below it.

14           Thank you.

15   BY MS. GASTON:

16   Q.  Agent Hart, what was below that caption at the top of

17   the Defendant's post?

18   A.  Below that caption appears to be a picture of the U.S.

19   Capitol on January 6th.  And there is another title, a link

20   to an article on rollingstone.com.

21           MS. GASTON:  And then zooming out again,

22   Ms. Dunn-Gordon, please.

23   BY MS. GASTON:

24   Q.  Just to orient us in time again, Agent Hart, what day

25   was the Defendant issued a subpoena by the Select Committee?
```

Hart - DIRECT - By Ms. Gaston

```
 1    A.  It was on September 23rd, 2021, the day before this

 2    posting.

 3    Q.  And what date did the Defendant's attorney accept

 4    service?

 5    A.  The 23rd.

 6            MS. GASTON:  With your Honor's permission, I'm

 7    just going to go add to the timeline.

 8            THE COURT:  Very well.

 9            MS. GASTON:  Thank you.

10    BY MS. GASTON:

11    Q.  All right, Agent Hart.  Showing to you only what's been

12    marked as Government's Exhibit 11-A, what is Government's

13    Exhibit 11-A?

14    A.  This is another Getter post from Steve Bannon's account

15    dated October 8th.  It's titled -- or the statement within

16    the posting is:  "Steve Bannon tells the January 6 Select

17    Committee that he will not comply with their subpoena."

18    Q.  First, Agent Hart, is this exhibit a fair and accurate

19    depiction of a post that you saw on the Defendant's Getter

20    account?

21    A.  Yes, it is.

22            THE COURT:  Just in the future, if you could

23    refrain from quoting from the documents until they've been

24    admitted in evidence.

25            THE WITNESS:  Certainly.
```

 1              THE COURT:  Thank you.

 2              THE WITNESS:  Thank you.  Sorry, your Honor.

 3              MS. GASTON:  Your Honor, I would move to enter it

 4      into evidence and publish it to the jury.

 5              THE COURT:  Government's Exhibit 11-A is admitted.

 6              (Whereupon, Government's Exhibit No. 11-A was

 7      entered into evidence.)

 8              THE COURT:  Mr. Schoen, your continuing objection

 9      is noted.

10              MS. GASTON:  Ms. Dunn-Gordon, if we could zoom in

11      on the top of this document, please.

12              Thank you.

13      BY MS. GASTON:

14      Q.  What was the date of this post, Agent Hart?

15      A.  This posting was October 8th, 2021.

16      Q.  And recalling the subpoena, how does October 8th, 2021,

17      relate to when the subpoena required the Defendant to

18      produce documents to the Committee?

19      A.  The subpoena required the Defendant to produce documents

20      on October 7th, 2021, the day before this posting.

21      Q.  And what is the caption of this post?

22      A.  This posting is captioned with "Steve Bannon tells the

23      January 6th Select Committee that he will not comply with

24      their subpoena."

25              MS. GASTON:  If we could zoom out,

Hart - DIRECT - By Ms. Gaston

**-4243-**

```
1     Ms. Dunn-Gordon.  Could we look at the picture and the link?
2           Thank you.
3     BY MS. GASTON:
4     Q.  There's a graphic there, Special Agent Hart.  Who's on
5     the left?
6     A.  That would be Steve Bannon.
7     Q.  Who's on the right?
8     A.  Former President Donald Trump.
9     Q.  And then in the middle there is in very, very, very
10    small rendering what appears to be a letter.  Do you
11    recognize that letter?
12    A.  I do.
13    Q.  And what is that letter?
14    A.  That is a letter authored by Mr. Bannon's previous
15    attorney, Robert Costello.
16    Q.  And looking at the link, what does the link say?
17    A.  Could you say that one more time?
18    Q.  Sorry.  Looking at the link, what does the link below
19    the graphic say?
20    A.  The link below the graphic says, "Steve Bannon:  I stand
21    with Trump and the Constitution."  Then it has a link to an
22    article in the dailymail.co.uk.
23    Q.  Have you reviewed that link, Special Agent Hart?
24    A.  Yes, I have.
25    Q.  Showing to you only Government's Exhibit 11-B, what is
```

1    Government's Exhibit 11-B generally?

2    A.  Generally speaking, that is a copy of the article on the

3    *Daily Mail* website linked from the October 8th posting on

4    Getter.

5    Q.  Is that a fair and accurate depiction of the article as

6    you saw it when you followed the link?

7    A.  Yes, it is.

8         MS. GASTON:  Your Honor, I would move to admit

9    Government's Exhibit 11-B into evidence and publish it to

10   the jury.

11        THE COURT:  Government's Exhibit 11-B is also

12   admitted and may be published to the jury.

13        (Whereupon, Government's Exhibit No. 11-B was

14   entered into evidence.)

15        MS. GASTON:  Ms. Dunn-Gordon, could we zoom in on

16   the top above the graphic, please.

17        Thank you.

18   BY MS. GASTON:

19   Q.  Special Agent Hart, what is the date of this article?

20   A.  The date of this article is October 8th, 2021.

21   Q.  And the headline is what?

22   A.  The headline is:  Steve Bannon says, quote, "I stand

23   with Trump," end quote, as he tells January 6 Committee he

24   will not comply with subpoena.

25   Q.  And then moving on to Page 2 of this article --

```
 1            MS. GASTON:  If we could look at the first
 2    paragraph and the quote below it, please, Ms. Dunn-Gordon.
 3    BY MS. GASTON:
 4    Q.  Special Agent Hart, can you please read what appears on
 5    the screen?
 6    A.  Certainly.  "Former White House strategist Steve Bannon
 7    on Friday said he stood solidly with former President Trump
 8    and will not be cooperating with its investigation into the
 9    January 6 attack on the U.S. Capitol.  Quote:  'I stand with
10    Trump and the Constitution,' he told dailymail.com."
11    Q.  Thank you, Agent Hart.
12            MS. GASTON:  Your Honor, with your permission I'm
13    just going to add to the timeline quickly.
14            THE COURT:  Yes.
15            MS. GASTON:  Thank you.
16    BY MS. GASTON:
17    Q.  Agent Hart, in the course of your investigation, did you
18    have the opportunity to speak with Robert Costello?
19    A.  Yes, I did.
20    Q.  And who was Mr. Costello?
21    A.  Mr. Costello was an attorney for Mr. Bannon.
22    Q.  And when did you speak with Mr. Costello?
23    A.  The first time I spoke with Mr. Costello was on November
24    3rd, 2021.
25    Q.  And who was Mr. Costello as to the Defendant when you
```

Hart - DIRECT - By Ms. Gaston

1    spoke with him?

2    A.  At that time, he was representing Mr. Bannon.

3    Q.  And what were the circumstances under which you spoke

4    with him?

5    A.  Mr. Costello had reached out to the United States

6    Attorney's Office via memo and requested a meeting and a

7    discussion with the U.S. Attorney's Office regarding his

8    status as Mr. Bannon's attorney and his desire to advise the

9    U.S. Attorney's Office they should not prosecute Mr. Bannon.

10   Q.  And did he want to bring facts related to Mr. Bannon's

11   case to the United States Attorney's Office's attention?

12   A.  Yes.

13   Q.  And was he doing so as the Defendant's attorney?

14   A.  Yes, he was.

15   Q.  Did Mr. Costello offer to send the United States

16   Attorney's Office a written explanation about the facts and

17   circumstances leading to the Defendant's noncompliance with

18   the subpoena?

19   A.  Yes.  He sent a memo over.

20   Q.  And did he indicate to the U.S. Attorney's Office that

21   he was checking with the Defendant on that written

22   submission?

23   A.  Yes.

24   Q.  Did he also offer to meet and explain the facts leading

25   to the Defendant's noncompliance via videoconference with

Hart - DIRECT - By Ms. Gaston

**-4247-**

```
 1    the United States Attorney's Office?

 2    A.  Yes, he did.

 3    Q.  Did you and attorneys from the United States Attorney's

 4    Office take him up on that offer?

 5    A.  Yes, we did.

 6    Q.  In the course of that, did he explain the facts

 7    underlying the Defendant's noncompliance?

 8    A.  Yes.

 9    Q.  First, can you remind the jury of when Mr. Costello

10    accepted service of the subpoena from the Committee?

11    A.  Mr. Costello accepted service of the subpoena on

12    September 23rd, 2021.

13    Q.  Did he accept it on -- okay.  One moment, Agent Hart.

14    I'm going to show you something to refresh your

15    recollection.

16             Agent Hart, can I show you Government's Exhibit 3,

17    which has been admitted.

18    A.  Yes.

19    Q.  Do you see that email?

20    A.  Yes, I do.

21    Q.  When did Mr. Costello accept service of the subpoena?

22    A.  That would be September 24th.  My apologies.  One day

23    later.

24    Q.  Thank you.

25             And, Agent Hart, when you spoke with Mr. Costello,
```

Hart - DIRECT - By Ms. Gaston

**-4248-**

1    did he indicate that he had then passed the subpoena on to

2    the Defendant?

3    A.  Yes, he had.

4    Q.  And can you remind the jury when the document deadline

5    for the subpoena was?

6    A.  The document deadline was October 7th, 2021.

7    Q.  And when he spoke with you, did Mr. Costello say whether

8    he and the Defendant had gathered any documents by the

9    October 7th, 2021, deadline for the Committee's subpoena?

10   A.  He said they had not gathered any documents by that

11   point.

12   Q.  And did Mr. Costello state whether he had provided the

13   Defendant with the Committee's follow-up letters regarding

14   the Defendant?

15   A.  Yes, he had.

16   Q.  He stated whether he had?

17   A.  Yeah.  He provided the letters to Mr. Bannon.

18   Q.  And what did Mr. Costello say about the Defendant's

19   involvement in the process regarding the subpoena generally?

20   A.  He said he was fully engaged throughout the entire

21   process.

22   Q.  Did Mr. Costello discuss with you the Defendant's reason

23   for not providing documents and not providing testimony?

24   A.  Yes.

25   Q.  And you're aware that in communications with the

Hart - DIRECT - By Ms. Gaston

**-4249-**

```
 1    Committee, he told the Committee that the reason was related

 2    to executive privilege?

 3    A.  That's correct.

 4    Q.  In his discussions with you and other government

 5    representatives, did he give any other reason?

 6    A.  No, he did not.

 7    Q.  Did he suggest that the dates on the subpoena had moved?

 8    A.  No.

 9    Q.  Did he suggest that the Defendant was mistaken about the

10    deadlines?

11    A.  No.

12    Q.  Did he suggest that he and the Defendant thought the

13    dates were malleable?

14    A.  No.

15    Q.  Did he ever suggest that he was negotiating for a

16    different date?

17    A.  No.

18    Q.  Did he ever say that if the Committee set another date,

19    he would come?

20    A.  No.

21              MR. SCHOEN:  Your Honor, objection.

22              THE COURT:  Would you like to go sidebar?

23              MR. SCHOEN:  Yes.

24              (Whereupon, the following proceedings were had at

25    sidebar outside the presence of the jury:)
```

Hart - DIRECT - By Ms. Gaston

```
 1              THE COURT:  Yes.

 2              MR. SCHOEN:  Yes, your Honor.

 3              What was clear from the Costello interview and has

 4    been at all times is that Costello has told the Government

 5    that it relied on advice of counsel.  We are not permitted

 6    to go into advice of counsel.  So now we're hearing a number

 7    of reasons that purportedly Mr. Costello gave to Agent Hart

 8    and --

 9              THE COURT:  She's asking whether he said any of

10    the things she's asking he said.  And the testimony is he

11    didn't.

12              MR. SCHOEN:  Right, your Honor.

13              We're not able to show that what he did tell him

14    was, Costello advised him to act exactly how he did and that

15    Bannon acted exactly how Costello told him to act.  That's

16    not fair to present a skewed picture here when that's the

17    real story of what happened.

18              THE COURT:  I understand the objection.  It is

19    overruled.

20              (Whereupon, the following proceedings were had in

21    open court:)

22              THE COURT:  We're back on the fully public record.

23              MS. GASTON:  Nothing further, your Honor.

24              THE COURT:  Thank you.

25              Mr. Corcoran.
```

Hart - DIRECT - By Ms. Gaston

**-4251-**

1          MR. CORCORAN:  Thank you, your Honor.

2                    CROSS-EXAMINATION

3    BY MR. CORCORAN:

4    Q.  Agent Hart, good afternoon.

5    A.  Good afternoon, Mr. Corcoran.

6    Q.  I had a couple questions just to follow up on what you

7    were asked about your investigation and what you did and

8    didn't do.

9          First, I want to ask you about these Getter posts.

10   I think one is Government's Exhibit No. 10.

11         MR. CORCORAN:  If we could pull that up, please.

12   BY MR. CORCORAN:

13   Q.  Agent Hart, you're not suggesting to the jury that

14   anything on Government's Exhibit 10 is Steve Bannon's words,

15   are you?

16   A.  I'm attesting to what's in Government's Exhibit 10 is

17   what's being shown on his Getter page.

18   Q.  I just want to make clear, the words at the very top

19   that say, "The Bannon subpoena is just the beginning.

20   Congress's Jan. 6 investigation is going big," these aren't

21   Steve Bannon's words.  Correct?

22   A.  I don't know if they're his words or if they're words

23   that were written by someone else to whom he gave access to

24   his Getter account.

25   Q.  So you think that the statement "The Bannon subpoena is

Hart - CROSS - By Mr. Corcoran

1    just the beginning.  Congress's Jan. 6 investigation is

2    going big" was written by Mr. Bannon or somebody who works

3    with Mr. Bannon and put on Getter?

4    A.  That's a possibility.  Yes.

5    Q.  I'm going to show you what's been marked for

6    identification purposes as Defendant's Exhibit No. 39.

7            And is Defendant's Exhibit No. 39 an article from

8    *Rolling Stone* online dated September 24, 2021?

9    A.  Yes, it is.

10   Q.  And is the headline of that *Rolling Stone* article "The

11   Bannon subpoena is just the beginning.  Congress's Jan. 6

12   investigation is going big"?

13   A.  Yes.

14   Q.  And in that *Rolling Stone* article, is there a picture

15   that is the exact same picture as Government's Exhibit No.

16   10 that was just offered into evidence by the Government?

17   A.  They appear to be similar.  Yes.

18   Q.  Okay.

19           MR. CORCORAN:  Your Honor, we'd move Defendant's

20   Exhibit No. 39 into evidence.

21           MS. GASTON:  No objection.

22           THE COURT:  Defendant's Exhibit 39 is admitted and

23   can be published to the jury.

24           (Whereupon, Defendant's Exhibit No. 39 was entered

25   into evidence.)

```
 1    BY MR. CORCORAN:

 2    Q.  Agent Hart, a minute ago you said that you thought that

 3    the top statement, "The Bannon subpoena is just the

 4    beginning.  Congress's Jan. 6 investigation is going big" in

 5    Government's Exhibit No. 10 are the words of Steve Bannon or

 6    somebody associated with Steve Bannon.  Do you remember that

 7    testimony?

 8    A.  I do.

 9    Q.  Did you when you pulled up the electronic information on

10    the Getter account click through what's on the bottom of

11    Government's Exhibit 10, which is an internet link to

12    rollingstone.com?

13    A.  Yes.

14    Q.  And this is the article that popped up.  Correct?

15    A.  That's correct.

16    Q.  So these are not -- these are not the words of

17    Mr. Bannon.  Correct?

18    A.  The title of this article could easily be copied and

19    pasted into the Getter account for Mr. Bannon to make it

20    appear as though they are his words or the words of someone

21    else who might have control over his account.

22    Q.  Let's look at the next exhibit, which is Government's

23    Exhibit 11-A.  I'm going to ask you the same question:

24    Under the words Steve Bannon at the top, it says "Steve

25    Bannon tells the January 6 Select Committee that he will not
```

1    comply with their subpoena."

2            My question is:  Are you suggesting to this jury

3    that those are the words of Steve Bannon?

4    A.  What I'm suggesting to the jury is those are the words

5    associated with his Getter account to which either he or

6    someone who probably works with him has access.

7    Q.  To be more precise, are you trying to tell the jury that

8    Steve Bannon stated the words "Steve Bannon tells the

9    January 6 Select Committee that he will not comply with

10   their subpoena"?

11   A.  Based upon this posting, what I'm saying is the Getter

12   account shows that those are the words affiliated with his

13   account at that time.

14   Q.  I'm going to show you what's been marked as Defense

15   Exhibit No. 40 for identification purposes, Agent Hart.  I'm

16   going to ask you, is this a *Daily Mail* article that is dated

17   July 20, 2022 -- I'm sorry -- a *Daily Mail* article that's

18   dated October 8, 2021?

19   A.  Yes, it is.

20   Q.  And in this article, does it state --

21            THE COURT:  Mr. Corcoran, let's deal with whether

22   we're going to admit this first and then -- before you read

23   it to the jury.

24   BY MR. CORCORAN:

25   Q.  Does this appear to be the same article that is related

```
1    to Government's Exhibit 11-A?

2    A.  Yes; in a different format than how I saw it.  But I

3    imagine that's --

4              MR. CORCORAN:  Your Honor, we'd move to admit

5    Defendant's Exhibit No. 40.

6              MS. GASTON:  No objection.

7    BY MR. CORCORAN:

8    Q.  Now --

9              THE COURT:  Defendant's Exhibit No. 40 is admitted

10   and may be published to the jury.

11             (Whereupon, Defendant's Exhibit No. 40 was entered

12   into evidence.)

13   BY MR. CORCORAN:

14   Q.  My question is this, Agent Hart:  The headline of the

15   Daily Mail article reads after the colon "Steve Bannon tells

16   the January 6 Select Committee that he will NOT, in capital

17   letters, comply with their subpoena."

18             And is that the same language that was in

19   Government's Exhibit 11-A?

20   A.  Yes.  It appears to be.

21   Q.  In other words, this is just -- did you click through

22   the link in Mr. Bannon's Getter account to get to the Daily

23   Mail article?

24   A.  Yes.

25   Q.  So is it fair to say that basically what you're saying
```

Hart - CROSS - By Mr. Corcoran

1    in terms of your testimony about these articles is that

2    somebody simply posted -- reposted another article on

3    Mr. Bannon's Getter page?  Is that what you're saying,

4    basically?

5    A.  Yeah.  Those are what the links are on the Getter page

6    postings that we looked at.

7    Q.  Let me ask you about some of the interviews that you

8    did.

9         You said that you participated in a meeting with

10   Bob Costello, who's the lawyer for Steve Bannon.  Correct?

11   Where did that meeting take place?

12   A.  It was a virtual meeting over WebEx.

13   Q.  And were you -- did your face appear on the screen so

14   that Costello and others could see?

15   A.  No, it did not.

16   Q.  So you were essentially off-screen.  Correct?

17   A.  Yes.  My -- you know, essentially a black box shows as

18   opposed to my face with my name underneath.

19   Q.  And who asked the questions during that meeting with Bob

20   Costello?

21   A.  Primarily the assistant U.S. attorneys.

22   Q.  And you're familiar in your cases with instances where

23   defense lawyers will meet with --

24        MS. GASTON:  Objection, your Honor.

25        THE COURT:  Let's let the question finish.

```
1    BY MR. CORCORAN:

2    Q.  You're familiar in your job with meetings where defense

3    lawyers meet with prosecutors to try to convince them not to

4    bring a criminal case.  Correct?

5    A.  Yes.

6    Q.  Those are called proffer meetings sometimes.  Correct?

7              MS. GASTON:  Objection, your Honor.  Relevance.

8              THE COURT:  Overruled.

9              THE WITNESS:  Yes, they are.

10   BY MR. CORCORAN:

11   Q.  And at those meetings, the defense lawyer tries to

12   explain the evidence and the reasons why the prosecutor

13   should not bring a criminal case.  Right?

14   A.  Yes.

15   Q.  Okay.  Do you in those kinds of cases consider that an

16   FBI interview of the defense lawyer?

17             MS. GASTON:  Objection.

18             THE COURT:  Let's go on a sidebar.

19             (Whereupon, the following proceedings were had at

20   sidebar outside the presence of the jury:)

21             MS. GASTON:  Your Honor, this is not relevant

22   except to accuse the Government of misconduct.

23             MR. CORCORAN:  Well, I haven't used the word

24   "misconduct" at all.

25             THE COURT:  What is it relevant to other than
```

1    that?

2              MR. CORCORAN:  Well, what it's relevant to is,

3    he's just testified that he conducted an interview of

4    Costello and that Costello provided X, Y and Z.  That was

5    his direct.

6              And my --

7              THE COURT:  Did he use the term "interview"?

8              MR. CORCORAN:  He used the term "interview."

9              THE COURT:  Ms. Gaston, did he use the term

10   "interview"?

11             MS. GASTON:  I don't --

12             THE COURT:  If he did, then why can't Mr. Corcoran

13   ask whether that's typical to consider this kind of

14   discussion in an interview?

15             Then I'll just, you know, also ask another

16   question, which is:  If Mr. Corcoran wants to establish that

17   in that kind of discussion it wouldn't be odd for a defense

18   lawyer to not bring up every potential argument, why

19   couldn't he ask that question, too?

20             MS. GASTON:  Your Honor, I don't know that Agent

21   Hart used the word "interview."  I used the terminology

22   "speak with."

23             MR. CORCORAN:  We could ask the court reporter,

24   your Honor.

25             THE COURT:  Let's do that.

```
 1                THE COURT REPORTER:  He did not, Judge.

 2                THE COURT:  I'm looking at the transcript, and I

 3      don't believe that Ms. Gaston used the term "interview."

 4      She did use the term "spoke with" or "speak with."

 5                MR. CORCORAN:  I don't think it changes the

 6      equation.  What I can ask is:  Without using the term

 7      "interview" as I've already done, what were the

 8      circumstances in which you spoke with this individual, et

 9      cetera, et cetera?

10                THE COURT:  Yes.  I agree with that.  I agree with

11      that.

12                I'd like you to ask about these circumstances, the

13      circumstances under which you spoke with this lawyer.  Okay?

14                MR. CORCORAN:  Yes.

15                (Whereupon, the following proceedings were had in

16      open court:)

17                THE COURT:  We're back from the under-seal portion

18      or the husher.

19      BY MR. CORCORAN:

20      Q.  Focusing back on when you participated in a discussion,

21      you said it was virtual that involved prosecutors in this

22      case, you and Robert Costello, the lawyer for Mr. Bannon.

23      Let me ask you a question.  And that is, have you

24      participated in similar meetings where the defense lawyer is

25      providing information to the Government in order to persuade
```

```
 1    them, if possible, not to bring a criminal case?

 2    A.  Yes.

 3    Q.  And you understand that in those settings, the defense

 4    lawyer sometimes doesn't give all the information that they

 5    have.  Correct?

 6    A.  That has happened.

 7    Q.  Okay.  Let me ask you about your interview -- because

 8    one of the other witnesses that has appeared that you

 9    interviewed was Ms. Amerling, Kristin Amerling.  Did you

10    participate in that interview?

11    A.  Yes, I did.

12              MS. GASTON:  Objection, your Honor.  Scope.

13              MR. CORCORAN:  It's an investigation.

14              THE COURT:  This goes to the scope of the

15    investigation?

16              MR. CORCORAN:  Yes.

17              THE COURT:  I'll allow a couple questions.

18    BY MR. CORCORAN:

19    Q.  When you spoke with -- when you were questioning

20    Ms. Amerling, were you trying to learn what you could about

21    the facts to determine whether or not a crime of contempt of

22    Congress had been committed?

23              MS. GASTON:  Objection, your Honor.  Scope.  This

24    is outside the scope of direct.

25              THE COURT:  I understood the objection before to
```

1    be about scope of direct.

2            I'm going to allow a little leeway here.  So

3    overruled.

4            THE WITNESS:  Would you repeat the question?  I'm

5    sorry.

6    BY MR. CORCORAN:

7    Q.  Was your goal in interviewing Kristin Amerling to learn

8    about facts that bear on whether a crime was committed here?

9    A.  The goal or the discussion with Ms. Amerling was to get

10    her interpretation of the events as she understood them and

11    to provide any potential information she may have relevant

12    to the case.

13    Q.  Did you impress upon her that it was important to be

14    truthful and forthcoming about information that dealt with

15    your investigation of this matter?

16            MS. GASTON:  Objection, your Honor.  Improper

17    attempted impeachment.

18            THE COURT:  Improper attempted impeachment.

19    Sustained.

20    BY MR. CORCORAN:

21    Q.  When you interview any witness, do you try to determine

22    whether that person has a bias?

23    A.  I would imagine that everyone we speak to has a bias of

24    some kind.

25    Q.  And is --

```
 1              MS. GASTON:  Objection, your Honor.  This is
 2    improper as to -- it's improper to try to impeach other
 3    witnesses through this witness.
 4              MR. CORCORAN:  We can go on the husher if you
 5    want, your Honor, and talk.
 6              THE COURT:  I'm going to allow the question.
 7              Objection overruled.
 8    BY MR. CORCORAN:
 9    Q.  Did you learn in that interview that Ms. Amerling has
10    known the prosecutor for 15 years?
11    A.  No.  I don't think so.
12    Q.  Now, I want to ask about other potential witnesses that
13    you spoke with to try to determine whether or not the crime
14    of contempt of Congress took place here.  Okay?
15              MS. GASTON:  Objection, your Honor.  Relevance and
16    scope.
17              THE COURT:  What's the question?  Is there a
18    question?
19              MR. CORCORAN:  It was a heading.
20              I'd like to ask the witness about --
21              THE COURT:  What's the question?
22    BY MR. CORCORAN:
23    Q.  The question is, sir:  Did you interview for purposes of
24    this case the 200-plus members of Congress who voted not to
25    refer Stephen Bannon to the U.S. Attorney's Office for
```

Hart - CROSS - By Mr. Corcoran

```
 1    contempt of Congress?

 2              MS. GASTON:  Objection.  Relevance and scope.

 3              THE COURT:  The objection is sustained.  The

 4    jury --

 5              You don't have to answer the question.

 6              MR. CORCORAN:  Thank you, your Honor.

 7              THE COURT:  Thank you.

 8              Ms. Gaston, any redirect?

 9              MS. GASTON:  Just very briefly, your Honor.

10                         REDIRECT EXAMINATION

11    BY MS. GASTON:

12    Q.  Agent Hart, Mr. Corcoran asked you some questions about

13    whether you knew certain words were the Defendant's.

14              Do you remember that?

15    A.  Yes, I do.

16    Q.  Looking at Exhibit 11-B, the second page, there's a

17    quote from the Defendant.

18              THE COURT:  Is there a question?

19              MS. GASTON:  I'm just waiting for it to appear.

20    Sorry.

21              THE COURT:  Oh, I apologize.

22    BY MS. GASTON:

23    Q.  There's a quote there from the Defendant.  Right?

24    A.  Yes, there is.

25    Q.  And those are his words.  Right?
```

1    A.  Yes, they are.

2    Q.  And what did he say?

3    A.  He said, "I stand with Trump and the Constitution."

4    Q.  And last question, Agent Hart:  In your experience in

5    conversations in which attorneys try to convince the

6    Government not to charge their clients, do they go to

7    lengths to provide any information that shows that their

8    client is innocent?

9    A.  Yes.

10            MS. GASTON:  Nothing further.

11            MR. CORCORAN:  One question, your Honor.

12            THE COURT:  Very well.

13                    RECROSS-EXAMINATION

14    BY MR. CORCORAN:

15    Q.  Just on that last question.  The prosecutor asked you

16    about a statement saying that Steve Bannon stood with Trump

17    and the Constitution.  Earlier, you mentioned that in your

18    discussion with Bob Costello he raised the issue and

19    advanced the issue of executive privilege.  Is that correct?

20    A.  Yes.

21    Q.  Do you understand that executive privilege is a

22    privilege based in the Constitution?

23    A.  Yes.

24            MR. CORCORAN:  Thank you.

25            THE COURT:  Thank you, sir.  You may be excused.

```
1              THE WITNESS:  Thank you.

2              THE COURT:  Thank you for your testimony.

3              (Witness excused.)

4              MS. VAUGHN:  Your Honor, the Government rests.

5              THE COURT:  So here's what we're going to do:

6     We're going to recess for the afternoon/day.

7              There is one scheduling issue, as I had suggested

8     earlier today, that requires us to start a little bit later

9     in the morning than we would have otherwise.  So we are --

10    the plan is to start at 11:00 a.m. tomorrow and to pick up

11    with the jury at that time.

12             I suppose, given that we're starting late, if it

13    turns out that the parties have issues that they would like

14    to discuss with me before the jury is here, please inform

15    Ms. Lesley perhaps as early as 10:30 or something so that we

16    could perhaps take those up.

17             Mr. Corcoran?

18             MR. CORCORAN:  I think we can do it at 10:30.  But

19    we'll make a motion for judgment of acquittal after -- since

20    the defense has rested in the morning in ten minutes or

21    something.

22             THE COURT:  Understood.

23             Why don't we do that at 10:30.

24             MR. CORCORAN:  Okay.

25             THE COURT:  We'll do that at 10:30.
```

```
 1              And then, depending on what happens with that, we
 2      would resume, assuming it's not granted -- I'm not
 3      prejudging it, of course -- we would then move to your case
 4      and any evidence you're going to present at 11:00.
 5              MR. CORCORAN:  Very well, your Honor.  Thank you.
 6              THE COURT:  Thank you.
 7              Anything, Ms. Lesley, that I need to cover?
 8              THE COURTROOM DEPUTY:  No, sir.
 9              THE COURT:  Thank you all.
10              (Whereupon, the jury exited the courtroom at 4:59
11      p.m. and the following proceedings were had:)
12              (Proceedings concluded.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                              <u>**CERTIFICATE**</u>

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4      certify that the foregoing constitutes a true and accurate

5      transcript of my stenographic notes, and is a full, true,

6      and complete transcript of the proceedings produced to the

7      best of my ability.

8

9

10                   Dated this 20th day of July, 2022.

11

12                   <u>/s/ Lisa Edwards, RDR, CRR</u>
                     Official Court Reporter
13                   United States District Court for the
                        District of Columbia
14                   333 Constitution Avenue, Northwest
                     Washington, D.C. 20001
15                   (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 638:12

## 0

**000458** [1] - 548:1

## 1

**1** [2] - 536:10, 538:24
**10** [22] - 515:10, 517:3, 517:17, 554:21, 593:1, 593:2, 604:4, 604:6, 604:7, 605:7, 605:12, 605:25, 608:20, 609:15, 609:24, 610:1, 622:10, 622:14, 622:16, 623:16, 624:5, 624:11
**100** [1] - 518:14
**100-6** [1] - 513:23
**107** [1] - 560:10
**10:00** [5] - 526:6, 526:11, 597:7, 597:9, 597:22
**10:30** [4] - 636:15, 636:18, 636:23, 636:25
**10th** [2] - 591:15, 591:16
**11** [6] - 517:19, 517:20, 519:22, 520:10, 609:15
**11-A** [9] - 515:11, 605:25, 612:12, 612:13, 613:5, 613:6, 624:23, 626:1, 626:19
**11-B** [8] - 515:11, 605:25, 614:25, 615:1, 615:9, 615:11, 615:13, 634:16
**117th** [1] - 519:25
**11:00** [3] - 597:6, 636:10, 637:4
**13** [1] - 529:19
**13th** [1] - 535:14
**14** [3] - 566:14, 579:7, 584:5
**14th** [13] - 542:23, 552:11, 552:12, 552:23, 552:25, 559:23, 561:3, 561:9, 561:11, 562:24, 563:9, 582:3, 582:11
**15** [8] - 539:25, 550:7, 550:8, 554:20,

554:21, 555:11, 633:10
**15-and-a-half-page** [1] - 550:22
**15th** [6] - 533:18, 535:15, 541:24, 542:6, 544:15, 587:24
**16** [1] - 549:25
**16-page** [2] - 550:22, 552:10
**17** [2] - 554:16, 554:17
**18** [2] - 541:14, 542:25
**18th** [3] - 541:16, 541:21, 542:14
**19** [1] - 551:14
**192** [2] - 540:11, 587:2
**194** [2] - 540:12, 587:2
**19th** [7] - 548:9, 548:24, 551:16, 551:24, 577:8, 577:16, 588:13
**1:21** [1] - 513:7
**1:25** [1] - 518:22

## 2

**2** [8] - 540:11, 584:20, 586:5, 587:2, 589:7, 593:2, 593:3, 615:25
**20** [6] - 513:6, 524:8, 524:13, 524:19, 553:5, 625:17
**200-plus** [1] - 633:24
**20001** [2] - 514:4, 638:14
**202** [2] - 514:4, 638:15
**2021** [45] - 526:1, 526:11, 529:19, 539:25, 541:14, 541:21, 542:21, 542:23, 548:7, 548:18, 548:25, 551:12, 551:14, 551:17, 554:13, 573:15, 574:14, 577:9, 577:24, 578:3, 578:6, 581:14, 583:20, 586:13, 587:12, 587:17, 587:24, 588:13, 588:22, 589:16, 590:13, 590:14, 610:23, 611:8, 612:1,

613:15, 613:16, 613:20, 615:20, 616:24, 618:12, 619:6, 619:9, 623:8, 625:18
**2022** [19] - 513:6, 559:23, 572:4, 572:6, 574:10, 576:7, 579:8, 579:14, 580:22, 582:17, 583:12, 589:18, 590:21, 590:24, 591:1, 591:3, 591:13, 625:17, 638:10
**20530** [1] - 513:17
**20th** [1] - 638:10
**21** [1] - 580:22
**21-00670** [1] - 513:3
**21002** [1] - 513:21
**21st** [3] - 548:18, 551:11, 588:22
**23** [3] - 548:7, 572:5, 581:14
**23rd** [5] - 563:2, 583:20, 612:1, 612:5, 618:12
**24** [1] - 623:8
**24th** [3] - 610:23, 611:8, 618:22
**2800** [1] - 513:23
**2:43** [1] - 567:15
**2nd** [1] - 554:13

## 3

**3** [2] - 513:10, 618:16
**3-B** [3] - 519:24, 520:9, 520:19
**30** [8] - 515:13, 572:2, 574:1, 574:8, 576:1, 576:2, 576:19, 580:6
**31** [10] - 515:13, 575:23, 575:25, 576:6, 576:14, 577:2, 578:25, 580:6, 584:21
**32** [6] - 515:14, 579:3, 579:4, 580:7, 580:8, 582:2
**333** [2] - 514:3, 638:14
**354-3269** [2] - 514:4, 638:15
**36106** [1] - 513:24
**39** [6] - 515:14, 623:6, 623:7, 623:20, 623:22, 623:24
**3:00** [1] - 571:10
**3:47** [1] - 602:10

**3rd** [1] - 616:24

## 4

**4** [4] - 524:25, 525:6, 526:19, 599:3
**40** [7] - 515:15, 550:3, 550:5, 625:15, 626:5, 626:9, 626:11
**40-page** [1] - 549:8
**400** [1] - 513:20
**4:00** [1] - 602:6
**4:10** [1] - 602:15
**4:59** [1] - 637:10

## 5

**5** [9] - 526:14, 527:6, 527:7, 528:2, 528:17, 585:15, 585:16, 586:5, 586:21
**50** [1] - 549:12
**519** [1] - 515:6
**521** [1] - 515:12
**555** [1] - 513:16
**574** [1] - 515:13
**577** [1] - 515:13
**580** [1] - 515:14
**582** [1] - 515:6
**5:00** [1] - 602:6

## 6

**6** [14] - 529:16, 533:9, 608:21, 611:10, 612:16, 615:23, 616:9, 622:20, 623:1, 623:11, 624:4, 624:25, 625:9, 626:16
**603** [1] - 515:7
**610** [1] - 515:10
**613** [1] - 515:11
**615** [1] - 515:11
**622** [1] - 515:7
**624** [1] - 515:14
**626** [1] - 515:15
**634** [1] - 515:7
**6706** [1] - 514:3
**6:00** [1] - 541:14
**6th** [4] - 583:25, 601:13, 611:19, 613:23

## 7

**7** [3] - 539:22, 593:5,

597:10
**7th** [11] - 526:1, 526:6, 526:11, 542:21, 552:15, 597:6, 599:4, 599:5, 613:20, 619:6, 619:9

## 8

**8** [7] - 519:25, 520:2, 544:9, 549:12, 549:20, 589:7, 625:18
**803(6)** [1] - 606:20
**8th** [12] - 585:17, 586:13, 587:7, 587:12, 587:17, 599:20, 599:23, 612:15, 613:15, 613:16, 615:3, 615:20

## 9

**9** [6] - 547:13, 547:25, 574:10, 576:7, 579:14, 580:14
**9-B** [8] - 515:12, 519:12, 519:17, 519:22, 520:19, 520:24, 521:2, 521:3
**900** [1] - 513:20
**901** [1] - 606:23
**902** [1] - 606:12
**9th** [12] - 561:4, 561:5, 572:3, 572:4, 582:13, 582:17, 583:12, 584:8, 584:12, 585:11, 591:9, 591:13

## A

**a.m** [7] - 526:6, 526:11, 597:6, 597:7, 597:10, 597:22, 636:10
**abandoned** [1] - 595:15
**ability** [4] - 532:24, 549:22, 585:21, 638:7
**able** [6] - 518:1, 537:15, 593:3, 605:19, 621:13
**absolutely** [4] - 562:20, 564:9, 606:5, 607:11
**accept** [3] - 612:3, 618:13, 618:21
**accepted** [3] -

546:18, 618:10, 618:11

**access** [2] - 622:23, 625:6

**accompanied** [3] - 517:18, 535:9, 560:15

**accordingly** [1] - 586:10

**account** [22] - 604:23, 604:25, 605:3, 605:5, 605:9, 607:3, 607:4, 608:4, 608:14, 610:16, 610:20, 610:25, 612:14, 612:20, 622:24, 624:10, 624:19, 624:21, 625:5, 625:12, 625:13, 626:22

**accounts** [1] - 604:11

**accurate** [21] - 524:8, 524:11, 525:14, 526:7, 526:8, 535:5, 542:15, 549:5, 551:17, 553:16, 554:3, 556:11, 560:23, 575:8, 575:18, 577:6, 577:13, 605:8, 612:18, 615:5, 638:4

**accuse** [1] - 628:22

**acquittal** [1] - 636:19

**act** [2] - 621:14, 621:15

**acted** [2] - 517:3, 621:15

**action** [4] - 525:19, 528:19, 529:9, 587:5

**Action** [1] - 513:3

**actual** [3] - 549:7, 569:3, 594:17

**add** [4] - 550:5, 594:25, 612:7, 616:13

**addition** [2] - 535:8, 573:12

**additional** [11] - 529:14, 541:11, 541:22, 543:5, 544:12, 544:14, 544:17, 565:23, 573:8, 584:1, 608:10

**address** [5] - 528:13, 533:21, 567:4, 571:17, 602:5

**addressed** [6] - 535:16, 541:13, 546:7, 548:2, 561:19, 572:5

**addressing** [1] -

516:6

**adjournment** [3] - 544:24, 545:25, 577:9

**admissible** [2] - 564:20, 573:17

**admission** [4] - 579:23, 606:9, 607:14, 608:19

**admissions** [1] - 608:3

**admit** [7] - 572:19, 580:2, 604:17, 605:11, 615:8, 625:22, 626:4

**admitted** [18] - 521:2, 559:25, 575:25, 576:1, 576:2, 578:25, 584:20, 585:15, 589:6, 609:4, 609:12, 609:22, 612:24, 613:5, 615:12, 618:17, 623:22, 626:9

**admitting** [4] - 572:21, 573:2, 573:25, 580:3

**adopted** [2] - 607:18, 607:21

**adopting** [1] - 609:1

**adoptive** [4] - 606:9, 607:5, 607:14, 608:18

**advance** [2] - 551:18, 551:24

**advanced** [2] - 537:11, 635:19

**advice** [2] - 621:5, 621:6

**advise** [1] - 617:8

**advised** [4] - 523:3, 545:18, 586:22, 621:14

**advisors** [1] - 546:12

**affect** [1] - 566:19

**affiliated** [1] - 625:12

**afternoon** [7] - 519:19, 566:20, 603:7, 603:8, 603:13, 622:4, 622:5

**AFTERNOON** [1] - 513:5

**afternoon/day** [1] - 636:6

**Agent** [27] - 602:20, 603:13, 605:7, 607:2, 611:6, 611:16, 611:24, 612:11, 612:18, 613:14, 614:4, 614:23, 615:19, 616:4, 616:11, 616:17,

618:13, 618:16, 618:25, 621:7, 622:4, 624:2, 625:15, 626:14, 629:20, 634:12, 635:4

**agent** [5] - 554:13, 603:18, 604:6, 610:4, 622:13

**ago** [4] - 554:20, 554:21, 591:16, 624:2

**agree** [4] - 539:8, 558:21, 630:10

**agreed** [1] - 579:21

**agreement** [10] - 529:25, 530:7, 533:13, 533:25, 539:12, 574:22, 575:6, 575:9, 575:11, 575:14

**aimed** [2] - 559:5, 569:14

**al** [1] - 589:8

**Alabama** [1] - 513:24

**alleged** [1] - 576:21

**allow** [10] - 518:16, 534:1, 550:15, 556:21, 557:22, 561:20, 578:14, 631:17, 632:2, 633:6

**allowed** [6] - 539:13, 560:22, 569:16, 569:25, 595:4, 596:13

**allows** [1] - 574:24

**almost** [1] - 565:20

**alternative** [3] - 516:18, 565:23, 597:17

**AMANDA** [1] - 513:14

**AMERICA** [1] - 513:13

**American** [1] - 578:12

**AMERLING** [1] - 519:8

**Amerling** [36] - 515:6, 517:16, 518:4, 519:3, 519:17, 521:6, 533:8, 567:12, 574:6, 576:5, 577:5, 579:6, 580:12, 581:25, 582:3, 582:11, 582:15, 582:23, 583:13, 584:21, 585:10, 585:14, 591:5, 592:8, 593:1, 596:11, 596:17, 600:3, 601:12, 601:20, 631:9, 631:20, 632:7, 632:9, 633:9

**announce** [1] -

566:22

**answer** [25] - 524:19, 525:23, 534:22, 534:25, 535:3, 535:23, 535:25, 538:13, 538:17, 540:25, 542:24, 547:18, 549:22, 560:21, 565:20, 566:7, 592:3, 593:9, 593:13, 593:14, 593:22, 594:3, 594:4, 634:5

**answered** [2] - 517:15, 538:3

**answers** [3] - 543:22, 560:24, 585:1

**anticipate** [1] - 581:10

**apart** [1] - 521:17

**apologies** [1] - 618:22

**apologize** [3] - 517:20, 595:13, 634:21

**appeals** [1] - 589:16

**appear** [15] - 520:11, 523:16, 523:21, 523:25, 524:4, 542:22, 552:13, 581:9, 598:2, 598:6, 623:17, 624:20, 625:25, 627:13, 634:19

**appearance** [4] - 522:14, 522:16, 571:24, 586:17

**appearances** [1] - 513:13

**aPPEARANCES** [1] - 513:13

**appeared** [2] - 545:2, 631:8

**appearing** [1] - 558:8

**appendices** [1] - 550:1

**applicable** [1] - 580:6

**applied** [2] - 540:8, 546:19, 560:23

**apply** [2] - 518:9, 559:15, 576:19

**approach** [4] - 519:6, 538:23, 538:24, 549:15

**appropriate** [1] - 606:4

**approve** [1] - 543:19

**approved** [4] - 543:9, 548:23, 588:12, 596:21

**approving** [1] -

543:25

**April** [1] - 591:1

**argue** [3] - 518:1, 532:17, 539:4

**argued** [1] - 539:3

**argues** [1] - 573:15

**argument** [11] - 517:6, 518:6, 518:11, 518:12, 518:13, 525:9, 531:2, 564:14, 606:23, 608:22, 629:18

**arguments** [2] - 516:10, 535:16

**arrange** [2] - 566:9, 598:13

**article** [26] - 607:23, 608:24, 609:1, 609:7, 609:8, 609:9, 611:20, 614:22, 615:2, 615:5, 615:19, 615:20, 615:25, 623:7, 623:10, 623:14, 624:14, 624:18, 625:16, 625:17, 625:20, 625:25, 626:15, 626:23, 627:2

**articles** [2] - 609:6, 627:1

**articulating** [1] - 525:9

**aspect** [1] - 538:18

**assert** [1] - 586:1

**asserted** [3] - 534:6, 535:4, 572:22

**asserting** [3] - 535:10, 535:12, 565:2

**assertion** [6] - 533:14, 534:1, 535:6, 536:5, 570:10, 586:9

**assertions** [1] - 606:8

**assistant** [1] - 627:21

**assists** [1] - 583:4

**associated** [3] - 610:19, 624:6, 625:5

**assuming** [5] - 536:4, 536:8, 565:13, 608:13, 637:2

**assumption** [2] - 535:4, 608:14

**attached** [3] - 577:23, 578:18, 580:14

**attachments** [1] - 550:5

**attack** [1] - 616:9

**attempted** [2] - 632:17, 632:18

**attempting** [1] - 517:1

**attended** [5] - 555:19, 557:8, 600:6, 600:8, 600:9

**attention** [3] - 577:5, 577:19, 617:11

**attesting** [2] - 577:23, 622:16

**attorney** [10] - 520:4, 545:12, 576:8, 579:7, 598:11, 612:3, 614:15, 616:21, 617:8, 617:13

**ATTORNEY'S** [1] - 513:15

**Attorney's** [11] - 540:15, 541:5, 617:6, 617:7, 617:9, 617:11, 617:16, 617:20, 618:1, 618:3, 633:25

**attorneys** [7] - 522:3, 522:4, 522:20, 523:4, 618:3, 627:21, 635:5

**audiovisual** [1] - 583:5

**authenticating** [1] - 606:12

**authentication** [3] - 606:22, 607:8, 608:1

**authored** [2] - 540:3, 614:14

**authority** [4] - 519:18, 583:15, 585:4, 596:20

**authorized** [1] - 527:24

**available** [4] - 520:3, 528:21, 529:6, 588:24

**Avenue** [2] - 514:3, 638:14

**avenues** [2] - 530:16, 594:22

**aware** [9] - 523:15, 523:18, 572:3, 589:13, 590:1, 590:12, 591:5, 591:8, 619:25

---

**B**

---

**back-and-forth** [4] - 523:20, 523:22, 545:11, 561:5

**Baltimore** [1] - 513:21

**Bannon** [117] - 516:10, 516:25, 517:5, 517:17,

517:23, 520:1, 520:8, 520:11, 520:16, 525:4, 525:12, 525:17, 526:3, 526:10, 529:21, 531:9, 531:17, 534:1, 534:14, 535:13, 536:11, 536:20, 537:5, 539:24, 540:14, 541:10, 541:23, 542:5, 542:8, 542:20, 542:21, 544:10, 544:17, 546:7, 547:2, 548:6, 548:11, 548:24, 549:1, 549:24, 550:13, 551:21, 552:12, 552:22, 558:8, 560:7, 561:1, 561:21, 561:23, 562:8, 564:16, 566:1, 568:2, 572:5, 573:4, 573:6, 573:13, 574:10, 574:13, 575:16, 576:8, 577:14, 577:20, 578:13, 578:14, 578:15, 578:19, 579:7, 579:15, 580:20, 581:13, 581:17, 582:19, 583:19, 583:21, 584:24, 585:23, 586:9, 587:6, 603:23, 608:6, 608:16, 608:20, 609:1, 609:6, 611:9, 612:16, 613:22, 614:6, 614:20, 615:22, 616:6, 616:21, 617:2, 617:9, 619:17, 621:15, 622:19, 622:25, 623:2, 623:3, 623:11, 624:3, 624:5, 624:6, 624:17, 624:19, 624:24, 624:25, 625:3, 625:8, 626:15, 627:10, 630:22, 633:25, 635:16

**BANNON** [1] - 513:6

**Bannon's** [34] - 533:10, 533:17, 542:18, 545:4, 548:3, 558:15, 560:17, 562:10, 571:23, 573:9, 573:20, 576:21, 576:23, 577:25, 582:18, 582:22, 585:18, 586:3, 586:17,

586:23, 604:7, 607:6, 607:13, 607:21, 608:13, 608:19, 612:14, 614:14, 617:8, 617:10, 622:14, 622:21, 626:22, 627:3

**bar** [4] - 568:3, 606:23, 607:8, 608:1

**bare** [1] - 565:22

**bare-bones** [1] - 565:22

**based** [12] - 517:8, 546:3, 558:17, 564:8, 568:23, 570:11, 593:14, 594:17, 625:11, 635:22

**basis** [14] - 529:2, 532:4, 532:9, 534:22, 537:14, 556:25, 559:8, 563:4, 565:23, 586:3, 587:9, 587:14, 589:5, 594:20

**bear** [4] - 542:17, 544:21, 577:18, 632:8

**bearing** [2] - 531:6, 600:15

**bears** [2] - 559:11, 559:12

**became** [1] - 552:13

**BEFORE** [1] - 513:10

**begin** [3] - 551:4, 551:24, 580:20

**beginning** [7] - 586:6, 608:21, 611:10, 622:19, 623:1, 623:11, 624:4

**behalf** [9] - 522:12, 527:24, 543:3, 543:6, 544:17, 582:18, 596:23, 597:2, 597:3

**belief** [12] - 560:3, 560:17, 563:7, 564:1, 564:4, 564:7, 568:17, 569:16, 570:15, 570:18, 573:9, 576:23

**believes** [1] - 541:11

**belong** [2] - 586:2, 592:17

**below** [6] - 611:13, 611:16, 611:18, 614:18, 614:20, 616:2

**Bennie** [3] - 545:20, 576:9, 589:8

**best** [7] - 552:7, 552:8, 552:11, 553:1, 557:24, 578:12, 638:7

**better** [2] - 538:2, 583:7

**between** [4] -

545:11, 585:12, 589:22, 601:2

**beyond** [1] - 556:19

**bias** [3] - 563:21, 632:22, 632:23

**big** [6] - 608:21, 611:11, 622:20, 623:2, 623:12, 624:4

**binder** [2] - 602:23, 603:4

**bit** [5] - 556:21, 591:14, 593:20, 598:10, 636:8

**black** [2] - 555:14, 627:17

**blond** [1] - 555:14

**Bob** [11] - 521:17, 525:3, 533:10, 539:24, 547:3, 548:2, 549:2, 558:14, 627:10, 627:19, 635:18

**body** [1] - 553:23

**bona** [2] - 560:17, 563:7

**bones** [1] - 565:22

**book** [20] - 555:18, 555:21, 555:24, 556:3, 556:4, 556:7, 556:12, 556:14, 556:17, 556:24, 557:5, 557:6, 557:7, 557:10, 557:17, 557:25, 558:2, 558:3, 600:4, 600:8

**books** [1] - 556:7

**bottom** [3] - 525:6, 583:25, 624:10

**box** [1] - 627:17

**branch** [2] - 592:17, 592:18

**break** [1] - 516:5

**brief** [5] - 536:23, 566:18, 566:22, 567:4, 602:3

**briefly** [3] - 516:4, 519:18, 634:9

**bring** [14] - 516:4, 518:20, 549:10, 560:7, 567:9, 570:12, 571:4, 571:9, 602:14, 617:10, 628:4, 628:13, 629:18, 631:1

**bringing** [1] - 535:21

**brings** [1] - 595:1

**broad** [1] - 594:17

**broaden** [1] - 523:7

**broken** [1] - 537:8

**brought** [1] - 587:5

**building** [1] - 581:10

545:11, 585:12, 589:22, 601:2

**BY** [70] - 514:1, 519:10, 519:16, 520:18, 520:21, 521:5, 525:1, 526:17, 527:9, 529:4, 529:17, 533:7, 535:18, 536:7, 536:18, 539:21, 541:2, 541:8, 543:20, 547:9, 549:18, 550:20, 551:10, 552:6, 555:9, 556:22, 557:16, 558:6, 571:20, 574:5, 576:4, 577:4, 579:5, 580:11, 581:24, 582:10, 583:8, 594:5, 596:10, 600:2, 603:12, 604:5, 604:22, 610:3, 610:8, 611:15, 611:23, 612:10, 613:13, 614:3, 615:18, 616:3, 616:16, 622:3, 622:12, 624:1, 625:24, 626:7, 626:13, 628:1, 628:10, 630:19, 631:18, 632:6, 632:20, 633:8, 633:22, 634:11, 634:22, 635:14

---

**C**

---

**campaign** [1] - 546:12

**Campaign** [1] - 554:9

**candidates** [1] - 554:6

**cannot** [2] - 539:4, 551:7

**capacity** [1] - 587:6

**capital** [1] - 626:16

**Capitol** [4] - 524:8, 553:5, 611:19, 616:9

**caption** [3] - 611:16, 611:18, 613:21

**captioned** [1] - 613:22

**career** [4] - 553:22, 553:24, 556:16, 557:1

**careers** [1] - 558:3

**CARL** [1] - 513:10

**carry** [2] - 568:13, 568:14

**case** [29] - 516:8, 517:14, 524:21, 530:17, 531:14, 537:6, 537:23, 538:20, 545:20,

554:18, 555:22,
559:9, 563:21,
563:23, 563:24,
566:11, 566:16,
569:2, 573:11,
577:13, 606:16,
617:11, 628:4,
628:13, 630:22,
631:1, 632:12,
633:24, 637:3
  **cases** [5] - 521:10,
523:15, 603:20,
627:22, 628:15
  **causing** [1] - 583:1
  **certain** [4] - 518:14,
553:2, 575:17, 634:13
  **certainly** [8] -
516:12, 516:25,
534:9, 603:15,
606:14, 606:19,
612:25, 616:6
  **CERTIFICATE** [1] -
638:1
  **certify** [1] - 638:4
  **cetera** [4] - 560:23,
561:2, 630:9
  **chair** [11] - 543:3,
543:17, 543:18,
546:9, 550:19,
553:20, 553:21,
555:1, 594:1, 594:2,
596:5
  **chairman** [9] - 537:4,
538:12, 538:19,
544:1, 544:11, 555:2,
566:8, 596:14, 596:22
  **Chairman** [53] -
526:22, 527:14,
528:2, 528:3, 528:8,
529:19, 530:4, 530:6,
531:17, 532:7,
533:10, 533:12,
533:16, 533:24,
534:12, 535:15,
535:20, 536:14,
536:19, 537:16,
537:22, 538:1,
538:15, 539:23,
540:2, 541:23, 542:6,
542:14, 542:25,
543:2, 543:5, 544:5,
547:14, 548:2,
548:10, 555:13,
562:11, 562:15,
566:15, 571:22,
576:8, 577:7, 578:1,
578:11, 578:18,
579:6, 579:12,
579:17, 580:13,
580:18, 580:23,

581:12, 585:17
  **chairman's** [1] -
544:15
  **chairs** [4] - 553:8,
553:10, 553:18
  **change** [4] - 548:6,
565:8, 582:19, 597:21
  **changed** [1] - 577:22
  **changes** [2] -
560:16, 630:5
  **charge** [3] - 553:9,
553:18, 635:6
  **charged** [3] - 531:9,
590:10, 590:17
  **charges** [2] - 587:4,
591:6
  **checking** [1] -
617:21
  **chief** [3] - 521:13,
521:25, 522:21
  **choose** [1] - 598:7
  **circumstances** [10] -
538:3, 575:17,
577:21, 598:6,
598:14, 617:3,
617:17, 630:8,
630:12, 630:13
  **cited** [1] - 589:4
  **citizen** [2] - 547:2,
547:4
  **civil** [9] - 525:19,
528:19, 528:22,
529:9, 535:21,
538:16, 545:21,
559:9, 587:5
  **civilly** [2] - 525:18,
525:21
  **claim** [2] - 589:10,
599:18
  **claiming** [2] - 587:8,
591:19
  **clarify** [1] - 600:5
  **clause** [1] - 564:25
  **clear** [11] - 516:20,
525:11, 542:7,
545:14, 546:20,
551:20, 552:13,
571:5, 608:12, 621:3,
622:18
  **clearly** [1] - 569:14
  **click** [2] - 624:10,
626:21
  **client** [3] - 548:5,
579:15, 635:8
  **clients** [1] - 635:6
  **close** [2] - 567:7,
605:5
  **club** [13] - 555:21,
555:24, 555:25,
556:3, 556:4, 556:7,

556:12, 556:14,
556:17, 556:24,
557:10, 557:17, 600:4
  **Code** [1] - 587:2
  **collaboration** [1] -
601:2
  **colon** [1] - 626:15
  **Columbia** [3] -
514:2, 545:19, 638:13
  **COLUMBIA** [2] -
513:1, 513:15
  **coming** [2] - 566:1,
602:23
  **Commerce** [1] -
554:24
  **Commission** [1] -
538:10
  **committed** [2] -
631:22, 632:8
  **committee** [2] -
555:1, 578:15
  **Committee** [173] -
516:7, 517:2, 517:16,
518:12, 521:7,
521:23, 522:13,
522:23, 523:19,
523:24, 524:3,
526:11, 526:25,
527:1, 527:16,
527:19, 527:25,
528:4, 528:21, 529:6,
529:11, 529:20,
529:25, 530:16,
530:21, 530:25,
531:10, 531:18,
532:22, 535:5, 537:9,
538:15, 539:1, 539:6,
541:14, 541:19,
541:22, 541:24,
542:5, 542:9, 543:3,
543:7, 543:8, 543:24,
544:11, 544:25,
545:3, 545:12,
545:13, 546:5, 546:8,
546:10, 546:20,
547:21, 547:22,
548:12, 548:21,
548:23, 549:3, 549:7,
549:23, 551:9,
551:11, 551:14,
551:16, 551:18,
552:18, 553:12,
553:17, 553:18,
554:2, 554:9, 554:20,
554:23, 554:24,
555:6, 558:7, 558:12,
558:15, 560:14,
560:18, 561:5,
565:25, 569:23,
570:16, 571:25,

575:7, 575:17, 576:9,
577:8, 577:15,
578:20, 580:15,
580:21, 580:24,
581:3, 582:4, 582:12,
582:18, 583:12,
583:17, 583:19,
583:22, 583:25,
584:3, 584:5, 585:2,
585:3, 585:5, 585:6,
585:10, 585:19,
585:25, 586:10,
586:16, 586:19,
586:22, 587:1, 587:7,
587:12, 587:15,
587:17, 587:23,
588:1, 588:3, 588:4,
588:10, 588:12,
588:14, 588:23,
591:23, 591:25,
592:3, 592:5, 592:14,
592:20, 594:18,
595:19, 596:21,
597:3, 597:5, 597:10,
597:13, 597:16,
598:15, 598:19,
598:20, 599:4, 599:6,
599:9, 599:17,
599:19, 599:22,
601:3, 601:5, 601:6,
601:7, 601:8, 601:11,
604:1, 611:25,
612:17, 613:18,
613:23, 615:23,
618:10, 620:1,
620:18, 624:25,
625:9, 626:16
  **Committee's** [18] -
531:5, 542:18,
544:20, 569:5,
569:21, 577:17,
579:16, 580:19,
582:20, 583:14,
583:15, 585:2, 590:2,
592:11, 596:11,
600:16, 619:9, 619:13
  **committees** [11] -
536:12, 536:20,
537:21, 538:19,
553:8, 553:9, 553:14,
553:19, 553:20,
556:13
  **commonality** [1] -
556:15
  **communicate** [1] -
534:12
  **communicated** [5] -
525:20, 558:14,
572:11, 572:23
  **communicating** [4] -

525:7, 543:6, 578:5,
578:8
  **communication** [2] -
546:14, 566:5
  **communications** [8]
- 523:7, 546:8,
546:11, 546:13,
597:14, 597:16,
599:21, 619:25
  **complete** [3] -
518:15, 580:22, 638:6
  **completed** [1] -
551:17
  **compliance** [14] -
516:23, 517:3,
522:20, 560:4,
562:22, 566:10,
566:15, 569:5, 569:6,
576:24, 576:25,
591:9, 591:12
  **complied** [5] -
516:21, 517:11,
532:15, 569:22,
583:21
  **complies** [1] -
573:13
  **comply** [53] - 524:16,
525:17, 525:22,
530:19, 530:24,
542:22, 548:6,
559:11, 560:19,
561:1, 561:2, 562:12,
562:14, 565:9,
568:21, 569:7, 573:4,
573:6, 576:22,
578:14, 579:16,
582:13, 582:20,
583:10, 584:8,
584:12, 584:15,
585:24, 586:3, 587:8,
587:13, 587:18,
587:21, 588:4, 588:6,
588:17, 589:1,
589:21, 590:6,
590:17, 590:21,
591:20, 592:6,
599:23, 603:23,
612:17, 613:23,
615:24, 625:1, 625:9,
626:17
  **complying** [3] -
559:6, 568:18, 573:10
  **compounded** [1] -
552:14
  **concern** [1] - 516:16
  **concerning** [1] -
582:22
  **conclude** [2] - 517:8,
563:3
  **concluded** [1] -

637:12
**concrete** [1] - 571:17
**conditional** [1] - 575:19
**conditions** [2] - 584:16, 585:1
**conducted** [2] - 521:13, 629:3
**confirm** [2] - 570:18, 570:20
**conflict** [1] - 598:12
**confront** [1] - 561:13
**confusing** [1] - 563:22
**confusion** [1] - 568:13
**Congress** [21] - 519:25, 524:14, 524:21, 526:12, 538:10, 540:13, 540:15, 540:17, 551:22, 553:6, 583:16, 587:1, 591:25, 592:18, 600:21, 631:22, 633:14, 633:24, 634:1
**Congress's** [6] - 608:21, 611:10, 622:20, 623:1, 623:11, 624:4
**Congressional** [1] - 554:9
**congressional** [6] - 536:12, 536:20, 538:19, 553:8, 554:20, 603:23
**congressman** [1] - 556:25
**congressmen** [1] - 556:18
**connection** [1] - 548:11
**consider** [20] - 530:4, 530:6, 532:8, 536:19, 537:22, 538:16, 541:25, 542:5, 542:9, 543:17, 547:5, 552:18, 568:8, 568:9, 570:16, 583:23, 587:1, 588:4, 628:15, 629:13
**consideration** [3] - 529:24, 542:18, 544:21
**considered** [6] - 532:22, 537:5, 537:17, 538:1
**consistent** [5] - 559:23, 562:4, 563:5,

564:17, 576:18
**constitutes** [1] - 638:4
**Constitution** [7] - 514:3, 614:21, 616:10, 635:3, 635:17, 635:22, 638:14
**consultations** [1] - 544:2
**contempt** [36] - 524:14, 524:18, 524:21, 526:12, 531:6, 539:5, 540:11, 540:14, 540:23, 541:25, 542:6, 544:25, 548:15, 548:17, 548:24, 549:4, 549:24, 550:12, 551:21, 552:19, 552:22, 559:9, 560:5, 568:19, 569:7, 569:18, 570:14, 577:1, 582:21, 587:1, 588:5, 589:5, 597:5, 631:21, 633:14, 634:1
**content** [6] - 523:12, 528:5, 543:19, 606:15, 608:15, 611:13
**context** [4] - 528:22, 534:8, 534:9, 573:24
**continually** [1] - 531:4
**CONTINUED** [1] - 519:9
**continued** [1] - 560:12
**continuing** [3] - 571:22, 609:14, 613:8
**control** [1] - 624:21
**controversy** [2] - 606:11, 607:19
**conversation** [1] - 526:23
**conversations** [5] - 522:19, 523:4, 523:6, 558:1, 635:5
**conveyed** [2] - 575:4, 575:12
**conveying** [2] - 577:7, 578:17
**convictions** [1] - 577:21
**convince** [2] - 628:3, 635:5
**cooperate** [1] - 524:3
**cooperating** [2] - 523:18, 616:8

**copied** [1] - 624:18
**copy** [5] - 519:24, 520:12, 527:4, 550:1, 615:2
**Corcoran** [34] - 517:1, 517:15, 519:4, 529:1, 531:12, 532:24, 537:4, 539:9, 549:16, 559:13, 563:14, 565:12, 567:22, 568:6, 571:14, 574:3, 580:10, 581:20, 581:25, 592:9, 592:10, 592:25, 596:17, 597:4, 598:1, 598:23, 600:20, 621:25, 622:5, 625:21, 629:12, 629:16, 634:12, 636:17
**CORCORAN** [106] - 513:18, 517:19, 517:21, 519:5, 519:10, 519:13, 519:16, 520:18, 520:21, 520:24, 521:5, 524:24, 525:1, 526:15, 526:17, 527:6, 527:9, 529:2, 529:4, 529:15, 529:17, 531:13, 533:7, 535:18, 536:2, 536:7, 536:18, 537:7, 537:19, 538:8, 539:21, 541:2, 541:8, 543:20, 547:9, 549:10, 549:17, 549:18, 550:20, 551:10, 552:6, 555:9, 556:22, 557:16, 558:6, 561:16, 565:16, 565:19, 571:15, 571:19, 571:20, 572:15, 574:4, 574:5, 575:22, 576:4, 576:13, 577:4, 578:22, 579:3, 579:5, 579:20, 579:22, 580:11, 581:18, 594:7, 594:14, 601:17, 608:9, 608:12, 608:25, 622:1, 622:3, 622:11, 622:12, 623:19, 624:1, 625:24, 626:4, 626:7, 626:13, 628:1, 628:10, 628:23, 629:2, 629:8, 629:23, 630:5, 630:14, 630:19, 631:13,

631:16, 631:18, 632:6, 632:20, 633:4, 633:8, 633:19, 633:22, 634:6, 635:11, 635:14, 635:24, 636:18, 636:24, 637:5
**Corcoran's** [2] - 559:6, 569:14
**Correct** [1] - 579:10
**correct** [85] - 516:17, 521:8, 521:9, 521:12, 523:17, 524:9, 524:12, 524:21, 524:22, 525:4, 525:5, 525:8, 526:2, 527:11, 527:12, 527:15, 527:20, 529:21, 529:22, 530:2, 544:13, 545:1, 545:8, 545:22, 545:23, 546:2, 547:11, 547:12, 547:15, 547:16, 548:7, 548:8, 548:19, 548:20, 549:6, 549:8, 550:9, 550:10, 551:22, 551:23, 553:6, 554:1, 554:4, 554:6, 554:7, 554:9, 554:15, 554:18, 555:3, 556:18, 557:2, 557:3, 557:12, 558:18, 574:10, 574:11, 574:14, 574:19, 575:1, 576:9, 576:10, 578:3, 579:9, 579:11, 580:17, 582:14, 584:7, 584:18, 587:11, 587:16, 587:20, 589:12, 590:5, 590:11, 620:3, 622:21, 624:14, 624:15, 624:17, 627:10, 627:16, 628:4, 628:6, 631:5, 635:19
**correctly** [1] - 518:10
**corruption** [1] - 603:20
**Costello** [76] - 521:17, 521:19, 525:3, 525:7, 525:11, 525:16, 525:20, 526:20, 527:17, 529:20, 529:23, 532:5, 532:23, 533:10, 537:11, 538:9, 539:24, 544:10, 544:12,

544:16, 545:5, 545:17, 545:24, 547:3, 548:2, 549:2, 558:14, 560:2, 560:8, 560:10, 560:12, 560:15, 561:4, 561:5, 562:10, 564:15, 566:15, 570:18, 576:7, 576:12, 577:7, 577:12, 578:1, 578:11, 578:17, 579:7, 598:24, 614:15, 616:18, 616:20, 616:21, 616:22, 616:23, 616:25, 617:5, 617:15, 618:9, 618:11, 618:21, 618:25, 619:7, 619:12, 619:18, 619:22, 621:3, 621:4, 621:7, 621:14, 621:15, 627:10, 627:14, 627:20, 629:4, 630:22, 635:18
**Costello's** [3] - 527:14, 563:7, 580:14
**Costello/Bannon** [1] - 566:5
**counsel** [12] - 520:23, 521:14, 521:25, 522:21, 531:21, 533:17, 533:23, 583:4, 583:11, 585:18, 621:5, 621:6
**counsels** [2] - 521:14, 522:2, 528:11, 550:18
**couple** [5] - 559:22, 592:8, 597:7, 622:6, 631:17
**course** [5] - 548:6, 573:15, 616:17, 618:6, 637:3
**COURT** [159] - 513:1, 516:3, 517:20, 517:22, 518:3, 518:20, 519:1, 519:7, 520:20, 521:2, 528:24, 530:10, 530:13, 531:12, 532:19, 534:15, 534:20, 534:24, 535:24, 536:16, 536:23, 537:3, 537:18, 537:25, 538:25, 539:8, 540:25, 541:7, 543:12, 547:8,

549:16, 550:15, 551:6, 552:2, 555:8, 556:21, 557:15, 557:22, 558:21, 558:24, 559:17, 559:20, 561:7, 561:11, 561:15, 561:17, 562:6, 562:16, 563:10, 563:19, 564:3, 564:12, 565:11, 565:17, 566:17, 567:1, 567:20, 569:9, 569:12, 570:2, 570:23, 571:1, 571:4, 571:7, 571:9, 571:14, 571:16, 572:18, 574:3, 575:24, 576:1, 576:16, 578:24, 579:21, 579:24, 580:1, 580:10, 581:20, 582:5, 582:25, 583:2, 583:6, 594:9, 594:12, 594:24, 595:6, 595:14, 595:20, 596:3, 601:19, 601:24, 602:2, 602:8, 602:12, 602:14, 602:17, 602:25, 603:3, 603:7, 603:9, 604:14, 604:16, 605:15, 605:19, 606:21, 607:10, 607:25, 608:11, 608:24, 609:3, 609:16, 609:24, 612:8, 612:22, 613:1, 613:5, 613:8, 615:11, 616:14, 620:22, 621:1, 621:9, 621:18, 621:22, 621:24, 623:22, 625:21, 626:9, 627:25, 628:8, 628:18, 628:25, 629:7, 629:9, 629:12, 629:25, 630:1, 630:2, 630:10, 630:17, 631:14, 631:17, 631:25, 632:18, 633:6, 633:17, 633:21, 634:3, 634:7, 634:18, 634:21, 635:12, 635:25, 636:2, 636:5, 636:22, 636:25, 637:6, 637:9

**Court** [14] - 514:1, 514:2, 525:22, 532:11, 561:16, 563:14, 568:24, 570:7, 570:8, 589:17,

589:22, 606:2, 638:12, 638:13

**court** [13] - 528:21, 533:4, 535:21, 539:18, 545:19, 566:25, 589:16, 591:6, 596:9, 609:20, 621:21, 629:23, 630:16

**Court's** [2] - 570:11, 600:1

**COURTROOM** [8] - 516:1, 518:24, 519:15, 533:5, 539:19, 567:19, 583:4, 637:8

**courtroom** [9] - 518:22, 567:13, 567:15, 571:10, 571:12, 602:10, 602:15, 603:5, 637:10

**courts** [1] - 525:18

**cover** [2] - 558:1, 637:7

**covered** [2] - 523:1, 523:9

**credibility** [1] - 532:3

**crime** [4] - 531:9, 631:21, 632:8, 633:13

**Criminal** [1] - 513:3

**criminal** [19] - 524:14, 524:18, 524:20, 528:22, 529:13, 537:24, 541:25, 542:2, 548:24, 549:4, 587:4, 587:19, 588:10, 588:13, 588:21, 590:9, 628:4, 628:13, 631:1

**criminally** [1] - 590:16

**cross** [14] - 531:13, 537:8, 559:14, 559:15, 561:13, 563:18, 563:20, 564:8, 564:11, 565:24, 595:7, 595:15, 608:5, 609:12

**Cross** [1] - 515:3

**CROSS** [2] - 519:9, 622:2

**cross-examination** [9] - 531:13, 537:8, 559:14, 559:15, 561:13, 563:18, 564:8, 564:11, 565:24

**CROSS-EXAMINATION** [2] - 519:9, 622:2

**cross-examine** [2] - 563:20, 608:5

**crossed** [2] - 555:17, 600:8

**CRR** [3] - 514:1, 638:3, 638:12

## D

**D.C** [4] - 513:6, 513:17, 514:4, 638:14

**Daily** [5] - 615:3, 625:16, 625:17, 626:15, 626:22

**dailymail.co.uk** [1] - 614:22

**dailymail.com** [1] - 616:10

**date** [33] - 522:13, 522:18, 523:16, 523:25, 526:1, 526:2, 526:3, 540:4, 541:21, 542:25, 548:1, 548:15, 548:21, 549:1, 552:23, 558:16, 561:24, 561:25, 573:4, 581:8, 581:14, 583:9, 598:2, 598:16, 600:11, 610:22, 612:3, 613:14, 615:19, 615:20, 620:16, 620:18

**dated** [9] - 539:25, 574:10, 576:7, 579:7, 579:14, 612:15, 623:8, 625:16, 625:18

**Dated** [2] - 638:10

**dates** [32] - 523:21, 560:3, 562:8, 562:9, 562:17, 562:19, 563:1, 563:7, 563:11, 564:1, 564:4, 564:14, 564:16, 564:17, 564:22, 564:23, 565:1, 565:6, 567:25, 568:1, 570:17, 573:4, 573:7, 573:18, 573:19, 573:21, 576:20, 599:2, 599:7, 620:7, 620:13

**DAVID** [2] - 513:22, 513:22

**DAY** [1] - 513:10

**day-to-day** [1] - 522:1

**days** [7] - 548:19, 551:8, 551:24, 552:4, 552:5, 552:8, 591:18

**deadline** [16] -

541:16, 541:17, 541:18, 541:20, 542:12, 542:14, 542:16, 542:21, 552:15, 597:9, 597:21, 597:22, 619:4, 619:6, 619:9

**deadlines** [2] - 542:11, 620:10

**deal** [1] - 625:21

**dealing** [3] - 524:11, 545:7, 545:21

**dealt** [1] - 632:14

**debate** [1] - 540:22

**December** [2] - 589:16, 590:20

**decide** [4] - 532:1, 532:2, 532:11, 585:1

**decided** [7] - 531:21, 541:24, 578:12, 583:9, 589:16, 593:18, 596:5

**decides** [2] - 543:18, 569:2

**deciding** [2] - 536:21, 568:20

**decision** [4] - 530:20, 531:5, 542:4, 589:22

**decisions** [1] - 596:12

**default** [6] - 530:20, 559:7, 560:5, 562:24, 569:23, 573:14

**defaulted** [2] - 559:12, 573:21

**Defendant** [59] - 513:7, 517:25, 530:18, 531:4, 570:13, 572:20, 582:12, 583:9, 584:11, 585:20, 587:7, 587:13, 587:18, 587:21, 587:23, 588:1, 588:3, 588:6, 588:10, 588:14, 588:15, 588:17, 588:21, 588:23, 589:1, 589:4, 590:6, 590:9, 590:16, 590:21, 591:6, 591:19, 592:5, 597:2, 597:5, 597:11, 597:14, 597:17, 597:24, 598:19, 599:6, 599:23, 600:3, 610:22, 611:8, 611:25, 613:17, 613:19, 616:25, 617:21, 619:2, 619:8,

619:13, 619:14, 620:9, 620:12, 634:17, 634:23

**DEFENDANT** [1] - 513:18

**Defendant's** [63] - 515:12, 515:13, 515:13, 515:14, 515:14, 515:15, 519:11, 519:22, 521:3, 537:2, 545:12, 549:20, 565:5, 568:17, 568:20, 572:2, 574:1, 574:7, 575:22, 575:25, 576:6, 576:14, 576:19, 577:2, 578:24, 579:4, 580:6, 580:7, 582:1, 583:11, 584:8, 584:15, 584:21, 589:20, 591:9, 599:4, 599:18, 603:25, 604:23, 605:9, 607:3, 610:9, 610:19, 610:24, 611:3, 611:17, 612:3, 612:19, 617:13, 617:17, 617:25, 618:7, 619:18, 619:22, 623:6, 623:7, 623:19, 623:22, 623:24, 626:5, 626:9, 626:11, 634:13

**Defense** [4] - 519:17, 521:2, 549:11, 625:14

**defense** [22] - 516:22, 518:7, 539:4, 563:18, 564:10, 565:3, 568:19, 569:17, 569:21, 570:12, 578:22, 582:1, 595:1, 595:2, 627:23, 628:2, 628:11, 628:16, 629:17, 630:24, 631:3, 636:20

**defenses** [1] - 606:16

**defer** [1] - 516:13

**defiance** [1] - 582:22

**defied** [1] - 552:12

**delay** [2] - 544:20, 545:3

**deliberate** [3] - 530:20, 568:21, 576:21

**deliberately** [2] - 573:6, 573:20

**deliberation** [1] - 569:12

**demand** [3] - 552:12, 580:20, 585:9
**demanded** [1] - 526:8
**Democrat** [4] - 553:21, 553:23, 555:3, 601:3
**Democratic** [12] - 553:6, 553:10, 553:11, 553:15, 553:25, 554:2, 554:6, 554:8, 556:12, 556:18, 556:25, 601:10
**Democratic-leading** [1] - 553:11
**Democrats** [1] - 553:16
**demonstrated** [1] - 564:15
**denied** [1] - 577:9
**Department** [1] - 587:3
**depiction** [3] - 605:8, 612:19, 615:5
**depose** [1] - 520:5
**deposition** [24] - 519:18, 520:4, 520:11, 522:19, 523:2, 523:9, 523:16, 523:25, 542:23, 552:13, 558:9, 566:9, 571:24, 581:10, 581:11, 581:13, 581:16, 586:18, 587:10, 593:15, 593:24, 595:8, 595:18, 598:3
**depositions** [5] - 523:13, 592:12, 592:21, 593:4, 593:6
**DEPUTY** [8] - 516:1, 518:24, 519:15, 533:5, 539:19, 567:19, 583:4, 637:8
**described** [7] - 517:17, 527:22, 540:6, 543:13, 547:20, 550:17, 575:19
**describes** [1] - 545:17
**describing** [1] - 553:17
**description** [1] - 535:11
**designated** [1] - 586:17
**desire** [1] - 617:8
**despite** [3] - 534:1,

569:21, 585:22
**detailed** [3] - 533:17, 573:1, 573:23
**determine** [3] - 631:21, 632:21, 633:13
**dialogue** [1] - 524:4
**different** [20] - 516:9, 520:7, 521:21, 522:2, 529:6, 538:8, 538:24, 543:15, 544:3, 553:19, 566:13, 574:7, 594:18, 594:22, 598:13, 599:2, 601:4, 604:20, 620:16, 626:2
**difficult** [1] - 528:12
**DIRECT** [1] - 603:11
**Direct** [1] - 515:3
**direct** [16] - 523:4, 524:7, 525:25, 527:10, 529:5, 531:15, 532:3, 538:23, 553:11, 565:25, 574:6, 577:5, 577:19, 629:5, 631:24, 632:1
**directed** [1] - 576:8
**direction** [1] - 525:17
**directions** [1] - 525:22
**directly** [2] - 553:22, 560:2
**disagree** [2] - 545:9, 564:19
**disagreement** [1] - 563:15
**discuss** [1] - 526:21, 557:12, 557:18, 567:8, 619:22, 636:14
**discussed** [4] - 548:16, 563:25, 571:18, 592:9
**discussing** [3] - 550:2, 573:19, 578:7
**discussion** [7] - 573:8, 617:7, 629:14, 629:17, 630:20, 632:9, 635:18
**discussions** [3] - 522:15, 523:12, 620:4
**dismissed** [1] - 591:6
**DISTRICT** [4] - 513:1, 513:1, 513:11, 513:15
**District** [4] - 514:2, 514:2, 545:19, 638:13
**district** [1] - 638:13
**document** [21] -

520:23, 522:19, 533:9, 535:11, 542:20, 549:7, 549:8, 549:14, 549:19, 552:15, 561:16, 577:25, 579:2, 579:18, 580:2, 606:15, 609:3, 613:11, 619:4, 619:6
**document-by-document** [1] - 535:11
**documents** [47] - 525:13, 526:2, 526:4, 526:6, 526:10, 548:10, 548:13, 558:8, 558:11, 558:16, 561:8, 562:18, 563:2, 566:1, 566:6, 566:9, 566:10, 571:23, 573:25, 574:19, 575:7, 575:11, 580:3, 580:20, 580:21, 580:25, 581:3, 581:7, 581:17, 584:9, 584:11, 586:10, 586:11, 587:14, 597:6, 597:18, 597:20, 597:24, 599:13, 606:12, 609:12, 612:23, 613:18, 613:19, 618:9, 619:10, 619:23
**DOJ** [1] - 531:8
**Donald** [6] - 545:19, 572:4, 577:10, 589:8, 591:21, 614:8
**donation** [1] - 554:8
**donations** [1] - 554:5
**done** [3] - 518:15, 535:13, 630:7
**door** [3] - 560:11, 594:16, 595:25
**down** [1] - 528:25
**dozens** [1] - 521:7, 522:22
**draft** [5] - 528:11, 544:18, 545:1, 547:17, 550:19
**drafted** [2] - 527:21, 527:22
**drafting** [12] - 528:10, 540:7, 544:4, 547:23, 550:11, 550:16, 550:18, 550:22, 551:4, 551:25, 552:9, 552:21
**drafts** [1] - 545:16
**Dunn** [7] - 610:6, 611:12, 611:22,

613:10, 614:1, 615:15, 616:2
**Dunn-Gordon** [7] - 610:6, 611:12, 611:22, 613:10, 614:1, 615:15, 616:2
**during** [1] - 627:19

**E**

**early** [1] - 636:15
**easily** [1] - 624:18
**East** [1] - 513:20
**ECF** [1] - 560:10
**editing** [1] - 540:4
**EDWARDS** [2] - 514:1, 638:3
**Edwards** [1] - 638:12
**efficiency's** [1] - 567:6
**effort** [1] - 559:11
**efforts** [1] - 569:5
**eight** [1] - 584:1
**either** [11] - 531:10, 536:2, 553:25, 561:24, 567:25, 568:11, 582:6, 593:25, 594:1, 602:5, 625:5
**electronic** [1] - 624:9
**elements** [3] - 531:6, 531:10, 569:3
**Eleventh** [1] - 513:16
**elicit** [1] - 531:22
**ELMO** [1] - 521:22
**email** [3] - 525:3, 591:14, 618:19
**emailed** [1] - 576:12
**emails** [2] - 556:6, 556:9
**emitting** [1] - 582:24
**employed** [1] - 603:17
**end** [5] - 517:14, 539:4, 583:16, 586:1, 615:23
**Energy** [1] - 554:24
**enforce** [1] - 587:5
**enforced** [1] - 531:3
**engage** [2] - 521:19, 521:22
**engaged** [3] - 521:16, 598:24, 619:20
**engaging** [1] - 538:1
**enlisted** [1] - 547:3
**enter** [1] - 613:3
**entered** [15] - 518:22, 521:4,

571:10, 571:12, 574:1, 577:2, 580:9, 602:15, 603:5, 609:24, 610:2, 613:7, 615:14, 623:24, 626:11
**entire** [6] - 528:4, 528:5, 553:24, 601:7, 601:8, 619:20
**entitled** [1] - 545:19
**entry** [1] - 568:15
**environment** [1] - 555:16
**equally** [1] - 580:6
**equation** [1] - 630:6
**equipment** [1] - 583:5
**erase** [1] - 569:7
**erases** [1] - 559:7
**especially** [3] - 563:22, 606:15, 607:18
**ESQ** [5] - 513:14, 513:14, 513:18, 513:19, 513:22
**essentially** [11] - 527:13, 537:10, 566:4, 566:12, 577:12, 578:1, 594:16, 594:21, 605:5, 627:16, 627:17
**EST** [1] - 541:14
**establish** [8] - 562:8, 564:7, 564:13, 595:23, 604:11, 604:19, 609:4, 629:16
**established** [1] - 557:21
**establishing** [1] - 564:7
**estimate** [4] - 552:7, 552:9, 552:11, 553:1
**et** [5] - 560:23, 561:2, 589:8, 630:8, 630:9
**events** [1] - 632:10
**Evidence** [2] - 559:14, 607:12
**evidence** [37] - 516:8, 517:6, 518:8, 520:25, 521:4, 524:25, 539:23, 547:14, 564:3, 564:10, 564:22, 572:14, 572:15, 574:2, 574:8, 576:14, 577:3, 579:19, 580:9, 584:13, 605:12, 606:24, 607:1, 609:22, 609:25, 610:2, 612:24, 613:4,

613:7, 615:9, 615:14, 623:16, 623:20, 623:25, 626:12, 628:12, 637:4

**EVIDENCE** [1] - 515:9

**exact** [3] - 563:25, 600:10, 623:15

**exactly** [5] - 556:1, 559:23, 595:4, 621:14, 621:15

**examination** [14] - 527:10, 529:5, 531:13, 532:4, 537:8, 559:14, 559:15, 561:13, 563:18, 564:8, 564:11, 565:24, 565:25, 594:15

**EXAMINATION** [6] - 519:9, 581:23, 603:11, 622:2, 634:10, 635:13

**examine** [2] - 563:20, 608:5

**except** [1] - 628:22

**exchange** [2] - 568:7, 577:16

**excluded** [2] - 516:8, 518:8

**excuse** [2] - 518:4, 588:9

**excused** [9] - 568:18, 570:13, 573:10, 576:24, 599:18, 601:20, 601:23, 635:25, 636:3

**executive** [51] - 530:1, 530:8, 531:20, 531:24, 533:14, 534:2, 534:6, 534:14, 535:5, 535:17, 535:20, 536:6, 538:4, 539:5, 539:13, 545:8, 545:13, 545:21, 546:6, 546:11, 546:16, 546:19, 546:24, 547:6, 565:1, 568:17, 569:17, 569:20, 570:13, 570:15, 570:16, 573:9, 573:10, 574:19, 574:23, 575:5, 576:23, 577:24, 578:13, 585:21, 586:1, 589:10, 593:11, 595:2, 595:3, 595:22, 599:16, 599:20, 620:2, 635:19, 635:21

**exercised** [1] - 595:3

**Exhibit** [94] - 515:10, 515:11, 515:11, 515:12, 515:13, 515:13, 515:14, 515:14, 515:15, 519:12, 519:17, 519:22, 520:19, 520:24, 521:2, 521:3, 524:25, 525:6, 526:14, 526:18, 526:19, 527:6, 527:7, 528:2, 528:17, 529:15, 533:8, 539:22, 544:8, 547:13, 547:25, 549:12, 549:20, 572:2, 574:1, 574:8, 575:23, 575:25, 576:6, 576:13, 576:14, 576:19, 577:2, 578:25, 579:4, 580:7, 580:8, 582:1, 584:21, 585:15, 585:16, 586:5, 586:21, 589:7, 593:2, 593:3, 599:3, 604:4, 604:6, 604:7, 605:7, 605:12, 608:19, 609:24, 610:1, 612:12, 612:13, 613:5, 613:6, 614:25, 615:1, 615:9, 615:11, 615:13, 618:16, 622:10, 622:14, 622:16, 623:6, 623:7, 623:15, 623:20, 623:22, 623:24, 624:5, 624:11, 624:23, 625:15, 626:1, 626:5, 626:9, 626:11, 626:19, 634:16

**exhibit** [8] - 526:16, 528:16, 529:11, 536:10, 540:10, 602:25, 612:18, 624:22

**Exhibits** [1] - 580:6

**exhibits** [4] - 550:4, 602:23, 605:23, 606:8

**EXHIBITS** [1] - 515:9

**exited** [3] - 567:15, 602:10, 637:10

**expects** [1] - 586:16

**experience** [1] - 635:4

**experiences** [1] - 538:6

**expire** [1] - 583:15

**explain** [8] - 534:22, 536:1, 562:1, 570:24, 578:4, 617:24, 618:6, 628:12

**explained** [1] - 580:4

**explanation** [3] - 535:1, 535:23, 617:16

**explicitly** [1] - 569:16

**explore** [7] - 533:1, 533:13, 533:24, 534:4, 534:13, 535:20, 538:13

**explored** [1] - 539:11

**exploring** [1] - 558:13

**expressing** [1] - 575:15

**extended** [9] - 541:16, 541:17, 541:18, 560:4, 563:8, 563:12, 564:1, 564:5

**extending** [1] - 570:17

**extension** [6] - 541:20, 542:11, 547:10, 547:15, 549:3, 563:6

**extensive** [1] - 545:11

**extent** [5] - 516:7, 532:22, 538:1, 606:19, 608:6

**extremely** [1] - 606:23

## F

**face** [2] - 627:13, 627:18

**fact** [19] - 516:20, 516:21, 537:1, 546:23, 561:24, 561:25, 562:5, 564:20, 565:8, 568:1, 569:4, 569:22, 572:22, 573:19, 577:23, 582:19, 592:20, 597:20, 597:21

**factor** [1] - 570:17

**facts** [10] - 517:9, 560:9, 571:1, 576:24, 617:10, 617:16, 617:24, 618:6, 631:21, 632:8

**fail** [1] - 530:19

**failed** [8] - 542:20, 542:21, 565:8, 565:9,

573:6, 582:19, 582:20, 603:23

**failure** [6] - 568:20, 569:7, 576:22, 586:23, 587:18, 588:3

**fair** [6] - 548:9, 605:7, 612:18, 615:5, 621:16, 626:25

**fairly** [1] - 574:25

**familiar** [2] - 627:22, 628:2

**far** [2] - 576:1, 594:23

**fast** [1] - 565:18

**favor** [1] - 590:2

**FBI** [5] - 554:12, 554:13, 603:18, 603:19, 628:16

**February** [1] - 590:21

**federal** [2] - 545:18, 603:20

**Feedback** [1] - 582:24

**few** [3] - 565:20, 572:10, 574:6

**fiction** [1] - 557:7

**fides** [2] - 560:17, 563:7

**field** [1] - 603:21

**figures** [1] - 608:15

**filed** [3] - 545:7, 547:5, 559:4

**filing** [1] - 545:18, 545:25, 577:10

**final** [4] - 568:24, 581:5, 581:6

**finally** [1] - 586:16

**fine** [1] - 595:20

**finish** [2] - 528:25, 627:25

**first** [35] - 516:10, 524:20, 525:6, 530:15, 533:12, 534:18, 536:17, 538:12, 548:4, 563:16, 568:17, 572:1, 572:12, 572:23, 574:9, 574:12, 574:16, 574:18, 577:6, 578:10, 579:13, 580:12, 582:3, 583:17, 583:19, 585:20, 586:14, 593:2, 607:14, 612:18, 616:1, 616:23, 618:9, 622:9, 625:22

**firsthand** [1] - 543:24

**fit** [1] - 518:13

**five** [4] - 555:25, 556:1, 584:4, 584:6

**fix** [1] - 582:25

**fixed** [3] - 561:24, 561:25, 573:5

**flexible** [7] - 564:14, 564:15, 564:16, 564:18, 564:23, 564:24, 565:6

**floor** [1] - 540:19

**Floor** [1] - 513:16

**focus** [3] - 522:2, 522:10, 593:5

**focusing** [3] - 522:22, 579:12, 630:20

**folks** [1] - 558:3

**follow** [9] - 562:4, 562:25, 565:8, 571:21, 582:19, 583:23, 584:16, 619:13, 622:6

**follow-through** [1] - 562:4

**follow-up** [1] - 619:13

**followed** [2] - 594:18, 615:6

**following** [25] - 518:23, 530:11, 533:3, 536:24, 539:17, 558:22, 566:12, 566:24, 567:16, 567:18, 571:11, 571:13, 581:8, 594:10, 596:8, 602:11, 602:16, 603:6, 605:17, 609:19, 620:24, 621:20, 628:19, 630:15, 637:11

**followup** [1] - 532:6

**followups** [1] - 597:7

**FOR** [5] - 513:1, 513:14, 513:15, 513:18, 515:5

**force** [1] - 586:25

**foreclosed** [1] - 594:23

**forefront** [1] - 595:2

**foregoing** [1] - 638:4

**form** [1] - 604:10

**formal** [2] - 535:6, 536:5

**formally** [2] - 546:17, 560:25

**format** [1] - 626:2

**former** [17] - 546:15, 560:25, 572:4,

572:12, 574:12,
574:17, 575:4,
575:15, 589:10,
590:3, 591:21,
591:22, 592:3,
596:15, 614:8, 616:6,
616:7
**forth** [6] - 523:20,
523:22, 540:11,
545:11, 559:24, 561:5
**forthcoming** [1] -
632:14
**forward** [3] - 536:21,
563:17, 564:9
**foul** [1] - 569:3
**foundation** [4] -
604:16, 606:3, 606:4,
606:25
**Fourth** [1] - 513:16
**frankly** [1] - 560:1
**free** [2] - 608:5,
609:11
**Friday** [1] - 616:7
**friendship** [1] -
600:12
**front** [2] - 531:18,
610:4
**full** [11] - 529:1,
540:13, 540:17,
548:17, 549:4,
549:23, 550:12,
551:13, 588:20,
590:9, 638:5
**fully** [4] - 567:1,
586:18, 619:20,
621:22
**future** [6] - 558:17,
566:10, 573:13,
581:11, 581:14,
612:22

# G

**G-E-T-T-E-R** [1] -
604:8
**garments** [1] -
595:12
**Gaston** [13] - 555:16,
556:6, 557:18,
557:21, 600:4,
600:13, 600:15,
602:18, 605:20,
606:21, 629:9, 630:3,
634:8
**GASTON** [57] -
513:14, 595:11,
602:19, 602:22,
603:2, 603:4, 603:12,
604:3, 604:5, 604:22,

605:11, 605:21,
606:22, 609:21,
610:3, 610:6, 610:8,
611:12, 611:15,
611:21, 611:23,
612:6, 612:9, 612:10,
613:3, 613:10,
613:13, 613:25,
614:3, 615:8, 615:15,
615:18, 616:1, 616:3,
616:12, 616:15,
616:16, 621:23,
623:21, 626:6,
627:24, 628:7,
628:17, 628:21,
629:11, 629:20,
631:12, 631:23,
632:16, 633:1,
633:15, 634:2, 634:9,
634:11, 634:19,
634:22, 635:10
**gathered** [2] - 619:8,
619:10
**general** [3] - 540:6,
543:13, 543:21
**generally** [15] -
521:13, 521:15,
522:3, 522:5, 522:18,
523:5, 527:22,
528:10, 532:19,
543:16, 557:7, 599:1,
615:1, 615:2, 619:19
**gentlemen** [6] -
519:1, 572:18, 576:2,
576:17, 580:1, 602:17
**Getter** [34] - 604:7,
604:9, 604:10,
604:23, 604:25,
605:3, 605:4, 605:9,
607:3, 607:4, 608:4,
608:13, 610:15,
610:17, 610:19,
610:21, 610:24,
610:25, 611:3, 611:4,
612:14, 612:19,
615:4, 622:9, 622:17,
622:24, 623:3,
624:10, 624:19,
625:5, 625:11,
626:22, 627:3, 627:5
**given** [6] - 520:9,
547:18, 558:2,
580:25, 591:20,
636:12
**goal** [2] - 632:7,
632:9
**Gordon** [7] - 610:6,
611:12, 611:22,
613:10, 614:1,
615:15, 616:2

**govern** [2] - 593:4,
593:6
**GOVERNMENT** [4] -
513:14, 515:5, 519:8,
603:10
**Government** [24] -
531:21, 532:12,
532:20, 533:23,
537:12, 539:8, 540:9,
560:11, 568:10,
569:9, 570:5, 573:15,
576:22, 602:20,
604:17, 606:1,
607:25, 609:22,
621:4, 623:16,
628:22, 630:25,
635:6, 636:4
**government** [5] -
585:7, 585:9, 592:16,
592:18, 620:4
**government's** [3] -
515:10, 515:11,
515:11
**Government's** [50] -
524:24, 525:6,
526:14, 526:18,
526:19, 527:7, 528:2,
528:17, 529:15,
531:14, 533:8,
539:22, 544:8,
547:13, 567:21,
580:8, 585:15,
586:20, 589:7, 593:2,
593:3, 599:3, 602:25,
604:4, 604:6, 605:7,
605:12, 605:22,
609:24, 610:1,
612:12, 613:5, 613:6,
614:25, 615:1, 615:9,
615:11, 615:13,
618:16, 622:10,
622:14, 622:16,
623:15, 624:5,
624:11, 624:22,
626:1, 626:19
**granted** [1] - 637:2
**graphic** [4] - 614:4,
614:19, 614:20,
615:16
**great** [1] - 583:7
**group** [8] - 555:18,
556:10, 557:5, 557:6,
557:7, 557:25, 558:4,
600:8
**guess** [2] - 556:23,
605:24
**guidance** [1] - 602:5

# H

**H-A-R-T** [1] - 603:16
**H.Res** [1] - 520:2
**hair** [1] - 555:14
**half** [2] - 550:7,
550:8
**hand** [3] - 519:11,
537:10, 550:11
**handed** [2] - 520:9,
549:19
**handle** [2] - 610:17,
610:21
**hard** [2] - 555:17,
565:18
**harm** [1] - 569:3
**HART** [1] - 603:10
**Hart** [32] - 515:7,
602:20, 603:13,
603:15, 604:6, 605:7,
607:2, 610:4, 611:6,
611:16, 611:24,
612:11, 612:18,
613:14, 614:4,
614:23, 615:19,
616:4, 616:11,
616:17, 618:13,
618:16, 618:25,
621:7, 622:4, 622:13,
624:2, 625:15,
626:14, 629:21,
634:12, 635:4
**head** [1] - 569:20
**headed** [1] - 553:8
**heading** [1] - 633:19
**headline** [6] - 609:1,
615:21, 615:22,
623:10, 626:14
**hear** [8] - 529:1,
536:16, 558:25,
559:18, 573:8,
594:12, 605:19,
605:20
**heard** [1] - 597:10
**hearing** [4] - 578:16,
578:20, 584:25, 621:6
**hearings** [2] - 522:16
**hearsay** [2] - 606:19,
607:7
**held** [3] - 548:24,
552:22, 589:5
**help** [3] - 534:8,
547:3, 583:25
**helpful** [1] - 533:15
**Henry** [3] - 555:2,
556:15, 557:1
**hereby** [1] - 638:3
**highlighted** [9] -
519:21, 582:15,

584:22, 585:20,
586:7, 586:15, 593:8,
593:20, 593:21
**highlighting** [2] -
593:6, 599:10
**Hill** [2] - 524:8, 553:5
**himself** [2] - 538:20,
608:17
**hold** [1] - 565:17
**holding** [3] - 518:5,
542:5, 544:25
**holdings** [1] - 516:18
**holds** [1] - 605:4
**honestly** [1] - 600:7
**Honor** [97] - 516:1,
517:19, 517:25,
518:19, 519:5, 519:6,
520:17, 520:24,
527:8, 529:2, 530:15,
532:9, 534:17, 535:2,
536:15, 537:1, 539:1,
549:14, 556:19,
557:13, 557:20,
559:3, 559:16,
559:22, 561:10,
561:12, 562:4,
562:20, 562:23,
564:11, 565:16,
568:12, 569:13,
570:4, 570:7, 570:19,
571:6, 571:15,
571:19, 572:13,
572:16, 574:4,
576:13, 576:15,
578:23, 581:18,
594:7, 594:13, 595:7,
595:13, 601:16,
601:17, 601:22,
602:1, 602:7, 602:13,
602:19, 602:22,
603:2, 603:8, 604:12,
605:11, 605:21,
605:22, 606:22,
607:9, 608:8, 608:9,
609:18, 609:21,
613:2, 613:3, 615:8,
616:12, 620:21,
621:2, 621:12,
621:23, 622:1,
623:19, 626:4,
627:24, 628:7,
628:21, 629:20,
629:24, 631:12,
631:23, 632:16,
633:1, 633:5, 633:15,
634:6, 634:9, 635:11,
636:4, 637:5
**Honor's** [1] - 612:6
**HONORABLE** [1] -
513:10

**hopefully** [1] - 602:5
**hour** [1] - 602:3
**hours** [1] - 597:21
**House** [29] - 516:7, 516:13, 516:20, 516:24, 517:10, 519:25, 540:13, 540:17, 540:19, 548:15, 548:17, 548:22, 549:4, 549:24, 550:12, 551:13, 551:21, 553:17, 554:1, 554:23, 554:24, 581:9, 582:21, 587:3, 588:9, 588:20, 590:9, 616:6
**House's** [1] - 516:14
**husher** [3] - 567:3, 630:18, 633:4
**hypothetically** [1] - 517:9

**I**

**idea** [2] - 564:17, 575:15
**identification** [9] - 519:12, 549:11, 549:21, 572:2, 575:23, 576:5, 579:4, 623:6, 625:15
**identified** [1] - 586:12
**identify** [5] - 528:1, 528:7, 528:12, 540:1, 581:8
**identifying** [1] - 545:15
**imagine** [2] - 626:3, 632:23
**impeach** [1] - 633:2
**impeachment** [2] - 632:17, 632:18
**implications** [1] - 595:4
**important** [3] - 569:1, 569:11, 632:13
**impress** [1] - 632:13
**improper** [5] - 569:20, 632:16, 632:18, 633:2
**IN** [1] - 515:9
**inappropriate** [1] - 585:23
**inbox** [1] - 591:14
**include** [5] - 523:7, 535:10, 584:9, 593:11, 603:25

**including** [3] - 539:9, 550:1, 552:19
**incorrect** [1] - 570:1
**indeed** [2] - 578:15, 584:24
**independent** [1] - 607:20
**indicate** [4] - 523:19, 579:15, 617:20, 619:1
**indicated** [1] - 573:22
**indicates** [1] - 525:16
**indicating** [5] - 524:2, 579:13, 580:13, 581:13, 581:16
**indication** [2] - 607:12, 607:20
**individual** [2] - 553:25, 630:8
**individuals** [6] - 523:13, 524:2, 543:15, 544:3, 556:14, 604:19
**indulgence** [1] - 600:1
**inform** [1] - 636:14
**informal** [2] - 535:6, 536:5
**informally** [1] - 546:18
**information** [30] - 517:23, 531:22, 537:20, 541:18, 542:8, 542:17, 543:5, 543:24, 544:21, 545:3, 545:6, 545:10, 545:15, 546:10, 558:12, 561:20, 562:13, 573:17, 577:15, 577:18, 583:23, 583:24, 585:24, 606:5, 624:9, 630:25, 631:4, 632:11, 632:14, 635:7
**informed** [1] - 546:9
**informing** [1] - 574:12
**innocent** [1] - 635:8
**instances** [1] - 627:22
**instead** [4] - 531:2, 568:20, 597:7, 599:9
**instruct** [2] - 568:11, 573:12
**instructed** [2] - 517:7, 569:4
**instructing** [1] - 572:25

**instruction** [6] - 568:10, 569:1, 570:6, 570:8, 580:4, 585:22
**instructions** [11] - 535:9, 568:15, 568:24, 569:10, 571:6, 573:1, 573:16, 573:23, 576:3, 576:19, 578:25
**intended** [1] - 607:18
**intends** [1] - 567:22
**intent** [2] - 559:12, 565:5
**intention** [1] - 586:1
**intentional** [2] - 530:20, 576:21
**intentionally** [2] - 573:6, 573:20
**interest** [1] - 578:12
**interested** [3] - 545:16, 558:11, 558:13
**internet** [2] - 604:21, 624:11
**interpretation** [2] - 516:13, 632:10
**interview** [15] - 621:3, 628:16, 629:3, 629:7, 629:8, 629:10, 629:14, 629:21, 630:3, 630:7, 631:7, 631:10, 632:21, 633:9, 633:23
**interviewed** [2] - 554:12, 631:9
**interviewing** [1] - 632:7
**interviews** [1] - 627:7
**introduce** [3] - 517:6, 532:20, 603:13
**investigate** [1] - 603:20
**investigation** [17] - 536:13, 548:14, 583:14, 603:22, 603:25, 608:21, 611:10, 616:8, 616:17, 622:7, 622:20, 623:1, 623:12, 624:4, 631:13, 631:15, 632:15
**investigations** [3] - 600:22, 600:24, 601:1
**investigative** [5] - 521:14, 521:25, 522:1, 522:2, 522:21
**invitation** [2] - 544:20, 577:17

**invocation** [4] - 532:16, 540:10, 546:15, 587:13
**invoke** [2] - 577:24, 592:21
**invoked** [4] - 546:18, 546:21, 574:19, 595:3
**invoking** [1] - 587:1
**involved** [14] - 521:10, 523:8, 523:12, 524:10, 524:17, 543:15, 544:3, 547:19, 547:22, 550:18, 558:3, 595:10, 601:1, 630:21
**involvement** [1] - 619:19
**involves** [1] - 540:13
**involving** [2] - 524:14, 524:21
**irrelevant** [7] - 530:16, 530:22, 532:10, 559:10, 563:21, 568:22, 573:11
**issue** [32] - 516:19, 522:13, 525:18, 525:19, 530:1, 530:7, 531:23, 535:21, 536:4, 537:6, 538:11, 538:12, 538:13, 545:7, 545:12, 545:21, 546:8, 558:15, 563:23, 563:25, 572:5, 577:13, 594:14, 598:20, 599:15, 599:17, 601:14, 602:4, 635:18, 635:19, 636:7
**issued** [7] - 533:17, 578:14, 583:17, 583:19, 585:5, 585:12, 611:25
**issues** [11] - 516:11, 529:24, 535:16, 541:11, 546:6, 546:22, 561:22, 563:21, 571:18, 599:12, 636:13
**it'll** [2] - 532:6, 602:8
**Item** [1] - 593:5
**items** [1] - 550:2
**itself** [4] - 550:7, 569:6, 606:6, 606:15

**J**

**Jan** [5] - 608:21, 622:20, 623:1, 623:11, 624:4
**January** [15] - 583:25, 589:17, 589:18, 589:23, 590:20, 601:13, 611:10, 611:19, 612:16, 613:23, 615:23, 616:9, 624:25, 625:9, 626:16
**job** [1] - 628:2
**joined** [1] - 557:10
**Judge** [3] - 575:24, 594:25, 630:1
**judge** [6] - 525:19, 592:11, 595:8, 595:17, 595:24, 609:14
**JUDGE** [1] - 513:11
**judges** [2] - 592:14, 592:16
**judgment** [1] - 636:19
**judicial** [1] - 592:17
**July** [32] - 513:6, 559:23, 561:3, 561:5, 561:9, 561:11, 562:23, 563:9, 566:14, 572:3, 574:10, 576:7, 579:7, 579:14, 580:14, 580:22, 582:3, 582:11, 582:13, 582:17, 583:12, 584:8, 584:12, 585:10, 591:9, 591:13, 591:14, 591:16, 625:17, 638:10
**jury** [73] - 516:4, 516:19, 516:22, 516:23, 517:7, 518:6, 518:21, 518:22, 519:2, 519:14, 528:1, 530:12, 530:25, 531:24, 532:11, 532:18, 536:25, 539:3, 539:4, 558:23, 559:5, 559:11, 560:6, 563:3, 563:4, 563:20, 563:22, 567:7, 567:9, 567:15, 568:11, 568:14, 568:19, 569:2, 569:15, 569:16, 569:19, 570:12, 571:4,

571:10, 572:18, 576:3, 576:17, 580:1, 593:21, 594:11, 602:10, 602:14, 602:15, 603:14, 605:13, 605:18, 606:25, 609:23, 609:25, 613:4, 615:10, 615:12, 618:9, 619:4, 620:25, 622:13, 623:23, 625:2, 625:4, 625:7, 625:23, 626:10, 628:20, 634:4, 636:11, 636:14, 637:10

**JURY** [1] - 513:10

**Justice** [1] - 587:4

**justification** [1] - 560:12

## K

**key** [1] - 561:12

**kind** [4] - 598:16, 629:13, 629:17, 632:24

**kinds** [1] - 628:15

**knowledge** [4] - 520:1, 520:3, 520:8, 543:9

**known** [3] - 554:17, 555:11, 633:10

**knows** [2] - 567:23, 608:6

**KRISTIN** [1] - 519:8

**Kristin** [3] - 515:6, 631:9, 632:7

## L

**lack** [1] - 538:1

**ladies** [6] - 519:1, 572:18, 576:2, 576:17, 580:1, 602:17

**laid** [2] - 535:8, 560:9

**language** [3] - 528:1, 565:4, 626:18

**largely** [1] - 516:8

**last** [20] - 516:6, 516:17, 525:23, 526:16, 528:16, 528:17, 529:10, 529:23, 541:10, 557:17, 558:14, 566:7, 579:10, 584:22, 586:6, 586:20, 589:23, 600:7, 635:4, 635:15

**late** [4] - 545:24, 559:11, 579:22, 636:12

**latest** [1] - 566:5

**law** [6] - 516:22, 532:14, 535:21, 559:8, 565:3, 570:1

**LAW** [1] - 513:22

**lawful** [1] - 577:1

**lawsuit** [13] - 545:7, 545:17, 545:18, 545:20, 545:21, 546:23, 547:5, 577:10, 589:4, 589:7, 589:9, 589:13, 590:1

**lawyer** [24] - 521:17, 521:22, 522:12, 522:25, 523:7, 523:10, 525:3, 529:20, 533:10, 539:24, 540:10, 547:3, 548:3, 549:2, 558:15, 562:10, 627:10, 628:11, 628:16, 629:18, 630:13, 630:22, 630:24, 631:4

**lawyers** [3] - 521:11, 627:23, 628:3

**lay** [1] - 604:16

**leading** [7] - 553:11, 553:23, 554:2, 601:2, 601:3, 617:17, 617:24

**leads** [1] - 583:23

**learn** [3] - 631:20, 632:7, 633:9

**leash** [1] - 568:8

**least** [7] - 517:7, 518:10, 539:10, 557:8, 564:15, 584:1

**leave** [3] - 516:15, 518:9, 567:12

**leeway** [1] - 632:2

**left** [5] - 567:23, 582:1, 584:3, 610:10, 614:5

**legal** [9] - 516:11, 525:9, 531:2, 532:4, 532:9, 532:11, 535:16, 540:12, 586:3

**lengths** [1] - 635:7

**Lesley** [6] - 516:3, 518:20, 567:6, 603:9, 636:15, 637:7

**letter** [123] - 525:2, 525:15, 526:20, 526:21, 526:24, 527:2, 527:5, 527:11, 527:14, 527:21, 528:3, 528:5, 528:8,

528:18, 529:19, 531:15, 531:16, 533:10, 535:14, 537:12, 537:16, 539:23, 540:2, 540:5, 541:9, 541:23, 542:10, 542:19, 543:1, 543:4, 543:10, 543:14, 543:25, 544:6, 544:9, 544:12, 544:15, 544:16, 544:18, 544:19, 544:23, 545:1, 545:2, 545:6, 545:16, 547:14, 547:17, 547:21, 548:1, 548:4, 548:19, 559:23, 560:8, 560:10, 560:15, 560:16, 561:3, 561:4, 561:6, 561:9, 561:11, 561:12, 561:18, 562:11, 562:24, 565:7, 565:21, 566:8, 566:14, 568:4, 568:15, 570:21, 572:8, 572:10, 572:13, 572:19, 574:7, 574:9, 574:13, 574:17, 574:20, 575:2, 575:3, 575:4, 575:9, 575:14, 576:6, 576:11, 577:6, 577:14, 577:22, 578:9, 578:19, 579:6, 579:12, 579:14, 580:14, 580:15, 581:1, 582:4, 582:11, 583:11, 585:10, 585:12, 585:17, 585:19, 585:22, 586:14, 587:23, 588:2, 589:8, 596:23, 597:1, 599:4, 599:5, 599:10, 599:20, 606:2, 609:6, 614:10, 614:11, 614:13, 614:14

**letters** [47] - 527:22, 527:24, 528:10, 528:11, 528:12, 531:20, 532:12, 532:21, 540:7, 543:2, 546:9, 546:23, 547:19, 550:1, 550:17, 559:24, 560:2, 561:22, 562:1, 562:3, 562:5, 562:7, 562:21, 563:4, 564:6, 564:8, 564:17, 565:14, 565:21,

567:24, 568:7, 568:13, 570:6, 570:8, 570:9, 570:17, 570:19, 577:17, 596:18, 596:20, 596:22, 597:1, 619:13, 619:17, 626:17

**liability** [1] - 542:3

**light** [3] - 542:4, 545:24, 577:10

**likely** [3] - 518:9, 518:11, 608:3

**limine** [1] - 559:4

**limited** [6] - 532:25, 567:25, 573:3, 583:14, 585:22, 594:15

**limiting** [5] - 573:2, 573:16, 576:18, 578:25, 580:3

**line** [6] - 548:4, 571:2, 574:12, 574:16, 593:7

**lines** [4] - 518:7, 532:25, 569:8, 586:6

**link** [13] - 611:3, 611:19, 614:1, 614:16, 614:18, 614:20, 614:21, 614:23, 615:6, 624:11, 626:22

**linked** [1] - 615:3

**links** [4] - 604:20, 610:25, 611:4, 627:5

**LISA** [2] - 514:1, 638:3

**Lisa** [1] - 638:12

**list** [2] - 563:2, 603:1

**listen** [1] - 540:22

**lodged** [1] - 594:4

**logical** [1] - 563:5

**logistical** [2] - 598:17, 598:20

**look** [12] - 524:24, 528:16, 529:18, 533:16, 583:22, 584:19, 586:5, 592:24, 598:13, 614:1, 616:1, 624:22

**looked** [2] - 581:1, 627:6

**looking** [7] - 598:10, 610:24, 611:7, 614:16, 614:18, 630:2, 634:16

**looks** [1] - 578:21

**low** [3] - 568:4, 606:23, 608:1

## M

**ma'am** [1] - 571:21

**magazine** [1] - 607:23

**Mail** [5] - 615:3, 625:16, 625:17, 626:15, 626:23

**mailed** [1] - 520:9

**main** [1] - 546:6

**majority** [1] - 555:5

**malleable** [2] - 568:1, 620:13

**managed** [1] - 522:20

**manages** [2] - 522:1, 522:9

**March** [1] - 590:24

**marked** [7] - 519:11, 549:20, 576:6, 604:4, 612:12, 623:5, 625:14

**Maryland** [1] - 513:21

**mask** [1] - 555:14

**material** [1] - 546:24

**materials** [2] - 517:17, 541:22

**matter** [8] - 516:20, 532:14, 541:4, 564:19, 566:13, 591:18, 595:23, 632:15

**matters** [4] - 522:3, 546:13, 572:22, 600:23

**MATTHEW** [1] - 513:18

**mean** [17] - 522:7, 533:22, 537:7, 551:8, 557:5, 560:6, 562:6, 569:15, 578:4, 588:4, 597:13, 605:2, 605:23, 607:23, 608:24, 609:4, 610:14

**meaning** [1] - 590:3

**means** [4] - 517:11, 562:7, 605:4, 607:5

**meant** [1] - 565:1

**meantime** [1] - 582:9

**measures** [1] - 552:19

**mechanism** [3] - 595:24, 596:4, 596:6

**media** [3] - 604:10, 604:18, 608:16

**meet** [3] - 556:3, 556:17, 606:19, 617:24, 627:23, 628:3

**meeting** [9] - 542:5,

544:25, 556:4, 556:8,
617:6, 627:9, 627:11,
627:12, 627:19
**meetings** [4] - 628:2,
628:6, 628:11, 630:24
**meets** [2] - 556:24,
607:12
**member** [4] - 543:24,
553:25, 554:2, 601:6
**members** [24] -
526:24, 527:1, 527:3,
527:23, 528:11,
541:4, 543:8, 543:16,
546:12, 547:22,
550:19, 553:6,
553:11, 553:15,
554:14, 555:5, 556:7,
556:11, 556:17,
556:24, 593:23,
601:6, 601:10, 633:24
**memo** [2] - 617:6,
617:19
**memory** [4] - 543:23,
544:1, 544:3, 544:5
**mentioned** [2] -
553:4, 635:17
**message** [1] - 543:6
**met** [2] - 531:7,
531:10
**mic** [1] - 582:7
**microphone** [4] -
582:6, 583:3, 595:11,
595:16
**middle** [2] - 593:7,
614:9
**midnight** [1] - 591:14
**might** [8] - 523:11,
533:15, 542:17,
547:4, 561:19, 563:3,
624:21
**mind** [2] - 560:21,
571:17
**minute** [2] - 567:8,
624:2
**minutes** [1] - 636:20
**misconduct** [8] -
542:9, 542:18,
542:19, 544:22,
545:4, 577:18,
628:22, 628:24
**mistake** [1] - 565:3
**mistake-of-law** [1] -
565:3
**mistaken** [1] - 620:9
**mixed** [1] - 516:21
**MOLLY** [1] - 513:14
**moment** [1] - 618:13
**Monday** [1] - 541:14
**Montgomery** [1] -
513:24

**month** [2] - 556:5,
590:22
**monthly** [4] - 556:3,
556:6, 556:18, 556:25
**months** [3] - 584:1,
584:4, 589:24
**moreover** [1] -
585:25
**morning** [3] - 577:8,
636:9, 636:20
**most** [7] - 553:5,
556:11, 556:15,
556:17, 556:24,
567:24
**motion** [2] - 559:4,
636:19
**move** [21] - 518:18,
520:24, 526:14,
527:6, 529:15,
536:21, 544:8,
572:15, 575:22,
576:13, 578:22,
579:3, 579:23, 596:2,
604:17, 605:11,
613:3, 615:8, 623:19,
626:4, 637:3
**moved** [1] - 620:7
**moves** [1] - 609:22
**moving** [4] - 537:24,
574:16, 579:2, 615:25
**MR** [136] - 517:19,
517:21, 519:5,
519:10, 519:13,
519:16, 520:18,
520:21, 520:24,
521:5, 524:24, 525:1,
526:15, 526:17,
527:6, 527:9, 529:2,
529:4, 529:15,
529:17, 531:13,
533:7, 535:18, 536:2,
536:7, 536:18, 537:7,
537:19, 538:8,
539:21, 541:2, 541:8,
543:20, 547:9,
549:10, 549:17,
549:18, 550:20,
551:10, 552:6, 555:9,
556:22, 557:16,
558:6, 559:16,
559:18, 559:21,
561:9, 561:12,
561:16, 562:3,
562:10, 562:20,
563:13, 563:25,
564:6, 565:16,
565:19, 570:4,
570:24, 571:3, 571:5,
571:8, 571:15,
571:19, 571:20,

572:15, 574:4, 574:5,
575:22, 576:4,
576:13, 577:4,
578:22, 579:3, 579:5,
579:20, 579:22,
580:11, 581:18,
594:7, 594:14,
594:25, 601:17,
604:12, 604:15,
605:14, 605:16,
605:22, 607:9,
607:11, 608:8, 608:9,
608:12, 608:25,
609:14, 609:18,
620:21, 620:23,
621:2, 621:12, 622:1,
622:3, 622:11,
622:12, 623:19,
624:1, 625:24, 626:4,
626:7, 626:13, 628:1,
628:10, 628:23,
629:2, 629:8, 629:23,
630:5, 630:14,
630:19, 631:13,
631:16, 631:18,
632:6, 632:20, 633:4,
633:8, 633:19,
633:22, 634:6,
635:11, 635:14,
635:24, 636:18,
636:24, 637:5
**MS** [113] - 517:25,
518:19, 520:17,
521:1, 528:23, 530:9,
530:15, 532:9,
534:17, 534:21,
536:15, 536:22,
537:1, 539:1, 540:24,
541:6, 543:11, 547:7,
550:14, 551:5, 552:1,
555:7, 556:19,
557:13, 557:20,
558:19, 559:3,
564:21, 568:12,
569:11, 569:13,
572:13, 572:17,
576:15, 579:18,
579:25, 581:22,
581:24, 582:8,
582:10, 583:1, 583:7,
583:8, 594:5, 594:13,
595:7, 595:11,
595:13, 595:15,
596:1, 596:10, 600:1,
600:2, 601:16, 602:1,
602:7, 602:13,
602:19, 602:22,
603:2, 603:4, 603:12,
604:3, 604:5, 604:22,
605:11, 605:21,
606:22, 609:21,

610:3, 610:6, 610:8,
611:12, 611:15,
611:21, 611:23,
612:6, 612:9, 612:10,
613:3, 613:10,
613:13, 613:25,
614:3, 615:8, 615:15,
615:18, 616:1, 616:3,
616:12, 616:15,
616:16, 621:23,
623:21, 626:6,
627:24, 628:7,
628:17, 628:21,
629:11, 629:20,
631:12, 631:23,
632:16, 633:1,
633:15, 634:2, 634:9,
634:11, 634:19,
634:22, 635:10, 636:4
**Mueller** [2] - 536:13,
538:10
**mull** [1] - 566:22
**multiple** [1] - 601:9
**must** [1] - 581:9

## N

**name** [6] - 528:3,
603:14, 603:15,
608:19, 610:12,
627:18
**named** [1] - 557:1
**natural** [1] - 562:4
**nature** [2] - 552:5,
583:14
**near** [1] - 581:11
**necessarily** [1] -
538:23
**need** [10] - 538:21,
552:18, 558:21,
564:2, 570:24, 571:1,
580:5, 583:2, 602:4,
637:7
**needed** [2] - 597:14,
598:21
**needs** [2] - 535:25,
598:10
**negotiate** [4] - 522:4,
539:2, 539:6, 599:7
**negotiated** [2] -
522:12, 522:25
**negotiating** [1] -
620:15
**negotiation** [2] -
521:19, 598:24
**negotiations** [5] -
521:11, 521:13,
521:16, 521:22, 523:9
**never** [3] - 518:12,

559:18, 562:24
**new** [11] - 542:14,
542:16, 545:6,
545:10, 545:15,
546:4, 546:23,
566:14, 581:1, 599:7
**newly** [1] - 547:5
**news** [1] - 609:6
**newspaper** [1] -
607:23
**next** [5] - 525:11,
525:16, 578:10,
601:25, 624:22
**NICHOLS** [1] -
513:10
**nine** [2] - 527:3,
584:1
**non** [1] - 563:21
**non-bias** [1] - 563:21
**noncompliance** [7] -
541:12, 552:14,
586:24, 586:25,
617:17, 617:25, 618:7
**none** [1] - 565:20
**nonfiction** [1] -
557:4
**nonpartisan** [1] -
554:14
**nonsense** [1] - 563:3
**Northwest** [3] -
513:16, 514:3, 638:14
**NOT** [1] - 626:16
**note** [1] - 516:18
**noted** [2] - 542:10,
613:9
**notes** [1] - 638:5
**nothing** [5] - 546:14,
581:19, 601:16,
621:23, 635:10
**notice** [7] - 560:19,
562:23, 570:10,
575:3, 575:14, 578:2,
578:4
**notify** [2] - 588:14,
588:23
**noting** [1] - 609:17
**notion** [1] - 570:1
**notions** [1] - 569:20
**November** [5] -
554:12, 590:13,
590:14, 590:20,
616:23
**number** [20] -
527:23, 529:5, 535:8,
545:20, 546:16,
546:17, 550:18,
551:8, 552:4, 552:7,
552:8, 553:7, 555:19,
593:24, 594:18,
600:22, 609:5, 621:6

# O

**O'Neill** [1] - 581:9
**object** [2] - 537:13, 594:20
**objecting** [1] - 534:18
**objection** [66] - 520:17, 521:1, 525:7, 525:14, 526:21, 527:15, 528:23, 530:9, 530:23, 531:17, 531:21, 532:4, 532:10, 532:13, 534:15, 536:15, 536:22, 537:12, 537:19, 539:15, 540:24, 541:6, 543:11, 547:7, 550:14, 551:5, 552:1, 555:7, 556:19, 557:13, 557:20, 558:19, 566:4, 567:21, 572:13, 572:17, 576:15, 576:16, 579:18, 579:24, 579:25, 594:2, 594:3, 596:4, 599:22, 605:14, 605:25, 609:15, 609:16, 613:8, 620:21, 621:18, 623:21, 626:6, 627:24, 628:7, 628:17, 631:12, 631:23, 631:25, 632:16, 633:1, 633:7, 633:15, 634:2, 634:3
**objections** [2] - 537:11, 604:13
**objective** [1] - 607:11
**objectively** [1] - 563:6
**obligation** [5] - 531:1, 539:2, 563:17, 564:9, 586:9
**obstacle** [1] - 598:17
**obtain** [1] - 529:12
**obviously** [2] - 531:20, 566:4
**occasions** [2] - 524:17, 536:12
**occur** [1] - 581:11
**occurred** [2] - 516:24, 540:20
**October** [58] - 526:1, 526:6, 526:11, 529:19, 533:18,

535:14, 535:15, 539:25, 541:14, 541:16, 541:21, 541:23, 542:6, 542:14, 542:21, 542:23, 542:25, 544:15, 548:9, 548:18, 548:24, 551:11, 551:14, 551:16, 551:24, 552:11, 552:12, 552:15, 552:23, 573:14, 577:8, 577:15, 577:24, 578:3, 578:6, 585:17, 586:13, 587:7, 587:12, 587:17, 587:24, 588:13, 588:22, 597:6, 597:10, 599:4, 599:5, 599:20, 599:23, 612:15, 613:15, 613:16, 613:20, 615:3, 615:20, 619:6, 619:9, 625:18
**odd** [1] - 629:17
**OF** [5] - 513:1, 513:3, 513:10, 513:15, 513:22
**off-screen** [1] - 627:16
**offense** [2] - 531:7, 569:4
**offer** [18] - 565:7, 582:12, 584:8, 584:9, 584:12, 584:15, 587:21, 588:17, 589:1, 589:20, 590:6, 590:17, 590:21, 591:9, 591:12, 617:15, 617:24, 618:4
**offered** [10] - 532:23, 564:22, 570:9, 570:10, 572:20, 606:3, 606:4, 606:14, 606:24, 623:16
**office** [2] - 581:10, 603:21
**Office** [10] - 540:15, 541:5, 617:6, 617:7, 617:9, 617:16, 617:20, 618:1, 618:4, 633:25
**OFFICE** [1] - 513:15
**Office's** [1] - 617:11
**OFFICES** [1] - 513:22
**official** [3] - 578:5, 591:22, 638:12
**Official** [1] - 514:1

**often** [2] - 524:4, 556:3
**once** [2] - 526:20, 556:5
**one** [50] - 518:3, 526:16, 528:12, 528:14, 529:11, 529:24, 530:10, 530:17, 539:9, 539:25, 544:24, 545:5, 545:25, 546:8, 546:16, 547:10, 547:15, 547:21, 547:23, 549:2, 550:15, 554:17, 554:19, 556:12, 557:17, 565:13, 566:16, 570:19, 573:18, 577:9, 582:8, 593:24, 595:21, 601:6, 601:8, 602:2, 602:4, 605:19, 605:23, 606:8, 607:15, 608:9, 614:17, 618:13, 618:22, 622:10, 631:8, 635:11, 636:7
**one-paragraph** [1] - 547:21
**one-week** [6] - 544:24, 545:25, 547:10, 547:15, 549:2, 577:9
**ongoing** [1] - 586:9
**online** [1] - 623:8
**open** [20] - 516:15, 518:9, 533:4, 539:18, 548:10, 548:12, 558:7, 566:1, 566:25, 567:9, 567:23, 571:22, 580:24, 581:13, 581:16, 594:22, 596:9, 609:20, 621:21, 630:16
**opened** [1] - 560:11
**opening** [3] - 573:22, 594:16, 595:25
**operating** [1] - 592:1
**operative** [2] - 537:1, 562:17
**opinions** [1] - 604:20
**opponent** [1] - 607:6
**opportunity** [1] - 616:18
**opposed** [2] - 584:5, 627:18
**Option** [1] - 538:24
**option** [12] - 532:7, 532:8, 533:1, 533:13,

535:19, 537:15, 537:20, 538:7, 538:16, 539:10, 539:11
**options** [1] - 537:20
**order** [2] - 585:7, 630:25
**ordered** [1] - 594:4
**orders** [1] - 594:2
**organizations** [1] - 604:19
**orient** [1] - 611:24
**original** [1] - 597:9
**otherwise** [5] - 516:14, 576:25, 577:1, 594:1, 636:9
**outreach** [2] - 565:8, 582:17
**outright** [2] - 524:5, 524:16
**outside** [9] - 530:12, 536:25, 555:16, 558:23, 594:11, 605:18, 620:25, 628:20, 631:24
**outstanding** [1] - 604:13
**overall** [2] - 550:3, 610:25
**overlapped** [2] - 554:19, 555:13
**overrule** [1] - 567:20
**overruled** [10] - 530:23, 543:12, 551:6, 552:2, 557:23, 576:16, 621:19, 628:8, 632:3, 633:7
**overrules** [1] - 594:2
**overseeing** [1] - 523:11
**Oversight** [1] - 554:23
**oversight** [2] - 524:10, 600:23
**own** [2] - 516:14, 598:7

# P

**p.m** [8] - 513:7, 518:23, 541:14, 567:16, 571:11, 602:11, 602:16, 637:11
**PAGE** [1] - 515:9
**Page** [7] - 536:10, 584:20, 586:5, 589:7, 593:1, 593:2, 615:25
**page** [23] - 525:7,

525:11, 528:16, 533:9, 540:2, 541:9, 544:9, 576:6, 578:10, 584:23, 586:7, 586:13, 599:10, 604:8, 611:1, 611:3, 611:4, 622:17, 627:3, 627:5, 634:16
**Pages** [1] - 549:12
**pages** [5] - 549:25, 550:3, 550:7, 550:8, 604:19
**papers** [1] - 560:9
**Paragraph** [7] - 517:3, 517:17, 517:19, 517:20, 519:21, 520:10, 520:19
**paragraph** [25] - 519:21, 520:12, 525:16, 528:18, 529:23, 539:16, 541:10, 547:21, 547:23, 574:16, 574:21, 577:20, 578:8, 578:10, 578:17, 579:13, 580:18, 581:5, 581:6, 582:16, 585:20, 586:6, 586:15, 586:20, 616:2
**part** [9] - 525:23, 539:10, 547:25, 556:20, 563:8, 576:16, 591:25, 592:16, 610:7
**participate** [1] - 631:10
**participated** [4] - 522:15, 627:9, 630:20, 630:24
**particular** [3] - 565:15, 568:4, 611:7
**particularly** [2] - 531:16, 532:20
**parties** [5] - 546:13, 567:3, 601:9, 602:23, 636:13
**parties'** [1] - 572:24
**partisan** [2] - 600:25, 601:13
**party** [5] - 601:9, 607:6, 608:3, 608:19
**passed** [1] - 619:1
**past** [3] - 524:13, 524:19, 600:9
**pasted** [1] - 624:19
**paths** [2] - 555:17, 600:7
**pen** [1] - 520:15

**people** [6] - 527:19, 557:11, 563:20, 578:13, 604:11, 607:16
**people's** [1] - 607:19
**percent** [1] - 518:14
**perfectly** [2] - 562:3, 563:5
**perhaps** [6] - 572:19, 572:20, 573:8, 582:6, 636:15, 636:16
**permission** [3] - 591:20, 612:6, 616:12
**permitted** [1] - 621:5
**person** [6] - 523:24, 527:21, 541:15, 555:10, 581:9, 632:22
**personal** [6] - 522:8, 543:9, 554:5, 554:8, 587:6, 600:12
**personally** [3] - 550:21, 550:25, 557:5
**perspective** [1] - 525:9
**persuade** [1] - 630:25
**phones** [1] - 605:15
**photograph** [3] - 610:7, 610:9, 611:13
**phrase** [1] - 534:10
**phrasing** [1] - 544:23
**pick** [3] - 581:25, 605:15, 636:10
**picked** [1] - 542:25
**picture** [5] - 611:18, 614:1, 621:16, 623:14, 623:15
**place** [8] - 540:5, 556:8, 574:22, 575:10, 586:17, 592:20, 627:11, 633:14
**places** [1] - 603:4
**Plaintiff** [1] - 513:4
**plan** [1] - 636:10
**platform** [1] - 604:18
**play** [4] - 550:21, 561:18, 561:23, 578:19
**podcast** [2] - 546:13, 611:5
**podium** [1] - 583:3
**point** [16] - 516:5, 527:4, 531:4, 532:12, 532:16, 534:7, 552:14, 552:15, 555:10, 556:16, 557:1, 591:5, 599:23, 608:10, 619:11
**points** [5] - 518:10,

530:15, 531:15, 572:10, 574:7
**political** [4] - 557:18, 601:9, 601:13
**politics** [1] - 558:4
**popped** [1] - 624:14
**portable** [2] - 582:7, 582:8
**portion** [2] - 551:25, 630:17
**portions** [1] - 533:20
**position** [14] - 517:10, 525:15, 533:16, 545:14, 546:3, 546:5, 559:4, 571:5, 578:9, 585:23, 592:6, 595:1, 599:19, 599:21
**positions** [4] - 532:22, 537:11, 572:24, 601:4
**possibility** [5] - 518:10, 528:18, 552:18, 587:4, 623:4
**possible** [6] - 517:5, 517:7, 521:24, 522:5, 522:15, 631:1
**possibly** [2] - 546:11, 608:2
**post** [15] - 551:18, 604:11, 605:8, 607:4, 607:13, 607:16, 610:7, 610:22, 611:7, 611:8, 611:17, 612:14, 612:19, 613:14, 613:21
**posted** [7] - 606:7, 606:10, 606:11, 607:17, 607:19, 611:9, 627:2
**posting** [7] - 612:2, 612:16, 613:15, 613:20, 613:22, 615:3, 625:11
**postings** [1] - 627:6
**posts** [2] - 606:10, 622:9
**potential** [5] - 516:7, 546:15, 568:13, 573:17, 629:18, 632:11, 633:12
**potentially** [3] - 516:19, 542:2, 593:12
**powers** [1] - 516:15
**practice** [3] - 522:6, 522:7, 522:8
**Pratt** [1] - 513:20
**precedes** [1] - 560:1
**precise** [2] - 553:7, 625:7

**precisely** [1] - 575:13
**predominantly** [1] - 611:4
**prefer** [1] - 582:7
**prefers** [2] - 578:15, 584:24
**prejudging** [1] - 637:3
**prejudicial** [3] - 606:14, 606:18, 607:24
**premise** [2] - 545:9, 546:19
**prepare** [1] - 552:5
**preparing** [1] - 520:5
**presence** [7] - 530:12, 536:25, 558:23, 594:11, 605:18, 620:25, 628:20
**present** [3] - 540:19, 621:16, 637:4
**presented** [7] - 516:11, 516:22, 518:7, 518:12, 520:4, 537:16, 567:5
**presents** [1] - 560:17
**preserve** [2] - 593:10, 593:23
**preserved** [2] - 534:20, 609:16
**President** [34] - 530:1, 530:7, 530:22, 531:1, 533:14, 533:25, 534:4, 534:5, 534:12, 538:2, 538:5, 538:12, 539:12, 570:21, 572:4, 572:12, 574:9, 574:17, 574:21, 575:4, 575:15, 577:10, 577:22, 578:8, 578:11, 578:19, 580:14, 580:25, 591:21, 591:22, 592:3, 596:15, 614:8, 616:7
**president** [8] - 535:4, 535:7, 546:15, 546:17, 560:25, 574:12, 574:17, 590:3
**president's** [1] - 589:10
**presidential** [1] - 546:15
**presides** [1] - 596:11
**presumption** [1] - 534:5
**previous** [1] - 614:14

**PREVIOUSLY** [1] - 519:8
**previously** [2] - 537:5, 581:2
**primarily** [1] - 627:21
**private** [3] - 546:12, 547:2, 547:4
**privilege** [78] - 525:18, 530:1, 530:8, 531:20, 531:24, 533:14, 534:2, 534:6, 534:14, 535:5, 535:6, 535:12, 535:17, 535:21, 536:6, 537:23, 538:2, 538:4, 538:11, 538:13, 539:5, 539:13, 545:8, 545:13, 545:22, 546:7, 546:11, 546:18, 546:19, 546:24, 547:6, 560:13, 560:20, 560:22, 560:24, 562:13, 565:1, 568:18, 569:17, 569:20, 570:13, 570:15, 570:16, 570:22, 573:9, 573:10, 574:19, 574:23, 575:5, 575:16, 576:23, 577:24, 578:13, 585:21, 586:8, 587:8, 587:13, 589:10, 593:10, 593:11, 593:14, 593:18, 593:23, 595:2, 595:3, 595:21, 595:22, 595:25, 596:6, 599:16, 599:20, 620:2, 635:19, 635:21, 635:22
**privileges** [4] - 535:10, 546:16, 586:1, 592:21
**problem** [1] - 607:8
**procedural** [1] - 565:13
**procedure** [1] - 593:17
**procedures** [4] - 535:8, 540:11, 587:2, 592:20
**proceed** [4] - 542:4, 569:25, 593:24, 602:12
**proceeding** [9] - 524:18, 541:24, 551:9, 551:11, 551:14, 551:16,

551:19, 577:16, 588:25
**Proceedings** [1] - 637:12
**proceedings** [26] - 518:23, 530:11, 533:3, 536:24, 538:17, 539:17, 558:22, 566:24, 567:16, 567:18, 571:11, 571:13, 594:10, 596:8, 596:12, 602:11, 602:16, 603:6, 605:17, 609:19, 620:24, 621:20, 628:19, 630:15, 637:11, 638:6
**process** [17] - 523:3, 528:10, 528:20, 537:24, 540:5, 540:6, 543:14, 543:21, 547:19, 550:16, 551:4, 562:25, 565:9, 582:20, 605:4, 619:19, 619:21
**produce** [8] - 526:4, 526:5, 562:18, 575:7, 586:10, 586:11, 613:18, 613:19
**produced** [5] - 581:7, 581:17, 597:6, 597:24, 638:6
**producing** [1] - 580:20
**production** [4] - 552:15, 558:16, 577:25, 581:8
**proffer** [6] - 518:1, 561:20, 561:23, 605:23, 606:4, 628:6
**proffered** [1] - 606:1
**proffering** [2] - 563:10, 563:13
**prohibit** [1] - 568:6
**promise** [1] - 575:19
**properly** [1] - 595:3
**proponent** [2] - 606:24, 607:1
**proposed** [1] - 568:24
**prosecute** [1] - 617:9
**prosecution** [3] - 528:22, 529:13, 560:5, 587:19, 588:11, 588:13, 588:21, 590:10
**prosecutor** [7] - 555:10, 555:14, 555:15, 555:21,

628:12, 633:10, 635:15

**prosecutors** [4] - 554:17, 554:19, 628:3, 630:21

**protect** [4] - 592:22, 595:9, 595:18, 595:21

**protectable** [1] - 595:22

**prove** [1] - 562:5

**proves** [1] - 563:6

**provide** [20] - 523:19, 534:8, 534:9, 541:22, 542:8, 542:10, 542:20, 544:21, 562:13, 574:18, 577:18, 580:22, 584:9, 586:2, 587:9, 587:14, 593:17, 597:18, 632:11, 635:7

**provided** [17] - 517:16, 517:23, 519:24, 520:1, 520:8, 520:12, 520:16, 526:10, 560:16, 575:14, 577:22, 578:9, 584:11, 584:13, 619:12, 619:17, 629:4

**provides** [2] - 564:22, 597:20

**providing** [13] - 535:10, 541:18, 542:17, 543:5, 545:3, 558:8, 558:12, 566:1, 566:2, 577:15, 619:23, 630:25

**provision** [2] - 566:6, 571:23

**public** [13] - 533:6, 539:20, 566:21, 567:1, 578:16, 578:20, 584:25, 588:25, 603:20, 604:1, 607:6, 608:15, 621:22

**publicly** [1] - 588:24

**publish** [4] - 519:13, 605:12, 613:4, 615:9

**published** [5] - 609:23, 609:25, 615:12, 623:23, 626:10

**pull** [1] - 622:11

**pulled** [1] - 624:9

**punch** [1] - 571:2

**pure** [1] - 565:24

**purported** [1] - 586:8

**purportedly** [1] -

---

621:7

**purpose** [2] - 573:3, 594:15

**purposes** [12] - 519:12, 549:11, 549:21, 563:18, 572:2, 573:18, 575:23, 576:6, 579:4, 623:6, 625:15, 633:23

**pursuant** [1] - 581:14

**pursue** [3] - 538:21, 564:10

**pursued** [1] - 530:16

**pursuing** [1] - 529:12

**put** [10] - 561:22, 563:17, 564:4, 564:9, 582:6, 604:20, 606:16, 606:17, 609:2, 623:3

**puts** [1] - 608:15

**putting** [2] - 527:11, 578:1

---

**Q**

**questioning** [1] - 631:19

**questions** [39] - 516:9, 516:11, 517:2, 530:17, 532:25, 536:9, 538:4, 539:7, 559:6, 562:2, 565:20, 567:21, 568:7, 568:16, 569:14, 573:3, 573:9, 576:20, 585:2, 586:18, 592:11, 595:7, 595:21, 595:25, 596:17, 597:4, 598:1, 598:4, 598:23, 598:25, 600:3, 600:20, 601:18, 609:11, 609:13, 622:6, 627:19, 631:17, 634:12

**quickly** [1] - 616:13

**quite** [2] - 600:10, 608:2

**quote** [8] - 586:1, 586:2, 615:22, 615:23, 616:2, 616:9, 634:17, 634:23

**quoted** [1] - 609:6

**quoting** [2] - 609:10, 612:23

---

**R**

**raise** [1] - 516:15

**raised** [7] - 516:5, 526:21, 532:5, 552:16, 552:17, 566:4, 635:18

**raises** [1] - 529:24

**raising** [3] - 527:15, 533:21, 546:24

**rather** [3] - 528:22, 529:12, 608:7

**RDR** [3] - 514:1, 638:3, 638:12

**reach** [10] - 524:3, 529:25, 530:7, 531:1, 533:13, 533:25, 574:22, 575:9, 598:14, 598:19

**reached** [3] - 530:21, 546:11, 617:5

**reaching** [1] - 575:11

**read** [19] - 519:21, 533:20, 534:7, 544:16, 556:8, 557:4, 572:8, 579:13, 582:16, 584:21, 586:6, 586:14, 586:20, 593:7, 593:21, 596:2, 616:4, 625:22

**reader** [1] - 525:12

**reading** [1] - 557:9

**reads** [3] - 557:7, 581:7, 626:15

**ready** [1] - 601:25, 602:12

**real** [1] - 621:17

**really** [5] - 522:10, 538:6, 553:24, 565:24, 606:6

**reason** [10] - 518:16, 535:3, 545:5, 561:21, 564:20, 564:21, 566:18, 619:22, 620:1, 620:5

**reasonably** [1] - 606:25

**reasoning** [2] - 537:14, 568:22

**reasons** [10] - 516:9, 518:8, 534:18, 542:7, 559:24, 570:20, 598:9, 606:13, 621:7, 628:12

**recalling** [1] - 613:16

**receipt** [2] - 579:14, 580:24

**receive** [3] - 524:15,

---

597:13, 597:16

**RECEIVED** [1] - 515:9

**received** [6] - 525:2, 526:20, 527:4, 535:6, 574:14, 574:18

**receiving** [2] - 548:10, 548:12

**recent** [2] - 522:16, 567:24

**recess** [7] - 566:18, 566:22, 567:4, 567:8, 567:17, 602:3, 636:6

**recipient** [7] - 521:18, 521:23, 522:12, 523:1, 523:8, 523:10, 535:11

**recipients** [3] - 521:11, 522:4, 523:15

**recognize** [2] - 517:10, 614:11

**recollection** [2] - 557:24, 618:15

**recommendations** [2] - 543:16, 543:18

**recommending** [7] - 540:14, 548:23, 549:24, 550:12, 551:20, 552:22, 588:12

**record** [11] - 516:2, 518:25, 526:19, 533:6, 537:8, 539:20, 566:21, 567:2, 567:9, 567:19, 621:22

**records** [2] - 586:11, 590:3

**RECROSS** [1] - 635:13

**recross** [1] - 594:17

**RECROSS-EXAMINATION** [1] - 635:13

**red** [1] - 610:14

**Red** [1] - 515:3

**redirect** [4] - 533:23, 534:10, 581:21, 634:8

**REDIRECT** [2] - 581:23, 634:10

**refer** [5] - 531:5, 549:3, 588:10, 588:21, 633:25

**reference** [4] - 563:1, 575:11, 577:16, 607:22

**referenced** [2] - 520:10, 529:10

**references** [1] - 580:15

**referencing** [1] -

---

578:2

**referral** [3] - 582:21, 587:3, 587:19

**referred** [3] - 540:15, 590:9, 597:5

**referring** [3] - 540:18, 541:4, 544:24

**refers** [1] - 528:18

**reflecting** [1] - 580:23

**refrain** [1] - 612:23

**refresh** [1] - 618:14

**refusal** [1] - 586:3

**refuse** [4] - 587:9, 593:9, 593:13, 593:14

**refused** [2] - 520:11, 593:22

**regard** [5] - 541:3, 541:9, 578:6, 580:12, 595:19

**regarding** [6] - 542:8, 599:19, 604:1, 617:7, 619:13, 619:19

**regardless** [3] - 531:9, 586:8, 592:6

**regulation** [3] - 517:4, 517:11, 517:18

**regulations** [5] - 519:17, 519:25, 593:4, 593:5, 593:17

**reiterated** [1] - 599:21

**rejected** [6] - 531:17, 532:5, 532:14, 537:9, 547:10, 560:14

**rejecting** [2] - 532:23, 547:15

**rejection** [1] - 569:22

**relate** [3] - 538:4, 602:8, 613:17

**related** [3] - 617:10, 620:1, 625:25

**relates** [1] - 557:21

**relating** [6] - 516:9, 535:17, 541:11, 546:6, 546:13, 577:14

**relation** [1] - 591:11

**relationship** [1] - 600:12

**released** [1] - 562:14

**relevance** [16] - 528:23, 530:9, 531:25, 536:22, 540:24, 541:6, 543:11, 550:14, 551:5, 552:1, 555:7, 558:19, 586:3, 628:7, 633:15, 634:2

**relevant** [28] - 516:8, 517:3, 517:15, 531:8,

532:20, 533:20,
537:6, 539:2, 539:3,
548:13, 556:20,
558:10, 560:2, 560:8,
561:21, 563:20,
568:5, 570:19,
570:20, 573:14,
576:24, 581:3,
583:24, 607:7,
628:21, 628:25,
629:2, 632:11
  **relied** [1] - 621:5
  **rely** [2] - 560:10,
585:21
  **remember** [8] -
529:7, 552:17,
554:10, 556:1, 598:4,
600:7, 624:6, 634:14
  **remind** [2] - 618:9,
619:4
  **Removes** [1] -
595:11
  **rendering** [1] -
614:10
  **repeat** [3] - 556:23,
580:5, 632:4
  **repeatedly** [1] -
546:9
  **rephrase** [2] - 530:5,
575:12
  **replied** [1] - 599:19
  **reply** [3] - 533:17,
534:8, 535:15
  **report** [13] - 549:7,
549:23, 549:25,
550:11, 550:16,
550:23, 551:17,
551:18, 551:20,
551:25, 552:5,
552:10, 552:21
  **reported** [1] - 553:22
  **REPORTED** [1] -
514:1
  **REPORTER** [2] -
575:24, 630:1
  **reporter** [1] - 629:23
  **Reporter** [2] - 514:1,
638:12
  **reports** [1] - 553:11
  **reposted** [1] - 627:2
  **representation** [1] -
598:10
  **representative** [1] -
534:13
  **Representative** [3] -
544:10, 548:4, 557:1
  **representatives** [1] -
620:5
  **Representatives** [2]
- 540:18, 548:17

  **representing** [2] -
528:4, 617:2
  **Republican** [4] -
553:10, 553:21,
601:2, 601:10
  **Republicans** [1] -
553:15
  **request** [9] - 525:13,
545:25, 546:3,
547:10, 569:6, 577:9,
585:7, 585:24, 599:13
  **requested** [3] -
581:7, 581:17, 617:6
  **requesting** [2] -
545:2, 569:9
  **require** [1] - 562:18
  **required** [12] -
516:13, 518:1,
519:23, 526:3,
530:18, 530:23,
531:2, 539:5, 568:15,
583:21, 613:17,
613:19
  **requirement** [1] -
542:22
  **requirements** [2] -
584:17, 606:20
  **requires** [1] - 636:8
  **resolution** [15] -
540:14, 540:23,
541:25, 542:3,
548:16, 548:18,
548:21, 548:23,
549:3, 549:8, 551:13,
552:21, 582:22,
588:5, 588:12
  **Resolution** [1] -
519:25
  **resolve** [2] - 535:20,
536:4, 599:17
  **resolved** [2] -
525:18, 525:19,
537:23, 538:11,
589:13, 589:15,
590:1, 590:2, 598:21,
599:12, 599:15,
599:22
  **resolving** [1] -
538:13
  **respect** [10] - 524:2,
528:5, 542:1, 568:25,
573:21, 575:20,
577:17, 577:24,
580:19, 599:18
  **respectfully** [4] -
545:10, 545:25,
564:11, 570:7
  **respond** [6] - 525:12,
544:14, 544:20,
586:18, 586:23,

599:13
  **responding** [1] -
580:13
  **response** [5] -
527:13, 527:16,
561:3, 561:4, 580:22
  **responsive** [4] -
571:24, 580:21,
580:25, 586:11
  **rest** [1] - 569:25
  **rested** [1] - 636:20
  **restricted** [1] -
535:25
  **rests** [1] - 636:4
  **result** [2] - 587:3,
587:18
  **resume** [1] - 637:2
  **return** [1] - 568:1
  **review** [4] - 528:11,
540:7, 543:14, 543:17
  **reviewed** [6] -
527:23, 543:9,
550:19, 604:23,
607:2, 614:23
  **reviewing** [2] -
550:18, 603:25
  **RIANE** [1] - 513:19
  **rid** [1] - 534:13
  **rights** [4] - 592:22,
595:9, 595:18, 595:19
  **risk** [3] - 532:15,
542:2, 563:22
  **Road** [1] - 513:23
  **Robert** [8] - 529:20,
544:9, 566:15, 576:7,
579:7, 614:15,
616:18, 630:22
  **role** [2] - 523:5,
527:10, 550:21
  **Rolling** [4] - 608:22,
623:8, 623:10, 623:14
  **rollingstone.com** [2]
- 611:20, 624:12
  **Room** [2] - 514:3,
611:5
  **roughly** [2] - 550:3,
602:3
  **Rule** [4] - 516:13,
516:20, 516:24,
606:23
  **rule** [3] - 517:8,
517:11, 594:14
  **ruled** [1] - 589:17
  **Rules** [3] - 516:7,
559:14, 607:12
  **rules** [2] - 516:14,
594:18
  **ruling** [1] - 593:25
  **rulings** [1] - 570:12
  **runs** [1] - 563:22

**S**

  **safe** [1] - 517:13
  **sake** [1] - 567:6
  **satisfied** [1] - 608:1
  **saw** [6] - 527:15,
544:7, 563:14,
612:19, 615:6, 626:2
  **scan** [1] - 549:21
  **schedule** [3] -
541:24, 566:20, 602:8
  **scheduling** [4] -
556:9, 598:11, 602:4,
636:7
  **SCHOEN** [33] -
513:22, 513:22,
559:16, 559:18,
559:21, 561:9,
561:12, 562:3,
562:10, 562:20,
563:13, 563:25,
564:6, 570:4, 570:24,
571:3, 571:5, 571:8,
594:25, 604:12,
604:15, 605:14,
605:16, 605:22,
607:9, 607:11, 608:8,
609:14, 609:18,
620:21, 620:23,
621:2, 621:12
  **Schoen** [11] - 516:5,
516:17, 518:10,
559:17, 561:7,
564:21, 566:13,
569:15, 570:3,
609:17, 613:8
  **scope** [8] - 548:13,
631:12, 631:14,
631:23, 631:24,
632:1, 633:16, 634:2
  **screen** [2] - 616:5,
627:13, 627:16
  **screenshot** [3] -
604:7, 607:3, 610:4
  **seal** [2] - 558:25,
630:17
  **sealed** [1] - 530:13
  **second** [21] - 516:11,
516:18, 518:11,
528:25, 529:10,
529:23, 533:9,
535:19, 538:15,
541:9, 544:9, 547:25,
564:25, 569:1, 573:5,
573:19, 574:16,
582:16, 584:22,
599:10, 634:16
  **second-to-the-last**
[2] - 529:10, 529:23

  **section** [1] - 520:3
  **Section** [3] - 519:24,
520:2, 520:9
  **Sections** [2] -
540:11, 587:2
  **see** [1] - 531:25,
532:2, 544:6, 549:22,
566:19, 575:10,
610:4, 610:9, 610:25,
618:19, 627:14
  **seek** [2] - 593:25,
594:21
  **seeking** [2] - 546:10,
565:7
  **Select** [50] - 521:7,
521:23, 522:13,
523:24, 527:16,
527:19, 528:21,
529:6, 529:11, 535:5,
541:13, 542:9, 543:6,
543:8, 543:24,
545:11, 545:13,
546:5, 546:8, 546:10,
546:19, 547:22,
548:12, 549:3, 575:7,
575:17, 576:9,
579:16, 580:15,
580:19, 580:21,
580:24, 581:3,
582:18, 582:20,
583:12, 585:25,
586:10, 586:16,
586:19, 586:22,
586:25, 590:2,
601:11, 611:25,
612:16, 613:23,
624:25, 625:9, 626:16
  **self** [1] - 606:12
  **self-authenticating**
[1] - 606:12
  **Senate** [1] - 554:1
  **send** [6] - 548:21,
587:23, 596:20,
596:23, 597:1, 617:15
  **sense** [2] - 523:11,
538:9
  **sent** [12] - 541:23,
549:23, 550:12,
566:8, 570:21, 582:4,
582:12, 596:23,
597:1, 597:2, 597:3,
617:19
  **sentence** [10] -
528:13, 529:10,
577:6, 580:12,
580:23, 581:6,
581:12, 582:15,
584:22, 586:14
  **sentences** [1] -
581:6

**separate** [2] - 529:24, 592:18
**separation** [1] - 516:15
**separation-of-powers** [1] - 516:15
**September** [12] - 548:7, 563:2, 572:5, 574:14, 581:14, 583:20, 610:23, 611:7, 612:1, 618:12, 618:22, 623:8
**serious** [1] - 542:1
**service** [4] - 612:4, 618:10, 618:11, 618:21
**SESSION** [1] - 513:5
**set** [7] - 529:18, 540:11, 542:14, 542:17, 567:24, 598:2, 620:18
**setting** [1] - 542:12
**settings** [1] - 631:3
**several** [8] - 531:15, 546:23, 553:19, 597:4, 598:1, 598:23, 600:3, 600:20
**shall** [2] - 519:23, 594:4
**shared** [1] - 526:24
**short** [1] - 537:23
**show** [13] - 532:13, 562:18, 564:23, 569:16, 587:9, 598:7, 607:12, 610:15, 618:14, 618:16, 621:13, 623:5, 625:14
**showed** [1] - 592:25
**showing** [10] - 576:5, 584:20, 585:14, 589:6, 593:1, 599:3, 604:3, 607:14, 612:11, 614:25
**shown** [1] - 622:17
**shows** [5] - 569:23, 593:4, 625:12, 627:17, 635:7
**sidebar** [14] - 530:10, 530:12, 536:23, 536:25, 558:20, 558:21, 558:23, 594:8, 594:11, 605:18, 620:22, 620:25, 628:18, 628:20
**sign** [4] - 527:24, 544:6, 544:7, 610:17
**signature** [5] - 527:13, 540:7, 543:19, 547:14, 548:2

**signed** [3] - 528:3, 544:1, 596:22
**significant** [2] - 563:8, 568:13
**signing** [1] - 544:6
**silent** [1] - 607:15
**SILVERMAN** [1] - 513:19
**similar** [4] - 550:17, 604:10, 623:17, 630:24
**simply** [6] - 532:6, 606:11, 607:19, 608:22, 609:2, 627:2
**single** [4] - 542:20, 550:8, 550:22, 552:10
**single-spaced** [3] - 550:8, 550:22, 552:10
**sit** [2] - 528:25, 592:14
**site** [1] - 609:2
**sitting** [4] - 552:3, 552:9, 553:3, 584:14
**situation** [1] - 607:16
**six** [1] - 589:24
**skewed** [1] - 621:16
**slightly** [2] - 520:7, 521:21
**SLUTKIN** [1] - 513:19
**small** [1] - 614:10
**social** [3] - 604:10, 604:18, 608:16
**solid** [1] - 565:2
**solidly** [1] - 616:7
**someone** [6] - 563:10, 585:1, 608:7, 622:23, 624:20, 625:6
**sometime** [1] - 552:11
**sometimes** [6] - 598:2, 598:9, 598:11, 601:1, 628:6, 631:4
**somewhat** [1] - 605:5
**soon** [1] - 581:8
**sorry** [15] - 526:16, 527:7, 552:21, 575:24, 578:23, 579:20, 579:23, 581:5, 583:1, 596:25, 613:2, 614:18, 625:17, 632:5, 634:20
**sort** [1] - 606:1
**sought** [1] - 585:24
**sound** [2] - 537:7, 582:24
**sounds** [1] - 549:9
**source** [1] - 606:6
**spaced** [3] - 550:8,

550:22, 552:10
**speaking** [6] - 540:16, 543:3, 556:7, 575:13, 577:12, 615:2
**special** [1] - 603:18
**Special** [5] - 602:20, 614:4, 614:23, 615:19, 616:4
**specific** [6] - 526:23, 527:3, 543:23, 544:2, 565:4, 598:12
**specifically** [7] - 522:24, 540:10, 551:7, 552:4, 552:17, 554:11, 593:6
**speculation** [1] - 547:7
**speed** [1] - 534:24
**spell** [1] - 603:14
**spelled** [1] - 542:19
**spend** [2] - 555:15, 557:11
**squarely** [1] - 537:16
**staff** [17] - 521:25, 522:9, 523:3, 527:23, 528:11, 543:16, 543:17, 553:9, 554:2, 554:14, 554:20, 554:22, 555:5, 555:13, 556:12, 593:23, 596:18
**staffers** [1] - 547:22
**staffs** [1] - 553:18
**stage** [1] - 529:18
**stand** [6] - 602:21, 603:4, 614:20, 615:22, 616:9, 635:3
**start** [2] - 549:13, 552:24, 558:2, 558:24, 571:16, 591:11, 636:8, 636:10
**started** [2] - 552:9, 552:21
**starting** [2] - 595:20, 636:12
**state** [3] - 561:18, 619:12, 625:20
**statement** [8] - 607:5, 607:21, 608:20, 611:9, 612:15, 622:25, 624:3, 635:16
**statements** [7] - 573:22, 604:1, 604:20, 607:6, 608:4, 608:6, 609:5
**STATES** [4] - 513:1, 513:3, 513:11, 513:15
**states** [5] - 536:11, 548:5, 574:17,

574:21, 578:11
**States** [8] - 514:2, 587:2, 617:5, 617:11, 617:15, 618:1, 618:3, 638:13
**status** [1] - 617:8
**statutes** [1] - 540:12
**stay** [1] - 567:7
**steadfast** [1] - 577:21
**stenographic** [1] - 638:5
**step** [1] - 542:1
**STEPHEN** [3] - 513:6, 603:10, 603:15
**Stephen** [10] - 515:7, 548:6, 574:10, 578:13, 579:15, 581:13, 602:20, 603:15, 603:22, 633:25
**Steve** [42] - 520:1, 520:8, 520:15, 525:3, 525:12, 525:17, 533:10, 539:24, 540:14, 544:17, 548:3, 550:13, 551:21, 552:22, 558:8, 558:15, 571:23, 604:7, 607:13, 607:21, 608:13, 608:16, 608:19, 612:14, 612:16, 613:22, 614:6, 614:20, 615:22, 616:6, 622:14, 622:21, 624:5, 624:6, 624:24, 625:3, 625:8, 626:15, 627:10, 635:16
**SteveBannon** [1] - 610:21
**sticks** [1] - 560:7
**still** [3] - 558:8, 559:14, 560:4
**stir** [2] - 606:11, 607:19
**Stone** [4] - 608:22, 623:8, 623:10, 623:14
**stood** [2] - 616:7, 635:16
**story** [1] - 621:17
**straight** [1] - 570:12
**strategist** [1] - 616:6
**Street** [2] - 513:16, 513:20
**structure** [1] - 553:18
**structured** [1] - 521:25

**subject** [5] - 522:2, 542:3, 546:22, 574:13, 580:3
**submission** [1] - 617:22
**submit** [1] - 541:13
**submitted** [1] - 563:5
**subpoena** [103] - 517:18, 521:11, 521:17, 521:23, 522:12, 522:17, 522:25, 523:8, 523:10, 523:17, 523:24, 524:1, 524:16, 525:8, 525:10, 526:2, 526:3, 526:8, 530:18, 530:19, 531:3, 535:9, 536:21, 541:12, 548:7, 548:11, 552:23, 558:17, 562:12, 562:14, 562:17, 562:22, 565:9, 566:11, 566:14, 566:16, 567:25, 568:18, 568:21, 571:24, 572:6, 573:5, 573:11, 573:13, 574:13, 574:18, 576:20, 576:25, 577:13, 578:7, 578:14, 579:16, 580:16, 581:15, 582:21, 582:22, 583:18, 583:19, 583:22, 585:4, 585:7, 585:12, 586:4, 586:12, 586:18, 586:23, 586:24, 586:25, 587:5, 588:6, 588:18, 590:6, 590:18, 591:20, 597:9, 598:13, 603:23, 604:1, 608:20, 611:9, 611:25, 612:17, 613:16, 613:17, 613:19, 613:24, 615:24, 617:18, 618:10, 618:11, 618:21, 619:1, 619:5, 619:9, 619:19, 620:7, 622:19, 622:25, 623:11, 624:3, 625:1, 625:10, 626:17
**subpoena's** [3] - 542:22, 552:12, 584:16
**subpoenas** [7] - 521:7, 522:5, 522:19,

522:20, 522:22,
523:16, 524:11
**subsequent** [2] -
593:25, 599:21
**subset** [2] - 539:10,
602:24
**substitutes** [1] -
595:24
**sudden** [6] - 582:12,
584:8, 584:12,
589:20, 591:9, 591:12
**suggest** [6] - 531:5,
559:10, 620:7, 620:9,
620:12, 620:15
**suggested** [2] -
539:6, 636:7
**suggesting** [7] -
526:10, 530:25,
559:5, 569:15,
622:13, 625:2, 625:4
**suggestion** [1] -
544:23
**suggests** [4] -
529:25, 565:5, 595:9,
595:18
**Suite** [2] - 513:20,
513:23
**supervises** [2] -
521:14, 522:21
**support** [2] - 601:5,
601:7
**suppose** [2] - 517:5,
636:12
**Supreme** [2] -
589:17, 589:22
**sustained** [8] -
520:20, 539:15,
541:7, 547:8, 555:8,
557:15, 632:19, 634:3
**SWORN** [2] - 519:8,
603:10
**symbol** [1] - 610:15
**system** [1] - 582:24

---

**T**

---

**table** [2] - 536:4,
560:7
**tasks** [1] - 522:9
**telephone** [1] - 594:1
**ten** [2] - 567:8,
636:20
**ten-minute** [1] -
567:8
**tend** [1] - 562:7
**tendering** [1] -
549:19
**Tenders** [1] - 520:23
**tenders** [1] - 561:16

**term** [7] - 578:5,
629:7, 629:8, 629:9,
630:3, 630:4, 630:6
**terminology** [1] -
629:21
**terms** [5] - 562:21,
573:24, 575:3, 605:3,
627:1
**testified** [25] - 521:6,
524:7, 525:2, 525:25,
526:5, 529:5, 531:14,
532:3, 536:11, 537:5,
537:9, 537:21,
538:10, 538:18,
540:9, 540:12,
546:25, 547:2, 558:7,
582:23, 583:13,
589:9, 600:21, 608:2,
629:3
**testify** [15] - 519:23,
532:21, 534:1,
534:14, 536:20,
538:22, 563:11,
563:17, 574:18,
574:24, 575:6,
575:16, 578:16,
578:20, 584:25
**testifying** [1] -
531:18
**testimony** [34] -
523:20, 525:13,
529:7, 529:12,
531:22, 542:13,
544:18, 546:4,
548:11, 548:13,
552:24, 553:13,
558:9, 558:10,
558:11, 558:16,
566:2, 566:6, 571:21,
574:23, 575:10,
575:20, 577:25,
581:4, 585:24,
599:14, 600:18,
601:21, 619:23,
621:10, 624:7, 627:1,
636:2
**text** [4] - 549:25,
550:3, 550:7, 564:8
**THE** [188] - 513:1,
513:10, 513:14,
513:15, 513:18,
515:5, 516:1, 516:3,
517:20, 517:22,
518:3, 518:20,
518:24, 519:1, 519:7,
519:15, 520:20,
521:2, 528:24,
530:10, 530:13,
531:12, 532:19,
533:5, 534:15,

534:20, 534:24,
535:2, 535:24, 536:3,
536:16, 536:23,
537:3, 537:18,
537:25, 538:25,
539:8, 539:19,
540:25, 541:1, 541:7,
543:12, 543:13,
547:8, 549:16,
550:15, 550:16,
551:6, 551:7, 552:2,
552:3, 555:8, 556:21,
557:15, 557:22,
557:24, 558:21,
558:24, 559:17,
559:20, 561:7,
561:11, 561:15,
561:17, 562:6,
562:16, 563:10,
563:19, 564:3,
564:12, 565:11,
565:17, 566:17,
567:1, 567:14,
567:19, 567:20,
569:9, 569:12, 570:2,
570:23, 571:1, 571:4,
571:7, 571:9, 571:14,
572:18, 574:3,
575:24, 576:1,
576:16, 578:24,
579:21, 579:24,
580:1, 580:10,
581:20, 582:5,
582:25, 583:2, 583:4,
583:6, 594:9, 594:12,
594:24, 595:6,
595:14, 595:20,
596:3, 601:19,
601:22, 601:24,
602:2, 602:8, 602:12,
602:14, 602:17,
602:25, 603:3, 603:7,
603:8, 603:9, 604:14,
604:16, 604:18,
605:15, 605:19,
606:21, 607:10,
607:25, 608:11,
608:24, 609:3,
609:16, 609:24,
612:8, 612:22,
612:25, 613:1, 613:2,
613:5, 613:8, 615:11,
616:14, 620:22,
621:1, 621:9, 621:18,
621:22, 621:24,
623:22, 625:21,
626:9, 627:25, 628:8,
628:9, 628:18,
628:25, 629:7, 629:9,
629:12, 629:25,
630:1, 630:2, 630:10,

630:17, 631:14,
631:17, 631:25,
632:4, 632:18, 633:6,
633:17, 633:21,
634:3, 634:7, 634:18,
634:21, 635:12,
635:25, 636:1, 636:2,
636:5, 636:22,
636:25, 637:6, 637:8,
637:9
**themselves** [1] -
564:6
**theoretically** [1] -
552:16
**theory** [4] - 563:18,
564:11, 569:3, 570:25
**thereby** [1] - 594:2
**therefore** [4] -
518:13, 560:5,
570:17, 574:22
**Thereupon** [3] -
567:17, 571:12, 603:5
**they've** [2] - 601:3,
612:23
**third** [6] - 538:18,
574:21, 577:19,
580:2, 580:18, 586:13
**THOMPSON** [1] -
513:19
**Thompson** [56] -
526:22, 527:14,
527:24, 528:2, 528:3,
528:9, 529:19, 530:4,
530:6, 531:17, 532:8,
533:1, 533:11,
533:12, 533:24,
534:12, 535:20,
536:14, 536:19,
537:16, 537:22,
538:1, 538:16,
539:24, 540:2,
541:23, 542:6,
542:14, 542:25,
543:2, 543:5, 544:5,
544:11, 545:20,
547:15, 548:2, 548:5,
548:10, 562:11,
562:15, 566:15,
571:22, 576:9, 577:7,
578:2, 578:11,
578:18, 579:6,
579:12, 579:17,
580:13, 580:19,
580:23, 581:12,
585:17, 589:8
**Thompson's** [3] -
533:16, 534:7, 535:15
**thoughts** [1] -
545:16
**three** [4] - 530:19,

536:11, 540:2, 543:4
**three-day** [1] - 543:4
**three-page** [1] -
540:2
**throughout** [2] -
553:22, 619:20
**tight** [1] - 568:8
**time-limited** [1] -
583:14
**timeline** [2] - 612:7,
616:13
**timing** [1] - 523:13
**title** [5] - 608:22,
609:7, 609:8, 611:19,
624:18
**titled** [2] - 589:7,
612:15
**today** [15] - 550:2,
552:3, 552:9, 553:3,
561:14, 562:21,
572:8, 572:25,
573:19, 578:7,
580:21, 581:2,
584:14, 600:18, 636:8
**together** [4] -
527:11, 556:12,
600:6, 606:1
**tomorrow** [1] -
636:10
**tomorrow's** [1] -
602:8
**took** [3] - 532:15,
540:5, 633:14
**tool** [1] - 529:14
**tools** [2] - 529:6,
529:11
**top** [7] - 586:14,
611:16, 613:11,
615:16, 622:18,
624:3, 624:24
**topic** [3] - 518:17,
547:5, 608:18
**topics** [4] - 523:1,
523:9, 557:18, 558:1
**total** [1] - 584:5
**totally** [1] - 563:21
**transcript** [3] -
630:2, 638:5, 638:6
**TRANSCRIPT** [1] -
513:10
**trial** [7] - 518:15,
524:14, 532:1,
568:14, 570:1,
591:11, 591:17
**TRIAL** [1] - 513:10
**tried** [2] - 531:4,
591:6
**tries** [1] - 628:11
**trouble** [1] - 583:1
**true** [3] - 554:11,

638:4, 638:5
**truly** [1] - 569:21
**Trump** [45] - 530:1, 530:7, 530:22, 531:1, 533:14, 533:25, 534:4, 534:6, 534:13, 538:2, 538:5, 538:12, 538:24, 539:12, 545:19, 560:1, 560:16, 562:11, 570:21, 572:4, 572:12, 574:9, 574:17, 574:21, 575:5, 575:15, 577:11, 577:22, 578:9, 578:11, 578:18, 578:19, 586:9, 589:8, 591:21, 591:22, 592:3, 596:15, 614:8, 614:21, 615:23, 616:7, 616:10, 635:3, 635:16
**Trump's** [3] - 580:15, 581:1, 585:25
**trustworthy** [1] - 605:6
**truth** [2] - 570:9, 572:21
**truthful** [1] - 632:14
**truthfully** [1] - 574:24
**try** [13] - 529:12, 529:25, 534:13, 538:13, 558:1, 564:13, 583:6, 583:9, 628:3, 632:21, 633:2, 633:13, 635:5
**trying** [13] - 521:24, 530:4, 530:6, 531:3, 533:13, 533:15, 533:25, 534:10, 534:21, 535:20, 590:4, 625:7, 631:20
**turn** [1] - 583:2
**turns** [1] - 636:13
**Twitter** [1] - 604:10
**two** [20] - 516:9, 518:8, 529:24, 530:15, 530:18, 531:4, 537:20, 537:21, 546:6, 546:17, 546:22, 548:19, 568:14, 572:19, 573:17, 576:6, 581:6, 586:6, 593:24, 597:20
**two-page** [1] - 576:6
**typical** [1] - 629:13
**typically** [1] - 516:12

**U**

**U.S** [9] - 540:15, 541:5, 611:18, 616:9, 617:7, 617:9, 617:20, 627:21, 633:25
**ultimately** [1] - 543:18
**unable** [2] - 525:12, 599:13
**uncommon** [1] - 523:23
**under** [16] - 522:17, 532:14, 554:2, 558:25, 575:17, 585:1, 585:4, 598:6, 605:3, 606:12, 606:23, 608:19, 617:3, 624:24, 630:13, 630:17
**under-seal** [1] - 630:17
**underlying** [1] - 618:7
**underneath** [1] - 627:18
**understood** [4] - 516:25, 631:25, 632:10, 636:22
**unduly** [3] - 606:14, 606:18, 607:24
**united** [1] - 514:2
**United** [7] - 587:2, 617:5, 617:11, 617:15, 618:1, 618:3, 638:13
**UNITED** [4] - 513:1, 513:3, 513:11, 513:15
**unlawful** [1] - 577:1
**unless** [3] - 519:23, 584:13, 607:14
**unnatural** [1] - 607:15
**unusual** [4] - 523:20, 524:5, 524:15, 558:4
**up** [28] - 519:15, 526:16, 527:19, 532:1, 532:2, 534:25, 541:21, 549:10, 554:14, 562:18, 566:12, 571:21, 581:25, 583:23, 587:9, 594:22, 598:8, 604:17, 605:15, 618:4, 619:13, 622:6, 622:11, 624:9, 624:14, 629:18, 636:10, 636:16
**urge** [1] - 548:5

**US-000449** [1] - 541:10
**US-000457** [1] - 547:25
**US-00419** [1] - 525:11
**US-464** [2] - 549:12, 549:13
**USC** [1] - 540:11
**uses** [1] - 605:3

**V**

**valid** [3] - 532:10, 532:16, 569:17
**validates** [1] - 605:5
**variety** [4] - 556:14, 558:1, 594:17, 598:9
**various** [2] - 535:10, 550:1
**VAUGHN** [58] - 513:14, 517:25, 518:19, 520:17, 521:1, 528:23, 530:9, 530:15, 532:9, 534:17, 534:21, 536:15, 536:22, 537:1, 539:1, 540:24, 541:6, 543:11, 547:7, 550:14, 551:5, 552:1, 555:7, 556:19, 557:13, 557:20, 558:19, 559:3, 564:21, 568:12, 569:11, 569:13, 572:13, 572:17, 576:15, 579:18, 579:25, 581:22, 581:24, 582:8, 582:10, 583:1, 583:7, 583:8, 594:5, 594:13, 595:7, 595:13, 595:15, 596:1, 596:10, 600:1, 600:2, 601:16, 602:1, 602:7, 602:13, 636:4
**Vaughn** [16] - 517:24, 528:24, 530:14, 534:15, 536:16, 537:3, 538:25, 559:2, 564:12, 570:2, 581:21, 582:5, 583:6, 594:24, 601:25, 602:12
**Vaughn's** [1] - 595:11
**verified** [2] - 604:25, 605:3, 607:3, 607:4, 608:4, 610:16

**via** [3] - 525:3, 617:6, 617:25
**videoconference** [1] - 617:25
**view** [4] - 516:14, 526:5, 539:9, 586:23
**viewed** [1] - 605:8
**viewing** [1] - 549:11
**views** [1] - 567:9
**violated** [1] - 517:8
**violations** [1] - 516:7
**virtual** [2] - 627:12, 630:21
**voluntarily** [1] - 557:11
**vote** [9] - 540:13, 540:16, 540:17, 540:20, 540:22, 541:3, 548:15, 548:21, 550:12
**voted** [7] - 541:4, 548:17, 549:3, 551:13, 588:10, 588:20, 633:24
**vs** [1] - 513:5

**W**

**wait** [1] - 528:24
**waiting** [1] - 634:19
**waive** [7] - 517:6, 569:6, 574:23, 575:5, 575:16, 576:25, 578:13
**waived** [2] - 516:10, 517:1
**waiver** [3] - 518:13, 539:12, 575:20
**wants** [2] - 568:10, 629:16
**War** [1] - 611:5
**warned** [1] - 587:17
**Washington** [5] - 513:6, 513:17, 514:4, 603:21, 638:14
**Waxman** [4] - 555:2, 555:13, 556:16, 557:2
**WebEx** [1] - 627:12
**website** [4] - 606:5, 606:11, 607:18, 615:3
**websites** [2] - 607:17
**week** [20] - 516:6, 544:12, 544:14, 544:17, 544:24, 545:1, 545:2, 545:5, 545:25, 547:5, 547:10, 547:15, 549:2, 558:14, 558:16, 566:7, 566:9,

577:9, 579:10, 589:23
**week's** [1] - 544:20
**weeks** [2] - 523:16, 523:25
**welcome** [5] - 519:1, 519:3, 558:10, 563:1, 602:17
**welcomes** [1] - 581:3
**whichever** [1] - 582:7
**White** [1] - 616:6
**WHITE** [2] - 513:19, 513:19
**whole** [2] - 551:21, 558:1
**willful** [2] - 586:24
**willing** [7] - 523:19, 561:1, 561:23, 578:15, 578:19, 579:16, 584:24
**willingness** [1] - 536:19
**window** [1] - 543:4
**withdrawing** [1] - 570:22
**withdrawn** [2] - 560:20, 560:25
**withhold** [2] - 587:14, 590:4
**witness** [49] - 519:6, 519:23, 519:24, 524:5, 524:14, 524:18, 524:20, 531:14, 531:19, 532:3, 532:21, 534:17, 534:21, 534:24, 535:24, 537:9, 539:14, 549:15, 549:19, 561:14, 565:15, 565:25, 568:7, 571:9, 571:12, 585:2, 585:8, 593:9, 593:15, 593:22, 594:3, 594:4, 597:20, 598:9, 598:11, 601:18, 601:23, 601:25, 603:4, 603:5, 604:3, 608:2, 608:5, 609:11, 609:12, 632:21, 633:3, 633:20, 636:3
**WITNESS** [19] - 519:8, 535:2, 536:3, 541:1, 543:13, 550:16, 551:7, 552:3, 557:24, 567:14, 601:22, 603:8, 603:10, 604:18, 612:25, 613:2, 628:9, 632:4, 636:1

**witness's** [4] - 549:11, 585:5, 593:18, 595:18

**WITNESSES** [1] - 515:5

**witnesses** [12] - 522:17, 523:18, 524:15, 564:13, 592:12, 592:21, 598:2, 598:6, 598:14, 631:8, 633:3, 633:12

**witnesses'** [1] - 595:9

**word** [12] - 523:6, 525:21, 528:14, 538:2, 540:1, 540:4, 545:15, 549:9, 554:10, 628:23, 629:21

**word-for-word** [1] - 540:4

**words** [26] - 516:21, 528:8, 531:19, 537:10, 544:6, 608:16, 608:25, 609:9, 622:14, 622:18, 622:21, 622:22, 624:5, 624:16, 624:20, 624:24, 625:3, 625:4, 625:8, 625:12, 626:21, 634:13, 634:25

**works** [2] - 623:2, 625:6

**write** [2] - 520:15, 548:5

**writes** [3] - 562:11, 572:12, 580:19

**writing** [1] - 541:13

**written** [6] - 528:8, 596:18, 617:16, 617:21, 622:23, 623:2

**wrote** [6] - 528:2, 530:3, 540:3, 542:6, 572:4, 609:6

**Y**

**year** [4] - 557:8, 557:25, 572:3, 600:9

**years** [11] - 524:8, 524:13, 524:19, 553:5, 554:17, 554:20, 554:21, 555:11, 555:20, 556:1, 633:10

**yes-or-no** [2] - 534:10, 535:19

**yourself** [2] - 522:11, 603:14

**Z**

**Zelda** [1] - 513:23

**zero** [1] - 564:9

**zoom** [5] - 610:6, 611:12, 613:10, 613:25, 615:15

**zooming** [1] - 611:21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| v. | : | |
| STEPHEN K. BANNON, | : | |
| *Defendant.* | : | |

## MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO
## RULE 29, FEDERAL RULES OF CRIMINAL PROCEDURE

Defendant, Stephen K. Bannon, by and through the undersigned counsel, respectfully move this Court to enter a Judgment of Acquittal in this case, pursuant to Rule 29, Federal Rules of Criminal Procedure.

Rule 29(a) of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering a Rule 29 motion this Court must determine whether upon the evidence, viewed "in a light most favorable to the Government giving full play to the right of the [trier of fact] to determine credibility, weigh the evidence and draw justifiable inference of fact," a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 588 (D. D.C. 1989); *see United States v, Kayode*, 254 F.3d 204, 212-13 (D.C. Cir. 2001) (*quoting United States v. Harrington*, 108 F.3d 1460, 1464, (D.C. Cir. 1997)); *United States v. SaFavian*, 644 F. Supp. 2d 1, 7-8 (D.D.C. 2009); *United States v. Duran,* 884 F. Supp. 577, 583 (D.D.C. 1995)*, affd,* 96 F.3d 1495 (D.C. Cir.

**-4289-**

1996). The Court must "accord[] the government the benefit of all legitimate inferences," *see United States v. Weisz*, 718 F.2d 413, 437 (D.C. Cir. 1983), *cert denied* 465 U.S. 1027 (1984), and deny the motion if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Arrington*, 309 F.3d 40, 48 (D.C. Cir. 2002) (emphasis in original) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Put another way, the Court must grant a motion for judgment of acquittal if "a reasonable juror must necessarily have had a reasonable doubt as to the defendant[']s guilt." *See United States v. Weisz*, 718 F.2d at 437 (emphasis in original) (*citing United States v. Singleton*, 702 F.2d 1159, 1162-63 (D.C. Cir. 1983)). *See also United States v. Reese*, 561 F.2d 894, 898 (D.C. Cir. 1977); *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947) ("[I]f there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion [for judgment of acquittal] must be granted."), *cert denied*, 331 U.S. 837 (1947). *United States v. Jabr*, 2019 U.S. Dist. LEXIS 238718, *9-10, 2019 WL 13110682 (D. D.C., May 16, 2019).

Although the evidence must be viewed in the light most favorable to the government, this Court is obligated to take a hard look at the evidence and accord the government the benefit of only "legitimate inferences." *United States v. Singleton*, 702 F.2d 1159, 1163 (D.C.Cir. 1983). In other words, this court will not indulge in fanciful speculation or bizarre reconstruction of the evidence. Moreover, Rule 29 does not require the Court to view the evidence through dirty windowpanes and assume that evidence which otherwise can be explained as equally innocent must be evidence of guilt. *See Curley*, 160 F.2d at 233 (if "a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained"). Rather, in order to find a legitimate and nonspeculative inference of guilt the government must articulate a rational basis in

the evidence upon which that inference can arise. *United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 588 (D. D.C. 1989).

This Court must grant Defendants' motion for judgment of acquittal if it finds that the evidence, even if viewed in the light most favorable to the government, is such that a reasonable trier of fact would have a reasonable doubt as to the existence of any of the essential elements of the crime. *United States v. Durant*, 208 U.S. App. D.C. 374, 648 F.2d 747 (D.C. Cir. 1981); *see also United States v. Foster*, 251 U.S. App. D.C. 272, 783 F.2d 1087, 1088 (D.C. Cir. 1986).

Mr. Bannon is charged with two counts of contempt of Congress under 2 U.S.C. § 192. The Court has advised that it will provide the jury with the following instructions regarding the elements of the offense:

> *First*, that the Defendant was subpoenaed by the Select Committee to provide testimony or produce papers;
>
> *Second*, that the subpoena sought testimony or information pertinent to the investigation that the Select Committee was authorized to conduct;
>
> *Third*, that the Defendant failed to comply or refused to comply with the subpoena; and
>
> *Fourth*, that the Defendant's failure or refusal to comply was willful.

The government's theory of the case is that Mr. Bannon defaulted on his subpoena for testimony under Count 1 on October 14, 2021 and defaulted on his subpoena for documents under Count 2 on October 18, 2021.

## FACTUAL BACKGROUND AND ARGUMENT

The factual background relevant to this Motion and the defense's argument in support thereof were stated on the record on July 21, 2022. By this Motion, Mr. Bannon reasserts the arguments asserted on the record.

WHEREFORE, for the reasons stated on the record on July 21, 2022, the Defendant Stephen K. Bannon, through counsel, hereby respectfully requests that this Court grant his Motion for Judgment of Acquittal.

Dated: July 21, 2022

Respectfully submitted,

**SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

      /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
Riane A. White (*Pro Hac Vice*)
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

      /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

*Counsel for Defendant Stephen K. Bannon*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21th day of July 2022, a copy of the foregoing Rule 29

Motion was served *via* the Court's CM/ECF system on registered parties and counsel.

/s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| | : | |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

### ORDER

Upon consideration of the arguments stated on the record on July 21, 2022, it is hereby

**ORDERED** that Defendant's Rule 29 Motion for Judgment of Acquittal is **GRANTED**.

**SO ORDERED.**

_____
Hon. Carl J. Nichols
*United States District Judge*

Dated:

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

                                        CR Action
                                        No. 1:21-670

        vs.                             Washington, DC
                                        July 21, 2022
STEPHEN K. BANNON,
                                        10:38 a.m.
            Defendant.

            TRANSCRIPT OF JURY TRIAL - DAY FOUR
        BEFORE THE HONORABLE CARL J. NICHOLS
            UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the U.S.:**          **AMANDA ROSE VAUGHN**
                           **MOLLY GULLAND GASTON**
                           U.S. ATTORNEYS OFC. FOR D.C.
                           555 4th Street NW
                           Washington, DC  20001
                           202-252-1793


**For the Defendant:**     **DAVID I. SCHOEN**
                           DAVID I. SCHOEN, ATTORNEY AT LAW
                           2800 Zelda Road, Suite 100-6
                           Montgomery, AL  36106
                           334-395-6611

                           **MATTHEW EVAN CORCORAN**
                           **RIANE WHITE**
                           SILVERMAN THOMPSON SLUTKIN WHITE
                           201 N. Charles Street, 25th Floor
                           Baltimore, MC  21201
                           410-385-2225


**Reported By:**           **LORRAINE T. HERMAN, RPR, CRC**
                           Official Court Reporter
                           U.S. District & Bankruptcy Courts
                           333 Constitution Avenue, NW
                           Room 4700-C
                           Washington, DC 20001
                           lorraine_herman@dcd.uscourts.gov

**-4295-**

1                    **P R O C E E D I N G S**

2              **DEPUTY CLERK:**  Good morning, Your Honor.  This is

3      criminal case year 2021-0670, *United States of America*

4      *versus Stephen K. Bannon*.

5              Counsel, please come forward and introduce

6      yourselves for the record, beginning with the government.

7              **MS. VAUGHN:**  Good morning, Your Honor.

8              Amanda Vaughn and Molly Gaston and paralegal

9      specialist Quiana Dunn-Gordon and FBI Special Agent Frank

10     D'Amico.

11             **THE COURT:**  Good morning.

12             **MR. SCHOEN:**  Good morning, Your Honor.  David

13     Schoen and Evan Corcoran.  Steve Bannon is at the table and

14     Ms. Riane White also.

15             I want to ask, logistically -- so I don't want to

16     keep going back and forth.  I think I know what the Court

17     wants to cover first, but I just wanted the Court to be

18     aware before we worry about a jury.

19             We drew up two additional proposed jury

20     instructions just this morning.  The government hasn't had a

21     chance to see them, but we brought hard copies to give the

22     government.  I don't know if we should file those on ECF

23     or --

24             **THE COURT:**  So, clearly, I need to finalize the

25     jury instructions before we do closings, because my plan is

1      to instruct the jury before we get to closings.

2              Even in my draft jury instructions, there were

3      some that had been flagged as "if applicable," and I need to

4      go through with the -- or at least in my view and with the

5      parties to see if there's agreement that they do or do not

6      apply.  Then, as I imagine and as was always has been clear,

7      we need to finalize them for all purposes before we get to

8      the jury.  So I agree there needs to be a step here.

9              What I would like to have happen in the first

10     instance is for the parties to confer and to submit -- it

11     need not be through a filing, but to submit through the

12     chambers' email that we've been using, their respective

13     positions around areas of disagreement and, frankly, areas

14     of agreement.

15             **MR. SCHOEN:**  Just on these two new ones, the Court

16     means?

17             **THE COURT:**  No, the government, I assume, may have

18     some of its own proposed instructions.

19             **MS. VAUGHN:**  We do, Your Honor.

20             **THE COURT:**  The government -- and then there, of

21     course, may be a question of whether the parties agree that,

22     as to the draft that I already provided, that they -- where

23     we included in brackets "if applicable", I would like the

24     parties to discuss whether they, in fact, believe they are

25     applicable or not.

1          **MR. SCHOEN:**  Yes, Your Honor.  I didn't mean to

2    make the Court jump ahead to that.  I was really just asking

3    about these two new ones how the Court -- I get it was much

4    more informative than I asked for.  Thank you very much.

5          **THE COURT:**  Yeah.  Okay.

6          **MR. SCHOEN:**  Second thing, just logistically, as

7    the Court knows, without the jury in the box, we intend to

8    file a Rule 29 motion this morning.

9          **THE COURT:**  Yes.

10          **MR. SCHOEN:**  So one other issue that was

11    outstanding, I raised on July 19th, and we talked about it

12    on Page 521 and 522 of the transcript.  The Court doesn't

13    need the transcript.  It's a very simple issue.  I had said

14    that we need a ruling on the so-called -- you know, the

15    Motion to Dismiss or to exclude the evidence based on the

16    quashing of the subpoenas and the filing motion number ECF

17    No. 116.

18          And I raised it with the Court, and the Court

19    said -- I said I need a ruling.  The Court said, Well, I

20    think the proper way to handle this is, when the government

21    rests their case, then you can make a showing, make a

22    proffer to me as to what you needed Chairman Thompson to

23    testify to.

24          **THE COURT:**  Yes.

25          **MR. SCHOEN:**  So that was basically how we were

1    going to go.  But some suggestion was made that, since part

2    of the relief is excluding evidence, that maybe the Court

3    wanted to hear, in connection with the Rule 29 or before the

4    Rule 29, whatever the Court wanted, I just wanted to know

5    one way or the other.

6         **THE COURT:**  So I certainly think it's appropriate

7    to hear argument now on that question.  Or it could be after

8    the close of the defense case so that the defense could say,

9    We just put on what we could put on, but here's how we have

10   been precluded from putting on additional evidence.

11        **MR. SCHOEN:**  In fairness, Judge, the other day we

12   didn't contemplate argument.  The Court just asked me to

13   make a proffer.  I don't know if the government came ready

14   to discuss the motion.

15        **MS. VAUGHN:**  The government is always ready,

16   Your Honor.

17        **MR. SCHOEN:**  Like the Marine Corps.

18        **THE COURT:**  Here's what I'd like to do.  Because

19   the Motion for Judgment of Acquittal was mentioned in front

20   of the jury yesterday, I'd like to take that up, both the

21   question of the motion and the question of what, if

22   anything, we do to cure any potential prejudice.  Let's do

23   that first.

24        I then have another issue that I need to raise

25   with the parties that would be on the husher.  We'll do

1    that.  And then I'll now think about how I want to handle

2    the Thompson motion, so to speak.

3            **MR. SCHOEN:**  Thank you, Your Honor.

4            **THE COURT:**  Mr. Corcoran, are you going to present

5    the Motion for Judgment of Acquittal?

6            **MR. CORCORAN:**  I am, Your Honor.

7            **THE COURT:**  Okay.

8            **MR. CORCORAN:**  Do you want to discuss the other

9    motion first?

10           **THE COURT:**  I do, please.

11           So here's my question.  So for the record, as I

12   recall, you indicated before the jury was excused, in the

13   presence of the jury, that you would be filing a Motion for

14   Judgment of Acquittal this morning.  So the jury has heard

15   that that's at least a possibility.

16           I communicated to the parties last night that I

17   wanted to address whether there was any potential prejudice

18   from the jury having heard that and, if so, whether that

19   could be cured here this morning.

20           So I'd like to hear -- I actually think I need to

21   hear that issue together with the merits of the motion.

22           **MR. CORCORAN:**  On that issue, Your Honor, we don't

23   think that that passing comment in front of the jury is

24   prejudicial to either party and don't see that there's any

25   need to do anything.

1      **THE COURT:**  What if the jury -- if we get to the

2      jury today, what if the jury believes, as a result of that

3      comment, that I've denied the motion?

4      Wouldn't that mean the jury might think that I

5      have passed on something relating to the strength of the

6      government's claims in a way that's harmful to Mr. Bannon?

7      **MR. CORCORAN:**  We don't -- you know, we don't see

8      that as a possibility given the discussion in the case so

9      far.  But if, in an abundance of caution, the Court does

10     want to address it in some way, I think that the proper way

11     to do it -- and I can -- would be to essentially to repeat

12     in the first paragraph what's already been said to the jury.

13     And that is -- with a slight change just because

14     of the timing -- "At the start of this trial, I described my

15     responsibilities as the judge and your responsibilities as

16     the jury.  My responsibility is to conduct this trial in an

17     orderly, fair and efficient manner, rule on legal questions

18     that come up in the course of the trial and instruct you

19     about the law that applies to this case."

20     That's essentially already been said.  And then

21     the next part is, "During trial you may have heard reference

22     to objections, motions, briefs and the like.  The

23     discussions of the lawyers on those legal issues and my

24     rulings are not evidence and are not to be considered by you

25     as you determine the facts in the case."

1          In other words, it's simply reiterating something

2     that's already been said.

3          **THE COURT:**  Okay.  So on the motion itself?

4          **MR. CORCORAN:**  Your Honor, we'd ask the Court to

5     grant our Motion for Judgment of Acquittal.  The government

6     has rested its case, and they have not presented evidence

7     upon which a reasonable person could find beyond a

8     reasonable doubt that Mr. Bannon is guilty of the charge --

9     the charges of contempt of Congress.

10         Obviously, the law is pretty straightforward, and

11    the key at this point is whether the Court, when weighing

12    the evidence introduced at trial and drawing inferences from

13    that evidence, could find that a reasonable mind could

14    fairly conclude guilty beyond a reasonable doubt.

15         And we acknowledge that that's not a high

16    threshold.  But it's a threshold that needs to be considered

17    in light of the evidence in every case.  And in this case,

18    it's abundantly clear that there was no evidence presented

19    that the defendant is guilty.  There is no evidence

20    presented that a reasonable mind could find that Mr. Bannon

21    has committed the crimes.

22         The key, I think, is the evidence that was

23    presented was limited to two witnesses, Ms. Amerling and

24    Mr. Hart.  Our Motion for Judgment of Acquittal does not

25    pertain really to Mr. Hart, because he didn't add much to

1    the case at all.

2              It's really a one-witness case and the issue,

3    really, is what did Ms. Amerling say on the key points?

4    First, with regard to whether the defendant was subpoenaed

5    by the Select Committee to provide testimony or produce

6    papers, at best, the testimony was equivocal.

7              We asked the witness what human being drafted this

8    subpoena?  What human being came up with the dates in the

9    subpoena of October 7th, 2021 and October 14th, 2021, and

10   she couldn't answer.  She couldn't answer.

11             She did say that it was -- in order for the

12   subpoena to be valid, it had to be signed by

13   Chairman Thompson, but she couldn't answer whether or not --

14   she certainly didn't see him sign it.  She relied upon the

15   general practice of the Committee that said that she thought

16   perhaps he would have signed it.  So on the first element,

17   the evidence is simply barren, from which a reasonable juror

18   could find that Mr. Bannon was subpoenaed.

19             The second element is pertinence.  And our motion

20   really doesn't address pertinence.  The third is that

21   Mr. Bannon failed to comply or refused to comply with the

22   subpoena.  And, again, I am setting forth the elements as

23   the Court has determined them under the *Licavoli* standard.

24             **THE COURT:**  I understand.

25             You are basing your Motion for Judgment of

1    Acquittal based on the elements as I have defined them?

2    **MR. CORCORAN:**  That's correct.  Of course, as I

3    said many times, we're not waiving the positions that we

4    have taken --

5    **THE COURT:**  Well understood.

6    **MR. CORCORAN:**  So the third point is that

7    Mr. Bannon failed to comply or refused to comply with the

8    subpoena.  On that issue, again, it all hinges on

9    Ms. Amerling's testimony.  And she testified, although she

10   said that these dates were not open, it was clear through

11   her testimony, first of all, that the dates were in flux.

12   And I'll describe that, especially with regard to Count 2,

13   in a moment.

14       But even the dates themselves in the subpoena, she

15   was unable to identify why those dates were in the subpoena

16   at all.  She was unable to identify who put those dates in

17   the subpoena and that's a critical issue.  And there is

18   interplay, and I know Mr. Schoen will discuss the issue that

19   was raised with regard to the Motion to Quash the subpoena.

20   But I'll mention it in brief here because it does play into

21   our Motion for Judgment of Acquittal.

22       That is, under the Sixth Amendment, a defendant

23   has the right to confront the witnesses against them,

24   particularly through cross-examination.

25       We were provided and the government requested

1    access to one witness, and that was Ms. Amerling.  We were

2    not provided with a number of other key witnesses, material

3    witnesses, who we believe would have provided exculpatory

4    evidence.  And based upon the testimony of Ms. Amerling

5    yesterday, clearly would have provided exculpatory evidence

6    in a new way that we could not have conceived before trial.

7         And that is this:  Chairman Thompson, as the

8    evidence in the case has indicated, Chairman Thompson is the

9    sole person authorized to sign the subpoena.  Without his --

10   him signing the subpoena, it is not valid.  That was the

11   testimony of Ms. Amerling.

12        And yet, when we cross-examined her, she didn't

13   know whether or not he signed it or not.  She couldn't say

14   for certain whether he signed it or not.  Had he been

15   available to us, we could have presented evidence on the

16   topic of whether he signed the subpoena or not, whether it

17   was a valid subpoena or not.

18        Secondly, and critically, we asked Ms. Amerling

19   about the back-and-forth between her, as the lawyer for the

20   Committee, and Bob Costello, as the lawyer for Mr. Bannon.

21   And the letters that went back and forth and were admitted

22   for a limited purpose are essentially the paper trail of the

23   communications or negotiations between the lawyers about the

24   dates and about compliance and about whether Mr. Bannon

25   committed the crime or crimes of contempt of Congress.

1          We asked her at every step, with regard to each of

2    these exhibits, who wrote the letter on behalf of the Select

3    Committee and she couldn't answer.  She said that there was

4    essentially several different staff involved.  I asked her

5    to pinpoint language that she wrote.  She was unable to do

6    so.

7          Critically, I asked her whether she could identify

8    any word in each of the Select Committee letters that

9    Chairman Thompson had written.  Essentially, identify one

10   word in this given letter, this given exhibit, which was a

11   Committee letter, that was the word of Chairman Thompson.

12         And she couldn't answer.  She couldn't point to

13   one word in the letter that indicated it was Mr. Thompson's

14   word.  Again, he's under subpoena.  He's accepted service of

15   subpoena.  The House moved to quash his subpoena.  We asked

16   for documents, drafts and things like that of these letters,

17   and the Motion to Quash was granted as well with regard to

18   those materials.

19         If he was here -- and again, I'm just giving a

20   shortened version of what will be presented in a separate

21   motion by Mr. Schoen.  But if he was here, we would have

22   presented evidence to the jury, I believe, that he did

23   not -- he was not the author of those letters based on what

24   we heard yesterday.  And so that they were not, in fact, an

25   official position of the Select Committee.

1          In light of that and in light of the

2     information -- the evidence that was presented from

3     Mr. Costello which indicated at every step of the way we've

4     got an objection -- I'm just talking about the way it's

5     presented as evidence in the case.

6          There's an objection based on privilege that's

7     been presented to the Committee.  Work it out.  Here are two

8     options.  Option one, communicate with President Trump and

9     seek an executive privilege.  Option two, go to a court with

10    a civil action to try to remove this obstacle of privilege

11    so that I can testify.  That's been the consistent message

12    all along.

13         So given that, no reasonable juror could find that

14    Mr. Bannon refused to comply with dates that we understand

15    now are in flux, are open, such that he committed a crime.

16         Finally, on the fourth element, which is that his

17    failure or refusal to comply was willful, there's simply no

18    evidence that the jury could consider right now that bears

19    on whether or not the intent that Mr. Bannon had on

20    October 14th, with regard to the testimony and October 18th

21    with regard to the documents, was a willful default.  A

22    default -- and again, I don't think that -- I'm not certain

23    here, but I don't think that the default has been -- has yet

24    been defined.

25         But default, in our view, is not meeting a legal

**-4307-**

1    obligation.  And in this case, there has been no showing

2    that, on the 14th of December -- of October 2021 or the 18th

3    of October '21, Mr. Bannon had a legal obligation to comply

4    with the subpoena.

5            In fact -- and this goes specifically to whether

6    the Court should dismiss Count 2 on our Motion for Judgment

7    of Acquittal.  The dates are moving.  In other words, the

8    date on the subpoena for the production of documents is

9    October 7, 2021.

10           The jury -- the indictment alleges a different

11   date; and that is that Mr. Bannon has committed the offense

12   of contempt of Congress and he is essentially guilty of

13   Count 2 if he has not provided documents by a different

14   date, October 18, 2021.

15           That's a difference.  That's a variance.  And no

16   reasonable juror could find that, based on the testimony

17   presented by Ms. Amerling, that Mr. Bannon committed the

18   crime of contempt of Congress with regard to the production

19   of documents on October 18th.  And I use the word "on"

20   because many times indictments use the words "on or about",

21   and there are instructions to the jury that would describe

22   what that means.

23           That's not what happened here.  In the indictment,

24   in Count 2, there is a precise date that the jury would have

25   to find beyond a reasonable doubt that, on October 18th,

1    2021, Mr. Bannon committed a crime.

2              No reasonable juror could conclude that he

3    committed a crime on that date because the date on the

4    subpoena is October 7th, and there was no testimony at all

5    that indicates that, on October 18th, Mr. Bannon did

6    anything --

7              **THE COURT:**  The word is actually "by".

8              **MR. CORCORAN:**  Is it "by"?  Okay.

9              **THE COURT:**  It is "by".

10             **MR. CORCORAN:**  "By" in the indictment?

11             **THE COURT:**  The indictment says "by October 18th,

12   2021".

13             **MR. CORCORAN:**  Okay.  Still.

14             **THE COURT:**  Still?

15             **MR. CORCORAN:**  I buy that.

16             **THE COURT:**  I buy it too.

17             **MR. CORCORAN:**  My point is the same that the date

18   couldn't have shifted.  We didn't hear any evidence.

19             **THE COURT:**  I understand.  The point isn't really

20   about on or by.  Your point is, the date.  Is it October 7th

21   or is it October 18th?

22             **MR. CORCORAN:**  Yeah.

23             That's under the Supreme Court case of *U.S. versus*

24   *Bryan*, 339 U.S. 323 at 330, holds that default, you know,

25   does not mature until the return date.  And so, in our view,

1    the return date is, in terms of the government's meeting its

2    burden, either the date on the subpoena or it's open.  It's

3    an open date.

4            And, of course, our position, as you heard through

5    our questioning and as we expect will be the position we

6    take throughout, is that this was an ongoing negotiation.

7            The last piece of evidence, Your Honor, that I

8    want to reference in terms of our Motion for Judgment of

9    Acquittal are pieces of evidence, but I think the key one --

10   if I could grab it -- is Defendant's Exhibit No. 32 which is

11   in evidence.

12           **THE COURT:**  Can I just note a housekeeping thing?

13           **MR. CORCORAN:**  Yes, Your Honor.

14           **THE COURT:**  I don't recall having received copies

15   of at least some of the defendant's trial exhibits,

16   including the most recent ones, and maybe even any exhibit

17   above number 16.  I just want to ask if you could provide

18   Ms. Lesley with copies of all of the defendant's trial

19   exhibits.

20           **MR. CORCORAN:**  Absolutely.

21           **THE COURT:**  Thank you.

22           **MR. CORCORAN:**  And just as a --

23           **THE COURT:**  I recall the letter.

24           **MR. CORCORAN:**  Yeah.  You recall the letter.

25           Again, just so the record is complete on that,

1    these are things that only came up in cross-examination so

2    we didn't see --

3         **THE COURT:**  I understand.

4         **MR. CORCORAN:**  Of course some were created after

5    the date of the filing of our exhibits.

6         **THE COURT:**  Yes.  It is not a -- I'm not

7    suggesting that you should have provided a copy of the

8    letter that was dated as late as that letter.  I just need

9    copies of them.

10        **MR. CORCORAN:**  Absolutely.

11             The key point with regard to our Motion for

12   Judgment of Acquittal is Exhibit 32 provided in evidence in

13   the limited way that it is, which is simply to show that

14   notice has been provided from the Chairman of the Select

15   Committee to Mr. Bannon through his lawyer, Robert Costello.

16             That evidence, together with everything that was

17   said by Ms. Amerling in testimony, leaves no possibility

18   that a reasonable juror could find that Mr. Bannon committed

19   a crime back in October of 2021 with regard to his position

20   on the subpoena.

21             Defendant's Exhibit 32, which is in evidence,

22   specifically talks about the subpoena dated September 23,

23   2021.  So the evidence shows this is oriented towards

24   exhibit -- Government's Exhibit No. 2, the subpoena in this

25   case.  It's not a new subpoena.  It's not a new invitation.

1    It's not a new communication.

2         And the letter, in pertinent part, states:  I am

3    in receipt of your letter dated July 9, 2021 in which you

4    indicate your client, Stephen K. Bannon, is now willing to

5    comply with the Select Committee's subpoena.  That letter,

6    which is also in evidence, is Mr. Costello's notice to the

7    Committee, a change has occurred, attached is President

8    Trump's letter and, because of that change, we are willing

9    to speak with you about documents and testimony.

10        The response of Chairman Thompson on July 14th

11   was, "With respect to the Select Committee's demand for

12   documents, Mr. Bannon should begin producing responsive

13   documents today to the Select Committee and provide a

14   complete response by July 21, 2022.  And then, after he has

15   produced all of the requested documents, we will identify

16   dates soon following that production on which he must then

17   appear in person in the O'Neill House office building for

18   deposition.  We anticipate that the deposition will occur in

19   the near future."

20        The importance is that, even with the limited

21   purpose that this -- I'm sorry, the limited use of this

22   evidence by the jury, they will be able to understand that

23   compliance with the January 23, 2021 subpoena is still

24   allowed.  That's the use of the word by the Chairman in

25   Defendant's 32, "comply".

1          And compliance can involve production of documents

2     now and testimony on a later date to be determined.  We

3     believe that that exhibit, together with Ms. Amerling's

4     testimony, leaves a -- no reasonable juror could find beyond

5     a reasonable doubt the elements of the crimes charged.

6     Thank you, Your Honor.

7          **THE COURT:**  Thank you, Mr. Corcoran.

8          Ms. Vaughn?

9          **MS. VAUGHN:**  Good morning, Your Honor.

10         Trying all inferences in favor of the government,

11    the defendant has failed to meet his burden that no

12    reasonable juror could find the defendant guilty in this

13    case.

14         I'll start with element 1.  The defendant claims

15    that the government has not provided sufficient evidence for

16    a reasonable juror that the defendant was subpoenaed.

17    There's a subpoena.  It's signed by Chairman Thompson.  We

18    presented evidence that it was sent to defendant's lawyer,

19    and we presented evidence that his lawyer sent it to the

20    defendant.

21         It seems that Mr. Corcoran's argument, with

22    respect to this element, is that the government also was

23    required to prove who made the initial decision on the

24    dates, why the dates were chosen or who wrote the letters.

25    That's not an element of the offense and it's irrelevant.

1        The Committee acts as a body.  Ms. Amerling

2    testified that she is familiar with Chairman Thompson's

3    signature and recognized it as such on the subpoena.  He's

4    authorized the letters before they went out.  He authorized

5    the subpoena before it went out.  The body of the Committee

6    subpoenaed the defendant.

7        The defendant concedes that the government has

8    provided sufficient evidence on element 2.  On element 3,

9    that the defendant failed to comply or refused to comply,

10   the government has presented sufficient evidence.

11       Mr. Corcoran made similar arguments with respect

12   to this element as he did with the first, but again, the

13   reason for the dates are irrelevant.  The dates are on the

14   subpoena.  The Committee made clear in its letters to the

15   defendant that those were the dates and that he had violated

16   them.  And the evidence is clear the defendant did not

17   provide documents by October 7th and did not come for his

18   deposition on October 14th.

19       With respect to the defendant's intent, the

20   government, again, has provided sufficient evidence on this

21   point.  The defendant did not provide any records by

22   October 7th at 10 a.m.  The fact that that was not a mistake

23   was made clear in his letter later that day that he did not

24   intend to comply, and it was made clear by Mr. Costello's

25   admission that they had not gathered a single document to

1    provide to the Committee by that time.

2            The defendant also showed his willfulness in

3    failing to comply with the October 14th date.  He posted on

4    GETTR, "I will not comply" on October 8th.  He did not come

5    for his deposition.  And in case there was any doubt left,

6    he sent another letter the night before saying, "I'm not

7    coming".  So the government has provided sufficient evidence

8    and the defendant's motion should be denied.

9            **THE COURT:**  What about the question of prejudice

10   and the fact that the jury heard about the Motion for

11   Judgment of Acquittal?  What, if anything, should I do?

12           **MS. VAUGHN:**  I think most jurors probably don't

13   know what a Motion for Judgment of Acquittal, and I think,

14   drawing their attention back to it, could create prejudice.

15   I think we can move forward without it.

16           If the Court's inclined, I agree with Mr. Corcoran

17   that the Court can just give the instruction it gave -- I'm

18   not sure what the proposed instruction was that Mr. Corcoran

19   provided, but the Court already has instructions on --

20           **THE COURT:**  He basically read it.  It says as

21   follows:  "At the start of this trial, I described my

22   responsibilities as the judge and your responsibilities as

23   the jury.  My responsibility is to conduct this trial in an

24   orderly, fair and efficient manner, to rule on legal

25   questions that come up in the course of the trial and

-4315-

1    instruct you about the law that applies to this case."

2              "During trial, you may have heard reference to

3    objections, motions, briefs and the like.  The discussions

4    of the lawyers on those legal issues and my rulings are not

5    evidence and are not to be considered by you as you

6    determine the facts in this case or in the case."

7              **MS. VAUGHN:**  Yes.  It looks like the first part is

8    taken from Instruction 2.101, the function of the Court.

9    The second part -- I'm not sure if that's 2.105.

10             **MR. CORCORAN:**  Your Honor, the second part is

11   original product.

12             **MS. VAUGHN:**  Ah.  Thank you.

13             To the extent that the Court wants to give an

14   instruction, there is -- the last paragraph of 2.102

15   describes the Court's function and 2.105 describes the

16   attorneys' functions and how the jury should judge all of

17   these things.

18             In our view, if the Court were concerned, it could

19   give these instructions that it's also going to give again

20   at the end of the case.  We would respectfully suggest that

21   we not tell the jury why they're being instructed on this

22   again, because it would just draw attention back to it.

23             **THE COURT:**  So both parties, it seems to me, are

24   agreeing that, as to this motion, the fact that the jury

25   learned there might be this motion submitted today, that I

1    should not remind them of that motion.  I shouldn't attempt

2    to cure prejudice by saying something like, you heard about

3    this motion yesterday.  I don't want you to think that I've

4    decided in any way that would indicate that I have a view of

5    the case.  Basically, both parties agree I shouldn't mention

6    it at all.

7          And then the other question is whether and to what

8    extent I give a fairly generic instruction about the

9    respective roles and responsibilities of me and them and the

10   fact that, you know, I shouldn't take -- they shouldn't take

11   anything that I've said as a view of the case, some version

12   of that.  I know there's a disagreement about exactly what I

13   say but a fairly generic instruction.

14         **MS. VAUGHN:**  To clarify, the government doesn't

15   think there has been any prejudice, such that an instruction

16   isn't required, but to the extent that the Court believes

17   that one is, we don't have any objection to doing that.

18         **MR. CORCORAN:**  We agree that no instruction is

19   needed at this time, and it will be covered in the Court's

20   final jury instruction.

21         **THE COURT:**  I may or may not agree with that.  All

22   right.  I want to discuss another issue with the parties on

23   the husher.

24         (Sidebar discussion.)

25         **THE COURT:**  We're going under seal.  Can everyone

1    hear me?

2        **MS. VAUGHN:**  Yes, Your Honor.

3        **THE COURT:**  I was informed late yesterday

4    afternoon that one of our jurors had a health issue.  It is

5    one of the pregnant jurors who had moved an appointment, a

6    sonogram appointment or an ultrasound appointment, to next

7    week.  But then, during yesterday, she started having some

8    complications or what she was afraid were complications

9    regarding her pregnancy and she had had complications with

10   prior pregnancies.

11       So she came to me, came to us and told us that she

12   needed to move her appointment back to this morning.  It was

13   originally this morning.  She had moved it to next week

14   because of this trial.  And then she moved it back again to

15   this morning at 9 a.m.  She raised with me the possibility

16   that either things could be terrific and she would continue

17   to serve, or that, of course, the result of the appointment

18   would be that she needed to do some sort of rest as she had

19   in the past.

20       And she informed us this morning that she had been

21   told by her doctor she in fact needs to go on rest.  She has

22   a note from the doctor she submitted to Ms. Lesley.  She can

23   get a more formal letter if we find it necessary.

24       But it seems to me, though I want to hear if the

25   parties have any objection to this, that I should excuse her

1  and continue with the 13 jurors who would remain otherwise.

2  Is there any objection from the government's perspective to

3  that?

4      **MS. VAUGHN:**  No objection from the government,

5  Your Honor.

6      **THE COURT:**  Mr. Corcoran?

7      **MR. CORCORAN:**  Can I have 30 seconds to discuss it

8  with my team?  Thank you.

9      **THE COURT:**  Yes, please.

10     (Discussion off the sidebar between defense counsel.)

11     (Brief pause.)

12     **THE COURT:**  Mr. Corcoran?

13     **MR. CORCORAN:**  Your Honor, the defense has no

14  objection to the dismissal of the juror with the health

15  issue.

16     **MS. VAUGHN:**  I'm sorry, Your Honor.  We didn't

17  hear that.

18     **THE COURT:**  Can everyone hear one another?

19  Ms. Vaughn, can you hear Mr. Corcoran now?

20     **MS. VAUGHN:**  Yes.

21     **THE COURT:**  Okay.

22     **MR. CORCORAN:**  Your Honor, the defense has no

23  objection to the dismissal of the juror with the health

24  issue.

25     **THE COURT:**  Thank you.

1          So we will -- we will dismiss that juror.  That

2     juror is juror 540 and seat No. 13.  Okay?  Thank you all.

3          (Sidebar discussion concluded.)

4          **DEPUTY CLERK:**  We are now back on the public

5     record.

6          **THE COURT:**  I'd like to take a brief recess.  I

7     want to consider the Motion for Judgment of Acquittal, the

8     parties' views around prejudice.  I'll just spend five

9     minutes and then I'll come back and discuss that.

10         And then I also want to think about when an

11    appropriate time to hear from you, Mr. Schoen, is on the

12    motion relating to the granted Motion to Quash congressional

13    scheme.  Okay?  So we're in recess for five minutes.

14         **DEPUTY CLERK:**  All rise.

15         (Recess at 11:15 a.m. until 11:23 a.m.)

16         **DEPUTY CLERK:**  We are now back on the record.

17         **THE COURT:**  Thank you, Ms. Lesley.

18         With respect to the Motion for Judgment of

19    Acquittal, as was made pretty clear here, I was concerned

20    about its having been mentioned in front of the jury and

21    what the jury might hypothesize if they are called back in

22    here to continue the case and whether they might think that

23    that reflected -- they would infer that that reflected a

24    judgment by me about the motion.

25         So my plan or at least my thinking coming in here

1    was that I was going to do two things, one of which I am

2    still going to do.

3            I am going to reserve judgment, reserve decision

4    on the Motion for Judgment of Acquittal, as I am permitted

5    to do under Rule 29(b), because I thought that reserving

6    judgment was the way to most reduce the potential prejudice

7    to the jury.

8            And then I was going to -- what I had been

9    thinking I would do is I was going to then instruct the jury

10   that they had heard of this motion and that, in order to

11   ensure that they didn't think that I was deciding the merits

12   or the strength or anything of the case one way or the

13   other, that I was going to reserve decision.  I was going to

14   tell the jury that.

15           But both parties are -- the parties are in

16   agreement that raising the question with the jury would

17   effectively put it in their heads more than it otherwise is

18   and would run the risk of more prejudice or some prejudice,

19   more prejudice, than making either no mention of it or any

20   instruction whatsoever about legal issues or giving them

21   some very benign instruction about my role as judge deciding

22   legal issues and that they shouldn't take anything I say or

23   do or otherwise to interfere with their duties.

24           So in light of the parties' shared view that I

25   shouldn't say anything about the Motion for Judgment of

1    Acquittal, I'm not going to do so.  I am going to give the

2    jury a very, very basic instruction about my role versus

3    theirs.

4         And so I'm reserving decision on the Motion for

5    Judgment of Acquittal.  Obviously, I have to decide it later

6    as a result based on the arguments as they are presented to

7    me today, and I am not going to say anything about the

8    motion to the jury that I'm going to give them whenever they

9    come back, a very basic instruction about my role.

10        As to Mr. Schoen, your argument about the -- in

11   your renewed motion regarding the implications of my

12   granting the Motion to Quash, if you could come forward.  I

13   have sort of a procedural question for you, which is, Is

14   this really a Motion to Dismiss the indictment or is it

15   something different now?  Is it like a Sixth Amendment

16   argument, Motion for Judgment of Acquittal?  And is it

17   appropriate to take up now or later?  Would you prefer to

18   take it up later?

19        **MR. SCHOEN:**  I really was sold on the Court's

20   approach originally.  I mean, that is, that, listen, you

21   know -- yes, it's a Motion to Dismiss.  That Motion to

22   Dismiss was filed when it was filed.

23        **THE COURT:**  Yes.

24        **MR. SCHOEN:**  And those are the arguments.

25        I think we've made a motion, Rule 29 motion.  I

1    think that, given the Court's real interest -- listen, two

2    things I've learned since I got into this case and have been

3    reinforced to me, the Court's a whole lot smarter than I am,

4    reinforced at every appearance, and secondly, the Court

5    likes to cut to the chase.

6         So the Court indicated the other day that its real

7    interest in this motion is, Listen, we've briefed the issues

8    on whether dismissal is appropriate.  If dismissal is not

9    appropriate, is exclusion another remedy.  The Court has all

10   that.  I don't think we need to discuss that too much.  So

11   the Court said, I need to know what it is you wanted from

12   Thompson.

13        **THE COURT:**  Yes.

14        **MR. CORCORAN:**  So I think that makes sense, and

15   that's why I thought the Court's idea about doing it during

16   our case makes sense.

17        I think we'll have to think logistically, if

18   that's the case, about -- I don't know if the Court intends

19   next to bring in the jury or not, but I think --

20        **THE COURT:**  So let me ask you this question, if

21   you're prepared to answer it.  If we have -- imagine we

22   don't have argument right now on the proffer that you would

23   be prepared to make --

24        **MR. SCHOEN:**  Right.

25        **THE COURT:**  -- what's your plan?

1          **MR. SCHOEN:**  May I have just one second?  I just

2    want to say logistically --

3          **THE COURT:**  Yes.

4          (Discussion between counsel off the record.)

5          (Brief pause.)

6          **MR. SCHOEN:**  I'll put it this way, Your Honor, I

7    think for the defense case we do not need the jury.  In

8    other words, I want to just -- we'll make a proffer to the

9    Court so the Court is ensured -- has an assurance that

10   everyone has been fully informed of their rights and so on.

11   I know the Court would do that anyway, but in any event, we

12   would just make a proffer that we cannot make in the

13   presence of the jury.

14          So I need to make a proffer on the Thompson

15   issue --

16          **THE COURT:**  Yeah.

17          **MR. SCHOEN:**  And then --

18          **THE COURT:**  So I guess I was asking a bigger --

19          **MR. SCHOEN:**  Actually I know what the Court was

20   asking.

21          **THE COURT:**  Why don't we go ahead and do that?

22   Why don't you make the proffer you're prepared to make on

23   Thompson.

24          **MR. SCHOEN:**  Okay.

25          **THE COURT:**  I'll hear from the government and its

1    response to that.  I'll have to think through whether and to

2    what extent that proffer and the government's response leads

3    me to conclude that relief is warranted.

4         Then my real -- the question I was really getting

5    to is, Is the defense going to be putting on a case,

6    assuming that we're bringing the jury back here?

7         **MR. SCHOEN:**  I understood that, Your Honor.  The

8    answer is, No.

9         **THE COURT:**  Okay.

10        **MR. SCHOEN:**  But way of proffer I do have to make

11   those -- so that would be the defense case.

12        **THE COURT:**  Understood.

13        **MR. SCHOEN:**  I just lost my --

14        **MS. VAUGHN:**  Your Honor, may I?

15        **THE COURT:**  Ms. Vaughn, yes.

16        **MS. VAUGHN:**  I just wanted to make a proposal,

17   just thinking about the most efficient way to use the jury's

18   time here.

19        **THE COURT:**  Yes.

20        **MS. VAUGHN:**  It sounds like the parties have

21   already figured out what proposals they have for the final

22   jury instructions.

23        **THE COURT:**  Yes.

24        **MS. VAUGHN:**  To present them to the Court.

25        So our proposal would be to send the jury to an

1    early lunch.  We can confer for 20 minutes on the jury

2    instructions, provide our results to the Court, and then we

3    could have a charge conference when the jury comes back for

4    lunch, go right into instructions and closings.

5         **MR. SCHOEN:**  If I may, that may be the best

6    course, but another suggestion would be that we go forward

7    with this and then rest.  And then we would be prepared to,

8    you know, after lunch then --

9         **THE COURT:**  But you are not -- as I understand it,

10   at least, you are not intending to put on any evidence to

11   the jury?

12        **MR. SCHOEN:**  Correct, Your Honor.

13        **THE COURT:**  Okay.  So the jury has now heard all

14   of the evidence it will hear.  There are then two or three

15   things that occur -- could occur before the jury gets this

16   case, if it does.

17        One is that there's a discussion around and a

18   finalization of jury instructions.  That has to happen

19   before any closings.

20        The second is the proffer/argument around -- I'll

21   put it this way -- the congressional subpoena-related motion

22   that would, in Mr. Bannon's view, obviously take this case

23   from the jury.

24        And then I have reserved on the judgment for

25   motion -- the Motion for Judgment of Acquittal because I was

1    concerned about prejudice to the jury and the like.  My plan

2    had been to reserve judgment until after the jury

3    deliberates, assuming we get there.

4         I guess, in theory, if we're at the end of the

5    defense case in the evidentiary sense, you might -- I take

6    it you do not have -- as a result, you do not have a

7    separate motion for judgment after the defense case.  It's

8    different from this proffer.  Fair enough?

9         **MR. SCHOEN:**  Certainly.  We are not putting on a

10   defense case.

11        **THE COURT:**  Yes.

12        **MR. SCHOEN:**  What I need to make, Your Honor, is

13   simply the Thompson proffer, discuss that issue.

14        **THE COURT:**  Yes.

15        **MR. SCHOEN:**  And then the explanation that --

16   Mr. Bannon won't be testifying and I would explain

17   Mr. Bannon's decision, informed decision and so on.

18        **THE COURT:**  Yes.  Yes.  Let's do that.

19        Let's go ahead -- I am trying to be respectful, in

20   part, of the jury's time, but I also want to do this in an

21   efficient manner.  I also want to make sure that I have

22   adequate time to consider your argument for the judgment

23   relating to the Thompson, et cetera, testimony.  I would

24   like to do the following.

25        I would like to take a recess.  I would like the

1    parties to confer around jury instructions and then to just

2    submit those to us.  Whatever you're -- whatever you discuss

3    to us so that we can, at least, be looking at them and

4    addressing them while we also then come back after the

5    recess and hear the proffer, both around the Thompson

6    information and Mr. Bannon's decision not to testify, the

7    government's arguments to the contrary.

8            Depending on how the arguments go, I will decide

9    whether I can resolve the question there or if I have to

10   reserve again.  And then we can just go forward.  And we

11   will see then, whether we're in a position to instruct the

12   jury, based on the instructions as agreed or as I have

13   sifted through them.  And if we are at that point, then we

14   can instruct the jury and do closings.

15           But I don't think we're there yet, because I want

16   the parties to meet and confer around the instructions.  I

17   want to hear you, Mr. Schoen, on the Motion to Quash

18   implications and from the government, of course, have some

19   time to think about that.

20           So we're going to go into a recess until 1:00.

21   Okay.

22           **MR. SCHOEN:**  How does the Court handle the charge

23   conference logistically, again?  In here, open Court?

24           **THE COURT:**  So I was assuming that we -- there is

25   substantial agreement on at least a lot of the instructions

1    but some disagreement on some.  I was planning to just do it

2    in here and to hear from the parties on the positions once

3    articulated to us and see what they are.  In an informal

4    way, I get that these will not be filings.  These are -- the

5    way I like to have it is emailed to me to the chambers email

6    with the parties' respective positions.  It need not be

7    formal areas of disagreement and we can just discuss them.

8           But my plan, though, is -- so to go into a recess

9    right now.  To tell the jury that, at a minimum, they have

10   until 1 to go have lunch.  At 1:00 to hear from you,

11   Mr. Schoen, around your proffer and your arguments, to hear

12   from the government.

13          And then, once I've heard that, to then take up

14   the jury instructions questions.  But we will at least have

15   from you before 1, I hope, your views on instructions.

16   Okay?

17          And then we'll take it from there.  But thank you

18   for letting us know of the plans.  Okay?

19          **DEPUTY CLERK:**  All rise.

20      (Recess at 11:36 a.m. until 1:07 p.m.)

21          **DEPUTY CLERK:**  Good afternoon, Your Honor, we are

22   back on the record.

23          **THE COURT:**  Good afternoon, everyone.  Mr. Schoen?

24          **MR. SCHOEN:**  Thank you, Your Honor.

25          First, my focus is going to be like this.  I want

1    to just give a two-minute/one-minute background on why I

2    thought this issue was important.  And then I just want to

3    focus on the specific areas on why we wanted

4    Chairman Thompson.  When I say "Chairman Thompson," i mean

5    Committee members.

6            **THE COURT:**  Yes.

7        **MR. SCHOEN:**  Thank you, Your Honor.

8            As the Court knows, our view is -- has been badly

9    stymied in being able to present a defense in the case based

10   on the Court's ruling, after careful consideration of the

11   defenses we proposed and the Court's conclusions.  We

12   believe that in that kind of --

13           **THE COURT:**  Some of which, as you know, I believed

14   I was bound by D.C. Circuit precedent that I am not even

15   sure is right.

16       **MR. SCHOEN:**  Thank you, Your Honor.  Understood.

17           **THE COURT:**  Yes.

18       **MR. SCHOEN:**  So in that universe, the defense

19   needs to find as many areas of material for its defense as

20   possible, principally, through cross-examination, but also

21   through calling witnesses that we believe have relative

22   noncumulative evidence to provide on the fundamental issues

23   before the Court.

24           Now, we also would propose to examine those

25   witnesses on issues the Court has ruled out.  We understand

-4330-

1    that we wouldn't be able to examine them on them.  But to

2    preserve the record, those would include issues like the

3    rules issues, composition of the Committee, and so on, that

4    the Court has ruled out.  But that would be part of our

5    reason for wanting to have first-hand input from the

6    Committee members themselves.

7                **THE COURT:**  Yes.

8                **MR. SCHOEN:**  That won't be my focus today.

9                Secondly, is this overall approach that the

10   government has taken, and specifically through its witness,

11   Ms. Amerling yesterday -- whenever that was, I think it was

12   yesterday.

13               **THE COURT:**  Yesterday and the day before.

14               **MR. SCHOEN:**  Yes, sir.  Thank you, Your Honor.

15               Through Ms. Amerling that Mr. Bannon's approach

16   was that he simply ignored the subpoena; that he decided he

17   was above the law; and that he simply refused to comply for

18   no appropriate reason.

19               Well, he certainly didn't ignore the subpoena.  So

20   we would want to examine these witnesses, the Committee

21   members, Chairman Thompson himself, to whom Mr. Costello's

22   letters were directed, to make the point that Mr. Costello

23   and Mr. Bannon didn't ignore them when they wrote their

24   letters, each of which are in evidence now.

25               But the idea that Mr. Bannon thought he was above

1    the law is belied by the letters.  Mr. Bannon from Day 1

2    said that he wanted to comply -- take it back a step.  I

3    know the Court's aware of this.  I'm just sort of setting

4    the stage in a sense.

5              Mr. Bannon is contacted by his lawyer Costello.

6    Is told that he has a subpoena -- a congressional subpoena

7    from this Committee, and then he tells him he's been advised

8    that he been advised -- he, Costello, has been advised that

9    executive privilege has been invoked.  This is all in

10    Costello's Declaration ECF 30-1.

11              But anyway, so he tells them that and he tells

12    them -- to again cut to the chase -- you're bound by

13    executive privilege.  Your hands are tied.  You may not

14    comply with the subpoena.  I, Costello, have studied these

15    OLC opinions.  They support us.

16              They apply to you and your hands are bound.

17    You're caught as a pawn between a fight between a form

18    President and this Committee.  There's nothing you can do

19    about it.  You're not permitted by law to do anything about

20    it.

21              That's not -- and on top of that, Costello --

22    Bannon, through Costello, contacts the Committee,

23    Chairman Thompson again, to tell him, Bannon is looking for

24    a way to comply.  He wants to comply.  So here are some

25    options.  Either work out the privilege with former

1    President Trump or let's go before a court.  It should be a

2    court that decides whether the privilege is valid.

3         **THE COURT:**  I know all of this.

4         **MR. SCHOEN:**  Yes, Your Honor.  Let me tie it in.

5         **THE COURT:**  Yeah.

6         **MR. SCHOEN:**  The Committee members themselves,

7    Chairman Thompson particularly, but the Committee members,

8    are aware of that process.  They made a decision not to

9    pursue that process.

10         Had they wanted the information and documents and

11   testimony from Mr. Bannon, that was the process readily open

12   to them and that, if they're right about privilege, would

13   have led to getting that information.  Because what Bannon

14   said is, if a judge orders me to comply, I will comply.  I'm

15   paraphrasing.  So had they gone before a judge, a judge of

16   their right, would have said either privilege isn't valid or

17   it's not so broad or you still have to respond in some

18   manner and he would have complied with that.

19         They chose not to.  Now we would have examined the

20   Committee members about the accommodation process, about

21   that route and about why they made a decision, if Bannon's

22   information and testimony was so important to them as

23   Ms. Amerling testified but as we would want to hear from the

24   Committee members, then why not go that route?  Why did they

25   choose to go criminal and so on?

**-4333-**

1          Okay.  So I'll go down a list now, Your Honor, of

2    things that we -- with the kind of, I think the kind of

3    specificity the Court had in mind, I hope anyway.  Again why

4    did -- I'll use Chairman Thompson for shorthand for the

5    other witnesses, but focus on him particularly because the

6    letters are back and forth with him.

7          Why did Chairman Thompson believe Bannon's

8    testimony was important?  What was it that he thought was

9    pertinent about the Committee's work specifically from the

10   Committee's perspective, not from a staffer's perspective?

11         For all of these, our position is a staffer is

12   simply neither competent to testify about this nor the

13   appropriate person nor the person who the jury should be

14   hearing from on our issues on cross-examination.

15         **THE COURT:**  Given the Committee acts as a body,

16   would that entitle you to have every single member of the

17   Committee here?  Why does Chairman Thompson matter?  If nine

18   members or eight members of the Committee said, No, we don't

19   want you to do this, why is a single member in a

20   multi-member body like this particularly important on

21   something like pertinence?

22         **MR. SCHOEN:**  I do think we would be entitled to

23   have the whole Committee here, quite frankly.  But

24   Chairman Thompson, for example, is a decision-maker and he's

25   the leader of the Committee.  So that's why

1      Chairman Thompson.  And I think we're not greedy.  It would

2      suffice to us to have Chairman Thompson here without waiving

3      the reasons I have for the other issues.

4            Now, if the Committee's work was so important,

5      then why not give Bannon a one-week extension when he asked

6      for it toward the end.  That period is particularly

7      important for issues I'll get to in a second.

8            Was it important, Chairman Thompson for --

9      important enough for the Committee to wait or to take one of

10     those other steps that Bannon suggested for compliance?  And

11     if not, why not?

12           Again, the Committee's work is ongoing.  They're

13     still hearing from witnesses.  They're lining people up for

14     their television hearings.  What harm would there have been

15     in giving Bannon an extension?

16           What did Chairman Thompson mean in the language

17     that he used in his letter on October 15th, when he asked

18     Mr. Bannon to submit any reasons that he had for continued

19     noncompliance by October 18th?  Why October 18th?  What kind

20     of reasons did he have in mind?  What kind of reasons might

21     have persuaded Chairman Thompson to, in his words, change

22     course?

23           What did he mean -- what did Chairman Thompson

24     mean in the language he used on October 19th, a day after --

25     I mean -- yeah, a day after he had been in touch with

1    Costello and the contempt -- he insisted on going forward

2    with the contempt vote?

3            What did he mean when he urged Bannon to change

4    course?  I'm reading from the first paragraph.  "I write,

5    yet again, to urge your client, Stephen K. Bannon, to change

6    course and comply with the September 23, 2021 subpoena from

7    the Select Committee to investigate the January 6th attack

8    on the United States Capitol.  Select Committee."

9            What did he mean?  And what would the impact be of

10   Mr. Bannon complying?  We heard the other day that, if he

11   had complied by 11:00 instead of 10:00, that might have had

12   a consequence, a positive consequence for Bannon.  So what

13   did it mean if he complied after the 18th, after the dates

14   in the indictment?

15           Remember, again -- well, I'll talk in one

16   second -- one date is on October 14th so that -- in Count 1,

17   if the government were to prove that Mr. Bannon failed to

18   comply on October 15th, he's not guilty under Count 1.

19           On Count 2 it is by October 18th.  But why

20   October 18th?  October 7th is the date for that one in the

21   subpoena.  Why is that date changed?

22           **THE COURT:**  Why.  Why -- what element or issue in

23   the case as it exists now does any of this go to?

24           **MR. SCHOEN:**  It goes to the direct defense that

25   the Court has permitted, the belief the dates were flexible.

1            **THE COURT:**  But the belief has to be -- is about

2       Mr. Bannon's belief.

3            **MR. SCHOEN:**  Yes, Your Honor.  So Mr. Bannon's

4       belief, when he gets a letter on October 19th, after the

5       18th --

6            **THE COURT:**  But the letter comes in and the letter

7       says what it says.  Mr. Bannon, I presume, is not talking to

8       Mr. Thompson nor is Mr. Costello.  So how can what is in

9       Mr. Thompson's head inform the mens rea of the defendant?

10           **MR. SCHOEN:**  Because Mr. Thompson wrote the

11      letter.  The defendant gets the letter.

12           **THE COURT:**  The letter is the letter.

13           **MR. SCHOEN:**  The defendant gets the letter.  He

14      has to --

15           **THE COURT:**  But the defendant's mens rea is -- the

16      defendant, in mid-October, has a set of information in front

17      of him.  That information is the letters.  And the letters,

18      in his view, may be ambiguous or they may present some

19      question.  But what does Chairman Thompson's testimony tell

20      us about Mr. Bannon's mens rea since it, by definition, was

21      not known to Mr. Bannon what Mr. Thompson thought in his

22      head?

23           **MR. SCHOEN:**  Well, that's part of the issue.  The

24      fact that it's a question is a reason to have the

25      discussion.

1        **THE COURT:**  No, but are you saying that Mr. Bannon

2   had any information about what was in Mr. Thompson's head

3   other than what's reflected in the letters?

4        **MR. SCHOEN:**  No, Your Honor.  That's exactly why

5   we need him on the witness stand because we don't have --

6        **THE COURT:**  But how can that go to mens rea?  You

7   just said it goes to Mr. Bannon's belief that the dates were

8   flexible.

9        **MR. SCHOEN:**  If we're right and the reason he

10  moved it is because the dates are flexible and we get that

11  from Chairman Thompson on the witness stand, then

12  Mr. Bannon's -- the jury certainly --

13       **THE COURT:**  That doesn't go to mens rea, but maybe

14  it goes to whether the dates were in fact not fixed, not

15  mens rea.

16       **MR. SCHOEN:**  Well, that's certainly part of the

17  equation.  If the dates were in fact not fixed, that

18  certainly goes to support Mr. Bannon's belief as a

19  reasonable, fair belief.  And the fact, quite frankly, that

20  the indictment and the subpoena have different dates,

21  supports the idea that the date was malleable.  The 18th

22  seems to be just an arbitrary date.  So if it's the 18th of

23  October, why isn't it the 23rd of December?

24       All right.  So --

25       **THE COURT:**  Do you concede that what was in -- do

1    you concede that what was in Mr. Bannon's head at the time

2    from -- in terms of information from the Committee was only

3    what was reflected in the letters?

4         **MR. SCHOEN:**  About the dates, I think that's

5    right.  I mean, there were public statements made by the

6    Committee about what, we believe, reflects an agenda.

7         **THE COURT:**  Mr. Bannon and Mr. Costello didn't

8    have any communications with Mr. Thompson at the time.

9    Correct?

10        **MR. SCHOEN:**  Correct.  I mean --

11        **THE COURT:**  I mean oral communications?

12        **MR. SCHOEN:**  Correct, Your Honor.

13        **THE COURT:**  Okay.  Keep going.

14        **MR. SCHOEN:**  I'm sorry.

15        I lost my train of thought for a second.

16        **THE COURT:**  Sorry.  Take your time.

17        **MR. SCHOEN:**  Yeah.  Yeah.

18        **THE COURT:**  You were going through the various

19   items in which you --

20        **MR. SCHOEN:**  Yeah, the Court obviously knew that,

21   but --

22        **THE COURT:**  Would like a congressional person to

23   testify about.  I didn't mean to undue --

24        **MR. SCHOEN:**  In any event, the progression

25   continued.  What did Mr. Thompson mean -- it's the same

1      effect.

2              **THE COURT:**  Right.

3              **MR. SCHOEN:**  What does Mr. Thompson mean in his

4      January 4th letter, he appreciates Mr. Bannon -- January

5      14th letter -- I keep saying January -- July 14th letter in

6      which he appreciates Mr. Bannon's willingness to comply.  So

7      we would want to examine Chairman Thompson about that.

8              And, Judge, the idea that just the letters speak

9      for themselves reminds me -- certainly there are some

10     distinctions, but reminds me of the confrontation clause

11     issue that the Court noted in *Crawford versus Washington*,

12     for example.  They had the wife's letter.  She was

13     unavailable.  They had a marital privilege, but the letter

14     just wasn't good enough, the Supreme Court told us.

15             So these letters have meaning behind them.  And

16     even if they're just offered for notice, the question is,

17     was that notice reasonable?  In other words, the Court

18     raised the issue the other day --

19             **THE COURT:**  Wait.  Wait.  Wait.  Why is the

20     question reasonable?  What's that issue?  I hadn't heard

21     that before.

22             **MR. SCHOEN:**  Because, if one of the reasons Bannon

23     thinks that the dates are flexible is, if the Committee is

24     going to yield eventually on executive privilege or one of

25     those issues, then the reasonableness of the Committee's

1    position is relevant to that idea, or it's just, you know,

2    completely off the wall that Bannon could think that, and

3    again, that's question for the jury.

4            All right.  If Chairman Thompson thought that

5    Mr. Bannon -- again, this goes to the dates issue, how firm

6    are they, and the default question.

7            If Chairman Thompson thought that Mr. Bannon

8    already had defaulted on the subpoena, then what would make

9    him think that he has the right to demand continued

10   compliance?  Why does he use the term "compliance"?  Why

11   don't they, in their July 14th letter, use the word

12   "default" if they think there's been a default?

13           Now, Ms. Amerling went through the subpoena and

14   what she said, as a staffer, they suspected about -- I don't

15   mean any disrespect by saying "staffer".  I'm sure it's very

16   important position.

17           **THE COURT:**  I understand.  It's a distinction

18   between staff and member.

19           **MR. SCHOEN:**  Yes, Your Honor.

20           Ms. Amerling went through the subpoena and what

21   they suspected about Bannon and intended to show through

22   Bannon.  The significance of Bannon not complying under the

23   auspices of the pertinency -- if pertinency is the word or

24   pertinence is the word?  But we need to discuss, whichever

25   word that is -- pertinency I'll call it for now -- with

1    Chairman Thompson.

2          It's the Committee's perspective on pertinence

3    that's important.  So if pertinence is independently

4    relevant through testimony on the stand here as an element

5    for the government or as a defense that it's not pertinent,

6    we need to examine a Committee member, a person who has the

7    authority on behalf of the United States Congress or that

8    Committee, to make those decisions.  What's his perspective

9    as the decision-maker and go through each reason with him.

10          Now, Ms. Amerling referred constantly to

11    Mr. Bannon's misconduct throughout her testimony.  But we

12    would want to establish with Chairman Thompson, as the

13    Committee representative, the authorized Committee

14    representative, the leader of the Committee, about

15    Mr. Bannon's actual willingness to comply and his position

16    that, if privilege were not valid and a judge said so or it

17    weren't so broad and a judge said so, then he would have

18    complied fully.

19          We want to establish with the Committee,

20    Chairman Thompson, that Chairman Thompson knew at all times

21    that Mr. Bannon was acting on the advice of counsel.  And I

22    understand that may be an issue the Court wouldn't permit

23    today, but I still say this is one of the things we would

24    want to examine him on.  But that he wasn't acting on some

25    inexplicable intransigence.  Rather, he had specific reasons

1    which he thought the Committee should yield on and they had

2    notice of that.

3         That's, you know, the purpose of we say these

4    letters are for.  They had notice that that was Mr. Bannon's

5    position.  He offered a way out.  The entire presentation we

6    saw from Ms. Amerling was that, "He had no intention ever of

7    complying, he never produced anything for that reason and

8    for no good reason and it was all misconduct."

9         That's not the story of the case.  If Mr. Bannon

10   is going to be handcuffed and not able use his defenses to

11   explain the story of the case, then we need, through

12   cross-examination, to be able to get out that story of the

13   case to the extent permissible within the narrowed defense

14   the Court has permitted through a member of the Committee.

15        We want to know -- I may be repeating this, but

16   that wouldn't be the first time, I'm sure.  We want to

17   develop through Chairman Thompson whether the Committee

18   considered either of the options.  The Court heard the

19   questions to Ms. Amerling the other day, but Ms. Amerling is

20   not competent to answer that question.

21        Whether the Committee, the Committee members, the

22   members of Congress, the elected members of Congress,

23   authorized members of Congress, whether they considered, for

24   the American people, either of the options that Mr. Bannon

25   offered.  If they really wanted to get Bannon's testimony

1    for this January 6th Committee, did they consider the

2    options that he offered?

3           And Chairman Thompson, isn't this a normal course

4    to pursue?  Haven't you pursued this course, you,

5    Chairman Thompson, speaking institutionally -- hasn't this

6    institution pursued the course of a civil enforcement

7    proceeding in the past?  And haven't the courts said that

8    ultimately the courts are the ultimate arbiter of these

9    kinds of disputes?

10          Because we heard from Ms. Amerling the other day

11   that Bannon, through Costello, was told over and over again,

12   This Committee rejects your privilege claim.  Well, the

13   courts have said, it's a tension; that's a --

14   separation-of-powers issue.

15          When the President or former President invokes

16   privilege, it's presumptively valid.  It's presumptively

17   privilege.  And it's not for Chairman Thompson or any other

18   member of Congress to seek to override that unilaterally.

19          There was a question, as the Court is well aware,

20   whether that's a justiciable question in the first place.

21   The Court certainly in this district indicates that it is.

22   So why didn't Chairman Thompson take that option?

23          I talked about the presumptive validity.  I'd want

24   to question him about that.

25          Why would he, Chairman Thompson -- knowing this

-4344-

1    historic tension and its resolution by the courts in the

2    past, why, if he wanted that information, wouldn't he pursue

3    that course?  Why would he expect Mr. Bannon to be satisfied

4    by what we have said -- although not admissible in evidence

5    I understand, but we have said is a purely partisan

6    political agenda to get Bannon?

7         And by the public statements, the reason we think

8    those are independently important is that those public

9    statements, some of which we cite in the opposition to

10   Motion to Quash papers, indicates that partisan agenda.

11        Another issue, quite frankly, and I don't know

12   that the Court would permit it but that we would want to

13   examine Chairman Thompson on to preserve for the record

14   would be the extraordinary conflicts that mar this

15   Committee.

16        Chairman Thompson brought a lawsuit against

17   President Trump alleging that former President Trump was

18   directly responsible for the events of January 6th and that

19   he, Chairman Thompson, was personally injured.  When he

20   withdrew from that lawsuit to become chairman, he said that,

21   in his withdrawal motion, he stands by the allegations or

22   words to that effect.

23        Mr. Raskin, Mr. Schiff have written books on the

24   events of January 6th.  They have a reputational and perhaps

25   financial interest in ensuring that the Committee's

**-4345-**

1      conclusions are consistent with their books.

2              We want to examine those members about that.  It's

3      a matter of bias, in choosing this course and in

4      determining, to put it in in our framework, in determining

5      whether the dates were fixed or were malleable.  And maybe

6      they were moved in their decision-making process on that by

7      their conflicts, by their bias.

8              Ms. Amerling imbued the Committee the other day

9      with this sincere desire to investigate fully and get to all

10     the facts but from some perspectives.  We say this question

11     is a lot more complicated.  I don't believe that, under the

12     Court's -- under the narrow defense we have here, this would

13     be admissible evidence.  But it is a reason we would want to

14     try to examine Chairman Thompson and that is, did the

15     Committee ever really want to hear from differing

16     perspectives?

17             We know, at least from the media, that members

18     suggested, recommended by Mr. McCarthy, were kept off of the

19     Committee, Jordan, Banks.  And from their perspective, it

20     was because they wanted to broaden the investigation to

21     include other issues relevant to the events of January 6th.

22     We'd want to examine the members here and why those

23     decisions were made.

24             Chairman Thompson -- this is also directly

25     relevant, I think.  Chairman Thompson has made public

1    statements to the effect that anyone who invokes

2    privilege -- and in this case it was a Fifth Amendment

3    privilege.  Anyone who invokes privilege must have something

4    to hide.  Therefore, again carrying it one step further, it

5    would be reasonable to believe that he simply flatly rejects

6    privilege claims in response to a subpoena; and that he

7    believes he unilaterally has the authority to reject them

8    and that it doesn't need to be brought to a Court; and that

9    hopefully he would be moved, swayed from that position by

10   reason over the course of time so that those dates would

11   move, in the sense that Mr. Bannon would be able to comply,

12   they would go before a judge or President Trump would have

13   removed the privilege earlier than he did now.

14        We say that eliminating instruction in the letters

15   doesn't obviate the need to examine the letter writer

16   himself; and that's why -- you know, I think that *Crawford*

17   *versus Washington* is relevant there.

18        And also, you know, a case like -- *United States*

19   *versus Nobles* in which defense investigator wanted to

20   testify consistent with the defense theory but he refused

21   to -- the defense refused to produce his report and so they

22   kept the testimony out.

23        Here, I think the similarity is we need the

24   underlying evidence of these opinions or conclusions that

25   Ms. Amerling, who has no authority to make them or to speak

**-4347-**

1    on them, gave to us.

2         Now, Ms. Amerling said -- and I think -- well,

3    Ms. Amerling said that Mr. -- I think she was parsing words

4    a bit or this is just how she understood it or the question

5    wasn't sufficiently clear.  But, in any event, she answered

6    that -- again, I'm paraphrasing.  I don't have the

7    transcript in front of me.

8         Mr. Bannon never asked for an extension of time to

9    produce documents.  He just asked for an extension for *Trump*

10   *versus Thompson* decision that came out.  We would want to

11   talk to Chairman Thompson about that.  Now he's a party to

12   that lawsuit, and it's particularly important for this

13   question, the question of the dates, whether the dates would

14   have been moved for this reason, two reasons.

15        *Trump versus Thompson* lawsuit dealt, in part, with

16   exactly one of the issues before this committee -- before it

17   evolved here.  Does a currently-sitting President take

18   precedence on the issue of the invocation of privilege over

19   a former President?

20        Now, the D.C. Circuit opined to some degree on

21   that, but Justice Kavanaugh wrote a very clear statement in

22   the denial of circuit in which he said, that part of the

23   D.C. Circuit opinion is out.

24        Of course, a former President has the right to

25   invoke privilege.  We decided that in *Nixon versus GSA*.

1    When there's a tension between the two, there has to be a

2    question of what's going to be determined.

3          So what happened here?  On the 18th of October,

4    this fellow Jonathan Su, S-U, on behalf of President Biden

5    wrote a letter to Mr. Costello in which he went through a

6    couple of things.  It's only two or three paragraphs long.

7    But he said, "On the 18th of October, President Biden's

8    determination that an assertion of privilege is not

9    justified with respect to these subjects applies to your

10   client's deposition testimony and to any documents your

11   client may possess concerning either subject."

12         That's on the 18th of October.  That's the day

13   that Mr. Costello asked for a one-week extension to study

14   *Trump versus Thompson*.  That's one of the issues in *Trump*

15   *versus Thompson*.  Does President Biden have the authority to

16   tell Bannon, Costello, you don't have privilege no matter

17   what former President Trump said.  That was on the 18th.  He

18   asked for a one-week extension.  Why didn't they move that

19   deadline given that?  Because, we say, because they had a

20   televised contempt referral vote scheduled for the 19th

21   already and that was more important.

22         But in terms of getting the information and

23   complying with the subpoena, maybe they would move the dates

24   if it weren't about posturing.  And maybe one day they would

25   say it's not about posturing.  We want to get your

1    information.  And maybe that's what they said on July 14th,

2    when they talked about welcoming his compliance of the

3    subpoena, his willingness to comply with the subpoena.

4          The last two or three points, Judge.  Sorry I've

5    taken up a lot of your time already.

6          **THE COURT:**  No, I want to hear it, and I think

7    it's important to have the full proffer.

8          **MR. SCHOEN:**  Thank you, Your Honor.

9          So Ms. Amerling testified.  This is a pure-dates

10   issue again.  Ms. Amerling testified that she didn't know

11   why the 7th was changed to the 18th.  That may not have been

12   exactly what she said, but the issue around this is, the

13   subpoena requires production of documents by the 7th.

14         The indictment requires the production of -- or

15   finds a default if the -- asks the jury to find a default,

16   willful default, if the documents were not produced by the

17   18th.

18         I want to know from the Committee, the Chairman,

19   why did that date change?  Was that an arbitrary date?

20   Didn't that reflect the idea that the dates in the subpoena

21   or that date at least in the subpoena, October 7th, was a

22   flexible, malleable --

23         **THE COURT:**  What does the Chairman have anything

24   to do with the indictment?

25         **MR. SCHOEN:**  Nothing to do with the indictment.

1    We would present him with the indictment.  And the idea is,

2    this indictment charges the willful default.  So what's the

3    interchange?  What's the connection between the date --

4         **THE COURT:**  Does he have any personal knowledge of

5    the indictment?

6         **MR. SCHOEN:**  I have no idea.  We would ask him

7    that.  It's another reason -- good idea, Judge.  It's

8    another reason we need him on the stand.  I would ask him

9    whether he had any personal knowledge about the indictment.

10        **THE COURT:**  You have to make a proffer that it's

11   likely that he would have such knowledge.  Yes, I

12   understand, he may have personal knowledge of what's going

13   on in the Committee.

14        **MR. SCHOEN:**  Well, then there must be a one-way --

15   not "must be," there might be then a one-way channel between

16   Ms. Amerling and Chairman Thompson, because she certainly

17   seemed to know every thought and idea that he had.  She's

18   not competent to testify to them.  So Ms. Amerling worked

19   closely with these prosecutors and so on.

20        **THE COURT:**  Remind me, was Ms. Amerling asked

21   about the date of the 18th in the indictment?

22        **MR. SCHOEN:**  I thought she was asked why did the

23   date change from the 7th to the 18th.  She said the date --

24   something like, the date didn't change.  She was asked about

25   that.

**-4351-**

1          **THE COURT:**  Okay.

2          **MR. SCHOEN:**  I know the Court's aware of it.  I

3     don't have to set up the dichotomy, but again, the subpoena

4     charges documents by the 7th, testify on the 14th.

5     Indictment charges documents by the 18th.  Testify on the

6     14th.

7          And so the dates and this theory is independently

8     critically relevant to a finding of guilt or innocence --

9     not guilt, because of that date.  Because this indictment,

10    Mr. Corcoran alluded to it earlier, the indictment is not an

11    on or about date.  Dates matter here.  Indictment charges on

12    the 14th.

13         Another question is, why -- you know, was there

14    this flexibility that the date for compliance, at least in

15    the indictment, is by the 18th?  Is that from input from the

16    Committee?

17         And if not, then what do we mean here when we say,

18    every time Chairman Thompson wrote a letter, the

19    government -- seems to be the government's position, when he

20    wrote a letter, he was just asking for the information still

21    even though he used the words "compliance" and referred to

22    the subpoena, he just meant, oh, you've already defaulted.

23    We just want that information in any event.

24         What did they mean then when he said, again, in

25    his letter of the 15th, "Give us any objections you have or

1    other material you want to supply to us to convince us of

2    your position, Costello, by the 18th, and that's not the

3    date in the subpoena."

4              The other things where I said, Your Honor, earlier

5    I just used shorthand because they clearly would not have

6    been admissible here, but we would want to preserve the

7    record to examine Chairman Thompson on the rules that the

8    Court has ruled out.

9              **THE COURT:**  Yes.

10             **MR. SCHOEN:**  Specifically on the 3(b) issue, which

11   seems to be possibly in play based on that portion of the

12   transcript.  We would want to examine -- Ms. Amerling's

13   position was, Well, of course, we waited for him at the

14   deposition and would have given him a copy of it at the

15   deposition.  However, we would have wanted to examine

16   Chairman Thompson on the Committee's practice with other

17   witnesses.

18             I am advised that at least the following witnesses

19   were given a copy of Rule 3(b) with their subpoena:  Kerik,

20   Navarro, someone named Christina Bobb and Giuliani.  I

21   cannot make a representation to the Court that that's 100

22   percent accurate.  That's how I've been advised.

23             I thought I heard something.  Sorry.

24             **THE COURT:**  Let me ask you this question which is

25   related to the procedural question I asked earlier.  Is this

1    akin to a Rule 29 motion in the sense that I can deliberate

2    on it, reserve my decision on it, as I have with the Motion

3    for Judgment of Acquittal, while the jury deliberates?

4          **MR. SCHOEN:**  Thinking on the fly, Judge, in my

5    view there is absolutely no reason why not.  We're not

6    putting on evidence.  It's always better to have a more

7    contemplative decision.  I don't have to tell this Court

8    that.  This Court, as I said earlier, is way up there.

9          And by the way, I meant it as a compliment that

10   the Court is much smarter than I am.  I know that's not a

11   high threshold but I meant it as a compliment.  I think the

12   Court's the smartest guy in the room.

13         **THE COURT:**  Just trying to do my job.  Just trying

14   to do my job.

15         **MR. SCHOEN:**  Doing it very copiously and with --

16   respectfully, Judge, with the kind of demeanor that I think

17   we would all want to see in our judges.

18         **THE COURT:**  Very nice of you, Mr. Schoen.  Thank

19   you.  I'd like to hear from the government now.

20         **MR. SCHOEN:**  Thank you.

21         **THE COURT:**  Ms. Vaughn, let's start procedurally.

22   What is the government's view about whether -- or by when

23   must I decide this question?

24         **MS. VAUGHN:**  Your Honor, this question would be

25   answered on a Motion to Dismiss the Indictment.  The Rule 29

1    standard is whether the government has presented sufficient

2    evidence at the end of its case for a reasonable juror to

3    decide.

4         **THE COURT:**  Uh-huh.

5         **MS. VAUGHN:**  So whether they've had the ability to

6    put on a defense that they're allowed to put on is a

7    question separate from whether we've met our initial burden.

8    It would be a ruling on the indictment to dismiss it.

9         I imagine that would have to happen before a

10   verdict, but I honestly would have to look into that more.

11        **THE COURT:**  Let me ask you a different question.

12   In light of the arguments that have been made, is it the

13   government's position still that it will not call

14   Mr. Thompson or that Mr. Thompson will not appear?

15        **MS. VAUGHN:**  To answer that, Your Honor, if I

16   could just go back to first principles.  So to return to the

17   standard that governs this question, the closest thing --

18   because where another branch uncontrolled by the prosecution

19   invokes an immunity to prevent a witness from being

20   available, there's really not a lot of precedent on that.

21   The closest thing is, when the government refuses to give

22   Fifth Amendment immunity to a witness to make them available

23   to the defense.

24        The standard there is that, to be entitled to

25   dismissal, the defense has to show some kind of misconduct

1    on the part of the government.  And that is something beyond

2    just simply saying we're not going to immunize this person.

3    And they also have to show the question they plan to ask or

4    questions and what the answers that they have a

5    nonspeculative reason to think they will get, what those are

6    that are materially-exculpatory and noncumulative.

7         So in deciding this issue, the Court doesn't even

8    have to reach the substance of anything that Mr. Schoen just

9    said because the entire argument was, Let's just bring them

10   in here and find out what they have to say.  They have no

11   nonspeculative basis to think that any member of that

12   Committee has any materially-exculpatory noncumulative

13   information.

14        That's for two reasons:  First, nothing they asked

15   for goes to the elements of the offense in this case.  I

16   think the through-line of everything that Mr. Schoen said

17   that they wanted is really just trying to get at personal

18   motives of members.  There is no element of the offense

19   here, that the Committee's request for the information, the

20   issuance of the subpoena, the refusal to give an extension,

21   there is no element of the offense that those steps have to

22   be reasonable in some way.

23        So questioning Chairman Thompson about, Well, why

24   didn't you go to the court?  Why didn't you go talk to

25   former President Trump?  That's irrelevant.

1        **THE COURT:**  What about on the question of whether

2    the dates were flexible?

3        **MS. VAUGHN:**  Ms. Amerling testified that the

4    Committee -- first of all, just to step back.  The Committee

5    is a body.  There is no rule of law under which, for

6    example, if a corporation's position were at issue, the CEO

7    would have to come in and testify every time.

8        Ms. Amerling testified that she was involved in

9    all of the conversations, advising the members.  She

10   testified from first-hand knowledge what the Committee's

11   position was.  And then she testified that that position was

12   communicated to the defendant through the letters.  There's

13   no other channel of communication on this.  There's no other

14   evidence that there were any other dates out there.

15       So the question of whether the dates were fixed,

16   the evidence in the record is the evidence.  It's pure

17   spe --

18       First of all, it would be irrelevant if there was

19   some member of the Committee who was secretly hiding in

20   their office saying, Well, I know we sent a subpoena out

21   that says October 7th, but I think it should be October 8th.

22   That's irrelevant to the position of the body.

23       The only evidence is the letters, which

24   Ms. Amerling said was consistent with what she knows from

25   her personal knowledge to be the position of the Committee.

1    She is an agent of the Committee and was completely

2    competent to testify about its positions.

3           Mr. Schoen said that, when the Court asked what

4    that goes to in the case, he offered two things.  Whether it

5    goes to the defendant's belief that the dates were flexible,

6    which I think the Court already addressed.  There is no

7    evidence that the defendant had any information in his mind

8    from the Committee other than the letters.

9           And he, second, said that the dates were not

10   fixed.  But again, I just addressed that.  The position of

11   the body is in evidence.  They have no -- they've offered

12   nothing to conclude that some other member of the Committee

13   would have different or exculpatory evidence on that point.

14          The motion should just be denied.

15          **THE COURT:**  So I know the government -- I

16   understand the government's position is it's very consistent

17   with what we have talked about before.  Nothing that

18   Mr. Schoen articulated or proffered warrants dismissal of

19   the indictment or any other judgment in the defendant's

20   favor.

21          In light of that, I take it that your answer is,

22   No, the government isn't -- or Chairman Thompson is not

23   presently prepared, notwithstanding the arguments that have

24   been presented, to appear voluntarily or otherwise here.

25          **MS. VAUGHN:**  The Committee has asserted they are a

1    different branch of government.

2            **THE COURT:**  I understand that.  I'm saying your

3    understanding is that Mr. Thompson has no present intention

4    to testify in response to the subpoena, voluntarily or

5    otherwise.  So, for lack of a better word, there is no way

6    to have his testimony cure the objections that Mr. Bannon

7    has raised.

8            I recognize the government thinks they're

9    meritless.  I'm just saying that that is not a possibility?

10           **MS. VAUGHN:**  Not in the government's view.

11           **THE COURT:**  Right.  So I have to resolve the

12   motion however one styles it?

13           **MS. VAUGHN:**  Yes.

14           And also it's just -- we can't even go back to the

15   Committee and ask them if we don't -- if there's not even a

16   relevant question to see if he has the answer to.

17           There's just -- Mr. Schoen talked for a long time.

18   I didn't hear a specific question that they had for

19   Chairman Thompson to which they have a reasonable basis to

20   believe he has exculpatory information on.  It just seems

21   very premature to get to the question of, Would the

22   Committee consider waiving?

23           I have no idea.  I wouldn't even know what to go

24   back and ask them for.

25           **THE COURT:**  All right.  I want to turn to the jury

1    instructions because I have all of the parties here.  I'm

2    going to take a recess after we do that, and I will come

3    back and talk about what I intend to do on the Motion to

4    Dismiss the Indictment or for other relief and the

5    instructions.

6            So can we go through the instructions?

7            **MS. VAUGHN:**  Yes, I'm just going to --

8            **THE COURT:**  Of course.  And I saw the government's

9    email -- Mr. Schoen, did you want to respond to something

10   you heard from Ms. Vaughn about?

11           **MR. SCHOEN:**  I just wanted to make one point,

12   Judge, so that we're not seen as conceding it.  I don't

13   concede that this conduct is required in this case.  There

14   are cases that say otherwise, the *Lieutenant Calley* case

15   from the Fifth Circuit, for example, from my day and other

16   cases.  There are cases in which there was no misconduct,

17   *Fernandez* and so on.

18           **THE COURT:**  Thank you.  Thank you.

19           Okay.  So as to the instructions, walk through

20   them if that's okay.  Can we -- whoever on Mr. Bannon's side

21   is going to sort of have the lead, so to speak, what I

22   thought we could do is we could just walk instruction by

23   instruction.

24           I think a lot of the initial ones are agreed upon.

25   We can do this relatively quickly.

956

1            I will have changed the format of these to provide

2    to the jury.  It will include a case caption.  I won't

3    include the form number.  They're just going to be called

4    Instruction 1, 2, 3, 4.

5            I will be adding an instruction that I'm not sure

6    that -- I just can't recall whether it was proposed by the

7    parties.  It was a form instruction that will be Instruction

8    1 that I will be providing the jury with a copy of the

9    instructions.

10           **MS. VAUGHN:**  It is in your original proposal.

11           **THE COURT:**  It is?  Okay.  We adopted that.

12           Instruction 2 will be the role of the Court which

13   I believe the parties are in agreement on.

14           Instructions 3 and 4, role of the jury and

15   recollection, I don't believe we have any proposals to

16   eliminate.

17           **MS. VAUGHN:**  Oh, yes.  I'm sorry, Your Honor.

18   That's correct.

19           **THE COURT:**  Okay.  Eliminate or otherwise edit.

20           Instruction -- what was Instruction 2.104,

21   evidence in the case, judicial notice, stipulations,

22   depositions, I don't believe that that is applicable.

23           **MS. VAUGHN:**  We agree.

24           **MR. CORCORAN:**  We agree, Your Honor.

25           **THE COURT:**  So that will be removed.  The next one

1    is statements of counsel.  Everyone agrees that that is in?

2              **MR. CORCORAN:**  Yes, Your Honor.

3              **MS. VAUGHN:**  Yes, Your Honor.

4              **THE COURT:**  The next one is indictment is not

5    evidence, also in?

6              **MR. SCHOEN:**  Yes, Your Honor.

7              **MS. VAUGHN:**  Yes, Your Honor.

8              **THE COURT:**  The next one is burden of proof and

9    presumption of innocence, also in?

10             **MR. CORCORAN:**  Yes.

11             **THE COURT:**  Ms. Vaughn?

12             **MS. VAUGHN:**  Yes, Your Honor.

13             **THE COURT:**  Next one, reasonable doubt, also in?

14             **MR. CORCORAN:**  Yes.

15             **MS. VAUGHN:**  Your Honor, the Court had indicated

16   that it was going to use the U.S. District Court one in the

17   note instead of the --

18             **THE COURT:**  Yes, that is the plan.  We will double

19   check that, in fact, that is the one.

20             **MS. VAUGHN:**  Thank you.

21             **THE COURT:**  Direct and circumstantial evidence,

22   in?

23             **MR. CORCORAN:**  Yes.

24             **MS. VAUGHN:**  Yes, Your Honor.

25             **THE COURT:**  Nature of charges not to be

958

1    considered, in?

2              **MS. VAUGHN:**  Yes, Your Honor.

3              **MR. CORCORAN:**  Yes.

4              **THE COURT:**  Inadmissible and stricken evidence,

5    that is applicable, and I believe the likewise sentence at

6    the bottom is inapplicable however?

7              **MS. VAUGHN:**  Yes, Your Honor.  We disagree.

8              **MR. CORCORAN:**  Yes, Your Honor.

9              **THE COURT:**  Okay.

10             Credibility of witnesses is in?

11             **MS. VAUGHN:**  Yes, Your Honor.

12             **MR. CORCORAN:**  (No response)

13             **THE COURT:**  There is the question of whether the

14   bracketed language in the fourth-to-last paragraph should be

15   included.  My instinct is to include if there isn't any harm

16   in including.  Is there any objection to including it?

17   Mr. Corcoran?

18             **MR. CORCORAN:**  No objection, Your Honor.

19             **MS. VAUGHN:**  No objection.

20             **THE COURT:**  Thank you.  That's credibility of

21   witnesses.

22             The next one is police officer's testimony.

23   Obviously, we had an agent testify here.  So it is

24   applicable in a sense.  Mr. Corcoran, what do you think?

25             **MR. CORCORAN:**  We don't think it is appropriate,

1    Your Honor.

2    **THE COURT:** Okay. Ms. Vaughn?

3    **MS. VAUGHN:** No objection to excluding it,

4    Your Honor.

5    **THE COURT:** Okay. We'll exclude police officer's

6    testimony.

7    Right of defendant not to testify is in. Everyone

8    agrees. Correct?

9    **MR. CORCORAN:** Agree, Your Honor.

10   **MS. VAUGHN:** Agree.

11   **THE COURT:** Defendant is witness, not applicable.

12   Correct?

13   **MR. CORCORAN:** Agree, Your Honor.

14   **MS. VAUGHN:** Yes.

15   **THE COURT:** Evaluation of prior inconsistent

16   statement of a witness. Ms. Vaughn?

17   **MS. VAUGHN:** Not applicable, Your Honor.

18   **MR. CORCORAN:** Agree.

19   **THE COURT:** Okay.

20   Evaluation of prior consistent statement of a

21   witness?

22   **MS. VAUGHN:** Not applicable.

23   **MR. CORCORAN:** We agree.

24   **THE COURT:** Motive is in?

25   **MS. VAUGHN:** Agree.

1          **MR. CORCORAN:**  Agree, Your Honor.

2          **THE COURT:**  Multiple counts, in?

3          **MR. CORCORAN:**  Agree.

4          **MS. VAUGHN:**  Agree.

5          **THE COURT:**  Unanimity in, yes?

6          **MS. VAUGHN:**  Agree.

7          **MR. CORCORAN:**  Yes.

8          **THE COURT:**  Verdict form explanation in, yes?

9          **MS. VAUGHN:**  Agree.

10          **MR. CORCORAN:**  Yes.

11          **THE COURT:**  Redacted exhibits inapplicable?

12          **MS. VAUGHN:**  Agree.

13          **MR. CORCORAN:**  Agree.

14          **THE COURT:**  Exhibits during deliberations in?

15          **MS. VAUGHN:**  Agree.

16          **MR. CORCORAN:**  Agree.

17          **THE COURT:**  Selection of foreperson in?

18          **MS. VAUGHN:**  Agree.

19          **MR. CORCORAN:**  Agree.

20          **THE COURT:**  Cautionary instruction on publicity,

21    communication and research in?

22          **MS. VAUGHN:**  Agree.

23          **MR. CORCORAN:**  Agree.

24          **THE COURT:**  Note taking by jurors in?

25          **MS. VAUGHN:**  Agree.

1              **MR. CORCORAN:**  Agree.

2              **THE COURT:**  Communications between Court and jury

3     during jury's deliberations in?

4              **MS. VAUGHN:**  Agree.

5              **MR. CORCORAN:**  Agree.

6              **THE COURT:**  Excusing alternate jurors, I'm going

7     to modify this a little bit.  The first three sentences are

8     still applicable.  I would intend to say -- it says, "We

9     selected two seats to be the alternate seats before any of

10    you entered the courtroom.  We excused one juror for health

11    issues.  Since the rest of you have remained healthy and

12    attentive, I can now excuse the juror in seat --" and I'm

13    not going to mention the seat on the public record here.

14             **MS. VAUGHN:**  That's fine for the government,

15    Your Honor.

16             **THE COURT:**  Do the parties want to get on the

17    husher to discuss which seat that would be?

18             **MR. CORCORAN:**  I just have one other suggestion

19    would be to --

20             **THE COURT:**  Yes.

21             **MR. CORCORAN:**  For consideration -- to excuse the

22    two jurors who would no longer be on the jury without

23    bringing them into the courtroom.

24             **THE COURT:**  At all?

25             **MR. CORCORAN:**  At all.

**-4366-**

1          **THE COURT:**  So one of them is not here.

2          **MR. CORCORAN:**  Right.

3          **THE COURT:**  And the other one would we'd just not

4     bring into the courtroom; that would be fine too.  Well,

5     Ms. Vaughn, what do you think about that?

6          **MS. VAUGHN:**  Your Honor, they should be brought

7     into the courtroom for the instructions because, if

8     something were to happen in deliberations and a juror needed

9     to be replaced and they had to start over, the alternate

10    would have already been instructed.

11         **THE COURT:**  So before Mr. Corcoran's suggestion, I

12    was actually going to say that I was also going to give this

13    instruction about excusing alternate jurors after the

14    closings and before we send the jurors to deliberate.  Any

15    objections to doing it that way?

16         **MR. CORCORAN:**  No objection, Your Honor.

17         **THE COURT:**  Okay.  So I will give this instruction

18    with the modification I just mentioned.  I will do it after

19    closings, essentially to say, the 12 who are going are the

20    12 and this one person is staying.

21         Okay.

22         Proof of state of mind is in?

23         **MS. VAUGHN:**  No objection.

24         **MR. CORCORAN:**  Agree.

25         **THE COURT:**  Elements of the offense.

1          Okay.  The government has proposed some edits.  I

2    need to hear from counsel -- well, I also recall that

3    Mr. Schoen, you were going to propose two additional

4    instructions.  So it seems to me we have the government's

5    proposed edits to the elements of the offense and you have

6    proposed two additional instructions that are the issues to

7    discuss.

8          So how should we handle them?  Ms. Vaughn, do you

9    want to start with your position on why these edits make

10   sense to the elements instruction?

11          **MS. VAUGHN:**  Yes, Your Honor.

12          Yes, Your Honor, because I think the two proposals

13   that the defendant sent us are additional instructions, not

14   these, so we can go ahead and address this?

15          **THE COURT:**  Yes.

16          **MS. VAUGHN:**  So with respect to -- I'll start with

17   the paragraph that is no defense to contempt of Congress.

18          We thought it was necessary to add in legal advice

19   he received from his attorney or someone else just to ensure

20   that there's no suggestion that a mistake could count as

21   advice, if he was misinformed in some way about sort of the

22   root requirement of the subpoena that you must be by this

23   date.

24          Then the executive privilege changes.

25   Mr. Corcoran elicited from Ms. Amerling yesterday an

1    explanation of what executive privilege is and things like

2    that to make clear to the jury that it's not their decision

3    whether executive privilege actually, as a matter of law,

4    excused the defendant.  We think it's necessary to tell them

5    that.

6         **THE COURT:**  I have not held that.  And it's

7    different from telling them it's not their issue from

8    saying, in my view, as a matter of law, executive privilege

9    cannot excuse the defendant.

10        **MS. VAUGHN:**  I apologize, Your Honor.  We've

11   always had a little bit of confusion on our table on whether

12   that issue was teed up sufficiently and resolved.

13        **THE COURT:**  I know.

14        **MS. VAUGHN:**  Our goal here was to just make it

15   clear to the jury that it doesn't matter --

16        **THE COURT:**  I was inclined to strike: "I am also

17   instructing you that, as a matter of law, executive

18   privilege did not excuse the defendant from complying with

19   the subpoena."

20        I'm just saying, potentially, "it is not a defense

21   to contempt of Congress that the defendant did not comply

22   with the subpoena because of his understanding or belief of

23   what the law required or allowed or a misunderstanding or

24   belief that he had a privilege, which is executive

25   privilege, excusing him from complying."

1          Do you object to that?

2          **MS. VAUGHN:**  Could we propose adding that the jury

3   is not to consider whether executive privilege did, in fact,

4   excuse?  Maybe just replace the language we have on the

5   matter of law at the beginning and say that you're not to --

6   wherever it's appropriate but add that?

7          **THE COURT:**  Okay.  I'll hear from Mr. Schoen or

8   Mr. Corcoran on that.  Okay.  What about the last paragraph?

9          **MS. VAUGHN:**  The last paragraph, we tried to stick

10  to what the Court instructed them on this issue yesterday.

11         **THE COURT:**  Yes.

12         **MS. VAUGHN:**  And incorporate it into the final

13  instruction.  But this is getting at that idea of later

14  compliance is not a waiver.

15         **THE COURT:**  Okay.  Thank you.

16         **MS. VAUGHN:**  Thank you, Your Honor.

17         **THE COURT:**  Mr. Schoen?

18         Why don't you come to the podium?  I think it's

19  just easier for the court reporter if you have the

20  information.

21         **MR. SCHOEN:**  I'll make it brief, Your Honor.

22         Our objection is that -- first of all, we do

23  believe that we teed up, so to speak, executive privilege as

24  a defense.  I addressed that in Document 107 to try to make

25  it clear then, if it weren't clear.

1          In any event, I think the Court said this, but we

2    think it would be inappropriate to use the redline version

3    that tells the jury executive privilege is not an excuse.

4    And then our objection is that it weights it too much as to

5    what their -- what wouldn't be a defense in this case.  We

6    already -- unfortunately, we know that too well, but I don't

7    think that has to be hammered like this to the jury because

8    I think they're going to be confused as to what is a

9    defense.

10          And the last part, if that is intended to deal

11   with waiver, we have submitted our proposal on waiver of

12   default.  I assume that is.  I mean, I sent it to the

13   government.  I thought the idea was the government was

14   forwarding it all to the Court.

15          **THE COURT:**  They may have.  We've just been in

16   here.  I'm not sure I've seen them --

17          **MR. SCHOEN:**  I don't know that that's the case.  I

18   didn't speak to the government.  Mr. Corcoran did.

19          **THE COURT:**  The instructions that Mr. Corcoran and

20   Mr. Schoen have proposed to you.

21          **MS. VAUGHN:**  I did not.  I got them shortly before

22   I came in and let them know my position, but I don't have

23   time to --

24          **THE COURT:**  Do you have versions of them printed?

25          **MR. SCHOEN:**  Yes, Your Honor.

1          **THE COURT:**  I'd be happy to take a look at the

2     printed version.

3          **MR. CORCORAN:**  Your Honor, just one point

4     procedurally.

5          **THE COURT:**  Yeah.

6          **MR. CORCORAN:**  It would be great to be able to see

7     things printed out once the Court has --

8          **THE COURT:**  Yes.

9          **MR. CORCORAN:**  -- come up with a decision on some

10    of these things.

11         **THE COURT:**  Yes.

12         **MR. CORCORAN:**  Most of it's not disputed.

13         The reason I raise that is just, trying to follow

14    what was offered as an amendment by the government to --

15         **THE COURT:**  Oh, yeah.  We're not going to do this

16    on the fly.

17         **MR. CORCORAN:**  Yeah.

18         **THE COURT:**  Yeah.

19         **MR. CORCORAN:**  And really the point that I wanted

20    to make because I heard a change that's talk about executive

21    privilege and use the words "in fact" and something about

22    the jury not considering it, which I think would be

23    objectionable from our standpoint because the fact of

24    executive privilege is something that they can consider.

25    Even though they can't consider it as a legal defense --

1          **THE COURT:**  I understand.  Yes.  We'll try to

2     parse this carefully.

3          **MR. SCHOEN:**  I'm hopeful there's nothing

4     objectionable in there, Your Honor.  I just don't know.  I

5     only got it, as government counsel said, shortly before we

6     showed up here at 1:00.

7          **MS. VAUGHN:**  I'm sorry.

8          **MR. SCHOEN:**  I am just saying I only got it from

9     the government about a quarter to 1 or something like that.

10          **THE COURT:**  All right.  Okay.

11          So there are two additional proposed jury

12     instructions.  The government has them.  Correct,

13     Ms. Vaughn?

14          **MS. VAUGHN:**  Yes, Your Honor.  We've considered

15     them.  We object.

16          **THE COURT:**  Do you object to them entirely or do

17     you have problems with the specific language?

18          **MS. VAUGHN:**  We object to them entirely,

19     Your Honor.

20          **THE COURT:**  Do you want to come to the podium and

21     tell me why?

22          **MS. VAUGHN:**  The second one is the waiver

23     argument, which is not available under the law.

24          The first one -- so for a defendant to be entitled

25     to an instruction on the theory of the defense, there has to

1    be sufficient evidence in the record to support it.

2         So there are two issues with this instruction:

3    One, is it instructs the jury on unavailable defenses under

4    the law suggesting that they are, in fact, available.  And

5    it puts facts in front of the jury that are not in evidence.

6         So I'll start at the beginning.  The sentence,

7    "The defendant contends that he believed that the dates for

8    compliance with the subpoena were not fixed and were

9    flexible and subject to change and that therefore, he did

10   not act willfully."

11        There's no evidence in the record about the

12   defendant's belief that the dates were not fixed and were

13   flexible.  So there's nothing -- there's no sufficient

14   evidence to provide that instruction to the jury.

15        And then the idea that, if you find that he

16   honestly and reasonably believed, there is no evidence about

17   the defendant's past experience with subpoenas.  The

18   suggestion that the jury can find he acted willfully if they

19   think he acted in an honest and reasonable belief on an

20   executive privilege, that's a mistake of law defense that's

21   not available.

22        This line about his belief that negotiations were

23   ongoing as part of an "accommodation" process; that, again,

24   appears to be a reference to this idea that the defendant

25   has been raising the whole time that the law requires

-4374-

1    Congress to go to a court because he made an executive

2    privilege claim.  That's a mistake of law defense.

3         The rest appears to return to --

4         **THE COURT:**  Let me ask you this question.  So I

5    understand the points.  On the elements of the offense, once

6    we get to willfully, there's a paragraph that defines

7    willfully generally -- in general, what willfully is,

8    deliberate and intentional means this.

9         Then the government has proposed at least one

10   paragraph about -- well, a paragraph about what doesn't

11   count or what isn't required.  Obviously, Mr. Schoen says

12   that's basically putting too weight on what can't count or

13   what is irrelevant.

14        If you want that language, would you object to a

15   sentence that says, you know, if one would not act

16   deliberately or intentionally if he believed that the dates

17   were flexible or something like that?

18        Basically -- you have a paragraph that defines

19   willful in general.  Then there is a paragraph, from the

20   government's perspective, that says, this that and these

21   other things are irrelevant.  And Mr. Schoen has said that's

22   sort of putting your thumb on the scale of what can't count.

23        But you could either eliminate some of those

24   things or you could put some weight back on what could

25   count.

1           **MS. VAUGHN:**  I disagree with Mr. Schoen's

2    characterization.

3           **THE COURT:**  I suspected that but what if I don't?

4           **MS. VAUGHN:**  So the instruction on the meaning of

5    willfulness does say already that deliberate and intentional

6    does not mean by accident, mistake or inadvertence.

7           **THE COURT:**  Yes.

8           **MS. VAUGHN:**  The defendant is not entitled to the

9    instruction -- the specific instruction he wants, as long as

10   whatever it is he is entitled to is appropriately

11   represented in the instruction.

12          **THE COURT:**  Why isn't what the government wants

13   then included within that first paragraph?

14          **MS. VAUGHN:**  Because it doesn't make clear that a

15   mistake of law is not the kind of mistake that's being

16   discussed there.  And particularly, with the evidence we

17   have in our case, I have no doubt that, if there is not that

18   language in the instruction, we are going to hear argument

19   in closing that he just made a mistake because he thought

20   executive privilege was the claim, what have you.

21          We think it's essential that those instructions be

22   included.  We do not think that the jury would have a clear

23   understanding of what a mistake is under the law without it.

24          **THE COURT:**  Okay.  Thank you.

25          Mr. Schoen?

1          **MR. SCHOEN:**  As Your Honor has previously held,

2    mistake of fact accordingly is a defense to the law.  The

3    jury wouldn't intuitively know that, so they have to be

4    advised about that.

5          **THE COURT:**  We're not going to be gilding the lily

6    on anything here.  Right?

7          **MR. SCHOEN:**  This reflects the defense theory in

8    the case.  Now, if some of the specifics were left out, I

9    would still object, but it would be a correct proposition of

10   the law and it would at least be something toward the

11   defense theory.

12         By that I mean first sentence:  "The defendant,

13   Stephen K. Bannon, contends that he believed that the dates

14   for compliance with the subpoena were not fixed and were

15   flexible and subject to change and that, therefore, he did

16   not act willfully in failing to comply with the subpoenas by

17   the date set out in the indictment."  That is his defense

18   theory.  It's a defense theory and he's entitled to it.

19         By the way, this idea that, because he didn't

20   testify and put on evidence, he can't show his belief is

21   simply wrong.  That's what cross-examination is for, to make

22   that a plausible inference to be drawn.

23         Now, "If you find that Mr. Bannon honestly and

24   reasonably believed, based on the exchange of" -- I now have

25   plugged in here the factors that we had discussed with the

1    Court that could be considered.

2          **THE COURT:**  Uh-huh.

3          **MR. SCHOEN:**  So that's why it draws it

4    specifically to this defense theory in this case.

5          We find that Mr. Bannon honestly and reasonably

6    believed, based on the exchange of letters between his

7    lawyer -- I guess the Court doesn't need me to read it out

8    loud probably.

9          **THE COURT:**  No, I don't.

10         **MR. SCHOEN:**  Up until --

11         **THE COURT:**  No, I understand.

12         **MR. SCHOEN:**  The word "process".

13         **THE COURT:**  Your point is that this is consistent

14   with your theory.

15         **MR. SCHOEN:**  Yes.

16         **THE COURT:**  It is only identifying evidence that

17   is in or is, like, reasonably inferred from evidence that is

18   in, for example, Mr. Bannon's past experience with subpoenas

19   which one of the letters references.  Executive privilege is

20   obviously in.  Exchange of letters are obviously in.  And

21   therefore, that this is legitimate.

22         Okay.  Let's talk about the waiver of default.

23         **MR. SCHOEN:**  Yes, Your Honor.

24         **THE COURT:**  So what is the best case for the

25   proposition that the Committee could waive a default here?

1          **MR. SCHOEN:**  Well, I say that the contract

2    principle cases apply to this.  Do I have a criminal case

3    that says we apply contract principles in this situation for

4    default?  I don't.  But that may just reflect my research

5    skills.

6          We do know, as I said the other day, that we apply

7    contract principles in criminal law all the time, and

8    *Santobello* is probably the best example of that.  But it

9    certainly logically applies.  And again, this is our theory

10   of defense.

11         I don't have a case that says it doesn't apply.

12         **THE COURT:**  An absence of evidence --

13         **MR. SCHOEN:**  I cite the civil case as a principle

14   of law.

15         **THE COURT:**  Okay.  I understand the parties'

16   positions.  We're going to take another recess.

17         **MS. VAUGHN:**  Your Honor, I do have another

18   objection I need to raise.

19         **THE COURT:**  Okay.  Of course.

20         **MS. VAUGHN:**  I'm sorry I didn't raise this

21   earlier, but the listing of evidence that they believe

22   supports their theory in the instruction, we think is

23   improper.  It's to point the jury -- to use a court's

24   instruction to point the jury to specific evidence that goes

25   to the defendant's theory.

975

1          **THE COURT:**  Thank you.

2          So here's what I'm going to do.  I'm going to go

3     back to chambers.  I'm going to reflect on the motion, the

4     renewed motion, the proffer of evidence from Mr. Schoen, the

5     government's position and these instructions and the

6     parties' respective positions.

7          Assuming we're going forward with instructions, my

8     plan is to finalize them and to communicate them to the

9     parties before we come back and I tell you where I am, for

10    example, on that motion or the instructions.

11         I will get them out to the parties.  You will

12    have, what we would consider to be, the final versions and

13    what I would intend, assuming we do this to instruct the

14    jury on so that you have the actual documents, Word

15    documents.

16         If you would like me to print them we could do

17    that too, Mr. Corcoran, or we could attempt to.

18         **MR. CORCORAN:**  I think just sending them to us is

19    great, Your Honor.

20         **THE COURT:**  Okay.  So we're in recess again.

21         **DEPUTY CLERK:**  All rise.

22         **MR. CORCORAN:**  Your Honor, just one quick

23    question.  Just wondering what you think we might accomplish

24    for the rest of the day just for planning purposes.

25         **THE COURT:**  So on the -- let me ask this question:

1    If we are going to get to closings, the jury instructions

2    would take me, if we do them, probably take me 15 to 20

3    minutes.  They have been paired down somewhat.  They're not

4    even full pages.

5         If we get past the jury instructions, how long are

6    the parties' closings?  Ms. Vaughn, how long would your

7    closing be?

8         **MS. VAUGHN:**  The government's closing is 30

9    minutes, and we wouldn't expect rebuttal to be more than

10   15-20 minutes depending.

11        **THE COURT:**  Mr. Corcoran, do you have a sense of

12   how long your closing would be?

13        **MR. CORCORAN:**  I think in the same range that was

14   just mentioned, which is why I raised it.  It's just whether

15   to argue and have them not deliberate at all or --

16        **THE COURT:**  Do you have a view?

17        **MR. CORCORAN:**  I'm fine with -- I think starting

18   in the morning in terms of hearing the instructions, hearing

19   the argument and then setting to work so that there's --

20        **THE COURT:**  In the morning when they're fresh,

21   they haven't been sitting around?

22        **MR. CORCORAN:**  Absolutely.  No forgetting.

23        **MS. VAUGHN:**  We've been here all day, Your Honor.

24   We think we should just do it.  We have three hours left in

25   the day.  We think --

1          **THE COURT:**  Well, that assumes I can get this done

2    quickly.  And what I'm -- so I don't think there's any

3    reason to split the instructions from the closings.  I think

4    they should be done together.  The problem is, if I take a

5    while to do -- to finalize the instructions to get them out

6    to the parties to think about the motion that I have to

7    consider, and if we are not back on the record until 2:45 or

8    3:00, then there's at least the risk that we take -- well,

9    maybe we --

10          **MS. VAUGHN:**  We have no objection if we are forced

11    to rebut tomorrow morning or something because we don't get

12    through it.  But I think -- I mean if we go until 5:15 I

13    mean --

14          **THE COURT:**  I know.  The jury got here late too.

15          **MR. CORCORAN:**  Our position -- I like Ms. Vaughn's

16    position.  They're ready to go whenever and we feel the same

17    way.

18          **THE COURT:**  Yes, of course.

19          **MR. CORCORAN:**  But I think the real issue here is,

20    in my mind, having the jury hear the instructions and the

21    argument of counsel that is pertinent to the instructions or

22    will be considered in the framework of the instructions and

23    then begin their work.  What I certainly don't want to

24    happen is run late or to have only the government open, have

25    them thinking about that overnight --

1          **THE COURT:**  That is not going to happen.

2          Here's -- we are either going to do all of the

3      instructions, closings today or all of that tomorrow

4      morning.  It sort of depends on how quickly I can get done

5      with the instructions.  If I can do it very quickly, then I

6      think we have plenty of time and deal with the motion.

7          If it takes -- if, for whatever reason, I am

8      delayed and just can't get it done, then I think what I'll

9      have to do is I'll come back and say, in light of that, it's

10     better to let it pend till tomorrow.

11         I know I'm the holdup at this point, so let me go

12     do the work.

13         **MS. VAUGHN:**  Thank you, Your Honor.

14         **MR. CORCORAN:**  Just, from our perspective, you're

15     not the holdup in the sense that we want to -- we'd have the

16     chance to look at the instructions and consider them --

17         **THE COURT:**  Of course.

18         **MR. CORCORAN:**  -- on behalf of Mr. Bannon.

19         **MR. SCHOEN:**  Judge, should I give you Mr. Bannon's

20     fully-informed position on his testimony and rest before we

21     leave here?

22         **THE COURT:**  Yes.  Yes.  That's prudent.  Thank

23     you.

24         **MR. SCHOEN:**  Judge, so that the Court is clear,

25     we've discussed with Mr. Bannon his right to testify and

1      gone over is it carefully.  I'd like to just read two

2      paragraphs that will, I think, fully inform the Court as to

3      his reasons why he's not testifying.  And I've gone over

4      this with Mr. Bannon.

5            The defendant, Mr. Bannon, understands that he has

6      the right to testify on his own behalf, and he has very much

7      wanted to do so since the day he was indicted.  He has

8      wanted to testify publicly in this case under oath to tell

9      the Court, the jury and the public exactly what the true

10     facts of the case are.

11           However, on the advice of counsel, in this case,

12     me and Mr. Corcoran and support of the team, he has decided

13     not to testify because he understands that he would be

14     barred from telling the true facts and explaining why he did

15     what he did and why he did not do what he did not do in

16     relation to the Committee's subpoena.

17           He wanted to testify under oath to explain that,

18     at all times, he believed he was doing what the law required

19     him to do, based on his lawyer's advice and the other

20     factors mentioned in Mr. Costello's declaration, ECF30-1.

21     If Mr. Bannon were to testify, his testimony would have been

22     consistent with the narrative in Mr. Costello's declaration,

23     ECF30-1.

24           Mr. Bannon's experienced lawyer, Mr. Costello,

25     received the subpoena from the Committee, and he told

1    Mr. Bannon he had received it.  Mr. Costello then told

2    Mr. Bannon that he, Costello, had received notice that

3    former President Trump had invoked executive privilege.

4    From that point forward, Mr. Costello, as Mr. Bannon's

5    lawyer, told him that executive privilege had been invoked

6    and he was not permitted by law to comply with the subpoena.

7    Mr. Bannon followed and relied on the advice and

8    directives of his experienced lawyer at all times and in all

9    regards with respect to the subpoena.  He relied as well on

10   the OLC opinions that were relevant and that his lawyer

11   brought to his attention, and he and Mr. Costello reasonably

12   believed they applied to him.

13   Since Mr. Bannon would be barred from testifying

14   about his reliance on the advice of counsel and on facts

15   supporting his defenses of executive privilege, public

16   authority and entrapment by estoppel, as would Mr. Costello,

17   Mr. Bannon will not be testifying and he will not call

18   Mr. Costello as a witness, who he otherwise would have

19   called for the same reasons, the Court's orders barring

20   these defenses and testimony relevant to and in support of

21   those barred defenses.

22   And I say this last part with most respect to the

23   Court.  I know the Court thought it out carefully and the

24   Court has opined at length on its reasoning.  Thank you,

25   Your Honor.

1          **THE COURT:**  Thank you.

2          Let me just ask one question.  Mr. Bannon, have

3    you conferred with counsel and do you knowingly and

4    intentionally waive your right to testify based on the

5    advice that Mr. Schoen has just described?

6          **THE DEFENDANT:**  Yes, Your Honor.

7          **THE COURT:**  Okay.  Thank you very much.  And thank

8    you, Mr. Schoen, for reminding me of that.

9          **MR. SCHOEN:**  Thank you, Your Honor.  Ms. Vaughn.

10          **MS. VAUGHN:**  Your Honor, I'm sorry thinking about

11   the schedule more.  It's not clear to me how long the

12   defense would like to consider the instructions afterward.

13   So now I'm concerned that it will be more time the jury is

14   sitting around, and then we'll end up telling them to leave

15   anyway.

16          **THE COURT:**  Which I would like to.

17          **MS. VAUGHN:**  Maybe we should just let them go and

18   come back.

19          **THE COURT:**  Mr. Corcoran, how long do you think?

20          **MR. CORCORAN:**  Your Honor, I was just going to say

21   we're --

22          **THE COURT:**  It seems to me.  I'm sorry.

23          There really are three substantive ones.  It's the

24   two that you've proposed and it's the edits from the

25   government on the elements.  How long, after I've gotten

1    them back to you, would you want to have time to rebut

2    those?

3         **MR. CORCORAN:**  It's hard to estimate, but we'll

4    try to be as fast as we can.  As I said, we have no

5    objection to the, you know, dismissing the jury today as a

6    practical matter.  As you know, you know, we've tried to be

7    efficient in the case on so many different levels.

8         **THE COURT:**  Yes.

9         **MR. CORCORAN:**  And in terms of the promise to the

10   jury, there was the possibility that a defense case would

11   have put us into next week.  So just, in efficiency terms,

12   we're happy to dismiss the jury today, Your Honor.

13        **MS. VAUGHN:**  We reluctantly agree, Your Honor.

14        **THE COURT:**  Okay.  All right.

15        Then we're going to do that.  We are going to

16   recess.  We will allow the jury to go home.  I will go back

17   and consider the instructions first and get them to the

18   parties so you can start (inaudible) them.  Then I will also

19   consider the pending, renewed Motion to Dismiss and what I

20   intend to do with that.

21        When we communicate the jury instructions to the

22   parties by email just will be my final view, we will let the

23   parties know whether I intend to come back on the record

24   relatively soon on the motion or if, instead, we'll just do

25   it the morning, but I'll be respectful of everyone's time.

1          **MR. SCHOEN:**  One other suggestion from the

2     government.

3          **THE COURT:**  Yes.

4          **MS. VAUGHN:**  There is a hearing tonight, and so we

5     thought it might be prudent to bring the jury in, give them

6     the cautionary instruction on media and meeting,

7     particularly tell them to not to watch anything tonight

8     given that we don't know what might come up in them.

9          **THE COURT:**  Mr. Corcoran, what do you think about

10    that?

11         **MR. CORCORAN:**  Your Honor, I think the Court's

12    already instructed them, and so we don't see the need for an

13    additional instruction.

14         **MS. VAUGHN:**  We also think the defense needs to

15    rest in front of the jury to create the record in front of

16    the jury and let them know that tomorrow we're just closing.

17         **THE COURT:**  We could do that in the morning.

18         **MS. VAUGHN:**  (Nodded head.)

19         **THE COURT:**  Right?

20         **MS. VAUGHN:**  (Nodded head.)

21         **THE COURT:**  It seems to me that there is the

22    inefficiency of just getting the jury down here and the like

23    but it's not that.

24              I don't think we need to instruct the jury again

25    on the cautionary instruction.  That's not a reason to bring

1    them in, in my view.  I think I would just like to talk to

2    them about where we are.

3            So, Ms. Lesley, can you bring them in just to let

4    them know we're dismissing them for today?

5            **MR. SCHOEN:**  Judge, we don't have any objection

6    either way on that.  I was just leaving it up to the Court.

7            **THE COURT:**  Yes.

8            **MR. SCHOEN:**  I was mindful -- it's up to the Court

9    whether I say that or not.  We were mindful the other day.

10   We were asked not to bring the jury's attention to that CNN

11   special in particular.  I don't know how --

12           **THE COURT:**  I don't intend to tell the jury about

13   the motion -- or judgment of acquittal.  I don't want to

14   bring to them the attention any specific thing that they

15   shouldn't be watching, but I may give them another reminder

16   that they should keep not talking to anyone about this case

17   at all.

18           Ms. Lesley, I'd like to go into a recess while you

19   gather the jury.  Okay?  Then, once you have them and we're

20   ready to go, we can go back on the record.  Okay?

21           So we're in recess.

22           **DEPUTY CLERK:**  All rise.  Court is in recess.

23       (Recess at 2:23 p.m. until 2:32 p.m.)

24           **DEPUTY CLERK:**  All rise.  This honorable court is

25   now in session.

1          **THE COURT:**  Ms. Lesley, would you please bring the

2     jury in?

3               (Jury enters the courtroom.)

4          **DEPUTY CLERK:**  Please be seated and come to order.

5          Your Honor, we are now back on the record.

6          **THE COURT:**  Thank you.

7          Mr. Schoen or Mr. Corcoran, I think you had one

8     small thing to do as to your case before I talk to the jury.

9          **MR. CORCORAN:**  Your Honor, the defense rests.

10         **THE COURT:**  Thank you, Mr. Corcoran.

11         Ladies and gentlemen of the jury, thank you for

12    your patience today.  As you just heard, the defense has

13    also rested its case.

14         We've considered the most efficient way to

15    proceed, and what we're going to do is we're going to

16    release you for the day.  What we're going to do is, in the

17    morning, first thing in the morning, I'm going to give you

18    final instructions, which are basically the instructions

19    that you will be using to deliberate.  And you will hear

20    from the parties in their closing arguments, and then you

21    will go off and deliberate.

22         That's the first thing I wanted to tell you.

23         The second thing is, as you all know, we have 13

24    jurors now and not 14.  That juror had a health issue that

25    caused her to be unable to continue to serve.  It is not

**-4390-**

1     anything contagious.  It's not COVID.  It's not something

2     that any of you have to worry about having caught from her

3     or anything like that, so please don't worry.  But as often

4     happens and the reason we have two alternates is in case

5     something like this comes up.  So we excused her this

6     morning after she communicated what had happened with the

7     doctor's appointment she had this morning.  So we now have

8     13 jurors who will be here tomorrow morning.

9          The last thing I'd like to just remind you.  I

10    know you've heard it from me a lot this week so forgive me

11    but it's just a reminder.  Again, I'm not going to read the

12    whole instruction.

13         Do not talk to anyone about this case, whether in

14    the courthouse, outside the courthouse, any other jurors.

15    Do not read about this case.  Do not read or watch TV or

16    videos about this matter or related matters through the end

17    of your deliberations.

18         Obviously, when you deliberate tomorrow, you will

19    necessarily be talking with one another about this case but,

20    until then, the same instructions I gave you before apply,

21    and you are to not communicate with anyone about the case

22    and all of those things.

23         So, again, I want to thank you very much for your

24    patience today.  I think, as often happens in these cases,

25    there is a lot of discussion with the lawyers that occurs

1    outside the presence of the jury.  The fact that we did that

2    really has no effect on what you will ultimately be asked to

3    do, which is to decide the facts given my legal instructions

4    to you tomorrow.  Sometimes those discussions are helpful in

5    ways that it will improve the case as it goes to you

6    tomorrow.

7              So with all of that, I thank you again for being

8    here today, and you are excused for the rest of the day.

9    And we will start tomorrow morning at 9 a.m.  Okay?

10             Thank you, Ms. Lesley.

11             (Jurors exited the courtroom.)

12        **THE COURT:**  I just want to say that, now that

13   we've excused the jury, I think the plan is still the same.

14   I'm going to go back, finalize the instructions, communicate

15   them to the parties.  Then you'll have them, be able to

16   consider them overnight and the like.  And then I will

17   communicate at the same time what my plan is on the motion

18   that was argued earlier.  Okay?

19             So we are now in recess again.  Thank you.

20        **DEPUTY CLERK:**  All rise.

21        (Recess taken at 2:36 p.m.)

22

23

24

25

1              **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4   certify that the foregoing is a true and correct transcript

5   of the record of proceedings in the above-entitled matter.

6

7

8

9   _____July 21, 2022_____          _/s/_____
10            **DATE**                      **Lorraine T. Herman**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

989

1                        **C E R T I F I C A T E**

2

3              I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9    ____July 21, 2022_____              __/s/_____
                **Date**                              **Lorraine T. Herman**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

990

**DEPUTY CLERK: [11]**
891/2 915/4 915/14
915/16 924/19 924/21
975/21 984/22 984/24
985/4 987/20
**MR. CORCORAN: [75]**
895/6 895/8 895/22
896/7 897/4 899/2
899/6 904/8 904/10
904/13 904/15 904/17
904/22 905/13 905/20
905/22 905/24 906/4
906/10 911/10 912/18
914/7 914/13 914/22
918/14 956/24 957/2
957/10 957/14 957/23
958/3 958/8 958/12
958/18 958/25 959/9
959/13 959/18 959/23
960/1 960/3 960/7
960/10 960/13 960/16
960/19 960/23 961/1
961/5 961/18 961/21
961/25 962/2 962/16
962/24 967/3 967/6
967/9 967/12 967/17
967/19 975/18 975/22
976/13 976/17 976/22
977/15 977/19 978/14
978/18 981/20 982/3
982/9 983/11 985/9
**MR. SCHOEN: [85]**
891/12 892/15 893/1
893/6 893/10 893/25
894/11 894/17 895/3
917/19 917/24 918/24
919/1 919/6 919/17
919/19 919/24 920/7
920/10 920/13 921/5
921/12 922/9 922/12
922/15 923/22 924/24
925/7 925/16 925/18
926/8 926/14 928/4
928/6 929/22 931/24
932/3 932/10 932/13
932/23 933/4 933/9
933/16 934/4 934/10
934/12 934/14 934/17
934/20 934/24 935/3
935/22 936/19 945/8
945/25 946/6 946/14
946/22 947/2 948/10
949/4 949/15 949/20

955/11 957/6 965/21
966/17 966/25 968/3
968/8 972/1 972/7
973/3 973/10 973/12
973/15 973/23 974/1
974/13 978/19 978/24
981/9 983/1 984/5
984/8
**MS. VAUGHN: [85]**
891/7 892/19 894/15
908/9 910/12 911/7
911/12 912/14 913/2
914/4 914/16 914/20
920/14 920/16 920/20
920/24 949/24 950/5
950/15 952/3 953/25
954/10 954/13 955/7
956/10 956/17 956/23
957/3 957/7 957/12
957/15 957/20 957/24
958/2 958/7 958/11
958/19 959/3 959/10
959/14 959/17 959/22
959/25 960/4 960/6
960/9 960/12 960/15
960/18 960/22 960/25
961/4 961/14 962/6
962/23 963/11 963/16
964/10 964/14 965/2
965/9 965/12 965/16
966/21 968/7 968/14
968/18 968/22 971/1
971/4 971/8 971/14
974/17 974/20 976/8
976/23 977/10 978/13
981/10 981/17 982/13
983/4 983/14 983/18
983/20
**THE COURT: [214]**
**THE DEFENDANT: [1]**
981/6

**'**

**'21 [1]** 903/3

**/**

**/s [2]** 988/9 989/9

**0**

**0670 [1]** 891/3

**1**

**10 a.m [1]** 909/22
**100 [1]** 948/21
**100-6 [1]** 890/15

**107 [1]** 965/24
**10:00 [1]** 931/11
**10:38 [1]** 890/6
**116 [1]** 893/17
**11:00 [1]** 931/11
**11:15 [1]** 915/15
**11:23 [1]** 915/15
**11:36 [1]** 924/20
**12 [2]** 962/19 962/20
**13 [4]** 914/1 915/2
985/23 986/8
**14 [1]** 985/24
**14th [14]** 898/9 902/20
903/2 907/10 909/18
910/3 931/16 935/5
935/5 936/11 945/1
947/4 947/6 947/12
**15 [1]** 976/2
**15-20 [1]** 976/10
**15th [3]** 930/17 931/18
947/25
**16 [1]** 905/17
**1793 [1]** 890/13
**18 [1]** 903/14
**18th [26]** 902/20 903/2
903/19 903/25 904/5
904/11 904/21 930/19
930/19 931/13 931/19
931/20 932/5 933/21
933/22 944/3 944/7
944/12 944/17 945/11
945/17 946/21 946/23
947/5 947/15 948/2
**19th [4]** 893/11 930/24
932/4 944/20
**1:00 [3]** 923/20 924/10
968/6
**1:07 [1]** 924/20
**1:21-670 [1]** 890/3

**2**

**2.101 [1]** 911/8
**2.102 [1]** 911/14
**2.104 [1]** 956/20
**2.105 [2]** 911/9 911/15
**20 [3]** 921/1 976/2
976/10
**20001 [2]** 890/12
890/24
**201 [1]** 890/19
**202-252-1793 [1]**
890/13
**2021 [12]** 898/9 898/9
903/2 903/9 903/14

904/1 904/12 906/19
906/23 907/3 907/23
931/6
**2021-0670 [1]** 891/3
**2022 [4]** 890/5 907/14
988/9 989/9
**21 [4]** 890/5 907/14
988/9 989/9
**21201 [1]** 890/19
**2225 [1]** 890/20
**23 [3]** 906/22 907/23
931/6
**23rd [1]** 933/23
**25th [1]** 890/19
**2800 [1]** 890/15
**29 [7]** 893/8 894/3
894/4 916/5 917/25
949/1 949/25
**2:23 [1]** 984/23
**2:32 [1]** 984/23
**2:36 [1]** 987/21
**2:45 [1]** 977/7

**3**

**30 [2]** 914/7 976/8
**30-1 [1]** 927/10
**32 [4]** 905/10 906/12
906/21 907/25
**323 [1]** 904/24
**330 [1]** 904/24
**333 [1]** 890/23
**334-395-6611 [1]**
890/16
**339 [1]** 904/24
**36106 [1]** 890/16
**3:00 [1]** 977/8

**4**

**410-385-2225 [1]**
890/20
**4700-C [1]** 890/23
**4th [2]** 890/12 935/4

**5**

**521 [1]** 893/12
**522 [1]** 893/12
**540 [1]** 915/2
**555 [1]** 890/12
**5:15 [1]** 977/12

**6**

**6611 [1]** 890/16
**670 [1]** 890/3
**6th [5]** 931/7 939/1
940/18 940/24 941/21

**7**

**7th [12]** 898/9 904/4 904/20 909/17 909/22 931/20 945/11 945/13 945/21 946/23 947/4 952/21

**8**

**8th [2]** 910/4 952/21

**9**

**9 a.m [2]** 913/15 987/9

**A**

**a.m [7]** 890/6 909/22 913/15 915/15 915/15 924/20 987/9
**ability [1]** 950/5
**able [8]** 907/22 925/9 926/1 938/10 938/12 942/11 967/6 987/15
**about [99]** 891/18 893/3 893/11 895/1 896/19 900/19 900/23 900/24 900/24 902/4 903/20 904/20 906/22 907/9 910/9 910/10 911/1 912/2 912/8 912/12 915/10 915/20 915/24 916/20 916/21 916/25 917/2 917/7 917/9 917/10 918/15 918/18 920/17 922/1 923/19 927/19 927/19 928/12 928/20 928/20 928/21 929/9 929/12 932/1 932/20 933/2 934/4 934/6 934/23 935/7 936/14 936/21 937/14 939/23 939/24 941/2 943/11 944/24 944/25 945/2 946/9 946/21 946/24 947/11 949/22 951/23 952/1 953/2 953/17 955/3 955/10 962/5 962/13 963/21 965/8 967/20 967/21 968/9 969/11 969/16 969/22 970/10 970/10 972/4 973/22 977/6 977/25 980/14 981/10 983/9 984/2 984/12 984/16 986/2 986/13 986/15 986/16

986/19 986/21
**above [5]** 905/17 926/17 926/25 988/5 989/5
**above-entitled [2]** 988/5 989/5
**absence [1]** 974/12
**absolutely [4]** 905/20 906/10 949/5 976/22
**abundance [1]** 896/9
**abundantly [1]** 897/18
**accepted [1]** 901/14
**access [1]** 900/1
**accident [1]** 971/6
**accommodation [2]** 928/20 969/23
**accomplish [1]** 975/23
**accordingly [1]** 972/2
**accurate [1]** 948/22
**acknowledge [1]** 897/15
**acquittal [21]** 894/19 895/5 895/14 897/5 897/24 899/1 899/21 903/7 905/9 906/12 910/11 910/13 915/7 915/19 916/4 917/1 917/5 917/16 921/25 949/3 984/13
**act [3]** 969/10 970/15 972/16
**acted [2]** 969/18 969/19
**acting [2]** 937/21 937/24
**action [2]** 890/3 902/10
**acts [2]** 909/1 929/15
**actual [2]** 937/15 975/14
**actually [5]** 895/20 904/7 919/19 962/12 964/3
**add [3]** 897/25 963/18 965/6
**adding [2]** 956/5 965/2
**additional [7]** 891/19 894/10 963/3 963/6 963/13 968/11 983/13
**address [4]** 895/17 896/10 928/20 963/14
**addressed [3]** 953/6 953/10 965/24
**addressing [1]** 923/4

**adequate [1]** 922/22
**admissible [3]** 940/4 941/13 948/6
**admission [1]** 909/25
**admitted [1]** 900/21
**adopted [1]** 956/11
**advice [8]** 937/21 963/18 963/21 979/11 979/19 980/7 980/14 981/5
**advised [6]** 927/7 927/8 927/8 948/18 948/22 972/4
**advising [1]** 952/9
**afraid [1]** 913/8
**after [18]** 894/7 906/4 907/14 921/8 922/2 922/7 923/4 925/10 930/24 930/25 931/13 931/13 932/4 955/2 962/13 962/18 981/25 986/6
**afternoon [3]** 913/4 924/21 924/23
**afterward [1]** 981/12
**again [36]** 898/22 899/8 901/14 901/19 902/22 905/25 909/12 909/20 911/19 911/22 913/14 923/10 923/23 927/12 927/23 929/3 930/12 931/5 931/15 936/3 936/5 939/11 942/4 943/6 945/10 947/3 947/24 953/10 969/23 974/9 975/20 983/24 986/11 986/23 987/7 987/19
**against [2]** 899/23 940/16
**agenda [3]** 934/6 940/6 940/10
**agent [3]** 891/9 953/1 958/23
**agree [33]** 892/8 892/21 910/16 912/5 912/18 912/21 956/23 956/24 959/9 959/10 959/13 959/18 959/23 959/25 960/1 960/3 960/4 960/6 960/9 960/12 960/13 960/15 960/16 960/18 960/19 960/22 960/23 960/25

**961/1 961/4 961/5 962/24 982/13
**agreed [2]** 923/12 955/24
**agreeing [1]** 911/24
**agreement [5]** 892/5 892/14 916/16 923/25 956/13
**agrees [2]** 957/1 959/8
**Ah [1]** 911/12
**ahead [4]** 893/2 919/21 922/19 963/14
**akin [1]** 949/1
**AL [1]** 890/16
**all [54]** 892/7 898/1 899/8 899/11 899/16 902/12 904/4 905/18 907/15 908/10 911/16 912/6 912/21 915/2 915/14 918/9 921/13 924/19 927/9 928/3 929/11 933/24 936/4 937/20 938/8 941/9 949/17 952/4 952/9 952/18 954/25 955/1 961/24 961/25 965/22 966/14 968/10 974/7 975/21 976/15 976/23 978/2 978/3 979/18 980/8 980/8 982/14 984/17 984/22 984/24 985/23 986/22 987/7 987/20
**allegations [1]** 940/21
**alleges [1]** 903/10
**alleging [1]** 940/17
**allow [1]** 982/16
**allowed [3]** 907/24 950/6 964/23
**alluded [1]** 947/10
**along [1]** 902/12
**already [15]** 892/22 896/12 896/20 897/2 910/19 920/21 936/8 944/21 945/3 947/22 953/6 962/10 966/6 971/5 983/12
**also [24]** 891/14 907/6 908/22 910/2 911/19 915/10 922/20 922/21 923/4 925/20 925/24 941/24 942/18 951/3 954/14 957/5 957/9 957/13 962/12 963/2

**A**

**also... [4]** 964/16
982/18 983/14 985/13
**alternate [4]** 961/6
961/9 962/9 962/13
**alternates [1]** 986/4
**although [2]** 899/9
940/4
**always [4]** 892/6
894/15 949/6 964/11
**am [17]** 895/6 898/22
907/2 916/1 916/3
916/4 917/1 917/7
918/3 922/19 925/14
948/18 949/10 964/16
968/8 975/9 978/7
**AMANDA [2]** 890/10
891/8
**ambiguous [1]** 932/18
**amendment [5]** 899/22
917/15 942/2 950/22
967/14
**AMERICA [2]** 890/2
891/3
**American [1]** 938/24
**Amerling [32]** 897/23
898/3 900/1 900/4
900/11 900/18 903/17
906/17 909/1 926/11
926/15 928/23 936/13
936/20 937/10 938/6
938/19 938/19 939/10
941/8 942/25 943/2
943/3 945/9 945/10
946/16 946/18 946/20
952/3 952/8 952/24
963/25
**Amerling's [3]** 899/9
908/3 948/12
**another [15]** 894/24
910/6 912/22 914/18
918/9 921/6 940/11
946/7 946/8 947/13
950/18 974/16 974/17
984/15 986/19
**answer [11]** 898/10
898/10 898/13 901/3
901/12 918/21 920/8
938/20 950/15 953/21
954/16
**answered [2]** 943/5
949/25
**answers [1]** 951/4
**anticipate [1]** 907/18

**any [46]** 894/22 895/17
895/24 901/8 904/18
905/16 909/21 910/5
912/4 912/15 912/17
913/25 914/2 916/19
919/11 921/10 921/19
930/18 931/23 933/2
934/8 934/24 936/15
939/17 943/5 944/10
946/4 946/9 947/23
947/25 951/11 951/12
952/14 953/7 953/19
956/15 958/15 958/16
961/9 962/14 966/1
977/2 984/5 984/14
986/2 986/14
**anyone [5]** 942/1
942/3 984/16 986/13
986/21
**anything [17]** 894/22
895/25 904/6 910/11
912/11 916/12 916/22
916/25 917/7 927/19
938/7 945/23 951/8
972/6 983/7 986/1
986/3
**anyway [4]** 919/11
927/11 929/3 981/15
**apologize [1]** 964/10
**appear [3]** 907/17
950/14 953/24
**appearance [1]** 918/4
**APPEARANCES [1]**
890/9
**appears [2]** 969/24
970/3
**applicable [10]** 892/3
892/23 892/25 956/22
958/5 958/24 959/11
959/17 959/22 961/8
**applied [1]** 980/12
**applies [4]** 896/19
911/1 944/9 974/9
**apply [7]** 892/6 927/16
974/2 974/3 974/6
974/11 986/20
**appointment [6]** 913/5
913/6 913/6 913/12
913/17 986/7
**appreciates [2]** 935/4
935/6
**approach [3]** 917/20
926/9 926/15
**appropriate [9]** 894/6

915/11 917/17 918/8
918/9 926/18 929/13
958/25 965/6
**appropriately [1]**
971/10
**arbiter [1]** 939/8
**arbitrary [2]** 933/22
945/19
**are [83]** 892/24 895/4
896/24 896/24 898/25
900/22 902/7 902/15
902/15 903/7 903/21
905/9 906/1 907/8
909/13 909/13 911/4
911/5 911/23 915/4
915/16 915/21 916/15
916/15 917/6 917/24
921/9 921/10 921/14
922/9 923/13 924/3
924/4 924/21 926/24
927/13 927/16 927/24
928/8 929/6 933/1
933/10 935/9 935/23
936/6 938/4 939/8
940/8 941/1 951/5
951/6 953/25 955/14
955/16 955/24 956/13
961/7 962/19 962/19
963/6 963/13 968/11
969/2 969/4 969/5
970/21 971/18 973/20
976/1 976/5 977/7
977/10 978/2 979/10
981/23 982/15 984/2
985/5 985/18 986/21
987/4 987/8 987/19
**areas [5]** 892/13
892/13 924/7 925/3
925/19
**argue [1]** 976/15
**argued [1]** 987/18
**argument [13]** 894/7
894/12 908/21 917/10
917/16 918/22 921/20
922/22 951/9 968/23
971/18 976/19 977/21
**arguments [9]** 909/11
917/6 917/24 923/7
923/8 924/11 950/12
953/23 985/20
**around [11]** 892/13
915/8 921/17 921/20
923/1 923/5 923/16
924/11 945/12 976/21

981/14
**articulated [2]** 924/3
953/18
**as [99]** 892/3 892/6
892/6 892/22 893/6
893/22 895/11 896/2
896/8 896/15 896/15
896/25 898/22 899/1
899/2 900/7 900/19
900/20 901/17 902/5
905/4 905/5 905/22
906/8 906/8 909/1
909/3 909/12 910/20
910/22 910/22 911/5
911/24 912/11 913/18
915/19 916/4 916/21
917/6 917/6 917/10
921/9 922/6 923/12
923/12 925/8 925/13
925/19 925/19 927/17
928/22 928/23 929/15
931/23 933/18 936/14
937/4 937/5 937/9
937/12 939/19 949/2
949/8 949/9 949/11
955/12 955/19 963/20
964/3 964/8 964/17
965/23 966/4 966/8
967/14 967/25 968/5
969/23 971/9 971/9
972/1 974/6 974/13
979/2 980/4 980/9
980/16 980/18 982/4
982/4 982/4 982/5
982/6 985/8 985/12
985/23 986/3 986/24
987/5
**ask [14]** 891/15 897/4
905/17 918/20 946/6
946/8 948/24 950/11
951/3 954/15 954/24
970/4 975/25 981/2
**asked [22]** 893/4
894/12 898/7 900/18
901/1 901/4 901/7
901/15 930/5 930/17
943/8 943/9 944/13
944/18 946/20 946/22
946/24 948/25 951/14
953/3 984/10 987/2
**asking [4]** 893/2
919/18 919/20 947/20
**asks [1]** 945/15
**asserted [1]** 953/25

**A**

**assertion [1]** 944/8
**assume [2]** 892/17
966/12
**assumes [1]** 977/1
**assuming [5]** 920/6
922/3 923/24 975/7
975/13
**assurance [1]** 919/9
**attached [1]** 907/7
**attack [1]** 931/7
**attempt [2]** 912/1
975/17
**attention [5]** 910/14
911/22 980/11 984/10
984/14
**attentive [1]** 961/12
**attorney [2]** 890/15
963/19
**ATTORNEYS [1]**
890/11
**attorneys' [1]** 911/16
**auspices [1]** 936/23
**author [1]** 901/23
**authority [5]** 937/7
942/7 942/25 944/15
980/16
**authorized [5]** 900/9
909/4 909/4 937/13
938/23
**available [6]** 900/15
950/20 950/22 968/23
969/4 969/21
**Avenue [1]** 890/23
**aware [5]** 891/18 927/3
928/8 939/19 947/2

**B**

**back [36]** 891/16
900/19 900/21 906/19
910/14 911/22 913/12
913/14 915/4 915/9
915/16 915/21 917/9
920/6 921/3 923/4
924/22 927/2 929/6
950/16 952/4 954/14
954/24 955/3 970/24
975/3 975/9 977/7
978/9 981/18 982/1
982/16 982/23 984/20
985/5 987/14
**background [1]** 925/1
**badly [1]** 925/8
**Baltimore [1]** 890/19

**Bankruptcy [1]** 890/22
**Banks [1]** 941/19
**BANNON [76]** 890/5
891/4 891/13 896/6
897/8 897/20 898/18
898/21 899/7 900/20
900/24 902/14 902/19
903/3 903/11 903/17
904/1 904/5 906/15
906/18 907/4 907/12
922/16 926/23 926/25
927/1 927/5 927/22
927/23 928/11 928/13
930/5 930/10 930/15
930/18 931/3 931/5
931/10 931/12 931/17
932/7 932/21 933/1
934/7 935/4 935/22
936/2 936/5 936/7
936/21 936/22 936/22
937/21 938/9 938/24
939/11 940/3 940/6
942/11 943/8 944/16
954/6 972/13 972/23
973/5 978/18 978/25
979/4 979/5 979/21
980/1 980/2 980/7
980/13 980/17 981/2
**Bannon's [23]** 921/22
922/17 923/6 926/15
928/21 929/7 932/2
932/3 932/20 933/7
933/12 933/18 934/1
935/6 937/11 937/15
938/4 938/25 955/20
973/18 978/19 979/24
980/4
**barred [3]** 979/14
980/13 980/21
**barren [1]** 898/17
**barring [1]** 980/19
**based [14]** 893/15
899/1 900/4 901/23
902/6 903/16 917/6
923/12 925/9 948/11
972/24 973/6 979/19
981/4
**basic [2]** 917/2 917/9
**basically [6]** 893/25
910/20 912/5 970/12
970/18 985/18
**basing [1]** 898/25
**basis [2]** 951/11
954/19

**be [130]**
**bears [1]** 902/18
**because [42]** 891/25
894/18 896/13 897/25
899/20 903/20 904/3
907/8 911/22 913/14
916/5 921/25 923/15
928/13 929/5 932/10
933/5 933/10 935/22
939/10 941/20 944/19
944/19 946/16 947/9
947/9 948/5 950/18
951/9 955/1 962/7
963/12 964/22 966/7
967/20 967/23 970/1
971/14 971/19 972/19
977/11 979/13
**become [1]** 940/20
**been [43]** 892/3 892/6
892/12 894/10 896/12
896/20 897/2 900/14
902/7 902/11 902/23
902/24 903/1 906/14
912/15 913/20 915/20
916/8 918/2 919/10
922/2 925/8 927/7
927/8 927/8 927/9
930/14 930/25 936/12
943/14 945/11 948/6
948/22 950/12 953/24
962/10 966/15 969/25
976/3 976/21 976/23
979/21 980/5
**before [33]** 890/8
891/18 891/25 892/1
892/7 894/3 895/12
900/6 900/9 909/5
910/6 921/15 921/19
924/15 925/23 926/13
928/1 928/15 935/21
942/12 943/16 943/16
950/9 953/17 961/9
962/11 962/14 966/21
968/5 975/9 978/20
985/8 986/20
**begin [2]** 907/12
977/23
**beginning [3]** 891/6
965/5 969/6
**behalf [5]** 901/2 937/7
944/4 978/18 979/6
**behind [1]** 935/15
**being [7]** 898/7 898/8
911/21 925/9 950/19

971/15 987/7
**belied [1]** 927/1
**belief [14]** 931/25
932/1 932/2 932/4
933/7 933/18 933/19
953/5 964/22 964/24
969/12 969/19 969/22
972/20
**believe [17]** 892/24
900/3 901/22 908/3
925/12 925/21 929/7
934/6 941/11 942/5
954/20 956/13 956/15
956/22 958/5 965/23
974/21
**believed [9]** 925/13
969/7 969/16 970/16
972/13 972/24 973/6
979/18 980/12
**believes [3]** 896/2
912/16 942/7
**benign [1]** 916/21
**best [4]** 898/6 921/5
973/24 974/8
**better [3]** 949/6 954/5
978/10
**between [12]** 900/19
900/23 914/10 919/4
927/17 927/17 936/18
944/1 946/3 946/15
961/2 973/6
**beyond [5]** 897/7
897/14 903/25 908/4
951/1
**bias [2]** 941/3 941/7
**Biden [2]** 944/4 944/15
**Biden's [1]** 944/7
**bigger [1]** 919/18
**bit [3]** 943/4 961/7
964/11
**Bob [1]** 900/20
**Bobb [1]** 948/20
**body [7]** 909/1 909/5
929/15 929/20 952/5
952/22 953/11
**books [2]** 940/23
941/1
**both [5]** 894/20 911/23
912/5 916/15 923/5
**bottom [1]** 958/6
**bound [3]** 925/14
927/12 927/16
**box [1]** 893/7
**bracketed [1]** 958/14

**B**

**brackets [1]** 892/23
**branch [2]** 950/18 954/1
**brief [5]** 899/20 914/11 915/6 919/5 965/21
**briefed [1]** 918/7
**briefs [2]** 896/22 911/3
**bring [9]** 918/19 951/9 962/4 983/5 983/25 984/3 984/10 984/14 985/1
**bringing [2]** 920/6 961/23
**broad [2]** 928/17 937/17
**broaden [1]** 941/20
**brought [5]** 891/21 940/16 942/8 962/6 980/11
**Bryan [1]** 904/24
**building [1]** 907/17
**burden [4]** 905/2 908/11 950/7 957/8
**buy [2]** 904/15 904/16

**C**

**call [3]** 936/25 950/13 980/17
**called [4]** 893/14 915/21 956/3 980/19
**Calley [1]** 955/14
**calling [1]** 925/21
**came [7]** 894/13 898/8 906/1 913/11 913/11 943/10 966/22
**can [36]** 893/21 896/11 902/11 905/12 908/1 910/15 910/17 912/25 913/22 914/7 914/18 914/19 921/1 923/3 923/9 923/10 923/14 924/7 927/18 932/8 933/6 949/1 955/6 955/20 955/25 961/12 963/14 967/24 969/18 977/1 978/4 978/5 982/4 982/18 984/3 984/20
**can't [7]** 954/14 956/6 967/25 970/12 970/22 972/20 978/8
**cannot [3]** 919/12 948/21 964/9

**Capitol [1]** 931/8
**caption [1]** 956/2
**careful [1]** 925/10
**carefully [2]** 968/2 979/1 980/23
**CARL [1]** 890/8
**carrying [1]** 942/4
**case [74]** 891/3 893/21 894/8 896/8 896/19 896/25 897/6 897/17 897/17 898/1 898/2 900/8 902/5 903/1 904/23 906/25 908/13 910/5 911/1 911/6 911/6 911/20 912/5 912/11 915/22 916/12 918/2 918/16 918/18 919/7 920/5 920/11 921/16 921/22 922/5 922/7 922/10 925/9 931/23 938/9 938/11 938/13 942/2 942/18 950/2 951/15 953/4 955/13 955/14 956/2 956/21 966/5 966/17 971/17 972/8 973/4 973/24 974/2 974/11 974/13 979/8 979/10 979/11 982/7 982/10 984/16 985/8 985/13 986/4 986/13 986/15 986/19 986/21 987/5
**cases [5]** 955/14 955/16 955/16 974/2 986/24
**caught [2]** 927/17 986/2
**caused [1]** 985/25
**caution [1]** 896/9
**cautionary [3]** 960/20 983/6 983/25
**CEO [1]** 952/6
**certain [2]** 900/14 902/22
**certainly [12]** 894/6 898/14 922/9 926/19 933/12 933/16 933/18 935/9 939/21 946/16 974/9 977/23
**certify [2]** 988/4 989/4
**cetera [1]** 922/23
**chairman [58]** 893/22 898/13 900/7 900/8 901/9 901/11 906/14

907/10 907/24 908/17 909/2 925/4 925/4 926/21 927/23 928/7 929/4 929/7 929/17 929/24 930/1 930/2 930/8 930/16 930/21 930/23 932/19 933/11 935/7 936/4 936/7 937/1 937/12 937/20 937/20 938/17 939/3 939/5 939/17 939/22 939/25 940/13 940/16 940/19 940/20 941/14 941/24 941/25 943/11 945/18 945/23 946/16 947/18 948/7 948/16 951/23 953/22 954/19
**Chairman Thompson [50]** 893/22 898/13 900/7 900/8 901/9 901/11 907/10 908/17 925/4 925/4 926/21 927/23 929/4 929/7 929/17 929/24 930/1 930/2 930/8 930/16 930/21 930/23 933/11 935/7 936/4 936/7 937/1 937/12 937/20 937/20 938/17 939/3 939/5 939/17 939/22 939/25 940/16 940/19 941/14 941/24 941/25 943/11 946/16 947/18 948/7 948/16 951/23 953/22 954/19
**Chairman Thompson's [2]** 909/2 932/19
**chambers [2]** 924/5 975/3
**chambers' [1]** 892/12
**chance [2]** 891/21 978/16
**change [12]** 896/13 907/7 907/8 930/21 931/3 931/5 945/19 946/23 946/24 967/20 969/9 972/15
**changed [3]** 931/21 945/11 956/1
**changes [1]** 963/24
**channel [2]** 946/15 952/13
**characterization [1]**

971/2
**charge [3]** 897/8 921/3 923/22
**charged [1]** 908/5
**charges [6]** 897/9 946/2 947/4 947/5 947/11 957/25
**Charles [1]** 890/19
**chase [2]** 918/5 927/12
**check [1]** 957/19
**choose [1]** 928/25
**choosing [1]** 941/3
**chose [1]** 928/19
**chosen [1]** 908/24
**Christina [1]** 948/20
**circuit [5]** 925/14 943/20 943/22 943/23 955/15
**circumstantial [1]** 957/21
**cite [2]** 940/9 974/13
**civil [3]** 902/10 939/6 974/13
**claim [3]** 939/12 970/2 971/20
**claims [3]** 896/6 908/14 942/6
**clarify [1]** 912/14
**clause [1]** 935/10
**clear [18]** 892/6 897/18 899/10 909/14 909/16 909/23 909/24 915/19 943/5 943/21 964/2 964/5 965/25 965/25 971/14 971/22 978/24 981/11
**clearly [3]** 891/24 900/5 948/5
**client [3]** 907/4 931/5 944/11
**client's [1]** 944/10
**close [1]** 894/8
**closely [1]** 946/19
**closest [2]** 950/17 950/21
**closing [6]** 971/19 976/7 976/8 976/12 983/16 985/20
**closings [11]** 891/25 892/1 921/4 921/19 923/14 962/14 962/19 976/1 976/6 977/3 978/3
**CNN [1]** 984/10

995

**C**

COLUMBIA [1] 890/1
come [20] 891/5
896/18 909/17 910/4
910/25 915/9 917/9
917/12 923/4 952/7
955/2 965/18 967/9
968/20 975/9 978/9
981/18 982/23 983/8
985/4
comes [3] 921/3 932/6
986/5
coming [2] 910/7
915/25
comment [2] 895/23
896/3
committed [8] 897/21
900/25 902/15 903/11
903/17 904/1 904/3
906/18
committee [71] 898/5
898/15 900/20 901/3
901/8 901/11 901/25
902/7 906/15 907/7
907/13 909/1 909/5
909/14 910/1 925/5
926/3 926/6 926/20
927/7 927/18 927/22
928/6 928/7 928/20
928/24 929/15 929/17
929/18 929/23 929/25
930/9 931/7 931/8
934/2 934/6 935/23
937/6 937/8 937/13
937/13 937/14 937/19
938/1 938/14 938/17
938/21 938/21 939/1
939/12 940/15 941/8
941/15 941/19 943/16
945/18 946/13 947/16
951/12 952/4 952/4
952/19 952/25 953/1
953/8 953/12 953/25
954/15 954/22 973/25
979/25
Committee's [13]
907/5 907/11 929/9
929/10 930/4 930/12
935/25 937/2 940/25
948/16 951/19 952/10
979/16
communicate [6]
902/8 975/8 982/21
986/21 987/14 987/17

communicated [3]
895/16 952/12 986/6
communication [3]
907/1 952/13 960/21
communications [4]
900/23 934/8 934/11
961/2
competent [4] 929/12
938/20 946/18 953/2
complete [2] 905/25
907/14
completely [2] 936/2
953/1
compliance [12]
900/24 907/23 908/1
930/10 936/10 936/10
945/2 947/14 947/21
965/14 969/8 972/14
complicated [1]
941/11
complications [3]
913/8 913/8 913/9
complied [4] 928/18
931/11 931/13 937/18
compliment [2] 949/9
949/11
comply [30] 898/21
898/21 899/7 899/7
902/14 902/17 903/3
907/5 907/25 909/9
909/9 909/24 910/3
910/4 926/17 927/2
927/14 927/24 927/24
928/14 928/14 931/6
931/18 935/6 937/15
942/11 945/3 964/21
972/16 980/6
complying [6] 931/10
936/22 938/7 944/23
964/18 964/25
composition [1] 926/3
concede [3] 933/25
934/1 955/13
concedes [1] 909/7
conceding [1] 955/12
conceived [1] 900/6
concerned [4] 911/18
915/19 922/1 981/13
concerning [1] 944/11
conclude [4] 897/14
904/2 920/3 953/12
concluded [1] 915/3
conclusions [3]
925/11 941/1 942/24

conduct [3] 896/16
910/23 955/13
confer [4] 892/10
921/1 923/1 923/16
conference [2] 921/3
923/23
conferred [1] 981/3
conflicts [2] 940/14
941/7
confront [1] 899/23
confrontation [1]
935/10
confused [1] 966/8
confusion [1] 964/11
Congress [12] 897/9
900/25 903/12 903/18
937/7 938/22 938/22
938/23 939/18 963/17
964/21 970/1
congressional [4]
915/12 921/21 927/6
934/22
connection [2] 894/3
946/3
consequence [2]
931/12 931/12
consider [15] 902/18
915/7 922/22 939/1
954/22 965/3 967/24
967/25 975/12 977/7
978/16 981/12 982/17
982/19 987/16
consideration [2]
925/10 961/21
considered [10]
896/24 897/16 911/5
938/18 938/23 958/1
968/14 973/1 977/22
985/14
considering [1]
967/22
consistent [8] 902/11
941/1 942/20 952/24
953/16 959/20 973/13
979/22
constantly [1] 937/10
Constitution [1]
890/23
contacted [1] 927/5
contacts [1] 927/22
contagious [1] 986/1
contemplate [1]
894/12
contemplative [1]

949/7
contempt [9] 897/9
900/25 903/12 903/18
931/1 931/2 944/20
963/17 964/21
contends [2] 969/7
972/13
continue [4] 913/16
914/1 915/22 985/25
continued [3] 930/18
934/25 936/9
contract [3] 974/1
974/3 974/7
contrary [1] 923/7
conversations [1]
952/9
convince [1] 948/1
copies [4] 891/21
905/14 905/18 906/9
copiously [1] 949/15
copy [4] 906/7 948/14
948/19 956/8
CORCORAN [24]
890/17 891/13 895/4
908/7 909/11 910/16
910/18 914/6 914/12
914/19 947/10 958/17
958/24 963/25 965/8
966/18 966/19 975/17
976/11 979/12 981/19
983/9 985/7 985/10
Corcoran's [2] 908/21
962/11
corporation's [1]
952/6
Corps [1] 894/17
correct [12] 899/2
921/12 934/9 934/10
934/12 956/18 959/8
959/12 968/12 972/9
988/4 989/4
Costello [24] 900/20
902/3 906/15 926/22
927/5 927/8 927/14
927/21 927/22 931/1
932/8 934/7 939/11
944/5 944/13 944/16
948/2 979/24 980/1
980/2 980/4 980/11
980/16 980/18
Costello's [6] 907/6
909/24 926/21 927/10
979/20 979/22
could [41] 894/7 894/8

**C**

**could... [39]** 894/9
895/19 897/7 897/13
897/13 897/20 898/18
900/6 900/15 901/7
902/13 902/18 903/16
904/2 905/10 905/17
906/18 908/4 908/12
910/14 911/18 913/16
917/12 921/3 921/15
936/2 950/16 955/22
955/22 963/20 965/2
970/23 970/24 970/24
973/1 973/25 975/16
975/17 983/17
**couldn't [8]** 898/10
898/10 898/13 900/13
901/3 901/12 901/12
904/18
**counsel [11]** 891/5
914/10 919/4 937/21
957/1 963/2 968/5
977/21 979/11 980/14
981/3
**count [12]** 899/12
903/6 903/13 903/24
931/16 931/18 931/19
963/20 970/11 970/12
970/22 970/25
**counts [1]** 960/2
**couple [1]** 944/6
**course [24]** 892/21
896/18 899/2 905/4
906/4 910/25 913/17
921/6 923/18 930/22
931/4 931/6 939/3
939/4 939/6 940/3
941/3 942/10 943/24
948/13 955/8 974/19
977/18 978/17
**court [93]** 890/1
890/22 891/16 891/17
892/15 893/2 893/3
893/7 893/12 893/18
893/18 893/19 894/2
894/4 894/12 896/9
897/4 897/11 898/23
902/9 903/6 904/23
910/17 910/19 911/8
911/13 911/18 912/16
918/4 918/6 918/9
918/11 918/18 919/9
919/9 919/11 919/19
920/24 921/2 923/22

923/23 925/8 925/23
925/25 926/4 928/1
928/2 929/3 931/25
934/20 935/11 935/14
935/17 937/22 938/14
938/18 939/19 939/21
940/12 942/8 948/8
948/21 949/7 949/8
949/10 951/7 951/24
953/3 953/6 956/12
957/15 957/16 961/2
965/10 965/19 966/1
966/14 967/7 970/1
973/1 973/7 978/24
979/2 979/9 980/23
980/23 980/24 984/6
984/8 984/22 984/24
988/3 989/3
**court's [16]** 910/16
911/15 912/19 917/19
918/1 918/3 918/15
925/10 925/11 927/3
941/12 947/2 949/12
974/23 980/19 983/11
**courthouse [2]** 986/14
986/14
**courtroom [6]** 961/10
961/23 962/4 962/7
985/3 987/11
**courts [5]** 890/22
939/7 939/8 939/13
940/1
**cover [1]** 891/17
**covered [1]** 912/19
**COVID [1]** 986/1
**CR [1]** 890/3
**Crawford [2]** 935/11
942/16
**CRC [1]** 890/21
**create [2]** 910/14
983/15
**created [1]** 906/4
**credibility [2]** 958/10
958/20
**crime [6]** 900/25
902/15 903/18 904/1
904/3 906/19
**crimes [3]** 897/21
900/25 908/5
**criminal [4]** 891/3
928/25 974/2 974/7
**critical [1]** 899/17
**critically [3]** 900/18
901/7 947/8

**cross [7]** 899/24
900/12 906/1 925/20
929/14 938/12 972/21
**cross-examination [6]**
899/24 906/1 925/20
929/14 938/12 972/21
**cross-examined [1]**
900/12
**cure [3]** 894/22 912/2
954/6
**cured [1]** 895/19
**currently [1]** 943/17
**currently-sitting [1]**
943/17
**cut [2]** 918/5 927/12

**D**

**D'Amico [1]** 891/10
**D.C [4]** 890/11 925/14
943/20 943/23
**date [36]** 903/8 903/11
903/14 903/24 904/3
904/3 904/17 904/20
904/25 905/1 905/2
905/3 906/5 908/2
910/3 931/16 931/20
931/21 933/21 933/22
945/19 945/19 945/21
946/3 946/21 946/23
946/23 946/24 947/9
947/11 947/14 948/3
963/23 972/17 988/9
989/9
**dated [3]** 906/8 906/22
907/3
**dates [43]** 898/8
899/10 899/11 899/14
899/15 899/16 900/24
902/14 903/7 907/16
908/24 908/24 909/13
909/13 909/15 931/13
931/25 933/7 933/10
933/14 933/17 933/20
934/4 935/23 936/5
941/5 942/10 943/13
943/13 944/23 945/9
945/20 947/7 947/11
952/2 952/14 952/15
953/5 953/9 969/7
969/12 970/16 972/13
**DAVID [3]** 890/14
890/15 891/12
**day [24]** 890/7 894/11
909/23 918/6 926/13

927/1 930/24 930/25
931/10 935/18 938/19
939/10 941/8 944/12
944/24 955/15 974/6
975/24 976/23 976/25
979/7 984/9 985/16
987/8
**Day 1 [1]** 927/1
**DC [3]** 890/4 890/12
890/24
**dcd.uscourts.gov [1]**
890/24
**deadline [1]** 944/19
**deal [2]** 966/10 978/6
**dealt [1]** 943/15
**December [2]** 903/2
933/23
**decide [5]** 917/5 923/8
949/23 950/3 987/3
**decided [4]** 912/4
926/16 943/25 979/12
**decides [1]** 928/2
**deciding [3]** 916/11
916/21 951/7
**decision [17]** 908/23
916/3 916/13 917/4
922/17 922/17 923/6
928/8 928/21 929/24
937/9 941/6 943/10
949/2 949/7 964/2
967/9
**decision-maker [2]**
929/24 937/9
**decision-making [1]**
941/6
**decisions [2]** 937/8
941/23
**declaration [3]** 927/10
979/20 979/22
**default [16]** 902/21
902/22 902/23 902/25
904/24 936/6 936/12
936/12 945/15 945/15
945/16 946/2 966/12
973/22 973/25 974/4
**defaulted [2]** 936/8
947/22
**defendant [36]** 890/6
890/14 897/19 898/4
899/22 908/11 908/12
908/14 908/16 908/20
909/6 909/7 909/9
909/15 909/16 909/21
910/2 932/9 932/11

**D**

**defendant... [17]**
932/13 932/16 952/12
953/7 959/7 959/11
963/13 964/4 964/9
964/18 964/21 968/24
969/7 969/24 971/8
972/12 979/5
**defendant's [14]**
905/10 905/15 905/18
906/21 907/25 908/18
909/19 910/8 932/15
953/5 953/19 969/12
969/17 974/25
**defense [45]** 894/8
894/8 914/10 914/13
914/22 919/7 920/5
920/11 922/5 922/7
922/10 925/9 925/18
925/19 931/24 937/5
938/13 941/12 942/19
942/20 942/21 950/6
950/23 950/25 963/17
964/20 965/24 966/5
966/9 967/25 968/25
969/20 970/2 972/2
972/7 972/11 972/17
972/18 973/4 974/10
981/12 982/10 983/14
985/9 985/12
**defenses [6]** 925/11
938/10 969/3 980/15
980/20 980/21
**defined [2]** 899/1
902/24
**defines [2]** 970/6
970/18
**definition [1]** 932/20
**degree [1]** 943/20
**delayed [1]** 978/8
**deliberate [8]** 949/1
962/14 970/8 971/5
976/15 985/19 985/21
986/18
**deliberately [1]** 970/16
**deliberates [2]** 922/3
949/3
**deliberations [4]**
960/14 961/3 962/8
986/17
**demand [2]** 907/11
936/9
**demeanor [1]** 949/16
**denial [1]** 943/22

**denied [3]** 896/3 910/8
953/14
**depending [2]** 923/8
976/10
**depends [1]** 978/4
**deposition [7]** 907/18
907/18 909/18 910/5
944/10 948/14 948/15
**depositions [1]**
956/22
**describe [2]** 899/12
903/21
**described [3]** 896/14
910/21 981/5
**describes [2]** 911/15
911/15
**desire [1]** 941/9
**determination [1]**
944/8
**determine [2]** 896/25
911/6
**determined [3]** 898/23
908/2 944/2
**determining [2]** 941/4
941/4
**develop [1]** 938/17
**dichotomy [1]** 947/3
**did [40]** 898/3 898/11
901/22 904/5 909/12
909/16 909/17 909/21
909/23 910/4 928/24
929/4 929/7 930/16
930/20 930/23 930/23
931/3 931/9 931/13
934/25 939/1 941/14
942/13 945/19 946/22
947/24 955/9 964/18
964/21 965/3 966/18
966/21 969/9 972/15
979/14 979/15 979/15
979/15 987/1
**didn't [24]** 893/1
894/12 897/25 898/14
900/12 904/18 906/2
914/16 916/11 926/19
926/23 934/7 934/23
939/22 944/18 945/10
945/20 946/24 951/24
951/24 954/18 966/18
972/19 974/20
**difference [1]** 903/15
**different [11]** 901/4
903/10 903/13 917/15
922/8 933/20 950/11

953/13 954/1 964/7
982/7
**differing [1]** 941/15
**direct [2]** 931/24
957/21
**directed [1]** 926/22
**directives [1]** 980/8
**directly [2]** 940/18
941/24
**disagree [2]** 958/7
971/1
**disagreement [4]**
892/13 912/12 924/1
924/7
**discuss [14]** 892/24
894/14 895/8 899/18
912/22 914/7 915/9
918/10 922/13 923/2
924/7 936/24 961/17
963/7
**discussed [3]** 971/16
972/25 978/25
**discussion [8]** 896/8
912/24 914/10 915/3
919/4 921/17 932/25
986/25
**discussions [3]**
896/23 911/3 987/4
**dismiss [11]** 893/15
903/6 915/1 917/14
917/21 917/22 949/25
950/8 955/4 982/12
982/19
**dismissal [6]** 914/14
914/23 918/8 918/8
950/25 953/18
**dismissing [2]** 982/5
984/4
**disputed [1]** 967/12
**disputes [1]** 939/9
**disrespect [1]** 936/15
**distinction [1]** 936/17
**distinctions [1]**
935/10
**district [6]** 890/1 890/1
890/8 890/22 939/21
957/16
**do [93]** 891/25 892/5
892/5 892/19 894/18
894/22 894/22 894/25
895/8 895/10 895/25
896/11 901/5 910/11
913/18 916/1 916/2
916/5 916/9 916/23

917/1 919/7 919/11
919/21 920/10 922/6
922/6 922/18 922/20
922/24 923/14 924/1
927/18 927/19 929/19
929/22 933/25 933/25
945/24 945/25 947/17
949/13 949/14 955/2
955/3 955/22 955/25
958/24 961/16 962/5
962/18 963/8 965/1
965/22 966/24 967/15
968/16 968/16 968/20
971/22 974/2 974/6
974/17 975/2 975/13
975/16 976/2 976/11
976/16 976/24 977/5
978/2 978/5 978/9
978/12 979/7 979/15
979/15 979/19 981/3
981/19 982/15 982/20
982/24 983/9 983/17
985/8 985/15 985/16
986/13 986/15 986/15
987/3
**doctor [2]** 913/21
913/22
**doctor's [1]** 986/7
**document [2]** 909/25
965/24
**documents [20]**
901/16 902/21 903/8
903/13 903/19 907/9
907/12 907/13 907/15
908/1 909/17 928/10
943/9 944/10 945/13
945/16 947/4 947/5
975/14 975/15
**does [17]** 896/9
897/24 899/20 904/25
921/16 923/22 929/17
931/23 932/19 935/3
936/10 943/17 944/15
945/23 946/4 971/5
971/6
**doesn't [12]** 893/12
898/20 912/14 933/13
942/8 942/15 951/7
964/15 970/10 971/14
973/7 974/11
**doing [5]** 912/17
918/15 949/15 962/15
979/18
**don't [54]** 891/15

**D**

**don't... [53]** 891/22
894/13 895/22 895/24
896/7 896/7 902/22
902/23 905/14 910/12
912/3 912/17 918/10
918/18 918/22 919/21
919/22 923/15 929/18
933/5 936/11 936/14
940/11 941/11 943/6
944/16 947/3 949/7
954/15 955/12 956/15
956/22 958/25 965/18
966/6 966/17 966/22
968/4 971/3 973/9
974/4 974/11 977/2
977/11 977/23 983/8
983/12 983/24 984/5
984/11 984/12 984/13
986/3
**done [4]** 977/1 977/4
978/4 978/8
**double [1]** 957/18
**doubt [7]** 897/8 897/14
903/25 908/5 910/5
957/13 971/17
**down [3]** 929/1 976/3
983/22
**draft [2]** 892/2 892/22
**drafted [1]** 898/7
**drafts [1]** 901/16
**draw [1]** 911/22
**drawing [2]** 897/12
910/14
**drawn [1]** 972/22
**draws [1]** 973/3
**drew [1]** 891/19
**Dunn [1]** 891/9
**Dunn-Gordon [1]**
891/9
**during [6]** 896/21
911/2 913/7 918/15
960/14 961/3
**duties [1]** 916/23

**E**

**each [4]** 901/1 901/8
926/24 937/9
**earlier [7]** 942/13
947/10 948/4 948/25
949/8 974/21 987/18
**early [1]** 921/1
**easier [1]** 965/19
**ECF [3]** 891/22 893/16

927/10
**ECF30 [2]** 979/20
979/23
**ECF30-1 [2]** 979/20
979/23
**edit [1]** 956/19
**edits [4]** 963/1 963/5
963/9 981/24
**effect [4]** 935/1 940/22
942/1 987/2
**effectively [1]** 916/17
**efficiency [1]** 982/11
**efficient [6]** 896/17
910/24 920/17 922/21
982/7 985/14
**eight [1]** 929/18
**either [12]** 895/24
905/2 913/16 916/19
927/25 928/16 938/18
938/24 944/11 970/23
978/2 984/6
**elected [1]** 938/22
**element [13]** 898/16
898/19 902/16 908/14
908/22 908/25 909/8
909/8 909/12 931/22
937/4 951/18 951/21
**elements [9]** 898/22
899/1 908/5 951/15
962/25 963/5 963/10
970/5 981/25
**elicited [1]** 963/25
**eliminate [3]** 956/16
956/19 970/23
**eliminating [1]** 942/14
**else [1]** 963/19
**email [4]** 892/12 924/5
955/9 982/22
**emailed [1]** 924/5
**end [6]** 911/20 922/4
930/6 950/2 981/14
986/16
**enforcement [1]** 939/6
**enough [3]** 922/8
930/9 935/14
**ensure [2]** 916/11
963/19
**ensured [1]** 919/9
**ensuring [1]** 940/25
**entered [1]** 961/10
**enters [1]** 985/3
**entire [2]** 938/5 951/9
**entirely [2]** 968/16
968/18

**entitle [1]** 929/16
**entitled [8]** 929/22
950/24 968/24 971/8
971/10 972/18 988/5
989/5
**entrapment [1]** 980/16
**equation [1]** 933/17
**equivocal [1]** 898/6
**especially [1]** 899/12
**essential [1]** 971/21
**essentially [7]** 896/11
896/20 900/22 901/4
901/9 903/12 962/19
**establish [2]** 937/12
937/19
**estimate [1]** 982/3
**estoppel [1]** 980/16
**et [1]** 922/23
**et cetera [1]** 922/23
**Evaluation [2]** 959/15
959/20
**EVAN [2]** 890/17
891/13
**even [13]** 892/2 899/14
905/16 907/20 925/14
935/16 947/21 951/7
954/14 954/15 954/23
967/25 976/4
**event [5]** 919/11
934/24 943/5 947/23
966/1
**events [3]** 940/18
940/24 941/21
**eventually [1]** 935/24
**ever [2]** 938/6 941/15
**every [8]** 897/17 901/1
902/3 918/4 929/16
946/17 947/18 952/7
**everyone [6]** 912/25
914/18 919/10 924/23
957/1 959/7
**everyone's [1]** 982/25
**everything [2]** 906/16
951/16
**evidence [72]** 893/15
894/2 894/10 896/24
897/6 897/12 897/13
897/17 897/18 897/19
897/22 898/17 900/4
900/5 900/8 900/15
901/22 902/2 902/5
902/18 904/18 905/7
905/9 905/11 906/12
906/16 906/21 906/23

907/6 907/22 908/15
908/18 908/19 909/8
909/10 909/16 909/20
910/7 911/5 921/10
921/14 925/22 926/24
940/4 941/13 942/24
949/6 950/2 952/14
952/16 952/16 952/23
953/7 953/11 953/13
956/21 957/5 957/21
958/4 969/1 969/5
969/11 969/14 969/16
971/16 972/20 973/16
973/17 974/12 974/21
974/24 975/4
**evidentiary [1]** 922/5
**evolved [1]** 943/17
**exactly [5]** 912/12
933/4 943/16 945/12
979/9
**examination [6]**
899/24 906/1 925/20
929/14 938/12 972/21
**examine [14]** 925/24
926/1 926/20 935/7
937/6 937/24 940/13
941/2 941/14 941/22
942/15 948/7 948/12
948/15
**examined [2]** 900/12
928/19
**example [7]** 929/24
935/12 952/6 955/15
973/18 974/8 975/10
**exchange [3]** 972/24
973/6 973/20
**exclude [2]** 893/15
959/5
**excluding [2]** 894/2
959/3
**exclusion [1]** 918/9
**exculpatory [6]** 900/3
900/5 951/6 951/12
953/13 954/20
**excuse [7]** 913/25
961/12 961/21 964/9
964/18 965/4 966/3
**excused [6]** 895/12
961/10 964/4 986/5
987/8 987/13
**excusing [3]** 961/6
962/13 964/25
**executive [22]** 902/9
927/9 927/13 935/24

# E

executive... [18]
963/24 964/1 964/3
964/8 964/17 964/24
965/3 965/23 966/3
967/20 967/24 969/20
970/1 971/20 973/19
980/3 980/5 980/15
exhibit [8] 901/10
905/10 905/16 906/12
906/21 906/24 906/24
908/3
exhibits [6] 901/2
905/15 905/19 906/5
960/11 960/14
exists [1] 931/23
exited [1] 987/11
expect [3] 905/5 940/3
976/9
experience [2] 969/17
973/18
experienced [2]
979/24 980/8
explain [3] 922/16
938/11 979/17
explaining [1] 979/14
explanation [3] 922/15
960/8 964/1
extension [7] 930/5
930/15 943/8 943/9
944/13 944/18 951/20
extent [5] 911/13
912/8 912/16 920/2
938/13
extraordinary [1]
940/14

# F

fact [19] 892/24
901/24 903/5 909/22
910/10 911/24 912/10
913/21 932/24 933/14
933/17 933/19 957/19
965/3 967/21 967/23
969/4 972/2 987/1
factors [2] 972/25
979/20
facts [8] 896/25 911/6
941/10 969/5 979/10
979/14 980/14 987/3
failed [5] 898/21 899/7
908/11 909/9 931/17
failing [2] 910/3
972/16

failure [1] 902/17
fair [4] 896/17 910/24
922/8 933/19
fairly [3] 897/14 912/8
912/13
fairness [1] 894/11
familiar [1] 909/2
far [1] 896/9
fast [1] 982/4
favor [2] 908/10
953/20
FBI [1] 891/9
feel [1] 977/16
fellow [1] 944/4
Fernandez [1] 955/17
Fifth [3] 942/2 950/22
955/15
fight [1] 927/17
figured [1] 920/21
file [2] 891/22 893/8
filed [2] 917/22 917/22
filing [4] 892/11
893/16 895/13 906/5
filings [1] 924/4
final [6] 912/20 920/21
965/12 975/12 982/22
985/18
finalization [1] 921/18
finalize [5] 891/24
892/7 975/8 977/5
987/14
Finally [1] 902/16
financial [1] 940/25
find [18] 897/7 897/13
897/20 898/18 902/13
903/16 903/25 906/18
908/4 908/12 913/23
925/19 945/15 951/10
969/15 969/18 972/23
973/5
finding [1] 947/8
finds [1] 945/15
fine [3] 961/14 962/4
976/17
firm [1] 936/5
first [28] 891/17 892/9
894/23 895/9 896/12
898/4 898/16 899/11
909/12 911/7 924/25
926/5 931/4 938/16
939/20 950/16 951/14
952/4 952/10 952/18
961/7 965/22 968/24
971/13 972/12 982/17

985/17 985/22
first-hand [2] 926/5
952/10
five [2] 915/8 915/13
fixed [8] 933/14
933/17 941/5 952/15
953/10 969/8 969/12
972/14
flagged [1] 892/3
flatly [1] 942/5
flexibility [1] 947/14
flexible [11] 931/25
933/8 933/10 935/23
945/22 952/2 953/5
969/9 969/13 970/17
972/15
Floor [1] 890/19
flux [2] 899/11 902/15
fly [2] 949/4 967/16
focus [4] 924/25 925/3
926/8 929/5
follow [1] 967/13
followed [1] 980/7
following [3] 907/16
922/24 948/18
follows [1] 910/21
forced [1] 977/10
foregoing [2] 988/4
989/4
foreperson [1] 960/17
forgetting [1] 976/22
forgive [1] 986/10
form [4] 927/17 956/3
956/7 960/8
formal [2] 913/23
924/7
format [1] 956/1
former [8] 927/25
939/15 940/17 943/19
943/24 944/17 951/25
980/3
forth [5] 891/16 898/22
900/19 900/21 929/6
forward [8] 891/5
910/15 917/12 921/6
923/10 931/1 975/7
980/4
forwarding [1] 966/14
FOUR [1] 890/7
fourth [2] 902/16
958/14
framework [2] 941/4
977/22
Frank [1] 891/9

frankly [4] 892/13
929/23 933/19 940/11
fresh [1] 976/20
front [8] 894/19 895/23
915/20 932/16 943/7
969/5 983/15 983/15
full [2] 945/7 976/4
fully [5] 919/10 937/18
941/9 978/20 979/2
fully-informed [1]
978/20
function [2] 911/8
911/15
functions [1] 911/16
fundamental [1]
925/22
further [1] 942/4
future [1] 907/19

# G

GASTON [2] 890/11
891/8
gather [1] 984/19
gathered [1] 909/25
gave [3] 910/17 943/1
986/20
general [3] 898/15
970/7 970/19
generally [1] 970/7
generic [2] 912/8
912/13
gentlemen [1] 985/11
get [28] 892/1 892/7
893/3 896/1 913/23
922/3 924/4 930/7
933/10 938/12 938/25
940/6 941/9 944/25
951/16 951/17 954/21
961/16 970/6 975/11
976/1 976/5 977/1
977/5 977/11 978/4
978/8 982/17
gets [4] 921/15 932/4
932/11 932/13
getting [5] 920/4
928/13 944/22 965/13
983/22
GETTR [1] 910/4
gilding [1] 972/5
Giuliani [1] 948/20
give [19] 891/21
910/17 911/13 911/19
911/19 912/8 917/1
917/8 925/1 930/5

**G**

**give... [9]** 947/25
950/21 951/20 962/12
962/17 978/19 983/5
984/15 985/17
**given [11]** 896/8
901/10 901/10 902/13
918/1 929/15 944/19
948/14 948/19 983/8
987/3
**giving [3]** 901/19
916/20 930/15
**go [42]** 892/4 894/1
902/9 913/21 919/21
921/4 921/6 922/19
923/8 923/10 923/20
924/8 924/10 928/1
928/24 928/25 929/1
931/23 933/6 933/13
937/9 942/12 950/16
951/24 951/24 954/14
954/23 955/6 963/14
970/1 975/2 977/12
977/16 978/11 981/17
982/16 982/16 984/18
984/20 984/20 985/21
987/14
**goal [1]** 964/14
**goes [11]** 903/5
931/24 933/7 933/14
933/18 936/5 951/15
953/4 953/5 974/24
987/5
**going [59]** 891/16
894/1 895/4 911/19
912/25 916/1 916/2
916/3 916/8 916/9
916/13 916/13 917/1
917/1 917/7 917/8
920/5 923/20 924/25
931/1 934/13 934/18
935/24 938/10 944/2
946/12 951/2 955/2
955/7 955/21 956/3
957/16 961/6 961/13
962/12 962/12 962/19
963/3 966/8 967/15
971/18 972/5 974/16
975/2 975/2 975/3
975/7 976/1 978/1
978/2 981/20 982/15
982/15 985/15 985/15
985/16 985/17 986/11
987/14

**gone [3]** 928/15 979/1
979/3
**good [10]** 891/2 891/7
891/11 891/12 908/9
924/21 924/23 935/14
938/8 946/7
**Gordon [1]** 891/9
**got [6]** 902/4 918/2
966/21 968/5 968/8
977/14
**gotten [1]** 981/25
**government [48]**
891/6 891/20 891/22
892/17 892/20 893/20
894/13 894/15 897/5
899/25 908/10 908/15
908/22 909/7 909/10
909/20 910/7 912/14
914/4 919/25 923/18
924/12 926/10 931/17
937/5 947/19 949/19
950/1 950/21 951/1
953/15 953/22 954/1
954/8 961/14 963/1
966/13 966/13 966/18
967/14 968/5 968/9
968/12 970/9 971/12
977/24 981/25 983/2
**government's [16]**
896/6 905/1 906/24
914/2 920/2 923/7
947/19 949/22 950/13
953/16 954/10 955/8
963/4 970/20 975/5
976/8
**governs [1]** 950/17
**grab [1]** 905/10
**grant [1]** 897/5
**granted [2]** 901/17
915/12
**granting [1]** 917/12
**great [2]** 967/6 975/19
**greedy [1]** 930/1
**GSA [1]** 943/25
**guess [3]** 919/18
922/4 973/7
**guilt [2]** 947/8 947/9
**guilty [6]** 897/8 897/14
897/19 903/12 908/12
931/18
**GULLAND [1]** 890/11
**guy [1]** 949/12

**H**

**had [55]** 891/20 892/3
893/13 898/12 900/14
901/9 902/19 903/3
909/15 909/25 913/4
913/5 913/9 913/9
913/13 913/18 913/20
916/8 916/10 922/2
928/10 928/15 929/3
930/18 930/25 931/11
931/11 933/2 935/12
935/13 936/8 937/25
938/1 938/4 938/6
944/19 946/9 946/17
950/5 953/7 954/18
957/15 958/23 962/9
964/11 964/24 972/25
980/1 980/2 980/3
980/5 985/7 985/24
986/6 986/7
**hadn't [1]** 935/20
**hammered [1]** 966/7
**hand [2]** 926/5 952/10
**handcuffed [1]** 938/10
**handle [4]** 893/20
895/1 923/22 963/8
**hands [2]** 927/13
927/16
**happen [6]** 892/9
921/18 950/9 962/8
977/24 978/1
**happened [3]** 903/23
944/3 986/6
**happens [2]** 986/4
986/24
**happy [2]** 967/1
982/12
**hard [2]** 891/21 982/3
**harm [2]** 930/14
958/15
**harmful [1]** 896/6
**Hart [2]** 897/24 897/25
**has [76]** 892/6 895/14
897/6 897/21 898/23
899/23 900/8 902/23
902/23 903/1 903/11
903/13 906/14 907/7
907/14 908/11 908/15
909/7 909/10 909/20
910/7 910/19 912/15
913/21 914/13 914/22
918/9 919/9 919/10
921/13 921/18 925/8
925/25 926/4 926/10

927/6 927/8 927/9
931/25 932/1 932/14
932/16 936/9 937/6
938/14 941/25 942/7
942/25 943/24 944/1
948/8 950/1 950/25
951/12 953/25 954/3
954/7 954/16 954/20
963/1 966/7 967/7
968/12 968/25 969/25
970/9 970/21 972/1
979/5 979/6 979/7
979/12 980/24 981/5
985/12 987/2
**hasn't [2]** 891/20
939/5
**have [169]**
**haven't [3]** 939/4
939/7 976/21
**having [6]** 895/18
905/14 913/7 915/20
977/20 986/2
**he [142]**
**he's [9]** 901/14 901/14
909/3 927/7 929/24
931/18 943/11 972/18
979/3
**head [6]** 932/9 932/22
933/2 934/1 983/18
983/20
**heads [1]** 916/17
**health [5]** 913/4
914/14 914/23 961/10
985/24
**healthy [1]** 961/11
**hear [28]** 894/3 894/7
895/20 895/21 904/18
913/1 913/24 914/17
914/18 914/19 915/11
919/25 921/14 923/5
923/17 924/2 924/10
924/11 928/23 941/15
945/6 949/19 954/18
963/2 965/7 971/18
977/20 985/19
**heard [20]** 895/14
895/18 896/21 901/24
905/4 910/10 911/2
912/3 916/10 921/13
924/13 931/10 935/20
938/18 939/10 948/23
955/10 967/20 985/12
986/10
**hearing [5]** 929/14

# H

**hearing... [4]** 930/13 976/18 976/18 983/4
**hearings [1]** 930/14
**held [2]** 964/6 972/1
**helpful [1]** 987/4
**her [15]** 899/11 900/12 900/19 901/1 901/4 901/7 913/9 913/12 913/21 913/25 937/11 952/25 985/25 986/2 986/5
**here [48]** 892/4 895/19 899/20 901/19 901/21 902/7 902/23 903/23 915/19 915/22 915/25 920/6 920/18 923/23 924/2 927/24 929/17 929/23 930/2 937/4 941/12 941/22 942/23 943/17 944/3 947/11 947/17 948/6 951/10 951/19 953/24 955/1 958/23 961/13 962/1 964/14 966/16 968/6 972/6 972/25 973/25 976/23 977/14 977/19 978/21 983/22 986/8 987/8
**here's [5]** 894/9 894/18 895/11 975/2 978/2
**herman [6]** 890/21 890/24 988/3 988/9 989/3 989/9
**hide [1]** 942/4
**hiding [1]** 952/19
**high [2]** 897/15 949/11
**him [22]** 898/14 900/10 927/7 927/23 929/5 929/6 932/17 933/5 936/9 937/9 937/24 939/24 946/1 946/6 946/8 946/8 948/13 948/14 964/25 979/19 980/5 980/12
**himself [2]** 926/21 942/16
**hinges [1]** 899/8
**his [44]** 900/9 901/15 902/16 906/15 906/19 908/11 908/19 909/17 909/23 910/2 910/5 927/5 930/17 930/21

932/18 932/21 935/3 937/8 937/15 938/10 940/21 942/21 945/2 945/3 947/25 953/7 954/6 963/19 964/22 969/22 972/17 972/20 973/6 978/20 978/25 979/3 979/6 979/19 979/21 980/8 980/10 980/11 980/14 980/15
**historic [1]** 940/1
**holds [1]** 904/24
**holdup [2]** 978/11 978/15
**home [1]** 982/16
**honest [1]** 969/19
**honestly [4]** 950/10 969/16 972/23 973/5
**Honor [90]** 891/2 891/7 891/12 892/19 893/1 894/16 895/3 895/6 895/22 897/4 905/7 905/13 908/6 908/9 911/10 913/2 914/5 914/13 914/16 914/22 919/6 920/7 920/14 921/12 922/12 924/21 924/24 925/7 925/16 926/14 928/4 929/1 932/3 933/4 934/12 936/19 945/8 948/4 949/24 950/15 956/17 956/24 957/2 957/3 957/6 957/7 957/12 957/15 957/24 958/2 958/7 958/8 958/11 958/18 959/1 959/4 959/9 959/13 959/17 960/1 961/15 962/6 962/16 963/11 963/12 964/10 965/16 965/21 966/25 967/3 968/4 968/14 968/19 972/1 973/23 974/17 975/19 975/22 976/23 978/13 980/25 981/6 981/9 981/10 981/20 982/12 982/13 983/11 985/5 985/9
**honorable [2]** 890/8 984/24
**hope [2]** 924/15 929/3
**hopeful [1]** 968/3
**hopefully [1]** 942/9

**hours [1]** 976/24
**House [2]** 901/15 907/17
**housekeeping [1]** 905/12
**how [21]** 893/3 893/25 894/9 895/1 911/16 923/8 923/22 932/8 933/6 936/5 943/4 948/22 963/8 976/5 976/6 976/12 978/4 981/11 981/19 981/25 984/11
**however [4]** 948/15 954/12 958/6 979/11
**huh [2]** 950/4 973/2
**human [2]** 898/7 898/8
**husher [3]** 894/25 912/23 961/17
**hypothesize [1]** 915/21

# I

**I'd [10]** 894/18 894/20 895/20 915/6 939/23 949/19 967/1 979/1 984/18 986/9
**I'll [22]** 895/1 899/12 899/20 908/14 915/8 915/9 919/6 919/25 920/1 921/20 929/1 929/4 930/7 931/15 936/25 963/16 965/7 965/21 969/6 978/8 978/9 982/25
**I'm [44]** 901/19 902/4 902/22 906/6 907/21 910/6 910/17 911/9 914/16 917/1 917/4 917/8 927/3 928/14 931/4 934/14 936/15 938/16 943/6 954/2 954/9 955/1 955/7 956/5 956/17 961/6 961/12 964/20 966/16 968/3 968/7 974/20 975/2 975/2 975/3 976/17 977/2 978/11 981/10 981/13 981/22 985/17 986/11 987/14
**I've [10]** 896/3 912/3 912/11 918/2 924/13 945/4 948/22 966/16 979/3 981/25

**idea [16]** 918/15 926/25 933/21 935/8 936/1 945/20 946/1 946/6 946/7 946/17 954/23 965/13 966/13 969/15 969/24 972/19
**identify [5]** 899/15 899/16 901/7 901/9 907/15
**identifying [1]** 973/16
**ignore [2]** 926/19 926/23
**ignored [1]** 926/16
**imagine [3]** 892/6 918/21 950/9
**imbued [1]** 941/8
**immunity [2]** 950/19 950/22
**immunize [1]** 951/2
**impact [1]** 931/9
**implications [2]** 917/11 923/18
**importance [1]** 907/20
**important [14]** 925/2 928/22 929/8 929/20 930/4 930/7 930/8 930/9 936/16 937/3 940/8 943/12 944/21 945/7
**improper [1]** 974/23
**improve [1]** 987/5
**Inadmissible [1]** 958/4
**inadvertence [1]** 971/6
**inapplicable [2]** 958/6 960/11
**inappropriate [1]** 966/2
**inaudible [1]** 982/18
**inclined [2]** 910/16 964/16
**include [5]** 926/2 941/21 956/2 956/3 958/15
**included [4]** 892/23 958/15 971/13 971/22
**including [3]** 905/16 958/16 958/16
**inconsistent [1]** 959/15
**incorporate [1]** 965/12
**independently [3]** 937/3 940/8 947/7
**indicate [2]** 907/4 912/4

**I**

**indicated [6]** 895/12 900/8 901/13 902/3 918/6 957/15
**indicates [3]** 904/5 939/21 940/10
**indicted [1]** 979/7
**indictment [26]** 903/10 903/23 904/10 904/11 917/14 931/14 933/20 945/14 945/24 945/25 946/1 946/2 946/5 946/9 946/21 947/5 947/9 947/10 947/11 947/15 949/25 950/8 953/19 955/4 957/4 972/17
**indictments [1]** 903/20
**inefficiency [1]** 983/22
**inexplicable [1]** 937/25
**infer [1]** 915/23
**inference [1]** 972/22
**inferences [2]** 897/12 908/10
**inferred [1]** 973/17
**inform [2]** 932/9 979/2
**informal [1]** 924/3
**information [19]** 902/2 923/6 928/10 928/13 928/22 932/16 932/17 933/2 934/2 940/2 944/22 945/1 947/20 947/23 951/13 951/19 953/7 954/20 965/20
**informative [1]** 893/4
**informed [5]** 913/3 913/20 919/10 922/17 978/20
**initial [3]** 908/23 950/7 955/24
**injured [1]** 940/19
**innocence [2]** 947/8 957/9
**input [2]** 926/5 947/15
**insisted [1]** 931/1
**instance [1]** 892/10
**instead [3]** 931/11 957/17 982/24
**instinct [1]** 958/15
**institution [1]** 939/6
**institutionally [1]** 939/5
**instruct [8]** 892/1

896/18 911/1 916/9 923/11 923/14 975/13 983/24
**instructed [4]** 911/21 962/10 965/10 983/12
**instructing [1]** 964/17
**instruction [42]** 910/17 910/18 911/8 911/14 912/8 912/13 912/15 912/18 912/20 916/20 916/21 917/2 917/9 942/14 955/22 955/23 956/4 956/5 956/7 956/7 956/12 956/20 956/20 960/20 962/13 962/17 963/10 965/13 968/25 969/2 969/14 971/4 971/9 971/9 971/11 971/18 974/22 974/24 983/6 983/13 983/25 986/12
**instructions [52]** 891/20 891/25 892/2 892/18 903/21 910/19 911/19 920/22 921/2 921/4 921/18 923/1 923/12 923/16 923/25 924/14 924/15 955/1 955/5 955/6 955/19 956/9 956/14 962/7 963/4 963/6 963/13 966/19 968/12 971/21 975/5 975/7 975/10 976/1 976/5 976/18 977/3 977/5 977/20 977/21 977/22 978/3 978/5 978/16 981/12 982/17 982/21 985/18 985/18 986/20 987/3 987/14
**instructs [1]** 969/3
**intend [8]** 893/7 909/24 955/3 961/8 975/13 982/20 982/23 984/12
**intended [2]** 936/21 966/10
**intending [1]** 921/10
**intends [1]** 918/18
**intent [2]** 902/19 909/19
**intention [2]** 938/6 954/3
**intentional [2]** 970/8

971/5
**intentionally [2]** 970/16 981/4
**interchange [1]** 946/3
**interest [3]** 918/1 918/7 940/25
**interfere [1]** 916/23
**interplay [1]** 899/18
**intransigence [1]** 937/25
**introduce [1]** 891/5
**introduced [1]** 897/12
**intuitively [1]** 972/3
**investigate [2]** 931/7 941/9
**investigation [1]** 941/20
**investigator [1]** 942/19
**invitation [1]** 906/25
**invocation [1]** 943/18
**invoke [1]** 943/25
**invoked [3]** 927/9 980/3 980/5
**invokes [4]** 939/15 942/1 942/3 950/19
**involve [1]** 908/1
**involved [2]** 901/4 952/8
**irrelevant [7]** 908/25 909/13 951/25 952/18 952/22 970/13 970/21
**is [288]**
**isn't [9]** 904/19 912/16 928/16 933/23 939/3 953/22 958/15 970/11 971/12
**issuance [1]** 951/20
**issue [36]** 893/10 893/13 894/24 895/21 895/22 898/2 899/8 899/17 899/18 912/22 913/4 914/15 914/24 919/15 922/13 925/2 931/22 932/23 935/11 935/18 935/20 936/5 937/22 939/14 940/11 943/18 945/10 945/12 948/10 951/7 952/6 964/7 964/12 965/10 977/19 985/24
**issues [19]** 896/23 911/4 916/20 916/22 918/7 925/22 925/25

926/2 926/3 929/14 930/3 930/7 935/25 941/21 943/16 944/14 961/11 963/6 969/2
**it [200]**
**it's [63]** 893/13 894/6 897/1 897/16 897/18 898/2 902/4 905/2 905/2 906/25 906/25 907/1 908/17 908/25 911/19 917/21 922/7 928/17 932/24 933/22 934/25 936/1 936/15 936/17 937/2 937/5 939/13 939/16 939/16 939/17 941/2 943/12 944/6 944/25 945/7 946/7 946/7 946/10 949/6 952/16 953/16 954/14 964/2 964/4 964/6 964/7 965/6 965/18 967/12 971/21 972/18 974/23 976/14 978/9 981/11 981/23 981/24 982/3 983/23 984/8 986/1 986/1 986/11
**items [1]** 934/19
**its [14]** 892/18 897/6 905/1 909/14 915/20 918/6 919/25 925/19 926/10 940/1 950/2 953/2 980/24 985/13
**itself [1]** 897/3

**J**

**January [9]** 907/23 931/7 935/4 935/4 935/5 939/1 940/18 940/24 941/21
**January 6th [5]** 931/7 939/1 940/18 940/24 941/21
**job [2]** 949/13 949/14
**Jonathan [1]** 944/4
**Jordan [1]** 941/19
**judge [21]** 890/8 894/11 896/15 910/22 911/16 916/21 928/14 928/15 928/15 935/8 937/16 937/17 942/12 945/4 946/7 949/4 949/16 955/12 978/19 978/24 984/5

**J**

**judges [1]** 949/17
**judgment [29]** 894/19
895/5 895/14 897/5
897/24 898/25 899/21
903/6 905/8 906/12
910/11 910/13 915/7
915/18 915/24 916/3
916/4 916/6 916/25
917/5 917/16 921/24
921/25 922/2 922/7
922/22 949/3 953/19
984/13
**judicial [1]** 956/21
**July [10]** 890/5 893/11
907/3 907/10 907/14
935/5 936/11 945/1
988/9 989/9
**jump [1]** 893/2
**juror [18]** 898/17
902/13 903/16 904/2
906/18 908/4 908/12
908/16 914/14 914/23
915/1 915/2 915/2
950/2 961/10 961/12
962/8 985/24
**jurors [13]** 910/12
913/4 913/5 914/1
960/24 961/6 961/22
962/13 962/14 985/24
986/8 986/14 987/11
**jury [111]**
**jury's [4]** 920/17
922/20 961/3 984/10
**just [105]**
**Justice [1]** 943/21
**justiciable [1]** 939/20
**justified [1]** 944/9

**K**

**Kavanaugh [1]** 943/21
**keep [4]** 891/16 934/13
935/5 984/16
**kept [2]** 941/18 942/22
**Kerik [1]** 948/19
**key [6]** 897/11 897/22
898/3 900/2 905/9
906/11
**kind [8]** 925/12 929/2
929/2 930/19 930/20
949/16 950/25 971/15
**kinds [1]** 939/9
**knew [2]** 934/20
937/20

**know [59]** 891/16
891/22 893/14 894/4
894/13 896/7 899/18
900/13 904/24 910/13
912/10 912/12 917/21
918/11 918/18 919/11
919/19 921/8 924/18
925/13 927/3 928/3
936/1 938/3 938/15
940/11 941/17 942/16
942/18 945/10 945/18
946/17 947/2 947/13
949/10 952/20 953/15
954/23 964/13 966/6
966/17 966/22 968/4
970/15 972/3 974/6
977/14 978/11 980/23
982/5 982/6 982/6
982/23 983/8 983/16
984/4 984/11 985/23
986/10
**knowing [1]** 939/25
**knowingly [1]** 981/3
**knowledge [6]** 946/4
946/9 946/11 946/12
952/10 952/25
**known [1]** 932/21
**knows [3]** 893/7 925/8
952/24

**L**

**lack [1]** 954/5
**Ladies [1]** 985/11
**language [8]** 901/5
930/16 930/24 958/14
965/4 968/17 970/14
971/18
**last [10]** 895/16 905/7
911/14 945/4 958/14
965/8 965/9 966/10
980/22 986/9
**late [4]** 906/8 913/3
977/14 977/24
**later [6]** 908/2 909/23
917/5 917/17 917/18
965/13
**law [26]** 890/15 896/19
897/10 911/1 926/17
927/1 927/19 952/5
964/3 964/8 964/17
964/23 965/5 968/23
969/4 969/20 969/25
970/2 971/15 971/23
972/2 972/10 974/7

974/14 979/18 980/6
**lawsuit [4]** 940/16
940/20 943/12 943/15
**lawyer [11]** 900/19
900/20 906/15 908/18
908/19 927/5 973/7
979/24 980/5 980/8
980/10
**lawyer's [1]** 979/19
**lawyers [4]** 896/23
900/23 911/4 986/25
**lead [1]** 955/21
**leader [2]** 929/25
937/14
**leads [1]** 920/2
**learned [2]** 911/25
918/2
**least [15]** 892/4 895/15
905/15 915/25 921/10
923/3 923/25 924/14
941/17 945/21 947/14
948/18 970/9 972/10
977/8
**leave [2]** 978/21
981/14
**leaves [2]** 906/17
908/4
**leaving [1]** 984/6
**led [1]** 928/13
**left [3]** 910/5 972/8
976/24
**legal [11]** 896/17
896/23 902/25 903/3
910/24 911/4 916/20
916/22 963/18 967/25
987/3
**legitimate [1]** 973/21
**length [1]** 980/24
**Lesley [7]** 905/18
913/22 915/17 984/3
984/18 985/1 987/10
**let [14]** 918/20 928/4
948/24 950/11 966/22
970/4 975/25 978/10
978/11 981/2 981/17
982/22 983/16 984/3
**let's [7]** 894/22 922/18
922/19 928/1 949/21
951/9 973/22
**letter [35]** 901/2
901/10 901/11 901/13
905/23 905/24 906/8
906/8 907/2 907/3
907/5 907/8 909/23

910/6 913/23 930/17
932/4 932/6 932/6
932/11 932/11 932/12
932/12 932/13 935/4
935/5 935/5 935/12
935/13 936/11 942/15
944/5 947/18 947/20
947/25
**letters [25]** 900/21
901/8 901/16 901/23
908/24 909/4 909/14
926/22 926/24 927/1
929/6 932/17 932/17
933/3 934/3 935/8
935/15 938/4 942/14
952/12 952/23 953/8
973/6 973/19 973/20
**letting [1]** 924/18
**levels [1]** 982/7
**Licavoli [1]** 898/23
**Lieutenant [1]** 955/14
**light [7]** 897/17 902/1
902/1 916/24 950/12
953/21 978/9
**like [44]** 892/9 892/23
894/17 894/18 894/20
895/20 896/22 901/16
911/3 911/7 912/2
915/6 917/15 920/20
922/1 922/24 922/25
922/25 924/5 924/25
926/2 929/20 929/21
934/22 942/18 946/24
949/19 964/1 966/7
968/9 970/17 973/17
975/16 977/15 979/1
981/12 981/16 983/22
984/1 984/18 986/3
986/5 986/9 987/16
**likely [1]** 946/11
**likes [1]** 918/5
**likewise [1]** 958/5
**lily [1]** 972/5
**limited [5]** 897/23
900/22 906/13 907/20
907/21
**line [2]** 951/16 969/22
**lining [1]** 930/13
**list [1]** 929/1
**listen [3]** 917/20 918/1
918/7
**listing [1]** 974/21
**little [2]** 961/7 964/11
**logically [1]** 974/9

# L

**logistically [5]** 891/15 893/6 918/17 919/2 923/23
**long [9]** 944/6 954/17 971/9 976/5 976/6 976/12 981/11 981/19 981/25
**longer [1]** 961/22
**look [3]** 950/10 967/1 978/16
**looking [2]** 923/3 927/23
**looks [1]** 911/7
**lorraine [6]** 890/21 890/24 988/3 988/9 989/3 989/9
**lost [2]** 920/13 934/15
**lot [8]** 918/3 923/25 941/11 945/5 950/20 955/24 986/10 986/25
**loud [1]** 973/8
**lunch [4]** 921/1 921/4 921/8 924/10

# M

**made [16]** 894/1 908/23 909/11 909/14 909/23 909/24 915/19 917/25 928/8 928/21 934/5 941/23 941/25 950/12 970/1 971/19
**make [31]** 893/2 893/21 893/21 894/13 918/23 919/8 919/12 919/12 919/14 919/22 919/22 920/10 920/16 922/12 922/21 926/22 936/8 937/8 942/25 946/10 948/21 950/22 955/11 963/9 964/2 964/14 965/21 965/24 967/20 971/14 972/21
**maker [2]** 929/24 937/9
**makes [2]** 918/14 918/16
**making [2]** 916/19 941/6
**malleable [3]** 933/21 941/5 945/22
**manner [4]** 896/17 910/24 922/21 928/18
**many [4]** 899/3 903/20

925/19 982/7
**mar [1]** 940/14
**Marine [1]** 894/17
**marital [1]** 935/13
**material [3]** 900/2 925/19 948/1
**materially [2]** 951/6 951/12
**materially-exculpatory [2]** 951/6 951/12
**materials [1]** 901/18
**matter [13]** 929/17 941/3 944/16 947/11 964/3 964/8 964/15 964/17 965/5 982/6 986/16 988/5 989/5
**matters [1]** 986/16
**MATTHEW [1]** 890/17
**mature [1]** 904/25
**may [21]** 892/17 892/21 896/21 911/2 912/21 912/21 919/1 920/14 921/5 921/5 927/13 932/18 932/18 937/22 938/15 944/11 945/11 946/12 966/15 974/4 984/15
**maybe [10]** 894/2 905/16 933/13 941/5 944/23 944/24 945/1 965/4 977/9 981/17
**MC [1]** 890/19
**McCarthy [1]** 941/18
**me [39]** 893/22 894/12 911/23 912/9 913/1 913/11 913/15 913/24 915/24 917/7 918/3 918/20 920/3 924/5 928/4 928/14 935/9 935/10 943/7 946/20 948/24 950/11 963/4 968/21 970/4 973/7 975/16 975/25 976/2 976/2 978/11 979/12 981/2 981/8 981/11 981/22 983/21 986/10 986/10
**mean [25]** 893/1 896/4 917/20 925/4 930/16 930/23 930/24 930/25 931/3 931/9 931/13 934/5 934/10 934/11 934/23 934/25 935/3 936/15 947/17 947/24

966/12 971/6 972/12 977/12 977/13
**meaning [2]** 935/15 971/4
**means [3]** 892/16 903/22 970/8
**meant [3]** 947/22 949/9 949/11
**media [2]** 941/17 983/6
**meet [2]** 908/11 923/16
**meeting [3]** 902/25 905/1 983/6
**member [10]** 929/16 929/19 929/20 936/18 937/6 938/14 939/18 951/11 952/19 953/12
**members [18]** 925/5 926/6 926/21 928/6 928/7 928/20 928/24 929/18 929/18 938/21 938/22 938/22 938/23 941/2 941/17 941/22 951/18 952/9
**mens [6]** 932/9 932/15 932/20 933/6 933/13 933/15
**mention [4]** 899/20 912/5 916/19 961/13
**mentioned [5]** 894/19 915/20 962/18 976/14 979/20
**meritless [1]** 954/9
**merits [2]** 895/21 916/11
**message [1]** 902/11
**met [1]** 950/7
**mid [1]** 932/16
**mid-October [1]** 932/16
**might [11]** 896/4 911/25 915/21 915/22 922/5 930/20 931/11 946/15 975/23 983/5 983/8
**mind [7]** 897/13 897/20 929/3 930/20 953/7 962/22 977/20
**mindful [2]** 984/8 984/9
**minimum [1]** 924/9
**minute [2]** 925/1 925/1
**minutes [6]** 915/9

915/13 921/1 976/3 976/9 976/10
**misconduct [4]** 937/11 938/8 950/25 955/16
**misinformed [1]** 963/21
**mistake [10]** 909/22 963/20 969/20 970/2 971/6 971/15 971/15 971/19 971/23 972/2
**misunderstanding [1]** 964/23
**modification [1]** 962/18
**modify [1]** 961/7
**MOLLY [2]** 890/11 891/8
**moment [1]** 899/13
**Montgomery [1]** 890/16
**more [12]** 893/4 913/23 916/17 916/18 916/19 941/11 944/21 949/6 950/10 976/9 981/11 981/13
**morning [25]** 891/2 891/7 891/11 891/12 891/20 893/8 895/14 895/19 908/9 913/12 913/13 913/15 913/20 976/18 976/20 977/11 978/4 982/25 983/17 985/17 985/17 986/6 986/7 986/8 987/9
**most [7]** 905/16 910/12 916/6 920/17 967/12 980/22 985/14
**motion [72]** 893/8 893/15 893/16 894/14 894/19 894/21 895/2 895/5 895/9 895/13 895/21 896/3 897/3 897/5 897/24 898/19 898/25 899/19 899/21 901/17 901/21 903/6 905/8 906/11 910/8 910/10 910/13 911/24 911/25 912/1 912/3 915/7 915/12 915/12 915/18 915/24 916/4 916/10 916/25 917/4 917/8 917/11 917/12 917/14 917/16 917/21 917/21 917/25 917/25

1005

## M

**motion... [23]** 918/7
921/21 921/25 921/25
922/7 923/17 940/10
940/21 949/1 949/2
949/25 953/14 954/12
955/3 975/3 975/4
975/10 977/6 978/6
982/19 982/24 984/13
987/17
**motions [2]** 896/22
911/3
**Motive [1]** 959/24
**motives [1]** 951/18
**move [5]** 910/15
913/12 942/11 944/18
944/23
**moved [8]** 901/15
913/5 913/13 913/14
933/10 941/6 942/9
943/14
**moving [1]** 903/7
**Mr [9]** 895/4 932/10
932/20 935/3 935/4
940/23 943/3 973/5
980/1
**Mr. [150]**
**Mr. Bannon [52]** 896/6
897/8 897/20 898/18
898/21 899/7 900/20
900/24 902/14 902/19
903/3 903/11 903/17
904/1 904/5 906/15
906/18 907/12 922/16
926/23 926/25 927/1
927/5 928/11 930/18
931/10 931/17 932/7
932/21 933/1 934/7
936/5 936/7 937/21
938/9 938/24 940/3
942/11 943/8 954/6
972/23 978/18 978/25
979/4 979/5 979/21
980/1 980/2 980/7
980/13 980/17 981/2
**Mr. Bannon's [19]**
921/22 922/17 923/6
926/15 932/2 932/3
933/7 933/12 933/18
934/1 935/6 937/11
937/15 938/4 955/20
973/18 978/19 979/24
980/4
**Mr. Corcoran [21]**

908/7 909/11 910/16
910/18 914/6 914/12
914/19 947/10 958/17
958/24 963/25 965/8
966/18 966/19 975/17
976/11 979/12 981/19
983/9 985/7 985/10
**Mr. Corcoran's [2]**
908/21 962/11
**Mr. Costello [11]**
902/3 926/22 932/8
934/7 944/5 944/13
979/24 980/4 980/11
980/16 980/18
**Mr. Costello's [5]**
907/6 909/24 926/21
979/20 979/22
**Mr. Hart [2]** 897/24
897/25
**Mr. McCarthy [1]**
941/18
**Mr. Schiff [1]** 940/23
**Mr. Schoen [25]**
899/18 901/21 915/11
917/10 923/17 924/11
924/23 949/18 951/8
951/16 953/3 953/18
954/17 955/9 963/3
965/7 965/17 966/20
970/11 970/21 971/25
975/4 981/5 981/8
985/7
**Mr. Schoen's [1]**
971/1
**Mr. Thompson [7]**
932/8 932/21 934/8
934/25 950/14 950/14
954/3
**Mr. Thompson's [3]**
901/13 932/9 933/2
**Ms [3]** 957/11 976/6
981/9
**Ms. [54]** 891/14 897/23
898/3 899/9 900/1
900/4 900/11 900/18
903/17 905/18 906/17
908/3 908/8 909/1
913/22 914/19 915/17
920/15 926/11 926/15
928/23 936/13 936/20
937/10 938/6 938/19
938/19 939/10 941/8
942/25 943/2 943/3
945/9 945/10 946/16

946/18 946/20 948/12
949/21 952/3 952/8
952/24 955/10 959/2
959/16 962/5 963/8
963/25 968/13 977/15
984/3 984/18 985/1
987/10
**Ms. Amerling [32]**
897/23 898/3 900/1
900/4 900/11 900/18
903/17 906/17 909/1
926/11 926/15 928/23
936/13 936/20 937/10
938/6 938/19 938/19
939/10 941/8 942/25
943/2 943/3 945/9
945/10 946/16 946/18
946/20 952/3 952/8
952/24 963/25
**Ms. Amerling's [3]**
899/9 908/3 948/12
**Ms. Lesley [7]** 905/18
913/22 915/17 984/3
984/18 985/1 987/10
**Ms. Riane [1]** 891/14
**Ms. Vaughn [10]** 908/8
914/19 920/15 949/21
955/10 959/2 959/16
962/5 963/8 968/13
**Ms. Vaughn's [1]**
977/15
**much [9]** 893/3 893/4
897/25 918/10 949/10
966/4 979/6 981/7
986/23
**multi [1]** 929/20
**multi-member [1]**
929/20
**Multiple [1]** 960/2
**must [6]** 907/16 942/3
946/14 946/15 949/23
963/22
**my [40]** 891/25 892/2
892/4 895/11 896/14
896/16 896/23 904/17
910/21 910/23 911/4
914/8 915/25 915/25
916/21 917/2 917/9
917/11 920/4 920/13
922/1 924/8 924/25
926/8 934/15 949/2
949/4 949/13 949/14
955/15 958/15 964/8
966/22 974/4 975/7

977/20 982/22 984/1
987/3 987/17

## N

**named [1]** 948/20
**narrative [1]** 979/22
**narrow [1]** 941/12
**narrowed [1]** 938/13
**Nature [1]** 957/25
**Navarro [1]** 948/20
**near [1]** 907/19
**necessarily [1]** 986/19
**necessary [3]** 913/23
963/18 964/4
**need [30]** 891/24
892/3 892/7 892/11
893/13 893/14 893/19
894/24 895/20 895/25
906/8 918/10 918/11
919/7 919/14 922/12
924/6 933/5 936/24
937/6 938/11 942/8
942/15 942/23 946/8
963/2 973/7 974/18
983/12 983/24
**needed [5]** 893/22
912/19 913/12 913/18
962/8
**needs [5]** 892/8
897/16 913/21 925/19
983/14
**negotiation [1]** 905/6
**negotiations [2]**
900/23 969/22
**neither [1]** 929/12
**never [2]** 938/7 943/8
**new [6]** 892/15 893/3
900/6 906/25 906/25
907/1
**next [10]** 896/21 913/6
913/13 918/19 956/25
957/4 957/8 957/13
958/22 982/11
**nice [1]** 949/18
**NICHOLS [1]** 890/8
**night [2]** 895/16 910/6
**nine [1]** 929/17
**Nixon [1]** 943/25
**no [66]** 890/3 892/17
893/17 897/18 897/19
902/13 902/17 903/1
903/15 904/2 904/4
905/10 906/17 906/24
908/4 908/11 912/18

**N**

**no... [49]** 914/4 914/13 914/22 915/2 916/19 920/8 926/18 929/18 933/1 933/4 938/6 938/8 942/25 944/16 945/6 946/6 949/5 951/10 951/18 951/21 952/5 952/13 952/13 953/6 953/11 953/22 954/3 954/5 954/23 955/16 958/12 958/18 958/19 959/3 961/22 962/16 962/23 963/17 963/20 969/11 969/13 969/16 971/17 973/9 973/11 976/22 977/10 982/4 987/2

**Nobles [1]** 942/19

**Nodded [2]** 983/18 983/20

**noncompliance [1]** 930/19

**noncumulative [3]** 925/22 951/6 951/12

**nonspeculative [2]** 951/5 951/11

**normal [1]** 939/3

**not [184]**

**note [4]** 905/12 913/22 957/17 960/24

**noted [1]** 935/11

**nothing [7]** 927/18 945/25 951/14 953/12 953/17 968/3 969/13

**notice [8]** 906/14 907/6 935/16 935/17 938/2 938/4 956/21 980/2

**notwithstanding [1]** 953/23

**now [39]** 894/7 895/1 902/15 902/18 907/4 908/2 914/19 915/4 915/16 917/15 917/17 918/22 921/13 924/9 925/24 926/24 928/19 929/1 930/4 931/23 936/13 936/25 937/10 942/13 943/2 943/11 943/20 949/19 961/12 972/8 972/23 972/24 981/13 984/25 985/5 985/24 986/7 987/12

987/19

**number [4]** 893/16 900/2 905/17 956/3

**NW [2]** 890/12 890/23

**O**

**O'Neill [1]** 907/17

**oath [2]** 979/8 979/17

**object [6]** 965/1 968/15 968/16 968/18 970/14 972/9

**objection [20]** 902/4 902/6 912/17 913/25 914/2 914/4 914/14 914/23 958/16 958/18 958/19 959/3 962/16 962/23 965/22 966/4 974/18 977/10 982/5 984/5

**objectionable [2]** 967/23 968/4

**objections [5]** 896/22 911/3 947/25 954/6 962/15

**obligation [2]** 903/1 903/3

**obstacle [1]** 902/10

**obviate [1]** 942/15

**obviously [9]** 897/10 917/5 921/22 934/20 958/23 970/11 973/20 973/20 986/18

**occur [3]** 907/18 921/15 921/15

**occurred [1]** 907/7

**occurs [1]** 986/25

**October [39]** 898/9 898/9 902/20 902/20 903/2 903/3 903/9 903/14 903/19 903/25 904/4 904/5 904/11 904/20 904/21 906/19 909/17 909/18 909/22 910/3 910/4 930/17 930/19 930/19 930/24 931/16 931/18 931/19 931/20 931/20 932/4 932/16 933/23 944/3 944/7 944/12 945/21 952/21 952/21

**October 14th [4]** 898/9 902/20 910/3 931/16

**October 18th [10]** 902/20 903/19 903/25

904/5 904/11 904/21 930/19 930/19 931/19 931/20

**October 7 [1]** 903/9

**October 7th [7]** 898/9 904/4 904/20 909/17 909/22 931/20 945/21

**OFC [1]** 890/11

**off [5]** 914/10 919/4 936/2 941/18 985/21

**offense [8]** 903/11 908/25 951/15 951/18 951/21 962/25 963/5 970/5

**offered [7]** 935/16 938/5 938/25 939/2 953/4 953/11 967/14

**office [2]** 907/17 952/20

**officer's [2]** 958/22 959/5

**official [4]** 890/22 901/25 988/3 989/3

**often [2]** 986/3 986/24

**oh [3]** 947/22 956/17 967/15

**okay [43]** 893/5 895/7 897/3 904/8 904/13 914/21 915/2 915/13 919/24 920/9 921/13 923/21 924/16 924/18 929/1 934/13 947/1 955/19 955/20 956/11 956/19 958/9 959/2 959/5 959/19 962/17 962/21 963/1 965/7 965/8 965/15 968/10 971/24 973/22 974/15 974/19 975/20 981/7 982/14 984/19 984/20 987/9 987/18

**OLC [2]** 927/15 980/10

**once [5]** 924/2 924/13 967/7 970/5 984/19

**one [59]** 893/10 894/5 898/2 900/1 901/9 901/13 902/8 905/9 912/17 913/4 913/5 914/18 916/1 916/12 919/1 921/17 925/1 930/5 930/9 931/15 931/16 931/20 935/22 935/24 937/23 942/4 943/16 944/13 944/14

904/5 904/11 904/21 930/19 930/19 931/19 931/20

**October 7 [1]** 903/9

**October 7th [7]** 898/9

**944/18** 944/24 946/14 946/15 954/12 955/11 956/25 957/4 957/8 957/13 957/16 957/19 958/22 961/10 961/18 962/1 962/3 962/20 967/3 968/22 968/24 969/3 970/9 970/15 973/19 975/22 981/2 983/1 985/7 986/19

**one-way [2]** 946/14 946/15

**one-week [3]** 930/5 944/13 944/18

**one-witness [1]** 898/2

**ones [5]** 892/15 893/3 905/16 955/24 981/23

**ongoing [3]** 905/6 930/12 969/23

**only [8]** 906/1 934/2 944/6 952/23 968/5 968/8 973/16 977/24

**open [7]** 899/10 902/15 905/2 905/3 923/23 928/11 977/24

**opined [2]** 943/20 980/24

**opinion [1]** 943/23

**opinions [3]** 927/15 942/24 980/10

**opposition [1]** 940/9

**option [3]** 902/8 902/9 939/22

**options [5]** 902/8 927/25 938/18 938/24 939/2

**oral [1]** 934/11

**order [3]** 898/11 916/10 985/4

**orderly [2]** 896/17 910/24

**orders [2]** 928/14 980/19

**oriented [1]** 906/23

**original [2]** 911/11 956/10

**originally [2]** 913/13 917/20

**other [42]** 893/10 894/5 894/11 895/8 897/1 900/2 903/7 912/7 916/13 918/6 919/8 929/5 930/3 930/10 931/10 933/3

**O**

other... **[26]** 935/17 935/18 938/19 939/10 939/17 941/8 941/21 948/1 948/4 948/16 952/13 952/13 952/14 953/8 953/12 953/19 955/4 955/15 961/18 962/3 970/21 974/6 979/19 983/1 984/9 986/14

otherwise **[8]** 914/1 916/17 916/23 953/24 954/5 955/14 956/19 980/18

our **[34]** 897/5 897/24 898/19 899/21 902/25 903/6 904/25 905/4 905/5 905/8 906/5 906/11 911/18 913/4 918/16 920/25 921/2 925/8 926/4 929/11 929/14 941/4 949/17 950/7 964/11 964/14 965/22 966/4 966/11 967/23 971/17 974/9 977/15 978/14

out **[23]** 902/7 909/4 909/5 920/21 925/25 926/4 927/25 938/5 938/12 942/22 943/10 943/23 948/8 951/10 952/14 952/20 967/7 972/8 972/17 973/7 975/11 977/5 980/23

outside **[2]** 986/14 987/1

outstanding **[1]** 893/11

over **[7]** 939/11 939/11 942/10 943/18 962/9 979/1 979/3

overall **[1]** 926/9

overnight **[2]** 977/25 987/16

override **[1]** 939/18

own **[2]** 892/18 979/6

**P**

p.m **[4]** 924/20 984/23 984/23 987/21

Page **[1]** 893/12

pages **[1]** 976/4

paired **[1]** 976/3

paper **[1]** 900/22

papers **[2]** 898/6 940/10

paragraph **[13]** 896/12 911/14 931/4 958/14 963/17 965/8 965/9 970/6 970/10 970/10 970/18 970/19 971/13

paragraphs **[2]** 944/6 979/2

paralegal **[1]** 891/8

paraphrasing **[2]** 928/15 943/6

parse **[1]** 968/2

parsing **[1]** 943/3

part **[16]** 894/1 896/21 907/2 911/7 911/9 911/10 922/20 926/4 932/23 933/16 943/15 943/22 951/1 966/10 969/23 980/22

particular **[1]** 984/11

particularly **[8]** 899/24 928/7 929/5 929/20 930/6 943/12 971/16 983/7

parties **[28]** 892/5 892/10 892/21 892/24 894/25 895/16 911/23 912/5 912/22 913/25 916/15 916/15 920/20 923/1 923/16 924/2 955/1 956/7 956/13 961/16 975/9 975/11 977/6 982/18 982/22 982/23 985/20 987/15

parties' **[6]** 915/8 916/24 924/6 974/15 975/6 976/6

partisan **[2]** 940/5 940/10

party **[2]** 895/24 943/11

passed **[1]** 896/5

passing **[1]** 895/23

past **[6]** 913/19 939/7 940/2 969/17 973/18 976/5

patience **[2]** 985/12 986/24

pause **[2]** 914/11 919/5

pawn **[1]** 927/17

pend **[1]** 978/10

pending **[1]** 982/19

people **[2]** 930/13 938/24

percent **[1]** 948/22

perhaps **[2]** 898/16 940/24

period **[1]** 930/6

permissible **[1]** 938/13

permit **[2]** 937/22 940/12

permitted **[5]** 916/4 927/19 931/25 938/14 980/6

person **[9]** 897/7 900/9 907/17 929/13 929/13 934/22 937/6 951/2 962/20

personal **[5]** 946/4 946/9 946/12 951/17 952/25

personally **[1]** 940/19

perspective **[8]** 914/2 929/10 929/10 937/2 937/8 941/19 970/20 978/14

perspectives **[2]** 941/10 941/16

persuaded **[1]** 930/21

pertain **[1]** 897/25

pertinence **[6]** 898/19 898/20 929/21 936/24 937/2 937/3

pertinency **[3]** 936/23 936/23 936/25

pertinent **[4]** 907/2 929/9 937/5 977/21

piece **[1]** 905/7

pieces **[1]** 905/9

pinpoint **[1]** 901/5

place **[1]** 939/20

plan **[10]** 891/25 915/25 918/25 922/1 924/8 951/3 957/18 975/8 987/13 987/17

planning **[2]** 924/1 975/24

plans **[1]** 924/18

plausible **[1]** 972/22

play **[2]** 899/20 948/11

please **[6]** 891/5 895/10 914/9 985/1 985/4 986/3

plenty **[1]** 978/6

plugged **[1]** 972/25

pending **[1]** 982/19

podium **[2]** 965/18 968/20

point **[19]** 897/11 899/6 901/12 904/17 904/19 904/20 906/11 909/21 923/13 926/22 953/13 955/11 967/3 967/19 973/13 974/23 974/24 978/11 980/4

points **[3]** 898/3 945/4 970/5

police **[2]** 958/22 959/5

political **[1]** 940/6

portion **[1]** 948/11

position **[28]** 901/25 905/4 905/5 906/19 923/11 929/11 936/1 936/16 937/15 938/5 942/9 947/19 948/2 948/13 950/13 952/6 952/11 952/11 952/22 952/25 953/10 953/16 963/9 966/22 975/5 977/15 977/16 978/20

positions **[7]** 892/13 899/3 924/2 924/6 953/2 974/16 975/6

positive **[1]** 931/12

possess **[1]** 944/11

possibility **[6]** 895/15 896/8 906/17 913/15 954/9 982/10

possible **[1]** 925/20

possibly **[1]** 948/11

posted **[1]** 910/3

posturing **[2]** 944/24 944/25

potential **[3]** 894/22 895/17 916/6

potentially **[1]** 964/20

powers **[1]** 939/14

practical **[1]** 982/6

practice **[2]** 898/15 948/16

precedence **[1]** 943/18

precedent **[2]** 925/14 950/20

precise **[1]** 903/24

precluded **[1]** 894/10

prefer **[1]** 917/17

pregnancies **[1]** 913/10

pregnancy **[1]** 913/9

## P

**pregnant [1]** 913/5
**prejudice [12]** 894/22
895/17 910/9 910/14
912/2 912/15 915/8
916/6 916/18 916/18
916/19 922/1
**prejudicial [1]** 895/24
**premature [1]** 954/21
**prepared [5]** 918/21
918/23 919/22 921/7
953/23
**presence [3]** 895/13
919/13 987/1
**present [6]** 895/4
920/24 925/9 932/18
946/1 954/3
**presentation [1]** 938/5
**presented [17]** 897/6
897/18 897/20 897/23
900/15 901/20 901/22
902/2 902/5 902/7
903/17 908/18 908/19
909/10 917/6 950/1
953/24
**presently [1]** 953/23
**preserve [3]** 926/2
940/13 948/6
**President [18]** 902/8
907/7 927/18 928/1
939/15 939/15 940/17
940/17 942/12 943/17
943/19 943/24 944/4
944/7 944/15 944/17
951/25 980/3
**President Biden [2]**
944/4 944/15
**President Biden's [1]**
944/7
**presume [1]** 932/7
**presumption [1]** 957/9
**presumptive [1]**
939/23
**presumptively [2]**
939/16 939/16
**pretty [2]** 897/10
915/19
**prevent [1]** 950/19
**previously [1]** 972/1
**principally [1]** 925/20
**principle [2]** 974/2
974/13
**principles [3]** 950/16
974/3 974/7

**print [1]** 975/16
**printed [3]** 966/24
967/2 967/7
**prior [3]** 913/10 959/15
959/20
**privilege [43]** 902/6
902/9 902/10 927/9
927/13 927/25 928/2
928/12 928/16 935/13
935/24 937/16 939/12
939/16 939/17 942/2
942/3 942/3 942/6
942/13 943/18 943/25
944/8 944/16 963/24
964/1 964/3 964/8
964/18 964/24 964/25
965/3 965/23 966/3
967/21 967/24 969/20
970/2 971/20 973/19
980/3 980/5 980/15
**probably [4]** 910/12
973/8 974/8 976/2
**problem [1]** 977/4
**problems [1]** 968/17
**procedural [2]** 917/13
948/25
**procedurally [2]**
949/21 967/4
**proceed [1]** 985/15
**proceeding [1]** 939/7
**proceedings [2]** 988/5
989/5
**process [7]** 928/8
928/9 928/11 928/20
941/6 969/23 973/12
**produce [3]** 898/5
942/21 943/9
**produced [3]** 907/15
938/7 945/16
**producing [1]** 907/12
**product [1]** 911/11
**production [6]** 903/8
903/18 907/16 908/1
945/13 945/14
**proffer [17]** 893/22
894/13 918/22 919/8
919/12 919/14 919/22
920/2 920/10 921/20
922/8 922/13 923/5
924/11 945/7 946/10
975/4
**proffer/argument [1]**
921/20
**proffered [1]** 953/18

**progression [1]**
934/24
**promise [1]** 982/9
**proof [2]** 957/8 962/22
**proper [2]** 893/20
896/10
**proposal [4]** 920/16
920/25 956/10 966/11
**proposals [3]** 920/21
956/15 963/12
**propose [3]** 925/24
963/3 965/2
**proposed [12]** 891/19
892/18 910/18 925/11
956/6 963/1 963/5
963/6 966/20 968/11
970/9 981/24
**proposition [2]** 972/9
973/25
**prosecution [1]**
950/18
**prosecutors [1]**
946/19
**prove [2]** 908/23
931/17
**provide [10]** 898/5
905/17 907/13 909/17
909/21 910/1 921/2
925/22 956/1 969/14
**provided [14]** 892/22
899/25 900/2 900/3
900/5 903/13 906/7
906/12 906/14 908/15
909/8 909/20 910/7
910/19
**providing [1]** 956/8
**prudent [2]** 978/22
983/5
**public [8]** 915/4 934/5
940/7 940/8 941/25
961/13 979/9 980/15
**publicity [1]** 960/20
**publicly [1]** 979/8
**pure [2]** 945/9 952/16
**pure-dates [1]** 945/9
**purely [1]** 940/5
**purpose [3]** 900/22
907/21 938/3
**purposes [2]** 892/7
975/24
**pursue [3]** 928/9 939/4
940/2
**pursued [2]** 939/4
939/6

**put [13]** 894/9 894/9
899/16 916/17 919/6
921/10 921/21 941/4
950/6 950/6 970/24
972/20 982/11
**puts [1]** 969/5
**putting [6]** 894/10
920/5 922/9 949/6
970/12 970/22

## Q

**quarter [1]** 968/9
**quash [2]** 899/19
901/15 901/17 915/12
917/12 923/17 940/10
**quashing [1]** 893/16
**question [46]** 892/21
894/7 894/21 894/21
895/11 910/9 912/7
916/16 917/13 918/20
920/4 923/9 932/19
932/24 935/16 935/20
936/3 936/6 938/20
939/19 939/20 939/24
941/10 943/4 943/13
943/13 944/2 947/13
948/24 948/25 949/23
949/24 950/7 950/11
950/17 951/3 952/1
952/15 954/16 954/18
954/21 958/13 970/4
975/23 975/25 981/2
**questioning [2]** 905/5
951/23
**questions [5]** 896/17
910/25 924/14 938/19
951/4
**Quiana [1]** 891/9
**quick [1]** 975/22
**quickly [4]** 955/25
977/2 978/4 978/5
**quite [3]** 929/23
933/19 940/11

## R

**raise [4]** 894/24
967/13 974/18 974/20
**raised [7]** 893/11
893/18 899/19 913/15
935/18 954/7 976/14
**raising [2]** 916/16
969/25
**range [1]** 976/13
**Raskin [1]** 940/23

# R

**Rather [1]** 937/25
**rea [6]** 932/9 932/15 932/20 933/6 933/13 933/15
**reach [1]** 951/8
**read [6]** 910/20 973/7 979/1 986/11 986/15 986/15
**readily [1]** 928/11
**reading [1]** 931/4
**ready [4]** 894/13 894/15 977/16 984/20
**real [4]** 918/1 918/6 920/4 977/19
**really [16]** 893/2 897/25 898/2 898/3 898/20 904/19 917/14 917/19 920/4 938/25 941/15 950/20 951/17 967/19 981/23 987/2
**reason [21]** 909/13 926/5 926/18 932/24 933/9 937/9 938/7 938/8 940/7 941/13 942/10 943/14 946/7 946/8 949/5 951/5 967/13 977/3 978/7 983/25 986/4
**reasonable [24]** 897/7 897/8 897/13 897/14 897/20 898/17 902/13 903/16 903/25 904/2 906/18 908/4 908/5 908/12 908/16 933/19 935/17 935/20 942/5 950/2 951/22 954/19 957/13 969/19
**reasonableness [1]** 935/25
**reasonably [5]** 969/16 972/24 973/5 973/17 980/11
**reasoning [1]** 980/24
**reasons [10]** 930/3 930/18 930/20 930/20 935/22 937/25 943/14 951/14 979/3 980/19
**rebut [2]** 977/11 982/1
**rebuttal [1]** 976/9
**recall [6]** 895/12 905/14 905/23 905/24 956/6 963/2
**receipt [1]** 907/3

**received [5]** 905/14 963/19 979/25 980/1 980/2
**recent [1]** 905/16
**recess [18]** 915/6 915/13 915/15 922/25 923/5 923/20 924/8 924/20 955/2 974/16 975/20 982/16 984/18 984/21 984/22 984/23 987/19 987/21
**recognize [1]** 954/8
**recognized [1]** 909/3
**recollection [1]** 956/15
**recommended [1]** 941/18
**record [21]** 891/6 895/11 905/25 915/5 915/16 919/4 924/22 926/2 940/13 948/7 952/16 961/13 969/1 969/11 977/7 982/23 983/15 984/20 985/5 988/5 989/5
**records [1]** 909/21
**Redacted [1]** 960/11
**redline [1]** 966/2
**reduce [1]** 916/6
**reference [4]** 896/21 905/8 911/2 969/24
**references [1]** 973/19
**referral [1]** 944/20
**referred [2]** 937/10 947/21
**reflect [3]** 945/20 974/4 975/3
**reflected [4]** 915/23 915/23 933/3 934/3
**reflects [2]** 934/6 972/7
**refusal [2]** 902/17 951/20
**refused [7]** 898/21 899/7 902/14 909/9 926/17 942/20 942/21
**refuses [1]** 950/21
**regard [10]** 898/4 899/12 899/19 901/1 901/17 902/20 902/21 903/18 906/11 906/19
**regarding [2]** 913/9 917/11
**regards [1]** 980/9
**reinforced [2]** 918/3

918/4
**reiterating [1]** 897/1
**reject [1]** 942/7
**rejects [2]** 939/12 942/5
**related [3]** 921/21 948/25 986/16
**relating [3]** 896/5 915/12 922/23
**relation [1]** 979/16
**relative [1]** 925/21
**relatively [2]** 955/25 982/24
**release [1]** 985/16
**relevant [9]** 936/1 937/4 941/21 941/25 942/17 947/8 954/16 980/10 980/20
**reliance [1]** 980/14
**relied [3]** 898/14 980/7 980/9
**relief [3]** 894/2 920/3 955/4
**reluctantly [1]** 982/13
**remain [1]** 914/1
**remained [1]** 961/11
**remedy [1]** 918/9
**Remember [1]** 931/15
**remind [3]** 912/1 946/20 986/9
**reminder [2]** 984/15 986/11
**reminding [1]** 981/8
**reminds [2]** 935/9 935/10
**remove [1]** 902/10
**removed [2]** 942/13 956/25
**renewed [3]** 917/11 975/4 982/19
**repeat [1]** 896/11
**repeating [1]** 938/15
**replace [1]** 965/4
**replaced [1]** 962/9
**report [1]** 942/21
**Reported [1]** 890/21
**reporter [4]** 890/22 965/19 988/3 989/3
**representation [1]** 948/21
**representative [2]** 937/13 937/14
**represented [1]** 971/11

**reputational [1]** 940/24
**request [1]** 951/19
**requested [2]** 899/25 907/15
**required [6]** 908/23 912/16 955/13 964/23 970/11 979/18
**requirement [1]** 963/22
**requires [3]** 945/13 945/14 969/25
**research [2]** 960/21 974/4
**reserve [6]** 916/3 916/3 916/13 922/2 923/10 949/2
**reserved [1]** 921/24
**reserving [2]** 916/5 917/4
**resolution [1]** 940/1
**resolve [2]** 923/9 954/11
**resolved [1]** 964/12
**respect [9]** 907/11 908/22 909/11 909/19 915/18 944/9 963/16 980/9 980/22
**respectful [2]** 922/19 982/25
**respectfully [2]** 911/20 949/16
**respective [4]** 892/12 912/9 924/6 975/6
**respond [2]** 928/17 955/9
**response [7]** 907/10 907/14 920/1 920/2 942/6 954/4 958/12
**responsibilities [5]** 896/15 896/15 910/22 910/22 912/9
**responsibility [2]** 896/16 910/23
**responsible [1]** 940/18
**responsive [1]** 907/12
**rest [9]** 913/18 913/21 921/7 961/11 970/3 975/24 978/20 983/15 987/8
**rested [2]** 897/6 985/13
**rests [2]** 893/21 985/9
**result [4]** 896/2 913/17

**R**

**result... [2]** 917/6
922/6
**results [1]** 921/2
**return [4]** 904/25
905/1 950/16 970/3
**RIANE [2]** 890/18
891/14
**right [28]** 899/23
902/18 912/22 918/22
918/24 921/4 924/9
925/15 928/12 928/16
933/9 933/24 934/5
935/2 936/4 936/9
943/24 954/11 954/25
959/7 962/2 968/10
972/6 978/25 979/6
981/4 982/14 983/19
**rights [1]** 919/10
**rise [6]** 915/14 924/19
975/21 984/22 984/24
987/20
**risk [2]** 916/18 977/8
**Road [1]** 890/15
**Robert [1]** 906/15
**role [5]** 916/21 917/2
917/9 956/12 956/14
**roles [1]** 912/9
**room [2]** 890/23
949/12
**root [1]** 963/22
**ROSE [1]** 890/10
**route [2]** 928/21
928/24
**RPR [1]** 890/21
**rule [11]** 893/8 894/3
894/4 896/17 910/24
916/5 917/25 948/19
949/1 949/25 952/5
**ruled [3]** 925/25 926/4
948/8
**rules [2]** 926/3 948/7
**ruling [4]** 893/14
893/19 925/10 950/8
**rulings [2]** 896/24
911/4
**run [2]** 916/18 977/24

**S**

**S-U [1]** 944/4
**said [48]** 893/13
893/19 893/19 893/19
896/12 896/20 897/2
898/15 899/3 899/10

901/3 906/17 912/11
918/11 927/2 928/14
928/16 929/18 933/7
936/14 937/16 937/17
939/7 939/13 940/4
940/5 940/20 943/2
943/3 943/22 944/7
944/17 945/1 945/12
946/23 947/24 948/4
949/8 951/9 951/16
952/24 953/3 953/9
966/1 968/5 970/21
974/6 982/4
**same [8]** 904/17
934/25 976/13 977/16
980/19 986/20 987/13
987/17
**Santobello [1]** 974/8
**satisfied [1]** 940/3
**saw [2]** 938/6 955/8
**say [30]** 894/8 898/3
898/11 900/13 912/13
916/22 916/25 917/7
919/2 925/4 937/23
938/3 941/10 942/14
944/19 944/25 947/17
951/10 955/14 961/8
962/12 962/19 965/5
971/5 974/1 978/9
980/22 981/20 984/9
987/12
**saying [12]** 910/6
912/2 933/1 935/5
936/15 951/2 952/20
954/2 954/9 964/8
964/20 968/8
**says [11]** 904/11
910/20 932/7 932/7
952/21 961/8 970/11
970/15 970/20 974/3
974/11
**scale [1]** 970/22
**schedule [1]** 981/11
**scheduled [1]** 944/20
**scheme [1]** 915/13
**Schiff [1]** 940/23
**SCHOEN [28]** 890/14
890/15 891/13 899/18
901/21 915/11 917/10
923/17 924/11 924/23
949/18 951/8 951/16
953/3 953/18 954/17
955/9 963/3 965/7
965/17 966/20 970/11

970/21 971/25 975/4
981/5 981/8 985/7
**Schoen's [1]** 971/1
**seal [2]** 912/25
**seat [4]** 915/2 961/12
961/13 961/17
**seated [1]** 985/4
**seats [2]** 961/9 961/9
**second [12]** 893/6
898/19 911/9 911/10
919/1 921/20 930/7
931/16 934/15 953/9
968/22 985/23
**secondly [3]** 900/18
918/4 926/9
**seconds [1]** 914/7
**secretly [1]** 952/19
**see [12]** 891/21 892/5
895/24 896/7 898/14
906/2 923/11 924/3
949/17 954/16 967/6
983/12
**seek [2]** 902/9 939/18
**seemed [1]** 946/17
**seems [10]** 908/21
911/23 913/24 933/22
947/19 948/11 954/20
963/4 981/22 983/21
**seen [2]** 955/12 966/16
**Select [10]** 898/5
901/2 901/8 901/25
906/14 907/5 907/11
907/13 931/7 931/8
**selected [1]** 961/9
**Selection [1]** 960/17
**send [2]** 920/25
962/14
**sending [1]** 975/18
**sense [10]** 918/14
918/16 922/5 927/4
942/11 949/1 958/24
963/10 976/11 978/15
**sent [6]** 908/18 908/19
910/6 952/20 963/13
966/12
**sentence [4]** 958/5
969/6 970/15 972/12
**sentences [1]** 961/7
**separate [3]** 901/20
922/7 950/7
**separation [1]** 939/14
**September [2]** 906/22
931/6
**serve [2]** 913/17

985/25
**service [1]** 901/14
**session [1]** 984/25
**set [3]** 932/16 947/3
972/17
**setting [3]** 898/22
927/3 976/19
**several [1]** 901/4
**shared [1]** 916/24
**she [56]** 898/10 898/10
898/11 898/13 898/14
898/14 898/15 899/9
899/9 899/14 899/16
900/12 900/13 901/3
901/3 901/5 901/5
901/7 901/12 901/12
909/2 913/7 913/8
913/9 913/11 913/11
913/13 913/14 913/15
913/16 913/18 913/18
913/20 913/20 913/21
913/21 913/22 913/22
935/12 936/14 943/3
943/4 943/5 945/10
945/12 946/16 946/22
946/23 946/24 952/8
952/9 952/11 952/24
953/1 986/6 986/7
**She's [1]** 946/17
**shifted [1]** 904/18
**shortened [1]** 901/20
**shorthand [2]** 929/4
948/5
**shortly [2]** 966/21
968/5
**should [22]** 891/22
903/6 906/7 907/12
910/8 910/11 911/16
912/1 913/25 928/1
929/13 938/1 952/21
953/14 958/14 962/6
963/8 976/24 977/4
978/19 981/17 984/16
**shouldn't [7]** 912/1
912/5 912/10 912/10
916/22 916/25 984/15
**show [5]** 906/13
936/21 950/25 951/3
972/20
**showed [2]** 910/2
968/6
**showing [2]** 893/21
903/1
**shows [1]** 906/23

**S**

side [1] 955/20
sidebar [3] 912/24
914/10 915/3
sifted [1] 923/13
sign [2] 898/14 900/9
signature [1] 909/3
signed [6] 898/12
898/16 900/13 900/14
900/16 908/17
significance [1]
936/22
signing [1] 900/10
SILVERMAN [1]
890/18
similar [1] 909/11
similarity [1] 942/23
simple [1] 893/13
simply [11] 897/1
898/17 902/17 906/13
922/13 926/16 926/17
929/12 942/5 951/2
972/21
since [6] 894/1 918/2
932/20 961/11 979/7
980/13
sincere [1] 941/9
single [3] 909/25
929/16 929/19
sir [1] 926/14
sitting [3] 943/17
976/21 981/14
situation [1] 974/3
Sixth [2] 899/22
917/15
skills [1] 974/5
slight [1] 896/13
SLUTKIN [1] 890/18
small [1] 985/8
smarter [2] 918/3
949/10
smartest [1] 949/12
so [141]
so-called [1] 893/14
sold [1] 917/19
sole [1] 900/9
some [33] 892/3
892/18 894/1 896/10
905/15 906/4 912/11
913/7 913/18 916/18
916/21 923/18 924/1
924/1 925/13 927/24
928/17 932/18 935/9
937/24 940/9 941/10

943/20 950/25 951/22
952/19 953/12 963/1
963/21 967/9 970/23
970/24 972/8
someone [2] 948/20
963/19
something [19] 896/5
897/1 912/2 917/15
929/21 942/3 946/24
948/23 951/1 955/9
962/8 967/21 967/24
968/9 970/17 972/10
977/11 986/1 986/5
Sometimes [1] 987/4
somewhat [1] 976/3
sonogram [1] 913/6
soon [2] 907/16
982/24
sorry [11] 907/21
914/16 934/14 934/16
945/4 948/23 956/17
968/7 974/20 981/10
981/22
sort [7] 913/18 917/13
927/3 955/21 963/21
970/22 978/4
sounds [1] 920/20
spe [1] 952/17
speak [7] 895/2 907/9
935/8 942/25 955/21
965/23 966/18
speaking [1] 939/5
special [2] 891/9
984/11
specialist [1] 891/9
specific [7] 925/3
937/25 954/18 968/17
971/9 974/24 984/14
specifically [6] 903/5
906/22 926/10 929/9
948/10 973/4
specificity [1] 929/3
specifics [1] 972/8
spend [1] 915/8
split [1] 977/3
staff [2] 901/4 936/18
staffer [3] 929/11
936/14 936/15
staffer's [1] 929/10
stage [1] 927/4
stand [4] 933/5 933/11
937/4 946/8
standard [4] 898/23
950/1 950/17 950/24

standpoint [1] 967/23
stands [1] 940/21
start [10] 896/14
908/14 910/21 949/21
962/9 963/9 963/16
969/6 982/18 987/9
started [1] 913/7
starting [1] 976/17
state [1] 962/22
statement [3] 943/21
959/16 959/20
statements [5] 934/5
940/7 940/9 942/1
957/1
states [8] 890/1 890/2
890/8 891/3 907/2
931/8 937/7 942/18
staying [1] 962/20
step [6] 892/8 901/1
902/3 927/2 942/4
952/4
STEPHEN [5] 890/5
891/4 907/4 931/5
972/13
steps [2] 930/10
951/21
Steve [1] 891/13
stick [1] 965/9
still [12] 904/13 904/14
907/23 916/2 928/17
930/13 937/23 947/20
950/13 961/8 972/9
987/13
stipulations [1]
956/21
story [3] 938/9 938/11
938/12
straightforward [1]
897/10
Street [2] 890/12
890/19
strength [2] 896/5
916/12
stricken [1] 958/4
strike [1] 964/16
studied [1] 927/14
study [1] 944/13
styles [1] 954/12
stymied [1] 925/9
Su [1] 944/4
subject [3] 944/11
969/9 972/15
subjects [1] 944/9
submit [4] 892/10

892/11 923/2 930/18
submitted [3] 911/25
913/22 966/11
subpoena [65] 898/8
898/9 898/12 898/22
899/8 899/14 899/15
899/17 899/19 900/9
900/10 900/16 900/17
901/14 901/15 901/15
903/4 903/8 904/4
905/2 906/20 906/22
906/24 906/25 907/5
907/23 908/17 909/3
909/5 909/14 921/21
926/16 926/19 927/6
927/6 927/14 931/6
931/21 933/20 936/8
936/13 936/20 942/6
944/23 945/3 945/3
945/13 945/20 945/21
947/3 947/22 948/3
948/19 951/20 952/20
954/4 963/22 964/19
964/22 969/8 972/14
979/16 979/25 980/6
980/9
subpoena-related [1]
921/21
subpoenaed [4] 898/4
898/18 908/16 909/6
subpoenas [4] 893/16
969/17 972/16 973/18
substance [1] 951/8
substantial [1] 923/25
substantive [1] 981/23
such [4] 902/15 909/3
912/15 946/11
suffice [1] 930/2
sufficient [8] 908/15
909/8 909/10 909/20
910/7 950/1 969/1
969/13
sufficiently [2] 943/5
964/12
suggest [1] 911/20
suggested [2] 930/10
941/18
suggesting [2] 906/7
969/4
suggestion [7] 894/1
921/6 961/18 962/11
963/20 969/18 983/1
Suite [1] 890/15
supply [1] 948/1

**S**

**support [5]** 927/15
933/18 969/1 979/12
980/20
**supporting [1]** 980/15
**supports [2]** 933/21
974/22
**Supreme [2]** 904/23
935/14
**sure [8]** 910/18 911/9
922/21 925/15 936/15
938/16 956/5 966/16
**suspected [3]** 936/14
936/21 971/3
**swayed [1]** 942/9

**T**

**table [2]** 891/13
964/11
**take [26]** 894/20 905/6
912/10 912/10 915/6
916/22 917/17 917/18
921/22 922/5 922/25
924/13 924/17 927/2
930/9 934/16 939/22
943/17 953/21 955/2
967/1 974/16 976/2
976/2 977/4 977/8
**taken [5]** 899/4 911/8
926/10 945/5 987/21
**takes [1]** 978/7
**taking [1]** 960/24
**talk [9]** 931/15 943/11
951/24 955/3 967/20
973/22 984/1 985/8
986/13
**talked [5]** 893/11
939/23 945/2 953/17
954/17
**talking [4]** 902/4 932/7
984/16 986/19
**talks [1]** 906/22
**team [2]** 914/8 979/12
**teed [2]** 964/12 965/23
**televised [1]** 944/20
**television [1]** 930/14
**tell [14]** 911/21 916/14
924/9 927/23 932/19
944/16 949/7 964/4
968/21 975/9 979/8
983/7 984/12 985/22
**telling [3]** 964/7
979/14 981/14
**tells [4]** 927/7 927/11

927/11 966/3
**tension [3]** 939/13
940/1 944/1
**term [1]** 936/10
**terms [7]** 905/1 905/8
934/2 944/22 976/18
982/9 982/11
**terrific [1]** 913/16
**testified [9]** 899/9
909/2 928/23 945/9
945/10 952/3 952/8
952/10 952/11
**testify [22]** 893/23
902/11 923/6 929/12
934/23 942/20 946/18
947/4 947/5 952/7
953/2 954/4 958/23
959/7 972/20 978/25
979/6 979/8 979/13
979/17 979/21 981/4
**testifying [4]** 922/16
979/3 980/13 980/17
**testimony [29]** 898/5
898/6 899/9 899/11
900/4 900/11 902/20
903/16 904/4 906/17
907/9 908/2 908/4
922/23 928/11 928/22
929/8 932/19 937/4
937/11 938/25 942/22
944/10 954/6 958/22
959/6 978/20 979/21
980/20
**than [9]** 893/4 916/17
916/19 918/3 933/3
942/13 949/10 953/8
976/9
**thank [40]** 893/4 895/3
905/21 908/6 908/7
911/12 914/8 914/25
915/2 915/17 924/17
924/24 925/7 925/16
926/14 945/8 949/18
949/20 955/18 955/18
957/20 958/20 965/15
965/16 971/24 975/1
978/13 978/22 980/24
981/1 981/7 981/7
981/9 985/6 985/10
985/11 986/23 987/7
987/10 987/19
**that [614]**
**that's [59]** 895/15
896/6 896/20 897/2

897/15 899/2 899/17
902/6 902/11 903/15
903/15 903/23 904/23
907/24 908/25 911/9
918/15 918/18 927/21
929/25 932/23 933/4
933/16 934/4 936/3
937/3 938/3 938/9
939/13 939/20 942/16
944/12 944/12 944/14
945/1 948/2 948/21
948/22 949/10 951/14
951/25 952/22 955/20
956/18 958/20 961/14
966/17 967/20 969/20
969/20 970/2 970/12
970/21 971/15 972/21
973/3 978/22 983/25
985/22
**their [23]** 892/12
893/21 910/14 916/17
916/23 919/10 926/23
928/16 930/14 936/11
941/1 941/6 941/7
941/7 941/19 948/19
952/20 964/2 964/7
966/5 974/22 977/23
985/20
**theirs [1]** 917/3
**them [78]** 891/21
892/7 898/23 899/1
899/23 906/9 909/16
912/1 912/9 916/20
917/8 920/24 923/3
923/4 923/13 924/7
926/1 926/1 926/23
927/11 927/12 928/12
928/22 935/15 942/7
942/25 943/1 946/18
950/22 951/9 954/15
954/24 955/20 961/23
962/1 963/8 964/4
964/7 965/10 966/16
966/21 966/22 966/24
968/12 968/15 968/16
968/18 975/8 975/8
975/11 975/16 975/18
976/2 976/15 977/5
977/25 978/16 981/14
981/17 982/1 982/17
982/18 983/5 983/7
983/8 983/12 983/16
984/1 984/2 984/3
984/4 984/4 984/14

984/15 984/19 987/15
987/15 987/16
**themselves [4]** 899/14
926/6 928/6 935/9
**then [67]** 892/6 892/20
893/21 894/24 895/1
896/20 907/14 907/16
912/7 913/7 913/14
915/9 915/10 916/8
916/9 919/17 920/4
921/2 921/7 921/7
921/8 921/14 921/24
922/15 923/1 923/4
923/10 923/11 923/13
924/13 924/13 924/17
925/2 927/7 928/24
930/5 933/11 935/25
936/8 937/17 938/11
946/14 946/15 947/17
947/24 952/11 963/24
965/25 966/4 969/15
970/9 970/19 971/13
976/19 977/8 977/23
978/5 978/8 980/1
981/14 982/15 982/18
984/19 985/20 986/20
987/15 987/16
**theory [13]** 922/4
942/20 947/7 968/25
972/7 972/11 972/18
972/18 973/4 973/14
974/9 974/22 974/25
**there [62]** 892/2 892/8
892/20 895/17 897/18
897/19 899/17 901/3
903/1 903/21 903/24
904/4 910/5 911/14
911/25 912/15 914/2
921/14 922/3 923/9
923/15 923/24 924/17
930/14 934/5 935/9
939/19 942/17 944/1
946/14 946/15 947/13
949/5 949/8 950/24
951/18 951/21 952/5
952/14 952/14 952/18
953/6 954/5 955/13
955/16 955/16 958/13
958/15 958/16 968/4
968/11 968/25 969/2
969/16 970/19 971/16
971/17 981/23 982/10
983/4 983/21 986/25
**there's [24]** 892/5

**T**

**there's... [23]** 895/24
902/6 902/17 908/17
912/12 921/17 927/18
936/12 944/1 950/20
952/12 952/13 954/15
954/17 963/20 968/3
969/11 969/13 969/13
970/6 976/19 977/2
977/8
**therefore [4]** 942/4
969/9 972/15 973/21
**these [27]** 892/15
893/3 899/10 901/2
901/16 906/1 911/17
911/19 924/4 924/4
926/20 927/14 929/11
935/15 938/3 939/8
942/24 944/9 946/19
956/1 963/9 963/14
967/10 970/20 975/5
980/20 986/24
**they [83]** 892/5 892/22
892/24 892/24 897/6
901/24 907/22 909/4
909/25 912/10 915/21
915/22 915/23 916/10
916/11 916/22 917/6
917/8 920/21 924/3
924/9 926/23 927/15
927/16 928/8 928/10
928/15 928/19 928/21
928/24 932/18 935/12
935/13 936/6 936/11
936/12 936/14 936/21
938/1 938/4 938/23
938/25 939/1 940/24
941/6 941/20 942/12
942/21 944/18 944/19
944/23 944/24 945/1
945/2 947/24 948/5
951/3 951/3 951/4
951/5 951/10 951/10
951/14 951/17 953/11
953/25 954/18 954/19
962/6 962/9 966/15
967/24 967/25 969/4
969/18 972/3 974/21
976/3 976/21 977/4
980/12 984/14 984/16
**they're [12]** 911/21
928/12 930/12 930/13
935/16 950/6 954/8
956/3 966/8 976/3

976/20 977/16
**they've [2]** 950/5
953/11
**thing [10]** 893/6
905/12 950/17 950/21
984/14 985/8 985/17
985/22 985/23 986/9
**things [18]** 901/16
906/1 911/17 913/16
916/1 918/2 921/15
929/2 937/23 944/6
948/4 953/4 964/1
967/7 967/10 970/21
970/24 986/22
**think [92]** 891/16
893/20 894/6 895/1
895/20 895/23 896/4
896/10 897/22 902/22
902/23 905/9 910/12
910/13 910/15 912/3
912/15 915/10 915/22
916/11 917/25 918/1
918/10 918/14 918/17
918/17 918/19 919/7
920/1 923/15 923/19
926/11 929/2 929/22
930/1 934/4 936/2
936/9 936/12 940/7
941/25 942/16 942/23
943/2 943/3 945/6
949/11 949/16 951/5
951/11 951/16 952/21
953/6 955/24 958/24
958/25 962/5 963/12
964/4 965/18 966/1
966/2 966/7 966/8
967/22 969/19 971/21
971/22 974/22 975/18
975/23 976/13 976/17
976/24 976/25 977/2
977/3 977/6 977/12
977/19 978/6 978/8
979/2 981/19 983/9
983/11 983/14 983/24
984/1 985/7 986/24
987/13
**thinking [6]** 915/25
916/9 920/17 949/4
977/25 981/10
**thinks [2]** 935/23
954/8
**third [2]** 898/20 899/6
**this [155]**
**THOMPSON [72]**

890/18 893/22 895/2
898/13 900/7 900/8
901/9 901/11 907/10
908/17 918/12 919/14
919/23 922/13 922/23
923/5 925/4 925/4
926/21 927/23 928/7
929/4 929/7 929/17
929/24 930/1 930/2
930/8 930/16 930/21
930/23 932/8 932/10
932/21 933/11 934/8
934/25 935/3 935/7
936/4 936/7 937/1
937/12 937/20 937/20
938/17 939/3 939/5
939/17 939/22 939/25
940/13 940/16 940/19
941/14 941/24 941/25
943/10 943/11 943/15
944/14 944/15 946/16
947/18 948/7 948/16
950/14 950/14 951/23
953/22 954/3 954/19
**Thompson's [5]**
901/13 909/2 932/9
932/19 933/2
**those [29]** 891/22
896/23 899/15 899/16
901/18 901/23 909/15
911/4 917/24 920/11
923/2 925/24 926/2
930/10 935/25 937/8
940/8 940/8 941/2
941/22 942/10 951/5
951/21 970/23 971/21
980/21 982/2 986/22
987/4
**though [4]** 913/24
924/8 947/21 967/25
**thought [20]** 898/15
916/5 918/15 925/2
926/25 929/8 932/21
934/15 936/4 936/7
938/1 946/17 946/22
948/23 955/22 963/18
966/13 971/19 980/23
983/5
**three [6]** 921/14 944/6
945/4 961/7 976/24
981/23
**threshold [3]** 897/16
897/16 949/11
**through [31]** 892/4

892/11 892/11 899/10
899/24 905/4 906/15
920/1 923/13 925/20
925/21 926/10 926/15
927/22 934/18 936/13
936/20 936/21 937/4
937/9 938/11 938/14
938/17 939/11 944/5
951/16 952/12 955/6
955/19 977/12 986/16
**through-line [1]**
951/16
**throughout [2]** 905/6
937/11
**thumb [1]** 970/22
**tie [1]** 928/4
**tied [1]** 927/13
**till [1]** 978/10
**time [25]** 910/1 912/19
915/11 920/18 922/20
922/22 923/19 934/1
934/8 934/16 938/16
942/10 943/8 945/5
947/18 952/7 954/17
966/23 969/25 974/7
978/6 981/13 982/1
982/25 987/17
**times [5]** 899/3 903/20
937/20 979/18 980/8
**timing [1]** 896/14
**today [13]** 896/2
907/13 911/25 917/7
926/8 937/23 978/3
982/5 982/12 984/4
985/12 986/24 987/8
**together [4]** 895/21
906/16 908/3 977/4
**told [8]** 913/11 913/21
927/6 935/14 939/11
979/25 980/1 980/5
**tomorrow [9]** 977/11
978/3 978/10 983/16
986/8 986/18 987/4
987/6 987/9
**tonight [2]** 983/4
983/7
**too [8]** 904/16 918/10
962/4 966/4 966/6
970/12 975/17 977/14
**top [1]** 927/21
**topic [1]** 900/16
**touch [1]** 930/25
**toward [2]** 930/6
972/10

## T

**towards [1]** 906/23
**trail [1]** 900/22
**train [1]** 934/15
**transcript [7]** 890/7
893/12 893/13 943/7
948/12 988/4 989/4
**trial [14]** 890/7 896/14
896/16 896/18 896/21
897/12 900/6 905/15
905/18 910/21 910/23
910/25 911/2 913/14
**tried [2]** 965/9 982/6
**true [4]** 979/9 979/14
988/4 989/4
**Trump [12]** 902/8
928/1 940/17 940/17
942/12 943/9 943/15
944/14 944/14 944/17
951/25 980/3
**Trump's [1]** 907/8
**try [5]** 902/10 941/14
965/24 968/1 982/4
**trying [6]** 908/10
922/19 949/13 949/12
951/17 967/13
**turn [1]** 954/25
**TV [1]** 986/15
**two [26]** 891/19 892/15
893/3 897/23 902/7
902/9 916/1 918/1
921/14 925/1 943/14
944/1 944/6 945/4
951/14 953/4 961/9
961/22 963/3 963/6
963/12 968/11 969/2
979/1 981/24 986/4
**two-minute/one-minut
e [1]** 925/1

## U

**U.S [6]** 890/10 890/11
890/22 904/23 904/24
957/16
**Uh [2]** 950/4 973/2
**Uh-huh [2]** 950/4
973/2
**ultimate [1]** 939/8
**ultimately [2]** 939/8
987/2
**ultrasound [1]** 913/6
**unable [4]** 899/15
899/16 901/5 985/25
**Unanimity [1]** 960/5

**unavailable [2]** 935/13
969/3
**uncontrolled [1]**
950/18
**under [16]** 898/23
899/22 901/14 904/23
912/25 916/5 931/18
936/22 941/11 941/12
952/5 968/23 969/3
971/23 979/8 979/17
**underlying [1]** 942/24
**understand [17]**
898/24 902/14 904/19
906/3 907/22 921/9
925/25 936/17 937/22
940/5 946/12 953/16
954/2 968/1 970/5
973/11 974/15
**understanding [3]**
954/3 964/22 971/23
**understands [2]** 979/5
979/13
**understood [5]** 899/5
920/7 920/12 925/16
943/4
**undue [1]** 934/23
**unfortunately [1]**
966/6
**unilaterally [2]** 939/18
942/7
**UNITED [7]** 890/1
890/2 890/8 891/3
931/8 937/7 942/18
**universe [1]** 925/18
**until [11]** 904/25
915/15 922/2 923/20
924/10 924/20 973/10
977/7 977/12 984/23
986/20
**up [23]** 891/19 894/20
896/18 898/8 906/1
910/25 917/17 917/18
924/13 930/13 945/5
947/3 949/8 964/12
965/23 967/9 968/6
973/10 981/14 983/8
984/6 984/8 986/5
**upon [4]** 897/7 898/14
900/4 955/24
**urge [1]** 931/5
**urged [1]** 931/3
**us [19]** 900/15 913/11
913/11 913/20 923/2
923/3 924/3 924/18

927/15 930/2 932/20
935/14 943/1 947/25
948/1 948/1 963/13
975/18 982/11
**use [13]** 903/19 903/20
907/21 907/24 920/17
929/4 936/10 936/11
938/10 957/16 966/2
967/21 974/23
**used [4]** 930/17
930/24 947/21 948/5
**using [2]** 892/12
985/19

## V

**valid [7]** 898/12 900/10
900/17 928/2 928/16
937/16 939/16
**validity [1]** 939/23
**variance [1]** 903/15
**various [1]** 934/18
**VAUGHN [15]** 890/10
891/8 908/8 914/19
920/15 949/21 955/10
957/11 959/2 959/16
962/5 963/8 968/13
976/6 981/9
**Vaughn's [1]** 977/15
**verdict [2]** 950/10
960/8
**version [4]** 901/20
912/11 966/2 967/2
**versions [2]** 966/24
975/12
**versus [11]** 891/4
904/23 917/2 935/11
942/17 942/19 943/10
943/15 943/25 944/14
944/15
**very [16]** 893/4 893/13
916/21 917/2 917/2
917/9 936/15 943/21
949/15 949/18 953/16
954/21 978/5 979/6
981/7 986/23
**videos [1]** 986/16
**view [17]** 892/4 902/25
904/25 911/18 912/4
912/11 916/24 921/22
925/8 932/18 949/5
949/22 954/10 964/8
976/16 982/22 984/1
**views [2]** 915/8 924/15
**violated [1]** 909/15

**voluntarily [2]** 953/24
954/4
**vote [2]** 931/2 944/20
**vs [1]** 890/4

## W

**wait [4]** 930/9 935/19
935/19 935/19
**waited [1]** 948/13
**waive [2]** 973/25 981/4
**waiver [5]** 965/14
966/11 966/11 968/22
973/22
**waiving [3]** 899/3
930/2 954/22
**walk [2]** 955/19 955/22
**wall [1]** 936/2
**want [56]** 891/15
891/15 895/1 895/8
896/10 905/8 905/17
912/3 912/22 913/24
915/7 915/10 919/2
919/8 922/20 922/21
923/15 923/17 924/25
925/2 926/20 928/23
929/19 935/7 937/12
937/19 937/24 938/16
938/16 939/23 940/12
941/2 941/13 941/15
941/22 943/10 944/25
945/6 945/18 947/23
948/1 948/6 948/12
949/17 954/25 955/9
961/16 963/9 968/20
970/14 977/23 978/15
982/1 984/13 986/23
987/12
**wanted [22]** 891/17
894/3 894/4 894/4
895/17 918/11 920/16
925/3 927/2 928/10
938/25 940/2 941/20
942/19 948/15 951/17
955/11 967/19 979/7
979/8 979/17 985/22
**wanting [1]** 926/5
**wants [5]** 891/17
911/13 927/24 971/9
971/12
**warranted [1]** 920/3
**warrants [1]** 953/18
**was [148]**
**Washington [5]** 890/4
890/12 890/24 935/11

**W**

**Washington... [1]**
942/17
**wasn't [3]** 935/14
937/24 943/5
**watch [2]** 983/7 986/15
**watching [1]** 984/15
**way [32]** 893/20 894/5
896/6 896/10 896/10
900/6 902/3 902/4
906/13 912/4 916/6
916/12 919/6 920/10
920/17 921/21 924/4
924/5 927/24 938/5
946/14 946/15 949/8
949/9 951/22 954/5
962/15 963/21 972/19
977/17 984/6 985/14
**ways [1]** 987/5
**we [242]**
**we'd [4]** 897/4 941/22
962/3 978/15
**we'll [9]** 894/25 918/17
919/8 924/17 959/5
968/1 981/14 982/3
982/24
**we're [28]** 899/3
912/25 915/13 920/6
922/4 923/11 923/15
923/20 930/1 933/9
949/5 951/2 955/12
967/15 972/5 974/16
975/7 975/20 981/21
982/12 982/15 983/16
984/4 984/19 984/21
985/15 985/15 985/16
**we've [13]** 892/12
902/3 917/25 918/7
950/7 964/10 966/15
968/14 976/23 978/25
982/6 985/14 987/13
**week [7]** 913/7 913/13
930/5 944/13 944/18
982/11 986/10
**weighing [1]** 897/11
**weight [2]** 970/12
970/24
**weights [1]** 966/4
**welcoming [1]** 945/2
**well [22]** 893/19 899/5
901/17 926/19 931/15
932/23 933/16 939/12
939/19 943/2 946/14
948/13 951/23 952/20

962/4 963/2 966/6
970/10 974/1 977/1
977/8 980/9
**went [6]** 900/21 909/4
909/5 936/13 936/20
944/5
**were [51]** 892/2 893/25
899/10 899/11 899/15
899/25 900/1 900/21
901/24 906/4 908/24
909/15 911/18 913/8
926/22 931/17 931/25
933/7 933/14 933/17
934/5 934/18 937/16
941/5 941/5 941/6
941/18 941/23 945/16
948/19 952/2 952/6
952/14 952/15 953/5
953/9 962/8 963/3
969/8 969/8 969/12
969/12 969/22 970/17
972/8 972/14 972/14
979/21 980/10 984/9
984/10
**weren't [3]** 937/17
944/24 965/25
**what [120]**
**what's [9]** 896/12
918/25 933/3 935/20
937/8 944/2 946/2
946/3 946/12
**whatever [5]** 894/4
923/2 923/2 971/10
978/7
**whatsoever [1]** 916/20
**when [25]** 893/20
897/11 900/12 915/10
917/22 921/3 925/4
926/23 930/5 930/17
931/3 932/4 939/15
940/19 944/1 945/2
947/17 947/19 947/24
949/22 950/21 953/3
976/20 982/21 986/18
**whenever [3]** 917/8
926/11 977/16
**where [5]** 892/22
948/4 950/18 975/9
984/2
**wherever [1]** 965/6
**whether [46]** 892/21
892/24 895/17 895/18
897/11 898/4 898/13
900/13 900/14 900/16

900/16 900/24 901/7
902/19 903/5 912/7
915/22 918/8 920/1
923/9 923/11 928/2
933/14 938/17 938/21
938/23 939/20 941/5
943/13 946/9 949/22
950/1 950/5 950/7
952/1 952/15 953/4
956/6 958/13 964/3
964/11 965/3 976/14
982/23 984/9 986/13
**which [39]** 897/7
898/17 901/10 902/3
902/16 905/10 906/13
906/21 907/3 907/6
907/16 916/1 917/13
925/13 926/24 934/19
935/6 938/1 940/9
942/19 943/22 944/5
948/10 948/24 952/5
952/23 953/6 954/19
955/16 956/12 961/17
964/24 967/22 968/23
973/19 976/14 981/16
985/18 987/3
**whichever [1]** 936/24
**while [4]** 923/4 949/3
977/5 984/18
**WHITE [3]** 890/18
890/18 891/14
**who [17]** 899/16 900/3
901/2 908/23 908/24
913/5 914/1 929/13
937/6 942/1 942/3
942/25 952/19 961/22
962/19 980/18 986/8
**whoever [1]** 955/20
**whole [4]** 918/3
929/23 969/25 986/12
**whom [1]** 926/21
**why [51]** 899/15
908/24 911/21 918/15
919/21 919/22 925/1
925/3 928/21 928/24
928/24 929/3 929/7
929/17 929/19 929/25
930/5 930/11 930/19
931/19 931/21 931/22
931/22 933/4 933/23
935/19 936/10 936/10
939/22 939/25 940/2
940/3 941/22 942/16
944/18 945/11 945/19

946/22 947/13 949/5
951/23 951/24 963/9
965/18 968/21 971/12
973/3 976/14 979/3
979/14 979/15
**wife's [1]** 935/12
**will [51]** 899/18 901/20
905/5 907/15 907/18
907/22 910/4 912/19
915/1 915/1 921/14
923/8 923/11 924/4
924/14 928/14 950/13
950/14 951/5 955/2
956/1 956/2 956/5
956/7 956/8 956/12
956/25 957/18 962/17
962/18 975/11 975/11
977/22 979/2 980/17
980/17 981/13 982/16
982/16 982/18 982/22
982/22 985/19 985/19
985/21 986/8 986/18
987/2 987/5 987/9
987/16
**willful [5]** 902/17
902/21 945/16 946/2
970/19
**willfully [6]** 969/10
969/18 970/6 970/7
970/7 972/16
**willfulness [2]** 910/2
971/5
**willing [2]** 907/4 907/8
**willingness [3]** 935/6
937/15 945/3
**withdrawal [1]** 940/21
**withdrew [1]** 940/20
**within [2]** 938/13
971/13
**without [6]** 893/7
900/9 910/15 930/2
961/22 971/23
**witness [12]** 898/2
898/7 900/1 926/10
933/5 933/11 950/19
950/22 959/11 959/16
959/21 980/18
**witnesses [13]** 897/23
899/23 900/2 900/3
925/21 925/25 926/20
929/5 930/13 948/17
948/18 958/10 958/21
**won't [3]** 922/16 926/8
956/2

**W**

**wondering [1]** 975/23
**word [15]** 901/8
901/10 901/11 901/13
901/14 903/19 904/7
907/24 936/11 936/23
936/24 936/25 954/5
973/12 975/14
**words [10]** 897/1
903/7 903/20 919/8
930/21 935/17 940/22
943/3 947/21 967/21
**work [8]** 902/7 927/25
929/9 930/4 930/12
976/19 977/23 978/12
**worked [1]** 946/18
**worry [3]** 891/18 986/2
986/3
**would [122]**
**wouldn't [9]** 896/4
926/1 937/22 938/16
940/2 954/23 966/5
972/3 976/9
**write [1]** 931/4
**writer [1]** 942/15
**written [2]** 901/9
940/23
**wrong [1]** 972/21
**wrote [9]** 901/2 901/5
908/24 926/23 932/10
943/21 944/5 947/18
947/20

**Y**

**yeah [13]** 893/5 904/22
905/24 919/16 928/5
930/25 934/17 934/17
934/20 967/5 967/15
967/17 967/18
**year [1]** 891/3
**yes [72]** 893/1 893/9
893/24 905/13 906/6
911/7 913/2 914/9
914/20 917/21 917/23
918/13 919/3 920/15
920/19 920/23 922/11
922/14 922/18 922/18
925/6 925/17 926/7
926/14 928/4 932/3
936/19 946/11 948/9
954/13 955/7 956/17
957/2 957/3 957/6
957/7 957/10 957/12
957/14 957/18 957/23

957/24 958/2 958/3
958/7 958/8 958/11
959/14 960/5 960/7
960/8 960/10 961/20
963/11 963/12 963/15
965/11 966/25 967/8
967/11 968/1 968/14
971/7 973/15 973/23
977/18 978/22 978/22
981/6 982/8 983/3
984/7
**yesterday [11]** 894/20
900/5 901/24 912/3
913/3 913/7 926/11
926/12 926/13 963/25
965/10
**yet [4]** 900/12 902/23
923/15 931/5
**yield [2]** 935/24 938/1
**you [186]**
**you'll [1]** 987/15
**you're [8]** 918/21
919/22 923/2 927/12
927/17 927/19 965/5
978/14
**you've [3]** 947/22
981/24 986/10
**your [127]**
**Your Honor [86]** 891/2
891/7 891/12 892/19
894/16 895/3 895/6
895/22 897/4 905/7
905/13 908/6 908/9
911/10 913/2 914/5
914/13 914/16 914/22
919/6 920/7 920/14
921/12 922/12 924/21
924/24 925/7 925/16
926/14 928/4 929/1
932/3 934/12 936/19
945/8 948/4 949/24
950/15 956/17 956/24
957/2 957/3 957/6
957/7 957/12 957/15
957/24 958/2 958/7
958/8 958/11 958/18
959/1 959/4 959/9
959/13 959/17 960/1
961/15 962/6 962/16
963/11 963/12 964/10
965/16 965/21 966/25
967/3 968/4 968/14
968/19 972/1 973/23
974/17 975/19 975/22

976/23 978/13 980/25
981/6 981/9 982/12
982/13 983/11 985/5
985/9
**yourselves [1]** 891/6

**Z**

**Zelda [1]** 890/15