# [ORAL ARGUMENT HAS NOT BEEN SCHEDULED]

In The

# United States Court Of Appeals
## For The D.C. Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## STEPHEN K. BANNON,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————

## JOINT APPENDIX
### Volume XII of XII – Exhibits
### (Pages: 4780 - 4859)

———————————

David I. Schoen
LAW OFFICE OF
  DAVID I. SCHOEN
2800 Zelda Road
Suite 100-6
Montgomery, AL  36106
(334) 395-6611

*Counsel for Appellant*

Chrisellen R. Kolb
Elizabeth H. Danello
U.S. ATTORNEY'S OFFICE
(USA) APPELLATE DIVISION
601 D Street, NW
Washington, DC  20530
(202) 252-6829

*Counsel for Appellee*

## TABLE OF CONTENTS
## Joint Appendix Volume I of XII

**Page:**

**Docket Entries [1:21-cr-00670-CJN-1]**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**Docket Entries [1:22-mc-00060-CJN]**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**

**Indictment**
    **filed November 12, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **37**

**Transcript of Return on Arrest Warrant & Initial Appearance**
**Before the Honorable Robin M. Meriweather**
    **on November 15, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **46**

**Transcript of Video Arraignment/Status Conference**
**Before the Honorable Carl J. Nichols**
    **on November 18, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **59**

**Transcript of Video Status Conference**
**Before the Honorable Carl J. Nichols**
    **on December 7, 2021.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **78**

**Defendant's Motion to Compel Discovery,**
**With Exhibits,**
    **filed February 4, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **158**

    **Exhibits:**

    1.    **Letter**
            **dated January 14, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . **186**

    2.    **Letter**
            **dated January 28, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . **194**

**Exhibits** to
**Defendant's Motion to Compel Discovery**
      **filed February 4, 2022, Continued:**

3.      Letter
            dated October 7, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . 197

4.      FBI Interview of Robert J. Costello, Esquire
            dated November 3, 2021. . . . . . . . . . . . . . . . . . . . . . . . . 169

7.      H. Res. 503, Sec. 5(c)(6)(A) & (B)
            dated June 20, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 214

8.      Procedures Adopted by 117th Congress
      Regulations for Use of Deposition Authority
            dated January 4, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . 229

9.      FBI Interview of U.S. House of Representatives
      General Counsel Doug Letter
            dated November 2, 2021. . . . . . . . . . . . . . . . . . . . . . . . . 231

10.    Letter from Ronald C. Machen Jr., U.S. Attorney,
      to Speaker of the House John A. Bohner
            dated March 31, 2015. . . . . . . . . . . . . . . . . . . . . . . . . . . . 240

11.    Prosecution for Contempt of Congress of an
      Executive Branch Official Who Has Asserted a
      Claim of Executive Privilege
            8 Op. O.L.C. 101 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . 248

12.    Attempted Exclusion of Agency Counsel from
      Congressional Depositions of Agency
      Employees, Slip Op.
            dated May 23, 2019. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 291

Government's Motion *in Limine* to Exclude Evidence or
Argument Relating to Good-faith Reliance on
Law or Advice of Counsel,
With Attachment,
          filed February 4, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 311

     Attachment:

     Letter
               dated October 7, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 319

Defendant's Opposition to Government
Motion *in Limine* on Advice of Counsel,
With Exhibit,
          filed February 25, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 329

     Exhibit:

     1.    Declaration of Robert J. Costello, Esquire
                    sworn on February 25, 2022.. . . . . . . . . . . . . . . . . . . . . . . . 356

Defendant's Reply in Support of His Motion to Compel Discovery,
With Exhibit,
          filed March 8, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 371

     Exhibit:

     1.    Table That Sets Forth the Positions
           Taken by the Government and Defense. . . . . . . . . . . . . . . . . 385

**Government's Reply in Support of its Motion *in Limine* to Exclude Evidence or Argument Relating to Good-faith Reliance on Law or Advice of Counsel,**

**With Exhibits,**

filed March 8, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 390

**Exhibits:**

1.    **E-mail Correspondence [US-001038-40]**
        **various dates.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 418

2.    **Letter from Justin Clark**
        **dated October 6, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . 422

3.    **Email from Committee Counsel**
        **dated October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . 428

4.    **Email from Costello**
        **dated October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . 430

5.    **Email from Committee Counsel**
        **dated October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . 436

6.    **Costello Email Chain**
        **dated October 14, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . 439

7.    **Costello and Clark Email Exchange**
        **dated October 14-18, 2021.** . . . . . . . . . . . . . . . . . . . . . . 444

## TABLE OF CONTENTS
## Joint Appendix Volume II of XII

**Page:**

**Transcript of Oral Argument**
**Before the Honorable Carl J. Nichols**
        **on March 16, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **457**

**Defendant's Surreply to the Government's Reply in Support of its**
**Motion** *in Limine* **to Exclude Evidence or Argument Relating to**
**Good-faith Reliance on Law or Advice of Counsel**
        **filed March 17, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **556**

**Defendant's Supplemental Brief in Opposition to the**
**Government's Motion** *in Limine* **on Advice of Counsel,**
**With Exhibits,**
        **filed March 22, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **565**

        **Exhibits:**

   1.    **Senate Committee Investigation**
                **dated August 8, 1958.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **577**

   2.    **Application of 28 U.S.C. § 458 to Presidential**
         **Appointments of Federal Judges**
                **dated December 18, 1995.** . . . . . . . . . . . . . . . . . . . . . . . **584**

   3.    **Letter from Michael B. Mukasey, Attorney**
         **General, to the Hon. Nancy Pelosi, Speaker of the**
         **House of Representatives**
                **dated February 29, 2008.** . . . . . . . . . . . . . . . . . . . . . . . . **599**

<u>**Exhibits**</u> **to**
**Defendant's Supplemental Brief in Opposition to the**
**Government's Motion** *in Limine* **on Advice of Counsel**
**filed March 22, 2022, Continued:**

4.    **Response to Congressional Requests for**
      **Information Regarding Decisions Made Under the**
      **Independent Counsel Act,**
      **10 Op. O.L.C. 68 (1986)**............................ **601**

5.    **Rex Lee, Executive Privilege, Congressional Subpoena**
      **Power, and Judicial Review: Three Branches,**
      **Three Powers, and Some Relationships,**
      **1978 B.Y.U. L. Rev. 231, 259**....................... **619**

6.    **Whether the Department of Justice May Prosecute**
      **White House Officials for Contempt of Congress,**
      **2008 WL 11489049 (O.L.C.)**........................ **688**

7.    **Congressional Oversight of the White House,**
      **2021 WL 222744 (O.L.C.)**.......................... **692**

<u>**Amended Exhibit**</u> **to**
**Defendant's Supplemental Brief in Opposition to the**
**Government's Motion** *in Limine* **on Advice of Counsel**
**filed March 23, 2022:**

3.    **Letter from Michael B. Mukasey, Attorney**
      **General, to the Hon. Nancy Pelosi, Speaker of the**
      **House of Representatives**
      **dated February 29, 2008**.......................... **722**

**Government's Response to Defendant's Supplemental Brief in**
**Opposition to the Government's Motion** *in Limine* **to Exclude**
**Evidence and Argument Relating to Good-faith**
**Reliance on Law or Advice of Counsel**
**filed March 29, 2022.** ...................................... **725**

**Defendant's Supplemental Reply on Waiver**

> **filed March 30, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **735**

**Order**

> **filed April 6, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **741**

**Government's Motion *in Limine* to Exclude Evidence of Department of Justice Opinions and Writings, With Exhibits,**

> **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **745**

> **Exhibits:**

> > 1.    **Letter from White House Deputy Counsel to Costello**
> > > **dated October 18, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **765**

> > 2.    **Letter from Justin Clark to Costello**
> > > **dated October 6, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **767**

> > 3.    **Emails from Justin Clark to Costello**
> > > **various dates.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **769**

**Government's Motion *in Limine* to Exclude Evidence Relating to Objections to Subpoena That Defendant Waived, With Exhibit,**

> **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **771**

> **Exhibit:**

> > 1.    **Subpoena**
> > > **dated September 23, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . **781**

**Government's Motion *in Limine* to Exclude Evidence of the Defendant's Prior Experience with Subpoenas**

> **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **792**

**Defendant's Notice Pursuant to Rule 12.3, Fed. R. Crim. P.**
      **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **798**

**Defendant's Motion to Exclude Evidence**
      **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **800**

**Defendant's Motion to Dismiss the Indictment,**
**With Exhibits,**
      **filed April 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **807**

    <u>**Exhibits:**</u>

    **A.**    **H. Res. 8 (Adoption of Rules for 117th Congress)**
          **dated January 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **867**

    **B.**    **H. Res. 503 (Authorizing House Select Committee)**
          **dated June 30, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **912**

    **C.**    **Regulations For Use Of Deposition Authority**
          **dated January 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **927**

    **D.**    **Amerling and Letter FBI 302**
          **dated November 10, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . **929**

## TABLE OF CONTENTS
### Joint Appendix Volume III of XII

**Page:**

**Exhibits to**
**Defendant's Motion to Dismiss the Indictment**
**filed April 15, 2022, Continued:**

E.   **Rules of the 117th Congress**
        **dated February 2, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 938

F.   **Republican Conference Rules of the 117th Congress.** . . . . . . 991

G.   **Congressional Oversight of The White House,**
        **45 Op. O.L.C. slip op. (Jan. 8, 2021).** . . . . . . . . . . . . . . . . 1005

H.   **Assertion of Executive Privilege Concerning the**
     **Dismissal and Replacement of U.S. Attorneys**
        **dated June 27, 2007.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1065

I.   **Immunity of the Former Counsel to the President from**
     **Compelled Congressional Testimony,**
        **43 Op. O.L.C. slip op. (July 10, 2007).** . . . . . . . . . . . . . . 1075

J.   **Prosecution for Contempt of Congress of an Executive**
     **Branch Official Who Has Asserted a Claim of Privilege,**
        **8 Op. O.L.C. 101 (1984).** . . . . . . . . . . . . . . . . . . . . . . . . . . . 1079

K.   **Whether the Department of Justice May Prosecute**
     **White House Officials for Contempt of Congress,**
        **32 Op. O.L.C 65 (2008).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1122

L.   **Application of 28 U.S.C. Sec. 458 to Presidential**
     **Appointments of Federal Judges,**
        **19 Op. O.L.C slip op. (December 18, 1995).** . . . . . . . . . . 1128

**Exhibits** to
**Defendant's Motion to Dismiss the Indictment**
    **filed April 15, 2022, Continued:**

M.    Randolph D. Moss, Executive Branch Legal Interpretation:
      A Perspective from the Office of Legal Counsel,
          52 Admin. L. Rev. 1303 (2000)...................... 1143

N.    Testimonial Immunity Before Congress of the
      Former Counsel to the President,
          43 Op. O.L.C. slip op. (May 20, 2019). ............. 1172

O.    Response to Congressional Requests for
      Information Regarding Decisions Made
      Under the Independent Counsel Act,
          10 Op. O.L.C. 68 (1986)............................ 1194

P.    Letter from Ronald C. Machen Jr., U. S. Attorney, to
      Speaker John A. Boehner
          dated March 31, 2015. ............................. 1220

Q.    Letter from Michael B. Mukasey, Attorney General, to
      Speaker of the House, Hon. Nancy Pelosi
          dated February 29, 2008............................ 1228

R.    Steven G. Bradbury, Memorandum for Attorneys of the
      Office Re: Best Practices for OLC Opinions
          May 16, 2005...................................... 1231

S.    Trevor W. Morrison, Stare Decisis in the
      Office of Legal Counsel,
          110 COLUM. L. REV. 1448 (2010).................... 1237

T.    Walter Dellinger, et al., Principles to
      Guide the Office of Legal Counsel
          dated Dec. 21, 2004. .............................. 1261

**Exhibits** to

**Defendant's Motion to Dismiss the Indictment**
    **filed April 15, 2022, Continued:**

U.      David J. Barron, Memorandum for Attorneys of the
          Office Re: Best Practices for OLC Legal
          Advice and Written Opinions
               dated July 16, 2010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1268

V.      Frank H. Easterbrook, Presidential Review,
          40 CASE W. RES. L. REV. 905 (1990). . . . . . . . . . . . . . . 1275

W.     Presidential Authority to Decline to Execute
          Unconstitutional Statutes, OLC Mem. Op.
               dated November 2, 1984. . . . . . . . . . . . . . . . . . . . . . . . 1302

X.      Douglas W. Kmiec, OLC's Opinion Writing Function:
          The Legal Adhesive for a Unitary Executive,
               15 CARDOZO L. REV. 337 (1993). . . . . . . . . . . . . . . . . 1316

## TABLE OF CONTENTS
### Joint Appendix Volume IV of XII

**Page:**

<u>**Exhibits**</u> **to**
**Defendant's Motion to Dismiss the Indictment**
    **filed April 15, 2022, Continued:**

    Y.    **Applying Estoppel Principles in Criminal Cases,**
          **78 YALE L.J. 1046 (1969)**. . . . . . . . . . . . . . . . . . . . . . . . . **1355**

    Z.    **Anne Bowen Pouliun, Prosecutorial Inconsistency,**
          **Estoppel, and Due Process: Making the**
          **Prosecution Get its Story Straight,**
          **18 Cal. L. Rev. 1423 (2001)**. . . . . . . . . . . . . . . . . . . . . . . . . **1384**

    AA.    **Rex E. Lee, Executive Privilege, Congressional Subpoena**
          **Power, and Judicial Review: Three Branches, Three**
          **Powers, and Some Relationships,**
          **1978 B.Y.U. L. REV. 231 (1978)**. . . . . . . . . . . . . . . . . . . . . . . **1441**

    BB.    **John O. McGinnis, Models of the Opinion Function of the**
          **Attorney General: A Normative, Descriptive, and**
          **Historical Prolegomenon,**
          **15 CARDOZO L. REV 375 (1993)**. . . . . . . . . . . . . . . . . **1510**

    CC.    **Griffin B. Bell, The Attorney General: The Federal**
          **Government's Chief Lawyer and Chief Litigator, or**
          **One Among Many?,**
          **46 FORDHAM L. REV. 1049 (1978)**. . . . . . . . . . . . . . . . **1572**

**Exhibits** to
**Defendant's Motion to Dismiss the Indictment**
  **filed April 15, 2022, Continued:**

DD.  Notes, The Immunity-Conferring
     Power of the Office of Legal Counsel,
         121 HARV. L. REV. 2086 (2008). . . . . . . . . . . . . . . . . . . 1596

EE.  U.S. Department of Justice, Criminal
     Resource Manual § 2055 (Public Authority Defense). . . . . 1621

Defendant's Notice of Filing,
With Attached Motion to Dismiss the Indictment and Exhibits Index,
    filed April 19, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1627

Government's Response to Defendant's
Notice under Federal Rule of Procedure 12.3
    filed April 29, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1695

Defendant's Opposition to the Government's
Motion *in Limine* Based on Waiver
    filed May 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1698

Defendant's Opposition to the Government's
Motion to Exclude Prior Subpoena Evidence
    filed May 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1709

Defendant's Response to Government's Motion *in
Limine* to Exclude Evidence of Department of
Justice Opinions and Writings [Doc. 52]
    filed May 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1720

**Government's Opposition to Defendant's Motion to Dismiss,**
**With Exhibits,**

  filed May 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1745

**Exhibits:**

  1. **Letter from Chairman Bennie G. Thompson to**
    **Mr. Stephen K. Bannon**
      **dated September 23, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 1793

  2. **E-mail from Cooney to Costello**
      **dated November 3, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 1796

  3. **E-mail from Costello to Cooney**
      **dated November 4, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 1800

  4. **E-mail from Cooney to Costello**
      **dated November 5, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . 1803

<u>**TABLE OF CONTENTS**</u>
**Joint Appendix Volume V of XII**

**Page:**

**Government's Opposition to**
**Defendant's Motion to Exclude Evidence**
  filed May 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1806

**Defendant's Reply in Support of His Motion to Exclude Evidence**
  filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1812

**Government's Reply in Support of Motion *in Limine* to Exclude**
**Evidence of Department of Justice Opinions and Writings**
  filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1818

**Government's Reply in Support of Motion *in Limine* to**
**Exclude Evidence Relating to Objections to**
**Subpoena That Defendant Waived**
  filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1837

**Government's Reply in Support of Motion *in Limine* to Exclude**
**Evidence of the Defendant's Prior Experience with Subpoenas**
  filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1846

**Defendant's Reply in Support of His Motion to Dismiss Indictment,**
**With Exhibits,**
  filed May 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1855

  <u>**Exhibits:**</u>

  1. **Letter from Chairman Bennie G. Thompson to**
    **Mr. Stephen K. Bannon**
     **dated September 23, 2021.** . . . . . . . . . . . . . . . . . . . . . . . 1885

  2. **Transcript of Oral Argument**
    **Before the Honorable Carl J. Nichols**
     **on March 16, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1894

**Exhibits** to

**Defendant's Reply in Support of His Motion to Dismiss Indictment**
        **filed May 17, 2022, Continued:**

3.      **Letter from Costello to Congressman Thompson**
                **dated October 18, 2021** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1994

4.      **Letter from Congressman Thompson to Costello**
                **dated October 19, 2021** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1997

**United States House of Representatives'**
**Motion for Leave to File** *Amicus Curiae* **Brief,**
**With Attachment**
        **filed May 25, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2002

        **Attachment:**

        **Brief of United States House of Representatives as**
        *Amicus Curiae* **In Support of the Department of Justice**
                **dated May 10, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2009

**United States House Minority Leadership**
**Motion for Leave to File** *Amicus Curiae* **Brief,**
**With Attachment,**
        **filed May 25, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2035

        **Attachment:**

        **Brief of the U.s. House of Representatives Minority Leader**
        **Kevin O. Mccarthy and the U.s. House of Representatives**
        **Minority Whip Stephen J. Scalise as Amicus Curiae**
                **dated May 24, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2050

**Defendant's Notice Regarding Amicus Briefs**
      **filed June 10, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2065**

**Motion to Quash,**
**With Attachment,**
      **filed June 13, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2072**

      <u>**Attachment:**</u>

      **Memorandum of Points and Authorities**
      **In Support of Motion to Quash,**
      **With Exhibits,**
         **dated June 13, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2074**

# TABLE OF CONTENTS
## Joint Appendix Volume VI of XII

**Page:**

**Transcript of In-person Motions Hearing**
**Before the Honorable Carl J. Nichols**
     **on June 15, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2229**

**Government's Omnibus Motion** *in Limine*
     **filed June 17, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2408**

**Defendant's Motion to Compel**
**Meadows & Scavino Declination Discovery,**
**With Exhibits,**
     **filed June 27, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2425**

     <u>**Exhibits:**</u>

     1.    **Letter from Bannon's Counsel to Prosecutors**
           **dated June 21, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2442**

     2.    **Letter from Prosecutors to Bannon's Counsel**
           **dated June 21, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2445**

     3.    **Letter from Justin Clark to Scott Gast**
           **dated October 6, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **2448**

     4.    **Letter from Pat Cipollone to Chairman Nadler**
           **dated September 16, 2019.** . . . . . . . . . . . . . . . . . . . . . . . . **2453**

     5.    **Plaintiff's Motion for Judgment on the Pleadings, or in the**
           **Alternative, for Summary Judgment, & in Opposition to**
           **Defendants' Motion for Summary Judgment**
           **dated May 20, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2459**

**Defendant's Opposition to Motion to Quash**
     **filed June 27, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2597**

## TABLE OF CONTENTS
### Joint Appendix Volume VII of XII

Page:

Government's Opposition to Defendant's Motion to Compel
    filed June 29, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2694

Joint Proposed Jury Instructions,
With Attachment,
    filed June 30, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2701

    Attachment:

    Manual of Model Criminal Jury Instructions
        dated March 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2765

Government's Objections to Defendant's Proposed Jury Instructions
    filed July 1, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2768

Defendant's Opposition to Government's Omnibus Motion *in Limine*
    filed July 1, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2781

Office of General Counsel U.S. House of Representatives'
Reply in Support of Motion to Quash,
With Exhibits,
    filed July 5, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2796

    Exhibits:

    A.    Order - *U.S. v. Moussaoui*
        dated March 2, 2006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2828

    B.    Order - *U.S. v. Arthur Andersen, L.L.P.*
        dated May 14, 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2834

    C.    Order Granting Motion to Quash Subpoena on
        U.S. Representative Maxine Waters - *D.C. v. Hayes*
        dated November 16, 2007. . . . . . . . . . . . . . . . . . . . . . . . . 2836

**Defendant's Reply in Further Support of Motion to Compel Meadows and Scavino Declination Discovery, With Exhibit,**

     filed July 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2842

**Exhibit:**

1. **Memorandum**

         dated October 29, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . 2853

**Government's Reply in Support of Motion** *in Limine*

     filed July 8, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2863

**Government's Motion** *in Limine* **to Exclude Evidence or Argument Relating to the Defendant's Eleventh-hour Assertion That He Is Willing to Testify Before the Select Committee**

     filed July 11, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2874

**Transcript of In-person Motions Hearing Before the Honorable Carl J. Nichols**

     on July 11, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2879

**Defendant's Opposition to Motion** *in Limine* **to Bar Testimony, With Exhibits,**

     filed July 13, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3071

**Exhibits:**

1. **Letters from former President Trump to Mr. Costello and Mr. Costello's Letter to Chairman Thompson**

         dated June 9, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3080

2. **Certification**

         dated October 21, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . 3084

**Exhibits** to

**Defendant's Opposition to Motion *in Limine* to Bar Testimony**
  filed July 13, 2022, Continued:

  3.    Subpoena
          dated September 23, 2021. . . . . . . . . . . . . . . . . . . . . . . . . 3090

  4.    Letter from Thompson to Costello
          dated October 8, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . 3092

  5.    Indictment
          dated November 12, 2021. . . . . . . . . . . . . . . . . . . . . . . . 3096

**Government's Reply in Support of Motion *in Limine* to Exclude Evidence or Argument Relating to the Defendant's Eleventh-hour Assertion That He Is Willing to Testify Before the Select Committee, With Exhibits,**
  filed July 13, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3106

  **Exhibits:**

  1.    Letter from Thompson to Costello
          dated October 8, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . 3114

  2.    Letter from Thompson to Costello
          dated October 15, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . 3118

**Government's Objections to Defendant's Trial Exhibits**
  filed July 14, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3122

## TABLE OF CONTENTS
## Joint Appendix Volume VIII of XII

**Page:**

**Transcript of In-person Motions Hearing and Pretrial Conference**
**Before the Honorable Carl J. Nichols**
          on July 14, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3127

**Defendant's Motion to Exclude Congressional Evidence or**
**Dismiss the Indictment Based on Granting the Motion to Quash,**
**With Exhibits,**
          filed July 15, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3192

          <u>Exhibits</u>:

          1.      **Transcript Jury Trial**
                  **Before the Honorable Kurt D. Engelhardt**
                  *U.S. v. Rainey*, No. 12-291
                          on June 1, 2015.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3216

          2.      **Congressional Gamesmanship Leads To An**
                  **Acquittal In Deepwater Horizon Case,**
                  **U.S. v. David Rainey: A Case Study**
                          dated 2016.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3260

**Government's Opposition to Defendant's Motion to Exclude**
**Congressional Evidence or Dismiss the Indictment**
**Based on Granting the Motion to Quash**
          filed July 16, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3303

**Government's Objections to Court's Proposed**
**Statement of the Case, Voir Dire, and Jury Instructions**
          filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3308

**Defendant's Statement of the Case**
      filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3310


**Defendant's Purposed Jury Instructions**
      filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3316


**Defendant's Reply in Support of Motion to Exclude**
**Congressional Evidence or Dismiss the Indictment**
**Based on Granting the Motion to Quash**
      filed July 17, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3374


**Government's Response to Defendant's Objections to Exhibits**
      filed July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3381


**Defendant's Motion to Exclude Hearsay Evidence**
      filed July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3386


**Transcript of Jury Trial - Day 1 - Morning Session**
**Before the Honorable Carl J. Nichols**
      on July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3393

## <u>TABLE OF CONTENTS</u>
## Joint Appendix Volume IX of XII

**Page:**

**Transcript of Jury Trial - Day 1 - Afternoon Session**
**Before the Honorable Carl J. Nichols**
      on July 18, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3577

**Transcript of Jury Trial - Day 2 - Morning Session**
**Before the Honorable Carl J. Nichols**
      on July 19, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3784

**Transcript of Jury Trial - Day 2 - Afternoon Session**
**Before the Honorable Carl J. Nichols**
      on July 19, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3868

**Testimony of <u>Kristin Amerling</u>:**

      **Direct Examination by Ms. Vaugn.. . . . . . . . . . . . . . . . . . . . . . . . . 3942**

## TABLE OF CONTENTS
## Joint Appendix Volume X of XII

**Page:**

**Transcript of Jury Trial - Day 3 - Morning Session**
**Before the Honorable Carl J. Nichols**
       **on July 20, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3994**

       **Testimony of <u>Kristin Amerling</u>:**

       **Direct Examination by Ms. Vaughn.** . . . . . . . . . . . . . . . . . . . . . . . **4014**
       **Cross Examination by Mr. Corcoran.**. . . . . . . . . . . . . . . . . . . . . . . **4078**

**Transcript of Jury Trial - Day 3 - Afternoon Session**
**Before the Honorable Carl J. Nichols**
       **on July 20, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4143**

       **Testimony of <u>Kristin Amerling</u>:**

       **Cross Examination by Mr. Corcoran (Continued).** . . . . . . . . . . . . **4149**
       **Redirect Examination by Ms. Vaughn.** . . . . . . . . . . . . . . . . . . . . . **4211**

       **Testimony of <u>Stephen Hart</u>:**

       **Direct Examination by Ms. Gaston.** . . . . . . . . . . . . . . . . . . . . . . . **4233**
       **Cross Examination by Mr. Corcoran.**. . . . . . . . . . . . . . . . . . . . . . . **4252**
       **Redirect Examination by Ms. Gaston.** . . . . . . . . . . . . . . . . . . . . . **4264**

**Defendant's Motion for Judgment of Acquittal Pursuant to**
**Rule 29, Federal Rules of Criminal Procedure**
       **filed July 21, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4289**

**Transcript of Jury Trial - Day 4**
**Before the Honorable Carl J. Nichols**
       **on July 21, 2022.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4295**

# TABLE OF CONTENTS
## Joint Appendix Volume XI of XII

**Page:**

**Notice of Defendant's Objections to the Court's Final**
**Jury Instructions and Additional Requested Instructions**
        filed July 21, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4422

**Defendant's Notice Regarding Congressional Hearings**
        filed July 22, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4432

**Notice of Defendant's Objection to Jury Instruction Number 27**
        filed July 22, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4435

**Transcript of Jury Trial - Day 5**
**Before the Honorable Carl J. Nichols**
        on July 22, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4438

**Jury Instructions**
        filed July 22, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4555

**Counsels' Acknowledgment Concerning Trial Exhibits**
        filed July 22, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4585

**Government's Exhibit List**
        filed July 22, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4586

**Defendant's Exhibit List**
        filed July 22, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4588

**Note from Jury**
        filed July 22, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4591

**Verdict Form**
        filed July 22, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4592

Order
    filed July 27, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4593

Government's Response to Defendant's
Notice Regarding Publicity During Trial,
With Exhibits,
    filed July 28, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4595

    <u>Exhibits:</u>

    1.    Screenshot of Episode 1996, War Room
        dated July 12, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4598

    2.    Bannon's Gettr Repost CNN Ad
        dated July 17, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4599

Defendant's Supplemental Brief in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment Based on
Granting the Motion to Quash and Congressional Subpoena
Recipients' Refusal to Testify or Produce Documents
    filed August 5, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4600

Defendant's Motion for a New Trial
    filed August 5, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4617

Government's Response in Opposition to Defendant's
Supplemental Brief in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment
    filed August 12, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4634

Defendant's Reply to the Government's Response to
Supplemental Brief in Support of Motion to Exclude
Congressional Evidence or Dismiss the Indictment
Based on Granting the Motion to Quash and Congressional
Subpoena Recipients' Refusal to Testify or Produce Documents
    filed August 19, 2022.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4649

**Government's Opposition to Defendant's Motion for a New Trial**
      **filed August 19, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4657**

**Defendant's Reply to Opposition to Motion for a New Trial**
      **filed August 26, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4676**

**Order**
      **filed September 2, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4682**

**Transcript of Sentencing Hearing**
**Before the Honorable Carl J. Nichols**
      **on October 21, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4687**

**Judgment in a Criminal Case**
      **filed October 21, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4767**

**Defendant's Notice of Appeal**
      **filed November 4, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4772**

**Order Staying Sentence Pending Appeal**
      **filed November 7, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4779**

## TABLE OF CONTENTS
### Joint Appendix Volume XII of XII - Exhibits

**Page:**

**Defendant's Exhibits:**

9B.    H41 Congressional Record - House
         dated January 4, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4780

30.    Letter from Former President Donald Trump to
         Stephen K. Bannon
         dated July 9, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4781

31.    Letter from Robert J. Costello to
         Chairman Bennie Thompson
         dated July 9, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4782

32.    Letter from Chairman Bennie Thompson to
         Robert J. Costello
         dated July 14, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4784

39.    Article from Rolling Stone
         dated September 24, 2021. . . . . . . . . . . . . . . . . . . . . . . 4786

40.    Daily Mail Article
         dated October 8, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . 4804

**Government's Exhibits:**

1.    House Resolution 503. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4808

2.    Subpoena to Stephen Bannon
         dated September 23, 2021. . . . . . . . . . . . . . . . . . . . . . . . 4822

**Government's Exhibits, Continued:**

3.     **Emails re Service of Subpoena**
       **dated September 23 and 24, 2021**. . . . . . . . . . . . . . . . . . 4832

4.     **Letter from Costello to**
       **Chairman Thompson and Cover Email**
       **dated October 7, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . . 4835

5.     **Letter from Chairman Thompson to Costello**
       **dated October 8, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . . 4838

6.     **Letter from Costello to Chairman Thompson**
       **dated October 13, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . 4841

7.     **Letter from Chairman Thompson to Costello**
       **dated October 15, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . 4843

8.     **Letter from Costello to**
       **Chairman Thompson and Cover Email**
       **dated October 18, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . 4846

9.     **Letters from Chairman Thompson to Costello**
       **dated October 19, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . 4848

10.    **Post on Stephen Bannon's Gettr Account**
       **dated September 24, 2021.** . . . . . . . . . . . . . . . . . . . . . . 4851

11A.   **Post on Stephen Bannon's Gettr Account**
       **dated October 8, 2021**. . . . . . . . . . . . . . . . . . . . . . . . . . 4852

11B.   **DailyMail Article Linked in October 8, 2021**
       **Post on Stephen Bannon's Gettr Account.** . . . . . . . . . . . . . . 4853

*January 4, 2021*                    CONGRESSIONAL RECORD—HOUSE                    **H41**

health, safety, and well-being of others present in the Chamber and surrounding areas. Members and staff will not be permitted to enter the Hall of the House without wearing a mask. Masks will be available at the entry points for any Member who forgets to bring one. The Chair views the failure to wear a mask as a serious breach of decorum. The Sergeant-at-Arms is directed to enforce this policy. Based upon the health and safety guidance from the attending physician and the Sergeant-at-Arms, the Chair would further advise that all Members should leave the Chamber promptly after casting their votes. Furthermore, Members should avoid congregating in the rooms leading to the Chamber, including the Speaker's lobby. The Chair will continue the practice of providing small groups of Members with a minimum of 5 minutes within which to cast their votes. Members are encouraged to vote with their previously assigned group. After voting, Members must clear the Chamber to allow the next group a safe and sufficient opportunity to vote. It is essential for the health and safety of Members, staff, and the U.S. Capitol Police to consistently practice social distancing and to ensure that a safe capacity be maintained in the Chamber at all times. To that end, the Chair appreciates the cooperation of Members and staff in preserving order and decorum in the Chamber and in displaying respect and safety for one another by wearing a mask and practicing social distancing. All announced policies, including those addressing decorum in debate and the conduct of votes by electronic device, shall be carried out in harmony with this policy during the pendency of a covered period.

### 117TH CONGRESS REGULATIONS FOR USE OF DEPOSITION AUTHORITY

COMMITTEE ON RULES,
HOUSE OF REPRESENTATIVES,
*Washington, DC, January 4, 2021.*
Hon. NANCY PELOSI,
*Speaker, House of Representatives,
Washington, DC.*

MADAM SPEAKER: Pursuant to section 3(b) of House Resolution 8, 117th Congress, I hereby submit the following regulations regarding the conduct of depositions by committee and select committee counsel for printing in the Congressional Record.

Sincerely,
JAMES P. McGOVERN,
*Chairman, Committee on Rules.*

REGULATIONS FOR THE USE OF DEPOSITION AUTHORITY

1. Notices for the taking of depositions shall specify the date, time, and place of examination. Depositions shall be taken under oath administered by a member or a person otherwise authorized to administer oaths. Depositions may continue from day to day.

2. Consultation with the ranking minority member shall include three days' notice before any deposition is taken. All members of the committee shall also receive three days written notice that a deposition will be taken, except in exigent circumstances. For purposes of these procedures, a day shall not include Saturdays, Sundays, or legal holidays except when the House is in session on such a day.

3. Witnesses may be accompanied at a deposition by personal, nongovernmental counsel to advise them of their rights. Only members, committee staff designated by the chair or ranking minority member, an official reporter, the witness, and the witness's counsel are permitted to attend. Observers or counsel for other persons, including counsel for government agencies, may not attend.

4. The chair of the committee noticing the deposition may designate that deposition as part of a joint investigation between committees, and in that case, provide notice to the members of the committees. If such a designation is made, the chair and ranking minority member of the additional committee(s) may designate committee staff to attend pursuant to regulation 3. Members and designated staff of the committees may attend and ask questions as set forth below.

5. A deposition shall be conducted by any member or committee counsel designated by the chair or ranking minority member of the Committee that noticed the deposition. When depositions are conducted by committee counsel, there shall be no more than two committee counsel permitted to question a witness per round. One of the committee counsel shall be designated by the chair and the other by the ranking minority member per round.

6. Deposition questions shall be propounded in rounds. The length of each round shall not exceed 60 minutes per side, and shall provide equal time to the majority and the minority. In each round, the member(s) or committee counsel designated by the chair shall ask questions first, and the member(s) or committee counsel designated by the ranking minority member shall ask questions second.

7. Objections must be stated concisely and in a non-argumentative and non-suggestive manner. A witness's counsel may not instruct a witness to refuse to answer a question, except to preserve a privilege. In the event of professional, ethical, or other misconduct by the witness's counsel during the deposition, the Committee may take any appropriate disciplinary action. The witness may refuse to answer a question only to preserve a privilege. When the witness has refused to answer a question to preserve a privilege, members or staff may (i) proceed with the deposition, or (ii) either at that time or at a subsequent time, seek a ruling from the Chair either by telephone or otherwise. If the Chair overrules any such objection and thereby orders a witness to answer any question to which an objection was lodged, the witness shall be ordered to answer. If a member of the committee chooses to appeal the ruling of the chair, such appeal must be made within three days, in writing, and shall be preserved for committee consideration. The Committee's ruling on appeal shall be filed with the clerk of the Committee and shall be provided to the members and witness no less than three days before the reconvened deposition. A deponent who refuses to answer a question after being directed to answer by the chair may be subject to sanction, except that no sanctions may be imposed if the ruling of the chair is reversed by the committee on appeal.

8. The Committee chair shall ensure that the testimony is either transcribed or electronically recorded or both. If a witness's testimony is transcribed, the witness or the witness's counsel shall be afforded an opportunity to review a copy. No later than five days after the witness has been notified of the opportunity to review the transcript, the witness may submit suggested changes to the chair. Committee staff may make any typographical and technical changes. Substantive changes, modifications, clarifications, or amendments to the deposition transcript submitted by the witness must be accompanied by a letter signed by the witness requesting the changes and a statement of the witness's reasons for each proposed change. Any substantive changes, modifications, clarifications, or amendments shall be included as an appendix to the transcript conditioned upon the witness signing the transcript.

9. The individual administering the oath, if other than a member, shall certify on the transcript that the witness was duly sworn. The transcriber shall certify that the transcript is a true record of the testimony, and the transcript shall be filed, together with any electronic recording, with the clerk of the committee in Washington, DC. Depositions shall be considered to have been taken in Washington, DC, as well as the location actually taken once filed there with the clerk of the committee for the committee's use. The chair and the ranking minority member shall be provided with a copy of the transcripts of the deposition at the same time.

10. The chair and ranking minority member shall consult regarding the release of deposition testimony, transcripts, or recordings, and portions thereof. If either objects in writing to a proposed release of a deposition testimony, transcript, or recording, or a portion thereof, the matter shall be promptly referred to the committee for resolution.

11. A witness shall not be required to testify unless the witness has been provided with a copy of section 3(b) of H. Res. 8, 117th Congress, and these regulations.

### REMOTE COMMITTEE PROCEEDINGS REGULATIONS PURSUANT TO HOUSE RESOLUTION 8, 117TH CONGRESS

COMMITTEE ON RULES,
HOUSE OF REPRESENTATIVES,
*Washington, DC, January 4, 2021.*
Hon. NANCY PELOSI,
*Speaker, House of Representatives,
Washington, DC.*

MADAM SPEAKER: Pursuant to section 3(s) of House Resolution 8, 117th Congress, I hereby submit the following regulations regarding remote committee proceedings for printing in the CONGRESSIONAL RECORD.

Sincerely,
JAMES P. McGOVERN,
*Chairman,
Committee on Rules.*

REMOTE COMMITTEE PROCEEDINGS REGULATIONS PURSUANT TO HOUSE RESOLUTION 8

A. PRESENCE AND VOTING

1. Members participating remotely in a committee proceeding must be visible on the software platform's video function to be considered in attendance and to participate unless connectivity issues or other technical problems render the member unable to fully participate on camera (except as provided in regulations A.2 and A.3).

2. The exception in regulation A.1 for connectivity issues or other technical problems does not apply if a point of order has been made that a quorum is not present. Members participating remotely must be visible on the software platform's video function in order to be counted for the purpose of establishing a quorum.

3. The exception in regulation A.1 for connectivity issues or other technical problems does not apply during a vote. Members participating remotely must be visible on the software platform's video function in order to vote.

4. Members participating remotely off-camera due to connectivity issues or other technical problems pursuant to regulation A.1 must inform committee majority and minority staff either directly or through staff.

5. The chair shall make a good faith effort to provide every member experiencing connectivity issues an opportunity to participate fully in the proceedings, subject to regulations A.2 and A.3.

DEFENDANT'S EXHIBIT 9B

**Jan. 6 Sel. Comm. 0010**



DONALD J. TRUMP

July 9, 2022

Stephen K. Bannon
c/o Robert J. Costello, Esquire
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158

Dear Steve,

I write about the Subpoena that you received in September 2021 from the illegally
constituted Unselect Committee, the same group of people who created the Russia
Russia Russia scam, Impeachment hoax #1, Impeachment hoax #2, the Mueller
Witch-Hunt (which ended in no "Collusion"), and other fake and never-ending
yarns and tales.

When you first received the Subpoena to testify and provide documents, I invoked
Executive Privilege. However, I watched how unfairly you and others have been
treated, having to spend vast amounts of money on legal fees, and all of the
trauma you must be going through for the love of your Country, and out of respect
for the Office of the President.

Therefore, if you reach an agreement on a time and place for your testimony, I
will waive Executive Privilege for you, which allows for you to go in and testify
truthfully and fairly, as per the request of the Unselect Committee of political
Thugs and Hacks, who have allowed no Due Process, no Cross-Examination, and
no real Republican members or witnesses to be present or interviewed. It is a
partisan Kangaroo Court.

Why should these evil, sinister, and unpatriotic people be allowed to hurt and
destroy the lives of so many, and cause such great harm to our Country?

It has been, from the time I came down the escalator at Trump Tower, a political
hit job against the overwhelming majority of Americans who support the concept
and policy of Making America Great Again and putting America First.

Good luck in all of your future endeavors.

Sincerely,

DEFENDANT'S
EXHIBIT
30

# DHC

## DAVIDOFF HUTCHER & CITRON LLP

ATTORNEYS AT LAW

605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605
(914) 381-7400

PALM BEACH
ATTORNEYS AT LAW
250 ROYAL PALM WAY
SUITE 202
PALM BEACH, FL 33480
(561) 567-8488

FIRM OFFICES

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

July 9, 2022

<u>Via Email</u>
Chairman Bennie Thompson
c/o Kirstin Amerling, Esq.
1540 A Longworth HOB
Washington, DC 20515

Re:    <u>Stephen K. Bannon</u>

Dear Chairman Thompson:

On the morning of October 19, 2021, you denied our request for a one week adjournment in light of the filing of a lawsuit by President Donald J.Trump. Later that same day, your  Committee voted to recommend Stephen K. Bannon to the full House for a finding of criminal contempt.  After that, later that same evening, you wrote to me to make a point that your Committee was always willing to hear Mr. Bannon's testimony should he "change his posture" or should circumstances change.

Mr. Bannon has not had a change of posture or of heart.  Mr. Bannon has always been consistent, that because President Trump invoked executive privilege with respect to Mr. Bannon's testimony, and the production of requested documents, Mr. Bannon was obligated to honor the President's invocation, unless and until, either your Committee reached a constitutionally required accommodation with President Trump as to the invocation of executive privilege or your Committee obtained a ruling from the Federal District Court that the invocation of executive privilege was improper or did not apply to the particular question or document sought.  I consistently informed you that if either of those events took place, Mr. Bannon would comply with the decision.

While Mr. Bannon has been steadfast in his convictions, circumstances have now changed.  President Trump has provided us with a letter, which is attached, attesting to the fact that back in October 2021, he did invoke executive privilege with respect to Mr. Bannon's testimony and document production.

Further, in light of the surrounding circumstances, even in the absence of any effort by your Committee to reach the requested accommodation with President Trump,

00955143                                    2

**-4782-**

DEFENDANT'S
EXHIBIT
labbc
**31**

DAVIDOFF HUTCHER & CITRON LLP

Hon. Bennie Thompson
July 9, 2022
Page 2

President Trump has decided that it would be in the best interests of the American people to waive executive privilege for Stephen K. Bannon, to allow Mr. Bannon to comply with the subpoena issued by your Committee. Mr. Bannon is willing to, and indeed prefers, to testify at your public hearing.

    Please contact me so that we can try to reach agreement on the time and place of Mr. Bannon's testimony.

Very Truly Yours

/s/  Robert J. Costello

00955143

**-4783-**



BENNIE G. THOMPSON, MISSISSIPPI
CHAIRMAN

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS

U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

### One Hundred Seventeenth Congress
### Select Committee to Investigate the January 6th Attack on the United States Capitol

July 14, 2022

Robert J. Costello Esq.
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, NY 10158

Dear Mr. Costello,

I am in receipt of your letter dated July 9, 2022, in which you indicate that your client, Stephen K. Bannon, is now willing to comply with the Select Committee's subpoena. We note at the outset that, despite your letter on Saturday, Mr. Bannon still has not yet produced a single document. We regard your offer with some skepticism and are concerned that Mr. Bannon's offer now is motivated by other factors.

The subpoena issued to Mr. Bannon on September 23, 2021, obligated him to produce the documents identified in the attached schedule. It further required him to appear at a deposition and provide sworn testimony before Members of the Select Committee. The subpoena required that Mr. Bannon follow a specific process. The July 9, 2022, outreach to the Select Committee by you on Mr. Bannon's behalf does not change the fact that Mr. Bannon failed to follow that process and failed to comply with the Select Committee's subpoena prior to the House referral of the contempt resolution concerning Mr. Bannon's defiance of the subpoena.

With respect to the Select Committee's demand for documents, Mr. Bannon should begin producing responsive documents today to the Select Committee and provide a complete response by July 21, 2022. Given that more than nine months have passed since Mr. Bannon became aware of his legal obligation to produce these documents, we expect that producing all of them by July 21 will not be burdensome. If, however, he cannot produce all of the documents by that date, we request that he prioritize the documents called for by paragraphs 7-11, 14-15, and 17 of the schedule and produce them first. After he has produced all of the requested documents, we will identify a date soon following that production on which he must then appear, in person, in the O'Neill House Office Building for a deposition. We anticipate that the deposition will occur in the near future.

President Trump's letter was not apparently drafted by counsel familiar with the relevant issues and is apparently intended to serve some political goal. Nevertheless, given the

DEFENDANT'S
EXHIBIT

32

Mr. Robert J. Costello
Page 2

representations in the former President's July 9 letter to your client, we expect that your client will not assert executive privilege in response to any questions during the deposition. As with previous witnesses, we will videotape the deposition. The deposition will be led by Select Committee staff, though Members of the Select Committee may appear and participate. We will not accommodate your request that your client testify at a public hearing at this juncture.

     Please respond to this letter promptly indicating your client's willingness to produce documents and appear as directed.

     Sincerely,

     Bennie G. Thompson
     Chairman

7/20/22, 4:26 PM                    The Bannon Subpoena Is Just the Beginning for the Jan. 6 Investigation - Rolling Stone

                           Subscribe

HOME > POLITICS > POLITICS FEATURES                                        SEPTEMBER 24, 2021 9:34AM ET

# The Bannon Subpoena Is Just the Beginning. Congress's Jan. 6 Investigation Is Going Big

**Records and exclusive documents obtained by 'Rolling Stone' reveal the massive scope of the House select committee probe**

*By* **HUNTER WALKER**



**Insurrectionists loyal to then-President Donald Trump rioting outside the Capitol**

**John Minchillo/AP Images**



The House select committee investigating the January 6th attack fired a massive shot into the heart of former President Trump's inner circle Thursday night, and the four subpoenas **sent to former White House officials** are likely just the beginning. A review of committee documents, including some obtained exclusively by *Rolling Stone,* makes clear the House select committee is looking broadly at Trump's inner circle. The

-4786-

Subscribe

encouraging the insurrection and their broader efforts to overturn the results of the 2020 presidential election.

---

**RELATED STORIES**

▶ **Are the Feds Handing Trump an Unfair Advantage in the 202...**

▶ **Trump Tells Team He Needs to Be President Again to Save Hi...**

---

The committee's aggressive approach to the top levels of Trump's former administration has been outlined in its records requests to federal agencies and to tech and telecom companies. The records show that investigators are pursuing Trump's allies in Congress, where one Republican member's chief of staff has been identified as part of the probe. The documents obtained by *Rolling Stone* show the committee asked for information from at least 35 tech companies. And Thursday's subpoenas show the select committee is following through on its earlier efforts to pursue documents from Trump's White House. Representatives for the committee did not respond to multiple requests for comment on this story.

ADVERTISEMENT



Subscribe today to get unlimited Rolling Stone access. See My Options

-4787-

**Subscribe**

This focus on higher-profile figures, as well as the months of efforts by Trump allies to undo his election loss to President Joe Biden, is a stark contrast to the approach taken so far by the FBI. That probe — the **largest in the bureau's history** — has, thus far, largely focused on Trump supporters who actually broke into the building, and charges have been filed against more than **600 people**.

The congressional committee's focus contains more political risk than a narrow probe targeted at people caught on camera storming the Capitol or attacking police officers. But a probe targeting those individuals exclusively would forgo even an attempt at accountability for the elected officials who promoted a false narrative about a stolen election and called on Trump supporters to descend on Washington, D.C., en masse on the day Biden's election was being certified.

Thursday's subpoenas marked a major step forward in the search for that accountability. The panel requested records and testimony from former Trump chief of staff Mark Meadows, former top White House strategist **Steve Bannon**, former Trump deputy chief of staff and director of social media Dan Scavino, and former Pentagon official and Trump loyalist Kashyap Patel.

In the statement announcing those subpoenas, the committee indicated it was interested in Patel both for his role in "discussions among senior Pentagon officials prior to and on January 6th, 2021, regarding 'security at the Capitol' " and to **a reported effort** to place him at the Central Intelligence Agency last December in the aftermath of the election. Bannon, a former White House official and on-again-off-again Trump confidant, was cited by the committee for a reported conversation he had with the former president last December 30th, where he pressed Trump "to focus his efforts on January 6th," and for allegedly attending "a gathering at the Willard Hotel on January 5th, 2021, as part of an effort to persuade members of Congress to block the certification of the election the next day."

Meadows, who was Trump's White House chief of staff, was cited by the committee for reportedly communicating "with officials at the state level and in the Department of Justice as part of an effort to overturn the results of the 2020 election or prevent the —ion's certification," and for being in touch with organizers of pro-Trump rallies in

Subscribe

attracted the committee's interest due to his promotion of the January 6th rallies and because he was reportedly present "during a discussion of how to convince members of Congress not to certify the election for Joe Biden" with Trump the day before the Capitol attack. Meadows and Bannon did not respond to requests for comment. Scavino and Patel could not be reached. All four **were instructed** to turn over documents and to testify before the committee next month. The subpoenas call on Patel and Bannon to testify on October 14th, and Meadows and Scavino to testify on the 15th.

ADVERTISEMENT

## A 'Sweeping' Investigation Into Trump-Team Communications

Even before Thursday's subpoenas, the select committee was telegraphing an investigation aimed at the highest levels. On August 25th, it sent records requests to eight executive-branch agencies, touting them at the time as part of a "sweeping" inquiry. "Our Constitution provides for a peaceful transfer of power, and this investigation seeks to evaluate threats to that process, identify lessons learned, and recommend laws, policies, procedures, rules, or regulations necessary to protect our republic in the future," committee chairman Bennie Thompson, a Mississippi Democrat, said at the time.

The committee's August requests went to the Justice Department, Department of Defense, FBI, Department of the Interior, the director of national intelligence, the Department of Homeland Security, the National Counterterrorism Center, and the **National Archives and Records Administration**, and gave the agencies until September 9th to produce the requested materials. The committee did not respond to questions about whether it has begun receiving responses to those requests.

Among other things, those requests show the committee is investigating the communications that various security agencies had with the White House and with one

Subscribe

after the election, and the **firing of Homeland Security cybersecurity chief Christopher Krebs**, who loudly refuted Trump's suggestion there was election fraud at play in his defeat. The committee also asked for records related to efforts to gather and share intelligence ahead of the attack, plans for security at the Capitol, and potential "modifications" to agencies' ability to "monitor or report closed or nonpublic social media platforms" for intelligence about plans for demonstrations on January 6th.

Those record requests also indicate the committee is looking beyond just the attack on January 6th. The committee specifically requested records related to demonstrations against the election that were staged by Trump supporters in D.C. on November 14th, 2020, December 12th, 2020, and January 5th of this year. It also asked for documents related to attempts that Trump associates (including former New York Mayor Rudy Giuliani and lawyer Sidney Powell) made to allege election fraud, as well as documents related to efforts to solicit Justice Department intervention in multiple states.

ADVERTISEMENT

The committee's request to the Defense Department showed deep concerns about post-election violence and power grabs. It asked for documents related to "the potential use of military power to impede or ensure the peaceful transfer of power between the time of the November 3rd, 2020, election up through and including the inauguration" of President Biden. The panel also requested "all documents and communications" related to the 25th Amendment of the Constitution, which outlines procedures for the vice president to take over for the president. In the aftermath of January 6th, there were calls for former Vice President Pence and the Cabinet to invoke the amendment and remove Trump from office, including from Democratic members of Congress **who argued** it was justified since the former president "sought to undermine our democracy" and had fueled an "insurrection."

Subscribe

**Archives and Records Administration,** a relatively obscure agency dedicated to the preservation of government records. In the request to NARA, the committee described some of its focus in detail and named more than 100 individuals whose activities it has taken an interest in, including top Trump administration officials, Trump campaign staff, members of the president's family, and more than 40 right-wing activists. Bannon, Meadows, Scavino, and Patel were all named in that request as well.

In its August 25th letter to NARA, the committee also asked for "all documents and communications within the White House on January 6th, 2021" related to, among other things, the demonstration at the Capitol, a nearby rally that Trump appeared at on the National Mall, and "any legal, political, or other strategy regarding the counting of electoral votes," including "efforts to persuade the president to deliver any particular message to people at or near the Capitol."

The request for White House records also included any from that day related to Trump, Pence, a slew of top staffers, the president's oldest children and First Lady Melania Trump, and top associates including Giuliani and veteran campaign operative Roger Stone. The committee also asked for all White House visitor logs from January 6th and any documents and communications within the West Wing related to "any member of Congress or congressional staff."

ADVERTISEMENT

The committee's request to NARA wasn't solely focused on January 6th. In the letter to the Archives and Records Administration, the committee also asked for documents related to "planning by the White House and others for legal or other strategies to delay, halt, or otherwise impede the electoral count" from April of last year through January 20th, the day Biden was inaugurated. The committee also requested records related to the election results between White House officials and any state governments. Eight [offic]ials from Arizona, Michigan, Georgia, and Texas were individually identified. [Tru]mp and his allies sought to falsely question or overturn Biden's victories in Arizona,

**rally** on the National Mall that preceded the storming of the Capitol.

Based on the request to NARA, the committee is also investigating efforts by Trump's allies to falsely allege election fraud and to litigate the results. The letter also asked for "all documents and communications to or from John Eastman" from Election Day through Biden's inauguration on January 20th. Eastman represented Trump in one of the lawsuits that sought to overturn election results and authored a memo outlining **a highly questionable — and wildly anti-democratic — legal scheme** to have Pence overturn the election results at the Capitol on January 6th.

The committee also requested a slew of records from the White House and government agencies related to "recruitment, planning, coordination, and other preparations for the rallies leading up to and including January 6th." This included "all documents and communications concerning the 2020 election" from last April through Biden's inauguration related to a list of more than 40 conservative activists and members of prominent media outlets. Several were activists who obtained permits for pro-Trump rallies in Washington on January 6th, including "Stop the Steal" movement organizer Ali Alexander — who put together an event dubbed the "Wild Protest" outside the Capitol, and who reportedly went **"into hiding"** after January 6th — and "Women for America First" founder Amy Kremer, whose group **planned** the "Save America" event on the Mall. Alexander and Kremer did not immediately respond to requests for comment.

ADVERTISEMENT

While no members of Congress were individually named in the committee's request to NARA, the committee did ask for documents and communications from within the White House with Tom Van Flein, the chief of staff to Rep. Paul Gosar (R-Ariz.). Alexander, the "Wild Protest" organizer, has claimed that Gosar was one of three Republican House members who helped him plan the event. Van Flein and Alexander

Subscribe

stormed the Capitol on January 6th.

On August 27th, two days after its requests to the executive-branch agencies, the committee sent **requests to 15 social media companies** for "records related to the spread of misinformation, efforts to overturn the 2020 election or prevent the certification of the results, domestic-violent extremism, and foreign influence in the 2020 election." The committee also requested copies of preservation requests the companies received or documents they may have provided with litigation or investigations related to the January 6th attack. Social media companies targeted by the committee include giants such as Twitter, YouTube, and Facebook — as well as with more obscure services favored by the right wing, including 8kun, 4chan, Gab, and Parler.

On August 30th, the committee sent preservation orders to 35 different social media and telecom companies asking them to "preserve records relating to certain individuals who hold or have held accounts with your company from April 1st, 2020, to January 31st, 2021." *Rolling Stone* obtained copies of these requests, which show the companies involved but do not identify the individuals in question. However, according to CNN, this **request included** "phone records of a group of GOP members of Congress and former President **Donald Trump**, as well as members of the Trump family, who played some role in the 'Stop the Steal' rally that served as the prelude to the Capitol insurrection."

Copies of the orders obtained by *Rolling Stone* reveal that the 35 companies whose users have attracted the interest of the committee include the encrypted messaging services Protonmail, Telegram, and Signal. Services favored by right-wing activistsm including Parler, Gab, and 8kun, also received preservation requests, along with more mainstream services like Verizon Wireless, T-Mobile, Apple, AT&T, Sprint, Amazon, Google, Microsoft, and AOL Mail.

---

ADVERTISEMENT

Subscribe

The committee's intensifying efforts to collect information have been met with intensifying opposition from a Republican Party that has, nearly unanimously, closed ranks around Trump, even after his efforts to subvert the election.

The committee was established in July and has faced opposition from many in the GOP. Senate Republicans initially blocked a bipartisan proposal for a commission to investigate the events of January 6th. That led to a largely party-line House vote passing a resolution that called for Democratic Speaker Nancy Pelosi to name members of a select committee with input from Republican House Minority Leader Kevin McCarthy. Ultimately, McCarthy recommended a group of five members that included some who had voted to overturn the election results. Pelosi rejected those picks and named only two Republicans, Adam Kinzinger of Illinois and Liz Cheney of Wyoming, a pair of Trump critics who were the only GOP members to vote to establish the committee.

Republican leaders have continued to fight the committee and seek to undercut its investigation. After the panel sent its requests to the tech companies, McCarthy issued **a statement** arguing that it would violate the law for companies to comply. He also issued an implied threat and suggested Republicans would "not forget" these companies if they regain the House majority. "If companies still choose to violate federal law, a Republican majority will not forget and will stand with Americans to hold them fully accountable under the law," McCarthy said.

McCarthy was **subsequently revealed** to be one of the Republican lawmakers targeted by the preservation orders.

And as the subpoenas dropped Thursday, top Republicans moved to full apoplexy. Taylor Budowich, director of communications for former-President Trump and his post-White House political committee Save America, issued a statement to *Rolling Stone* based on the records requests. "The highly partisan, Communist-style 'select committee' has put forth an outrageously broad records request that lacks both legal precedent and legislative merit," Budowich said, adding, "Executive privilege will be defended, not just on behalf of President Trump and his administration, but also on behalf of the Office of the President of the United States and the future of our nation."

Subscribe

Trump himself issued a statement on the subpoenas, and called them "Harassment Subpoenas" while rehashing a familiar litany of his debunked claims about fraud during the election. Officials from multiple agencies in the former president's own administration have confirmed the election was the most secure in American history and that there was no widespread fraud.

The committee's success in accessing these high-level documents may depend in large part on the Biden White House. Trump's team has asserted executive privilege in an effort to conceal communications. However, the committee got good news on Thursday morning when, before the subpoenas dropped, *The Washington Post* reported that the Biden administration was leaning toward **releasing information about Trump and the Jan. 6th attack**.

On the other side of the aisle, reaction from lawmakers outside of the committee has been mixed. One senior Democratic Hill staffer suggested members and their aides are too preoccupied with a series of other impending crises to be thinking much about the committee. "Everyone is basically shitting their pants over the [**bipartisan infrastructure bill**], the **reconciliation**, and **the debt ceiling**, and I feel like everyone forgot that this is even happening," said the staffer, who requested anonymity to candidly assess the situation.

That staffer didn't change their assessment after the subpoenas were announced, and still predicted Congress would be unable to process the committee's activity. "Being on the Hill right now is basically being in a fucking rave where you're the sober one and everyone is too high," the staffer said.

Another senior Democratic staffer, who also requested anonymity, had a different view. The second staffer suggested some Democrats see aggressively pursuing the investigation of January 6th as a core part of their strategy for holding on to the congressional minority in next year's midterm elections.

Subscribe

combination of 'we're delivering jobs, paid leave, and working on the pandemic, and these assholes are trying to overthrow the government,' " the staffer said. "For the members who are very politically minded, a lot of them think about not only the need to save the country from fascists, but the need to point out this particular contrast."

ADVERTISEMENT

While suggesting some members of Congress are focused on the probe due to "politics," the staffer also indicated that they believe some care about "the substance," due to the fact that they were terrified during the evacuation on January 6th and have to face continual reminders, including developments in the investigation and **Republican rallies in support of the rioters**, like the one that occurred on September 18th.

"So many of them are still battle-scarred from January 6th," the staffer said of the Democratic caucus. "And it's not like they can forget about it when there's a new thing every month that dredges it up."

**In This Article: Donald Trump, Steve Bannon**

 Want more *Rolling Stone*? **Sign up for our newsletter.**

## You May Like                                    Sponsored Links by Taboola

### Your IQ Is 140 If You Name 10 Of These Historical Figures
Past Factory

### Unsold Never-Used Laptops Are Almost Being Given Away
Laptop Deals | Search Ads

### Clint Eastwood Is Nearing 100 & This Is The House He Lives In Now
Cute

7/20/22, 4:26 PM                    The Bannon Subpoena Is Just the Beginning for the Jan. 6 Investigation - Rolling Stone

Subscribe

Tips and Tricks

**Steven Gerrard's Yacht Is Intimidating & Expensive**

Loan Pride

**More People Switching to VoIP Phones (Take a look at the Prices)**

Voip

ADVERTISEMENT



7/20/22, 4:26 PM                    The Bannon Subpoena Is Just the Beginning for the Jan. 6 Investigation - Rolling Stone

Subscribe

# Trending

**1** Exclusive: Fake Accounts Fueled the 'Snyder Cut' Online Army

**2** 'Isolated, Antisocial and Afraid of People': Mike Patton Is Finally Ready to Talk Abo...

**3** Maya Hawke Gets Captured By Police During Forest Orgy in Wild 'Thérèse' Video

**4** Andy Warhol's Polaroid of

7/20/22, 4:26 PM                    The Bannon Subpoena Is Just the Beginning for the Jan. 6 Investigation - Rolling Stone

Subscribe

**5**    'Better Call Saul' Recap:
        Goodbye Jimmy, Hello Saul?



**Journalism
That Matters.
Music That
Inspires.**

Subscriptions from
just $7.99 a month.

SEE MY OPTIONS

---

**EDITORS' PICKS**



**MUSIC LISTS**
The 200 Greatest
Hip-Hop Albums of
All Time

---

**MUSIC LISTS**
Every Harry Styles
Song, Ranked

---

**MUSIC LISTS**
The 500 Greatest
Songs of All Time

ADVERTISEMENT

-4799-

7/20/22, 4:26 PM                The Bannon Subpoena Is Just the Beginning for the Jan. 6 Investigation - Rolling Stone

**Subscribe**



## What Do You Think?

**-4800-**

7/20/22, 4:26 PM                    The Bannon Subpoena Is Just the Beginning for the Jan. 6 Investigation - Rolling Stone

Subscribe



ADVERTISEMENT

ADVERTISEMENT



-4801-

**Subscribe**

**Variety**

**Georgia's Six-Week Abortion Ban Will Go Into Effect**

**WWD**

**The Trend: Beach Party Fashion**

**Dirt**

**One of Greta Garbo's Many L.A. Crash Pads Lists at $12 Million**



**Subscribe**

**Indiewire**

**'Chip N Dale: Rescue Rangers' Represents a TV Movie Turning Point**

**Sportico**

**MLB Antitrust Scrutiny Heats Up as Teams Cap Draftees' Cash**

| Rolling Stone |
|---|

| Legal |
|---|

| Connect With Us |
|---|

| Subscriptions |
|---|

PMC

Rolling Stone is a part of Penske Media Corporation. © 2022 Rolling Stone, LLC. All Rights Reserved.
Powered by WordPress.com VIP

| Our Brands ⌄ |
|---|



7/20/22, 4:28 PM                    Steve Bannon says 'I stand with Trump' as he tells Jan 6 committee he will NOT comply with subpoena | Daily Mail Online

**Privacy Policy** | **Feedback**       f **Follow 21.8M**                    **Wednesday, Jul 20th 2022** 1PM **104°F**    4PM **98°F**    **5-Day Forecast**



| Home | U.K. | News | Sports | U.S. Showbiz | Australia | Femail | Health | Science | Money | Video | Travel | Shop | DailyMailTV |

Latest Headlines | Russia-Ukraine War | Covid-19 | Women's Rights | Joe Biden | Donald Trump | Prince Harry | World News | Most read                    Login

ADVERTISEMENT

# EXCLUSIVE 'I stand with Trump': Steve Bannon tells the January 6 select committee that he will NOT comply with their subpoena because the former president has 'executive privilege'

○ Site ○ Web | Enter your search |

ADVERTISEMENT

- **Steve Bannon's lawyer tells House committee he will not comply with subpoena**
- **'I stand with Trump and the Constitution,' said former White House strategist**
- **Lawmakers had asked him for documents and testimony on the Jan. 6 attack**
- **But his lawyer, Robert Costello, said Trump's 'executive privilege' meant that Bannon was unable to comply**
- **It sets up a possible legal challenge to force Bannon and other aides to testify**
- **The committee said it would consider criminal contempt proceedings**

By ROB CRILLY, SENIOR U.S. POLITICAL REPORTER FOR DAILYMAIL.COM
**PUBLISHED:** 13:04 EDT, 8 October 2021 | **UPDATED:** 18:02 EDT, 10 October 2021

**647**
shares

**714**
View comments

Former **White House** strategist Steve Bannon on Friday said he stood solidly with former **President Trump** and will not be cooperating with its investigation into the Jan. 6 attack on the U.S. **Capitol**.

'I stand with Trump and the Constitution,' he told DailyMail.com.

Bannon was one of four former officials that the House Jan. 6 committee subpoenaed to provide documents and testimony as they investigate the violence that engulfed the Capitol after a Trump rally nearby.

Follow
Daily Mail

Subscribe
Daily Mail

Follow
@DailyMail

Follow
@dailymailuk



-4804-

7/20/22, 4:28 PM          Steve Bannon says 'I stand with Trump' as he tells Jan 6 committee he will NOT comply with subpoena | Daily Mail Online

FEMAIL TODAY



▶ The Hills star Audrina Patridge lays bare 'humiliating' abuse she says she faced at hands of ex-husband Corey Bohan - claiming he verbally AND physically assaulted her

EXCLUSIVE   Playboy Tristan Thompson strikes again! Khloe Kardashian's ex gets flirty with two mystery women in Greece

▶ Chris Rock relaxes on superyacht in Croatia with bikini-clad new girlfriend Lake Bell and showbiz pals Sacha Baron Cohen, Matthew McConaughey and Woody Harrelson

▶ 'I want to feel sexy!': Demi Moore says she refuses to appear 'less desirable' or dress 'matronly' when approaching 60... as she poses in swimwear

▶ Khloe Kardashian heats up a pink bikini as her 'family turns on' Tristan Thompson following cheating scandal... while he shrugs off the shame in Greece

▶ The show we've all been waiting for: Love Island USA moves to Peacock and dials up the heat for what's sure to be the sexiest and most addictive dating show streaming
SPONSORED

All four were told by the former president's attorney on Wednesday that he planned to defend himself against what he viewed as an infringement of 'executive privilege.'

In a letter sent to the committee, seen by DailyMail.com, Bannon's lawyer wrote that he would honor Trump's claim.

'It is therefore clear to us that since the executive privileges belong to President Trump, and he has, through his counsel, announced his intention to assert those executive privileges... we must accept his direction and honor his invocation of executive privilege,' writes Bannon's attorney Robert Costello, who also represents Rudy Giuliani.

'As such, until those issues are resolved, we are unable to respond to your requests for documents and testimony.'

ADVERTISEMENT



If Your Dog Eats
Do This Every Da

Sponsored by Dc

EXCLUSIVE
'Friendship has never been our problem': Katie Maloney explains her decision to support ex Tom Schwartz at bar opening amid divorce



+6
View gallery



+6
View gallery

**Former White House strategist Steve Bannon said, 'I stand with Trump and the Constitution' on Friday as his lawyer wrote to the House committee investigating the Jan. 6 violence to tell lawmakers that he would not comply with their subpoena**

**-4805-**

7/20/22, 4:28 PM                    Steve Bannon says 'I stand with Trump' as he tells Jan 6 committee he will NOT comply with subpoena | Daily Mail Online

▶Ivanka Trump puts on an elegant display in a figure-hugging black dress as she arrives at her mother Ivana's funeral alongside step-sister Tiffany and Don Jr's fiancée Kimberly

▶Christie Brinkley, 68, shows off her incredible figure in swimwear as she says the key to looking youthful is gratitude and low-sugar wine

▶Joey King flashes her sideboob in an edgy backless bodysuit and 70s-inspired skirt as she joins Brad Pitt and Aaron Taylor-Johnson for the Bullet Train premiere in London

▶Gisele Bundchen is 42! Her husband Tom Brady, 44, shares a sweet note about how her 'honesty' inspires him as he adds a red heart emoji

ADVERTISEMENT

+6
View gallery

+6
View gallery

▶Save 20% on all jewelry in the Monica Vinader summer sale! These are our top sales picks from the jewelry brand loved by Bella Hadid, Emily Ratajowski and more

-4806-

7/20/22, 4:28 PM    Steve Bannon says 'I stand with Trump' as he tells Jan 6 committee he will NOT comply with subpoena | Daily Mail Online

**Bannon's lawyer said that his client was unable to respond to the request for testimony because of Trump's claim of executive privilege**

The letter goes on to say that Bannon will comply with the direction of any court ruling on claims of executive privilege.

'Since these privileges belong to President Trump and not to Mr. Bannon, until these issues are resolved, Mr. Bannon is legally unable to comply with your subpoena requests for documents and testimony,' it concludes.

Costello is a former deputy chief of the criminal division for the U.S. Attorney's Office in the Southern District of New York.

He also represents Trump aide and former New York City Mayor Rudy Giuliani in investigations about his business dealings.

The letter sets the stage for a legal challenge to force Bannon to testify.

And it sets up a likely clash with House Democrats, who are investigating the role of Trump and his associates in the build up to the riot.

The committee responded by warning of criminal proceedings.

'We will not allow any witness to defy a lawful subpoena or attempt to run out the clock, and we will swiftly consider advancing a criminal contempt of Congress referral,' said its Chairman Bennie Thompson and Vice Chair Liz Cheney.

Last month the committee issued subpoenas to Bannon; Mark Meadows, former White House chief of staff; Dan Scavino, Trump's social media wizard and former deputy chief of staff for communications; and Kash Patel, a former Defense Department official.

In its letter to Bannon, the committee wrote: 'You have been identified as present at the Willard Hotel on Jan. 5, 2021 during an effort to persuade members of Congress to block the certification of the Election the next day, and in relation to other activities on Jan. 6.'



+6
View gallery

**Bannon spent eight months as White House strategist. He now runs the War Room podcast**

EXCLUSIVE  **Lala Kent's revenge body! Vanderpump Rules star parades her new boob job following ugly Randall Emmett split**

**Yellowstone's Kevin Costner leads highest paid stars on TV by raking in 1.3 M PER EPISODE alongside The Plot's Mahershala Ali as Hollywood salaries are revealed**

**Alana 'Honey Boo Boo' Thompson undergoing $13K non-surgical endoscopic sleeve gastroplasty to lose weight for her 17th birthday**

**Tiffany Trump shows support for her father and half-siblings by attending Ivana's funeral, despite the late socialite voicing VERY public disdain for her 'showgirl' mother Marla**

**Meet the contestants! As Love Island USA kicks off its fourth season, meet the model, bartender, personal trainer, assistant and more heating up TV screens this summer**

EXCLUSIVE  **'Lisa Vanderpump gushes about her grandson Theodore and offers advice to Tom Sandoval and Tom Schwartz as she attends bar opening**

**Arnold Schwarzenegger puffs on a cigar and drinks a beer as he films scenes on a boat for his new Netflix spy series UTap**

**Bradley Cooper and Huma Abedin are keeping their romance 'casual'... as it's revealed the movie star finds her 'intriguing and challenging'**

**Khloe Kardashian is 'very open to dating' as she is 'not serious' with the private equity investor she was seeing... as ex Tristan Thompson moves on**



AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

**H. Res. 503**



2

(2) "Threats of violence against critical infrastructure, including the electric, telecommunications and healthcare sectors, increased in 2020 with violent extremists citing misinformation and conspiracy theories about COVID–19 for their actions";

Whereas, on September 24, 2020, Director of the Federal Bureau of Investigation Christopher Wray testified before the Committee on Homeland Security of the House of Representatives that—

(1) "[T]he underlying drivers for domestic violent extremism – such as perceptions of government or law enforcement overreach, sociopolitical conditions, racism, anti-Semitism, Islamophobia, misogyny, and reactions to legislative actions – remain constant.";

(2) "[W]ithin the domestic terrorism bucket category as a whole, racially-motivated violent extremism is, I think, the biggest bucket within the larger group. And within the racially-motivated violent extremists bucket, people subscribing to some kind of white supremacist-type ideology is certainly the biggest chunk of that."; and

(3) "More deaths were caused by DVEs than international terrorists in recent years. In fact, 2019 was the deadliest year for domestic extremist violence since the Oklahoma City bombing in 1995";

Whereas, on April 15, 2021, Michael Bolton, the Inspector General for the United States Capitol Police, testified to the Committee on House Administration of the House of Representatives that—

(1) "The Department lacked adequate guidance for operational planning. USCP did not have policy and procedures in place that communicated which personnel were responsible for operational planning, what type of oper-

•HRES 503 EH

US-000949

3

ational planning documents its personnel should prepare, nor when its personnel should prepare operational planning documents."; and

(2) "USCP failed to disseminate relevant information obtained from outside sources, lacked consensus on interpretation of threat analyses, and disseminated conflicting intelligence information regarding planned events for January 6, 2021."; and

Whereas the security leadership of the Congress under-prepared for the events of January 6th, with United States Capitol Police Inspector General Michael Bolton testifying again on June 15, 2021, that—

(1) "USCP did not have adequate policies and procedures for FRU (First Responder Unit) defining its overall operations. Additionally, FRU lacked resources and training for properly completing its mission.";

(2) "The Department did not have adequate policies and procedures for securing ballistic helmets and vests strategically stored around the Capitol Complex."; and

(3) "FRU did not have the proper resources to complete its mission.": Now, therefore, be it

*Resolved,*

**SECTION 1. ESTABLISHMENT.**

There is hereby established the Select Committee to Investigate the January 6th Attack on the United States Capitol (hereinafter referred to as the "Select Committee").

**SEC. 2. COMPOSITION.**

(a) Appointment of Members.—The Speaker shall appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader.

•HRES 503 EH

US-000950

4

(b) DESIGNATION OF CHAIR.—The Speaker shall designate one Member to serve as chair of the Select Committee.

(c) VACANCIES.—Any vacancy in the Select Committee shall be filled in the same manner as the original appointment.

## SEC. 3. PURPOSES.

Consistent with the functions described in section 4, the purposes of the Select Committee are the following:

(1) To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex (hereafter referred to as the "domestic terrorist attack on the Capitol") and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response of the United States Capitol Police and other Federal, State, and local law enforcement agencies in the National Capital Region and other instrumentalities of government, as well as the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process.

(2) To examine and evaluate evidence developed by relevant Federal, State, and local governmental agencies regarding the facts and circumstances surrounding the domestic terrorist attack on the Capitol and targeted vi-

•HRES 503 EH

US-000951

5

olence and domestic terrorism relevant to such terrorist attack.

(3) To build upon the investigations of other entities and avoid unnecessary duplication of efforts by reviewing the investigations, findings, conclusions, and recommendations of other executive branch, congressional, or independent bipartisan or nonpartisan commission investigations into the domestic terrorist attack on the Capitol, including investigations into influencing factors related to such attack.

## SEC. 4. FUNCTIONS.

(a) FUNCTIONS.—The functions of the Select Committee are to—

(1) investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol, including facts and circumstances relating to—

(A) activities of intelligence agencies, law enforcement agencies, and the Armed Forces, including with respect to intelligence collection, analysis, and dissemination and information sharing among the branches and other instrumentalities of government;

(B) influencing factors that contributed to the domestic terrorist attack on the Capitol and how technology, including online platforms, financing,

•HRES 503 EH

US-000952

6

and malign foreign influence operations and campaigns may have factored into the motivation, organization, and execution of the domestic terrorist attack on the Capitol; and

(C) other entities of the public and private sector as determined relevant by the Select Committee for such investigation;

(2) identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol regarding—

(A) the command, control, and communications of the United States Capitol Police, the Armed Forces, the National Guard, the Metropolitan Police Department of the District of Columbia, and other Federal, State, and local law enforcement agencies in the National Capital Region on or before January 6, 2021;

(B) the structure, coordination, operational plans, policies, and procedures of the Federal Government, including as such relate to State and local governments and nongovernmental entities, and particularly with respect to detecting, preventing, preparing for, and responding to targeted violence and domestic terrorism;

•HRES 503 EH

US-000953

7

(C) the structure, authorities, training, manpower utilization, equipment, operational planning, and use of force policies of the United States Capitol Police;

(D) the policies, protocols, processes, procedures, and systems for the sharing of intelligence and other information by Federal, State, and local agencies with the United States Capitol Police, the Sergeants at Arms of the House of Representatives and Senate, the Government of the District of Columbia, including the Metropolitan Police Department of the District of Columbia, the National Guard, and other Federal, State, and local law enforcement agencies in the National Capital Region on or before January 6, 2021, and the related policies, protocols, processes, procedures, and systems for monitoring, assessing, disseminating, and acting on intelligence and other information, including elevating the security posture of the United States Capitol Complex, derived from instrumentalities of government, open sources, and online platforms; and

(E) the policies, protocols, processes, procedures, and systems for interoperability between the United States Capitol Police and the National

US-000954

8

Guard, the Metropolitan Police Department of the District of Columbia, and other Federal, State, and local law enforcement agencies in the National Capital Region on or before January 6, 2021; and

(3) issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures described in subsection (c) as it may deem necessary.

(b) REPORTS.—

(1) INTERIM REPORTS.—In addition to the final report addressing the matters in subsection (a) and section 3, the Select Committee may report to the House or any committee of the House from time to time the results of its investigations, together with such detailed findings and legislative recommendations as it may deem advisable.

(2) TREATMENT OF CLASSIFIED OR LAW ENFORCEMENT-SENSITIVE MATTER.—Any report issued by the Select Committee shall be issued in unclassified form but may include a classified annex, a law enforcement-sensitive annex, or both.

(c) CORRECTIVE MEASURES DESCRIBED.—The corrective measures described in this subsection may include changes in law, policy, procedures, rules, or regulations that could be taken—

•HRES 503 EH

US-000955

9

(1) to prevent future acts of violence, domestic terrorism, and domestic violent extremism, including acts targeted at American democratic institutions;

(2) to improve the security posture of the United States Capitol Complex while preserving accessibility of the Capitol Complex for all Americans; and

(3) to strengthen the security and resilience of the United States and American democratic institutions against violence, domestic terrorism, and domestic violent extremism.

(d) No Markup of Legislation Permitted.—The Select Committee may not hold a markup of legislation.

**SEC. 5. PROCEDURE.**

(a) Access to Information From Intelligence Community.—Notwithstanding clause 3(m) of rule X of the Rules of the House of Representatives, the Select Committee is authorized to study the sources and methods of entities described in clause 11(b)(1)(A) of rule X insofar as such study is related to the matters described in sections 3 and 4.

(b) Treatment of Classified Information.—Clause 11(b)(4), clause 11(e), and the first sentence of clause 11(f) of rule X of the Rules of the House of Representatives shall apply to the Select Committee.

(c) Applicability of Rules Governing Procedures of Committees.—Rule XI of the Rules of the House of

US-000956

10

Representatives shall apply to the Select Committee except as follows:

(1) Clause 2(a) of rule XI shall not apply to the Select Committee.

(2) Clause 2(g)(2)(D) of rule XI shall apply to the Select Committee in the same manner as it applies to the Permanent Select Committee on Intelligence.

(3) Pursuant to clause 2(h) of rule XI, two Members of the Select Committee shall constitute a quorum for taking testimony or receiving evidence and one-third of the Members of the Select Committee shall constitute a quorum for taking any action other than one for which the presence of a majority of the Select Committee is required.

(4) The chair of the Select Committee may authorize and issue subpoenas pursuant to clause 2(m) of rule XI in the investigation and study conducted pursuant to sections 3 and 4 of this resolution, including for the purpose of taking depositions.

(5) The chair of the Select Committee is authorized to compel by subpoena the furnishing of information by interrogatory.

(6)(A) The chair of the Select Committee, upon consultation with the ranking minority member, may order the taking of depositions, including pursuant to

•HRES 503 EH

US-000957

11

subpoena, by a Member or counsel of the Select Committee, in the same manner as a standing committee pursuant to section 3(b)(1) of House Resolution 8, One Hundred Seventeenth Congress.

(B) Depositions taken under the authority prescribed in this paragraph shall be governed by the procedures submitted by the chair of the Committee on Rules for printing in the Congressional Record on January 4, 2021.

(7) Subpoenas authorized pursuant to this resolution may be signed by the chair of the Select Committee or a designee.

(8) The chair of the Select Committee may, after consultation with the ranking minority member, recognize—

    (A) Members of the Select Committee to question a witness for periods longer than five minutes as though pursuant to clause 2(j)(2)(B) of rule XI; and

    (B) staff of the Select Committee to question a witness as though pursuant to clause 2(j)(2)(C) of rule XI.

(9) The chair of the Select Committee may postpone further proceedings when a record vote is ordered on questions referenced in clause 2(h)(4) of rule XI, and

•**HRES 503 EH**

-4818-

US-000958

12

may resume proceedings on such postponed questions at any time after reasonable notice. Notwithstanding any intervening order for the previous question, an underlying proposition shall remain subject to further debate or amendment to the same extent as when the question was postponed.

(10) The provisions of paragraphs (f)(1) through (f)(12) of clause 4 of rule XI shall apply to the Select Committee.

### SEC. 6. RECORDS; STAFF; TRAVEL; FUNDING.

(a) SHARING RECORDS OF COMMITTEES.—Any committee of the House of Representatives having custody of records in any form relating to the matters described in sections 3 and 4 shall provide copies of such records to the Select Committee not later than 14 days of the adoption of this resolution or receipt of such records. Such records shall become the records of the Select Committee.

(b) STAFF.—The appointment and the compensation of staff for the Select Committee shall be subject to regulations issued by the Committee on House Administration.

(c) DETAIL OF STAFF OF OTHER OFFICES.—Staff of employing entities of the House or a joint committee may be detailed to the Select Committee to carry out this resolution and shall be deemed to be staff of the Select Committee.

•HRES 503 EH

US-000959

13

(d) USE OF CONSULTANTS PERMITTED.—Section 202(i) of the Legislative Reorganization Act of 1946 (2 U.S.C. 4301(i)) shall apply with respect to the Select Committee in the same manner as such section applies with respect to a standing committee of the House of Representatives.

(e) TRAVEL.—Clauses 8(a), (b), and (c) of rule X of the Rules of the House of Representatives shall apply to the Select Committee.

(f) FUNDING; PAYMENTS.—There shall be paid out of the applicable accounts of the House of Representatives such sums as may be necessary for the expenses of the Select Committee. Such payments shall be made on vouchers signed by the chair of the Select Committee and approved in the manner directed by the Committee on House Administration. Amounts made available under this subsection shall be expended in accordance with regulations prescribed by the Committee on House Administration.

**SEC. 7. TERMINATION AND DISPOSITION OF RECORDS.**

(a) TERMINATION.—The Select Committee shall terminate 30 days after filing the final report under section 4.

(b) DISPOSITION OF RECORDS.—Upon termination of the Select Committee—

(1) the records of the Select Committee shall become the records of such committee or committees designated by the Speaker; and

•HRES 503 EH

US-000960

14

(2) the copies of records provided to the Select Committee by a committee of the House under section 6(a) shall be returned to the committee.

Attest:

*Clerk.*

•**HRES 503 EH**

US-000961

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

Stephen K. Bannon

c/o Robert Costello, Esq., Davidson, Huthcher and Citron, LLP

*To* _____

    You are hereby commanded to be and appear before the

    Select Committee to Investigate the January 6th Attack on the United States Capitol

_____

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: 1540A Longworth House Office Building, Washington, DC 20515
>
> Date: October 7, 2021               Time: 10:00 a.m.

☑ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: 1540A Longworth House Office Building, Washington, DC 20515
>
> Date: October 14, 2021              Time: 10:00 a.m.

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____              Time: _____

*To* any authorized staff member or the United States Marshals Service

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 23ᵈ day of September , 2021.

*Chairman or Authorized Member*

Attest

*Clerk*

GOVERNMENT EXHIBIT 2

Jan. 6 Sel. Comm. 0001
US-000408

## PROOF OF SERVICE

Subpoena for Stephen K. Bannon
    c/o Robert Costello, Esq., Davidson, Huthcher and Citron, LLP

Address 605 Third Avenue, 34th Floor

New York, NY  10158

before the  Select Committee to Investigate the January 6th Attack on the United States Capitol

*U.S. House of Representatives*
*117th Congress*

Served by (print name)  Kristin Amerling

Title  chief counsel + deputy staff director

Manner of service  email to attorney for Mr. Bannon,

Robert Costello at rjc@dhclegal.com

Date  9/23/21

Signature of Server

Address  House Select Comm. Hee to Investigate the 1/6 Attack, 1540A

Longworth HoB, Washington, DC  20515

Jan. 6 Sel. Comm. 0002
US-000409

BENNIE G. THOMPSON, MISSISSIPPI
CHAIRMAN

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS



U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

### One Hundred Seventeenth Congress
### Select Committee to Investigate the January 6th Attack on the United States Capitol

September 23, 2021

Mr. Stephen K. Bannon
c/o Mr. Robert J. Costello
Davidoff Hutcher & Citron LLP
605 Third Avenue, 34th Floor
New York, NY 10158

Dear Mr. Bannon:

Pursuant to the authorities set forth in House Resolution 503 and the rules of the House of Representatives, the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") hereby transmits a subpoena compelling you to produce the documents set forth in the accompanying schedule by October 7, 2021, and to appear for a deposition on October 14, 2021.

The Select Committee is investigating the facts, circumstances, and causes of the January 6th attack and issues relating to the peaceful transfer of power, in order to identify and evaluate lessons learned and to recommend to the House and its relevant committees corrective laws, policies, procedures, rules, or regulations. This inquiry includes examination of how various individuals and entities coordinated their activities leading up to the events of January 6, 2021.

The Select Committee has reason to believe that you have information relevant to understanding important activities that led to and informed the events at the Capitol on January 6, 2021. For example, you have been identified as present at the Willard Hotel on January 5, 2021, during an effort to persuade Members of Congress to block the certification of the election the next day, and in relation to other activities on January 6.[1]  You are also described as communicating with then-President Trump on December 30, 2020, and potentially other occasions, urging him to plan for and focus his efforts on January 6.[2]  Moreover, you are quoted as stating, on January 5, 2021, that "[a]ll hell is going to break loose tomorrow."[3]  Accordingly, the Select Committee seeks both documents and your deposition testimony regarding these and multiple other matters that are within the scope of the Select Committee's inquiry.

A copy of the rules governing Select Committee depositions, and a copy of document production definitions and instructions are attached. Please contact staff for the Select Committee at 202-225-7800 to arrange for the production of documents.

Sincerely,

Bennie G. Thompson
Chairman

---

[1] *E.g.,* BOB WOODWARD & ROBERT COSTA, PERIL at 233 (2021).
[2] *Id.* at 207.
[3] Rob Kuznia, Curt Devine, & Drew Griffin, *How Trump Allies Stoked the Flames Ahead of Capitol Riot*, CNN (Jan. 18, 2021), https://www.cnn.com/2021/01/18/politics/trump-bannon-stone-giuliani-capitol-riot-invs/index.html.

**Jan. 6 Sel. Comm. 0003**
US-000410

Mr. Stephen K. Bannon
Page 2

### SCHEDULE

In accordance with the attached Definitions and Instructions, you, Stephen K. Bannon, are hereby required to produce all documents and communications in your possession, custody, and control—including any such documents or communications stored or located on personal devices (e.g., personal computers, cellular phones, tablets, etc.), in personal or campaign accounts, and/or on personal or campaign applications (e.g., email accounts, contact lists, calendar entries, etc.)— referring or relating to referring or relating to the following items. If no date range is specified below, the applicable dates are for the time period April 1, 2020-present.:

1. The January 6, 2021, rally on the mall and Capitol grounds in Washington, D.C., in support of President Donald J. Trump and opposition to certification of the results of the 2020 presidential election, including any permitting, planning, objectives, financing, and conduct, as well as any communications to or from any person or group involved in organizing or planning for the January 6, 2021, rally.

2. Then-President Trump's participation in the January 6, 2021, rally, including any communications with President Trump or any paid or unpaid attorney, advisor, aide, or assistant to President Trump relating to the nature, context, or content of President Trump's intended or actual remarks to those attending the January 6, 2021, rally.

3. Communications referring or relating to the nature, planning, conduct, message, context, or participation in the January 6, 2021, rally between or among any person who, during the administration of President Donald J. Trump, worked in the White House complex, including any employee or detailee.

4. Documents or other materials referring or relating to the financing or fundraising to assist any individual or organization's travel to or accommodation in Washington, D.C., to attend or participate in the January 6, 2021, rally.

5. "The 'War Room' podcast," insofar as at any time you communicated through it statements referring or relating to efforts to contest the election results, including planning for the January 6, 2021, rally, including all statements concerning its planning, objectives, purpose, organization, message, or sponsorship.

6. The organization or group named "March for Trump" and its activities relating to the January 6, 2021, rally, including any communications you had with any officer or member of "March for Trump" relating in any way to the planning, objectives, organization, message, sponsorship, and participation in the January 6, 2021, rally.

7. Your presence, purpose, statements, and activities at a meeting at the Willard Hotel on January 5, 2021, or the presence, purpose, statements, or activities of others in attendance, related to that meeting.

8. Your communications with President Donald J. Trump concerning events on January 6, 2021, including but not limited to communications on December 30, 2020.

9. Your communications with President Donald J. Trump between November 3 and January 20, 2021, concerning efforts to contest the election results or delay or impede the electoral count.

10. Anyone with whom you communicated by any means with respect to any aspect of the planning, objectives, conduct, or participation in the January 6, 2021, rally, including but not limited to Boris Epshteyn, Kashyap Patel, and Ezra Cohen-Watnick.

Jan. 6 Sel. Comm. 0004
US-000411

Mr. Stephen K. Bannon
Page 3

11. Anyone with whom you communicated by any means with respect to efforts, plans, or proposals to contest the 2020 Presidential election results or delay, influence, or impede the electoral count, including but not limited to communications with Boris Epshteyn, Kashyap Patel, and Ezra Cohen-Watnick.

12. All public relations, advertising, or other communications efforts to persuade Americans that the election was stolen or to attend the rally on January 6.

13. The role of the Vice President as the Presiding Officer in the certification of the votes of the electoral college.

14. Any communication with any employees of President Trump's 2020 presidential campaign, the Republican National Committee, or any Trump Administration personnel including appointees, employees, and interns, about any of the foregoing topics.

15. Any communication regarding any of the foregoing topics with Proud Boys, Oath Keepers, Three Percenters, and Alex Jones.

16. Any communications with Representative Scott Perry and/or other Members of Congress about any of the foregoing topics.

17. Any communications with Rudolph Giuliani, John Eastman, Michael Flynn, Jenna Ellis, or Sydney Powell about any of the foregoing topics.

Jan. 6 Sel. Comm. 0005
US-000412

## DOCUMENT PRODUCTION DEFINITIONS AND INSTRUCTIONS

1. In complying with this request, produce all responsive documents, regardless of classification level, that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. Produce all documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.

2. Requested documents, and all documents reasonably related to the requested documents, should not be destroyed, altered, removed, transferred, or otherwise made inaccessible to the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Committee").

3. In the event that any entity, organization, or individual denoted in this request is or has been known by any name other than that herein denoted, the request shall be read also to include that alternative identification.

4. The Committee's preference is to receive documents in a protected electronic form (i.e., password protected CD, memory stick, thumb drive, or secure file transfer) in lieu of paper productions. With specific reference to classified material, you will coordinate with the Committee's Security Officer to arrange for the appropriate transfer of such information to the Committee. This includes, but is not necessarily limited to: a) identifying the classification level of the responsive document(s); and b) coordinating for the appropriate transfer of any classified responsive document(s).

5. Electronic document productions should be prepared according to the following standards:

   a. If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

   b. All electronic documents produced to the Committee should include the following fields of metadata specific to each document, and no modifications should be made to the original metadata:

   BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

6.     Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, zip file, box, or folder is produced, each should contain an index describing its contents.

7.     Documents produced in response to this request shall be produced together with copies of file labels, dividers, or identifying markers with which they were associated when the request was served.

8.     When you produce documents, you should identify the paragraph(s) or request(s) in the Committee's letter to which the documents respond.

9.     The fact that any other person or entity also possesses non-identical or identical copies of the same documents shall not be a basis to withhold any information.

10.    The pendency of or potential for litigation shall not be a basis to withhold any information.

11.    In accordance with 5 U.S.C.§ 552(d), the Freedom of Information Act (FOIA) and any statutory exemptions to FOIA shall not be a basis for withholding any information.

12.    Pursuant to 5 U.S.C. § 552a(b)(9), the Privacy Act shall not be a basis for withholding information.

13.    If compliance with the request cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production, as well as a date certain as to when full production will be satisfied.

14.    In the event that a document is withheld on any basis, provide a log containing the following information concerning any such document: (a) the reason it is being withheld, including, if applicable, the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee, and any other recipient(s); (e) the relationship of the author and addressee to each other; and (f) the basis for the withholding.

15.    If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (by date, author, subject, and recipients), and explain the circumstances under which the document ceased to be in your possession, custody, or control. Additionally, identify where the responsive document can now be found including name, location, and contact information of the entity or entities now in possession of the responsive document(s).

16.    If a date or other descriptive detail set forth in this request referring to a document

is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, produce all documents that would be responsive as if the date or other descriptive detail were correct.

17.  This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data, or information not produced because it has not been located or discovered by the return date shall be produced immediately upon subsequent location or discovery.

18.  All documents shall be Bates-stamped sequentially and produced sequentially.

19.  Upon completion of the production, submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control that reasonably could contain responsive documents; and
(2) all documents located during the search that are responsive have been produced to the Committee.

## Definitions

1.  The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of classification level, how recorded, or how stored/displayed (e.g. on a social media platform) and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, data, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, communications, electronic mail (email), contracts, cables, notations of any type of conversation, telephone call, meeting or other inter-office or intra-office communication, bulletins, printed matter, computer printouts, computer or mobile device screenshots/screen captures, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape, or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2.    The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, mail, releases, electronic message including email (desktop or mobile device), text message, instant message, MMS or SMS message, message application, through a social media or online platform, or otherwise.

3.    The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information that might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neutral genders.

4.    The term "including" shall be construed broadly to mean "including, but not limited to."

5.    The term "Company" means the named legal entity as well as any units, firms, partnerships, associations, corporations, limited liability companies, trusts, subsidiaries, affiliates, divisions, departments, branches, joint ventures, proprietorships, syndicates, or other legal, business or government entities over which the named legal entity exercises control or in which the named entity has any ownership whatsoever.

6.    The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; (b) the individual's business or personal address and phone number; and (c) any and all known aliases.

7.    The term "related to" or "referring or relating to," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

8.    The term "employee" means any past or present agent, borrowed employee, casual employee, consultant, contractor, de facto employee, detailee, assignee, fellow, independent contractor, intern, joint adventurer, loaned employee, officer, part-time employee, permanent employee, provisional employee, special government employee, subcontractor, or any other type of service provider.

9.    The term "individual" means all natural persons and all persons or entities acting on their behalf.

health, safety, and well-being of others present in the Chamber and surrounding areas. Members and staff will not be permitted to enter the Hall of the House without wearing a mask. Masks will be available at the entry points for any Member who forgets to bring one. The Chair views the failure to wear a mask as a serious breach of decorum. The Sergeant-at-Arms is directed to enforce this policy. Based upon the health and safety guidance from the attending physician and the Sergeant-at-Arms, the Chair would further advise that all Members should leave the Chamber promptly after casting their votes. Furthermore, Members should avoid congregating in the rooms leading to the Chamber, including the Speaker's lobby. The Chair will continue the practice of providing small groups of Members with a minimum of 5 minutes within which to cast their votes. Members are encouraged to vote with their previously assigned group. After voting, Members must clear the Chamber to allow the next group a safe and sufficient opportunity to vote. It is essential for the health and safety of Members, staff, and the U.S. Capitol Police to consistently practice social distancing and to ensure that a safe capacity be maintained in the Chamber at all times. To that end, the Chair appreciates the cooperation of Members and staff in preserving order and decorum in this Chamber and in displaying respect and safety for one another by wearing a mask and practicing social distancing. All announced policies, including those addressing decorum in debate and the conduct of votes by electronic device, shall be carried out in harmony with this policy during the pendency of a covered period.

---

## 117TH CONGRESS REGULATIONS FOR USE OF DEPOSITION AUTHORITY

COMMITTEE ON RULES,
HOUSE OF REPRESENTATIVES,
*Washington, DC, January 4, 2021.*
Hon. NANCY PELOSI,
*Speaker, House of Representatives,*
*Washington, DC.*

MADAM SPEAKER: Pursuant to section 3(b) of House Resolution 8, 117th Congress, I hereby submit the following regulations regarding the conduct of depositions by committee and select committee counsel for printing in the Congressional Record.

Sincerely,

JAMES P. MCGOVERN,
*Chairman, Committee on Rules.*

REGULATIONS FOR THE USE OF DEPOSITION AUTHORITY

1. Notices for the taking of depositions shall specify the date, time, and place of examination. Depositions shall be taken under oath administered by a member or a person otherwise authorized to administer oaths. Depositions may continue from day to day.

2. Consultation with the ranking minority member shall include three days' notice before any deposition is taken. All members of the committee shall also receive three days written notice that a deposition will be taken, except in exigent circumstances. For purposes of these procedures, a day shall not include Saturdays, Sundays, or legal holidays except when the House is in session on such a day.

3. Witnesses may be accompanied at a deposition by personal, nongovernmental counsel to advise them of their rights. Only members, committee staff designated by the chair or ranking minority member, an official reporter, the witness, and the witness's counsel are permitted to attend. Observers or counsel for other persons, including counsel for government agencies, may not attend.

4. The chair of the committee noticing the deposition may designate that deposition as part of a joint investigation between committees, and in that case, provide notice to the members of the committees. If such a designation is made, the chair and ranking minority member of the additional committee(s) may designate committee staff to attend pursuant to regulation 3. Members and designated staff of the committees may attend and ask questions as set forth below.

5. A deposition shall be conducted by any member or committee counsel designated by the chair or ranking minority member of the Committee that noticed the deposition. When depositions are conducted by committee counsel, there shall be no more than two committee counsel permitted to question a witness per round. One of the committee counsel shall be designated by the chair and the other by the ranking minority member per round.

6. Deposition questions shall be propounded in rounds. The length of each round shall not exceed 60 minutes per side, and shall provide equal time to the majority and the minority. In each round, the member(s) or committee counsel designated by the chair shall ask questions first, and the member(s) or committee counsel designated by the ranking minority member shall ask questions second.

7. Objections must be stated concisely and in a non-argumentative and non-suggestive manner. A witness's counsel may not instruct a witness to refuse to answer a question, except to preserve a privilege. In the event of professional, ethical, or other misconduct by the witness's counsel during the deposition, the Committee may take any appropriate disciplinary action. The witness may refuse to answer a question only to preserve a privilege. When the witness has refused to answer a question to preserve a privilege, members or staff may (i) proceed with the deposition, or (ii) either at that time or at a subsequent time, seek a ruling from the Chair either by telephone or otherwise. If the Chair overrules any such objection and thereby orders a witness to answer any question to which an objection was lodged, the witness shall be ordered to answer. If a member of the committee chooses to appeal the ruling of the chair, such appeal must be made within three days, in writing, and shall be preserved for committee consideration. The Committee's ruling on appeal shall be filed with the clerk of the Committee and shall be provided to the members and witness no less than three days before the reconvened deposition. A deponent who refuses to answer a question after being directed to answer by the chair may be subject to sanction, except that no sanctions may be imposed if the ruling of the chair is reversed by the committee on appeal.

8. The Committee chair shall ensure that the testimony is either transcribed or electronically recorded or both. If a witness's testimony is transcribed, the witness or the witness's counsel shall be afforded an opportunity to review a copy. No later than five days after the witness has been notified of the opportunity to review the transcript, the witness may submit suggested changes to the chair. Committee staff may make any typographical and technical changes. Substantive changes, modifications, clarifications, or amendments to the deposition transcript submitted by the witness must be accompanied by a letter signed by the witness requesting the changes and a statement of the witness's reasons for each proposed change. Any substantive changes, modifications, or amendments shall be included as an appendix to the transcript conditioned upon the witness signing the transcript.

9. The individual administering the oath, if other than a member, shall certify on the transcript that the witness was duly sworn. The transcriber shall certify that the transcript is a true record of the testimony, and the transcript shall be filed, together with any electronic recording, with the clerk of the committee in Washington, DC. Depositions shall be considered to have been taken in Washington, DC, as well as the location actually taken once filed there with the clerk of the committee for the committee's use. The chair and the ranking minority member shall be provided with a copy of the transcripts of the deposition at the same time.

10. The chair and ranking minority member shall consult regarding the release of deposition testimony, transcripts, or recordings, and portions thereof. If either objects in writing to a proposed release of a deposition testimony, transcript, or recording, or a portion thereof, the matter shall be promptly referred to the committee for resolution.

11. A witness shall not be required to testify unless the witness has been provided with a copy of section 3(b) of H. Res. 8, 117th Congress, and these regulations.

---

## REMOTE COMMITTEE PROCEEDINGS REGULATIONS PURSUANT TO HOUSE RESOLUTION 8, 117TH CONGRESS

COMMITTEE ON RULES,
HOUSE OF REPRESENTATIVES,
*Washington, DC, January 4, 2021.*
Hon. NANCY PELOSI,
*Speaker, House of Representatives,*
*Washington, DC.*

MADAM SPEAKER: Pursuant to section 3(s) of House Resolution 8, 117th Congress, I hereby submit the following regulations regarding remote committee proceedings for printing in the CONGRESSIONAL RECORD.

Sincerely,

JAMES P. MCGOVERN,
*Chairman, Committee on Rules.*

REMOTE COMMITTEE PROCEEDINGS REGULATIONS PURSUANT TO HOUSE RESOLUTION 8

A. PRESENCE AND VOTING

1. Members participating remotely in a committee proceeding must be visible on the software platform's video function to be considered in attendance and to participate unless connectivity issues or other technical problems render the member unable to fully participate on camera (except as provided in regulations A.2 and A.3).

2. The exception in regulation A.1 for connectivity issues or other technical problems does not apply if a point of order has been made that a quorum is not present. Members participating remotely must be visible on the software platform's video function in order to be counted for the purpose of establishing a quorum.

3. The exception in regulation A.1 for connectivity issues or other technical problems does not apply during a vote. Members participating remotely must be visible on the software platform's video function in order to vote.

4. Members participating remotely off-camera due to connectivity issues or other technical problems pursuant to regulation A.1 must inform committee majority and minority staff either directly or through staff.

5. The chair shall make a good faith effort to provide every member experiencing connectivity issues an opportunity to participate fully in the proceedings, subject to regulations A.2 and A.3.

Jan. 6 Sel. Comm. 0010
US-000417

| | |
|---|---|
| **From:** | Amerling, Kristin |
| **To:** | Costello, Robert J. |
| **Cc:** | Buckley, David |
| **Subject:** | RE: subpoena to Mr. Bannon |
| **Date:** | Friday, September 24, 2021 1:58:00 PM |

Thank you for confirming acceptance of service of the Select Committee subpoena to Mr. Bannon.

Best regards,
Kristin

**From:** Costello, Robert J. <rjc@dhclegal.com>
**Sent:** Friday, September 24, 2021 1:24 PM
**To:** Amerling, Kristin <Kristin.Amerling@mail.house.gov>
**Subject:** Re: subpoena to Mr. Bannon

     In response to your email of yesterday, this will advise you that I have been authorized by Steve
Bannon to accept service of the subpoena from the House Select Committee on his behalf.
                    Very truly yours,
                    Robert J. Costello

Sent from my iPhone

     On Sep 23, 2021, at 6:38 PM, Amerling, Kristin <Kristin.Amerling@mail.house.gov>
     wrote:

     **CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO
     NOT TRUST**

     Dear Mr. Costello,

     I am following up on our conversation today in which you confirmed that you represent
     Stephen Bannon. I understand that you are checking with Mr. Bannon regarding
     whether he will authorize you to accept service of a subpoena on his behalf. The Select
     Committee to Investigate the January 6th Attack on the United States Capitol is today
     issuing the attached subpoena to Mr. Bannon for his testimony and the production of
     documents to the Committee. In the event that you will accept service, I am attaching
     to this email the subpoena, along with a letter from Chairman Bennie Thompson, a
     document schedule with accompanying production instructions, and a copy of the
     deposition rules.

**GOVERNMENT
EXHIBIT
3
_____**

**Jan. 6 Sel. Comm. 0025**
US-000432

Please confirm whether you will accept service of this subpoena on Mr. Bannon's behalf.

Thank you,
Kristin Amerling

*Kristin Amerling*
*Chief Counsel and Deputy Staff Director*
*Select Committee to Investigate the January 6th Attack on the United States Capitol*
*U.S. House of Representatives*

<Bannon, Stephen K. Subpoena 9.23.21.attachments.pdf>

**IMPORTANT NOTICE:**Beware of Cyber Fraud. You should never wire money to any bank account that our office provides to you via email without first speaking with our office. Further,do not accept emailed wiring instructions from anyone else without voice verification from a known employee of our office. Even if an email looks like it has come from this office or someone involved in your transaction. Please call us first at a number you know to be correct for this office to verify the information before wiring any money. Be particularly wary of any request to change wiring instructions you already received.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify us immediately by email reply to sender or by telephone to Davidoff Hutcher & Citron LLP at (800) 793-2843, ext. 3284, and destroy all copies of this message and any attachments.

IRS DISCLOSURE NOTICE
In accordance with Internal Revenue Service Circular 230, we inform you that any discussion of a federal tax issue contained in this communication (including any attachments) is not intended or written to be used, and it cannot be used, by any recipient for the purpose of (i) avoiding penalties that may be imposed on the recipient under United States federal tax laws, or (ii) promoting, marketing or

-4833-

**Jan. 6 Sel. Comm. 0026**
US-000433

recommending to another party any tax-related matters addressed herein.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



# DAVIDOFF HUTCHER & CITRON LLP

ATTORNEYS AT LAW

605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

**FIRM OFFICES**

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605
(914) 361-7400

WEST PALM BEACH
ATTORNEYS AT LAW
1107 NORTH OLIVE AVENUE
WEST PALM BEACH, FL 33401
(561) 567-6488

**FIRM OFFICES**

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

October 7, 2021

Kristin Amerling, Esq.
Chief Counsel/Deputy Staff Director
House Select Committee to Investigate
The January 6th Attack on the United States Capitol
1540A Longworth HOB
Washington, DC 20515

Re:    The Subpoena for Stephen K. Bannon dated September 23, 2021

Dear Ms. Amerling:

I write today on behalf of Stephen K. Bannon with respect to the above referenced subpoena, which I accepted on behalf of Mr. Bannon. On the afternoon of October 6, 2021, I received a letter from Justin Clark, as counsel for then President of the United States Donald J. Trump. That letter references the subpoena that your Committee served upon Mr. Bannon, and notes that the subpoena:

"seeks records and testimony purportedly related to the events of January 6th, 2021, including but not limited to information which is potentially protected from disclosure by executive and other privileges, including among others the presidential communications, deliberative process, and attorney-client privileges. President Trump is prepared to defend these fundamental privileges in court.

Therefore, to the fullest extent permitted by law, President Trump instructs Mr. Bannon to: (a) where appropriate, invoke any immunities and privileges he may have from compelled testimony in response to the Subpoena; (b) not produce any documents concerning privileged material in response to the Subpoena; and (c) not provide any testimony concerning privileged material in response to the Subpoena."

It is therefore clear to us that since the executive privileges belong to President Trump, and he has, through his counsel, announced his intention to assert

**GOVERNMENT
EXHIBIT
4**

**Jan. 6 Sel. Comm. 0011**

-4835-

US-000418

DAVIDOFF HUTCHER & CITRON LLP

Kristin Amerling, Esq.
October 7, 2021
Page 2

those executive privileges enumerated above, we must accept his direction and honor his invocation of executive privilege. As such, until these issues are resolved, we are unable to respond to your request for documents and testimony.

We will comply with the directions of the courts, when and if they rule on these claims of both executive and attorney client privileges. Since these privileges belong to President Trump and not to Mr. Bannon, until these issues are resolved, Mr. Bannon is legally unable to comply with your subpoena requests for documents and testimony.

Very truly yours,

/s/ Robert J. Costello

RJC/nc
None

**Jan. 6 Sel. Comm. 0012**

US-000419

| From: | Amerling, Kristin |
|---|---|
| To: | Costello, Robert J. |
| Cc: | Buckley, David |
| Subject: | RE: Response to House Subpoena (00933900x7F7DD).PDF |
| Date: | Friday, October 8, 2021 6:02:00 PM |
| Attachments: | 2021-10-08.Costello.pdf |

Dear Mr. Costello,

Thank you for your letter of October 7 on behalf of Stephen K. Bannon to the House Select Committee to Investigate the January 6th Attack on the United States Capitol. Please find attached a letter response from Chairman Thompson.

Sincerely,
Kristin Amerling

**From:** Costello, Robert J. <rjc@dhclegal.com>
**Sent:** Thursday, October 7, 2021 5:05 PM
**To:** Amerling, Kristin <Kristin.Amerling@mail.house.gov>
**Subject:** FW: Response to House Subpoena (00933900x7F7DD).PDF

Dear Ms. Amerling,
    Please find my attached letter response on behalf of Stephen K. Bannon to the House Select Committee subpoena of September 23, 2021.
                                                    Very
truly yours,
                                                    Bob
Costello

**IMPORTANT NOTICE:**Beware of Cyber Fraud. You should <u>never</u>
wire money to any bank account that our office provides to you via email
without first speaking with our office. Further,<u>do not</u> accept emailed
wiring instructions from anyone else without voice verification from a known
employee of our office. Even if an email looks like it has come from this
office or someone involved in your transaction. <u>Please call us first at a number
you know to be correct for this office</u> to verify the information before wiring
any money. Be particularly wary of any request to change wiring instructions
you already received.

**Jan. 6 Sel. Comm. 0028**

US-000435



BENNIE G. THOMPSON, MISSISSIPPI
CHAIRMAN

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS

U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

**One Hundred Seventeenth Congress**

**Select Committee to Investigate the January 6th Attack on the United States Capitol**

October 8, 2021

Mr. Robert J. Costello
Davidoff Hutcher & Citron LLP
605 Third Avenue, 34th Floor
New York, NY 10158

Dear Mr. Costello,

I write in response to your October 7, 2021 letter which states that your client, Stephen Bannon, is "legally unable to comply" with the September 23, 2021 subpoena (the "Subpoena") issued by the Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee"). Your letter relies on an apparent instruction from former President Donald Trump that appears limited to requesting that Mr. Bannon not disclose privileged information. Despite this limited instruction, your letter takes the inappropriate position that Mr. Bannon will not comply with any request for information or testimony sought by the Select Committee. Moreover, Mr. Trump's stated "intention to assert those executive privileges" that may or may not belong to him, does not provide a legal basis for Mr. Bannon's refusal to comply with the Subpoena.

You accepted service of the Subpoena for documents and testimony on Mr. Bannon's behalf on September 24, 2021. The Subpoena required that, by October 7, 2021 at 10:00 a.m., Mr. Bannon produce certain documents and other records referring or relating to the matters described in the Subpoena's schedule. All the requested documents relate directly to the inquiry being conducted by the Select Committee, serve a legitimate legislative purpose, and are within the scope of the authority expressly delegated to the Select Committee pursuant to House Resolution 503. In the letter accompanying the Subpoena, the Select Committee set forth the basis for its determination that the documents and records sought by the Subpoena and Mr. Bannon's deposition testimony are of critical importance to the issues being investigated by the Select Committee.

Your letter indicates that the sole basis for defiance of the Subpoena is Mr. Trump's "direction" to your client and his decision to "honor [Mr. Trump's] invocation of executive privilege." That position has no basis in law, and your letter does not cite any statute, case law, or other legal precedent for support.

*First*, virtually all the documents and testimony sought by the Subpoena concern Mr. Bannon's actions as a private citizen and involve a broad range of subjects that are not covered by executive privilege. You have provided no basis for Mr. Bannon's refusal to comply with

<div style="text-align:center">
GOVERNMENT
EXHIBIT
**5**
</div>

**Jan. 6 Sel. Comm. 0013**
US-000420

Mr. Robert J. Costello
Page 2

those portions of the Subpoena not covered by any privilege. Furthermore, blanket assertions of the deliberative process and attorney-client privileges, such as those apparently requested by Mr. Trump, have been rejected by courts as "unsustainable" even when—unlike the situation with Mr. Bannon—the subpoena recipient is an Executive Branch agency. *See Comm. on Oversight and Gov't Reform v. Holder*, 2014 WL 12662665, at \*2 (D.D.C. 2014) (rejecting DOJ's assertion of deliberative process privilege on all documents after a particular date and noting that the "Attorney General has not cited any authority that would justify this sort of blanket approach").

*Second,* the Select Committee has not received any assertion, formal or otherwise, of any privilege from the Mr. Trump. Even assuming that, as a former President, Mr. Trump is permitted to formally invoke executive privilege, he has not done so. At most, Mr. Trump has "announced his intention to assert those executive privileges." The Select Committee is not aware of any legal authority, and your letter cites none, holding that the mere intention to assert a privilege absolves a subpoena recipient of his duty to comply.

*Third,* your letter indicates that Mr. Trump has requested that your client "to the fullest extent permitted by law ... not provide any testimony concerning privileged material in response to the Subpoena." Even if your client had been a senior aide to the President during the time period covered by the contemplated testimony, which he was most assuredly not, he is not permitted by law to the type of immunity you suggest that Mr. Trump has requested he assert. To the contrary, every court that has considered the absolute immunity Mr. Trump alludes to has rejected it. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 106 (D.D.C. 2008) (rejecting former White House counsel's assertion of absolute immunity from compelled congressional process). *Miers* made clear that even the most senior Presidential advisors may not resist a congressional subpoena "based solely on their proximity to the President." *Id.* at 101 (citing *Harlow*, 457 U.S. at 810).[1] If there is no absolute immunity for senior Presidential advisors, then there certainly can be no such immunity for private citizens, such as Mr. Bannon, who occasionally communicate with the President on non-official, non-governmental, or campaign-related matters.

Regardless of any purported privilege assertion by Mr. Trump, Mr. Bannon has an ongoing obligation to produce documents to the Select Committee. Accordingly, please produce all responsive documents and records identified in the Subpoena. Should Mr. Bannon seek to withhold specific responsive documents, consistent with the Subpoena instructions, he must provide the Select Committee with a privilege log that "identifies and describes the material in a manner 'sufficient to enable resolution of any privilege claims.'" *See Comm. on Oversight*, 2014 WL 12662665 at \*2 (quoting *Miers,* 558 F. Supp. 2d at 107). Such a privilege log should, at a minimum, provide the author(s) and recipient(s), indicate the general subject matter of each document being withheld, and the specific basis for withholding it.

---

[1] It is also worth noting that the court in *Miers* rejected the former White House Counsel's claim of absolute immunity from congressional testimony even though the sitting President had formally invoked executive privilege. *Id.* at 62.

Mr. Robert J. Costello
Page 3

Finally, the Select Committee expects Mr. Bannon's appearance at the time and place designated in the Subpoena for a deposition and respond fully to questions by the Select Committee. If there are specific questions at that deposition that you believe raise privilege issues, Mr. Bannon should state them at that time for the deposition record for the Select Committee's consideration and possible judicial review.

Please be advised that the Select Committee will view Mr. Bannon's failure to respond to the Subpoena as willful non-compliance with the Subpoena. His willful non-compliance with the Subpoena would force the Select Committee to consider invoking the contempt of Congress procedures in 2 U.S.C. §§ 192, 194—which could result in a referral from the House to the Department of Justice for criminal charges—as well as the possibility of having a civil action to enforce the Subpoena brought against Mr. Bannon in his personal capacity.

Sincerely,

Bennie G. Thompson
Chairman

**Jan. 6 Sel. Comm. 0015**
US-000422



# DAVIDOFF HUTCHER & CITRON LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605
(914) 381-7400

WEST PALM BEACH
ATTORNEYS AT LAW
1107 NORTH OLIVE AVENUE
WEST PALM BEACH, FL 33401
(561) 567-8488

FIRM OFFICES

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

October 13, 2021

Hon. Bennie G. Thompson
Chairman
House Select Committee to Investigate the January 6th Attack
c/o Kirstin Amerling, Esq.
1540 A Longworth HOB
Washington, DC 20515

Re:    The Subpoena for Stephen K. Bannon dated September 23, 2021

Dear Congressman Thompson:

I write on behalf of Stephen K. Bannon to respond to some of the inaccurate statements made in your letter to me dated October 8, 2021, which purports to address the positions taken by Mr. Bannon with respect to the above-referenced subpoena.

As an initial matter, your use of the word "defiance" is inappropriate. Mr. Bannon's position is not in defiance of your Committee's subpoena; rather, Mr. Bannon noted that President Trump's counsel stated that they were invoking executive and other privileges and therefore directed us not to produce documents or give testimony that might reveal information President Trump's counsel seeks to legally protect. Mr. Bannon has testified on three prior occasions, before the Mueller Investigation, the House Intelligence Committee and the Senate Intelligence Committee. In each of those instances, when President Trump waived his invocation of the executive privileges, Mr. Bannon testified.

As recently as today, counsel for President Trump, Justin Clark Esq., informed us that President Trump is exercising his executive privilege; therefore, he has directed Mr. Bannon not to produce documents or testify until the issue of executive privilege is resolved. Your Committee will have the right to challenge that exercise or its scope. That is an issue between the Committee and President Trump's counsel and Mr. Bannon is not required to respond at this time. See *Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, FN 34 (D.D.C. 2019) ("The President can certainly identify sensitive information that he deems subject to executive privilege, and his doing

**GOVERNMENT EXHIBIT 6**

**Jan. 6 Sel. Comm. 0016**

US-000423

DAVIDOFF HUTCHER & CITRON LLP

Hon, Bennie G. Thompson
October 13, 2021
Page 2

so gives rise to a legal duty on the part of the aide to invoke the privilege on the President's behalf when, in the course of his testimony, he is asked a question that would require disclosure of that information.")

Until such time as you reach an agreement with President Trump or receive a court ruling as to the extent, scope and application of the executive privilege, in order to preserve the claim of executive and other privileges, Mr. Bannon will not be producing documents or testifying.  As noted previously, Mr. Bannon will revisit his position if President Trump's position changes or if a court rules on this matter.

Mr. Bannon's communications with President Trump on the matters at issue in the Subpoena are well within the scope of both the presidential communications and deliberative process executive privileges.  See *In re Sealed Case (Espy)*, 121 F.3d 729 (D.C. Cir. 1997) (holding that the presidential communications privilege covers communications made or received by presidential advisors in the course of preparing advice for the President even if those communications are not made directly to the President); *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (finding that deliberative process privilege applies to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.")

Very truly yours,

/s/ Robert J. Costello

RJC/nc

**Jan. 6 Sel. Comm. 0017**

US-000424



BENNIE G. THOMPSON, MISSISSIPPI
CHAIRMAN

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS

U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

## One Hundred Seventeenth Congress
## Select Committee to Investigate the January 6th Attack on the United States Capitol

October 15, 2021

Mr. Robert J. Costello
Davidoff Hutcher & Citron LLP
605 Third Avenue, 34th Floor
New York, NY 10158

Dear Mr. Costello,

The Select Committee to Investigate the January 6th Attack ("Select Committee") is in receipt of your October 13, 2021 letter (the "October 13 letter"), in which you reassert that your client, Stephen Bannon, will not comply with the September 23, 2021 Subpoena to him for documents and deposition testimony (the "Subpoena"). As you know, the Subpoena demanded that Mr. Bannon produce documents by October 7, 2021 and appear on October 14, 2021 before the Select Committee to provide deposition testimony on a wide range of issues relating to the January 6, 2021 attack on the United States Capitol, as well as plans to interfere with the count of the 2020 Electoral College results. Mr. Bannon has now willfully failed to both produce a single document and to appear for his scheduled deposition. The Select Committee believes that this willful refusal to comply with the Subpoena constitutes a violation of federal law.

As justification for Mr. Bannon's complete failure to comply with any portion of the Subpoena, you continue to rely on ex-President Trump's stated intention to invoke executive privilege with respect to Mr. Bannon, and Mr. Trump's purported request that Mr. Bannon not produce documents to or testify before the Select Committee. As was explained in the Select Committee's October 8, 2021 letter (attached), the former President has not communicated any such assertion of privilege, whether formally or informally, to the Select Committee. Moreover, we believe that any such assertion of privilege—should it be made by the former President—will not prevent the Select Committee from lawfully obtaining the information it seeks.

Further, your letter makes no attempt to justify Mr. Bannon's failure to comply with the Subpoena's demand for documents and testimony on a range of subjects that do not involve communications with the former President. As is clear from the Subpoena and accompanying letter, and as underscored in the Select Committee's October 8, 2021 response letter, the Select Committee seeks documents and testimony on numerous other matters, including Mr. Bannon's

GOVERNMENT
EXHIBIT
7

**Jan. 6 Sel. Comm. 0041**
US-000448

Mr. Robert J. Costello
Page 2

communications with Members of Congress, presidential campaign representatives, and other private parties concerning the events of January 6, 2021, that could not conceivably be barred by a privilege claim.

Moreover, even if the Select Committee were inclined to accept the unsupported premise that executive privilege reaches communications that the Select Committee seeks to examine between President Trump and Mr. Bannon,[1] Mr. Bannon does not enjoy any form of absolute immunity from testifying or producing documents in response to a Congressional subpoena. Your citation to *Committee on Judiciary v. McGahn*, 415 F. Supp. 3d 148 (D.D.C. 2019) actually supports the Select Committee, not your client. In *McGahn*, the district court unequivocally held that even senior White House aides are not entitled to absolute immunity from testifying in response to a Congressional subpoena. *Id.* at 214 ("To make the point as plain as possible, it is clear to this Court ... that, with respect to senior-level presidential aides, absolute immunity from compelled congressional process simply does not exist.").[2] Indeed, the footnote in *McGahn* that you selectively quote makes clear that a President lacks legal authority to order an aide not to appear before Congress based on a claim of executive privilege. *See Id.* at 213, n. 34 ("But the invocation of the privilege by a testifying aide is an order of magnitude different than DOJ's current claim that the President essentially owns the *entirety* of a senior-level aide's testimony such that the White House can order the individual not to appear before Congress *at all*." (Emphasis in original)).

Accordingly, the Select Committee views Mr. Bannon's failure to produce documents by the October 7, 2021 deadline as willful non-compliance with the Subpoena. Mr. Bannon has persisted in his refusal to produce any documents to the Select Committee, and he has failed to provide a privilege log identifying specific, asserted privileges. Mr. Bannon has now further compounded his non-compliance by refusing to appear on October 14, 2021 at the Select Committee deposition to which he was summoned to provide testimony. The Select Committee will therefore be meeting on Tuesday, October 19, 2021 to consider invoking the contempt of Congress procedures set forth in 2 U.S.C. §§ 192, 194.

If Mr. Bannon believes that there are any additional issues relating to his non-compliance with the Subpoena that have not been addressed, please submit them in writing to the Select

---

[1] Notably, neither of the cases you cite supports the claim that communications between the former President and a private citizen may be shielded by either the presidential communications or deliberative process privilege. Indeed, the case you rely upon to support your presidential communications claim specifically held that the privilege extends only to a President's closest advisors in the White House. *In re Sealed Case (Espy)*, 121 F.3d 729, 752 (D.C. Cir. 1997). *See also Committee on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 100 (D.D.C. 2008) (privilege claimants acknowledged that executive privilege applies only to "a very small cadre of senior advisors").

[2] The *McGahn* court followed *Committee on the Judiciary v. Miers*, 558 F. Supp.2d 53, 108 (D.D.C. 2008), which reached the same conclusion 13 years ago. *McGahn*, 415 F. Supp. 3d at 202-03 ("this Court finds that the *Miers* court rightly determined not only that the principle of absolute testimonial immunity for senior-level presidential aides has no foundation in law, but also that such a proposition conflicts with key tenets of our constitutional order").

Mr. Robert J. Costello
Page 3

Committee by 6:00 p.m. E.S.T. on Monday, October 18, 2021 for the Select Committee's
consideration in its deliberations.

Sincerely,

Bennie G. Thompson
Chairman

| | |
|---|---|
| **From:** | Costello, Robert J. |
| **To:** | Amerling, Kristin |
| **Subject:** | Letter to Hon. Bennie Thompson (00934684x7F7DD).pdf |
| **Date:** | Monday, October 18, 2021 6:02:44 PM |
| **Attachments:** | Letter to Hon. Bennie Thompson (00934684x7F7DD).pdf |

Sent from my iPhone

**IMPORTANT NOTICE:**Beware of Cyber Fraud. You should never wire money to any bank account that our office provides to you via email without first speaking with our office. Further,do not accept emailed wiring instructions from anyone else without voice verification from a known employee of our office. Even if an email looks like it has come from this office or someone involved in your transaction. Please call us first at a number you know to be correct for this office to verify the information before wiring any money. Be particularly wary of any request to change wiring instructions you already received.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify us immediately by email reply to sender or by telephone to Davidoff Hutcher & Citron LLP at (800) 793-2843, ext. 3284, and destroy all copies of this message and any attachments.

IRS DISCLOSURE NOTICE
In accordance with Internal Revenue Service Circular 230, we inform you that any discussion of a federal tax issue contained in this communication (including any attachments) is not intended or written to be used, and it cannot be used, by any recipient for the purpose of (i) avoiding penalties that may be imposed on the recipient under United States federal tax laws, or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

GOVERNMENT
EXHIBIT
8

**Jan. 6 Sel. Comm. 0044**
US-000451



DAVIDOFF HUTCHER & CITRON LLP

ATTORNEYS AT LAW

605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

**FIRM OFFICES**

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605
(914) 381-7400

WEST PALM BEACH
ATTORNEYS AT LAW
1107 NORTH OLIVE AVENUE
WEST PALM BEACH, FL 33401
(561) 567-8488

**FIRM OFFICES**

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

October 18, 2021

Hon. Bennie G. Thompson
Chairman
House Select Committee to Investigate the January 6th Attack
c/o Kirstin Amerling, Esq.
1540 A Longworth HOB
Washington, DC 20515

Re:   The Subpoena for Stephen K. Bannon dated September 23, 2021

Dear Congressman Thompson:

We write on behalf of Stephen Bannon. We have just been advised of the filing of a lawsuit in federal court for the District of Columbia entitled Donald J. Trump v. Bennie Thompson, et al., 21-Civ-02769 (D.D.C. 2021). In light of this late filing, we respectfully request a one-week adjournment of our response to your latest letter so that we might thoughtfully assess the impact of this pending litigation.

Very truly yours,

/s/ Robert J. Costello

RJC/nc

**Jan. 6 Sel. Comm. 0045**
US-000452

**BENNIE G. THOMPSON, MISSISSIPPI**
**CHAIRMAN**

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
*LIZ CHENEY, WYOMING*
*ADAM KINZINGER, ILLINOIS*



U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225–7800

### One Hundred Seventeenth Congress
### Select Committee to Investigate the January 6th Attack on the United States Capitol

October 19, 2021

Mr. Robert J. Costello
Davidoff Hutcher & Citron LLP
605 Third Avenue, 34th Floor
New York, NY 10158

Dear Mr. Costello,

The Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") is in receipt of your October 18, 2021, letter requesting a one-week "adjournment" of your response to my October 15, 2021, letter. The only basis for your request is yesterday's filing of litigation by former President Trump against the Chairman, Select Committee, Archivist of the United States, and the National Archives and Records Administration. That litigation relates to the Select Committee's requests for documents in the possession of the National Archives and is immaterial to the Select Committee's demand for documents and testimony from Mr. Bannon. The investigation of the Select Committee is extremely important and urgent for the nation, and further delay in compliance by Mr. Bannon undermines the ability of the Committee to timely complete its essential responsibilities. Accordingly, no grounds exist for any "adjournment" or other delay and your request is denied.

Sincerely,

Bennie G. Thompson
Chairman

GOVERNMENT
EXHIBIT
**9**

**Jan. 6 Sel. Comm. 0048**
US-000455

BENNIE G. THOMPSON, MISSISSIPPI
CHAIRMAN

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS



U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

## One Hundred Seventeenth Congress
### Select Committee to Investigate the January 6th Attack on the United States Capitol

October 19, 2021

Mr. Robert J. Costello
Davidoff Hutcher & Citron LLP
605 Third Avenue, 34th Floor
New York, NY 10158

Dear Mr. Costello,

I write yet again to urge your client Stephen K. Bannon to change course and comply with the September 23, 2021, subpoena from the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee").

As explained in our prior correspondence, your stated reasons for Mr. Bannon's flat refusal to provide documents and appear at a deposition have no legal basis or support. Because of Mr. Bannon's continued refusal to comply with the subpoena, the Select Committee has unanimously voted to recommend that the House of Representatives find Mr. Bannon to be in contempt of Congress. The detailed basis for that recommendation is contained in the Select Committee's report, a copy of which is available at the following link: https://docs.house.gov/Committee/Calendar/ByEvent.aspx?EventID=114156. Should the House of Representatives agree with that recommendation, the Speaker of the House will certify the relevant statement of facts to the United States Attorney for the District of Columbia, "whose duty it shall be to bring the matter before the grand jury for its action." *See* 2 U.S.C. § 194.

Additionally, President Biden's recently communicated views relating to your client's reliance on executive privilege as a basis for his non-compliance provide further support for the Select Committee's position. As you know, in its October 18, 2021, letter, the Office of the White House Counsel concluded that "at this point we are not aware of any basis for [Mr. Bannon's] refusal to appear for a deposition." The letter further noted that President Biden has "already determined that an assertion of executive privilege is not in the public interest, and therefore is not justified, with respect to certain subjects within the purview of the Select Committee." In short, the current President's statements should remove any doubt regarding the inappropriateness of Mr. Bannon's reliance on assertions of executive privilege as grounds for his noncompliance with the subpoena. Mr. Bannon has no basis in law to continue to defy the appropriate use of congressional subpoena authority.

**Jan. 6 Sel. Comm. 0050**
US-000457

Mr. Robert J. Costello
Page 2

These developments underscore the folly of any continuing defiance of the Select Committee subpoena by Mr. Bannon. The Select Committee remains focused on expeditiously obtaining the testimony and documents necessary to meet our responsibilities and we continue to expect immediate compliance by Mr. Bannon. Should Mr. Bannon choose to change his posture, please notify Select Committee staff at 202-225-7800.

Sincerely,

Bennie G. Thompson
Chairman

 **Steve Bannon** ✔ @SteveBannon · Sep 24    · · ·
The Bannon Subpoena Is Just the Beginning. Congress's Jan. 6 Investigation Is Going Big



The Bannon Subpoena Is Just the Beginning. Congress's Jan. 6 Investi...

Records and exclusive documents obtained by 'Rolling Stone' reveal the massive scope of the House select committee probe

⊖ www.rollingstone.com

💬 271    👍 1.8K    🔁 503


GOVERNMENT EXHIBIT
10



**Steve Bannon** ✔ @SteveBannon · Oct 8

Steve Bannon tells the January 6 select committee that he will NOT comply with their subpoena.

...



### Steve Bannon: 'I stand with Trump and the Constitution'

Steve Bannon on Friday said he stood solidly with former President Trump and will not be cooperating with its investigation into the Jan...

(-) www.dailymail.co.uk

🗨 383    👍 4.2K    🔁 1.1K



# Steve Bannon says 'I stand with Trump' as he tells Jan 6 committee he will NOT comply with subpoena

dailymail.co.uk/news/article-10073407/Steve-Bannon-says-stand-Trump-tells-Jan-6-committee-NOT-comply-subpoena.html

Rob Crilly                                                                                          October 8, 2021



## EXCLUSIVE 'I stand with Trump': Steve Bannon tells the January 6 select committee that he will NOT comply with their subpoena because the former president has 'executive privilege'

- **Steve Bannon's lawyer tells House committee he will not comply with subpoena**
- **'I stand with Trump and the Constitution,' said former White House strategist**
- **Lawmakers had asked him for documents and testimony on the Jan. 6 attack**
- **But his lawyer, Robert Costello, said Trump's 'executive privilege' meant that Bannon was unable to comply**
- **It sets up a possible legal challenge to force Bannon and other aides to testify**
- **The committee said it would consider criminal contempt proceedings**

By Rob Crilly, Senior U.S. Political Reporter For Dailymail.Com

Published: 13:04 EST, 8 October 2021 | Updated: 18:02 EST, 10 October 2021

-
-



GOVERNMENT
EXHIBIT
**11B**

1/7

-4853-

- e-mail
- 

**656** shares

714

View
comments

Former White House strategist Steve Bannon on Friday said he stood solidly with former President Trump and will not be cooperating with its investigation into the Jan. 6 attack on the U.S. Capitol.

'I stand with Trump and the Constitution,' he told DailyMail.com.

Bannon was one of four former officials that the House Jan. 6 committee subpoenaed to provide documents and testimony as they investigate the violence that engulfed the Capitol after a Trump rally nearby.

All four were told by the former president's attorney on Wednesday that he planned to defend himself against what he viewed as an infringement of 'executive privilege.'

In a letter sent to the committee, seen by DailyMail.com, Bannon's lawyer wrote that he would honor Trump's claim.

'It is therefore clear to us that since the executive privileges belong to President Trump, and he has, through his counsel, announced his intention to assert those executive privileges... we must accept his direction and honor his invocation of executive privilege,' writes Bannon's attorney Robert Costello, who also represents Rudy Giuliani.

'As such, until those issues are resolved, we are unable to respond to your requests for documents and testimony.'

2/7





-4855-

Former White House strategist Steve Bannon said, 'I stand with Trump and the Constitution' on Friday as his lawyer wrote to the House committee investigating the Jan. 6 violence to tell lawmakers that he would not comply with their subpoena



**DAVIDOFF HUTCHER & CITRON LLP**
ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL:
FAX
WWW.DHCLEGAL.COM

FIRM OFFICES

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605

WEST PALM BEACH
ATTORNEYS AT LAW
1107 NORTH OLIVE AVENUE
WEST PALM BEACH, FL 33401

FIRM OFFICES

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002

October 7, 2021

Kristin Amerling, Esq.
Chief Counsel/Deputy Staff Director
House Select Committee to Investigate
The January 6th Attack on the United States Capitol

Re:    The Subpoena for Stephen K. Bannon dated September 23, 2021

Dear Ms. Amerling:

I write today on behalf of Stephen K. Bannon with respect to the above referenced subpoena, which I accepted on behalf of Mr. Bannon. On the afternoon of October 6, 2021, I received a letter from Justin Clark, as counsel for then President of the United States Donald J. Trump. That letter references the subpoena that your Committee served upon Mr. Bannon, and notes that the subpoena:

"seeks records and testimony purportedly related to the events of January 6th, 2021, including but not limited to information which is potentially protected from disclosure by executive and other privileges, including among others the presidential communications, deliberative process, and attorney-client privileges. President Trump is prepared to defend these fundamental privileges in court.

Therefore, to the fullest extent permitted by law, President Trump instructs Mr. Bannon to: (a) where appropriate, invoke any immunities and privileges he may have from compelled testimony in response to the Subpoena; (b) not produce any documents concerning privileged material in response to the Subpoena; and (c) not provide any testimony concerning privileged material in response to the Subpoena."

It is therefore clear to us that since the executive privileges belong to President Trump, and he has, through his counsel, announced his intention to assert

4/7

DAVIDOFF HUTCHER & CITRON LLP

Kristin Amerling, Esq.
October 7, 2021
Page 2

those executive privileges enumerated above, we must accept his direction and honor his invocation of executive privilege. As such, until these issues are resolved, we are unable to respond to your request for documents and testimony.

We will comply with the directions of the courts, when and if they rule on these claims of both executive and attorney client privileges. Since these privileges belong to President Trump and not to Mr. Bannon, until these issues are resolved, Mr. Bannon is legally unable to comply with your subpoena requests for documents and testimony.

Very truly yours,

/s/ Robert J. Costello

RJC/nc
None

Bannon's lawyer said that his client was unable to respond to the request for testimony because of Trump's claim of executive privilege

The letter goes on to say that Bannon will comply with the direction of any court ruling on claims of executive privilege.

'Since these privileges belong to President Trump and not to Mr. Bannon, until these issues are resolved, Mr. Bannon is legally unable to comply with your subpoena requests for documents and testimony,' it concludes.

Costello is a former deputy chief of the criminal division for the U.S. Attorney's Office in the Southern District of New York.

He also represents Trump aide and former New York City Mayor Rudy Giuliani in investigations about his business dealings.

The letter sets the stage for a legal challenge to force Bannon to testify.

And it sets up a likely clash with House Democrats, who are investigating the role of Trump and his associates in the build up to the riot.

The committee responded by warning of criminal proceedings.

'We will not allow any witness to defy a lawful subpoena or attempt to run out the clock, and we will swiftly consider advancing a criminal contempt of Congress referral,' said its Chairman Bennie Thompson and Vice Chair Liz Cheney.

5/7

Last month the committee issued subpoenas to Bannon; Mark Meadows, former White House chief of staff; Dan Scavino, Trump's social media wizard and former deputy chief of staff for communications; and Kash Patel, a former Defense Department official.

In its letter to Bannon, the committee wrote: 'You have been identified as present at the Willard Hotel on Jan. 5, 2021 during an effort to persuade members of Congress to block the certification of the Election the next day, and in relation to other activities on Jan. 6.'



© AFP/Getty Images

Bannon spent eight months as White House strategist. He now runs the War Room podcast

It also pointed out that he told listeners of his War Room podcast on Jan. 5 that 'all hell is going to break loose tomorrow.'

For Scavino, the committee referenced tweets sent by Trump's former social media lead and asked him to turn over video recordings of the president's message to supporters telling them to go home as the violence unfolded.

The deadline for them to respond was midnight on Thursday.

Lawmakers believe they can win a challenge over executive privilege as Trump is no longer in office and some of those subpoenaed were no longer working for him on Jan. 6.

Trump himself railed against what he called a partisan investigation this week.

-4858-

'The Unselect Committee of partisan Democrats, and two very weak and pathetic RINOs, should come to the conclusion after spending many millions of dollars, that the real insurrection happened on November 3rd, the Presidential Election, not on January 6th - which was a day of protesting the Fake Election results,' the ex-president claimed in an interview with Sean Hannity.

## Share or comment on this article:

- 
- 
- 
- 
- 
- e-mail
- 
- 656

  shares

**Add your comment**



## Comments 714

Share what you think

  View all
The comments below have not been moderated.

  View all
The views expressed in the contents above are those of our users and do not necessarily reflect the views of MailOnline.

We are no longer accepting comments on this article.

-4859-