**[ORAL ARGUMENT HAS NOT BEEN SCHEDULED]**

*In The*

# United States Court Of Appeals
## For The D.C. Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## STEPHEN K. BANNON,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————

## BRIEF OF APPELLANT

———————

David I. Schoen
LAW OFFICE OF
  DAVID I. SCHOEN
2800 Zelda Road
Suite 100-6
Montgomery, AL  36106
(334) 395-6611

*Counsel for Appellant*

**Gibson Moore Appellate Services, LLC**
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA  23219
804-249-7770 ♦ www.gibsonmoore.net

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>
## <u>(CIRCUIT RULE 28(A)(1))</u>

**Parties and Amici:**

The following parties and *amici* have appeared in this case:

1.  Stephen K. Bannon, Defendant/Appellant;

2.  House Minority Leadership, *Amici;*

3.  United States of America, Appellee;

4.  United States House of Representatives, *Amici*.

**Rulings Under Review: (District Court Judge:  Hon. Carl J. Nichols)**

April 6, 2022 Order granting Government's Motion to in Limine to Exclude Evidence or Argument Relating to Good-Faith Reliance on Law or Advice of Counsel (A741).  *U.S. v. Bannon,* 2022 U.S. Dist. LEXIS 132863, 2022 WL 2900620 (D.D.C., April 6, 2022);

June 15, 2022 Oral Order denying Defendant's Motion to Dismiss the Indictment (A2341-2358).  No reported citation exists;

July 11, 2022 Oral Order granting, *inter alia* the Government's Omnibus Motion in Limine, barring the defenses of entrapment by estoppel, public authority, and reliance on OLC Opinions, granting motion to quash trial subpoenas, barring challenges to the validity of the subpoena, etc. (A2879-3030). No reported citation exists; July 27, 2022 Order denying motion for judgment of acquittal.  (A4593). No reported citation exists;

September 2, 2022 Order denying motion for new trial and supplement to motion to dismiss.  (A4682).  No reported citation exists;

July 21, 2022 Oral Order on, *inter alia*, jury instructions.  (A4360-4383). No reported citation exists;

October 21, 2022 Judgment.  (A4767).  No reported citation exists;

*S*ee also references to rulings in the Brief.

## STATEMENT OF RELATED CASES

There are no related cases, other than the case consolidated for appeal with the main case. *See* November 21, 2022 Minute Order consolidating 22-mc-60 with 1:21-cr-00670-CJN-1 for appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Bannon respectfully submits that oral argument is both necessary and appropriate in this case. There are important constitutionally significant issues at stake and oral argument concerning those issues should benefit the Court. Among other issues, this appeal asks the Court to reconsider or modify its decision in *Licavoli v. U.S.*, 294 F.2d 207 (D.C. Cir. 1961) and the factors surrounding that issue make oral argument especially appropriate. Indeed, in its oral sentencing Order, the district court identified four arguments that raise "substantial questions" for appeal (A4763) and in granting bail pending appeal, the district court expressly found that this appeal "raises a substantial question of law that is likely to result in a reversal or an order for a new trial." (A4779)

# **TABLE OF CONTENTS**

**Page:**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES...............i

STATEMENT OF RELATED CASES ................................................... ii

STATEMENT REGARDING ORAL ARGUMENT.............................. iii

TABLE OF CONTENTS.......................................................................iv

TABLE OF AUTHORITIES ................................................. vii

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

STATUTES AND REGULATIONS........................................................1

STATEMENT OF THE CASE..............................................................2

    Nature of the Case and Relevant Procedural History.....................................2

    Statement of the Facts Relevant to the Issues Presented for Review..............6

        Relevant Facts .................................................................6

SUMMARY OF THE ARGUMENT ....................................................9

ARGUMENT .................................................................................11

    Standard of Review ..................................................................11

    THE LOWER COURT'S DECISIONS EXCLUDING MR.
BANNON'S DEFENSES VIOLATED HIS RIGHTS UNDER THE
5TH AND 6TH AMENDMENTS TO THE UNITED STATES
CONSTITUTION ...........................................................................12

        The Court's Construction Of "Willfully" And Associated
Rulings Require A New Trial.............................................................12

iv

The Court's Decision Cannot Be Reconciled With The Relevant United States Supreme Court Jurisprudence On "Willfully." .............................................................................17

The Court's Decision Cannot Be Reconciled With Decisions From This Circuit And Others ...........................................21

The Lower Court's Definition of "Willfully" Renders the Statute Unconstitutional as Applied ....................................23

The Statute As Applied Violates The Constitutional Separation Of Powers Doctrine ...............................................25

The Statute As Applied Is Unconstitutionally Overbroad And Void For Vagueness ...............................................26

The Court Erred In Barring The Use Of OLC Opinions.....................30

OLC Opinions Are Binding, Authoritative Statements Reflecting The Official Policy Of The Department Of Justice...........30

The Fair Notice Requirement of Due Process Requires Reversal ......31

The Court Erred in Barring Defenses of Entrapment By Estoppel And Public Authority ..........................................36

     Entrapment by Estoppel ............................................36

     Public Authority .......................................................38

     Apparent Authority ...................................................39

     The Government Should Have Been Estopped From Prosecuting The Case ................................................40

THE LOWER COURT'S DECISION GRANTING THE MOTION TO QUASH TRIAL SUBPOENAS VIOLATED MR. BANNON'S RIGHTS UNDER THE 5TH AND 6TH AMENDMENTS ............................41

THE LOWER COURT ERRED IN DENYING THE MOTION TO DISMISS THE INDICTMENT AND IN REFUSING TO ALLOW MR. BANNON TO MAKE ARGUMENTS REGARDING THE SUBPOENA'S VALIDITY ........................................................................48

    The Subpoena Was Not Lawfully Issued............................................49

    The Composition Of The Select Committee Invalidates The Subpoena ...........................................................................................50

    The Subpoena Was A Misguided And Unconstitutional Effort To Make An Example Of Mr. Bannon................................................52

    Bannon's Objections To The Subpoena Were Not Waived ..............54

CONCLUSION ........................................................................................56

CERTIFICATE OF COMPLIANCE......................................................57

CERTIFICATE OF SERVICE ...............................................................58

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Ansara v. Eastland,*
  442 F.2d 751 (D.C. Cir. 1971)..................................................24, 29, 45

*Barenblatt v. U.S.,*
  360 U.S. 109 (1959)..............................................................24, 29, 45

*Bryan v. U.S.,*
  524 U.S. 184 (1998)............................................................16, 17, 21, 22

*Calautti v. Franklin,*
  439 U.S. 379 (1979)........................................................................27

*California v. Trombetta,*
  467 U.S. 479 (1984)........................................................................12

*Carter v. U.S.,*
  530 U.S. 255 (2000)........................................................................19

*Casa de Maryland v. U.S. Dep't of Homeland Sec.,*
  924 F.3d 684 (4th Cir. 2019) ...........................................................30

*Chambers v. Mississippi,*
  410 U.S. 284 (1973)....................................................................11, 46

*Cheney v. U.S. Dist. Court for D.C.,*
  542 U.S. 367 (2004)........................................................................45

*Christoffel v. U.S.,*
  338 U.S. 84 (1949).....................................................................49, 50

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice,*
  922 F.3d 480 (D.C. Cir. 2019)...........................................................30

*Comm. on the Judiciary of the U.S. House of Representatives v. McGahn,*
  968 F.3d 755 (D.C. Cir. 2020).......................................................33, 45

*Cox v. Louisiana,*
    379 U.S. 559 (1965)...................................................................36, 37

*Crane v. Kentucky,*
    476 U.S. 683 (1986)...................................................................12, 46

*Elonis v. U.S.,*
    575 U.S. 723 (2015)...................................................................18, 19, 20

*Exxon Corp. v. FTC,*
    589 F.2d 582 (D.C. Cir. 1978)....................................................50

*Felton v. U.S.,*
    96 U.S. 699 (1878).....................................................................16

*Gojak v. U.S.,*
    384 U.S. 702 (1966)...................................................................54

*Gravel v. U.S.,*
    408 U.S. 606 (1972)...................................................................44

*Greenwell v. U.S.,*
    115 U.S. App. D.C. 44 (1963).....................................................46

*Heikkinen v. U.S.,*
    355 U.S. 273 (1958)...................................................................16

*INS v. Chadha,*
    462 U.S. 917 (1983)...................................................................14

*Jencks v. U.S.,*
    353 U.S. 657 (1957)...................................................................47, 48

*Kilbourn v. Thompson,*
    103 U.S. 168 (1880)...................................................................50, 52

*Kolender v. Lawson,*
    461 U.S. 352 (1983)...................................................................26

*Kotteakos v. U.S.,*
    328 U.S. 750 (1946) ..................................................................11

*Lanzetta v. New Jersey*,
    306 U.S. 451 (1939)....................................................................27

*Licavoli v. U.S.*,
    294 F.2d 207 (D.C. Cir. 1961)............................ iii, 10, 13, 15, 17

*Liveright v. U.S.*,
    347 F.2d 473 (D.C. Cir. 1965)...................................................54

*McGrain v. Daugherty*,
    273 U.S. 135 (1927)..................................................................52

*McSurely v. McClellan*,
    553 F.2d 1277 (1976) ...............................................................45

*Morissette v. U.S.*,
    342 U.S. 246 (1952)............................................................18, 20

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976)..................................................................46

*Nixon v. Adm'r of General Services*,
    433 U.S. 425 (1977)............................................................26, 34

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982)..................................................................52

*NLRB v. Sears Roebuck & Co.*,
    421 U.S. 132 (1975)..................................................................30

*Raley v. State of Ohio*,
    360 U.S. 423 (1959)......................................................28, 32, 36, 37

*Ratzlaf v. U.S.*,
    510 U.S. 135 (1994)............................................................16, 17

*Rehaif v. U.S.*,
    588 U.S. ___, 139 S. Ct. 2191, 204 L. Ed. 2d 594 (2019) .......18, 19, 20, 21, 22

*Rock v. Arkansas*,
    483 U.S. 44 (1987) ...................................................................11

*Roviario v. U.S.*,
    353 U.S. 53 (1957)................................................................43, 48

*Ruan v. U.S.*,
    142 S. Ct. 2370, 213 L. Ed. 2d 706 (June 27, 2022) ....................................18

*Russell v. U.S.*,
    369 U.S. 749 (1962)..............................................................12, 54, 55

*Senate Select Committee on Presidential Campaign Activities v. Nixon*,
    498 F.2d 725 (D.C. Cir. 1974) ........................................................34

*Tobin v. U.S.*,
    306 F.2d 270 (D.C. Cir. 1962)......................................................24, 29, 45

*Trump v. Mazars USA, LLP*,
    140 S. Ct. 2019 (2020)), *injunction denied*,
    142 S. Ct. 680 (Jan. 19, 2022), *cert. denied*,
    No. 21-932 (Feb. 22, 2022) ....................................24, 25, 28, 45, 52

*Trump v. Thompson*,
    142 S. Ct. 680; 211 L. Ed. 2d 579 (January 19, 2022),
    *denial of certiorari*; 142 S. Ct. 680 (Jan. 19, 2022) ................................34, 41

*Trump v. Thompson,*
    20 F.4th 10 (D.C. Cir. 2021) ..........................................................53

*U.S. v. American Tel. & Tel. Co.*,
    567 F.2d 121 (D.C. Cir. 1977)........................................................45

*U.S. v. AT&T*,
    567 F.2d 121 (D.C. Cir. 1977) ......................................................29

*U.S. v. Baker*,
    438 F.3d 749 (7th Cir. 2006) ........................................................38

*U.S. v. Ballin*,
    144 U.S. 1 (1892)........................................................................49

*U.S. v. Bannon,*
2022 U.S. Dist. LEXIS 132863,
2022 WL 2900620 (D.D.C., April 6, 2022) ...................................................... i

*U.S. v. Baptista-Rodriguez,*
17 F.3d 1354 (11th Cir. 1994) ...................................................................... 39

*U.S. v. Barker,*
546 F.2d 940 (D.C. Cir. 1976) ....................................................................... 39

*U.S. v. Burden,*
934 F.3d 675 (D.C. Cir. 2019) ................................................................ 21, 22

*U.S. v. Cooper,*
4 Dall. 341 (1800) ......................................................................................... 44

*U.S. v. David Rainey,*
12-CR-00291 (E.D. La. Jul. 14, 2015) ......................................................... 43

*U.S. v. Davis,*
139 S. Ct. 2319 (2019) ................................................................................. 26

*U.S. v. DeFries,*
129 F.3d 1293 (D.C. Cir. 1997) .............................................................. 15-16

*U.S. v. Fernandez,*
913 F.2d 148 (4th Cir. 1990) ....................................................................... 43

*U.S. v. Fulcher,*
250 F.3d 244 (4th Cir. 2001) ....................................................................... 39

*U.S. v. House of Representatives,*
556 F. Supp. 150 (D.D.C. 1983) ............................................................ 29, 45

*U.S. v. Johnson,*
383 U.S. 169 (1966) ...................................................................................... 44

*U.S. v. Johnson,*
944 F.2d 980 (2d Cir.), *cert. denied,*
126 L. Ed. 2d 364, 114 S. Ct. 418 (1993) ................................................... 12

*U.S. v. Kukushkin*,
    2023 U.S. App. LEXIS 5493 (2d Cir., March 8, 2023) ...............................22

*U.S. v. Lamont*,
    18 F.R.D. 27 (S.D.N.Y.1955), *aff'd*,
    236 F.2d 312 (C.A. 2d Cir. 1956)................................................................55

*U.S. v. Lathern*,
    488 F.3d 1043 (D.C. Cir. 2007)..................................................................11

*U.S. v. Levin*,
    973 F.2d 463 (6th Cir. 1992) ......................................................................32

*U.S. v. Nixon*,
    418 U.S. 683 (1974)..............................................................25, 26, 34, 45

*U.S. v. Nobles*,
    422 U.S. 225 (1975)....................................................................................25

*U.S. v. Pennsylvania Industrial Chemical Corp.*,
    461 F.2d 468 (3d Cir. 1972), *modified and remanded*,
    411 U.S. 655 (1973)........................................................................32, 37, 38

*U.S. v. Pitt*,
    193 F.3d 751 (3d Cir. 1999) ........................................................................39

*U.S. v. Reyes-Vasquez*,
    905 F.2d 1497 (11th Cir. 1990)...................................................................39

*U.S. v. Reynolds*,
    345 U.S. 1 (1953)........................................................................................48

*U.S. v. Scheffer*,
    523 U.S. 303 (1998) ....................................................................................11

*U.S. v. Singh*,
    979 F.3d 697 (9th Cir. 2020) ......................................................................22

*U.S. v. Smith,*
    286 U.S. 6 (1932)........................................................................................49

*U.S. v. Stevens*,
    569 U.S. 460 (2010)..................................................................27

*U.S. v. Stevens*,
    771 F. Supp. 2d 556 (D. Md. 2011)............................................15

*U.S. v. U.S. House of Representatives*,
    556 F. Supp. 150 (D.D.C. 1983)............................................ 23-24

*U.S. v. Viola*,
    2017 U.S. Dist. LEXIS 117055;
    2017 WL 3175930 (W.D. La., July 26, 2017)..............................31

*U.S. v. West*,
    393 F.3d 1302 (D.C. Cir. 2005)..................................................11

*U.S. v. Wilson*,
    605 F.3d 985 (D.C. Cir. 2010)....................................................11

*U.S. v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994)....................................................................21

*U.S. v. Zeese*,
    437 F. Supp. 3d 86 (D.D.C. 2020)..............................................22

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)..................................................................27

*Washington v. Texas*,
    388 U.S. 14 (1967) ..............................................................11, 46

*Watkins v. U.S.*,
    354 U.S. 178 (1957)..............................................................53, 55

*Welsh v. U.S.*,
    404 F.2d 414 (5th Cir. 1968) ....................................................46

*Yellin v. U.S.*,
    374 U.S. 109 (1963)..............................................................49, 54

**Statutes:**

2 U.S.C. § 192 ................................... 2, 12, 16, 22, 23, 24, 27, 31, 33, 41, 49, 54, 55

18 U.S.C. § 192 ........................................................................................10, 13

18 U.S.C. § 3231 .................................................................................................1

28 U.S.C. § 1291 .................................................................................................1

Model Penal Code § 2.04(3)(b) ........................................................36, 40

**Constitutional Provisions:**

U.S. Const. amend I ........................................................................................52

U.S. Const. amend V...................................... 1, 9, 12, 30, 36, 38, 41, 42, 43, 47, 51

U.S. Const. amend VI ............................. 1, 9, 12, 30, 36, 38, 41, 42, 43, 46, 47, 51

U.S. Const. art. I § 5.......................................................................................49

**Rules:**

Fed. R. Crim. P. 12.3......................................................................................3, 4

Fed. R. Crim. P. 30(b)........................................................................51, 52, 56

Fed. R. Crim. P. 30(d)......................................................................................51

**Other Authorities:**

*Attempted Exclusion of Agency Counsel from*
*Congressional Depositions of Agency Employees*,
   2019 WL 2563045 (O.L.C.) (May 23, 2019)....................................35

Black's Law Dictionary
   (11th ed. 2019) .............................................................................18

F. Sayre, Cases on Criminal Law
   (R. Pound ed. 1927) .....................................................................18

Floyd D. Shimomura, *Federal Misrepresentation:*
*Protecting the Reliance Interest,*
    60 Tul. L. Rev. 596 (1986) ........................................................ 32-33

H. Res. 8 ............................................................................................51

H. Res. 503 .................................................................49, 50, 51

https://aguilar.house.gov/2021/11/13/aguilar-issues-statement-grand-jury-indictment-steve-bannon/ ................................................................42

https://thehill.com/homenews/3529123-raskin-pence-was-a-hero-on-jan-6-for-resisting-pressure-campaigns-and-coercive-efforts/ ...............42

https://twitter.com/RepAdamSchiff/status/1450612312407257089 .....................42

https://twitter.com/RepElaineLuria/status/1514430760996024321?ref_src=twsrc%5Etfw ........................................................42

https://twitter.com/repstephmurphy/status/1466224521371914243 ..........................42

https://twitter.com/repzoelofgren/status/1508574278207393795 ...........................42

https://www.congress.gov/116/meeting/house/110281/documents/HHRG-116-JU00-20191204-SD1222.pdf ...........................................35

https://www.govinfo.gov/content/pkg/GPO-HPRACTICE-115/pdf/GPO-HPRACTICE-115.pdf ....................................................49

https://www.govinfo.gov/content/pkg/HMAN-117/pdf/HMAN-117.pdf ..............49

https://www.justice.gov/opinion/file/832851/download ...........................31

https://www.justice.gov/sites/default/files/olc/legacy/2010/08/26/olc-legal-advice-opinions.pdf ...............................................................31

https://www.republicanleader.gov/mccarthy-statement-about-pelosi-abuse-of-power-on-january-6th-select-committee/ ....................................50

https://www.speaker.gov/newsroom/7212-2 ...........................................50

Kimberly Wehle, *The Case for Subpoenaing Members of Congress to Testify on the January 6 Insurrection: Democrats have strong constitutional arguments on their side,*
    THE ATLANTIC (Aug. 26, 2021) ..........................................................................47

SueAnn D. Billimack, *Reliance on an Official Interpretation of the Law: The Defense's Appropriate Dimensions,*
    1993 U. Ill. L. Rev. 565 (1993)................................................................. 32-33

*Whether the Department of Justice May Prosecute White House Officials for Contempt of Congress* (February 29, 2008) .......................................31

YOUTUBE, *Watch: Jan. 6 House Select Committee Holds First Hearing On Capitol Riot* (July 27, 2021),
https://www.youtube.com/watch?v=vHrt44ANHIA ...............................................47

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. §1291 over this appeal from the district court's October 21, 2022, judgment of conviction and sentence (A4767). A timely notice of appeal was filed on November 4, 2022 (A4772). On November 11, 2022, the district court entered a Minute Order consolidating for appeal 22-mc-60 with 1:21-cr-00670-CJN-1 (A23). The district court had jurisdiction over this case under 18 U.S.C. §3231.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.    **THE LOWER COURT'S DECISIONS EXCLUDING MR. BANNON'S DEFENSES VIOLATED HIS RIGHTS UNDER THE 5TH AND 6TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

II.   **THE LOWER COURT'S DECISION GRANTING THE MOTION TO QUASH TRIAL SUBPOENAS VIOLATED MR. BANNON'S RIGHTS UNDER THE 5TH AND 6TH AMENDMENTS.**

III.  **THE LOWER COURT ERRED IN DENYING THE MOTION TO DISMISS THE INDICTMENT AND IN REFUSING TO ALLOW MR. BANNON TO MAKE ARGUMENTS REGARDING THE SUBPOENA'S VALIDITY.**

## STATUTES AND REGULATIONS

Relevant statutes, rules, and constitutional provisions are in the Addendum.

Circuit Rule 28(a)(5)

## STATEMENT OF THE CASE

**Nature of the Case and Relevant Procedural History**

This appeal is from the judgment of conviction and sentence entered in this case, following a jury trial in the United States District Court for the District of Columbia, on a November 11, 2021, indictment charging Mr. Bannon with two misdemeanor counts of contempt of Congress, in alleged violation of 2 U.S.C. §192 (A37).

Mr. Bannon's initial appearance was on November 15, 2021 (A46). He was arraigned on November 18, 2021 (A59). On February 4, 2022, Mr. Bannon filed motions to compel the disclosure of the government's efforts to obtain his attorney's telephone and email records (ECF# 26) and to compel discovery (A158). The government filed a motion *in limine* to exclude evidence of argument relating to good-faith reliance on law or advice of counsel (A311).

On February 25, 2022, Mr. Bannon filed his opposition to the government's motion *in limine* to exclude advice of counsel (A329). The government filed its opposition to the motion to compel the disclosure of the government's efforts to obtain defense counsel's records and its opposition to the motion to compel discovery (ECF# 31). On March 8, 2022, Mr. Bannon filed his reply on his motion to compel discovery (A371) and on the motion concerning defense counsel's

records (ECF# 34).[1]  The government filed its reply on its motion to exclude evidence of good-faith reliance on law or advice of counsel (A390).  The parties made additional filings concerning defense counsel's records (ECF## 36, 38).  On March 16, 2022, the court heard oral argument on the outstanding motions (A457).

Mr. Bannon filed a surreply to the government's reply on its motion to exclude evidence of good-faith reliance on law or advice of counsel (A556), and then the supplements and responses and replies on the motion, at the court's invitation (A565, A722, A725, A735).  On April 6, 2022, the Court entered its Order granting the government's motion to exclude evidence of good-faith reliance on law or advice of counsel (A741).

On April 15, 2022, the government filed motions *in limine* to Exclude Evidence of Department of Justice Opinions and Writings (A745), to Exclude Evidence Relating to Objections the Defendant Waived (A771), and to Exclude Evidence of the Defendant's Prior Experience with Subpoenas (A792).  Mr. Bannon filed Notice under Rule 12.3, Federal Rules of Criminal Procedure, of his intention to rely on a Public-Authority defense (A798), a motion to Exclude Evidence (the email and telephone records of Mr. Bannon's attorney obtained by the government) (A800), and a motion to Dismiss the case (A807; A1629).

---

[1] The Court indicated that it would address the government's conduct in obtaining defense counsel's personal records and associated action after the trial (A2357-2358; A3015).  The matter is still pending (ECF# 182).

On April 29, 2022, the government filed a response to the Rule 12.3 notice (A1695) and on May 6, 2022, Mr. Bannon filed responses to the government's three motions (A1698; A1709; A1720) and the government filed a response to the Motion to Dismiss (A1745) and to the motion to exclude evidence from defense counsel's records (A1806). On May 17, 2022, the parties filed replies in further support of their motions (A1812; A1818; A1837; A1846; A1855).

Also in May, *amicus* briefs were filed on behalf of the United States House of Representatives and the House Minority Leadership (A2009; A2050).

On June 13, 2022, members of Congress and staffers who had been subpoenaed by Mr. Bannon for trial filed a motion to quash the subpoenas (A2072).  Mr. Bannon filed his response to the motion to quash on June 27, 2022 (A2597).  Movants filed their reply on July 6, 2022 (A2796).  On June 15, 2022, the court held a hearing on the outstanding motions (A2229). Additional motions, responses, and replies were filed, including the government's Omnibus Motion *in Limine* and reply (A2408; A2863)), Mr. Bannon's opposition to it (A2781), his Motion to Compel Meadows & Scavino Declination Discovery and Reply (A2425; 2842), his opposition to the Motion to Quash the trial subpoenas (A2597), a Reply on the Motion to Quash (A2796), and the government's opposition to the Motion to Compel (A2694).  The subpoenaed parties filed their reply on their Motion to Quash (A2796).  The government filed a motion to bar Mr. Bannon from putting

on evidence concerning former President Trump's waiver of executive privilege and Mr. Bannon's willingness after that to comply with the subpoena and a response and reply were filed (A2874; A3071; A3106).

Hearings were held on various motions on July 11, 2022 (A2879 (denying motion to dismiss) and July 14, 2022 (A3127). Mr. Bannon filed a motion to Exclude Congressional Evidence of Dismiss the Indictment Based on Granting the Motion to Quash the trial subpoenas and a response and reply were filed (A3192; A3303; A3374) and he filed a Motion to Exclude Hearsay Evidence (3386).

Both sides filed their proposed jury instructions and objections to the other side's proposed instructions (A2701; A2768; A3308; A3310; A3316; A4422; A4435).

The jury trial was conducted from July 18, 2022 to July 22, 2022 (A3393-4295; A4438), resulting in a guilty verdict (A4592). Mr. Bannon filed a Motion for Judgment of Acquittal (A4289) and at the court's invitation, supplemental pleadings were filed concerning the consequences of granting the motion to quash the trial subpoenas (A4600; A4634; A4649). Mr. Bannon filed a motion for a new trial (A4617) and an opposition and reply were filed (A4657; A4676). The motion was denied (A4682). The sentencing hearing was held on October 21, 2022, with Mr. Bannon sentenced to 4 months incarceration and a fine of $6500 (A4687; A4787). At sentencing, the court expressly noted multiple issues in the case that raise substantial questions, justifying bail pending appeal (A4763). The court ordered that Mr.

Bannon remain free pending appeal, that this appeal "raises a substantial question of law that is likely to result in a reversal or an order for a new trial." (A4779).

**Statement of the Facts Relevant to the Issues Presented for Review:**

<u>**Relevant Facts**</u>

On September 23, 2021, a staff member of the House January 6th Committee asked Robert J. Costello, Mr. Bannon's attorney, whether he would accept service of a subpoena for Mr. Bannon. He agreed. The Committee emailed the subpoena and attachments to Mr. Costello (A782-783). At all times all communication to and from the Committee regarding the subpoena was with Mr. Costello. At no time was there any contact between the Committee and Mr. Bannon. (A359-372)

On October 5, 2021, Justin Clark, counsel to former President Donald J. Trump, telephoned Costello and advised him that President Trump was invoking executive privilege with respect to the subpoena to Mr. Bannon. On October 6, 2021, Mr. Costello received a letter from Mr. Clark, confirming the "vigorous()" executive privilege invocation. (A335).

Upon receipt of this letter from President Trump's counsel, Costello advised Mr. Bannon that he (Bannon) did not have the ability to waive executive privilege and he did not have the ability to discern what documents or communications were privileged, since that authority belonged to former President Trump (A359-372). Costello further advised Bannon that he should not provide documents or testify in

response to the subpoena, because Bannon must be guided by President Trump's invocation of privilege, pending an accommodation between the Select Committee and former President Trump, or a judicial resolution of the matter (*Id*.). Costello directed Bannon not to respond to the subpoena. (*Id*.).

Costello advised Mr. Bannon that based upon legal authority in binding authoritative opinions published by the U.S. Department of Justice Office of Legal Counsel (OLC), Mr. Bannon did not have to appear or produce documents in response to the Select Committee subpoena. Costello advised that the subpoena was unconstitutional and a nullity because the Select Committee had confirmed that it would prohibit counsel for President Trump from being present at the deposition in order to protect executive privilege – (*Id*.).

On October 7, 2021, Costello emailed the Committee a letter detailing the communication from President Trump's counsel and advising the Committee that, Mr. Bannon was obligated to honor the invocation of executive privilege and was "legally unable to comply with the subpoena" unless and until the Committee resolved executive privilege with former President Trump or a court ordered Bannon to comply. (*Id*.). On October 8, 2021, Costello received a response from Congressman Bennie G. Thompson, Chair of the Select Committee, which rejected any assertion of privilege (*Id*.).

7

On October 13, 2021, Mr. Costello emailed Chairman Thompson. Mr. Costello provided legal authority for his position, given President Trump's assertion of executive privilege, and reiterated that Bannon would fully comply with the subpoena if President Trump withdrew his assertion of executive privilege, or if a court ruled on the matter. (A364).

As Costello has declared under penalty of perjury, Bannon's response to the subpoena was based entirely on Costello's directive to him that because of the invocation of executive privilege, Bannon was not permitted to comply (A369).

On October 15, 2021, Chairman Thompson emailed Costello a letter. Among other things, the letter stated that the Select Committee planned to meet on October 19, 2021, to consider whether to request that the U.S. House of Representatives find Bannon in contempt. The letter invited Costello to provide additional information on Bannon's behalf by October 18, 2021.

On October 18, 2021, upon learning about the filing of a civil lawsuit that appeared to be relevant to the executive privilege issue, Costello sent an email to Thompson requesting a short adjournment and explaining why (A1994).

The next morning, on October 19, 2021, the Committee emailed Costello a response from Chairman Thompson rejecting his request for a one-week adjournment (A1997). The same day, the Select Committee voted to recommend that the U.S. House of Representatives find Bannon in Contempt of Congress. On

8

October 21, 2021, the U.S. House of Representatives voted 229-202, largely along party lines, to find Mr. Bannon in Contempt of Congress and referred it to the Department of Justice ("DOJ").

Costello met with government counsel and made clear that Bannon had acted on his legal advice and at his direction, that the advice was based upon authoritative DOJ OLC) opinions, and argued that long-standing DOJ policy precluded a criminal prosecution.  (*Id*.)

On November 12, 2021, Bannon was indicted. (A37).   Additional relevant facts will be presented in the context of the arguments below.

## SUMMARY OF THE ARGUMENT

The lower court erred by prohibiting Mr. Bannon from putting his defenses before the jury in this case, in violation of his rights under the 5th and 6th Amendments to the United States Constitution.

Specifically, the lower court erred in granting the government's motions *in limine* prohibiting Bannon from putting before the jury his reliance on the advice of counsel and his reliance on formal opinions issued by the Department of Justice's Office of Legal Counsel, which his attorney told him prevented him from in any way responding to the subpoena at issue, since executive privilege had been invoked by former President Trump.  The lower court prohibited

Bannon from making any reference to the reasons for his response to the subpoena and prohibited the jury from hearing or considering any defense through evidence or argument of any kind and through jury instructions.

The lower court erred in ruling that "willfully makes default" as that phrase is used in 18 U.S.C. §192, simply requires proof that the defendant received a valid subpoena and did not comply with it, regardless of the reason – even if that reason is the invocation of executive privilege - and that is does not require any belief or understanding by the defendant that his conduct was wrong or unlawful.

This Court's decision in *Licavoli v. U.S.,* 294 F.2d 207 (D.C. Cir. 1961) insofar as it defines "willfully makes default" under 18 U.S.C. §192 cannot be reconciled with subsequent jurisprudence defining "willfully" in the criminal context and the lower court misapplied *Licavoli* where, as here, executive privilege has been invoked.

If the lower court correctly applied *Licavoli* and *Licavoli* is still viable authority, 18 U.S.C. §192 is overbroad and void for vagueness as applied here when executive privilege has been invoked.

This prosecution violated Mr. Bannon's rights to due process of law and was barred by the doctrines of entrapment by estoppel and public authority.

The lower court erred in quashing the trial subpoenas served on Committee members and their staff.  Once the motion to quash was granted, the court erred in failing to exclude their trial testimony or dismiss the indictment when they appeared voluntarily as government witnesses.

There was no valid authority for the subpoena based on the Committee's composition and rules violations.

## **ARGUMENT**

**Standard of Review:**  Each issue presented in this appeal involves a question of law and is subject to *de novo* review.  *U.S. v. West*, 393 F.3d 1302, 1310 (D.C. Cir. 2005) (statutory construction); *U.S. v. Wilson*, 605 F.3d 985, 1003 (D.C. Cir. 2010) (Confrontation Clause challenge); The decision to bar Mr. Bannon's defenses implicates due process, compulsory process, and Confrontation Clause claims and was so burdensome on his right to present a defense that they are all constitutional rights claims subject to *de novo* review. *Kotteakos v. U.S.*, 328 U.S. 750, 776 (1946) ("substantial or injurious effect or influence in determining the jury's verdict"); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967); *U.S. v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)); *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973).  *See U.S. v. Lathern*, 488 F.3d 1043, 1046 (D.C. Cir. 2007).

**THE LOWER COURT'S DECISIONS EXCLUDING MR. BANNON'S DEFENSES VIOLATED HIS RIGHTS UNDER THE 5TH AND 6TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

**The Court's Construction Of "Willfully" And Associated Rulings Require A New Trial**

Every citizen accused of a crime must be afforded the constitutional right to present a defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("The Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). It is a fundamental right rooted in the Fifth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process and Confrontation Clauses, as well as other fair trial rights. That guarantee extends to the evidence and argument a defendant is allowed to present, and the jury instructions on defense theories. *See*, *e.g.*, *U.S. v. Johnson*, 944 F.2d 980, 988 (2d Cir.) ("A criminal defendant is entitled to a jury charge that reflects any defense theory for which there is a foundation in the evidence."), *cert. denied*, 126 L. Ed. 2d 364, 114 S. Ct. 418 (1993).  When the Government proceeds with a criminal prosecution under 2 U.S.C. §192, the accused is entitled to "every safeguard which the law accords in all other federal criminal cases." *Russell v. U.S.*, 369 U.S. 749, 755 (1962). These fundamental rights were violated in this case.

In order to bar Mr. Bannon from presenting any defenses and from telling the jury the story of why he responded to the subpoena as he did the government

filed a "Motion in Limine to Exclude Evidence or Argument Relating to Good-Faith Reliance on Law or Advice of Counsel." (A311). The government's overreaching effort in this regard continued throughout the proceedings. *See e.g.* ECF## 35, 43, 52, 53, 54, 65, 70, 71, 72, 85, 87, 101.

The Court granted the Government's motion, holding that the reason for not complying with a subpoena is legally irrelevant under 18 U.S.C. §192, even though it carries a mandatory sentence of incarceration upon conviction [A741-744]. In its Order, the Court agreed with the Government that under *Licavoli v. U.S.*, 294 F.2d 207 (D.C. Cir. 1961), "willfully" in the context of this criminal statute requires nothing more than that the defendant acted "deliberately and intentionally" in not complying with a Congressional subpoena. It found no requirement to prove that the defendant knew or even had reason to believe that he was doing anything wrong or unlawful [A741-744].

Bannon was barred from putting on any evidence or argument that he believed he responded to the subpoena in the only way the law permitted, once executive privilege was invoked and that he acted in the manner his experienced lawyer directed him that he had to act as a matter of law. (A359-372; A741-744). He was barred from putting his defense theory before the jury in any manner and

the jury was instructed on the elements and other relevant issues (e.g. Instructions 24 and 25 in a manner that further denied Bannon's ability to defend.[2]

After barring Bannon from presenting to the jury his reasons for responding as he did to the subpoena – purportedly because the reasons for "noncompliance" were irrelevant as a matter of law - the court allowed the government to put before the jury its false, concocted reasons for Mr. Bannon's failure to comply. Government counsel argued repeatedly and with impunity that Mr. Bannon "ignored" the subpoena, "thumbed his nose" at the Committee, had "no justification" for doing so and that he did it because he thinks he is "above the law" and "didn't care" and "had contempt" for the Committee, and more. [A3913-3916].[3]  The government was allowed to argue to the jury that executive privilege

---

[2]  The jury expressly was instructed, over Mr. Bannon's objections, not to consider his true reasons.  [A4581-82].  Bannon's requested jury instructions were rejected and his objections to the jury instructions given were overruled. *See e.g.* (A3362-3363; A3366; A3367-3375; A4422-4430; A4440-4445).  Additionally, the court was provided with a proffer as to what Mr. Bannon and Mr. Costello would testify to, but for the court's conclusion denying the defenses and the right to tell his story regarding his response to the subpoena (A4383-4385).

[3] The Court also permitted government counsel to argue to the jury that Congress had unilateral authority to require compliance with its subpoena notwithstanding the invocation of executive privilege. [e.g., A4468, A4474].  Under no cognizable jurisprudential principle, consistent with the constitutional concept of separation of powers, is Congress like a "referee" or in any way recognized as an appropriate arbiter over a conflict between Article 1 and Article 2 branch interests, especially given the constitutional presumption of validity for the invocation of executive privilege.  Only an Article 3 court can serve in that role.  Separation of Powers also bars the legislative branch from ordering an executive branch official to take action.  (A1107, n. 28); *INS v. Chadha*, 462 U.S. 917 (1983).

did not matter nor did Bannon's belief that he could not lawfully apply or that his attorney so advised him (A4473-4474). Throughout the trial and especially in opening and closing arguments, government counsel repeatedly exploited the order barring Mr. Bannon from explaining his actions and misrepresented them. Government counsel told the jury the "whole case is about a guy who just refused to show up" (A3916). That was demonstrably false and demeans our fundamental constitutional principle of separation of powers.

In its Order, the Court indicated that it might have a different view on "willfully" if this were a matter of first impression and would allow evidence of advice of counsel; but its hands were tied by this Court's decision in *Licavoli*. (A743). It repeated this theme throughout the case, asserting, finally, "As I've stressed many times, I have serious reservations that the Court of Appeals' interpretation of 'willfully' is consistent with the modern understanding of the word. It's not consistent with modern case law surrounding the use of that term, let alone the traditional definition of the word. But as I've previously held and I reiterate again today, I am bound by *Licavoli* and its holdings." [A2993].

Reliance on advice of counsel fundamentally negates guilt. It bears on whether a defendant acted "willfully" knowing that the action was unlawful. *U.S. v. Stevens*, 771 F. Supp. 2d 556, 567-568 (D. Md. 2011) (failure to instruct a grand jury on advice of counsel may require dismissal of the indictment); *See U.S. v.*

*DeFries*, 129 F.3d 1293, 1308-1309 (D.C. Cir. 1997) (reversing conviction for failure to give advice of counsel jury charge).

A central issue in any criminal prosecution is the *mens rea* element of the offense charged. 2 U.S.C. §192 requires proof that the defendant "willfully makes default."

"Willfully" is not surplusage. It adds yet another layer and must be construed in context. *See Bryan v. U.S.*, 524 U.S. 184, 191 (1998). In criminal statutes, "willfully" "typically refers to a culpable state of mind." *Bryan, supra,* 524 U.S. at 191. "In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" *Id*. at 191-192 (quoting *Ratzlaf v. U.S.*, 510 U.S. 135, 137 (1994)). To meet its burden of proving a crime that requires that an action was done "willfully," the government must prove beyond a reasonable doubt "that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." *Bryan*, *supra*, 524 U.S. at 193. *See*, *also*, *Heikkinen v. U.S.*, 355 U.S. 273, 279 (1958) ("[I]t cannot be said that he acted willfully - *i.e*., with a bad purpose or without justifiable excuse") (internal quotations omitted); *Felton v. U.S.*, 96 U.S. 699, 702 (1878) (willfully implies a bad purpose).

16

**The Court's Decision Cannot Be Reconciled With The Relevant United States Supreme Court Jurisprudence On "Willfully."**

Mr. Bannon, of course, advised the Court on multiple occasions that he believed the operative definition of "willfully" was legally unsupportable for several reasons, he also advised the Court that he disagreed that the Court was bound by *Licavoli* for several reasons.  [A331-55; A567-75].  It is legally unsupportable.

Significantly, in the six decades since *Licavoli*, the Supreme Court has provided clarity on the meaning of "willfully" in criminal statutes. *See Bryan*, *supra*, 524 U.S. at 196 (to establish "willfulness" the Government must prove that a defendant knew his conduct was unlawful); *Ratzlaff v. U.S.*, 510 U.S. 135, 138 (1994) ("to give effect to the statutory 'willfulness' specification, the Government had to prove [the defendant] knew the structuring he undertook was unlawful").

Recent decisions from the United States Supreme Court emphatically demonstrate the error and the legally unsupportable idea that "willfully" in the context of any criminal statute, let alone one purporting to have a mandatory minimum incarceration element, can dispense with the fundamental requirement that there be some evidence of a wrongful or criminal purpose.  The most obvious constitutional obstacle to such an interpretation is its violation of due process for the failure to give fair notice and for the potential for ensnaring the innocent within its ambit.

17

The following universal principles concerning *mens rea*, as reaffirmed by the United States Supreme Court in *Ruan v. U.S.*, 142 S. Ct. 2370, 213 L. Ed. 2d 706 (June 27, 2022) provide a helpful overview:

"First, as a general matter, our criminal law seeks to punish the "'vicious will.'" *Morissette v. U.S.*, 342 U.S. 246, 251 (1952); *see also id.,* at 250, n. 4 (quoting F. Sayre, Cases on Criminal Law, p. xxxvi (R. Pound ed. 1927)). With few exceptions, "'wrongdoing must be conscious to be criminal.'" *Elonis v. U.S.*, 575 U.S. 723, 734 (2015) (quoting *Morissette*, 342 U.S., at 252). Indeed, we have said that consciousness of wrongdoing is a principle "as universal and persistent in mature systems of [criminal] law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Id.*, at 250, 72 S. Ct. 240, 96 L. Ed. 288.

"Consequently, when we interpret criminal statutes, we normally "start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state." *Rehaif v. U.S.*, 588 U.S. ___, 139 S. Ct. 2191, 2195, 204 L. Ed. 2d 594 (2019). We have referred to this culpable mental state as "scienter," which means the degree of knowledge necessary to make a person criminally responsible for his or her acts. *See ibid.*; Black's Law Dictionary 1613 (11th ed. 2019); *Morissette*, 342 U.S., at 250-252.

Applying the presumption of scienter, we have read into criminal statutes that are "*silent* on the required mental state"—meaning statutes that contain no *mens rea* provision whatsoever "'that *mens rea* which is necessary to separate wrongful conduct from "otherwise innocent conduct." *Elonis*, 575 U.S., at 736 (quoting *Carter v. U.S.*, 530 U.S. 255, 269 (2000); emphasis added).   The decision in *Ruan* is important for its emphasis on the need for a criminal statute to include a *mens rea* element in such a way that separates criminal conduct from innocent conduct and does run the risk of ensnaring the latter within its ambit.

On this background, the words of Justice Alito, joined in his dissenting opinion by Justice Thomas, in *Rehaif v. U.S.*, 588 U.S. --, 139 S. Ct. 2191, 204 L. Ed. 2d 504 (2019), emphasizing that in the criminal context "willfully," inexorably requires knowledge that the conduct charged is illegal, are instructive.  Justice Alito wrote, "… where Congress wants to require proof that a criminal defendant knew his conduct was illegal, it specifies that the violation must be 'willful.'  In ordinary speech, "willfulness" does not require or even suggest knowledge of illegality." But we have construed the term as used in statutes to mean 'intentional violation of a known legal duty.'"  *Rehaif*, 139 S. Ct. at 2205 (Alito, J. dissenting) (citations omitted).  Justice Alito then juxtaposed "knowingly" with "willfully" to demonstrate that the question of whether "knowingly" requires knowledge of

illegality is an open question, specifically because Congress's convention is to use "willfully" when it wants to make clear that knowledge of illegality is required.  *Id.*

In *Elonis v. U.S.*, 575 U.S. 723, 734 (2015), the Court quoted from Justice Jackson's famous opinion in *Morissette v. U.S.*, 342 U.S. 246, 250-252 (1952), in which he wrote that the principle that "wrongdoing must be conscious to be criminal" is "as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."  The Court in *Elonis* wrote that for Justice Jackson, the "central thought" "is that a defendant must be 'blameworthy in mind' before he can be found guilty, a concept courts have expressed over time through various terms such as *mens rea,* scienter, malice aforethought, guilty knowledge, and the like."  *Elonis*, 575 U.S. at 734, *quoting from Morissette*, 342 U.S. at 252.

The Court in *Elonis* then emphasized the need to require proof that the defendant knew his conduct was unlawful when "willfulness" is charged, by presenting examples of cases that highlighted the danger of innocent conduct being ensnared within the statute's ambit, absent that requirement.  *Elonis*, 575 U.S. at 735-737.

20

It is impossible to reconcile this Court's conclusion as to the meaning of "willfully" in the context of the criminal statute at issue here with these fundamental principles.[4]

**The Court's Decision Cannot Be Reconciled With Decisions From This Circuit And Others.**

This Circuit has, in no uncertain terms, echoed these same fundamental principles enunciated in *Rehaif* concerning the threshold requirement that "willfulness" in a criminal statute requires that the defendant know that his conduct is wrongful or illegal.  In *U.S. v. Burden*, 934 F.3d 675, 689-693 (D.C. Cir. 2019), this Court noted that while "willfully" is a word of many meanings, with the construction often depending on context, in the criminal context, it means acting with a "bad purpose."  The Court wrote, "In other words, in order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful."  *Burden*, 934 F.3d at 690, *citing Bryan v. U.S.*, 524 U.S. 184, 191-192 (1998).

---

[4] The Court in *Rehaif* also reaffirmed the fundamental principle that there is a "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalizes otherwise innocent conduct.'"  *Rehaif*, 139 S. Ct. at 2195, *quoting from*, *U.S. v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994). These scienter requirements "advance (the) basic principle of criminal law by helping to 'separate those who understand the wrongful nature of their act from those who do not.'"  *Id*. at 2196.  The Court then characterizes the cases in which the Court "has emphasized scienter's importance in separating wrongful from innocent acts" as "legion." *Id*.

The Court wrote further, "[W]hen Congress wants to ensure that defendants will be convicted only if they have a more culpable state of mind, it limits the crime to conduct that a defendant engages in "willfully." *Id.* Like the Supreme Court in *Rehaif*, this Court juxtaposed "willfully" with "knowingly" to the same end. *Id.* This Court in *Burden* explained what it meant by suggesting "willfulness" has different meanings, by differentiating between those limited situations in which "willfulness" means the Government has to prove that the defendant knew which law he was breaking and all other statutes charging that the defendant acted "willfully" in which the Government need only prove that the defendant knew his conduct was illegal, without knowing which specific statute he was violating. *Burden*, 934 F.3d at 690-692. This Court made clear, though, that in any event, when a criminal statute charges that the defendant acted "willfully" the Government must at least prove that he knew his conduct was illegal (and the Court lists numerous cases so holding). *Id.* at 691-692. *See also*, *U.S. v. Zeese*, 437 F. Supp. 3d 86, 94 (D.D.C. 2020); *U.S. v. Singh*, 979 F.3d 697, 712 (9th Cir. 2020); *U.S. v. Kukushkin*, 2023 U.S. App. LEXIS 5493 (2d Cir., March 8, 2023) (construing "willfully" as requiring proof that the conduct was illegal).

The Court's conclusion that "willfully" in 2 U.S.C. §192 does not require the defendant to have believed or understood his conduct to have been wrong or unlawful cannot be reconciled with current jurisprudence.

The fact that Costello's directives which Bannon believed he was obligated to follow were based on the invocation of executive privilege highlights additional constitutional violations by barring the defenses at issue and instructing the jury that Mr. Bannon's belief and the reasons for his response to the subpoena could not be considered.

**The Lower Court's Definition of "Willfully" Renders the Statute Unconstitutional as Applied.**

If the lower court's decision on "willfully" is permitted to apply when executive privilege is invoked, then 2 U.S.C. §192 is unconstitutional as applied for several reasons.

Based on the court's Order, a defendant who fails to comply on a whim or for no reason at all, is legally situated vis a vis criminal liability under the statute, identically to the defendant who (1) fails to comply because his lawyer told him the subpoena was invalid, (2) fails to comply because he was directed not to comply in connection with the invocation of executive privilege by a former President of the United States or (3) fails to comply in reliance on and consistent with the official, legally binding position of the Department of Justice. The Government expressly argued in its motion that privilege provides no excuse for non-compliance under the applicable definition of "willfully." [A313; 320].

Executive Privilege was a defense that he urged all along that he must be permitted to raise under the authority of *U.S. v. U.S. House of Representatives*, 556

F. Supp. 150, 152-153 (D.D.C. 1983); *Barenblatt v. U.S.*, 360 U.S. 109 (1959); *Ansara v. Eastland*, 442 F.2d 751 (D.C. Cir. 1971); *Tobin v. U.S.*, 306 F.2d 270, 276 (D.C. Cir. 1962), and *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032 (2020).[5] The court's decision on "willfulness" made executive privilege irrelevant. The failure to differentiate between the invocation of executive privilege and other situations vis a vis the application of this statute is completely contrary to the DOJ's long-standing official policy on this subject.[6]

Based on the Court's Order construing the statute in this regard, 2 U.S.C. §192 is unconstitutional as applied to Mr. Bannon and the circumstances of this case because it (1) violates the separation of powers doctrine; (2) is unconstitutionally overbroad, criminalizing lawful conduct (e.g., non-compliance based on the invocation of Executive Privilege and reliance on the OLC Opinions) within its ambit; (3) is unconstitutionally void for vagueness (e.g. when considered with the DOJ's official position as reflected in the OLC Opinions, it fails

---

[5] The DOJ has authoritatively opined that as a matter of law, there is some doubt that one can be said to have acted "willfully" under this statute when he acts out of obeyance to the invocation of executive privilege with respect to the subpoena at issue.  [A1114, n.34].

[6] The DOJ has made clear its view that the invocation of Executive Privilege stands alone and is different from a subpoena that triggers any other privilege, because of the separation of powers issues it implicates.  (A251; A620).

adequately to give notice as to what conduct is subject to criminal prosecution); (4)

unconstitutionally prohibits Mr. Bannon from telling the entire story of his case.[7]

**The Statute As Applied Violates The Constitutional Separation Of Powers Doctrine.**

The Court's decision gives Congress a veto over a President's invocation of

privilege.  That position cannot be reconciled with the United States Supreme

Court's holding in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032; 207 L. Ed.

2d 951 (2020) that executive privilege applies in the context of a congressional

subpoena and its invocation provides a basis for noncompliance with a

congressional subpoena. The validity of the invocation surely can be challenged in

a civil enforcement proceeding; but it is presumed to be valid when made and

provides a lawfully recognized basis for the witness's failure, indeed, inability, to

comply. *Id*. The statute as applied also violates the separation of powers doctrine

by directly infringing on the President's right to determine which communications

he deems to be appropriately covered by executive privilege. Doing so is contrary

to established constitutional principles that a statute that "disrupts the proper

balance between the coordinate branches" is unconstitutional and that the

---

[7] *See, e.g., U.S. v. Nixon*, 418 U.S. 683, 709 (1974) (The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts.  The very integrity of the judicial system depends on full disclosure of all the facts, within the framework of the rules of evidence."); *U.S. v. Nobles*, 422 U.S. 225, 232 (1975).

President's invocation of executive privilege is presumptively valid and must be honored by Congress.[8] As the DOJ has written, subjecting executive officials to prosecution for criminal contempt when they are carrying out the President's (or former President's) claim of Executive Privilege, "would significantly burden and immeasurably impair the President's ability to fulfill his constitutional duties." (A284).

**The Statute As Applied Is Unconstitutionally Overbroad And Void For Vagueness.**

The "void-for-vagueness" doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[9]  The "doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers." *U.S. v. Davis*, 139 S. Ct. 2319, 2325 (2019). "Vague laws contravene the 'first essential of due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them." *Id*.  "Vague laws also undermine the Constitution's separation of powers and the democratic self-governance it aims to protect." *Id*. (citations omitted).  "No one may be required at

---

[8] *Nixon v. Admin. of General Services*, 433 U.S. 425, 443 (1977); *U.S. v. Nixon*, 418 U.S. 683, 708 (1974).

[9] *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

peril of life, liberty or property to speculate as to the meaning of penal statutes.[10] If the court's decision on "willfulness" is allowed to stand when executive privilege is invoked (or the defendant reasonably believes it to have been invoked), it exacerbate vagueness problems.[11] Vagueness concerns are intensified where a statute imposes criminal penalties.[12] A statute is unconstitutionally overbroad where, as here, it risks including within its prohibition fully lawful conduct undertaken in good-faith or because of the uncertainty of the definition of material terms (like "willfully" or "default").[13]

2 U.S.C. §192, and specifically the phrase "willfully makes default" as the lower court interpreted it and as the elements of the offense charged have been characterized, is void for vagueness and overbroad, as applied to the instant case or any case in which executive privilege is invoked, especially in light of the OLC Opinions discussed hereinbelow.  The Government's position on the elements of

---

[10] *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).

[11] *Calautti v. Franklin*, 439 U.S. 379, 395 (1979) ("Because of the absence of a scienter requirement in the provision … the statute is little more than a 'trap for those who act in good faith.'").

[12] *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982) ("The Court has … expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe").

[13] *See, e.g., U.S. v. Stevens*, 569 U.S. 460, 473 (2010)

the crime and that any reason for noncompliance, other than accident, is legally irrelevant, adopted by the Court in unqualifiedly granting its motion *in limine*, is directly at odds with long-established authority that the invocation of executive privilege must be permitted as a legally cognizable reason for non-compliance. *See e.g.*, *Mazars*, 140 S. Ct. at 2032.

Moreover, in light of the legally binding, published, authoritative position of the Department of Justice, reflected in the OLC Opinions cited herein that the criminal statute does not apply and cannot be applied to a current or former executive branch employee when executive privilege is invoked, the statute, as applied, is void for vagueness. It does not give constitutionally sufficient notice of what conduct will expose a person so situated to criminal sanction.

Statements by the Government, through its agents or officials, concerning criminal sanctions, which are contradictory or so vague and undefined "as to afford no fair warning as to what might transgress (the statute)" render the statute unconstitutionally vague, much in the same way contradictory statements within a criminal statute render the statute unconstitutional. *Raley v. State of Ohio*, 360 U.S. 423, 438 (1959). In the instant case, the OLC Opinions go well beyond mere "contradictory" or "vague" statements – they absolutely give full license, indeed they command, the very course of conduct Mr. Bannon took in response to the subpoena (and that was ordered by the invocation of Executive privilege); yet now

he faces criminal prosecution for actions consistent with published DOJ policy. This renders the statute, at best, void for vagueness.

The statute is unconstitutionally overbroad as applied because, as the Court has defined "willfully makes default" and the elements of the crime, it unconstitutionally includes within its ambit, fully legal and constitutionally protected conduct – noncompliance based on the invocation of Executive Privilege and reliance on the OLC Opinions. Moreover, the Court's decision, granting the Government's motion, which included a prohibition on the Defendant's reliance "on law," is irreconcilable with the well settled principle that in the criminal setting, all constitutional and other applicable defenses must be afforded the Defendant.[14]

The statute also is void for vagueness because the key phrase "willfully makes default" gives insufficient notice as to what constitutes a "default" in light of the long line of authority that raises to a constitutional level the imperative that Congress and the Executive branches must work toward an accommodation in situations like the one presented here.[15]  Under these circumstances and the institutional interests in working toward an accommodation, the term "willfully

---

[14] *U.S. v. House of Representatives*, 556 F. Supp. 150, 152-153 (D.D.C. 1983); *Barenblatt v. U.S.*, 360 U.S. 109 (1959); *Ansara v. Eastland*, 442 F.2d 751 (D.C. Cir. 1971); *Tobin v. U.S.*, 306 F.2d 270, 276 (D.C. Cir. 1962).

[15] *See e.g., U.S. v. AT&T*, 567 F.2d 121, 127 (D.C. Cir. 1977) ("constitutional mandate" for Congress and Executive Branch to "seek optimal accommodation" to resolve disputes*).*

makes default" is unconstitutionally void for vagueness and overbroad and the indictment should be dismissed based on the Select Committee's refusal to work toward any accommodation.

**The Court Erred In Barring The Use Of OLC Opinions.**

The government moved to bar Bannon from using the OLC opinions for any purpose in his defense (A745). The court granted that motion, barring Bannon from using defenses that he relied on the OLC opinions and his lawyer's advice that they excused/prohibited his compliance with the subpoena once executive privilege was invoked and barring defenses of entrapment by estoppel and public authority based on the OLC opinions (A2999-3001). This violated his 5th and 6th Amendment rights.

**OLC Opinions Are Binding, Authoritative Statements Reflecting The Official Policy Of The Department Of Justice.**

OLC opinions "reflect the legal position of the executive branch" and "provide binding interpretive guidance for executive agencies." *Casa de Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 718 n.1 (4th Cir. 2019); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 922 F.3d 480, 483 (D.C. Cir. 2019). The OLC "considers its written formal opinions to be 'one particularly important form of controlling legal advice.'" 922 F.3d at 484; (A1269-1597). They are, in short, the DOJ's "working law," with the full "force and effect of law." *See e.g., NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 153 (1975). The legal

authority that Mr. Bannon relied upon in this case reflects the formal, official, binding,

authoritative position of the Department of Justice since 1956. (A1241-1245; A1262-

1267; A1238-1260[16]; A1269-1274;[17] A1159-1161); *U.S. v. Viola*, 2017 U.S. Dist.

LEXIS 117055, *7-*9; 2017 WL 3175930 (W.D. La., July 26, 2017).

**The Fair Notice Requirement of Due Process Requires Reversal.**

The lower court's decision to bar any evidence or argument on advice of

counsel or any other reason Bannon did not comply with the subpoena, including

the role the OLC Opinions played in those reasons, violated, *inter alia*, the

constitutional right to due process of law by failing adequately to give fair notice

of what conduct will subject a person to criminal liability or prosecution under the

statute and the conviction must be reversed.

---

[16] Mr. Bradbury is the author of one of the OLC Opinions on which Mr. Bannon relied. *See Whether the Department of Justice May Prosecute White House Officials for Contempt of Congress* (February 29, 2008). Mr. Bradbury's OLC Opinion provides in no uncertain terms, drawing on OLC official policy papers going back at least to 1956, and across all administrations, the OLC's official, binding, authoritative conclusion, as a matter of binding policy, that former or current White House advisors who decline to provide documents or testimony, or who decline to appear to testify, in response to a subpoena from a congressional committee, based on the President's assertion of executive privilege, absolutely **cannot** be criminally prosecuted by the Department of Justice under the statute charged here, 2 U.S.C. §192.
https://www.justice.gov/opinion/file/832851/download  (A1123-1127)

[17] https://www.justice.gov/sites/default/files/olc/legacy/2010/08/26/olc-legal-advice-opinions.pdf

Statements by the Government, through its agents or officials, concerning criminal sanctions, which are contradictory or so vague and undefined "as to afford no fair warning as to what might transgress (the statute)" render the statute unconstitutionally vague, much in the same way contradictory statements within a criminal statute render the statute unconstitutional. *Raley v. State of Ohio*, 360 U.S. 423, 438 (1959).

In *U.S. v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 674 (1973), the Court highlighted the due process concerns implicated by agency writings in the context of a criminal prosecution. The Court wrote that fair warning of criminality must be provided, even where the agency's writings do not purport to "create or define the statutory offense at issue" but nonetheless can be interpreted as a guide to future conduct. *Id*. The Court wrote that such agency policy writings "deprived (PICCO) of fair warning as to what conduct the Government intended to make criminal" and that when that occurs, "... there can be no doubt that traditional notions of fairness inherent in our system of criminal justice prevent the Government from proceeding with the prosecution." *Id*. (citations omitted). *See also, U.S. v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992); Floyd D. Shimomura, *Federal Misrepresentation:  Protecting the Reliance Interest*, 60 Tul. L. Rev. 596, 636-641 (1986); SueAnn D. Billimack, *Reliance on*

*an Official Interpretation of the Law: The Defense's Appropriate Dimensions*,
1993 U. Ill. L. Rev. 565, 578 (1993).

The situation here is far more violative of due process than just failing to
give adequate notice of what will constitute criminal conduct. The relevant OLC
Opinions here give license to the course of action Bannon took in response to the
subpoena and the assertion of executive privilege and that is what his lawyer
advised him. (A359-376).

Costello and Bannon reasonably believed that it has been official consistent
DOJ policy since at least 1984, reflected in its OLC Opinions, that when an
executive branch official (or former executive branch official) receives a
congressional subpoena and the President (or former President) invokes executive
privilege in connection with the subpoena, that person cannot be prosecuted under
§192.[18]  It is undisputed that Bannon was a close, top advisor to former President
Trump in the executive branch and former President Trump, in the exercise of his
exclusive prerogative, invoked executive privilege with respect to the subpoena
Mr. Bannon received and that underlies this prosecution.

The OLC opinions were brought to Bannon's attention by his attorney,
Costello, who advised him that the OLC opinions were binding authority on the

---

[18] *McGahn*, 968 F.3d 755 at 773, 776 (D.C. Cir. 2020) (en banc); A1108; A1006;
A1221-1227.

Department of Justice and that they were controlling authority in the circumstances he faced.  Mr. Costello provided Mr. Bannon with legal advice, based on the OLC opinions and Mr. Bannon acted at all relevant times in the manner Mr. Costello directed him, based on the OLC opinions. (A362-369)

First**,** when former President Trump, through his attorney, Mr. Clark, advised Mr. Bannon, through Mr. Costello, that he was invoking executive privilege with respect to the subject matter of the subpoena, Mr. Bannon was duty bound under the OLC opinions (and relevant case law) to presume that the former President was within his authority to invoke executive privilege[19] and to presume that the matters so designated by former President Trump were privileged.[20]

Second**,** Mr. Bannon was entitled to rely on binding DOJ policy, as reflected in the OLC opinions, for his conclusion that executive privilege can be and was properly invoked with respect to former employees, no longer working in the Executive Branch, and even to people from outside the Executive Branch whose privileged counsel the President might seek. (A1070).  The governing legal principles apply even after a Presidential advisor leaves the White House.[21]

---

[19] *Nixon v. Adm'r of General Services*, 433 U.S. 425, 448-449 (1977); *Trump v. Thompson*, 142 S. Ct. 680; 211 L. Ed. 2d 579 (January 19, 2022), *denial of certiorari*; and *Id.*, 142 S. Ct. at 680-681 (Kavanaugh, J., concurring).

[20] A1039; *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731 (D.C. Cir. 1974); *U.S. v. Nixon*, 418 U.S. 683, 708-709 (1974).
[21] (A1077; A1020).

Third**,** Bannon relied on DOJ OLC opinions that expressly provided that the Select Committee subpoena was invalid because the committee would not allow former President Trump's lawyer to appear to assert and protect executive privilege. As Costello explained to Mr. Bannon when he went over the OLC opinions with Bannon, OLC opinions hold that under these unique circumstances, non-compliance with a congressional subpoena is lawful.[22] (A367).  Mr. Bannon relied on this OLC opinion in reasonably believing that the subpoena was not valid and that compliance was not, therefore, either appropriate or required as a matter of fact and law. (A367-368).

Fourth**,** Mr. Bannon also relied on long-standing, definitive OLC Opinions that not only advised him not to comply once executive privilege was invoked and that the matter was out of his hands, but the long-standing policy of the DOJ, that, under any these circumstances, non-compliance with the subpoena would be lawful and could not subject him to criminal prosecution.[23] (A1055; A1076-1078); https://www.congress.gov/116/meeting/house/110281/documents/HHRG-116-JU00-20191204-SD1222.pdf (former advisers).

---

[22] (A1061); *Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 2019 WL 2563045 (O.L.C.) at *1 (May 23, 2019).

[23] [A1108; A1006; A1221]

The district court violated Bannon's 5th and 6th Amendment rights by barring any evidence or argument concerning the OLC Opinions, his reliance on them and his lawyer's directives based on them to explain his response to the subpoena.[24] (A689; A621; A1081; A1135; A1229; A1195).

**The Court Erred in Barring Defenses of Entrapment By Estoppel And Public Authority.**

Mr. Bannon was entitled to present the defenses of entrapment by estoppel and public authority based on the OLC Opinions. The district court denied his 5th and 6th Amendment rights by prohibiting him from using them to pursue defenses of entrapment by estoppel and public authority.  (A2999-3001).  He was entitled to have the jury consider his defenses.

### Entrapment by Estoppel

The doctrine of entrapment by estoppel was first recognized and explained in two decisions from the United States Supreme Court handed down many years ago: *Raley v. State of Ohio*, 360 U.S. 423 (1959) and *Cox v. Louisiana*, 379 U.S. 559 (1965).

In *Raley,* 360 U.S. 423, 438 (1959), the Court held that the government may not convict "a citizen for exercising a privilege which the State clearly had told him was available to him." *Id*. The accused was convicted for refusing to answer

---

[24]  *See also,* The Model Penal Code §2.04(3)(b) (1962).

questions, even though certain Commission members said it was acceptable to invoke privilege rather than answer the questions posed. *Id*. The Court reversed, holding that due process does not permit the criminal conviction of a person who acts in reliance on authoritative pronouncements by relevant government officials or a government agency. *Id*. at 438-39.

In *Cox v. Louisiana*, the Supreme Court reiterated the principles enunciated in *Raley*, making clear that due process of law does not permit a criminal prosecution for conduct a State official or agency indicated was lawful. 379 U.S. 559, 571 (1965).

In *U.S. v. Pennsylvania Industrial Chemical Corp.*, 461 F.2d 468 (3d Cir. 1972), *modified and remanded*, 411 U.S. 655 (1973), the district court prohibited the defendant from introducing the evidence and refused to instruct a jury that the defendant should be acquitted if his actions resulted from affirmative government representations in written regulations that its acts were lawful. Defendant was convicted.  The conviction was reversed and the Supreme Court agreed, holding "it was error for the District Court to refuse to permit PICCO to present evidence in support of its claim that it had been affirmatively misled into believing that the discharges in question were not a violation of the statute." *U.S. v. Pennsylvania Indus. Chem. Corp.*, 411 U.S. 655, 675 (1973) ("PICCO").

The Court also held that the defense applies where there is reliance on a government agency's position or interpretation of the law it is charged with enforcing or on the enforcing agency's behavior with respect to the activity at issue and that reliance was reasonable under the circumstances. *Id*.  In *PICCO,* there was no direct inquiry by the defendants to the agency nor any communication from the agency directly to the defendants.  Based on PICCO, Bannon was entitled to rely on the former President's invocation and directive and on the OLC Opinions and he reasonably did so.  Prohibiting the defense of entrapment by estoppel was reversible error.

### Public Authority

The defenses of entrapment by estoppel and public authority are closely related, with some courts questioning the meaningfulness of the difference between the two. *See e.g.*, *U.S. v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006).  Nevertheless, there are some subtle differences. The court barred the public authority defense as well in violation of the 5th and 6th Amendments.  (A3001-3004).

It is beyond dispute that the President – and therefore OLC – has the authority to interpret laws. (A1276).  Further, the President has, pursuant to the Oath Clause and the Take Care Clause, the power to "decline to enforce a statute that he views as unconstitutional." (A1303) The defense of actual authority is consistent with the common law defense's recognition that actions taken "under

color of public authority" are lawful and cannot be prosecuted criminally.[25] It

requires reasonable reliance on the actual authority of an official with respect to the

conduct at issue. *U.S. v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir.

1994).

Mr. Bannon received actual authority in this case for his non-compliance

with the subpoena directly from former President Trump's invocation of executive

privilege and corresponding directive to Bannon, that Bannon must honor that

invocation with respect to the subpoena. The OLC Opinions referred to herein also

provided a source of the actual authority. (A1597).

**<u>Apparent Authority</u>**

This Circuit's decision in *U.S. v. Barker*, 546 F.2d 940 (D.C. Cir. 1976)

supported Bannon's right to rely on the defense of apparent authority.

In *Barker*, the defenses of entrapment by estoppel and apparent authority

converged.  The defense of apparent authority requires a reasonable belief

(whether correct or mistaken) that the source for the information relied upon had

the authority to license the conduct at issue and did so. *Barker*, 546 F.2d at 947-

948, 954-957; Model Penal Code §2.04(3)(b).[26]

---

[25] *See U.S. v. Pitt*, 193 F.3d 751, 756-758 (3d Cir. 1999); *U.S. v. Fulcher*, 250 F.3d 244, 254 n.4 (4th Cir. 2001); *U.S. v. Reyes-Vasquez*, 905 F.2d 1497, 1500 n.5 (11th Cir. 1990).

[26] "Opinions of the Attorney General" as among the "strongest" bodies sources for authority, *Barker*, 546 F.2d at 956.

Mr. Bannon was entitled as a matter of law to reasonably rely, as he did, on the directive from former President Trump when he invoked executive privilege and on the OLC Opinions described herein in proceeding as he did with respect to the subpoena at issue and to reasonably believe that those two sources had the authority to license his conduct, especially when his lawyer so advised him. (A1317).

### **The Government Should Have Been Estopped From Prosecuting The Case.**

Separate from the doctrine of entrapment by estoppel, the lower court should have held the government to be estopped from prosecuting this case because it is irreconcilable with the legally binding policy and practice of this same prosecuting agency, as reflected in the OLC Opinions. (A1356; A1385).

It was the "State," through the former President of the United States, that told Mr. Bannon that executive privilege had been invoked and that he was legally required to honor such invocation with respect to the subpoena and it was the "State," through the DOJ, whose official policy Bannon reasonable believed provided that, (1) the subpoena was legally invalid, (2) the invocation of the privilege was the former President's sole prerogative and not Congress's, (3) the invocation was presumptively valid, (4) it applies to former employees and outside consultants, (5) that bringing a criminal prosecution against a person in Mr. Bannon's situation would violate the separation of powers doctrine and would be

unlawful, and (6) that, for a variety of reasons, a person so situated cannot be prosecuted criminally under 2 U.S.C. §192 as a matter of law.

### THE LOWER COURT'S DECISION GRANTING THE MOTION TO QUASH TRIAL SUBPOENAS VIOLATED MR. BANNON'S RIGHTS UNDER THE 5TH AND 6TH AMENDMENTS.

Mr. Bannon served trial subpoenas on Select Committee members, staffers, counsel, and three House leaders, all of whom were directly involved in the issues underlying this criminal case (A2112-2227). Each had a role in Mr. Bannon's prosecution by refusing to accept the former President's assertion of executive privilege, by refusing to grant Mr. Bannon's reasonable request for an accommodation that would have allowed a judge to resolve the privilege issues, by denying his request for a one week extension to resolve the competing positions asserted on the executive privilege issue by Presidents Trump and Biden, in light of the then pending lawsuit, *Trump v. Thompson,* and by deciding to make a criminal referral in this case for reasons most of these subpoenaed witnesses identified in the media, having nothing to do with any legislative purpose.[27]

---

[27] https://twitter.com/RepElaineLuria/status/1514430760996024321?ref_src=twsrc%5Etfw.
https://twitter.com/repstephmurphy/status/1466224521371914243.
https://twitter.com/repzoelofgren/status/1508574278207393795.
https://twitter.com/RepAdamSchiff/status/1450612312407257089.
https://thehill.com/homenews/3529123-raskin-pence-was-a-hero-on-jan-6-for-resisting-pressure-campaigns-and-coercive-efforts/.
https://aguilar.house.gov/2021/11/13/aguilar-issues-statement-grand-jury-indictment-steve-bannon/

41

The subpoena recipients filed a Motion to Quash the subpoenas, invoking a purported Speech or Debate Clause privilege in order to avoid testifying at Mr. Bannon's trial. Three of them did so after having already waived Speech or Debate Clause protection by submitting themselves to the jurisdiction of this Court by filing an amicus brief in support of the Government's position and one of them already had served as a fact witness for the government, as reflected in discovery. Each witness was subpoenaed to testify as to specifically identified evidence critical for a fair trial.  After hearing oral argument the Court granted the Motion To Quash. (A3127).

Granting the Motion to Quash created a fundamental conflict between Mr. Bannon's Fifth and Sixth Amendments rights to compulsory process, to Confrontation, to effective assistance of counsel, and to present a defense at trial on the one hand, and the Movants' Speech or Debate Clause privileges on the other hand. Because Movants set in motion the prosecution of Mr. Bannon, they should not have been allowed to retreat behind the Speech or Debate Clause when evidence of their actions (and their testimony concerning the same) were directly relevant to Mr. Bannon's charges, and essential to securing his Fifth and Sixth Amendment rights. Their assertion of privilege had to yield to the due process and liberty interests of Mr. Bannon.

If, *arguendo*, the Motion to Quash was appropriately granted, in the context of this case it violated Mr. Bannon's Fifth and Sixth Amendment rights and the only appropriate remedy was to either exclude all Congressional testimony or dismiss the indictment.

Courts have held that dismissal of an indictment is the appropriate remedy when the government's assertion of a privilege prevents a criminal defendant from securing documents and testimony relevant and material to the defense's case. *See Roviario v. U.S.*, 353 U.S. 53 (1957); *U.S. v. Fernandez*, 913 F.2d 148 (4th Cir. 1990) *U.S. v. David Rainey*, 12-CR-00291 (E.D. La. Jul. 14, 2015) (A3217; A3261). Otherwise, there would be a one-sided presentation of "evidence" at the criminal trial that is wholly untested by cross-examination or the ability to elicit critical exculpatory evidence from key Members of Congress and staff. The Constitution required either the attendance of these congressional witnesses, or the exclusion of all congressional evidence at the criminal trial.  Testimony by staff members not authorized to make decisions or set policy for the Committee is not a constitutionally adequate substitute.  Instead, the lower court allowed Congressional testimony for the government with Bannon prohibited from calling his subpoenaed Congressional witnesses. (A3942-4231).

Granting the Motion to Quash irretrievably denied Mr. Bannon the exercise of his Fifth and Sixth Amendment rights (compulsory process, confrontation,

effective assistance of counsel, due process, fair trial rights).  Once it granted the Motion to Quash, the court erred by refusing to exclude all congressional evidence at his criminal trial or dismiss the indictment. (A3217; A3261).

The "predominate thrust" of the Speech or Debate Clause is to protect critical or disfavored legislators against criminal charges by a hostile executive branch, or criminal conviction by a hostile judiciary. *U.S. v. Johnson*, *supra*, 383 U.S. 169, 182 (1966). Thus, the Speech or Debate Clause protects members of Congress and their aides against prosecutions that directly impinge upon or threaten the legislative process." *Gravel v. U.S.*, 408 U.S. 606, 614 (1972).

Because the Speech or Debate Clause "was designed to preserve legislative independence, not supremacy," *Johnson,* 383 U.S. at 178, there are circumstances where a member of Congress (and staff) is subject to the compulsory process of the courts. For instance, in *Gravel v. U.S.*, the Supreme Court explicitly held that the Speech or Debate Clause does not immunize a member of Congress from service of process as a defendant in a civil matter or as a witness in a criminal case. 408 U.S. 606, 614 (1972); *see also U.S. v. Cooper*, 4 Dall. 341 (1800) ("The constitution gives to every man, charged with an offence, the benefit of compulsory process, to secure the attendance of his witnesses. I do not know of any privilege to exempt members of congress from the service, or the obligations, of a subpoena, in such cases.").

44

Where – as here – actions by a Member of Congress or staff infringe upon the constitutional rights of a citizen, their acts are not protected by the Speech or Debate Clause. *McSurely v. McClellan*, 553 F.2d 1277, 1288 (1976). The Committee violated Mr. Bannon's constitutional right to due process in several respects. First, the Select Committee issued its subpoena without lawful authority. An element of the offense in the criminal trial was that Mr. Bannon was "summoned as a witness by the authority of the U.S. House of Representatives." Each of the Movants has first-hand knowledge that is exculpatory on this element. Second, the Select Committee rejected Mr. Bannon's reasonable request for an accommodation (a one-week extension), even though much longer extensions were granted to many Select Committee deponents, despite the fact that the accommodation process is a constitutional imperative when there is a tension between a legislative subpoena and executive privilege. *U.S. v. American Tel. & Tel. Co.*, 567 F.2d 121, 126-133 (D.C. Cir. 1977); *Comm. on the Judiciary of the U.S. House of Representatives v. McGahn,* 968 F.3d 755, 772 (D.C. Cir. 2020) & *Id.* at 778 to end, Henderson, J., dissenting.[28]

---

[28] *See also Cheney v. U.S. Dist. Court for D. C.*, 542 U.S. 367, 389-390 (2004) (quoting *Nixon*, 418 U.S., at 692); *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2025 (2020); *U.S. v. House of Representatives*, 556 F. Supp. 150, 152-153 (D.D.C. 1983); *Barenblatt v. U.S.*, 360 U.S. 109 (1959); *Ansara v. Eastland*, 442 F.2d 751 (D.C. Cir. 1971); *Tobin v. U.S.*, 306 F.2d 270, 276 (D.C. Cir. 1962).

The Framers did not rank some constitutional protections as superior to others. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 561 (1976). The Sixth Amendment entitles Mr. Bannon to a "meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Inherent in this right is the right to offer testimony of witnesses and compel their attendance. *Washington v. Texas*, 388 U.S. 14, 19 (1967) (it is fundamental to due process that "[j]ust as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense"); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (few rights are more fundamental than that of an accused person to present witnesses in his own defense.).

Mr. Bannon tailored the requests narrowly to capture documents that reflect specific communications by each Movant related to Mr. Bannon, and specific documents that reflect the bias of the Movant against Mr. Bannon.  The intended testimony of each witness was directly relevant and narrowly tailored. (A2113-2227) *See Welsh v. U.S.*, 404 F.2d 414, 417-418 (5th Cir. 1968) (quoting *Greenwell v. U.S.*, 115 U.S. App. D.C. 44 (1963)).  Mr. Bannon provided a detailed proffer and explanation of the material reasons for which he sought their testimony.  (A4330-4354).

46

Subpoenaed witness, Letter, voluntarily participated in an FBI interview where he stated that the Select Committee had no ranking minority member. (A237). He later changed his position and claimed that Representative Liz Cheney is the ranking member on the Select Committee; however, Committee Chairman Thompson has explicitly said that Representative Cheney is not the ranking member.[29]

The jury was entitled to hear evidence on that issue – which is critical to the "authority" element of the offense. It was error to quash the subpoena; but if the ruling were correct, the relief he seeks herein still applies.

Movants argued that, even though they initiated this prosecution, they are "high-ranking government officials" who are too important and too busy to appear as trial witnesses. (A2104); but the cases they cited are inapposite. Again, if the court was correct in granting the Motion to Quash on this ground, the relief sought herein applies.

The only way to preserve Mr. Bannon's Fifth and Sixth Amendment rights was to exclude all congressional evidence or dismiss. In a criminal prosecution, the government's ultimate responsibility is to ensure justice is done. *Jencks v. U.S.*,

---

[29] YOUTUBE, *Watch: Jan. 6 House Select Committee Holds First Hearing On Capitol Riot* (July 27, 2021), https://www.youtube.com/watch?v=vHrt44ANHIA at 16:37; *see also* (Kimberly Wehle, *The Case for Subpoenaing Members of Congress to Testify on the January 6 Insurrection: Democrats have strong constitutional arguments on their side*, THE ATLANTIC (Aug. 26, 2021).

353 U.S. 657, 670-71 (1957).  It follows that under the circumstances, the

Government "can invoke its evidentiary privileges only at the price of letting the

defendant go free." *Id.* (citing *U.S. v. Reynolds*, 345 U.S. 1, 12 (1953)). The

Supreme Court has held, for instance, that a criminal action must be dismissed

when the government, on the grounds of privilege, elects not to produce documents

relevant and material to a government witness's testimony. *Jenks*, 353 U.S. at 657;

*Id.* at 670-71 (holding that it is "unconscionable to allow it to undertake

prosecution and then invoke its governmental privileges to deprive the accused of

anything which might be material to his defense."); *Roviaro v. U.S.*, 353 U.S. 53,

60-61 (1957).

**THE LOWER COURT ERRED IN DENYING THE MOTION TO DISMISS
THE INDICTMENT AND IN REFUSING TO ALLOW MR. BANNON TO
MAKE ARGUMENTS REGARDING THE SUBPOENA'S VALIDITY.**

Mr. Bannon argued below that the indictment had to be dismissed for a lack

of lawful authority for the subpoena, based on the composition of the Committee

and its failure to comply with the requisite rules. (A1629).  He also joined the

House Minority Leadership *Amicus* and incorporates that position here.  (A2035-

2070). His motion to dismiss was denied and the court entered an Order barring

him from raising any legal argument or pursuing any claim at trial that the

subpoena was not valid. (A3004-3010). The court excused the government from

48

proving the Committee's authority to issue the subpoena and from proving

compliance with House rules. (A3110).

**The Subpoena Was Not Lawfully Issued**

The subpoena commanding Mr. Bannon to appear and produce documents

was not lawfully issued.  A subpoena's validity is an element of the crime charged.

Article I §5 of the United States Constitution provides that "[e]ach House may

determine the rules of its proceedings." The "rules of Congress and its committees

are judicially cognizable." *Yellin v. U.S.*, 374 U.S. 109, 114 (1963).[30] The rules

provide an essential safeguard because they operate as a check and control on the

actions of the majority.[31] When a committee violates the rules by exceeding its

authorized power in a way that threatens the liberty interest of an individual, the

judiciary must protect that individual. *See Yellin v. U.S.*, 374 U.S. 109, 117-119

(1963) (reversing 2 U.S.C. §192 conviction where congressional subcommittee

violated its rules).

The Select Committee was established by the passage of H. Res. 503 on June

30, 2021. The authority of the Select Committee is set forth in that authorizing

---

[30] *Citing Christoffel v. U.S.*, 338 U.S. 84 (1949); *U.S. v. Smith,* 286 U.S. 6 (1932); and *U.S. v. Ballin*, 144 U.S. 1 (1892).

[31] https://www.govinfo.gov/content/pkg/HMAN-117/pdf/HMAN-117.pdf; https://www.govinfo.gov/content/pkg/GPO-HPRACTICE-115/pdf/GPO-HPRACTICE-115.pdf.

resolution, together with the House Rules. Any action by the Select Committee that is inconsistent with the procedures authorized by the full House is *ultra vires* and invalid. *See*, *e.g*., *Kilbourn v. Thompson*, 103 U.S. 168, 196 (1880).  The Select Committee may only act within the bounds set forth by the Constitution. *Id*.

**The Composition Of The Select Committee Invalidates The Subpoena.**

The Select Committee that issued the subpoena to Mr. Bannon was not composed consistent with the authority granted to the Select Committee by the full House.  Its subpoena was therefore invalid. The resolution authorizing the Select Committee required the Committee to have 13 members, 5 of whom were to be appointed after consultation with the minority leader.  "Shall" leaves no discretion; but the Committee had 9 members, none of whom was appointed after consultation with the minority leader – an "unprecedented" step.[32]

Because the Committee was not composed as authorized, the subpoena to Mr. Bannon was invalid.  *See Christoffel v. U.S.*, 338 U.S. 84, 90 (1949); *Exxon Corp. v. FTC*, 589 F.2d 582, 592 (D.C. Cir. 1978).

The rights of a deponent and the minority depend on having a ranking minority member on the Committee.  This Committee had none.

---

[32] https://www.republicanleader.gov/mccarthy-statement-about-pelosis-abuse-of-power-on-january-6th-select-committee/
https://www.speaker.gov/newsroom/7212-2.

The authorizing resolution only allows depositions, pursuant to subpoena, after consultation with the Select Committee's ranking minority member. (Addendum) The authorizing resolution also incorporates both the House Rules and the separate regulations on use of deposition authority, which both require consultation with the ranking minority member before seeking depositions pursuant to subpoena. (Addendum)

The deposition regulations referenced in both H. Res. 503 and H. Res. 8 also require ranking minority member consultation. (Addendum).

The rules require consultation with the ranking minority member before issuance of a subpoena for deposition testimony, participation by counsel designated by the ranking minority member in questioning a deponent, and consultation with the ranking minority member before release of a deposition transcript. (Addendum)

The rules governing the Committee are so important that if a witness is not provided with a copy of Section 3(b) of the rules (describing deposition authority), he shall not be required to testify. (Addendum).  It is undisputed that Mr. Bannon was *not* provided with a copy of Section 3(b). (A237; A933; A4780).  The court also violated Mr. Bannon's 5th and 6th Amendment rights and Rule 30(b) & (d), Federal Rules of Criminal Procedure, by unilaterally, without consultation with the parties, adding a jury instruction that completely undermined the record and Mr.

51

Bannon's closing argument on the Rule 3(b) issue, at odds with an earlier ruling in the case.  Mr. Bannon objected (A4435) and cites this as error.

The subpoena issued to Mr. Bannon was invalid.[33]  It was not in accord with the subpoena and deposition authority granted by the House to the Select Committee.

## The Subpoena Was A Misguided And Unconstitutional Effort To Make An Example Of Mr. Bannon.

The subpoena issued to Mr. Bannon, however, did not advance legislative purpose.  It was an unconstitutional attempt to usurp the executive branch's authority to enforce the law, and an effort to impede Mr. Bannon's First Amendment rights to association and free speech. Select Committee members have articulated that Mr. Bannon was targeted to send a message to other potential deponents. The Select Committee is not authorized to issue a subpoena for that purpose. Congress' subpoena power is ancillary to its legislative authority. *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031(2020). Accordingly, a congressional committee may only issue a subpoena that serves a valid legislative purpose. *See McGrain v. Daugherty*, 273 U.S. 135, 171 (1927); *Kilbourn v. Thompson*, 103 U.S. 168, 195 (1880); *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982).

---

[33] The House Rules further state that "[c]ompliance with a subpoena issued by a committee or subcommittee under subparagraph (1)(B) may be enforced only as authorized or directed by the House." (A957)

Courts considering whether a subpoena serves a valid legislative purpose consider whether a particular subpoena serves a valid purpose, not whether the committee has a valid legislative purpose. *See Mazars*, 140 S. Ct. at 2031. A committee subpoena issued in order to create a record of alleged violations of law, or to harass witnesses or send a message, is not valid. A congressional subpoena issued to investigate and punish perceived criminal wrongdoing unconstitutionally intrudes on the powers of the Executive Branch. Similarly, a desire to "expose for the sake of exposure" in not a valid purpose of a congressional subpoena. *See Watkins v. U.S.*, 354 U.S. 178, 200 (1957). The Indictment fails to allege how the subpoena issued to Mr. Bannon could validly inform legislation.[34] Rather, the statements of Select Committee members reveal that the subpoena issued to Mr. Bannon had an invalid purpose.[35] Because the subpoena was not issued in furtherance of a valid legislative purpose, the indictment must be dismissed.

---

[34] This Court has found that "the January 6th Committee plainly has a 'valid legislative purpose' and its inquiry 'concern[s] a subject on which legislation could be had.'" *Trump v. Thompson,* 20 F.4th 10, 41 (D.C. Cir. 2021) (quoting *Trump v. Mazars USA*, *LLP*, 140 S. Ct. 2019, 2031-32 (2020)), *injunction denied*, 142 S. Ct. 680 (Jan. 19, 2022), *cert. denied*, No. 21-932 (Feb. 22, 2022), we raise a different argument – that the subpoena *issued to Mr. Bannon* served no valid legislative purpose.

[35] *See* A827.

**Bannon's Objections To The Subpoena Were Not Waived**

Mr. Bannon communicated the objections he was aware of to the Select Committee – to the extent he did not, it was because they were not fully apparent to him at the time he was scheduled to appear or produce documents.

In *Yellin v. U.S.,* 374 U.S. 109 (1963), the Court held that procedural objections are not waived when they were not fully apparent until trial, by which point the witness has had an opportunity for "searching examination" to determine whether the Committee has violated its rules or the subpoena is otherwise deficient. *Id.* at 122-23. In any event, "he would at least be entitled to submit the correctness of his belief to a court of law." *Id; see also Liveright v. U.S.*, 347 F.2d 473, 474-76 (D.C. Cir. 1965).

Federal courts have "the duty to accord a person prosecuted for [alleged violations of 2 §192] every safeguard which the law accords in all other criminal cases." *Russell v. U.S.*, 369 U.S. 749, 755 (1962). The Courts must apply the same exacting standards of criminal contempt of Congress as it would in any ordinary criminal case, "to assure that the congressional investigative power, when enforced by penal sanctions, would not be abused." *Gojak v. U.S.*, 384 U.S. 702, ____ (1966), (citations omitted). Thus, in a criminal contempt case, "it is clear as a matter of law that the usual standards of criminal law must be observed, including proper allegation and proof of all the essential elements of the offense." *Id.* (citing

*Watkins v. U.S.*, 354 U.S. 178, 208; *Russell v. U.S.*, 369 U.S. 749, 755; *U.S. v. Lamont*, 18 F.R.D. 27, 37 (S.D.N.Y.1955), *aff'd*, 236 F.2d 312 (C.A. 2d Cir. 1956)).

Whether the subpoena was properly issued goes not only to congressional authority, but also to the court's authority to hear related proceedings and the Government's burden of proof. In *Russell*, for example, the Court held that the subject of the subpoena is "the basic preliminary question which the federal courts" must decide. *Russell*, 369 U.S. at 756-57. As such, "pertinency is a 'jurisdictional concept' and it must be determined by reference to the authorizing resolution of an investigation." *Watkins v. U.S.*, 354 U.S. 178, 201 (1957). Otherwise, the subpoena is not enforceable.

It follows that a court's jurisdiction to hear a criminal contempt of Congress case hangs on the procedures and rules under which the subpoena was issued. A witness cannot waive subject matter jurisdiction in any case. Moreover, proving the validity of the subpoena is an element of the criminal charge, with the burden on the prosecution.

Defects in the validity of the subpoena and process related to it also go directly to the *mens rea* element of §192 and whether the defendant has "willfully" made a "default." Mr. Bannon put the Select Committee on notice of several procedural objections, including the impact of their refusal to let the privilege holder's representative attend any deposition and the impropriety of the

Committee's failure to try to come to an accommodation when executive privilege has been invoked – a process this Court has treated as called a "constitutional imperative." The Committee failed to act on those objections.  There certainly cannot be any waiver of the objection to the failure to provide Bannon with a copy of Rule 3(b); for in the cover letter accompanying the subpoena, Chairman Thompson misleadingly assured Bannon that all relevant rules were being provided.  It is undisputed that no copy of Rule 3(b) was provided.

The subpoena was invalid for the foregoing reasons and the lower court erred by denying Mr. Bannon the chance to put forward his arguments.

## <u>CONCLUSION</u>

Based on all of the foregoing, the lower court's decision must be reversed.

/s/ David I. Schoen
David I. Schoen
LAW OFFICE OF  DAVID I. SCHOEN
2800 Zelda Road, Suite 100-6
Montgomery, AL  36106
(334) 395-6611

*Counsel for Appellant*

56

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of

the Federal Rules of Appellate Procedure because it contains <u>12,910</u> words,

excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) and the

type style requirements of Rule 32(a)(6) because it has been prepared in a

proportionally spaced typeface using Microsoft Word in <u>Times Roman 14-point</u>

<u>font</u>.

<div style="margin-left:50%">

<u>/s/ David I. Schoen</u>
David I. Schoen
LAW OFFICE OF  DAVID I. SCHOEN
2800 Zelda Road, Suite 100-6
Montgomery, AL  36106
(334) 395-6611

*Counsel for Appellant*

</div>

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(d) and Cir. R. 25, that on May 3, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/ David I. Schoen
David I. Schoen
LAW OFFICE OF  DAVID I. SCHOEN
2800 Zelda Road, Suite 100-6
Montgomery, AL  36106
(334) 395-6611

*Counsel for Appellant*

Dated: May 3, 2023

# **ADDENDUM**

## ADDENDUM

## TABLE OF CONTENTS

## STATUTES AND REGULATIONS (CIRCUIT RULE 28(a)(5))

1.  2. U.S.C. §192.........................................................................................Add. 1

2.  Model Penal Code §2.04(3)(b) (1962) ...................................................Add. 1

3.  House Resolution 503........................................................................ Add. 1-2

4.  House Resolution 8...............................................................................Add. 2

5.  117th Congress Regulations for Use of Deposition Authority............ Add. 2-3

6.  Speech of Debate Clause .......................................................................Add. 3

**2 U.S.C. §192:**

> Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months.

**The Model Penal Code §2.04(3)(b) (1962) provides in pertinent part:**

> "A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when … [the defendant] acts in *reasonable reliance* upon an official statement of the law … contained in (i) a statute or other enactment; (ii) a judicial decision, opinion or judgment; (iii) an administrative order or grant of permission; or (iv) *an official interpretation of the public officer of body charged by law with responsibility for the interpretation or enforcement of the law defining the offense."* (emphasis added).

**H. Res. 503 provides, in pertinent part, as follows:**

**SEC. 5. PROCEDURE.**

\* \* \*

(c) APPLICABILITY OF RULES GOVERNING PROCEDURES OF COMMITTEES.—Rule XI of the Rules of the House of Representatives shall apply to the Select Committee except as follows:

\* \* \*(6)(A) The chair of the Select Committee, *upon consultation with the ranking minority member*, may order the taking of depositions, including pursuant to subpoena, by a Member or counsel of the Select Committee, in the same manner as a standing committee pursuant to section 3(b)(1) of House Resolution 8, One Hundred Seventeenth Congress.

(B) Depositions taken under the authority prescribed in this paragraph shall be governed by the procedures submitted by the chair of the Committee on Rules for printing in the Congressional Record on January 4, 2021.
(H. Res. 503, 117th Cong. (2021) at § 5) (emphasis added) **(A921-923)**.

**H. Res. 8 (adopting rules for the 117th Congress) provides, in pertinent part,**

**as follows:**

### SEC. 3. SEPARATE ORDERS.

    * * *
(b) DEPOSITION AUTHORITY.—

(1) During the One Hundred Seventeenth Congress, the chair of a standing committee (other than the Committee on Rules), and the chair of the Permanent Select Committee on Intelligence, *upon consultation with the ranking minority member* of such committee, may order the taking of depositions, including pursuant to subpoena, by a member or counsel of such committee.

(2) Depositions taken under the authority prescribed in this subsection shall be subject to regulations issued by the chair of the Committee on Rules and printed in the Congressional Record. (H. Res. 8, 117th Cong. (2021) at § 3(b)) (emphasis added) **(A885)**.

## 117th Congress Regulations for Use of Deposition Authority

* * *
2. Consultation with the *ranking minority member* shall include three days' notice before any deposition is taken.
* * *
3. . . . Observers or counsel for other persons, including counsel for government agencies, may not attend.
* * *
5. . . . When depositions are conducted by committee counsel, there shall be no more than two committee counsel permitted to question a witness per round. One of the committee counsel shall be designated by the chair and the other by the *ranking minority member* per round.
6. Deposition questions shall be propounded in rounds . . . equal time to the majority and minority. In each round, the member(s) or committee counsel

designated by the chair shall ask questions first, and the member(s) or committee counsel designated by the *ranking minority member* shall ask questions second. * * *

10. The chair and *ranking minority member* shall consult regarding the release of transcripts . . ..

11. A witness shall not be required to testify unless the witness has been provided with a copy of Section 3(b) of H. Res. 8, 117th Congress, and these regulations. (Cong. Rec. H41 (Jan. 4, 2021)) (emphasis added) **(A928)**.

**The Speech or Debate Clause (U.S. Const. Art. I § 6, cl. 1) provides in**

**pertinent part:**

> The Senators and Representatives … shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.