# [ORAL ARGUMENT HAS NOT BEEN SCHEDULED]

In The

# United States Court Of Appeals
## For The D.C. Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## STEPHEN K. BANNON,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————

## REPLY BRIEF OF APPELLANT

———————————

**David I. Schoen**
**LAW OFFICE OF**
  **DAVID I. SCHOEN**
**2800 Zelda Road**
**Suite 100-6**
**Montgomery, AL  36106**
**(334) 395-6611**

*Counsel for Appellant*

**Gibson Moore Appellate Services, LLC**
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA  23219
804-249-7770 ♦ www.gibsonmoore.net

## **<u>TABLE OF CONTENTS</u>**

**Page:**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ............................................................................. 1

SUMMARY OF ARGUMENT ................................................. 4

ARGUMENT ................................................................................. 5

    The Government is Wrong Regarding *Licavoli* ............................................. 5

    The Government Concedes on Appeal OLC Bars Prosecution Under 2 U.S.C. §192 When Executive Privilege is Invoked ........................................ 9

    The Government's Assertions on Entrapment by Estoppel are Wrong ........ 19

CONCLUSION ..............................................................................23

CERTIFICATE OF COMPLIANCE.......................................................25

CERTIFICATE OF SERVICE ...........................................................26

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases:**

*Brewster v. Comm'r*,
    607 F.2d 1369, 197 U.S. App. D.C. 184 (D.C. Cir. 1979)..............................8

*Comm. on the Judiciary of the*
*United States House of Representatives v. McGahn*,
    968 F.3d 755 (D.C. Cir. 2020).............................................................6, 18, 22

*Hart v. Massanari*,
    266 F.3d 1155 (9th Cir. 2001) ...........................................................................8

*Licavoli v. U.S.*,
    294 F.2d 207 (D.C. Cir. 1961).........................................3, 4, 5, 6, 7, 8, 9, 23

*Nat'l R.R. Passenger v. ExpressTrak, LLC*,
    Civil Action No. 02-1773, 2006 U.S. Dist. LEXIS 74923,
    2006 WL 2947558 (D.D.C. Oct. 16, 2006) ....................................................8

*Nippon Shinyaku Co. v. Iancu*,
    369 F.Supp.3d 226 (D.D.C. 2019)...................................................................8

*Nixon v. Adm'r of General Services*,
    433 U.S. 425 (1977)......................................................................................16

*Senate Select Committee on Presidential Campaign Activities v. Nixon*,
    498 F.2d 725 (D.C. Cir. 1974)................................................................ 17-18

*Sinclair v. U.S.*,
    279 U.S. 263 (1929), *overruled on other grounds by*
      *U.S. v. Gaudin*,
        515 U.S. 506 (1995) ...................................................................5, 7, 8

*Supernus Pharm., Inc. v. Iancu*,
    913 F.3d 1351 (Fed. Cir. 2019).......................................................................8

*Townsend v. U.S.*,
    95 F.2d 352 (D.C. Cir.), *cert. denied*, 303 U.S. 664 (1938) ...........................7

*Trump v. Mazars USA LLP*,
    140 S.Ct. 2019 (2020) ...........................................................................................7

*Trump v. Thompson*,
    142 S.Ct. 680; 211 L.Ed.2d 579 (January 19, 2022),
    *denial of certiorari*, 142 S.Ct. 680 (January 19, 2022) .................................17

*U.S. v. Abcasis*,
    45 F.3d 39 (2d Cir. 1995) ..................................................................................20

*U.S. v. AT&T*,
    567 F.2d 121 (D.C. Cir. 1977) ..........................................................................21

*U.S. v. Barker*,
    546 F.2d 940 (D.C. Cir. 1976) ..........................................................................19

*U.S. v. Bryan*,
    524 U.S. 184 (1998) .............................................................................................6

*U.S. v. Burden*,
    934 F.3d 675 (D.C. Cir. 2019) ............................................................................6

*U.S. v. George*,
    386 F.3d 383 (2d Cir. 2004) ...........................................................................5, 6

*U.S. v. House of Representatives*,
    556 F.Supp. 150 (D.D.C. 1983) ........................................................................24

*U.S. v. Hsia*,
    176 F.3d 517 (D.C. Cir. 1999) ............................................................................5

*U.S. v. Murdock*,
    290 U.S. 389 (1933) .............................................................................................7

*U.S. v. Myers*,
    2008 U.S. Dist. LEXIS 43981,
    2008 WL 2275457 (N.D. W. Va., June 3, 2008) ...............................................7

*U.S. v. Nixon*,
  418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ..........................17, 18

*U.S. v. Pennsylvania Indus. Chem. Corp.*,
  411 U.S. 655 (1973)...................................................................................19

*U.S. v. PICCO*,
  U.S. 655 (1973)...................................................................................19, 20

*U.S. v. Talmadge*,
  829 F.2d 767 (9th Cir. 1997) .......................................................................20

*U.S. v. Urfer*,
  287 F.3d 663 (7th Cir. 2002) ..........................................................................6

*Williamson v. U.S.*,
  207 U.S. 425 (1908)........................................................................................7

**Statutes:**

2 U.S.C. § 192 ........................................................ 2, 3, 4, 6, 7, 9, 10, 23

Model Penal Code § 2.04(3)(b) ...............................................................10

**Constitutional Provisions:**

U.S. Const. amend. V...............................................................................23

U.S. Const. amend. VI .............................................................................23

U.S. Const. amend., art. II........................................................................17

U.S. Const. amend., art. III ......................................................................16

**Other Authorities:**

*Applicability of Post-Employment Restrictions in 18 U.S.C. § 207 to a
Former Government Official Representing a Former President or
Vice President in Connection with the Presidential Records Act*
     (June 20, 2001) ...................................................................................16

*Application of 28 U.S.C. §458 to
Presidential Appointment of Federal Judges,*
     19 Op. O.L.C. slip op. (December 18, 1995) ................................12, 14

Assertion of Executive Privilege Concerning the
Dismissal and Replacement of U.S. Attorneys,
     31 Op. O.L.C. 1 (2007) ......................................................................18

*Attempted Exclusion of Agency Counsel from Congressional
Depositions of Agency Employees,*
     2019 WL 2563045 (O.L.C.) (May 23, 2019) ...............................2, 20

*Availability of Information From the Federal Departments and
Agencies: Hearings Before a Subcommittee of the House
Committee on Government Operations,*
     84th Cong. 2891 (1956) ......................................................................11

*Congressional Oversight of the White House,*
     45 Op. O.L.C. slip op. (January 8, 2021) ...............................2, 14, 18

Dubin, *Mens Rea Reconsidered: A Plea for a
Due Process of Criminal Responsibility,*
     18 Stan. L. Rev. 322 (1966) .................................................................9

H. Packer, *Mens Rea and the Supreme Court,*
     1962 Sup. Ct. Rev. 107 (1962) ............................................................9

*Immunity of Former Counsel to the President from
Compelled Congressional Testimony,*
     43 Op. O.L.C. slip op. (July 10, 2007) .........................................14, 18

John W. (1997) *"They Knew What We Were Doing?":
The Evolution of the Criminal Estoppel Defense*,
William Mitchell Law Review:
    Vol. 23: Issue. 4, Article 1 ................................................................19

*Letter from Attorney General Eric Holder to President Barack Obama*
    (June 19, 2012) ........................................................................ 16-17

*Letter from Michael B. Mukasey, Attorney General, to the Hon.
Nancy Pelosi, Speaker of the House of Representatives*
    (Feb. 29, 2008) .............................................................................12

Memorandum for Peter J. Wallison, Counsel to the President,
from Charles J. Cooper, Assistant Attorney General,
Office of Legal Counsel
    (Sept. 8, 1986) .........................................................................21, 22

Memorandum for Rudolph W. Giuliani, Associate Attorney General,
from Theodore B. Olson, Assistant Attorney General, Office of Legal
Counsel, Re: Congressional Demand for Deposition of Counsel to the
President Fred F. Fielding
    (July 23, 1982) .........................................................................21, 22

*Memorandum Opinion for the Associate Counsel to the President* by
Daniel L. Koffsky Acting Assistant Attorney General).
    https://irp.fas.org/agency/doj/olc/pra-post.pdf ................................16

Note, *Criminal Liability Without Fault: A Philosophical Perspective*,
    75 Colum. L. Rev. 1517 (1975) .........................................................9

Phillip M. Kannan, *The Precedential Force of Panel Law*,
    76 Marq. L. Rev. 755 (1993) .............................................................8

*Prosecution for Contempt of Congress of an Executive Branch Official
Who Has Asserted a Claim of Executive Privilege*,
    8 Op. O.L.C. 101 (May 30, 1984) ..........................................10, 13, 14

*Protective Assertion of Executive Privilege Over Unredacted
Mueller Report and Related Investigative Files*,
    43 Op. O.L.C. __ (May 8, 2019) (Barr, Att'y Gen.)
    https://www.justice.gov/olc/opinion/file/1350191/download ............16

*Protective Assertion of Executive Privilege Regarding*
*White House Counsel's Office Documents*,
   20 Op. O.L.C. 1 (1996) (Reno, Att'y Gen.)
    https://www.justice.gov/file/20056/download .................................................16

R. Lee, *Executive Privilege, Congressional Subpoena Power, and*
*Judicial Review: Three Branches, Three Power, and Some Relationships*,
   1978 B.Y.U. L. Rev. 231 ...................................................................12

*Representation of Congress and Congressional Interests in Court:*
*Hearings Before the Subcomm. on Separation of Powers of the*
*Senate Committee on the Judiciary*,
   94th Cong. 8 (1976) ..........................................................................11

*Response to Congressional Requests for Information Regarding*
*Decisions Made Under the Independent Counsel Act*,
   10 Op. O.L.C. 68 (1986) ...................................................................12

*Testimonial Immunity Before Congress of the*
*Former Counsel to the President*,
   (O.L.C. May 20, 2019).................................................................14, 22

*Whether the Department of Justice May Prosecute*
*White House Officials for Contempt of Congress*,
   32 Op. O.L.C. 65 (2008) .............................................................14, 22

## INTRODUCTION

On September 23, 2021, Appellant Stephen K. Bannon's experienced attorney, Robert J. Costello, agreed to accept service of a subpoena for Mr. Bannon from the January 6th House Committee.  Shortly thereafter, Costello told Bannon, a former executive branch close advisor to former President Trump, that President Trump had invoked executive privilege with respect to the subpoena, [A359-372], a fact later confirmed by the former President [A4781].

Costello told Bannon that because executive privilege had been invoked, Bannon's hands were tied and he could not lawfully comply with the subpoena, unless or until the executive privilege issue was resolved between the House and the former President or a court ordered him to comply.  Costello told Bannon that he based his advice and directives to Bannon on his review of relevant caselaw and binding authoritative legal opinions from the Department of Justice's Office of Legal Counsel. [A359-372]

Costello shared the OLC Opinions with Bannon and Bannon relied on Costello's advice and directives and the OLC Opinions.  [*Id*.]  The OLC Opinions included one holding that when executive privilege has been invoked, the subpoena is entirely invalid and unconstitutional if the Committee will not allow

1

the privilege holder's counsel to attend the witness's deposition.[1] Other OLC Opinions relied on provided that Congress could not compel compliance with a subpoena when executive privilege had been invoked, as it would run afoul of the Separation of Powers doctrine and the principle that an invocation of executive privilege is presumptively valid, and that a witness so situated could not constitutionally be charged under 2 U.S.C. §192.  [*e.g.* A1080-1121].  They further relied on caselaw and OLC Opinions holding that a former President has the right to invoke executive privilege as his prerogative and that this right extended to communications and other dealings with former Executive Branch employees. [A359-372].

Costello advised the Committee that Mr. Bannon could not comply with the subpoena unless and until the executive privilege issue was resolved between the House and former President Trump or by a court.  [A359-372]

Following Mr. Bannon's indictment, the Government asked the Court to bar any defense or evidence regarding Bannon's reliance on advice of counsel or on "the law," arguing that the reason a witness does not comply with a subpoena is

---

[1] *Congressional Oversight of The White House* [A1061]; *Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 2019 WL 2563045 (O.L.C.) at *1 (May 23, 2019) [A294] ("Congressional subpoenas that purport to require agency employees to appear without agency counsel are legally invalid and are not subject to civil or criminal enforcement.").  The subpoena was a single subpoena seeking documents and testimony.  It is undisputed that the Committee advised Costello that the privilege holder's counsel could not attend.

irrelevant under §192, notwithstanding the "willful" requirement of the statute.[2] The Government based its position on this Court's decision in *Licavoli v. U.S.*, 294 F.2d 207 (D.C. Cir. 1961), a case not involving any claim of privilege. [A311]

The district court granted the motion, notwithstanding its repeatedly expressed view that *Licavoli* cannot be reconciled with the accepted meaning of "willfully" in the criminal context, that it had serious reservations about applying it, and ultimately, believed its application likely would result in the reversal of the conviction, but that his hands were tied. The district court accordingly barred Bannon from explaining to the jury why he did not comply with the subpoena, why he had understood, based on the advice of counsel and reliance on authoritative

---

[2] On the eve of trial, to the court's incredulity, Government counsel apparently with buyer's remorse, recognized the magnitude of its error in moving for the exclusion of the whole defense theory and tried to retreat from it, now asserting for the first time and contrary to all previous argument, that perhaps a belief that complying with the subpoena was prohibited by law under these circumstances would be relevant to the issue of whether the defendant acted "deliberately" and should be permitted. But the court reminded Government counsel that they had vigorously pressed for the prohibition, for any reason of any defense as to why Mr. Bannon responded as he did to the subpoena and specifically for the prohibition of any defense based on his reliance on "the law" and that the Court had granted the Government's motion so arguing barring any such evidence for any purpose. [A3821-3823]. Indeed, throughout the prosecution Government counsel expressly argued that any claim of reliance on counsel's advice/directives or on a belief executive privilege excused compliance had to be barred. The following is just one example of the Government's assertions: *"But even if his contempt were based on an erroneous but good-faith belief that he had a valid legal excuse for ignoring the subpoena's demands, whether by his own determination or his attorney's, it is no defense. All evidence and argument related to good-faith reliance on the law or an attorney's advice should therefore be excluded at trial."* [A320].

OLC Opinions that he could not lawfully comply.  The court barred any evidence of the same, including through Costello's testimony, never allowing Bannon or Costello to tell the story of Bannon's response or present the theory of defense.[3] [A741]  The Government, on the other hand, was permitted to argue to the jury that Bannon simply "ignored" the subpoena and did not comply because he thought he was "above the law.[4]" [A3913-3916]

Mr. Bannon now replies to certain arguments in the Government's Brief. He does not concede the merit of any unaddressed argument.  He relies on his Brief and on oral argument, if the Court grants it as requested.

## SUMMARY OF ARGUMENT

*Licavoli v. U.S.* cannot be reconciled with binding jurisprudence on "willfulness." Construing "willfulness" under 2 U.S.C. §192 as the lower court did renders the statute unconstitutional as applied when executive privilege is invoked.

---

[3]  Bannon provided the court with proffers of what his testimony would be if he were not barred from it [A4383-4385] and Costello provided a detailed declaration under penalty of perjury. [A359-372]

[4]  Bannon also gave a detailed proffer as to the specific areas on which he wanted to examine the Congressional witnesses for whom the subpoenas had been quashed [A4331-4355].  One of the areas related to the door the Government opened in its opening argument by telling the jury Bannon just "ignored" the subpoena, claiming he was "above the law."  [A4331-4332].  If they testified truthfully, the Congressional witnesses would have testified that the Government's claim was untrue and that Bannon had engaged with them about the Committee and had offered to comply fully if the executive privilege claim were resolved or a court ordered him to, notwithstanding the privilege invocation.

Mr. Bannon was entitled to rely on the OLC Opinions.  It was error to deny the defense of entrapment by estoppel and the reasonableness of his reliance was a jury question.  The lower court erred by barring all defenses.

## ARGUMENT

### The Government is Wrong Regarding *Licavoli*

The Government argues that *Licavoli* is indistinguishable binding authority, that this panel cannot overrule the *Licavoli* panel, and that the Court must ignore the past thirty-five years of jurisprudence from this Court and the U.S. Supreme Court defining "willfully" in the criminal context, because it is bound by the decision in *Licavoli*  and the decision in *Sinclair v. U.S.*, 279 U.S. 263 (1929), *overruled on other grounds by U.S. v. Gaudin*, 515 U.S. 506 (1995). [GB34-46]. For reasons addressed in the opening brief and discussed herein, the Government is wrong.[5]

---

[5] The Government cites cases it claims supports its argument that "willfully" in the criminal context does not always require a bad purpose.  [GB43-44].  Those cases are inapposite and, indeed, undercut the Government's position on the issue.  In *U.S. v. George*, 386 F.3d 383, 388-389 (2d Cir. 2004) and *U.S. v. Hsia*, 176 F.3d 517, 521-522 (D.C. Cir. 1999), the courts emphasize that the statute at issue required the defendant to know the information he provided was false, which itself is inherently wrong to do.  *See e.g., Hsia*, 176 F.3d at 522.  The instant situation presents a very different scenario.  The Committee's subpoena provided for Mr. Bannon to provide documents and testimony; but he was advised that executive privilege was invoked and prohibited him from complying.  There certainly is nothing inherently wrong with his response; it was the only course he understood the law to permit, highlighting the danger that every authoritative "willfulness" case Mr. Bannon has cited recognizes that the law prohibits – the criminal

*Licavoli* presented the materially distinguishable case of a subpoena recipient simply deciding not to comply with the subpoena; there was no claim of privilege of any kind involved.  The lower court, at the Government's behest, agreed that under *Licavoli,* no reason other than "accident" provides a defense to non-compliance; all that has to be proven is that a subpoena issued and that the

conviction of a defendant with an innocent state of mind.  *See e.g., George*, 386 F.3d at 392, *citing, U.S. v. Bryan*, 524 U.S. 184, 193 (1998) (requiring that the defendant know his conduct was unlawful).  Bannon all times believed his conduct to be the only course of conduct the law permits once executive privilege is invoked and he understood from his lawyer that it was not his privilege to waive or ignore, nor was it Congress's prerogative to determine the invocation's validity or breadth of coverage.  That would have been the role of a court, if the Committee had acceded to Bannon's assurance that he would fully comply if a court ruled on the executive privilege claim and permitted him to comply.  [A354-372].  *See Comm. on the Judiciary of the United States House of Representatives v. McGahn, 968 F.3d 755 (D.C. Cir. 2020) (*An Article III court referees such a dispute as this when the accommodation process between the parties fails*)*.

The third case cited by the prosecution provides even less support for its position. The court in *U.S. v. Urfer*, 287 F.3d 663, 666 (7th Cir. 2002), [GB44], simply recognizes the well-established principle that there are some acts that are *mala in se* and the conduct charged under the operative statute in the case, the unauthorized destruction of another person's property was, indeed, *malum in se*.  Therefore, under such a statute, the requisite *mens rea*, by definition includes knowledge that the conduct is unlawful when engaged in intentionally.  *Urfer*, 287 F.3d at 666.

The Government's effort [GB43] to limit this Court's decision in *U.S. v. Burden*, 934 F.3d 675, 689-93 (D.C. Cir. 2019) on the threshold requirement when a criminal statute requires "willfulness" (defendant must at least know the conduct is unlawful, even if he does not know what specific statute he is violating) because it does not mention §192 must be rejected by any fair reading of *Burden*.  [Bannon Brief at 21-22].  The decision below cannot be reconciled with *Burden*.

recipient did not comply.  This cannot withstand constitutional scrutiny as applied in a case in which executive privilege is invoked, based on *Trump v. Mazars USA LLP*, 140 S.Ct. 2019, 2032 (2020) and the OLC Opinions cited throughout Mr. Bannon's brief and herein.[6]

The court in *Sinclair*, on which *Licavoli* is based, recognized that a claim of privilege could well present a materially different scenario and therefore a different result, expressly noting that the witness affirmatively announced that he was not claiming any privileged reason for not complying with the subpoena, 279 U.S. at 289.

The Government's assertions that this Court is bound by an earlier panel decision construing this statute and by the decision in *Sinclair*, because it reflects a higher court's construction of the statute, relies on a general rule of *stare decisis*

---

[6] Courts citing *Licavoli* have not adopted the restrictive definition of "willfulness" urged by the Government in this case. *See, e.g., U.S. v. Myers*, 2008 U.S. Dist. LEXIS 43981, *4, 2008 WL 2275457 (N.D. W. Va., June 3, 2008) (quoting *Licavoli* on "willfulness" and explaining that "willfulness" in the criminal contempt context means "a volitional act done by one who knows or reasonably should be aware that his conduct is wrongful."). The question whether an advice of counsel defense is available in a 2 U.S.C. § 192 prosecution depends on the facts of the case. *See, e.g., Townsend v. U.S.*, 95 F.2d 352, 359-60 (D.C. Cir.), *cert. denied, 303 U.S. 664 (1938)* ("There is nothing in the excluded evidence to indicate that appellant submitted the question of his duty to attend the committee hearings to an attorney and acted honestly upon that advice, relying upon it and believing it to be correct. There is nothing in the excluded evidence to indicate that there was any uncertainty in the mind of the appellant as to the law or as to his duty to attend.")  *Citing U.S. v. Murdock*, 290 U.S. 389, 397-98 (1933); *Williamson v. U.S.*, 207 U.S. 425, 453 (1908).

which is undermined here by recognized exceptions that the Government wholly

ignores.[7]  The invocation of executive privilege and Mr. Bannon's reliance on it

based on directives he received from his lawyer concerning its impact, fully

distinguish this case from *Licavoli* and *Sinclair* and the other cases the

Government relies on.  This panel is not bound by the holding in either decision

regarding the application of "wilfully makes default" or the right to rely on the

advice of counsel; rather it must consider the material factual and legal distinctions

presented by the operative facts here.  *Brewster*, 607 F.2d at 1373.

Moreover, in comparison with the undeniable fact that the definition of

"willfully" has completely evolved in the over sixty years since *Licavoli*, such that

---

[7] *See, e.g., Nippon Shinyaku Co. v. Iancu*, 369 F.Supp.3d 226, 237 (D.D.C. 2019). *Brewster v. Comm'r*, 607 F.2d 1369, 1373, 197 U.S. App. D.C. 184 (D.C. Cir. 1979) ("Stare decisis compels adherence to a prior factually indistinguishable decision of a controlling court.").  The rule of stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question. The impact of executive privilege has not been considered in this context.  *Nat'l R.R. Passenger v. ExpressTrak, LLC*, Civil Action No. 02-1773, 2006 U.S. Dist. LEXIS 74923, 2006 WL 2947558 at *6 (D.D.C. Oct. 16, 2006) (citations omitted); *see also Supernus Pharm., Inc. v. Iancu*, 913 F.3d 1351, 1357 (Fed. Cir. 2019) (finding that a prior decision with different facts and a different legal question was not controlling in that action)." *See also*, *Hart v. Massanari*, 266 F.3d 1155, 1172-73 (9th Cir. 2001) ("Using techniques developed at common law, a court confronted with apparently controlling authority must parse the precedent in light of the facts presented and the rule announced.  Insofar as there may be factual differences between the current case and the earlier one, the court must determine whether those differences are material to the application of the rule or allow the precedent to be distinguished on a principled basis); Phillip M. Kannan, *The Precedential Force of Panel Law*, 76 Marq. L. Rev. 755 (1993) (criticizing the interpanel doctrine).

the construction adopted below at the Government's urging cannot be reconciled with even the lowest bar under the modern formulation (and the district judge expressly noted), the Government's argument that it must be adopted because no case has expressly overruled *Licavoli*, is exceedingly weak, especially in the context of a statute that is so rarely used it has essentially fallen into desuetude and because its use in a situation comparable to the instant case is unheard of, as it clearly runs afoul of DOJ policy as reflected in its OLC Opinions.

The rejection of a *mens rea* that includes some consciousness of the wrongfulness of the conduct has come under sustained criticism for many years in especially compelling terms where a term of incarceration is the possible consequence of conviction, with commentators asserting that the error in permitting the same is of constitutional dimensions. *See e.g.,* H. Packer, *Mens Rea and the Supreme Court*, 1962 Sup. Ct. Rev. 107, 147-152 (1962); Dubin, *Mens Rea Reconsidered: A Plea for a Due Process of Criminal Responsibility*, 18 Stan. L. Rev. 322 (1966); Note, *Criminal Liability Without Fault: A Philosophical Perspective*, 75 Colum. L. Rev. 1517 (1975).

### The Government Concedes on Appeal OLC Bars Prosecution Under 2 U.S.C. §192 When Executive Privilege is Invoked

At all times below, the Government argued unequivocally that there is no defense, including reliance on a privilege claim, under §192 – that all that is

9

required is to show a summons was issued and the witness did not show up, "regardless of motivation." [See e.g., A314, A319-320, A415, A460-464].

However, the Government on appeal now expressly acknowledges that "[I]n a case where an Executive Branch employee does not comply with a subpoena because the sitting President has asserted executive privilege or another constitutional objection, the DOJ would not prosecute." [GB47, n.13]

It cites a binding, authoritative, detailed OLC Opinion on which Bannon expressly has relied at all times, that vigorously holds that any such prosecution would be barred by Separation of Powers and other constitutional concerns and may not be brought as a matter of law. *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101 (May 30, 1984) (A1080-1124).[8]  [*Id.*]  This OLC Opinion and its rationale, read in *pari materia* with other binding OLC Opinions cited herein makes it clear that the same principles apply when a former President invokes executive privilege regarding a former Executive Branch close advisor.  (see hereinbelow).

---

[8] This OLC Opinion also expresses the DOJ's doubt that the "willfulness" element of §192 can be satisfied when resistance is based on the invocation of executive privilege and whether criminal *mens rea* can be established when relying on an OLC Opinion.  [A1114, n.34], *citing* Model Penal Code §2.04(3)(b).

Fundamental to the rationale of the OLC Opinion to which the government refers are the principles that (1) whether and when to invoke executive privilege is exclusively the prerogative of the President (or former President) and it would violate the constitutional Separation of Powers doctrine for Congress to disregard the invocation, and (2) executive privilege is presumptively valid when invoked. Congress's unilateral rejection of the invocation violates the Separation of Powers doctrine.  [A1080-1121].

In 1956, Deputy Attorney General William Rogers presented a report to Congress that concluded that the criminal contempt of Congress statute was "inapplicable to the executive departments" where the President had asserted executive privilege. *See Availability of Information From the Federal Departments and Agencies: Hearings Before a Subcommittee of the House Committee on Government Operations*, 84th Cong. 2891, 2933 (1956).  That has been the official position of the DOJ in the six decades since then.

In 1976, Assistant Attorney General Rex Lee stated that if an executive branch member were cited for contempt of Congress because of the assertion of executive privilege, the DOJ would not present the matter to a grand jury. *Representation of Congress and Congressional Interests in Court: Hearings Before the Subcomm. on Separation of Powers of the Senate Committee on the Judiciary*, 94th Cong. 8 (1976).

11

During the Clinton administration, Assistant Attorney General Walter Dellinger stated that "the criminal contempt of Congress statute *does not apply* to the President or presidential subordinates who assert executive privilege." *Application of 28 U.S.C. Sec. 458*, 19 Op. O.L.C. at 356 [A1135] (emphasis added). Professor Dellinger wrote further that to apply "the contempt statute against an assertion of executive privilege would seriously disrupt the balance between the President and Congress." *Id*.  *See also Letter from Michael B. Mukasey, Attorney General, to the Hon. Nancy Pelosi, Speaker of the House of Representatives* (Feb. 29, 2008) [A1229]; *Response to Congressional Requests for Information Regarding Decisions Made Under the Independent Counsel Ac*t, 10 Op. O.L.C. 68 (1986) [A1195] ; R. Lee, *Executive Privilege, Congressional Subpoena Power, and Judicial Review: Three Branches, Three Power, and Some Relationships*, 1978 B.Y.U. L. Rev. 231, 259 [A1471] (it is unfair to prosecute a person for adhering to an assertion of executive privilege, as that person is not really being prosecuted for his own conduct, but rather for obedience to a higher assertion of constitutionally protected authority).

In the OLC Opinion, *Response to Congressional Requests for Information Regarding Decisions Made Under the Independent Counsel Act*, for example, OLC Assistant Attorney General Charles J. Cooper recounted the OLC's historic analysis of the consequences when a witness fails to comply with a congressional

12

subpoena based on a claim of executive privilege and wrote the following, relying

in part *on "Prosecution for Contempt of Congress of an Executive Branch Official*

*Who Has Asserted a Claim of Executive Privilege,"* 8 Op. O.L.C. 101 (1984)

("Olson Opinion"):

> "During the EPA matter, this Office rendered advice to the Attorney General, since memorialized in a memorandum on the applicability of §§ 192 and 194 to Executive Branch officials who assert claims of executive privilege on behalf of the President. … *We also concluded more broadly, however, that the contempt of Congress statute simply was not intended to apply and could not constitutionally be applied to an Executive Branch official who asserts the President's claim of executive privilege. We noted that neither the legislative history nor the subsequent implementation of §§ 192 and 194 suggest that Congress intended the statute to apply to executive officials who carry out a Presidential assertion of executive privilege. Moreover, as a matter of constitutional law, we concluded that the threat of criminal prosecution would unduly chill the President's ability to protect presumptively privileged Executive Branch deliberations … If one House of Congress could make it a crime simply to assert the President's presumptively valid claim, even if a court subsequently were to agree that the privilege claim were valid, the exercise of the privilege would be so burdened as to be nullified. Because Congress has other methods available to test the validity of a privilege claim and to obtain the documents that it seeks, even the threat of a criminal prosecution for asserting the claim is an unreasonable, unwarranted, and therefore intolerable burden on the exercise by the President of his functions under the Constitution. 8 Op. O.L.C. at 102. Therefore, Congress could not, as a matter of statutory or constitutional law, invoke the criminal contempt of Congress procedure set out in 2 U.S.C. §§ 192 and 194 against the head of an Executive Branch agency, if he acted on the instructions of the President to assert executive privilege in response to a congressional subpoena."*

(Emphasis added) (citation omitted). [A1212]

*See also, Testimonial Immunity Before Congress of the Former Counsel to the President*, (O.L.C. May 20, 2019) [A1186]; *Whether the Department of Justice May Prosecute White House Officials for Contempt of Congress*, 32 Op. O.L.C. 65, 68-69 (2008) [A1126-1127]; *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Privilege*, 8 Op. O.L.C. 101 (1984) [A1080-1121]; *Immunity of Former Counsel to the President from Compelled Congressional Testimony*, 43 Op. O.L.C. slip op. (July 10, 2007) [A1173-1193]; *Application of 28 U.S.C. §458 to Presidential Appointment of Federal Judges*, 19 Op. O.L.C. slip op. at 356 (December 18, 1995) [A1135] ("Despite the broad language, the criminal contempt of Congress statute does not apply to the President or to presidential subordinates who assert executive privilege."), q*uoting from*, A1135.

In 2021, the OLC specifically wrote that these principles apply to *former* officials with equal force and reaffirmed its position that the failure to permit the privilege holder's representative to attend any deposition renders the subpoena invalid and unconstitutional. *Congressional Oversight of the White House*, 45 Op. O.L.C. slip op. at 50-57 (January 8, 2021) [A1055-1062].

The government's attempt to distinguish the Opinion based on its claims that (1) executive privilege was not properly invoked; (2) President Trump's status as a

former President means he cannot invoke executive privilege; and (3) executive privilege cannot be invoked regarding a *former* close Presidential advisor.

This ignores the rationale underlying the OLC Opinions for why the DOJ is prohibited from prosecuting.[9] It also ignores directly applicable caselaw and binding OLC Opinions on (1) the presumption of validity when executive privilege is invoked; (2) the right of a former President to invoke executive privilege and (3) that executive privilege absolutely can be extended to communications with former Executive Branch employees or others who never have been Executive Branch employees.

The Government's characterization of the invocation of executive privilege as an "intention" to invoke privilege is factually incorrect and legally irrelevant. When the President recognizes that a subpoena is directed toward materials and information that might implicate executive privilege, it is well recognized that the President can make a "protective" assertion of privilege to give him the opportunity to determine exactly what documents and information are subject to

---

[9] As then Assistant Attorney General Ted Olson wrote in his 1984 OLC opinion, "… if executive officials were subject to prosecution for criminal contempt whenever they carried out the President's claim of executive privilege, it would significantly burden and immeasurably impair the President's ability to fulfill his constitutional duties.  Therefore, the separation of powers principles that underlie the doctrine of executive privilege also would preclude an application of the contempt of Congress statute to punish officials for aiding the President in asserting his constitutional privilege." [A1113]

executive privilege.[10] To the extent the Government questions whether executive

privilege was invoked, it also ignores President Trump's letter confirming that he

had, indeed, invoked executive privilege with respect to the Committee's subpoena

to Mr. Bannon. [A4781].

Mr. Bannon certainly was entitled to rely on the principle that a former

President retains the right to invoke executive privilege as to communications that

occurred during the time he was President.  *Nixon v. Adm'r of General Services*,

433 U.S. 425, 448-449 (1977) (recognizing need to maintain former President's

ability to assert privilege after leaving office to foster full and frank advice when in

office). *See also*, *Applicability of Post-Employment Restrictions in 18 U.S.C. § 207*

*to a Former Government Official Representing a Former President or Vice*

*President in Connection with the Presidential Records Act* (June 20, 2001,

*Memorandum Opinion for the Associate Counsel to the President* by Daniel L.

Koffsky Acting Assistant Attorney General).  https://irp.fas.org/agency/doj/olc/pra-

post.pdf*; Letter from Attorney General Eric Holder to President Barack Obama*

---

[10] *See Protective Assertion of Executive Privilege Regarding White House
Counsel's Office Documents, 20 Op. O.L.C. 1, 1 (1996) (Reno, Att'y Gen.)
https://www.justice.gov/file/20056/download; accord Protective Assertion of
Executive Privilege Over Unredacted Mueller Report and Related Investigative
Files, 43 Op. O.L.C. __ (May 8, 2019) (Barr, Att'y Gen.) https://www.justice.
gov/olc/opinion/file/1350191/download.  See also A1063* n.22.

(June 19, 2012); *Trump v. Thompson*, 142 S.Ct. 680, 680-681 (January 19, 2022),

*denial of certiorari* (Kavanaugh, J., concurring).[11]

He also was allowed to rely on the fundamental principle that a privilege

invocation is presumptively valid and the exclusive prerogative of a President or

former President.  Its validity and breadth are not for Congress to decide. *Senate*

---

[11] Justice Kavanaugh recently summed up the state of the law on the subject in his
concurrence with the denial of certiorari in *Trump v. Thompson*, 142 S.Ct. 680,
680-681; 211 L.Ed.2d 579 (January 19, 2022), *denial of certiorari*; and *Id.*, 142
S.Ct. at 680-681 (Kavanaugh, J., concurring):

> "… A former President must be able to successfully invoke the
> Presidential communications privilege for communications that
> occurred during his Presidency, even if the current President does not
> support the privilege claim. Concluding otherwise would eviscerate
> the executive privilege for Presidential communications.
>
> As this Court stated in *U.S. v. Nixon*, 418 U.S. 683, 708, 94 S.Ct.
> 3090, 41 L.Ed.2d 1039 (1974), the executive privilege for Presidential
> communications is rooted in Article II of the Constitution and is
> "fundamental to the operation of Government." …
>
> As was true at the Constitutional Convention, the Presidential
> communications privilege cannot fulfill its critical constitutional
> function unless Presidents and their advisers can be confident in the
> present *and* future confidentiality of their advice. If Presidents and
> their advisers thought that the privilege's protections would terminate
> at the end of the Presidency and that their privileged communications
> could be disclosed when the President left office (or were subject to
> the absolute control of a subsequent President who could be a political
> opponent of a former President), the consequences for the Presidency
> would be severe. Without sufficient assurances
> of *continuing* confidentiality, Presidents and their advisers would be
> chilled from engaging in the full and frank deliberations upon which
> effective discharge of the President's duties depends…."

17

*Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731 (D.C. Cir. 1974); *U.S. v. Nixon*, 418 U.S. 683, 708-709 (1974). It is to be broadly construed. *Congressional Oversight of The White House*, 45 Op. O.L.C. __, (Jan. 8, 2021) (A1006-1064); *Comm. on the Judiciary of the United States House of Representatives v. McGahn*, 968 F.3d 755 (D.C. Cir. 2020) (*en banc*).

Similarly, Mr. Bannon was entitled to rely on the well settled principle that executive privilege can be invoked with respect to a former employee of the executive branch or someone who has never been employed in the executive branch whose privileged counsel the President might seek.[12]  The governing legal principles apply even after a Presidential advisor leaves the White House.[13]

---

[12] Consider the following official DOJ policy statement:
". . . communications between White House officials and individual outside the Executive Branch, … fall within the scope of executive privilege . . .  Naturally, in order for the President and his advisers to make an informed decision, presidential aides must sometimes solicit information from individuals outside the White House and the Executive Branch." *Assertion of Executive Privilege Concerning Dismissal of U.S. Attorneys* at 5 (June 27, 2007) (recognizing right to invoke Executive Privilege over communications with former employees and outside consultants never formally employed by the Executive Branch). [A1070-1074].

[13] *See Immunity of the Former Counsel to the President from Compelled Congressional Testimony*, 43 Op. O.L.C. __, at *2 (July 10, 2007) [A1077-1078]; *See also Congressional Oversight of the White House* , 45 Op. O.L.C. __, (Jan. 8, 2021) [A1059-1060] (explaining that "the risk to the separation of powers and to the President's autonomy posed by a former adviser's testimony on official matters continues after the conclusion of that adviser's tenure").

## The Government's Assertions on Entrapment by Estoppel are Wrong

The Government argues that the defense of entrapment by estoppel only applies where the defendant has made direct inquiry of the agency at issue and received a direct response and when the agency's information relied on is exactly on point.  [GB60].  The Government is wrong.

In *U.S. v. Pennsylvania Indus. Chem. Corp.*, 411 U.S. 655, 675 (1973) ("PICCO"), the Court made clear that there need not be any inquiry by the defendant nor any communication directly from the agency to the defendant.  The defense applies where there is reliance on a government agency's written policy or interpretation of the law it is charged with enforcing and that reliance was reasonable under the circumstances. *Id*.  Moreover, the defense can be based on policy statements by an agency that appear to be contradicted by other authoritative agency statements.  *See PICCO*, 411 U.S. at 671-675.  *See also,* John W. (1997) "*They Knew What We Were Doing?": The Evolution of the Criminal Estoppel Defense*, William Mitchell Law Review: Vol. 23: Issue. 4, Article 1, at 850. Indeed, the defense applies even if the reasonably relied upon agency policy is incorrect.  *See U.S. v. Barker*, 546 F.2d 940, 952 (D.C. Cir. 1976).

The lower court erred by denying Bannon the defenses of entrapment by estoppel and public authority.  The reasonableness of his reliance on the OLC Opinions (and his lawyer's professional opinion on them) for a conclusion that he

could not and should not comply with the subpoena after being advised executive privilege had been invoked was a question for the jury. *PICCO*, at 675; *U.S. v. Talmadge,* 829 F.2d 767, 773-775 (9ᵗʰ Cir. 1997) (reasonable for defendant to rely on licensed firearms dealer and defense counsel); *U.S. v. Abcasis*, 45 F.3d 39 (2d Cir. 1995) (reversing conviction for failure to submit reasonableness of belief to justify entrapment by estoppel defense).

In addition to the specific principles set out in the OLC Opinions on which Mr. Bannon relied, consistent with his lawyer's understanding, explanations, and legal advice, Mr. Bannon understood from the OLC Opinions that he was obligated to honor the invocation of executive privilege and that he was not the privilege holder. Putting aside the question of the validity of the subpoena, with the Committee refusing to permit the privilege holder's representative to be present, Bannon was convinced that he could not produce documents or testify without specific guidance as to the scope of the information and materials covered by the privilege or he would risk violating it.  This was so once he was put on notice that it had been invoked.[14]

---

[14] *See Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees, 2019 WL 2563045 (O.L.C.) at \*8 (May 23, 2019) [A303]:*

> "Even if the President has not yet asserted a particular privilege, excluding agency counsel would diminish the President's ability to decide whether a privilege should be asserted. The Executive Branch cannot foresee every question or topic that may arise during a deposition, but if questions seeking privileged information are asked, agency counsel, if present, can ensure that the employee does not

Additionally, Mr. Bannon was duty bound to honor the constitutional

mandate to work toward an accommodation, as reflected in the case law, the OLC

Opinions, and congressional practice.[15]  That is why, far from ignoring the

---

impermissibly disclose privileged information. See Memorandum for
Rudolph W. Giuliani, Associate Attorney General, from Theodore B.
Olson, Assistant Attorney General, Office of Legal Counsel, Re:
Congressional Demand for Deposition of Counsel to the President
Fred F. Fielding at 2 (July 23, 1982) ("A witness before a
Congressional committee may be asked—under threat of contempt—a
wide range of unanticipated questions about highly sensitive
deliberations and thought processes. He therefore may be unable to
confine his remarks only to those which do not impair the deliberative
process."). The President, through his subordinates, must be able to
intervene before that information is disclosed, lest the effectiveness of
the 3 See, e.g., Assertion of Executive Privilege Concerning the
Dismissal and Replacement of U.S. Attorneys, 31 Op. O.L.C. 1
(2007) (opinion of Acting Attorney General Paul D. Clement)
(concluding that the President may assert executive privilege with
respect to testimony by two former White House officials). Attempted
Exclusion of Agency Counsel from Congressional Depositions 11
privilege be diminished. See Memorandum for Peter J. Wallison,
Counsel to the President, from Charles J. Cooper, Assistant Attorney
General, Office of Legal Counsel at 2 (Sept. 8, 1986) (agency counsel
attending congressional interviews can advise "about the sensitivity of
particular information and, if need be, to terminate the interview to
avoid disclosure of privileged information"). Accordingly, Committee
Rule 15(e) unduly interferes with the President's supervision of the
disclosure of privileged information by barring agency counsel from
the deposition of an agency employee concerning official activities."

[15] *See e.g., U.S. v. AT&T*, 567 F.2d 121, 127 (D.C. Cir. 1977); A1033-1034.  "A
congressional committee may not avoid its obligation to participate in this
constitutionally mandated process by issuing or seeking to enforce a subpoena
before the accommodation process has run its course."  [A1061; see also A1042-
1045, discussing the constitutional foundations for the accommodation process].

subpoena, Costello continued to engage and assured the Committee he was not

"defying" the subpoena.  Rather, as he expressly advised the Committee, while Mr.

Bannon's hands were tied by the invocation of executive privilege, if the

Committee worked out the privilege issue with former President Trump or a court

ordered him to testify,[16] he would fully comply at once. [A364] The Committee

rejected every reasonable accommodation request he made. [A364, A365, A369]

The very purpose of OLC Opinions is to guide the DOJ in their prosecution

of cases and to give binding authoritative notice of their departmental policy. It is

the DOJ's own binding OLC Opinions that Mr. Bannon relied on in seeking

accommodation and in believing that his conduct broke no law and would not be

prosecuted, given the invocation of executive privilege.[17] It would therefore be

anomalous to hold that the legal principles espoused in OLC Opinions, which are

based on legislative history, caselaw, and painstaking research by some of the

---

[16] In *McGahn, Supra.,* this Court, siting *en banc*, repeatedly cited to OLC Opinions
for the proposition that where such a dispute as this arises, it is for the judiciary to
resolve the interbranch subpoena issue through a civil enforcement proceeding, not
the Congress unilaterally.

[17] "…the OLC has repeatedly opined that the criminal contempt statute does not
and could not apply to a close Presidential advisor. *See, e.g., Testimonial Immunity
Before Congress of the Former Counsel to the President*, (O.L.C. May 20, 2019)
[A1173-1193]; *Whether the Department of Justice May Prosecute White House
Officials for Contempt of Congress*, 32 Op. O.L.C. 65, 68-69 (2008) [A1126-
1127] Cooper Opinion, 10 Op. O.L.C. at 83 [A1210]; Olson Opinion, 8 Op. O.L.C.
at 142." [A1121].

foremost legal scholars at DOJ, cannot be applied to cases implicating the very same legal principles . [*See* A836-841].

## **CONCLUSION**

The district judge was right to repeatedly express his concern that the *Licavoli mens rea* standard pressed by the Government is irreconcilable with traditional and modern notions of how to construe "willfully."

It violates a criminal defendant's 5th and 6th Amendment rights and the Separation of Powers doctrine to impose criminal liability in this case. Mr. Bannon is a lay person who received a House subpoena, executive privilege was invoked, he retained experienced counsel and followed counsel's advice and directives at all times. He did not "willfully" violate the law. He responded to the subpoena in the only way he understood the law permitted based on all factors described in his briefs.

Barring Mr. Bannon from telling the jury the story of his case or any defense theory - his reliance on the invocation of executive privilege and corresponding advice of counsel and OLC Opinions, his attempts to seek accommodation, and more – cannot be reconciled with the 5th and 6th Amendment rights constitutionally guaranteed to Mr. Bannon. Nor can it be reconciled with the principle that in a prosecution under §192, all constitutional claims and objections may be raised.

*U.S. v. House of Representatives*, 556 F.Supp. 150, 152 (D.D.C. 1983) (and cases

cited therein).  [Bannon Brief at 29].

The lower court's decision must be reversed.

/s/ David I. Schoen
David I. Schoen
LAW OFFICE OF DAVID I. SCHOEN
2800 Zelda Road, Suite 100-6
Montgomery, AL  36106
(334) 395-6611

*Counsel for Appellant*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of

the Federal Rules of Appellate Procedure because it contains <u>6,403</u> words,

excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) and the

type style requirements of Rule 32(a)(6) because it has been prepared in a

proportionally spaced typeface using Microsoft Word in <u>Times Roman 14-point</u>

<u>font</u>.

<u>/s/ David I. Schoen</u>      
David I. Schoen
LAW OFFICE OF  DAVID I. SCHOEN
2800 Zelda Road, Suite 100-6
Montgomery, AL  36106
(334) 395-6611

*Counsel for Appellant*

25

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(d) and Cir. R. 25, that on June 23, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/ David I. Schoen
David I. Schoen
LAW OFFICE OF  DAVID I. SCHOEN
2800 Zelda Road, Suite 100-6
Montgomery, AL  36106
(334) 395-6611

*Counsel for Appellant*

Dated: June 23, 2023

26